FILED
15-0547
7/24/2015 5:49:28 PM
tex-6223072
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

No. _____

# In the Supreme Court of Texas

IN RE:

BENEVIS, LLC, DENTISTRY OF BROWNSVILLE, P.C., AND KOOL SMILES, P.C.,

Relators.

**SWORN RECORD**

| Description | Tab |
|---|---|
| *Antu* Plaintiffs' Original Petition | 1 |
| *Antu* Defendants' Answer to Plaintiffs' Original Petition | 2 |
| *Antu* Plaintiffs' Fourth Amended Original Petition | 3 |
| Stipulated Confidentiality Agreement and Protective Order | 4 |
| Motion for Transfer to Multidistrict Litigation Pretrial Court | 5 |
| Order Granting Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order | 6 |
| *Antu* Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order, etc. | 7 |
| Defendants' Response to Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order, etc. | 8 |
| Defendants' Supplemental Brief in Response to Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order, etc. | 9 |
| Defendants' Response to Plaintiffs' [Supplemental] Memorandum of Law Regarding Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order, etc. | 10 |
| Plaintiffs' Memorandum of Law Regarding Plaintiffs' Motion to Amend the Stipulated Confidentiality Agreement and Protective Order | 11 |
| Order Granting Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order | 12 |

20464581v1

| Petition for Writ of Mandamus – Court of Appeals | 13 |
| Real Parties' Response to Relators Petition for Writ of Mandamus | 14 |
| Order Denying Relators' Petition for Writ of Mandamus | 15 |

20464581v1



Cause No: C-0184-13-G



FILED/COPY
AT_____O'CLOCK____M

JAN 16 2013

LAURA HINOJOSA, CLERK
District Court Hidalgo County
By_____(Deputy #22)

| | | |
|---|---|---|
| PAULA ANTU AS NEXT FRIEND OF ████████████████, A MINOR; | § | IN THE DISTRICT COURT |
| SCARLETT AYALA AS NEXT FRIEND OF ████████, A MINOR; | § | |
| GUADALUPE CEPEDA AS NEXT FRIEND OF ████████, A MINOR; | § | |
| ANA LAURA CORNEJO AS NEXT FRIEND OF ████ ████████, A MINOR; | § | |
| MARIO CUELLAR AND PRISCILLA TRUJILLO AS NEXT FRIENDS OF ████ ████████, A MINOR; | § | |
| MARIA GAYTÁN AS NEXT FRIEND OF ████████████, A MINOR; | § | |
| ELIZABETH GONZALEZ AND MARCO REYES AS NEXT FRIENDS OF ████████ ████, A MINOR; | § | 370th JUDICIAL DISTRICT |
| FRANCISCA GUZMAN AS NEXT FRIEND OF ████████, A MINOR; | § | |
| ISMAEL MALDONADO AND ISABEL MALDONADO AS NEXT FRIENDS OF ████████████, A MINOR; | § | |
| FREISI OLIVAR AS NEXT FRIEND OF ████████████, II, A MINOR; | § | |
| MARY ROSALES AS NEXT FRIEND OF ████████, A MINOR; AND | § | |
| REYNOL SALINAS AS NEXT FRIEND OF ████████████, A MINOR. | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | |
| | § | |
| NCDR, LLC d/b/a KOOL SMILES; | § | |
| DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES; | § | |
| AISHWARYA K. CHANDESH, D.D.S.; | § | |
| EDWARD HO, D.D.S.; | § | |
| RICHARD I. MANWARING, D.D.S.; AND | § | |
| MARC D. THOMAS, D.D.S. | § | |
| DEFENDANTS. | § | HIDALGO COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION

**TO THE HONORABLE JUDGE PRESIDING:**

1

COME NOW Plaintiffs PAULA ANTU AS NEXT FRIEND OF ████████ ████████, A MINOR; SCARLETT AYALA AS NEXT FRIEND OF ████████████, A MINOR; GUADALUPE CEPEDA AS NEXT FRIEND OF ████████████, A MINOR; ANA LAURA CORNEJO AS NEXT FRIEND OF ████████████, A MINOR; MARIO CUELLAR AND PRISCILLA TRUJILLO AS NEXT FRIENDS OF ██████ ████████, A MINOR; MARIA GAYTÁN AS NEXT FRIEND OF ████████████, ██, A MINOR; ELIZABETH GONZALEZ AND MARCO REYES AS NEXT FRIENDS OF ████████████, A MINOR; FRANCISCA GUZMAN AS NEXT FRIEND OF ████ ██████, A MINOR; ISMAEL MALDONADO AND ISABEL MALDONADO AS NEXT FRIENDS OF ████████████, A MINOR; FREISI OLIVAR AS NEXT FRIEND OF ████████████, A MINOR; MARY ROSALES AS NEXT FRIEND OF ████ ████████, A MINOR; AND REYNOL SALINAS AS NEXT FRIEND OF ████████████, ██, A MINOR, (hereinafter referred to collectively as "Plaintiffs") and complain of NCDR, LLC d/b/a KOOL SMILES (hereinafter referred to as "NCDR"), DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES (hereinafter referred to as "DENTISTRY OF BROWNSVILLE") (both Defendants NCDR and DENTISTRY OF BROWNSVILLE collectively referred to as "KOOL SMILES"), AISHWARYA K. CHANDESH, D.D.S. (hereinafter referred to as "DR. CHANDESH"), EDWARD HO, D.D.S. (hereinafter referred to as "DR. HO"), RICHARD I. MANWARING, D.D.S. (hereinafter referred to as "DR. MANWARING"), and MARC D. THOMAS, D.D.S. (hereinafter referred to as "DR. THOMAS) (all Defendants are hereinafter collectively referred to as "DEFENDANTS") and for causes of action would show unto this Honorable Court as follows:

# I.
## DISCOVERY CONTROL PLAN

Pursuant to Texas Rules of Civil Procedure 190, discovery in this case is intended to be conducted under Level 3.

# II.
## PARTIES

Plaintiff PAULA ANTU is an individual and the natural parent of ██████████ ████████. Plaintiff brings this suit as next friend of ████████████████████, a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

Plaintiff SCARLETT AYALA is an individual and the natural parent of ████████ ███████. Plaintiff brings this suit as next friend of ███████████, a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

Plaintiff GUADALUPE CEPEDA is an individual and the natural parent of ████████ ██████. Plaintiff brings this suit as next friend of ████████████, a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

Plaintiff ANA LAURA CORNEJO is an individual and the natural parent of ████ ██████████████. Plaintiff brings this suit as next friend of ████████████████, a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

Plaintiffs MARIO CUELLAR AND PRISCILLA TRUJILLO are individuals and the natural parents of ████████████. Plaintiffs bring this suit as next friends of ███████ CUELLAR, a minor. At all times relevant to this lawsuit, Plaintiffs resided in Hidalgo County, Texas.

Plaintiff MARIA GAYTÁN is an individual and the natural parent of ███████████ ████████. Plaintiff brings this suit as next friend of ████████████████., a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

Plaintiffs ELIZABETH GONZALEZ AND MARCO REYES are individuals and the natural parents of ████████████. Plaintiffs bring this suit as next friends of ████████████, a minor. At all times relevant to this lawsuit, Plaintiffs resided in Hidalgo County, Texas.

Plaintiff FRANCISCA GUZMAN is an individual and the natural parent of ████ ████████. Plaintiff brings this suit as next friend of ████████████, a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

Plaintiffs ISMAEL MALDONADO AND ISABEL MALDONADO are individuals and the natural parents of ████████████. Plaintiffs bring this suit as next friends of ████████████, a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

Plaintiff FREISI OLIVAR is an individual and the natural parent of ████████████, █. Plaintiff brings this suit as next friend of ████████████, a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

Plaintiff MARY ROSALES is an individual and the natural parent of ████████████. Plaintiff brings this suit as next friend of ████████████, a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

Plaintiff REYNOL SALINAS is an individual and the natural parent of ████████████. Plaintiffs bring this suit as next friends of ████████████, a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

Defendant NCDR is, and at all times relevant to this lawsuit has been, a limited liability company formed in the State of Delaware with its principal office in Marietta, Georgia. NCDR is registered and duly authorized to transact business in the State of Texas. Said Defendant may be served with citation and a copy of Plaintiffs' Original Petition by certified mail, return receipt requested, to it's registered agent, to-wit: C T Corporation System, 350 N. St. Paul St., Suite 2900, Dallas, TX 75201-4234.

Defendant DENTISTRY OF BROWNSVILLE is, and at all times relevant to this lawsuit has been, a professional corporation incorporated in the State of Texas. Said Defendant may be served with citation and a copy of Plaintiffs' Original Petition by certified mail, return receipt requested, to its registered agent, to-wit: C T Corporation System, 350 N. St. Paul St., Suite 2900, Dallas, TX 75201-4234.

Defendant DR. CHANDESH is an individual licensed to practice dentistry in the State of Texas. Said Defendant may be served with citation and a copy of Plaintiffs' Original Petition by personal service at Kool Smiles, 213 E. Expressway 83, Mission, TX 78572.

Defendant DR. HO is an individual licensed to practice dentistry in the State of Texas. Said Defendant may be served with citation and a copy of Plaintiffs' Original Petition by certified mail, return receipt requested, to addressee only, at 2535 E. Arkansas Lane, Suite 339, Arlington, TX 76010.

Defendant DR. MANWARING is an individual licensed to practice dentistry in the State of Texas. Said Defendant may be served with citation and a copy of Plaintiffs' Original Petition by personal service at Kool Smiles, 1301 E. US Hwy 83, McAllen, TX 78501.

Defendant DR. THOMAS is an individual licensed to practice dentistry in the State of Texas. Said Defendant may be served with citation and a copy of Plaintiffs' Original Petition by

5

certified mail, return receipt requested, to addressee only, at 8286 West Eastman Place, Lakewood, CO 80227.

### III.
### ASSUMED NAME

NCDR and DENTISTRY OF BROWNSVILLE both affirmatively hold themselves out as doing business as "Kool Smiles".

Therefore, pursuant to Rule 28 of the Texas Rules of Civil Procedure, Plaintiffs hereby give notice to Kool Smiles that they are being sued in all of their business and professional names operating under the name "Kool Smiles", whether such businesses are corporations, professional corporations, limited liability companies, professional associations, partnerships, limited partnerships, joint ventures, sole proprietorships, or other entities.

### IV.
### VENUE AND JURISDICTION

Venue properly rests in Hidalgo County, Texas, because such county is the county in which the dental clinics owned by DENTISTRY OF BROWNSVILLE, which treated the minor Plaintiffs, are located, the county in which most of the occurrences which give rise to this suit arose, and the county in which DR. CHANDESH resides. This Court has jurisdiction because the amount in controversy exceeds the minimum jurisdictional limits of this Court.

### V.
### KOOL SMILES IS ENGAGED IN THE CORPORATE PRACTICE OF DENTISTRY

**A. The Corporate Practice of Dentistry Is Strictly Prohibited In The State Of Texas.**

Texas law prohibits a person not licensed to practice dentistry in Texas from owning, maintaining, or operating an office or place of business in which that person employs or engages, under any type of contract, another person to practice dentistry or "controls, influences attempts

6

to control or influence, or otherwise interferes" with a dentist's professional judgment. TEX. OCC. CODE. ANN. §251.003(a).

## B. KOOL SMILES Is Managed, Operated, And/Or Controlled By Persons Not Licensed To Practice Dentistry In Texas.

NCDR operates, manages, and/or controls over 115 KOOL SMILES clinics throughout the United States including the clinics in McAllen, Mission, and Weslaco, Texas. As confirmed by a judicial admission of KOOL SMILES in their Original Complaint in <u>NCDR, LLC, et al v. Mauze' & Bagby, PLLC, et al</u>, case number 5:12-cv-36 pending in the United States District Court, Laredo Division wherein KOOL SMILES (which Plaintiffs expressly state collectively refers to NCDR, L.L.C., Dentistry of Brownsville, P.C. d/b/a Kool Smiles and KS2 TX, P.C. d/b/a Kool Smiles) the clinics are "owned, managed, and operated by Plaintiffs" (Exhibit "A" - Plaintiffs' Original Complaint, paragraph 13 – page 3). NCDR is not owned, managed, or operated by persons licensed to practice dentistry in Texas but, rather, based upon information and belief, is owned by Kool Smiles Acquisition Corp. and/or entities of which interests are owned by Friedman Fleischer & Lowe, a private equity firm in San Francisco, California.

## C. The Kool Smiles Plan And Scheme.

KOOL SMILES drafted and implemented an elaborate plan and scheme to generate as much taxpayer Medicaid revenue as possible per clinic, per dentist, per patient, and per visit.

KOOL SMILES' nationwide elaborate plan and scheme includes aggressive solicitation and marketing of the parents of pediatric dental patients entitled to Medicaid. To effectuate their plan and scheme, KOOL SMILES elects to primarily prey on the most vulnerable members of our society, ie; underprivileged, very young children. KOOL SMILES knows that underprivileged children's parents are less likely to challenge the opinions of professionals wearing white smocks; such parents are less likely to question the treatment plan; such parents

7

are less likely to complain, especially when KOOL SMILES routinely prohibits and discourages the parents from being present in the treatment room to observe the treatment of their children. KOOL SMILES' plan and scheme includes hiring general dentists who have recently completed dental school and have very little, if any, experience with pediatric patients. The dentists are assigned to clinics which primarily treat very young pediatric patients. The dentists are discouraged to refer pediatric patients to pediatric dentists and are, in fact, provided a quota of the maximum percent of patients they should refer. The quota is closely tracked, monitored, and enforced.

KOOL SMILES further has a scheme, plan, and practice of recruiting and hiring general dentists who are not U.S. citizens for the purpose of creating dependency which makes it difficult for these dentists to terminate their employment once they discover the wrongdoing. More specifically, NCDR promises these foreign residents sponsorship to enable them to obtain work visas, provides loans to these foreign residents, pays them "salaries" in excess of $200,000, and allows them to participate in "Innovative Wealth Management Plans" which accumulate over $1,000,000.

Further, KOOL SMILES closely tracks and monitors the production of each and every clinic and dentist and sets production goals for each dentist and revenue goals for each clinic. The goals are very specific and are entirely based upon production or collections rather than necessity for treatment or quality of care. For example, dentists are provided quotas regarding the number of stainless steel crowns they should perform, the number of quadrants they should work on during each visit of each patient, the number of operative procedures per patient they should perform, and the number of operative procedures per day they should perform. If a dentist fails to reach KOOL SMILES' production goal, then the dentist is counseled and

8

provided a performance improvement plan instructing said dentist to increase his or her production and specifying how said dentist should increase production. If a dentist fails or refuses to meet the quota, then the dentist is terminated.

KOOL SMILES trains and indoctrinates its dentists to provide aggressive dental care to pediatric patients who have temporary teeth (commonly referred to as "baby teeth"), such as placing stainless steel crowns on teeth which are not indicated because: 1) the caries are so small that they can be simply observed (which will not produce revenue from Medicaid); or 2) the caries are so small that they can be treated with fillings (which will not produce as much revenue from Medicaid as stainless steel crowns); or 3) the teeth will soon exfoliate (fall out which will not produce any revenue from Medicaid).

KOOL SMILES trains its dentists to perform many operative procedures on each patient in the shortest amount of time. To speed up the treatment time and increase production, KOOL SMILES often physically restrains children to papoose boards and physically holds the children down while multiple operative procedures are performed on the same date. KOOL SMILES' dentists are not certified by the State of Texas to administer sedation and, thus, they don't sedate the children to relieve them of their fear and anxiety and to induce memory loss. The administration of sedation requires more time in which no production or revenue is generated. Generally, the sedation takes approximately 15 minutes to take effect before operative procedures should be performed. Although many of the children undergoing multiple operative procedures are obviously in severe distress, KOOL SMILES does not terminate the treatment to console them or allow the parent to console them, but continues to finish their treatment plan so they can fulfill their production and revenue goals rather than protect the well-being of the minor children.

**D.     The Players.**

1.     Friedman Fleischer & Lowe

Friedman Fleischer & Lowe is a private equity firm in San Francisco, California which manages hundreds of millions of dollars belonging to its investors, including large pensions and trusts. One of their investments is KOOL SMILES. Through some of their board of directors and businesses in which they own a significant interest, they actively participate in the management and control of KOOL SMILES.

2.     Kool Smiles Acquisition Corp.

Kool Smiles Acquisition Corp. is a corporation that is the sole member and owner of NCDR. Friedman Fleischer & Lowe owns an interest in Kool Smiles Acquisition Corp. and is an acknowledged intermediary of Kool Smiles Acquisition Corp. Through Kool Smiles Acquisition Corp.'s board of directors, members of Friedman Fleischer & Lowe actively participate in the management of Kool Smiles Acquisition Corp.

3.     NCDR, LLC

NCDR's sole member is Kool Smiles Acquisition Corp. NCDR owns the "Kool Smiles" trademarks which are registered for general dentistry services. NCDR exercises substantial management and control over the KOOL SMILES clinics, such fact demonstrated by the following:

1. NCDR recruits and hires the dentists who work at KOOL SMILES clinics;
2. NCDR trains the dentists who work at KOOL SMILES clinics;
3. NCDR supervises the dentists who work at KOOL SMILES clinics;
4. NCDR tracks and monitors the production of every dentist who works at KOOL SMILES clinics;
5. NCDR sets production quotas and goals for every dentist who works at KOOL SMILES clinics;
6. NCDR sets the production goals for all KOOL SMILES clinics;
7. NCDR sets revenue goals for all KOOL SMILES clinics;

10

8. NCDR recruits and hires dental assistants, office managers, community service personnel, and other dental personnel who work at KOOL SMILES clinics;

9. NCDR prepares all of the invoices and accounts receivables, including Medicaid, for KOOL SMILES clinics;

10. NCDR collects all of the accounts receivable for KOOL SMILES clinics;

11. NCDR prepares, pays, and distributes all of the accounts payable for KOOL SMILES clinics;

12. NCDR prepares, pays, and distributes the compensation (a percentage of their production) to the dentists who work at KOOL SMILES clinics;

13. NCDR prepares, pays, and distributes the compensation (a percentage of production) to the dentists who own the professional corporations doing business as Kool Smiles;

14. NCDR selects the professional liability insurer and pays the premiums for all of the dentists who work at KOOL SMILES clinics;

15. NCDR hires, employs, and pays all of the legal counsel assigned to respond to state and federal investigations, claims, and address other legal issues that arise at KOOL SMILES clinics;

16. NCDR hires and pays for all marketing personnel and advertising of KOOL SMILES clinics;

17. NCDR hires and employs all of the corporate personnel responsible for marketing, management, and financial operations of KOOL SMILES clinics; and

18. NCDR writes, implements, and enforces all of the policies, procedures, and protocols for KOOL SMILES clinics.

4. <u>Dentistry of Brownsville, P.C. d/b/a Kool Smiles.</u>

DENTISTRY OF BROWNSVILLE is a professional corporation incorporated in the State of Texas and owned by Tu Minh Tran, DDS. DENTISTRY OF BROWNSVILLE owns clinics in McAllen, Weslaco, and Mission, Texas. Dr. Tran, and three other dentists, own all of the Kool Smiles dental clinics in the United States. Dr. Tran does not reside in the State of Texas and does not practice dentistry, on any regular basis, at any of the KOOL SMILES clinics. The clinics are camouflaged as local clinics formed as professional corporations in Texas owned by dentists licensed in Texas with the intention of giving the public and the government an appearance of compliance with state laws which prohibit the corporate practice of dentistry. This elaborate scheme of multiple layers of entities is simply for no other purpose than to try to

11

circumvent the prohibition against the corporate practice of dentistry. In reality and fact, the KOOL SMILES clinics are managed, operated, and/or controlled by out-of-state persons not licensed to practice dentistry in the State of Texas.

5.     The Children Victims.

Most of the children treated at KOOL SMILES clinics are very young and still have baby teeth. More often than not the children do not have any histories of pain or complaints before arriving to a KOOL SMILES clinic. Their parents enter the clinic anticipating their children will receive examinations, oral hygiene instructions, and have their teeth cleaned. The children and their parents trust the dental professionals to honestly recommend and perform only necessary procedures and to perform the dental procedures appropriately and with the least amount of physical and emotional trauma.

After examination, it is the routine practice, plan, intent, scheme, and course of action of KOOL SMILES to misdiagnose multiple cavities and/or the extent of the cavities and recommend operative procedures, most commonly consisting of pulpotomies (root canals on baby teeth) and stainless steel crowns. Routinely, many of these operative procedures are unnecessary and/or excessive but they allow KOOL SMILES to maximize production per patient and meet its revenue goals.

After persuading the children's parents that the treatment recommended is necessary, and prior to any treatment, KOOL SMILES secures the parents' consents to treatment and use of physical restraint often informing them that restraint most likely will not be necessary and, if necessary, has no risks.

However, KOOL SMILES does, in fact, intend to restrain many of the children because it requires less time than less intrusive behavior management techniques and allows the dentist to

12

increase production and maximize revenues. Children are strapped to papoose boards and physically restrained otherwise (often including blind-folds, socks over their hands, and one or more employees physically holding their head and/or feet). The parents who question the use of restraint are commonly not told of the alternatives, such including referral to a pediatric dentist who will sedate their children and not utilize physical restraints. KOOL SMILES uses restraints far more often than other dentists who do not work in dental clinic chains. Because of the loss of freedom of movement and potential trauma, restraints are only used in dentistry as a last resort when all other less restrictive behavior management techniques have been reasonably attempted and failed and the dental treatment is emergent or should not be delayed because of imminent risk to the patient's health. In the limited circumstances in which physical restraint may be necessary, the standard of care is to sedate the child to relieve his/her anxiety and to impair his/her short-term memory. However, KOOL SMILES does not administer sedation to children because its dentists are not certified to administer sedation. After the parents' broad consent is signed, KOOL SMILES often prohibits or discourages the children's parents from being present in the treatment room. Then, often without the parents present to comfort and protect their children, KOOL SMILES begins to fulfill its production goals. The barbaric practices of KOOL SMILES often causes the children so much physical and emotional trauma that they are crying, screaming, struggling, and terrified. Many children were so traumatized that they lose control of their bladders and/or vomit. KOOL SMILES, rather than terminate the procedures for the safety and comfort of the children, presses on with production.

Many stainless steel crowns were inappropriately sized and fitted and many pulpotomies were not completely performed, such allowing bacteria to migrate under the crowns and in the pulp chamber, such causing infections and abscesses which necessitated subsequent extractions.

13

Further, many children had stainless steel crowns fall out because they were inappropriately sized, fitted, and/or cemented. In many instances, KOOL SMILES placed stainless steel crowns on teeth which were not necessary. Additionally, some services were billed to Medicaid which were not provided.

The children arrive to KOOL SMILES trusting health care professionals and smiling only to leave KOOL SMILES distrusting dentists and without a smile. The children leave in pain, discomfort, and severe emotional distress, and anguish. The children are embarrassed because their disfigured mouths are full of stainless steel crowns, which often is the subject of ridicule. The children fight their parents about going to dentists because of their traumatic experience at KOOL SMILES. As a result of the traumatic experience at KOOL SMILES, many of these victimized children, as adults, will be fearful of dentists and dental procedures which will reduce the likelihood of future visits to dental professionals. The trauma they endured is likely to affect them the rest of their lives and is likely to make them reluctant to take their children to dental professionals.

### E. The Motive

KOOL SMILES' plan and scheme is to fulfill its motive: bilk Medicaid for millions and millions of dollars at the cost of taxpayers and suffering of underprivileged children. KOOL SMILES has collected, and continues to collect, tens of millions of taxpayer dollars in Texas every year.

### F. Kool Smiles' Plan And Scheme Is Under Investigation

KOOL SMILES has been, and continues to be, the subject of state and federal investigations. In Texas, the Attorney General's office has pending concurrent civil and criminal Medicaid investigations. As early as August 22, 2007, the conduct of NCDR and Kool Smiles

14

clinics was the subject of a press release by the Georgia Department of Community Health which was investigating their "patterns of over-utilization of services", "unusual patterns of patient restraint", "over-utilization of stainless steel crowns", and "the appropriateness of care delivered".

WellCare of Georgia, Inc., which manages Georgia Medicaid programs, prepared a news release which revealed it had performed an analysis of Kool Smiles' Medicaid claims data and found that a child treated by Kool Smiles, as compared to other dentists, is "five times more likely to receive crowns", "four times more likely to receive five or more crowns", and "three times more likely to be physically restrained during dental procedures". WellCare of Georgia, Inc. and Peach State Health Plan, companies which manage Medicaid in Georgia, terminated their contracts with Kool Smiles because of these findings.

In 2009, the Fort Wayne Journal Gazette reported that children are being physically restrained, forcibly held down, "screaming their heads off," and receiving multiple stainless steel crowns at Kool Smiles' clinics. Moreover, the Fort Wayne Journal Gazette reported that Kool Smiles' clinics have been "accused of overtreating its patients, of prohibiting parents from procedure rooms and of being too quick to restrain the children it treats."

An Original Complaint, Civil Action No. 11-2077, was filed on May 26, 2011 in the United States District Court in the Southern District of Texas, styled *Baljot Singh Bains v. KS2 TX, P.C. d/b/a Kool Smiles*. In such complaint, Dr. Bains, a dentist formerly employed by Kool Smiles, alleged "that certain of Kool Smiles' employees, including but not limited to Dr. Diaa Zora, was conspiring to and was committing fraud and making false claims against the U.S. and Texas." He "learned of and observed patients being misdiagnosed and over-diagnosed so that

15

Kool Smiles could charge the U.S. and Texas fees" and he witnessed "the use of papoose boards when such restraints were unnecessary" and numerous other improper practices.

On May 17, 2012, Bloomberg reported that Kool Smiles is under investigation by the Unites States Senate.

Nevertheless, with the state and federal governments ineffective in stopping the abuses of Kool Smiles, Kool Smiles continues to open new clinics and continues to effectuate and perfect its plan to bilk the United States taxpayers at the cost of harm to very young children.

## VI.
## FACTUAL BACKGROUND PERTAINING TO PLAINTIFFS

████████, a 3 year old boy, presented to the Kool Smiles clinic in Mission, Texas on January 4, 2011 and January 7, 2011. After examination and radiographs, DR. CHANDESH represented to Plaintiff that ██████ had multiple cavities in teeth A, B, C, I, J, K, L, S, & T which necessitated stainless steel crowns. No sedation was administered and ██████ was physically restrained to a papoose board on both dates. DR. CHANDESH injected local anesthetic and then prepared nine (9) baby teeth A, B, C, I, J, K, L, S, & T for, and cemented, stainless steel crowns. During the procedures on both dates, ██████ was crying and screaming. KOOL SMILES billed and collected Medicaid for its dental services and procedures, including nine (9) stainless steel crowns, when only eight (8) stainless steel crowns were placed and several of the stainless steel crowns were not necessary.

████████████ presented to the Kool Smiles clinic in McAllen, Texas on multiple occasions in 2010 and 2011, beginning when he was approximately 4 years old. He was diagnosed and treated by multiple dentists including Dr. Traynor and DR. MANWARING. After examination and radiographs, the dentists represented to Plaintiff that ██████ had multiple cavities in teeth D, E, I, J, and S which necessitated stainless steel crowns and tooth I

necessitated a pulpotomy.  The dentists never administered sedation, physically restrained █████ ████ to a papoose board on two occasions, injected him with local anesthetic, and then prepared five (5) baby teeth D, E, I, J, & S for, and cemented, stainless steel crowns and performed a pulpotomy on tooth I.  ████████ was screaming, crying, and struggling during the dental operative procedures.   KOOL SMILES billed and collected Medicaid for its dental services and procedures, many of which were not necessary.

████████████ presented to the Kool Smiles clinic in McAllen, Texas on multiple occasions beginning when he was approximately 3 1/2 years old.  He was diagnosed and treated by multiple dentists including DR. HO and DR. THOMAS.  After examinations and radiographs in 2009 and 2010, the dentists represented to Plaintiff that █████ had multiple cavities in teeth A, B, D, E, F, G, I, J, K, L, S, & T all of which necessitated stainless steel crowns and teeth F, G, K, & T necessitated pulpotomies.  The dentists injected local anesthetic and then prepared twelve (12) baby teeth A, B, D, E, F, G, I, J, K, L, S, & T for, and cemented, stainless steel crowns and performed pulpotomies on teeth F, G, K, & T.  No sedation was administered on any of the treatment dates. On one date, █████ was physically restrained to a papoose board and physically held down during the dental operative procedures.  █████ was crying, screaming, and struggling during the operative procedures. KOOL SMILES billed and collected Medicaid for its dental services and procedures, many of which were not necessary.

████████████, a 5 year old girl, presented to the Kool Smiles clinic in Mission, Texas on multiple occasions.  In July 2009, on two occasions, DR. THOMAS, after examination and radiographs, represented to Plaintiff that ████████ had multiple cavities in teeth A, B, C, D, E, F, G, H, I, K, L, M, R, S, & T which necessitated stainless steel crowns.  No sedation was administered on either treatment date.  On one date, ████████ was physically restrained to a

papoose board. DR. THOMAS, injected local anesthetic and then prepared fifteen (15) baby teeth A, B, C, D, E, F, G, H, I, K, L, M, R, S, & T for, and cemented, stainless steel crowns. During the operative procedures Plaintiff's minor child was crying, screaming, and struggling. KOOL SMILES billed and collected Medicaid for its dental services and procedures, many of which were not necessary.

███████ presented to the Kool Smiles clinic in McAllen, Texas on November 30, 2011, when she was approximately 7 years old. She was diagnosed and treated by DR. MANWARING. After examination and radiographs, DR. MANWARING represented to Plaintiff that ███ had multiple cavities in teeth J, K, and L which necessitated stainless steel crowns. No sedation was administered, ███ was injected with a local anesthetic, and then prepared three (3) baby teeth J, K, & L for, and cemented, stainless steel crowns. KOOL SMILES billed and collected Medicaid for its dental services and procedures which were not necessary.

███████, a 2 year old girl, presented to the Kool Smiles clinic in McAllen, Texas on multiple occasions in 2009 and 2011. She was diagnosed and treated by multiple dentists including DR. HO. After examination and radiographs in 2009, DR. HO represented to Plaintiff that ███ had multiple cavities in teeth D, E, F, G, L, N, O, P, Q, & S which necessitated stainless steel crowns and teeth D, E, F, G, L, & S necessitated pulpotomies. No sedation was administered on either treatment date in 2009. On one date, ███ was physically restrained to a papoose board. On the treatment dates, DR. HO, injected local anesthetic and then performed pulpotomies on six (6) baby teeth D, E, F, G, L, & S and prepared ten (10) baby teeth D, E, F, G, L, N, O, P, Q, & S for, and cemented, stainless steel crowns. During the

operative procedures ███ was crying. KOOL SMILES billed and collected Medicaid for its dental services and procedures, many of which were not necessary.

████████ presented to the Kool Smiles clinic in McAllen, Texas on multiple occasions in 2009 and 2010. She was diagnosed and treated by multiple dentists including DR. HO. After examinations and radiographs on two dates in 2009, DR. HO represented to Plaintiff that ███ had multiple cavities in teeth A, B, I, J, K, L, S & T which necessitated stainless steel crowns and teeth A & I necessitated pulpotomies. No sedation was administered on either date. On both dates, ████ was physically restrained to a papoose board, physically held down, and socks were placed over her hands. DR. HO injected local anesthetic and then performed pulpotomies on two (2) baby teeth A & I and prepared eight (8) baby teeth A, B, I, J, K, L, S, & T fo r, and cemented, stainless steel crowns. Du ring the operative procedures Plaintiff's minor child was crying, screaming, and struggling. KOOL SMILES billed and collected Medicaid for its dental services and procedures, many of which were not necessary.

████████, a 4 year old girl, presented to the Kool Smiles clinic in Mission, Texas on multiple occasions in 2011. After examinations and radiographs, on July 6, 2011 and July 8, 2011, DR. CHANDESH represented to Plaintiff that ██████ had multiple cavities in teeth A, B, I, J, K, L, S, & T which necessitated stainless steel crowns. No sedation was administered on either dates. On both dates, ██████ was physically restrained to a papoose board and physically held down. DR. CHANDESH injected local anesthetic and then prepared eight (8) baby teeth A, B, I, J K, L, S, & T for, and cemented, stainless steel crowns. During the procedures ██████ was crying, screaming, and struggling. KOOL SMILES billed and collected Medicaid for its dental services and procedures, many of which were not necessary.

████████████, a 2 year old boy, presented to the Kool Smiles clinic in Mission, Texas on multiple occasions in 2011. He was diagnosed and treated by multiple dentists including DR. CHANDESH. After examinations and radiographs on October 5, 2011 and October 10, 2011, DR. CHANDESH represented to Plaintiff that ████ had multiple cavities in teeth B, C, E, F, H, I, G, S, & T which necessitated stainless steel crowns. No sedation was administered on either date. On both dates, ████ was physically restrained to a papoose board and physically held down. DR. CHANDESH injected local anesthetic and then prepared nine (9) baby teeth B, C, E, F, G, H, I, S, & T for, and cemented, stainless steel crowns. During the procedures, he was crying, screaming, and struggling. KOOL SMILES billed and collected Medicaid for its dental services and procedures, many of which were not necessary.

████████████ presented to the Kool Smiles clinic in Mission, Texas on multiple occasions in 2009 and 2010. He was examined and treated by Kool Smiles' dentists, including DRS. CHANDESH and THOMAS. After examinations and radiographs, dentists represented to Plaintiff that ████ had multiple cavities in teeth I, J, K, & L which necessitated pulpotomies and that teeth A, B, E, F, I, J, K, L, & T necessitated stainless steel crowns. No sedation was administered on the treatment dates. On one date, ████ was physically restrained to a papoose board and physically held down. On January 21, 2009, DR. THOMAS injected local anesthetic and then performed four (4) pulpotomies on baby teeth I, J, K & L and prepared six (6) baby teeth E, F, I, J, K, & L for, and cemented, stainless steel crowns. During the operative procedures ████ was crying, screaming, struggling, and lost control of his bladder. On February 4, 2009, another dentist, injected local anesthetic and then prepared three (3) baby teeth A, B & T for, and cemented, stainless steel crowns. On September 10, 2010, DR. CHANDESH re-preformed the pulpotomy and replaced the stainless steel crown on tooth K. KOOL SMILES billed and

20

collected Medicaid for its dental services and procedures, many of which were not necessary and two of which was necessary because of the previously poorly performed pulpotomy on tooth K.

████████████████ presented to the Kool Smiles clinic in Mission, Texas on multiple occasions in 2009 and 2010. He was examined and treated by Kool Smiles' dentists including DR. THOMAS. After examination and radiographs, DR. THOMAS represented to Plaintiff that ██████ had multiple cavities and that teeth I, K, & L necessitated stainless steel crowns. No sedation was administered. ██████ was physically restrained to a papoose board and physically held down. On July 29, 2009, DR. THOMAS injected local anesthetic and then prepared three (3) baby teeth I, L, & K for, and cemented, stainless steel crowns. During the operative procedures Francisco was crying, screaming, and struggling. On February 15, 2010, another dentist injected local anesthetic and then prepared two (2) baby teeth A & J for, and cemented, stainless steel crowns. KOOL SMILES billed and collected Medicaid for its dental services and procedures, many of which were not necessary.

██████, a 5 year old boy, presented to the Kool Smiles clinic in McAllen, Texas in 2009. He was examined and treated by Kool Smiles' dentists, including DR. HO. After examination and radiographs, a dentist represented to Plaintiff that ██████ had multiple cavities and in A, B, S, & T which necessitated stainless steel crowns. No sedation was administered. ██████ was physically restrained to a papoose board and physically held down. DR. HO injected local anesthetic and then prepared four (4) baby teeth A, B, S, & T for, and cemented, stainless steel crowns. During the operative procedures ██████ was crying, screaming, struggling, and lost control of his bladder. KOOL SMILES billed and collected Medicaid for its dental services and procedures, many of which were not necessary.

## VII.
### DEFENDANT KOOL SMILES' VICARIOUS LIABILITY FOR THE NEGLIGENCE OF THE DENTISTS WHO PROVIDED DENTAL SERVICES TO PLAINTIFFS' MINOR CHILDREN

NCDR and DENTISTRY OF BROWNSVILLE are liable for the negligence of DR. CHANDESH, DR. HO, DR. MANWARING, AND DR. THOMAS because at all times relevant hereto, said dentists who provided the dental treatment to Plaintiffs' minor children were employees, borrowed servants, actual agents, apparent agents or ostensible agents of NCDR and/or DENTISTRY OF BROWNSVILLE acting within the course and scope of their employment or agency.

## VIII.
### DEFENDANT KOOL SMILES' NEGLIGENCE

KOOL SMILES, by and through its employees and agents including, but not limited to, DRS. CHANDESH, HO, MANWARING & THOMAS, owed a general duty of care to Plaintiffs' minor children to provide dental services in conformity with the applicable minimum standards of care which required them to exercise ordinary care, that is to do that which dentists of ordinary prudence would have done under the same or similar circumstances. KOOL SMILES breached its duties by engaging in the following acts and/or omissions to act:

1. failing to reasonably and prudently train and supervise DRS. CHANDESH, HO, MANWARING & THOMAS' examinations, interpretation of radiographs, treatment plans, and performance of dental procedures on pediatric patients;
2. training DRS. CHANDESH, HO, MANWARING & THOMAS to use physical restraints which were not indicated and using such without use of sedation;
3. discouraging DRS. CHANDESH, HO, MANWARING & THOMAS from referring pediatric patients necessitating extensive dental operative procedures to pediatric dentists and in establishing quotas for the maximum percentage of pediatric patients they could refer;
4. encouraging DRS. CHANDESH, HO, MANWARING & THOMAS to perform unnecessary and excessive dental procedures by establishing quotas based solely upon production and revenue rather than the well-being of the minor Plaintiffs;

5. retention of DRS. CHANDESH, HO, MANWARING & THOMAS when their services were known or with the exercise of ordinary care, should have been known to be below the standard of care; and

6. engaging in the management, operation, and control of KOOL SMILES clinics.

Such acts and/or omissions to act of KOOL SMILES, whether taken singularly or collectively, constitute negligence and a direct and proximate cause of the injuries and damages of Plaintiffs' minor children, for which they herein seek recovery.

## IX.
## DEFENDANT DR. CHANDESH'S NEGLIGENCE

DR. CHANDESH owed a general duty of care to Plaintiffs' minor children to provide dental services in conformity with the applicable minimum standards of care which required her to exercise ordinary care, that is to do that which a dentist of ordinary prudence would have done under the same or similar circumstances. DR. CHANDESH breached her duties by engaging in the following acts and/or omissions to act:

1. misdiagnosing the existence of cavities;
2. performing dental procedures which were not necessary and/or were excessive;
3. failing to perform the procedures with utilization of the least restrictive means;
4. unnecessarily restraining patients;
5. restraining patients without sedation;
6. failing to refer patients to pediatric dentists;
7. performing procedures and dental services to meet production and financial quotas rather than meet the needs of patients; and
8. failing to perform the operative procedures in conformance to the minimum standard of care.

Such acts and/or omissions to act of DR. CHANDESH, whether taken singularly or collectively, constitute negligence and a direct and proximate cause of the injuries and damages of Plaintiffs' minor children, for which they herein seek recovery.

## X.
## DEFENDANT DR. HO'S NEGLIGENCE

DR. HO owed a general duty of care to Plaintiffs' minor children to provide dental services in conformity with the applicable minimum standards of care which required him to exercise ordinary care, that is to do that which a dentist of ordinary prudence would have done under the same or similar circumstances. DR. HO breached his duties by engaging in the following acts and/or omissions to act:

1. misdiagnosing the existence of cavities;
2. performing dental procedures which were not necessary and/or were excessive;
3. failing to perform the procedures with utilization of the least restrictive means;
4. unnecessarily restraining patients;
5. restraining patients without sedation;
6. failing to refer patients to pediatric dentists;
7. performing procedures and dental services to meet production and financial quotas rather than meet the needs of patients; and
8. failing to perform the operative procedures in conformance to the minimum standard of care.

Such acts and/or omissions to act of DR. HO, whether taken singularly or collectively, constitute negligence and a direct and proximate cause of the injuries and damages of Plaintiffs' minor children, for which they herein seek recovery.

## XI.
## DEFENDANT DR. MANWARING'S NEGLIGENCE

DR. MANWARING owed a general duty of care to Plaintiffs' minor children to provide dental services in conformity with the applicable minimum standards of care which required him to exercise ordinary care, that is to do that which a dentist of ordinary prudence would have done under the same or similar circumstances. DR. MANWARING breached his duties by engaging in the following acts and/or omissions to act:

1. misdiagnosing the existence of cavities;
2. performing dental procedures which were not necessary and/or were excessive;
3. failing to perform the procedures with utilization of the least restrictive means;

4. unnecessarily restraining patients;
5. restraining patients without sedation;
6. failing to refer patients to pediatric dentists;
7. performing procedures and dental services to meet production and financial quotas rather than meet the needs of patients; and
8. failing to perform the operative procedures in conformance to the minimum standard of care.

Such acts and/or omissions to act of DR. MANWARING, whether taken singularly or collectively, constitute negligence and a direct and proximate cause of the injuries and damages of Plaintiffs' minor children, for which they herein seek recovery.

## XII.
## DEFENDANT DR. THOMAS' NEGLIGENCE

DR. THOMAS owed a general duty of care to Plaintiffs' minor children to provide dental services in conformity with the applicable minimum standards of care which required him to exercise ordinary care, that is to do that which a dentist of ordinary prudence would have done under the same or similar circumstances. DR. THOMAS breached his duties by engaging in the following acts and/or omissions to act:

1. misdiagnosing the existence of cavities;
2. performing dental procedures which were not necessary and/or were excessive;
3. failing to perform the procedures with utilization of the least restrictive means;
4. unnecessarily restraining patients;
5. restraining patients without sedation;
6. failing to refer patients to pediatric dentists;
7. performing procedures and dental services to meet production and financial quotas rather than meet the needs of patients; and
8. failing to perform the operative procedures in conformance to the minimum standard of care.

Such acts and/or omissions to act of DR. THOMAS, whether taken singularly or collectively, constitute negligence and a direct and proximate cause of the injuries and damages of Plaintiffs' minor children, for which they herein seek recovery.

25

## XIII.
## GROSS NEGLIGENCE

The negligent acts and/or omissions to act of KOOL SMILES and DRS. CHANDESH, HO, MANWARING & THOMAS specified in paragraphs VIII - XII above, constitute more than momentary thoughtlessness, inadvertence or error of judgment. Such negligence demonstrates such an entire want of care as to establish that the acts and/or omissions to act were the result of actual conscious indifference to the rights, welfare or safety of Plaintiffs. Such gross negligence was a proximate cause of Plaintiffs' minor children's injuries and damages and, thus, Plaintiffs seek recovery of punitive or exemplary damages.

## XIV.
## CIVIL CONSPIRACY

Prior to the rendition of dental services to Plaintiffs' minor children, KOOL SMILES and DRS. CHANDESH, HO, MANWARING & THOMAS conspired to, and did, engage in a routine plan, scheme, course and pattern of practice to over-diagnose and over-treat children, including Plaintiffs' minor children, to enable them to fulfill their production and revenue goals. Said Defendants had a meeting of their minds in regards to their routine plan, scheme, course, and pattern of practice which had an unlawful purpose or a lawful purpose to be accomplished by unlawful means. More specifically, the purpose of their plan was to breach their legal duties to Plaintiffs' minor children and violate the Medicaid regulations to profit financially from their wrongful acts and/or omissions to act. Said civil conspiracy was a direct and proximate cause of Plaintiffs' minor children's injuries and damages.

## XV.
## FRAUD

KOOL SMILES and DRS. CHANDESH, HO, MANWARING & THOMAS were in a special relationship of trust and confidence with Plaintiffs and their minor children. KOOL

26

SMILES, by owning, managing, operating, and/or controlling the dental clinics, had a duty to provide honest information and opinions in regards to Plaintiffs' minor children's diagnoses, the treatment necessary, and reasonable alternatives. DRS. CHANDESH, HO, MANWARING & THOMAS had a duty as a professional to be honest and forthright with Plaintiffs in regards to their children's diagnoses, the treatment necessary, and reasonable alternatives. Plaintiffs relied upon and trusted Defendants. Defendants took undue and unconscionable advantage of Plaintiffs by making material representations regarding the existence, location, size, and number of cavities, the necessity for pulpotomies, the necessity for stainless steel crowns, the necessity for physical restraints, and the services provided. Such representations were false and Defendants were aware of the falsity at the time of such representations. Said misrepresentations were made with the intent of inducing Plaintiffs to obtain and consent to Defendants' dental services. Plaintiffs reasonably and justifiably relied upon said material misrepresentations, which are a direct and proximate cause of the injuries and damages of Plaintiffs' minor children for which Plaintiffs herein seeks recovery.

## XVI.
## DAMAGES

As a direct and proximate cause of the negligent acts and/or omissions to act, gross negligence, civil conspiracy, and/or fraud of Defendants, Plaintiffs' minor children sustained injuries and damages. More specifically, Plaintiffs' minor children have suffered physical and mental pain and anguish and disfigurement in the past, and in reasonable probability, will continue to sustain physical and mental pain and anguish and disfigurement in the future.

KOOL SMILES and DRS. CHANDESH, HO, MANWARING & THOMAS should be further held accountable for punitive or exemplary damages. The nature of Defendants' wrong is horrific because said Defendants took advantage of, and caused injury to, children who were

their patients for the purpose of financial gain. The character of Defendants' conduct is offensive and the degree of their culpability is substantial as demonstrated by their routine plan, scheme, and pattern and practice of financially gaining by soliciting and performing excessive treatment upon children insured by Medicaid. Defendants' conduct offends our public's sense of justice and propriety. Based upon the net worth of Defendants, substantial exemplary or punitive damages should be awarded.

Therefore, Plaintiffs seek recovery of punitive damages in whatever amount a jury in its sole discretion decides is adequate to punish Defendants for their gross negligence, civil conspiracy, and/or fraud.

## XVII.
## NOTICE

Plaintiffs would further show that on or about April 3, 2012, May 24, 2012, June 6, 2012, June 8, 2012, June 15, 2012, June 18, 2012, June 28, 2012, and August 15, 2012, more than sixty (60) days prior to filing of this cause, written notice of said claims were provided by certified mail return receipt requested to Defendant Dentistry of Brownsville, P.C. On or about July 16, 2012, July 18, 2012, and September 12, 2012, more than sixty (60) days prior to filing of this cause, written notice of said claims were provided by certified mail return receipt requested to Defendant NCDR, LLC. On or about June 29, 2012 and July 25, 2012, more than sixty (60) days prior to filing of this cause, written notice of said claims were provided by certified mail return receipt requested to Defendant Aishwarya K. Chandesh, D.D.S. On or about June 29, 2012, more than sixty (60) days prior to filing of this cause, written notice of said claims were provided by certified mail return receipt requested to Defendant Edward Ho, D.D.S. On or about June 29, 2012, more than sixty (60) days prior to filing of this cause, written notice of said claims were provided by certified mail return receipt requested to Defendant Richard I. Manwaring, D.D.S.

28

On or about June 29, 2012, more than sixty (60) days prior to filing of this cause, written notice of said claims were provided by certified mail return receipt requested to Defendant Marc D. Thomas, D.D.S. Plaintiffs otherwise fully complied with the notice provisions pursuant to Section 74.051 of Chapter 74 of the Texas Civil Practice and Remedies Code.

WHEREFORE PREMISES CONSIDERED, Plaintiffs PAULA ANTU AS NEXT FRIEND OF ███████████████████, A MINOR; SCARLETT AYALA AS NEXT FRIEND OF ███████████, A MINOR; GUADALUPE CEPEDA AS NEXT FRIEND OF ████████████, A MINOR; ANA LAURA CORNEJO AS NEXT FRIEND OF ████ ████████████, A MINOR; MARIO CUELLAR AND PRISCILLA TRUJILLO AS NEXT FRIENDS OF ████████████, A MINOR; PEDRO DE LEON AND ELIZABETH DE LEON AS NEXT FRIENDS OF ████████████, A MINOR; MARIA GAYTÁN AS NEXT FRIEND OF ██████████████., A MINOR; ELIZABETH GONZALEZ AND MARCO REYES AS NEXT FRIENDS OF ████████████, A MINOR; FRANCISCA GUZMAN AS NEXT FRIEND OF ███████████, A MINOR; KARINA HERNANDEZ AS NEXT FRIEND FOR ██████████, A MINOR; ISMAEL MALDONADO AND ISABEL MALDONADO AS NEXT FRIENDS OF ███████████████, A MINOR; FREISI OLIVAR AS NEXT FRIEND OF █████████████, A MINOR; MARY ROSALES AS NEXT FRIEND OF ████████████, A MINOR; REYNOL SALINAS AS NEXT FRIEND OF ██████████████., A MINOR; AND ROBERT VELIZ AND NAISSA VELIZ AS NEXT FRIENDS OF ███████████, A MINOR, request that Defendants NCDR, LLC, Dentistry of Brownsville, P.C., Aishwarya K. Chandesh, D.D.S., Edward Ho, D.D.S., Richard I Manwaring, D.D.S., and Marc D. Thomas, D.D.S. be served with citation and a copy of Plaintiffs' Original Petition ordering they appear and answer herein and that upon final trial, they

have and recover judgment in their favor and against Defendants, jointly and severally, for the following:

1. actual damages within the jurisdictional limits of this Court;
2. punitive or exemplary damages;
3. prejudgment interest at the maximum rate allowed by law;
4. postjudgment interest at the maximum rate allowed by law;
5. costs of suit; and
6. such other and further relief at law or in equity, general or special, to which Plaintiffs may be deemed entitled.

Respectfully submitted,

MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 401 South
San Antonio, Texas 78215
Telephone: 210.354.3377
Telecopier: 210.354.3909

By: _____
George W. Mauzé, II
State Bar No. 13238800
Tom Bagby
State Bar No. 24059409

GUERRA, LEEDS, SABO & HERNANDEZ, PLLC
10213 N. 10th St.
McAllen, Texas 78504
Telephone: 956.383.4300
Telecopier: 956.383.4304

By: _____
R.D. "Bobby" Guerra
State Bar No. 08578640

ATTORNEYS FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

|  |  |  |
|---|---|---|
| NCDR, L.L.C.; DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES; and KS2 TX, P.C. d/b/a KOOL SMILES; | § § § § § | |
| Plaintiffs, | § § | Case No. 5:12-cv-36 |
| v. | § § | JURY TRIAL DEMANDED |
| MAUZÉ & BAGBY, PLLC;  GEORGE WATTS MAUZÉ II; and JAMES THOMAS BAGBY III; | § § § § § | |
| Defendants. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT FOR DAMAGES

Plaintiffs NCDR, L.L.C.; Dentistry of Brownsville, P.C. d/b/a Kool Smiles; and KS2 TX, P.C. d/b/a Kool Smiles (collectively, "Kool Smiles" or "Plaintiffs"), by way of this Complaint that they file against Defendants Mauzé & Bagby, PLLC; George Watts Mauzé II ("Mauzé"); and James Thomas Bagby III ("Bagby") (collectively, "Defendants") show as follows:

### NATURE OF THE ACTION

1.     This is an action for damages premised on Plaintiffs' claims for defamation, business disparagement, trademark infringement, false advertising (designation of origin), cyberpiracy prevention (anti-cybersquatting), injury to business reputation, and trademark dilution in which Plaintiffs seek injunctive relief, damages, and attorneys' fees.



business, Mauzé & Bagby, PLLC, 2632 Broadway, Suite 402 South, San Antonio, Texas 78125; or anywhere else he may be found.

## JURISDICTION AND VENUE

8.     Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this is a civil action that arises under the Constitution, laws, or treaties of the United States.  This civil action arises under the Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1051, including Section 32(1), or 15 U.S.C. § 1114(1), for infringement of a registered mark; and for violations of Sections 43(a) and 43(d), or 15 U.S.C. §§ 1125(a) and (d), for false advertising (designation of origin) and cyberpiracy prevention (anti-cybersquatting).

9.     This Court also has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(a).

10.     Defendant Mauzé & Bagby, PLLC is subject to personal jurisdiction because it is incorporated in the State of Texas, its principal place of business is located in the State of Texas, and it regularly conducts business within the State of Texas.

11.     Defendant Mauzé is subject to personal jurisdiction because he resides in and regularly conducts business within the State of Texas.

12.     Defendant Bagby is subject to personal jurisdiction because he resides in and regularly conducts business within the State of Texas.

13.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events at issue occurred in this district.  On information and belief, the advertisements and website at issue in this Complaint were either broadcast or made accessible by Defendants in Laredo, Texas, where clinics owned, managed, and operated by Plaintiffs are located.  Defendants also made statements similar to those made in their advertisements in a

3

Cause No.  C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU AS NEXT FRIEND OF ███████, A MINOR; SCARLETT AYALA AS NEXT FRIEND OF ███████, A MINOR; GUADALUPE CEPEDA AS NEXT FRIEND OF ███████, A MINOR; ANA LAURA CORNEJO AS NEXT FRIEND OF ███████ ███, A MINOR; MARIO CUELLAR AND PRISCILLA TRUJILLO AS NEXT FRIENDS OF ███████, A MINOR; MARIA GAYTAN AS NEXT FRIEND OF ███████., A MINOR; ELIZABETH GONZALEZ AND MARCO REYES AS NEXT FRIENDS OF ███████, A MINOR; FRANCISCA GUZMAN AS NEXT FRIEND OF ███████, A MINOR; ISMAEL MALDONADO AND ISABEL MALDONADO AS NEXT FRIENDS OF ███████, A MINOR; FREISI OLIVAR AS NEXT FRIEND OF ███████, A MINOR; MARY ROSALES AS NEXT FRIEND OF ███████, A MINOR; AND REYNOL SALINAS AS NEXT FRIEND OF ███████ ██, A MINOR | § § § § § § § § § § § § § § § § § § § § § § § § § § | IN THE DISTRICT COURT |
| | § § § § | |
| Plaintiffs, | § § § | |
| v. | § § § | |
| NCDR, LLC d/b/a KOOL SMILES; DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES; AISHWARYA K. CHANDESH, D.D.S.; EDWARD HO, D.D.S.; RICHARD MANWARING, D.D.S.; AND MARC D. THOMAS, D.D.S. | § § § § § § § § § | 370TH JUDICIAL DISTRICT |
| Defendants. | | HIDALGO COUNTY, TEXAS |

## DEFENDANTS' ORIGINAL ANSWER TO PLAINTIFFS' ORIGINAL PETITION

Defendants NCDR, LLC, Dentistry of Brownsville, P.C., Aishwarya K. Chandesk, DDS, Edward Ho, DDS, Richard Manwaring, DDS, and Marc Thomas, DDS (hereinafter collectively "Defendants") file this Original Answer to Plaintiffs' Original Petition, including Special Exceptions, Verified Denial, General Denial, and Defenses, and respectfully states as follows:

## I.
## SPECIAL EXCEPTIONS

Texas law requires that pleadings give fair and adequate notice of the facts upon which a party relies so that the other party may properly prepare a defense. *Murray v. O & A Express, Inc.*, 630 S.W.2d 633, 636 (Tex. 1982). The purpose of special exceptions is to inform the opposing party of defects in its pleadings so the party may cure them, if possible, by amendment. *Horizon v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000). Defendants specially except to Plaintiffs' Original Petition as follows and request the Court order Plaintiffs to replead and cure their pleading defects and, if Plaintiffs do not cure their defects, strike Plaintiffs' pleading:

1.     Pursuant to Texas Rule of Civil Procedure 47, Defendants specially except and object to Plaintiffs' allegations regarding damages in Plaintiffs' Original Petition because Plaintiffs fail to state the maximum amount for which suit is brought in each category of alleged damages. Defendants request the Court order Plaintiffs to replead and cure their pleading defects and, if Plaintiffs do not cure their defects, dismiss the action.

2.     Defendants NCDR, LLC and Dentistry of Brownsville, P.C. specially except to sections V (A) and (B) of Plaintiffs' Original Petition because it fails to state a viable cause of action against Defendants. TEX. R. CIV. P. 91 (West 2011). Specifically, Texas does not recognize a private cause of action for the unauthorized practice of dentistry and, plaintiffs do not assert any cause of action to which any allegation of the unauthorized practice of dentistry would be relevant. Consequently, all allegations regarding the corporate practice of dentistry are extraneous and should be stricken. Because this defect cannot be cured by a pleading

amendment, Defendants hereby request that these claims be dismissed and stricken from Plaintiffs' Original Petition.

3. Defendants NCDR, LLC and Dentistry of Brownsville, P.C. specially except to sections V (C), (E) and (F) of Plaintiffs' Original Petition because Plaintiffs have failed to plead the necessary elements for this cause of action. TEX. R. CIV. P. 91 (West 2011). Specifically, Plaintiffs allege that Defendants implemented a "plan or scheme" to bilk the Medicaid system. Plaintiffs, however, have failed to plead any harm or allege any damages suffered by them as a result of this alleged "plan or scheme." Consequently, all allegations relating to any plan or scheme to defraud the Medicaid system are extraneous and should be stricken. Because this defect cannot be cured by a pleading amendment, Defendants hereby request that these allegations be dismissed and stricken from Plaintiffs' Original Petition.

## II.
## VERIFIED DENIAL

Pursuant to the provisions of Rule 93 of the Texas Rules of Civil Procedure, Defendant NCDR, LLC denies that it is doing business under an assumed name. Defendant specifically denies that it "affirmatively holds [itself] out as doing business as Kool Smiles" as alleged by Plaintiffs. Defendant is a separate legal entity, which owns the "Kool Smiles" trademark, but does not do business as or under the "Kool Smiles" trademark. As such, NCDR, LLC cannot be sued "in all of [its] business and professional names operating under the name Kool Smiles."

## III.
## GENERAL DENIAL

Defendants hereby enter a general denial, as permitted by Rule 92 of the Texas Rules of Civil Procedure, and request that Plaintiffs be required to prove by a preponderance of the evidence the charges and allegations made against them.

# IV.
## DEFENSES

Further answering, Defendants assert the following defenses:

1. Plaintiffs' injuries and damages, if any, were caused entirely or in part by acts, omissions, and/or negligence of a third party or parties for whose acts Defendants are in no way liable or responsible and over whom Defendants had no control. Among other things, some of the patients were treated by other dentists.

2. Defendants hereby assert all rights arising pursuant to the proportionate responsibility and contribution statutes including offset and/or contribution from other parties found responsible, and credit for any settlements made in this action.

3. If Plaintiffs were injured or damaged, which alleged injuries or damages are denied, the alleged injuries or damages were caused solely by new, independent, and/or superseding causes, intervening acts, events, conditions, or circumstances, or by other forces over which Defendants had no control and for which Defendants are not responsible and liable.

4. Defendants affirmatively invoke the limits of liability provided under Texas Revised Civil Statutes Annotated, article 4590i, including but not limited to those limits set forth in §§ 11.01 through 11.05 and/or Texas Civil Practice and Remedies Code, Chapter 74, including but not limited to those limits set forth in §§ 74.301 through 74.303.

5. Plaintiffs' claims are barred or reduced under the principles of informed consent.

6. Further answering, subject to further investigation and discovery, Defendants reserve the right to plead, allege and state any other defenses which may be appropriate.

# V.
## REQUEST FOR DISCLOSURES

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendants request that Plaintiffs disclose, within thirty (30) days of the service of this request, the information or material described in Rule 194.2 (a)-(l).

WHEREFORE, PREMISES CONSIDERED, Defendants pray that the Special Exceptions be sustained and that Plaintiffs be ordered to promptly replead and, if Plaintiffs do not cure the defects, that the Court strike Plaintiffs' pleading, and that, upon final hearing hereof, judgment be rendered that Plaintiffs take nothing by their suit, that Defendants recover their costs, and for such other relief, both at law and at equity, to which Defendants may show themselves justly entitled.

Respectfully Submitted,

_Wayne B. Mason / by permission CCS_

WAYNE B. MASON
State Bar No. 13158950
ALAN R. VICKERY
State Bar No. 20571650
CORI C. STEINMANN
State Bar No. 24046908
SEDGWICK LLP
1717 Main Street, Suite 5400
Dallas, TX 75201-7367
Telephone: (469) 227-8200
Facsimile: (469) 227-8004

Eduardo R. Rodriguez
State Bar No. 00000080
ATLAS, HALL & RODRIGUEZ, L.L.P.
50 W. Morrison Road, Suite A
Brownsville, TX 78520
Telephone: (956) 574-9333
Facsimile:  (956) 574-9337

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record via certified mail, return receipt requested, on the ___19th___ day of February 2013.

_Wayne B. Mason / by permission CCS_

WAYNE B. MASON

| | | |
|---|---|---|
| PAULA ANTU AS NEXT FRIEND OF ███████████████, A MINOR; SCARLETT AYALA AS NEXT FRIEND OF ██████████, A MINOR; GUADALUPE CEPEDA AS NEXT FRIEND OF ████████████, A MINOR; ANA LAURA CORNEJO AS NEXT FRIEND OF ██████████ ████████, A MINOR; MARIO CUELLAR AND PRISCILLA TRUJILLO AS NEXT FRIENDS OF ██████████████, A MINOR; MARIA GAYTAN AS NEXT FRIEND OF █████████████████, A MINOR; ELIZABETH GONZALEZ AND MARCO REYES AS NEXT FRIENDS OF ███████████, A MINOR; FRANCISCA GUZMAN AS NEXT FRIEND OF ██████████, A MINOR; ISMAEL MALDONADO AND ISABEL MALDONADO AS NEXT FRIENDS OF ████████████, A MINOR; FREISI OLIVAR AS NEXT FRIEND OF ███████████ A MINOR; MARY ROSALES AS NEXT FRIEND OF █████████████, A MINOR; AND REYNOL SALINAS AS NEXT FRIEND OF ████████████, ██, A MINOR<br><br>        Plaintiffs,<br><br>v.<br><br>NCDR, LLC d/b/a KOOL SMILES; DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES; AISHWARYA K. CHANDESH, D.D.S.; EDWARD HO, D.D.S.; RICHARD MANWARING, D.D.S.; AND MARC D. THOMAS, D.D.S.<br><br>        Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>370TH JUDICIAL DISTRICT<br><br><br><br><br><br><br><br><br><br><br><br><br><br>HIDALGO COUNTY, TEXAS |

## VERIFICATION OF TOM NANCE

STATE OF GEORGIA                    §
                                    §
COUNTY OF FULTON                    §

TOM NANCE, being duly sworn, proposed and avers as follows:

"I have read Defendants' Original Answer and I am familiar with the contents thereof. The Answer was prepared by myself and my attorney, upon whose advice I have relied. To the best of my knowledge and belief, the information contained in the Verified Denial, as part of Defendants' Original Answer, are true and accurate."

TOM NANCE,
CFO NCDR,LLC

SUBSCRIBED AND SWORN before me on this 19th day of February, 2013.

Notary Public

VERIFICATION OF TOM NANCE

Cause No: C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU AS NEXT FRIEND OF ▮▮▮▮▮▮▮▮▮▮▮▮▮, A MINOR; SCARLETT AYALA AS NEXT FRIEND OF ▮▮▮▮▮▮▮▮, A MINOR; GUADALUPE CEPEDA AS NEXT FRIEND OF ▮▮▮▮▮▮▮, A MINOR; ANA LAURA CORNEJO AS NEXT FRIEND OF ▮▮▮▮▮▮▮▮▮▮, A MINOR; MARIO CUELLAR AND PRISCILLA TRUJILLO AS NEXT FRIENDS OF ▮▮▮ ▮▮▮▮, A MINOR; MARIA GAYTÁN AS NEXT FRIEND OF ▮▮▮▮▮▮▮▮▮ A MINOR; ELIZABETH GONZALEZ AND MARCO REYES AS NEXT FRIENDS OF ▮▮▮▮▮ ▮▮▮, A MINOR; FRANCISCA GUZMAN AS NEXT FRIEND OF ▮▮▮▮▮▮▮, A MINOR; ISMAEL MALDONADO AND ISABEL MALDONADO AS NEXT FRIENDS OF ▮▮▮▮▮▮▮, A MINOR; FREISI OLIVAR AS NEXT FRIEND OF ▮▮▮▮▮▮▮▮ A MINOR; MARY ROSALES AS NEXT FRIEND OF ▮▮▮▮▮▮▮, A MINOR; AND REYNOL SALINAS AS NEXT FRIEND OF ▮▮▮▮▮▮▮▮▮., A MINOR. **PLAINTIFFS,**<br><br>V.<br><br>NCDR, LLC d/b/a KOOL SMILES; DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES; KOOL SMILES, P.C.; AISHWARYA K. CHANDESH, D.D.S.; EDWARD HO, D.D.S.; RICHARD I. MANWARING, D.D.S.; AND MARC D. THOMAS, D.D.S. **DEFENDANTS.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT<br><br><br><br><br><br><br><br><br><br><br>370th JUDICIAL DISTRICT<br><br><br><br><br><br><br><br><br><br><br><br>HIDALGO COUNTY, TEXAS |

## PLAINTIFFS' FOURTH AMENDED ORIGINAL PETITION

**TO THE HONORABLE NOE GONZALEZ, JUDGE PRESIDING:**

1

COME NOW Plaintiffs PAULA ANTU AS NEXT FRIEND OF ███████████ A MINOR; SCARLETT AYALA AS NEXT FRIEND OF ██████████, A MINOR; GUADALUPE CEPEDA AS NEXT FRIEND OF ██████████, A MINOR; ANA LAURA CORNEJO AS NEXT FRIEND OF ████████████, A MINOR; MARIO CUELLAR AND PRISCILLA TRUJILLO AS NEXT FRIENDS OF █████ ███████, A MINOR; MARIA GAYTÁN AS NEXT FRIEND OF ████████████, ███, A MINOR; ELIZABETH GONZALEZ AND MARCO REYES AS NEXT FRIENDS OF ███████████, A MINOR; FRANCISCA GUZMAN AS NEXT FRIEND OF ████, A MINOR; ISMAEL MALDONADO AND ISABEL MALDONADO AS NEXT FRIENDS OF ████████████, A MINOR; FREISI OLIVAR AS NEXT FRIEND OF ██████████ A MINOR; MARY ROSALES AS NEXT FRIEND OF ████████, A MINOR; AND REYNOL SALINAS AS NEXT FRIEND OF █████████ ██., A MINOR, (hereinafter referred to collectively as "Plaintiffs") and file Plaintiffs' Fourth Amended Original Petition complaining of NCDR, LLC d/b/a KOOL SMILES (hereinafter referred to as "NCDR"), KOOL SMILES, P.C. (hereinafter referred to as "KOOL SMILES, P.C."), DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES (hereinafter referred to as "DENTISTRY OF BROWNSVILLE") (Defendants NCDR, KOOL SMILES, P.C., and DENTISTRY OF BROWNSVILLE collectively referred to as "KOOL SMILES"), AISHWARYA K. CHANDESH, D.D.S. (hereinafter referred to as "DR. CHANDESH"), EDWARD HO, D.D.S. (hereinafter referred to as "DR. HO"), RICHARD I. MANWARING, D.D.S. (hereinafter referred to as "DR. MANWARING"), and MARC D. THOMAS, D.D.S. (hereinafter referred to as "DR. THOMAS) (all Defendants are hereinafter collectively referred

to as "DEFENDANTS") and for causes of action would show unto this Honorable Court as follows:

## I.
## DISCOVERY CONTROL PLAN

Pursuant to Texas Rules of Civil Procedure 190, discovery in this case is intended to be conducted under Level 3.

## II.
## PARTIES



Plaintiff PAULA ANTU is an individual and the natural parent of ███████████ ███████ Plaintiff brings this suit as next friend of ████████████████, a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

Plaintiff SCARLETT AYALA is an individual and the natural parent of ████████ ██████, Plaintiff brings this suit as next friend of ██████████████, a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

Plaintiff GUADALUPE CEPEDA is an individual and the natural parent of ████████ █████ Plaintiff brings this suit as next friend of █████████████, a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

Plaintiff ANA LAURA CORNEJO is an individual and the natural parent of █████ ████████████████, Plaintiff brings this suit as next friend of ██████████ ███████████ a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

Plaintiffs MARIO CUELLAR AND PRISCILLA TRUJILLO are individuals and the natural parents of ██████████████. Plaintiffs bring this suit as next friends of ███████ ██████████, a minor. At all times relevant to this lawsuit, Plaintiffs resided in Hidalgo County, Texas.

Plaintiff MARIA GAYTÁN is an individual and the natural parent of ██████████ ████████ Plaintiff brings this suit as next friend of ████████████████ ██ a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

Plaintiffs ELIZABETH GONZALEZ AND MARCO REYES are individuals and the natural parents of ███████████████. Plaintiffs bring this suit as next friends of ██████████████ a minor. At all times relevant to this lawsuit, Plaintiffs resided in Hidalgo County, Texas.

Plaintiff FRANCISCA GUZMAN is an individual and the natural parent of ████ ███████. Plaintiff brings this suit as next friend of ████████████, a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

Plaintiffs ISMAEL MALDONADO AND ISABEL MALDONADO are individuals and the natural parents of ██████████████. Plaintiffs bring this suit as next friends of ███████████████, a minor. At all times relevant to this lawsuit, Plaintiffs resided in Hidalgo County, Texas.

Plaintiff FREISI OLIVAR is an individual and the natural parent of ███████████, II. Plaintiff brings this suit as next friend of ████████████, II, a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

Plaintiff MARY ROSALES is an individual and the natural parent of ██████████ ████████. Plaintiff brings this suit as next friend of ████████████, a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

Plaintiff REYNOL SALINAS is an individual and the natural parent of ██████████ ████████ Plaintiff brings this suit as next friend of ███████████████ a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

4

Defendant NCDR is, and at all times relevant to this lawsuit has been, a limited liability company formed in the State of Delaware with its principal office in Marietta, Georgia. NCDR is registered and duly authorized to transact business in the State of Texas. Said Defendant has appeared and answered herein.

Defendant DENTISTRY OF BROWNSVILLE is, and at all times relevant to this lawsuit has been, a professional corporation incorporated in the State of Texas. Said Defendant has appeared and answered herein.

Defendant KOOL SMILES, P.C. is, and at all times relevant to this lawsuit has been, a professional corporation incorporated in the State of Georgia. Said Defendant has appeared and answered herein.

Defendant DR. CHANDESH is an individual licensed to practice dentistry in the State of Texas. Said Defendant has appeared and answered herein.

Defendant DR. HO is an individual licensed to practice dentistry in the State of Texas. Said Defendant has appeared and answered herein.

Defendant DR. MANWARING is an individual licensed to practice dentistry in the State of Texas. Said Defendant has appeared and answered herein.

Defendant DR. THOMAS is an individual licensed to practice dentistry in the State of Texas. Said Defendant has appeared and answered herein.

### III.
### VENUE AND JURISDICTION

Venue properly rests in Hidalgo County, Texas, because such county is the county in which the Kool Smiles dental clinics, which treated the minor Plaintiffs, are located, the county in which most of the occurrences which give rise to this suit arose, and the county in which DR.

5

CHANDESH resides. This Court has jurisdiction because the amount in controversy exceeds the minimum jurisdictional limits of this Court.

## IV.
## NCDR IS ENGAGED IN THE CORPORATE PRACTICE OF DENTISTRY

### A. The Corporate Practice of Dentistry Is Strictly Prohibited In The State Of Texas.

Texas law prohibits a person not licensed to practice dentistry in Texas from owning, maintaining, operating, and/or controlling an office or place of business in which that person employs or engages, under any type of contract, another person to practice dentistry. Texas law further prohibits a person not licensed to practice dentistry in Texas from controlling, influencing, attempting to control or influence, or otherwise interferring with a dentist's professional judgment. TEX. OCC. CODE. ANN. §251.003(a). A violation of this statute is a felony.

### B. NCDR Manages, Operates, And/Or Controls The Kool Smiles Dental Clinics.

NCDR owns, maintains, operates, and/or controls more than one hundred (100) dental clinics doing business as Kool Smiles throughout the United States including the clinics in McAllen, Mission, and Weslaco, Texas. As confirmed by a judicial admission of NCDR and Dentistry of Brownsville, in their Original Complaint in NCDR, LLC, et al v. Mauzé & Bagby, PLLC, et al, case number 5:12-cv-36 pending in the United States District Court, Laredo Division wherein KOOL SMILES (which Plaintiffs expressly state collectively refers to NCDR, L.L.C., Dentistry of Brownsville, P.C. d/b/a KOOL SMILES and KS2 TX, P.C. d/b/a KOOL SMILES) the clinics are "owned, managed, and operated by Plaintiffs" (Exhibit "A" – Plaintiffs' Original Complaint, paragraph 13 – page 3). NCDR is not owned, managed, or operated by persons licensed to practice dentistry in Texas but, rather, is owned by entities of which

6

controlling interests are owned by Friedman Fleischer & Lowe, a private equity firm in San Francisco, California.

### C. The Kool Smiles Plan And Scheme.

KOOL SMILES, P.C., NCDR, its parent entities and owners, and DENTISTRY OF BROWNSVILLE, drafted and implemented an elaborate plan and scheme to generate as much taxpayer Medicaid revenue as possible per clinic, per dentist, per patient, and per visit,

To effectuate their plan and scheme, said Defendants elect to primarily prey on the most vulnerable members of our society, i.e., underprivileged, very young children. KOOL SMILES, P.C. hires general dentists, most of whom have recently completed dental school and have very little, if any, experience with pediatric patients. The dentists are assigned to clinics which primarily treat very young pediatric patients. KOOL SMILES, P.C., NCDR, and DENTISTRY OF BROWNSVILLE discourage the dentists from referring pediatric patients to pediatric dentists and their number of referrals are very closely monitored.

Further, KOOL SMILES, P.C. and NCDR closely track and monitor the production of each and every clinic and dentist and sets production goals for each dentist and revenue goals for each clinic. The goals are very specific and are based entirely upon production or collections rather than necessity for treatment or quality of care. For example, dentists are provided targets and instructions regarding the number of quadrants they should work on during each visit of each patient, the number of operative procedures per patient they should perform, and the number of operative procedures per day they should perform. If a dentist fails to reach these production targets, then the dentist is counseled, provided a performance improvement plan instructing said dentist to increase his or her production and specifying how said dentist should increase production, or terminated. If a dentist fails increase production, then the dentist is terminated.

7

KOOL SMILES, P.C. and NCDR train and indoctrinate the dentists to provide aggressive dental care to pediatric patients who have temporary teeth (commonly referred to as "baby teeth"), such as placing stainless steel crowns on teeth which are not indicated because: 1) the caries are so small that they can be simply observed (which will not produce revenue from Medicaid); or 2) the caries are so small that they can be treated with fillings (which will not produce as much revenue from Medicaid as stainless steel crowns); or 3) the teeth will soon exfoliate (fall out which will not produce any revenue from Medicaid).

KOOL SMILES, P.C. and NCDR train the dentists to perform many operative procedures on each patient in the shortest amount of time. To speed up the treatment time and increase production, the children are often physically restrained to papoose boards and physically held down while multiple operative procedures are performed on the same date. KOOL SMILES, P.C. and NCDR prohibit the use of oral conscious sedation, IV sedation, and general anesthesia in the Kool Smiles dental clinics. Thus, the dentists are not certified and/or do not possess permits by the State of Texas to administer oral conscious sedation, IV sedation, or general anesthesia. The decision not to use oral conscious sedation is that it increases treatment time. Therefore, the children undergoing dental operative procedures at Kool Smiles dental clinics do not receive interventions to relieve them of their fear and anxiety associated with dental operative procedures. Furthermore, Kool Smiles discourages the use of nitrous oxide to relieve fear, anxiety, and pain because its use increases treatment time and costs. Although many of the children undergoing dental operative procedures are obviously in distress, the dentists do not refer, defer, or terminate the treatment to relieve their distress but, rather, they restrain the children with papoose boards and otherwise to enable them to fulfill their production and revenue goals rather than fulfill the best interests of the minor children.

8

### D. The Players.

1.     <u>Friedman Fleischer & Lowe.</u>

Friedman Fleischer & Lowe is a private equity firm in San Francisco, California which manages hundreds of millions of dollars belonging to its investors, including large pensions and trusts. One of their investments is identified as "KOOL SMILES." Through some of their board of directors and businesses in which they own a significant interest, they actively participate in the operation and/or control of the dental clinics.

2.     <u>Kool Smiles Acquisition Corp. and Kool Smiles Holding Corp.</u>

Kool Smiles Holding Corp. owns 100% of Kool Smiles Acquisition Corp. Friedman Fleischer & Lowe, through several of its private equity funds, owns a controlling interest in Kool Smiles Holding Corp. Some dentists employed by Kool Smiles, P.C. also own interests in Kool Smiles Holding Corp.

3.     <u>NCDR, LLC.</u>

Through NCDR's board of directors, members of Friedman Fleischer & Lowe actively participate in the operation and control of Kool Smiles dental clinics. NCDR owns the "Kool Smiles" trademarks which are registered for general dentistry services. NCDR exercises substantial operation and/or control over the Kool Smiles dental clinics, such fact demonstrated by the following:

1. NCDR leases the space in which the dental clinics are located;
2. NCDR sub-leases the space to the professional corporations which own the dental clinics;
3. NCDR restricts and controls the sale of the dental clinics;
4. NCDR participates in the tracking and monitoring of the production of the dental clinics and dentists who work at the dental clinics;
5. NCDR participates in setting production quotas and goals for the dentists who work at the dental clinics;
6. NCDR participates in setting production goals for the dental clinics;
7. NCDR participates in setting revenue goals for the dental clinics;

9

8. NCDR recruits and hires dental assistants, office managers, community service personnel, and other personnel who work at the dental clinics;
9. NCDR participates in the hiring, staffing, training, supervision, and termination of dentists who work at the dental clinics;
10. NCDR created and maintains the electronic clinical records;
11. NCDR prepares the invoices, including Medicaid invoices, for the dental clinics;
12. NCDR collects the accounts receivable for the dental clinics;
13. NCDR pays and distributes the accounts payable for the dental clinics;
14. NCDR selects the professional liability insurer and pays the premiums for the dentists who work at the dental clinics;
15. NCDR hires marketing personnel and provides the advertising for the dental clinics;
16. NCDR hires and employs the corporate personnel responsible for marketing, management, and financial operations of the dental clinics;
17. NCDR participates in the writing, implementing, and enforcing of policies, procedures, and protocols for the dental clinics; and
18. NCDR participates in clinical decisions.

4.     Dentistry of Brownsville, P.C. d/b/a Kool Smiles.

DENTISTRY OF BROWNSVILLE is a professional corporation incorporated in the State of Texas. Tu Minh Tran, DDS is the registered owner. DENTISTRY OF BROWNSVILLE purports to own clinics in McAllen, Weslaco, and Mission, Texas. Dr. Tran, and three other dentists, hold themselves out as the owners of all of the KOOL SMILES dental clinics in the United States. Dr. Tran does not reside in the State of Texas and does not practice dentistry, on any regular basis, at any of the KOOL SMILES clinics. The clinics are camouflaged as local clinics formed as professional corporations in Texas owned by dentists licensed in Texas with the intention of giving the public and the government an appearance of compliance with state laws which prohibit the corporate practice of dentistry. The capital necessary to open the dental clinics and the risk associated with the business is borne by NCDR and investors who are not licensed dentists. Further, NCDR controls the sale of any dental clinics and pays the purported owner $100.00 if a sale is permitted by NCDR. This elaborate scheme of multiple layers of entities is simply for no other purpose than to try to circumvent the prohibition against the

10

corporate practice of dentistry. In reality and fact, the KOOL SMILES clinics are owned, maintained, operated, and/or controlled by out-of-state persons not licensed to practice dentistry in the State of Texas who receive substantial revenue from the Kool Smiles dental clinics.

5.    Kool Smiles, P.C.

KOOL SMILES, P.C. is a professional corporation incorporated in the State of Georgia. Its principal place of business is at the same address and in the same office as NCDR. Tu Minh Tran, DDS is the registered owner of KOOL SMILES, P.C. KOOL SMILES, P.C. is not registered to transact business in the State of Texas with the Texas Secretary of State. KOOL SMILES, P.C. participates in the overall plan and scheme as follows:

1.    hiring the dentists and dental hygienists who work at KOOL SMILES clinics;
2.    training the dentists who work at KOOL SMILES clinics; and
3.    supervising the dentists who work at KOOL SMILES clinics.

6.    The Children Victims.

Most of the children treated at the dental clinics are very young and have baby teeth. More often than not the children do not have any histories of pain or complaints before arriving at one of these dental clinics. Their parents enter the clinic anticipating their children will receive examinations, oral hygiene instructions, and have their teeth cleaned. The children and their parents trust the dental professionals to honestly recommend and perform only necessary dental services and to perform the dental services appropriately and, as represented, in a manner that insures their children's comfort.

After examination and x-rays, it is the routine practice, plan, intent, scheme, and course of action of KOOL SMILES to misdiagnose the existence and/or severity of cavities and recommend dental operative procedures, most commonly consisting of pulpotomies and stainless steel crowns. Routinely, many of these operative procedures are unnecessary and/or excessive

but they allow KOOL SMILES, P.C., NCDR, and DENTISTRY OF BROWNSVILLE to maximize production per patient and meet their revenue goals. The staff is trained to "sell" the treatment plans to the parents.

After persuading the children's parents that the treatment recommended is necessary and that their children will be comfortable, the dental clinics secure the parents' consents to treatment and use of physical restraint often informing them that restraint most likely will not be necessary and, if necessary, has no risks.

However, the dental clinics do, in fact, intend to restrain many of the children because it requires less time than less intrusive behavior guidance techniques and allows the dentist to increase production and maximize revenues. Children are strapped to papoose boards and physically restrained otherwise (often including blind-folds, socks over their hands and arms, and one or more employees physically holding their head and/or feet). Because of the loss of freedom of movement and potential physical and emotional trauma, physical restraint to a papoose board should only be used in dentistry as a last resort when all other less restrictive behavior guidance techniques have been reasonably attempted and failed and the dental treatment is immediately necessary due to trauma, advancing disease, or infection. After the parents' broad consent is signed, the dental clinics often prohibit or discourage the children's parents from being present in the treatment room. The treatment which routinely includes dental operative procedures, no sedation, no nitrous oxide, and restraint with a papoose board, socks, blindfolds, and staff, often causes the children so much physical and emotional trauma that they are crying, screaming, struggling, and terrified. Many children are so traumatized that they lose control of their bladders and/or vomit. The dentists, rather than postpone or terminate the procedures for the safety and comfort of the children, press on with production. Some of the

dental operative procedures were inadequately performed, such requiring further treatment and/or causing infections and abscesses which necessitated subsequent extractions.

The children arrive to the dental clinics trusting health care professionals and smiling only to leave distrusting dentists and without a smile. The children leave in pain, discomfort, distress, and anguish. The children are embarrassed because their disfigured mouths have stainless steel crowns, which often are the subject of ridicule. The children fight their parents about going to dentists because of their traumatic experience at these dental clinics. As a result of the traumatic experience, many of these victimized children, as adults, will be fearful of dentists and dental procedures which will reduce the likelihood of future visits to dental professionals. The trauma they endured is likely to affect them the rest of their lives and is likely to make them reluctant to take their children to dental professionals.

### E. The Motive

KOOL SMILES, P.C., NCDR, and DENTISTRY OF BROWNSVILLE's plan and scheme is to fulfill its motive: to bilk Medicaid for millions and millions of dollars at the cost of taxpayers and suffering of underprivileged children. Defendants have collected, and continue to collect, tens of millions of taxpayer dollars in Texas every year.

## V.
## <u>FACTUAL BACKGROUND PERTAINING TO PLAINTIFFS</u>

███████████, a 3 year old boy, presented to the Kool Smiles dental clinic in Mission, Texas on or about January 4, 2011 and on or about January 7, 2011. After examination and radiographs, one or more DEFENDANTS represented that ██████ had multiple cavities which necessitated stainless steel crowns. On or about January 4, 2011, ██████was not administered oral conscious sedation or nitrous oxide. He was physically restrained with a papoose board. DR. CHANDESH proceeded to administer multiple injections of local anesthetic and then

prepared baby teeth A, B, S, & T for, and cemented, stainless steel crowns. On or about January 7, 2011, ███████ was not administered oral conscious sedation or nitrous oxide. He was physically restrained with a papoose board. DR. CHANDESH proceeded to administer multiple injections of local anesthetic and then prepared baby teeth I, J, K, & L for, and cemented, stainless steel crowns. Medicaid was billed, and paid for, dental services and procedures, including nine (9) stainless steel crowns, when only eight (8) stainless steel crowns were placed, some of which were not necessary.

███████████ a 4 year old boy, presented to the Kool Smiles dental clinic in McAllen, Texas on or about October 12, 2010 and on or about November 13, 2010. After examination and radiographs, one or more DEFENDANTS represented that ██████ had multiple cavities which necessitated a pulpotomy and stainless steel crowns. On or about October 12, 2010, █████████ was not administered oral conscious sedation or nitrous oxide. He was physically restrained with a papoose board. DR. TRAYNOR proceeded to administer multiple injections of local anesthetic and then performed a pulpotomy on baby tooth I and prepared baby teeth I & J for, and cemented, stainless steel crowns. On or about November 13, 2010, ████████ was not administered oral conscious sedation or nitrous oxide. He was physically restrained with a papoose board. DR. MANWARING proceeded to administer multiple injections of local anesthetic and then prepared baby teeth D & E for, and cemented, stainless steel crowns. Medicaid was billed, and paid for, the dental services and procedures, some of which were not necessary.

███████████, a 3 ½ year old boy, presented to the Kool Smiles dental clinic in McAllen, Texas on or about April 29, 2009, on or about June 2, 2009, and on or about October 8, 2009. After examinations and radiographs, one or more DEFENDANTS represented that

14

████had multiple cavities which necessitated pulpotomies and stainless steel crowns. On or about April 28, 2009, ████ was not administered oral conscious sedation or nitrous oxide. He was physically restrained with a papoose board. DR. HO proceeded to administer multiple injections of local anesthetic and then performed pulptomies on baby teeth F, G, & T and prepared baby teeth B, D, E, F, G, S, & T for, and cemented, stainless steel crowns. On or about June 2, 2009, ████ was not administered oral conscious sedation or nitrous oxide. DR. HO proceeded to administer multiple injections of local anesthetic and then performed a pulptomy on baby tooth K and prepared baby teeth K & L for, and cemented, stainless steel crowns. On or about October 8, 2009, ████ was not administered oral conscious sedation or nitrous oxide. He was physically restrained with a papoose board. DR. THOMAS proceeded to administer multiple injections of local anesthetic and then prepared baby teeth I & J for, and cemented, stainless steel crowns. Medicaid was billed, and paid for, the dental services and procedures, some of which were not necessary.

████████████, a 5 year old girl, presented to the Kool Smiles dental clinic in Mission, Texas on or about July 13, 2009 and on or about July 21, 2009. After examination and radiographs, one or more DEFENDANTS represented that ████████ had multiple cavities which necessitated stainless steel crowns. On or about July 13, 2009, ████████was not administered oral conscious sedation or nitrous oxide. She was physically restrained with a papoose board. DR. THOMAS proceeded to administer multiple injections of local anesthetic and then prepared baby teeth A, B, C, D, E, F, G, R, S, & T for, and cemented, stainless steel crowns. On or about July 21, 2009, ████████ was not administered oral conscious sedation or nitrous oxide. She was physically restrained with a papoose board. DR. THOMAS proceeded to administer multiple injections of local anesthetic. Dr. THOMAS then prepared baby teeth H, I,

K, L, & M for, and cemented, stainless steel crowns. Medicaid was billed, and paid for, the dental services and procedures, some of which were not necessary.

███████████, a 7 year old girl, presented to the Kool Smiles dental clinic in McAllen, Texas on or about November 21, 2011 and on or about November 30, 2011. After examination and radiographs, one or more DEFENDANTS represented that ████ had multiple cavities which necessitated stainless steel crowns. ████ was not administered oral conscious sedation or nitrous oxide. DR. MANWARING administered multiple injections of local anesthetic and then prepared baby teeth J, K, & L for, and cemented, stainless steel crowns. Medicaid was billed, and paid for, the dental services and procedures, some of which were not necessary.

███████████, a 2 year old girl, presented to the Kool Smiles dental clinic in McAllen, Texas on or about July 22, 2009 and on or about August 13, 2009. After examination and radiographs, one or more DEFENDANTS represented that ██████ had multiple cavities which necessitated pulpotomies and stainless steel crowns. On or about July 22, 2009 Johana was not administered oral conscious sedation or nitrous oxide. She was physically restrained with a papoose board. DR. HO proceeded to administer multiple injections of local anesthetic and then performed a pulpotomy on baby tooth S and prepared baby teeth N, O, P, Q, & S for, and cemented, stainless steel crowns. On or about August 13, 2009 ██████ was not administered oral conscious sedation or nitrous oxide. She was physically restrained with a papoose board. DR. HO proceeded to administer multiple injections of local anesthetic and then performed pulpotomies on baby teeth D, E, F, G, & L and prepared baby teeth D, E, F, G, & L for, and cemented, stainless steel crowns. Medicaid was billed, and paid for, the dental services and procedures, many of which were not necessary.

██████████, a 5 year old girl, presented to the Kool Smiles dental clinic in McAllen, Texas on or about July 16, 2009 and on or about August 5, 2009. After examinations and radiographs, one or more DEFENDANTS represented that ████ had multiple cavities which necessitated pulpotomies and stainless steel crowns. On or about July 16, 2009, ████ was not administered oral conscious sedation or nitrous oxide. She was physically restrained with a papoose board. DR. HO proceeded to administer multiple injections of local anesthetic and then performed a pulpotomy on baby tooth A and prepared baby teeth A, B, S, & T for, and cemented, stainless steel crowns. On or about August 5, 2009, ████ was not administered oral conscious sedation or nitrous oxide. She was physically restrained with a papoose board. DR. HO proceeded to administer multiple injections of local anesthetic and then performed a pulpotomy on baby tooth I and prepared baby teeth I, J, K, & L for, and cemented, stainless steel crowns. Medicaid was billed, and paid for, the dental services and procedures, some of which were not necessary.

██████████, a 5 year old girl, presented to the Kool Smiles dental clinic in Mission, Texas on or about July 6, 2011 and on or about July 8, 2011. After examinations and radiographs, one or more DEFENDANTS represented that ████ had multiple cavities which necessitated stainless steel crowns. On or about July 6, 2011, ████ was not administered oral conscious sedation or nitrous oxide. She was physically restrained with a papoose board. DR. CHANDESH proceeded to administer multiple injections of local anesthetic and then prepared baby teeth A, B, S, & T for, and cemented, stainless steel crowns. On or about July 8, 2011, ████ was not administered oral conscious sedation or nitrous oxide. She was physically restrained with a papoose board. DR. CHANDESH proceeded to administer multiple injections of local anesthetic and then prepared baby teeth I, J, K, & L for, and cemented,

17

stainless steel crowns. Medicaid was billed, and paid for, the dental services and procedures, some of which were not necessary.

████████████, a 2 year old boy, presented to the Kool Smiles dental clinic in Mission, Texas on or about September 29, 2011, on or about October 5, 2011, and on or about October 10, 2011. After examinations and radiographs, one or more DEFENDANTS represented that ████ had multiple cavities which necessitated stainless steel crowns. On or about October 5, 2011, ████ was not administered oral conscious sedation or nitrous oxide. He was physically restrained with a papoose board. DR. CHANDESH proceeded to administer multiple injections of local anesthetic and then DR. CHANDESH prepared baby teeth E, F, G, S, & T for, and cemented, stainless steel crowns. On or about October 10, 2011, ████ was not administered oral conscious sedation or nitrous oxide. He was physically restrained with a papoose board. DR. CHANDESH proceeded to administer multiple injections of local anesthetic and then prepared baby teeth B, C, H, & I for, and cemented, stainless steel crowns. Medicaid was billed, and paid for, the dental services and procedures, some of which were not necessary.

████████████., a 5 ½ year old boy, presented to the Kool Smiles dental clinic in Mission, Texas on or about January 21, 2009 and on or about September 10, 2010. After examinations and radiographs, one or more DEFENDANTS represented that ████had multiple cavities which necessitated pulpotomies and stainless steel crowns. On or about January 21, 2009, ████ was not administered oral conscious sedation or nitrous oxide. He was physically restrained with a papoose board. DR. THOMAS proceeded to administer multiple injections of local anesthetic and then performed pulpotomies on baby teeth I, J, K & L and prepared baby teeth E, F, I, J, K, & L for, and cemented, stainless steel crowns. On or about September 10, 2010, DR. CHANDESH re-performed the pulpotomy, and replaced the stainless

18

steel crown, on baby tooth K. Medicaid was billed, and paid for the dental services and procedures, some of which were not necessary and two of which were necessary because of the previously poorly performed pulpotomy on tooth K.

 a 5 year old boy, presented to the Kool Smiles dental clinic in Mission, Texas on or about July 29, 2009. After examination and radiographs, one or more DEFENDANTS represented that ███ had multiple cavities and necessitated stainless steel crowns. ███ was not administered oral conscious sedation or nitrous oxide. He was physically restrained with a papoose board. DR. THOMAS proceeded to administer multiple injections of local anesthetic and then prepared baby teeth I, L, & K for, and cemented, stainless steel crowns. Medicaid was billed, and paid for, the dental services and procedures, some of which were not necessary.

███, a 4 year old boy, presented to the Kool Smiles dental clinic in McAllen, Texas on or about August 10, 2009. After examination and radiographs, one or more DEFENDANTS represented that ███ had multiple cavities which necessitated stainless steel crowns. ███ was not administered oral conscious sedation or nitrous oxide. He was physically restrained with a papoose board. DR. HO proceeded to administer multiple injections of local anesthetic and then prepared baby teeth A, B, S, & T for, and cemented, stainless steel crowns. Medicaid was billed, and paid for, the dental services and procedures, some of which were not necessary.

## VI.
### DEFENDANT KOOL SMILES, P.C. AND DENTISTRY OF BROWNSVILLE'S VICARIOUS LIABILITY FOR THE NEGLIGENCE OF THE DENTISTS WHO PROVIDED DENTAL SERVICES TO PLAINTIFFS' MINOR CHILDREN

19

KOOL SMILES, P.C. is liable for the negligence of DR. CHANDESH, DR. HO, DR. MANWARING, AND DR. THOMAS because at all times relevant hereto, said dentists who provided the dental treatment to Plaintiffs' minor children were employees of KOOL SMILES, P.C. acting within the course and scope of their employment. Further, DENTISTRY OF BROWNSVILLE is liable for the negligence of DR. CHANDESH, DR. HO, DR. MANWARING, AND DR. THOMAS because at all times relevant hereto, said dentists who provided the dental treatment to Plaintiffs' minor children were borrowed servants, actual agents, apparent agents, or ostensible agents of DENTISTRY OF BROWNSVILLE acting within the course and scope of their employment or agency.

## VII.
## DEFENDANT KOOL SMILES, P.C.'S NEGLIGENCE

KOOL SMILES, P.C., by and through its employees and agents including, but not limited to, DRS. CHANDESH, HO, MANWARING & THOMAS, owed a general duty of care to Plaintiffs' minor children to provide dental services in conformity with the applicable minimum standards of care which required them to exercise ordinary care, that is to do that which dentists of ordinary prudence would have done under the same or similar circumstances. KOOL SMILES, P.C. breached its duties by engaging in the following acts and/or omissions to act:

1. failing to reasonably and prudently train and supervise DRS. THOMAS, MANWARING, MATHISEN, HO, and NANVA in their examinations, interpretation of radiographs, treatment planning, behavior guidance techniques, clinical pain management, and performance of dental operative procedures on pediatric patients;
2. training DRS. THOMAS, MANWARING, MATHISEN, HO, and NANVA to use physical restraints which were not indicated;
3. discouraging DRS. THOMAS, MANWARING, MATHISEN, HO, and NANVA from deferring and/or referring pediatric patients necessitating advanced behavior guidance techniques; and
4. encouraging DRS. THOMAS, MANWARING, MATHISEN, HO, and NANVA to perform unnecessary and excessive dental procedures by establishing quotas based upon production and revenue rather than the best interests of the minor Plaintiffs.

20

Such acts and/or omissions to act of KOOL SMILES, P.C., whether taken singularly or collectively, constitute negligence and a direct and proximate cause of the injuries and damages of Plaintiffs' minor children, for which they herein seek recovery.

## VIII.
## DEFENDANT NCDR'S NEGLIGENCE

NCDR is a health care provider under Texas law. Thus, NCDR, by and through its employees and/or agents, owed a general duty of care to Plaintiffs' minor children to provide dental services in conformity with the applicable minimum standards of care which required them to exercise ordinary care, that is to do that which a dental service organization of ordinary prudence would have done under the same or similar circumstances. NCDR breached its duties by participating in the ownership, maintenance, operation, and/or control of the dental clinics and in controlling, influencing, attempting to control or influence, or otherwise interfering with the dentists' professional judgment. More specifically, NCDR engaged in the following acts which demonstrate its ownership, maintenance, operation, and/or control of the dental clinics:

a. NCDR leased the space in which the dental clinics are located;
b. NCDR sub-leased the space to the professional corporations which own the dental clinics;
c. NCDR restricted and controls the sale of the dental clinics;
d. NCDR participated in the tracking and monitoring of the production of the dental clinics and dentists who work at the dental clinics;
e. NCDR participated in setting production quotas and goals for the dentists who work at the dental clinics;
f. NCDR participated in setting production goals for the dental clinics;
g. NCDR participated in setting revenue goals for the dental clinics;
h. NCDR recruited and hired dental assistants, office managers, community service personnel, and other personnel who work at the dental clinics;
i. NCDR participated in the hiring, staffing, training, supervision, and termination of dentists who work at the dental clinics;
j. NCDR created and maintains the electronic clinical records;
k. NCDR prepared the invoices, including Medicaid invoices, for the dental clinics;
l. NCDR collected the accounts receivable for the dental clinics;
m. NCDR paid and distributed the accounts payable for the dental clinics;

21

n. NCDR selected the professional liability insurer and paid the premiums for the dentists who work at the dental clinics;

o. NCDR hired marketing personnel and provided the advertising of the dental clinics;

p. NCDR hired and employed the corporate personnel responsible for marketing, management, and financial operations of the dental clinics;

q. NCDR participated in the writing, implementing, and enforcing of policies, procedures, and protocols for the dental clinics; and

r. NCDR participated in clinical decisions.

Such acts and/or omissions to act of NCDR, whether taken singularly or collectively, constitute negligence and a direct and proximate cause of the injuries and damages of Plaintiffs' minor children, for which they herein seek recovery.

## IX.
## DEFENDANT DENTISTRY OF BROWNSVILLE'S NEGLIGENCE

DENTISTRY OF BROWNSVILLE, by and through its borrowed servants, actual agents, apparent agents, and/or ostensible agents, owed a general duty of care to Plaintiffs' minor children to provide dental services in conformity with the applicable minimum standards of care which required it to exercise ordinary care, that is to do that which dentists of ordinary prudence would have done under the same or similar circumstances. DENTISTRY OF BROWNSVILLE breached its duties by engaging in the following acts and/or omissions to act:

1. failing to reasonably and prudently train and supervise DRS. CHANDESH, HO, MANWARING & THOMAS in their examinations, interpretation of radiographs, treatment planning, behavior guidance techniques, clinical pain management, and performance of dental procedures on pediatric patients;

2. training DRS. CHANDESH, HO, MANWARING & THOMAS to use physical restraints which were not indicated;

3. discouraging DRS. CHANDESH, HO, MANWARING & THOMAS from deferring and/or referring pediatric patients necessitating advanced behavior guidance techniques;

4. encouraging DRS. CHANDESH, HO, MANWARING & THOMAS to perform unnecessary and excessive dental procedures by establishing quotas based upon production and revenue rather than the best interests of the minor Plaintiffs; and

5. permitting NCDR to participate in the ownership, maintenance, operation, and/or control of the dental clinics and permitting NCDR to participate in controlling,

influencing, attempting to control or influence, or otherwise interfering with the dentists' professional judgment as follows:

 a. NCDR participated in the tracking and monitoring of the production of the dental clinics and dentists who work at the dental clinics;

 b. NCDR sub-leased the space to the professional corporations which own the dental clinics and charged 12% of the gross revenue;

 c. NCDR charged a monthly management fee which was retroactively adjusted;

 d. NCDR charged all of its direct costs and a 21% override;

 e. NCDR restricted and controlled the sale of the dental clinics;

 f. NCDR participated in setting production quotas and goals for the dentists who work at the dental clinics;

 g. NCDR participated in setting production goals for the dental clinics;

 h. NCDR participated in setting revenue goals for the dental clinics;

 i. NCDR hired and employed corporate personnel responsible for management operations of the dental clinics;

 j. NCDR participated in the writing, implementing, and enforcing of policies, procedures, and protocols for the dental clinics; and

 k. NCDR participated in clinical decisions.

Such acts and/or omissions to act of DENTISTRY OF BROWNSVILLE, whether taken singularly or collectively, constitute negligence and a direct and proximate cause of the injuries and damages of Plaintiffs' minor children, for which they herein seek recovery.

## X.
## JOINT ENTERPRISE OF NCDR, KOOL SMILES, P.C., and DENTISTRY OF BROWNSVILLE

Defendants, NCDR, KOOL SMILES, P.C., and DENTISTRY OF BROWNSVILLE entered into and operated a joint enterprise or endeavor under agreements, express and/or implied, to generate and share revenue from dental operative procedures and services performed at Kool Smiles dental clinics in Mission and McAllen, Texas. NCDR, KOOL SMILES, P.C., and DENTISTRY OF BROWNSVILLE's common purpose was to generate as much revenue and income as possible from dental operative procedures and services performed on underprivileged, Medicaid-eligible children, including Plaintiffs' minor children, at Kool Smiles dental clinics by maximizing the number of dental operative procedures performed per clinic, per

23

dentist, per patient, and per visit. NCDR, KOOL SMILES, P.C., and DENTISTRY OF BROWNSVILLE shared income and revenue generated from the dental procedures performed on Plaintiffs' minor children and other children at KOOL SMILES dental clinics in Mission and McAllen, Texas, and thus created a community of pecuniary interest in the purpose of the joint enterprise. NCDR, KOOL SMILES, P.C., and DENTISTRY OF BROWNSVILLE each had an equal right to a voice in the direction of the enterprise, which gave them an equal right of management, operation, and control in the enterprise. Because of their joint enterprise, NCDR, KOOL SMILES, P.C., and DENTISTRY OF BROWNSVILLE should be held jointly and severally liable for the occurrences in question and Plaintiffs' minor children's resulting injuries.

## XI.
## DEFENDANT DR. CHANDESH'S NEGLIGENCE

DR. CHANDESH owed a general duty of care to Plaintiffs' minor children ██████ ████████████████████████████ to provide dental services in conformity with the applicable minimum standards of care which required her to exercise ordinary care, that is to do that which a dentist of ordinary prudence would have done under the same or similar circumstances. DR. CHANDESH breached her duties by engaging in the following acts and/or omissions to act:

1. misdiagnosing the existence and/or severity of cavities;
2. providing unnecessary and excessive dental treatment;
3. failing to appropriately utilize behavior guidance techniques;
4. failing to appropriately manage clinical pain, anxiety, and fear;
5. failing to defer or refer treatment;
6. unnecessarily restraining patients; and
7. failing to otherwise render dental attention, care, and treatment in accordance with the applicable standard of care as reasonably prudent dentists would under the same or similar circumstances.

24

Such acts and/or omissions to act of DR. CHANDESH, whether taken singularly or collectively, constitute negligence and a direct and proximate cause of the injuries and damages of said Plaintiffs' minor children, for which they herein seek recovery.

## XII.
## DEFENDANT DR. HO'S NEGLIGENCE

DR. HO owed a general duty of care to Plaintiffs' minor children ███████████ ███████████████████████████ to provide dental services in conformity with the applicable minimum standards of care which required him to exercise ordinary care, that is to do that which a dentist of ordinary prudence would have done under the same or similar circumstances. DR. HO breached his duties by engaging in the following acts and/or omissions to act:

1. misdiagnosing the existence and/or severity of cavities;
2. providing unnecessary and excessive dental treatment;
3. failing to appropriately utilize behavior guidance techniques;
4. failing to appropriately manage clinical pain, anxiety, and fear;
5. failing to defer or refer treatment;
6. unnecessarily restraining patients; and
7. failing to otherwise render dental attention, care, and treatment in accordance with the applicable standard of care as reasonably prudent dentists would under the same or similar circumstances.

Such acts and/or omissions to act of DR. HO, whether taken singularly or collectively, constitute negligence and a direct and proximate cause of the injuries and damages of said Plaintiffs' minor children, for which they herein seek recovery.

## XIII.
## DEFENDANT DR. MANWARING'S NEGLIGENCE

DR. MANWARING owed a general duty of care to Plaintiffs' minor children ███ ███████████ ███ █████ to provide dental services in conformity with the applicable minimum standards of care which required him to exercise ordinary care, that is to do that which

a dentist of ordinary prudence would have done under the same or similar circumstances. DR. MANWARING breached his duties by engaging in the following acts and/or omissions to act:

1. misdiagnosing the existence and/or severity of cavities;
2. providing unnecessary and excessive dental treatment;
3. failing to appropriately utilize behavior guidance techniques;
4. failing to appropriately manage clinical pain, anxiety, and fear;
5. failing to defer or refer treatment;
6. unnecessarily restraining patients; and
7. failing to otherwise render dental attention, care, and treatment in accordance with the applicable standard of care as reasonably prudent dentists would under the same or similar circumstances.

Such acts and/or omissions to act of DR. MANWARING, whether taken singularly or collectively, constitute negligence and a direct and proximate cause of the injuries and damages of said Plaintiffs' minor children, for which they herein seek recovery.

## XIV.
## DEFENDANT DR. THOMAS' NEGLIGENCE

DR. THOMAS owed a general duty of care to Plaintiffs' minor children ███████████ ███████████████████████████████████ to provide dental services in conformity with the applicable minimum standards of care which required him to exercise ordinary care, that is to do that which a dentist of ordinary prudence would have done under the same or similar circumstances. DR. THOMAS breached his duties by engaging in the following acts and/or omissions to act:

1. misdiagnosing the existence and/or severity of cavities;
2. providing unnecessary and excessive dental treatment;
3. failing to appropriately utilize behavior guidance techniques;
4. failing to appropriately manage clinical pain, anxiety, and fear;
5. failing to defer or refer treatment;
6. unnecessarily restraining patients; and
7. failing to otherwise render dental attention, care, and treatment in accordance with the applicable standard of care as reasonably prudent dentists would under the same or similar circumstances.

Such acts and/or omissions to act of DR. THOMAS, whether taken singularly or collectively, constitute negligence and a direct and proximate cause of the injuries and damages of said Plaintiffs' minor children, for which they herein seek recovery.

## XV.
## GROSS NEGLIGENCE

The negligent acts and/or omissions to act of NCDR, KOOL SMILES, P.C., DENTISTRY OF BROWNSVILLE and DRS. CHANDESH, HO, MANWARING & THOMAS specified in paragraphs VII – IX and XI – XIV above, which are hereby fully incorporated, constitute more than momentary thoughtlessness, inadvertence or error of judgment. Such negligence demonstrates such an entire want of care as to establish that the acts and/or omissions to act were the result of actual conscious indifference to the rights, welfare or safety of Plaintiffs. Further, the negligent acts and/or omissions of NCDR, KOOL SMILES, P.C., and DENTISTRY OF BROWNSVILLE were engaged in by vice principals and/or persons in managerial capacities of said entities.

Such gross negligence was a proximate cause of Plaintiffs' minor children's injuries and damages and, thus, Plaintiffs seek recovery of punitive or exemplary damages.

## XVI.
## CIVIL CONSPIRACY

Prior to the rendition of dental services to Plaintiffs' minor children, one or more directors, officers, and/or other employees in a managerial capacity of KOOL SMILES, P.C., acting within the course and scope of employment, conspired with one or more directors, officers, and/or other employees in a managerial capacity of NCDR, acting within the course and scope of employment, and with one or more directors, officers, and/or other employees in a managerial capacity of DENTISTRY OF BROWNSVILLE, acting within the course and scope

27

of employment, to, and did, engage in a routine plan, scheme, course and pattern of practice to increase production and revenue of dentists working at KOOL SMILES clinics by establishing a plan and practice of misdiagnosing the existence and/or severity of cavities, providing unnecessary and/or excessive dental operative procedures, and unnecessarily physically restraining children rather than defer or refer treatment. Said officers, directors, and employees, acting in managerial capacities on behalf of Defendants had a meeting of their minds in regards to their routine plan, scheme, course, and pattern of practice which had an unlawful purpose or a lawful purpose to be accomplished by unlawful means.

More specifically, the purpose of their plan was for NCDR to engage in the unlawful corporate practice of dentistry to generate revenue for persons who are not licensed to practice dentistry. NCDR charged the dental clinics 12% of gross revenue as rent, a monthly fee for management which was often modified retroactively, all of its direct costs, and a 21% override of its direct costs. Additionally, NCDR and the dentists employed by Kool Smiles entered into an agreement wherein dentists assigned any interest in federal financial incentives under HITECH, a program which offered financial incentives for health are providers to convert to electronic records. Although NCDR, not the dentists, created and maintained the dental records, and already had an electronic record program in place, said Defendant received millions of dollars of financial incentives from the government. A further purpose of their plan was to increase revenue from Medicaid by increasing the number of dental operative procedures per dentist, per patient, and per day, many of such dental operative procedures being unnecessary and, thus, not entitled to Medicaid reimbursement. Further, said Defendants, by and through their directors, officers and employees utilized an unlawful means (i.e., the corporate practice of dentistry) to fulfill its purpose of generating revenue for persons who are not licensed to practice

28

dentistry. Said civil conspiracy was a direct and proximate cause of Plaintiffs' minor children's injuries and damages.

## XVII.
## FRAUD

KOOL SMILES, P.C., DENTISTRY OF BROWNSVILLE and DRS. CHANDESH, HO, MANWARING & THOMAS were in a special relationship of trust and confidence with Plaintiffs and their minor children. DEFENDANTS, by and through their employees and/or agents, had a duty to accurately represent the qualifications of its dentists, Plaintiffs' minor children's diagnoses, necessary treatment, and their practice of using physical restraint rather than deferral and/or referral. Plaintiffs relied upon and trusted DEFENDANTS. DEFENDANTS took undue and unconscionable advantage of Plaintiffs by making material representations regarding the existence, location, size, and number of cavities, the necessity for pulpotomies, the necessity for stainless steel crowns, the necessity for physical restraints, and the risks associated with the use of the papoose board for physical restraint. Such representations were false and DEFENDANTS were aware of the falsity at the time of such representations. Said misrepresentations were made with the intent of inducing Plaintiffs to obtain and consent to DEFENDANTS' dental services. Plaintiffs reasonably and justifiably relied upon said material misrepresentations, which are a direct and proximate cause of damages sustained by Plaintiffs' minor children for which Plaintiffs herein seek recovery.

## XVIII.
## DAMAGES

As a direct and proximate cause of the negligent acts and/or omissions to act, gross negligence, civil conspiracy, and/or fraud of DEFENDANTS, Plaintiffs' minor children sustained injuries and damages. More specifically, Plaintiffs' minor children have suffered

29

physical and mental pain and anguish and disfigurement in the past, and in reasonable probability, will continue to sustain mental pain and anguish and disfigurement in the future.

NCDR, KOOL SMILES, P.C., DENTISTRY OF BROWNSVILLE and DRS. CHANDESH, HO, MANWARING & THOMAS should be further held accountable for punitive or exemplary damages. The nature and frequency of DEFENDANTS' wrongs is horrific because DEFENDANTS took advantage of, and caused injury to, children who were their patients for the purpose of financial gain. The character of DEFENDANTS' conduct is offensive and the degree of their culpability is substantial as demonstrated by their routine plan, scheme, and pattern and practice of financially gaining by soliciting and performing unnecessary and excessive treatment upon children insured by Medicaid. DEFENDANTS' conduct offends our public's sense of justice and propriety. Based upon the net worth of DEFENDANTS, substantial exemplary or punitive damages should be awarded.

Therefore, Plaintiffs seek recovery of punitive damages in whatever amount a jury in its sole discretion decides is adequate to punish DEFENDANTS for their gross negligence, civil conspiracy, and/or fraud.

## XIX.
## NOTICE

Plaintiffs would further show that more than sixty (60) days prior to filing of this cause, written notice of said claims were provided by certified mail return receipt requested to Dentistry of Brownsville, P.C., NCDR, LLC, KOOL SMILES, P.C., Aishwarya K. Chandesh, D.D.S., Edward Ho, D.D.S., Richard I. Manwaring, D.D.S., and Marc D. Thomas, D.D.S. and that they otherwise fully complied with the notice provisions pursuant to Section 74.051 of Chapter 74 of the Texas Civil Practice and Remedies Code.

## XX.
## PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Plaintiffs PAULA ANTU AS NEXT FRIEND OF ███████ █ ███████, A MINOR; SCARLETT AYALA AS NEXT FRIEND OF ███████████, A MINOR; GUADALUPE CEPEDA AS NEXT FRIEND OF ███████████, A MINOR; ANA LAURA CORNEJO AS NEXT FRIEND OF ████ ███████████, A MINOR; MARIO CUELLAR AND PRISCILLA TRUJILLO AS NEXT FRIENDS OF ███████████, A MINOR; PEDRO DE LEON AND ELIZABETH DE LEON AS NEXT FRIENDS OF ██████████, A MINOR; MARIA GAYTÁN AS NEXT FRIEND OF ██████████████., A MINOR; ELIZABETH GONZALEZ AND MARCO REYES AS NEXT FRIENDS OF █████████████, A MINOR; FRANCISCA GUZMAN AS NEXT FRIEND OF ██████████, A MINOR; KARINA HERNANDEZ AS NEXT FRIEND FOR ██████████, A MINOR; ISMAEL MALDONADO AND ISABEL MALDONADO AS NEXT FRIENDS OF █████████████, A MINOR; FREISI OLIVAR AS NEXT FRIEND OF ████████████, A MINOR; MARY ROSALES AS NEXT FRIEND OF ██████████, A MINOR; AND REYNOL SALINAS AS NEXT FRIEND OF ███████████████ A MINOR pray that upon final trial, they have and recover judgment in their favor and against DEFENDANTS, jointly and severally, for the following:

1. actual damages within the jurisdictional limits of this Court;
2. punitive or exemplary damages;
3. prejudgment interest at the maximum rate allowed by law;
4. postjudgment interest at the maximum rate allowed by law;
5. costs of suit; and
6. such other and further relief at law or in equity, general or special, to which Plaintiffs may be deemed entitled.

31

Respectfully submitted,

MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 401 South
San Antonio, Texas 78215
Telephone: 210.354.3377
Telecopier: 210.354.3909

By: _____
      George W. Mauzé II
      State Bar No. 13238800
      *gmauze@mauzebagbylaw.com*
      Tom Bagby
      State Bar No. 24059409
      *tbagby@mauzenagbylaw.com*

GUERRA, LEEDS, SABO & HERNANDEZ, PLLC
10213 N. 10th St,
McAllen, Texas 78504
Telephone: 956.383.4300
Telecopier: 956.383.4304

By:    R.D. "Bobby" Guerra
      State Bar No. 08578640
      *rdguerra@wglawfirm.com*

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of PLAINTIFFS' FOURTH AMENDED ORIGINAL PETITION has been sent by via fax and *regular mail* to Mr. Wayne B. Mason, Esq., Mr. Alan Vickery, Esq., and Ms. Cori C. Steinmann, Esq., Sedgwick LLP, 1717 Main Street, Suite 5400, Dallas, Texas 75201-7367 and Mr. Eduardo R. Rodriguez, Esq., Atlas, Hall & Rodriguez, L.L.P., 50 W. Morrison Road, Suite A, Brownsville, TX 78520 on this _14th_ day of January, 2015.

_____
George W. Mauzé II

32

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| NCDR, L.L.C.; DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES; and KS2 TX, P.C. d/b/a KOOL SMILES; | § § § § § | |
| Plaintiffs, | § § | Case No. 5:12-cv-36 |
| v. | § § | JURY TRIAL DEMANDED |
| MAUZÉ & BAGBY, PLLC; GEORGE WATTS MAUZÉ II; and JAMES THOMAS BAGBY III; | § § § § § | |
| Defendants. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT FOR DAMAGES

Plaintiffs NCDR, L.L.C.; Dentistry of Brownsville, P.C. d/b/a Kool Smiles; and KS2 TX, P.C. d/b/a Kool Smiles (collectively, "Kool Smiles" or "Plaintiffs"), by way of this Complaint that they file against Defendants Mauzé & Bagby, PLLC; George Watts Mauzé II ("Mauzé"); and James Thomas Bagby III ("Bagby") (collectively, "Defendants") show as follows:

## NATURE OF THE ACTION

1. This is an action for damages premised on Plaintiffs' claims for defamation, business disparagement, trademark infringement, false advertising (designation of origin), cyberpiracy prevention (anti-cybersquatting), injury to business reputation, and trademark dilution in which Plaintiffs seek injunctive relief, damages, and attorneys' fees.


EXHIBIT
A

business, Mauzé & Bagby, PLLC, 2632 Broadway, Suite 402 South, San Antonio, Texas 78125; or anywhere else he may be found.

## JURISDICTION AND VENUE

8.     Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this is a civil action that arises under the Constitution, laws, or treaties of the United States.  This civil action arises under the Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1051, including Section 32(1), or 15 U.S.C. § 1114(1), for infringement of a registered mark; and for violations of Sections 43(a) and 43(d), or 15 U.S.C. §§ 1125(a) and (d), for false advertising (designation of origin) and cyberpiracy prevention (anti-cybersquatting).

9.     This Court also has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(a).

10.     Defendant Mauzé & Bagby, PLLC is subject to personal jurisdiction because it is incorporated in the State of Texas, its principal place of business is located in the State of Texas, and it regularly conducts business within the State of Texas.

11.     Defendant Mauzé is subject to personal jurisdiction because he resides in and regularly conducts business within the State of Texas.

12.     Defendant Bagby is subject to personal jurisdiction because he resides in and regularly conducts business within the State of Texas.

13.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events at issue occurred in this district.  On information and belief, the advertisements and website at issue in this Complaint were either broadcast or made accessible by Defendants in Laredo, Texas, where clinics owned, managed, and operated by Plaintiffs are located.  Defendants also made statements similar to those made in their advertisements in a

3

| | | |
|---|---|---|
| PAULA ANTU, as Next Friend of ████████████████, a Minor, et al., | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § § § | |
| vs. | § § | |
| NCDR, LLC d/b/a KOOL SMILES, DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES, AISHWARYA K. CHANDESH, D.D.S., EDWARD HO, D.D.S., RICHARD I. MANWARING, D.D.S., and MARC D. THOMAS, D.D.S., | § § § § § § § § | 370th JUDICIAL DISTRICT |
| Defendants. | § § | HIDALGO COUNTY, TEXAS |

## STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

Defendants NCDR, L.L.C., Dentistry of Brownsville, P.C., Aishwarya K. Chandesh, D.D.S., Edward Ho, D.D.S., Richard I. Manwaring, D.D.S., and Marc D. Thomas, D.D.S. (hereinafter "Defendants") may disclose certain Confidential Information to the parties in this action pursuant to discovery. Plaintiffs Paula Antu, as Next Friend of ████████████, a Minor, et al. ("Plaintiffs") and the Defendants agree to enter into this Stipulated Confidentiality Agreement and Protective Order (hereinafter "Stipulated Protective Order") for the purpose of facilitating and expediting the discovery process and to reduce the Court's time from having to conduct separate hearings on the information sought to be protected. In order to protect their alleged confidential documents, proprietary interests and trade secret information, the Defendants wish to ensure that any such Confidential Information shall not be used for any purpose other than this action and shall not be made public or disseminated by any party or their counsel, except as set forth in this Stipulated Protective Order.

The Defendants assert that all documents, testimony, and/or other items to be produced pursuant to this Stipulated Protective Order contain trade secret, proprietary and/or confidential

information (referred to collectively as "Confidential Information"). Accordingly, the parties stipulate to the following:

1. For the purposes of this Stipulated Protective Order, "Confidential Information" may include, but is not limited to, information and documentation produced in responses to discovery, the content of electronically stored information, tangible thing, writing, paper, model, photograph, film, videotape, transcript of oral testimony, whether printed, recorded or produced by hand or any other mechanical process. All documents, testimony and other items designated as Confidential Information, and all copies, summaries, and reproductions of such information, are subject to this Stipulated Protective Order.

2. Whenever the Defendants produce Confidential Information, the Defendants shall designate each page of the document or thing with a label or stamp identifying it as "Confidential" and/or "Produced Pursuant to Protective Order." Inadvertent or unintentional production of documents or information containing Confidential Information that are not designated "Confidential" shall not be deemed a waiver, in whole or in part, of a claim for confidential treatment; however, if Defendants do not designate such documents or things as Confidential Information within 30 days of discovering such inadvertent production, any such claim to confidentiality of said document, information or thing produced shall be deemed waived.

3. All material which the Defendants designate as Confidential Information in this action shall be maintained in strict confidence by the parties to this action and pursuant to the terms of this Stipulated Protective Order. Plaintiffs shall not disclose or permit to be disclosed Confidential Information to any person or other entity, except to "Qualified Persons" who shall be defined to include:

   a. Counsel of record for the parties in this action, and employees of such counsel who are engaged in assisting counsel with this action, provided they have first read this Stipulated Protective Order and have agreed to abide by its terms;

   b. The employee(s) of a corporate party charged with overseeing that party's participation in this action, provided they have first read this Stipulated Protective Order and have agreed to abide by its terms;

   c. Independent experts and/or consultants, including jury consultants, retained by the parties to this action for the purpose of assisting in the preparation of this case, provided they have first read this Stipulated Protective Order and have agreed to abide by its terms and have signed a written certification in the form attached as "Exhibit A." Counsel for all parties to this action shall maintain such certifications for 6 months following the termination of this Action and will not destroy or alter such material pursuant to any document retention policy or for any other reason

without first providing reasonable notice (no shorter than 30 days) to counsel of record in this case;

d.     Witnesses who may be shown and questioned about the Confidential Information and whose testimony as well as the information attached or submitted as exhibits, shall remain subject to this Stipulated Protective Order; and

e.     The court, court personnel, special masters, mediators, other persons appointed by the court in this action, stenographic and other reporters, and videographers pursuant to the provisions of Paragraph 5.

4.     Any person who reviews the Confidential Information produced subject to this Stipulated Protective Order agrees to the jurisdiction over their person where the above-captioned matter is pending for the purposes of any action seeking to enforce the terms of this Stipulated Protective Order or any action for contempt for violation of the terms of this Stipulated Protective Order.

5.     The parties and their counsel who receive Confidential Information shall act to preserve the confidentiality of designated documents and information. Any party that intends to use or submit any Confidential Information in connection with any pre-trial proceedings or filings shall notify the producing party in writing of its intention to do so at the time of or before filing any related pleadings, motions or other documents, and provide in such notice the Bates numbers or other sufficient description of such Confidential Information as to allow the producing party to identify the Confidential Information. The Confidential Information shall be submitted to the Court *in camera* in a sealed envelope or other appropriate container labeled as follows: "CONFIDENTIAL – DOCUMENTS SUBMITTED IN CAMERA" if used as exhibits to any filings in this case or in hearings.

6.     If a party disagrees with the "Confidential" designation of a specific document or thing, the parties agree to attempt to meet and confer with one another to resolve the issue. If the parties are unable to resolve the issue, the party that intends to use the Confidential Information shall move for a hearing to obtain a ruling from the Court as to whether the information is entitled to confidential treatment under this Stipulated Protective Order. Until the issue of confidentiality is resolved, either through mutual agreement of the parties or by court intervention, documents designated as Confidential Information shall remain Confidential.

7.     Confidential Information may be referred to by a party in notices, motions, briefs or any other pleadings, may be used in depositions, and may be marked as deposition exhibits in this action. No such information shall be used, however, for any of these purposes unless it, or the portion where it is revealed, is appropriately marked and protected from dissemination and, where filing is necessary, it will be done pursuant to the provisions of Paragraph 5.

8. If any party wishes to modify this Stipulated Protective Order or its application to certain documents or information, that party shall first request such modification from the party producing the Confidential Information and if no satisfactory agreement is reached, may petition the court for modification. Until modification is granted by agreement and/or Court Order, the terms of this Stipulated Protective Order will govern.

9. Nothing in this Stipulated Protective Order shall be construed as placing a limit on the use of Confidential Information at trial. However, before trial, the parties will address this issue and determine appropriate safeguards to protect the Confidential Information at trial.

10. No Confidential Information shall be disseminated to anyone who is a direct competitor of the party producing the Confidential Information or is a current employee of a direct business competitor of the party producing the Confidential Information. This paragraph shall not apply to any retained or consulting experts. However, any retained or consulting experts excluded under this paragraph shall comply with paragraph 3(c). In addition, said expert(s) s hall n ot disclose the Confidential Information to any direct competitor or other person currently or formerly employed by a direct business competitor of the party producing the Confidential Information. *P's' counsel shall retain Declarations executed by Consulting Experts.* ~~W~~ CCS

11. Failure to abide by the terms of this Stipulated Protective Order may result in a motion for sanctions, costs, and attorney's fees, and any other appropriate legal action by or on behalf of the Defendants.

12. This Stipulated Protective Order and/or the Defendants' production of documents, things, or information in this action for inspection, copying, or disclosure to any other party to this action shall not be deemed to waive any claim of attorney-client or work product privilege that might exist with respect to these or any other documents or communications, written or oral, including, without limitation, other communications referred to in any documents which the Defendants may produce.

13. Within thirty (30) days from the entry of final judgment, settlement, or dismissal in connection with this action, each party to this action shall return to counsel for the Defendants their original copies of all Confidential Information received under this Stipulated Protective Order, together with all reproductions and copies. In addition, all abstracts, summaries, indexes or other writings that contain, reflect, or disclose the substance of the Confidential Information received under this Stipulated Protective Order shall be destroyed by Plaintiffs' counsel within six (6) months from the entry of final judgment, settlement, or dismissal in connection with this action. Each party's counsel will certify by declaration to the Defendants' counsel that this Stipulated Protective Order has been complied with by them and their experts/consultants in the form attached as "Exhibit B."

This Court retains and shall have continuing jurisdiction over the parties and recipients of the Confidential Information and Protected Documents for enforcement of the provisions of this Stipulated Protective Order until compliance with Paragraph 13. This Stipulated Protective Order shall be binding upon the parties and their attorneys, successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.

SIGNED this the _____ day of _____, 2013.

_____
JUDGE PRESIDING

AGREED:


By: _____
George W. Mauze, II
State Bar No. 13238800
Tom Bagby
State Bar No. 24059409

**Mauze & Bagby, PLLC**
2632 Broadway, Suite 401 South
San Antonio, Texas 78215
Telephone:    (210) 354-3377
Facsimile:    (210) 354-3909


By: _____
Wayne B. Mason
State Bar No. 13158950
Alan Vickery
State Bar No. 20571650

**SEDGWICK LLP**
1717 Main Street, Suite 5400
Dallas, Texas 75201-7367
Telephone:    (469) 227-8200
Facsimile:    (469) 227-8004

## EXHIBIT "A"

**[ATTACH FULLY EXECTUED STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER TO THIS AFFIDAVIT]**

CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU, as Next Friend of ██████████████, a Minor, et al., | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| vs. | § § | |
| NCDR, LLC d/b/a KOOL SMILES, DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES, AISHWARYA K. CHANDESH, D.D.S., EDWARD HO, D.D.S., RICHARD I. MANWARING, D.D.S., and MARC D. THOMAS, D.D.S., | § § § § § § § § § | 370th JUDICIAL DISTRICT |
| Defendants. | § | HIDALGO COUNTY, TEXAS |

## DECLARATION OF [INSERT NAME OF DECLARANT] RE STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

STATE OF _____ )
                        ) ss.
COUNTY OF _____ )

I, _____, declare under penalty of perjury under
     (insert name of recipient of the documents)
the laws of the **[IDENTIFY STATE/United States of America]** that the following is true and correct:

1.     My full name and business address are:

_____.

2.     I have read and fully understand the attached Stipulated Confidentiality Agreement and Protective Order.

3.     I am fully familiar with and agree to comply with and be bound by the provisions

of said Stipulated Confidentiality Agreement and Protective Order, and submit to the jurisdiction of the court in which this matter is pending for any proceedings with respect to said Stipulated Confidentiality Agreement and Protective Order.

4. I will not discuss or divulge to persons other than those specifically authorized by this Stipulated Confidentiality Agreement and Protective Order, and will not copy or use, except solely for the purposes of this action and for no other purposes, any documents, materials or information obtained pursuant to said Stipulated Confidentiality Agreement and Protective Order.

5. I will return original copies of all Confidential Information received under this Stipulated Confidentiality Agreement and Protective Order, together with all reproductions and copies of the Confidential Information to counsel that retained me in this case.

EXECUTED this _____ day of _____, 2013.

_____
Signature of Declarant

_____
Printed Name

CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU, as Next Friend of | § | IN THE DISTRICT COURT OF |
| ███████████████████ | § | |
| al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| | § | |
| vs. | § | |
| | § | 370th JUDICIAL DISTRICT |
| NCDR, LLC d/b/a KOOL SMILES, | § | |
| DENTISTRY OF BROWNSVILLE, P.C. | § | |
| d/b/a KOOL SMILES, AISHWARYA K. | § | |
| CHANDESH, D.D.S., EDWARD HO, | § | |
| D.D.S., RICHARD I. MANWARING, | § | |
| D.D.S., and MARC D. THOMAS, D.D.S., | § | |
| | § | |
| Defendants. | § | HIDALGO COUNTY, TEXAS |

**DECLARATION OF [INSERT NAME OF DECLARANT] RE STIPULATED
CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER**

STATE OF _____ )

_____ ) ss.

COUNTY OF _____ )

I, _____, declare under penalty of perjury under
   (insert name of recipient of the documents)

the laws of the **[IDENTIFY STATE/United States of America]** that the following is true and

correct:

1.     I am counsel of record for **[name of party]**.  My full name and business address

are:

_____.

(insert name and address of recipient of the documents)

2.     I am bound by the terms and conditions of the Stipulated Confidentiality

Agreement and Protective Order.  I acknowledged my consent to be so bound by executing the

attached Stipulated Confidentiality Agreement and Protective Order.

3.      Pursuant to Paragraph 12 of the Stipulated Confidentiality Agreement and Protective Order attached hereto, I acknowledge that I am obligated to return original copies of all Confidential Information received under this Stipulated Confidentiality Agreement and Protective Order, together with all reproductions and copies of the Confidential Information within thirty (30) days from the entry of final judgment, settlement, or dismissal in connection with this action.

4.      I certify that I have returned original copies of all Confidential Information received under this Stipulated Confidentiality Agreement and Protective Order, together with all reproductions and copies of the Confidential Information to counsel for the Defendants.

5.      I certify that I have received all Confidential Information and Documents provided to the experts and consultants hired in this action on behalf of my client(s). I further certify that I have returned such Confidential Information, together with all reproductions and copies of the Confidential Information, to counsel for the Defendants.

EXECUTED this _____ day of _____, 2013.

_____
Signature of Declarant

_____
Printed Name

FILED
14-0851
10/17/2014 1:32:06 PM
tex-2869720
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

NO. 14-__0851_____

IN THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE KOOL SMILES DENTAL LITIGATION

MOTION FOR TRANSFER TO MULTIDISTRICT LITIGATION PRETRIAL COURT

**SEDGWICK LLP**
Wayne B. Mason
Texas Bar No. 13158950
wayne.mason@sedgwicklaw.com
Alan R. Vickery
Texas Bar. No. 20571650
alan.vickery@sedgwicklaw.com
Cori C. Steinmann
Texas Bar No. 24046908
cori.steinmann@sedgwicklaw.com
1717 Main Street, Suite 5400
Dallas, TX 75201
(469) 227-8200 Telephone
(469) 227-8004 Facsimile

**ATLAS, HALL & RODRIGUEZ, LLP**
Eduardo R. Rodriguez
Texas Bar No. 00000080
errodriguez@atlashall.com
50 W. Morrison Road, Suite A
Brownsville, TX 78520
Telephone (956) 574-9333
Facsimile (956) 574-9337

*Attorneys for Benevis, LLC f/k/a NCDR, LLC,*
*Dentistry of Brownsville, P.C., and Kool Smiles, P.C.*

19589154v1

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ..................................................................................... i

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION AND FACTUAL BACKGROUND ............................................1

ARGUMENTS AND AUTHORITIES .................................................................4

    All of the Kool Smiles Cases Involve Common Questions of Fact ................5

    Transfer of Related Cases will Serve the Convenience of the
    Parties and Witnesses and Promote the Just and Efficient
    Conduct of the Cases ...................................................................................7

    Plaintiffs Do Not Agree to this Motion .......................................................10

CONCLUSION .................................................................................................10

CERTIFICATE OF CONFERENCE....................................................................13

CERTIFICATE OF SERVICE .............................................................................13

CERTIFICATE OF COMPLIANCE....................................................................14

APPENDIX .......................................................................................................15

# TABLE OF AUTHORITIES

PAGE

**Cases**

*In re Alcon Shareholder Litig.*,
387 S.W.3d 121, 124 (Tex. M.D.L. Panel 2010) ...............................................4, 5

*In re Champion Indus. Sales, LLC*,
398 S.W.3d 812, 819 (Tex. App.—Corpus Christi 2012, orig. proceeding) .........7

*In re Delta Lloyds Ins. Co. of Houston*,
339 S.W.3d 384, 386 (Tex. M.D.L. Panel 2008) ...................................................5

*In re Hurricane Rita Evacuation Bus Fire*,
216 S.W.3d 70, 72 (Tex. M.D.L. Panel 2006) .......................................................5

*In re Silica Prods. Liab. Litig.*,
166 S.W.3d 3, 6 (Tex. M.D.L. Panel 2006) ...........................................................9

*In re Standard Guar. Ins. Co.*,
339 S.W.3d 398, 399-400 (Tex. M.D.L. Panel 2009)............................................4

*Paula Antu as Next Friend of A.N.E., a Minor, et al.
v. NCDR, LLC, et al., Cause No. C-0184-13-G, 370th District Court* .......... 1, 2, 8

*Texas Windstorm Ins. Assoc. Hurricanes Rita & Humberto Litig.*,
339 S.W.3d 401, 403 (Tex. M.D.L. Panel 2009) ...................................................5

**Rules**

Texas Rules of Judicial Administration 13....................................................1, 4, 10

Texas Rules of Judicial Administration 13.3(a) ..................................................5, 10

Texas Rules of Judicial Administration 13.3(a)(3)...................................................10

Texas Rules of Judicial Administration 13.3(l)..........................................................4

## Statutes

Texas Government Code §§ 74.161-164 ................................................................1, 4

Texas Government Code § 74.162.............................................................................4

|  |  |  |
|---|---|---|
|  | § | |
|  | § | |
|  | § | |
| IN RE KOOL SMILES | § | **JUDICIAL PANEL ON** |
| DENTAL LITIGATION | § | **MULTIDISTRICT LITIGATION** |
|  | § | |
|  | § | |
|  | § | |
|  | § | |

---

MOTION FOR TRANSFER TO MULTIDISTRICT LITIGATION PRETRIAL COURT

---

Benevis LLC, f/k/a NCDR, LLC ("Benevis"), Dentistry of Brownsville, P.C. ("DOB"), and Kool Smiles, P.C. ("KSPC") (collectively, the "Corporate Defendants") respectfully request that the Panel transfer the causes as set forth in the attached Appendix to a pretrial judge, pursuant to Sections 74.161-.164 of the Texas Government Code and Rule 13 of the Texas Rules of Judicial Administration.

I.    Introduction and Factual Background

On January 16, 2013, plaintiffs' counsel filed the first of eleven cases (the "Kool Smiles Cases") against the Corporate Defendants and four dentists who treated minor children in Kool Smiles clinics. That case, *Antu et al. v. NCDR et al.*, was assigned to and is currently pending in the 370th District Court in Hidalgo County, the honorable Judge Noe Gonzalez presiding.

Ten additional cases have been filed naming the Corporate Defendants. Significant discovery has been conducted in the *Antu* case and trial is currently set for May 11, 2015. Judge Gonzalez has conducted several pretrial hearings, issued numerous discovery-related rulings, is familiar with the issues involved, and is the only judge to have issued any discovery-related or substantive orders. In all, approximately 170 plaintiffs have filed suit on behalf of 128 minor children in cases pending in two district courts and several county courts at law in Hidalgo County. Plaintiffs' counsel have informed counsel for the defendants that they intend to file dozens of similarly sized suits on behalf of several hundred plaintiffs and their children in various counties in Texas. In all, the Corporate Defendants and the dentists employed or previously employed at Kool Smiles clinics have received pre-suit notice letters from over 900 patients who were treated in eight counties in Texas.

Each of the pending eleven cases sought to be transferred are dental malpractice cases in which multiple plaintiffs allege that minor children were given improper dental care at Kool Smiles clinics. The petitions in each case contain nearly identical allegations against the treating dentists and contain identical allegations against the Corporate Defendants. The plaintiffs in each of the pending Kool Smiles Cases are represented by Mauze & Bagby, PLLC. In addition, the Law Offices of James Moriarty and The Crosley Law Firm have sent pre-suit notice letters to the Corporate

Defendants and to numerous dentists employed or previously employed at Kool Smiles clinics in various counties across the state of Texas.

All of the defendants in the pending Kool Smiles Cases—including the treating dentists and the Corporate Defendants—are represented by Sedgwick LLP. The lawsuits are virtually identical, with the only differences being the names of the plaintiffs, the names of the minor children, the names of the treating dentists, and the dates of treatment rendered. Each suit alleges identical causes of action against the Corporate Defendants and the treating dentists.

Because all of the allegations against the Corporate Defendants are identical, discovery of information and documents from the Corporate Defendants is likely to be substantially the same in all cases. Likewise, because the allegations against the treating dentists are substantially similar, discovery of information and documents will be similar. Therefore, it is in the interest of efficiency to transfer these cases to a single pretrial court so that the defendants need only respond to discovery once. Moreover, while the plaintiffs' claims in each case present unique questions of fact and law, all of the cases present certain common legal issues that should be decided in a consistent manner by one court. Transfer of these lawsuits to a single pretrial court for consolidated[1] and coordinated pretrial proceedings will eliminate duplicative discovery, avoid conflicting legal rulings, conserve judicial resources, be more

---

[1] The filing of this motion and the contents therein should not be taken as an endorsement or admission that the joinder of any claimants for trial purposes is appropriate.

convenient for the parties and witnesses, and will otherwise promote the just and efficient conduct of all of the actions.

## II.   Arguments and Authorities

Pursuant to Rule 13 of the Rules of Judicial Administration and Sections 74.161-164 of the Texas Government Code, this Panel is authorized to transfer "related" cases involving one or more common questions of fact from different trial courts to a single pretrial court, if transferring the cases will 1) serve the convenience of the parties and witnesses and 2) promote the just and efficient conduct of the litigation.  TEX. GOV'T CODE 74.162; TEX. R. JUD. ADMIN. 13.3(l).  This Panel has consistently ruled that cases with identical allegations that are tied to the conduct of all defendants—like the allegations in all eleven of the Kool Smiles Cases—should be transferred for pretrial proceedings.  *See, e.g., In re Alcon Shareholder Litig.*, 387 S.W.3d 121, 124 (Tex. M.D.L. Panel 2010) (ruling that the relatedness requirement is "necessarily" satisfied when cases share "identical allegations of wrongdoing arising out of the same set of facts"); *In re Standard Guar. Ins. Co.*, 339 S.W.3d 398, 399-400 (Tex. M.D.L. Panel 2009) (transferring cases with identical generalized allegations);

*In re Delta Lloyds Ins. Co. of Houston*, 339 S.W.3d 384, 386 (Tex. M.D.L. Panel 2008) (transferring cases with identical[2] allegations).

A. All of the Kool Smiles Cases Involve Common Questions of Fact

To transfer cases to a pretrial court, Rule 13 requires that the cases be "related" to one another. TEX. R. JUD. ADMIN. 13.3(a). This means that the cases must "involve one or more common questions of fact." *Id.* There is no requirement, however, that the cases be "congruent or anything close to it." *In re Hurricane Rita Evacuation Bus Fire*, 216 S.W.3d 70, 72 (Tex. M.D.L. Panel 2006). Likewise, cases involving "separate and distinct fact patterns" are not necessarily precluded from transfer because they may still be "related." *See Texas Windstorm Ins. Assoc. Hurricanes Rita & Humberto Litig.*, 339 S.W.3d 401, 403 (Tex. M.D.L. Panel 2009) (transferring cases with identical generalized allegations, despite having "forty-two separate and distinct fact patterns").

Each of the Kool Smiles cases involves one or more common questions of fact because the plaintiffs in each case allege *identical* facts against the Corporate Defendants and allege *identical* causes of action against all defendants. Similarly, the

---

[2] The Panel in *In Re Delta Lloyds* determined that some cases should not be transferred because the generalized pleadings were not tied to the unique fact patterns of each claimant. In the Kool Smiles Cases, however, the Plaintiffs seek to directly tie the acts and omissions of the Corporate Defendants to the individualized treatment of each minor child. Thus, the general rule applies and the identical and highly specific pleadings in the Kool Smiles Cases "necessarily" satisfy the relatedness requirement. *See In re Alcon Shareholder Litig.*, 387 S.W.3d at 124.

nature of the allegations asserted against the treating dentists are nearly identical in each case, with the only substantive differences being the names of the plaintiffs and minor children, the names of the treating dentists, and the dates on which the minors were treated. In response, the treating dentists and Corporate Defendants assert identical defenses in all eleven cases.

The plaintiffs in each case allege that a similar set of operative facts gave rise to the various causes of action for which they brought suit. Specifically, each plaintiff in every case alleges that

1. Benevis is engaged in the unlicensed practice of dentistry;
2. Benevis manages, operates, and controls the Kool Smiles clinics at which the plaintiffs' minor children received treatment—such acts constituting negligence;
3. DOB and KSPC were negligent in their training and supervision of the treating dentists;
4. DOB and KSPC engaged in conduct constituting a civil conspiracy;
5. The Corporate Defendants entered into and operated a joint enterprise to generate and share revenue from the dental procedures performed at Kool Smiles clinics;
6. The treating dentists provided negligent treatment to the minor children on whose behalf the suits were filed; and
7. Each of the treating dentists committed fraud by making "material misrepresentations" regarding the diagnosis and treatment of the minor children.

Discovery on these issues will likely involve similar documents and testimony from common fact witnesses and corporate representatives, especially with respect to the extent to which the Corporate Defendants played a role in the treatment of the

children. In fact, the plaintiffs have served and the defendants have responded to extensive discovery requests on each of the points above; without coordination of discovery, the Corporate Defendants and treating dentists will likely be subjected to duplicative and extremely expensive and burdensome discovery demands. Because each case involves identical or similar allegations with respect to several questions of fact, the Kool Smiles Cases are clearly "related."

B. Transfer of Related Cases will Serve the Convenience of the Parties and Witnesses and Promote the Just and Efficient Conduct of the Cases

The goal of transfer to a pretrial court is to eliminate duplicative discovery, minimize demands on witnesses, prevent inconsistent decisions of common issues, and lessen unnecessary travel. *In re Champion Indus. Sales, LLC*, 398 S.W.3d 812, 819 (Tex. App.—Corpus Christi 2012, orig. proceeding). As set forth below, transferring the Kool Smiles Cases will achieve each of those goals for several parties and witnesses.

If the cases are transferred, the pretrial judge will be able to eliminate duplicative discovery by issuing a consistent and comprehensive ruling on written discovery and depositions. Consolidating and coordinating all pretrial matters will enable the parties to reduce or eliminate duplicative depositions. Additionally, the pretrial court can establish a master scheduling order, a document depository, and a single protective order, all of which will contribute to the efficiency of the litigation as

a whole. If so inclined, the pretrial court could also rule on objections to expert witnesses and implement other procedures to ensure that pretrial matters run consistently and efficiently. Plaintiffs in every case would benefit from having access to all of the master discovery.

Many witnesses with knowledge of facts relevant to plaintiffs' allegations against the Corporate Defendants live out of state. Therefore, without pretrial coordination, the travel demands could be extensive on both sets of lawyers—who reside in Texas—and potentially for the witnesses as well. In the *Antu* case, for instance, the plaintiffs have noticed depositions of four out of state witnesses. Because the plaintiffs' allegations against the Corporate Defendants are identical, the potential exists for those witnesses to be deposed in every case, which could mean that the parties could be required to travel out of state hundreds of times sans discovery limitations. Allowing one court to craft appropriate discovery limitations eliminates the potential for unnecessary duplication of discovery and satisfies the goals of establishing a pretrial court.

Moreover, transfer of the Kool Smiles Cases will promote the just and efficient handling of each existing and subsequent case. The voluminous discovery that may be propounded in each action, and the motion practice which accompanies it, has the potential to strain judicial resources and crowd the dockets of the court in which they are filed. Transfer to a single pretrial court would help minimize the potential for

problems and would save judicial resources by preventing duplicative discovery and resolving disputes a single time in a single forum. Additionally, the pretrial court can devote substantially more time to each case, as they are less likely to simply become "one of many cases on a crowded docket competing for attention." *In re Silica Prods. Liab. Litig.*, 166 S.W.3d 3, 6 (Tex. M.D.L. Panel 2006).

Finally, transfer to one pretrial court ensures that all pretrial issues will be decided consistently, promoting the just handling of each case. Without consistent rulings, the parties may not be on equal footing and inequitable results may occur if one judge rules one way and another judge rules another way on the same matter. In addition, consistent rulings "promote agreements because lawyers will know where the court stands on recurring issues." *Id.*

Consistent rulings are extremely important in the Kool Smiles Cases because of the specific allegations made by the plaintiffs. As noted above, the plaintiffs seek to hold the Corporate Defendants liable for practicing dentistry without a license. Their petitions attempt to couch common malpractice and negligence claims as violations of the licensing portions of the Texas Dental Practice Act—which provides no private cause of action. How a court rules on this issue directly impacts the scope of discovery and the potential for resolving the cases, at least in part, on summary judgment. If transferred to a single pretrial court, the rulings made on this issue would greatly impact the just handling of each case and promote agreements between the

lawyers for each side. Most importantly, having a consistent ruling on the issue of whether plaintiffs can assert a private cause of action for alleged violations of the Texas Dental Practices Act would prevent the potential for inequitable results arising from inconsistent rulings from one court to the next.

## C. Plaintiffs Do Not Agree to this Motion

Pursuant to Rule 13.3(a), this certifies that counsel for movants conferred with counsel for plaintiffs' in the causes, as set forth in the Appendix, and plaintiffs in the Kool Smiles Cases do not agree to this motion. *See* Tex. R. Jud. Admin. 13.3(a)(3). In addition, the defendant dentists in each of the pending cases, as identified in the Appendix, agree to this motion.

## III. Conclusion

The goals of Rule 13 would be met by transferring the Kool Smiles Cases to a single court for pretrial matters. Transferring these related cases would eliminate duplicative and repetitive discovery, minimize conflicting demands on witnesses, prevent inconsistent decisions on common issues, reduce unnecessary travel, and intelligently allocate finite judicial resources.

WHEREFORE, Defendants Benevis, LLC f/k/a NCDR, LLC, Dentistry of Brownsville, P.C., and Kool Smiles, P.C. respectfully request the Panel to issue an

Order transferring the causes listed in the attached Appendix to a pretrial court for coordination.

Respectfully submitted,

**BENEVIS, LLC, F/K/A NCDR, LLC, DENTISTRY OF BROWNSVILLE, P.C., AND KOOL SMILES, P.C.**

By: /s/ Wayne B. Mason

SEDGWICK LLP
Wayne B. Mason
Texas Bar No. 13158950
wayne.mason@sedgwicklaw.com
Alan R. Vickery
Texas Bar. No. 20571650
alan.vickery@sedgwicklaw.com
Cori C. Steinmann
Texas Bar No. 24046908
cori.steinmann@sedgwicklaw.com
1717 Main Street, Suite 5400
Dallas, TX 75201
(469) 227-8200 Telephone
(469) 227-8004 Facsimile

ATLAS, HALL & RODRIGUEZ, LLP
Eduardo R. Rodriguez
Texas Bar No. 00000080
errodriguez@atlashall.com
50 W. Morrison Road, Suite A
Brownsville, TX 78520
Telephone (956) 574-9333
Facsimile (956) 574-9337

**ATTORNEYS FOR DEFENDANTS BENEVIS, LLC F/K/A NCDR, LLC, DENTISTRY OF BROWNSVILLE, P.C., AND KOOL SMILES, P.C.**

**CERTIFICATE OF CONFERENCE**

I hereby certify that on Friday, October 17, counsel for movants conferred with counsel for plaintiffs in all cases for which transfer is sought, at which time Plaintiffs' counsel indicated that plaintiffs are opposed to same.

/s/ Alan R. Vickery
**ALAN R. VICKERY**

**CERTIFICATE OF SERVICE**

I certify that on the 17th day of October, 2014, a true and correct copy of this Motion for Transfer to Multidistrict Litigation Pretrial Court, together with this proof of service, was duly filed with the Clerk of the Supreme Court of Texas through eFile.TXCourts.gov; was served upon all counsel for parties in the cases listed in the Appendix attached hereto, as required by Rules 13.3(f) and (h) of the Texas Rules of Judicial Administration; and upon receipt of the cause number in this matter filed with the Judicial Panel on Multidistrict Litigation, the Motion for Transfer to Multidistrict Litigation Pretrial Court will be served upon each trial court identified in the cases listed in the Appendix, as required by Rule 13.3(i) of the Texas Rules of Judicial Administration.

/s/ Alan R. Vickery
**ALAN R. VICKERY**

# CERTIFICATE OF COMPLIANCE

I hereby certify that Defendant's Motion for Transfer to Multidistrict Litigation Pretrial Court complies with the word limit of Rule 9.4(i)(2)(d) because it contains 2,172 words, excluding the parts of the motion exempted by the rule.

 /s/ Alan R. Vickery
**ALAN R. VICKERY**

**NO. 14-_____**

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| | § | |
IN RE KOOL SMILES | § | **JUDICIAL PANEL ON** |
DENTAL LITIGATION | § | **MULTIDISTRICT LITIGATION** |
| | § | |
| | § | |
| | § | |

---

APPENDIX

---

1. *Alanis et al. v. NCDR et al.*, Cause No. CL-14-3575-H, pending in the County Court at Law No. 8, Hidalgo County, Texas

2. *Alanis et al. v. NCDR et al.*, Cause No. CL-14-3574-D, pending in the County Court at Law No. 4, Hidalgo County, Texas

3. *Alanis et al. v. NCDR et al.*, Cause No. CL-14-3576-B, pending in the County Court at Law No. 2, Hidalgo County, Texas

4. *Alaniz et al v. NCDR et al.*, Cause No. CL-14-3570-F, pending in the County Court at Law No. 6, Hidalgo County, Texas

5. *Antu et al. v. NCDR et al.*, Cause No. C-0184-13-G, pending in the 370th District Court, Hidalgo County, Texas

6. *Aparicio et al. v. NCDR et al.*, Cause No. CL-14-3567-D, pending in the County Court at Law No. 4, Hidalgo County, Texas

7. *Aranda et al. v. NCDR et al.*, Cause No. CL-14-3560-A, pending in the County Court at Law No. 1, Hidalgo County, Texas

8. *Armendariz et al. v. NCDR et al.*, Cause No. CL-14-3572, pending in the County Court at Law No. 8, Hidalgo County, Texas

9. *Arroyo et al. v. NCDR et al.*, Cause No. CL-14-3569-D, pending in the County Court at Law No. 4, Hidalgo County, Texas

10. *Cantu et al. v. NCDR et al.*, Cause No. C-5976-14-D, pending in the 206th District Court, Hidalgo County, Texas

11. *De La Rosa et al. v. NCDR et al.*, Cause No. CL-14-3563-D, pending in the County Court at Law No. 4

Counsel for plaintiffs in the above-referenced causes:

George W. Mauze, II
Texas Bar No. 13238800
Tom Bagby
Texas Bar No. 24059409
**Mauze & Bagby, PLLC**
2632 Broadway, Suite 401 South
San Antonio, TX 78215
(210) 354-3377 Telephone
(210) 354-3909 Facsimile
gmauze@mauzelawfirm.com
tbagby@mauzebagbylaw.com

R. D. "Bobby" Guerra
Texas Bar No. 08578640
**Guerra, Leeds, Sabo & Hernandez, PLLC**
10213 N. 10th Street
McAllen, TX 78504
(956) 383-4300 Telephone
(956) 383-4304 Facsimile
rdguerra@wglawfirm.com

# ORDER OF MULTIDISTRICT LITIGATION PANEL

Order Pronounced March 25, 2015

<u>APPOINTMENT OF PRETRIAL JUDGE IN THE FOLLOWING MULTIDISTRICT
LITIGATION CASE:</u>

14-0851        IN RE KOOL SMILES DENTAL LITIGATION

The Motion for Transfer, filed by Benevis LLC, f/k/a NCDR, LLC, is granted.
Pursuant to Rule 13 of the Texas Rules of Judicial Administration, the cases listed in the
Appendix of the Motion for Transfer and all tag-along cases, if any, are transferred to
Judge Noe Gonzalez of the 370th District Court of Hidalgo County.

Chief Justice McClure delivered the opinion of the MDL Panel.

CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU AS NEXT FRIEND OF ▬▬ ▬ ▬▬, A MINOR, et al | § § § § | IN THE DISTRICT COURT |
| PLAINTIFFS, | § § § | |
| V. | § § | 370TH JUDICIAL DISTRICT |
| NCDR, LLC d/b/a KOOL SMILES, et al | § § § | |
| DEFENDANTS. | § | HIDALGO COUNTY, TEXAS |

**PLAINTIFFS' MOTION TO AMEND CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER OR, ALTERNATIVELY, MOTION FOR SANCTIONS OR, ALTERNATIVELY, FOR DETERMINATION OF CONFIDENTIALITY**

TO THE HONORABLE NOE GONZALEZ, JUDGE PRESIDING:

COME NOW Plaintiffs PAULA ANTU AS NEXT FRIEND OF ▬▬▬▬, A MINOR; SCARLETT AYALA AS NEXT FRIEND OF ▬▬▬▬, A MINOR; GUADALUPE CEPEDA AS NEXT FRIEND OF ▬▬▬▬, A MINOR; ANA LAURA CORNEJO AS NEXT FRIEND OF ▬▬▬▬, A MINOR; MARIO CUELLAR AND PRISCILLA TRUJILLO AS NEXT FRIENDS OF ▬▬▬▬, A MINOR; MARIA GAYTÁN AS NEXT FRIEND OF ▬▬▬▬, A MINOR; ELIZABETH GONZALEZ AND MARCO REYES AS NEXT FRIENDS OF ▬▬▬▬, A MINOR; FRANCISCA GUZMAN AS NEXT FRIEND OF ▬▬▬▬, A MINOR; ISMAEL MALDONADO AND ISABEL MALDONADO AS NEXT FRIENDS OF ▬▬▬▬, A MINOR; FREISI OLIVAR AS NEXT FRIEND OF ▬▬▬▬ A MINOR; MARY ROSALES AS NEXT FRIEND OF ▬▬▬▬ A MINOR; AND REYNOL SALINAS AS NEXT FRIEND OF ▬▬▬▬ A MINOR, (hereinafter collectively referred to as "Plaintiffs") and file this, Plaintiffs' Motion To Amend Confidentiality Agreement And Protective Order Or, Alternatively, Motion

For Sanctions Or, Alternatively, For Determination Of Confidentiality. In support of same, Plaintiffs would show unto this Honorable Court as follows:

## I.
## PROCEDURAL HISTORY

On June 11, 2013, the parties agreed to, and the Court entered, a Stipulated Confidentiality Agreement and Protective Order (the "Protective Order"). A copy of the Protective Order is attached hereto as Exhibit "A". Pursuant to said order, Defendants Dentistry of Brownsville, P.C. d/b/a Kool Smiles, NCDR, LLC d/b/a Kool Smiles and Kool Smiles, P.C. d/b/a Kool Smiles (hereinafter together referred to as "Defendants") were permitted to designate documents produced as either "Confidential" and/or "Produced Pursuant to Protective Order" if said documents contain trade secret, proprietary, and/or confidential information (hereinafter referred to as "Confidential Information"). The Order provides that if the "Confidential" designation is contested, then the parties should attempt to confer and, if the matter is not resolved, then Plaintiffs shall move for a hearing to determine confidentiality.

In response to Plaintiffs' requests for production, several agreements reached after conferring, and several hearings and Court orders compelling discovery, Defendants have produced approximately 477,964 pages of responsive documents. Defendants have designated the overwhelming majority of said documents as "Confidential" although the documents clearly do not contain trade secret, proprietary, and/or confidential information. Defendants designated blank pages, fully redacted pages, public medical articles, government regulations, and documents publically disseminated as "Confidential".

From the inception of this lawsuit, Defendants have delayed and obstructed the discovery process. Defendants failed to produce documents in violation of a Court order[1], unilaterally redacted documents ordered produced by the Court, failed to produce complete copies of responsive documents, and failed to segregate and identify documents responsive to specific requests for production. Defendants disregard for Court orders and the Texas Rules of Civil Procedure have resulted in several motions to compel discovery which necessitated this Court's intervention[2].

## II.
## ABUSE OF THE DISCOVERY PROCESS

Texas Rule of Civil Procedure 215.2 states that a failure to obey an order is an abuse of the discovery process. Texas Rule of Civil Procedure 215.3 states that any discovery response that is unreasonably frivolous or made for purposes of delay is also an abuse of the discovery process. Here, Defendants designated thousands of responsive documents as "Confidential" asserting that they contain trade secret, proprietary, and/or confidential information despite that the designated documents clearly do not contain Confidential Information. By way of example, and attached hereto as Exhibit "B" are blank pages and fully redacted documents that Defendants have represented contain Confidential Information. Moreover, attached as Exhibit "C" are the following public documents that Defendants have marked as containing Confidential Information: (1) Texas State Board of Dental Examiners Rules and Regulations;

---

[1] By way of one example, on July 24, 2013, the Court granted Plaintiffs' Motion To Compel, overruled Defendants' objections and claims of privilege pertaining to documents withheld from production, and ordered Defendants of Brownsville, P.C. d/b/a Kool Smiles (hereinafter referred to as "DOB") and NCDR, LLC d/b/a Kool Smiles (hereinafter referred to as "NCDR") to produce all documents titled "Office Scorecard - Medicaid Children". Thereafter, DOB and NCDR amended its discovery response and privilege log and represented to the Court and Plaintiffs that no responsive documents existed. During a subsequent hearing, Plaintiffs produced a copy of said document to the Court. After the Court again granted Plaintiffs' Motion To Compel, DOB and NCDR produced over 1,901 pages of documents titled "Office Scorecard - Medicaid Children".

[2] On May 16, 2013, Plaintiffs filed a motion to compel discovery from DOB and NCDR. Said Motions were heard on June 10th, 17th, and 20th. On July 30, 2013, Plaintiffs filed a second motion to compel discovery from DOB and NCDR and for sanctions. Said hearings were heard on August 22nd and September 3rd. On September 3, 2014, Plaintiffs filed a third motion to compel discovery from DOB and NCDR, and filed a motion to compel against Kool Smiles, P.C. d/b/a Kool Smiles. The Court granted the vast majority of the discovery sought.

(2) The Department of Health and Human Services Guidelines for Infection Control in Dental Healthcare Settings — 2003; and (3) The American Academy of Pediatric Dentistry's Guideline on Carries-risk Assessment and Management for Infants, Children, and Adolescents. The aforementioned public documents that Defendants have represented contain Confidential Information are but a small sample of documents prepared for, and written by, persons other than Defendants. Further, attached as Exhibit "D" are publically disseminated documents that the Defendants have designated as confidential. Said documents have been designated as containing Confidential Information despite Defendants making the same documents available to the public. Defendants have failed to comply with the Protective Order by erroneously and frivolously designating documents as containing Confidential Information.

In addition, upon information and belief, Defendants have shared many of the documents that have been marked as containing Confidential Information with many different non-defendant entities and persons. Therefore, any document that has been shared and provided among and between a multitude of entities and persons, outside a confidentiality agreement, should not be afforded the privilege of being considered Confidential Information.

Defendants' frivolous designations of confidentiality are a clear abuse of the discovery process pursuant to Texas Rules of Civil Procedure 215.2 and 215.3.

## III.
## THREE REMEDIES

There are three remedies available to address and resolve this issue. First, this Court could amend the Protective Order to provide that the Protective Order and designation of

"Confidential Information" does not apply to any litigation against Defendants (there are 10 lawsuits filed against Defendants in Hidalgo County) or litigation against plaintiffs' attorneys filed by any of the Defendants (Case No. 5:12 – CV – 36 filed in the United States District Court for the Southern District of Texas, Laredo Division). Second, this Court could overrule all of Defendants' designations of "Confidential Information" as an abuse of discovery. Third, this Court could take on the overwhelming burden of inspecting each and every document designated as "Confidential Information" and determine whether such designation is appropriate.

IV.

**ARGUMENTS & AUTHORITIES**

The purpose of sanctions is to secure compliance with the rules, to deter future violation of the rules, and to punish parties that violate the rules. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992). When considering sanctions, a court should ensure that the punishment fits the crime. *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). When a court decides to sanction, the sanctions must have a direct relationship to the offensive conduct, measured by a direct nexus among the conduct, the offender, and the sanctions imposed. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006); *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003); TransAmerican, 811 S.W.2d at 917. A court must not impose sanctions more severe than necessary to promote full compliance with the rules. *Am. Flood*, 192 S.W.3d at 583; *Spohn Hosp.*, 104 S.W.3d at 882; Chrysler Corp., 841 S.W.2d at 849.

Per the Protective Order, in order for Plaintiffs to challenge Defendants designation of confidentiality, the Court must rule on whether the information that Defendants have marked

as Confidential Information is entitled to confidential treatment under the Protective Order. Due to Defendants blatant abuse of the discovery process by designating nearly every responsive document as containing "Confidential Information", the Defendants have subjected the Court and Plaintiffs to an undue burden and have clearly abused the discovery process. Moreover, Defendants' erroneous designations of confidentiality are unreasonably frivolous, oppressive, harassing, and made for purposes of delaying this litigation. Based on the foregoing, and pursuant to Texas Rules of Civil Procedure 215.2 and 215.3, Plaintiffs ask the Court to impose sanctions against Defendants by overruling all of Defendants' designations of confidentiality and ordering that the documents already produced by Defendants in response to Plaintiffs' requests for production are not subject to the Protective Order. These sanctions are justified because there is a direct relationship between Defendants' conduct and this request for sanctions. These sanctions are no more severe than necessary. Alternatively, Due to Defendants' repeated abuse of the discovery process, and rather than being forced to rule on numerous erroneous designations of confidentiality, this Court should overrule all of Defendants confidential designations.

## V.
## CONCLUSION

The discovery process is intended to allow the orderly and efficient production of relevant documents so that disputes may be fairly resolved based upon the facts. Defendants have repeatedly, for over two years, obstructed the discovery process. Trial Courts are empowered with the authority to sanction a party for abusing the discovery process for failure to comply with an order and/or in making or resisting discovery. Defendants have again abused the discovery process by designating nearly all of their responsive documents as containing

Confidential Information. Plaintiffs seek this Court's intervention to address this discovery abuse.

## VI.
## CERTIFICATE OF CONFERENCE

Plaintiffs' provided Defendants' counsel with a copy of a similar motion in an attempt to confer regarding Defendants erroneous designations of confidentiality prior to the filing of this motion. Counsel to the parties attempted to confer regarding the same but were unable to reach an agreement. A copy of the written response of Defendants is attached hereto as Exhibit "E"

## VII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request a hearing on this motion and pray that the Court enter an order granting Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order or, Alternatively Motion For Sanctions, Or Alternatively, For Determination of Confidentiality and for such other and further relief to which Plaintiffs may be deemed entitled.

Respectfully submitted,

MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 401 South
San Antonio, Texas 78215
Telephone: 210.354.3377
Telecopier: 210.354.3909

By:
George W. Mauzé, II
State Bar No. 13238800
Tom Bagby
State Bar No. 24059409

GUERRA, LEEDS, SABO &
HERNANDEZ, PLLC
10213 N. 10th St.
McAllen, Texas 78504
Telephone: 956.383.4300
Telecopier: 956.383.4304

By:    R.D. "Bobby" Guerra
       State Bar No. 08578640

**ATTORNEYS FOR PLAINTIFFS**

**FIAT**

The foregoing Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order or, Alternatively, Motion For Sanctions, Or Alternatively, For Determination of Confidentiality, having been presented to me and a request for hearing made therein, is hereby set for hearing at 8:00 a.m. on the _____ day of December, 2014, in the 370th Judicial District Court, Hidalgo County Courthouse, Edindburg, Texas.

SIGNED AND ENTERED on this _____ day of November, 2014.

                              _____
                              HONORABLE NOE GONZALEZ,
                              JUDGE PRESIDING

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order or, Alternatively Motion For Sanctions, Or Alternatively, For Determination of Confidentiality has been sent by via fax and certified mail, return receipt requested, to Mr. Wayne B. Mason, Esq., Mr. Alan Vickery, Esq., & Ms. Cori C. Steinmann, Esq., Sedgwick LLP, 1717 Main Street, Suite 5400, Dallas, Texas 75201-7367, and

Mr. Eduardo R. Rodriguez, Esq., Atlas, Hall & Rodriguez, L.L.P., 50 W. Morrison Road, Suite A, Brownsville, TX 78520 on this 12th day of November, 2014.

_____
George W. Mauzé II

CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU, as Next Friend of  al., | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § § | |
| vs. | § § | |
| NCDR, LLC d/b/a KOOL SMILES, DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES, AISHWARYA K. CHANDESH, D.D.S., EDWARD HO, D.D.S., RICHARD I. MANWARING, D.D.S., and MARC D. THOMAS, D.D.S., | § § § § § § § § § | 370th JUDICIAL DISTRICT |
| Defendants. | § | HIDALGO COUNTY, TEXAS |

## STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

Defendants NCDR, L.L.C., Dentistry of Brownsville, P.C., Aishwarya K. Chandesh, D.D.S., Edward Ho, D.D.S., Richard I. Manwaring, D.D.S., and Marc D. Thomas, D.D.S. (hereinafter "Defendants") may disclose certain Confidential Information to the parties in this action pursuant to discovery. Plaintiffs Paula Antu, as Next Friend of ⬛⬛⬛, a Minor, et al. ("Plaintiffs") and the Defendants agree to enter into this Stipulated Confidentiality Agreement and Protective Order (hereinafter "Stipulated Protective Order") for the purpose of facilitating and expediting the discovery process and to reduce the Court's time from having to conduct separate hearings on the information sought to be protected. In order to protect their alleged confidential documents, proprietary interests and trade secret information, the Defendants wish to ensure that any such Confidential Information shall not be used for any purpose other than this action and shall not be made public or disseminated by any party or their counsel, except as set forth in this Stipulated Protective Order.

The Defendants assert that all documents, testimony, and/or other items to be produced pursuant to this Stipulated Protective Order contain trade secret, proprietary and/or confidential

STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER - Page 1
DL/3689995v1



PLAINTIFF'S EXHIBIT 4

information (referred to collectively as "Confidential Information"). Accordingly, the parties stipulate to the following:

1.  For the purposes of this Stipulated Protective Order, "Confidential Information" may include, but is not limited to, information and documentation produced in responses to discovery, the content of electronically stored information, tangible thing, writing, paper, model, photograph, film, videotape, transcript of oral testimony, whether printed, recorded or produced by hand or any other mechanical process. All documents, testimony and other items designated as Confidential Information, and all copies, summaries, and reproductions of such information, are subject to this Stipulated Protective Order.

2.  Whenever the Defendants produce Confidential Information, the Defendants shall designate each page of the document or thing with a label or stamp identifying it as "Confidential" and/or "Produced Pursuant to Protective Order." Inadvertent or unintentional production of documents or information containing Confidential Information that are not designated "Confidential" shall not be deemed a waiver, in whole or in part, of a claim for confidential treatment; however, if Defendants do not designate such documents or things as Confidential Information within 30 days of discovering such inadvertent production, any such claim to confidentiality of said document, information or thing produced shall be deemed waived.

3.  All material which the Defendants designate as Confidential Information in this action shall be maintained in strict confidence by the parties to this action and pursuant to the terms of this Stipulated Protective Order. Plaintiffs shall not disclose or permit to be disclosed Confidential Information to any person or other entity, except to "Qualified Persons" who shall be defined to include:

    a.  Counsel of record for the parties in this action, and employees of such counsel who are engaged in assisting counsel with this action, provided they have first read this Stipulated Protective Order and have agreed to abide by its terms;

    b.  The employee(s) of a corporate party charged with overseeing that party's participation in this action, provided they have first read this Stipulated Protective Order and have agreed to abide by its terms;

    c.  Independent experts and/or consultants, including jury consultants, retained by the parties to this action for the purpose of assisting in the preparation of this case, provided they have first read this Stipulated Protective Order and have agreed to abide by its terms and have signed a written certification in the form attached as "Exhibit A." Counsel for all parties to this action shall maintain such certifications for 6 months following the termination of this Action and will not destroy or alter such material pursuant to any document retention policy or for any other reason

without first providing reasonable notice (no shorter than 30 days) to counsel of record in this case;

    d.    Witnesses who may be shown and questioned about the Confidential Information and whose testimony as well as the information attached or submitted as exhibits, shall remain subject to this Stipulated Protective Order; and

    e.    The court, court personnel, special masters, mediators, other persons appointed by the court in this action, stenographic and other reporters, and videographers pursuant to the provisions of Paragraph 5.

4.    Any person who reviews the Confidential Information produced subject to this Stipulated Protective Order agrees to the jurisdiction over their person where the above-captioned matter is pending for the purposes of any action seeking to enforce the terms of this Stipulated Protective Order or any action for contempt for violation of the terms of this Stipulated Protective Order.

5.    The parties and their counsel who receive Confidential Information shall act to preserve the confidentiality of designated documents and information. Any party that intends to use or submit any Confidential Information in connection with any pre-trial proceedings or filings shall notify the producing party in writing of its intention to do so at the time of or before filing any related pleadings, motions or other documents, and provide in such notice the Bates numbers or other sufficient description of such Confidential Information as to allow the producing party to identify the Confidential Information. The Confidential Information shall be submitted to the Court *in camera* in a sealed envelope or other appropriate container labeled as follows: "CONFIDENTIAL – DOCUMENTS SUBMITTED IN CAMERA" if used as exhibits to any filings in this case or in hearings.

6.    If a party disagrees with the "Confidential" designation of a specific document or thing, the parties agree to attempt to meet and confer with one another to resolve the issue. If the parties are unable to resolve the issue, the party that intends to use the Confidential Information shall move for a hearing to obtain a ruling from the Court as to whether the information is entitled to confidential treatment under this Stipulated Protective Order. Until the issue of confidentiality is resolved, either through mutual agreement of the parties or by court intervention, documents designated as Confidential Information shall remain Confidential.

7.    Confidential Information may be referred to by a party in notices, motions, briefs or any other pleadings, may be used in depositions, and may be marked as deposition exhibits in this action. No such information shall be used, however, for any of these purposes unless it, or the portion where it is revealed, is appropriately marked and protected from dissemination and, where filing is necessary, it will be done pursuant to the provisions of Paragraph 5.

8.  If any party wishes to modify this Stipulated Protective Order or its application to certain documents or information, that party shall first request such modification from the party producing the Confidential Information and if no satisfactory agreement is reached, may petition the court for modification. Until modification is granted by agreement and/or Court Order, the terms of this Stipulated Protective Order will govern.

9.  Nothing in this Stipulated Protective Order shall be construed as placing a limit on the use of Confidential Information at trial. However, before trial, the parties will address this issue and determine appropriate safeguards to protect the Confidential Information at trial.

10. No Confidential Information shall be disseminated to anyone who is a direct competitor of the party producing the Confidential Information or is a current employee of a direct business competitor of the party producing the Confidential Information. This paragraph shall not apply to any retained or consulting experts. However, any retained or consulting experts excluded under this paragraph shall comply with paragraph 3(c). In addition, said expert(s) s hall n ot disclose the Confidential Information to any direct competitor or other person currently or formerly employed by a direct business competitor of the party producing the Confidential Information. *T/s' counsel shall retain declarations executed by consulting experts.*                                        WC CS

11. Failure to abide by the terms of this Stipulated Protective Order may result in a motion for sanctions, costs, and attorney's fees, and any other appropriate legal action by or on behalf of the Defendants.

12. This Stipulated Protective Order and/or the Defendants' production of documents, things, or information in this action for inspection, copying, or disclosure to any other party to this action shall not be deemed to waive any claim of attorney-client or work product privilege that might exist with respect to these or any other documents or communications, written or oral, including, without limitation, other communications referred to in any documents which the Defendants may produce.

13. Within thirty (30) days from the entry of final judgment, settlement, or dismissal in connection with this action, each party to this action shall return to counsel for the Defendants their original copies of all Confidential Information received under this Stipulated Protective Order, together with all reproductions and copies. In addition, all abstracts, summaries, indexes or other writings that contain, reflect, or disclose the substance of the Confidential Information received under this Stipulated Protective Order shall be destroyed by Plaintiffs' counsel within six (6) months from the entry of final judgment, settlement, or dismissal in connection with this action. Each party's counsel will certify by declaration to the Defendants' counsel that this Stipulated Protective Order has been complied with by them and their experts/consultants in the form attached as "Exhibit B."

This Court retains and shall have continuing jurisdiction over the parties and recipients of the Confidential Information and Protected Documents for enforcement of the provisions of this Stipulated Protective Order until compliance with Paragraph 13. This Stipulated Protective Order shall be binding upon the parties and their attorneys, successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.

SIGNED this the ___11th___ day of ___June___, 2013.

_____

JUDGE PRESIDING

STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER - Page 5
DL/3689995v1

AGREED:

By: ~~George W. Mauze~~ _(signature)_
George W. Mauze, IV
State Bar No. 13238800
Tom Bagby
State Bar No. 24059409

**Mauze & Bagby, PLLC**
2632 Broadway, Suite 401 South
San Antonio, Texas 78215
Telephone:    (210) 354-3377
Facsimile:    (210) 354-3909

By: _(signature)_
Wayne B. Mason
State Bar No. 13158950
Alan Vickery
State Bar No. 20571650

**SEDGWICK LLP**
1717 Main Street, Suite 5400
Dallas, Texas 75201-7367
Telephone:    (469) 227-8200
Facsimile:    (469) 227-8004

EXHIBIT "A"

**[ATTACH FULLY EXECTUED STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER TO THIS AFFIDAVIT]**

CAUSE NO. C-0184-13-G

| | |
|---|---|
| PAULA ANTU, as Next Friend of ███████████████, a Minor, et al., | § IN THE DISTRICT COURT OF<br>§<br>§<br>§ |
| Plaintiffs, | §<br>§ |
| vs. | §<br>§<br>§ 370ᵗʰ JUDICIAL DISTRICT |
| NCDR, LLC d/b/a KOOL SMILES, DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES, AISHWARYA K. CHANDESH, D.D.S., EDWARD HO, D.D.S., RICHARD I. MANWARING, D.D.S., and MARC D. THOMAS, D.D.S., | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |
| Defendants. | § HIDALGO COUNTY, TEXAS |

**DECLARATION OF [INSERT NAME OF DECLARANT] RE STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER**

STATE OF _____ )
                                              ) ss.
COUNTY OF _____ )

I, _____, declare under penalty of perjury under
        (insert name of recipient of the documents)

the laws of the [IDENTIFY STATE/United States of America] that the following is true and correct:

1.    My full name and business address are:

_____

2.    I have read and fully understand the attached Stipulated Confidentiality Agreement and Protective Order.

3.    I am fully familiar with and agree to comply with and be bound by the provisions

of said Stipulated Confidentiality Agreement and Protective Order, and submit to the jurisdiction of the court in which this matter is pending for any proceedings with respect to said Stipulated Confidentiality Agreement and Protective Order.

4,      I will not discuss or divulge to persons other than those specifically authorized by this Stipulated Confidentiality Agreement and Protective Order, and will not copy or use, except solely for the purposes of this action and for no other purposes, any documents, materials or information obtained pursuant to said Stipulated Confidentiality Agreement and Protective Order.

5.      I will return original copies of all Confidential Information received under this Stipulated Confidentiality Agreement and Protective Order, together with all reproductions and copies of the Confidential Information to counsel that retained me in this case.

EXECUTED this _____ day of _____, 2013,

_____
Signature of Declarant

_____
Printed Name

DECLARATION OF [INSERT NAME OF DECLARANT] RE STIPULATED CONFIDENTIALITY
AGREEMENT AND PROTECTIVE ORDER - Page 2
DL/368999$v1

EXHIBIT "B"

[ATTACH FULLY EXECUTED STIPULATED CONFIDENTIALITY AGREEMENT
AND PROTECTIVE ORDER TO THIS AFFIDAVIT]

CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU, as Next Friend of ██████████████, a Minor, et al., | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § § | |
| vs. | § § | |
| | § | 370th JUDICIAL DISTRICT |
| NCDR, LLC d/b/a KOOL SMILES, DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES, AISHWARYA K. CHANDESH, D.D.S., EDWARD HO, D.D.S., RICHARD I. MANWARING, D.D.S., and MARC D. THOMAS, D.D.S., | § § § § § § § § | |
| Defendants. | § | HIDALGO COUNTY, TEXAS |

## DECLARATION OF [INSERT NAME OF DECLARANT] RE STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

STATE OF _____ )
                                                              ) ss.
COUNTY OF _____ )

I, _____, declare under penalty of perjury under
            (insert name of recipient of the documents)

the laws of the [IDENTIFY STATE/United States of America] that the following is true and

correct:

1.      I am counsel of record for [name of party]. My full name and business address
are:

_____

(insert name and address of recipient of the documents)

2.      I am bound by the terms and conditions of the Stipulated Confidentiality

Agreement and Protective Order. I acknowledged my consent to be so bound by executing the

attached Stipulated Confidentiality Agreement and Protective Order.

3. Pursuant to Paragraph 12 of the Stipulated Confidentiality Agreement and Protective Order attached hereto, I acknowledge that I am obligated to return original copies of all Confidential Information received under this Stipulated Confidentiality Agreement and Protective Order, together with all reproductions and copies of the Confidential Information within thirty (30) days from the entry of final judgment, settlement, or dismissal in connection with this action.

4. I certify that I have returned original copies of all Confidential Information received under this Stipulated Confidentiality Agreement and Protective Order, together with all reproductions and copies of the Confidential Information to counsel for the Defendants.

5. I certify that I have received all Confidential Information and Documents provided to the experts and consultants hired in this action on behalf of my client(s). I further certify that I have returned such Confidential Information, together with all reproductions and copies of the Confidential Information, to counsel for the Defendants.

EXECUTED this _____ day of _____, 2013.

_____
Signature of Declarant

_____
Printed Name

REDACTED



PLAINTIFF'S
EXHIBIT
*B*

Confidential Pursuant to the Protective Order

KSL-00465030

Confidential Pursuant to the Protective Order

KSL-00465031



REDACTED

Confidential Pursuant to the Protective Order

KSL-00465032



Confidential Pursuant to the Protective Order                                    KSL-00465033

REDACTED



Confidential Pursuant to the Protective Order

KSL-00465034



REDACTED

Confidential Pursuant to the Protective Order                                                 KSL-00465035

Confidential Pursuant to the Protective Order

KSL-00000042

Confidential Pursuant to the Protective Order

KSL-00000264

# TEXAS STATE BOARD OF DENTAL EXAMINERS



# RULES AND REGULATIONS

(November 2005)

TEXAS STATE BOARD OF DENTAL EXAMINERS
333 GUADALUPE, TOWER 3, SUITE 800
AUSTIN, TEXAS 78701

TELEPHONE: (512) 463-6400
FAX: (512) 463-7452
E-MAIL: information@tsbde.state.tx.us
WEBSITE: www.tsbde.state.tx.us
HPC HOTLINE: 1-800-821-3205

Confidential Pursuant to the Protective Order

PLAINTIFF'S
EXHIBIT
C

KSL-00474199



Confidential Pursuant to the Protective Order

KSL-00464784

Official but Unformatted

# Guideline on Caries-risk Assessment and Management for Infants, Children, and Adolescents

Originating Council
Council on Clinical Affairs
Review Council
Council on Clinical Affairs
Adopted
2002
Revised
2006, 2010

## Purpose

The American Academy of Pediatric Dentistry (AAPD) recognizes that caries risk assessment and management protocols can assist clinicians with decisions regarding treatment based upon caries risk and patient compliance and are essential elements of contemporary clinical care for infants, children, and adolescents. This guideline is intended to educate healthcare providers and other interested parties on the assessment of caries risk in contemporary pediatric dentistry and aid in clinical decision making regarding diagnostic, fluoride, dietary, and restorative protocols.

## Methods

This guideline is an update of AAPD's "Policy on Use of a Caries-risk Assessment Tool (CAT) for Infants, Children, and Adolescents, Revised 2006" that includes the additional concepts of dental caries management protocols. The update used electronic and hand searches of English written articles in the medical and dental literature within the last 10 years using the search terms, "caries risk assessment", "caries management", and "caries clinical protocols". From this search, 1,909 articles were evaluated by title or by abstract. Information from 75 articles was used to update this document. When data did not appear sufficient or were inconclusive, recommendations were based upon expert and/or consensus opinion by experienced researchers and clinicians.

## Background
### Caries-risk assessment

Risk assessment procedures used in medical practice normally have sufficient data to accurately quantitate a person's disease susceptibility and allow for preventive measures.[1] Even though caries-risk data in dentistry still are not sufficient to quantitate the models, the process of determining risk should be a component in the clinical decision making process.[2] Risk assessment:

1. fosters the treatment of the disease process instead of treating the outcome of the disease;

2. gives an understanding of the disease factors for a specific patient and aids in individualizing preventive discussions;

3. individualizes, selects, and determines frequency of preventive and restorative treatment for a patient; and

4. anticipates caries progression or stabilization.

Caries-risk assessment models currently involve a combination of factors including diet, fluoride exposure, a susceptible host, and microflora that interplay with a variety of social, cultural, and behavioral factors.[3-6] Caries risk assessment is the determination of the likelihood of the incidence of caries (ie, the number of new cavitated or incipient lesions) during a certain time period[7] or the likelihood that there will be a change in the size or activity of lesions already present. With the ability to detect caries in its earliest stages (ie, white spot lesions), health care providers can help prevent cavitation.[8-10]

Caries risk indicators are variables that are thought to cause the disease directly (eg, microflora) or have been shown useful in predicting it (eg, socioeconomic status) and include those variables that may be considered protective factors. Currently, there are no caries-risk factors or combinations of factors that have achieved high levels of both positive and negative predictive values.[2] Although the best tool to predict future caries is past caries experience, it is not particularly useful in young children due to the importance of determining caries risk before the disease is manifest. Children with white spot lesions should be considered at high risk for caries since these are precavitated lesions that are indicative of caries activity.[11] Plaque accumulation also is strongly associated with



## Kool Smiles Dental Leadership Team

**Dr. David Vieth, Executive Dental Officer**

Dr. Vieth received his undergraduate degree in biology/chemistry from Bowling Green State University and his Doctor of Dental Surgery degree from Ohio State University Dental School.

Following graduation from dental school, Dr. Vieth started a multi-specialty group dental practice in Buffalo, New York and its surrounding communities. The group practice expanded over the years and employed over 250 employees in four locations that included an integrated crown and bridge lab. The practice had 27 dentists, including pediatric dentists, oral surgeons, periodontist, endodontist, and orthodontists.

Dr. Vieth sold his thriving practice in 2006 to pursue other interests. While identifying his next career move, he became increasingly interested in the opportunity to answer the American Dental Association's plea to increase access to dental care for the underserved. With this goal in mind, Dr. Vieth accepted a position as a Regional Dentist with Kool Smiles. He served in this position for 2 years until he was recently named Director of Dental Operations for the company in 2008.

Dr. Vieth has over 30 years of experience in all areas of dentistry and spent an extensive amount of that time in cosmetic dentistry restoring implants and completing extensive crown and bridge cases. He is also certified in Invisalign, Orthoclear, and CEREC.

Dr. Vieth is a standing member of the American Dental Association, the Eighth District Dental Association, the Erie County Dental Society, and the American Academy of Pediatric Dentistry.

**Dr. Dale Mayfield DMD, Executive Dental Officer**

Dr. Dale Mayfield received his undergraduate degree in Exercise Physiology from Brigham Young University and his Doctor of Dental Medicine degree from the Medical College of Georgia. He went on to spend 10 years in private practice in Decatur, Georgia, gaining extensive experience in all aspects of dentistry, including implants, complex crown and bridge cases, Invisalign, CEREC and endodontics.

With this experience, Dr. Mayfield decided to commit his expertise to provide quality dental care for the underserved by joining Kool Smiles in 2006 as an Executive Dental Officer. Dr. Mayfield is a member of the American Dental Association, the American Academy of Pediatric Dentistry and the Northern District Dental Society.

He remains an avid fly fisher, outdoorsman and an active member of his church community. He lives in Georgia with his wife and four children.



PLAINTIFF'S EXHIBIT
D

REPRODUCTION OR DISTRIBUTION OF THIS MANUAL IS PROHIBITED WITHOUT THE PRIOR, EXPRESS WRITTEN PERMISSION OF KOOL SMILES PC.



## Kool Smiles Dental Leadership Team, continued

| | |
|---|---|
| Dr. Tu Tran, Founding Dentist | Dr. Tran is a founding dentist and owner of Kool Smiles P.C. Dr. Tran was formerly Lead Dentist at "Smile High, General Dentistry for Children" in Denver, Colorado. Prior to Smile High, Dr. Tran worked at Perfect Teeth of Denver, Colorado. Dr. Tran received his Bachelors degree in Biology and Chemistry from the University of Denver and received his Doctorate in Dental Surgery from the University of Colorado. Dr. Tran is a member of the American Dental Association, the Colorado Dental Association and the Georgia Dental Association. |
| Paul O. Walker, Vice President, Clinical Quality | Dr. Paul O. Walker is a board certified pediatric dentist. He received his DDS from Northwestern University and his MS from Indiana University. He served as a dental officer in the U.S. Navy (1966-1968) and served as the Lead Pediatric Dentist for HealthPartners. He was the Director of the Advanced Education Program in Pediatric Dentistry and the Director of The Hospital Dental Clinic at the University of Minnesota (1972-1994) and went on to serve as the Associate Dean for Clinical Services and Professor of Pediatric Dentistry at the Baylor College of Dentistry/Texas A & M University (1994-1998). |

Dr. Walker is a fellow of the American College of Dentists, the International College of Dentists, and the AAPD. For the AAPD, he has served on the Board of trustees (1987-1990) and as a President and Director/Examiner (1993-2000). Currently, he is a member of the Pediatric Dentistry Review Committee for the Commission on Dental Accreditation and is a scientific article reviewer for Practical Reviews in Pediatric Dentistry.

Dr. Walker retired from full time practice and teaching in 2000, but continues to work for both Health Partners and Indiana University in a part-time capacity and is an independent pediatric dentistry consultant.

REPRODUCTION OR DISTRIBUTION OF THIS MANUAL IS PROHIBITED WITHOUT THE PRIOR, EXPRESS WRITTEN PERMISSION OF KOOL SMILES PC.

# MAUZÉ & BAGBY, PLLC

### A PROFESSIONAL LIMITED LIABILITY COMPANY
### ATTORNEYS AT LAW

October 6, 2014

*VIA FAX & REGULAR MAIL*
Mr. Wayne B. Mason, Esq.
Mr. Alan Vickery, Esq.
Ms. Cori Steinmann, Esq.
Sedgwick, LLP
1717 Main Street, Suite 5400
Dallas, TX 75201-7367

*VIA FAX & REGULAR MAIL*
Mr. Eduardo R. Rodriguez, Esq.
Atlas, Hall & Rodriguez, L.L.P.
50 W. Morrison Road, Suite A
Brownsville, Texas 78520

Re:  CAUSE NO. C-0184-13-G; <u>Antu, et al v. NCDR, L.L.C. d/b/a Kool Smiles, et al</u>

Dear Counsel:

After review of the documents produced by Defendants in response to Plaintiffs' requests for production, it appears that Defendants have erroneously and frivolously marked nearly every responsive document as confidential and subject to the Stipulated Protective Order and Confidentiality Agreement. Enclosed, please find a draft of Plaintiffs' Motion for Discovery Sanctions Against Defendants Dentistry of Brownsville, P.C. d/b/a Kool Smiles, NCDR, LLC d/b/a Kool Smiles, and Kool Smiles, P.C. d/b/a Kool Smiles, or, in the alternative, Plaintiffs' Motion for Determination of Confidentiality and Entry of New Confidentiality Agreement and Protective Order, which Plaintiffs intend to file with the Court if we are unable to resolve the issues stated therein.

By this letter, Plaintiffs are attempting to confer regarding the issues raised in the aforementioned motion. By 9:00 a.m. on October 13, 2014, please identify by bates-stamped number, which documents, if any, that Defendants intend to remove the designation of confidentiality from.

Please do not hesitate to let me know if you have any questions.

Sincerely,

Tom Bagby

TB/da
enclosures

PLAINTIFF'S
EXHIBIT
E

2632 Broadway, Suite 402 S, San Antonio, Texas 78215 | 1.800.200.9096 | (Fax) 210.354.3909

# MAUZÉ & BAGBY, PLLC

2632 Broadway, Suite 402 South                        Telephone: 210.354.3377
San Antonio, Texas 78215                               Fax: 210.354.3909

DATE:  October 6, 2014                    RE:    *Antu, et al v. NCDR, LLC dba*
                                                 *Kool Smiles, et al*

TO:    Mr. Wayne B. Mason, Esq.           FAX NO.:  (469) 227-8004
       Mr. Alan Vickery, Esq.
       Ms. Cori Steinmann, Esq.
       Sedgwick LLP


FROM:    George W. Mauzé, II             NO. OF PAGES (including this page): 37
         Tom Bagby
         Mauzé & Bagby

OUR FILE NO. 1201  Rush: _____     ASAP: XXX      Regular: _____

INSTRUCTIONS/COMMENTS:

---

THIS FACSIMILE MESSAGE IS A PRIVILEGED AND CONFIDENTIAL COMMUNICATION AND IS
TRANSMITTED FOR THE EXCLUSIVE  INFORMATION AND USE OF THE ADDRESSEE. PERSONS
RESPONSIBLE FOR DELIVERING THIS COMMUNICATION TO THE INTENDED RECIPIENT ARE
ADMONISHED THAT THIS COMMUNICATION MAY NOT BE COPIED OR DISSEMINATED EXCEPT AS
DIRECTED BY THE ADDRESSEE.  IF YOU RECEIVE THIS COMMUNICATION IN ERROR, PLEASE
NOTIFY US IMMEDIATELY BY TELEPHONE AND MAIL THE COMMUNICATION TO US AT OUR
LETTERHEAD ADDRESS. THANK YOU

IF YOU DO NOT RECEIVE ALL OF THESE PAGES, PLEASE CALL OUR OFFICE AS
SOON AS POSSIBLE.

# MAUZÉ & BAGBY, PLLC

## A PROFESSIONAL LIMITED LIABILITY COMPANY
### ATTORNEYS AT LAW

2632 Broadway, Suite 401 South                      Telephone: (210) 354.3377
San Antonio, Texas 78215                                   Fax: (210) 354.3909

DATE: October 6, 2014                    RE: *Antu, et al v. NCDR, LLC dba Kool Smiles, et al*

TO: Mr. Eduardo R. Rodriguez, Esq.
    Atlas, Hall & Rodriguez, LLP          FAX NO: 956-574-9337

FROM: George W. Mauzé, II               NO. OF PAGES (including this page): 37
      Tom Bagby
      Mauzé & Bagby

OUR FILE NO. 1201  Rush: _____      ASAP: XXX  Regular: _____

INSTRUCTIONS/COMMENTS:

THIS FACSIMILE MESSAGE IS A PRIVILEGED AND CONFIDENTIAL COMMUNICATION AND IS TRANSMITTED FOR THE EXCLUSIVE INFORMATION AND USE OF THE ADDRESSEE. PERSONS RESPONSIBLE FOR DELIVERING THIS COMMUNICATION TO THE INTENDED RECIPIENT ARE ADMONISHED THAT THIS COMMUNICATION MAY NOT BE COPIED OR DISSEMINATED EXCEPT AS DIRECTED BY THE ADDRESSEE. IF YOU RECEIVE THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND MAIL THE COMMUNICATION TO US AT OUR LETTERHEAD ADDRESS. THANK YOU

IF YOU DO NOT RECEIVE ALL OF THESE PAGES, PLEASE CALL OUR OFFICE AS SOON AS POSSIBLE.

ORIGINAL TO FOLLOW BY:     Regular Mail_____; Overnight delivery_____;
Hand/Courier delivery_____; Other_____; Original Will Not Follow _____.

* * * Communication Result Report ( Oct. 6. 2014 2:55PM ) * * *

$\frac{1}{2}$

Date/Time: Oct. 6. 2014 2:50PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|------|------|-------------|-------|--------|---------------|
| 3587 | Memory TX | 19565749337 | P. 37 | OK ✓ | |

Reason for error
E. 1) Hang up or line fail
E. 3) No answer
E. 5) Exceeded max. E-mail size
E. 2) Busy
E. 4) No facsimile connection

---

## MAUZÉ & BAGBY, PLLC
A PROFESSIONAL LIMITED LIABILITY COMPANY
ATTORNEYS AT LAW

2632 Broadway, Suite 401 South          Telephone: (210) 354.3377
San Antonio, Texas 78215                      Fax (210) 354.3909

DATE: October 6, 2014                   RE: Anlu, et al v. NCDR, LLC dba Kool
                                            Smiles, et al
TO: Mr. Eduardo R. Rodriguez, Esq.
    Atlas, Hall & Rodriguez, LLP          FAX NO: 956-574-9337

FROM: George W. Mauzé, II               NO. OF PAGES (including this page) 37
      Tom Bagby
      Mauzé & Bagby

OUR FILE NO. 1201  Rush: _____    ASAP: XXX  Regular: _____

INSTRUCTIONS/COMMENTS:

THIS FACSIMILE MESSAGE IS A PRIVILEGED AND CONFIDENTIAL COMMUNICATION AND IS TRANSMITTED FOR THE EXCLUSIVE INFORMATION AND USE OF THE ADDRESSEE. PERSONS RESPONSIBLE FOR DELIVERING THIS COMMUNICATION TO THE INTENDED RECIPIENT ARE ADMONISHED THAT THIS COMMUNICATION MAY NOT BE COPIED OR DISSEMINATED EXCEPT AS DIRECTED BY THE ADDRESSEE. IF YOU RECEIVE THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND MAIL THE COMMUNICATION TO US AT OUR LETTERHEAD ADDRESS. THANK YOU

IF YOU DO NOT RECEIVE ALL OF THESE PAGES, PLEASE CALL OUR OFFICE AS SOON AS POSSIBLE.

ORIGINAL TO FOLLOW BY:   Regular Mail_____; Overnight delivery_____;
Hand/Courier delivery_____; Other_____; Original Will Not Follow_____

\* \* \* Communication Result Report ( Oct. 6. 2014 3:14PM ) \* \* \*

$$\frac{1}{2}$$

Date/Time: Oct. 6. 2014 3:07PM

| File No. Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|
| 3588 Memory TX | 14692278004 | P. 37 | OK ✓ | |

---

Reason for error
   E. 1) Hang up or line fail               E. 2) Busy
   E. 3) No answer                          E. 4) No facsimile connection
   E. 5) Exceeded max. E-mail size

## MAUZÉ & BAGBY, PLLC

2632 Broadway, Suite 402 South                     Telephone: 210.354.3377
San Antonio, Texas 78215                                 Fax: 210.354.3909

DATE: October 6, 2014                 RE:  *Aritt, et al v. HCDR LLC dba*
                                            *Kool Smiles, et al*

TO:  Mr. Wayne B. Mason, Esq.         FAX NO.: (469) 227-8004
     Mr. Alan Vickery, Esq.
     Ms. Cori Steinmann, Esq.
     Sedgwick LLP

FROM:  George W. Mauzé, II            NO. OF PAGES (including this page): 37
       Tom Bagby
       Mauzé & Bagby

OUR FILE NO. 1201 Rush: _____    ASAP: XXX    Regular: _____

INSTRUCTIONS/COMMENTS:

THIS FACSIMILE MESSAGE IS A PRIVILEGED AND CONFIDENTIAL COMMUNICATION AND IS TRANSMITTED FOR THE EXCLUSIVE INFORMATION AND USE OF THE ADDRESSEE. PERSONS RESPONSIBLE FOR DELIVERING THIS COMMUNICATION TO THE INTENDED RECIPIENT ARE ADMONISHED THAT THIS COMMUNICATION MAY NOT BE COPIED OR DISSEMINATED EXCEPT AS DIRECTED BY THE ADDRESSEE. IF YOU RECEIVE THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND MAIL THE COMMUNICATION TO US AT OUR LETTERHEAD ADDRESS. THANK YOU.

IF YOU DO NOT RECEIVE ALL OF THESE PAGES, PLEASE CALL OUR OFFICE AS SOON AS POSSIBLE.

## Tom Bagby

From:       Tom Bagby <tbagby@mauzebagbylaw.com>
Sent:       Wednesday, October 15, 2014 5:07 PM
To:         'Steinmann, Cori'
Subject:    RE: Kool Smiles - Response to Confidentiality

Cori,

Defendants marked nearly every document as confidential. Per the protective order, Defendants are representing to the Court that each document marked as confidential contains confidential information and/or trade secrets. Based upon our review of the documents, many documents that were marked as confidential cannot possibly contain confidential information. As such, it is our position that Defendants have not only made many misrepresentations to the Court but also have abused the discovery process. As such, we intend to take this matter up with the Court. However, in the spirit of cooperation, I would be willing to further discuss this matter with you to see if we can come to an agreement on how to handle this issue. I am available all day tomorrow and Friday if you wish to discuss the same.

Tom

----

Tom Bagby
MAUZE & BAGBY, PLLC
2632 Broadway, Suite 402 S
San Antonio, TX 78215
T: 210.354.3377
F: 210.354.3909
Toll Free: 1.800.200.9096
tbagby@mauzebagbylaw.com
*Licensed in Texas, Louisiana & Montana

** CONFIDENTIALITY NOTICE **

The information contained in this E-Mail is privileged and confidential and is intended only for the use of the addressee. The term "privileged and confidential" includes, without limitation, attorney-client privileged communications, attorney work product, trade secrets, and any other proprietary information. Nothing in this message is intended by the attorney of the client to constitute a waiver of the confidentiality of this message. If the reader of this message is not the intended recipient, or employee/agent of the intended recipient, you are hereby notified that any duplication or distribution of this communication is unauthorized. If you have received this message in error, please notify us immediately.

From: Steinmann, Cori [mailto:Cori.Steinmann@sedgwicklaw.com]
Sent: Monday, October 13, 2014 9:35 AM
To: tbagby@mauzebagbylaw.com
Subject: FW: Kool Smiles - Response to Confidentiality

Tom,

I have reviewed your letter and proposed Motion concerning documents marked by Kool Smiles as confidential. Although I think we should discuss the issue further, below is my preliminary response to the issues you raised.

First, the deadline you propose in your letter is unreasonable. You have had almost a year to review our documents and have never raised the issue of our confidentiality designations, yet you unilaterally set a one week deadline for us to review our entire production to determine if confidentiality designations are appropriate. This is unreasonable. Moreover, your demand that we review our production and identify documents we intend to remove the confidentiality designation from is not what the parties agreed to in the Protective Order. Per the Protective Order, which you and George had input in drafting, if a party disagrees with the confidential designation that party must identify the "specific document" and attempt to resolve the dispute. As such, you cannot simply point to one or two documents that you disagree with and demand that we then go and re-review our entire production. If there are specific documents that you take issue with the confidential designation, please provide me a list of those documents and I will review them and let you know the basis for the designation and/or agree to remove the designation.

As to the "specific documents" that you have identified in your Motion, please see the following explanation and/or agreements:

- KSL-00465030-00465035- These redacted pages are part of a larger document, which is confidential and is designated as such. The fact that some of the information in the document has been redacted because it is outside the scope of the litigation does not mean that the information contained on these pages, and within the document as a whole, is not confidential. Confidentiality applies to the entire document, not specific pages within.
- KSL-00000042 and KSL-00000264- These pages are again part of larger documents, which are confidential and are designated as such. These specific pages are the last page of each document and, for whatever reason, do not have any content, but this is how the record was kept in the ordinary course of business. Again, confidentiality applies to the entire document, not specific pages within.
- KSL00474199-00474322- We agree to remove the Confidentiality designation.
- KSL00464784-00464937- We agree to remove the Confidentiality designation.
- KSL00005635-KSL00005647- We agree to remove the Confidentiality designation.
- DOB001333-001334- These pages are part of the New Doctor Orientation Manual, which is confidential and proprietary. This is not a publically available document and is provided only to Kool Smiles dentists after they have signed a confidentiality agreement. In fact, the document itself expressly states that it is not to be reproduced or distributed. As such, the Manual, which includes the referenced pages, is confidential.

Please let me know when we can discuss any outstanding concerns that you may have regarding confidentiality designations.

Best Regards,
Cori
**Cori M. Steinmann**
cori.steinmann@sedgwicklaw.com
469.227.4625 direct

# Sedgwick LLP

1717 Main Street, Suite 5400
Dallas, TX 75201
469.227.8200 phone | 469.227.8004 fax | www.sedgwicklaw.com

The information in this email is intended for the named recipients only. It may contain privileged and confidential matter. If you have received this email in error, please notify the sender immediately by replying to this email. Do not disclose the contents to

anyone. Thank you.

MDL NO. ___C-0184-13-G___

§
§
§
§
§
§
§
§
§
§
§
§

**IN RE KOOL SMILES DENTAL LITIGATION**

**IN THE DISTRICT COURT OF HIDALGO COUNTY, TEXAS 370TH JUDICIAL DISTRICT**

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO AMEND CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER OR, ALTERNATIVELY MOTION FOR SANCTIONS OR, ALTERNATIVELY, FOR DETERMINATION OF CONFIDENTIALITY**

Defendants Benevis LLC, f/k/a NCDR, LLC ("Benevis"), Kool Smiles, P.C. ("KSPC"), and Dentistry of Brownsville, P.C. ("DOB"), along with the individual dentists[1] named as Defendants in all cases transferred to the pretrial multi-district litigation Court ("Defendants"), provide the following response[2] to Plaintiff's Motion to Amend Confidentiality Agreement and Protective Order or Alternatively for Sanctions, or Alternatively for Determination of Confidentiality ("Motion").

## I. SUMMARY

Subject to Defendants' objection to this Motion being heard at this time, Plaintiffs' Motion should be denied. The parties negotiated and mutually drafted the Stipulated Confidentiality Agreement and Protective Order ("Protective Order") in question. The Protective Order is proper and in no way impedes Plaintiffs in this MDL litigation. Consistent with common sense and legal precedent, it prohibits shared discovery of confidential information

---

[1] This reference excludes Dr. Jessie Trinh, Defendant in the *Arroyo, et al. v. Mathisen, et al.*, CL-14-3569 matter transferred from the County Court of Law No. 4 in Hidalgo County, because she is represented by separate counsel.

[2] Defendants object to this Motion being heard as it is not ripe for determination. Texas Rule of Judicial Administration 13.5(b) states that after a case is transferred from the trial court to the MDL court "the trial court must take no further action." As this motion was filed in the trial court it is not properly before the court in this MDL proceeding.

20311987v4

in unrelated litigation. Rather than abide by the terms of the Protective Order, however, Plaintiffs now ask the court to strike Defendants' confidentiality designations for the express improper purpose of sharing documents with parties not affiliated with this litigation and circumventing the discovery process in a federal lawsuit in which Plaintiffs' attorneys are named defendants.

## II. ARGUMENTS AND AUTHORITIES

### 1. The Protective Order was Negotiated, Mutually Drafted, and Stipulated.

The Protective Order at issue (attached hereto as Exhibit "A") was negotiated, mutually drafted, and stipulated. Plaintiffs' counsel provided draft protective orders on at least two occasions: May 14, 2013 and May 28, 2013. The parties negotiated the proposed terms drafted by each side and ultimately the stipulated Protective Order was entered as an Agreed Order on June 11, 2013.

### 2. The Protective Order Does Not Impair MDL Plaintiffs.

Plaintiffs in these MDL cases are not restricted from using documents and information designated as Confidential under the Protective Order. The Protective Order states, "Confidential Information may be referred to by a party in notices, motions, briefs or any other pleadings, may be used in depositions, and may be marked as deposition exhibits." Protective Order ¶ 7. Further, the Protective Order states, "Nothing in this Stipulated Protective Order shall be construed as placing a limit on the use of Confidential Information at trial." *Id.* ¶ 9.

### 3. There is a Procedure in the Protective Order to Resolve Disputes Concerning Confidentiality Designations.

The parties contemplated that disputes would arise over Confidential designations under the Protective Order. Paragraph 6 of the Order provides "If a party disagrees with the 'Confidential' designation of a specific document or thing, the parties agree to attempt to meet

and confer with one another to resolve the issue." *Id.*¶ 6. This paragraph was negotiated by the parties, and Plaintiffs' counsel even proposed revisions to it which were agreed to by Defendants' counsel, before the Order was submitted to the Court. (See email from Tom Bagby with redlined revisions, dated May 14, 2013, attached hereto as Exhibit "B").

Since the Protective Order was entered in June 2013, Plaintiffs have only identified six specific documents that they claim have been improperly designated as Confidential. Upon receiving Plaintiffs' challenge to these six documents, Defendants promptly responded and agreed to withdraw the confidential designation for three documents, and provided explanations as to how each of the other three were in fact confidential. *See* email from Cori Steinmann dated 11/13/2014, attached hereto as Exhibit "C".

While Plaintiffs make sweeping claims about Defendants' confidentiality designations, they have provided no additional examples of alleged improper designations. Rather, they only allege that Defendants have abused the process by designating documents which are not confidential. Plaintiffs have not even attempted to identify specific documents or confer about designations made to specific documents, in direct violation of the Protective Order. As recently as June 11, 2015, Defendants again requested that Plaintiffs comply with the Protective Order and identify what "Confidential" designations they disagreed with (*See* email from Alan Vickery dated June 11, 2015, attached hereto as Exhibit "D"). Plaintiffs have not done so but, instead, just allege that too many documents were designated. Defendants are left to merely guess at what designations Plaintiffs take issue with, which is exactly the scenario the parties agreed to avoid by including paragraph 6 in the Protective Order.

Plaintiffs' defiance of the Protective Order is no basis for amending it. To the contrary, unless and until Plaintiffs make a good faith effort under the Protective Order to identify specific

documents on which the Confidentiality designation is challenged, there is no basis to believe it is not appropriate and workable.

### 4. Plaintiffs Improperly Seek to Circumvent Discovery in Dissimilar Federal Litigation.

The real reason Plaintiffs seek relief from the Agreed Protective Order is to allow them to use the documents for purposes irrelevant to this litigation. Plaintiffs' counsel doesn't seek access to documents without Confidentiality designations to benefit their clients in this case. Rather, they want to share the documents with attorneys not affiliated with this litigation and circumvent the discovery process in an unrelated federal case. This was confirmed in Plaintiffs' counsel's June 10, 2015 email, which stated "[i]f your client agrees to modify the protective order or enter into a Rule 11 that allows the documents to be reviewed by... our attorneys in the federal case, then I will agree to drop the hearing [on the Motion]." *See* email from George Mauze dated June 10, 2015, attached hereto as Exhibit "E" (emphasis in exhibit not in original).

The federal case referenced in this email is a case filed by some of the Defendants herein against Plaintiffs' counsel. That case, which is pending in federal court in Laredo, contains different claims, different issues, and different rules and court orders regulating discovery. Plaintiffs' counsel's defense of himself in that litigation is an entirely improper justification for the relief requested. Discovery issues in the federal case should be left to the federal court presiding over that case.

Shared discovery with the dissimilar federal case is not appropriate. Under Texas law, the underlying rationale for shared discovery is that in state court cases with similar discovery needs that present similar issues, shared discovery can promote efficiency, consistency, full and fair disclosure, and prevent needless duplication and expense. *See, e.g. Garcia v. Peeples*, 734 S.W.2d 343, 347 (Tex. 1987); *Steenbergen v. Ford Motor Co.*, 814 S.W.2d 755, 758 (Tex. App.-

Dallas 1991, writ denied). The federal lawsuit involves different claims, issues, and rules of discovery than these MDL cases. Therefore, the primary rationale for shared discovery simply does not exist between that case and the MDL cases.

The Protective Order does not impair Plaintiffs' counsel's ability to represent their clients in this proceeding. In fact, none of the relief requested by this Motion is designed to further this MDL proceeding at all, nor is it sought to assist Plaintiffs in this litigation with their claims against these Defendants. The relief requested by Plaintiffs, therefore, should be denied.

### III. CONCLUSION

Based on the foregoing, Defendants Benevis LLC, f/k/a NCDR, LLC ("Benevis"), Kool Smiles, P.C. ("KSPC"), and Dentistry of Brownsville, P.C. ("DOB") (collectively the "Corporate Defendants"), along with the individual dentists[3] named as Defendants in all cases transferred to the pretrial multi-district litigation respectfully request that Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order or Alternatively for Sanctions, or Alternatively for Determination of Confidentiality be denied, and for such other and further relief to which they are entitled.

---

[3] This reference excludes Dr. Jessie Trinh, Defendant in the *Arroyo, et al. v. Mathisen, et al.*, CL-14-3569 matter transferred from the County Court of Law No. 4 in Hidalgo County, because she is represented by separate counsel.

Respectfully Submitted,


*/s/ Alan R. Vickery*
WAYNE B. MASON
State Bar No. 13158950
ALAN R. VICKERY
State Bar No. 20571650
**SEDGWICK LLP**
1717 Main Street, Suite 5400
Dallas, TX 75201-7367
Telephone:   (469) 227-8200
Facsimile:    (469) 227-8004
wayne.mason@sedgwicklaw.com
alan.vickery@sedgwicklaw.com



EDUARDO R. RODRIGUEZ
State Bar No. 00000080
**ATLAS, HALL & RODRIGUEZ, L.L.P.**
50 W. Morrison Road, Suite A
Brownsville, TX 78520
Telephone:   (956) 574-9333
Facsimile:    (956) 574-9337
errodriguez@atlashall.com

**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record as shown below via facsimile and email on the 14th day of June, 2015.

George W. Mauzé, II
MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 401 South
San Antonio, TX 78215
gmauze@mauzelawfirm.com

R.D. "Bobby" Guerra
GUERRA, LEEDS, SABO & HERNANDEZ PLLC
10213 N. 10th Street
McAllen, TX 78504
rdguerra@guerraleeds.com
Attorneys for Plaintiffs

Bruce S. Campbell
State Bar No: 03694600
BRACKETT & ELLIS,
A Professional Corporation
100 Main Street
Fort Worth, TX. 76102-3090
817.338.1700
Facsimile: 817.870.2265
bcampbell@belaw.com
Attorneys for Defendant Jessie Trinh, DMD

*/s/ Alan R. Vickery*
ALAN R. VICKERY

# Exhibit A

| | | |
|---|---|---|
| PAULA ANTU, as Next Friend of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, a Minor, et al., | §<br>§<br>§<br>§ | IN THE DISTRICT COURT OF |
| Plaintiffs, | §<br>§<br>§ | |
| vs. | §<br>§ | |
| | §<br>§ | 370th JUDICIAL DISTRICT |
| NCDR, LLC d/b/a KOOL SMILES, DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES, AISHWARYA K. CHANDESH, D.D.S., EDWARD HO, D.D.S., RICHARD I. MANWARING, D.D.S., and MARC D. THOMAS, D.D.S., | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| Defendants. | §<br>§ | HIDALGO COUNTY, TEXAS |

## STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

Defendants NCDR, L.L.C., Dentistry of Brownsville, P.C., Aishwarya K. Chandesh, D.D.S., Edward Ho, D.D.S., Richard I. Manwaring, D.D.S., and Marc D. Thomas, D.D.S. (hereinafter "Defendants") may disclose certain Confidential Information to the parties in this action pursuant to discovery. Plaintiffs Paula Antu, as Next Friend of ▓▓▓▓▓▓▓▓▓, a Minor, et al. ("Plaintiffs") and the Defendants agree to enter into this Stipulated Confidentiality Agreement and Protective Order (hereinafter "Stipulated Protective Order") for the purpose of facilitating and expediting the discovery process and to reduce the Court's time from having to conduct separate hearings on the information sought to be protected. In order to protect their alleged confidential documents, proprietary interests and trade secret information, the Defendants wish to ensure that any such Confidential Information shall not be used for any purpose other than this action and shall not be made public or disseminated by any party or their counsel, except as set forth in this Stipulated Protective Order.

The Defendants assert that all documents, testimony, and/or other items to be produced pursuant to this Stipulated Protective Order contain trade secret, proprietary and/or confidential

information (referred to collectively as "Confidential Information"). Accordingly, the parties stipulate to the following:

1. For the purposes of this Stipulated Protective Order, "Confidential Information" may include, but is not limited to, information and documentation produced in responses to discovery, the content of electronically stored information, tangible thing, writing, paper, model, photograph, film, videotape, transcript of oral testimony, whether printed, recorded or produced by hand or any other mechanical process. All documents, testimony and other items designated as Confidential Information, and all copies, summaries, and reproductions of such information, are subject to this Stipulated Protective Order.

2. Whenever the Defendants produce Confidential Information, the Defendants shall designate each page of the document or thing with a label or stamp identifying it as "Confidential" and/or "Produced Pursuant to Protective Order." Inadvertent or unintentional production of documents or information containing Confidential Information that are not designated "Confidential" shall not be deemed a waiver, in whole or in part, of a claim for confidential treatment; however, if Defendants do not designate such documents or things as Confidential Information within 30 days of discovering such inadvertent production, any such claim to confidentiality of said document, information or thing produced shall be deemed waived.

3. All material which the Defendants designate as Confidential Information in this action shall be maintained in strict confidence by the parties to this action and pursuant to the terms of this Stipulated Protective Order. Plaintiffs shall not disclose or permit to be disclosed Confidential Information to any person or other entity, except to "Qualified Persons" who shall be defined to include:

   a. Counsel of record for the parties in this action, and employees of such counsel who are engaged in assisting counsel with this action, provided they have first read this Stipulated Protective Order and have agreed to abide by its terms;

   b. The employee(s) of a corporate party charged with overseeing that party's participation in this action, provided they have first read this Stipulated Protective Order and have agreed to abide by its terms;

   c. Independent experts and/or consultants, including jury consultants, retained by the parties to this action for the purpose of assisting in the preparation of this case, provided they have first read this Stipulated Protective Order and have agreed to abide by its terms and have signed a written certification in the form attached as "Exhibit A." Counsel for all parties to this action shall maintain such certifications for 6 months following the termination of this Action and will not destroy or alter such material pursuant to any document retention policy or for any other reason

without first providing reasonable notice (no shorter than 30 days) to counsel of record in this case;

d. Witnesses who may be shown and questioned about the Confidential Information and whose testimony as well as the information attached or submitted as exhibits, shall remain subject to this Stipulated Protective Order; and

e. The court, court personnel, special masters, mediators, other persons appointed by the court in this action, stenographic and other reporters, and videographers pursuant to the provisions of Paragraph 5.

4. Any person who reviews the Confidential Information produced subject to this Stipulated Protective Order agrees to the jurisdiction over their person where the above-captioned matter is pending for the purposes of any action seeking to enforce the terms of this Stipulated Protective Order or any action for contempt for violation of the terms of this Stipulated Protective Order.

5. The parties and their counsel who receive Confidential Information shall act to preserve the confidentiality of designated documents and information. Any party that intends to use or submit any Confidential Information in connection with any pre-trial proceedings or filings shall notify the producing party in writing of its intention to do so at the time of or before filing any related pleadings, motions or other documents, and provide in such notice the Bates numbers or other sufficient description of such Confidential Information as to allow the producing party to identify the Confidential Information. The Confidential Information shall be submitted to the Court *in camera* in a sealed envelope or other appropriate container labeled as follows: "CONFIDENTIAL – DOCUMENTS SUBMITTED IN CAMERA" if used as exhibits to any filings in this case or in hearings.

6. If a party disagrees with the "Confidential" designation of a specific document or thing, the parties agree to attempt to meet and confer with one another to resolve the issue. If the parties are unable to resolve the issue, the party that intends to use the Confidential Information shall move for a hearing to obtain a ruling from the Court as to whether the information is entitled to confidential treatment under this Stipulated Protective Order. Until the issue of confidentiality is resolved, either through mutual agreement of the parties or by court intervention, documents designated as Confidential Information shall remain Confidential.

7. Confidential Information may be referred to by a party in notices, motions, briefs or any other pleadings, may be used in depositions, and may be marked as deposition exhibits in this action. No such information shall be used, however, for any of these purposes unless it, or the portion where it is revealed, is appropriately marked and protected from dissemination and, where filing is necessary, it will be done pursuant to the provisions of Paragraph 5.

8. If any party wishes to modify this Stipulated Protective Order or its application to certain documents or information, that party shall first request such modification from the party producing the Confidential Information and if no satisfactory agreement is reached, may petition the court for modification. Until modification is granted by agreement and/or Court Order, the terms of this Stipulated Protective Order will govern.

9. Nothing in this Stipulated Protective Order shall be construed as placing a limit on the use of Confidential Information at trial. However, before trial, the parties will address this issue and determine appropriate safeguards to protect the Confidential Information at trial.

10. No Confidential Information shall be disseminated to anyone who is a direct competitor of the party producing the Confidential Information or is a current employee of a direct business competitor of the party producing the Confidential Information. This paragraph shall not apply to any retained or consulting experts. However, any retained or consulting experts excluded under this paragraph shall comply with paragraph 3(c). In addition, said expert(s) s hall n ot disclose the Confidential Information to any direct competitor or other person currently or formerly employed by a direct business competitor of the party producing the Confidential Information. *P's' counsel shall retain Declarations executed by Consulting Experts.* /s/ CCS

11. Failure to abide by the terms of this Stipulated Protective Order may result in a motion for sanctions, costs, and attorney's fees, and any other appropriate legal action by or on behalf of the Defendants.

12. This Stipulated Protective Order and/or the Defendants' production of documents, things, or information in this action for inspection, copying, or disclosure to any other party to this action shall not be deemed to waive any claim of attorney-client or work product privilege that might exist with respect to these or any other documents or communications, written or oral, including, without limitation, other communications referred to in any documents which the Defendants may produce.

13. Within thirty (30) days from the entry of final judgment, settlement, or dismissal in connection with this action, each party to this action shall return to counsel for the Defendants their original copies of all Confidential Information received under this Stipulated Protective Order, together with all reproductions and copies. In addition, all abstracts, summaries, indexes or other writings that contain, reflect, or disclose the substance of the Confidential Information received under this Stipulated Protective Order shall be destroyed by Plaintiffs' counsel within six (6) months from the entry of final judgment, settlement, or dismissal in connection with this action. Each party's counsel will certify by declaration to the Defendants' counsel that this Stipulated Protective Order has been complied with by them and their experts/consultants in the form attached as "Exhibit B."

This Court retains and shall have continuing jurisdiction over the parties and recipients of the Confidential Information and Protected Documents for enforcement of the provisions of this Stipulated Protective Order until compliance with Paragraph 13. This Stipulated Protective Order shall be binding upon the parties and their attorneys, successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.

SIGNED this the _____ day of _____, 2013.

_____
JUDGE PRESIDING

AGREED:


By: _____
George W. Mauze, II
State Bar No. 13238800
Tom Bagby
State Bar No. 24059409

**Mauze & Bagby, PLLC**
2632 Broadway, Suite 401 South
San Antonio, Texas 78215
Telephone: (210) 354-3377
Facsimile: (210) 354-3909


By: _____
Wayne B. Mason
State Bar No. 13158950
Alan Vickery
State Bar No. 20571650

**SEDGWICK LLP**
1717 Main Street, Suite 5400
Dallas, Texas 75201-7367
Telephone: (469) 227-8200
Facsimile: (469) 227-8004

<u>EXHIBIT "A"</u>

**[ATTACH FULLY EXECTUED STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER TO THIS AFFIDAVIT]**

CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU, as Next Friend of ████████████, a Minor, et al., | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| vs. | § § | |
| NCDR, LLC d/b/a KOOL SMILES, DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES, AISHWARYA K. CHANDESH, D.D.S., EDWARD HO, D.D.S., RICHARD I. MANWARING, D.D.S., and MARC D. THOMAS, D.D.S., | § § § § § § § § | 370th JUDICIAL DISTRICT |
| Defendants. | § § | HIDALGO COUNTY, TEXAS |

<u>**DECLARATION OF [INSERT NAME OF DECLARANT] RE STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER**</u>

STATE OF _____ )
                                                            ) ss.
COUNTY OF _____ )

I, _____, declare under penalty of perjury under
          (insert name of recipient of the documents)

the laws of the **[IDENTIFY STATE/United States of America]** that the following is true and correct:

1.      My full name and business address are:

_____.

2.      I have read and fully understand the attached Stipulated Confidentiality Agreement and Protective Order.

3.      I am fully familiar with and agree to comply with and be bound by the provisions

of said Stipulated Confidentiality Agreement and Protective Order, and submit to the jurisdiction of the court in which this matter is pending for any proceedings with respect to said Stipulated Confidentiality Agreement and Protective Order.

4. I will not discuss or divulge to persons other than those specifically authorized by this Stipulated Confidentiality Agreement and Protective Order, and will not copy or use, except solely for the purposes of this action and for no other purposes, any documents, materials or information obtained pursuant to said Stipulated Confidentiality Agreement and Protective Order.

5. I will return original copies of all Confidential Information received under this Stipulated Confidentiality Agreement and Protective Order, together with all reproductions and copies of the Confidential Information to counsel that retained me in this case.

EXECUTED this _____ day of _____, 2013.

_____
Signature of Declarant

_____
Printed Name

CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU, as Next Friend of ███████████████, al., | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § § | |
| vs. | § § | |
| NCDR, LLC d/b/a KOOL SMILES, DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES, AISHWARYA K. CHANDESH, D.D.S., EDWARD HO, D.D.S., RICHARD I. MANWARING, D.D.S., and MARC D. THOMAS, D.D.S., | § § § § § § § § § | 370th JUDICIAL DISTRICT |
| Defendants. | § | HIDALGO COUNTY, TEXAS |

## DECLARATION OF [INSERT NAME OF DECLARANT] RE STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

STATE OF _____ )
                                  ) ss.
COUNTY OF _____ )

I, _____, declare under penalty of perjury under
    (insert name of recipient of the documents)

the laws of the **[IDENTIFY STATE/United States of America]** that the following is true and

correct:

1.    I am counsel of record for **[name of party]**. My full name and business address

are:

_____.

(insert name and address of recipient of the documents)

2.    I am bound by the terms and conditions of the Stipulated Confidentiality

Agreement and Protective Order. I acknowledged my consent to be so bound by executing the

attached Stipulated Confidentiality Agreement and Protective Order.

3. Pursuant to Paragraph 12 of the Stipulated Confidentiality Agreement and Protective Order attached hereto, I acknowledge that I am obligated to return original copies of all Confidential Information received under this Stipulated Confidentiality Agreement and Protective Order, together with all reproductions and copies of the Confidential Information within thirty (30) days from the entry of final judgment, settlement, or dismissal in connection with this action.

4. I certify that I have returned original copies of all Confidential Information received under this Stipulated Confidentiality Agreement and Protective Order, together with all reproductions and copies of the Confidential Information to counsel for the Defendants.

5. I certify that I have received all Confidential Information and Documents provided to the experts and consultants hired in this action on behalf of my client(s). I further certify that I have returned such Confidential Information, together with all reproductions and copies of the Confidential Information, to counsel for the Defendants.

EXECUTED this _____ day of _____, 2013.

_____
Signature of Declarant

_____
Printed Name

Electronically Filed
6/15/2015 7:03:13 AM
Hidalgo County District Clerks
Reviewed By: Kim Hinojosa

C-0184-13-G

# (Amended)

# Exhibit B

| | |
|---|---|
| **From:** | Garner, Lavella on behalf of Mason, Wayne B. |
| **To:** | Monk, Bradley |
| **Subject:** | FW: Redlined copy of Sedgwick"s proposed discovery order |
| **Date:** | Tuesday, June 09, 2015 11:39:20 AM |
| **Attachments:** | D"s proposed Protective Order-Redlined.doc |

**Wayne B. Mason**
Ù^å*¸æ\ÆŠŠÚÆÄÖæ‖æ
¸æ^Ė‾æ[}O•^å*¸æ\|æ¸Ė\{¸ÁdÂÎÁJÈGÏÈÎ€GÁ
Á

**From:** Angie Guerrero [mailto:aguerrero@mauzelawfirm.com]
**Sent:** Tuesday, May 14, 2013 11:46 AM
**To:** Mason, Wayne B.
**Cc:** tbagby@mauzebagbylaw.com
**Subject:** FW: Redlined copy of Sedgwick's proposed discovery order

Mr. Mason,

Please review attached PO sent on behalf of Tom Bagby.


Sincerely,
Angie Guerrero, Paralegal
Mauzé & Bagby, PLLC
2632 Broadway, Suite 401S
San Antonio, Texas 78215
Tel: 210.354.3377
Fax: 210.354.3909 / 1.800.200.9096
aguerrero@mauzelawfirm.com
info@mauzebagbylaw.com

** CONFIDENTIALITY NOTICE **
The information contained in this E-Mail is privileged and confidential and is intended only for the use of the addressee. The term "privileged and confidential" includes, without limitation, attorney-client privileged communications, attorney work product, trade secrets, and any other proprietary information. Nothing in this message is intended by the attorney of the client to constitute a waiver of the confidentiality of this message. If the reader of this message is not the intended recipient, or employee/agent of the intended recipient, you are hereby notified that any duplication or distribution of this communication is unauthorized. If you have received this message in error, please notify us immediately.

Á
Á

CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU, as Next Friend of ████████████████, a Minor, et al., | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| vs. | § § | |
| | § | 370ᵗʰ JUDICIAL DISTRICT |
| NCDR, LLC d/b/a KOOL SMILES, DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES, AISHWARYA K. CHANDESH, D.D.S., EDWARD HO, D.D.S., RICHARD I. MANWARING, D.D.S., and MARC D. THOMAS, D.D.S., | § § § § § § § § | |
| Defendants. | § | HIDALGO COUNTY, TEXAS |

## STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

Defendants NCDR, L.L.C., Dentistry of Brownsville, P.C., Aishwarya K. Chandesh, D.D.S., Edward Ho, D.D.S., Richard I. Manwaring, D.D.S., and Marc D. Thomas, D.D.S. (hereinafter "Defendants") may disclose certain Confidential Information to the parties in this action pursuant to discovery. Plaintiffs Paula Antu, as Next Friend of ████████████, a Minor, et al. ("Plaintiffs") and the Defendants agree to enter into this Stipulated Protective Order for the purpose of facilitating and expediting the discovery process and to prevent the court from having to conduct separate hearings on the information sought to be protected. In order to protect their confidential documents, proprietary interests and trade secret information, the Defendants wish to ensure that any such Confidential Information shall not be used for any purpose other than this action and shall not be made public or disseminated by any party or their counsel, except as set forth in this Stipulated Confidentiality Agreement and Protective Order (hereinafter "Stipulated Protective Order").

The Defendants represent that all documents, testimony, and/or other items to be produced pursuant to this Stipulated Protective Order contain trade secret, proprietary and/or confidential

information (referred to collectively as "Confidential Information"). ~~The disclosure of Confidential Information would necessarily result in serious harm to the Defendants.~~ Accordingly, the parties stipulate to the following:

1.  For the purposes of this Stipulated Protective Order, "Confidential Information" may include, but is not limited to, information and documentation produced in responses to discovery, the content of electronically stored information, tangible thing, writing, paper, model, photograph, film, videotape, transcript of oral testimony, whether printed, recorded or produced by hand or any other mechanical process. All documents, testimony and other items designated as Confidential Information, and all copies, summaries, and reproductions of such information, are subject to this Stipulated Protective Order.

2.  Whenever the Defendants produce a document or thing containing information deemed to be confidential, the Defendants shall designate the document or thing with "Confidential~~,~~" or "Produced Pursuant to Protective Order~~,~~" ~~or a similar statement. If a document or thing is designated "Confidential" or "Produced Pursuant to Protective Order" on its first page,~~ conspicuously on the top right corner of each page of the entire document or thing ~~shall be deemed~~ produced as "Confidential" or "Produced Pursuant to Protective Order." Inadvertent or unintentional production of documents or information containing Confidential Information that are not designated "Confidential" shall not be deemed a waiver, in whole or in part, of a claim for confidential treatment; however, if Defendants do not contend the document or thing produced is confidential within 10 days of production any such claim to condfidentiality of said document, information or thing produced shall be deemed waived.~~.~~

3.  All material which the Defendants designate as Confidential Information in this action shall be maintained in strict confidence by the parties to this action and pursuant to the terms of this Stipulated Protective Order. The parties to this action shall not disclose or permit to be disclosed Confidential Information to any person or other entity, except to "Qualified Persons" who shall be defined to include:

    a.  Counsel of record for the parties in this action, and employees of such counsel who are ~~actively~~ engaged in assisting counsel with this action, provided they have first read this Stipulated Protective Order and have agreed to abide by its terms;

    b.  The ~~responsible~~ employee(s) of a corporate party charged with overseeing that party's participation in this action, provided they have first read this Stipulated Protective Order and have agreed to abide by its terms;

    c.  Independent experts and/or consultants, including jury consultants, retained by the parties to this action for the purpose of assisting in the

---

**STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER - Page 2**
DL/3667794v1

preparation of this case, provided they have first read this Stipulated Protective Order and have agreed to abide by its terms and have signed a written certification in the form attached as "Exhibit A." Counsel for all parties to this action shall maintain such certifications and shall provide copies of them to the Defendants' counsel upon request within sixty (60) days following the conclusion of the case or otherwise file an objection with the court before sixty (60) days following the conclusion of the case;

d.   Witnesses, either by deposition or trial testimony, who may be shown and questioned about the Confidential Information and whose testimony as well as the information attached or submitted as exhibits, shall remain subject to this Stipulated Protective Order; and

e.   The court, court personnel, special masters, mediators, other persons appointed by the court in this action, and stenographic and other reporters pursuant to the provisions of Paragraph 5.

4.   Any person who reviews the Confidential Information produced subject to this Stipulated Protective Order agrees to the jurisdiction over their person where the above-captioned matter is pending for the purposes of any action seeking to enforce the terms of this Stipulated Protective Order or any action for contempt for violation of the terms of this Stipulated Protective Order.

5.   The parties and their counsel who receive Confidential Information shall act to preserve the confidentiality of designated documents and information. Any party that intends to use or submit any Confidential Information in connection with any pre-trial proceedings or filings shall notify the producing party in writing of its intention to do so at the time of or before filing any related pleadings, motions or other documents, and provide in such notice the Bates numbers or other sufficient description of such Confidential Information as to allow the producing party to identify the Confidential Information. The Confidential Information shall be submitted to the Court *in camera* in a sealed envelope or other appropriate container labeled as follows: "CONFIDENTIAL – DOCUMENTS SUBMITTED IN CAMERA."

6.   If a party disagrees with the "Confidential" designation of a specific document or thing, the parties agree to attempt to meet and confer with one another to resolve the issue. If the parties are unable to resolve the issue, the party producing the Confidential Information shall have 10 days from the date the producing party is notified of the objection to file a further protective order establishing that the disputed information is entitled to confidential treatment under this Stipulated Protective Order. If the party or parties producing the Confidential Information do not timely file a motion for a further protective order, then the Confidential Information in dispute shall no longer be subject to protection under this Stipulated Protective Order. Until the issue of confidentiality is resolved, either through

mutual agreement of the parties or by court intervention, documents designated as Confidential Information shall remain Confidential.

7. Confidential Information may be referred to by a party in notices, motions, briefs or any other pleadings, may be used in depositions, and may be marked as deposition exhibits in this action. No such information shall be used, however, for any of these purposes unless it, or the portion where it is revealed, is appropriately marked and protected from dissemination and, where filing is necessary, it will be done pursuant to the provisions of Paragraph 5.

8. If any party wishes to modify this Stipulated Protective Order or its application to certain documents or information, that party shall first request such modification from the party producing Confidential Information and if no satisfactory agreement is reached, may petition the court for modification. Until modification is granted by agreement and/or order, the terms of this Stipulated Protective Order will govern. Provision for use of such information at trial shall be similarly made by agreement or by pretrial order governing the use and protection of the record.

9. Nothing in this Stipulated Confidentiality Agreement and Protective Order shall be construed as placing a limit on the use of Confidential Information at trial. However, before trial, the parties will address this issue and determine appropriate safeguards to protect the Confidential Information at trial.

10. No Confidential Information shall be disseminated to anyone:

   a. Who is an current employee of a direct business competitor of the party producing the information; or

   b. Who is employed by a direct business competitor of the party producing the information and who directly participates in marketing, sales, or service activities of direct business competitors.

11. Failure to abide by the terms of this Stipulated Protective Order may result in a motion for sanctions, costs, and attorney's fees, and any other appropriate legal action by or on behalf of the Defendants.

12. This Stipulated Protective Order or the Defendants' production of documents, things, or information in this action for inspection, copying, or disclosure to any other party to this action shall not be deemed to waive any claim of attorney-client or work product privilege that might exist with respect to these or any other documents or communications, written or oral, including, without limitation, other communications referred to in any documents which the Defendants may produce.

1312. Within thirty (30) days from the entry of final judgment, settlement, or dismissal in connection with this action, each party to this action shall return to counsel for the Defendants their original copies of all Confidential documents and information

received under this Stipulated Protective Order, together with all reproductions, copies~~, abstracts, summaries, or other writings that contain, reflect, or disclose the substance of the Confidential Information~~ which Defendants produced to Plaintiffs' counsel. Each parties' counsel will certify by declaration to the Defendants' counsel that this Stipulated Protective Order has been complied with by them and their experts/consultants in the form attached as "Exhibit B." Defendants' ~~C~~counsel ~~of record for the party or parties receiving Protected Documents may~~shall create and retain an index of the Protected Documents and provide same to Plaintiffs' counsel. The index may only identify the document, date, author, and general subject matter of any Protected Document, but may not reveal the substance of any such document. The producing party shall agree to maintain a copy of all such material for 6 months following the termination of this Action and will not destroy or alter such material pursuant to any document retention policy or for any other reason without first providing reasonable notice (no shorter than 30 days) to counsel of record in this case.

After termination of this Action, the provisions of this Order shall continue to be binding, except with respect to those documents and information that become a matter of public record. This Court retains and shall have continuing jurisdiction over the parties and recipients of the Protected Documents for enforcement of the provisions of this Order following termination of this Action. This Order shall be binding upon the parties and their attorneys, successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.

SIGNED this the _____ day of _____, 2013.


_____
JUDGE PRESIDING

**APPROVED FOR ENTRY:**

By: _____

George W. Mauze, II
State Bar No. 13238800
Tom Bagby
State Bar No. 24059409

**Mauze & Bagby, PLLC**

2632 Broadway, Suite 401 South
San Antonio, Texas  78215
Telephone:     (210) 354-3377
Facsimile:      (210) 354-3909

By: _____

Wayne B. Mason
State Bar No. 13158950
Alan Vickery
State Bar No. 20571650

**SEDGWICK LLP**

1717 Main Street, Suite 5400
Dallas, Texas 75201-7367
Telephone:     (469) 227-8200
Facsimile:      (469) 227-8004

**STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER - Page 6**
DL/3667794v1

## EXHIBIT "A"

**[ATTACH FULLY EXECTUED STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER TO THIS AFFIDAVIT]**

CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU, as Next Friend of ▋▋▋▋▋, a Minor, et al., | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| vs. | § § | |
| NCDR, LLC d/b/a KOOL SMILES, DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES, AISHWARYA K. CHANDESH, D.D.S., EDWARD HO, D.D.S., RICHARD I. MANWARING, D.D.S., and MARC D. THOMAS, D.D.S., | § § § § § § § § § | 370th JUDICIAL DISTRICT |
| Defendants. | § | HIDALGO COUNTY, TEXAS |

## DECLARATION OF [INSERT NAME OF DECLARANT] RE STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

STATE OF _____ )
                               ) ss.
COUNTY OF _____ )

I, _____, declare under penalty of perjury under
   (insert name of recipient of the documents)

the laws of the **[IDENTIFY STATE/United States of America]** that the following is true and

correct:

    1.     My full name and business address are:

         _____.

    2.     I have read and fully understand the attached Stipulated Confidentiality

Agreement and Protective Order.

    3.     I am fully familiar with and agree to comply with and be bound by the provisions

of said Stipulated Confidentiality Agreement and Protective Order, and submit to the jurisdiction of the court in which this matter is pending for any proceedings with respect to said Stipulated Confidentiality Agreement and Protective Order.

4, I will not discuss or divulge to persons other than those specifically authorized by this Stipulated Confidentiality Agreement and Protective Order, and will not copy or use, except solely for the purposes of this action and for no other purposes, any documents, materials or information obtained pursuant to said Stipulated Confidentiality Agreement and Protective Order.

5. I ~~certify that I have~~will return~~ed~~ original copies of all Confidential Information and Documents received under this Stipulated Confidentiality Agreement and Protective Order, together with all reproductions and~~,~~ copies~~, abstracts, summaries, or other writings that contain, reflect or disclose the substance~~ of the Confidential Information to counsel that retained me in this case.

EXECUTED this _____ day of _____, 2013.

_____
Signature of Declarant

_____
Printed Name

**DECLARATION OF [INSERT NAME OF DECLARANT] RE STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER - Page 2**
DL/3667794v1

## EXHIBIT "B"
## [ATTACH FULLY EXECUTED STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER TO THIS AFFIDAVIT]

CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU, as Next Friend of ▮▮▮▮▮▮▮▮▮▮▮▮, a Minor, et al., | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § § | |
| vs. | § § | |
| | § | 370th JUDICIAL DISTRICT |
| NCDR, LLC d/b/a KOOL SMILES, DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES, AISHWARYA K. CHANDESH, D.D.S., EDWARD HO, D.D.S., RICHARD I. MANWARING, D.D.S., and MARC D. THOMAS, D.D.S., | § § § § § § § | |
| Defendants. | § | HIDALGO COUNTY, TEXAS |

### DECLARATION OF [INSERT NAME OF DECLARANT] RE STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

STATE OF _____ )
                             ) ss.
COUNTY OF _____ )

I, _____, declare under penalty of perjury under
(insert name of recipient of the documents)

the laws of the **[IDENTIFY STATE/United States of America]** that the following is true and correct:

1. I am counsel of record for **[name of party]**. My full name and business address are:

_____.

(insert name and address of recipient of the documents)

2. I agreed to be bound by the terms and conditions of the Stipulated Confidentiality Agreement and Protective Order. I acknowledged my consent to be so bound by executing the

---

**DECLARATION OF [INSERT NAME OF DECLARANT] RE STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER - Page 1**
DL/3667794v1

attached Stipulated Confidentiality Agreement and Protective Order.

3.      Pursuant to Paragraph 12 of the Stipulated Confidentiality Agreement and Protective Order attached hereto, I acknowledge that I am obligated to return original copies of all Confidential documents and information received under this Stipulated Confidentiality Agreement and Protective Order, together with all reproductions and, copies, abstracts, summaries, or other writings that contain, reflect, or disclose the substance of the Confidential Information within thirty (30) days from the entry of final judgment, settlement, or dismissal in connection with this action.

4.      I certify that I have returned original copies of all Confidential documents and information received under this Stipulated Confidentiality Agreement and Protective Order, together with all reproductions,  and copies, abstracts, summaries, or other writings that contain, reflect, or disclose the substance of the Confidential Information to counsel for the Defendants.

5.      I certify that I have returned all Confidential Information and Documents received from the experts and consultants hired in this action on behalf of my client(s) that they have returned to me, together with all reproductions and, copies, abstracts, summaries, or other writings that contain, reflect, or disclose the substance of the Confidential Information to me.  I further certify that I have returned such Confidential Information to counsel for the Defendants.

        EXECUTED this _____ day of _____, 2013.


        _____
        Signature of Declarant


        _____
        Printed Name


**DECLARATION OF [INSERT NAME OF DECLARANT] RE STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER - Page 2**
DL/3667794v1

# Exhibit C

## Tom Bagby

| | |
|---|---|
| **From:** | Tom Bagby <tbagby@mauzebagbylaw.com> |
| **Sent:** | Wednesday, October 15, 2014 5:07 PM |
| **To:** | 'Steinmann, Cori' |
| **Subject:** | RE: Kool Smiles - Response to Confidentiality |

Cori,

Defendants marked nearly every document as confidential. Per the protective order, Defendants are representing to the Court that each document marked as confidential contains confidential information and/or trade secrets. Based upon our review of the documents, many documents that were marked as confidential cannot possibly contain confidential information. As such, it is our position that Defendants have not only made many misrepresentations to the Court but also have abused the discovery process. As such, we intend to take this matter up with the Court. However, in the spirit of cooperation, I would be willing to further discuss this matter with you to see if we can come to an agreement on how to handle this issue. I am available all day tomorrow and Friday if you wish to discuss the same.

Tom

----

Tom Bagby
MAUZE & BAGBY, PLLC
2632 Broadway, Suite 402 S
San Antonio, TX 78215
T: 210.354.3377
F: 210.354.3909
Toll Free: 1.800.200.9096
tbagby@mauzebagbylaw.com
*Licensed in Texas, Louisiana & Montana

### ** CONFIDENTIALITY NOTICE **

The information contained in this E-Mail is privileged and confidential and is intended only for the use of the addressee. The term "privileged and confidential" includes, without limitation, attorney-client privileged communications, attorney work product, trade secrets, and any other proprietary information. Nothing in this message is intended by the attorney of the client to constitute a waiver of the confidentiality of this message. If the reader of this message is not the intended recipient, or employee/agent of the intended recipient, you are hereby notified that any duplication or distribution of this communication is unauthorized. If you have received this message in error, please notify us immediately.

**From:** Steinmann, Cori [mailto:Cori.Steinmann@sedgwicklaw.com]
**Sent:** Monday, October 13, 2014 9:35 AM
**To:** tbagby@mauzebagbylaw.com
**Subject:** FW: Kool Smiles - Response to Confidentiality

Tom,

I have reviewed your letter and proposed Motion concerning documents marked by Kool Smiles as confidential. Although I think we should discuss the Issue further, below is my preliminary response to the Issues you raised.

First, the deadline you propose In your letter Is unreasonable. You have had almost a year to review our documents and have never raised the issue of our confidentiality designations, yet you unilaterally set a one week deadline for us to review our entire production to determine If confidentiality designations are appropriate. This is unreasonable. Moreover, your demand that we review our production and identify documents we Intend to remove the confidentiality designation from is not what the parties agreed to In the Protective Order. Per the Protective Order, which you and George had input in drafting, if a party disagrees with the confidential designation that party must Identify the "specific document" and attempt to resolve the dispute. As such, you cannot simply point to one or two documents that you disagree with and demand that we then go and re-review our entire production. If there are specific documents that you take issue with the confidential designation, please provide me a list of those documents and I will review them and let you know the basis for the designation and/or agree to remove the designation.

As to the "specific documents" that you have identified in your Motion, please see the following explanation and/or agreements:

- KSL-00465030-00465035- These redacted pages are part of a larger document, which Is confidential and Is designated as such. The fact that some of the Information In the document has been redacted because it is outside the scope of the litigation does not mean that the information contained on these pages, and within the document as a whole, is not confidential. Confidentiality applies to the entire document, not specific pages within.
- KSL-00000042 and KSL-00000264- These pages are again part of larger documents, which are confidential and are designated as such. These specific pages are the last page of each document and, for whatever reason, do not have any content, but this is how the record was kept In the ordinary course of business. Again, confidentiality applies to the entire document, not specific pages within.
- KSL00474199-00474322- We agree to remove the Confidentiality designation.
- KSL00464784-00464937- We agree to remove the Confidentiality designation.
- KSL00005635-KSL00005647- We agree to remove the Confidentiality designation.
- DOB001333-001334- These pages are part of the New Doctor Orientation Manual, which Is confidential and proprietary. This is not a publically available document and Is provided only to Kool Smiles dentists after they have signed a confidentiality agreement. In fact, the document itself expressly states that It Is not to be reproduced or distributed. As such, the Manual, which Includes the referenced pages, is confidential.

Please let me know when we can discuss any outstanding concerns that you may have regarding confidentiality designations.

Best Regards,
Cori
**Cori M. Steinmann**
cori.steinmann@sedgwicklaw.com
469.227.4625 direct

# Sedgwick ᴸᴸᴾ

1717 Main Street, Suite 5400
Dallas, TX 75201
469.227.8200 phone | 469.227.8004 fax | www.sedgwicklaw.com

The information in this email is intended for the named recipients only. It may contain privileged and confidential matter. If you have received this email in error, please notify the sender immediately by replying to this email. Do not disclose the contents to

anyone. Thank you.

# Exhibit D

FYI

**Alan R. Vickery**
Ù^å*¸æ&\ÆŠŠÚ^ÆÃÖæ||æ
æ|æ}Ëçæ&\^¦^O•^å*¸æ&\|æ¸Ë&[{ ÁøÁ Î JÈGÏ Ë Î €I Á
Á

**From:** Vickery, Alan
**Sent:** Thursday, June 11, 2015 3:11 PM
**To:** George Mauze (gmauze@mauzebagbylaw.com)
**Subject:** Protective Order

George:

I cannot agree to revise the protective order we agreed to in *Antu* to allow you to use the documents we produced in *Antu* in the federal case. Our document production was based upon court orders and agreements in *Antu*, and the federal case contains different claims, issues, and rules which will govern the discovery in that case.

If there are specific documents we have produced which you believe were improperly designated as Confidential, provide me with a list of those documents. We will review them and either remove the designation or confirm for you that we intend to stand on the designation. The protective order requires this, and Cori Steinmann agreed to do this in October, 2014, in her email to Tom. She, in fact, addressed in that email each of the documents specifically identified by you at that time as being improperly designated. I am not aware of any other specific documents which you claim have been improperly designated as Confidential.

If we need to have a hearing on this matter, please move it to next Tuesday, June 16. Eduardo can be available then but he is not available Monday, June 15, as I have mentioned. Thanks.

Alan

**Alan R. Vickery**
æ|æ}Ëçæ&\^¦^O•^å*¸æ&\|æ¸Ë&[{
I Î JÈGÏ Ë Î €I Áæ&ã^&Á

![Sedgwick LLP]

FÏ FÏ ÁT æ&}Â\d^^dÃÀˇ æ&^Ã\ I €€
Öæ||æ ÊÁ\ÝÃ\ Í GÃF
I Î JÈGÏ È G€€Á¡@¦}^ÁøÁ Î JÈGÏ Ë €I Áæ&Á̩¸¸¸Ë^å*¸æ&\|æ¸Ë&[{

----------------------------

The information in this email is intended for the named recipients only. It may contain privileged and confidential matter. If you have received this email in error, please notify the sender immediately by replying to this email. Do not disclose the contents to anyone. Thank you.

----------------------------

# Exhibit E

FYI – see highlighted section.

**Alan R. Vickery**
Ù^å*¸æ\ÁŠŠÚ/ÆÁÖæ||æ
a|æ)Ïċæ\^¦^O●^å*¸æ\|æ¸Èċ{_ÁÐÁÎÌJÈÐGÏÈĦÎ€ĪÁ
Á

**From:** George Mauze [mailto:gmauze@mauzebagbylaw.com]
**Sent:** Wednesday, June 10, 2015 3:47 PM
**To:** Vickery, Alan
**Cc:** tbagby@mauzebagbylaw.com; errodriguez@atlashall.com; fsabo@guerraleeds.com
**Subject:** RE: Case Management Order No. 1

Alan –
When we talked early last week, I understood you were available 6/11 or 6/15, but needed to verify your calendar. Unfortunately, when I sent the email indicating I would R/S the hearing, none of us were aware that the Court would not be available in July. Thus, we need a hearing – I am willing to be available Friday, Monday, or Tuesday. If your client agrees to modify the protective order or enter into a Rule 11 that allows the documents to be reviewed by consulting and retained experts and our attorneys in the federal case, then I will agree to drop that hearing until we have an opportunity to prepare a new protective order in the MDL which addresses that issue and the designation of confidentiality. The CMO can simply be discussed with the Court so we have guidance for revisions and then the disputed matters could be heard in August. However, I would like to get some depos. scheduled between mid-July and mid-August (Drs. Ho, Thomas, Chandesh, Paul Walker, David Veith, and Tu Tran). The appointment of a master will only be requested if the Court's docket does not allow him to accommodate our request for standing hearing dates. I will wait to hear from you.

**From:** Vickery, Alan [mailto:Alan.Vickery@sedgwicklaw.com]
**Sent:** Wednesday, June 10, 2015 2:12 PM
**To:** George Mauze
**Subject:** RE: Case Management Order No. 1

9:30 or 10 would be better for me Friday a.m. if that works for you.

And, are you available July 2 for the CMO hearing? The court is available that day, and we are available as well. Let me know. Thanks.

Alan

**Alan R. Vickery**

æ‖æ)Ë¡æ\\^¦^O•^å*¸æ\\¦æ¸Ë[{
I Î JÈGïÈ Î ∈I Å&å^&Á



Fï Fï Áˇ æ‖ Å¸d^^d̂Ù˘ æ^Å I ∈€
Öæ‖æ Ë̂V̂ŸÄ Í G€F
I Î JÈGïÈ G€€Á¸@¦}^Åo̧Â Î JÈGïÈ ∈€I Áæø̧Å0̧¸¸¸Ë^å*¸æ\\¦æ¸Ë[{

**From:** George Mauze [mailto:gmauze@mauzebagbylaw.com]
**Sent:** Wednesday, June 10, 2015 1:35 PM
**To:** Vickery, Alan
**Subject:** RE: Case Management Order No. 1

How about 9a?

**From:** Vickery, Alan [mailto:Alan.Vickery@sedgwicklaw.com]
**Sent:** Tuesday, June 09, 2015 8:12 PM
**To:** George Mauze
**Cc:** errodriguez@atlashall.com; fsabo@guerraleeds.com; tbagby@mauzebagbylaw.com; aguerrero@mauzelawfirm.com
**Subject:** Re: Case Management Order No. 1

Thanks George. I could discuss the CMO Friday morning if you have some time.
Alan

**Alan R. Vickery**
æ‖æ)Ë¡æ\\^¦^O•^å*¸æ\\¦æ¸Ë[{
I Î JÈGïÈ Î ∈I Å&å^&Á



Fï Fï Áˇ æ‖ Å¸d^^d̂Ù˘ æ^Å I ∈€
Öæ‖æ Ë̂V̂ŸÄ Í G€F
I Î JÈGïÈ G€€Á¸@¦}^Åo̧Â Î JÈGïÈ ∈€I Áæø̧Å0̧¸¸¸Ë^å*¸æ\\¦æ¸Ë[{

On Jun 9, 2015, at 6:22 PM, George Mauze <gmauze@mauzebagbylaw.com> wrote:

Alan –
I thought when we talked you indicated you were available, but would check your calendar to confirm. Nevertheless, I will re-set to accommodate everybody's schedule. I am on vacation 6/17 – 7/1. Can we agree to amend the Protective Order to the extent the documents produced by Defendants can be used in all litigation in which any of the Defendants are parties (ie; federal lawsuit against my firm)? Also, can we schedule a conference call (you and me) to discuss the CMO this week?
george

**From:** Vickery, Alan [mailto:Alan.Vickery@sedgwicklaw.com]
**Sent:** Tuesday, June 09, 2015 3:29 PM
**To:** George Mauze
**Subject:** RE: Case Management Order No. 1

George, we are not available for a hearing on June 15. Eduardo is going to coordinate with Frank this afternoon and see if the judge has any open days the week of June 22. Thanks.

Alan

**Alan R. Vickery**
a̶b̶a̶j̶ ̶ÍȩȺ\^¦ˆΟ•^å*̧Ⱥ\|æ̧ ̶Ȑ|̩{
IÎ JÈG̈cïÈÎ∈I Á̶å̶ā̶^&oÁ
Łą̇ æˇ^€€FÌ̧}*N
FïFïÁ̶T̶æ̶ą̶ Á̶U̶d^^ḑ̶ÁÙ˘ã̶c̶^Ã̧I€€
Öæ̶||æ̶ ̶Ê̶ÁVÝÄ̇ÍG€F
IÎ JÈG̈cïÈG€€Á̧@}^Á̶o̶Á̶ Î JÈG̈cïÈ€∈I Áæ̶o̶ç̶Á̶o̶Á̧ ̶ ̶ ̶Ȩ^å*̧ ̶Ⱥ\|æ̧ ̶Ȑ|̩{

**From:** George Mauze [mailto:gmauze@mauzebagbylaw.com]
**Sent:** Friday, June 05, 2015 12:49 PM
**To:** Vickery, Alan; Mason, Wayne B.; Bruce Campbell
**Cc:** tbagby@mauzebagbylaw.com
**Subject:** Case Management Order No. 1

Alan/Wayne/Bruce –

Long time no see or hear! I have made a run at preparing a comprehensive CMO as requested by the Court and required by the rules. Attached is the draft CMO and exhibits. My idea is if we agree, or the Court orders, two Bellwether trials, then we could limit the discovery in all other cases filed to the attached Uniform Discovery and conduct full discovery on the two Bellwether cases. Also, we would probably not file any new suits until after the first Bellwether trial. After your review of the draft, call me to discuss your input in regards to the scope of the Order, the discovery limitations, discovery deadlines, and the Bellwether trial dates. We will be filing a M/Enter a CMO today and will probably set it for 6/15. I will agree to reset to 6/11 if necessary to accommodate schedules (the Court clerk only gave us 6/9, 6/10, 6/11 and 6/15 as available dates). I assume we may be able to agree to most, if not all, of the CMO. We are also requesting a hearing on the previously filed M/Determine Confidentiality and Protective Order and filing a M/Appoint a Special Master. Thanks.

george

---------------------------

The information in this email is intended for the named recipients only. It may contain privileged and confidential matter. If you have received this email in error, please notify the sender immediately by replying to this email. Do not disclose the contents to anyone. Thank you.

---------------------------

MDL NO. \_\_\_\_C-0184-13-G\_\_\_\_

§
§
§
§
**IN RE KOOL SMILES DENTAL** §
**LITIGATION** §
§
§
§
§

§     **IN THE DISTRICT COURT OF**
§     **HIDALGO COUNTY, TEXAS**
§     **370TH JUDICIAL DISTRICT**

### DEFENDANTS' SUPPLEMENTAL BRIEF IN RESPONSE TO PLAINTIFFS' MOTION TO AMEND CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER OR, ALTERNATIVELY MOTION FOR SANCTIONS OR, ALTERNATIVELY, FOR DETERMINATION OF CONFIDENTIALITY

Defendants[1] in all cases transferred to this MDL pretrial Court provide the following Supplemental Response to Plaintiff's Motion to Amend Confidentiality Agreement and Protective Order or Alternatively for Sanctions, or Alternatively for Determination of Confidentiality ("Motion").

### I. OVERVIEW

The Court heard argument on the Motion on June 15, 2015. At that time the Court requested additional briefing on the issue of the scope of shared discovery. The Court further requested the parties to submit proposed, amended protective orders to be entered for use in cases transferred to this MDL. Defendants maintain the positions stated in their initial response to the Motion, and per the Court's request, submit this brief as a supplemental response to address those specific areas requested by the Court at the hearing.

---

[1] This reference excludes Dr. Jessie Trinh, Defendant in the *Arroyo, et al. v. Mathisen, et al.*, CL-14-3569 matter transferred from the County Court of Law No. 4 in Hidalgo County, because she is represented by separate counsel.

## II. ARGUMENTS AND AUTHORITIES

### 1.    Proper Scope of Shared Discovery

Shared discovery should be limited to other litigants in similar litigation (*i.e.*, parties in this MDL).  Contrary to the assertions of Plaintiffs, this is what Texas law allows.  More importantly, Texas law does *not* allow for documents to be shared with *potential* litigants without limitation, or with litigants involved in dissimilar or out-of-state cases.  The case law cited and relied on by Plaintiffs dictates that any sharing of discovery be with "similarly situated litigants."  There is no authority that would allow discovery to be shared more broadly.

The well-established policy of shared discovery is accomplished by the shared discovery component of a MDL.  In fact, Defendants voluntarily consented to this type of sharing before the creation of this MDL by allowing documents produced in *Antu* to be used in the other cases that have now been transferred to the MDL proceeding.  The Court need not order any additional sharing of discovery in order to achieve the goal.

### (a)    Shared Discovery Should be Limited to Parties in the MDL

The scope of shared discovery should be limited to the parties in the MDL.  The concept of shared discovery emerged as a means to minimize the duplication of efforts inherent in requiring "similarly situated parties to go through the same discovery process time and time again, even though the issues involved are <u>virtually identical</u>."  *Garcia v. Peeples*, 734 S.W.2d 343, 347 (Tex. 1987) (emphasis added).  The presence of similarly situated litigants in cases with similar issues is required before shared discovery is to be considered.  Contrary to Plaintiffs' position, *Garcia* does not support the sharing of discovery more broadly.

Here there is no need for additional sharing language because the MDL procedure itself accomplishes the policy goals that animated the *Garcia* opinion.  *See in re Champion Indus.*

*Sales, LLC*, 398 S.W.3d 812, 819 (Tex. App.—Corpus Christi 2012, pet. denied). MDL discovery accomplishes that goal because it avoids requiring "similarly situated parties to go through the same discovery process time and time again, even though the issues involved are virtually identical." *Id.* (*quoting Garcia*, 734 S.W.2d at 347). In fact, promoting efficiencies in cases with common questions is one of the essential reasons the Texas Supreme Court implemented Rule 13 of the Texas Rules of Judicial Administration providing for Multidistrict Litigation in Texas. *See id.* Therefore, the shared discovery doctrine is coextensive with MDL discovery, and it does not support sharing of discovery outside of litigants in the MDL. *See id.*

Defendants consented to this sharing months ago. By Rule 11 agreement, Defendants agreed to allow sharing of the *Antu* discovery with all MDL litigants. Defendants do not oppose the entry of a new MDL protective order, but it should formalize the parties' prior agreement rather than distort the scope of shared discovery.

### (b) Shared Discovery Does Not Extend to Dissimilar Cases or Potential Litigants

Plaintiffs have argued that *Garcia* and *Eli Lilly & Co. v. Marshall*, 850 S.W.2d 155 (Tex. 1993) provide support for shared discovery in dissimilar cases and with other litigants and potential litigants who are not part of this MDL. The issue before the court in *Garcia* was limited to similarly situated litigants, and the clear language of the opinion demonstrates that it only extended the shared discovery doctrine to similarly situated litigants. The opinion states, "[Plaintiff] seeks to exchange the discovery information with other persons involved in <u>similar suits</u> against automakers. He argues that allowing information exchanges between <u>similarly situated litigants</u> would enhance full disclosure and efficiency in the trial system." *Garcia*, 734 S.W.2d at 346-47 (emphasis added). The court reasoned that

---

> shared discovery makes the system itself more efficient. The current discovery process forces <u>similarly situated parties</u> to go through the same discovery process time and time again, even though the issues involved are virtually identical. Benefiting from restrictions on discovery, one party facing a number of adversaries can require his opponents to duplicate another's discovery efforts, even though the opponents share <u>similar discovery needs</u> and will litigate <u>similar issues</u>.

*Id.* at 347 (emphasis added). The court then held that the information could be shared with the "other <u>litigants</u>," which again refers to "persons involved in <u>similar suits</u> against automakers." *Id.* at 346-47, 348 (emphasis added). *Garcia* extends shared discovery <u>only</u> to similarly situated actual litigants, not to dissimilar cases or potential litigants.

Although *Eli Lilly* cites *Garcia* and refers to shared discovery, that case was not about shared discovery. *Eli Lilly* concerned whether a trial court's order requiring disclosure of the identities of consumers who had made confidential reports to the FDA was appropriate or if the confidential information should be protected from release. *Eli Lilly*, 850 S.W.2d at 160. The Texas Supreme Court ultimately held against the plaintiffs in that case because the federal "objective of fostering post-approval reporting of possible adverse reactions for all FDA-approved drugs is severely compromised by the trial court's order of wholesale disclosure of reporters' identities." *Id.* at 160.

The Texas Supreme Court only referred to the doctrine in *dicta*. The court ambiguously referenced potential litigants, but did not ultimately include potential litigants in its holding. Specifically, the court first stated that under the shared discovery doctrine the fruits of discovery may be shared with "other litigants and potential litigants," citing only page 347 of *Garcia* in support of the statement. *Id.* The ambiguous phrase "potential litigants" was not defined or otherwise discussed. While *Garcia* unquestionably does address other litigants, it does not in any way extend to potential litigants, as that issue was not even before the court. *See Garcia*,

---

734 S.W.2d at 347.  Therefore, it is not clear what the court meant when it referred to potential litigants in citing *Garcia*.

The holding in *Eli Lilly* did not depend a finding that shared discovery was proper.  It is clear, therefore, that the opinion does not broaden the scope of shared discovery as articulated in *Garcia.*  Plaintiffs insist the *Eli Lilly* court fundamentally altered the shared discovery doctrine by making this isolated, ambiguous, and unelaborated statement. Plaintiffs ignore that the *Eli Lilly* court ultimately held, consistent with *Garcia*, that plaintiffs were "entitled to all the substantive information in the reports and to share that discovery with their expert witnesses and litigants in other cases."  *Eli Lilly*, 850 S.W.2d at 160 (emphasis added).  In extending discovery only to litigants—not potential litigants—in other similar cases, the actual holding of the court in *Eli Lilly* is in direct opposition to Plaintiffs' position.

Plaintiffs have not directed this Court or Defendants to a case in which a Texas court actually extended the shared discovery doctrine to potential litigants.  That is because there is no legal support for this and it is illogical to do so.  Taken to its logical extreme, Plaintiffs' sweeping request would allow for essentially unlimited shared discovery with anyone Plaintiffs' counsel claims is a *potential litigant*, with insufficient safeguards to Defendants to protect the confidential information produced in response to these claims.  Any protective order would be virtually unenforceable if the court lacked assurance that the universe of the potential recipients of confidential information was identifiable and could be subjected to the Court's orders.  The virtually limitless designation of "potential litigants" severely undermines the Court's ability to protect the legitimate interests of the actual litigants before the Court.

Defendants' proposed scope of shared discovery is supported by legal precedent and common sense.  For example, it has been held many times that a protective order limiting

confidential information to the "*parties in this lawsuit*, their lawyers, consultants, investigators, experts, and other necessary persons employed by counsel" was proper. *See, e.g., In re Continental General Tire, Inc.*, 979 S.W.2d 609, 613 n.3 (Tex. 1998) (emphasis added). In another case, a trial court's order was upheld because the plaintiffs in that case failed to show harm "from the inability to share and compare information with other litigants in other cases." *See Scott v. Monsanto Co.*, 868 F.2d 786, 792 (5th Cir. 1989) (no harm to plaintiffs ). Finally, another court has pointed out that an "acceptable protective order" is one that "restricts the dissemination of documents to parties involved in the litigation." *See Zappe v. Medtronic USA, Inc.*, No. C-08-369, 2009 WL 792343, at *1 (S.D. Tex. Mar. 23, 2009) (*citing In re Continental*, 979 S.W.2d at 613). The Court should deny Plaintiffs' request to extend shared discovery beyond MDL litigants.

### (c)     Shared Discovery With the Federal Case is Inappropriate

As stated above, the shared discovery doctrine does not allow for sharing of confidential information with those who are not similarly situated litigants. The litigants in the federal case—attorneys and their firm attempting to defend themselves from charges of false advertising, defamation, business disparagement, and injury to business reputation—are in no way similarly situated with the plaintiffs in this case, who are children asserting claims of dental malpractice.

Worse, permitting sharing with the federal litigants intrudes on the prerogatives of the federal court. As the court held in *Eli Lilly*, trial courts should not compromise federal objectives by issuing unnecessarily broad orders. *Eli Lilly*, 850 S.W.2d at 160. Extending the sharing of discovery to the federal case is not essential to the efficient resolution of the MDL cases, and intrudes upon the province of the federal court to control and direct discovery in that case under federal law.

The federal case involves entirely different claims, causes of action, and issues. Plaintiffs in the MDL are the next friends of minor dental patients who allege causes of action for negligence, gross negligence, civil conspiracy, and fraud arising out of dental care and treatment. The federal lawsuit involves claims for false advertising, defamation, business disparagement, and injury to business reputation. None of the claims in the two lawsuits are the same.

Perhaps more importantly, the judge in the federal case has already issued some discovery rulings. The parties in that case have served discovery requests on each other, filed motions to compel and related briefing, argued various issues before the court under the federal rules, and have received discovery-related orders from the judge in that case. Any order entered here allowing for shared discovery in the federal case risks running afoul of the federal court's orders. What is relevant and discoverable in that case should be determined by the judge in that case. As the *Garcia* court noted, "prudential rules check Texas' ability to control litigation in other forums." *Garcia*, 734 S.W.2d at 348.

The shared discovery doctrine was never intended to be a catch-all doctrine that prevented any and all duplicative discovery. The underlying rationale for shared discovery is that shared discovery can promote efficiency, consistency, full and fair disclosure, and prevent "needless duplication and expense." *Steenbergen v. Ford Motor Co.*, 814 S.W.2d 755, 758 (Tex. App.—Dallas 1991, writ denied) (emphasis added) (*citing Garcia*, 734 S.W.2d at 347). Implicit in this acknowledgement is that, as a matter of necessity, there will at times be duplication of discovery. *See id.* One such instance is when differing discovery rules, and therefore outcomes, are in play. Because the claims are totally different, the type of discovery permissible in one case may be impermissible in another. The federal court does not decide the scope of discovery

for the MDL Court. Similarly, it would be highly inappropriate for the MDL Court to dictate the scope of discovery in the federal case.

While it is true that some discovery in the federal case may duplicate some discovery in the MDL, there has been no showing that there will be complete overlap, and that alone is an insufficient basis for shared discovery. Any order entered in this case that would allow Plaintiffs' counsel to share discovery in the federal case would interfere with the federal court's handling of discovery in that case. Therefore, this Court should decline to amend the Protective Order to allow Plaintiffs to share discovery in the federal case.

### 2. Proposed Amendments to the Protective Order

#### (a) The MDL Court Should Adopt the Existing Protective Order with Minor Revisions

As Plaintiffs have not even attempted to follow the existing procedure for challenging confidentiality designations, there is no indication the existing procedure is unworkable. The procedure makes sense, and it provides a vehicle for challenging confidentiality designations if that becomes necessary. Defendants have complied with the Protective Order and, contrary to Plaintiffs' assertions, have not abused the discovery process or arbitrarily designated documents as confidential. *See* Affidavit of Alan R. Vickery, attached hereto as Exhibit "A".

Defendants object to Plaintiffs' proposed Protective Order delivered to the Court on Monday, June 15, because it is inconsistent with the law and does not provide adequate protection to Defendants' confidential information. Plaintiffs have requested that the order be extended to any "other litigants" or "potential litigants." This position, as noted herein, is inconsistent with the scope of MDL discovery and the shared discovery doctrine and not supported by Texas law. Further Plaintiffs' proposed amendments would unnecessarily and unreasonably increase the opportunity for Defendants' competitors to gain access to confidential

and competitively sensitive information. In short, Plaintiffs' proposed amendments do nothing to advance the disposition of the cases in this MDL, while needlessly and unreasonably exposing Defendants to the very real risk that their confidential and competitively sensitive information ends up in the hands of their competitors.

Defendants maintain that the substance of the existing Protective Order should remain in place. Nevertheless, Defendants concede that the existing protective order could be improved and made more efficient. Defendants propose the following revisions to the Protective Order.

### (b) Revised Procedure for Challenging Confidentiality

To address Plaintiffs' real concerns about the Protective Order in place, Defendants propose a revision to provide that, with each production of confidential information, the designating party shall provide a log of all documents produced and designated as confidential, including a description of each document. By doing so, the opposing party can efficiently evaluate which designations it may want to challenge. That would also allow the receiving party to confer with the producing party about the confidentiality designations. Therefore, Defendants propose a revision to paragraph six (6) of the existing protective order, to read as follows:

6. Within thirty days of the production of documents designated as confidential, the party producing documents designated as confidential shall provide a written log containing a list of all Confidential Information produced (the "Confidentiality Log"). The Confidentiality Log shall contain the bates range of each document produced as confidential, a description of the document specific enough to identify the document, and a reference to the request for production to which it is responsive. For documents previously produced and designated as confidential, the producing party shall have thirty days from the entry of this order to serve the Confidentiality Log. If a party disagrees with the "confidential" designation of a specific document or thing, such party may challenge the designation by identifying the document on the Confidentiality Log and indicating in writing to the party designating the document as confidential that the designation is challenged. The designating party will have fourteen (14) days to respond to the confidentiality challenge and will indicate whether the confidentiality designation will be withdrawn. If the designation is not withdrawn, the parties agree to attempt to meet and confer with one another to resolve the issue. If the parties are unable to resolve

the issue, the party that intends to use the Confidential Information shall move for a hearing to obtain a ruling from the Court as to whether the information is entitled to confidential treatment under this Confidentiality and Protective Order. Until the issue of confidentiality is resolved, either through mutual agreement of the parties or by court intervention, documents designated as Confidential Information shall remain Confidential.

A copy of Defendants' proposed Confidentiality and Protective Order, reflecting this change and modifying it for use in the MDL is attached hereto as Exhibit "B". Defendants request that the Court enter this revise Protective Order for use in the MDL proceeding.

### III. CONCLUSION

Based on the foregoing, Defendants[2] in all cases transferred to the pretrial multi-district litigation respectfully request that Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order or Alternatively for Sanctions, or Alternatively for Determination of Confidentiality be denied, that Plaintiffs' counsel not be allowed to share documents produced as confidential beyond the litigants in this MDL proceeding, and for such other and further relief to which they are entitled.

---

[2] This reference excludes Dr. Jessie Trinh, Defendant in the *Arroyo, et al. v. Mathisen, et al.*, CL-14-3569 matter transferred from the County Court of Law No. 4 in Hidalgo County, because she is represented by separate counsel.

Respectfully Submitted,


*/s/ Alan R. Vickery*
WAYNE B. MASON
State Bar No. 13158950
ALAN R. VICKERY
State Bar No. 20571650
**SEDGWICK LLP**
1717 Main Street, Suite 5400
Dallas, TX 75201-7367
Telephone:   (469) 227-8200
Facsimile:    (469) 227-8004
wayne.mason@sedgwicklaw.com
alan.vickery@sedgwicklaw.com


EDUARDO R. RODRIGUEZ
State Bar No. 00000080
**ATLAS, HALL & RODRIGUEZ, L.L.P.**
50 W. Morrison Road, Suite A
Brownsville, TX 78520
Telephone:   (956) 574-9333
Facsimile:    (956) 574-9337
errodriguez@atlashall.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record as shown below via facsimile and email on the 19th day of June, 2015.

George W. Mauzé, II
MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 401 South
San Antonio, TX 78215
gmauze@mauzelawfirm.com

R.D. "Bobby" Guerra
GUERRA, LEEDS, SABO & HERNANDEZ
PLLC
10213 N. 10th Street
McAllen, TX 78504
rdguerra@guerraleeds.com

*Attorneys for Plaintiffs*

Bruce S. Campbell
State Bar No: 03694600
BRACKETT & ELLIS,
A Professional Corporation
100 Main Street
Fort Worth, TX. 76102-3090
817.338.1700
Facsimile: 817.870.2265
bcampbell@belaw.com

*Attorneys for Defendant Jessie Trinh, DMD*

/s/ Alan R. Vickery
ALAN R. VICKERY

---

# Exhibit A

|  | § | IN THE DISTRICT COURT OF |
|---|---|---|
|  | § | |
|  | § | |
|  | § | |
|  | § | |
| IN RE KOOL SMILES DENTAL | § | HIDALGO COUNTY, TEXAS |
| LITIGATION | § | |
|  | § | |
|  | § | |
|  | § | |
|  | § | 370TH JUDICIAL DISTRICT |

## AFFIDAVIT OF ALAN R. VICKERY

| STATE OF TEXAS | § |
|---|---|
|  | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned notary public on this day personally appeared ALAN R. VICKERY, a person known to me who, after being duly sworn upon his oath, deposed as follows:

1.      "I am over eighteen (18) years of age, have never been convicted of a felony and am fully competent in all respects to make this Affidavit.

2.      I am an attorney of record in the above-styled and numbered cause and in each case transferred to the multidistrict litigation pretrial court (the "MDL") as of the date of this Affidavit.

3.      I have been involved in the day-to-day activities of the cases transferred to the MDL and I am familiar with the written discovery that has taken place between the parties. Prior to the order transferring the cases to the MDL, a significant amount of written discovery had been conducted in the first case filed, *Antu et al., v. NCDR, LLC*, et al., C-0184-13-G, in the 370th District Court in Hidalgo County, Texas.

4. In *Antu*, Plaintiffs submitted over four-hundred requests for production to Defendants Benevis LLC, f/k/a NCDR, LLC ("Benevis"), Kool Smiles, P.C. ("KSPC"), and Dentistry of Brownsville, P.C. ("DOB") (collectively, the "Corporate Defendants"). Many of those requests sought documents containing standard operating procedures, information regarding recruitment, training, and employment policies, and business reports containing information about the performance of dentists employed by DOB.

5. On June 11, 2013, the parties entered into and the Court signed a Stipulated Confidentiality Agreement and Protective Order (the "Protective Order") that governed the handling of documents produced in the *Antu* case that contained confidential information.

6. After *Antu* was filed and significant discovery had taken place, ten additional cases with nearly identical pleadings were filed against a number of defendants, including the Corporate Defendants. After those cases were filed, counsel for the Corporate Defendants agreed to allow the Plaintiffs in each of the newly filed cases to use the documents produced in *Antu*, subject to the Protective Order. On June 15, 2015, Plaintiffs in those cases filed in their respective trial courts the Rule 11 agreements containing the agreement.

7. Attorneys from my firm, with the assistance of over twenty contract attorneys, reviewed and analyzed the documents produced in the *Antu* litigation for responsiveness, privilege, and confidentiality.

8. During the course of the review, the reviewing attorneys identified and prepared thousands of reports and documents for production. Many of the reports, which were produced, contained hundreds of pages each. Pursuant to the terms of the Protective Order, these attorneys were instructed to designate as confidential each page of the following: Doctor Procedure Reports, Expanded Services Reports, and Office Scorecard – Medicaid Children Reports. With

input from the Corporate Defendants, these reports were designated as Confidential, as they contain proprietary and confidential business information or trade secrets.

9. I have reviewed and am familiar with the process and criteria for determining the confidentiality of the documents produced in the *Antu* litigation. This process was developed under my supervision. The attorneys reviewing the documents produced in *Antu* were instructed to code the reports noted above, as well as internal policies and procedure manuals or handbooks, training materials, financial documents, sensitive personnel information regarding employees, and other documents containing confidential information as "Confidential Pursuant to the Protective Order." Prior to production, the reviewing attorneys performed a second, quality control review of coded documents. The process by which documents were identified and marked as confidential reflected my professional judgment and that of the reviewing attorneys that the documents designated as confidential contained proprietary and confidential business information or trade secrets. If the documents so designated comprise a substantial portion of the overall production, it only reflects the fact that Plaintiffs' counsel chose to request a large quantity of confidential documents.

10. On October 6, 2014, Plaintiffs' counsel wrote a letter to Cori Steinmann, then an attorney at my firm representing Defendants, requesting that Defendants "identify by bates-stamped number, which documents, if any, that Defendants intend to remove the designation of confidentiality from."

11. The language of the Protective Order states that a "party [who] disagrees with the 'Confidential' designation of a specific document or thing" agrees to confer with the party who has designated the document as such.

12. To date, the only "specific" documents on which the Plaintiffs have attempted to confer with me or any other attorney representing the Corporate Defendants are the documents attached to Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order or, Alternatively, Motion for Sanctions or, Alternatively, for Determination of Confidentiality.

13. On October 15, 2014, Ms. Steinmann responded by email to Plaintiffs' October 6, 2014 letter. In her response, she informed Plaintiffs' counsel that she had analyzed the specific documents identified in the motion and provided an analysis of the confidentiality of each page.

14. Ms. Steinmann and I have on several occasions offered to review any other "specific document" identified by Plaintiffs' counsel, but Plaintiffs' counsel have not identified any other documents.

15. On June 11, 2015, Plaintiffs' counsel informed me verbally and via email that he wanted to use the documents produced in the *Antu* litigation in the federal court litigation brought by certain of the Corporate Defendants against him and his firm. He further advised me on June 12, 2015 that he intended to share the documents with attorneys who are not counsel of record for any party in any of the cases currently before the MDL court.

"FURTHER AFFIANT SAYETH NOT."

_____
ALAN R. VICKERY

SUBSCRIBED AND SWORN TO BEFORE ME, on this the 19th day of June, 2015.

_____
Notary Public in and for the State of Texas

My Commission Expires:

3-30-2016



[Seal]



NANCY S BASSI
My Commission Expires
March 30, 2016

# Exhibit B

**MDL NO. _____**

|  |  |  |
|---|---|---|
| | § | **IN THE DISTRICT COURT OF** |
| | § | |
| | § | |
| | § | |
| | § | |
| **IN RE KOOL SMILES DENTAL** | § | **HIDALGO COUNTY, TEXAS** |
| **LITIGATION** | § | |
| | § | |
| | § | |
| | § | |
| | § | **370TH JUDICIAL DISTRICT** |

## <u>CONFIDENTIALITY AND PROTECTIVE ORDER</u>

Defendants Benevis, LLC f/k/a NCDR, LLC, Dentistry of Brownsville, P.C., Kool Smiles, PC, and each of the individual dentists named as defendants (collectively "Defendants") in any case filed in or transferred to this multidistrict litigation ("MDL") pretrial Court may disclose certain Confidential Information to the parties in this action pursuant to discovery requests or Court order. Plaintiffs ("Plaintiffs"), whether directly filed in this MDL or transferred as a tag-along case, and the Defendants in this MDL are hereby ordered to abide by the terms of this Confidentiality and Protective Order (the "Protective Order") for the purpose of facilitating and expediting the discovery process and to reduce the Court's time from having to conduct separate hearings on the information sought to be protected. In order to protect their alleged confidential documents, proprietary interests, and trade secret information, the Defendants wish to ensure that any such Confidential Information shall not be used for any purpose other than the lawsuits in this MDL, whether directly filed in or transferred as a tag-along case, and shall not be made public or disseminated by any party or their counsel, except as set forth in this Confidentiality and Protective Order.

The Defendants assert that all documents, testimony, and/or other items to be produced pursuant to this Confidentiality and Protective Order contain trade secret, proprietary and/or confidential information (referred to collectively as "Confidential Information"). Accordingly, the Court sets forth the terms and conditions of this Confidentiality and Protective Order:

1. For the purposes of this Confidentiality and Protective Order, "Confidential Information" may include, but is not limited to, information and documents produced in responses to discovery, the content of electronically stored information, tangible things, writings, papers, models, photographs, films, videotapes, and transcripts of oral testimony, whether printed, recorded or produced by hand or any other mechanical process. All documents, testimony and other items designated as Confidential Information, and all copies, summaries, and reproductions of such information, are subject to this Confidentiality and Protective Order.

2. Whenever the Defendants produce Confidential Information, the Defendants shall designate each page of the document or thing with a label or stamp identifying it as "Confidential" and/or "Produced Pursuant to Protective Order." Inadvertent or unintentional production of documents or information containing Confidential Information that are not designated "Confidential" shall not be deemed a waiver, in whole or in part, of a claim for confidential treatment; however, if Defendants do not designate such documents or things as Confidential Information within thirty (30) days of discovering such inadvertent production, any such claim to confidentiality of said document, information, or thing produced shall be deemed waived.

3. All material which the Defendants designate as Confidential Information in this action shall be maintained in strict confidence by the parties to this action and pursuant to the terms of this Confidentiality and Protective Order. The parties shall not disclose or permit to be disclosed Confidential Information to any person or other entity, except to "Qualified Persons," who shall be defined to include:

   a. Counsel of record for the parties in this MDL action, whether filed directly in this MDL or transferred to this MDL proceeding as a tag-along case, and employees of such counsel who are engaged in assisting counsel with this action, provided they have first read this Confidentiality and Protective Order and have agreed to abide by its terms;

   b. The employee(s) of a corporate party charged with overseeing that party's participation in this action, provided they have first read this Confidentiality and Protective Order and have agreed to abide by its terms;

   c. Independent experts and/or consultants, including jury consultants, retained by the parties to this action for the purpose of assisting in the preparation of this case, provided they have first read this Confidentiality and Protective Order and have agreed to abide by its terms and have signed a written certification in the form attached as "Exhibit A." Counsel for all parties to this action shall maintain such certifications for six (6) months following the termination of this Action and will not destroy or alter such material pursuant to any document retention policy or for any other reason

without first providing reasonable notice (no shorter than thirty (30) days) to counsel of record in this case;

d. Witnesses who may be shown and questioned about the Confidential Information and whose testimony as well as the information attached or submitted as exhibits, shall remain subject to this Confidentiality and Protective Order; and

e. The court, court personnel, special masters, mediators, other persons appointed by the court in this action, stenographic and other reporters, and videographers pursuant to the provisions of Paragraph 5.

4. Any person who reviews the Confidential Information produced subject to this Confidentiality and Protective Order agrees to the jurisdiction over their person where the above-captioned matter is pending for the purposes of any action seeking to enforce the terms of this Confidentiality and Protective Order or any action for contempt for violation of the terms of this Confidentiality and Protective Order.

5. The parties and their counsel who receive Confidential Information shall act to preserve the confidentiality of designated documents and information. Any party that intends to use or submit any Confidential Information in connection with any pre-trial proceedings or filings shall notify the producing party in writing of its intention to do so at the time of or before filing any related pleadings, motions or other documents, and provide in such notice the bates numbers or other sufficient description of such Confidential Information as to allow the producing party to identify the Confidential Information. The Confidential Information shall be submitted to the Court *in camera* in a sealed envelope or other appropriate container labeled as follows: "CONFIDENTIAL – DOCUMENTS SUBMITTED IN CAMERA" if used as exhibits to any filings in this case or in hearings.

6. Within thirty days of the production of documents designated as confidential, the party producing documents designated as confidential shall provide a written log containing a list of all Confidential Information produced (the "Confidentiality Log"). The Confidentiality Log shall contain the bates range of each document produced as confidential, a description of the document specific enough to identify the document, and a reference to the request for production to which it is responsive. For documents previously produced and designated as confidential, the producing party shall have thirty days from the entry of this order to serve the Confidentiality Log. If a party disagrees with the "confidential" designation of a specific document or thing, such party may challenge the designation by identifying the document on the Confidentiality Log and indicating in writing to the party designating the document as confidential that the designation is challenged. The designating party will have fourteen (14) days to respond to the confidentiality challenge and will indicate whether the confidentiality designation will be withdrawn. If the designation is not withdrawn, the parties agree to attempt to meet

and confer with one another to resolve the issue. If the parties are unable to resolve the issue, the party that intends to use the Confidential Information shall move for a hearing to obtain a ruling from the Court as to whether the information is entitled to confidential treatment under this Confidentiality and Protective Order. Until the issue of confidentiality is resolved, either through mutual agreement of the parties or by court intervention, documents designated as Confidential Information shall remain Confidential.

7. Confidential Information may be referred to by a party in notices, motions, briefs or any other pleadings, may be used in depositions, and may be marked as deposition exhibits in this action. No such information shall be used, however, for any of these purposes unless it, or the portion where it is revealed, is appropriately marked and protected from dissemination and, where filing is necessary, it will be done pursuant to the provisions of Paragraph 5.

8. If any party wishes to modify this Confidentiality and Protective Order or its application to certain documents or information, that party shall first request such modification from the party producing the Confidential Information and if no satisfactory agreement is reached, may petition the court for modification. Until modification is granted by agreement and/or Court Order, the terms of this Confidentiality and Protective Order will govern.

9. Nothing in this Confidentiality and Protective Order shall be construed as placing a limit on the use of Confidential Information at trial. However, before trial, the parties will address this issue and determine appropriate safeguards to protect the Confidential Information at trial.

10. No Confidential Information shall be disseminated to anyone who is a direct competitor of the party producing the Confidential Information or is a current employee of a direct business competitor of the party producing the Confidential Information. This paragraph shall not apply to any retained or consulting experts. However, any retained or consulting experts excluded under this paragraph shall comply with paragraph 3(c). In addition, said expert(s) shall not disclose the Confidential Information to any direct competitor or other person currently or formerly employed by a direct business competitor of the party producing the Confidential Information. Plaintiffs' counsel shall retain Declarations executed by consulting experts.

11. Failure to abide by the terms of this Confidentiality and Protective Order may result in a motion for sanctions, costs, and attorney's fees, and any other appropriate legal action by or on behalf of the Defendants.

12. This Confidentiality and Protective Order and/or the Defendants' production of documents, things, or information in this action for inspection, copying, or disclosure to any other party to this action shall not be deemed to waive any claim of

attorney-client or work product privilege that might exist with respect to these or any other documents or communications, written or oral, including, without limitation, other communications referred to in any documents which the Defendants may produce.

13.     Within thirty (30) days from the entry of final judgment, settlement, or dismissal in connection with this action, each party to this action shall return to counsel for the Defendants their original copies of all Confidential Information received under this Confidentiality and Protective Order, together with all reproductions and copies. In addition, all abstracts, summaries, indexes or other writings that contain, reflect, or disclose the substance of the Confidential Information received under this Confidentiality and Protective Order shall be destroyed by Plaintiffs' counsel within six (6) months from the entry of final judgment, settlement, or dismissal in connection with this action. Each party's counsel will certify by declaration to the Defendants' counsel that this Confidentiality and Protective Order has been complied with by them and their experts/consultants in the form attached as "Exhibit B."

14.     Each party's attorneys shall maintain a log of all documents designated as confidential that are delivered to other Qualified Persons (the "Qualified Person Log"). The Qualified Person Log shall contain the name and address of the person to whom the information is disseminated, a designation of what constitutes the person as a Qualified Person (as defined in paragraph 3), a list of documents provided to each Qualified Person, which shall include the bates range of the documents produced as confidential, a description of the document specific enough to identify the document, and a reference to the request for production to which it is responsive.

This Court retains and shall have continuing jurisdiction over the parties and recipients of the Confidential Information and Protected Documents for enforcement of the provisions of this Confidentiality and Protective Order until compliance with Paragraph 13. This Confidentiality and Protective Order shall be binding upon the parties and their attorneys, successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.

SIGNED this the _____ day of _____, 2015.

_____
JUDGE PRESIDING

**[ATTACH FULLY EXECTUED CONFIDENTIALITY AND PROTECTIVE ORDER TO THIS AFFIDAVIT]**

**MDL NO. _____**

| | | |
|---|---|---|
| | § | **IN THE DISTRICT COURT OF** |
| | § | |
| | § | |
| | § | |
| | § | |
| **IN RE KOOL SMILES DENTAL** | § | **HIDALGO COUNTY, TEXAS** |
| **LITIGATION** | § | |
| | § | |
| | § | |
| | § | |
| | § | **370TH JUDICIAL DISTRICT** |

**DECLARATION OF [INSERT NAME OF DECLARANT] REGARDING CONFIDENTIALITY AND PROTECTIVE ORDER**

STATE OF _____ )
_____ ) ss.
COUNTY OF _____ )

I, _____, declare under penalty of perjury under
       (insert name of recipient of the documents)

the laws of the **[IDENTIFY STATE/United States of America]** that the following is true and correct:

1.    My full name and business address are:

_____ .

2.    I have read and fully understand the attached Confidentiality and Protective Order.

3.    I am fully familiar with and agree to comply with and be bound by the provisions of said Confidentiality and Protective Order, and submit to the jurisdiction of the court in which this matter is pending for any proceedings with respect to said Confidentiality and Protective Order.

4,    I will not discuss or divulge to persons other than those specifically authorized by

this Confidentiality and Protective Order, and will not copy or use, except solely for the purposes of this action and for no other purposes, any documents, materials or information obtained pursuant to said Confidentiality and Protective Order.

5.     I will return original copies of all Confidential Information received under this Confidentiality and Protective Order, together with all reproductions and copies of the Confidential Information to counsel that retained me in this case.

EXECUTED this _____ day of _____, 2015.

_____
Signature of Declarant

_____
Printed Name

**[ATTACH FULLY EXECUTED CONFIDENTIALITY AND PROTECTIVE ORDER TO THIS AFFIDAVIT]**

**MDL NO. _____**

|  |  |  |
|---|---|---|
| | § | **IN THE DISTRICT COURT OF** |
| | § | |
| | § | |
| | § | |
| | § | |
| **IN RE KOOL SMILES DENTAL** | § | **HIDALGO COUNTY, TEXAS** |
| **LITIGATION** | § | |
| | § | |
| | § | |
| | § | |
| | § | **370TH JUDICIAL DISTRICT** |

<u>**DECLARATION OF [INSERT NAME OF DECLARANT] REGARDING CONFIDENTIALITY AND PROTECTIVE ORDER**</u>

STATE OF _____ )
                                                          ) ss.
COUNTY OF _____ )

I, _____, declare under penalty of perjury under
(insert name of recipient of the documents)

the laws of the **[IDENTIFY STATE/United States of America]** that the following is true and correct:

1.     I am counsel of record for **[name of party]**.  My full name and business address are:

_____ .

(insert name and address of recipient of the documents)

2.     I am bound by the terms and conditions of the Confidentiality and Protective Order.  I acknowledged my consent to be so bound by executing the attached Confidentiality and Protective Order.

3.     Pursuant to Paragraph 12 of the Confidentiality and Protective Order attached hereto, I acknowledge that I am obligated to return original copies of all Confidential Information

received under this Confidentiality and Protective Order, together with all reproductions and copies of the Confidential Information within thirty (30) days from the entry of final judgment, settlement, or dismissal in connection with this action.

4. I certify that I have returned original copies of all Confidential Information received under this Confidentiality and Protective Order, together with all reproductions and copies of the Confidential Information to counsel for the Defendants.

5. I certify that I have received all Confidential Information and Documents provided to the experts and consultants hired in this action on behalf of my client(s). I further certify that I have returned such Confidential Information, together with all reproductions and copies of the Confidential Information, to counsel for the Defendants.

EXECUTED this _____ day of _____, 2013.


_____
Signature of Declarant


_____
Printed Name

Electronically Filed
6/23/2015 1:58:02 PM
Hidalgo County District Clerks
Reviewed By: Kim Hinojosa

**MDL NO. _____**

<table>
<tr><td>

**IN RE KOOL SMILES DENTAL LITIGATION**

</td><td>

§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§

</td><td>

**IN THE DISTRICT COURT OF HIDALGO COUNTY, TEXAS 370TH JUDICIAL DISTRICT**

</td></tr>
</table>

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MEMORANDUM OF LAW REGARDING PLAINTIFFS' MOTION TO AMEND CONFIDENTIALITY AGREEMENT AND PROTECTIVE**

Defendants Benevis LLC, f/k/a NCDR, LLC ("Benevis"), Kool Smiles, P.C. ("KSPC"), and Dentistry of Brownsville, P.C. ("DOB"), along with the individual dentists[1] named as Defendants in all cases transferred to the multidistrict litigation pretrial Court ("Defendants"), provide the following response to Plaintiffs' Memorandum of Law Regarding Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order ("Brief").

## I. SUMMARY

Plaintiffs' Memorandum of Law presents no additional law or argument related to the proper scope of shared discovery in this case. Plaintiffs insist that Defendants are somehow frustrating the discovery process, and in doing so continue to mischaracterize Defendants' conduct in preparing and producing documents. Plaintiffs do not, however, contend that Defendants have concealed anything in the discovery process or prejudiced Plaintiffs in this MDL in any specific way. Simply put, nothing about this debate over the Protective Order advances this MDL proceeding in any way. Rather, it concerns matters and people not before this Court.

---

[1] This reference excludes Dr. Jessie Trinh, Defendant in the *Arroyo, et al. v. Mathisen, et al.*, CL-14-3569 matter transferred from the County Court of Law No. 4 in Hidalgo County, because she is represented by separate counsel.

Plaintiffs also continue to misstate Texas shared discovery law by arguing that any litigant or potential litigant who merely alleges that Defendants engaged in the corporate practice of dentistry is entitled to the *Antu* discovery. This is a clear misrepresentation of Texas law and a distortion of the cases relied upon by Plaintiffs.

## II. ARGUMENTS AND AUTHORITIES

**1. Defendants Have Acted Appropriately and Plaintiffs Have Not Been Prejudiced.**

In producing documents, Defendants have acted appropriately under the Rules and complied with the existing Protective Order. To the contrary, Plaintiffs have refused to abide by the Protective Order, which they helped prepare over two years ago and to which they agreed prior to its entry by the Court. To now contend that Defendants have abused the process and claim they are under no obligation to comply with it is brazen and a clear attempt to distract the court from the real issue. Plaintiffs' inaccurate contentions about Defendants' conduct only serve as an attempt to re-direct the focus away from this MDL and to the unrelated and improper purpose of sharing discovery with non-litigants and litigants in dissimilar cases. Plaintiffs seek no relief that would actually aid them in this MDL proceeding. Their attempt to obtain relief for other purposes should not be tolerated by this Court.

As reflected in the Affidavit of Alan R. Vickery, attached to Defendants' Supplemental Response Brief as Exhibit "A," Defendants followed a procedure to identify and designate documents as Confidential. That Plaintiffs requested—and received—numerous documents considered by the Defendants to be proprietary and confidential does not entitle them to ignore their obligations under the Protective Order. Rather than identify specific documents and challenge specific confidentiality designations, which is required under the Protective Order, Plaintiffs argue that the sheer number of confidentiality designations in itself makes the number of designations suspect. Plaintiffs' overly-simplistic analysis, however, does not justify the relief

they really desire, which is to share sensitive documents with others not entitled to see them, nor does it warrant a wholesale rewrite of the Protective Order.

Plaintiffs contend that Defendants have frustrated the spirit and purpose of the Texas Rules of Civil Procedure, which is to enable disputes to be decided by what the facts reveal, not what facts are concealed. This is nonsense. The present dispute applies solely to information already in Plaintiffs' possession, which they may freely use in this litigation. Plaintiffs do not contend Defendants have actually concealed *any* information—they, by contrast, want to share everything Defendants have *revealed* in *Antu* to individuals with no connection to this MDL proceeding.

Plaintiffs' counsel makes much ado about the confidentiality designations made by Defendants. And they point out a mere handful of documents they claim were improperly designated as Confidential and assert that the entire production, therefore, has been improperly designated. Yet, they do not even dispute that they are not restricted in any way from using documents and information designated as Confidential under the Protective Order to represent their clients effectively in this MDL proceeding. The Protective Order states, "Confidential Information may be referred to by a party in notices, motions, briefs or any other pleadings, may be used in depositions, and may be marked as deposition exhibits." Protective Order ¶ 7. Further, the Protective Order states, "Nothing in this Stipulated Protective Order shall be construed as placing a limit on the use of Confidential Information at trial." *Id.* ¶ 9. There is no reason to modify the Protective Order simply to allow the documents to be shared with others not affiliated with this proceeding.

### 2. Plaintiffs Have Misstated Texas Law.

Plaintiffs have misstated Texas law. Plaintiffs state multiple times in their Brief that *Eli Lilly Co. v. Marshall* held that the fruits of discovery are available to potential litigants. 850

S.W.2d 155 (Tex. 1993). This is an inaccurate representation of the case. The holding in *Eli Lilly* did not turn on a finding that shared discovery was proper. The Texas Supreme Court only referred to the shared discovery doctrine in *dicta*, and the actual holding in that case *did not allow* for shared discovery with potential litigants.

As set forth more fully in Defendants' Supplemental Brief, *Eli Lilly* held—against the plaintiffs in that case—that the trial court's order requiring production of un-redacted confidential information was overbroad under the circumstances. The court reasoned that the federal "objective of fostering post-approval reporting of possible adverse reactions for all FDA-approved drugs is severely compromised by the trial court's order of wholesale disclosure of reporters' identities." *Id.* at 160. The sole reference to "potential litigants" was in *dicta* and in no way establishes a complete paradigm shift from *Garcia*. *Garcia* established the shared discovery doctrine for similarly situated *litigants*, but it did not extend the doctrine to *potential litigants*, as Plaintiffs would have this Court believe. *See Garcia*, 734 S.W.2d 343, 347 (Tex. 1987). The spirit of *Garcia* is being fulfilled by this MDL, which will allow all similarly situated litigants with cases against these Defendants transferred to this MDL to have access to the documents.

Surely *Eli Lilly* did not intend to make a wholesale change to *Garcia*, in *dicta*, without any further explanation. This is perhaps most apparent by noting that the holding of *Eli Lilly* is, in fact, consistent with *Garcia* in that the plaintiffs there were "entitled to all the substantive information in the reports and to share that discovery with their expert witnesses and <u>litigants</u> in other cases." *Eli Lilly*, 850 S.W.2d at 160 (emphasis added). The *Eli Lilly* court did not hold that *potential* litigants were entitled to confidential information.

Plaintiffs also wrongly contend the defendants in the federal case are entitled to the *Antu* discovery simply because they have alleged that Benevis and DOB engaged in the "illegal

corporate practice of dentistry." Plaintiffs' Brief at 4. While Defendants dispute those allegations, the presence of those claims in plaintiffs' pleadings is irrelevant to this analysis. Texas law does not allow a private litigant to bring a claim for practicing dentistry without a license. Thus, contrary to Plaintiffs' argument, a "potential litigant" is not entitled to the *Antu* discovery simply because it may be considering making allegations relating to a cause of action for which they cannot recover.

Finally, discovery in a dental malpractice case governed by the Texas Rules of Civil Procedure is necessarily different than discovery in a false advertising, defamation, and business disparagement case governed by the Federal Rules of Civil Procedure. Plaintiffs have pointed the Court to no authority establishing that discovery from state court litigation may be shared in a federal court case that involves an entirely different set of claims and parties and scope of discovery. Neither *Garcia* nor *Eli Lilly* allow sharing of discovery under these circumstances. Rather, those cases speak to sharing of discovery with similarly situated litigants in similarly situated cases. Nothing more. The Court should not amend the Protective Order in place to allow for this.

### 3. Plaintiffs' Proposed Amendment to the Protective Order Should be Rejected.

Plaintiffs' brief includes an exhibit with proposed amendments to the existing protective order. Defendants object to the proposed order attached to Plaintiffs' brief and urge the Court to, instead, sign the proposed order attached to Defendants' June 19 submission. That proposed Order provides a workable, more streamlined approach to challenging confidentiality designations and will provide Defendants with the protections to which they are entitled.

Plaintiffs' proposed order is entirely too vague and broad and allows Plaintiffs to circumvent the existing confidential designation challenge procedure and allow for sharing with individuals not affiliated in any way with this MDL proceeding. This is unnecessary to the

advancement of the claims in the MDL. If signed, Plaintiffs' proposed order would allow Plaintiffs in the MDL to share the confidential information from *Antu* with any "potential litigant" with a "potential claim" against a "potential part[y]" in the MDL. This approach is not supported by Texas law and provides no regulation or ability for the Defendants to assess the parties with whom Plaintiffs might share the Confidential Information. Even with Plaintiffs' second and third proposed amendments, Plaintiffs—at their sole discretion—may determine that virtually any person could be deemed a "potential litigant" with a "potential claim" against a "potential party."

To make matters worse, Plaintiffs—for the first time and without explanation—attempt to have Paragraph 13 from the existing Protective Order deleted. Plaintiffs' brief does not address this issue. Nevertheless, Plaintiffs seek to have the Court remove the only existing protection in place that insures the proper handling and return of Confidential Information to Defendants. Specifically, Paragraph 13 includes a requirement that Plaintiffs return Confidential Information to Defendants, along with a certification from Plaintiffs' counsel that they and their experts and consultants have complied with the terms of the Protective Order. Plaintiffs' proposed order seeks to eliminate this paragraph in its entirety in an apparent attempt to shirk any responsibility for properly handling Defendants' Confidential Information. This proposed amendment should be rejected and any order modifying the Protective Order should include a clear procedure for tracking and certifying that Confidential Information has been properly handled. Plaintiffs have presented no argument or evidence that the existing procedure is unworkable in any way, and this attempt to escape obligations Plaintiffs have already agreed to only proves the need to maintain stringent controls on the dissemination of Confidential Information.

On the other hand, the proposed order submitted by Defendants on June 19, 2015 contains safeguards for handling of the Confidential documents produced by Defendants, while

allowing the Plaintiffs the ability to use them freely in the MDL and challenge Confidentiality designations with ease. This precisely addresses what Plaintiffs' counsel complained of at the hearing on June 15, 2015 and provides a solid, workable Protective Order for use in this MDL going forward.

## III. CONCLUSION

Based on the foregoing, Defendants Benevis LLC, f/k/a NCDR, LLC ("Benevis"), Kool Smiles, P.C. ("KSPC"), and Dentistry of Brownsville, P.C. ("DOB") (collectively the "Corporate Defendants"), along with the individual dentists[2] named as Defendants in all cases transferred to the pretrial multi-district litigation respectfully request that Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order or Alternatively for Sanctions, or Alternatively for Determination of Confidentiality be denied, that the Court enter the proposed Protective Order submitted as Exhibit "B" to Defendants' Response filed on June 19, 2015, and for such other and further relief to which they are entitled.

---

[2] This reference excludes Dr. Jessie Trinh, Defendant in the *Arroyo, et al. v. Mathisen, et al.*, CL-14-3569 matter transferred from the County Court of Law No. 4 in Hidalgo County, because she is represented by separate counsel.

Respectfully Submitted,


*/s/ Alan R. Vickery*
WAYNE B. MASON
State Bar No. 13158950
ALAN R. VICKERY
State Bar No. 20571650
**SEDGWICK LLP**
1717 Main Street, Suite 5400
Dallas, TX 75201-7367
Telephone:   (469) 227-8200
Facsimile:    (469) 227-8004
wayne.mason@sedgwicklaw.com
alan.vickery@sedgwicklaw.com




EDUARDO R. RODRIGUEZ
State Bar No. 00000080
**ATLAS, HALL & RODRIGUEZ, L.L.P.**
50 W. Morrison Road, Suite A
Brownsville, TX 78520
Telephone:   (956) 574-9333
Facsimile:    (956) 574-9337
errodriguez@atlashall.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record as shown below via facsimile and email on the 23rd day of June, 2015.

George W. Mauzé, II
MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 401 South
San Antonio, TX 78215
gmauze@mauzelawfirm.com

R.D. "Bobby" Guerra
GUERRA, LEEDS, SABO & HERNANDEZ
PLLC
10213 N. 10th Street
McAllen, TX 78504
rdguerra@guerraleeds.com
Attorneys for Plaintiffs

Bruce S. Campbell
State Bar No: 03694600
BRACKETT & ELLIS,
A Professional Corporation
100 Main Street
Fort Worth, TX. 76102-3090
817.338.1700
Facsimile: 817.870.2265
bcampbell@belaw.com
Attorneys for Defendant Jessie Trinh, DMD

/s/ Alan R. Vickery
ALAN R. VICKERY

CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU AS NEXT FRIEND OF | § | IN THE DISTRICT COURT |
| ▬▬▬▬▬▬▬▬▬▬▬▬▬, A | § | |
| MINOR, et al | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | 370TH JUDICIAL DISTRICT |
| | § | |
| NCDR, LLC d/b/a KOOL SMILES, et al | § | |
| | § | |
| DEFENDANTS. | § | HIDALGO COUNTY, TEXAS |

MDL NO: 14-0851

| | | |
|---|---|---|
| | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| IN RE KOOL SMILES DENTAL | § | |
| LITIGATION | § | 370TH JUDICIAL DISTRICT |
| | § | |
| | § | |
| | § | |
| | § | HIDALGO COUNTY, TEXAS |

| | | |
|---|---|---|
| PAULA ANTU AS NEXT FRIEND OF ███████████ █ ██████, A MINOR, et al | § § § § | IN THE DISTRICT COURT |
| PLAINTIFFS, | § § | |
| V. | § § | 370TH JUDICIAL DISTRICT |
| NCDR, LLC d/b/a KOOL SMILES, et al | § § | |
| DEFENDANTS. | § § | HIDALGO COUNTY, TEXAS |

### PLAINTIFFS' MEMORANDUM OF LAW REGARDING PLAINTIFFS' MOTION TO AMEND THE STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

TO THE HONORABLE NOE GONZALEZ, MDL JUDGE PRESIDING:

COME NOW Plaintiffs in this cause and MDL No. 14-0851 *In Re Kool Smiles Dental Litigation*, and file this Plaintiffs' Memorandum of Law Regarding Plaintiffs' Motion to Amend the Stipulated Confidentiality Agreement and Protective Order, and would respectfully show the Court the following:

### I.
### MODIFICATION OF PROTECTIVE ORDER

In accordance with Texas law and Paragraph 8 of the Stipulated Confidentiality Agreement and Protective Order (the "Protective Order"), Plaintiffs move the Court to amend the Protective Order. The modification is within this Court's discretion and is sought because the Protective Order and Defendants' use of it is frustrating the spirit and purpose of the Texas Rules of Civil Procedure, Texas law, and this Court's discovery orders. The ultimate purpose of the Texas Rules of Civil Procedure and discovery is to allow litigants to seek the truth to enable disputes to be decided by what the facts reveal, not by what facts are concealed. *Jampole v. Touchy*, 673 S.W.2d 569 (Tex. 1984).

At the hearing on June 15, 2015, Plaintiffs presented evidence that Defendant produced over 477,000 pages of documents after several orders compelling discovery. Over 99% of the documents beginning with bates-stamped "KSL" were designated "Confidential Pursuant to the Protective Order", prohibiting dissemination to other litigants and potential litigants. Plaintiffs presented evidence that the documents designated by Defendants as "Confidential" include over 100,000 pages that are blank, totally redacted, public advertising, professional literature, public information, e-mails, etc. For this reason, in accordance with Texas law and Paragraph 8 of the Stipulated Confidentiality Agreement and Protective Order, this Honorable Court should amend the Protective Order.

Plaintiffs in the *Antu* case and in this MDL are seeking a modification allowing the dissemination of discovery in this case, including documents produced by Defendants, to any other litigant or potential litigant in this MDL litigation including their attorneys, retained experts, and consulting experts, to any litigant, attorneys, retained experts, and consulting experts in *NCDR, L.L.C., et al v. Mauzé & Bagby, PLLC, et al;* case No. 5:12-cv-36 in the United States District Court Southern District of Texas, Laredo Division, and to any other litigants or potential litigants, including their attorneys, retained experts, and consulting experts with actual or potential claims relating to dental services or the ownership, operation, management, and/or control of dental clinics against any of the named defendants and other potential parties in the *Antu* and MDL litigation. Plaintiffs' proposed modifications to the Protective Order comport with the Texas Supreme Court's rulings in *Garcia v. Peeples*, 734 S.W.2d 343 (Tex. 1987) and *Eli Lilly and Co. v. Marshall*, 850 S.W.2d 155 (Tex. 1993).

## II.
## TEXAS LAW EXPLICITLY PERMITS SHARED DISCOVERY

In *Garcia*, the Texas Supreme Court held that it was an abuse of discretion for the trial court not to permit shared discovery of documents containing trade secrets, so long as the documents were not shared with competitors. *Garcia v. Peeples*, 734 S.W.2d 343, 348 (Tex. 1987). Specifically, the Court held that the trial court should have rendered an "order preventing dissemination of GMC's true trade secrets **only to GMC's competitors**." *Id.* at 348. (emphasis added). Further, the Texas Supreme Court in *Eli Lilly and Co. v. Marshall* held that "the fruits of discovery are available not only to the parties in a particular case but may be disseminated in turn to other litigants and **potential litigants**." *Eli Lilly and Co. v. Marshall*, 850 S.W.2d 155, 160 (Tex. 1993) (emphasis added). The shared discovery of documents has been supported and confirmed by not only the Texas Supreme Court, but also followed by numerous appellate courts and state and federal courts throughout the United States.[1]

## III.
## KOOL SMILES' ARGUMENT IS A RED HERRING

Kool Smiles argues that shared discovery is only permitted between identical or similarly situated parties involving virtually identical issues. This argument is mistaken and is taken out of context from the ruling in *Garcia*. In *Garcia*, the court stated:

> Shared discovery is an effective means to insure full and fair disclosure. Parties subject to a number of suits concerning the same subject matter are forced to be consistent in their responses by the knowledge that their opponents can compare those responses. In addition to making discovery more truthful, shared discovery makes the system itself more efficient. The current discovery process forces similarly situated parties to go through the same discovery process time and time again, even though the issues involved are virtually identical. Benefiting from restrictions on discovery, one party facing a number of adversaries can require his opponents to

---

[1] In *Garcia*, the Court noted that federal courts have "overwhelming embraced" the· practice of shared discovery. *Garcia*, 734 S.W.2d at 347 (citing *Wilk v. American Medical Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980); *American Telephone and Telegraph Co. v. Grady*, 594 F.2d 594, 597 (7th Cir. 1979); *Phillips Petroleum Co. v. Pickens*, 105 F.R.D. 545, 551 (N.D. Tex. 1985); *Ward v. Ford Motor Co.*, 93 F.R.D. 579, 580 (D. Colo. 1982); *Carter-Wallace v. Hartz Mountain Industries*, 92 F.R.D. 67, 70 (S.D.N.Y. 1981); *Patterson v. Ford Motor Co.*, 85 F.R.D. 152, 154 (W.D. Tex. 1980); *Parsons v. General Motors Corp.*, 85 F.R.D. 724, 726 (N.D. Ga. 1980))

duplicate another's discovery efforts, even though the opponents share similar discovery needs and will litigate similar issues. Discovery costs are no small part of the overall trial expense. A number of courts have recognized that allowing shared discovery is far more efficient than the repetitive system now employed. Federal courts, for instance, have overwhelmingly embraced this practice in order to streamline discovery. The Federal Judicial Center's Manual for Complex Litigation also suggests sharing discovery in order to avoid duplicative efforts.

*Garcia*, 734 S.W.2d at 347 (internal citations removed). Clearly, based upon the context of the opinion, the Court's reference to parties involved in litigation with virtually identical issues is made to illustrate why shared discovery is important. In *Garcia*, the plaintiffs moved the Court to allow shared discovery against not just GMC (the defendant), but other automakers as well, such relief ultimately being granted. *Id* at 347. Further, as subsequently held by The Texas Supreme Court in *Eli Lilly and Co.*, discovery may be shared with litigants and potential litigants. *Id* at 160. Therefore, Texas law does not limit shared discovery to the identical parties and identical issues.

## IV.
## KOOL SMILES' ACTIONS DEMONSTRATE WHY A SHARED DISCOVERY PROTECTIVE ORDER IS NECESSARY

In the case styled *NCDR, L.L.C., et al v. Mauzé & Bagby, PLLC, et al;* case No. 5:12-cv-36 in the United States District Court Southern District of Texas, Laredo Division, NCDR, LLC and Dentistry of Brownsville, P.C., both named defendants in the *Antu* case, have brought several causes of action, including defamation, against counsel for Plaintiffs herein. The defamation claim arises from statements made by counsel for Plaintiffs herein pertaining to Kool Smiles dental treatment of Texas children. Many of the issues are similar to issues in the *Antu* and MDL litigation (ie; truth of the statements pertaining to Kool Smiles treatment of Texas children, fraud, and the illegal corporate practice of dentistry). In said case, NCDR, LLC and Dentistry of Brownsville, P.C. are not only refusing to produce documents that have already

been produced in *Antu*, but also are attempting to require its Plaintiffs' attorneys to duplicate discovery efforts resulting in unnecessary expense and unnecessary burden on judicial resources.

## V.
## CONCLUSION

Plaintiffs' proposed order granting Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order, attached hereto as Exhibit "A", comports with Texas law and the Texas Supreme Court's clear holding that shared discovery should be permitted.

## VI.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that the Court enter an order granting Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order and for such other and further relief to which Plaintiffs may be deemed entitled.

Respectfully submitted,

MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 402 South
San Antonio, Texas 78215
Telephone: 210.354.3377
Telecopier: 210.354.3909

By: _____
George W. Mauzé, II
State Bar No. 13238800
Tom Bagby
State Bar No. 24059709

GUERRA, LEEDS, SABO & HERNANDEZ, PLLC
10213 N. 10th Street
McAllen, Texas 78504
Telephone: 956.383.4300
Telecopier: 956.383.4304

By:  R.D. "Bobby' Guerra
State Bar No. 08578640
Frank Sabo, Jr.
State Bar No. 17500300
Joe Hernandez, Jr.
State Bar No. 09517700

LAW OFFICES OF MICHAEL E. FLANAGAN
809 Chicago Avenue
McAllen, TX 78501-2771
Telephone: 956.683.0333
Telecopier: 956.683.0222

By:  Michael E. Flanagan
State Bar No. 07107550

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of June, 2015 a true and correct copy of Plaintiffs' Memorandum of Law Regarding Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order has been sent by efiling service and email to:

Mr. Wayne B. Mason, Esq.
wayne.mason@sedgwicklaw.com
Mr. Alan Vickery, Esq.
alan.vickery@sedgwicklaw.com
Sedgwick LLP
1717 Main Street, Suite 5400
Dallas, Texas 75201-7367

Mr. Bruce S. Campbell, Esq.
bcampbell@belaw.com
Brackett & Ellis, P.C.
100 Main Street
Fort Worth, TX 76102

Mr. Eduardo R. Rodriguez, Esq.
errodriguez@atlashall.com
Atlas, Hall & Rodriguez, L.L.P.
50 W. Morrison Road, Suite A
Brownsville, TX 78520

_____
Tom Bagby

EXHIBIT "A"

<u>PLAINTIFFS' PROPOSED ORDER GRANTING PLAINTIFFS' MOTION TO AMEND
STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER</u>

| | | |
|---|---|---|
| PAULA ANTU AS NEXT FRIEND OF ███████████████, A MINOR, et al | § § § § | IN THE DISTRICT COURT |
| PLAINTIFFS, | § § § | |
| V. | § § | 370TH JUDICIAL DISTRICT |
| NCDR, LLC d/b/a KOOL SMILES, et al | § § § | |
| DEFENDANTS. | § § | HIDALGO COUNTY, TEXAS |

## ORDER GRANTING PLAINTIFFS' MOTION TO AMEND STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

On this 15th day of June, 2015 came on to be considered Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order. Defendants and Plaintiffs appeared by and through their respective attorneys of record. After considering the motion, considering the arguments of counsel, and considering the evidence, the Court hereby finds that the following orders should be entered:

ORDERED that the Stipulated Confidentiality and Protective Agreement Order entered by the Court on June 11, 2013 shall be, and is hereby, AMENDED and MODIFIED to expressly authorize Plaintiffs and their attorneys to dissemination any of the discovery in this case, including documents produced by Defendants, to any other litigant or potential litigant in this MDL litigation including their attorneys, retained experts, and consulting experts, to any litigant, attorneys, retained experts, and consulting experts in *NCDR, L.L.C., et al v. Mauzé & Bagby, PLLC, et al;* case No. 5:12-cv-36 in the United States District Court Southern District of Texas, Laredo Division, and to any other litigants or potential litigants, including their attorneys, retained experts, and consulting experts with actual or potential claims relating to dental services

or the ownership, operation, management, and/or control of dental clinics against any of the named defendants and other potential parties in the *Antu* and MDL litigation. It is further,

ORDERED that Plaintiffs and their attorneys shall not disseminate any of the discovery in this case, including documents produced by Defendants, to any competitor of Defendants, except for retained and consulting experts designated in the MDL litigation or in any other litigation that any of the Defendants are a named party. It is further,

ORDERED that Defendants designation of documents produced as "Confidential Pursuant to the Protective Order" shall be, and is hereby, OVERRULED to the extent specified and ordered above. It is further,

ORDERED that the Stipulated Confidentiality and Protective Agreement Order entered by the Court on June 11, 2013 shall be, and is hereby, AMENDED and MODIFIED to delete Paragraph 13 and Exhibit "B".

SIGNED AND ENTERED on this _____ day of June, 2015.

_____
HONORABLE NOE GONZALEZ,
MDL JUDGE PRESIDING

APPROVED AS TO FORM:

MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 401 South
San Antonio, Texas 78215
Telephone: 210.354.3377
Telecopier: 210.354.3909


By:_____
George W. Mauzé, II
State Bar No. 13238800
James Thomas Bagby, III
State Bar No. 24059409

GUERRA, LEEDS, SABO & HERNANDEZ, PLLC
10213 N. 10th St.
McAllen, Texas 78504
Telephone: 956.383.4300
Telecopier: 956.383.4304
By:     R.D. "Bobby" Guerra
        State Bar No. 08578640
        Frank Sabo, Jr.
        State Bar No. 17500300
        Joe Hernandez, Jr.
        State Bar No. 09517700

LAW OFFICES OF MICHAEL E. FLANAGAN
809 Chicago Avenue
McAllen, TX 78501-2771
Telephone: 956.683.0333
Telecopier: 956.683.0222
By:     Michael E. Flanagan
        State Bar No. 07107550

**ATTORNEYS FOR PLAINTIFFS**

CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU AS NEXT FRIEND OF ███████████████, A MINOR, et al | § § § § | IN THE DISTRICT COURT |
| PLAINTIFFS, | § § | |
| V. | § § | 370TH JUDICIAL DISTRICT |
| NCDR, LLC d/b/a KOOL SMILES, et al | § § § | |
| DEFENDANTS. | § § | HIDALGO COUNTY, TEXAS |

## ORDER GRANTING PLAINTIFFS' MOTION TO AMEND STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

On this 15th day of June, 2015 came on to be considered Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order. Defendants and Plaintiffs appeared by and through their respective attorneys of record. After considering the motion, considering the arguments of counsel, and considering the evidence, the Court hereby finds that the following orders should be entered:

ORDERED that the Stipulated Confidentiality and Protective Agreement Order entered by the Court on June 11, 2013 shall be, and is hereby, AMENDED and MODIFIED to expressly authorize Plaintiffs and their attorneys to dissemination any of the discovery in this case, including documents produced by Defendants, to any other litigant or potential litigant in this MDL litigation including their attorneys, retained experts, and consulting experts, to any litigant, attorneys, retained experts, and consulting experts in *NCDR, L.L.C., et al v. Mauzé & Bagby, PLLC, et al;* case No. 5:12-cv-36 in the United States District Court Southern District of Texas, Laredo Division, and to any other litigants or potential litigants, including their attorneys, retained experts, and consulting experts with actual or potential claims relating to dental services

or the ownership, operation, management, and/or control of dental clinics against any of the named defendants and other potential parties in the *Antu* and MDL litigation. It is further,

ORDERED that Plaintiffs and their attorneys shall not disseminate any of the discovery in this case, including documents produced by Defendants, to any competitor of Defendants, except for retained and consulting experts designated in the MDL litigation or in any other litigation that any of the Defendants are a named party. It is further,

ORDERED that Defendants designation of documents produced as "Confidential Pursuant to the Protective Order" shall be, and is hereby, OVERRULED to the extent specified and ordered above. It is further,

ORDERED that the Stipulated Confidentiality and Protective Agreement Order entered by the Court on June 11, 2013 shall be, and is hereby, AMENDED and MODIFIED to delete Paragraph 13 and Exhibit "B".

SIGNED AND ENTERED on this 30th day of June, 2015

_____
HONORABLE NOE GONZALEZ,
MDL JUDGE PRESIDING

APPROVED AS TO FORM:

MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 401 South
San Antonio, Texas 78215
Telephone: 210.354.3377
Telecopier: 210.354.3909

By: _____
George W. Mauzé, II
State Bar No. 13238800
James Thomas Bagby, III
State Bar No. 24059409

GUERRA, LEEDS, SABO & HERNANDEZ, PLLC
10213 N. 10th St.
McAllen, Texas 78504
Telephone: 956.383.4300
Telecopier: 956.383.4304
By:    R.D. "Bobby" Guerra
        State Bar No. 08578640
        Frank Sabo, Jr.
        State Bar No. 17500300
        Joe Hernandez, Jr.
        State Bar No. 09517700

LAW OFFICES OF MICHAEL E. FLANAGAN
809 Chicago Avenue
McAllen, TX 78501-2771
Telephone: 956.683.0333
Telecopier: 956.683.0222
By:    Michael E. Flanagan
        State Bar No. 07107550

**ATTORNEYS FOR PLAINTIFFS**

ACCEPTED
13-15-00296-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
7/7/2015 5:03:39 PM
CECILE FOY GSANGER
CLERK

NO. _____

## IN THE THIRTEENTH COURT OF APPEALS
### EDINBURG, TEXAS

---

IN RE:

BENEVIS, LLC, DENTISTRY OF BROWNSVILLE, P.C., AND KOOL SMILES, P.C.,

Relators.

From the 370th District Court of Hidalgo County, Texas
Cause No. C-0184-13-G
and
MDL Cause No. _____
The Honorable Noe Gonzalez, Judge Presiding

---

## PETITION FOR WRIT OF MANDAMUS
(Appendix Attached)

---

**WAYNE B. MASON**
Texas Bar No. 13158950
**ALAN R. VICKERY**
Texas Bar. No. 20571650
**SEDGWICK LLP**
1717 Main Street, Suite 5400
Dallas, TX 75201
(469) 227-8400 Telephone
(469) 227-8004 Facsimile

**EDUARDO R. RODRIGUEZ**
Texas Bar No. 00000080
**ATLAS, HALL & RODRIGUEZ, LLP**
50 W. Morrison Road, Suite A
Brownsville, TX 78520
Telephone (956) 574-9333
Facsimile (956) 574-9337

**ATTORNEYS FOR RELATORS**

**ORAL ARGUMENT REQUESTED**

# PARTIES AND COUNSEL

Relators certify that the following is a complete list of the parties, the attorneys,

and any other person who has an interest in the outcome of this lawsuit:


| | |
|---|---|
| **Relators:** | Benevis, LLC, f/k/a NCDR, LLC, Dentistry of Brownsville, P.C., and Kool Smiles, P.C. |
| | |
| | Wayne B. Mason |
| | Texas Bar No. 13158950 |
| | Alan R. Vickery |
| | Texas Bar No. 20571650 |
| | SEDGWICK LLP |
| | 1717 Main Street, Suite 5400 |
| | Dallas, TX 75201 |
| | (469) 227-8400 Telephone |
| | (469) 227-8004 Facsimile |
| | wayne.mason@sedgwicklaw.com |
| | alan.vickery@sedgwicklaw.com |
| | |
| | Eduardo R. Rodriguez |
| | Texas Bar No. 00000080 |
| | ATLAS, HALL & RODRIGUEZ, LLP |
| | 50 W. Morrison Road, Suite A |
| | Brownsville, TX 78520 |
| | (956) 574-9333 Telephone |
| | (956) 574-9337 Facsimile |
| **Respondent:** | The Honorable Noe Gonzalez, Judge Presiding 370th District Court of Hidalgo County, Texas |
| **Real Parties In Interest:** | PAULA ANTU AS NEXT FRIEND OF E.A., A MINOR; SCARLETT AYALA AS NEXT FRIEND OF X.U., A MINOR; GUADALUPE CEPEDA AS NEXT FRIEND OF O.C., A MINOR, ANA LAURA CORNEJO AS NEXT FRIEND OF J.C.C., A MINOR; MARIOR CUELLAR AND PRISCILLA TRUJILLO AS NEXT FRIENDS OF A.C., A |

i

MINOR; MARIA GAYTAN AS NEXT FRIEND OF F.T., A MINOR; ELIZABETH GONZALEZ AND MARCO REYES AS NEXT FRIENDS OF K.R., A MINOR; FRANCISCA GUZMAN AS NEXT FRIEND OF A.G., A MINOR; ISMAEL AND ISABEL MALDONADO AS NEXT FRIENDS OF J.M., A MINOR; FREISI OLIVAR AS NEXT FRIEND OF A.S.II, A MINOR; RARY ROSALES AS NEXT FRIEND OF D.M., A MINOR; REYNOL SALINAS AS NEXT FRIEND OF R.S.JR., A MINOR.

ANAHY ALANIS AS NEXT FRIEND OF J.V., A MINOR; ESMERALDA CARO AS NEXT FRIEND OF K.DL., A MINOR; MARY CHAVES AS NEXT FRIEND OF T.C., A MINOR; GRACIE FUENTES AS NEXT FRIEND OF B.F., A MINOR; MARICELA AND JORGE GARZA AS NEXT FRIENDS OF B.G., A MINOR; CLAUDIA AND GEORGE LOPEZ AS NEXT FRIENDS OF A.L., A MINOR; ESMERALDA LOPEZ AS NEXT FRIEND OF J.L., A MINOR; DALIA LOPEZ AND JORGE SAUCEDA AS NEXT FRIENDS OF D.S., A MINOR; JOSE AND NORMA MONTOYA AS NEXT FRIENDS OF I.M., A MINOR; MAYRA MUNOZ AS NEXT FRIEND OF J.H., A MINOR; ROSALBA QUILANTAN AND EMILIO CAVAZOS AS NEXT FRIENDS OF E.C., A MINOR; VANESSA AND JOSHUA SANTILLIAN AS NEXT FRIENDS OF J.S., A MINOR.

MARYNE AND JOSE ALANIS AS NEXT FRIENDS OF O.M., A MINOR; SAN JUANITA CANTU AS NEXT FRIEND OF E.C., A MINOR; MCDULIA DEHOYOS AS NEXT FRIEND OF B.C., A MINOR; CARLA GARZA AS NEXT FRIEND OF K.S., A MINOR; YADIRA AND JESUS GOMEZ AS NEXT FRIENDS OF J.G., A MINOR; FELIZ PEREZ, JR. AS NEXT FRIEND OF K.P., A MINOR; GRISELDA PEREZ AS NEXT FRIEND OF S.P., A MINOR; ROSALBA QUILANTAN AND EMILIO CAVAZOS AS NEXT FRIENDS OF A.C., A MINOR; CRISTINA SALAS AS NEXT FRIEND OF J.C., A MINOR; JESSICA RODRIGUEZ AS NEXT FRIEND OF E.C., A MINOR; ROSA

TURRUBIATES AND PEDRO SALAS, JR. AS NEXT FRIENDS OF P.S., A MINOR.

MARYNE ALANIS AND JOSE LUIS AS NEXT FRIENDS OF J.A., A MINOR; TATIANA AND MIGUEL CALDERON AS NEXT FRIENDS OF A.C., A MINOR; CELIA GUTIERREZ AS NEXT FRIEND OF J.C.V.III, A MINOR; STEFFANY KLIMP AS NEXT FRIEND OF J.C., A MINOR; LUIS LARA AS NEXT FRIEND OF M.L., A MINOR; CHARLIE PARK AS NEXT FRIEND OF M.P., A MINOR; GABRIELA REYES AS NEXT FRIEND OF A.B.R., A MINOR; CRUZ RIOS AS NEXT FRIEND OF X.A., A MINOR; SEFERINA SALINAS AS NEXT FRIEND OF N.B., A MINOR; KIMBERLY SUSTAITA AND RODOLFO AVILA AS NEXT FRIENDS OF R.A.JR., A MINOR.

TERESA ALANIZ AS NEXT FRIEND OF D.T., A MINOR; TERESA ALANIZ AS NEXT FRIEND OF D.T., A MINOR; NEREYDA BENITEZ AND JOSE ANGEL ARRIAGE AS NEXT FRIENDS OF J.A., A MINOR; MARIBEL ESPINOZA AS NEXT FRIEND OF B.E., A MINOR; JENNIFER AND ISMAEL GARCIA, JR. AS NEXT FRIENDS OF I.G.III, A MINOR; ENRIQUE GOMEZ AS NEXT FRIEND OF S.G., A MINOR; FELIX MARTINEZ AND LUCERO BAUTISTA AS NEXT FRIENDS OF J.B., A MINOR; ROSAURA MOLINA AS NEXT FRIEND OF I.M., A MINOR; JACQUELYNE RUBALCAVA AS NEXT FRIEND OF J.R., A MINOR; VANESSA ANIKA SALMON AS NEXT FRIEND OF M.A.R.JR., A MINOR; ADRIANA TORRES AS NEXT FRIEND OF S.T., A MINOR; BEATRIZ VELEZ AS NEXT FRIEND OF U.M., A MINOR.

PRISCILLA APARICIO AS NEXT FRIEND OF J.A., A MINOR; MARIA BUITRON AS NEXT FRIEND OF E.B., A MINOR; MONICA DE LA ROSA AND JOSE ESPINOZA AS NEXT FRIENDS OF J.E., A MINOR; GUADALUPE PEREZ AND CESAR HERNANDEZ AS NEXT FRIENDS OF C.H., A MINOR; LIZET RAMIREZ AS NEXT FRIEND OF I.G., A MINOR; LUIS AND LIZETH REYES AS NEXT FRIENDS

iii

OF I.R., A MINOR; JENNIFER AND VALENTIN REYNA AS NEXT FRIENDS OF H.R., A MINOR; ALFREDO RODRIGUEZ AS NEXT FRIEND OF C.R., A MINOR; DAISY TORRES AS NEXT FRIEND OF E.T., A MINOR; MANUEL URESTI AS NEXT FRIEND OF D.U., A MINOR; GUADALUPE AND EDGAR URIBE AS NEXT FRIENDS OF J.U., A MINOR; MARGARITA AND HUMBERTO VIACOBO AS NEXT FRIENDS OF V.V., A MINOR.

SYLVIA ARANDA AS NEXT FRIEND OF L.B., A MINOR; GUADALUPE CEPEDA AS NEXT FRIEND OF S.C., A MINOR; MIRIAN DE LOS SANTOS AS NEXT FRIEND OF M.D., A MINOR; NORISELDA AND MIGUEL GARCIA, JR. AS NEXT FRIENDS OF M.G.III, A MINOR; AMANDA GARZA AS NEXT FRIEND OF R.P.JR., A MINOR; MIRIAN AND FERNANDO GONZALES, JR. AS NEXT FRIENDS OF F.L.III, A MINOR; MARIA GONZALEZ AS NEXT FRIEND OF C.M., A MINOR; MONICA HERNANDEZ AS NEXT FRIEND OF A.C., A MINOR; ALEJANDRA LARA AS NEXT FRIEND OF J.T., A MINOR; ISELA LEE LEDESMA AS NEXT FRIEND OF D.L.P., A MINOR; NANCY RODRIGUEZ AS NEXT FRIEND OF I.J.R., A MINOR; ABEL AND ILLIANA ZUNIGA AS NEXT FRIENDS OF M.Z., A MINOR.

ERIKA ARMENDARIZ AS NEXT FRIEND OF J.A., A MINOR; LAURA AND FIDEL GOMEZ, JR. AS NEXT FRIENDS OF J.P., A MINOR; IRASENA GONZALEZ AS NEXT FRIEND OF R.G., A MINOR; OLGA GRANADOS AS NEXT FRIEND OF E.G., A MINOR; MARGARITA MOLAR AS NEXT FRIEND OF V.N.T., A MINOR; HAIDE AND JUAN REYES AS NEXT FRIENDS OF J.E.R.II, A MINOR; AMANDA AND JUAN RODRIGUEZ AS NEXT FRIENDS OF N.R., A MINOR; BLANCA RODRIGUEZ AS NEXT FRIEND OF S.R., A MINOR; CARMEN SALAZAR AS NEXT FRIEND OF K.C., A MINOR; ADRIANA VENANCIO AND CESAR MEJIA AS NEXT FRIENDS OF Y.M., A MINOR.

DENISSE ARROYO AS NEXT FRIEND OF Z.L., A MINOR; MARIA BUITRON AS NEXT FRIEND OF L.B., A MINOR; IMELDA AND GUSTAVO CORONADO AS NEXT FRIENDS OF R.C., A MINOR; NARDA DOMINGUEZ AS NEXT FRIEND OF N.H., A MINOR; MIRIAN GONZALES AND FERNANDO LOPEZ, JR. AS NEXT FRIENDS OF A.L., A MINOR; MONICA HERNANDEZ AS NEXT FRIEND OF R.C.III, A MINOR; ELIZABETH LONGORIA AS NEXT FRIEND OF C.L., A MINOR; ERIKA MENDOZA AS NEXT FRIEND OF J.I., A MINOR; WENDY MORALES AS NEXT FRIEND OF A.M.Z., A MINOR; RACHEL RODRIGUEZ AS NEXT FRIEND OF E.R., A MINOR; SANDRA RODRIGUEZ AS NEXT FRIEND OF D.I., A MINOR.

SAN JUANITA CANTU AS NEXT FRIEND OF E.C., A MINOR; DARLENE CARDENAS AS NEXT FRIEND OF E.G., A MINOR; NANCY CERVANTES AS NEXT FRIEND OF L.C., A MINOR; WALLACE CLARK AND MARIA RAMIREZ AS NEXT FRIENDS OF D.C., A MINOR; ANDY AND NORMA GARCIA AS NEXT FRIENDS OF A.D.G., A MINOR; MYRA GARZA AS NEXT FRIEND OF D.R., A MINOR; JORGE AND CYNTHIA GINEZ AS NEXT FRIENDS OF J.G., A MINOR; NELSSY GONZALEZ AS NEXT FRIEND OF N.H., A MINOR; MARIA HERNANDEZ AS NEXT FRIEND OF K.R., A MINOR; KARINA HERNANDEZ AS NEXT FRIEND OF I.M., A MINOR; TERESITA LEMUS AS NEXT FRIEND OF N.P., A MINOR; EDWARD LOPEZ AS NEXT FRIEND OF A.L., A MINOR; VERONICA QUINTANILLA AS NEXT FRIEND OF D.M., A MINOR; MARIA SALAZAR AS NEXT FRIEND OF D.L., A MINOR; HUGO AND NORMA VARGAS AS NEXT FRIENDS OF A.V., A MINOR; AMY ZUNIGA AS NEXT FRIEND OF B.Z., A MINOR.

MONICA DE LA ROSA AND JOSE ESPINOZA AS NEXT FRIENDS OF E.E., A MINOR; JENNIFER GONZALEZ AS NEXT FRIEND OF B.R., A MINOR; MARIA HERRERA AS NEXT FRIEND OF R.F., A MINOR; CARLOS MARTINEZ

AS NEXT FRIEND OF A.M., A MINOR; ANA ORTIZ AS NEXT FRIEND OF E.S., A MINOR; RAMIRO PEREZ AND IVONNE CARBAJAL AS NEXT FRIENDS OF L.C., A MINOR; RICARDO RAMIREZ, JR. AS NEXT FRIEND OF J.R., A MINOR; LUIS AND LIZETH REYES AS NEXT FRIENDS OF S.R., A MINOR; VERONICA RODRIGUEZ AS NEXT FRIEND OF J.R., A MINOR; KIMBERLY SUSTAITA AND RODOLFO AVILA AS NEXT FRIENDS OF K.A., A MINOR.

| | |
|---|---|
| **Counsel for Real Parties in Interest, i.e., the plaintiffs in each of the cases transferred to the MDL pretrial court:** | George W. Mauzé, II<br>Texas Bar No. 13238800<br>Tom Bagby<br>Texas Bar No. 24059409<br>Mauzé & Bagby, PLLC<br>2632 Broadway, Suite 401 South<br>San Antonio, TX 78215<br>(210) 354-3377 Telephone<br>(210) 354-3909 Facsimile<br><br>R. D. "Bobby" Guerra<br>Texas Bar No. 08578640<br>Guerra, Leeds, Sabo & Hernandez, PLLC<br>10213 N. 10th Street<br>McAllen, TX 78504<br>(956) 383-4300 Telephone<br>(956) 383-4304 Facsimile<br><br>Michael E. Flanagan<br>Texas Bar No. 07107550<br>Law Offices of Michael E. Flanagan<br>809 Chicago Avenue<br>McAllen, Texas 8501<br>(956) 683-0333 Telephone<br>(956) 683-0222 Facsimile |

| | |
|---|---|
| **Other Defendants in cases transferred to the MDL pretrial court:** | Aishwarya K. Chandesh, D.D.S.; Rose Cantu, D.D.S.; Hetal Desai, D.D.S.; Norma Herrera, D.D.S.; Edward Ho, D.D.S.; Madhuri Kothapalli, D.D.S.; Oluyemisi Laditan, D.D.S.; Richard I. Manwaring, D.D.S.; Deanna Mathisen, D.D.S.; Harjap Singh Nanva, D.D.S.; Britney Phillips, D.M.D.; Sameera Qadri, D.D.S.; Adrian Rowe, D.D.S.; John P. Tan, D.D.S.; Marc D. Thomas, D.D.S.; William Traynor, D.D.S.; Jennifer Trinh, D.M.D. |

**Counsel for all Defendants in the MDL:**

Wayne B. Mason
Texas Bar No. 13158950
Alan R. Vickery
Texas Bar No. 20571650
SEDGWICK LLP
1717 Main Street, Suite 5400
Dallas, TX 75201
(469) 227-8400 Telephone
(469) 227-8004 Facsimile
wayne.mason@sedgwicklaw.com
alan.vickery@sedgwicklaw.com

Eduardo R. Rodriguez
Texas Bar No. 00000080
ATLAS, HALL & RODRIGUEZ, LLP
50 W. Morrison Road, Suite A
Brownsville, TX 78520
Telephone: (956) 574-9333
Facsimile: (956) 574-9337
*Attorneys for Defendants*[1]

Bruce S. Campbell
Texas Bar No. 03694600
BRACKETT & ELLIS, P.C.
100 Main Street
Fort Worth, TX 76102
(817) 339-2453 Telephone
(817) 870-2265 Facsimile
bcampbell@belaw.com
*Attorneys for Defendant Jessie Trinh, D.M.D.*

---

[1] This reference excludes Dr. Jessie Trinh, Defendant in the *Arroyo, et al. v. Mathisen, et al.*, CL-14-3569 matter transferred from the County Court of Law No. 4 in Hidalgo County.

# TABLE OF CONTENTS

PARTIES AND COUNSEL ................................................................. i

TABLE OF CONTENTS .................................................................. ix

TABLE OF AUTHORITIES ............................................................ xi

STATEMENT OF THE CASE ......................................................... xiii

STATEMENT OF JURISDICTION .................................................. xviii

ISSUES PRESENTED .................................................................. xviii

STATEMENT OF FACTS .................................................................1

SUMMARY OF THE ARGUMENT ...................................................5

ARGUMENT AND AUTHORITIES ....................................................7

    I.     STANDARDS FOR MANDAMUS RELIEF ...........................7

    II.    RESPONDENT'S ORDER AMENDING THE STIPULATED
            PROTECTIVE ORDER IS AN ABUSE OF DISCRETION .....................8

            A.    Respondent abused his discretion in ordering relief that
                  was not requested or briefed by the Real Parties. ...........................8

            B.    Respondent abused his discretion in ordering that
                  discovery may be shared beyond what has been allowed
                  under Texas law. ..............................................................13

                  1.    Allowing the discovery from *Antu* to be
                          shared with lawyers and experts in the
                          unrelated federal case is an abuse of
                          discretion..................................................................15

                  2.    Respondent abused his discretion in ordering
                          that discovery may be shared with
                          unidentified "potential litigants" who are not
                          parties or counsel in the MDL ........................................18

   C.  Vacating the June 30, 2015 Order is the proper remedy..................22

  III. RELATORS LACK AN ADEQUATE REMEDY BY
    APPEAL ............................................................................22

PRAYER ........................................................................................23

CERTIFICATION OF FACTS ................................................................25

CERTIFICATE OF SERVICE..................................................................26

CERTIFICATE OF COMPLIANCE ..........................................................27

# TABLE OF AUTHORITIES

Page

## CASES

*Able Supply Co. v. Moye*,
898 S.W.2d 766, 773 (Tex. 1995) ........................................................................12

*Aranda v. O'Neill*,
No. 01-88-00899-CV, 1988 WL 117191, (Tex. App.—Houston [1st
Dist.] Nov. 3, 1988, orig. proceeding)................................................................10

*Automatic Drilling Machines, Inc. v. Miller*,
515 S.W.2d 256, 259 (Tex. 1974) ................................................................. 10, 11

*Crane v. Tunks*,
328 S.W.2d 434, 440 (Tex. 1959) ........................................................................11

*Eli Lilly & Co. v. Marshall*,
850 S.W.2d 155 (Tex. 1993) .................................................................. 19, 20, 21

*Garcia v. Peeples*,
734 S.W.2d 343, 348 (Tex. 1987) ........................................ 10, 11, 14, 19, 20, 21

*In re Cerberus Capital Mgmt. L.P.*,
164 S.W.3d 379 (Tex. 2005) ..................................................................................7

*In re Champion Indus. Sales, LLC*,
398 S.W.3d 812, 818-19 (Tex. App.—Corpus Christi 2012, orig.
proceeding) ...........................................................................................................14

*In re Living Centers of Texas, Inc.*,
175 S.W.3d 253 (Tex. 2005) ..................................................................................7

*In re Prudential Ins. Co. of America*,
148 S.W.3d 124 (Tex. 2004) ..................................................................................8

*In re Van Waters & Rogers, Inc.*,
145 S.W.3d 203 (Tex. 2004) .............................................................................8, 23

*Indus. Foundation of the South v. Tex. Indus. Acc. Bd.*,
540 S.W.2d 668, 686 (Tex. 1976) ........................................................................11

*Keene Corp. v. Caldwell*,
   840 S.W.2d 715, 720 (Tex. App.—Houston [14th Dist.] 1992, orig.
   proceeding) ............................................................................ 12, 13, 16, 17

*Kessell v. Bridewell*,
   872 S.W.2d 837, 841 (Tex. App.—Waco 1994, orig. proceeding) .................8, 23

*Walker v. Packer*,
   827 S.W.2d 833 (Tex. 1992) ..........................................................................7, 8

## CONSTITUTIONAL PROVISIONS

TEX. CONST. ART. 5, § 6.................................................................................... xviii

## STATUTES

TEX. GOV'T CODE § 22.214(a) ............................................................................ xviii

TEX. R. JUD. ADMIN. 13.............................................................................................4

TEX. R. JUD. ADMIN. 13.5(b).....................................................................................4

TEX. R. JUD. ADMIN. 13.6(c) .....................................................................................4

TEX. R. JUD. ADMIN. 13.9(b)................................................................................ xviii

Description: Plaintiffs assert health care liability claims against dentists, the owner of two clinics at which dental services were provided, and the clinic's management services organization. The claims have been transferred to an MDL pretrial court.

Trial Court Judge: The Honorable Noe Gonzalez

Trial Court: 370th Judicial District Court, Hidalgo County, Texas

Trial Court Disposition: Granted Plaintiffs' Motion to Amend Stipulated Confidentiality Agreement and Protective Order

Relators: Benevis, LLC, Dentistry of Brownsville, P.C., and Kool Smiles, P.C.

Real Parties In Interest: PAULA ANTU AS NEXT FRIEND OF E.A., A MINOR; SCARLETT AYALA AS NEXT FRIEND OF X.U., A MINOR; GUADALUPE CEPEDA AS NEXT FRIEND OF O.C., A MINOR, ANA LAURA CORNEJO AS NEXT FRIEND OF J.C.C., A MINOR; MARIOR CUELLAR AND PRISCILLA TRUJILLO AS NEXT FRIENDS OF A.C., A MINOR; MARIA GAYTAN AS NEXT FRIEND OF F.T., A MINOR; ELIZABETH GONZALEZ AND MARCO REYES AS NEXT FRIENDS OF K.R., A MINOR; FRANCISCA GUZMAN AS NEXT FRIEND OF A.G., A MINOR; ISMAEL AND ISABEL MALDONADO AS NEXT FRIENDS OF J.M., A MINOR; FREISI OLIVAR AS NEXT FRIEND OF A.S.II, A MINOR; RARY ROSALES AS NEXT FRIEND OF D.M., A MINOR; REYNOL SALINAS AS NEXT FRIEND OF R.S.JR., A MINOR.

ANAHY ALANIS AS NEXT FRIEND OF J.V., A MINOR; ESMERALDA CARO AS NEXT FRIEND OF K.DL., A MINOR; MARY CHAVES AS NEXT FRIEND OF T.C., A MINOR; GRACIE FUENTES AS NEXT FRIEND OF B.F., A MINOR; MARICELA AND JORGE GARZA AS NEXT FRIENDS OF B.G., A MINOR; CLAUDIA AND GEORGE LOPEZ AS NEXT FRIENDS OF A.L., A MINOR; ESMERALDA LOPEZ AS NEXT FRIEND OF J.L., A

MINOR; DALIA LOPEZ AND JORGE SAUCEDA AS NEXT FRIENDS OF D.S., A MINOR; JOSE AND NORMA MONTOYA AS NEXT FRIENDS OF I.M., A MINOR; MAYRA MUNOZ AS NEXT FRIEND OF J.H., A MINOR; ROSALBA QUILANTAN AND EMILIO CAVAZOS AS NEXT FRIENDS OF E.C., A MINOR; VANESSA AND JOSHUA SANTILLIAN AS NEXT FRIENDS OF J.S., A MINOR.

MARYNE AND JOSE ALANIS AS NEXT FRIENDS OF O.M., A MINOR; SAN JUANITA CANTU AS NEXT FRIEND OF E.C., A MINOR; MCDULIA DEHOYOS AS NEXT FRIEND OF B.C., A MINOR; CARLA GARZA AS NEXT FRIEND OF K.S., A MINOR; YADIRA AND JESUS GOMEZ AS NEXT FRIENDS OF J.G., A MINOR; FELIZ PEREZ, JR. AS NEXT FRIEND OF K.P., A MINOR; GRISELDA PEREZ AS NEXT FRIEND OF S.P., A MINOR; ROSALBA QUILANTAN AND EMILIO CAVAZOS AS NEXT FRIENDS OF A.C., A MINOR; CRISTINA SALAS AS NEXT FRIEND OF J.C., A MINOR; JESSICA RODRIGUEZ AS NEXT FRIEND OF E.C., A MINOR; ROSA TURRUBIATES AND PEDRO SALAS, JR. AS NEXT FRIENDS OF P.S., A MINOR.

MARYNE ALANIS AND JOSE LUIS AS NEXT FRIENDS OF J.A., A MINOR; TATIANA AND MIGUEL CALDERON AS NEXT FRIENDS OF A.C., A MINOR; CELIA GUTIERREZ AS NEXT FRIEND OF J.C.V.III, A MINOR; STEFFANY KLIMP AS NEXT FRIEND OF J.C., A MINOR; LUIS LARA AS NEXT FRIEND OF M.L., A MINOR; CHARLIE PARK AS NEXT FRIEND OF M.P., A MINOR; GABRIELA REYES AS NEXT FRIEND OF A.B.R., A MINOR; CRUZ RIOS AS NEXT FRIEND OF X.A., A MINOR; SEFERINA SALINAS AS NEXT FRIEND OF N.B., A MINOR; KIMBERLY SUSTAITA AND RODOLFO AVILA AS NEXT FRIENDS OF R.A.JR., A MINOR.

TERESA ALANIZ AS NEXT FRIEND OF D.T., A MINOR; TERESA ALANIZ AS NEXT FRIEND OF D.T., A MINOR; NEREYDA BENITEZ AND JOSE ANGEL ARRIAGE AS

NEXT FRIENDS OF J.A., A MINOR; MARIBEL ESPINOZA AS NEXT FRIEND OF B.E., A MINOR; JENNIFER AND ISMAEL GARCIA, JR. AS NEXT FRIENDS OF I.G.III, A MINOR; ENRIQUE GOMEZ AS NEXT FRIEND OF S.G., A MINOR; FELIX MARTINEZ AND LUCERO BAUTISTA AS NEXT FRIENDS OF J.B., A MINOR; ROSAURA MOLINA AS NEXT FRIEND OF I.M., A MINOR; JACQUELYNE RUBALCAVA AS NEXT FRIEND OF J.R., A MINOR; VANESSA ANIKA SALMON AS NEXT FRIEND OF M.A.R.JR., A MINOR; ADRIANA TORRES AS NEXT FRIEND OF S.T., A MINOR; BEATRIZ VELEZ AS NEXT FRIEND OF U.M., A MINOR.

PRISCILLA APARICIO AS NEXT FRIEND OF J.A., A MINOR; MARIA BUITRON AS NEXT FRIEND OF E.B., A MINOR; MONICA DE LA ROSA AND JOSE ESPINOZA AS NEXT FRIENDS OF J.E., A MINOR; GUADALUPE PEREZ AND CESAR HERNANDEZ AS NEXT FRIENDS OF C.H., A MINOR; LIZET RAMIREZ AS NEXT FRIEND OF I.G., A MINOR; LUIS AND LIZETH REYES AS NEXT FRIENDS OF I.R., A MINOR; JENNIFER AND VALENTIN REYNA AS NEXT FRIENDS OF H.R., A MINOR; ALFREDO RODRIGUEZ AS NEXT FRIEND OF C.R., A MINOR; DAISY TORRES AS NEXT FRIEND OF E.T., A MINOR; MANUEL URESTI AS NEXT FRIEND OF D.U., A MINOR; GUADALUPE AND EDGAR URIBE AS NEXT FRIENDS OF J.U., A MINOR; MARGARITA AND HUMBERTO VIACOBO AS NEXT FRIENDS OF V.V., A MINOR.

SYLVIA ARANDA AS NEXT FRIEND OF L.B., A MINOR; GUADALUPE CEPEDA AS NEXT FRIEND OF S.C., A MINOR; MIRIAN DE LOS SANTOS AS NEXT FRIEND OF M.D., A MINOR; NORISELDA AND MIGUEL GARCIA, JR. AS NEXT FRIENDS OF M.G.III, A MINOR; AMANDA GARZA AS NEXT FRIEND OF R.P.JR., A MINOR; MIRIAN AND FERNANDO GONZALES, JR. AS NEXT FRIENDS OF F.L.III, A MINOR; MARIA GONZALEZ AS NEXT FRIEND OF C.M., A MINOR; MONICA HERNANDEZ AS NEXT FRIEND OF A.C., A MINOR; ALEJANDRA LARA AS NEXT FRIEND OF J.T., A MINOR; ISELA LEE LEDESMA

AS NEXT FRIEND OF D.L.P., A MINOR; NANCY RODRIGUEZ AS NEXT FRIEND OF I.J.R., A MINOR; ABEL AND ILLIANA ZUNIGA AS NEXT FRIENDS OF M.Z., A MINOR.

ERIKA ARMENDARIZ AS NEXT FRIEND OF J.A., A MINOR; LAURA AND FIDEL GOMEZ, JR. AS NEXT FRIENDS OF J.P., A MINOR; IRASENA GONZALEZ AS NEXT FRIEND OF R.G., A MINOR; OLGA GRANADOS AS NEXT FRIEND OF E.G., A MINOR; MARGARITA MOLAR AS NEXT FRIEND OF V.N.T., A MINOR; HAIDE AND JUAN REYES AS NEXT FRIENDS OF J.E.R.II, A MINOR; AMANDA AND JUAN RODRIGUEZ AS NEXT FRIENDS OF N.R., A MINOR; BLANCA RODRIGUEZ AS NEXT FRIEND OF S.R., A MINOR; CARMEN SALAZAR AS NEXT FRIEND OF K.C., A MINOR; ADRIANA VENANCIO AND CESAR MEJIA AS NEXT FRIENDS OF Y.M., A MINOR.

DENISSE ARROYO AS NEXT FRIEND OF Z.L., A MINOR; MARIA BUITRON AS NEXT FRIEND OF L.B., A MINOR; IMELDA AND GUSTAVO CORONADO AS NEXT FRIENDS OF R.C., A MINOR; NARDA DOMINGUEZ AS NEXT FRIEND OF N.H., A MINOR; MIRIAN GONZALES AND FERNANDO LOPEZ, JR. AS NEXT FRIENDS OF A.L., A MINOR; MONICA HERNANDEZ AS NEXT FRIEND OF R.C.III, A MINOR; ELIZABETH LONGORIA AS NEXT FRIEND OF C.L., A MINOR; ERIKA MENDOZA AS NEXT FRIEND OF J.I., A MINOR; WENDY MORALES AS NEXT FRIEND OF A.M.Z., A MINOR; RACHEL RODRIGUEZ AS NEXT FRIEND OF E.R., A MINOR; SANDRA RODRIGUEZ AS NEXT FRIEND OF D.I., A MINOR.

SAN JUANITA CANTU AS NEXT FRIEND OF E.C., A MINOR; DARLENE CARDENAS AS NEXT FRIEND OF E.G., A MINOR; NANCY CERVANTES AS NEXT FRIEND OF L.C., A MINOR; WALLACE CLARK AND MARIA RAMIREZ AS NEXT FRIENDS OF D.C., A MINOR; ANDY AND NORMA GARCIA AS NEXT FRIENDS OF A.D.G., A

MINOR; MYRA GARZA AS NEXT FRIEND OF D.R., A MINOR; JORGE AND CYNTHIA GINEZ AS NEXT FRIENDS OF J.G., A MINOR; NELSSY GONZALEZ AS NEXT FRIEND OF N.H., A MINOR; MARIA HERNANDEZ AS NEXT FRIEND OF K.R., A MINOR; KARINA HERNANDEZ AS NEXT FRIEND OF I.M., A MINOR; TERESITA LEMUS AS NEXT FRIEND OF N.P., A MINOR; EDWARD LOPEZ AS NEXT FRIEND OF A.L., A MINOR; VERONICA QUINTANILLA AS NEXT FRIEND OF D.M., A MINOR; MARIA SALAZAR AS NEXT FRIEND OF D.L., A MINOR; HUGO AND NORMA VARGAS AS NEXT FRIENDS OF A.V., A MINOR; AMY ZUNIGA AS NEXT FRIEND OF B.Z., A MINOR.

MONICA DE LA ROSA AND JOSE ESPINOZA AS NEXT FRIENDS OF E.E., A MINOR; JENNIFER GONZALEZ AS NEXT FRIEND OF B.R., A MINOR; MARIA HERRERA AS NEXT FRIEND OF R.F., A MINOR; CARLOS MARTINEZ AS NEXT FRIEND OF A.M., A MINOR; ANA ORTIZ AS NEXT FRIEND OF E.S., A MINOR; RAMIRO PEREZ AND IVONNE CARBAJAL AS NEXT FRIENDS OF L.C., A MINOR; RICARDO RAMIREZ, JR. AS NEXT FRIEND OF J.R., A MINOR; LUIS AND LIZETH REYES AS NEXT FRIENDS OF S.R., A MINOR; VERONICA RODRIGUEZ AS NEXT FRIEND OF J.R., A MINOR; KIMBERLY SUSTAITA AND RODOLFO AVILA AS NEXT FRIENDS OF K.A., A MINOR.

| | |
|---|---|
| Action for which Relief is Sought: | Trial Court's entry of an Order amending a stipulated Protective Order to allow plaintiffs and their counsel to disseminate confidential information and documents to attorneys in an unrelated federal case and to unidentified "potential litigants" with "potential claims" against "potential parties." |

## STATEMENT OF JURISDICTION

This Court has jurisdiction to issue a writ of mandamus. TEX. CONST. ART. 5,

§ 6; TEX. GOV'T CODE § 22.214(a); TEX. R. JUD. ADMIN. 13.9(b).

## ISSUES PRESENTED

1.    Whether Respondent abused his discretion in ordering relief not requested or briefed by the Real Parties with respect to the deletion of paragraph 13 of the Protective Order, which requires certification from each party's counsel that the recipients of confidential information have complied with the Protective Order.

2.    Whether Respondent abused his discretion in ordering that plaintiffs and their counsel may disseminate confidential information to attorneys in an unrelated federal case and to unidentified "potential litigants" with "potential claims" against "potential parties" to the multidistrict litigation.

3.    Whether Relators have an adequate remedy by appeal.

## STATEMENT OF FACTS

The real parties in interest (hereinafter the "Trial Plaintiffs" or "Real Parties") are representatives of minor dental patients who were treated at Kool Smiles clinics in Mission, McAllen, and Weslaco, Texas. (Sworn Record, Tab 3; Appendix Tab A). Real Parties filed claims against Benevis, LLC f/k/a NCDR, LLC, Dentistry of Brownsville, P.C., and Kool Smiles, P.C. ("Relators" or "Corporate Defendants") and the dentists who provided the dental care at issue (the "Defendant Dentists"). Real Parties contend, among other things, that the dental care provided did not meet the standard of care and that Relators are directly liable to Trial Plaintiffs and vicariously liable for the acts of the dentists. (*Id*., pp. 19-29). Relators and the Defendant Dentists have filed answers denying the Trial Plaintiffs' allegations. (Sworn Record, Tab 2).

On January 16, 2013, counsel for Trial Plaintiffs filed the first of eleven cases (collectively, the "Kool Smiles Cases"). (Sworn Record, Tab 1) That case, *Antu et al. v. NCDR et al.* (hereinafter "*Antu*"), was assigned to the 370th District Court in Hidalgo County, the Honorable Noe Gonzalez presiding. (Sworn Record, Tab 3; Appendix Tab A). Thereafter, the *Antu* Trial Plaintiffs propounded over 400 requests for production to the Corporate Defendants. (Sworn Record, Tab 9 at ¶4 of Exhibit A; Appendix Tab F, at ¶4 of Exhibit A). Thousands of documents were produced in response to the requests for production. (*Id.* at ¶8 of Exhibit A). Before the Corporate Defendants produced the vast majority of these documents, counsel for the parties

1

extensively negotiated and agreed on a protective order to address documents containing confidential information. The Stipulated Confidentiality Agreement and Protective Order (the "Protective Order")—agreed to by all parties—was submitted to the Court and signed by Judge Gonzalez on June 11, 2013. (Sworn Record, Tab 4; Appendix Tab B).

By September 2014, counsel for the Trial Plaintiffs had filed eleven cases in various courts in Hidalgo County on behalf of approximately 170 plaintiffs and 128 minor children. (Sworn Record, Tab 5 at 2, Appendix Tab C, at 2). On October 17, 2014, the Corporate Defendants filed a motion with the Judicial Panel on Multidistrict Litigation requesting that the Panel transfer each of the Kool Smiles Cases for pretrial coordination and consolidation pursuant to Rule 13 of the Texas Rules of Judicial Administration. (Sworn Record, Tab 5, Appendix Tab C). On January 23, 2015, the Panel issued a stay in the Kool Smiles Cases. On March 25, 2015, the Panel granted the Corporate Defendants' Motion and ordered the transfer of all of the Kool Smiles Cases to Judge Gonzalez in the 370th District Court for pretrial coordination. (Sworn Record, Tab 6).

Prior to the transfer of the Kool Smiles Cases to MDL, the parties agreed to share discovery in the eleven cases that had been filed against the Corporate Defendants. Specifically, on or about January 24, 2015, counsel for the parties in each of the Kool Smiles Cases signed agreements stipulating to the authenticity of the

2

documents produced in *Antu* and permitting counsel for Trial Plaintiffs in each of the Kool Smiles Cases to use the *Antu* discovery "at any pretrial proceeding and/or trial of [each of the Kool Smiles Cases]." (Sworn Record, Tab 9 at 3; Appendix Tab F, at 3).

On November 17, 2014, prior to the transfer of the Kool Smiles Cases to Judge Gonzalez for MDL pretrial coordination, the *Antu* Trial Plaintiffs filed their Motion to Amend Confidentiality Agreement and Protective Order or, Alternatively, Motion for Sanctions or, Alternatively, for Determination of Confidentiality (the "Motion"). (Sworn Record, Tab 7; Appendix Tab D). In their Motion, counsel for the Real Parties argued that Relators engaged in an "abuse of discovery" by over-designating documents produced in the litigation as confidential. Although the issue had nothing to do with their complaint about supposed over-designation of documents as confidential, they requested that the *Antu* court amend the Protective Order to allow Trial Plaintiffs' counsel to share the confidential information produced by Relators with the plaintiffs in the other Kool Smiles Cases and with their lawyers and experts in a federal lawsuit in which counsel for Real Parties are named Defendants (the "Federal Case").[2] (Sworn Record, Tab 7; Appendix Tab D).

---

[2] That suit, filed by some (but not all) of the Relators prior to any of the Kool Smiles Cases, is not a dental malpractice case. Unlike the Kool Smiles Cases, the federal suit involves claims for false advertising, defamation, business disparagement, and injury to business reputation. None of the causes of action in the two lawsuits are the same.

Importantly, the Motion did not request that the court delete paragraph 13 of the Protective Order, which requires counsel to certify that they and the persons to whom they have disseminated confidential information have complied with the terms of the Protective Order. (Sworn Record, Tab 4 at 4; Appendix Tab B, at 4). Paragraph 13 further provides for the return of confidential information after the litigation has been resolved. (*Id.*)

Relators filed a response brief opposing the Motion on June 14, 2015 and appeared through counsel at a hearing on the Motion on June 15, 2015. (Sworn Record, Tab 8; Appendix Tab E). At the hearing,[3] Judge Gonzalez heard the arguments of counsel and requested that the parties submit proposed orders and additional briefing on the issue of shared discovery under Texas law. The parties submitted additional briefing on Friday, June 19, when Relators submitted evidence attesting to the process by which they designated documents produced in *Antu* as confidential. (Sworn Record, Tab 9, Exhibit A; Appendix Tab F, Exhibit A).

---

[3] As a preliminary matter, Defendants objected to the Motion being heard under Rule 13.5 of the Texas Rules of Judicial Administration, as it was filed in only one of the transferred cases and was not properly before the MDL Court. Rule 13 of the Texas Rules of Judicial Administration, which governs the establishment and management of a MDL proceeding, prohibits a "trial court" from taking "further action" in the case transferred to the MDL, "except for good cause." TEX. R. JUD. ADMIN. 13.5(b). Although Judge Gonzalez is the presiding judge of *Antu* and the MDL, good cause for amending the Protective Order was not shown or noted in the Order. Before moving forward with the Motion as an MDL matter, a case management order must be entered to govern "all matters pertinent to the conduct of the litigation." TEX. R. JUD. ADMIN. 13.6(c). This has not yet been done, and it was premature to hear or rule on the Motion.

4

Relators filed additional briefing on June 23, 2015, in response to the Real Parties' Memorandum of Law. (Sworn Record, Tabs 10-11; Appendix Tabs G-H).

On June 30, 2015, Judge Gonzalez signed the Order proposed by counsel for Real Parties (the "Order"), which is the subject of this Petition for Writ of Mandamus. (Sworn Record, Tab 12; Appendix Tab I).

## SUMMARY OF THE ARGUMENT

In entering the Order, Respondent abused his discretion in several ways. First, the Order includes relief that was not requested or briefed by the Real Parties. Specifically, Real Parties did not move for the deletion of paragraph 13 of the Protective Order, and did not advance any arguments or authorities related to the deletion of paragraph 13. That paragraph, which was a negotiated and agreed upon part of the Protective Order, contains a procedure whereby each party's counsel certifies that the recipients of confidential information have complied with the Protective Order and further provides for the return of confidential information after the litigation is over. Respondent's deletion of paragraph 13 from the Protective Order removed a critical portion of the Protective Order which allows the Relators to keep track of the individuals to whom confidential information has been disseminated, and assures the return of confidential information to Relators at the conclusion of the litigation. Respondent abused his discretion by deleting paragraph 13 of the Protective Order without such relief being requested by the Real Parties, and without

hearing arguments or evidence that the procedures set forth in paragraph 13 were somehow unworkable.

Respondent further abused his discretion in ordering that counsel for Real Parties may share the confidential documents produced in *Antu* with lawyers representing Trial Plaintiffs' counsel and experts in the Federal Case. The parties and claims in the Federal Case are different from the parties and claims in the Kool Smiles Cases. Plaintiffs and their counsel should not be allowed to do an end around to gain access to discovery for use in the Federal Case unless and until that court has determined that the information is discoverable based upon the facts and issues presented there. Under the principle of comity, all decisions as to what information and documents are discoverable in the Federal Case should be made by the federal court.

Respondent further abused his discretion in ordering that counsel for Real Parties may share confidential documents produced by Relators with "potential litigants . . . with actual or potential claims" against "potential parties in the *Antu* and MDL litigation." (Sworn Record, Tab 12 at 2; Appendix Tab I, at 2). The Order does not provide adequate protection to the Relators, as it does not define or otherwise identify who may qualify as a "potential litigant" or a "potential party." This Order, coupled with the removal of paragraph 13, strips Relators of much of the protection afforded by the Protective Order and could allow an entirely unregulated and

unidentified group of recipients to gain access to confidential documents and information. Although such recipients would be [theoretically] bound by the Protective Order, there is no way for Relators to determine to whom the documents have been disseminated, confirm their adherence to the Protective Order, and recover their confidential documents at the end of this litigation. While Texas law permits some sharing of confidential information under limited circumstances, it does not permit a sharing arrangement that effectively negates a party's ability to protect its confidential information.

Because no remedy on appeal could prevent the improper disclosure of Relators' confidential and proprietary business documents produced in the *Antu* litigation, mandamus relief is necessary.

## ARGUMENT AND AUTHORITIES

## I. STANDARDS FOR MANDAMUS RELIEF

A party may seek a writ of mandamus to correct a clear abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). The essential requirements for obtaining a writ of mandamus are: (1) the trial court clearly abused its discretion; and (2) the party requesting mandamus has no adequate remedy by appeal. *In re Living Centers of Texas, Inc.*, 175 S.W.3d 253 (Tex. 2005). An abuse of discretion occurs where the trial court acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles of law. *In re Cerberus Capital Mgmt. L.P.*, 164

7

S.W.3d 379, 387 (Tex. 2005). Expressed another way, the trial court's action must be "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker*, 827 S.W.2d at 840. Of course, a trial court has no "discretion" in determining what the law is or in applying the law to the facts, even when the law is unsettled. *In re Prudential Ins. Co. of America*, 148 S.W.3d 124, 135 (Tex. 2004).

A party lacks an adequate remedy by appeal when it is in danger of permanently losing its substantial rights. Such a danger arises when the appellate court would not be able to cure the error, when the party's ability to present a viable claim or defense is inhibited, or where the error cannot be made part of the appellate record. *In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203 (Tex. 2004). An appeal is not an adequate remedy to relieve one from the effects of an order requiring improper disclosure of private information. *Kessell v. Bridewell*, 872 S.W.2d 837, 841 (Tex. App.—Waco 1994, orig. proceeding).

## II. RESPONDENT'S ORDER AMENDING THE STIPULATED PROTECTIVE ORDER IS AN ABUSE OF DISCRETION

### A. Respondent abused his discretion in ordering relief that was not requested or briefed by the Real Parties.

Respondent clearly abused his discretion in ordering relief that was not requested by the moving party. Real Parties did not seek, in their Motion or otherwise, to have Paragraph 13 deleted from the Protective Order. Yet, the Order states, in relevant part, that "the Stipulated Confidentiality and Protective Agreement

8

[sic] Order entered by the Court on June 11, 2013 shall be, and is hereby, AMENDED and MODIFIED to delete Paragraph 13 and Exhibit 'B.'" (Sworn Record, Tab 12 at 2; Appendix Tab I, at 2). While the Motion filed in the *Antu* trial court requested one of three specific types of relief, a deletion of Paragraph 13 of the Protective Order was not one of them. Nor did Real Parties raise the issue in their Supplemental Brief filed on June 19, 2015.

The first reference to deletion of paragraph 13 of the Protective Order was by way of the proposed Order submitted by Plaintiffs following the hearing on the Motion. Relators objected to this portion of the proposed order in their Response to Plaintiffs' Supplemental Brief, but Respondent nevertheless signed the proposed Order containing the language deleting Paragraph 13.

Paragraph 13 of the Protective Order states:

> Within thirty (30) days from the entry of final judgment, settlement, or dismissal in connection with this action, **each party to this action shall return to counsel for the Defendants their original copies of all Confidential Information** received under this Stipulated Protective Order, together with all reproductions and copies. In addition, all abstracts, summaries, indexes or other writings that contain, reflect, or disclose the substance of the Confidential Information received under this Stipulated Protective Order shall be destroyed by Plaintiffs' counsel within six (6) months from the entry of final judgment, settlement, or dismissal in connection with this action. **Each party's counsel will certify by declaration to the Defendants' counsel that this Stipulated Protective**

9

**Order has been complied with by them and their experts/consultants** in the form attached as "Exhibit B."

Protective Order at 4 (emphasis added). Without explanation, Respondent removed these vital protections of Relators' confidential information. The modified Order strips away the provision requiring that confidential information produced in *Antu* be returned to the Relators after the litigation has concluded. Moreover, it appears now that counsel and others may retain and disseminate confidential information at their complete discretion without having to certify that they have done so in compliance with the Protective Order. Respondent's deletion of paragraph 13 from the Protective Order, without request or any justification, constitutes a clear abuse of discretion.

Texas law allows for the use of protective orders to prevent disclosure of confidential information to unauthorized recipients. *Automatic Drilling Machines, Inc. v. Miller*, 515 S.W.2d 256, 259 (Tex. 1974). For example, courts have protected disclosure of policy and procedure manuals, trade secret information, confidential and proprietary business information, financial information, and personal privacy information. *See, e.g.*, *Garcia v. Peeples*, 734 S.W.2d 343, 348 (Tex. 1987) (protecting "proprietary information" and "true trade secrets"); *Aranda v. O'Neill*, No. 01-88-00899-CV, 1988 WL 117191, (Tex. App.—Houston [1st Dist.] Nov. 3, 1988, orig. proceeding) (not designated for publication) (affirming protective order for policy and procedure manuals and claims data/ratios, and other business information);

10

*Crane v. Tunks*, 328 S.W.2d 434, 440 (Tex. 1959) (rev'd on other grounds) (preventing disclosure of irrelevant portions of tax returns); *Indus. Foundation of the South v. Tex. Indus. Acc. Bd.*, 540 S.W.2d 668, 686 (Tex. 1976) (prohibiting disclosure of confidential, highly personal information).

Trial courts must weigh the need for discovery against the desirability of preserving the secrecy of the material in question. *Automatic Drilling*, 515 S.W.2d at 259. Protective orders should properly balance the competing interests of the parties and must be "carefully tailored" to protect those competing interests. *Garcia*, 734 S.W.2d at 348. When trial courts have issued orders that do not adequately protect confidential information, mandamus is appropriate. *See, e.g., Automatic Drilling*, 515 S.W.2d at 260. Contrary to Real Parties' position, there is no reason to believe that the interest in protecting confidential information from dissemination to unauthorized parties is of any less importance or weight than the interests involved in sharing discovery with similarly situated litigants. Here, unfortunately, Respondent has nullified a key part of the confidentiality protections by omitting controls on who may receive confidential information under the Protective Order and by removing the existing protections afforded in Paragraph 13. The Order is not "carefully tailored" and in fact does *nothing* to assist the Real Parties in the representation of the Plaintiffs in this MDL proceeding. The Order only serves to put Relators at risk of having their

11

confidential information disclosed to unauthorized recipients and does not even purport to assist Real Parties or any other actual litigant in the Kool Smiles Cases.

"Reliance on a protective order is a factor which should be given great weight when a court determines whether a protective order should be later vacated or modified." *Keene Corp. v. Caldwell*, 840 S.W.2d 715, 720 (Tex. App.—Houston [14th Dist.] 1992, orig. proceeding). Here, the Protective Order was negotiated and agreed to by the parties. It was then signed by the Court. Relators produced thousands of documents in reliance on the Protective Order and its provisions to prevent disclosure of confidential information to unauthorized parties, provide for the return of the documents from counsel, and assurances that the confidential information had been handled properly. They did not seek judicial relief prior to producing those documents because the Protective Order was in place and had been agreed to and stipulated by all parties. Now that counsel for Real Parties seeks to use the documents in the Federal Case, they have sought and obtained amendments to the Protective Order.

The Order, which purports to modify the Protective Order, is not carefully tailored to the needs of the parties in this MDL proceeding, and such an abuse of judicial discretion should not be taken lightly. *Able Supply Co. v. Moye*, 898 S.W.2d 766, 773 (Tex. 1995). As in *Able Supply*, all parties in this MDL proceeding are entitled to full and fair discovery so that the cases before Respondent may be decided

12

on the merits. Yet, Respondent's Order does not further the full and fair discovery to any *party* to the MDL. The only persons standing to benefit from Respondent's Order are the *attorneys* representing Real Parties who seek permission to disseminate confidential information to defend themselves in the Federal Case. They are not parties to this MDL, and they have not articulated any need to this relief in order to represent the Real Parties.

Moreover, as in *Keene Corp.*, Relators produced the documents in *Antu* in complete reliance upon the protections stated in the Protective Order. *Keene Corp.*, 840 S.W.2d at 720. Respondent abused his discretion by then removing the agreed-upon and reasonable protections without good cause. The "bait-and-switch" tactics utilized by counsel for Real Parties and accepted by Respondent in signing the Order renders much of the Protective Order powerless, as it allows counsel for Real Parties to distribute confidential documents to virtually any person who has ever been treated at a Kool Smiles clinic. As amended by Respondent, the Protective Order has subjected Relators to the extreme risk that confidential information will be distributed to unauthorized recipients with no recourse for unauthorized disclosures.

B.  **Respondent abused his discretion in ordering that discovery may be shared beyond what has been allowed under Texas law.**

Respondent's Order stretches the "shared discovery" doctrine in Texas beyond recognition. The doctrine was adopted in 1987 to promote efficiency in the discovery

13

process amongst "similarly situated parties" in cases involving issues that are "virtually identical." *Garcia*, 734 S.W.2d at 347. No Texas cases support or even contemplate allowing shared discovery in *dissimilar* cases or with individuals or parties who are not similarly situated. Respondent abused his discretion in entering the Order in that it allows confidential documents produced in *Antu* to be shared with dissimilar litigants in the Federal Case and, separately, to unidentified "potential litigants." Allowing the dissemination of information and documents in this way is a clear abuse of discretion.

Sixteen years after the implementation of the shared discovery doctrine, the Texas legislature created the state court MDL proceeding to "provide a pretrial process that allows cases with common questions of fact to proceed efficiently toward trial." *In re Champion Indus. Sales, LLC*, 398 S.W.3d 812, 818-19 (Tex. App.—Corpus Christi 2012, orig. proceeding). As this Court noted in that case, the goals established by the shared discovery doctrine are accomplished by an MDL proceeding. The Court drew the similarities between *Garcia's* shared discovery doctrine and the efficiency goals of the MDL. The MDL—a procedure introduced in Texas after *Garcia*—accomplishes the shared discovery doctrine's goal of requiring "'similarly situated parties to go through the same discovery process time and time again, even though the issues involved are virtually identical.'" *Id.* (*quoting Garcia*, 734 S.W.2d at 347). Because the MDL procedure has been established to govern all

14

of the "civil actions that involve one or more common questions of fact," it is an abuse of discretion for Respondent to unnecessarily extend the shared discovery doctrine to parties outside of the MDL. This MDL accomplishes the shared discovery contemplated by *Garcia*.

### 1. Allowing the discovery from *Antu* to be shared with lawyers and experts in the unrelated federal case is an abuse of discretion.

The Order allowing Real Parties to share confidential information with attorneys in an unrelated federal matter completely distorts the "shared discovery" doctrine and sets forth dangerous precedent. The Order also allows counsel for Real Parties to circumvent discovery in the Federal Case. Real Parties have never argued that they—next friends or the minor children—were harmed in any way by the Protective Order. Nor could they, as the Protective Order in place prior to the Court's June 30 Order allowed documents to be used freely in this case for any purpose. There was no impediment to Real Parties' counsel's use of the discovery and documents in representing their clients in this MDL proceeding.

Rather, it is *counsel* for Real Parties who have sought relief from the Protective Order, for the sole purpose of defending themselves in the unrelated Federal Case and to circumvent the authority of the federal court's decisions on discovery. Counsel indicated as much in a June 10, 2015 email, which stated "[i]f your client agrees to modify the protective order or enter into a Rule 11 that allows the documents to be

15

reviewed by… our attorneys in the federal case, then I will agree to drop the hearing [on the Motion]." June 10, 2015 email from George Mauzé (Sworn Record, Tab 8, Exhibit "E") (emphasis in exhibit not in original). Counsel then made his intention crystal clear in proposing the order to the court containing language with express permission to share documents in that case. (Sworn Record, Tab 11, Exhibit A; Appendix Tab H, Exhibit A).

While there is some overlap of parties and factual background, this much is clear—the Federal Case involves different claims, different issues, and different rules and court orders regulating discovery. The claims in that case seek damages for false advertising, defamation, business disparagement, and injury to business reputation, and there are discovery disputes in that case that are to be addressed by the federal court. The discovery requests are different given that the issues in that case are different. A protective order has been issued there, and it contains different protections unique to that case. That some of the Relators are parties in both cases does not justify ignoring an agreed protective order and the wholesale sharing of documents that have not been ruled to be relevant or discoverable in the Federal Case.

This situation "goes to the very heart of the concept of comity." *Keene Corp.*, 840 S.W.2d at 720. "[O]n the principle of comity and the full faith and credit clause," it is an abuse of discretion for a trial court to issue an order in conflict with that of a federal court order regarding the same subject matter. In *Keene Corp.*, it was an abuse

16

of discretion when the trial court ordered the production of depositions that fell under the purview of a federal district court's protective order. *Id.* Here, counsel for Real Parties has requested production of the confidential documents in the Federal Case, to which opposing parties objected. The court issued a protective order and the parties have filed competing motions to compel and accompanying briefing. The parties opposed the others' motions and all parties await a decision from the federal court. If and when the court in the Federal Case makes a ruling on the relevance, admissibility, and confidentiality of any of the documents requested by counsel for Real Parties, it will be at the federal court's sole discretion. In short, Respondent's Order violates the principle of comity. *See id.* Respondent's lack of deference to the federal court regarding discovery matters in that case is a clear abuse of discretion. *See id.*

Counsel's concerns in defending himself in the Federal Case are entirely improper justifications for amending the Protective Order. Comity issues aside, discovery issues in the Federal Case should be left to the federal court presiding over that case. Plaintiffs' counsel should not be allowed to obtain documents in this case for use there, unless and until the federal court determines they are relevant and discoverable. Respondent clearly abused his discretion in ordering that the *Antu* discovery could be shared with the attorneys and experts for the defendants in the Federal Case.

**2. Respondent abused his discretion in ordering that discovery may be shared with unidentified "potential litigants" who are not parties or counsel in the MDL.**

In addition to the abuses of discretion described above, Respondent entered an Order that is so vague and broad that it constitutes an abuse of discretion. It allows counsel for Real Parties to share the *Antu* discovery with individuals not affiliated in any way with the Kool Smiles Cases, as long as they are a "potential litigant" with a "potential claim" against a "potential part[y]" in the MDL—all as determined by counsel for Real Parties. (Sworn Record, Tab 12; Appendix Tab I). It is overly broad because the terms "potential litigant," "potential claim," and "potential party" are undefined. (*Id.*). Due to the amendments imposed by Respondent in the Order, Counsel for Real Parties—in their sole discretion—may determine whether a person is a "potential litigant" with a "potential claim" against a "potential party." Moreover, counsel is no longer accountable for ensuring the proper use and return of the documents, a protection which was previously afforded in Paragraph 13 of the Protective Order. (*Id.*).

The amendments ordered by Respondent have unnecessarily and unreasonably increased the risk that Relators' documents could fall into the hands of individuals—even competitors—who are not entitled to see them. Even worse, Respondent has ordered that Real Parties no longer must certify that counsel and the recipients of the

18

confidential information have complied with the Protective Order, leaving Relators without the ability to determine who has the documents and without recourse if the confidential information is improperly disseminated. (*Id.*). In short, the Order needlessly and unreasonably exposes Relators to the very real risk that their confidential and competitively sensitive information ends up in the hands of their competitors.

Real Parties will undoubtedly rely on *Garcia* and *Eli Lilly & Co. v. Marshall*, 850 S.W.2d 155 (Tex. 1993) in support of Respondent's Order. While those cases establish (*Garcia*) and refer to (*Eli Lilly*) the shared discovery doctrine, neither provides support for shared discovery in *dissimilar* cases or with *potential* litigants who are not part of this MDL. *Garcia* held that *similarly situated* litigants were entitled to the fruits of shared discovery. Relators, indeed, entered into agreements with each of the Trial Plaintiffs allowing for use of the *Antu* discovery in all of the Kool Smiles Cases. Importantly, however, *Garcia* does not contemplate, mention, or discuss whether "potential" litigants might be entitled to shared discovery. Rather, *Garcia* held that *similarly situated litigants* were entitled to shared discovery.

*Garcia* concerned whether the plaintiff in that case could "exchange the discovery information with other persons involved in *similar suits* against automakers" on the basis "allowing information exchanges between *similarly situated*

19

*litigants* would enhance full disclosure and efficiency in the trial system." *Garcia*, 734 S.W.2d at 346-47 (emphasis added). The court reasoned that

> shared discovery makes the system itself more efficient. The current discovery process forces *similarly situated parties* to go through the same discovery process time and time again, even though the issues involved are virtually identical. Benefiting from restrictions on discovery, one party facing a number of adversaries can require his opponents to duplicate another's discovery efforts, even though the opponents share *similar discovery needs* and will litigate *similar issues*.

*Id.* at 347 (emphasis added). The court then held that the information could be shared with the "other *litigants*," which specifically referred to "persons involved in *similar suits* against automakers." *Id.* at 346-47, 348 (emphasis added). *Garcia* allows for shared discovery *only* to *similarly situated litigants* who are already "involved in similar suits," and not to dissimilar cases or potential litigants.

A lone reference to "potential litigants" found in *Eli Lilly* does not justify Respondent's amendments to the Protective Order. Although *Eli Lilly* cites *Garcia* and tangentially refers to the shared discovery doctrine, that case was not about shared discovery. *Eli Lilly* concerned whether a trial court's order requiring disclosure of the identities of consumers who had made confidential reports to the FDA was appropriate or if the confidential information should be protected from release to the plaintiffs in *Eli Lilly*. *Eli Lilly*, 850 S.W.2d at 160. The Texas Supreme Court held against the plaintiffs in that case because the federal "objective of fostering post-

20

approval reporting of possible adverse reactions for all FDA-approved drugs is severely compromised by the trial court's order of wholesale disclosure of reporters' identities." *Id.* at 160.

The *Eli Lilly* court only referred to the shared discovery doctrine in *dicta*. The holding—that the real parties in interest were entitled to "share that discovery with their expert witnesses and *litigants* in other cases"—plainly excluded any reference to sharing discovery with "potential litigants" or persons with "potential claims" against "potential defendants." *See id.* (emphasis added). Likewise, *Garcia* addresses other *litigants*, but it does not in any way extend to *potential* litigants, as that issue was not before the court. *See Garcia*, 734 S.W.2d at 347. Therefore, while it is not clear what the *Eli Lilly* court meant in its lone reference to "potential litigants," it is clear that the holding did not turn on whether shared discovery was proper. The opinion does not broaden the scope of shared discovery as articulated in *Garcia,* and, in fact, the actual holding of the court in *Eli Lilly* does not support Real Parties' position.

Real Parties cannot direct this Court or Defendants to a case in which a Texas court actually extended the shared discovery doctrine to *potential* litigants. Indeed, it is illogical to do so. Respondent's amendments to the Protective Order essentially allow for unlimited shared discovery with anyone deemed by counsel for Real Parties to be a "potential litigant" with a "potential claim" against a "potential defendant" in the MDL. Again, taken with the deletion of paragraph 13 of the Protective Order, the

amendments allow counsel for Real Parties to make this determination without any accountability as to whether they have complied with the terms of the Protective Order. As such, vital protections agreed to and provided in the Protective Order have been removed. Relators can no longer identify the universe of the potential recipients of their confidential information and ensure that their confidential documents will be returned at the conclusion of the litigation. The virtually limitless designation of "potential litigants" severely undermines the enforceability of the Protective Order and therefore fails to adequately protect the legitimate interests of the *actual* litigants in the Kool Smiles Cases.

C. **Vacating the June 30, 2015 Order is the proper remedy.**

Due to the litany of errors set forth in this petition, the only proper remedy is an order from this Court directing Respondent to vacate the June 30, 2015 Order at issue. Relators hereby request that this Court issue an order directing Respondent to vacate the Order.

III. **RELATORS LACK AN ADEQUATE REMEDY BY APPEAL**

Respondent's ruling has exposed Relators to the very real possibility that the confidential documents and information will end up in the hands of unauthorized persons. In fact, on the same day they received an executed copy of the Order, counsel for Real Parties referred to and attached certain of the confidential documents to a brief submitted in the Federal Case. There is reason to believe they have or will

soon begin disseminating the confidential information to unnamed "potential litigants." In short, Relators are in danger of permanently losing their right to protect the confidential information. If the confidential information reaches unauthorized hands, an appellate court would not be able to cure the error in Respondent's Order. *See In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203 (Tex. 2004). Moreover, an appeal would not be able to relieve Relators from the effects of the Order in allowing for improper disclosure of confidential and private information. *See Kessell v. Bridewell*, 872 S.W.2d 837, 841 (Tex. App.—Waco 1994, orig. proceeding). Relators have no adequate remedy by appeal and mandamus is appropriate.

## PRAYER

Benevis, LLC, f/k/a NCDR, LLC, Dentistry of Brownsville, P.C., and Kool Smiles, P.C. respectfully request that the Court of Appeals grant its petition for writ of mandamus and direct Respondent to vacate the June 30, 2015 Order Granting Plaintiffs' Motion to Amend Stipulated Confidentiality Agreement and Protective Order.

Respectfully submitted,

**BENEVIS, LLC, F/K/A NCDR, LLC, DENTISTRY OF BROWNSVILLE, P.C., AND KOOL SMILES, P.C.**

By: */s/ Alan R. Vickery*

**SEDGWICK LLP**
Wayne B. Mason
Texas Bar No. 13158950
wayne.mason@sedgwicklaw.com
Alan R. Vickery
Texas Bar. No. 20571650
alan.vickery@sedgwicklaw.com
1717 Main Street, Suite 5400
Dallas, TX 75201
(469) 227-8200 Telephone
(469) 227-8004 Facsimile

**ATLAS, HALL & RODRIGUEZ, LLP**
Eduardo R. Rodriguez
Texas Bar No. 00000080
errodriguez@atlashall.com
50 W. Morrison Road, Suite A
Brownsville, TX 78520
Telephone (956) 574-9333
Facsimile (956) 574-9337

**ATTORNEYS FOR DEFENDANTS BENEVIS, LLC F/K/A NCDR, LLC, DENTISTRY OF BROWNSVILLE, P.C., AND KOOL SMILES, P.C.**

24

# CERTIFICATION OF FACTS

I hereby certify that I have reviewed the petition and conclude that every factual statement in the petition is supported by competent evidence included in the appendix or record.

*/s/ Alan R. Vickery*
ALAN R. VICKERY

## CERTIFICATE OF SERVICE

This is to certify that true and correct copies of the Petition for Writ of Mandamus, the Appendix, and the Sworn Record have been served *via* the Court's electronic filing system on Respondent and all counsel of record in the MDL litigation, as set forth below, on this the 7th day of July, 2015.

George W. Mauzé, II
MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 401 South
San Antonio, TX 78215
Telephone — (210) 354-3377
Facsimile — (210) 354-3909
gmauze@mauzelawfirm.com

R.D. "Bobby" Guerra
GUERRA, LEEDS, SABO &
HERNANDEZ PLLC
10213 N. 10th Street
McAllen, TX 78504
Telephone — (956) 383-4300
Facsimile — (956) 383-4304
rdguerra@guerraleeds.com

Michael E. Flanagan
LAW OFFICES OF MICHAEL E.
FLANAGAN
809 Chicago Avenue
McAllen, TX 78501
Telephone — (956) 683-0333
Facsimile — (956) 683-0222
mike@lomef.com
*Attorneys for Real Parties in Interest*

Bruce S. Campbell
State Bar No: 03694600
BRACKETT & ELLIS,
A Professional Corporation
100 Main Street
Fort Worth, TX 76102-3090
Telephone — (817) 338-1700
Facsimile — (817) 870-2265
bcampbell@belaw.com
*Attorneys for Defendant Jessie Trinh, DMD*

The Honorable Noe Gonzalez,
370th District Court
Hidalgo County Courthouse
100 N. Closner
Edinburg, TX 78529
*Respondent*

/s/ Alan R. Vickery
ALAN R. VICKERY

26

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the relevant parts of this petition contain 5,644 words according to the computer program used to draft the petition, which is less than the 15,000 word limit prescribed by Rule 9(i)(2)(B) of the Texas Rules of Appellate Procedure.

*/s/ Alan R. Vickery*
ALAN R. VICKERY

# AFFIDAVIT OF ALAN R. VICKERY

THE STATE OF TEXAS     §
                      §

COUNTY OF DALLAS     §

BEFORE ME, the undersigned notary, on this day personally appeared Alan R. Vickery, a person whose identity is known to me. After I administered an oath to Alan R. Vickery, he deposed and said:

1. "My name is Alan Vickery. I am more than eighteen (18) years of age and am fully competent to make this Affidavit. The facts stated herein are within my personal knowledge and are true and correct.

3. "The documents identified as Tabs 1-12 in the Sworn Record submitted with Relators' Petition for Writ of Mandamus are true and correct copies of the pleadings and orders filed and entered in the underlying lawsuit that pertain to this Petition for Writ of Mandamus.

4. "The documents identified as Tabs A – ZZ in the Appendix to Relators' Petition for Writ of Mandamus are true and correct copies of the pleadings, orders filed and entered in the underlying lawsuit that pertain to this Petition for Writ of Mandamus, and the authorities cited herein."

**FURTHER AFFIANT SAYETH NOT.**

_____
ALAN R. VICKERY

SUBSCRIBED AND SWORN TO BEFORE ME the undersigned authority on

this 7th day of July, 2015.



_Nancy S Bassi_

Notary Public in and for the State of Texas

My Commission expires:   _3-30-16_

[seal]

NO. _____

IN THE THIRTEENTH COURT OF APPEALS
EDINBURG, TEXAS

IN RE:

BENEVIS, LLC, DENTISTRY OF BROWNSVILLE, P.C., AND KOOL
SMILES, P.C.,

Relators.

From the 370th District Court of Hidalgo County, Texas
Cause No. C-0184-13-G
and
MDL Cause No. _____
The Honorable Noe Gonzalez, Judge Presiding

**APPENDIX TO
PETITION FOR WRIT OF MANDAMUS**

| **Description** | **Tab** |
|---|---|
| *Antu* Plaintiffs' Fourth Amended Original Petition | A |
| Stipulated Confidentiality Agreement and Protective Order | B |
| Motion for Transfer to Multidistrict Litigation Pretrial Court | C |
| *Antu* Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order, etc. | D |
| Defendants' Response to Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order, etc. | E |
| Defendants' Supplemental Brief in Response to Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order, etc. | F |
| Defendants' Response to Plaintiffs' [Supplemental] Memorandum of Law Regarding Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order, etc. | G |
| Plaintiffs' Memorandum of Law Regarding Plaintiffs' Motion to Amend | H |

| | |
|---|---|
| the Stipulated Confidentiality Agreement and Protective Order | |
| Order Granting Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order | I |
| *Able Supply Co. v. Moye* | J |
| *Aranda v. O'Neill* | K |
| *Automatic Drilling Machines, Inc. v. Miller* | L |
| *Crane v. Tunks* | M |
| *Eli Lilly & Co. v. Marshall* | N |
| *Garcia v. Peeples* | O |
| *In re Cerberus Capital Mgmt, LP* | P |
| *In re Champion Indus. Sales, LLC* | Q |
| *In re Living Ctrs. of Tex., Inc.* | R |
| *In re Prudential Ins. Co. of Am.* | S |
| *In re Van Waters and Rogers, Inc.* | T |
| *Ind. Foundation of the South v. Texas Indus. Acc. Bd.* | U |
| *Keene Corp. v. Caldwell* | V |
| *Kessell v. Bridewell* | W |
| *Walker v. Packer* | X |
| TEX. CONST. ART. 5, § 6 | Y |
| TEX. GOV'T CODE § 22.214(a) | Z |
| TEX. R. JUD. ADMIN. 13 | ZZ |

Cause No: C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU AS NEXT FRIEND OF ████████████████, A MINOR; SCARLETT AYALA AS NEXT FRIEND OF ████████████, A MINOR; GUADALUPE CEPEDA AS NEXT FRIEND OF ███████████, A MINOR; ANA LAURA CORNEJO AS NEXT FRIEND OF ███████████████████, A MINOR; MARIO CUELLAR AND PRISCILLA TRUJILLO AS NEXT FRIENDS OF ████ ██████, A MINOR; MARIA GAYTÁN AS NEXT FRIEND OF ██████████████████ A MINOR; ELIZABETH GONZALEZ AND MARCO REYES AS NEXT FRIENDS OF ██████████ █████, A MINOR; FRANCISCA GUZMAN AS NEXT FRIEND OF █████████████, A MINOR; ISMAEL MALDONADO AND ISABEL MALDONADO AS NEXT FRIENDS OF ████████████████, A MINOR; FREISI OLIVAR AS NEXT FRIEND OF █████████████████ A MINOR; MARY ROSALES AS NEXT FRIEND OF ███████████████, A MINOR; AND REYNOL SALINAS AS NEXT FRIEND OF ███████████████., A MINOR. PLAINTIFFS, | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | IN THE DISTRICT COURT |
| V. | § § § § | |
| NCDR, LLC d/b/a KOOL SMILES; DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES; KOOL SMILES, P.C.; AISHWARYA K. CHANDESH, D.D.S.; EDWARD HO, D.D.S.; RICHARD I. MANWARING, D.D.S.; AND MARC D. THOMAS, D.D.S. DEFENDANTS. | § § § § § § § § § § | 370th JUDICIAL DISTRICT<br><br>HIDALGO COUNTY, TEXAS |

## PLAINTIFFS' FOURTH AMENDED ORIGINAL PETITION

**TO THE HONORABLE NOE GONZALEZ, JUDGE PRESIDING:**

1

COME NOW Plaintiffs PAULA ANTU AS NEXT FRIEND OF ███████████ ███████ A MINOR; SCARLETT AYALA AS NEXT FRIEND OF ████████████, A MINOR; GUADALUPE CEPEDA AS NEXT FRIEND OF █████████████, A MINOR; ANA LAURA CORNEJO AS NEXT FRIEND OF ██████████████, A MINOR; MARIO CUELLAR AND PRISCILLA TRUJILLO AS NEXT FRIENDS OF █████ ██████████, A MINOR; MARIA GAYTÁN AS NEXT FRIEND OF ████████████, ██, A MINOR; ELIZABETH GONZALEZ AND MARCO REYES AS NEXT FRIENDS OF ██████████████, A MINOR; FRANCISCA GUZMAN AS NEXT FRIEND OF ████ █████████, A MINOR; ISMAEL MALDONADO AND ISABEL MALDONADO AS NEXT FRIENDS OF ██████████████████, A MINOR; FREISI OLIVAR AS NEXT FRIEND OF ████████████████ A MINOR; MARY ROSALES AS NEXT FRIEND OF █████████ █████████, A MINOR; AND REYNOL SALINAS AS NEXT FRIEND OF ███████████████ ██., A MINOR, (hereinafter referred to collectively as "Plaintiffs") and file Plaintiffs' Fourth Amended Original Petition complaining of NCDR, LLC d/b/a KOOL SMILES (hereinafter referred to as "NCDR"), KOOL SMILES, P.C. (hereinafter referred to as "KOOL SMILES, P.C."), DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES (hereinafter referred to as "DENTISTRY OF BROWNSVILLE") (Defendants NCDR, KOOL SMILES, P.C., and DENTISTRY OF BROWNSVILLE collectively referred to as "KOOL SMILES"), AISHWARYA K. CHANDESH, D.D.S. (hereinafter referred to as "DR. CHANDESH"), EDWARD HO, D.D.S. (hereinafter referred to as "DR. HO"), RICHARD I. MANWARING, D.D.S. (hereinafter referred to as "DR. MANWARING"), and MARC D. THOMAS, D.D.S. (hereinafter referred to as "DR. THOMAS) (all Defendants are hereinafter collectively referred

to as "DEFENDANTS") and for causes of action would show unto this Honorable Court as follows:

## I.
## DISCOVERY CONTROL PLAN

Pursuant to Texas Rules of Civil Procedure 190, discovery in this case is intended to be conducted under Level 3.

## II.
## PARTIES

Plaintiff PAULA ANTU is an individual and the natural parent of ██████████ ██████ Plaintiff brings this suit as next friend of ██████████████████, a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

Plaintiff SCARLETT AYALA is an individual and the natural parent of ████████ ██████. Plaintiff brings this suit as next friend of ████████████, a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

Plaintiff GUADALUPE CEPEDA is an individual and the natural parent of ███████ ██████ Plaintiff brings this suit as next friend of ████████████, a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

Plaintiff ANA LAURA CORNEJO is an individual and the natural parent of ██████ ████████████, Plaintiff brings this suit as next friend of ██████████ ███████ a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

Plaintiffs MARIO CUELLAR AND PRISCILLA TRUJILLO are individuals and the natural parents of ████████████. Plaintiffs bring this suit as next friends of ████████ ██████████, a minor. At all times relevant to this lawsuit, Plaintiffs resided in Hidalgo County, Texas.

Plaintiff MARIA GAYTÁN is an individual and the natural parent of ██████████ ████████ Plaintiff brings this suit as next friend of ████████████████ ██ a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

Plaintiffs ELIZABETH GONZALEZ AND MARCO REYES are individuals and the natural parents of ███████████████. Plaintiffs bring this suit as next friends of ███████████████ a minor. At all times relevant to this lawsuit, Plaintiffs resided in Hidalgo County, Texas.

Plaintiff FRANCISCA GUZMAN is an individual and the natural parent of ████ ████████. Plaintiff brings this suit as next friend of ███████████, a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

Plaintiffs ISMAEL MALDONADO AND ISABEL MALDONADO are individuals and the natural parents of ████████████████. Plaintiffs bring this suit as next friends of ████████████████, a minor. At all times relevant to this lawsuit, Plaintiffs resided in Hidalgo County, Texas.

Plaintiff FREISI OLIVAR is an individual and the natural parent of ████████████████, II. Plaintiff brings this suit as next friend of ████████████, II, a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

Plaintiff MARY ROSALES is an individual and the natural parent of ███████████. Plaintiff brings this suit as next friend of ████████████, a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

Plaintiff REYNOL SALINAS is an individual and the natural parent of ██████████ ████████ Plaintiff brings this suit as next friend of ████████████████ a minor. At all times relevant to this lawsuit, Plaintiff resided in Hidalgo County, Texas.

4

Defendant NCDR is, and at all times relevant to this lawsuit has been, a limited liability company formed in the State of Delaware with its principal office in Marietta, Georgia. NCDR is registered and duly authorized to transact business in the State of Texas. Said Defendant has appeared and answered herein.

Defendant DENTISTRY OF BROWNSVILLE is, and at all times relevant to this lawsuit has been, a professional corporation incorporated in the State of Texas. Said Defendant has appeared and answered herein.

Defendant KOOL SMILES, P.C. is, and at all times relevant to this lawsuit has been, a professional corporation incorporated in the State of Georgia. Said Defendant has appeared and answered herein.

Defendant DR. CHANDESH is an individual licensed to practice dentistry in the State of Texas. Said Defendant has appeared and answered herein.

Defendant DR. HO is an individual licensed to practice dentistry in the State of Texas. Said Defendant has appeared and answered herein.

Defendant DR. MANWARING is an individual licensed to practice dentistry in the State of Texas. Said Defendant has appeared and answered herein.

Defendant DR. THOMAS is an individual licensed to practice dentistry in the State of Texas. Said Defendant has appeared and answered herein.

## III.
## VENUE AND JURISDICTION

Venue properly rests in Hidalgo County, Texas, because such county is the county in which the Kool Smiles dental clinics, which treated the minor Plaintiffs, are located, the county in which most of the occurrences which give rise to this suit arose, and the county in which DR.

5

CHANDESH resides. This Court has jurisdiction because the amount in controversy exceeds the minimum jurisdictional limits of this Court.

## IV.
## NCDR IS ENGAGED IN THE CORPORATE PRACTICE OF DENTISTRY

### A. The Corporate Practice of Dentistry Is Strictly Prohibited In The State Of Texas.

Texas law prohibits a person not licensed to practice dentistry in Texas from owning, maintaining, operating, and/or controlling an office or place of business in which that person employs or engages, under any type of contract, another person to practice dentistry. Texas law further prohibits a person not licensed to practice dentistry in Texas from controlling, influencing, attempting to control or influence, or otherwise interfering with a dentist's professional judgment. TEX. OCC. CODE. ANN. §251.003(a). A violation of this statute is a felony.

### B. NCDR Manages, Operates, And/Or Controls The Kool Smiles Dental Clinics.

NCDR owns, maintains, operates, and/or controls more than one hundred (100) dental clinics doing business as Kool Smiles throughout the United States including the clinics in McAllen, Mission, and Weslaco, Texas. As confirmed by a judicial admission of NCDR and Dentistry of Brownsville, in their Original Complaint in NCDR, LLC, et al v. Mauzé & Bagby, PLLC, et al, case number 5:12-cv-36 pending in the United States District Court, Laredo Division wherein KOOL SMILES (which Plaintiffs expressly state collectively refers to NCDR, L.L.C., Dentistry of Brownsville, P.C. d/b/a KOOL SMILES and KS2 TX, P.C. d/b/a KOOL SMILES) the clinics are "owned, managed, and operated by Plaintiffs" (Exhibit "A" – Plaintiffs' Original Complaint, paragraph 13 – page 3). NCDR is not owned, managed, or operated by persons licensed to practice dentistry in Texas but, rather, is owned by entities of which

controlling interests are owned by Friedman Fleischer & Lowe, a private equity firm in San Francisco, California.

### C. The Kool Smiles Plan And Scheme.

KOOL SMILES, P.C., NCDR, its parent entities and owners, and DENTISTRY OF BROWNSVILLE, drafted and implemented an elaborate plan and scheme to generate as much taxpayer Medicaid revenue as possible per clinic, per dentist, per patient, and per visit.

To effectuate their plan and scheme, said Defendants elect to primarily prey on the most vulnerable members of our society, i.e., underprivileged, very young children. KOOL SMILES, P.C. hires general dentists, most of whom have recently completed dental school and have very little, if any, experience with pediatric patients. The dentists are assigned to clinics which primarily treat very young pediatric patients. KOOL SMILES, P.C., NCDR, and DENTISTRY OF BROWNSVILLE discourage the dentists from referring pediatric patients to pediatric dentists and their number of referrals are very closely monitored.

Further, KOOL SMILES, P.C. and NCDR closely track and monitor the production of each and every clinic and dentist and sets production goals for each dentist and revenue goals for each clinic. The goals are very specific and are based entirely upon production or collections rather than necessity for treatment or quality of care. For example, dentists are provided targets and instructions regarding the number of quadrants they should work on during each visit of each patient, the number of operative procedures per patient they should perform, and the number of operative procedures per day they should perform. If a dentist fails to reach these production targets, then the dentist is counseled, provided a performance improvement plan instructing said dentist to increase his or her production and specifying how said dentist should increase production, or terminated. If a dentist fails increase production, then the dentist is terminated.

7

KOOL SMILES, P.C. and NCDR train and indoctrinate the dentists to provide aggressive dental care to pediatric patients who have temporary teeth (commonly referred to as "baby teeth"), such as placing stainless steel crowns on teeth which are not indicated because: 1) the caries are so small that they can be simply observed (which will not produce revenue from Medicaid); or 2) the caries are so small that they can be treated with fillings (which will not produce as much revenue from Medicaid as stainless steel crowns); or 3) the teeth will soon exfoliate (fall out which will not produce any revenue from Medicaid).

KOOL SMILES, P.C. and NCDR train the dentists to perform many operative procedures on each patient in the shortest amount of time. To speed up the treatment time and increase production, the children are often physically restrained to papoose boards and physically held down while multiple operative procedures are performed on the same date. KOOL SMILES, P.C. and NCDR prohibit the use of oral conscious sedation, IV sedation, and general anesthesia in the Kool Smiles dental clinics. Thus, the dentists are not certified and/or do not possess permits by the State of Texas to administer oral conscious sedation, IV sedation, or general anesthesia. The decision not to use oral conscious sedation is that it increases treatment time. Therefore, the children undergoing dental operative procedures at Kool Smiles dental clinics do not receive interventions to relieve them of their fear and anxiety associated with dental operative procedures. Furthermore, Kool Smiles discourages the use of nitrous oxide to relieve fear, anxiety, and pain because its use increases treatment time and costs. Although many of the children undergoing dental operative procedures are obviously in distress, the dentists do not refer, defer, or terminate the treatment to relieve their distress but, rather, they restrain the children with papoose boards and otherwise to enable them to fulfill their production and revenue goals rather than fulfill the best interests of the minor children.

8

### D. The Players.

1.  <u>Friedman Fleischer & Lowe.</u>

Friedman Fleischer & Lowe is a private equity firm in San Francisco, California which manages hundreds of millions of dollars belonging to its investors, including large pensions and trusts. One of their investments is identified as "KOOL SMILES." Through some of their board of directors and businesses in which they own a significant interest, they actively participate in the operation and/or control of the dental clinics.

2.  <u>Kool Smiles Acquisition Corp. and Kool Smiles Holding Corp.</u>

Kool Smiles Holding Corp. owns 100% of Kool Smiles Acquisition Corp. Friedman Fleischer & Lowe, through several of its private equity funds, owns a controlling interest in Kool Smiles Holding Corp. Some dentists employed by Kool Smiles, P.C. also own interests in Kool Smiles Holding Corp.

3.  <u>NCDR, LLC.</u>

Through NCDR's board of directors, members of Friedman Fleischer & Lowe actively participate in the operation and control of Kool Smiles dental clinics. NCDR owns the "Kool Smiles" trademarks which are registered for general dentistry services. NCDR exercises substantial operation and/or control over the Kool Smiles dental clinics, such fact demonstrated by the following:

1. NCDR leases the space in which the dental clinics are located;
2. NCDR sub-leases the space to the professional corporations which own the dental clinics;
3. NCDR restricts and controls the sale of the dental clinics;
4. NCDR participates in the tracking and monitoring of the production of the dental clinics and dentists who work at the dental clinics;
5. NCDR participates in setting production quotas and goals for the dentists who work at the dental clinics;
6. NCDR participates in setting production goals for the dental clinics;
7. NCDR participates in setting revenue goals for the dental clinics;

9

8. NCDR recruits and hires dental assistants, office managers, community service personnel, and other personnel who work at the dental clinics;
9. NCDR participates in the hiring, staffing, training, supervision, and termination of dentists who work at the dental clinics;
10. NCDR created and maintains the electronic clinical records;
11. NCDR prepares the invoices, including Medicaid invoices, for the dental clinics;
12. NCDR collects the accounts receivable for the dental clinics;
13. NCDR pays and distributes the accounts payable for the dental clinics;
14. NCDR selects the professional liability insurer and pays the premiums for the dentists who work at the dental clinics;
15. NCDR hires marketing personnel and provides the advertising for the dental clinics;
16. NCDR hires and employs the corporate personnel responsible for marketing, management, and financial operations of the dental clinics;
17. NCDR participates in the writing, implementing, and enforcing of policies, procedures, and protocols for the dental clinics; and
18. NCDR participates in clinical decisions.

4.    Dentistry of Brownsville, P.C. d/b/a Kool Smiles.

DENTISTRY OF BROWNSVILLE is a professional corporation incorporated in the State of Texas, Tu Minh Tran, DDS is the registered owner. DENTISTRY OF BROWNSVILLE purports to own clinics in McAllen, Weslaco, and Mission, Texas. Dr. Tran, and three other dentists, hold themselves out as the owners of all of the KOOL SMILES dental clinics in the United States. Dr. Tran does not reside in the State of Texas and does not practice dentistry, on any regular basis, at any of the KOOL SMILES clinics. The clinics are camouflaged as local clinics formed as professional corporations in Texas owned by dentists licensed in Texas with the intention of giving the public and the government an appearance of compliance with state laws which prohibit the corporate practice of dentistry. The capital necessary to open the dental clinics and the risk associated with the business is borne by NCDR and investors who are not licensed dentists. Further, NCDR controls the sale of any dental clinics and pays the purported owner $100.00 if a sale is permitted by NCDR. This elaborate scheme of multiple layers of entities is simply for no other purpose than to try to circumvent the prohibition against the

corporate practice of dentistry. In reality and fact, the KOOL SMILES clinics are owned, maintained, operated, and/or controlled by out-of-state persons not licensed to practice dentistry in the State of Texas who receive substantial revenue from the Kool Smiles dental clinics.

5.      Kool Smiles, P.C.

KOOL SMILES, P.C. is a professional corporation incorporated in the State of Georgia. Its principal place of business is at the same address and in the same office as NCDR. Tu Minh Tran, DDS is the registered owner of KOOL SMILES, P.C. KOOL SMILES, P.C. is not registered to transact business in the State of Texas with the Texas Secretary of State. KOOL SMILES, P.C. participates in the overall plan and scheme as follows:

1. hiring the dentists and dental hygienists who work at KOOL SMILES clinics;
2. training the dentists who work at KOOL SMILES clinics; and
3. supervising the dentists who work at KOOL SMILES clinics.

6.      The Children Victims.

Most of the children treated at the dental clinics are very young and have baby teeth. More often than not the children do not have any histories of pain or complaints before arriving at one of these dental clinics. Their parents enter the clinic anticipating their children will receive examinations, oral hygiene instructions, and have their teeth cleaned. The children and their parents trust the dental professionals to honestly recommend and perform only necessary dental services and to perform the dental services appropriately and, as represented, in a manner that insures their children's comfort.

After examination and x-rays, it is the routine practice, plan, intent, scheme, and course of action of KOOL SMILES to misdiagnose the existence and/or severity of cavities and recommend dental operative procedures, most commonly consisting of pulpotomies and stainless steel crowns. Routinely, many of these operative procedures are unnecessary and/or excessive

11

but they allow KOOL SMILES, P.C., NCDR, and DENTISTRY OF BROWNSVILLE to maximize production per patient and meet their revenue goals. The staff is trained to "sell" the treatment plans to the parents.

After persuading the children's parents that the treatment recommended is necessary and that their children will be comfortable, the dental clinics secure the parents' consents to treatment and use of physical restraint often informing them that restraint most likely will not be necessary and, if necessary, has no risks.

However, the dental clinics do, in fact, intend to restrain many of the children because it requires less time than less intrusive behavior guidance techniques and allows the dentist to increase production and maximize revenues. Children are strapped to papoose boards and physically restrained otherwise (often including blind-folds, socks over their hands and arms, and one or more employees physically holding their head and/or feet). Because of the loss of freedom of movement and potential physical and emotional trauma, physical restraint to a papoose board should only be used in dentistry as a last resort when all other less restrictive behavior guidance techniques have been reasonably attempted and failed and the dental treatment is immediately necessary due to trauma, advancing disease, or infection. After the parents' broad consent is signed, the dental clinics often prohibit or discourage the children's parents from being present in the treatment room. The treatment which routinely includes dental operative procedures, no sedation, no nitrous oxide, and restraint with a papoose board, socks, blindfolds, and staff, often causes the children so much physical and emotional trauma that they are crying, screaming, struggling, and terrified. Many children are so traumatized that they lose control of their bladders and/or vomit. The dentists, rather than postpone or terminate the procedures for the safety and comfort of the children, press on with production. Some of the

dental operative procedures were inadequately performed, such requiring further treatment and/or causing infections and abscesses which necessitated subsequent extractions.

The children arrive to the dental clinics trusting health care professionals and smiling only to leave distrusting dentists and without a smile. The children leave in pain, discomfort, distress, and anguish. The children are embarrassed because their disfigured mouths have stainless steel crowns, which often are the subject of ridicule. The children fight their parents about going to dentists because of their traumatic experience at these dental clinics. As a result of the traumatic experience, many of these victimized children, as adults, will be fearful of dentists and dental procedures which will reduce the likelihood of future visits to dental professionals. The trauma they endured is likely to affect them the rest of their lives and is likely to make them reluctant to take their children to dental professionals.

### E. The Motive

KOOL SMILES, P.C., NCDR, and DENTISTRY OF BROWNSVILLE's plan and scheme is to fulfill its motive; to bilk Medicaid for millions and millions of dollars at the cost of taxpayers and suffering of underprivileged children. Defendants have collected, and continue to collect, tens of millions of taxpayer dollars in Texas every year.

## V.
## FACTUAL BACKGROUND PERTAINING TO PLAINTIFFS

████████████, a 3 year old boy, presented to the Kool Smiles dental clinic in Mission, Texas on or about January 4, 2011 and on or about January 7, 2011. After examination and radiographs, one or more DEFENDANTS represented that ██████ had multiple cavities which necessitated stainless steel crowns. On or about January 4, 2011, ██████was not administered oral conscious sedation or nitrous oxide. He was physically restrained with a papoose board. DR. CHANDESH proceeded to administer multiple injections of local anesthetic and then

13

prepared baby teeth A, B, S, & T for, and cemented, stainless steel crowns. On or about January 7, 2011, ████████was not administered oral conscious sedation or nitrous oxide. He was physically restrained with a papoose board. DR. CHANDESH proceeded to administer multiple injections of local anesthetic and then prepared baby teeth I, J, K, & L for, and cemented, stainless steel crowns. Medicaid was billed, and paid for, dental services and procedures, including nine (9) stainless steel crowns, when only eight (8) stainless steel crowns were placed, some of which were not necessary.

████████████████ a 4 year old boy, presented to the Kool Smiles dental clinic in McAllen, Texas on or about October 12, 2010 and on or about November 13, 2010. After examination and radiographs, one or more DEFENDANTS represented that ████████ had multiple cavities which necessitated a pulpotomy and stainless steel crowns. On or about October 12, 2010, ████████ was not administered oral conscious sedation or nitrous oxide. He was physically restrained with a papoose board. DR. TRAYNOR proceeded to administer multiple injections of local anesthetic and then performed a pulpotomy on baby tooth I and prepared baby teeth I & J for, and cemented, stainless steel crowns. On or about November 13, 2010, ████████ was not administered oral conscious sedation or nitrous oxide. He was physically restrained with a papoose board. DR. MANWARING proceeded to administer multiple injections of local anesthetic and then prepared baby teeth D & E for, and cemented, stainless steel crowns. Medicaid was billed, and paid for, the dental services and procedures, some of which were not necessary.

████████████████, a 3 ½ year old boy, presented to the Kool Smiles dental clinic in McAllen, Texas on or about April 29, 2009, on or about June 2, 2009, and on or about October 8, 2009. After examinations and radiographs, one or more DEFENDANTS represented that

████had multiple cavities which necessitated pulpotomies and stainless steel crowns. On or about April 28, 2009, ████ was not administered oral conscious sedation or nitrous oxide. He was physically restrained with a papoose board. DR. HO proceeded to administer multiple injections of local anesthetic and then performed pulptomies on baby teeth F, G, & T and prepared baby teeth B, D, E, F, G, S, & T for, and cemented, stainless steel crowns. On or about June 2, 2009, ████ was not administered oral conscious sedation or nitrous oxide. DR. HO proceeded to administer multiple injections of local anesthetic and then performed a pulptomy on baby tooth K and prepared baby teeth K & L for, and cemented, stainless steel crowns. On or about October 8, 2009, ████ was not administered oral conscious sedation or nitrous oxide. He was physically restrained with a papoose board. DR. THOMAS proceeded to administer multiple injections of local anesthetic and then prepared baby teeth I & J for, and cemented, stainless steel crowns. Medicaid was billed, and paid for, the dental services and procedures, some of which were not necessary.

████████████, a 5 year old girl, presented to the Kool Smiles dental clinic in Mission, Texas on or about July 13, 2009 and on or about July 21, 2009. After examination and radiographs, one or more DEFENDANTS represented that ██████ had multiple cavities which necessitated stainless steel crowns. On or about July 13, 2009, ███████was not administered oral conscious sedation or nitrous oxide. She was physically restrained with a papoose board. DR. THOMAS proceeded to administer multiple injections of local anesthetic and then prepared baby teeth A, B, C, D, E, F, G, R, S, & T for, and cemented, stainless steel crowns. On or about July 21, 2009,██████ was not administered oral conscious sedation or nitrous oxide. She was physically restrained with a papoose board. DR. THOMAS proceeded to administer multiple injections of local anesthetic. Dr. THOMAS then prepared baby teeth H, I,

K, L, & M for, and cemented, stainless steel crowns. Medicaid was billed, and paid for, the dental services and procedures, some of which were not necessary.

████████, a 7 year old girl, presented to the Kool Smiles dental clinic in McAllen, Texas on or about November 21, 2011 and on or about November 30, 2011. After examination and radiographs, one or more DEFENDANTS represented that ███ had multiple cavities which necessitated stainless steel crowns. ███ was not administered oral conscious sedation or nitrous oxide. DR. MANWARING administered multiple injections of local anesthetic and then prepared baby teeth J, K, & L for, and cemented, stainless steel crowns. Medicaid was billed, and paid for, the dental services and procedures, some of which were not necessary.

████████, a 2 year old girl, presented to the Kool Smiles dental clinic in McAllen, Texas on or about July 22, 2009 and on or about August 13, 2009. After examination and radiographs, one or more DEFENDANTS represented that ████ had multiple cavities which necessitated pulpotomies and stainless steel crowns. On or about July 22, 2009 Johana was not administered oral conscious sedation or nitrous oxide. She was physically restrained with a papoose board. DR. HO proceeded to administer multiple injections of local anesthetic and then performed a pulpotomy on baby tooth S and prepared baby teeth N, O, P, Q, & S for, and cemented, stainless steel crowns. On or about August 13, 2009 ████ was not administered oral conscious sedation or nitrous oxide. She was physically restrained with a papoose board. DR. HO proceeded to administer multiple injections of local anesthetic and then performed pulpotomies on baby teeth D, E, F, G, & L and prepared baby teeth D, E, F, G, & L for, and cemented, stainless steel crowns. Medicaid was billed, and paid for, the dental services and procedures, many of which were not necessary.

16

███████████, a 5 year old girl, presented to the Kool Smiles dental clinic in McAllen, Texas on or about July 16, 2009 and on or about August 5, 2009. After examinations and radiographs, one or more DEFENDANTS represented that ██████ had multiple cavities which necessitated pulpotomies and stainless steel crowns. On or about July 16, 2009, ███████ was not administered oral conscious sedation or nitrous oxide. She was physically restrained with a papoose board. DR. HO proceeded to administer multiple injections of local anesthetic and then performed a pulpotomy on baby tooth A and prepared baby teeth A, B, S, & T for, and cemented, stainless steel crowns. On or about August 5, 2009, ███████ was not administered oral conscious sedation or nitrous oxide. She was physically restrained with a papoose board. DR. HO proceeded to administer multiple injections of local anesthetic and then performed a pulpotomy on baby tooth I and prepared baby teeth I, J, K, & L for, and cemented, stainless steel crowns. Medicaid was billed, and paid for, the dental services and procedures, some of which were not necessary.

███████████, a 5 year old girl, presented to the Kool Smiles dental clinic in Mission, Texas on or about July 6, 2011 and on or about July 8, 2011. After examinations and radiographs, one or more DEFENDANTS represented that ██████ had multiple cavities which necessitated stainless steel crowns. On or about July 6, 2011, ███████ was not administered oral conscious sedation or nitrous oxide. She was physically restrained with a papoose board. DR. CHANDESH proceeded to administer multiple injections of local anesthetic and then prepared baby teeth A, B, S, & T for, and cemented, stainless steel crowns. On or about July 8, 2011, ██████ was not administered oral conscious sedation or nitrous oxide. She was physically restrained with a papoose board. DR. CHANDESH proceeded to administer multiple injections of local anesthetic and then prepared baby teeth I, J, K, & L for, and cemented,

17

stainless steel crowns. Medicaid was billed, and paid for, the dental services and procedures, some of which were not necessary.

█████████, a 2 year old boy, presented to the Kool Smiles dental clinic in Mission, Texas on or about September 29, 2011, on or about October 5, 2011, and on or about October 10, 2011. After examinations and radiographs, one or more DEFENDANTS represented that ███ had multiple cavities which necessitated stainless steel crowns. On or about October 5, 2011, ████ was not administered oral conscious sedation or nitrous oxide. He was physically restrained with a papoose board. DR. CHANDESH proceeded to administer multiple injections of local anesthetic and then DR. CHANDESH prepared baby teeth E, F, G, S, & T for, and cemented, stainless steel crowns. On or about October 10, 2011, ████ was not administered oral conscious sedation or nitrous oxide. He was physically restrained with a papoose board. DR. CHANDESH proceeded to administer multiple injections of local anesthetic and then prepared baby teeth B, C, H, & I for, and cemented, stainless steel crowns. Medicaid was billed, and paid for, the dental services and procedures, some of which were not necessary.

███████████., a 5 ½ year old boy, presented to the Kool Smiles dental clinic in Mission, Texas on or about January 21, 2009 and on or about September 10, 2010. After examinations and radiographs, one or more DEFENDANTS represented that ██████had multiple cavities which necessitated pulpotomies and stainless steel crowns. On or about January 21, 2009, ████ was not administered oral conscious sedation or nitrous oxide. He was physically restrained with a papoose board. DR. THOMAS proceeded to administer multiple injections of local anesthetic and then performed pulpotomies on baby teeth I, J, K & L and prepared baby teeth E, F, I, J, K, & L for, and cemented, stainless steel crowns. On or about September 10, 2010, DR. CHANDESH re-performed the pulpotomy, and replaced the stainless

18

steel crown, on baby tooth K. Medicaid was billed, and paid for the dental services and procedures, some of which were not necessary and two of which were necessary because of the previously poorly performed pulpotomy on tooth K.

 a 5 year old boy, presented to the Kool Smiles dental clinic in Mission, Texas on or about July 29, 2009. After examination and radiographs, one or more DEFENDANTS represented that ████ had multiple cavities and necessitated stainless steel crowns. ████ was not administered oral conscious sedation or nitrous oxide. He was physically restrained with a papoose board. DR. THOMAS proceeded to administer multiple injections of local anesthetic and then prepared baby teeth I, L, & K for, and cemented, stainless steel crowns. Medicaid was billed, and paid for, the dental services and procedures, some of which were not necessary.

████, a 4 year old boy, presented to the Kool Smiles dental clinic in McAllen, Texas on or about August 10, 2009. After examination and radiographs, one or more DEFENDANTS represented that ████ had multiple cavities which necessitated stainless steel crowns. ████ was not administered oral conscious sedation or nitrous oxide. He was physically restrained with a papoose board. DR. HO proceeded to administer multiple injections of local anesthetic and then prepared baby teeth A, B, S, & T for, and cemented, stainless steel crowns. Medicaid was billed, and paid for, the dental services and procedures, some of which were not necessary.

**VI.**
**DEFENDANT KOOL SMILES, P.C. AND DENTISTRY OF BROWNSVILLE'S**
**VICARIOUS LIABILITY FOR THE NEGLIGENCE**
**OF THE DENTISTS WHO PROVIDED DENTAL SERVICES TO PLAINTIFFS'**
**MINOR CHILDREN**

19

KOOL SMILES, P.C. is liable for the negligence of DR. CHANDESH, DR. HO, DR. MANWARING, AND DR. THOMAS because at all times relevant hereto, said dentists who provided the dental treatment to Plaintiffs' minor children were employees of KOOL SMILES, P.C. acting within the course and scope of their employment. Further, DENTISTRY OF BROWNSVILLE is liable for the negligence of DR. CHANDESH, DR. HO, DR. MANWARING, AND DR. THOMAS because at all times relevant hereto, said dentists who provided the dental treatment to Plaintiffs' minor children were borrowed servants, actual agents, apparent agents, or ostensible agents of DENTISTRY OF BROWNSVILLE acting within the course and scope of their employment or agency.

## VII.
## DEFENDANT KOOL SMILES, P.C.'S NEGLIGENCE

KOOL SMILES, P.C., by and through its employees and agents including, but not limited to, DRS. CHANDESH, HO, MANWARING & THOMAS, owed a general duty of care to Plaintiffs' minor children to provide dental services in conformity with the applicable minimum standards of care which required them to exercise ordinary care, that is to do that which dentists of ordinary prudence would have done under the same or similar circumstances. KOOL SMILES, P.C. breached its duties by engaging in the following acts and/or omissions to act:

1. failing to reasonably and prudently train and supervise DRS. THOMAS, MANWARING, MATHISEN, HO, and NANVA in their examinations, interpretation of radiographs, treatment planning, behavior guidance techniques, clinical pain management, and performance of dental operative procedures on pediatric patients;
2. training DRS. THOMAS, MANWARING, MATHISEN, HO, and NANVA to use physical restraints which were not indicated;
3. discouraging DRS. THOMAS, MANWARING, MATHISEN, HO, and NANVA from deferring and/or referring pediatric patients necessitating advanced behavior guidance techniques; and
4. encouraging DRS. THOMAS, MANWARING, MATHISEN, HO, and NANVA to perform unnecessary and excessive dental procedures by establishing quotas based upon production and revenue rather than the best interests of the minor Plaintiffs.

20

Such acts and/or omissions to act of KOOL SMILES, P.C., whether taken singularly or collectively, constitute negligence and a direct and proximate cause of the injuries and damages of Plaintiffs' minor children, for which they herein seek recovery.

## VIII.
## DEFENDANT NCDR'S NEGLIGENCE

NCDR is a health care provider under Texas law. Thus, NCDR, by and through its employees and/or agents, owed a general duty of care to Plaintiffs' minor children to provide dental services in conformity with the applicable minimum standards of care which required them to exercise ordinary care, that is to do that which a dental service organization of ordinary prudence would have done under the same or similar circumstances. NCDR breached its duties by participating in the ownership, maintenance, operation, and/or control of the dental clinics and in controlling, influencing, attempting to control or influence, or otherwise interfering with the dentists' professional judgment. More specifically, NCDR engaged in the following acts which demonstrate its ownership, maintenance, operation, and/or control of the dental clinics:

a. NCDR leased the space in which the dental clinics are located;
b. NCDR sub-leased the space to the professional corporations which own the dental clinics;
c. NCDR restricted and controls the sale of the dental clinics;
d. NCDR participated in the tracking and monitoring of the production of the dental clinics and dentists who work at the dental clinics;
e. NCDR participated in setting production quotas and goals for the dentists who work at the dental clinics;
f. NCDR participated in setting production goals for the dental clinics;
g. NCDR participated in setting revenue goals for the dental clinics;
h. NCDR recruited and hired dental assistants, office managers, community service personnel, and other personnel who work at the dental clinics;
i. NCDR participated in the hiring, staffing, training, supervision, and termination of dentists who work at the dental clinics;
j. NCDR created and maintains the electronic clinical records;
k. NCDR prepared the invoices, including Medicaid invoices, for the dental clinics;
l. NCDR collected the accounts receivable for the dental clinics;
m. NCDR paid and distributed the accounts payable for the dental clinics;

21

n. NCDR selected the professional liability insurer and paid the premiums for the dentists who work at the dental clinics;

o. NCDR hired marketing personnel and provided the advertising of the dental clinics;

p. NCDR hired and employed the corporate personnel responsible for marketing, management, and financial operations of the dental clinics;

q. NCDR participated in the writing, implementing, and enforcing of policies, procedures, and protocols for the dental clinics; and

r. NCDR participated in clinical decisions.

Such acts and/or omissions to act of NCDR, whether taken singularly or collectively, constitute negligence and a direct and proximate cause of the injuries and damages of Plaintiffs' minor children, for which they herein seek recovery.

## IX.
## DEFENDANT DENTISTRY OF BROWNSVILLE'S NEGLIGENCE

DENTISTRY OF BROWNSVILLE, by and through its borrowed servants, actual agents, apparent agents, and/or ostensible agents, owed a general duty of care to Plaintiffs' minor children to provide dental services in conformity with the applicable minimum standards of care which required it to exercise ordinary care, that is to do that which dentists of ordinary prudence would have done under the same or similar circumstances. DENTISTRY OF BROWNSVILLE breached its duties by engaging in the following acts and/or omissions to act:

1. failing to reasonably and prudently train and supervise DRS. CHANDESH, HO, MANWARING & THOMAS in their examinations, interpretation of radiographs, treatment planning, behavior guidance techniques, clinical pain management, and performance of dental procedures on pediatric patients;

2. training DRS. CHANDESH, HO, MANWARING & THOMAS to use physical restraints which were not indicated;

3. discouraging DRS. CHANDESH, HO, MANWARING & THOMAS from deferring and/or referring pediatric patients necessitating advanced behavior guidance techniques;

4. encouraging DRS. CHANDESH, HO, MANWARING & THOMAS to perform unnecessary and excessive dental procedures by establishing quotas based upon production and revenue rather than the best interests of the minor Plaintiffs; and

5. permitting NCDR to participate in the ownership, maintenance, operation, and/or control of the dental clinics and permitting NCDR to participate in controlling,

influencing, attempting to control or influence, or otherwise interfering with the dentists' professional judgment as follows:

a. NCDR participated in the tracking and monitoring of the production of the dental clinics and dentists who work at the dental clinics;

b. NCDR sub-leased the space to the professional corporations which own the dental clinics and charged 12% of the gross revenue;

c. NCDR charged a monthly management fee which was retroactively adjusted;

d. NCDR charged all of its direct costs and a 21% override;

e. NCDR restricted and controlled the sale of the dental clinics;

f. NCDR participated in setting production quotas and goals for the dentists who work at the dental clinics;

g. NCDR participated in setting production goals for the dental clinics;

h. NCDR participated in setting revenue goals for the dental clinics;

i. NCDR hired and employed corporate personnel responsible for management operations of the dental clinics;

j. NCDR participated in the writing, implementing, and enforcing of policies, procedures, and protocols for the dental clinics; and

k. NCDR participated in clinical decisions.

Such acts and/or omissions to act of DENTISTRY OF BROWNSVILLE, whether taken singularly or collectively, constitute negligence and a direct and proximate cause of the injuries and damages of Plaintiffs' minor children, for which they herein seek recovery.

## X.
## JOINT ENTERPRISE OF NCDR, KOOL SMILES, P.C., and DENTISTRY OF BROWNSVILLE

Defendants, NCDR, KOOL SMILES, P.C., and DENTISTRY OF BROWNSVILLE entered into and operated a joint enterprise or endeavor under agreements, express and/or implied, to generate and share revenue from dental operative procedures and services performed at Kool Smiles dental clinics in Mission and McAllen, Texas. NCDR, KOOL SMILES, P.C., and DENTISTRY OF BROWNSVILLE's common purpose was to generate as much revenue and income as possible from dental operative procedures and services performed on underprivileged, Medicaid-eligible children, including Plaintiffs' minor children, at Kool Smiles dental clinics by maximizing the number of dental operative procedures performed per clinic, per

23

dentist, per patient, and per visit. NCDR, KOOL SMILES, P.C., and DENTISTRY OF BROWNSVILLE shared income and revenue generated from the dental procedures performed on Plaintiffs' minor children and other children at KOOL SMILES dental clinics in Mission and McAllen, Texas, and thus created a community of pecuniary interest in the purpose of the joint enterprise. NCDR, KOOL SMILES, P.C., and DENTISTRY OF BROWNSVILLE each had an equal right to a voice in the direction of the enterprise, which gave them an equal right of management, operation, and control in the enterprise. Because of their joint enterprise, NCDR, KOOL SMILES, P.C., and DENTISTRY OF BROWNSVILLE should be held jointly and severally liable for the occurrences in question and Plaintiffs' minor children's resulting injuries.

## XI.
## DEFENDANT DR. CHANDESH'S NEGLIGENCE

DR. CHANDESH owed a general duty of care to Plaintiffs' minor children ███████ ████████████████████████████████ to provide dental services in conformity with the applicable minimum standards of care which required her to exercise ordinary care, that is to do that which a dentist of ordinary prudence would have done under the same or similar circumstances. DR. CHANDESH breached her duties by engaging in the following acts and/or omissions to act:

1. misdiagnosing the existence and/or severity of cavities;
2. providing unnecessary and excessive dental treatment;
3. failing to appropriately utilize behavior guidance techniques;
4. failing to appropriately manage clinical pain, anxiety, and fear;
5. failing to defer or refer treatment;
6. unnecessarily restraining patients; and
7. failing to otherwise render dental attention, care, and treatment in accordance with the applicable standard of care as reasonably prudent dentists would under the same or similar circumstances.

24

Such acts and/or omissions to act of DR. CHANDESH, whether taken singularly or collectively, constitute negligence and a direct and proximate cause of the injuries and damages of said Plaintiffs' minor children, for which they herein seek recovery.

## XII.
## DEFENDANT DR. HO'S NEGLIGENCE

DR. HO owed a general duty of care to Plaintiffs' minor children █████████████ ██████████████████████████████ to provide dental services in conformity with the applicable minimum standards of care which required him to exercise ordinary care, that is to do that which a dentist of ordinary prudence would have done under the same or similar circumstances. DR. HO breached his duties by engaging in the following acts and/or omissions to act:

1. misdiagnosing the existence and/or severity of cavities;
2. providing unnecessary and excessive dental treatment;
3. failing to appropriately utilize behavior guidance techniques;
4. failing to appropriately manage clinical pain, anxiety, and fear;
5. failing to defer or refer treatment;
6. unnecessarily restraining patients; and
7. failing to otherwise render dental attention, care, and treatment in accordance with the applicable standard of care as reasonably prudent dentists would under the same or similar circumstances.

Such acts and/or omissions to act of DR. HO, whether taken singularly or collectively, constitute negligence and a direct and proximate cause of the injuries and damages of said Plaintiffs' minor children, for which they herein seek recovery.

## XIII.
## DEFENDANT DR. MANWARING'S NEGLIGENCE

DR. MANWARING owed a general duty of care to Plaintiffs' minor children ███ ██████████ ███ █████ to provide dental services in conformity with the applicable minimum standards of care which required him to exercise ordinary care, that is to do that which

25

a dentist of ordinary prudence would have done under the same or similar circumstances. DR. MANWARING breached his duties by engaging in the following acts and/or omissions to act:

1. misdiagnosing the existence and/or severity of cavities;
2. providing unnecessary and excessive dental treatment;
3. failing to appropriately utilize behavior guidance techniques;
4. failing to appropriately manage clinical pain, anxiety, and fear;
5. failing to defer or refer treatment;
6. unnecessarily restraining patients; and
7. failing to otherwise render dental attention, care, and treatment in accordance with the applicable standard of care as reasonably prudent dentists would under the same or similar circumstances.

Such acts and/or omissions to act of DR. MANWARING, whether taken singularly or collectively, constitute negligence and a direct and proximate cause of the injuries and damages of said Plaintiffs' minor children, for which they herein seek recovery.

## XIV.
## DEFENDANT DR. THOMAS' NEGLIGENCE

DR. THOMAS owed a general duty of care to Plaintiffs' minor children ████████ ████████████████████████████████████████ to provide dental services in conformity with the applicable minimum standards of care which required him to exercise ordinary care, that is to do that which a dentist of ordinary prudence would have done under the same or similar circumstances. DR. THOMAS breached his duties by engaging in the following acts and/or omissions to act:

1. misdiagnosing the existence and/or severity of cavities;
2. providing unnecessary and excessive dental treatment;
3. failing to appropriately utilize behavior guidance techniques;
4. failing to appropriately manage clinical pain, anxiety, and fear;
5. failing to defer or refer treatment;
6. unnecessarily restraining patients; and
7. failing to otherwise render dental attention, care, and treatment in accordance with the applicable standard of care as reasonably prudent dentists would under the same or similar circumstances.

Such acts and/or omissions to act of DR. THOMAS, whether taken singularly or collectively, constitute negligence and a direct and proximate cause of the injuries and damages of said Plaintiffs' minor children, for which they herein seek recovery.

## XV.
## GROSS NEGLIGENCE

The negligent acts and/or omissions to act of NCDR, KOOL SMILES, P.C., DENTISTRY OF BROWNSVILLE and DRS. CHANDESH, HO, MANWARING & THOMAS specified in paragraphs VII – IX and XI – XIV above, which are hereby fully incorporated, constitute more than momentary thoughtlessness, inadvertence or error of judgment. Such negligence demonstrates such an entire want of care as to establish that the acts and/or omissions to act were the result of actual conscious indifference to the rights, welfare or safety of Plaintiffs. Further, the negligent acts and/or omissions of NCDR, KOOL SMILES, P.C., and DENTISTRY OF BROWNSVILLE were engaged in by vice principals and/or persons in managerial capacities of said entities.

Such gross negligence was a proximate cause of Plaintiffs' minor children's injuries and damages and, thus, Plaintiffs seek recovery of punitive or exemplary damages.

## XVI.
## CIVIL CONSPIRACY

Prior to the rendition of dental services to Plaintiffs' minor children, one or more directors, officers, and/or other employees in a managerial capacity of KOOL SMILES, P.C., acting within the course and scope of employment, conspired with one or more directors, officers, and/or other employees in a managerial capacity of NCDR, acting within the course and scope of employment, and with one or more directors, officers, and/or other employees in a managerial capacity of DENTISTRY OF BROWNSVILLE, acting within the course and scope

27

of employment, to, and did, engage in a routine plan, scheme, course and pattern of practice to increase production and revenue of dentists working at KOOL SMILES clinics by establishing a plan and practice of misdiagnosing the existence and/or severity of cavities, providing unnecessary and/or excessive dental operative procedures, and unnecessarily physically restraining children rather than defer or refer treatment. Said officers, directors, and employees, acting in managerial capacities on behalf of Defendants had a meeting of their minds in regards to their routine plan, scheme, course, and pattern of practice which had an unlawful purpose or a lawful purpose to be accomplished by unlawful means.

More specifically, the purpose of their plan was for NCDR to engage in the unlawful corporate practice of dentistry to generate revenue for persons who are not licensed to practice dentistry. NCDR charged the dental clinics 12% of gross revenue as rent, a monthly fee for management which was often modified retroactively, all of its direct costs, and a 21% override of its direct costs. Additionally, NCDR and the dentists employed by Kool Smiles entered into an agreement wherein dentists assigned any interest in federal financial incentives under HITECH, a program which offered financial incentives for health are providers to convert to electronic records. Although NCDR, not the dentists, created and maintained the dental records, and already had an electronic record program in place, said Defendant received millions of dollars of financial incentives from the government. A further purpose of their plan was to increase revenue from Medicaid by increasing the number of dental operative procedures per dentist, per patient, and per day, many of such dental operative procedures being unnecessary and, thus, not entitled to Medicaid reimbursement. Further, said Defendants, by and through their directors, officers and employees utilized an unlawful means (i.e., the corporate practice of dentistry) to fulfill its purpose of generating revenue for persons who are not licensed to practice

28

dentistry. Said civil conspiracy was a direct and proximate cause of Plaintiffs' minor children's injuries and damages.

## XVII.
## FRAUD

KOOL SMILES, P.C., DENTISTRY OF BROWNSVILLE and DRS. CHANDESH, HO, MANWARING & THOMAS were in a special relationship of trust and confidence with Plaintiffs and their minor children. DEFENDANTS, by and through their employees and/or agents, had a duty to accurately represent the qualifications of its dentists, Plaintiffs' minor children's diagnoses, necessary treatment, and their practice of using physical restraint rather than deferral and/or referral. Plaintiffs relied upon and trusted DEFENDANTS. DEFENDANTS took undue and unconscionable advantage of Plaintiffs by making material representations regarding the existence, location, size, and number of cavities, the necessity for pulpotomies, the necessity for stainless steel crowns, the necessity for physical restraints, and the risks associated with the use of the papoose board for physical restraint. Such representations were false and DEFENDANTS were aware of the falsity at the time of such representations. Said misrepresentations were made with the intent of inducing Plaintiffs to obtain and consent to DEFENDANTS' dental services. Plaintiffs reasonably and justifiably relied upon said material misrepresentations, which are a direct and proximate cause of damages sustained by Plaintiffs' minor children for which Plaintiffs herein seek recovery.

## XVIII.
## DAMAGES

As a direct and proximate cause of the negligent acts and/or omissions to act, gross negligence, civil conspiracy, and/or fraud of DEFENDANTS, Plaintiffs' minor children sustained injuries and damages. More specifically, Plaintiffs' minor children have suffered

29

physical and mental pain and anguish and disfigurement in the past, and in reasonable probability, will continue to sustain mental pain and anguish and disfigurement in the future.

NCDR, KOOL SMILES, P.C., DENTISTRY OF BROWNSVILLE and DRS. CHANDESH, HO, MANWARING & THOMAS should be further held accountable for punitive or exemplary damages. The nature and frequency of DEFENDANTS' wrongs is horrific because DEFENDANTS took advantage of, and caused injury to, children who were their patients for the purpose of financial gain. The character of DEFENDANTS' conduct is offensive and the degree of their culpability is substantial as demonstrated by their routine plan, scheme, and pattern and practice of financially gaining by soliciting and performing unnecessary and excessive treatment upon children insured by Medicaid. DEFENDANTS' conduct offends our public's sense of justice and propriety. Based upon the net worth of DEFENDANTS, substantial exemplary or punitive damages should be awarded.

Therefore, Plaintiffs seek recovery of punitive damages in whatever amount a jury in its sole discretion decides is adequate to punish DEFENDANTS for their gross negligence, civil conspiracy, and/or fraud.

## XIX.
## NOTICE

Plaintiffs would further show that more than sixty (60) days prior to filing of this cause, written notice of said claims were provided by certified mail return receipt requested to Dentistry of Brownsville, P.C., NCDR, LLC, KOOL SMILES, P.C., Aishwarya K. Chandesh, D.D.S., Edward Ho, D.D.S., Richard I. Manwaring, D.D.S., and Marc D. Thomas, D.D.S. and that they otherwise fully complied with the notice provisions pursuant to Section 74.051 of Chapter 74 of the Texas Civil Practice and Remedies Code.

## XX.
## PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Plaintiffs PAULA ANTU AS NEXT FRIEND OF ███████ █ ██████, A MINOR; SCARLETT AYALA AS NEXT FRIEND OF ████████████, A MINOR; GUADALUPE CEPEDA AS NEXT FRIEND OF ██████████, A MINOR; ANA LAURA CORNEJO AS NEXT FRIEND OF ███ ██████████, A MINOR; MARIO CUELLAR AND PRISCILLA TRUJILLO AS NEXT FRIENDS OF ██████████, A MINOR; PEDRO DE LEON AND ELIZABETH DE LEON AS NEXT FRIENDS OF ██████████, A MINOR; MARIA GAYTÁN AS NEXT FRIEND OF ██████████████., A MINOR; ELIZABETH GONZALEZ AND MARCO REYES AS NEXT FRIENDS OF ██████████, A MINOR; FRANCISCA GUZMAN AS NEXT FRIEND OF █████████, A MINOR; KARINA HERNANDEZ AS NEXT FRIEND FOR █████████, A MINOR; ISMAEL MALDONADO AND ISABEL MALDONADO AS NEXT FRIENDS OF ███████████, A MINOR; FREISI OLIVAR AS NEXT FRIEND OF ██████████, A MINOR; MARY ROSALES AS NEXT FRIEND OF █████████, A MINOR; AND REYNOL SALINAS AS NEXT FRIEND OF █████████████ A MINOR pray that upon final trial, they have and recover judgment in their favor and against DEFENDANTS, jointly and severally, for the following:

1. actual damages within the jurisdictional limits of this Court;
2. punitive or exemplary damages;
3. prejudgment interest at the maximum rate allowed by law;
4. postjudgment interest at the maximum rate allowed by law;
5. costs of suit; and
6. such other and further relief at law or in equity, general or special, to which Plaintiffs may be deemed entitled.

31

Respectfully submitted,

MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 401 South
San Antonio, Texas 78215
Telephone: 210.354.3377
Telecopier: 210.354.3909

By: _____
     George W. Mauzé, II
     State Bar No. 13238800
     *gmauze@mauzebagbylaw.com*
     Tom Bagby
     State Bar No. 24059409
     *tbagby@mauzenagbylaw.com*

GUERRA, LEEDS, SABO & HERNANDEZ, PLLC
10213 N. 10th St,
McAllen, Texas 78504
Telephone: 956.383.4300
Telecopier: 956.383.4304

By:    R.D. "Bobby" Guerra
      State Bar No. 08578640
      *rdguerra@wglawfirm.com*

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of PLAINTIFFS' FOURTH AMENDED ORIGINAL PETITION has been sent by via fax and *regular mail* to Mr. Wayne B. Mason, Esq., Mr. Alan Vickery, Esq., and Ms. Cori C. Steinmann, Esq., Sedgwick LLP, 1717 Main Street, Suite 5400, Dallas, Texas 75201-7367 and Mr. Eduardo R. Rodriguez, Esq., Atlas, Hall & Rodriguez, L.L.P., 50 W. Morrison Road, Suite A, Brownsville, TX 78520 on this _14th_ day of January, 2015.

_____
George W. Mauzé, II

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| NCDR, L.L.C.; DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES; and KS2 TX, P.C. d/b/a KOOL SMILES; | § § § § § | |
| Plaintiffs, | § § | Case No. 5:12-cv-36 |
| v. | § § | JURY TRIAL DEMANDED |
| MAUZÉ & BAGBY, PLLC; GEORGE WATTS MAUZÉ II; and JAMES THOMAS BAGBY III; | § § § § § | |
| Defendants. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT FOR DAMAGES

Plaintiffs NCDR, L.L.C.; Dentistry of Brownsville, P.C. d/b/a Kool Smiles; and KS2 TX, P.C. d/b/a Kool Smiles (collectively, "Kool Smiles" or "Plaintiffs"), by way of this Complaint that they file against Defendants Mauzé & Bagby, PLLC; George Watts Mauzé II ("Mauzé"); and James Thomas Bagby III ("Bagby") (collectively, "Defendants") show as follows:

## NATURE OF THE ACTION

1. This is an action for damages premised on Plaintiffs' claims for defamation, business disparagement, trademark infringement, false advertising (designation of origin), cyberpiracy prevention (anti-cybersquatting), injury to business reputation, and trademark dilution in which Plaintiffs seek injunctive relief, damages, and attorneys' fees.



EXHIBIT
A

business, Mauzé & Bagby, PLLC, 2632 Broadway, Suite 402 South, San Antonio, Texas 78125; or anywhere else he may be found.

## JURISDICTION AND VENUE

8.    Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this is a civil action that arises under the Constitution, laws, or treaties of the United States. This civil action arises under the Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1051, including Section 32(1), or 15 U.S.C. § 1114(1), for infringement of a registered mark; and for violations of Sections 43(a) and 43(d), or 15 U.S.C. §§ 1125(a) and (d), for false advertising (designation of origin) and cyberpiracy prevention (anti-cybersquatting).

9.    This Court also has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(a).

10.    Defendant Mauzé & Bagby, PLLC is subject to personal jurisdiction because it is incorporated in the State of Texas, its principal place of business is located in the State of Texas, and it regularly conducts business within the State of Texas.

11.    Defendant Mauzé is subject to personal jurisdiction because he resides in and regularly conducts business within the State of Texas.

12.    Defendant Bagby is subject to personal jurisdiction because he resides in and regularly conducts business within the State of Texas.

13.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events at issue occurred in this district. On information and belief, the advertisements and website at issue in this Complaint were either broadcast or made accessible by Defendants in Laredo, Texas, where clinics owned, managed, and operated by Plaintiffs are located. Defendants also made statements similar to those made in their advertisements in a

3

| | | |
|---|---|---|
| PAULA ANTU, as Next Friend of ███████████████, a Minor, et al., | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § § | |
| vs. | § § | 370th JUDICIAL DISTRICT |
| NCDR, LLC d/b/a KOOL SMILES, DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES, AISHWARYA K. CHANDESH, D.D.S., EDWARD HO, D.D.S., RICHARD I. MANWARING, D.D.S., and MARC D. THOMAS, D.D.S., | § § § § § § § § | |
| Defendants. | § § | HIDALGO COUNTY, TEXAS |

## STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

Defendants NCDR, L.L.C., Dentistry of Brownsville, P.C., Aishwarya K. Chandesh, D.D.S., Edward Ho, D.D.S., Richard I. Manwaring, D.D.S., and Marc D. Thomas, D.D.S. (hereinafter "Defendants") may disclose certain Confidential Information to the parties in this action pursuant to discovery. Plaintiffs Paula Antu, as Next Friend of ███████████████, a Minor, et al. ("Plaintiffs") and the Defendants agree to enter into this Stipulated Confidentiality Agreement and Protective Order (hereinafter "Stipulated Protective Order") for the purpose of facilitating and expediting the discovery process and to reduce the Court's time from having to conduct separate hearings on the information sought to be protected. In order to protect their alleged confidential documents, proprietary interests and trade secret information, the Defendants wish to ensure that any such Confidential Information shall not be used for any purpose other than this action and shall not be made public or disseminated by any party or their counsel, except as set forth in this Stipulated Protective Order.

The Defendants assert that all documents, testimony, and/or other items to be produced pursuant to this Stipulated Protective Order contain trade secret, proprietary and/or confidential

information (referred to collectively as "Confidential Information"). Accordingly, the parties stipulate to the following:

1.  For the purposes of this Stipulated Protective Order, "Confidential Information" may include, but is not limited to, information and documentation produced in responses to discovery, the content of electronically stored information, tangible thing, writing, paper, model, photograph, film, videotape, transcript of oral testimony, whether printed, recorded or produced by hand or any other mechanical process. All documents, testimony and other items designated as Confidential Information, and all copies, summaries, and reproductions of such information, are subject to this Stipulated Protective Order.

2.  Whenever the Defendants produce Confidential Information, the Defendants shall designate each page of the document or thing with a label or stamp identifying it as "Confidential" and/or "Produced Pursuant to Protective Order." Inadvertent or unintentional production of documents or information containing Confidential Information that are not designated "Confidential" shall not be deemed a waiver, in whole or in part, of a claim for confidential treatment; however, if Defendants do not designate such documents or things as Confidential Information within 30 days of discovering such inadvertent production, any such claim to confidentiality of said document, information or thing produced shall be deemed waived.

3.  All material which the Defendants designate as Confidential Information in this action shall be maintained in strict confidence by the parties to this action and pursuant to the terms of this Stipulated Protective Order. Plaintiffs shall not disclose or permit to be disclosed Confidential Information to any person or other entity, except to "Qualified Persons" who shall be defined to include:

    a.  Counsel of record for the parties in this action, and employees of such counsel who are engaged in assisting counsel with this action, provided they have first read this Stipulated Protective Order and have agreed to abide by its terms;

    b.  The employee(s) of a corporate party charged with overseeing that party's participation in this action, provided they have first read this Stipulated Protective Order and have agreed to abide by its terms;

    c.  Independent experts and/or consultants, including jury consultants, retained by the parties to this action for the purpose of assisting in the preparation of this case, provided they have first read this Stipulated Protective Order and have agreed to abide by its terms and have signed a written certification in the form attached as "Exhibit A." Counsel for all parties to this action shall maintain such certifications for 6 months following the termination of this Action and will not destroy or alter such material pursuant to any document retention policy or for any other reason

without first providing reasonable notice (no shorter than 30 days) to counsel of record in this case;

d. Witnesses who may be shown and questioned about the Confidential Information and whose testimony as well as the information attached or submitted as exhibits, shall remain subject to this Stipulated Protective Order; and

e. The court, court personnel, special masters, mediators, other persons appointed by the court in this action, stenographic and other reporters, and videographers pursuant to the provisions of Paragraph 5.

4. Any person who reviews the Confidential Information produced subject to this Stipulated Protective Order agrees to the jurisdiction over their person where the above-captioned matter is pending for the purposes of any action seeking to enforce the terms of this Stipulated Protective Order or any action for contempt for violation of the terms of this Stipulated Protective Order.

5. The parties and their counsel who receive Confidential Information shall act to preserve the confidentiality of designated documents and information. Any party that intends to use or submit any Confidential Information in connection with any pre-trial proceedings or filings shall notify the producing party in writing of its intention to do so at the time of or before filing any related pleadings, motions or other documents, and provide in such notice the Bates numbers or other sufficient description of such Confidential Information as to allow the producing party to identify the Confidential Information. The Confidential Information shall be submitted to the Court *in camera* in a sealed envelope or other appropriate container labeled as follows: "CONFIDENTIAL – DOCUMENTS SUBMITTED IN CAMERA" if used as exhibits to any filings in this case or in hearings.

6. If a party disagrees with the "Confidential" designation of a specific document or thing, the parties agree to attempt to meet and confer with one another to resolve the issue. If the parties are unable to resolve the issue, the party that intends to use the Confidential Information shall move for a hearing to obtain a ruling from the Court as to whether the information is entitled to confidential treatment under this Stipulated Protective Order. Until the issue of confidentiality is resolved, either through mutual agreement of the parties or by court intervention, documents designated as Confidential Information shall remain Confidential.

7. Confidential Information may be referred to by a party in notices, motions, briefs or any other pleadings, may be used in depositions, and may be marked as deposition exhibits in this action. No such information shall be used, however, for any of these purposes unless it, or the portion where it is revealed, is appropriately marked and protected from dissemination and, where filing is necessary, it will be done pursuant to the provisions of Paragraph 5.

8. If any party wishes to modify this Stipulated Protective Order or its application to certain documents or information, that party shall first request such modification from the party producing the Confidential Information and if no satisfactory agreement is reached, may petition the court for modification. Until modification is granted by agreement and/or Court Order, the terms of this Stipulated Protective Order will govern.

9. Nothing in this Stipulated Protective Order shall be construed as placing a limit on the use of Confidential Information at trial. However, before trial, the parties will address this issue and determine appropriate safeguards to protect the Confidential Information at trial.

10. No Confidential Information shall be disseminated to anyone who is a direct competitor of the party producing the Confidential Information or is a current employee of a direct business competitor of the party producing the Confidential Information. This paragraph shall not apply to any retained or consulting experts. However, any retained or consulting experts excluded under this paragraph shall comply with paragraph 3(c). In addition, said expert(s) s hall n ot disclose the Confidential Information to any direct competitor or other person currently or formerly employed by a direct business competitor of the party producing the Confidential Information. *Pl's' counsel shall retain Declarations executed by Consulting Experts.* ~~M/~~ CCS

11. Failure to abide by the terms of this Stipulated Protective Order may result in a motion for sanctions, costs, and attorney's fees, and any other appropriate legal action by or on behalf of the Defendants.

12. This Stipulated Protective Order and/or the Defendants' production of documents, things, or information in this action for inspection, copying, or disclosure to any other party to this action shall not be deemed to waive any claim of attorney-client or work product privilege that might exist with respect to these or any other documents or communications, written or oral, including, without limitation, other communications referred to in any documents which the Defendants may produce.

13. Within thirty (30) days from the entry of final judgment, settlement, or dismissal in connection with this action, each party to this action shall return to counsel for the Defendants their original copies of all Confidential Information received under this Stipulated Protective Order, together with all reproductions and copies. In addition, all abstracts, summaries, indexes or other writings that contain, reflect, or disclose the substance of the Confidential Information received under this Stipulated Protective Order shall be destroyed by Plaintiffs' counsel within six (6) months from the entry of final judgment, settlement, or dismissal in connection with this action. Each party's counsel will certify by declaration to the Defendants' counsel that this Stipulated Protective Order has been complied with by them and their experts/consultants in the form attached as "Exhibit B."

This Court retains and shall have continuing jurisdiction over the parties and recipients of the Confidential Information and Protected Documents for enforcement of the provisions of this Stipulated Protective Order until compliance with Paragraph 13. This Stipulated Protective Order shall be binding upon the parties and their attorneys, successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.

SIGNED this the _____ day of _____, 2013.

_____
JUDGE PRESIDING

AGREED:


By: _____
George W. Mauze, II
State Bar No. 13238800
Tom Bagby
State Bar No. 24059409

**Mauze & Bagby, PLLC**
2632 Broadway, Suite 401 South
San Antonio, Texas 78215
Telephone:    (210) 354-3377
Facsimile:    (210) 354-3909


By: _____
Wayne B. Mason
State Bar No. 13158950
Alan Vickery
State Bar No. 20571650

**SEDGWICK LLP**
1717 Main Street, Suite 5400
Dallas, Texas 75201-7367
Telephone:    (469) 227-8200
Facsimile:    (469) 227-8004

# EXHIBIT "A"

**[ATTACH FULLY EXECTUED STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER TO THIS AFFIDAVIT]**

## CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU, as Next Friend of ▇▇▇▇▇▇▇▇▇▇▇, a Minor, et al., | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| vs. | § § | |
| | § § | 370th JUDICIAL DISTRICT |
| NCDR, LLC d/b/a KOOL SMILES, DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES, AISHWARYA K. CHANDESH, D.D.S., EDWARD HO, D.D.S., RICHARD I. MANWARING, D.D.S., and MARC D. THOMAS, D.D.S., | § § § § § § § | |
| Defendants. | § § | HIDALGO COUNTY, TEXAS |

## DECLARATION OF [INSERT NAME OF DECLARANT] RE STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

STATE OF _____ )
                        ) ss.
COUNTY OF _____ )

I, _____, declare under penalty of perjury under
   (insert name of recipient of the documents)

the laws of the **[IDENTIFY STATE/United States of America]** that the following is true and correct:

1.     My full name and business address are:

_____.

2.     I have read and fully understand the attached Stipulated Confidentiality Agreement and Protective Order.

3.     I am fully familiar with and agree to comply with and be bound by the provisions

of said Stipulated Confidentiality Agreement and Protective Order, and submit to the jurisdiction of the court in which this matter is pending for any proceedings with respect to said Stipulated Confidentiality Agreement and Protective Order.

4. I will not discuss or divulge to persons other than those specifically authorized by this Stipulated Confidentiality Agreement and Protective Order, and will not copy or use, except solely for the purposes of this action and for no other purposes, any documents, materials or information obtained pursuant to said Stipulated Confidentiality Agreement and Protective Order.

5. I will return original copies of all Confidential Information received under this Stipulated Confidentiality Agreement and Protective Order, together with all reproductions and copies of the Confidential Information to counsel that retained me in this case.

EXECUTED this _____ day of _____, 2013.

_____
Signature of Declarant

_____
Printed Name

## [ATTACH FULLY EXECUTED STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER TO THIS AFFIDAVIT]

### CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU, as Next Friend of ███████████████████ al., | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § § | |
| vs. | § § | |
| NCDR, LLC d/b/a KOOL SMILES, DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES, AISHWARYA K. CHANDESH, D.D.S., EDWARD HO, D.D.S., RICHARD I. MANWARING, D.D.S., and MARC D. THOMAS, D.D.S., | § § § § § § § § | 370th JUDICIAL DISTRICT |
| Defendants. | § § | HIDALGO COUNTY, TEXAS |

## DECLARATION OF [INSERT NAME OF DECLARANT] RE STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

STATE OF _____ )
_____ ) ss.
COUNTY OF _____ )

I, _____, declare under penalty of perjury under
(insert name of recipient of the documents)

the laws of the [IDENTIFY STATE/United States of America] that the following is true and correct:

1.    I am counsel of record for [name of party]. My full name and business address are:

_____.

(insert name and address of recipient of the documents)

2.    I am bound by the terms and conditions of the Stipulated Confidentiality Agreement and Protective Order. I acknowledged my consent to be so bound by executing the

---

attached Stipulated Confidentiality Agreement and Protective Order.

3. Pursuant to Paragraph 12 of the Stipulated Confidentiality Agreement and Protective Order attached hereto, I acknowledge that I am obligated to return original copies of all Confidential Information received under this Stipulated Confidentiality Agreement and Protective Order, together with all reproductions and copies of the Confidential Information within thirty (30) days from the entry of final judgment, settlement, or dismissal in connection with this action.

4. I certify that I have returned original copies of all Confidential Information received under this Stipulated Confidentiality Agreement and Protective Order, together with all reproductions and copies of the Confidential Information to counsel for the Defendants.

5. I certify that I have received all Confidential Information and Documents provided to the experts and consultants hired in this action on behalf of my client(s). I further certify that I have returned such Confidential Information, together with all reproductions and copies of the Confidential Information, to counsel for the Defendants.

EXECUTED this _____ day of _____, 2013.

_____
Signature of Declarant

_____
Printed Name

FILED
14-0851
10/17/2014 1:32:06 PM
tex-2869720
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

## NO. 14-__0851_____

---

### IN THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

---

### IN RE KOOL SMILES DENTAL LITIGATION

---

### MOTION FOR TRANSFER TO MULTIDISTRICT LITIGATION PRETRIAL COURT

---

**SEDGWICK LLP**
Wayne B. Mason
Texas Bar No. 13158950
wayne.mason@sedgwicklaw.com
Alan R. Vickery
Texas Bar. No. 20571650
alan.vickery@sedgwicklaw.com
Cori C. Steinmann
Texas Bar No. 24046908
cori.steinmann@sedgwicklaw.com
1717 Main Street, Suite 5400
Dallas, TX 75201
(469) 227-8200 Telephone
(469) 227-8004 Facsimile

**ATLAS, HALL & RODRIGUEZ, LLP**
Eduardo R. Rodriguez
Texas Bar No. 00000080
errodriguez@atlashall.com
50 W. Morrison Road, Suite A
Brownsville, TX 78520
Telephone (956) 574-9333
Facsimile (956) 574-9337

*Attorneys for Benevis, LLC f/k/a NCDR, LLC,*
*Dentistry of Brownsville, P.C., and Kool Smiles, P.C.*

19589154v1

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS..................................................................................... i

TABLE OF AUTHORITIES ............................................................................. ii

INTRODUCTION AND FACTUAL BACKGROUND...........................................1

ARGUMENTS AND AUTHORITIES ...............................................................4

    All of the Kool Smiles Cases Involve Common Questions of Fact ................5

    Transfer of Related Cases will Serve the Convenience of the
    Parties and Witnesses and Promote the Just and Efficient
    Conduct of the Cases ....................................................................................7

    Plaintiffs Do Not Agree to this Motion ......................................................10

CONCLUSION................................................................................................10

CERTIFICATE OF CONFERENCE....................................................................13

CERTIFICATE OF SERVICE ...........................................................................13

CERTIFICATE OF COMPLIANCE....................................................................14

APPENDIX.....................................................................................................15

## TABLE OF AUTHORITIES

PAGE

**Cases**

*In re Alcon Shareholder Litig.*,
  387 S.W.3d 121, 124 (Tex. M.D.L. Panel 2010) ...............................................4, 5

*In re Champion Indus. Sales, LLC*,
  398 S.W.3d 812, 819 (Tex. App.—Corpus Christi 2012, orig. proceeding) .........7

*In re Delta Lloyds Ins. Co. of Houston*,
  339 S.W.3d 384, 386 (Tex. M.D.L. Panel 2008) ...................................................5

*In re Hurricane Rita Evacuation Bus Fire*,
  216 S.W.3d 70, 72 (Tex. M.D.L. Panel 2006) .......................................................5

*In re Silica Prods. Liab. Litig.*,
  166 S.W.3d 3, 6 (Tex. M.D.L. Panel 2006) ...........................................................9

*In re Standard Guar. Ins. Co.*,
  339 S.W.3d 398, 399-400 (Tex. M.D.L. Panel 2009) ............................................4

*Paula Antu as Next Friend of A.N.E., a Minor, et al.*
  *v. NCDR, LLC, et al., Cause No. C-0184-13-G, 370th District Court* .......... 1, 2, 8

*Texas Windstorm Ins. Assoc. Hurricanes Rita &  Humberto Litig.*,
  339 S.W.3d 401, 403 (Tex. M.D.L. Panel 2009) ...................................................5

**Rules**

Texas Rules of Judicial Administration 13.....................................................1, 4, 10

Texas Rules of Judicial Administration 13.3(a) ..................................................5, 10

Texas Rules of Judicial Administration 13.3(a)(3)...................................................10

Texas Rules of Judicial Administration 13.3(l).........................................................4

## Statutes

Texas Government Code §§ 74.161-164 ..............................................................1, 4

Texas Government Code § 74.162..........................................................................4

|  | § |  |
|---|---|---|
|  | § |  |
|  | § |  |
| IN RE KOOL SMILES | § | **JUDICIAL PANEL ON** |
| DENTAL LITIGATION | § | **MULTIDISTRICT LITIGATION** |
|  | § |  |
|  | § |  |
|  | § |  |
|  | § |  |

---

MOTION FOR TRANSFER TO MULTIDISTRICT LITIGATION PRETRIAL COURT

---

Benevis LLC, f/k/a NCDR, LLC ("Benevis"), Dentistry of Brownsville, P.C. ("DOB"), and Kool Smiles, P.C. ("KSPC") (collectively, the "Corporate Defendants") respectfully request that the Panel transfer the causes as set forth in the attached Appendix to a pretrial judge, pursuant to Sections 74.161-.164 of the Texas Government Code and Rule 13 of the Texas Rules of Judicial Administration.

## I.Á    Introduction and Factual Background

On January 16, 2013, plaintiffs' counsel filed the first of eleven cases (the "Kool Smiles Cases") against the Corporate Defendants and four dentists who treated minor children in Kool Smiles clinics. That case, *Antu et al. v. NCDR et al.*, was assigned to and is currently pending in the 370th District Court in Hidalgo County, the honorable Judge Noe Gonzalez presiding.

Ten additional cases have been filed naming the Corporate Defendants. Significant discovery has been conducted in the *Antu* case and trial is currently set for May 11, 2015. Judge Gonzalez has conducted several pretrial hearings, issued numerous discovery-related rulings, is familiar with the issues involved, and is the only judge to have issued any discovery-related or substantive orders. In all, approximately 170 plaintiffs have filed suit on behalf of 128 minor children in cases pending in two district courts and several county courts at law in Hidalgo County. Plaintiffs' counsel have informed counsel for the defendants that they intend to file dozens of similarly sized suits on behalf of several hundred plaintiffs and their children in various counties in Texas. In all, the Corporate Defendants and the dentists employed or previously employed at Kool Smiles clinics have received pre-suit notice letters from over 900 patients who were treated in eight counties in Texas.

Each of the pending eleven cases sought to be transferred are dental malpractice cases in which multiple plaintiffs allege that minor children were given improper dental care at Kool Smiles clinics. The petitions in each case contain nearly identical allegations against the treating dentists and contain identical allegations against the Corporate Defendants. The plaintiffs in each of the pending Kool Smiles Cases are represented by Mauze & Bagby, PLLC. In addition, the Law Offices of James Moriarty and The Crosley Law Firm have sent pre-suit notice letters to the Corporate

Defendants and to numerous dentists employed or previously employed at Kool Smiles clinics in various counties across the state of Texas.

All of the defendants in the pending Kool Smiles Cases—including the treating dentists and the Corporate Defendants—are represented by Sedgwick LLP. The lawsuits are virtually identical, with the only differences being the names of the plaintiffs, the names of the minor children, the names of the treating dentists, and the dates of treatment rendered. Each suit alleges identical causes of action against the Corporate Defendants and the treating dentists.

Because all of the allegations against the Corporate Defendants are identical, discovery of information and documents from the Corporate Defendants is likely to be substantially the same in all cases. Likewise, because the allegations against the treating dentists are substantially similar, discovery of information and documents will be similar. Therefore, it is in the interest of efficiency to transfer these cases to a single pretrial court so that the defendants need only respond to discovery once. Moreover, while the plaintiffs' claims in each case present unique questions of fact and law, all of the cases present certain common legal issues that should be decided in a consistent manner by one court. Transfer of these lawsuits to a single pretrial court for consolidated[1] and coordinated pretrial proceedings will eliminate duplicative discovery, avoid conflicting legal rulings, conserve judicial resources, be more

---

[1] The filing of this motion and the contents therein should not be taken as an endorsement or admission that the joinder of any claimants for trial purposes is appropriate.

convenient for the parties and witnesses, and will otherwise promote the just and efficient conduct of all of the actions.

## II.Á   Arguments and Authorities

Pursuant to Rule 13 of the Rules of Judicial Administration and Sections 74.161-164 of the Texas Government Code, this Panel is authorized to transfer "related" cases involving one or more common questions of fact from different trial courts to a single pretrial court, if transferring the cases will 1) serve the convenience of the parties and witnesses and 2) promote the just and efficient conduct of the litigation.  TEX. GOV'T CODE 74.162; TEX. R. JUD. ADMIN. 13.3(l).  This Panel has consistently ruled that cases with identical allegations that are tied to the conduct of all defendants—like the allegations in all eleven of the Kool Smiles Cases—should be transferred for pretrial proceedings.  *See, e.g., In re Alcon Shareholder Litig.*, 387 S.W.3d 121, 124 (Tex. M.D.L. Panel 2010) (ruling that the relatedness requirement is "necessarily" satisfied when cases share "identical allegations of wrongdoing arising out of the same set of facts"); *In re Standard Guar. Ins. Co.*, 339 S.W.3d 398, 399-400 (Tex. M.D.L. Panel 2009) (transferring cases with identical generalized allegations);

*In re Delta Lloyds Ins. Co. of Houston*, 339 S.W.3d 384, 386 (Tex. M.D.L. Panel 2008) (transferring cases with identical[2] allegations).

A.      All of the Kool Smiles Cases Involve Common Questions of Fact

To transfer cases to a pretrial court, Rule 13 requires that the cases be "related" to one another. TEX. R. JUD. ADMIN. 13.3(a).  This means that the cases must "involve one or more common questions of fact."  *Id.*  There is no requirement, however, that the cases be "congruent or anything close to it." *In re Hurricane Rita Evacuation Bus Fire*, 216 S.W.3d 70, 72 (Tex. M.D.L. Panel 2006).  Likewise, cases involving "separate and distinct fact patterns" are not necessarily precluded from transfer because they may still be "related." *See Texas Windstorm Ins. Assoc. Hurricanes Rita & Humberto Litig.*, 339 S.W.3d 401, 403 (Tex. M.D.L. Panel 2009) (transferring cases with identical generalized allegations, despite having "forty-two separate and distinct fact patterns").

Each of the Kool Smiles cases involves one or more common questions of fact because the plaintiffs in each case allege *identical* facts against the Corporate Defendants and allege *identical* causes of action against all defendants.  Similarly, the

---

[2] The Panel in *In Re Delta Lloyds* determined that some cases should not be transferred because the generalized pleadings were not tied to the unique fact patterns of each claimant.  In the Kool Smiles Cases, however, the Plaintiffs seek to directly tie the acts and omissions of the Corporate Defendants to the individualized treatment of each minor child.  Thus, the general rule applies and the identical and highly specific pleadings in the Kool Smiles Cases "necessarily" satisfy the relatedness requirement. *See In re Alcon Shareholder Litig.*, 387 S.W.3d at 124.

nature of the allegations asserted against the treating dentists are nearly identical in each case, with the only substantive differences being the names of the plaintiffs and minor children, the names of the treating dentists, and the dates on which the minors were treated. In response, the treating dentists and Corporate Defendants assert identical defenses in all eleven cases.

The plaintiffs in each case allege that a similar set of operative facts gave rise to the various causes of action for which they brought suit. Specifically, each plaintiff in every case alleges that

1. Benevis is engaged in the unlicensed practice of dentistry;
2. Benevis manages, operates, and controls the Kool Smiles clinics at which the plaintiffs' minor children received treatment—such acts constituting negligence;
3. DOB and KSPC were negligent in their training and supervision of the treating dentists;
4. DOB and KSPC engaged in conduct constituting a civil conspiracy;
5. The Corporate Defendants entered into and operated a joint enterprise to generate and share revenue from the dental procedures performed at Kool Smiles clinics;
6. The treating dentists provided negligent treatment to the minor children on whose behalf the suits were filed; and
7. Each of the treating dentists committed fraud by making "material misrepresentations" regarding the diagnosis and treatment of the minor children.

Discovery on these issues will likely involve similar documents and testimony from common fact witnesses and corporate representatives, especially with respect to the extent to which the Corporate Defendants played a role in the treatment of the

children.  In fact, the plaintiffs have served and the defendants have responded to extensive discovery requests on each of the points above; without coordination of discovery, the Corporate Defendants and treating dentists will likely be subjected to duplicative and extremely expensive and burdensome discovery demands.  Because each case involves identical or similar allegations with respect to several questions of fact, the Kool Smiles Cases are clearly "related."

B.     Transfer of Related Cases will Serve the Convenience of the Parties and Witnesses and Promote the Just and Efficient Conduct of the Cases

The goal of transfer to a pretrial court is to eliminate duplicative discovery, minimize demands on witnesses, prevent inconsistent decisions of common issues, and lessen unnecessary travel. *In re Champion Indus. Sales, LLC*, 398 S.W.3d 812, 819 (Tex. App.—Corpus Christi 2012, orig. proceeding).  As set forth below, transferring the Kool Smiles Cases will achieve each of those goals for several parties and witnesses.

If the cases are transferred, the pretrial judge will be able to eliminate duplicative discovery by issuing a consistent and comprehensive ruling on written discovery and depositions.  Consolidating and coordinating all pretrial matters will enable the parties to reduce or eliminate duplicative depositions.  Additionally, the pretrial court can establish a master scheduling order, a document depository, and a single protective order, all of which will contribute to the efficiency of the litigation as

a whole. If so inclined, the pretrial court could also rule on objections to expert witnesses and implement other procedures to ensure that pretrial matters run consistently and efficiently. Plaintiffs in every case would benefit from having access to all of the master discovery.

Many witnesses with knowledge of facts relevant to plaintiffs' allegations against the Corporate Defendants live out of state. Therefore, without pretrial coordination, the travel demands could be extensive on both sets of lawyers—who reside in Texas—and potentially for the witnesses as well. In the *Antu* case, for instance, the plaintiffs have noticed depositions of four out of state witnesses. Because the plaintiffs' allegations against the Corporate Defendants are identical, the potential exists for those witnesses to be deposed in every case, which could mean that the parties could be required to travel out of state hundreds of times sans discovery limitations. Allowing one court to craft appropriate discovery limitations eliminates the potential for unnecessary duplication of discovery and satisfies the goals of establishing a pretrial court.

Moreover, transfer of the Kool Smiles Cases will promote the just and efficient handling of each existing and subsequent case. The voluminous discovery that may be propounded in each action, and the motion practice which accompanies it, has the potential to strain judicial resources and crowd the dockets of the court in which they are filed. Transfer to a single pretrial court would help minimize the potential for

problems and would save judicial resources by preventing duplicative discovery and resolving disputes a single time in a single forum. Additionally, the pretrial court can devote substantially more time to each case, as they are less likely to simply become "one of many cases on a crowded docket competing for attention." *In re Silica Prods. Liab. Litig.*, 166 S.W.3d 3, 6 (Tex. M.D.L. Panel 2006).

Finally, transfer to one pretrial court ensures that all pretrial issues will be decided consistently, promoting the just handling of each case. Without consistent rulings, the parties may not be on equal footing and inequitable results may occur if one judge rules one way and another judge rules another way on the same matter. In addition, consistent rulings "promote agreements because lawyers will know where the court stands on recurring issues." *Id.*

Consistent rulings are extremely important in the Kool Smiles Cases because of the specific allegations made by the plaintiffs. As noted above, the plaintiffs seek to hold the Corporate Defendants liable for practicing dentistry without a license. Their petitions attempt to couch common malpractice and negligence claims as violations of the licensing portions of the Texas Dental Practice Act—which provides no private cause of action. How a court rules on this issue directly impacts the scope of discovery and the potential for resolving the cases, at least in part, on summary judgment. If transferred to a single pretrial court, the rulings made on this issue would greatly impact the just handling of each case and promote agreements between the

lawyers for each side.  Most importantly, having a consistent ruling on the issue of whether plaintiffs can assert a private cause of action for alleged violations of the Texas Dental Practices Act would prevent the potential for inequitable results arising from inconsistent rulings from one court to the next.

C.      Plaintiffs Do Not Agree to this Motion

Pursuant to Rule 13.3(a), this certifies that counsel for movants conferred with counsel for plaintiffs' in the causes, as set forth in the Appendix, and plaintiffs in the Kool Smiles Cases do not agree to this motion.  *See* Tex. R. Jud. Admin. 13.3(a)(3). In addition, the defendant dentists in each of the pending cases, as identified in the Appendix, agree to this motion.

III.Á   Conclusion

The goals of Rule 13 would be met by transferring the Kool Smiles Cases to a single court for pretrial matters.  Transferring these related cases would eliminate duplicative and repetitive discovery, minimize conflicting demands on witnesses, prevent inconsistent decisions on common issues, reduce unnecessary travel, and intelligently allocate finite judicial resources.

WHEREFORE, Defendants Benevis, LLC f/k/a NCDR, LLC, Dentistry of Brownsville, P.C., and Kool Smiles, P.C. respectfully request the Panel to issue an

Order transferring the causes listed in the attached Appendix to a pretrial court for coordination.

Respectfully submitted,

**BENEVIS, LLC, F/K/A NCDR, LLC,
DENTISTRY OF BROWNSVILLE, P.C.,
AND KOOL SMILES, P.C.**

By: /s/ Wayne B. Mason

SEDGWICK LLP
Wayne B. Mason
Texas Bar No. 13158950
wayne.mason@sedgwicklaw.com
Alan R. Vickery
Texas Bar. No. 20571650
alan.vickery@sedgwicklaw.com
Cori C. Steinmann
Texas Bar No. 24046908
cori.steinmann@sedgwicklaw.com
1717 Main Street, Suite 5400
Dallas, TX 75201
(469) 227-8200 Telephone
(469) 227-8004 Facsimile

ATLAS, HALL & RODRIGUEZ, LLP
Eduardo R. Rodriguez
Texas Bar No. 00000080
errodriguez@atlashall.com
50 W. Morrison Road, Suite A
Brownsville, TX 78520
Telephone (956) 574-9333
Facsimile (956) 574-9337

**ATTORNEYS FOR DEFENDANTS
BENEVIS, LLC F/K/A NCDR, LLC,
DENTISTRY OF BROWNSVILLE, P.C.,
AND KOOL SMILES, P.C.**

## CERTIFICATE OF CONFERENCE

I hereby certify that on Friday, October 17, counsel for movants conferred with counsel for plaintiffs in all cases for which transfer is sought, at which time Plaintiffs' counsel indicated that plaintiffs are opposed to same.

/s/ Alan R. Vickery
**ALAN R. VICKERY**

## CERTIFICATE OF SERVICE

I certify that on the 17th day of October, 2014, a true and correct copy of this Motion for Transfer to Multidistrict Litigation Pretrial Court, together with this proof of service, was duly filed with the Clerk of the Supreme Court of Texas through eFile.TXCourts.gov; was served upon all counsel for parties in the cases listed in the Appendix attached hereto, as required by Rules 13.3(f) and (h) of the Texas Rules of Judicial Administration; and upon receipt of the cause number in this matter filed with the Judicial Panel on Multidistrict Litigation, the Motion for Transfer to Multidistrict Litigation Pretrial Court will be served upon each trial court identified in the cases listed in the Appendix, as required by Rule 13.3(i) of the Texas Rules of Judicial Administration.

/s/ Alan R. Vickery
**ALAN R. VICKERY**

# CERTIFICATE OF COMPLIANCE

I hereby certify that Defendant's Motion for Transfer to Multidistrict Litigation Pretrial Court complies with the word limit of Rule 9.4(i)(2)(d) because it contains 2,172 words, excluding the parts of the motion exempted by the rule.

 /s/ Alan R. Vickery
**ALAN R. VICKERY**

**NO. 14-_____**

|  | § |  |
|---|---|---|
|  | § |  |
|  | § |  |
| IN RE KOOL SMILES | § | **JUDICIAL PANEL ON** |
| DENTAL LITIGATION | § | **MULTIDISTRICT LITIGATION** |
|  | § |  |
|  | § |  |
|  | § |  |

---

APPENDIX

---

1. *Alanis et al. v. NCDR et al.*, Cause No. CL-14-3575-H, pending in the County Court at Law No. 8, Hidalgo County, Texas

2. *Alanis et al. v. NCDR et al.*, Cause No. CL-14-3574-D, pending in the County Court at Law No. 4, Hidalgo County, Texas

3. *Alanis et al. v. NCDR et al.*, Cause No. CL-14-3576-B, pending in the County Court at Law No. 2, Hidalgo County, Texas

4. *Alaniz et al v. NCDR et al.*, Cause No. CL-14-3570-F, pending in the County Court at Law No. 6, Hidalgo County, Texas

5. *Antu et al. v. NCDR et al.*, Cause No. C-0184-13-G, pending in the 370th District Court, Hidalgo County, Texas

6. *Aparicio et al. v. NCDR et al.*, Cause No. CL-14-3567-D, pending in the County Court at Law No. 4, Hidalgo County, Texas

7. *Aranda et al. v. NCDR et al.*, Cause No. CL-14-3560-A, pending in the County Court at Law No. 1, Hidalgo County, Texas

8. *Armendariz et al. v. NCDR et al.*, Cause No. CL-14-3572, pending in the County Court at Law No. 8, Hidalgo County, Texas

9. *Arroyo et al. v. NCDR et al.*, Cause No. CL-14-3569-D, pending in the County Court at Law No. 4, Hidalgo County, Texas

10. *Cantu et al. v. NCDR et al.*, Cause No. C-5976-14-D, pending in the 206th District Court, Hidalgo County, Texas

11. *De La Rosa et al. v. NCDR et al.*, Cause No. CL-14-3563-D, pending in the County Court at Law No. 4

Counsel for plaintiffs in the above-referenced causes:

George W. Mauze, II
Texas Bar No. 13238800
Tom Bagby
Texas Bar No. 24059409
**Mauze & Bagby, PLLC**
2632 Broadway, Suite 401 South
San Antonio, TX 78215
(210) 354-3377 Telephone
(210) 354-3909 Facsimile
gmauze@mauzelawfirm.com
tbagby@mauzebagbylaw.com

R. D. "Bobby" Guerra
Texas Bar No. 08578640
**Guerra, Leeds, Sabo & Hernandez, PLLC**
10213 N. 10th Street
McAllen, TX 78504
(956) 383-4300 Telephone
(956) 383-4304 Facsimile
rdguerra@wglawfirm.com

CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU AS NEXT FRIEND OF ████ █ ████, A MINOR, et al | § § § § § § § | IN THE DISTRICT COURT |
| PLAINTIFFS, | § § | |
| V. | § § § | 370TH JUDICIAL DISTRICT |
| NCDR, LLC d/b/a KOOL SMILES, et al | § § § | |
| DEFENDANTS. | § | HIDALGO COUNTY, TEXAS |

**PLAINTIFFS' MOTION TO AMEND CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER OR, ALTERNATIVELY, MOTION FOR SANCTIONS OR, ALTERNATIVELY, FOR DETERMINATION OF CONFIDENTIALITY**

TO THE HONORABLE NOE GONZALEZ, JUDGE PRESIDING:

COME NOW Plaintiffs PAULA ANTU AS NEXT FRIEND OF ████████, A MINOR; SCARLETT AYALA AS NEXT FRIEND OF ████████, A MINOR; GUADALUPE CEPEDA AS NEXT FRIEND OF ████████, A MINOR; ANA LAURA CORNEJO AS NEXT FRIEND OF ████████, A MINOR; MARIO CUELLAR AND PRISCILLA TRUJILLO AS NEXT FRIENDS OF ████████, A MINOR; MARIA GAYTÁN AS NEXT FRIEND OF ████████, A MINOR; ELIZABETH GONZALEZ AND MARCO REYES AS NEXT FRIENDS OF ████████, A MINOR; FRANCISCA GUZMAN AS NEXT FRIEND OF ████, A MINOR; ISMAEL MALDONADO AND ISABEL MALDONADO AS NEXT FRIENDS OF ████████, A MINOR; FREISI OLIVAR AS NEXT FRIEND OF ████████ A MINOR; MARY ROSALES AS NEXT FRIEND OF ████ A MINOR; AND REYNOL SALINAS AS NEXT FRIEND OF ████████ A MINOR, (hereinafter collectively referred to as "Plaintiffs") and file this, Plaintiffs' Motion To Amend Confidentiality Agreement And Protective Order Or, Alternatively, Motion

For Sanctions Or, Alternatively, For Determination Of Confidentiality. In support of same, Plaintiffs would show unto this Honorable Court as follows:

## I.
## PROCEDURAL HISTORY

On June 11, 2013, the parties agreed to, and the Court entered, a Stipulated Confidentiality Agreement and Protective Order (the "Protective Order"). A copy of the Protective Order is attached hereto as Exhibit "A". Pursuant to said order, Defendants Dentistry of Brownsville, P.C. d/b/a Kool Smiles, NCDR, LLC d/b/a Kool Smiles and Kool Smiles, P.C. d/b/a Kool Smiles (hereinafter together referred to as "Defendants") were permitted to designate documents produced as either "Confidential" and/or "Produced Pursuant to Protective Order" if said documents contain trade secret, proprietary, and/or confidential information (hereinafter referred to as "Confidential Information"). The Order provides that if the "Confidential" designation is contested, then the parties should attempt to confer and, if the matter is not resolved, then Plaintiffs shall move for a hearing to determine confidentiality.

In response to Plaintiffs' requests for production, several agreements reached after conferring, and several hearings and Court orders compelling discovery, Defendants have produced approximately 477,964 pages of responsive documents. Defendants have designated the overwhelming majority of said documents as "Confidential" although the documents clearly do not contain trade secret, proprietary, and/or confidential information. Defendants designated blank pages, fully redacted pages, public medical articles, government regulations, and documents publically disseminated as "Confidential".

From the inception of this lawsuit, Defendants have delayed and obstructed the discovery process. Defendants failed to produce documents in violation of a Court order[1], unilaterally redacted documents ordered produced by the Court, failed to produce complete copies of responsive documents, and failed to segregate and identify documents responsive to specific requests for production. Defendants disregard for Court orders and the Texas Rules of Civil Procedure have resulted in several motions to compel discovery which necessitated this Court's intervention[2].

## II.
## ABUSE OF THE DISCOVERY PROCESS

Texas Rule of Civil Procedure 215.2 states that a failure to obey an order is an abuse of the discovery process. Texas Rule of Civil Procedure 215.3 states that any discovery response that is unreasonably frivolous or made for purposes of delay is also an abuse of the discovery process. Here, Defendants designated thousands of responsive documents as "Confidential" asserting that they contain trade secret, proprietary, and/or confidential information despite that the designated documents clearly do not contain Confidential Information. By way of example, and attached hereto as Exhibit "B" are blank pages and fully redacted documents that Defendants have represented contain Confidential Information. Moreover, attached as Exhibit "C" are the following public documents that Defendants have marked as containing Confidential Information: (1) Texas State Board of Dental Examiners Rules and Regulations;

---

[1] By way of one example, on July 24, 2013, the Court granted Plaintiffs' Motion To Compel, overruled Defendants' objections and claims of privilege pertaining to documents withheld from production, and ordered Defendants of Brownsville, P.C. d/b/a Kool Smiles (hereinafter referred to as "DOB") and NCDR, LLC d/b/a Kool Smiles (hereinafter referred to as "NCDR") to produce all documents titled "Office Scorecard - Medicaid Children". Thereafter, DOB and NCDR amended its discovery response and privilege log and represented to the Court and Plaintiffs that no responsive documents existed. During a subsequent hearing, Plaintiffs produced a copy of said document to the Court. After the Court again granted Plaintiffs' Motion To Compel, DOB and NCDR produced over 1,901 pages of documents titled "Office Scorecard - Medicaid Children".

[2] On May 16, 2013, Plaintiffs filed a motion to compel discovery from DOB and NCDR. Said Motions were heard on June 10th, 17th, and 20th. On July 30, 2013, Plaintiffs filed a second motion to compel discovery from DOB and NCDR and for sanctions. Said hearings were heard on August 22nd and September 3rd. On September 3, 2014, Plaintiffs filed a third motion to compel discovery from DOB and NCDR, and filed a motion to compel against Kool Smiles, P.C. d/b/a Kool Smiles. The Court granted the vast majority of the discovery sought.

(2) The Department of Health and Human Services Guidelines for Infection Control in Dental Healthcare Settings — 2003; and (3) The American Academy of Pediatric Dentistry's Guideline on Carries-risk Assessment and Management for Infants, Children, and Adolescents. The aforementioned public documents that Defendants have represented contain Confidential Information are but a small sample of documents prepared for, and written by, persons other than Defendants. Further, attached as Exhibit "D" are publically disseminated documents that the Defendants have designated as confidential. Said documents have been designated as containing Confidential Information despite Defendants making the same documents available to the public. Defendants have failed to comply with the Protective Order by erroneously and frivolously designating documents as containing Confidential Information.

In addition, upon information and belief, Defendants have shared many of the documents that have been marked as containing Confidential Information with many different non-defendant entities and persons. Therefore, any document that has been shared and provided among and between a multitude of entities and persons, outside a confidentiality agreement, should not be afforded the privilege of being considered Confidential Information.

Defendants' frivolous designations of confidentiality are a clear abuse of the discovery process pursuant to Texas Rules of Civil Procedure 215.2 and 215.3.

## III.
## THREE REMEDIES

There are three remedies available to address and resolve this issue. First, this Court could amend the Protective Order to provide that the Protective Order and designation of

"Confidential Information" does not apply to any litigation against Defendants (there are 10 lawsuits filed against Defendants in Hidalgo County) or litigation against plaintiffs' attorneys filed by any of the Defendants (Case No. 5:12 – CV – 36 filed in the United States District Court for the Southern District of Texas, Laredo Division). Second, this Court could overrule all of Defendants' designations of "Confidential Information" as an abuse of discovery. Third, this Court could take on the overwhelming burden of inspecting each and every document designated as "Confidential Information" and determine whether such designation is appropriate.

## IV.
## ARGUMENTS & AUTHORITIES

The purpose of sanctions is to secure compliance with the rules, to deter future violation of the rules, and to punish parties that violate the rules. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992). When considering sanctions, a court should ensure that the punishment fits the crime. *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). When a court decides to sanction, the sanctions must have a direct relationship to the offensive conduct, measured by a direct nexus among the conduct, the offender, and the sanctions imposed. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006); *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003); TransAmerican, 811 S.W.2d at 917. A court must not impose sanctions more severe than necessary to promote full compliance with the rules. *Am. Flood*, 192 S.W.3d at 583; *Spohn Hosp.*, 104 S.W.3d at 882; Chrysler Corp., 841 S.W.2d at 849.

Per the Protective Order, in order for Plaintiffs to challenge Defendants designation of confidentiality, the Court must rule on whether the information that Defendants have marked

as Confidential Information is entitled to confidential treatment under the Protective Order. Due to Defendants blatant abuse of the discovery process by designating nearly every responsive document as containing "Confidential Information", the Defendants have subjected the Court and Plaintiffs to an undue burden and have clearly abused the discovery process. Moreover, Defendants' erroneous designations of confidentiality are unreasonably frivolous, oppressive, harassing, and made for purposes of delaying this litigation. Based on the foregoing, and pursuant to Texas Rules of Civil Procedure 215.2 and 215.3, Plaintiffs ask the Court to impose sanctions against Defendants by overruling all of Defendants' designations of confidentiality and ordering that the documents already produced by Defendants in response to Plaintiffs' requests for production are not subject to the Protective Order. These sanctions are justified because there is a direct relationship between Defendants' conduct and this request for sanctions. These sanctions are no more severe than necessary. Alternatively, Due to Defendants' repeated abuse of the discovery process, and rather than being forced to rule on numerous erroneous designations of confidentiality, this Court should overrule all of Defendants confidential designations.

## V.
## CONCLUSION

The discovery process is intended to allow the orderly and efficient production of relevant documents so that disputes may be fairly resolved based upon the facts. Defendants have repeatedly, for over two years, obstructed the discovery process. Trial Courts are empowered with the authority to sanction a party for abusing the discovery process for failure to comply with an order and/or in making or resisting discovery. Defendants have again abused the discovery process by designating nearly all of their responsive documents as containing

Confidential Information. Plaintiffs seek this Court's intervention to address this discovery abuse.

## VI.
## CERTIFICATE OF CONFERENCE

Plaintiffs' provided Defendants' counsel with a copy of a similar motion in an attempt to confer regarding Defendants erroneous designations of confidentiality prior to the filing of this motion. Counsel to the parties attempted to confer regarding the same but were unable to reach an agreement. A copy of the written response of Defendants is attached hereto as Exhibit "E"

## VII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request a hearing on this motion and pray that the Court enter an order granting Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order or, Alternatively Motion For Sanctions, Or Alternatively, For Determination of Confidentiality and for such other and further relief to which Plaintiffs may be deemed entitled.

Respectfully submitted,

MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 401 South
San Antonio, Texas 78215
Telephone: 210.354.3377
Telecopier: 210.354.3909

By: _____
George W. Mauzé, II
State Bar No. 13238800
Tom Bagby
State Bar No. 24059409

GUERRA, LEEDS, SABO &
HERNANDEZ, PLLC
10213 N. 10th St.
McAllen, Texas 78504
Telephone: 956.383.4300
Telecopier: 956.383.4304

By:    R.D. "Bobby" Guerra
       State Bar No. 08578640

## ATTORNEYS FOR PLAINTIFFS

## FIAT

The foregoing Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order or, Alternatively, Motion For Sanctions, Or Alternatively, For Determination of Confidentiality, having been presented to me and a request for hearing made therein, is hereby set for hearing at 8:00 a.m. on the _____ day of December, 2014, in the 370th Judicial District Court, Hidalgo County Courthouse, Edindburg, Texas.

SIGNED AND ENTERED on this _____ day of November, 2014.

_____
HONORABLE NOE GONZALEZ,
JUDGE PRESIDING

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order or, Alternatively Motion For Sanctions, Or Alternatively, For Determination of Confidentiality has been sent by via fax and certified mail, return receipt requested, to Mr. Wayne B. Mason, Esq., Mr. Alan Vickery, Esq., & Ms. Cori C. Steinmann, Esq., Sedgwick LLP, 1717 Main Street, Suite 5400, Dallas, Texas 75201-7367, and

Mr. Eduardo R. Rodriguez, Esq., Atlas, Hall & Rodriguez, L.L.P., 50 W. Morrison Road, Suite A, Brownsville, TX 78520 on this /2ᵗʰ day of November, 2014.

George W. Mauzé II

CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU, as Next Friend of  al., | § § § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § § | |
| vs. | § § | 370th JUDICIAL DISTRICT |
| NCDR, LLC d/b/a KOOL SMILES, DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES, AISHWARYA K. CHANDESH, D.D.S., EDWARD HO, D.D.S., RICHARD I. MANWARING, D.D.S., and MARC D. THOMAS, D.D.S., | § § § § § § § § | |
| Defendants. | § | HIDALGO COUNTY, TEXAS |

## STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

Defendants NCDR, L.L.C., Dentistry of Brownsville, P.C., Aishwarya K. Chandesh, D.D.S., Edward Ho, D.D.S., Richard I. Manwaring, D.D.S., and Marc D. Thomas, D.D.S. (hereinafter "Defendants") may disclose certain Confidential Information to the parties in this action pursuant to discovery. Plaintiffs Paula Antu, as Next Friend of ████████, a Minor, et al. ("Plaintiffs") and the Defendants agree to enter into this Stipulated Confidentiality Agreement and Protective Order (hereinafter "Stipulated Protective Order") for the purpose of facilitating and expediting the discovery process and to reduce the Court's time from having to conduct separate hearings on the information sought to be protected. In order to protect their alleged confidential documents, proprietary interests and trade secret information, the Defendants wish to ensure that any such Confidential Information shall not be used for any purpose other than this action and shall not be made public or disseminated by any party or their counsel, except as set forth in this Stipulated Protective Order.

The Defendants assert that all documents, testimony, and/or other items to be produced pursuant to this Stipulated Protective Order contain trade secret, proprietary and/or confidential

STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER - Page 1
DL/3689995v1


PLAINTIFF'S EXHIBIT
4

information (referred to collectively as "Confidential Information"). Accordingly, the parties stipulate to the following:

1. For the purposes of this Stipulated Protective Order, "Confidential Information" may include, but is not limited to, information and documentation produced in responses to discovery, the content of electronically stored information, tangible thing, writing, paper, model, photograph, film, videotape, transcript of oral testimony, whether printed, recorded or produced by hand or any other mechanical process. All documents, testimony and other items designated as Confidential Information, and all copies, summaries, and reproductions of such information, are subject to this Stipulated Protective Order.

2. Whenever the Defendants produce Confidential Information, the Defendants shall designate each page of the document or thing with a label or stamp identifying it as "Confidential" and/or "Produced Pursuant to Protective Order." Inadvertent or unintentional production of documents or information containing Confidential Information that are not designated "Confidential" shall not be deemed a waiver, in whole or in part, of a claim for confidential treatment; however, if Defendants do not designate such documents or things as Confidential Information within 30 days of discovering such inadvertent production, any such claim to confidentiality of said document, information or thing produced shall be deemed waived.

3. All material which the Defendants designate as Confidential Information in this action shall be maintained in strict confidence by the parties to this action and pursuant to the terms of this Stipulated Protective Order. Plaintiffs shall not disclose or permit to be disclosed Confidential Information to any person or other entity, except to "Qualified Persons" who shall be defined to include:

   a. Counsel of record for the parties in this action, and employees of such counsel who are engaged in assisting counsel with this action, provided they have first read this Stipulated Protective Order and have agreed to abide by its terms;

   b. The employee(s) of a corporate party charged with overseeing that party's participation in this action, provided they have first read this Stipulated Protective Order and have agreed to abide by its terms;

   c. Independent experts and/or consultants, including jury consultants, retained by the parties to this action for the purpose of assisting in the preparation of this case, provided they have first read this Stipulated Protective Order and have agreed to abide by its terms and have signed a written certification in the form attached as "Exhibit A." Counsel for all parties to this action shall maintain such certifications for 6 months following the termination of this Action and will not destroy or alter such material pursuant to any document retention policy or for any other reason

without first providing reasonable notice (no shorter than 30 days) to counsel of record in this case;

d. Witnesses who may be shown and questioned about the Confidential Information and whose testimony as well as the information attached or submitted as exhibits, shall remain subject to this Stipulated Protective Order; and

e. The court, court personnel, special masters, mediators, other persons appointed by the court in this action, stenographic and other reporters, and videographers pursuant to the provisions of Paragraph 5.

4. Any person who reviews the Confidential Information produced subject to this Stipulated Protective Order agrees to the jurisdiction over their person where the above-captioned matter is pending for the purposes of any action seeking to enforce the terms of this Stipulated Protective Order or any action for contempt for violation of the terms of this Stipulated Protective Order.

5. The parties and their counsel who receive Confidential Information shall act to preserve the confidentiality of designated documents and information. Any party that intends to use or submit any Confidential Information in connection with any pre-trial proceedings or filings shall notify the producing party in writing of its intention to do so at the time of or before filing any related pleadings, motions or other documents, and provide in such notice the Bates numbers or other sufficient description of such Confidential Information as to allow the producing party to identify the Confidential Information. The Confidential Information shall be submitted to the Court *in camera* in a sealed envelope or other appropriate container labeled as follows: "CONFIDENTIAL – DOCUMENTS SUBMITTED IN CAMERA" if used as exhibits to any filings in this case or in hearings.

6. If a party disagrees with the "Confidential" designation of a specific document or thing, the parties agree to attempt to meet and confer with one another to resolve the issue. If the parties are unable to resolve the issue, the party that intends to use the Confidential Information shall move for a hearing to obtain a ruling from the Court as to whether the information is entitled to confidential treatment under this Stipulated Protective Order. Until the issue of confidentiality is resolved, either through mutual agreement of the parties or by court intervention, documents designated as Confidential Information shall remain Confidential.

7. Confidential Information may be referred to by a party in notices, motions, briefs or any other pleadings, may be used in depositions, and may be marked as deposition exhibits in this action. No such information shall be used, however, for any of these purposes unless it, or the portion where it is revealed, is appropriately marked and protected from dissemination and, where filing is necessary, it will be done pursuant to the provisions of Paragraph 5.

8. If any party wishes to modify this Stipulated Protective Order or its application to certain documents or information, that party shall first request such modification from the party producing the Confidential Information and if no satisfactory agreement is reached, may petition the court for modification. Until modification is granted by agreement and/or Court Order, the terms of this Stipulated Protective Order will govern.

9. Nothing in this Stipulated Protective Order shall be construed as placing a limit on the use of Confidential Information at trial. However, before trial, the parties will address this issue and determine appropriate safeguards to protect the Confidential Information at trial.

10. No Confidential Information shall be disseminated to anyone who is a direct competitor of the party producing the Confidential Information or is a current employee of a direct business competitor of the party producing the Confidential Information. This paragraph shall not apply to any retained or consulting experts. However, any retained or consulting experts excluded under this paragraph shall comply with paragraph 3(c). In addition, said expert(s) shall not disclose the Confidential Information to any direct competitor or other person currently or formerly employed by a direct business competitor of the party producing the Confidential Information. *[handwritten: Its' counsel shall retain Declarations executed by Consulting Experts.]* *[initials: WCS]*

11. Failure to abide by the terms of this Stipulated Protective Order may result in a motion for sanctions, costs, and attorney's fees, and any other appropriate legal action by or on behalf of the Defendants.

12. This Stipulated Protective Order and/or the Defendants' production of documents, things, or information in this action for inspection, copying, or disclosure to any other party to this action shall not be deemed to waive any claim of attorney-client or work product privilege that might exist with respect to these or any other documents or communications, written or oral, including, without limitation, other communications referred to in any documents which the Defendants may produce.

13. Within thirty (30) days from the entry of final judgment, settlement, or dismissal in connection with this action, each party to this action shall return to counsel for the Defendants their original copies of all Confidential Information received under this Stipulated Protective Order, together with all reproductions and copies. In addition, all abstracts, summaries, indexes or other writings that contain, reflect, or disclose the substance of the Confidential Information received under this Stipulated Protective Order shall be destroyed by Plaintiffs' counsel within six (6) months from the entry of final judgment, settlement, or dismissal in connection with this action. Each party's counsel will certify by declaration to the Defendants' counsel that this Stipulated Protective Order has been complied with by them and their experts/consultants in the form attached as "Exhibit B."

This Court retains and shall have continuing jurisdiction over the parties and recipients of the Confidential Information and Protected Documents for enforcement of the provisions of this Stipulated Protective Order until compliance with Paragraph 13. This Stipulated Protective Order shall be binding upon the parties and their attorneys, successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.

SIGNED this the ___11th___ day of ___June___, 2013.

_____
JUDGE PRESIDING

STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER - Page 5
DL/3689995v1

AGREED:

By: _George W. Mauze, IV_
George W. Mauze, IV
State Bar No. 13238800
Tom Bagby
State Bar No. 24059409

**Mauze & Bagby, PLLC**
2632 Broadway, Suite 401 South
San Antonio, Texas 78215
Telephone: (210) 354-3377
Facsimile: (210) 354-3909

By: _Cori C. S_
Wayne B. Mason
State Bar No. 13158950
Alan Vickery
State Bar No. 20571650

**SEDGWICK LLP**
1717 Main Street, Suite 5400
Dallas, Texas 75201-7367
Telephone: (469) 227-8200
Facsimile: (469) 227-8004

STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER - Page 6
DL/3689995v1

EXHIBIT "A"

**[ATTACH FULLY EXECTUED STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER TO THIS AFFIDAVIT]**

CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU, as Next Friend of ▮▮▮▮▮▮▮▮▮▮, a Minor, et al., | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § § | |
| vs. | § § | |
| | § | 370th JUDICIAL DISTRICT |
| NCDR, LLC d/b/a KOOL SMILES, DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES, AISHWARYA K. CHANDESH, D.D.S., EDWARD HO, D.D.S., RICHARD I. MANWARING, D.D.S., and MARC D. THOMAS, D.D.S., | § § § § § § § § | |
| Defendants. | § | HIDALGO COUNTY, TEXAS |

**DECLARATION OF [INSERT NAME OF DECLARANT] RE STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER**

STATE OF _____ )
                                            ) ss.
COUNTY OF _____ )

I, _____, declare under penalty of perjury under
        (insert name of recipient of the documents)

the laws of the [IDENTIFY STATE/United States of America] that the following is true and correct:

1. My full name and business address are:

_____

2. I have read and fully understand the attached Stipulated Confidentiality Agreement and Protective Order.

3. I am fully familiar with and agree to comply with and be bound by the provisions

of said Stipulated Confidentiality Agreement and Protective Order, and submit to the jurisdiction of the court in which this matter is pending for any proceedings with respect to said Stipulated Confidentiality Agreement and Protective Order.

4.     I will not discuss or divulge to persons other than those specifically authorized by this Stipulated Confidentiality Agreement and Protective Order, and will not copy or use, except solely for the purposes of this action and for no other purposes, any documents, materials or information obtained pursuant to said Stipulated Confidentiality Agreement and Protective Order.

5.     I will return original copies of all Confidential Information received under this Stipulated Confidentiality Agreement and Protective Order, together with all reproductions and copies of the Confidential Information to counsel that retained me in this case.

EXECUTED this _____ day of _____, 2013.


_____
Signature of Declarant


_____
Printed Name


DECLARATION OF [INSERT NAME OF DECLARANT] RE STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER - Page 2
DL/368999$v1

EXHIBIT "B"
[ATTACH FULLY EXECUTED STIPULATED CONFIDENTIALITY AGREEMENT
AND PROTECTIVE ORDER TO THIS AFFIDAVIT]

CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU, as Next Friend of ███████, a Minor, et al., | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § § | |
| vs. | § § | |
| NCDR, LLC d/b/a KOOL SMILES, DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES, AISHWARYA K. CHANDESH, D.D.S., EDWARD HO, D.D.S., RICHARD I. MANWARING, D.D.S., and MARC D. THOMAS, D.D.S., | § § § § § § § § | 370th JUDICIAL DISTRICT |
| Defendants. | § § | HIDALGO COUNTY, TEXAS |

DECLARATION OF [INSERT NAME OF DECLARANT] RE STIPULATED
CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

STATE OF _____ )
                                                    ) ss.
COUNTY OF _____ )

I, _____, declare under penalty of perjury under
        (insert name of recipient of the documents)

the laws of the [IDENTIFY STATE/United States of America] that the following is true and
correct:

1.    I am counsel of record for [name of party]. My full name and business address
are:

_____.

(insert name and address of recipient of the documents)

2.    I am bound by the terms and conditions of the Stipulated Confidentiality
Agreement and Protective Order. I acknowledged my consent to be so bound by executing the

attached Stipulated Confidentiality Agreement and Protective Order.

3.      Pursuant to Paragraph 12 of the Stipulated Confidentiality Agreement and Protective Order attached hereto, I acknowledge that I am obligated to return original copies of all Confidential Information received under this Stipulated Confidentiality Agreement and Protective Order, together with all reproductions and copies of the Confidential Information within thirty (30) days from the entry of final judgment, settlement, or dismissal in connection with this action.

4.      I certify that I have returned original copies of all Confidential Information received under this Stipulated Confidentiality Agreement and Protective Order, together with all reproductions and copies of the Confidential Information to counsel for the Defendants.

5.      I certify that I have received all Confidential Information and Documents provided to the experts and consultants hired in this action on behalf of my client(s). I further certify that I have returned such Confidential Information, together with all reproductions and copies of the Confidential Information, to counsel for the Defendants.

EXECUTED this _____ day of _____, 2013.

_____
Signature of Declarant

_____
Printed Name

REDACTED

Confidential Pursuant to the Protective Order



KSL-00465030

Confidential Pursuant to the Protective Order

KSL-00465031

REDACTED





REDACTED

Confidential Pursuant to the Protective Order                        KSL-00465033



Confidential Pursuant to the Protective Order

KSL-00465034



Confidential Pursuant to the Protective Order　　　　　　　　　　　KSL-00465035

Confidential Pursuant to the Protective Order

KSL-00000042

Confidential Pursuant to the Protective Order

KSL-00000264

# TEXAS STATE BOARD OF DENTAL EXAMINERS



# RULES AND REGULATIONS

(November 2005)

TEXAS STATE BOARD OF DENTAL EXAMINERS
333 GUADALUPE, TOWER 3, SUITE 800
AUSTIN, TEXAS 78701

TELEPHONE: (512) 463-6400
FAX: (512) 463-7452
E-MAIL: information@tsbde.state.tx.us
WEBSITE: www.tsbde.state.tx.us
HPC HOTLINE: 1-800-821-3205

Confidential Pursuant to the Protective Order

PLAINTIFF'S
EXHIBIT
C

KSL-00474199



Confidential Pursuant to the Protective Order

Official but Unformatted

# Guideline on Caries-risk Assessment and Management for Infants, Children, and Adolescents

**Originating Council**
Council on Clinical Affairs

**Review Council**
Council on Clinical Affairs

**Adopted**
2002

**Revised**
2006, 2010

## Purpose

The American Academy of Pediatric Dentistry (AAPD) recognizes that caries risk assessment and management protocols can assist clinicians with decisions regarding treatment based upon caries risk and patient compliance and are essential elements of contemporary clinical care for infants, children, and adolescents. This guideline is intended to educate healthcare providers and other interested parties on the assessment of caries risk in contemporary pediatric dentistry and aid in clinical decision making regarding diagnostic, fluoride, dietary, and restorative protocols.

## Methods

This guideline is an update of AAPD's "Policy on Use of a Caries-risk Assessment Tool (CAT) for Infants, Children, and Adolescents, Revised 2006" that includes the additional concepts of dental caries management protocols. The update used electronic and hand searches of English written articles in the medical and dental literature within the last 10 years using the search terms, "caries risk assessment", "caries management", and "caries clinical protocols". From this search, 1,909 articles were evaluated by title or by abstract. Information from 75 articles was used to update this document. When data did not appear sufficient or were inconclusive, recommendations were based upon expert and/or consensus opinion by experienced researchers and clinicians.

## Background

### Caries-risk assessment

Risk assessment procedures used in medical practice normally have sufficient data to accurately quantitate a person's disease susceptibility and allow for preventive measures.[1] Even though caries-risk data in dentistry still are not sufficient to quantitate the models, the process of determining risk should be a component in the clinical decision making process.[2] Risk assessment:

1. fosters the treatment of the disease process instead of treating the outcome of the disease;

2. gives an understanding of the disease factors for a specific patient and aids in individualizing preventive discussions;

3. individualizes, selects, and determines frequency of preventive and restorative treatment for a patient; and

4. anticipates caries progression or stabilization.

Caries-risk assessment models currently involve a combination of factors including diet, fluoride exposure, a susceptible host, and microflora that interplay with a variety of social, cultural, and behavioral factors.[3-6] Caries risk assessment is the determination of the likelihood of the incidence of caries (ie, the number of new cavitated or incipient lesions) during a certain time period[7] or the likelihood that there will be a change in the size or activity of lesions already present. With the ability to detect caries in its earliest stages (ie, white spot lesions), health care providers can help prevent cavitation.[8-10]

Caries risk indicators are variables that are thought to cause the disease directly (eg, microflora) or have been shown useful in predicting it (eg, socioeconomic status) and include those variables that may be considered protective factors. Currently, there are no caries-risk factors or combinations of factors that have achieved high levels of both positive and negative predictive values.[2] Although the best tool to predict future caries is past caries experience, it is not particularly useful in young children due to the importance of determining caries risk before the disease is manifest. Children with white spot lesions should be considered at high risk for caries since these are precavitated lesions that are indicative of caries activity.[11] Plaque accumulation also is strongly associated with

Confidential Pursuant to the Protective Order

KSL-00005635



## Kool Smiles Dental Leadership Team

**Dr. David Vieth, Executive Dental Officer**

Dr. Vieth received his undergraduate degree in biology/chemistry from Bowling Green State University and his Doctor of Dental Surgery degree from Ohio State University Dental School.

Following graduation from dental school, Dr. Vieth started a multi-specialty group dental practice in Buffalo, New York and its surrounding communities. The group practice expanded over the years and employed over 250 employees in four locations that included an integrated crown and bridge lab. The practice had 27 dentists, including pediatric dentists, oral surgeons, periodontist, endodontist, and orthodontists.

Dr. Vieth sold his thriving practice in 2006 to pursue other interests. While identifying his next career move, he became increasingly interested in the opportunity to answer the American Dental Association's plea to increase access to dental care for the underserved. With this goal in mind, Dr. Vieth accepted a position as a Regional Dentist with Kool Smiles. He served in this position for 2 years until he was recently named Director of Dental Operations for the company in 2008.

Dr. Vieth has over 30 years of experience in all areas of dentistry and spent an extensive amount of that time in cosmetic dentistry restoring implants and completing extensive crown and bridge cases. He is also certified in Invisalign, Orthoclear, and CEREC.

Dr. Vieth is a standing member of the American Dental Association, the Eighth District Dental Association, the Erie County Dental Society, and the American Academy of Pediatric Dentistry.

**Dr. Dale Mayfield DMD, Executive Dental Officer**

Dr. Dale Mayfield received his undergraduate degree in Exercise Physiology from Brigham Young University and his Doctor of Dental Medicine degree from the Medical College of Georgia. He went on to spend 10 years in private practice in Decatur, Georgia, gaining extensive experience in all aspects of dentistry, including implants, complex crown and bridge cases, Invisalign, CEREC and endodontics.

With this experience, Dr. Mayfield decided to commit his expertise to provide quality dental care for the underserved by joining Kool Smiles in 2006 as an Executive Dental Officer. Dr. Mayfield is a member of the American Dental Association, the American Academy of Pediatric Dentistry and the Northern District Dental Society.

He remains an avid fly fisher, outdoorsman and an active member of his church community. He lives in Georgia with his wife and four children.



PLAINTIFF'S EXHIBIT
D

REPRODUCTION OR DISTRIBUTION OF THIS MANUAL IS PROHIBITED WITHOUT THE PRIOR, EXPRESS WRITTEN PERMISSION OF KOOL SMILES PC.



## Kool Smiles Dental Leadership Team, continued

| | |
|---|---|
| Dr. Tu Tran, Founding Dentist | Dr. Tran is a founding dentist and owner of Kool Smiles P.C. Dr. Tran was formerly Lead Dentist at "Smile High, General Dentistry for Children" in Denver, Colorado. Prior to Smile High, Dr. Tran worked at Perfect Teeth of Denver, Colorado. Dr. Tran received his Bachelors degree in Biology and Chemistry from the University of Denver and received his Doctorate in Dental Surgery from the University of Colorado. Dr. Tran is a member of the American Dental Association, the Colorado Dental Association and the Georgia Dental Association. |
| Paul O. Walker, Vice President, Clinical Quality | Dr. Paul O. Walker is a board certified pediatric dentist. He received his DDS from Northwestern University and his MS from Indiana University. He served as a dental officer in the U.S. Navy (1966-1968) and served as the Lead Pediatric Dentist for HealthPartners. He was the Director of the Advanced Education Program in Pediatric Dentistry and the Director of The Hospital Dental Clinic at the University of Minnesota (1972-1994) and went on to serve as the Associate Dean for Clinical Services and Professor of Pediatric Dentistry at the Baylor College of Dentistry/Texas A & M University (1994-1998). |

Dr. Walker is a fellow of the American College of Dentists, the International College of Dentists, and the AAPD. For the AAPD, he has served on the Board of trustees (1987-1990) and as a President and Director/Examiner (1993-2000). Currently, he is a member of the Pediatric Dentistry Review Committee for the Commission on Dental Accreditation and is a scientific article reviewer for Practical Reviews in Pediatric Dentistry.

Dr. Walker retired from full time practice and teaching in 2000, but continues to work for both Health Partners and Indiana University in a part-time capacity and is an independent pediatric dentistry consultant.

REPRODUCTION OR DISTRIBUTION OF THIS MANUAL IS PROHIBITED WITHOUT THE PRIOR, EXPRESS WRITTEN PERMISSION OF KOOL SMILES PC.

# MAUZÉ & BAGBY, PLLC

### A PROFESSIONAL LIMITED LIABILITY COMPANY
### ATTORNEYS AT LAW

October 6, 2014

*VIA FAX & REGULAR MAIL*
Mr. Wayne B. Mason, Esq.
Mr. Alan Vickery, Esq.
Ms. Cori Steinmann, Esq.
Sedgwick, LLP
1717 Main Street, Suite 5400
Dallas, TX 75201-7367

*VIA FAX & REGULAR MAIL*
Mr. Eduardo R. Rodriguez, Esq.
Atlas, Hall & Rodriguez, L.L.P.
50 W. Morrison Road, Suite A
Brownsville, Texas 78520

Re:  CAUSE NO. C-0184-13-G; <u>Antu, et al v. NCDR, L.L.C. d/b/a Kool Smiles, et al</u>

Dear Counsel:

After review of the documents produced by Defendants in response to Plaintiffs' requests for production, it appears that Defendants have erroneously and frivolously marked nearly every responsive document as confidential and subject to the Stipulated Protective Order and Confidentiality Agreement. Enclosed, please find a draft of Plaintiffs' Motion for Discovery Sanctions Against Defendants Dentistry of Brownsville, P.C. d/b/a Kool Smiles, NCDR, LLC d/b/a Kool Smiles, and Kool Smiles, P.C. d/b/a Kool Smiles, or, in the alternative, Plaintiffs' Motion for Determination of Confidentiality and Entry of New Confidentiality Agreement and Protective Order, which Plaintiffs intend to file with the Court if we are unable to resolve the issues stated therein.

By this letter, Plaintiffs are attempting to confer regarding the issues raised in the aforementioned motion. By 9:00 a.m. on October 13, 2014, please identify by bates-stamped number, which documents, if any, that Defendants intend to remove the designation of confidentiality from.

Please do not hesitate to let me know if you have any questions.

Sincerely,

Tom Bagby

TB/da
enclosures

PLAINTIFF'S
EXHIBIT
E

# MAUZÉ & BAGBY, PLLC

2632 Broadway, Suite 402 South                 Telephone: 210.354.3377
San Antonio, Texas 78215                            Fax: 210.354.3909

DATE: October 6, 2014                RE:  *Antu, et al v. NCDR, LLC dba*
                                          *Kool Smiles, et al*

TO:   Mr. Wayne B. Mason, Esq.        FAX NO.:  (469) 227-8004
      Mr. Alan Vickery, Esq.
      Ms. Cori Steinmann, Esq.
      Sedgwick LLP

FROM:   George W. Mauzé, II           NO. OF PAGES (including this page): 37
        Tom Bagby
        Mauzé & Bagby

OUR FILE NO. 1201  Rush: _____      ASAP: XXX      Regular: _____

INSTRUCTIONS/COMMENTS:

THIS FACSIMILE MESSAGE IS A PRIVILEGED AND CONFIDENTIAL COMMUNICATION AND IS TRANSMITTED FOR THE EXCLUSIVE   INFORMATION AND USE OF THE ADDRESSEE.  PERSONS RESPONSIBLE FOR DELIVERING THIS COMMUNICATION TO THE INTENDED RECIPIENT ARE ADMONISHED THAT THIS COMMUNICATION MAY NOT BE COPIED OR DISSEMINATED EXCEPT AS DIRECTED BY THE ADDRESSEE.  IF YOU RECEIVE THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND MAIL THE COMMUNICATION TO US AT OUR LETTERHEAD ADDRESS.  THANK YOU

IF YOU DO NOT RECEIVE ALL OF THESE PAGES, PLEASE CALL OUR OFFICE AS SOON AS POSSIBLE.

# MAUZÉ & BAGBY, PLLC

### A PROFESSIONAL LIMITED LIABILITY COMPANY
### ATTORNEYS AT LAW

| | |
|---|---|
| 2632 Broadway, Suite 401 South | Telephone: (210) 354.3377 |
| San Antonio, Texas 78215 | Fax: (210) 354.3909 |

DATE: October 6, 2014

TO: Mr. Eduardo R. Rodriguez, Esq.
Atlas, Hall & Rodriguez, LLP

RE: *Antu, et al v. NCDR, LLC dba Kool Smiles, et al*

FAX NO: 956-574-9337

FROM: George W. Mauzé, II
Tom Bagby
Mauzé & Bagby

NO. OF PAGES (including this page): 37

OUR FILE NO. 1201   Rush: _____   ASAP: XXX   Regular: _____

INSTRUCTIONS/COMMENTS:

THIS FACSIMILE MESSAGE IS A PRIVILEGED AND CONFIDENTIAL COMMUNICATION AND IS TRANSMITTED FOR THE EXCLUSIVE INFORMATION AND USE OF THE ADDRESSEE. PERSONS RESPONSIBLE FOR DELIVERING THIS COMMUNICATION TO THE INTENDED RECIPIENT ARE ADMONISHED THAT THIS COMMUNICATION MAY NOT BE COPIED OR DISSEMINATED EXCEPT AS DIRECTED BY THE ADDRESSEE. IF YOU RECEIVE THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND MAIL THE COMMUNICATION TO US AT OUR LETTERHEAD ADDRESS. THANK YOU

IF YOU DO NOT RECEIVE ALL OF THESE PAGES, PLEASE CALL OUR OFFICE AS SOON AS POSSIBLE.

ORIGINAL TO FOLLOW BY:     Regular Mail_____; Overnight delivery_____;
Hand/Courier delivery_____; Other_____; Original Will Not Follow _____.

* * * Communication Result Report ( Oct. 6. 2014 2:55PM ) * * *

$\frac{1}{2}$

Date/Time: Oct. 6. 2014 2:50PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|----------|------|-------------|-------|--------|---------------|
| 3587 | Memory TX | 19565749337 | P. 37 | OK ✓ | |

Reason for error
E. 1) Hang up or line fail          E. 2) Busy
E. 3) No answer                     E. 4) No facsimile connection
E. 5) Exceeded max. E-mail size

---

## MAUZÉ & BAGBY, PLLC
A PROFESSIONAL LIMITED LIABILITY COMPANY
ATTORNEYS AT LAW

2632 Broadway, Suite 401 South          Telephone: (210) 354.3377
San Antonio, Texas 78215                Fax (210) 354.3909

DATE: October 6, 2014                   RE: Aniu, et al v. NCDR, LLC dba Kool
                                        Smiles, et al
TO: Mr. Eduardo R. Rodriguez, Esq.
Atlas, Hall & Rodriguez, LLP            FAX NO: 956-574-9337

FROM: George W. Mauzé, II              NO. OF PAGES (including this page) 37
Tom Bagby
Mauzé & Bagby

OUR FILE NO. 1201  Rush: _____         ASAP: XXX  Regular: _____

INSTRUCTIONS/COMMENTS:

THIS FACSIMILE MESSAGE IS A PRIVILEGED AND CONFIDENTIAL COMMUNICATION AND IS
TRANSMITTED FOR THE EXCLUSIVE INFORMATION AND USE OF THE ADDRESSEE. PERSONS
RESPONSIBLE FOR DELIVERING THIS COMMUNICATION TO THE INTENDED RECIPIENT ARE
ADMONISHED THAT THIS COMMUNICATION MAY NOT BE COPIED OR DISSEMINATED EXCEPT AS
DIRECTED BY THE ADDRESSEE. IF YOU RECEIVE THIS COMMUNICATION IN ERROR, PLEASE
NOTIFY US IMMEDIATELY BY TELEPHONE AND MAIL THE COMMUNICATION TO US AT OUR
LETTERHEAD ADDRESS. THANK YOU

IF YOU DO NOT RECEIVE ALL OF THESE PAGES, PLEASE CALL OUR OFFICE AS
SOON AS POSSIBLE.

ORIGINAL TO FOLLOW BY:    Regular Mail _____ ; Overnight delivery _____ ;
Hand/Courier delivery _____ ; Other _____ ; Original Will Not Follow _____

* * * Communication Result Report ( Oct. 6. 2014 3:14PM ) * * *

$\frac{1}{2}$}

Date/Time: Oct. 6, 2014  3:07PM

| File<br>No. Mode | Destination | Pg(s) | Result | Page<br>Not Sent |
|---|---|---|---|---|
| 3588 Memory TX | 14692278004 | P. 37 | OK ✓ | |

---

Reason for error
  E. 1) Hang up or line fail       E. 2) Busy
  E. 3) No answer              E. 4) No facsimile connection
  E. 5) Exceeded max. E-mail size

---

## MAUZÉ & BAGBY, PLLC

2632 Broadway, Suite 402 South        Telephone: 210.354.3377
San Antonio, Texas 78215                Fax: 210.354.3909

DATE: October 6, 2014        RE: *Arits, et al v. HCDR, LLC dba*
                                    *Kool Smiles, et al*

TO:  Mr. Wayne B. Mason, Esq.     FAX NO.: (469) 227-8004
      Mr. Alon Vickary, Esq.
      Ms. Cori Steinmann, Esq.
      Sedgwick LLP

FROM:  George W. Mauzé, II    NO. OF PAGES (including this page): 37
        Tom Bagby
        Mauzé & Bagby

OUR FILE NO. 1201  Rush: _____    ASAP: XXX    Regular: _____

INSTRUCTIONS/COMMENTS:

THIS FACSIMILE MESSAGE IS A PRIVILEGED AND CONFIDENTIAL COMMUNICATION AND IS TRANSMITTED FOR THE EXCLUSIVE INFORMATION AND USE OF THE ADDRESSEE. PERSONS RESPONSIBLE FOR DELIVERING THIS COMMUNICATION TO THE INTENDED RECIPIENT ARE ADMONISHED THAT THIS COMMUNICATION MAY NOT BE COPIED OR DISSEMINATED EXCEPT AS DIRECTED BY THE ADDRESSEE. IF YOU RECEIVE THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND MAIL THE COMMUNICATION TO US AT OUR LETTERHEAD ADDRESS. THANK YOU.

IF YOU DO NOT RECEIVE ALL OF THESE PAGES, PLEASE CALL OUR OFFICE AS SOON AS POSSIBLE.

## Tom Bagby

| | |
|---|---|
| **From:** | Tom Bagby <tbagby@mauzebagbylaw.com> |
| **Sent:** | Wednesday, October 15, 2014 5:07 PM |
| **To:** | 'Steinmann, Cori' |
| **Subject:** | RE: Kool Smiles - Response to Confidentiality |

Cori,

Defendants marked nearly every document as confidential. Per the protective order, Defendants are representing to the Court that each document marked as confidential contains confidential information and/or trade secrets. Based upon our review of the documents, many documents that were marked as confidential cannot possibly contain confidential information. As such, it is our position that Defendants have not only made many misrepresentations to the Court but also have abused the discovery process. As such, we intend to take this matter up with the Court. However, in the spirit of cooperation, I would be willing to further discuss this matter with you to see if we can come to an agreement on how to handle this issue. I am available all day tomorrow and Friday if you wish to discuss the same.

Tom

----

Tom Bagby
MAUZE & BAGBY, PLLC
2632 Broadway, Suite 402 S
San Antonio, TX 78215
T: 210.354.3377
F: 210.354.3909
Toll Free: 1.800.200.9096
tbagby@mauzebagbylaw.com
*Licensed in Texas, Louisiana & Montana

### ** CONFIDENTIALITY NOTICE **

The information contained in this E-Mail is privileged and confidential and is intended only for the use of the addressee. The term "privileged and confidential" includes, without limitation, attorney-client privileged communications, attorney work product, trade secrets, and any other proprietary information. Nothing in this message is intended by the attorney of the client to constitute a waiver of the confidentiality of this message. If the reader of this message is not the intended recipient, or employee/agent of the intended recipient, you are hereby notified that any duplication or distribution of this communication is unauthorized. If you have received this message in error, please notify us immediately.

**From:** Steinmann, Cori [mailto:Cori.Steinmann@sedgwicklaw.com]
**Sent:** Monday, October 13, 2014 9:35 AM
**To:** tbagby@mauzebagbylaw.com
**Subject:** FW: Kool Smiles - Response to Confidentiality

Tom,

I have reviewed your letter and proposed Motion concerning documents marked by Kool Smiles as confidential. Although I think we should discuss the issue further, below is my preliminary response to the issues you raised.

First, the deadline you propose in your letter is unreasonable. You have had almost a year to review our documents and have never raised the issue of our confidentiality designations, yet you unilaterally set a one week deadline for us to review our entire production to determine if confidentiality designations are appropriate. This is unreasonable. Moreover, your demand that we review our production and identify documents we intend to remove the confidentiality designation from is not what the parties agreed to in the Protective Order. Per the Protective Order, which you and George had input in drafting, if a party disagrees with the confidential designation that party must identify the "specific document" and attempt to resolve the dispute. As such, you cannot simply point to one or two documents that you disagree with and demand that we then go and re-review our entire production. If there are specific documents that you take issue with the confidential designation, please provide me a list of those documents and I will review them and let you know the basis for the designation and/or agree to remove the designation.

As to the "specific documents" that you have identified in your Motion, please see the following explanation and/or agreements:

- KSL-00465030-00465035- These redacted pages are part of a larger document, which is confidential and is designated as such. The fact that some of the information in the document has been redacted because it is outside the scope of the litigation does not mean that the information contained on these pages, and within the document as a whole, is not confidential. Confidentiality applies to the entire document, not specific pages within.
- KSL-00000042 and KSL-00000264- These pages are again part of larger documents, which are confidential and are designated as such. These specific pages are the last page of each document and, for whatever reason, do not have any content, but this is how the record was kept in the ordinary course of business. Again, confidentiality applies to the entire document, not specific pages within.
- KSL00474199-00474322- We agree to remove the Confidentiality designation.
- KSL00464784-00464937- We agree to remove the Confidentiality designation.
- KSL00005635-KSL00005647- We agree to remove the Confidentiality designation.
- DOB001333-001334- These pages are part of the New Doctor Orientation Manual, which is confidential and proprietary. This is not a publically available document and is provided only to Kool Smiles dentists after they have signed a confidentiality agreement. In fact, the document itself expressly states that it is not to be reproduced or distributed. As such, the Manual, which includes the referenced pages, is confidential.

Please let me know when we can discuss any outstanding concerns that you may have regarding confidentiality designations.

Best Regards,
Cori
**Cori M. Steinmann**
cori.steinmann@sedgwicklaw.com
469.227.4625 direct

# Sedgwick LLP

1717 Main Street, Suite 5400
Dallas, TX 75201
469.227.8200 phone | 469.227.8004 fax | www.sedgwicklaw.com

The information in this email is intended for the named recipients only. It may contain privileged and confidential matter. If you have received this email in error, please notify the sender immediately by replying to this email. Do not disclose the contents to

anyone. Thank you.

MDL NO. __C-0184-13-G__

|  |  |  |
|---|---|---|
| **IN RE KOOL SMILES DENTAL LITIGATION** | § § § § § § § § § § § | **IN THE DISTRICT COURT OF HIDALGO COUNTY, TEXAS 370TH JUDICIAL DISTRICT** |

### DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO AMEND CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER OR, ALTERNATIVELY MOTION FOR SANCTIONS OR, ALTERNATIVELY, FOR <u>DETERMINATION OF CONFIDENTIALITY</u>

Defendants Benevis LLC, f/k/a NCDR, LLC ("Benevis"), Kool Smiles, P.C. ("KSPC"), and Dentistry of Brownsville, P.C. ("DOB"), along with the individual dentists[1] named as Defendants in all cases transferred to the pretrial multi-district litigation Court ("Defendants"), provide the following response[2] to Plaintiff's Motion to Amend Confidentiality Agreement and Protective Order or Alternatively for Sanctions, or Alternatively for Determination of Confidentiality ("Motion").

### I. SUMMARY

Subject to Defendants' objection to this Motion being heard at this time, Plaintiffs' Motion should be denied. The parties negotiated and mutually drafted the Stipulated Confidentiality Agreement and Protective Order ("Protective Order") in question. The Protective Order is proper and in no way impedes Plaintiffs in this MDL litigation. Consistent with common sense and legal precedent, it prohibits shared discovery of confidential information

---

[1] This reference excludes Dr. Jessie Trinh, Defendant in the *Arroyo, et al. v. Mathisen, et al.*, CL-14-3569 matter transferred from the County Court of Law No. 4 in Hidalgo County, because she is represented by separate counsel.

[2] Defendants object to this Motion being heard as it is not ripe for determination. Texas Rule of Judicial Administration 13.5(b) states that after a case is transferred from the trial court to the MDL court "the trial court must take no further action." As this motion was filed in the trial court it is not properly before the court in this MDL proceeding.

in unrelated litigation. Rather than abide by the terms of the Protective Order, however, Plaintiffs now ask the court to strike Defendants' confidentiality designations for the express improper purpose of sharing documents with parties not affiliated with this litigation and circumventing the discovery process in a federal lawsuit in which Plaintiffs' attorneys are named defendants.

## II. ARGUMENTS AND AUTHORITIES

**1.      The Protective Order was Negotiated, Mutually Drafted, and Stipulated.**

The Protective Order at issue (attached hereto as Exhibit "A") was negotiated, mutually drafted, and stipulated. Plaintiffs' counsel provided draft protective orders on at least two occasions: May 14, 2013 and May 28, 2013. The parties negotiated the proposed terms drafted by each side and ultimately the stipulated Protective Order was entered as an Agreed Order on June 11, 2013.

**2.      The Protective Order Does Not Impair MDL Plaintiffs.**

Plaintiffs in these MDL cases are not restricted from using documents and information designated as Confidential under the Protective Order. The Protective Order states, "Confidential Information may be referred to by a party in notices, motions, briefs or any other pleadings, may be used in depositions, and may be marked as deposition exhibits." Protective Order ¶ 7. Further, the Protective Order states, "Nothing in this Stipulated Protective Order shall be construed as placing a limit on the use of Confidential Information at trial." *Id.* ¶ 9.

**3.      There is a Procedure in the Protective Order to Resolve Disputes Concerning Confidentiality Designations.**

The parties contemplated that disputes would arise over Confidential designations under the Protective Order. Paragraph 6 of the Order provides "If a party disagrees with the 'Confidential' designation of a specific document or thing, the parties agree to attempt to meet

and confer with one another to resolve the issue." *Id.*¶ 6. This paragraph was negotiated by the parties, and Plaintiffs' counsel even proposed revisions to it which were agreed to by Defendants' counsel, before the Order was submitted to the Court. (See email from Tom Bagby with redlined revisions, dated May 14, 2013, attached hereto as Exhibit "B").

Since the Protective Order was entered in June 2013, Plaintiffs have only identified six specific documents that they claim have been improperly designated as Confidential. Upon receiving Plaintiffs' challenge to these six documents, Defendants promptly responded and agreed to withdraw the confidential designation for three documents, and provided explanations as to how each of the other three were in fact confidential. *See* email from Cori Steinmann dated 11/13/2014, attached hereto as Exhibit "C".

While Plaintiffs make sweeping claims about Defendants' confidentiality designations, they have provided no additional examples of alleged improper designations. Rather, they only allege that Defendants have abused the process by designating documents which are not confidential. Plaintiffs have not even attempted to identify specific documents or confer about designations made to specific documents, in direct violation of the Protective Order. As recently as June 11, 2015, Defendants again requested that Plaintiffs comply with the Protective Order and identify what "Confidential" designations they disagreed with (*See* email from Alan Vickery dated June 11, 2015, attached hereto as Exhibit "D"). Plaintiffs have not done so but, instead, just allege that too many documents were designated. Defendants are left to merely guess at what designations Plaintiffs take issue with, which is exactly the scenario the parties agreed to avoid by including paragraph 6 in the Protective Order.

Plaintiffs' defiance of the Protective Order is no basis for amending it. To the contrary, unless and until Plaintiffs make a good faith effort under the Protective Order to identify specific

documents on which the Confidentiality designation is challenged, there is no basis to believe it is not appropriate and workable.

### 4. Plaintiffs Improperly Seek to Circumvent Discovery in Dissimilar Federal Litigation.

The real reason Plaintiffs seek relief from the Agreed Protective Order is to allow them to use the documents for purposes irrelevant to this litigation. Plaintiffs' counsel doesn't seek access to documents without Confidentiality designations to benefit their clients in this case. Rather, they want to share the documents with attorneys not affiliated with this litigation and circumvent the discovery process in an unrelated federal case. This was confirmed in Plaintiffs' counsel's June 10, 2015 email, which stated "[i]f your client agrees to modify the protective order or enter into a Rule 11 that allows the documents to be reviewed by… our attorneys in the federal case, then I will agree to drop the hearing [on the Motion]." *See* email from George Mauze dated June 10, 2015, attached hereto as Exhibit "E" (emphasis in exhibit not in original).

The federal case referenced in this email is a case filed by some of the Defendants herein against Plaintiffs' counsel. That case, which is pending in federal court in Laredo, contains different claims, different issues, and different rules and court orders regulating discovery. Plaintiffs' counsel's defense of himself in that litigation is an entirely improper justification for the relief requested. Discovery issues in the federal case should be left to the federal court presiding over that case.

Shared discovery with the dissimilar federal case is not appropriate. Under Texas law, the underlying rationale for shared discovery is that in state court cases with similar discovery needs that present similar issues, shared discovery can promote efficiency, consistency, full and fair disclosure, and prevent needless duplication and expense. *See, e.g. Garcia v. Peeples*, 734 S.W.2d 343, 347 (Tex. 1987); *Steenbergen v. Ford Motor Co.*, 814 S.W.2d 755, 758 (Tex. App.-

Dallas 1991, writ denied). The federal lawsuit involves different claims, issues, and rules of discovery than these MDL cases. Therefore, the primary rationale for shared discovery simply does not exist between that case and the MDL cases.

The Protective Order does not impair Plaintiffs' counsel's ability to represent their clients in this proceeding. In fact, none of the relief requested by this Motion is designed to further this MDL proceeding at all, nor is it sought to assist Plaintiffs in this litigation with their claims against these Defendants. The relief requested by Plaintiffs, therefore, should be denied.

### III. CONCLUSION

Based on the foregoing, Defendants Benevis LLC, f/k/a NCDR, LLC ("Benevis"), Kool Smiles, P.C. ("KSPC"), and Dentistry of Brownsville, P.C. ("DOB") (collectively the "Corporate Defendants"), along with the individual dentists[3] named as Defendants in all cases transferred to the pretrial multi-district litigation respectfully request that Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order or Alternatively for Sanctions, or Alternatively for Determination of Confidentiality be denied, and for such other and further relief to which they are entitled.

---

[3] This reference excludes Dr. Jessie Trinh, Defendant in the *Arroyo, et al. v. Mathisen, et al.*, CL-14-3569 matter transferred from the County Court of Law No. 4 in Hidalgo County, because she is represented by separate counsel.

20311987v4

**DEFENDANTS' RESPONSE TO MOTION TO AMEND CONFIDENTIALITY AGREEMENT**

Respectfully Submitted,


*/s/ Alan R. Vickery*
WAYNE B. MASON
State Bar No. 13158950
ALAN R. VICKERY
State Bar No. 20571650
**SEDGWICK LLP**
1717 Main Street, Suite 5400
Dallas, TX 75201-7367
Telephone:   (469) 227-8200
Facsimile:    (469) 227-8004
wayne.mason@sedgwicklaw.com
alan.vickery@sedgwicklaw.com



EDUARDO R. RODRIGUEZ
State Bar No. 00000080
**ATLAS, HALL & RODRIGUEZ, L.L.P.**
50 W. Morrison Road, Suite A
Brownsville, TX 78520
Telephone:   (956) 574-9333
Facsimile:    (956) 574-9337
errodriguez@atlashall.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record as shown below via facsimile and email on the 14th day of June, 2015.

George W. Mauzé, II
MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 401 South
San Antonio, TX 78215
gmauze@mauzelawfirm.com

R.D. "Bobby" Guerra
GUERRA, LEEDS, SABO & HERNANDEZ
PLLC
10213 N. 10th Street
McAllen, TX 78504
rdguerra@guerraleeds.com
Attorneys for Plaintiffs

Bruce S. Campbell
State Bar No: 03694600
BRACKETT & ELLIS,
A Professional Corporation
100 Main Street
Fort Worth, TX. 76102-3090
817.338.1700
Facsimile: 817.870.2265
bcampbell@belaw.com
Attorneys for Defendant Jessie Trinh, DMD

*/s/ Alan R. Vickery*
ALAN R. VICKERY

# Exhibit A

| | | |
|---|---|---|
| PAULA ANTU, as Next Friend of ███████████████, a Minor, et al., | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § § § | |
| vs. | § § | |
| NCDR, LLC d/b/a KOOL SMILES, DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES, AISHWARYA K. CHANDESH, D.D.S., EDWARD HO, D.D.S., RICHARD I. MANWARING, D.D.S., and MARC D. THOMAS, D.D.S., | § § § § § § § § § | 370th JUDICIAL DISTRICT |
| Defendants. | § § | HIDALGO COUNTY, TEXAS |

## STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

Defendants NCDR, L.L.C., Dentistry of Brownsville, P.C., Aishwarya K. Chandesh, D.D.S., Edward Ho, D.D.S., Richard I. Manwaring, D.D.S., and Marc D. Thomas, D.D.S. (hereinafter "Defendants") may disclose certain Confidential Information to the parties in this action pursuant to discovery. Plaintiffs Paula Antu, as Next Friend of ███████████, a Minor, et al. ("Plaintiffs") and the Defendants agree to enter into this Stipulated Confidentiality Agreement and Protective Order (hereinafter "Stipulated Protective Order") for the purpose of facilitating and expediting the discovery process and to reduce the Court's time from having to conduct separate hearings on the information sought to be protected. In order to protect their alleged confidential documents, proprietary interests and trade secret information, the Defendants wish to ensure that any such Confidential Information shall not be used for any purpose other than this action and shall not be made public or disseminated by any party or their counsel, except as set forth in this Stipulated Protective Order.

The Defendants assert that all documents, testimony, and/or other items to be produced pursuant to this Stipulated Protective Order contain trade secret, proprietary and/or confidential

information (referred to collectively as "Confidential Information"). Accordingly, the parties stipulate to the following:

1.      For the purposes of this Stipulated Protective Order, "Confidential Information" may include, but is not limited to, information and documentation produced in responses to discovery, the content of electronically stored information, tangible thing, writing, paper, model, photograph, film, videotape, transcript of oral testimony, whether printed, recorded or produced by hand or any other mechanical process. All documents, testimony and other items designated as Confidential Information, and all copies, summaries, and reproductions of such information, are subject to this Stipulated Protective Order.

2.      Whenever the Defendants produce Confidential Information, the Defendants shall designate each page of the document or thing with a label or stamp identifying it as "Confidential" and/or "Produced Pursuant to Protective Order." Inadvertent or unintentional production of documents or information containing Confidential Information that are not designated "Confidential" shall not be deemed a waiver, in whole or in part, of a claim for confidential treatment; however, if Defendants do not designate such documents or things as Confidential Information within 30 days of discovering such inadvertent production, any such claim to confidentiality of said document, information or thing produced shall be deemed waived.

3.      All material which the Defendants designate as Confidential Information in this action shall be maintained in strict confidence by the parties to this action and pursuant to the terms of this Stipulated Protective Order. Plaintiffs shall not disclose or permit to be disclosed Confidential Information to any person or other entity, except to "Qualified Persons" who shall be defined to include:

    a.      Counsel of record for the parties in this action, and employees of such counsel who are engaged in assisting counsel with this action, provided they have first read this Stipulated Protective Order and have agreed to abide by its terms;

    b.      The employee(s) of a corporate party charged with overseeing that party's participation in this action, provided they have first read this Stipulated Protective Order and have agreed to abide by its terms;

    c.      Independent experts and/or consultants, including jury consultants, retained by the parties to this action for the purpose of assisting in the preparation of this case, provided they have first read this Stipulated Protective Order and have agreed to abide by its terms and have signed a written certification in the form attached as "Exhibit A." Counsel for all parties to this action shall maintain such certifications for 6 months following the termination of this Action and will not destroy or alter such material pursuant to any document retention policy or for any other reason

without first providing reasonable notice (no shorter than 30 days) to counsel of record in this case;

d. Witnesses who may be shown and questioned about the Confidential Information and whose testimony as well as the information attached or submitted as exhibits, shall remain subject to this Stipulated Protective Order; and

e. The court, court personnel, special masters, mediators, other persons appointed by the court in this action, stenographic and other reporters, and videographers pursuant to the provisions of Paragraph 5.

4. Any person who reviews the Confidential Information produced subject to this Stipulated Protective Order agrees to the jurisdiction over their person where the above-captioned matter is pending for the purposes of any action seeking to enforce the terms of this Stipulated Protective Order or any action for contempt for violation of the terms of this Stipulated Protective Order.

5. The parties and their counsel who receive Confidential Information shall act to preserve the confidentiality of designated documents and information. Any party that intends to use or submit any Confidential Information in connection with any pre-trial proceedings or filings shall notify the producing party in writing of its intention to do so at the time of or before filing any related pleadings, motions or other documents, and provide in such notice the Bates numbers or other sufficient description of such Confidential Information as to allow the producing party to identify the Confidential Information. The Confidential Information shall be submitted to the Court *in camera* in a sealed envelope or other appropriate container labeled as follows: "CONFIDENTIAL – DOCUMENTS SUBMITTED IN CAMERA" if used as exhibits to any filings in this case or in hearings.

6. If a party disagrees with the "Confidential" designation of a specific document or thing, the parties agree to attempt to meet and confer with one another to resolve the issue. If the parties are unable to resolve the issue, the party that intends to use the Confidential Information shall move for a hearing to obtain a ruling from the Court as to whether the information is entitled to confidential treatment under this Stipulated Protective Order. Until the issue of confidentiality is resolved, either through mutual agreement of the parties or by court intervention, documents designated as Confidential Information shall remain Confidential.

7. Confidential Information may be referred to by a party in notices, motions, briefs or any other pleadings, may be used in depositions, and may be marked as deposition exhibits in this action. No such information shall be used, however, for any of these purposes unless it, or the portion where it is revealed, is appropriately marked and protected from dissemination and, where filing is necessary, it will be done pursuant to the provisions of Paragraph 5.

8. If any party wishes to modify this Stipulated Protective Order or its application to certain documents or information, that party shall first request such modification from the party producing the Confidential Information and if no satisfactory agreement is reached, may petition the court for modification. Until modification is granted by agreement and/or Court Order, the terms of this Stipulated Protective Order will govern.

9. Nothing in this Stipulated Protective Order shall be construed as placing a limit on the use of Confidential Information at trial. However, before trial, the parties will address this issue and determine appropriate safeguards to protect the Confidential Information at trial.

10. No Confidential Information shall be disseminated to anyone who is a direct competitor of the party producing the Confidential Information or is a current employee of a direct business competitor of the party producing the Confidential Information. This paragraph shall not apply to any retained or consulting experts. However, any retained or consulting experts excluded under this paragraph shall comply with paragraph 3(c). In addition, said expert(s) s hall n ot disclose the Confidential Information to any direct competitor or other person currently or formerly employed by a direct business competitor of the party producing the Confidential Information. *P's' counsel shall retain Declarations executed by Consulting Experts.* ᴴ/CCS

11. Failure to abide by the terms of this Stipulated Protective Order may result in a motion for sanctions, costs, and attorney's fees, and any other appropriate legal action by or on behalf of the Defendants.

12. This Stipulated Protective Order and/or the Defendants' production of documents, things, or information in this action for inspection, copying, or disclosure to any other party to this action shall not be deemed to waive any claim of attorney-client or work product privilege that might exist with respect to these or any other documents or communications, written or oral, including, without limitation, other communications referred to in any documents which the Defendants may produce.

13. Within thirty (30) days from the entry of final judgment, settlement, or dismissal in connection with this action, each party to this action shall return to counsel for the Defendants their original copies of all Confidential Information received under this Stipulated Protective Order, together with all reproductions and copies. In addition, all abstracts, summaries, indexes or other writings that contain, reflect, or disclose the substance of the Confidential Information received under this Stipulated Protective Order shall be destroyed by Plaintiffs' counsel within six (6) months from the entry of final judgment, settlement, or dismissal in connection with this action. Each party's counsel will certify by declaration to the Defendants' counsel that this Stipulated Protective Order has been complied with by them and their experts/consultants in the form attached as "Exhibit B."

This Court retains and shall have continuing jurisdiction over the parties and recipients of the Confidential Information and Protected Documents for enforcement of the provisions of this Stipulated Protective Order until compliance with Paragraph 13. This Stipulated Protective Order shall be binding upon the parties and their attorneys, successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.

SIGNED this the _____ day of _____, 2013.

_____
JUDGE PRESIDING

AGREED:


By: _____
     George W. Mauze, II
     State Bar No. 13238800
     Tom Bagby
     State Bar No. 24059409

**Mauze & Bagby, PLLC**
2632 Broadway, Suite 401 South
San Antonio, Texas 78215
Telephone:    (210) 354-3377
Facsimile:    (210) 354-3909


By: _____
     Wayne B. Mason
     State Bar No. 13158950
     Alan Vickery
     State Bar No. 20571650

**SEDGWICK LLP**
1717 Main Street, Suite 5400
Dallas, Texas 75201-7367
Telephone:    (469) 227-8200
Facsimile:    (469) 227-8004

## EXHIBIT "A"

**[ATTACH FULLY EXECTUED STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER TO THIS AFFIDAVIT]**

### CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU, as Next Friend of ██████████████, a Minor, et al., | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| vs. | § § | |
| NCDR, LLC d/b/a KOOL SMILES, DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES, AISHWARYA K. CHANDESH, D.D.S., EDWARD HO, D.D.S., RICHARD I. MANWARING, D.D.S., and MARC D. THOMAS, D.D.S., | § § § § § § § § § | 370th JUDICIAL DISTRICT |
| Defendants. | § | HIDALGO COUNTY, TEXAS |

## DECLARATION OF [INSERT NAME OF DECLARANT] RE STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

STATE OF _____ )
                            ) ss.
COUNTY OF _____ )

I, _____, declare under penalty of perjury under
    (insert name of recipient of the documents)
the laws of the **[IDENTIFY STATE/United States of America]** that the following is true and correct:

1.     My full name and business address are:

_____.

2.     I have read and fully understand the attached Stipulated Confidentiality Agreement and Protective Order.

3.     I am fully familiar with and agree to comply with and be bound by the provisions

of said Stipulated Confidentiality Agreement and Protective Order, and submit to the jurisdiction of the court in which this matter is pending for any proceedings with respect to said Stipulated Confidentiality Agreement and Protective Order.

4. I will not discuss or divulge to persons other than those specifically authorized by this Stipulated Confidentiality Agreement and Protective Order, and will not copy or use, except solely for the purposes of this action and for no other purposes, any documents, materials or information obtained pursuant to said Stipulated Confidentiality Agreement and Protective Order.

5. I will return original copies of all Confidential Information received under this Stipulated Confidentiality Agreement and Protective Order, together with all reproductions and copies of the Confidential Information to counsel that retained me in this case.

EXECUTED this _____ day of _____, 2013.


_____
Signature of Declarant


_____
Printed Name

**[ATTACH FULLY EXECUTED STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER TO THIS AFFIDAVIT]**

CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU, as Next Friend of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ al., | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § § | |
| vs. | § § | |
| | § | 370th JUDICIAL DISTRICT |
| NCDR, LLC d/b/a KOOL SMILES, DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES, AISHWARYA K. CHANDESH, D.D.S., EDWARD HO, D.D.S., RICHARD I. MANWARING, D.D.S., and MARC D. THOMAS, D.D.S., | § § § § § § § § | |
| Defendants. | § | HIDALGO COUNTY, TEXAS |

**DECLARATION OF [INSERT NAME OF DECLARANT] RE STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER**

STATE OF _____ )
                                       ) ss.
COUNTY OF _____ )

I, _____, declare under penalty of perjury under
       (insert name of recipient of the documents)

the laws of the **[IDENTIFY STATE/United States of America]** that the following is true and correct:

1. I am counsel of record for **[name of party]**. My full name and business address are:

_____.

(insert name and address of recipient of the documents)

2. I am bound by the terms and conditions of the Stipulated Confidentiality Agreement and Protective Order. I acknowledged my consent to be so bound by executing the

attached Stipulated Confidentiality Agreement and Protective Order.

3.     Pursuant to Paragraph 12 of the Stipulated Confidentiality Agreement and Protective Order attached hereto, I acknowledge that I am obligated to return original copies of all Confidential Information received under this Stipulated Confidentiality Agreement and Protective Order, together with all reproductions and copies of the Confidential Information within thirty (30) days from the entry of final judgment, settlement, or dismissal in connection with this action.

4.     I certify that I have returned original copies of all Confidential Information received under this Stipulated Confidentiality Agreement and Protective Order, together with all reproductions and copies of the Confidential Information to counsel for the Defendants.

5.     I certify that I have received all Confidential Information and Documents provided to the experts and consultants hired in this action on behalf of my client(s). I further certify that I have returned such Confidential Information, together with all reproductions and copies of the Confidential Information, to counsel for the Defendants.

EXECUTED this _____ day of _____, 2013.

_____
Signature of Declarant

_____
Printed Name

Electronically Filed
6/15/2015 7:03:13 AM
Hidalgo County District Clerks
Reviewed By: Kim Hinojosa

C-0184-13-G

# (Amended)

# Exhibit B

**From:** Garner, Lavella on behalf of Mason, Wayne B.
**To:** Monk, Bradley
**Subject:** FW: Redlined copy of Sedgwick"s proposed discovery order
**Date:** Tuesday, June 09, 2015 11:39:20 AM
**Attachments:** D"s proposed Protective Order-Redlined.doc

---

**Wayne B. Mason**
Ù^å*¸å\ÁŠŠÚ ÁŽÖæ||æ
¸æ̂}^Ɇ æ[}Ò•^å*¸å\|æ¸Ð\{¸Á Á Î Ò͡Ȁ È Î€ÁÁ
Á

**From:** Angie Guerrero [mailto:aguerrero@mauzelawfirm.com]
**Sent:** Tuesday, May 14, 2013 11:46 AM
**To:** Mason, Wayne B.
**Cc:** tbagby@mauzebagbylaw.com
**Subject:** FW: Redlined copy of Sedgwick's proposed discovery order

Mr. Mason,

Please review attached PO sent on behalf of Tom Bagby.

Sincerely,
Angie Guerrero, Paralegal
Mauzé & Bagby, PLLC
2632 Broadway, Suite 401S
San Antonio, Texas 78215
Tel: 210.354.3377
Fax: 210.354.3909 / 1.800.200.9096
aguerrero@mauzelawfirm.com
info@mauzebagbylaw.com

** CONFIDENTIALITY NOTICE **
The information contained in this E-Mail is privileged and confidential and is intended only for the use of the addressee. The term "privileged and confidential" includes, without limitation, attorney-client privileged communications, attorney work product, trade secrets, and any other proprietary information. Nothing in this message is intended by the attorney of the client to constitute a waiver of the confidentiality of this message. If the reader of this message is not the intended recipient, or employee/agent of the intended recipient, you are hereby notified that any duplication or distribution of this communication is unauthorized. If you have received this message in error, please notify us immediately.

Á
Á

CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU, as Next Friend of ▆▆▆▆▆▆▆▆▆▆▆▆▆, a Minor, et al., | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § § | |
| vs. | § § § | 370th JUDICIAL DISTRICT |
| NCDR, LLC d/b/a KOOL SMILES, DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES, AISHWARYA K. CHANDESH, D.D.S., EDWARD HO, D.D.S., RICHARD I. MANWARING, D.D.S., and MARC D. THOMAS, D.D.S., | § § § § § § § § | |
| Defendants. | § | HIDALGO COUNTY, TEXAS |

## STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

Defendants NCDR, L.L.C., Dentistry of Brownsville, P.C., Aishwarya K. Chandesh, D.D.S., Edward Ho, D.D.S., Richard I. Manwaring, D.D.S., and Marc D. Thomas, D.D.S. (hereinafter "Defendants") may disclose certain Confidential Information to the parties in this action pursuant to discovery. Plaintiffs Paula Antu, as Next Friend of ▆▆▆▆▆▆▆▆▆▆, a Minor, et al. ("Plaintiffs") and the Defendants agree to enter into this Stipulated Protective Order for the purpose of facilitating and expediting the discovery process and to prevent the court from having to conduct separate hearings on the information sought to be protected. In order to protect their confidential documents, proprietary interests and trade secret information, the Defendants wish to ensure that any such Confidential Information shall not be used for any purpose other than this action and shall not be made public or disseminated by any party or their counsel, except as set forth in this Stipulated Confidentiality Agreement and Protective Order (hereinafter "Stipulated Protective Order").

The Defendants represent that all documents, testimony, and/or other items to be produced pursuant to this Stipulated Protective Order contain trade secret, proprietary and/or confidential

information (referred to collectively as "Confidential Information"). ~~The disclosure of Confidential Information would necessarily result in serious harm to the Defendants.~~ Accordingly, the parties stipulate to the following:

1.  For the purposes of this Stipulated Protective Order, "Confidential Information" may include, but is not limited to, information and documentation produced in responses to discovery, the content of electronically stored information, tangible thing, writing, paper, model, photograph, film, videotape, transcript of oral testimony, whether printed, recorded or produced by hand or any other mechanical process. All documents, testimony and other items designated as Confidential Information, and all copies, summaries, and reproductions of such information, are subject to this Stipulated Protective Order.

2.  Whenever the Defendants produce a document or thing containing information deemed to be confidential, the Defendants shall designate the document or thing with "Confidential~~,~~" or "Produced Pursuant to Protective Order~~,~~" ~~or a similar statement. If a document or thing is designated "Confidential" or "Produced Pursuant to Protective Order" on its first page,~~ conspicuously on the top right corner of each page of the entire document or thing ~~shall be deemed~~ produced as "Confidential" or "Produced Pursuant to Protective Order." Inadvertent or unintentional production of documents or information containing Confidential Information that are not designated "Confidential" shall not be deemed a waiver, in whole or in part, of a claim for confidential treatment; however, if Defendants do not contend the document or thing produced is confidential within 10 days of production any such claim to condfidentiality of said document, information or thing produced shall be deemed waived.~~.~~

3.  All material which the Defendants designate as Confidential Information in this action shall be maintained in strict confidence by the parties to this action and pursuant to the terms of this Stipulated Protective Order. The parties to this action shall not disclose or permit to be disclosed Confidential Information to any person or other entity, except to "Qualified Persons" who shall be defined to include:

    a.  Counsel of record for the parties in this action, and employees of such counsel who are ~~actively~~ engaged in assisting counsel with this action, provided they have first read this Stipulated Protective Order and have agreed to abide by its terms;

    b.  The ~~responsible~~ employee(s) of a corporate party charged with overseeing that party's participation in this action, provided they have first read this Stipulated Protective Order and have agreed to abide by its terms;

    c.  Independent experts and/or consultants, including jury consultants, retained by the parties to this action for the purpose of assisting in the

---

preparation of this case, provided they have first read this Stipulated Protective Order and have agreed to abide by its terms and have signed a written certification in the form attached as "Exhibit A." ~~Counsel for all parties to this action shall maintain such certifications and shall provide copies of them to the Defendants' counsel upon request within sixty (60) days following the conclusion of the case or otherwise file an objection with the court before sixty (60) days following the conclusion of the case~~;

    d.    Witnesses~~, either by deposition or trial testimony,~~ who may be shown and questioned about the Confidential Information and whose testimony as well as the information attached or submitted as exhibits, shall remain subject to this Stipulated Protective Order; and

    e.    The court, court personnel, special masters, mediators, other persons appointed by the court in this action, and stenographic and other reporters pursuant to the provisions of Paragraph 5.

4.    Any person who reviews the Confidential Information produced subject to this Stipulated Protective Order agrees to the jurisdiction over their person where the above-captioned matter is pending for the purposes of any action seeking to enforce the terms of this Stipulated Protective Order or any action for contempt for violation of the terms of this Stipulated Protective Order.

5.    The parties and their counsel who receive Confidential Information shall act to preserve the confidentiality of designated documents and information. Any party that intends to use or submit any Confidential Information in connection with any pre-trial proceedings or filings shall notify the producing party in writing of its intention to do so at the time of or before filing any related pleadings, motions or other documents, and provide in such notice the Bates numbers or other sufficient description of such Confidential Information as to allow the producing party to identify the Confidential Information. The Confidential Information shall be submitted to the Court *in camera* in a sealed envelope or other appropriate container labeled as follows: "CONFIDENTIAL – DOCUMENTS SUBMITTED IN CAMERA."

6.    If a party disagrees with the "Confidential" designation of a specific document or thing, the parties agree to attempt to meet and confer with one another to resolve the issue. If the parties are unable to resolve the issue, the party producing the Confidential Information shall have 1~~6~~0 days from the date the producing party is notified of the objection to file a further protective order establishing that the disputed information is entitled to confidential treatment under this Stipulated Protective Order. If the party or parties producing the Confidential Information do not timely file a motion for a further protective order, then the Confidential Information in dispute shall no longer be subject to protection under this Stipulated Protective Order. Until the issue of confidentiality is resolved, either through

---

**STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER - Page 3**
DL/3667794v1

mutual agreement of the parties or by court intervention, documents designated as Confidential Information shall remain Confidential.

7. Confidential Information may be referred to by a party in notices, motions, briefs or any other pleadings, may be used in depositions, and may be marked as deposition exhibits in this action. No such information shall be used, however, for any of these purposes unless it, or the portion where it is revealed, is appropriately marked and protected from dissemination and, where filing is necessary, it will be done pursuant to the provisions of Paragraph 5.

8. If any party wishes to modify this Stipulated Protective Order or its application to certain documents or information, that party shall first request such modification from the party producing Confidential Information and if no satisfactory agreement is reached, may petition the court for modification. Until modification is granted by agreement and/or order, the terms of this Stipulated Protective Order will govern. Provision for use of such information at trial shall be similarly made by agreement or by pretrial order governing the use and protection of the record.

9. Nothing in this Stipulated Confidentiality Agreement and Protective Order shall be construed as placing a limit on the use of Confidential Information at trial. However, before trial, the parties will address this issue and determine appropriate safeguards to protect the Confidential Information at trial.

10. No Confidential Information shall be disseminated to anyone:

   a. Who is an current employee of a direct business competitor of the party producing the information; or

   b. Who is employed by a direct business competitor of the party producing the information and who directly participates in marketing, sales, or service activities of direct business competitors.

11. Failure to abide by the terms of this Stipulated Protective Order may result in a motion for sanctions, costs, and attorney's fees, and any other appropriate legal action by or on behalf of the Defendants.

12. This Stipulated Protective Order or the Defendants' production of documents, things, or information in this action for inspection, copying, or disclosure to any other party to this action shall not be deemed to waive any claim of attorney-client or work product privilege that might exist with respect to these or any other documents or communications, written or oral, including, without limitation, other communications referred to in any documents which the Defendants may produce.

1312. Within thirty (30) days from the entry of final judgment, settlement, or dismissal in connection with this action, each party to this action shall return to counsel for the Defendants their original copies of all Confidential documents and information

received under this Stipulated Protective Order, together with all reproductions, copies~~, abstracts, summaries, or other writings that contain, reflect, or disclose the substance of the Confidential Information~~ which Defendants produced to Plaintiffs' counsel. Each parties' counsel will certify by declaration to the Defendants' counsel that this Stipulated Protective Order has been complied with by them and their experts/consultants in the form attached as "Exhibit B." Defendants' ~~C~~counsel ~~of record for the party or parties receiving Protected Documents may~~shall create and retain an index of the Protected Documents and provide same to Plaintiffs' counsel. The index may only identify the document, date, author, and general subject matter of any Protected Document, but may not reveal the substance of any such document. The producing party shall agree to maintain a copy of all such material for 6 months following the termination of this Action and will not destroy or alter such material pursuant to any document retention policy or for any other reason without first providing reasonable notice (no shorter than 30 days) to counsel of record in this case.

After termination of this Action, the provisions of this Order shall continue to be binding, except with respect to those documents and information that become a matter of public record. This Court retains and shall have continuing jurisdiction over the parties and recipients of the Protected Documents for enforcement of the provisions of this Order following termination of this Action. This Order shall be binding upon the parties and their attorneys, successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.

SIGNED this the _____ day of _____, 2013.


_____
JUDGE PRESIDING

**APPROVED FOR ENTRY:**

By:_____

George W. Mauze, II
State Bar No. 13238800
Tom Bagby
State Bar No. 24059409

**Mauze & Bagby, PLLC**

2632 Broadway, Suite 401 South
San Antonio, Texas  78215
Telephone:     (210) 354-3377
Facsimile:     (210) 354-3909

By:_____

Wayne B. Mason
State Bar No. 13158950
Alan Vickery
State Bar No. 20571650

**SEDGWICK LLP**

1717 Main Street, Suite 5400
Dallas, Texas 75201-7367
Telephone:     (469) 227-8200
Facsimile:     (469) 227-8004

## EXHIBIT "A"

**[ATTACH FULLY EXECTUED STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER TO THIS AFFIDAVIT]**

CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU, as Next Friend of ██████████████, a Minor, et al., | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § § | |
| vs. | § § | |
| NCDR, LLC d/b/a KOOL SMILES, DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES, AISHWARYA K. CHANDESH, D.D.S., EDWARD HO, D.D.S., RICHARD I. MANWARING, D.D.S., and MARC D. THOMAS, D.D.S., | § § § § § § § § § | 370th JUDICIAL DISTRICT |
| Defendants. | § | HIDALGO COUNTY, TEXAS |

## DECLARATION OF [INSERT NAME OF DECLARANT] RE STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

STATE OF _____ )
                                ) ss.
COUNTY OF _____ )

I, _____, declare under penalty of perjury under
    (insert name of recipient of the documents)

the laws of the **[IDENTIFY STATE/United States of America]** that the following is true and correct:

1.     My full name and business address are:

_____.

2.     I have read and fully understand the attached Stipulated Confidentiality Agreement and Protective Order.

3.     I am fully familiar with and agree to comply with and be bound by the provisions

of said Stipulated Confidentiality Agreement and Protective Order, and submit to the jurisdiction of the court in which this matter is pending for any proceedings with respect to said Stipulated Confidentiality Agreement and Protective Order.

4,     I will not discuss or divulge to persons other than those specifically authorized by this Stipulated Confidentiality Agreement and Protective Order, and will not copy or use, except solely for the purposes of this action and for no other purposes, any documents, materials or information obtained pursuant to said Stipulated Confidentiality Agreement and Protective Order.

5.     I ~~certify that I have~~will return~~ed~~ original copies of all Confidential Information and Documents received under this Stipulated Confidentiality Agreement and Protective Order, together with all reproductions and~~,~~ copies~~, abstracts, summaries, or other writings that contain, reflect or disclose the substance~~ of the Confidential Information to counsel that retained me in this case.

EXECUTED this _____ day of _____, 2013.


_____
Signature of Declarant


_____
Printed Name

## EXHIBIT "B"
**[ATTACH FULLY EXECUTED STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER TO THIS AFFIDAVIT]**

CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU, as Next Friend of ███████████████, a Minor, et al., | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| vs. | § § | 370th JUDICIAL DISTRICT |
| NCDR, LLC d/b/a KOOL SMILES, DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES, AISHWARYA K. CHANDESH, D.D.S., EDWARD HO, D.D.S., RICHARD I. MANWARING, D.D.S., and MARC D. THOMAS, D.D.S., | § § § § § § § | |
| Defendants. | § | HIDALGO COUNTY, TEXAS |

### DECLARATION OF [INSERT NAME OF DECLARANT] RE STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

STATE OF _____ )
_____ ) ss.
COUNTY OF _____ )

I, _____, declare under penalty of perjury under
(insert name of recipient of the documents)
the laws of the **[IDENTIFY STATE/United States of America]** that the following is true and correct:

1. I am counsel of record for **[name of party]**. My full name and business address are:

_____ .

(insert name and address of recipient of the documents)

2. I agreed to be bound by the terms and conditions of the Stipulated Confidentiality Agreement and Protective Order. I acknowledged my consent to be so bound by executing the

**DECLARATION OF [INSERT NAME OF DECLARANT] RE STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER - Page 1**
DL/3667794v1

attached Stipulated Confidentiality Agreement and Protective Order.

3.      Pursuant to Paragraph 12 of the Stipulated Confidentiality Agreement and Protective Order attached hereto, I acknowledge that I am obligated to return original copies of all Confidential documents and information received under this Stipulated Confidentiality Agreement and Protective Order, together with all reproductions and~~,~~ copies~~, abstracts, summaries, or other writings that contain, reflect, or disclose the substance~~ of the Confidential Information within thirty (30) days from the entry of final judgment, settlement, or dismissal in connection with this action.

4.      I certify that I have returned original copies of all Confidential documents and information received under this Stipulated Confidentiality Agreement and Protective Order, together with all reproductions~~,~~  and copies~~, abstracts, summaries, or other writings that contain, reflect, or disclose the substance~~ of the Confidential Information to counsel for the Defendants.

5.      I certify that I have returned all Confidential Information and Documents received from the experts and consultants hired in this action on behalf of my client(s) that they have returned to me, together with all reproductions and~~,~~ copies~~, abstracts, summaries, or other writings that contain, reflect, or disclose the substance~~ of the Confidential Information to me.  I further certify that I have returned such Confidential Information to counsel for the Defendants.

EXECUTED this _____ day of _____, 2013.

_____
Signature of Declarant

_____
Printed Name

---

**DECLARATION OF [INSERT NAME OF DECLARANT] RE STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER - Page 2**
DL/3667794v1

# Exhibit C

## Tom Bagby

| | |
|---|---|
| **From:** | Tom Bagby <tbagby@mauzebagbylaw.com> |
| **Sent:** | Wednesday, October 15, 2014 5:07 PM |
| **To:** | 'Steinmann, Cori' |
| **Subject:** | RE: Kool Smiles - Response to Confidentiality |

Cori,

Defendants marked nearly every document as confidential. Per the protective order, Defendants are representing to the Court that each document marked as confidential contains confidential information and/or trade secrets. Based upon our review of the documents, many documents that were marked as confidential cannot possibly contain confidential information. As such, it is our position that Defendants have not only made many misrepresentations to the Court but also have abused the discovery process. As such, we intend to take this matter up with the Court. However, in the spirit of cooperation, I would be willing to further discuss this matter with you to see if we can come to an agreement on how to handle this issue. I am available all day tomorrow and Friday if you wish to discuss the same.

Tom

‒‒‒‒

Tom Bagby
MAUZE & BAGBY, PLLC
2632 Broadway, Suite 402 S
San Antonio, TX 78215
T: 210.354.3377
F: 210.354.3909
Toll Free: 1.800.200.9096
tbagby@mauzebagbylaw.com
*Licensed in Texas, Louisiana & Montana

### ** CONFIDENTIALITY NOTICE **

The information contained in this E-Mail is privileged and confidential and is intended only for the use of the addressee. The term "privileged and confidential" includes, without limitation, attorney-client privileged communications, attorney work product, trade secrets, and any other proprietary information. Nothing in this message is intended by the attorney of the client to constitute a waiver of the confidentiality of this message. If the reader of this message is not the intended recipient, or employee/agent of the intended recipient, you are hereby notified that any duplication or distribution of this communication is unauthorized. If you have received this message in error, please notify us immediately.

**From:** Steinmann, Cori [mailto:Cori.Steinmann@sedgwicklaw.com]
**Sent:** Monday, October 13, 2014 9:35 AM
**To:** tbagby@mauzebagbylaw.com
**Subject:** FW: Kool Smiles - Response to Confidentiality

Tom,

I have reviewed your letter and proposed Motion concerning documents marked by Kool Smiles as confidential. Although I think we should discuss the issue further, below is my preliminary response to the issues you raised.

First, the deadline you propose in your letter is unreasonable. You have had almost a year to review our documents and have never raised the issue of our confidentiality designations, yet you unilaterally set a one week deadline for us to review our entire production to determine if confidentiality designations are appropriate. This is unreasonable. Moreover, your demand that we review our production and identify documents we intend to remove the confidentiality designation from is not what the parties agreed to in the Protective Order. Per the Protective Order, which you and George had input in drafting, if a party disagrees with the confidential designation that party must identify the "specific document" and attempt to resolve the dispute. As such, you cannot simply point to one or two documents that you disagree with and demand that we then go and re-review our entire production. If there are specific documents that you take issue with the confidential designation, please provide me a list of those documents and I will review them and let you know the basis for the designation and/or agree to remove the designation.

As to the "specific documents" that you have identified in your Motion, please see the following explanation and/or agreements:

- KSL-00465030-00465035- These redacted pages are part of a larger document, which is confidential and is designated as such. The fact that some of the information in the document has been redacted because it is outside the scope of the litigation does not mean that the information contained on these pages, and within the document as a whole, is not confidential. Confidentiality applies to the entire document, not specific pages within.
- KSL-00000042 and KSL-00000264- These pages are again part of larger documents, which are confidential and are designated as such. These specific pages are the last page of each document and, for whatever reason, do not have any content, but this is how the record was kept in the ordinary course of business. Again, confidentiality applies to the entire document, not specific pages within.
- KSL00474199-00474322- We agree to remove the Confidentiality designation.
- KSL00464784-00464937- We agree to remove the Confidentiality designation.
- KSL00005635-KSL00005647- We agree to remove the Confidentiality designation.
- DOB001333-001334- These pages are part of the New Doctor Orientation Manual, which is confidential and proprietary. This is not a publically available document and is provided only to Kool Smiles dentists after they have signed a confidentiality agreement. In fact, the document itself expressly states that it is not to be reproduced or distributed. As such, the Manual, which includes the referenced pages, is confidential.

Please let me know when we can discuss any outstanding concerns that you may have regarding confidentiality designations.

Best Regards,
Cori
**Cori M. Steinmann**
cori.steinmann@sedgwicklaw.com
469.227.4625 direct

# Sedgwick LLP

1717 Main Street, Suite 5400
Dallas, TX 75201
469.227.8200 phone | 469.227.8004 fax | www.sedgwicklaw.com

The information in this email is intended for the named recipients only. It may contain privileged and confidential matter. If you have received this email in error, please notify the sender immediately by replying to this email. Do not disclose the contents to

anyone. Thank you.

# Exhibit D

**From:** Vickery, Alan
**To:** Monk, Bradley; Hickland, Jude
**Subject:** FW: Protective Order
**Date:** Thursday, June 11, 2015 3:13:33 PM
**Attachments:** image6b2af5.PNG

FYI

**Alan R. Vickery**
Ù^å*¸æ&ÆŠŠÚÆÖæ||æ
æ|æ§É¸æ&^¦^Ò•^å*¸æ&|æ¸Ð&[{¸ÁØ&ÁÎJÈGÏ ÈÎ∈ÎÁ
Á

---

**From:** Vickery, Alan
**Sent:** Thursday, June 11, 2015 3:11 PM
**To:** George Mauze (gmauze@mauzebagbylaw.com)
**Subject:** Protective Order

George:

I cannot agree to revise the protective order we agreed to in *Antu* to allow you to use the documents we produced in *Antu* in the federal case.  Our document production was based upon court orders and agreements in *Antu*, and the federal case contains different claims, issues, and rules which will govern the discovery in that case.

If there are specific documents we have produced which you believe were improperly designated as Confidential, provide me with a list of those documents.  We will review them and either remove the designation or confirm for you that we intend to stand on the designation.  The protective order requires this, and Cori Steinmann agreed to do this in October, 2014, in her email to Tom.  She, in fact, addressed in that email each of the documents specifically identified by you at that time as being improperly designated.  I am not aware of any other specific documents which you claim have been improperly designated as Confidential.

If we need to have a hearing on this matter, please move it to next Tuesday, June 16.  Eduardo can be available then but he is not available Monday, June 15, as I have mentioned.  Thanks.

Alan

**Alan R. Vickery**
æ|æ§É¸æ&^¦^Ò•^å*¸æ&|æ¸Ð&[{
ÎÎJÈGÏ ÈÎ∈ÎÁÁ§ã^&Á

Sedgwick LLP

FÏFÏÁ¯æ§Á¸Ù¢^^¢ÊÁ¸ ã¢^Ã|∈€
Öæ||æ¸ÊÁ¸ÝÃ¸ÎGF
ÎÎJÈGÏ ÈG∈∈Á¸@|}^ÁØ&ÁÎJÈGÏ È∈∈Áæ¢ÁØ§¸¸¸È^å*¸æ&|æ¸Ð&[{

----------------------------

The information in this email is intended for the named recipients only.  It may contain privileged and confidential matter.  If you have received this email in error, please notify the sender immediately by replying to this email.  Do not disclose the contents to anyone.  Thank you.

----------------------------

# Exhibit E

**From:** Vickery, Alan
**To:** Hickland, Jude
**Subject:** FW: Case Management Order No. 1
**Date:** Thursday, June 11, 2015 3:20:48 PM
**Attachments:** image001.png

FYI – see highlighted section.

**Alan R. Vickery**
Ù^å*¸ æ\ ÆŠŠÚ ÆÓæ||æ
æ|æ¶É¸æ\^¦^Ò•^å*¸æ\|æ¸È[¦¸ ÁÒÁÎJÈÔÏÈÎ€IÁ
Á

**From:** George Mauze [mailto:gmauze@mauzebagbylaw.com]
**Sent:** Wednesday, June 10, 2015 3:47 PM
**To:** Vickery, Alan
**Cc:** tbagby@mauzebagbylaw.com; errodriguez@atlashall.com; fsabo@guerraleeds.com
**Subject:** RE: Case Management Order No. 1

Alan –
When we talked early last week, I understood you were available 6/11 or 6/15, but needed to verify your calendar. Unfortunately, when I sent the email indicating I would R/S the hearing, none of us were aware that the Court would not be available in July. Thus, we need a hearing – I am willing to be available Friday, Monday, or Tuesday. If your client agrees to modify the protective order or enter into a Rule 11 that allows the documents to be reviewed by consulting and retained experts and our attorneys in the federal case, then I will agree to drop that hearing until we have an opportunity to prepare a new protective order in the MDL which addresses that issue and the designation of confidentiality. The CMO can simply be discussed with the Court so we have guidance for revisions and then the disputed matters could be heard in August. However, I would like to get some depos. scheduled between mid-July and mid-August (Drs. Ho, Thomas, Chandesh, Paul Walker, David Veith, and Tu Tran). The appointment of a master will only be requested if the Court's docket does not allow him to accommodate our request for standing hearing dates. I will wait to hear from you.

**From:** Vickery, Alan [mailto:Alan.Vickery@sedgwicklaw.com]
**Sent:** Wednesday, June 10, 2015 2:12 PM
**To:** George Mauze
**Subject:** RE: Case Management Order No. 1

9:30 or 10 would be better for me Friday a.m. if that works for you.

And, are you available July 2 for the CMO hearing? The court is available that day, and we are available as well. Let me know. Thanks.

Alan

**Alan R. Vickery**

æ|æ)Ę;æ\^|^O•^å*¸æ\|æ¸Ė\{
I Î J:ĖGïĖ:Î ∈I Å&ã^&Á



FïFï ÁTæ&)Å.Ù:¢^^&ÂÙ˘ æ*Å.I €€
Ö æ||æ ĘÂ\ÝÄ.Í G€F
I Î J:ĖGïĖ:G€€Å¸@.}^ÁØÁ Î J:ĖGïĖ:€€I Á æ*ÁØÁ¸¸¸Ė^å*¸æ\|æ¸Ė\{

**From:** George Mauze [mailto:gmauze@mauzebagbylaw.com]
**Sent:** Wednesday, June 10, 2015 1:35 PM
**To:** Vickery, Alan
**Subject:** RE: Case Management Order No. 1

How about 9a?

**From:** Vickery, Alan [mailto:Alan.Vickery@sedgwicklaw.com]
**Sent:** Tuesday, June 09, 2015 8:12 PM
**To:** George Mauze
**Cc:** errodriguez@atlashall.com; fsabo@guerraleeds.com; tbagby@mauzebagbylaw.com; aguerrero@mauzelawfirm.com
**Subject:** Re: Case Management Order No. 1

Thanks George. I could discuss the CMO Friday morning if you have some time.

Alan

**Alan R. Vickery**
æ|æ)Ę;æ\^|^O•^å*¸æ\|æ¸Ė\{
I Î J:ĖGïĖ:Î ∈I Å&ã^&Á



FïFï ÁTæ&)Å.Ù:¢^^&ÂÙ˘ æ*Å.I €€
Ö æ||æ ĘÂ\ÝÄ.Í G€F
I Î J:ĖGïĖ:G€€Å¸@.}^ÁØÁ Î J:ĖGïĖ:€€I Á æ*ÁØÁ¸¸¸Ė^å*¸æ\|æ¸Ė\{

On Jun 9, 2015, at 6:22 PM, George Mauze <gmauze@mauzebagbylaw.com> wrote:

> Alan –
> I thought when we talked you indicated you were available, but would check your calendar to confirm. Nevertheless, I will re-set to accommodate everybody's schedule. I am on vacation 6/17 – 7/1. Can we agree to amend the Protective Order to the extent the documents produced by Defendants can be used in all litigation in which any of the Defendants are parties (ie; federal lawsuit against my firm)? Also, can we schedule a conference call (you and me) to discuss the CMO this week?
> george
>
> ---
>
> **From:** Vickery, Alan [mailto:Alan.Vickery@sedgwicklaw.com]
> **Sent:** Tuesday, June 09, 2015 3:29 PM
> **To:** George Mauze
> **Subject:** RE: Case Management Order No. 1

George, we are not available for a hearing on June 15. Eduardo is going to coordinate with Frank this afternoon and see if the judge has any open days the week of June 22. Thanks.
Alan


**Alan R. Vickery**
ªªªª¸È¿ª\^¦^O•^å*¸ªª\|æ¸Èª[¸{
I Î JÈCïÈ Î €I Áåªª^&ºÁ
Łą æ^^€€FÈ¸}*N
FÏ FÏ ÁT ªªÁ ÁUd^^dÉÁÙ˘ ãª^Ã I €€
Öªª|æ ÉÁVÝÃ Í G€F
I Î JÈCïÈ G€€Áِ@}^ÁªÁ Î JÈCïÈ €€I Áªªª¸ÁªÁ¸¸¸È^å*¸ªª\|æ¸Èª[¸{

**From:** George Mauze [mailto:gmauze@mauzebagbylaw.com]
**Sent:** Friday, June 05, 2015 12:49 PM
**To:** Vickery, Alan; Mason, Wayne B.; Bruce Campbell
**Cc:** tbagby@mauzebagbylaw.com
**Subject:** Case Management Order No. 1

Alan/Wayne/Bruce –
Long time no see or hear! I have made a run at preparing a comprehensive CMO as requested by the Court and required by the rules. Attached is the draft CMO and exhibits. My idea is if we agree, or the Court orders, two Bellwether trials, then we could limit the discovery in all other cases filed to the attached Uniform Discovery and conduct full discovery on the two Bellwether cases. Also, we would probably not file any new suits until after the first Bellwether trial. After your review of the draft, call me to discuss your input in regards to the scope of the Order, the discovery limitations, discovery deadlines, and the Bellwether trial dates. We will be filing a M/Enter a CMO today and will probably set it for 6/15. I will agree to reset to 6/11 if necessary to accommodate schedules (the Court clerk only gave us 6/9, 6/10, 6/11 and 6/15 as available dates). I assume we may be able to agree to most, if not all, of the CMO. We are also requesting a hearing on the previously filed M/Determine Confidentiality and Protective Order and filing a M/Appoint a Special Master. Thanks.
george

---------------------------
The information in this email is intended for the named recipients only. It may contain privileged and confidential matter. If you have received this email in error, please notify the sender immediately by replying to this email. Do not disclose the contents to anyone. Thank you.
---------------------------

**MDL NO.** C-0184-13-G _____

|  |  |  |
|---|---|---|
| **IN RE KOOL SMILES DENTAL LITIGATION** | § § § § § § § § § § § | **IN THE DISTRICT COURT OF HIDALGO COUNTY, TEXAS 370ᵀᴴ JUDICIAL DISTRICT** |

## DEFENDANTS' SUPPLEMENTAL BRIEF IN RESPONSE TO PLAINTIFFS' MOTION TO AMEND CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER OR, ALTERNATIVELY MOTION FOR SANCTIONS OR, ALTERNATIVELY, FOR DETERMINATION OF CONFIDENTIALITY

Defendants[1] in all cases transferred to this MDL pretrial Court provide the following Supplemental Response to Plaintiff's Motion to Amend Confidentiality Agreement and Protective Order or Alternatively for Sanctions, or Alternatively for Determination of Confidentiality ("Motion").

### I. OVERVIEW

The Court heard argument on the Motion on June 15, 2015. At that time the Court requested additional briefing on the issue of the scope of shared discovery. The Court further requested the parties to submit proposed, amended protective orders to be entered for use in cases transferred to this MDL. Defendants maintain the positions stated in their initial response to the Motion, and per the Court's request, submit this brief as a supplemental response to address those specific areas requested by the Court at the hearing.

---

[1] This reference excludes Dr. Jessie Trinh, Defendant in the *Arroyo, et al. v. Mathisen, et al.*, CL-14-3569 matter transferred from the County Court of Law No. 4 in Hidalgo County, because she is represented by separate counsel.

Electronically Filed
6/19/2015 1:34:09 PM
Hidalgo County District Clerks
Reviewed By: Kim Hinojosa

## II. ARGUMENTS AND AUTHORITIES

### 1.  Proper Scope of Shared Discovery

Shared discovery should be limited to other litigants in similar litigation (*i.e.*, parties in this MDL).  Contrary to the assertions of Plaintiffs, this is what Texas law allows.  More importantly, Texas law does *not* allow for documents to be shared with *potential* litigants without limitation, or with litigants involved in dissimilar or out-of-state cases.  The case law cited and relied on by Plaintiffs dictates that any sharing of discovery be with "similarly situated litigants."  There is no authority that would allow discovery to be shared more broadly.

The well-established policy of shared discovery is accomplished by the shared discovery component of a MDL.  In fact, Defendants voluntarily consented to this type of sharing before the creation of this MDL by allowing documents produced in *Antu* to be used in the other cases that have now been transferred to the MDL proceeding.  The Court need not order any additional sharing of discovery in order to achieve the goal.

### (a)  Shared Discovery Should be Limited to Parties in the MDL

The scope of shared discovery should be limited to the parties in the MDL.  The concept of shared discovery emerged as a means to minimize the duplication of efforts inherent in requiring "similarly situated parties to go through the same discovery process time and time again, even though the issues involved are <u>virtually identical</u>."  *Garcia v. Peeples*, 734 S.W.2d 343, 347 (Tex. 1987) (emphasis added).  The presence of similarly situated litigants in cases with similar issues is required before shared discovery is to be considered.  Contrary to Plaintiffs' position, *Garcia* does not support the sharing of discovery more broadly.

Here there is no need for additional sharing language because the MDL procedure itself accomplishes the policy goals that animated the *Garcia* opinion.  *See in re Champion Indus.*

*Sales, LLC*, 398 S.W.3d 812, 819 (Tex. App.—Corpus Christi 2012, pet. denied). MDL discovery accomplishes that goal because it avoids requiring "similarly situated parties to go through the same discovery process time and time again, even though the issues involved are virtually identical." *Id.* (*quoting Garcia*, 734 S.W.2d at 347). In fact, promoting efficiencies in cases with common questions is one of the essential reasons the Texas Supreme Court implemented Rule 13 of the Texas Rules of Judicial Administration providing for Multidistrict Litigation in Texas. *See id.* Therefore, the shared discovery doctrine is coextensive with MDL discovery, and it does not support sharing of discovery outside of litigants in the MDL. *See id.*

Defendants consented to this sharing months ago. By Rule 11 agreement, Defendants agreed to allow sharing of the *Antu* discovery with all MDL litigants. Defendants do not oppose the entry of a new MDL protective order, but it should formalize the parties' prior agreement rather than distort the scope of shared discovery.

        **(b)     Shared Discovery Does Not Extend to Dissimilar Cases or Potential Litigants**

Plaintiffs have argued that *Garcia* and *Eli Lilly & Co. v. Marshall*, 850 S.W.2d 155 (Tex. 1993) provide support for shared discovery in dissimilar cases and with other litigants and potential litigants who are not part of this MDL. The issue before the court in *Garcia* was limited to similarly situated litigants, and the clear language of the opinion demonstrates that it only extended the shared discovery doctrine to similarly situated litigants. The opinion states, "[Plaintiff] seeks to exchange the discovery information with other persons involved in <u>similar suits</u> against automakers. He argues that allowing information exchanges between <u>similarly situated litigants</u> would enhance full disclosure and efficiency in the trial system." *Garcia*, 734 S.W.2d at 346-47 (emphasis added). The court reasoned that

> shared discovery makes the system itself more efficient. The current discovery process forces <u>similarly situated parties</u> to go through the same discovery process time and time again, even though the issues involved are virtually identical. Benefiting from restrictions on discovery, one party facing a number of adversaries can require his opponents to duplicate another's discovery efforts, even though the opponents share <u>similar discovery needs</u> and will litigate <u>similar issues</u>.

*Id.* at 347 (emphasis added). The court then held that the information could be shared with the "other <u>litigants</u>," which again refers to "persons involved in <u>similar suits</u> against automakers." *Id.* at 346-47, 348 (emphasis added). *Garcia* extends shared discovery <u>only</u> to similarly situated actual litigants, not to dissimilar cases or potential litigants.

Although *Eli Lilly* cites *Garcia* and refers to shared discovery, that case was not about shared discovery. *Eli Lilly* concerned whether a trial court's order requiring disclosure of the identities of consumers who had made confidential reports to the FDA was appropriate or if the confidential information should be protected from release. *Eli Lilly*, 850 S.W.2d at 160. The Texas Supreme Court ultimately held against the plaintiffs in that case because the federal "objective of fostering post-approval reporting of possible adverse reactions for all FDA-approved drugs is severely compromised by the trial court's order of wholesale disclosure of reporters' identities." *Id.* at 160.

The Texas Supreme Court only referred to the doctrine in *dicta*. The court ambiguously referenced potential litigants, but did not ultimately include potential litigants in its holding. Specifically, the court first stated that under the shared discovery doctrine the fruits of discovery may be shared with "other litigants and potential litigants," citing only page 347 of *Garcia* in support of the statement. *Id.* The ambiguous phrase "potential litigants" was not defined or otherwise discussed. While *Garcia* unquestionably does address other litigants, it does not in any way extend to potential litigants, as that issue was not even before the court. *See Garcia*,

---

734 S.W.2d at 347. Therefore, it is not clear what the court meant when it referred to potential litigants in citing *Garcia*.

The holding in *Eli Lilly* did not depend a finding that shared discovery was proper. It is clear, therefore, that the opinion does not broaden the scope of shared discovery as articulated in *Garcia*. Plaintiffs insist the *Eli Lilly* court fundamentally altered the shared discovery doctrine by making this isolated, ambiguous, and unelaborated statement. Plaintiffs ignore that the *Eli Lilly* court ultimately held, consistent with *Garcia*, that plaintiffs were "entitled to all the substantive information in the reports and to share that discovery with their expert witnesses and litigants in other cases." *Eli Lilly*, 850 S.W.2d at 160 (emphasis added). In extending discovery only to litigants—not potential litigants—in other similar cases, the actual holding of the court in *Eli Lilly* is in direct opposition to Plaintiffs' position.

Plaintiffs have not directed this Court or Defendants to a case in which a Texas court actually extended the shared discovery doctrine to potential litigants. That is because there is no legal support for this and it is illogical to do so. Taken to its logical extreme, Plaintiffs' sweeping request would allow for essentially unlimited shared discovery with anyone Plaintiffs' counsel claims is a *potential litigant*, with insufficient safeguards to Defendants to protect the confidential information produced in response to these claims. Any protective order would be virtually unenforceable if the court lacked assurance that the universe of the potential recipients of confidential information was identifiable and could be subjected to the Court's orders. The virtually limitless designation of "potential litigants" severely undermines the Court's ability to protect the legitimate interests of the actual litigants before the Court.

Defendants' proposed scope of shared discovery is supported by legal precedent and common sense. For example, it has been held many times that a protective order limiting

confidential information to the "*parties in this lawsuit*, their lawyers, consultants, investigators, experts, and other necessary persons employed by counsel" was proper. *See, e.g., In re Continental General Tire, Inc.*, 979 S.W.2d 609, 613 n.3 (Tex. 1998) (emphasis added). In another case, a trial court's order was upheld because the plaintiffs in that case failed to show harm "from the inability to share and compare information with other litigants in other cases." *See Scott v. Monsanto Co.*, 868 F.2d 786, 792 (5th Cir. 1989) (no harm to plaintiffs ). Finally, another court has pointed out that an "acceptable protective order" is one that "restricts the dissemination of documents to parties involved in the litigation." *See Zappe v. Medtronic USA, Inc.*, No. C-08-369, 2009 WL 792343, at *1 (S.D. Tex. Mar. 23, 2009) (*citing In re Continental*, 979 S.W.2d at 613). The Court should deny Plaintiffs' request to extend shared discovery beyond MDL litigants.

### (c)  Shared Discovery With the Federal Case is Inappropriate

As stated above, the shared discovery doctrine does not allow for sharing of confidential information with those who are not similarly situated litigants. The litigants in the federal case— attorneys and their firm attempting to defend themselves from charges of false advertising, defamation, business disparagement, and injury to business reputation—are in no way similarly situated with the plaintiffs in this case, who are children asserting claims of dental malpractice.

Worse, permitting sharing with the federal litigants intrudes on the prerogatives of the federal court. As the court held in *Eli Lilly*, trial courts should not compromise federal objectives by issuing unnecessarily broad orders. *Eli Lilly*, 850 S.W.2d at 160. Extending the sharing of discovery to the federal case is not essential to the efficient resolution of the MDL cases, and intrudes upon the province of the federal court to control and direct discovery in that case under federal law.

The federal case involves entirely different claims, causes of action, and issues. Plaintiffs in the MDL are the next friends of minor dental patients who allege causes of action for negligence, gross negligence, civil conspiracy, and fraud arising out of dental care and treatment. The federal lawsuit involves claims for false advertising, defamation, business disparagement, and injury to business reputation. None of the claims in the two lawsuits are the same.

Perhaps more importantly, the judge in the federal case has already issued some discovery rulings. The parties in that case have served discovery requests on each other, filed motions to compel and related briefing, argued various issues before the court under the federal rules, and have received discovery-related orders from the judge in that case. Any order entered here allowing for shared discovery in the federal case risks running afoul of the federal court's orders. What is relevant and discoverable in that case should be determined by the judge in that case. As the *Garcia* court noted, "prudential rules check Texas' ability to control litigation in other forums." *Garcia*, 734 S.W.2d at 348.

The shared discovery doctrine was never intended to be a catch-all doctrine that prevented any and all duplicative discovery. The underlying rationale for shared discovery is that shared discovery can promote efficiency, consistency, full and fair disclosure, and prevent "needless duplication and expense." *Steenbergen v. Ford Motor Co.*, 814 S.W.2d 755, 758 (Tex. App.—Dallas 1991, writ denied) (emphasis added) (*citing Garcia*, 734 S.W.2d at 347). Implicit in this acknowledgement is that, as a matter of necessity, there will at times be duplication of discovery. *See id.* One such instance is when differing discovery rules, and therefore outcomes, are in play. Because the claims are totally different, the type of discovery permissible in one case may be impermissible in another. The federal court does not decide the scope of discovery

for the MDL Court.  Similarly, it would be highly inappropriate for the MDL Court to dictate the scope of discovery in the federal case.

While it is true that some discovery in the federal case may duplicate some discovery in the MDL, there has been no showing that there will be complete overlap, and that alone is an insufficient basis for shared discovery.  Any order entered in this case that would allow Plaintiffs' counsel to share discovery in the federal case would interfere with the federal court's handling of discovery in that case.  Therefore, this Court should decline to amend the Protective Order to allow Plaintiffs to share discovery in the federal case.

2.      **Proposed Amendments to the Protective Order**

(a)      **The MDL Court Should Adopt the Existing Protective Order with Minor Revisions**

As Plaintiffs have not even attempted to follow the existing procedure for challenging confidentiality designations, there is no indication the existing procedure is unworkable.  The procedure makes sense, and it provides a vehicle for challenging confidentiality designations if that becomes necessary.  Defendants have complied with the Protective Order and, contrary to Plaintiffs' assertions, have not abused the discovery process or arbitrarily designated documents as confidential.  *See* Affidavit of Alan R. Vickery, attached hereto as Exhibit "A".

Defendants object to Plaintiffs' proposed Protective Order delivered to the Court on Monday, June 15, because it is inconsistent with the law and does not provide adequate protection to Defendants' confidential information.  Plaintiffs have requested that the order be extended to any "other litigants" or "potential litigants."  This position, as noted herein, is inconsistent with the scope of MDL discovery and the shared discovery doctrine and not supported by Texas law.  Further Plaintiffs' proposed amendments would unnecessarily and unreasonably increase the opportunity for Defendants' competitors to gain access to confidential

and competitively sensitive information. In short, Plaintiffs' proposed amendments do nothing to advance the disposition of the cases in this MDL, while needlessly and unreasonably exposing Defendants to the very real risk that their confidential and competitively sensitive information ends up in the hands of their competitors.

Defendants maintain that the substance of the existing Protective Order should remain in place. Nevertheless, Defendants concede that the existing protective order could be improved and made more efficient. Defendants propose the following revisions to the Protective Order.

### (b)    Revised Procedure for Challenging Confidentiality

To address Plaintiffs' real concerns about the Protective Order in place, Defendants propose a revision to provide that, with each production of confidential information, the designating party shall provide a log of all documents produced and designated as confidential, including a description of each document. By doing so, the opposing party can efficiently evaluate which designations it may want to challenge. That would also allow the receiving party to confer with the producing party about the confidentiality designations. Therefore, Defendants propose a revision to paragraph six (6) of the existing protective order, to read as follows:

6.    Within thirty days of the production of documents designated as confidential, the party producing documents designated as confidential shall provide a written log containing a list of all Confidential Information produced (the "Confidentiality Log"). The Confidentiality Log shall contain the bates range of each document produced as confidential, a description of the document specific enough to identify the document, and a reference to the request for production to which it is responsive. For documents previously produced and designated as confidential, the producing party shall have thirty days from the entry of this order to serve the Confidentiality Log. If a party disagrees with the "confidential" designation of a specific document or thing, such party may challenge the designation by identifying the document on the Confidentiality Log and indicating in writing to the party designating the document as confidential that the designation is challenged. The designating party will have fourteen (14) days to respond to the confidentiality challenge and will indicate whether the confidentiality designation will be withdrawn. If the designation is not withdrawn, the parties agree to attempt to meet and confer with one another to resolve the issue. If the parties are unable to resolve

the issue, the party that intends to use the Confidential Information shall move for a hearing to obtain a ruling from the Court as to whether the information is entitled to confidential treatment under this Confidentiality and Protective Order. Until the issue of confidentiality is resolved, either through mutual agreement of the parties or by court intervention, documents designated as Confidential Information shall remain Confidential.

A copy of Defendants' proposed Confidentiality and Protective Order, reflecting this change and modifying it for use in the MDL is attached hereto as Exhibit "B". Defendants request that the Court enter this revise Protective Order for use in the MDL proceeding.

### III. CONCLUSION

Based on the foregoing, Defendants[2] in all cases transferred to the pretrial multi-district litigation respectfully request that Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order or Alternatively for Sanctions, or Alternatively for Determination of Confidentiality be denied, that Plaintiffs' counsel not be allowed to share documents produced as confidential beyond the litigants in this MDL proceeding, and for such other and further relief to which they are entitled.

---

[2] This reference excludes Dr. Jessie Trinh, Defendant in the *Arroyo, et al. v. Mathisen, et al.*, CL-14-3569 matter transferred from the County Court of Law No. 4 in Hidalgo County, because she is represented by separate counsel.

Respectfully Submitted,


*/s/ Alan R. Vickery*
WAYNE B. MASON
State Bar No. 13158950
ALAN R. VICKERY
State Bar No. 20571650
**SEDGWICK LLP**
1717 Main Street, Suite 5400
Dallas, TX 75201-7367
Telephone:   (469) 227-8200
Facsimile:    (469) 227-8004
wayne.mason@sedgwicklaw.com
alan.vickery@sedgwicklaw.com


EDUARDO R. RODRIGUEZ
State Bar No. 00000080
**ATLAS, HALL & RODRIGUEZ, L.L.P.**
50 W. Morrison Road, Suite A
Brownsville, TX 78520
Telephone:   (956) 574-9333
Facsimile:    (956) 574-9337
errodriguez@atlashall.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record as shown below via facsimile and email on the 19th day of June, 2015.

George W. Mauzé, II
MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 401 South
San Antonio, TX 78215
gmauze@mauzelawfirm.com

R.D. "Bobby" Guerra
GUERRA, LEEDS, SABO & HERNANDEZ
PLLC
10213 N. 10th Street
McAllen, TX 78504
rdguerra@guerraleeds.com

*Attorneys for Plaintiffs*

Bruce S. Campbell
State Bar No: 03694600
BRACKETT & ELLIS,
A Professional Corporation
100 Main Street
Fort Worth, TX. 76102-3090
817.338.1700
Facsimile: 817.870.2265
bcampbell@belaw.com

*Attorneys for Defendant Jessie Trinh, DMD*

/s/ Alan R. Vickery
ALAN R. VICKERY

---

# Exhibit A

**MDL NO. _____**

|   |   |
|---|---|
| § | IN THE DISTRICT COURT OF |
| § | |
| § | |
| § | |
| § | |
IN RE KOOL SMILES DENTAL | § | HIDALGO COUNTY, TEXAS |
LITIGATION | § | |
| § | |
| § | |
| § | |
| § | |
| § | 370TH JUDICIAL DISTRICT |

**AFFIDAVIT OF ALAN R. VICKERY**

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned notary public on this day personally appeared ALAN R. VICKERY, a person known to me who, after being duly sworn upon his oath, deposed as follows:

1.     "I am over eighteen (18) years of age, have never been convicted of a felony and am fully competent in all respects to make this Affidavit.

2.     I am an attorney of record in the above-styled and numbered cause and in each case transferred to the multidistrict litigation pretrial court (the "MDL") as of the date of this Affidavit.

3.     I have been involved in the day-to-day activities of the cases transferred to the MDL and I am familiar with the written discovery that has taken place between the parties. Prior to the order transferring the cases to the MDL, a significant amount of written discovery had been conducted in the first case filed, *Antu et al., v. NCDR, LLC*, et al., C-0184-13-G, in the 370th District Court in Hidalgo County, Texas.

4.     In *Antu*, Plaintiffs submitted over four-hundred requests for production to Defendants Benevis LLC, f/k/a NCDR, LLC ("Benevis"), Kool Smiles, P.C. ("KSPC"), and Dentistry of Brownsville, P.C. ("DOB") (collectively, the "Corporate Defendants"). Many of those requests sought documents containing standard operating procedures, information regarding recruitment, training, and employment policies, and business reports containing information about the performance of dentists employed by DOB.

5.     On June 11, 2013, the parties entered into and the Court signed a Stipulated Confidentiality Agreement and Protective Order (the "Protective Order") that governed the handling of documents produced in the *Antu* case that contained confidential information.

6.     After *Antu* was filed and significant discovery had taken place, ten additional cases with nearly identical pleadings were filed against a number of defendants, including the Corporate Defendants. After those cases were filed, counsel for the Corporate Defendants agreed to allow the Plaintiffs in each of the newly filed cases to use the documents produced in *Antu*, subject to the Protective Order. On June 15, 2015, Plaintiffs in those cases filed in their respective trial courts the Rule 11 agreements containing the agreement.

7.     Attorneys from my firm, with the assistance of over twenty contract attorneys, reviewed and analyzed the documents produced in the *Antu* litigation for responsiveness, privilege, and confidentiality.

8.     During the course of the review, the reviewing attorneys identified and prepared thousands of reports and documents for production. Many of the reports, which were produced, contained hundreds of pages each. Pursuant to the terms of the Protective Order, these attorneys were instructed to designate as confidential each page of the following: Doctor Procedure Reports, Expanded Services Reports, and Office Scorecard – Medicaid Children Reports. With

input from the Corporate Defendants, these reports were designated as Confidential, as they contain proprietary and confidential business information or trade secrets.

9. I have reviewed and am familiar with the process and criteria for determining the confidentiality of the documents produced in the *Antu* litigation. This process was developed under my supervision. The attorneys reviewing the documents produced in *Antu* were instructed to code the reports noted above, as well as internal policies and procedure manuals or handbooks, training materials, financial documents, sensitive personnel information regarding employees, and other documents containing confidential information as "Confidential Pursuant to the Protective Order." Prior to production, the reviewing attorneys performed a second, quality control review of coded documents. The process by which documents were identified and marked as confidential reflected my professional judgment and that of the reviewing attorneys that the documents designated as confidential contained proprietary and confidential business information or trade secrets. If the documents so designated comprise a substantial portion of the overall production, it only reflects the fact that Plaintiffs' counsel chose to request a large quantity of confidential documents.

10. On October 6, 2014, Plaintiffs' counsel wrote a letter to Cori Steinmann, then an attorney at my firm representing Defendants, requesting that Defendants "identify by bates-stamped number, which documents, if any, that Defendants intend to remove the designation of confidentiality from."

11. The language of the Protective Order states that a "party [who] disagrees with the 'Confidential' designation of a specific document or thing" agrees to confer with the party who has designated the document as such.

12.     To date, the only "specific" documents on which the Plaintiffs have attempted to confer with me or any other attorney representing the Corporate Defendants are the documents attached to Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order or, Alternatively, Motion for Sanctions or, Alternatively, for Determination of Confidentiality.

13.     On October 15, 2014, Ms. Steinmann responded by email to Plaintiffs' October 6, 2014 letter. In her response, she informed Plaintiffs' counsel that she had analyzed the specific documents identified in the motion and provided an analysis of the confidentiality of each page.

14.     Ms. Steinmann and I have on several occasions offered to review any other "specific document" identified by Plaintiffs' counsel, but Plaintiffs' counsel have not identified any other documents.

15.     On June 11, 2015, Plaintiffs' counsel informed me verbally and via email that he wanted to use the documents produced in the *Antu* litigation in the federal court litigation brought by certain of the Corporate Defendants against him and his firm. He further advised me on June 12, 2015 that he intended to share the documents with attorneys who are not counsel of record for any party in any of the cases currently before the MDL court.

"FURTHER AFFIANT SAYETH NOT."

_____
ALAN R. VICKERY

SUBSCRIBED AND SWORN TO BEFORE ME, on this the 19th day of June, 2015.

_____
Notary Public in and for the State of Texas

---

My Commission Expires:

3-30-2016

*[Seal]*



NANCY S BASSI
My Commission Expires
March 30, 2016

# Exhibit B

**MDL NO. _____**

|  | § | **IN THE DISTRICT COURT OF** |
| --- | --- | --- |
|  | § | |
|  | § | |
|  | § | |
|  | § | |
| **IN RE KOOL SMILES DENTAL** | § | **HIDALGO COUNTY, TEXAS** |
| **LITIGATION** | § | |
|  | § | |
|  | § | |
|  | § | |
|  | § | |
|  | § | **370TH JUDICIAL DISTRICT** |

## CONFIDENTIALITY AND PROTECTIVE ORDER

Defendants Benevis, LLC f/k/a NCDR, LLC, Dentistry of Brownsville, P.C., Kool Smiles, PC, and each of the individual dentists named as defendants (collectively "Defendants") in any case filed in or transferred to this multidistrict litigation ("MDL") pretrial Court may disclose certain Confidential Information to the parties in this action pursuant to discovery requests or Court order. Plaintiffs ("Plaintiffs"), whether directly filed in this MDL or transferred as a tag-along case, and the Defendants in this MDL are hereby ordered to abide by the terms of this Confidentiality and Protective Order (the "Protective Order") for the purpose of facilitating and expediting the discovery process and to reduce the Court's time from having to conduct separate hearings on the information sought to be protected. In order to protect their alleged confidential documents, proprietary interests, and trade secret information, the Defendants wish to ensure that any such Confidential Information shall not be used for any purpose other than the lawsuits in this MDL, whether directly filed in or transferred as a tag-along case, and shall not be made public or disseminated by any party or their counsel, except as set forth in this Confidentiality and Protective Order.

The Defendants assert that all documents, testimony, and/or other items to be produced pursuant to this Confidentiality and Protective Order contain trade secret, proprietary and/or confidential information (referred to collectively as "Confidential Information"). Accordingly, the Court sets forth the terms and conditions of this Confidentiality and Protective Order:

1. For the purposes of this Confidentiality and Protective Order, "Confidential Information" may include, but is not limited to, information and documents produced in responses to discovery, the content of electronically stored information, tangible things, writings, papers, models, photographs, films, videotapes, and transcripts of oral testimony, whether printed, recorded or produced by hand or any other mechanical process. All documents, testimony and other items designated as Confidential Information, and all copies, summaries, and reproductions of such information, are subject to this Confidentiality and Protective Order.

2. Whenever the Defendants produce Confidential Information, the Defendants shall designate each page of the document or thing with a label or stamp identifying it as "Confidential" and/or "Produced Pursuant to Protective Order." Inadvertent or unintentional production of documents or information containing Confidential Information that are not designated "Confidential" shall not be deemed a waiver, in whole or in part, of a claim for confidential treatment; however, if Defendants do not designate such documents or things as Confidential Information within thirty (30) days of discovering such inadvertent production, any such claim to confidentiality of said document, information, or thing produced shall be deemed waived.

3. All material which the Defendants designate as Confidential Information in this action shall be maintained in strict confidence by the parties to this action and pursuant to the terms of this Confidentiality and Protective Order. The parties shall not disclose or permit to be disclosed Confidential Information to any person or other entity, except to "Qualified Persons," who shall be defined to include:

    a. Counsel of record for the parties in this MDL action, whether filed directly in this MDL or transferred to this MDL proceeding as a tag-along case, and employees of such counsel who are engaged in assisting counsel with this action, provided they have first read this Confidentiality and Protective Order and have agreed to abide by its terms;

    b. The employee(s) of a corporate party charged with overseeing that party's participation in this action, provided they have first read this Confidentiality and Protective Order and have agreed to abide by its terms;

    c. Independent experts and/or consultants, including jury consultants, retained by the parties to this action for the purpose of assisting in the preparation of this case, provided they have first read this Confidentiality and Protective Order and have agreed to abide by its terms and have signed a written certification in the form attached as "Exhibit A." Counsel for all parties to this action shall maintain such certifications for six (6) months following the termination of this Action and will not destroy or alter such material pursuant to any document retention policy or for any other reason

without first providing reasonable notice (no shorter than thirty (30) days) to counsel of record in this case;

    d.      Witnesses who may be shown and questioned about the Confidential Information and whose testimony as well as the information attached or submitted as exhibits, shall remain subject to this Confidentiality and Protective Order; and

    e.      The court, court personnel, special masters, mediators, other persons appointed by the court in this action, stenographic and other reporters, and videographers pursuant to the provisions of Paragraph 5.

4.      Any person who reviews the Confidential Information produced subject to this Confidentiality and Protective Order agrees to the jurisdiction over their person where the above-captioned matter is pending for the purposes of any action seeking to enforce the terms of this Confidentiality and Protective Order or any action for contempt for violation of the terms of this Confidentiality and Protective Order.

5.      The parties and their counsel who receive Confidential Information shall act to preserve the confidentiality of designated documents and information. Any party that intends to use or submit any Confidential Information in connection with any pre-trial proceedings or filings shall notify the producing party in writing of its intention to do so at the time of or before filing any related pleadings, motions or other documents, and provide in such notice the bates numbers or other sufficient description of such Confidential Information as to allow the producing party to identify the Confidential Information. The Confidential Information shall be submitted to the Court *in camera* in a sealed envelope or other appropriate container labeled as follows: "CONFIDENTIAL – DOCUMENTS SUBMITTED IN CAMERA" if used as exhibits to any filings in this case or in hearings.

6.      Within thirty days of the production of documents designated as confidential, the party producing documents designated as confidential shall provide a written log containing a list of all Confidential Information produced (the "Confidentiality Log"). The Confidentiality Log shall contain the bates range of each document produced as confidential, a description of the document specific enough to identify the document, and a reference to the request for production to which it is responsive. For documents previously produced and designated as confidential, the producing party shall have thirty days from the entry of this order to serve the Confidentiality Log. If a party disagrees with the "confidential" designation of a specific document or thing, such party may challenge the designation by identifying the document on the Confidentiality Log and indicating in writing to the party designating the document as confidential that the designation is challenged. The designating party will have fourteen (14) days to respond to the confidentiality challenge and will indicate whether the confidentiality designation will be withdrawn. If the designation is not withdrawn, the parties agree to attempt to meet

and confer with one another to resolve the issue. If the parties are unable to resolve the issue, the party that intends to use the Confidential Information shall move for a hearing to obtain a ruling from the Court as to whether the information is entitled to confidential treatment under this Confidentiality and Protective Order. Until the issue of confidentiality is resolved, either through mutual agreement of the parties or by court intervention, documents designated as Confidential Information shall remain Confidential.

7. Confidential Information may be referred to by a party in notices, motions, briefs or any other pleadings, may be used in depositions, and may be marked as deposition exhibits in this action. No such information shall be used, however, for any of these purposes unless it, or the portion where it is revealed, is appropriately marked and protected from dissemination and, where filing is necessary, it will be done pursuant to the provisions of Paragraph 5.

8. If any party wishes to modify this Confidentiality and Protective Order or its application to certain documents or information, that party shall first request such modification from the party producing the Confidential Information and if no satisfactory agreement is reached, may petition the court for modification. Until modification is granted by agreement and/or Court Order, the terms of this Confidentiality and Protective Order will govern.

9. Nothing in this Confidentiality and Protective Order shall be construed as placing a limit on the use of Confidential Information at trial. However, before trial, the parties will address this issue and determine appropriate safeguards to protect the Confidential Information at trial.

10. No Confidential Information shall be disseminated to anyone who is a direct competitor of the party producing the Confidential Information or is a current employee of a direct business competitor of the party producing the Confidential Information. This paragraph shall not apply to any retained or consulting experts. However, any retained or consulting experts excluded under this paragraph shall comply with paragraph 3(c). In addition, said expert(s) shall not disclose the Confidential Information to any direct competitor or other person currently or formerly employed by a direct business competitor of the party producing the Confidential Information. Plaintiffs' counsel shall retain Declarations executed by consulting experts.

11. Failure to abide by the terms of this Confidentiality and Protective Order may result in a motion for sanctions, costs, and attorney's fees, and any other appropriate legal action by or on behalf of the Defendants.

12. This Confidentiality and Protective Order and/or the Defendants' production of documents, things, or information in this action for inspection, copying, or disclosure to any other party to this action shall not be deemed to waive any claim of

attorney-client or work product privilege that might exist with respect to these or any other documents or communications, written or oral, including, without limitation, other communications referred to in any documents which the Defendants may produce.

13.     Within thirty (30) days from the entry of final judgment, settlement, or dismissal in connection with this action, each party to this action shall return to counsel for the Defendants their original copies of all Confidential Information received under this Confidentiality and Protective Order, together with all reproductions and copies. In addition, all abstracts, summaries, indexes or other writings that contain, reflect, or disclose the substance of the Confidential Information received under this Confidentiality and Protective Order shall be destroyed by Plaintiffs' counsel within six (6) months from the entry of final judgment, settlement, or dismissal in connection with this action. Each party's counsel will certify by declaration to the Defendants' counsel that this Confidentiality and Protective Order has been complied with by them and their experts/consultants in the form attached as "Exhibit B."

14.     Each party's attorneys shall maintain a log of all documents designated as confidential that are delivered to other Qualified Persons (the "Qualified Person Log"). The Qualified Person Log shall contain the name and address of the person to whom the information is disseminated, a designation of what constitutes the person as a Qualified Person (as defined in paragraph 3), a list of documents provided to each Qualified Person, which shall include the bates range of the documents produced as confidential, a description of the document specific enough to identify the document, and a reference to the request for production to which it is responsive.

This Court retains and shall have continuing jurisdiction over the parties and recipients of the Confidential Information and Protected Documents for enforcement of the provisions of this Confidentiality and Protective Order until compliance with Paragraph 13. This Confidentiality and Protective Order shall be binding upon the parties and their attorneys, successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.

SIGNED this the _____ day of _____, 2015.


_____
JUDGE PRESIDING

**[ATTACH FULLY EXECTUED CONFIDENTIALITY AND PROTECTIVE ORDER TO THIS AFFIDAVIT]**

**MDL NO.** _____

|  |  |  |
|---|---|---|
| | § | **IN THE DISTRICT COURT OF** |
| | § | |
| | § | |
| | § | |
| | § | |
| **IN RE KOOL SMILES DENTAL** | § | **HIDALGO COUNTY, TEXAS** |
| **LITIGATION** | § | |
| | § | |
| | § | |
| | § | |
| | § | **370TH JUDICIAL DISTRICT** |

**DECLARATION OF [INSERT NAME OF DECLARANT] REGARDING CONFIDENTIALITY AND PROTECTIVE ORDER**

STATE OF _____ )
                                ) ss.
COUNTY OF _____ )

    I, _____, declare under penalty of perjury under
      (insert name of recipient of the documents)

the laws of the **[IDENTIFY STATE/United States of America]** that the following is true and

correct:

    1.    My full name and business address are:

_____ .

    2.    I have read and fully understand the attached Confidentiality and Protective Order.

    3.    I am fully familiar with and agree to comply with and be bound by the provisions

of said Confidentiality and Protective Order, and submit to the jurisdiction of the court in which

this matter is pending for any proceedings with respect to said Confidentiality and Protective

Order.

    4,    I will not discuss or divulge to persons other than those specifically authorized by

this Confidentiality and Protective Order, and will not copy or use, except solely for the purposes of this action and for no other purposes, any documents, materials or information obtained pursuant to said Confidentiality and Protective Order.

5.      I will return original copies of all Confidential Information received under this Confidentiality and Protective Order, together with all reproductions and copies of the Confidential Information to counsel that retained me in this case.

EXECUTED this _____ day of _____, 2015.


_____
Signature of Declarant


_____
Printed Name

**[ATTACH FULLY EXECUTED CONFIDENTIALITY AND PROTECTIVE ORDER TO THIS AFFIDAVIT]**

**MDL NO. _____**

|  |  |  |
|---|---|---|
| | § | **IN THE DISTRICT COURT OF** |
| | § | |
| | § | |
| | § | |
| | § | |
| **IN RE KOOL SMILES DENTAL** | § | **HIDALGO COUNTY, TEXAS** |
| **LITIGATION** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | **370TH JUDICIAL DISTRICT** |

**DECLARATION OF [INSERT NAME OF DECLARANT] REGARDING CONFIDENTIALITY AND PROTECTIVE ORDER**

STATE OF _____ )
                                                           ) ss.
COUNTY OF _____ )

I, _____, declare under penalty of perjury under
          (insert name of recipient of the documents)

the laws of the **[IDENTIFY STATE/United States of America]** that the following is true and

correct:

1.      I am counsel of record for **[name of party]**.  My full name and business address

are:

_____.

(insert name and address of recipient of the documents)

2.      I am bound by the terms and conditions of the Confidentiality and Protective

Order.  I acknowledged my consent to be so bound by executing the attached Confidentiality and

Protective Order.

3.      Pursuant to Paragraph 12 of the Confidentiality and Protective Order attached

hereto, I acknowledge that I am obligated to return original copies of all Confidential Information

received under this Confidentiality and Protective Order, together with all reproductions and copies of the Confidential Information within thirty (30) days from the entry of final judgment, settlement, or dismissal in connection with this action.

4.      I certify that I have returned original copies of all Confidential Information received under this Confidentiality and Protective Order, together with all reproductions and copies of the Confidential Information to counsel for the Defendants.

5.      I certify that I have received all Confidential Information and Documents provided to the experts and consultants hired in this action on behalf of my client(s).   I further certify that I have returned such Confidential Information, together with all reproductions and copies of the Confidential Information, to counsel for the Defendants.

EXECUTED this _____ day of _____, 2013.


_____
Signature of Declarant


_____
Printed Name

C-0184-13-G

MDL NO. _____

|  |  |  |
|---|---|---|
| **IN RE KOOL SMILES DENTAL LITIGATION** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **IN THE DISTRICT COURT OF HIDALGO COUNTY, TEXAS 370TH JUDICIAL DISTRICT** |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MEMORANDUM OF LAW REGARDING PLAINTIFFS' MOTION TO AMEND CONFIDENTIALITY AGREEMENT AND PROTECTIVE**

Defendants Benevis LLC, f/k/a NCDR, LLC ("Benevis"), Kool Smiles, P.C. ("KSPC"), and Dentistry of Brownsville, P.C. ("DOB"), along with the individual dentists[1] named as Defendants in all cases transferred to the multidistrict litigation pretrial Court ("Defendants"), provide the following response to Plaintiffs' Memorandum of Law Regarding Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order ("Brief").

## I. SUMMARY

Plaintiffs' Memorandum of Law presents no additional law or argument related to the proper scope of shared discovery in this case. Plaintiffs insist that Defendants are somehow frustrating the discovery process, and in doing so continue to mischaracterize Defendants' conduct in preparing and producing documents. Plaintiffs do not, however, contend that Defendants have concealed anything in the discovery process or prejudiced Plaintiffs in this MDL in any specific way. Simply put, nothing about this debate over the Protective Order advances this MDL proceeding in any way. Rather, it concerns matters and people not before this Court.

---

[1] This reference excludes Dr. Jessie Trinh, Defendant in the *Arroyo, et al. v. Mathisen, et al.*, CL-14-3569 matter transferred from the County Court of Law No. 4 in Hidalgo County, because she is represented by separate counsel.

Plaintiffs also continue to misstate Texas shared discovery law by arguing that any litigant or potential litigant who merely alleges that Defendants engaged in the corporate practice of dentistry is entitled to the *Antu* discovery. This is a clear misrepresentation of Texas law and a distortion of the cases relied upon by Plaintiffs.

## II. ARGUMENTS AND AUTHORITIES

**1.** **Defendants Have Acted Appropriately and Plaintiffs Have Not Been Prejudiced.**

In producing documents, Defendants have acted appropriately under the Rules and complied with the existing Protective Order. To the contrary, Plaintiffs have refused to abide by the Protective Order, which they helped prepare over two years ago and to which they agreed prior to its entry by the Court. To now contend that Defendants have abused the process and claim they are under no obligation to comply with it is brazen and a clear attempt to distract the court from the real issue. Plaintiffs' inaccurate contentions about Defendants' conduct only serve as an attempt to re-direct the focus away from this MDL and to the unrelated and improper purpose of sharing discovery with non-litigants and litigants in dissimilar cases. Plaintiffs seek no relief that would actually aid them in this MDL proceeding. Their attempt to obtain relief for other purposes should not be tolerated by this Court.

As reflected in the Affidavit of Alan R. Vickery, attached to Defendants' Supplemental Response Brief as Exhibit "A," Defendants followed a procedure to identify and designate documents as Confidential. That Plaintiffs requested—and received—numerous documents considered by the Defendants to be proprietary and confidential does not entitle them to ignore their obligations under the Protective Order. Rather than identify specific documents and challenge specific confidentiality designations, which is required under the Protective Order, Plaintiffs argue that the sheer number of confidentiality designations in itself makes the number of designations suspect. Plaintiffs' overly-simplistic analysis, however, does not justify the relief

they really desire, which is to share sensitive documents with others not entitled to see them, nor does it warrant a wholesale rewrite of the Protective Order.

Plaintiffs contend that Defendants have frustrated the spirit and purpose of the Texas Rules of Civil Procedure, which is to enable disputes to be decided by what the facts reveal, not what facts are concealed. This is nonsense. The present dispute applies solely to information already in Plaintiffs' possession, which they may freely use in this litigation. Plaintiffs do not contend Defendants have actually concealed *any* information—they, by contrast, want to share everything Defendants have *revealed* in *Antu* to individuals with no connection to this MDL proceeding.

Plaintiffs' counsel makes much ado about the confidentiality designations made by Defendants. And they point out a mere handful of documents they claim were improperly designated as Confidential and assert that the entire production, therefore, has been improperly designated. Yet, they do not even dispute that they are not restricted in any way from using documents and information designated as Confidential under the Protective Order to represent their clients effectively in this MDL proceeding. The Protective Order states, "Confidential Information may be referred to by a party in notices, motions, briefs or any other pleadings, may be used in depositions, and may be marked as deposition exhibits." Protective Order ¶ 7. Further, the Protective Order states, "Nothing in this Stipulated Protective Order shall be construed as placing a limit on the use of Confidential Information at trial." *Id.* ¶ 9. There is no reason to modify the Protective Order simply to allow the documents to be shared with others not affiliated with this proceeding.

### 2. Plaintiffs Have Misstated Texas Law.

Plaintiffs have misstated Texas law. Plaintiffs state multiple times in their Brief that *Eli Lilly Co. v. Marshall* held that the fruits of discovery are available to potential litigants. 850

S.W.2d 155 (Tex. 1993). This is an inaccurate representation of the case. The holding in *Eli Lilly* did not turn on a finding that shared discovery was proper. The Texas Supreme Court only referred to the shared discovery doctrine in *dicta*, and the actual holding in that case *did not allow* for shared discovery with potential litigants.

As set forth more fully in Defendants' Supplemental Brief, *Eli Lilly* held—against the plaintiffs in that case—that the trial court's order requiring production of un-redacted confidential information was overbroad under the circumstances. The court reasoned that the federal "objective of fostering post-approval reporting of possible adverse reactions for all FDA-approved drugs is severely compromised by the trial court's order of wholesale disclosure of reporters' identities." *Id.* at 160. The sole reference to "potential litigants" was in *dicta* and in no way establishes a complete paradigm shift from *Garcia*. *Garcia* established the shared discovery doctrine for similarly situated *litigants*, but it did not extend the doctrine to *potential litigants*, as Plaintiffs would have this Court believe. *See Garcia*, 734 S.W.2d 343, 347 (Tex. 1987). The spirit of *Garcia* is being fulfilled by this MDL, which will allow all similarly situated litigants with cases against these Defendants transferred to this MDL to have access to the documents.

Surely *Eli Lilly* did not intend to make a wholesale change to *Garcia*, in *dicta*, without any further explanation. This is perhaps most apparent by noting that the holding of *Eli Lilly* is, in fact, consistent with *Garcia* in that the plaintiffs there were "entitled to all the substantive information in the reports and to share that discovery with their expert witnesses and <u>litigants</u> in other cases." *Eli Lilly*, 850 S.W.2d at 160 (emphasis added). The *Eli Lilly* court did not hold that *potential* litigants were entitled to confidential information.

Plaintiffs also wrongly contend the defendants in the federal case are entitled to the *Antu* discovery simply because they have alleged that Benevis and DOB engaged in the "illegal

corporate practice of dentistry." Plaintiffs' Brief at 4. While Defendants dispute those allegations, the presence of those claims in plaintiffs' pleadings is irrelevant to this analysis. Texas law does not allow a private litigant to bring a claim for practicing dentistry without a license. Thus, contrary to Plaintiffs' argument, a "potential litigant" is not entitled to the *Antu* discovery simply because it may be considering making allegations relating to a cause of action for which they cannot recover.

Finally, discovery in a dental malpractice case governed by the Texas Rules of Civil Procedure is necessarily different than discovery in a false advertising, defamation, and business disparagement case governed by the Federal Rules of Civil Procedure. Plaintiffs have pointed the Court to no authority establishing that discovery from state court litigation may be shared in a federal court case that involves an entirely different set of claims and parties and scope of discovery. Neither *Garcia* nor *Eli Lilly* allow sharing of discovery under these circumstances. Rather, those cases speak to sharing of discovery with similarly situated litigants in similarly situated cases. Nothing more. The Court should not amend the Protective Order in place to allow for this.

3.      **Plaintiffs' Proposed Amendment to the Protective Order Should be Rejected.**

Plaintiffs' brief includes an exhibit with proposed amendments to the existing protective order. Defendants object to the proposed order attached to Plaintiffs' brief and urge the Court to, instead, sign the proposed order attached to Defendants' June 19 submission. That proposed Order provides a workable, more streamlined approach to challenging confidentiality designations and will provide Defendants with the protections to which they are entitled.

Plaintiffs' proposed order is entirely too vague and broad and allows Plaintiffs to circumvent the existing confidential designation challenge procedure and allow for sharing with individuals not affiliated in any way with this MDL proceeding. This is unnecessary to the

advancement of the claims in the MDL. If signed, Plaintiffs' proposed order would allow Plaintiffs in the MDL to share the confidential information from *Antu* with any "potential litigant" with a "potential claim" against a "potential part[y]" in the MDL. This approach is not supported by Texas law and provides no regulation or ability for the Defendants to assess the parties with whom Plaintiffs might share the Confidential Information. Even with Plaintiffs' second and third proposed amendments, Plaintiffs—at their sole discretion—may determine that virtually any person could be deemed a "potential litigant" with a "potential claim" against a "potential party."

To make matters worse, Plaintiffs—for the first time and without explanation—attempt to have Paragraph 13 from the existing Protective Order deleted. Plaintiffs' brief does not address this issue. Nevertheless, Plaintiffs seek to have the Court remove the only existing protection in place that insures the proper handling and return of Confidential Information to Defendants. Specifically, Paragraph 13 includes a requirement that Plaintiffs return Confidential Information to Defendants, along with a certification from Plaintiffs' counsel that they and their experts and consultants have complied with the terms of the Protective Order. Plaintiffs' proposed order seeks to eliminate this paragraph in its entirety in an apparent attempt to shirk any responsibility for properly handling Defendants' Confidential Information. This proposed amendment should be rejected and any order modifying the Protective Order should include a clear procedure for tracking and certifying that Confidential Information has been properly handled. Plaintiffs have presented no argument or evidence that the existing procedure is unworkable in any way, and this attempt to escape obligations Plaintiffs have already agreed to only proves the need to maintain stringent controls on the dissemination of Confidential Information.

On the other hand, the proposed order submitted by Defendants on June 19, 2015 contains safeguards for handling of the Confidential documents produced by Defendants, while

allowing the Plaintiffs the ability to use them freely in the MDL and challenge Confidentiality designations with ease. This precisely addresses what Plaintiffs' counsel complained of at the hearing on June 15, 2015 and provides a solid, workable Protective Order for use in this MDL going forward.

### III. CONCLUSION

Based on the foregoing, Defendants Benevis LLC, f/k/a NCDR, LLC ("Benevis"), Kool Smiles, P.C. ("KSPC"), and Dentistry of Brownsville, P.C. ("DOB") (collectively the "Corporate Defendants"), along with the individual dentists[2] named as Defendants in all cases transferred to the pretrial multi-district litigation respectfully request that Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order or Alternatively for Sanctions, or Alternatively for Determination of Confidentiality be denied, that the Court enter the proposed Protective Order submitted as Exhibit "B" to Defendants' Response filed on June 19, 2015, and for such other and further relief to which they are entitled.

---

[2] This reference excludes Dr. Jessie Trinh, Defendant in the *Arroyo, et al. v. Mathisen, et al.*, CL-14-3569 matter transferred from the County Court of Law No. 4 in Hidalgo County, because she is represented by separate counsel.

Respectfully Submitted,


*/s/ Alan R. Vickery*
WAYNE B. MASON
State Bar No. 13158950
ALAN R. VICKERY
State Bar No. 20571650
**SEDGWICK LLP**
1717 Main Street, Suite 5400
Dallas, TX 75201-7367
Telephone:   (469) 227-8200
Facsimile:     (469) 227-8004
wayne.mason@sedgwicklaw.com
alan.vickery@sedgwicklaw.com



EDUARDO R. RODRIGUEZ
State Bar No. 00000080
**ATLAS, HALL & RODRIGUEZ, L.L.P.**
50 W. Morrison Road, Suite A
Brownsville, TX 78520
Telephone:   (956) 574-9333
Facsimile:     (956) 574-9337
errodriguez@atlashall.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record as shown below via facsimile and email on the 23rd day of June, 2015.

George W. Mauzé, II
MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 401 South
San Antonio, TX 78215
gmauze@mauzelawfirm.com

R.D. "Bobby" Guerra
GUERRA, LEEDS, SABO & HERNANDEZ
PLLC
10213 N. 10th Street
McAllen, TX 78504
rdguerra@guerraleeds.com
Attorneys for Plaintiffs

Bruce S. Campbell
State Bar No: 03694600
BRACKETT & ELLIS,
A Professional Corporation
100 Main Street
Fort Worth, TX. 76102-3090
817.338.1700
Facsimile: 817.870.2265
bcampbell@belaw.com
Attorneys for Defendant Jessie Trinh, DMD

/s/ Alan R. Vickery
ALAN R. VICKERY

CAUSE NO. C-0184-13-G

PAULA ANTU AS NEXT FRIEND OF     §       IN  THE  DISTRICT COURT

███████████████████, A                 §

MINOR, et al                                  §

                                              §

        PLAINTIFFS,                §

                                                §

V.                                               §       370TH JUDICIAL DISTRICT

                                                §

NCDR, LLC d/b/a KOOL SMILES, et al     §

                                                §

        DEFENDANTS.            §       HIDALGO  COUNTY, TEXAS

---

MDL NO:  14-0851

                                                §       IN  THE  DISTRICT COURT

    §

    §

    §

    §

    §

IN RE KOOL SMILES DENTAL     §

LITIGATION                          §       370TH JUDICIAL DISTRICT

    §

    §

    §

    §       HIDALGO  COUNTY, TEXAS

| | | |
|---|---|---|
| PAULA ANTU AS NEXT FRIEND OF ███████████ █ ██████, A MINOR, et al | § § § § | IN THE DISTRICT COURT |
| PLAINTIFFS, | § § | |
| V. | § § | 370TH JUDICIAL DISTRICT |
| NCDR, LLC d/b/a KOOL SMILES, et al | § § | |
| DEFENDANTS. | § § | HIDALGO COUNTY, TEXAS |

## PLAINTIFFS' MEMORANDUM OF LAW REGARDING PLAINTIFFS' MOTION TO AMEND THE STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

TO THE HONORABLE NOE GONZALEZ, MDL JUDGE PRESIDING:

COME NOW Plaintiffs in this cause and MDL No. 14-0851 *In Re Kool Smiles Dental Litigation*, and file this Plaintiffs' Memorandum of Law Regarding Plaintiffs' Motion to Amend the Stipulated Confidentiality Agreement and Protective Order, and would respectfully show the Court the following:

### I.
### MODIFICATION OF PROTECTIVE ORDER

In accordance with Texas law and Paragraph 8 of the Stipulated Confidentiality Agreement and Protective Order (the "Protective Order"), Plaintiffs move the Court to amend the Protective Order. The modification is within this Court's discretion and is sought because the Protective Order and Defendants' use of it is frustrating the spirit and purpose of the Texas Rules of Civil Procedure, Texas law, and this Court's discovery orders. The ultimate purpose of the Texas Rules of Civil Procedure and discovery is to allow litigants to seek the truth to enable disputes to be decided by what the facts reveal, not by what facts are concealed. *Jampole v. Touchy*, 673 S.W.2d 569 (Tex. 1984).

At the hearing on June 15, 2015, Plaintiffs presented evidence that Defendant produced over 477,000 pages of documents after several orders compelling discovery. Over 99% of the documents beginning with bates-stamped "KSL" were designated "Confidential Pursuant to the Protective Order", prohibiting dissemination to other litigants and potential litigants. Plaintiffs presented evidence that the documents designated by Defendants as "Confidential" include over 100,000 pages that are blank, totally redacted, public advertising, professional literature, public information, e-mails, etc. For this reason, in accordance with Texas law and Paragraph 8 of the Stipulated Confidentiality Agreement and Protective Order, this Honorable Court should amend the Protective Order.

Plaintiffs in the *Antu* case and in this MDL are seeking a modification allowing the dissemination of discovery in this case, including documents produced by Defendants, to any other litigant or potential litigant in this MDL litigation including their attorneys, retained experts, and consulting experts, to any litigant, attorneys, retained experts, and consulting experts in *NCDR, L.L.C., et al v. Mauzé & Bagby, PLLC, et al;* case No. 5:12-cv-36 in the United States District Court Southern District of Texas, Laredo Division, and to any other litigants or potential litigants, including their attorneys, retained experts, and consulting experts with actual or potential claims relating to dental services or the ownership, operation, management, and/or control of dental clinics against any of the named defendants and other potential parties in the *Antu* and MDL litigation. Plaintiffs' proposed modifications to the Protective Order comport with the Texas Supreme Court's rulings in *Garcia v. Peeples*, 734 S.W.2d 343 (Tex. 1987) and *Eli Lilly and Co. v. Marshall*, 850 S.W.2d 155 (Tex. 1993).

## II.
## <u>TEXAS LAW EXPLICITLY PERMITS SHARED DISCOVERY</u>

In *Garcia*, the Texas Supreme Court held that it was an abuse of discretion for the trial court not to permit shared discovery of documents containing trade secrets, so long as the documents were not shared with competitors. *Garcia v.* Peeples, 734 S.W.2d 343, 348 (Tex. 1987). Specifically, the Court held that the trial court should have rendered an "order preventing dissemination of GMC's true trade secrets **only to GMC's competitors.**" *Id.* at 348. (emphasis added). Further, the Texas Supreme Court in *Eli Lilly and Co. v. Marshall* held that "the fruits of discovery are available not only to the parties in a particular case but may be disseminated in turn to other litigants and **potential litigants.**" *Eli Lilly and Co. v. Marshall*, 850 S.W.2d 155, 160 (Tex. 1993) (emphasis added). The shared discovery of documents has been supported and confirmed by not only the Texas Supreme Court, but also followed by numerous appellate courts and state and federal courts throughout the United States.[1]

## III.
## <u>KOOL SMILES' ARGUMENT IS A RED HERRING</u>

Kool Smiles argues that shared discovery is only permitted between identical or similarly situated parties involving virtually identical issues. This argument is mistaken and is taken out of context from the ruling in *Garcia*. In *Garcia*, the court stated:

> Shared discovery is an effective means to insure full and fair disclosure. Parties subject to a number of suits concerning the same subject matter are forced to be consistent in their responses by the knowledge that their opponents can compare those responses. In addition to making discovery more truthful, shared discovery makes the system itself more efficient. The current discovery process forces similarly situated parties to go through the same discovery process time and time again, even though the issues involved are virtually identical. Benefiting from restrictions on discovery, one party facing a number of adversaries can require his opponents to

---

[1] In *Garcia*, the Court noted that federal courts have "overwhelming embraced" the practice of shared discovery. *Garcia*, 734 S.W.2d at 347 (citing *Wilk v. American Medical Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980); *American Telephone and Telegraph Co. v. Grady*, 594 F.2d 594, 597 (7th Cir. 1979); *Phillips Petroleum Co. v. Pickens*, 105 F.R.D. 545, 551 (N.D. Tex. 1985); *Ward v. Ford Motor Co.*, 93 F.R.D. 579, 580 (D. Colo. 1982); *Carter-Wallace v. Hartz Mountain Industries*, 92 F.R.D. 67, 70 (S.D.N.Y. 1981); *Patterson v. Ford Motor Co.*, 85 F.R.D. 152, 154 (W.D. Tex. 1980); *Parsons v. General Motors Corp.*, 85 F.R.D. 724, 726 (N.D. Ga. 1980))

duplicate another's discovery efforts, even though the opponents share similar discovery needs and will litigate similar issues. Discovery costs are no small part of the overall trial expense. A number of courts have recognized that allowing shared discovery is far more efficient than the repetitive system now employed. Federal courts, for instance, have overwhelmingly embraced this practice in order to streamline discovery. The Federal Judicial Center's Manual for Complex Litigation also suggests sharing discovery in order to avoid duplicative efforts.

*Garcia*, 734 S.W.2d at 347 (internal citations removed). Clearly, based upon the context of the opinion, the Court's reference to parties involved in litigation with virtually identical issues is made to illustrate why shared discovery is important. In *Garcia*, the plaintiffs moved the Court to allow shared discovery against not just GMC (the defendant), but other automakers as well, such relief ultimately being granted. *Id* at 347. Further, as subsequently held by The Texas Supreme Court in *Eli Lilly and Co.*, discovery may be shared with litigants and potential litigants. *Id* at 160. Therefore, Texas law does not limit shared discovery to the identical parties and identical issues.

## IV.
## KOOL SMILES' ACTIONS DEMONSTRATE WHY A SHARED DISCOVERY PROTECTIVE ORDER IS NECESSARY

In the case styled *NCDR, L.L.C., et al v. Mauzé & Bagby, PLLC, et al;* case No. 5:12-cv-36 in the United States District Court Southern District of Texas, Laredo Division, NCDR, LLC and Dentistry of Brownsville, P.C., both named defendants in the *Antu* case, have brought several causes of action, including defamation, against counsel for Plaintiffs herein. The defamation claim arises from statements made by counsel for Plaintiffs herein pertaining to Kool Smiles dental treatment of Texas children. Many of the issues are similar to issues in the *Antu* and MDL litigation (ie; truth of the statements pertaining to Kool Smiles treatment of Texas children, fraud, and the illegal corporate practice of dentistry). In said case, NCDR, LLC and Dentistry of Brownsville, P.C. are not only refusing to produce documents that have already

been produced in *Antu*, but also are attempting to require its Plaintiffs' attorneys to duplicate discovery efforts resulting in unnecessary expense and unnecessary burden on judicial resources.

## V.
## CONCLUSION

Plaintiffs' proposed order granting Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order, attached hereto as Exhibit "A", comports with Texas law and the Texas Supreme Court's clear holding that shared discovery should be permitted.

## VI.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that the Court enter an order granting Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order and for such other and further relief to which Plaintiffs may be deemed entitled.

Respectfully submitted,

MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 402 South
San Antonio, Texas 78215
Telephone: 210.354.3377
Telecopier: 210.354.3909

By: _____
    George W. Mauzé, II
    State Bar No. 13238800
    Tom Bagby
    State Bar No. 24059709

GUERRA, LEEDS, SABO & HERNANDEZ, PLLC
10213 N. 10th Street
McAllen, Texas 78504
Telephone: 956.383.4300
Telecopier: 956.383.4304

By: R.D. "Bobby' Guerra
State Bar No. 08578640
Frank Sabo, Jr.
State Bar No. 17500300
Joe Hernandez, Jr.
State Bar No. 09517700

LAW OFFICES OF MICHAEL E. FLANAGAN
809 Chicago Avenue
McAllen, TX 78501-2771
Telephone: 956.683.0333
Telecopier: 956.683.0222

By: Michael E. Flanagan
State Bar No. 07107550

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of June, 2015 a true and correct copy of Plaintiffs'

Memorandum of Law Regarding Plaintiffs' Motion to Amend Confidentiality Agreement and

Protective Order has been sent by efiling service and email to:

Mr. Wayne B. Mason, Esq.
wayne.mason@sedgwicklaw.com
Mr. Alan Vickery, Esq.
alan.vickery@sedgwicklaw.com
Sedgwick LLP
1717 Main Street, Suite 5400
Dallas, Texas 75201-7367

Mr. Bruce S. Campbell, Esq.
bcampbell@belaw.com
Brackett & Ellis, P.C.
100 Main Street
Fort Worth, TX 76102

Mr. Eduardo R. Rodriguez, Esq.
errodriguez@atlashall.com
Atlas, Hall & Rodriguez, L.L.P.
50 W. Morrison Road, Suite A
Brownsville, TX 78520

_____
Tom Bagby

EXHIBIT "A"

PLAINTIFFS' PROPOSED ORDER GRANTING PLAINTIFFS' MOTION TO AMEND
STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

| | | |
|---|---|---|
| PAULA ANTU AS NEXT FRIEND OF ████████████████, A MINOR, et al | § § § § | IN THE DISTRICT COURT |
| PLAINTIFFS, | § § § | |
| V. | § § | 370TH JUDICIAL DISTRICT |
| NCDR, LLC d/b/a KOOL SMILES, et al | § § § | |
| DEFENDANTS. | § § § | HIDALGO COUNTY, TEXAS |

## ORDER GRANTING PLAINTIFFS' MOTION TO AMEND STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

On this 15th day of June, 2015 came on to be considered Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order. Defendants and Plaintiffs appeared by and through their respective attorneys of record. After considering the motion, considering the arguments of counsel, and considering the evidence, the Court hereby finds that the following orders should be entered:

ORDERED that the Stipulated Confidentiality and Protective Agreement Order entered by the Court on June 11, 2013 shall be, and is hereby, AMENDED and MODIFIED to expressly authorize Plaintiffs and their attorneys to dissemination any of the discovery in this case, including documents produced by Defendants, to any other litigant or potential litigant in this MDL litigation including their attorneys, retained experts, and consulting experts, to any litigant, attorneys, retained experts, and consulting experts in *NCDR, L.L.C., et al v. Mauzé & Bagby, PLLC, et al;* case No. 5:12-cv-36 in the United States District Court Southern District of Texas, Laredo Division, and to any other litigants or potential litigants, including their attorneys, retained experts, and consulting experts with actual or potential claims relating to dental services

or the ownership, operation, management, and/or control of dental clinics against any of the named defendants and other potential parties in the *Antu* and MDL litigation. It is further,

ORDERED that Plaintiffs and their attorneys shall not disseminate any of the discovery in this case, including documents produced by Defendants, to any competitor of Defendants, except for retained and consulting experts designated in the MDL litigation or in any other litigation that any of the Defendants are a named party. It is further,

ORDERED that Defendants designation of documents produced as "Confidential Pursuant to the Protective Order" shall be, and is hereby, OVERRULED to the extent specified and ordered above. It is further,

ORDERED that the Stipulated Confidentiality and Protective Agreement Order entered by the Court on June 11, 2013 shall be, and is hereby, AMENDED and MODIFIED to delete Paragraph 13 and Exhibit "B".

SIGNED AND ENTERED on this _____ day of June, 2015.

 

HONORABLE NOE GONZALEZ,
MDL JUDGE PRESIDING

APPROVED AS TO FORM:

MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 401 South
San Antonio, Texas 78215
Telephone: 210.354.3377
Telecopier: 210.354.3909

By:_____
    George W. Mauzé, II
    State Bar No. 13238800
    James Thomas Bagby, III
    State Bar No. 24059409

GUERRA, LEEDS, SABO & HERNANDEZ, PLLC
10213 N. 10th St.
McAllen, Texas 78504
Telephone: 956.383.4300
Telecopier: 956.383.4304
By:     R.D. "Bobby" Guerra
        State Bar No. 08578640
        Frank Sabo, Jr.
        State Bar No. 17500300
        Joe Hernandez, Jr.
        State Bar No. 09517700

LAW OFFICES OF MICHAEL E. FLANAGAN
809 Chicago Avenue
McAllen, TX 78501-2771
Telephone: 956.683.0333
Telecopier: 956.683.0222
By:     Michael E. Flanagan
        State Bar No. 07107550

**ATTORNEYS FOR PLAINTIFFS**

Electronically Filed
6/30/2015 2:04:32 PM
Hidalgo County District Clerks
Reviewed By: Kim Hinojosa

CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU AS NEXT FRIEND OF ████████████████, A MINOR, et al | § § § § | IN THE DISTRICT COURT |
| PLAINTIFFS, | § § | |
| V. | § § | 370TH JUDICIAL DISTRICT |
| NCDR, LLC d/b/a KOOL SMILES, et al | § § § | |
| DEFENDANTS. | § | HIDALGO COUNTY, TEXAS |

## ORDER GRANTING PLAINTIFFS' MOTION TO AMEND STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

On this 15th day of June, 2015 came on to be considered Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order. Defendants and Plaintiffs appeared by and through their respective attorneys of record. After considering the motion, considering the arguments of counsel, and considering the evidence, the Court hereby finds that the following orders should be entered:

ORDERED that the Stipulated Confidentiality and Protective Agreement Order entered by the Court on June 11, 2013 shall be, and is hereby, AMENDED and MODIFIED to expressly authorize Plaintiffs and their attorneys to dissemination any of the discovery in this case, including documents produced by Defendants, to any other litigant or potential litigant in this MDL litigation including their attorneys, retained experts, and consulting experts, to any litigant, attorneys, retained experts, and consulting experts in *NCDR, L.L.C., et al v. Mauzé & Bagby, PLLC, et al;* case No. 5:12-cv-36 in the United States District Court Southern District of Texas, Laredo Division, and to any other litigants or potential litigants, including their attorneys, retained experts, and consulting experts with actual or potential claims relating to dental services

or the ownership, operation, management, and/or control of dental clinics against any of the named defendants and other potential parties in the *Antu* and MDL litigation. It is further,

ORDERED that Plaintiffs and their attorneys shall not disseminate any of the discovery in this case, including documents produced by Defendants, to any competitor of Defendants, except for retained and consulting experts designated in the MDL litigation or in any other litigation that any of the Defendants are a named party. It is further,

ORDERED that Defendants designation of documents produced as "Confidential Pursuant to the Protective Order" shall be, and is hereby, OVERRULED to the extent specified and ordered above. It is further,

ORDERED that the Stipulated Confidentiality and Protective Agreement Order entered by the Court on June 11, 2013 shall be, and is hereby, AMENDED and MODIFIED to delete Paragraph 13 and Exhibit "B".

SIGNED AND ENTERED on this 30th _ day of June, 2015.

_____
HONORABLE NOE GONZALEZ,
MDL JUDGE PRESIDING

APPROVED AS TO FORM:

MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 401 South
San Antonio, Texas 78215
Telephone: 210.354.3377
Telecopier: 210.354.3909

By:_____
George W. Mauzé, II
State Bar No. 13238800
James Thomas Bagby, III
State Bar No. 24059409

GUERRA, LEEDS, SABO & HERNANDEZ, PLLC
10213 N. 10th St.
McAllen, Texas 78504
Telephone: 956.383.4300
Telecopier: 956.383.4304
By:    R.D. "Bobby" Guerra
        State Bar No. 08578640
        Frank Sabo, Jr.
        State Bar No. 17500300
        Joe Hernandez, Jr.
        State Bar No. 09517700

LAW OFFICES OF MICHAEL E. FLANAGAN
809 Chicago Avenue
McAllen, TX 78501-2771
Telephone: 956.683.0333
Telecopier: 956.683.0222
By:    Michael E. Flanagan
        State Bar No. 07107550

**ATTORNEYS FOR PLAINTIFFS**

KeyCite Yellow Flag - Negative Treatment

**Distinguished by** Schneider Nat. Carriers, Inc. v. Bates, Tex., October 1, 2004

898 S.W.2d 766

Supreme Court of Texas.

ABLE SUPPLY COMPANY, et al., Relator,

v.

The Honorable B.D. MOYE, Judge, Respondent.

No. 95–0048. | Argued March 22, 1995. | Decided May 11, 1995. | Rehearing Overruled June 8, 1995.

Defendants in mass products liability action involving over 3,000 plaintiffs and nearly 300 defendants sought mandamus relief after trial court refused to compel plaintiffs to answer interrogatory filed nearly eight years earlier requesting identification of physicians who had attributed any plaintiff's alleged injury to specific product manufactured or supplied by a defendant. The Supreme Court, Owen, J., held that: (1) trial court committed clear abuse of discretion in refusing to compel answer, and (2) defendants lacked adequate remedy at law.

Writ conditionally granted.

**Attorneys and Law Firms**

**\*767** Jim E. Cowles, Joe Michael Russell, Robert M. Martin, Jr., P. Michael Jung, Dallas, Jeff Shaver, Tyler, Lawrence P. Maxwell, Jr., Dallas, Jerry C. Parker, Tyler, Hubert A. Crouch, III, Mark K. Sales, Dallas, L. Hayes Fuller, III, Waco, Annalee Mathis, Houston, Howard Waldrop, Texarkana, Richard F. Jacobs, Austin, C. Victor Haley, Center, R. Lyn Stevens, Beaumont, John C. Hardy, Tyler, Thomas B. Taylor, Houston, for relator.

Jeffrey J. Angelovich, Nelson J. Roach, Harold W. Nix, Daingerfield, Walter Umphrey, Beaumont, Franklin Jones, Jr., Marshall, for respondent.

**Opinion**

Justice OWEN, delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice GONZALEZ, Justice

HIGHTOWER, Justice HECHT, Justice CORNYN, Justice GAMMAGE and Justice ENOCH join.

In this mass products liability suit involving over 3,000 plaintiffs and nearly 300 defendants, sixty-three of the defendants request mandamus relief from the trial court's refusal to compel an answer to an interrogatory filed nearly eight years ago which requests the identification of physicians who have attributed any plaintiff's alleged injury to a specific product manufactured or supplied by **\*768** a defendant. Under the facts of this case, we hold that the trial court's refusal to compel plaintiffs to answer this interrogatory constituted a clear abuse of discretion and left the defendants without an adequate remedy at law. We therefore conditionally grant a writ of mandamus directing the trial court to vacate its order denying the defendants' motion to compel and to enter an order granting such motion.

**I.**

These proceedings commenced nearly eight years ago in June of 1987. Initially, 35 separate personal injury cases were filed. The trial court then ordered all subsequent cases filed under one docket number and consolidated for pretrial purposes. Defendants have filed motions for severance on which the trial court has not yet ruled. No trial date has been set.

The plaintiffs were employed at the Lone Star Steel plant in Morris County, Texas, at various times from 1947 to the present. Some of the plaintiffs were employed for as little as a few weeks as long as thirty years ago; others were employed at Lone Star for the majority of their working years. All plaintiffs allege they were exposed to toxic materials delivered to the Lone Star mill and that they suffer from various occupational diseases or require medical monitoring as a result of that exposure. The defendants include some 294 manufacturers and suppliers who have delivered a wide variety of products to the steel mill over a forty-year period.

In 1987, defendants directed one master set of interrogatories to plaintiffs. Question 30 of these interrogatories asks:

*Interrogatory NO. 30:* Please state the name and address of each and every doctor, physician or other medical practitioner who has attributed your alleged injury made the basis of this lawsuit to exposure to the defendants' products, including the dates of treatment or examination of each such doctor, physician or other

medical practitioner, and the name or identity of the product to which your alleged injury is attributed.

In accordance with the trial court's case management order, thirty plaintiffs each month are required to respond to this interrogatory. Approximately 800 of the more than 3,000 plaintiffs had filed answers at the time this proceeding was filed in this Court. At this pace, interrogatory answers will be completed in another seven to eight years. Thus far, virtually all of the plaintiffs responding to this interrogatory have stated:

> The answer to this interrogatory has not been determined at this time, but will be supplemented at a later date.

Approximately 12 of the 800 plaintiffs who have responded to this interrogatory have provided the name of a doctor. However, even these 12 plaintiffs have failed to provide any information regarding the products that caused their alleged injuries. None of the plaintiffs has objected to this interrogatory and none contends that the information requested is beyond the scope of discovery.

In their first attempt to obtain a meaningful answer to question 30, the defendants filed a motion to compel a supplemental answer on December 22, 1991, which was denied by the trial court. Nearly two years later, the defendants filed the motion that is the subject of this proceeding. Pursuant to Texas Rules of Civil Procedure 166b(6)(c) and 215(1)(b), defendants sought to compel supplemental or non-evasive answers from the plaintiffs who have answered interrogatory 30. After the trial court denied this motion on November 21, 1993, the defendants requested mandamus relief from the Texarkana court of appeals, which overruled the request on April 22, 1994; thereafter, this Court overruled the defendants' motion for leave to file petition for writ of mandamus without prejudice on December 1, 1994. *Able Supply Co. v. Moye,* 38 Tex.Sup.Ct.J. 102 (Dec. 1, 1994). The defendants refiled their request for relief in this Court, which granted leave to file. 38 Tex.Sup.Ct.J. 263 (Feb. 18, 1995).

## II.

 **[1]**    **[2]**    Mandamus will issue only to correct a clear abuse of discretion when there is no adequate remedy at law. *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992). We first turn to the question of whether the trial  **\*769**  court has committed

a clear abuse of discretion in denying the defendants' motion to compel an answer to interrogatory 30.

Defendants' position is simple: they contend that some eight years after this litigation was filed, they are entitled to know which plaintiffs are claiming that they have been injured by which defendant's product. The plaintiffs have sued literally hundreds of different suppliers to the Lone Star Steel plant, who make or supply a range of products from water softeners to paper clips to chemical solvents. The products at issue in this lawsuit were used in different areas and at different times in the plant, which covers several acres. The plaintiffs allege that all defendants, regardless of their particular product, exposed each of them "to their various toxic and hazardous poisons, particulates, gases, chemicals, vapors, fumes, defective products, defective equipment, defective machinery," thereby causing them injury. However, eight years after the lawsuit was filed, defendants are without any discovery that connects their alleged exposures to any defendant's product.

In their motion to compel, defendants presented the trial court with undisputed evidence that plaintiffs' counsel has had the opportunity to attempt to supply the basic causal information requested in interrogatory 30, but has deliberately chosen not to do so. In order to effectuate settlement with the asbestos-manufacturing defendants, plaintiffs' counsel had each plaintiff examined by the occupational medicine section at the University of Texas Health Science Center at Tyler, Texas. After a consultation with plaintiffs' lead counsel, the doctors in the occupational medicine section were instructed not to perform a broad range of tests, but instead to "look primarily at the chest and respiratory system because of the likelihood of asbestos exposure." The record contains undisputed evidence that the Center possessed the capability of examining the plaintiffs for other industrial diseases.

Defendants assert that the reason that the plaintiffs have been recalcitrant in providing a causal connection between the plaintiffs' alleged injuries and the defendants' products is that, in at least some cases, no causal connection exists. The facts are compelling. Wrongful death actions have been brought by several plaintiffs whose decedents were killed in automobile collisions or by other traumatic events as long as thirty years ago. In affidavits filed in response to motions for summary judgments, family members of at least two of the deceased men stated under oath that the family realized on or about June 15, 1988, that their decedent's health problems and resulting death were caused by the defendants'

products. These affidavits were filed despite the fact that the former Lone Star employees perished in automobile collisions in 1965 and 1981, respectively. A total of 624 virtually identical affidavits were filed by family members of 194 other decedents, nearly all of which contain June 15, 1988, as the date on which each plaintiff realized the alleged connection between the death of his or her loved one and the defendants' products. The suit includes at least 80 plaintiffs who worked at Lone Star for less than one year. One plaintiff is 94 years old and has not worked at Lone Star in over 28 years, yet defendants have allegedly decreased his life expectancy. The great majority of plaintiffs are elderly men.

The defendants presented the trial court with concrete evidence that this lawsuit in all probability includes employees who had worked at Lone Star but had no belief that they had been or might be injured by any of the defendants' products. Sam Fowler, the lead plaintiff in the case, testified in his deposition that he decided to join the litigation because he

> heard that they were getting a suit up about stuff that we had breathed out here at the plant and I figured I had been out there 37 years and I breathed about everything everybody else breathed and so I wanted to get in on the party.

When asked in that deposition to what he attributes any lung problems he has, Fowler's answer underscored the need for an answer to interrogatory 30 when he stated, "I don't know. I'm not a doctor."

Under the case management order imposed by the trial court, ten plaintiffs are deposed each week during the second half of every month. The record demonstrates that **\*770** many of the deposed plaintiffs have stated that no medical practitioner has ever told them that the injuries of which they complain are due to exposure to defendants' products. If no doctor has determined that a plaintiff has been injured by a particular substance manufactured by these defendants, plaintiffs are obligated to disclose this information in response to interrogatory 30.

In urging this Court to deny mandamus, plaintiffs argue that the trial court has broad discretion to manage its own docket, and that answers to interrogatory 30 require such a complex expert determination of causation that the trial court has acted

well within that discretion in determining that no answers are required at the present time.

The plaintiffs first argue that defendants themselves have so hindered and delayed the discovery process that they have been unable to respond to interrogatory 30. Defendants, they allege, have halted or delayed completion of the "Litidex project," a massive undertaking which involves the computer imaging and abstraction of data from over 14,000,000 invoices from product suppliers to the Lone Star plant over a forty-year period. However, even assuming that the defendants did delay this project and that the information from the invoices is necessary for a doctor to establish the causes of plaintiffs' injuries, plaintiffs concede in their brief that the project was completed in September of 1994.

Plaintiffs contend that it is only now that they have the Litidex information that they have been able to propound interrogatory requests to the defendants, the answers to which are necessary for plaintiffs to respond fully to interrogatory 30. The plaintiffs' interrogatories concern "the chemical constituents of products, prior claims for occupational disease, [and] Defendants' knowledge of hazards of the products." Plaintiffs have offered no explanation as to why information from the invoices was required before these interrogatories could be crafted. Further, information relating to *other* claims against these defendants by *other* plaintiffs or the *defendants'* own knowledge of their products cannot supply the information required by interrogatory 30, which asks for any *individual* medical determination of injury to a *specific plaintiff in this suit* from a specific product.

The plaintiffs also argue that some of the defendants have failed to supply a product identification notebook as required by the court's case management order, and that this failure has prevented them from answering interrogatory 30. However, this assertion does not provide a basis for the trial court to deny the defendants' motion to compel. First, the trial court's case management order does not tie the defendants' obligation to produce a product notebook to plaintiffs' obligation to answer the master set of interrogatories. Moreover, plaintiffs' contentions that a product identification notebook is necessary for a medical determination of injury by a product are insupportable. As early as July 15, 1988, plaintiffs had knowledge of at least 150 chemical substances allegedly present in the products supplied by the defendants. This list of chemical substances was attached to their second amended petition. Finally, the plaintiffs are in possession of abstracted information of products supplied to the Lone Star Steel plant

from 1945 forward, as well as the dates of each plaintiff's employment. If this information is actually necessary for a medical doctor to determine that a plaintiff suffers from a particular occupational injury from a particular product, the plaintiffs have it.

None of the plaintiffs' assertions of delay provides any basis for the trial court to deny the defendants' motion to compel answers to interrogatory 30.

The plaintiffs also argue that the trial court did not abuse its discretion in denying defendants' motion to compel because significant progress in discovery has been made. They point out that they are in the process of "providing medical authorizations to Defendants" and that each answered set of master interrogatories provides defendants with information on that plaintiff's illness and the doctors who have treated him. While this may be true, it is not a substitute for discovery on the issue of causation. Each defendant is entitled to discover whether there has been a medical determination that an illness has been caused by that defendant's product.

**\*771** **[3]** The plaintiffs also argue that the trial court could not have abused its discretion because interrogatory 30 is a request to identify expert witnesses and under Texas Rule of Civil Procedure 166b(6)(b), they are not required to identify their experts until thirty days before trial. However, Rule 166b(6)(b) deals only with a party's duty to *designate testifying experts not previously disclosed.* TEX.R.CIV.P. 166b(6)(b). It addresses a party's duty to supplement an answer to an interrogatory requesting the identity of *testifying experts and the substance of their testimony* and does not control the situation here.[1] *Id.*

---

[1]     Rule 166b(6)(b) states:

If the party expects to call an expert witness when the identity or the subject matter of such expert witness' testimony has not been previously disclosed in response to an appropriate inquiry directly addressed to these matters, such response must be supplemented to include the name, address and telephone number of the expert witness and the substance of the testimony concerning which the expert witness is expected to testify, as soon as is practical, but in no event less than thirty (30) days prior to the beginning of trial expect on leave of court.

Interrogatory 30 does not ask the plaintiffs to identify which of their experts will testify at trial.[2] Rather, defendants

seek factual information that is fundamental to the defense of these cases. Defendants properly moved to compel an answer to interrogatory 30 under the two relevant rules, 166b(6)(c) and 215(1)(b) and (c), which provide parties with a procedural mechanism for compelling an answer to an interrogatory. Rule 166b(6)(c) provides that a duty to supplement discovery answers may be imposed "by order of the court." TEX.R.CIV.P. 166b(6)(c). Rule 215(1)(b)(3)(b) provides that a party may move for an order compelling an answer when a party fails to answer an interrogatory. TEX.R.CIV.P. 215(1)(b)(3)(b). Rule 215(1)(c) states that for purposes of Rule 215, an evasive or incomplete answer is to be treated as a failure to answer. TEX.R.CIV.P. 215(1)(c). In their motion to the trial court to compel answers to interrogatory 30, the defendants argued that the responses they had received thus far were evasive and incomplete within the meaning of 215(1)(c), and the undisputed evidence in this case demonstrates the truth of this assertion.

---

[2]     Interrogatory 31 of the defendants' master set of interrogatories to the plaintiffs asks the plaintiffs to identify their testifying experts, and is not the subject of this mandamus proceeding.

Under these facts, the trial court properly could reach only one conclusion. Requiring the plaintiffs to answer an interrogatory linking each plaintiff's injuries with a particular product will simplify the case, streamline costs to both plaintiffs and defendants, conserve judicial resources, and aid the trial court in preparing a plan for the trial of these cases. We hold, therefore, that the trial court's denial of the defendants' motion to compel constituted a clear abuse of discretion.

### III.

**[4]** **[5]** **[6]** Mandamus will not issue where there is a clear and adequate remedy at law, such as an appeal. *Walker v. Packer,* 827 S.W.2d at 840–42. An appellate remedy is not inadequate merely because it may involve more expense or delay than obtaining an extraordinary writ. *Id.* In *Walker,* this Court noted at least three situations exist in the discovery context where a remedy by an appeal may be inadequate. *Id.* at 843. One of these situations occurs when a trial court's discovery order imposes a burden on the producing party far out of proportion to any benefit to the requesting party. *Id.* While the discovery dispute at issue here is not an order requiring the defendants to produce "patently irrelevant or duplicative documents," the harm resulting from it is

indistinguishable from the type of harm this Court noted will justify mandamus. *Id.* The defendants have been parties to this suit for eight years without access to the basic facts underpinning the claims against them. Defense costs have mounted to millions of dollars over the past two years alone. The refusal of the plaintiffs to provide a medical link between a particular plaintiff and a particular product at this point in time puts every defendant in the position of having to defend every case until all are tried, which constitutes a monumental waste of judicial resources. The burden imposed by requiring **\*772** 294 defendants to continue to defend the claims of over 3,000 plaintiffs while awaiting a thirty-day window prior to trials that have yet to be scheduled before discovering which defendants are implicated is far out of proportion to any benefit to the plaintiffs in withholding this basic information.

 **[7]**  This Court also noted in *Walker v. Packer* that a denial of discovery going to the heart of a party's case may render an appellate remedy inadequate. *Id.* The discovery denied by the trial court goes to the very heart of the defendants' case. While plaintiffs argue that the trial court has merely abated discovery, in reality, defendants are prevented from developing essential elements of their defense—injury and lack of causation. Indeed, under the plaintiffs' interpretation of the Texas Rules of Civil Procedure, they never have to assert a causal connection between a particular defendant's product and a particular plaintiff until 30 days before trial of that plaintiff's case. In a suit of this massive nature, which includes disparate exposures to a multitude of products, requiring defendants to wait until 30 days before trial to obtain crucial and probative evidence of a causal connection between their products and plaintiffs' injuries is such a denial of their rights as to go to the heart of the case.

Plaintiffs assert that defendants are not held hostage in this lawsuit pending plaintiffs' answer to interrogatory 30 because the plaintiffs have repeatedly offered to release defendants who provide them with satisfactory evidence of their nonliability. This offer is no substitute for meaningful discovery. In the first place, it unacceptably places plaintiffs in the position of the sole fact finder and judge of the defendants' evidence. In the second place, it misconstrues plaintiffs' obligations under the Texas Rules of Civil Procedure. Plaintiffs have an affirmative obligation under Rule 13 to sign pleadings that to the best of plaintiffs' knowledge, information and belief, formed after reasonable inquiry, assert claims that are not groundless and brought in bad faith or groundless and brought for purpose of harassment. TEX.R.CIV.P. 13. Plaintiffs *also* have an

obligation to comply with the rules requiring them to answer interrogatories and engage in other discovery. Finally, the offer of voluntary dismissal of "non-liable defendants" is little solace to the defendants who have already participated in eight years of discovery, who are not dismissed by the plaintiffs, and who face continued proceedings with little prospect of a prompt resolution on the merits.

 **[8]**  In *Walker v. Packer,* we noted that mandamus will issue where a party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error. The rights and interests of the parties in this case, both plaintiffs and defendants, are being advanced at an almost imperceptible pace, if at all. We have noted that the majority of the plaintiffs are elderly men. Some have died during the pendency of this matter. The failure of the trial court to require timely discovery has deprived them of their day in court and the opportunity to recover any compensation that might be due them within their lifetimes. Moreover, the defendants have been deprived of the opportunity to confront these claimants with the answers to interrogatory 30 in hand. The ability to defend claims effectively may be forever foreclosed.

The trial court's management of this case raises other disturbing questions. This Court is acutely concerned that no party's interest is being served by the manner in which the case has proceeded. To date, some defendants have settled. However, in at least some of the settlements, allocations of the proceeds do not appear to have been made on an individual basis. For example, in the settlement made by Brown & Root and H.B. Zachry Company, each plaintiff received sixty percent of $3,000, which is $1,800. Plaintiffs' counsel has received $2,400,000. There seems to have been no effort in these settlements to compensate individual plaintiffs commensurate with their respective injuries or with the merits of their case. The family of the decedent who was killed in an automobile accident over 26 years ago received the same amount as plaintiffs afflicted with mesothelioma.

 **\*773** **[9]**  Both the plaintiffs and the defendants are entitled to full, fair discovery within a reasonable period of time, and to have their cases decided on the merits. This Court will not tolerate the abuses that have occurred in the management of this case. We conditionally grant a writ ordering the trial court to vacate its order of November 19, 1993, and directing it to enter an order granting defendants' motion to compel of February 25, 1993, under which plaintiffs are to

supplement their answers to interrogatory 30 within sixty days. Mandamus will issue only if the court fails to comply.

SPECTOR, J., joins in the judgment.

**All Citations**

898 S.W.2d 766, 38 Tex. Sup. Ct. J. 624

---

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

1988 WL 117191
Only the Westlaw citation is currently available.

NOTICE: NOT DESIGNATED FOR PUBLICATION.
UNDER TX R RAP RULE 47.7, UNPUBLISHED
OPINIONS HAVE NO PRECEDENTIAL
VALUE BUT MAY BE CITED WITH THE
NOTATION "(not designated for publication)."

Court of Appeals of Texas, Houston (1st Dist.).

Miguel ARANDA, Relator,

v.

The Honorable Jack O'NEILL, Judge of The 152nd
District Court of Harris County, Texas, Respondent.

No. 01-88-00899-CV.    |    Nov. 3, 1988.

Original Proceeding on Motion for Leave to File a Petition
for Writ of Mandamus.

Before SAM BASS, STEPHANOW and WARREN, JJ.

**Opinion**

WARREN, Justice.

**\*1** Relator, Miguel Aranda, has filed a motion for leave to
file a writ of mandamus in which he asks this Court to order
the trial court to rescind its protective order denying some of
relator's requested discovery and grant Aranda's motion for
production. We overrule the motion for leave to file petition
for writ of mandamus.

The underlying suit involves Aranda's claim against insurance
carriers for breach of the duty of good faith and fair dealing by
failing to pay promptly his claim for worker's compensation
benefits. The real parties in interest, Insurance Company of
North America and Lumbermens Mutual Casualty Company,
objected to many of relator's requests for production,
primarily on the basis that the requests were overly broad,
burdensome, oppressive, and sought discovery of irrelevant
material. Aranda filed a motion for production. Following
a hearing, the trial court granted some requests and denied
others.

The trial court ordered production of the following items:

o a copy of the table of contents of the insurance companies'
claims manual (requiring the companies to make available
remaining portions of their claims manual at their regular
place of business);

o copies of any insurance company house organs or
publications relating to the adjusting of claims;

o the insurance companies' 1987 annual report or a similar
instrument reflecting their net worths;

o documents that would demonstrate the rules relating to the
reassignment of the loss or the level of the loss at which the
file would be reassigned or the amount of time allowed before
the file is reassigned by the insurance companies;

o any statistical analysis or computerized record summary it
has concerning the ratio of lawsuits to worker's compensation
claims presented for repetitive traumatic injuries during the
1982-83 compensation year.

The disputed protective order covers the following items:

o sales file of the insurance companies for their policies for
Aranda's employer;

o the underwriting file and underwriting manual;

o performance rating or evaluation of each insurance
company employee involved in Aranda's claim evaluation or
adjustment;

o every document that would demonstrate for Texas the
combined loss ratio for the coverage at issue;

o every document that would demonstrate for all states the
combined loss ratio for the coverage at issue;

o every document that would demonstrate the loss adjustment
expense ratio in all states for the coverage at issue in which
the insurance companies writes the coverage at issue;

o all documents that would demonstrate the monthly premium
dollars earned by the insurance companies for the coverage
at issue;

o all documents that demonstrate the ratio of lawsuits to
claims presented under the coverage at issue in all states in
which INA writes the coverage at issue.

Aranda asserts that the trial court abused its discretion in failing to grant all of its requested discovery because the insurance companies, by not producing evidence in support of their motion for protection, failed to follow the proper procedure to obtain the protective order as required by *Weisel Enterprises, Inc. v. Curry,* 718 S.W.2d 56 (Tex.1986), and *Peeples v. Hon. Fourth Supreme Judicial Dist.,* 701 S.W.2d 635 (Tex.1985). Both insurance companies have filed responses to the motion for leave to file a petition for writ of mandamus.

**\*2** Any party who seeks to exclude matters from discovery on grounds that the requested information is unduly burdensome, costly, or harassing to produce has the affirmative duty to plead and prove the work necessary to comply with discovery. *Independent Insulating Glass/ Southwest, Inc. v. Street,* 722 S.W.2d 798, 802 (Tex.App.-Fort Worth 1987) (orig. proceeding). Otherwise, the trial court cannot make an informed judgment on whether to limit discovery on this basis or place the cost for complying with the discovery. *Id.* Failure to follow this procedure will constitute a waiver of any complaint of the trial court's action, unless the documents sought are so clearly irrelevant that no proof would be required of their nonrelevancy. *Valley Forge Ins. Co. v. Jones,* 733 S.W.2d 319 (Tex.App.-Texarkana 1987) (orig. proceeding).

Aranda asserts that the requested information is necessary to sustain liability and recover actual and exemplary damages. In reversing a previous summary judgment granted in this case, the supreme court determined that Aranda has alleged a sufficient factual basis to go forward on claims for breach of the duty of good faith and fair dealing and intentional torts and for damages from the companies' failure to pay compensation benefits. *Aranda v. Insurance Co. of North America,* 748 S.W.2d 210, 214 (Tex.1988). Because of the issues in the case and the nature of the information sought, the trial court acted within its discretion to rule on the motion for protective order without requiring the insurance companies to produce evidence to support their contention that the information sought was overly broad, burdensome, oppressive, or sought discovery of irrelevant material.

In *Lunsford v. Morris,* 746 S.W.2d 471 (Tex.1988), the supreme court found that a defendant's net worth is relevant to the issue of punitive or exemplary damages and, therefore, discoverable. The court noted that it did "not circumscribe, however, a trial court's authority to consider on motion whether a party's discovery request involves unnecessary harassment or invasion of personal or property rights." *Id.* at 473.

Similarly in this case, the court granted Aranda's request to produce the insurance companies' 1987 annual report or a similar instrument reflecting their net worth. The trial court acted within its authority to consider whether Aranda's discovery request involves unnecessary harassment or invasion of personal or property rights. The broad scope of discovery allowed by Tex.R.Civ.P. 166b is limited by the "legitimate interests of the opposing party, for example, to avoid overly-broad requests, harassment, or disclosure of privileged information." *Jampole v. Touchy,* 673 S.W.2d 569, 573 (Tex.1984). The Texas Rules of Civil Procedure accord the trial court considerable latitude in making discovery decisions, and its rulings should not be set aside in the absence of a clear abuse of discretion. *West v. Solito,* 563 S.W.2d 240 (Tex.1978).

**\*3** Accordingly, under the facts in this case, we hold that the trial court did not abuse its discretion in granting the protective order without further evidence being presented by the insurance companies.

The motion for leave to file petition for writ of mandamus is overruled.

Do not publish. Tex.R.App.P. 90.

**All Citations**

Not Reported in S.W.2d, 1988 WL 117191

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

515 S.W.2d 256
Supreme Court of Texas.

AUTOMATIC DRILLING
MACHINES, INC., et al., Relators,
v.
Honorable George E. MILLER,
District Judge, et al., Respondents.

No. B—4595.   |   July 24, 1974.

Original proceeding for writ of mandamus to require district judge to vacate an order requiring delivery of certain papers and documents to counsel for defendants in action filed by relators, and to grant relators' motion for a protective order. The Supreme Court, Walker, J., held that, since the defendant-respondents were in direct and active competition with relators and documents requested related to trade secrets, the district court judge should examine the documents and, with such expert assistance as might be required, determine relevance and need for discovery of each, fix the extent to which disclosure should be made, and enter an order based on the determination thus made.

Writ granted conditionally.

## Attorneys and Law Firms

**\*257**  Lykos, Bergner, McMurrey & Goodrich, Richard F. Bergner, Anderson, Brown, Orn & Jones, Earl A. Brown, Jr., Barrow, Bland & Rehmet, David Bland, Houston, for relators.

Vinson, Elkins, Searls, Connally & Smith, B. Jeff Crane, Jr. and Clark Martin, Houston, for respondents.

## Opinion

WALKER, Justice.

This is an original mandamus proceeding. Automatic Drilling Machines, Inc., et al, relators, seek the writ to require the Honorable George E. Miller, Judge of the 113th Judicial District Court of Harris County, to: (1) vacate an order requiring delivery of certain papers and documents to counsel for Drilling Systems International, Inc., and The Offshore Company; and (2) grant relators' motion for a protective order pursuant to Rule 186b, Texas Rules of Civil Procedure. The petition for writ of mandamus is granted conditionally.

Automatic Drilling Machines, Inc. will be referred to as relator. Drilling Systems International, Inc., and The Offshore Company will be referred to as respondents or as DSI and Offshore, respectively. Judge Miller will be referred to by name. The controversy here arises out of a suit instituted by relator to recover damages and for other relief against respondents, certain of their officers and employees, and Leyman Corporation. In due time respondents filed a counterclaim against relator and a third party action against four of relator's directors. The suit and the counterclaim involve an agreement made by relator and Offshore on December 4, 1971, a series of transactions leading up to the contract and events occurring subsequent to its execution. All of these transactions and events took place during the latter part of 1971 and on through June of 1972.

The second amended original petition, which is relator's live pleading at this time, contains 15 counts. Relator there alleges that as a result of fraudulent and overreaching conduct on the part of respondents, their duress, breach of contract, interference with contractual relationships between relator and others, respondents have been placed in position to and are wrongfully claiming to be the owners of or entitled to enjoy all patents, licenses, trade secrets, and design methods that were formerly utilized solely by relator. The prayer is for actual and exemplary damages, that Offshore, its officers and directors be permanently enjoined from using certain confidential information, and that the following be declared null and void: a nonexclusive license executed by relator to DSI on January 26, 1972; a license from Leyman Corporation to DSI; and an assignment to Offshore or DSI of manufacturing rights acquired by Apollo Electric, Inc. under its  **\*258**  contract with relator dated November 3, 1971. There is also an alternative prayer under one count for reinstatement of a license from Leyman Corporation to relator.

The counterclaim of respondents is based on allegations of fraud on the part of relator, its officers and directors, in connection with the agreement of December 4, 1971, and the nonexclusive license granted January 26, 1972. Respondents nevertheless affirm the contract and license and pray for recovery of actual and exemplary damages. They also seek rescission of the purchase of a drilling rig from relator or, in the alternative, damages for fraud in connection with that transaction.

Relator's claims for damages are based, in part, on allegations that the conduct of respondents, their officers and employees,

has caused relator 'to lose business ventures and financing proposals' that otherwise would have been available to it. In one count it is alleged that as a result of the poor performance of a drilling rig, caused by respondents' breach of contract, 'plaintiff has suffered and will continue to suffer loss of business opportunities.' Relator also seeks to recover funds expended in strengthening patents formerly covered by a license from Leyman Corporation and in training employees who terminated their employment at the wrongful instance of respondents. There are other counts that contain even more general allegations of damages.

The parties tell us that discovery by deposition and otherwise has been fairly extensive. On March 22, 1974, notice to take the deposition of Mr. George Homanick in Bloomfield Hills, Michigan, was served on relator's attorneys. The notice stated that a subpoena duces tecum would be served to require the witness to produce various documents for examination or copying when the deposition was taken. Homanick is not a party to the litigation in district court and is not regularly employed by any party. He is one of the pioneers in the field of automatic drilling rigs, was a co-inventor on the patents that originally set forth that concept, has served as a consulting engineer since 1965, and has done design and development work for relator from time to time.

At the suggestion of relator's attorneys, arrangements were made to take the deposition in Houston. The witness arrived there during the night of April 8, 1974, bringing with him a file of written documents in response to the subpoena duces tecum. Early the following morning, relator's attorney went through the file and withdrew material believed to relate solely to the preparation and evaluation of new systems and procedures for automatic drilling which were designed subsequently to the filing of the suit in district court. These new systems and procedures are represented to be highly confidential in nature, and will probably be the subject of applications for letters patent.

The oral deposition was commenced, but only a few pages of testimony had been taken when relator's attorney instructed the witness not to answer questions relating to confidential matters on which he was then working for relator. At the same time relator's attorney stated that he had removed from the file material of a current nature relating to new items and systems concerning which the witness was consulting with relator and that could reasonably lead to patent applications. The witness was then asked what material had been removed from the files, and he answered that it was reference material and design sketches relevant to a unit on which he was working

for relator. Counsel for respondents thereupon decided not to proceed with the deposition until the matter could be taken up with the trial court.

Shortly after the deposition was adjourned, counsel for respondents telephoned Judge Miller to request that he hear a motion to require the witness to comply with the subpoena and to direct relator's attorney not to interfere with the discovery process. Judge Miller was involved in a jury trial but agreed to hear the motion at 1:00 o'clock the same day. **\*259** Upon being notified of the hearing, counsel for relator prepared and filed a motion for a protective order pursuant to Rule 186b, Texas Rules of Civil Procedure.

Judge Miller announced at the outset that he had only 15 minutes to devote to the hearings on the motions. In the course of the hearing, counsel for relator advised the court that the material in question was in the court room and requested the court to examine it privately to obtain the necessary information to rule upon respondents' asserted right to require their production for examination and copying. At the conclusion of the hearing and without examining the documents, the court sustained respondents' motion to compel their production, overruled relator's motion for a protective order, and directed that all of the documents be placed in the custody of the clerk under seal. Upon motion of relator, production of the documents was stayed pending our action on a motion for leave to file a petition for writ of mandamus attacking the action of the trial court on the motions.

Under the general provisions of Rule 201, a subpoena may be issued in a proper case to require a witness to produce, at the time and place of giving his deposition, documents and other tangible things which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 186a. The subpoena is, however, subject to the provisions of Rules 177a and 186b. On motion seasonably made 'and in any event at or before the time specified in the subpoena for compliance therewith,' the court is authorized by Rule 177a to quash or modify the subpoena if it is unreasonable or oppressive or condition denial of the motion on advancement of reasonable costs by the party in whose behalf the subpoena was issued. The court is further authorized by Rule 186b, 'upon motion seasonably made by any party or by the person to be examined and upon notice and for good cause shown,' to make an order that secret processes, developments and research need not be disclosed. It may also make any other order 'which justice requires to protect the party or witness from undue annoyance, embarrassment, oppression, or expense.'

**[1]** **[2]** **[3]** Trade secrets and confidential information are not necessarily 'privileged' matters within the meaning of Rule 186a. If the information is material and necessary to the litigation and unavailable from any other source, a witness may be required to make disclosure. Lehnhard v. Moore, Tex.Sup., 401 S.W.2d 232. A public disclosure of trade secrets should not be required, however, except 'in such cases and to such extent as may appear to be indispensable for the ascertainment of truth.' 8 Wigmore, Evidence (McNaughton rev. 1961), s 2212(3). In acting on the motions in this case, it was necessary for the judge to weigh the need for discovery against the desirability of preserving the secrecy of the material in question.

**[4]** It appears from relator's motion for a protective order in the trial court, as well as its petition for a writ of mandamus here, that respondents are in direct and active competition with relator in the development, manufacture and marketing of automatic drilling equipment, that the material withdrawn from the files of the witness relates to new systems and procedures that are highly confidential in nature, were designed subsequent to the filing of this suit, and will probably be the subject of applications for letters patent. Respondents do not question these statements but apparently concede that relator's 'representation or description' of the material is accurate. It is their contention that once relator filed suit and charged them with destroying its business, relator's entire business was necessarily opened to examination so the truthfulness of the charge might be subjected to the rigors of the adversary system of justice. We do not agree.

Relator recognizes that if it receives economic gain from any of the processes, developments or research, proof of that fact might be relevant and material and **\*260** would therefore be subject to discovery by respondents. Respondents are also entitled to information that may be needed to enable them to pursue inquiries along that line. This information conceivably could be obtained by eliciting from the witness a description of the secret processes and devices in terms sufficiently general to protect relator and yet enable respondents to make further investigation concerning any use to which the new systems and procedures may have been put. Somewhat the same approach might be adopted in interrogating the witness with respect to the use of the new systems and procedures, past, present and prospective, and the results of any tests that have been made to determine their performance or feasibility. Other lines of inquiry will doubtless occur to able trial counsel, but it is our opinion that respondents are not, absent some further showing of need, entitled to know every detail of every secret process, device and system that has been developed by relator subsequent to the filing of this suit.

With the record in its present condition, it was an abuse of discretion for the trial court to overrule relator's motion and order full disclosure of all the material. There were at least two avenues open to the court under the circumstances. As pointed out by Professor Wigmore, the 'simple expedient of restricting the disclosure to the judge or his delegate will usually prevent whatever detriment might otherwise be incurred by forcing a public revelation of the trade secret.' 8 Wigmore, Evidence (McNaughton rev. 1961), s 2212(3). That might not be a simple expedient here since the documents to be examined are fairly numerous and technical in nature. With the aid of the witness Homanick or some other qualified expert, however, the court could have examined the material and determined what, if anything, is relevant and so essential to respondents' investigation and development of their case as to be subject to discovery by them. That is the course we ordered with respect to income tax returns in Crane v. Tunks, 160 Tex. 182, 328 S.W.2d 434, and Maresca v. Marks, Tex.Sup., 362 S.W.2d 299. In this instance the court might also have deferred action on the two motions until respondents had completed their examination of the witness on other matters as contemplated by Rule 215a. It should not have ordered full disclosure of all the material without first making further inquiry to determine relevance and need.

**[5]** Respondents also argue that relator's motion for a protective order came too late since it was not filed prior to the time of taking the deposition. It appears that the witness is not regularly employed by relator, that he resides in Lathrup Village, Michigan, and that counsel for relator reside in Houston. It further appears that relator's attorney of record had been away from Houston taking depositions in the case and on vacation for about two weeks immediately prior to April 9 and had no opportunity to examine the material brought to Houston by the witness until the morning the deposition was to be taken. We also note that Rule 186b, unlike Rule 177a, does not require that every motion for a protective order be filed at or before the time of taking the deposition. In view of the circumstances mentioned, it is our opinion that relator's motion was not so late that it could properly be overruled for that reason alone.

The trial court should: (1) set aside the order sustaining respondent's motion to require production of the material and overruling relator's motion for a protective order; and (2) either before or after examination of the witness on

other matters has been completed, examine the several documents and, with such expert assistance as may be required, determine the relevance and need for discovery of each and the extent to which disclosure should be made; and (3) enter an order based on the determination thus made. We assume that Judge Miller will comply promptly. In the event he fails to do so, a writ of mandamus will issue.

**All Citations**

515 S.W.2d 256

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Red Flag - Severe Negative Treatment

**Disapproved of by** Walker v. Packer, Tex., February 19, 1992

160 Tex. 182
Supreme Court of Texas.

Bess Burkitt CRANE et al., Relators,

v.

Hon. Bert H. TUNKS, District
Judge, et al., Respondents.

No. A-7077. | Oct, 28, 1959.

Action for mandamus aganst District Court judge and plaintiff in an action pending in such court to vacate, amend and revise an order entered by the judge in a discovery proceeding. The Supreme Court, Griffin, J., held that failure of trial judge to examine defendant's 1950 income tax return to determine what parts of it were material and relevant to main action before requiring defendant to produce the return for examination and copying by plaintiff was an abuse of discretion.

Writ of mandamus withheld unless trial judge failed to proceed accordingly.

Smith, J., dissented.

**Attorneys and Law Firms**

*183 **435 Kelley & Ryan, Houston, Hardy Hollers, Austin, for relators.

Fred Parks and Fred A. Collins, Houston, for respondents.

**Opinion**

GRIFFIN, Justice.

Relators, Bess Burkitt Crane, and her attorney, Robert H. Kelley, bring this action for a writ of mandamus against Honorable *184 Bert H. Tunks, District Judge, and D. J. Glenney, III, as respondents, to vacate, amend and revise an order entered by Judge Tunks in a discovery proceeding pending in his court.

From 1939-1958 D. J. Glenney, Jr., the father of D. J. Glenney, III was business manager for the properties owned by relator Bess Burkitt Crane. On October 15, 1940 Mrs.

Crane executed an instrument conveying her undivided interest in and to 1,409 acres of land out of the Jackson E. Bundick Survey, Harris County, Texas to Glenney, Jr. This deed was not recorded by Glenney, Jr. until 1946. Mrs. Crane's deed reserved to her for her natural life all income, rents and revenues of whatever kind and character from the 1,409 acres. She also reserved the executive right to make, execute and deliver any and all instuments affecting the mineral interests she had in the land. The deed further provided that should Glenney, Jr. predecease her then the deed should be null and void and of no further force and effect, and all rights vested in Glenney, Jr. by virtue of such deed should thereafter immediately revert to and vest in the grantor without the necessity of reentry or other action on her part. The record shows Glenney, Jr. alive at the time of trial.

During the year 1950, Mrs. Crane had Ernst & Ernst make an independent audit of her business affairs. This audit showed that Glenney, Jr. was indebted to Mrs. Crane in a sum of some $80,000 as a result of Glenney, Jr. overdrawing his salary account and otherwise using funds belonging to Mrs. Crane. Following this audit Glenney, Jr., on May 22, 1950 reconveyed to Mrs. Crane the interest he had received from her by deed in 1940.

On January 31, 1958 Mrs. Crane discharged Glenney, Jr. On February 21, 1958, respondent, D. J. Glenney, III, filed his original petition in the 152nd District Court of Harris County, Texas, alleging that subsequent to May 22, 1950 and on March 5, 1958, his father had deeded and transferred to him all his interest in said 1,409 acres, subject to all leases, royalties **436 and mineral reservations and rights-of-way set out in Mrs. Crane's deed to Glenney, Jr., dated October 15, 1940. Glenney, III sought to recover the title to and possession of the 1,409 acres from relator, Mrs. Crane, on the ground that his father was subjected to fraud, duress, and coercion at the time he executed the reconveyance, and Glenney, III sought to cancel and set aside this reconveyance dated May 22, 1950. The duress alleged was that both relators were accusing Glenney, Jr. of forgery and *185 threatening him with criminal prosecution unless he executed the deed of reconveyance. The suit to set aside the deed was numbered 502,264. Glenney, III filed his first amended petition in that cause on August 8, 1958 and attached to this pleading an affidavit of Glenney, Jr. in which Glenney, Jr. swore to the truthfulness of certain allegations. Glenney, III, on September 22, 1958, filed his second amended petition alleging the same cause of action as contained in the two prior petitions. In the alternative, he alleged that the deed of reconveyance from Glenney, Jr. to Mrs. Crane dated May 22, 1950 was in truth

and in fact a mortgage to secure the approximately $80,000 owing by Glenney, Jr. to Mrs. Crane, and he prayed that such instrument be so construed. None of the pleadings filed by Glenney, III were sworn to, and no affidavit accompanied, or was attached, to the second amended original petition.

On August 14, 1958 Glenney, III filed a petition, or application, for a bill of discovery as ancillary to Cause No. 502,264. This was Cause No. 512,093 in the 80th Judicial District Court of Harris County, Texas. This cause was later transferred to the 152nd District Court. Relators, Mrs. Crane and Kelley, were defendants in this bill of discovery proceeding. Glenney, III alleged that he was bringing his bill of discovery pursuant to Rule 737, Vernon's Ann.Tex.Rules Civ.Proc., and asked to have produced for his examination the books, records, papers, correspondence and memoranda as follows: (1) income tax records of Mrs. Crane for the years 1939 to date; (2) an audit by Ernst & Ernst of Mrs. Crane's affairs made in 1950; (3) all checks, notes, or other negotiable instruments in her possession, or in the possession of her attorney, that purported to bear her signature but which she will testify she did not sign; (4) all wills and codicils to wills of Mrs. Crane from January 1, 1939 to date; (5) (not relevant to this proceeding); (6) a complete itemized list showing dates, amounts and payees of any contributions and/or donations made to (a) a certain priest and naming him (b) a certain church order and naming it; and (7) all correspondence, notes, letters, memoranda, or copies thereof to or from the individual named in (6)(a) above. Glenney, III further asked to be permitted to reproduce any and all such written instruments as is provided in Rule 167, Vernon's Ann.Tex.Rules Civ.Proc.; he alleged such documents were not privileged nor were they written communications between relators, their agents, representatives, or employees in connection with the investigation or defense of the main suit brought by Glenney, III. Glenney, III then alleged:

*186 'There is further good cause for the production, inspection, reproduction and/or copying of said items as herein requested by D. J. Glenney, III because each of said records requested are either the originals thereof or the only known copy thereof, and that Plaintiff, D. J. Glenney, III, would show the Court that he has no copy of said instruments and unless said instruments, and each of them, be required to be produced and inspected, reproduced and copied by him, he will be unable to prepare the

pending litigation for trial, being Cause No. 502,264, hereinabove referred to, as is contemplated by Rule 737, T.R.C.P.'

He further alleged that the bill of discovery was not brought to harass or inconvenience the defendants or either of them but it was brought in order that justice may be served in connection with the **437 preparation and trial of Cause No. 502,264, the main suit. Attached was a copy of his First Amended Original Petition in said cause. This application, or petition, was not verified; neither was the plaintiff's First Amended Original Petition in the main suit. Mrs. Crane filed a sworn plea in abatement and an answer in which she set out more fully the facts surrounding all deeds and Glenney, Jr.'s employment by her; a general denial, and a plea of limitations, etc.

On November 5, 1958, after hearing evidence, the trial court, with Judge Tunks sitting, entered an order granting Glenney, III a bill of discovery as to all items enumerated in the petition, except (5), and required relators to appear before the trial court and testify in person on November 10, 1958, and bring with them the documents designated in Glenney, III's application as modified by the court's order. This order, in addition to granting the bill of discovery aforesaid, provided for the inspection and copying of said instruments as were material and relevant to plaintiff's main suit, 'in such manner as the Court may deem proper and upon terms and conditions that the Court may deem just.' To make the court's position clear regarding the documents and instruments sought to be examined and reproduced, Judge Tunks stated he would not permit examination and inspection by plaintiff's attorney of any documents which, in the court's opinion, contained nothing which conceivably would be evidentiary of any issue in this main cause; where there was any question in the court's mind that the instrument was relevant and did tend to prove the issue which plaintiff sought to prove by it, the court would examine the instrument and if anything was found in it that the court conceived could possibly prove that issue, it would be made a part of the record *187 and the plaintiff would be permitted to examine and reproduce it, barring some other reason why it should not be reproduced.

Prior to beginning the examination of relator Kelley, respondent judge had asked respondent Glenney, III's counsel to state the materiality and relevancy of the income tax returns to the trial of the main cause. Respondent's counsel orally stated that he considered the income tax returns of Mrs. Crane relevant and material to the issues in the main cause because

respondent felt the returns would disclose whether or not Glenney, Jr., while he was in the employ of Mrs. Crane, had done a good job managing Mrs. Crane's estate during the period from 1939 to 1959; to show that Mrs. Crane was aware of her holdings; to show the size of her estate and how much this gift of property valued at from $2,000,000 to $3,000,000 would decrease her estate as compared with present income producing property, or small income producing property; and to place the size of the gift in proper relation to her total wealth; to show how the money belonging to Mrs. Crane that was taken by Glenney, Jr. was treated taxwise; whether it was charged off by her as a bad debt or otherwise; how Mrs. Crane treated the assets covered by the reconveyance by Glenney, Jr. to her in 1950; what contributions Mrs. Crane made to the named priest and to the church order; to compare the gift made to Glenney, Jr. by deeding him the 1,409 acres with gifts made to the named priest and the church order; and whether or not Mrs. Crane treated the rental on the apartment she furnished to the named priest as a business expense or as a donation. This was the only statement as to relevancy or materiality made by respondent's attorney.

Relators did furnish to respondent the Ernst & Ernst audit (Item 2) of Mrs. Crane's business affairs made in 1950 and offered to furnish all wills and codicils (Item 4) made by Mrs. Crane since January 1, 1939 so these go out of our case. The trial judge refused to permit discovery of the income tax returns for the years 1939 through 1949.

After questioning relator Kelley fully as to the contents of the 1950 income tax return, and receiving answers to all questions asked, respondent's attorney then requested **438 permission to examine the 1950 income tax return of Mrs. Crane and the court granted such request and ordered Mr. Kelley to deliver the return to respondent's attorney. Relators, acting through Kelley, refused to deliver the return for examination. The court held Kelley in contempt committing him to jail for a period of *188 30 minutes until he complied with the court's order. The court stayed the execution of his order until relators could apply to this court for relief from such order and its resulting judgment of contempt and commitment to jail. The record shows no examination by the trial judge, respondent Tunks, of the return to determine what part of same, if any, was relevant and material to the issues in the main cause, nor was any provision made to protect Mrs. Crane against the respondent's examination and reproduction of the whole of the return.

In the course of the questioning of Kelley by respondent's counsel as to the 1950 return, relator's attorney had made the

point that the return showed Mrs. Crane received dividends from stocks; some interest on notes and bonds; some rents and royalties from properties other than the 1,409 acres involved; some long term capital gains from other property. As to these items neither Glenney, Jr. nor the plaintiff, Glenney, III could have any claim or would have any interest in them, and to require information to be given about such items would be beyond the power of the court under the provisions of Rules 167 and 737.

Rule 737, Vernon's Ann.Tex.Rules Civ.Proc., reads as follows:

> 'All trial courts shall entertain suits in the nature of bills of discovery, and grant relief therein in accordance with the usages of courts of equity. Such remedy shall be cumulative of all other remedies. In actions of such nature, the plaintiff shall have the right to have the defendant examined on oral interrogatories, either by summoning him to appear for examination before the trial court as in ordinary trials, or by taking his oral deposition in accordance with the general rules relating thereto.'

[1] Rule 167, Vernon's Ann.Tex.Rules Civ.Proc., insofar as is pertinent here provides:

> 'Upon motion of any party showing good cause therefor and upon notice to all other parties the court in which an action is pending may order any party to produce and permit the inspection and copying or photographing by or in behalf of the moving party, of any designated documents, papers (except written statements of witnesses) books, accounts, letters, photographs, objects or tangible things, not privileged, which constitute or contain evidence material to any matter involved in the action and which are in his possession, custody, or control. * * *'

*189 Respondent attacks the jurisdiction of the court to issue its writ of mandamus herein on the ground that the order of the trial court requiring the delivery of the 1950 income tax return is an order within the discretion of the trial court, and

a writ of mandamus will not be granted to correct or overturn the exercise of discretion by a trial court; that such orders are reviewable only by an appeal, and not by a mandamus; and that mandamus may not be used as a substitute for appeal. The Court of Civil Appeals has no jurisdiction to grant the relief sought by relators in this proceeding. Its jurisdiction to grant a writ of mandamus is limited to the enforcement or protection of its jurisdiction, or to compel a district judge to proceed to trial and judgment. Article 1824, R.C.S.1925, Vernon's Ann.Civ.St. art. 1824; 8 S.W.Law Journal, pp. 389, 393.

 [2]    The bill of discovery sought in our present proceeding is for the purpose of developing evidence to be used in the trial of the main cause and not an end within itself. Under such circumstances the order **439 of the court directing the 1950 income tax return to be delivered to respondent's counsel for inspection and reproduction was merely an incident to the trial of the main cause and is an interlocutory order and therefore not appealable. Southern Bag & Burlap Co. v. Boyd, 1931, 120 Tex. 418, 38 S.W.2d 565, 570; Rush v. Browning, 1910, 103 Tex. 649, 132 S.W. 763; Equitable Trust Co. v. Jackson, 1937, 129 Tex. 2, 101 S.W.2d 552; Dallas Joint Stock Land Bank of Dallas v. State, 1940, 135 Tex. 25, 137 S.W.2d 993(6); Dallas Joint Stock Land Bank v. Rawlins, Tex.Civ.App.1939, 129 S.W.2d 485; 15-A Tex.Jur. 319, Sec. 29.

 [3]    To require relators to proceed with the trial of the main cause and bring up the question of the validity of the trial court's order to turn over the income tax return of Mrs. Crane for the years 1950-1958 would be to deprive relators of any remedy from an erroneous ruling of the court. After the returns had been inspected, examined and reproduced by respondent a holding that the court had erroneously issued the order would be of small comfort to relators in protecting their papers. The question of the legality of the court's order would become an academic one, and the objection to the order would be moot.

The fact that the court's order could be appealed with an appeal of the main cause would not prevent the issuance of a mandamus by us at this time. This court, in the case of Way & Way v. Coca Cola Bottling Co., 1930, 119 Tex. 419, 29 S.W.2d 1067, 1971, *190 quoting from Cleveland v. Ward, 1926, 116 Tex. 1, 285 S.W. 1063 says:

> 'We recognize the rule that mandamus does not ordinarily issue when an adequate remedy by appeal exists. In this case, however, no appeal was possible from the action of Judge Ward in refusing to go forward with the trial in his court. The right of appeal from the adverse order on the pleas in abatement and the injunction in the Dallas district court is inadequate and not commensurate with the relief to which the relators here are entitled; so that right of appeal cannot supersede the remedy of mandamus provided by statute. To supersede the remedy by mandamus authorized by the organic law, and specially provided by statute (Vernon's Ann.St.1925, art. 1734), there must exist, not only a remedy by appeal, but the appeal provided for must be competent to afford relief on the very subject-matter of the application, equally convenient, beneficial, and effective as mandamus, (citing cases). * * *'

So in the instant case an appeal being ineffective to afford the relief sought, we have jurisdiction to issue the writ of mandamus if relators are entitled to same.

 [4]    In construing Rule 737, Vernon's Ann.Tex.Rules Civ.Proc., this Court, in the case of Hastings Oil Co. v. Texas Co., 1950, 149 Tex. 416, 234 S.W.2d 389, went into the history of the discovery statutes and practice of our courts since 1846. It was there pointed out that Rule 737 was the successor to Art. 2002, R.C.S., 1925 with the last sentence of the present Rule 737 added to the statute. We held in the Hastings Oil Co. case that acting under the power conferred by Rule 737 our trial courts had the right and power to issue orders for bills of discovery 'in accordance with the usages of courts (of) equity.' Therefore, we must first determine whether or not our present proceedings are in accordance with the usages of courts of equity. Judge James P. Alexander, late Chief Justice of this Court, discusses Art. 2002, R.C.S., 1925 in an article found in 2 Texas Law Review 483. He says a pleading should be filed in the proper court and that such pleading must show equity and a necessity for its issuance; the information sought to be secured from the opposing party should be set out with particularity and in such manner that the court can see that the evidence when discovered **440 will be material and admissible in the trial of the main cause, saying 'the bill must show diligence to secure the information,

and if he desires to avoid the payment of the costs on a bill of discovery, plaintiff must allege and show that **\*191** he has sought to secure the information from the defendant, and that defendant has refused or declined to give same.' This discussion assumes that the bill will be a written pleading and the relevancy and materiality will be set out in such written pleading. In fact, Rule 167, after providing for the filing of a motion showing good cause and notice to the opposite party or parties, and setting out the things which the court may order produced and inspection permitted requires that such things must 'constitute or contain evidence material to any matter involved in the action.' All parties to our present cause proceed on the theory that discovery will be only as to evidence relevant and material to the main action. With this we agree, and we hold that such relevancy and materiality should be shown in the written application or petition asking for the bill of discovery, or by the pleading in the main cause. This is in accordance with the usage of courts of equity and conducive to a more orderly procedure.

**[5]**　Relators contend that their income tax returns are privileged documents and not subject to a bill of discovery. There is a conflict of authority on this point. We think, however, that the correct rule is that such returns, or portions thereof, are subject to discovery, provided their relevancy and materiality to the issues are shown. June v. George C. Peterson Co., 7 Cir., 1946, 155 F.2d 963 (10-12); In re Hines, 2 Cir., 1934, 69 F.2d 52; Paramount Film Distributing Corp. v. Ram, D.C.1950, 91 F.Supp. 778.

Relators complain of the order of the respondent, Judge Tunks, requiring the 1950 income tax return to be delivered in its entirety to the respondent and his counsel for examination, inspection and copying or reproduction. We hold that under the facts of the present case it was the duty of the trial judge to examine the income tax return sought by the applicant for the bill of discovery to ascertain what parts of it are material and relevant to the main cause, and so word his order as to require only such portion, or portions, to be delivered to respondent for his discovery. See Rush v. Browning, supra; Southern Bag & Burlap Co. v. Boyd, supra, and Hastings Oil Co. v. Texas Co., supra. As said in the commentary to Rule 167, Vernon's Ann.Tex.Rules Civ.Proc., p. 508: '\* \* \* And where the documents contain information which the movant should not see, the order should in some way afford his adversary proper protection as by requiring inspection in the presence of his representative or by some other appropriate device. Generally speaking, the court should, however, be guided by the underlying purpose and objective of the rules, and allow discovery **\*192** in advance of trial where possible. \* \* \*' On failing to examine the income tax return and to separate the relevant and material parts from the irrelevant and immaterial parts the trial judge herein abused his discretion in ordering the income tax return to be delivered to respondent, Glenney's attorney, for inspection.

**[6]**　While it is the general rule that a mandamus will not issue to control the action of an inferior court or public officer in a matter involving discretion, the writ may issue in a proper case to correct a clear abuse of discretion. Southern Bag & Burlap Co. v. Boyd, supra; Womack v. Berry, 1956, 156 Tex. 44, 291 S.W.2d 677, 682(2, 3) and (4).

In the main, we think the court's order for discovery was a correct one. Under the facts and circumstances of this case we do not hold that the trial judge abused his discretion in issuing his order of November 5, 1958. We do hold that the trial judge abused his discretion in ordering an inspection of Mrs. Crane's 1950 income tax return in its entirety, and without the judge **\*\*441** inspecting the return so as to determine what portions were relevant and material to this cause. We hold that relators should be permitted to have a representative present at all times while respondents are examining, copying and reproducing the documents ordered turned over to them; and that as soon as the examination, copying and reproduction is completed, the documents be returned to relators to be held by them subject to the further order, or orders, of the trial court in the disposition of the main cause. Southern Bag & Burlap Co. v. Boyd, supra.

Upon a proper showing of the relevancy and materiality of the other items for which discovery is sought, the court may, after determination of the relevancy and materiality order a discovery of such portions as he may deem relevant and material to the issues in the main cause, and under proper orders to protect relators against any disclosure of other portions of such items as are not relevant and material.

We are certain that the trial judge will proceed in accordance with the law as we have set it out herein without a writ of mandamus, but in the event he should fail to so proceed the clerk will issue the necessary writ to insure that this opinion is effective.

Costs are charged against respondent, D. J. Glenney, III.

CALVERT, Justice (concurring).

Relators seek by writ of mandamus to compel Judge Tunks to vacate or revise two orders. The first is the order entered on November 5, 1958 by and under the terms of which relators were required to produce before the court the records, writings and information enumerated in the majority opinion as items (1), (2), (3), (4), (6) and (7). The second is the order made in open court on November 12, 1958 by which relator Kelley was directed to deliver Mrs. Crane's 1950 income tax return to Glenney's counsel for examination and copying. I agree that the November 5th order should not be vacated and that the November 12th order should be, but I do not agree with some of the broad language and incidental holdings in the majority opinion.

Relators contend that the trial court abused its discretion in entering the order of November 5, 1958 directing the production of the various documents in court when there was no pleading, either in the discovery proceeding or in the main suit, that the documents contained evidence relevant and material to the plaintiff's claims, without adequately protecting Mrs. Crane's right against improper inspection. It is then argued that written pleading showing relevancy and materiality of the documents was a necessary predicate for the order and that no such written pleading had been filed. The majority have agreed with that argument. They state: '* * * we hold that such relevancy and materiality should be shown in the written application or petition asking for the bill of discovery, or by the pleading in the main cause.' Having thus held that written pleadings showing relevancy and materiality are a mandatory prerequisite to an order in a discovery proceeding requiring the production of documents in court, the majority then hold, nevertheless, that the failure by Judge Tunks to require such written pleadings before entering the order of November 5th was not an abuse of discretion. The two holdings seem to me to be contradictory. I agree that the entry of the order of November 5th did not constitute an abuse of discretion, but I do not agree with the majority's holding that written pleadings are a mandatory prerequisite to an order requiring the production of documents in court where there is no showing that the production of such documents would be unduly expensive or otherwise burdensome.

The other order which relators seek to have vacated or revised is the order directing delivery to Glenney's counsel of **\*194** the 1950 income tax return for examination and copying. My agreement with the majority that the entry of that order constituted an abuse of discretion is not based **\*\*442** upon the failure of the judge to inspect the return before ordering it delivered up for examination and copying, however more cautious and desirable that might have been, but is based upon the fact that the record before us shows clearly that the return contains much information of a purely private nature which is not relevant and material to any issue in the main case. In this state of the record it would be an unreasonable invasion of Mrs. Crane's right of privacy to require her to disclose information concerning strictly personal affairs to Glenney's counsel.

The final draft of Glenney's petition in the main suit raised, primarily, two issues: (1) whether his father's deed to Mrs. Crane was voidable because it was procured by relator Kelley by fraud, coercion and duress through threats to have the grantor indicted, prosecuted and confined in the penitentiary for forgery, and, alternatively, (2) whether the deed was intended to be a mortgage to secure an indebtedness claimed by Mrs. Crane. Mrs. Crane's answer is quite lengthy and injected a number of other issues into the case, including issues (1) that the deed dated October 15, 1940 was forged and altered by Glenney's father and was void; (2) that the execution and delivery of the deed to Glenney's father was procured by fraud; (3) that the deed was delivered to Glenney's father to be held by him in trust and returned upon request to the grantor;[1] (4) that in breach of his duty to disclose to Mrs. Crane his claim of interest under the 1940 deed Glenney's father had concealed his claim and had thus enabled himself to draw some $29,000 in salary from 1950 to 1958 and was therefore estopped to claim that the 1950 deed was void, or was but a mere mortgage, or that he had any interest in the land described in the deed, and that Glenney, not being an innocent purchaser, was likewise estopped. In pleading facts surrounding the execution of the 1950 deed, Mrs. Crane also pleaded that Special Agents of the Treasury Department had advised Glenney's father at a conference in her apartment that certain checks drawn on her account during the period of time he was attending to her business affairs had been forged.

[1]     These defenses are met by Glenney's allegations that the 1940 deed was a valid deed of gift for personal services of a highly confidential nature performed by him for Mrs. Crane.

I am satisfied that Glenney's counsel was entitled to information contained in the 1950 income tax return relevant and **\*195** material to the issues set out above. Relators question that a plaintiff is entitled to a discovery of documentary evidence which is only relevant and material to a defensive issue. Their doubt should be dispelled by the

very wording of Rule 167, T.R.C.P., which provides for the inspection and copying of documents, etc. 'which constitute or contain evidence material to any matter involved in the action.' See also 'The bill of discovery' by Franki, 13 T.B.J. 447, Vernon's Annotated Rules of Civil Procedure, Vol. 1, p. 503, where it is said: 'The real object of the bill is to compel the opposite party to disclose such facts within his knowledge as are material to establishment of plaintiff's cause of action, or the defendant's defense, in order that plaintiff or defendant, as the case may be, may use this information as evidence upon the trial of the main case.' But while counsel was entitled to examine and reproduce information from the tax return bearing on all issues, he certainly was not entitled to examine and reproduce information of a highly personal and private nature which could not conceivably be relevant and material to the issues. The sworn application for writ of mandamus states that the income tax return contains information and data showing Mrs. Crane's income from many sources, 'including interest, dividends on corporate stocks, oil and gas royalties, bonuses and rentals from properties in which Plaintiff-Relator (sic) Glenney neither has nor claims any interest in the main suit.' That statement **443 stands undenied and we may accept it as true. That information could not be relevant and material to any issue in the main suit. The return may contain much other information which is equally irrelevant and immaterial. It was a clear abuse of discretion to order that the entire return be delivered to Glenney's counsel for examination and reproduction, and mere inspection or examination of the return by Judge Tunks before ordering it delivered to Glenney's counsel could not make it any less so.

No question other than those above discussed is properly before us. We cannot know what ruling Judge Tunks will make with respect to the other documents and information he has ordered produced in court and we cannot by writ of mandamus supervise the exercise of discretion by Judge Tunks in his rulings on the relevancy and materiality of information contained in each of the documents he has ordered produced in court.

I agree with the majority's holdings on the other questions discussed in the opinion.

WALKER and GREENHILL, JJ., join in this opinion.

SMITH, Justice (dissenting).

I respectfully disagree with both the presently designated majority opinion written by Justice GRIFFIN and the concurring opinion by Justice CALVERT. The order of November 12, 1958, involved the exercise of judicial discretion. This Court will not issue writs of mandamus to control or revise the exercise of discretion by trial courts in the performance of purely judicial as distinguished from ministerial acts. Iley v. Hughes, Tex., 311 S.W.2d 648, and cases therein cited. No clear right has been shown authorizing the granting of the writ of mandamus. Relators' motion for leave to file petition for writ of mandamus, filed December 4, 1958 and later granted, states that this is a matter of great public concern. I do not agree that it is a matter of great public concern. Therefore, the case should take its regular course by appeal to the Court of Civil Appeals.

The relator, Kelley, after being assured by the trial court that he would be given an opportunity to file an application for writ of habeas corpus without having to go to jail, and only then, refused to obey the order of the court wherein he, Kelley, while testifying as a witness, was directed to deliver Relator Crane's 1950 income tax return (copy) for inspection by respondents' attorney. All of this occurred in open court in the course of a judicial proceeding and while Relator Kelley, the attorney for Relator Crane, was testifying as a witness. The record shows that prior to such refusal, the trial court had announced a course of procedure that would be followed during the hearing in the discovery proceedings. The court heard evidence as to the relevancy of the income tax returns for the years 1939-1949. The court ruled that such returns were not material, but, in accordance with his previous announcement that all documents excluded would be sealed and later examined by the appellate courts in case of appeal, the court ordered the 1939-1949 returns (copies) impounded. Now, had the trial court made the same ruling in regard to the 1950 returns, no doubt the court would have followed the same procedure. No doubt, the respondents would have perfected an appeal as to such adverse ruling, and the 1950 returns would have been opened for inspection by the appellate courts. Nothing is kept secret from the litigants in the course of a judicial proceeding. Therefore, the respondents would have ultimately had an opportunity to inspect the 1950 returns. Regardless of whether the trial court actually examined the 1950 returns or not, he did hear evidence at great length on the question of admissibility of the document, and then ruled that the 1950 return was material and ruled Mr. Kelley should *197 deliver the returns for inspection. To issue a writ of **444 mandamus will be setting a dangerous precedent. In the future, litigants will constantly attempt to halt the trial of cases and bring matters involving strictly judicial acts and rulings to this Court by way of mandamus. This Court has held repeatedly that it will not

issue writs of mandamus to control or revise the exercise of discretion by trial courts in the performance of purely judicial as distinguished from ministerial acts.

This proceeding has been converted from a proceeding by writ of habeas corpus to a proceeding by way of writ of mandamus. Perhaps, strictly speaking, if this were a habeas corpus proceedng, the trial judge might be required to examine the returns before punishing Relator Kelley for an act of contempt in the court's presence. It is my opinion, however, that it is immaterial whether the court inspects the instrument or not. But, should the writ of mandamus be granted and the trial court inspects the instrument and then rules that it is admissible in its entirety, and Mr. Kelley still refuses to deliver the document, he, Kelley, would be guilty of contempt. Mandamus simply will not lie to correct a claimed erroneous ruling or order of the trial court where the order, as here, involved solely the exercise of judicial discretion. This is a court of law. We do not ordinarily pass upon, in the first instance, the question of admissibility of evidence. The trial court has carefully protected relators' rights requiring a clear showing of materiality and relevancy prior to ordering that the 1950 return be produced for inspection. In a civil action, such as we have here, there can be no basis for the claim that the 1950 tax return (copy) is a privileged document. If relevant matters appear in the income tax returns, and the trial court in this instance has found that such is the case, then the respondents are entitled to see such returns and use same.

Judge Tunks' gracious act in suspending the passing of sentence for contempt cannot amount to an abuse of discretion. He did not act through fraud, caprice, or by a purely arbitrary decision, and without reason.

Relators' petition for writ of mandamus should be refused, or, in the alternative, the opinion of this Court should be limited to a holding that before sentence for contempt may be effectively carried out, the Court should inspect the instrument before making a final ruling.

**All Citations**

160 Tex. 182, 328 S.W.2d 434

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

**Distinguished by** In re American Home Products Corp., Tex.App.-Waco, October 2, 1998

850 S.W.2d 155
Supreme Court of Texas.

ELI LILLY AND COMPANY and
Dista Products Company, a Division
of Eli Lilly and Company, Relators,
v.
The Honorable John
MARSHALL, Judge, Respondent.

No. D–2003. | Feb. 3, 1993. | Dissenting
Opinion by Justice Doggett April 14, 1993.

In products liability action, trial court ordered defendant pharmaceutical manufacturer to disclose identities of reporters who provided adverse reaction reports to Food and Drug Administration (FDA), and manufacturer petitioned for writ of certiorari. The Supreme Court, Cornyn, J., held that: (1) federal regulations providing for nondisclosure did not preempt state law, and (2) trial court should not have directed disclosure without according weight to public interest by requiring showing of particularized relevance and need.

Writ conditionally granted.

Doggett, J., filed dissenting opinion in which Gammage, J., joined.

**Attorneys and Law Firms**

**\*156** Mark E. Smith, Robert G. Hogue, Dallas, Joe C. Freeman, Jr., Atlanta, GA, Wade C. Smith, Dallas and John L. Hill, Houston, for relators.

Paul L. Smith and William V. Dorsaneo, III, Dallas, for respondent.

**OPINION**

CORNYN, Justice.

Today we consider a second mandamus arising out of a products liability suit against the manufacturer of the antidepressant drug Prozac.[1] Eli Lilly and Company, the manufacturer, seeks to compel the Honorable John Marshall, Respondent, to set aside his order requiring it to disclose certain information rendered confidential by federal regulation and sanctioning it for its failure to do so. Concluding that the trial court did not apply the proper legal standard, and that appeal is not an adequate remedy, we conditionally grant the writ.

[1] *See Eli Lilly & Co. v. Marshall,* 829 S.W.2d 157 (Tex.1992) (issuing conditional writ of mandamus directing trial court to conduct hearing under Tex.R.Civ.P. 76a concerning trade secrets).

Michael Hays Biffle committed suicide six days after he began taking Prozac. His family and estate filed suit against Lilly and sought production of, among other things, various documents that Lilly had submitted to the federal Food and Drug Administration (FDA) to secure approval to market Prozac. The request for production included any adverse reaction or drug experience reports, which are submitted by physicians and other health care providers to report post-approval possible[2] adverse reactions to a drug. The FDA uses this information to monitor clinical reactions to a drug to assess the terms and conditions of FDA approval or to consider whether to recall its approval entirely. 21 U.S.C. § 355(e). Although submission of a report to the manufacturer is voluntary by the health care provider, the manufacturer must submit any such reports it receives to the FDA. 21 U.S.C. § 355(k)(1). According to federal regulation, the FDA must keep confidential the identities of the patient and of the person or institution that reported the adverse reaction. **\*157** 21 C.F.R. § 314.430(e)(4)(ii) (1991).[3] The present dispute concerns the identity of the reporters of possible adverse reactions to Prozac.

[2] A report does not presume causal relation to the product. Drug Experience Report–Form 1639.

[3] The regulation provides in pertinent part:
> § 314.430(e) After FDA sends an approval letter to the applicant [the manufacturer], the following data and information in the application are immediately available for public disclosure, unless the applicant shows that extraordinary circumstances exist.
> (4) Adverse reaction reports, product experience reports, consumer complaints, and other similar data and information after deletion of the following:

(ii) Names and any information that would identify any third party involved with the report, such as a physician or hospital or other institution.

The same confidentiality provisions can be found at 21 C.F.R. § 20.111(c)(3)(ii)(b) (1991) (data and information submitted voluntarily to the FDA), and 21 C.F.R. § 312.130(b) (1991) (data and information in an investigational new drug application).

On October 23, 1991, following a hearing on the Biffles' motion to compel and Lilly's motion for a protective order based in part on the regulations at issue, the trial court ordered Lilly to produce the adverse reaction reports with only the patients' names redacted. When the Biffles' attorney arrived at Lilly's headquarters to inspect the documents, he found, among other alleged instances of noncompliance with the discovery order, that the names and addresses of the reporters had been redacted as well. Lilly's proffered explanation for its noncompliance is that its lawyers expected that maintenance of reporter and patient anonymity would be agreed upon by the parties. The Biffles, however, moved for sanctions, and following another hearing the trial court ordered Lilly to disclose the identity of the reporters and to pay the travel and copy expenses of the Biffles' attorney, and ruled that failure to comply would result in a default judgment in favor of the Biffles.

 **[1]** **[2]** **[3]** We first address the propriety of mandamus relief. Mandamus will issue only to correct a clear abuse of discretion when there is no adequate remedy by ordinary appeal. _Walker v. Packer,_ 827 S.W.2d 833, 839 (Tex.1992). Although this court may not substitute its judgment for that of the trial court with regard to fact issues, _Johnson v. Fourth Court of Appeals,_ 700 S.W.2d 916, 918 (Tex.1985), we accord the trial court's analysis and application of the appropriate law far less deference. _Walker,_ 827 S.W.2d at 840. When the undisputed facts and the applicable law permit of but one lawful decision, this court is called on to ensure that decision is reached. _Id._ We will exercise our mandamus jurisdiction in a case, such as we conclude this to be, in which an ordinary appeal could not cure the error presented. _Id._ at 843.

Lilly contends that the federal regulations establishing confidentiality preempt the trial court's order compelling disclosure of the reporters' identities. It also contends that revealing the identities of reporters would destroy the voluntary reporting system that is essential to post-approval monitoring of Prozac and thus jeopardize the vital public interest in the free flow of adverse reaction reports essential to assessing the long-term safety of this and other FDA-approved drugs. The Biffles, on the other hand, contend that the FDA regulations apply only to the FDA, that the regulations themselves permit disclosure under proper court order, [4] and that the regulations were not meant to and do not preempt Texas law of tort or discovery.

[4]     21 C.F.R. 20.83(a) (1991) provides in pertinent part:

      Records of the Food and Drug Administration which the Commissioner has determined are not available for public disclosure, either in the form of a regulation ... or by a written determination ..., shall nevertheless be made available for public disclosure in compliance with a final court order requiring such disclosure.

The FDA has filed a statement of interest with this court. [5] While disclaiming any interest in the merits of this lawsuit, the FDA emphasizes the importance of post-approval reporting because certain kinds of problems, particularly those arising from long-term use, would not come to the attention of the FDA otherwise, or at least not **\*158** in the volume reported under the current system. [6] If not assured confidentiality, the FDA contends, reporters would probably not report possible adverse reactions because of fear of entanglement in litigation and potential violation of the physician-patient privilege. [7] Finally, although conceding that the regulations themselves apply only to the FDA, the FDA asserts that the public policy interest the regulations embody are of sufficient importance to preempt any disclosure that would undermine the FDA's post-approval monitoring system.

[5]     The FDA argued the same interests to the trial court at a hearing on Lilly's motion for reconsideration. The trial court denied that motion.

[6]     The regulations at issue were promulgated in an effort to comply with the Freedom of Information Act. 5 U.S.C. § 552. In responding to comments on the proposed regulations, the FDA Commissioner stated:

      The agency has concluded that the release of any names contained in a medical file is clearly unwarranted, except in extraordinary circumstances.... With respect to complaints received voluntarily from third parties, usually health professionals, i.e., doctors, nurses, pharmacists, and so forth, relating to such matters as adverse reactions they have observed, and which thus relate to complaints made on behalf of other persons, the Commissioner concludes on the basis of the longstanding experience of the Food and

Drug Administration that it is essential to pledge that all identifying information will be deleted prior to public disclosure, and [21 C.F.R. § 314.430(e)(4)(ii)] so provides. If such a pledge is not made, the possibility of persuading health professionals voluntarily to submit important adverse reaction information on marketed products to the Food and Drug Administration is substantially diminished, and indeed perhaps wholly destroyed. Such information is important to the Food and Drug Administration and to the public, since it may well lead to action by the Food and Drug Administration designed to protect the public health. Accordingly, the Commissioner concludes that deletion of all such identifying information from such reports prior to release to the public is fully within the intent of the personal privacy and confidential commercial information exemptions.

39 Fed.Reg. 44615–16 (1974).

7     Affidavit of Joyce M. Johnson, Acting Director of the FDA's Division of Epidemiology and Surveillance, Center for Drug Evaluation and Research, ¶ 7.

**[4]**   **[5]**   **[6]**   The genesis of federal preemption is Article VI, clause 2 of the United States Constitution: "the Laws of the United States ... shall be the supreme law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Federal law may preempt state law in several ways. When acting within constitutional limits, Congress may preempt state law by so stating in express terms. *Hillsborough County, Fla. v. Automated Medical Labs., Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985). Alternatively, Congress' intent to preempt state law may be inferred from its complete and comprehensive regulation of an area. Finally, even if Congress has not completely displaced state regulation, state law is preempted to the extent it actually conflicts with federal law. *English v. General Elec. Co.,* 496 U.S. 72, 78–79, 110 S.Ct. 2270, 2274–75, 110 L.Ed.2d 65 (1990); *NCNB Tex. Nat'l Bank v. Cowden,* 895 F.2d 1488, 1494–95 (5th Cir.1990).

**[7]**   **[8]**   Regulations have the same preemptive effect as statutes. *Hillsborough County,* 471 U.S. at 713, 105 S.Ct. at 2375; *Fidelity Fed. Savings and Loan Ass'n v. De la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). Moreover, federal law preempts conflicting judicial action as well as conflicting statutes and regulations. *Wisconsin Dept. of Indus., Labor and Human Relations v. Gould Inc.,* 475 U.S. 282, 286, 106 S.Ct. 1057, 1060, 89

L.Ed.2d 223 (1986); *Texas Employers' Ins. Ass'n v. Jackson,* 820 F.2d 1406, 1412 (5th Cir.1987); *Macmillan v. Redman Homes, Inc.,* 818 S.W.2d 87, 95 (Tex.App.—San Antonio 1991, writ denied).

**[9]**   **[10]**   When determining if a state law actually conflicts with federal law, the question presented is whether compliance with both state and federal law is impossible, or whether the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 699, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580 (1984); *Hines v. Davidowitz,* 312 U.S. 52, 67–68, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941); **\*159** *Jackson v. S.P. Leasing Corp.,* 774 S.W.2d 673, 678 (Tex.App.—Texarkana 1989, writ denied). Lilly and the FDA urge that just such a conflict is presented here: by compelling disclosure of what the regulations promise will remain confidential, the trial court's order stands as an obstacle to the effective operation of the FDA's reporting system, and they argue, will effectively destroy it.

Although no court has expressly determined that the FDA regulations "preempt" disclosure, the courts of four other states have had occasion to consider the discoverability of reporters' identities. In *Newsom v. Breon Laboratories Inc.,* the Supreme Court of Tennessee held that in permitting disclosure of the identities of reporters, the lower courts erred in not considering the burdens on the parties or the reporters' expectations of confidence. 709 S.W.2d 559, 560 (Tenn.1986). The court determined that disclosure of the names and addresses of twelve out of approximately 400 reporters would be "sufficient to satisfy plaintiffs' interests." *Id.* Citing *Newsom,* the Louisiana Supreme Court ordered a trial court to amend its protective order so as to delete reporters' identities, but "[reserv[ed] to plaintiffs the right to apply for disclosure in a particular case upon showing of relevance." *Wesley v. Rye,* 490 So.2d 272 (La.1986). Striking a similar balance between the parties' burdens and needs, a New York appellate court also ordered redaction of reporters' identities. *Stahl v. Rhee,* 136 A.D.2d 539, 523 N.Y.S.2d 159, 160 (1988). Noting the public policy reasons in support of redaction, the court found that "at least at this juncture, ... the identities of the reporting sources are not material and necessary to the prosecution of the plaintiffs' case." *Id.* Lilly has also successfully obtained protective orders masking reporters' identities in trial courts in Kentucky and Texas. *Fentress v. Shea Communications,* No. 90–CI–06033 (Jefferson Cir.Ct., Ky. March 29, 1991); *Morris v. Eli*

*Lilly & Co., Inc.,* No. 240, 313–401 (Probate Court No. 2, Harris County, Tex. Sept. 4, 1991).

In the pending federal multi-district litigation concerning Prozac, the Southern District of Indiana recently reviewed these same contentions. After balancing the competing interests of and burdens on the parties, pursuant to Federal Rule of Civil Procedure 26(c), the court ordered the redaction of the reporters' identities, reserving to the plaintiffs the opportunity to request the identity of a particular reporter based on a showing of "relevance, necessity to resolve disputed facts and that the information [would not be] otherwise available." *In re Eli Lilly & Co., Prozac Prods. Liab. Litigation,* 142 F.R.D. 454, 459 (S.D.Ind.1992).[8]

[8]    *See also Langer v. Dista Prods. Co.,* No. 90C–4598, 1991 WL 349606 (N.D.Ill. Nov. 12, 1991); *Harris v. The Upjohn Co.,* 115 F.R.D. 191 (S.D.Ill.1987).

For analysis of confidentiality in slightly different contexts, see *Deitchman v. E.R. Squibb & Sons, Inc.,* 740 F.2d 556, 565 (7th Cir.1984) (district court directed to permit some discovery of reports in university registry of injuries caused by certain drug, but cautioned that identity of those submitting information to the registry need not necessarily be revealed); *Farnsworth v. The Procter & Gamble Co.,* 101 F.R.D. 355, 357 (N.D.Ga.1984), *aff'd,* 758 F.2d 1545 (11th Cir.1985) (confidentiality interest of patients and doctors providing information to the Center for Disease Control outweighed manufacturer's need for identities).

The plaintiffs in *In re Lilly* supported their arguments with the trial court's order in this case and that of a federal court compelling disclosure in *Durham v. Hoffman–LaRoche,* involving the drug Accutane. No. CV 89–L–0075–S (N.D.Ala.1989). In *Durham,* the trial court ordered the defendants to produce the names and addresses of reporting physicians. The defendants' petition for writ of mandamus to the Eleventh Circuit was denied by a divided panel;[9] their petition for writ of certiorari to the United States Supreme Court was also denied. 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990). As noted by the *In re Lilly* court, the *Durham* order contains no statement of facts or reasons, and we note that the failure of the Supreme **\*160** Court to grant review should not be viewed as a pronouncement on the merits. *E.g., Hopfmann v. Connolly,* 471 U.S. 459, 461, 105 S.Ct. 2106, 2107, 85 L.Ed.2d 469 (1985).

[9]    Judge Clark would have granted the petition to order the district court to keep confidential the reporters' identities except as necessary to resolve disputed fact issues when the evidence would not be available from another source. *In re Hoffman–LaRoche,* No. 89–7896 (11th Cir. Oct. 9, 1990, Clark, J., dissenting).

**[11]    [12]    [13]    [14]**    To effectuate the truth-finding function of the legal system, discovery is not limited to what may be admissible at trial, but includes any information relevant to the pending subject matter that is reasonably calculated to lead to the discovery of admissible evidence. TEX.R.CIV.P. 166b(2)(a). Moreover, under the doctrine of shared discovery, the fruits of discovery are available not only to the parties in a particular case but may be disseminated in turn to other litigants and potential litigants. *Garcia v. Peeples,* 734 S.W.2d 343, 347 (Tex.1987). The broad scope of discovery may be circumscribed, however, by the legitimate interest of the opposing party in avoiding discovery based on a compelling, particularized interest in nondisclosure. *See Jampole v. Touchy,* 673 S.W.2d 569, 573 (Tex.1984); TEX.R.CIV.P. 166b(3), 166b(5). In this case, although we are not persuaded that the FDA regulations preempt the trial court's order, we nevertheless conclude that disclosure of otherwise discoverable information[10] is circumscribed by the compelling public interest considerations manifested by those regulations.

[10]    We assume, for the sake of argument, that the Biffles would be able to persuade some doctors to in turn persuade their patients to waive the physician-patient privilege.

The FDA regulations clearly embody a vital public interest in confidential voluntary reporting that is eviscerated as equally by a manufacturer's compelled disclosure as by the FDA's disclosure. While Lilly claims no privilege per se in maintaining reporter confidentiality, we do not doubt its protectible economic interest—in addition to the public interest, as asserted here by the FDA—in maintaining the free flow of information derived from adverse reaction reports. Consequently, we agree that the congressional objective of fostering post-approval reporting of possible adverse reactions for all FDA-approved drugs is severely compromised by the trial court's order of wholesale disclosure of reporters' identities. While the need for confidentiality as determined by the FDA, and as promised on form 1639 and expressed in the regulations, may yield to a proper court order under 21 C.F.R. § 20.83(a), here the trial court ordered full disclosure without according any weight to the public

interest in the current voluntary reporting system. By ordering disclosure without a showing of particularized relevance and need by the Biffles, the trial court failed to apply the correct legal standard for determining if this confidential information should be released.

 **[15]** The Biffles are clearly entitled to all the substantive information on the reports [11] and to share that discovery with their expert witnesses and litigants in other cases. But while we agree that the FDA regulations do not preempt Texas law of tort or discovery, to the extent that Lilly has been ordered to act in a manner inconsistent with the public interest concerns manifested by federal law, and without due consideration having been given to those concerns, that order is erroneous as a matter of law.

11    In compliance with the Freedom of Information Act, 5 U.S.C. § 552, after a drug is approved, adverse reaction reports are "immediately available for public disclosure" following redaction of patient and reporter identities. 21 C.F.R. 314.430(e). Lilly has already produced some of the reports. We expect it to produce the rest of the reports promptly in compliance with the modified order which we anticipate Respondent will render.

Accordingly, we hold that the trial court abused its discretion by directing disclosure of the reporters' identities without a showing of particularized relevance and need, in contravention of important congressional objectives. We therefore conditionally grant the writ and direct Judge Marshall to modify his order in accordance with this opinion. The writ will issue only should he fail to do so.

DOGGETT and GAMMAGE, JJ., note their dissent.

 **\*161**  DOGGETT, Justice, dissenting.
Once again the majority has intervened in an ongoing trial court proceeding to rewrite Texas law. This time the special treatment accorded in creating a previously unknown discovery privilege threatens the public health and safety by posing formidable obstacles to the search for truth in pharmaceutical and medical device litigation. I dissent.

## I.

The events leading to this particular case began with the suicide of Michael Hays Biffle, six days after beginning his prescription of Prozac, an anti-depressant manufactured by Eli Lilly. Alleging that the drug was responsible for the death, his family sought production of premarketing documents, including all reports Lilly forwarded to the FDA containing descriptions by health care providers of their patients' adverse reactions to Prozac.

Lilly objected to discovery of this "confidential information," which included alleged trade secrets and the identities of patients who had experienced adverse reactions, as well as their reporting physicians. Alternatively, the company sought a protective order preventing any disclosure of this information to other litigants or the public. On October 17, 1991, Judge John McClellan Marshall held a hearing on both the Biffles' request for production and Lilly's motion for a protective order; arguments centered on trade secrets *and* the need to prohibit discovery of the identities of reporters of adverse reactions. On October 23 Marshall granted the plaintiffs' request in part and issued a limited protective order entitling Lilly to withhold from discovery technical materials concerning the manufacture of Prozac and to redact from adverse reaction reports the names of patients, but not reporters. This order did not limit public disclosure of the documents.

On December 2, 1991, Lilly sought mandamus relief to prevent public disclosure, and the majority immediately granted an emergency stay. *See Eli Lilly & Co. v. Marshall, 829 S.W.2d 156 (Tex.1991)* (Doggett, J., dissenting to order granting leave to file petition for writ of mandamus). This court later ordered that Lilly's trade secret claim be considered in a hearing on sealing under Tex.R.Civ.P. 76a. *See Eli Lilly & Co. v. Marshall, 829 S.W.2d 157, 158 (Tex.1992, orig. proceeding)*.

Although expressing concern in this court only with the question of public disclosure, Lilly continued its efforts in the trial court to prohibit any discovery of adverse reaction reporters' identities. Under the October 23 order, Lilly had represented that all documents ordered produced would be made available at its headquarters in Indianapolis. When the Biffles' counsel arrived at the scheduled time, however, Lilly refused to provide many of the documents and redacted reporters' names from those which were produced. Following a hearing, the trial court in January 1992 required Lilly to pay the Biffles' future costs in obtaining those materials as sanctions for defiance of the prior order.

On January 22, Lilly returned to Austin, this time complaining of the trial court's abuse of discretion in ordering the discovery of reporters' identities. This second mandamus request came despite Lilly's earlier representation to this court that its only complaint as to the October 23 order was "on the dissemination question." Motion for Temporary Relief, Petition for Writ of Mandamus, and Brief in Support at 9. The following day John Luke Hill, the former Chief Justice of this court and now counsel for Eli Lilly & Co., filed here a letter of concern he had just personally received from an employee of the Food and Drug Administration (FDA). Within a few hours, the majority granted emergency relief. When after another hearing in which the FDA participated, the trial court for the third time rejected the reporter confidentiality arguments, the majority granted leave to file this second petition for writ of mandamus, described by Lilly's counsel at oral argument as a "pure [federal] preemption case."

Lilly's claim that FDA rules prevent a state court from authorizing access to reporter identities conflicts with the explicit **\*162** language of an applicable regulation never cited by Lilly in any of its briefing:

> Records of the Food and Drug Administration which the Commissioner has determined are not available for public disclosure ... shall nevertheless be made available for public disclosure in compliance with a final court order requiring such disclosure.

21 C.F.R. § 20.83(a) (1991). The FDA clearly anticipated production of adverse reaction reports pursuant to an order like that issued by Judge Marshall.[1] Understandably, no published appellate court opinion anywhere has ever agreed with the type of preemption argument advanced by Lilly.

[1] Despite its unambiguous language, counsel for Lilly responded at oral argument that this regulation "has nothing to do with the issues before this court."

Reluctantly accepting the reality that preemption does not apply here, the majority nonetheless pontificates about this subject at length without noting that

> [c]onsideration of [preemption] ... starts with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal

Act unless that [is] the clear and manifest purpose of Congress.

*Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, ——, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407, 422 (1992) (citations omitted). This presumption against preemption is even more difficult to overcome in the specific context of administrative regulations:

> [B]ecause agencies normally address problems in a detailed manner and can speak through a variety of means, including regulations, preambles, interpretive statements, and responses to comments, we can expect that they will make their intentions clear if they intend for their regulations to be exclusive.

*Hillsborough County v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 718, 105 S.Ct. 2371, 2377, 85 L.Ed.2d 714 (1985); *see also California Coastal Comm'n v. Granite Rock Co.,* 480 U.S. 572, 583, 107 S.Ct. 1419, 1426, 94 L.Ed.2d 577 (1987) ("it is appropriate to expect an administrative regulation to declare any intention to pre-empt state law with some specificity"). Hence, given the FDA's express disavowal in 21 C.F.R. § 20.83 of the preemptive effect for confidentiality regulations in court proceedings, the majority was left with the task of finding some other basis for its preconceived result.[2]

[2] Despite my vigorous disagreement with this creation of a new privilege, I certainly do join in the majority's strong reaffirmation of "the doctrine of shared discovery" as recognized in *Garcia v. Peeples,* 734 S.W.2d 343, 347 (Tex.1987) and the right of the Biffles "to share [any] discovery with their expert witnesses and litigants in other cases." 850 S.W.2d at 160.

## II.

To meet that challenge, the majority simply creates a new exception to discoverability nowhere previously recognized in our state rules or statutes. Were there a true public need for such absolute reporter confidentiality, the FDA could initiate rulemaking to address it or certainly the drug manufacturers could voice their concerns to Congress or the Legislature. Rushing to legislate its own new basis for secrecy, the majority, however, pursues a course long ago abandoned by

most courts by creating an entirely new common law privilege from discovery. As one eminent scholar has noted, "[t]he development of judge-made privileges halted a century ago." Charles McCormick, *The Scope of Privilege in the Law of Evidence* 16 Tex.L.Rev. 447, 469 (1938). Unlike the majority, which appears determined to reverse this longstanding trend, most jurisdictions exercise judicial restraint by interpreting statutes rather than enacting new privileges. [3]

[3] *See State ex. rel.* Chandra v. Sprinkle, 678 S.W.2d 804, 807 (Mo.1984) (in bank); *Sherman v. District Court,* 637 P.2d 378, 384 (Colo.1981) (en banc); *Davison v. St. Paul Fire & Marine Ins. Co.,* 75 Wis.2d 190, 248 N.W.2d 433, 441 (1977); *Valley Bank of Nev. v. Superior Court of San Joaquin City,* 15 Cal.3d 652, 125 Cal.Rptr. 553, 554–55, 542 P.2d 977, 978–79 (1975) (in bank); *Nazareth Literary & Benevolent Inst. v. Stephenson,* 503 S.W.2d 177, 178–79 (Ky.1973); *Southern Bell Tel. & Tel. Co. v. Beard,* 597 So.2d 873, 876 n. 4 (Fla.Ct.App.1992); *Matter of Parkway Manor Healthcare Center,* 448 N.W.2d 116, 120–21 (Minn.Ct.App.1989); *Scroggins v. Uniden Corp. of America,* 506 N.E.2d 83, 85 (Ind.Ct.App.1987).

**\*163** Nor does this record show a sufficiently compelling basis to justify special treatment for Lilly. The sole evidence cited in support of this new privilege is the conclusory statement of a single individual, not even subject to cross-examination, that if reporters' identities were made public, "health care professionals and others would be much more reluctant to report adverse events for fear of involving themselves ... in litigation." Majority opinion at 158 n. 7 (citing affidavit of Joyce Johnson at 4.) This statement in turn relies on a single study, which, in fact, concluded that only 11 percent of reporters of adverse reactions expressed concerns regarding the legal implications of their reports. *See id.* at 5; Julie Milstein, Gerald Faich, et al., *Factors Affecting Physician Reporting of Adverse Drug Reactions,* 20 Drug. Info. J. 157, 162 (1986).

Subsequent studies by one of the same authors, moreover, found that only 10 percent of all adverse reaction reports are sent directly to the FDA rather than to the drug manufacturer. Gerald Faich, et al., *National Adverse Drug Reaction Surveillance,* 257 J.Am.Med.Ass'n 2068 (1987). Since the FDA's confidentiality regulations do not prevent the drug maker from revealing the identity of reporters, the fact that 90 percent of the reports are sent to manufacturers indicates that health care providers are not particularly concerned that their identities be kept confidential. Additionally, almost half of the

physicians surveyed were not even aware that the FDA has a system for reporting such reactions. Audrey Rogers, Gerald Faich, et al., *Physician Knowledge, Attitudes, and Behavior Related to Reporting Adverse Drug Events,* 148 Arch.Internal Med. 1596, 1599 (1988). Allowing discovery cannot deter reports from doctors unaware of the existence of the reporting system. Many health care providers are, however, keenly aware of the need to protect their patients' health—perhaps the real fear here is that some physicians will follow their ethical obligation to "make relevant information available to patients, colleagues, and the public...." American Medical Association, *Principles of Medical Ethics, reprinted in Law and Ethics in the Medical Office* 126 (Marcia Lewis, ed., 1983).

As the majority acknowledges in rejecting the preemption argument, the FDA regulations do not themselves provide any "compelling public interest" justification, 850 S.W.2d at 160, for this newly established common law privilege. The FDA has never considered reporter confidentiality absolute. As the FDA Commissioner summarized public comment from health care providers, drug manufacturers, and others when the confidentiality rules were first proposed:

> Comments pointed out that the Food and Drug Administration cannot guarantee confidentiality for any record, since a court may conclude that the information is subject to public disclosure.

39 Fed.Reg. 44,619 (1974). In adopting what is now 21 C.F.R. § 20.83, the FDA reflected a public policy determination that any need for reporter confidentiality can be superseded by the public interest in seeking truth during the litigation process.

### III.

This court's once strong commitment to open discovery [4] is quickly being replaced with a new double standard of justice that promotes secrecy. In the past, this court had emphasized that discovery represents

[4] *See Axelson v. McIlhany,* 798 S.W.2d 550, 553 (Tex.1990, orig. proceeding) (abuse of discretion to deny discovery of potentially relevant documents without reviewing them in camera); *Garcia v. Peeples,* 734 S.W.2d 343, 347–48 (Tex.1987, orig. proceeding) (abuse

of discretion to grant a blanket protective order against sharing discovery with other litigants); *Peeples v. Hon. Fourth Supreme Judicial Dist.,* 701 S.W.2d 635, 637 (Tex.1985, orig. proceeding) (burden is on party asserting a privilege from discovery to produce evidence concerning its applicability); *Jampole v. Touchy,* 673 S.W.2d 569, 573 (Tex.1984, orig. proceeding) (abuse of discretion to deny discovery of alternative designs of product). *But see National Tank Co. v. Brotherton,* 851 S.W.2d 193 (Tex.1993, orig. proceeding) (restricting access to post-accident investigations).

**\*164** the linchpin of the search for truth, as it makes a trial less of a game of blind man's bluff and more a fair contest with the issues and facts disclosed to the fullest practicable extent. In recent years, we have sought to secure this objective through both revision of the Texas Rules of Civil Procedure and our opinions discouraging gamesmanship and secrecy.

*State v. Lowry,* 802 S.W.2d 669, 671 (Tex.1991, orig. proceeding) (citations omitted). The unwarranted invention of a new discovery privilege here serves only to loosen the linchpin, and cast greater doubt into the search for truth.

In the past, the party with something to hide bore the burden of justifying a restriction on discovery. *See Barnes v. Whittington,* 751 S.W.2d 493, 494 (Tex.1988, orig. proceeding) ("a privilege must be established to justify an exception to the general rule favoring discovery"); *Peeples v. Honorable Fourth Supreme Judicial Dist.,* 701 S.W.2d 635, 637 (Tex.1985, orig. proceeding) (party seeking to exclude matters from discovery must affirmatively plead and prove a particular privilege); Tex.R.Civ.P. 166b(3)(e) (exempting from discovery matters protected by existing privileges). But here, the majority cites no applicable statutory provision, or evidentiary or procedural rule that entitles Lilly to resist production of the identities of reporters of adverse drug

reactions. In the past, the party seeking a protective order was required to show a "particular, articulated and demonstrable injury," *see Masinga v. Whittington,* 792 S.W.2d 940, 940–41 (Tex.1990, orig. proceeding); *Garcia v. Peeples,* 734 S.W.2d 343, 345 (Tex.1987, orig. proceeding). But for at least one drug maker, the majority alters all of that well-established law. Despite our prior refusal to shield discovery based on "conclusory allegations" of harm, *see Masinga,* 792 S.W.2d at 941; *Garcia,* 734 S.W.2d at 345, this manufacturer's unsubstantiated global claims are accepted without question. The burden of proof is then reversed by requiring the Biffles to show "particularized relevance and need" for the reporters' identities. 850 S.W.2d at 160.

While reciting the requirement that mandamus will issue "only to correct a clear abuse of discretion," 850 S.W.2d at 157, in the course of staying four trial court orders and twice issuing the "extraordinary" remedy of mandamus in a single lawsuit, the majority has effectively eliminated any exercise of discretion regarding the proper scope of discovery. Despite having conducted three separate hearings addressing the majority's concerns, Judge Marshall has been accorded no reasonable latitude to assess the validity of Lilly's claims.

The public interest in health and safety—the purported basis for the majority's action—has in fact been jeopardized by its writing. Manufacturers of drugs and medical devices are now presumptively free to conceal the identities of those who complain of the potential life-threatening qualities of their products.

GAMMAGE, J., joins in this opinion.

**All Citations**

850 S.W.2d 155, 61 USLW 2516

**End of Document**　　　　　　　　　　　　　© 2015 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

**Distinguished by** In re Continental General Tire, Inc., Tex.,
November 12, 1998

734 S.W.2d 343
Supreme Court of Texas.

Manuel GARCIA, Sr., Individually and as
Personal Representative of the Estates of
Debra Garcia, Deceased, et al., Relators,

v.

The Honorable David PEEPLES,
Judge, et al., Respondents.

No. C–6010. | July 15, 1987.

Survivor of accident in which automobile burst into flames after being struck in the rear by another vehicle filed suit against car manufacturer and dealership based upon strict products liability for design defect in car's fuel system. The trial judge entered a pretrial discovery order limiting the plaintiff's use of discovered documents. The plaintiff filed petition for mandamus asking Supreme Court to direct trial court judge to vacate or modify pretrial discovery order. The Supreme Court, Kilgarlin, J., held that: (1) pretrial discovery orders limiting plaintiff's use of discovered documents was overbroad to the extent it prevented plaintiff from exchanging information with similarly situated litigants; (2) plaintiff's attorney's indexes, notes and memoranda were protected work product; and (3) court would not act to prohibit manufacturer from enforcing several secrecy orders rendered by other courts limiting experts' ability to disclose information obtained in other lawsuits.

Writ conditionally granted.

Hill, C.J., filed dissenting opinion.

**Attorneys and Law Firms**

**\*344** David L. Perry, Elaine W. Stone, David L. Perry & Associates, Corpus Christi, Manuel P. Montez, Montez & Padilla, San Antonio, David J. Bennion, Packard, Packard & Bennion, Palo Alto, Cal., W. Douglas Matthews, Schmidt & Matthews, Houston, for relators.

Thomas H. Crofts, Jr., Timothy Patton, Groce, Locke & Hebdon, San Antonio, Robert B. Summers, Thornton,

Summers, Biechlin, Dunham & Brown, San Antonio, Donald A. Howard, Strasburger & Price, Dallas, Royal H. Brin, Jr., Strasburger & Price, Dallas, for respondents.

**Opinion**

KILGARLIN, Justice.

In this mandamus proceeding, Manuel Garcia, Sr., asks this court to direct The Honorable David Peeples, Judge of the 285th Judicial District Court of Bexar County, to vacate or modify a pre-trial discovery order limiting Garcia's use of discovered documents. We conditionally grant the writ of mandamus.

Manuel Garcia is the only survivor of a 1983 automobile accident; his 1982 Buick burst into flames after being struck in the rear by another vehicle. Garcia filed suit against General Motors Corporation and Charles Orsinger Buick, based upon strict product liability. He alleges that the fuel-fed fire was the result of a design defect in the Buick's fuel system. Only GMC is affected by this mandamus proceeding.

In response to discovery requests, Garcia obtained from GMC numerous documents relating to fuel-system integrity. On November 26, 1984, Judge Peeples rendered **\*345** an order restricting Garcia's use of those documents. Garcia contends that the trial court abused its discretion by issuing the protective order, by failing to modify the order, and by not prohibiting GMC from enforcing several protective orders issued by courts in other states.

Mandamus will issue to correct trial court actions when there has been an abuse of discretion and when there is no adequate remedy by appeal. _Jampole v. Touchy_, 673 S.W.2d 569 (Tex.1984). As in _Jampole,_ since the order may prohibit Garcia from effectively preparing for trial, his remedy by appeal is of doubtful value.

Garcia contests the procedures which Judge Peeples followed in issuing the order. Tex.R.Civ.P. 166b–4 requires a movant to specify the grounds upon which the protective order is sought. Further, a movant seeking to burden discoverable facts with a protective order must demonstrate to the trial court why the order is needed to protect the interests contemplated by the rule.

Garcia argues that the trial court abused its discretion because a blanket protective order was issued on the strength of two affidavits and without an in camera inspection of

the documents. An engineer for General Motors, William Cichowski, stated in his affidavit that he was familiar with the documents and information requested. His affidavit makes it clear that the requested documents represented ongoing research and design developments, and he explained how General Motors would be injured if competitors gained access to the information.

While Texas courts have not written on the proof necessary to obtain a Rule 166b–4 protective order, federal courts have dealt with the issue pursuant to Fed.R.Civ.P. 26(c). In *United States v. Garrett,* 571 F.2d 1323 (5th Cir.1978), the court noted that a movant must show "a particular and specific demonstration of fact as distinguished from stereotyped conclusory statements." 571 F.2d 1323, 1326 n. 3 (citations omitted). Sweeping predictions of injury and "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not justify a protective order. *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3rd Cir.1986). Though the Texas and federal rules are not identical, [1] these requirements of a particular, articulated and demonstrable injury, as opposed to conclusory allegations, apply to motions for protective orders under Rule 166b–4.

[1]    With the promulgation of amendments to the Rules of Civil Procedure on March 10, 1987, effective January 1, 1988, Tex.R.Civ.P. 166b will more closely follow the federal rule. The applicable part will read:

> 5. Protective orders. On motion specifying the grounds and made by any person against or from whom discovery is sought under these rules, the court may make any order in the interest of justice necessary to protect the movant from undue burden, unnecessary expenses, harassment or annoyance, or invasion of personal, constitutional, or property rights. *Motions or responses made under this rule may have exhibits attached including affidavits, discovery pleadings, or any other documents.* Specifically, the court's authority as to such orders extends to, although it is not necessarily limited by, any of the following:
>
> ———————————
>
> (c) ordering that *for good cause shown* results of discovery be sealed or otherwise adequately protected; that its distribution be limited; or that its disclosure be restricted. (Emphasis reflects amendments to rule.)

In this case, the affidavit submitted in support of the motion for protective order was based on personal knowledge and

adequately identified the facts. It allowed the trial court to conclude that GMC's documents contained trade secrets.

**[1]** **[2]** As to the need for an in camera inspection of the documents by the trial court, so long as there is sufficient other proof satisfying the personal knowledge and identification of facts requirements, an in camera inspection is not mandatory. Protective orders under this rule are different from situations when a person is seeking to prevent discovery on the basis of privilege. The requirements of *Peeples v. The Honorable Fourth Supreme Judicial District,* 701 S.W.2d 635, 637 (Tex.1985), apply when the flow of information to a party is restricted. Protective orders limiting dissemination of discovery material ordinarily **\*346** do not require in camera inspections, provided the movant has proved the need for the relief sought. Of course, trial courts may choose to utilize in camera inspections when it would be helpful to do so.

Garcia also argues that the terms of the order [2] constitute an abuse of discretion because they prevent him from sharing with non-parties the information he secures from discovery. Garcia's alleged abuse of discretion by Judge Peeples challenges the very reasons for protective orders prohibiting dissemination, and we are called upon to evaluate their utility. GMC correctly points out the hardship which would result should their competitors obtain current and relevant trade secrets. Rule 166b–4 recognizes the legitimate need to protect those secrets. For the last thirty years, the Rules of Civil Procedure have included provisions specifically tailored to prevent dissemination of trade secrets. Tex.R.Civ.P. 186b (Vernon 1957) (now Tex.R.Civ.P. 166b). This court noted the importance of protecting trade secrets through protective orders in *Lehnhard v. Moore,* 401 S.W.2d 232, 236 (Tex.1966). *See also Crane v. Tunks,* 160 Tex. 182, 328 S.W.2d 434 (1959). "A public disclosure of trade secrets should not be required ... except 'in such cases and to such extent as may appear to be indispensable for the ascertainment of truth.' " *Automatic Drilling Machines, Inc. v. Miller,* 515 S.W.2d 256, 259 (Tex.1974) (citing 8 Wigmore, *Evidence* [McNaughton rev. 1961], § 22.12[3] ).

[2]    The relevant terms of the order provide:

> It is ordered, adjudged and decreed that the business materials produced in furtherance of [Garcia's] request for production of interrogatories, and marked "produced pursuant to protective order" by General Motors Corporation:
>
> ———————————

2. [Garcia's] counsel may make copies of the documents and other materials produced for use by [Garcia's] counsel and their experts; provided, however, that [Garcia's] counsel shall maintain a record of the documents which are copied and the number of copies made, and, further, provided that such copies shall not be disseminated or distributed other than to persons who are authorized to use them in regard to this case as provided herein.

3. The documents and any other materials produced shall not be available for inspection by any individuals other than [Garcia], [Garcia's] counsel, and any judge having jurisdiction of this matter in the 285th Judicial District Court of Bexar County, Texas. The aforementioned individuals are authorized to inspect said documents for the sole purpose of matters related to the litigation entitled *Manuel Garcia, Sr., etc., et al. v. General Motors Corporation, et al.,* cause number 85–CI–01454, in the 285th Judicial District Court of Bexar County, Texas. Nothing herein shall prevent the exhibition of the documents and other materials covered by this protective order to experts who are assisting counsel in the preparation of this matter for trial, if such counsel has first obtained the written agreement of such persons to be bound by the terms of this Order. The requirement of obtaining such written agreement may be satisfied by obtaining the signature of any such expert on a copy of this Order, having first explained the contents thereof to such person.

[Garcia's] counsel shall maintain a list of the names of all persons to whom the information is disclosed, until further order of the Court.

4. Any notes, memoranda, identification or index relating to the documents or other materials prepared by any authorized person herein shall not be disseminated and are to be solely in connection with the matter of *Manuel Garcia, Sr., etc., et al. v. General Motors Corporation, et al.,* cause number 85–CI–01454, in the 285th Judicial District Court of Bexar County, Texas. The substance of any information obtained from the documents is not to be disseminated by [Garcia's] counsel, their agents, servants, employees, consultants, experts or expert consultants of [Garcia's] counsel or [Garcia's] consultants.

_____

6. At the conclusion of this litigation, the documents and other information shall be returned to counsel for defendant General Motors Corporation, Ray A. Weed, subject to further orders of the court; provided, however, that said items may be offered

into evidence by any parties of the trial of this cause subject to any objection.

7. Any notes, lists, memoranda, index or compilation prepared based wholly or in part upon examination of confidential documents or materials being produced herein shall not be disseminated to anyone not authorized to examine the documents or materials produced and shall be used solely in connection with the prosecution of the lawsuit in which such documents were produced and shall be subject to this protective order.

Balanced against these concerns for the confidentiality of GMC's research are the public policies favoring the exchange of information. Garcia seeks to exchange the discovery information with other persons **\*347** involved in similar suits against automakers. He argues that allowing information exchanges between similarly situated litigants would enhance full disclosure and efficiency in the trial system.

The United States Supreme Court noted in *United States v. Procter & Gamble Co.,* 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), that modern discovery rules were designed to "make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." 356 U.S. 677, 682, 78 S.Ct. 983, 986. This court recognized that goal of discovery and pointed out that "the ultimate purpose of discovery is to seek the truth, so that disputes may be decided by what the facts reveal, not by what facts are concealed." *Jampole, 673 S.W.2d at 573.*

Unfortunately, this goal of the discovery process is often frustrated by the adversarial approach to discovery. The "rules of the game" encourage parties to hinder opponents by forcing them to utilize repetitive and expensive methods to find out the facts. W. Brazil, *The Adversary Character of Civil Discovery: A Critique and Proposals for Change,* 31 Vand.L.R. 1295, 1303–15 (1978). The truth about relevant matters is often kept submerged beneath the surface of glossy denials and formal challenges to requests until an opponent unknowingly utters some magic phrase to cause the facts to rise. Courts across the nation have commented on the lack of candor during discovery in complicated litigation. *See Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1341 (5th Cir.1978); *Seaboldt v. Pennsylvania Railroad Co.,* 290 F.2d 296, 299 (3rd Cir.1961); *Gammon v. Clark Equipment Co.,* 38 Wash.App. 274, 686 P.2d 1102, 1107 (Wash.Ct.App.1984), *aff'd,* 104 Wash.2d 613, 707 P.2d 685 (1985); *Buehler v. Whalen,* 70 Ill.2d 51, 15 Ill.Dec. 852, 859, 374 N.E.2d 460, 467 (1977); *Rock Island Bank & Trust Co. v. Ford Motor Co.,* 54 Mich.App. 278, 220 N.W.2d 799, 801

(Mich.Ct.App.1974); *Bollard v. Volkswagen of America, Inc.,* 56 F.R.D. 569, 583 n. 4 (W.D.Mo.1971).

 **[3]**    Shared discovery is an effective means to insure full and fair disclosure. Parties subject to a number of suits concerning the same subject matter are forced to be consistent in their responses by the knowledge that their opponents can compare those responses. *See Buehler v. Whalen,* 374 N.E.2d at 467; S. Baldwin, F. Hare, F. McGowan, *The Preparation of a Product Liability Case* § 5.2.5 (1981).

 **[4]**    In addition to making discovery more truthful, shared discovery makes the system itself more efficient. The current discovery process forces similarly situated parties to go through the same discovery process time and time again, even though the issues involved are virtually identical. Benefiting from restrictions on discovery, one party facing a number of adversaries can require his opponents to duplicate another's discovery efforts, even though the opponents share similar discovery needs and will litigate similar issues. Discovery costs are no small part of the overall trial expense. Order Amending Federal Rules of Civil Procedure, 446 U.S. 997, 1000 (1980) (Powell, J., dissenting); *Brazil,* 31 Vand.L.R. 1295, 1358; Note, *Mass Products Liability Litigation: A Proposal for Dissemination of Discovery Material Covered by a Protective Order,* 60 N.Y.U.L.Rev. 1137, 1140 (1985). A number of courts have recognized that allowing shared discovery is far more efficient than the repetitive system now employed. Federal courts, for instance, have overwhelmingly embraced this practice in order to streamline discovery. *Wilk v. American Medical Ass'n,* 635 F.2d 1295, 1299 (7th Cir.1980); *American Telephone and Telegraph Co. v. Grady,* 594 F.2d 594, 597 (7th Cir.1979); *Phillips Petroleum Co. v. Pickens,* 105 F.R.D. 545, 551 (N.D.Tex.1985); *Ward v. Ford Motor Co.,* 93 F.R.D. 579, 580 (D.Colo.1982); *Carter-Wallace v. Hartz Mountain Industries,* 92 F.R.D. 67, 70 (S.D.N.Y.1981); *Patterson v. Ford Motor Co.,* 85 F.R.D. 152, 154 (W.D.Tex.1980); *Parsons v. General Motors Corp.,* 85 F.R.D. 724, 726 (N.D.Ga.1980). The Federal Judicial Center's *Manual for Complex Litigation* also suggests sharing discovery in order to avoid duplicative efforts. *Manual for Complex Litigation,* Pt. I, § 3.11 (5th ed. 1982).

 **\*348**   **[5]**    The facts of this case do not justify the blanket protective order, and in rendering an overbroad order, the trial court abused its discretion. GMC's interest is in protecting proprietary information from competitors, while Garcia seeks to more effectively prepare for trial by exchanging information with other litigants. The public policies favoring

shared information require that any protective order be carefully tailored to protect GMC's proprietary interests while allowing an exchange of discovered documents.

 **[6]**    The trial court should have balanced these competing needs and rendered an order preventing dissemination of GMC's true trade secrets only to GMC's competitors. There is no indication from GMC's affidavits in support of the motion, nor is there any reason to believe, that GMC will be harmed by the release of this information to other litigants. [3] Out of an abundance of caution, the trial court, after determining which documents are true trade secrets, can require those wishing to share the discovered material to certify that they will not release it to competitors or others who would exploit it for their own economic gain. Such an order would guard GMC's proprietary information, while promoting efficiency in the trial process. [4]

3    Moreover, we note that this proprietary information is several years old. Several federal courts have dealt with protective orders involving "stale" information. Texas courts should follow their example in drafting protective orders to take into account the age, usefulness, and ease by which competitors could gain access to the information without an anti-dissemination order. *In Re Agent Orange Product Liability Litigation,* 104 F.R.D. 559, 575 (E.D.N.Y.1985); *United States v. Exxon Corp.,* 94 F.R.D. 250, 252 (D.C.1981); *United States v. International Business Machines,* 67 F.R.D. 40 (S.D.N.Y.1975).

4    We reject GMC's contention that allowing shared discovery amounts to an unconstitutional deprivation of property. U.S.Const. amend. V, amend. XIV, § 1. We do not believe that allowing other litigants access to this information (documents which they have a right to discover and use in their suit) rises to the level of a constitutional taking. While trade secrets may be property, allowing their release to non-competitors does nothing to diminish their value. GMC's proprietary information is valuable only because other manufacturers lack access to it. *Ruckelshaus v. Monsanto,* 467 U.S. 986, 1011–12, 104 S.Ct. 2862, 2877, 81 L.Ed.2d 815 (1984); *see Coca-Cola Bottling Company of Shreveport, Inc. v. Coca-Cola Co.,* 107 F.R.D. 288, 293 (D.Del.1985). Allowing shared discovery does not give GMC's competitors a "free ride."

 **[7]**    We also determine an abuse of discretion to exist in respect to paragraph seven of the order, requiring Garcia's attorney to relinquish his notes and lists to GMC. The indexes,

notes, and memoranda referred to are an attorney's work product in every sense of the term. *Hickman v. Taylor,* 329 U.S. 495, 511, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1946); *Berkey Photo, Inc. v. Eastman Kodak Co.,* 74 F.R.D. 613, 616 (S.D.N.Y.1977). There is no showing that any competitor could possibly benefit from an index or list of documents prepared by an examining attorney, and thus GMC did not demonstrate the need to manage Garcia's attorney's files in order to protect its competitive edge.

Garcia's last complaint pertains to the trial court's failure to prohibit GMC from enforcing a plethora of secrecy orders rendered by other courts. Garcia's experts are evidently subject to orders inhibiting their ability to disclose information obtained in other suits. [5] We decline to hold that the trial court abused its discretion by failing to enjoin GMC from enforcing those foreign protective orders.

[5]    According to Garcia, one of his experts is subject to over forty orders preventing him from disclosing what he learned in other suits. Presumably, this engineer "relearns" what he knows about fuel systems in every case.

While a Texas court is empowered to issue an anti-suit injunction to protect its jurisdiction, that power is subject to several limitations. The full faith and credit clause, for instance, requires Texas to respect final judgments of sister states. U.S.Const. art. IV, § 1; *State of Washington v. Williams,* 584 S.W.2d 260, 261 (Tex.1979). Likewise, federal courts are beyond the reach of Texas injunctions. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 21 n. 24, 103 S.Ct. 927, 940 n. 24, 74 L.Ed.2d 765 (1983); *Donovan v. City of Dallas,* 377 U.S. 408, 413, 84 S.Ct. 1579, 1582, 12 L.Ed.2d 409 (1964). Further, prudential rules check Texas' ability to control litigation in other forums. **\*349** "The power to enjoin proceedings pending in a foreign jurisdiction should be exercised sparingly and only by reason of very special circumstances." *Gannon v. Payne,* 706 S.W.2d 304, 306 (Tex.1986).

**[8]**    The record does not reflect what courts have issued these orders, whether the orders are final or interlocutory, nor the terms of the orders. We cannot say on this record that Garcia has carried his burden to show that a "clear equity" requires a Texas declaration or injunction. *Christensen v. Integrity Insurance Co.,* 719 S.W.2d 161, 163 (Tex.1986). While we do not condone any order which attempts to restrict the thought processes of litigants, attorneys, or experts, we cannot prevent other jurisdictions from exercising their discretion

in this area. Texas courts should be guided by a principle encouraging the free exchange of information and ideas. Tex.Const. art. I, § 8; *Ex Parte Uppercu,* 239 U.S. 435, 440, 36 S.Ct. 140, 141, 60 L.Ed. 368 (1915).

Garcia is entitled to exchange information and ideas with other litigants, subject to the exceptions discussed. His attorney's work product is not subject to trial court control. We anticipate that the trial judge will allow shared discovery in accordance with this opinion. Should he fail to do so, mandamus will issue.

HILL, C.J., dissents.

HILL, Chief Justice, dissenting.

It is well-established that mandamus, as an extraordinary remedy, should not issue unless the trial court has either (1) clearly abused its discretion or (2) failed to observe a mandatory statutory provision conferring a right or forbidding a particular action. *E.g., Abor v. Black,* 695 S.W.2d 564, 567 (Tex.1985); *State Bar of Texas v. Heard,* 603 S.W.2d 829, 834 (Tex.1980). The majority opinion holds that the trial court's protective order was a clear abuse of discretion. I disagree.

The Texas Rules of Civil Procedure expressly authorize trial courts to issue "any order in the interest of justice to protect ... property rights." TEX.R.CIV.P. 166b(4). The Rules also specifically provide that trial courts may limit the distribution or disclosure of discovered documents. TEX.R.CIV.P. 166b(4)(c). Contrary to the majority's assertions, the protective order in this cause did not prohibit Garcia from disseminating documents to other litigants; the order merely required Garcia to obtain the trial court's approval before sharing any information with other litigants. Considering the interest of the parties and other litigants, this protective order is not clearly unreasonable or overly burdensome. In fact, many state and federal courts have employed such protective orders in complex litigation. *See, e.g., Cippollone v. Liggett Group, Inc.,* 785 F.2d 1108 (3d Cir.1986); *Zenith Radio Corp. v. Matsushita Electric Indus. Co.,* 529 F.Supp. 866 (E.D.Pa.1981); *In re "Agent Orange" Product Liability Litigation,* 96 F.R.D. 582 (E.D.N.Y.1983).

The trial court's order was expressly authorized by the Texas Rules of Civil Procedure and was therefore not an abuse of discretion. If this Court believes that trial courts should not be allowed to issue such orders, then the Court should seek

to change the rules through the formal procedures rather than handing down this mandamus order when a clear abuse of discretion has not been shown. Accordingly, I dissent.

**All Citations**

734 S.W.2d 343, 83 A.L.R.4th 975, 56 USLW 2100

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

164 S.W.3d 379
Supreme Court of Texas.

In re CERBERUS CAPITAL MANAGEMENT,
L.P., Cerberus Partners, L.P., Cerberus Associates
LLC, Craig Court, Inc., CRT Satellite Investors
LLC, and Stephen A. Feinberg, Relators.

No. 04–0732.  |  May 13, 2005.

**Synopsis**
**Background:** Bankruptcy trustee for corporation sought disqualification of defense attorney in shareholder derivative suit. The trial court ordered disqualification. Defendants sought writ of mandamus. The Court of Appeals denied relief. Petition for writ of mandamus was filed.

**[Holding:]** The Supreme Court held that waiver of any conflict of interest fully and accurately disclosed the conflict from work on draft of asset purchase agreement for corporation, and, thus, corporation knowingly waived any conflict.

Writ conditionally granted.

**Attorneys and Law Firms**

**\*380** Harry M. Reasoner, Marie R. Yeates, Kenneth Prager Held, Sarah Beth Landau, Gwen J. Samora, Vinson & Elkins L.L.P., Charles W. Schwartz, Skadden Arps Slate Meagher & Flom LLP, Houston, for Relators.

R. James George Jr., Gary L. Lewis, George & Brothers, L.L.P., David E. Dunham, Donald R. Taylor, Taylor & Dunham, L.L.P., Austin, D. Douglas Brothers, Brothers & Thomas, L.L.P., Broadus A. Spivey, Spivey & Ainsworth, P.C., and Miguel Sergio Rodriguez, Austin, for Real Party In Interest.

W. Wade Porter, Allensworth & Porter, LLP, John J. McKetta III, Richard Douglas Yeomans, Graves Dougherty, Hearon & Moody, P.C., Roy Q. Minton, Minton Burton Foster & Collins, P.C., Austin, Wayne Barr, TechOne Capital Group, L.L.C., Albany, N.Y., Patton G. Lochridge, Scott Patrick Baker, McGinnis Lochridge & Kilgore, L.L.P., Austin, for Others.

**Opinion**

PER CURIAM.

The issue in this original proceeding is whether the trial court abused its discretion in disqualifying the relators' counsel based on a conflict of interest. Because the real party in interest executed a written waiver of any potential conflict of interest, we hold that the trial court abused its discretion and we therefore conditionally grant mandamus relief.

On January 26, 2001, WSNet Holdings, Inc., hired Vinson & Elkins ("V & E") attorney Patrick Breeland to draft an asset purchase agreement for certain assets of Classic Communications, Inc. Breeland prepared an asset purchase agreement and, on January 28, 2001, forwarded it to WSNet. The next day, WSNet instructed V & E that all work on the purchase agreement should cease.

In February 2002, a WSNet shareholder instituted a shareholder derivative suit against the relators and others, alleging that the relators had usurped WSNet's corporate opportunity to purchase assets of Classic Communications and another company, Galaxy Telecom Inc. At the inception **\*381** of the derivative action, the relators contacted V & E regarding representation. Before appearing in the case, Charles Schwartz, then a partner at V & E and now a partner at Skadden, Arps, Slate, Meagher & Flom LLP, contacted WSNet's general counsel to inquire whether WSNet would waive any potential conflict arising from V & E's prior work for WSNet. At the time of the request, Schwartz disclosed to WSNet's general counsel the factual basis of the potential conflict. WSNet's general counsel verbally agreed to waive any potential conflict of interest.

Schwartz subsequently sent a letter to WSNet's general counsel summarizing their discussion and commemorating that WSNet had "agreed ... to waive any conflict of interest arising from" the representation of the relators in this action. The letter stated in part:

I write to confirm that, as you stated during our conversation last week, you have agreed, on behalf of WSNet Holdings, Inc. ("WSNet"), to waive any conflict of interest arising from representation of [the defendants] in the above-titled matter based on the fact that Vinson & Elkins LLP ("V & E") previously represented WSNet, Inc. in the matter described below. After full disclosure of

relevant facts, you have consented to V & E representing the Defendants in the above-titled action.

WSNet engaged V & E in a limited capacity in connection with WSNet's proposed (but not consummated) acquisition of certain cable TV systems of Classic Communications, Inc. WSNet's proposed acquisition of these systems is described on pages 11 and 12 of the Petition in this matter. Cary Ferchill, then CEO of WSNet, contacted V & E attorney Patrick Breeland on a Friday in late January 2001 and requested that Mr. Breeland prepare a generic asset purchase and sale agreement in connection with WSNet's proposed acquisition of these systems. Mr. Ferchill requested that Mr. Breeland prepare this documentation over the weekend. On the following Monday, however, Mr. Ferchill informed Mr. Breeland that WSNet would not be acquiring any assets from Classic Communications, Inc. Mr. Breeland's and V & E's only participation in the transaction was to draft generic transaction documents. Mr. Breeland did not participate in any negotiations concerning the proposed transaction.

WSNet's Chief Financial Officer and Executive Vice President, Randall Jonkers, signed the letter agreement at the behest of WSNet's general counsel, to whom the letter was addressed. It is undisputed that Jonkers had reviewed the petition in the derivative action and chose not to consult with WSNet's outside counsel before signing the waiver. V & E appeared on behalf of the relators in March 2002.

In October 2002, WSNet filed a Chapter 11 bankruptcy petition, and a trustee was appointed. The trustee replaced the original plaintiff in the derivative suit but retained the same law firm to continue prosecuting the shareholder derivative suit. The derivative suit was removed to the bankruptcy court in January 2003, and later remanded to state court in August 2003. An automatic stay was imposed until October 6, 2003.

On November 14, 2003, twenty months after V & E appeared on the relators' behalf, the trustee sought V & E's disqualification based on its prior work for WSNet. The trial court ordered V & E's disqualification, holding that V & E's prior representation of WSNet was substantially related to the representation in this case, the bankruptcy trustee did not waive the right to seek V & E's disqualification, and **\*382** any purported prior waiver of a conflict by WSNet was ineffective. The court of appeals denied the relators' request for mandamus relief, and the relators now seek mandamus relief in this Court.

**[1]** **[2]** A writ of mandamus will issue only if the trial court has committed a clear abuse of discretion and the relators have no adequate remedy by appeal. [1] A trial court abuses its discretion if " 'it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law' " [2] or if it clearly fails to correctly analyze or apply the law. [3]

[1] *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992).

[2] *Id.* at 839 (quoting *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985)).

[3] *Id.* at 840.

**[3]** The Disciplinary Rules, although promulgated as disciplinary standards rather than rules of procedural disqualification, provide guidelines relevant to a disqualification determination. [4] Rule 1.05 prohibits the use of a former client's confidential information to that client's disadvantage, unless the client consents or the information has become generally known. [5] Rule 1.09(a) provides:

[4] *Anderson Producing Inc. v. Koch Oil Co.,* 929 S.W.2d 416, 421 (Tex.1996); *Spears v. Fourth Court of Appeals,* 797 S.W.2d 654, 656 (Tex.1990).

[5] TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05(b)(3), *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G app. A (TEX. STATE BAR R. art. X, § 9).

*Without prior consent,* a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:

(1) in which such other person questions the validity of the lawyer's services or work product for the former client; or

(2) if the representation in reasonable probability will involve a violation of Rule 1.05.[sic]

(3) if it is the same or a substantially related matter. [6]

[6] *Id.* 1.09(a) (emphasis added).

**[4]** We have recognized that "[d]isqualification is a severe remedy" [7] that can cause immediate and palpable harm by depriving the party of its chosen counsel and disrupting court proceedings. [8] Therefore, "[m]ere allegations of unethical

conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice" to merit disqualification. [9]

[7]     *Spears,* 797 S.W.2d at 656.

[8]     *In re Nitla S.A. de C.V.,* 92 S.W.3d 419, 423 (Tex.2002).

[9]     *Spears,* 797 S.W.2d at 656.

 **[5]**     The relators argue that disqualification was improper because V & E obtained valid oral and written waivers before appearing in this lawsuit on the relators' behalf. The bankruptcy trustee contends that the waiver letter signed by Jonkers, WSNet's Executive Vice President and Chief Financial Officer, at the behest of the company's general counsel was ineffective because it did not fully and accurately disclose the conflict. We disagree. Comment 10 to Rule 1.09 provides that "[a] waiver is effective only if there is consent after disclosure of the relevant circumstances, including the lawyer's past or intended role on behalf of each client, as appropriate." [10] The waiver letter in this case disclosed V & E's proposed **\*383** representation of the relators in the shareholder derivative suit, the subject matter of its prior work for WSNet, the time period involved, the attorney involved, the nature of the discussion with WSNet's general counsel, and how the prior representation concluded. This disclosure meets the requirements set forth in comment 10 of Rule 1.09. [11] Furthermore, it is undisputed that Jonkers signed the waiver letter after reviewing the petition and chose not to consult WSNet's outside counsel before signing the waiver. The record reveals that WSNet's files contained information regarding V & E's prior work for WSNet, including an email from V & E partner Patrick Breeland to a WSNet representative disclosing his work for WSNet and a draft of the asset purchase agreement. In addition, it is undisputed that WSNet's general counsel verbally agreed to waive any potential conflict of interest, which is a permissible, albeit inadvisable, manner of providing disclosure and obtaining consent under the Disciplinary Rules. [12] Accordingly, WSNet was adequately informed of V & E's prior representation and knowingly waived any conflict.

[10]     TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09 cmt. 10.

[11]     *Id.; see also In re B.L.D.,* 113 S.W.3d 340, 346 n. 5 (Tex.2003) (discussing waiver for joint representation), *cert. denied,* 541 U.S. 945, 124 S.Ct. 1674, 158 L.Ed.2d 371 (2004).

[12]     *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.06 cmt. 8 ("While it is not required that the disclosure and consent be in writing, it would be prudent for the lawyer to provide potential dual clients with at least a written summary of the considerations disclosed.").

 **[6]**     "Mandamus is appropriate to correct an erroneous order disqualifying counsel because there is no adequate remedy by appeal." [13] Accordingly, without hearing oral argument, [14] we conditionally grant a writ of mandamus and order the trial court to vacate its order disqualifying the relators' counsel. We have every confidence the trial court will act in accordance with this opinion.

[13]     *In re Sanders,* 153 S.W.3d 54, 56 (Tex.2004) (orig.proceeding).

[14]     TEX.R.APP. P. 52.8(c).

Justice JOHNSON did not participate in the decision.

**All Citations**

164 S.W.3d 379, 48 Tex. Sup. Ct. J. 646

---

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

 © 2015 Thomson Reuters. No claim to original U.S. Government Works.

398 S.W.3d 812
Court of Appeals of Texas,
Corpus Christi–Edinburg.

In re CHAMPION INDUSTRIAL SALES, LLC, et al.

No. 13–12–00505–CV. | Oct. 29, 2012.

**Synopsis**
**Background:** After wife brought action individually and on behalf of her husband's estate against his former employer and merchants, which manufactured, sold, or rented materials and machine tools that her husband used, for negligence and gross negligence, the case was transferred as a tag-along case to the silica multidistrict litigation (MDL) pretrial court, and following hearings, the District Court, Harris County, James E. Klager, J., granted wife's motion for remand to the county court, merchants petitioned for writ of mandamus.

**Holdings:** The Court of Appeals, Vela, J., held that:

[1] merchants lacked an adequate remedy by appeal for transfer of wife's action to county court as required for mandamus relief;

[2] silica MDL pretrial court lacked subject matter jurisdiction; and

[3] MDL pretrial court did not abuse its discretion by constraining its scope of review.

Denied.

**Attorneys and Law Firms**

**\*815** Frank E. Weathered, David J. Dunn, Polly Dunn, Dunn, Weathered, Coffey, Rivera & Kasperitis, P.C., Corpus Christi, Polly Dunn, Corpus Christi, Jonathan D. Saikin, Houston, Tanya N. Garrison, Houston, William R. Moye, Houston, Kevin Risley, Thompson, Coe, Cousins & Irons, Houston, James L. Ware, Sheehy, Serpe & Ware, PC, Houston, Konor A. Cormier, Mehaffy Webber, Houston, Gregg R. Brown, Austin, Patrick Wolter, Donnell, Abernethy & Kieschnick, Corpus Christi, Richard W. Crews, Jr., Hartline, Dacus, Barger, Dryer & Kern, Corpus Christi, Lauren E. Braddy, Corpus Christi, Jeffrey Pierce Fultz, Houston, Kendall Kelly Hayden, Dallas, James F. Buchanan, Welder Leshin LLP, Corpus Christi, John T. Groark, Chicago, IL, Robert L. Ramey, Corpus Christi, Raymond Lynn Stevens, Beaumont, Eric I. Barrera, Royston, Rayzor, Vickery & Williams, Corpus Christi, William L. Powers, San Antonio, J.K. Leonard, Waco, L. Hayes Fuller III, Naman, Howell, Smith & Lee LLP, Waco, Stuart Smith, Waco, Cade W. White, Houston, for the Relators.

Blake C. Erskine Jr., Austin, Mark B. Blackburn, Austin, Charlie Garcia, Austin, Michael V. Garcia, Alice, for Real Parties in Interest.

James E. Klager, pro se.

Joseph J. Halbach, Jr., pro se.

Before Chief Justice VALDEZ and Justices GARZA and VELA.

**OPINION**

Opinion by Justice VELA.[1]

[1] *See* TEX.R.APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so."); TEX.R.APP. P. 47.4 (distinguishing opinions and memorandum opinions).

On May 29, 2012, the Honorable Joseph J. Halbach Jr., Presiding Judge of the of the 333rd District Court of Harris County, Texas, sitting as an appointed judge presiding over a multidistrict proceeding involving silica-related personal injury and wrongful death cases, entered an order remanding the underlying wrongful death case to the County Court at Law No. 4 of Nueces County, Texas. Relators, Champion Industrial Sales, LLC, Texas Pipe & Supply, Bonney Forge Corporation, Capitol Manufacturing Company, AIV, LP, Carboline Company, Inweld Corporation, Commercial Metals Company d/b/a Construction Service, The ESAB Group, Fein Power Tools, Inc., Gerdau Ameristeel US, Inc., Ipsco Koppel Tubulars, LLC, JM Supply Company, Inc., Oates Metal Deck and Building Products, Inc., Phoenix Forging Company, Serpa Fabrication, Inc., Titan Pipe & Supply, and Unibraze Corp., filed a petition for writ of mandamus on July 24, 2012, contending that the trial court erred in remanding the case. We deny the petition for writ of mandamus.

## *816  I. BACKGROUND

Brandie Trevino–Garcia, individually and on behalf of the estate of Richard Garcia, filed a negligence and gross negligence suit against Bay, Ltd., and Berry Contracting, L.P. in County Court at Law No. 4 of Nueces County, based on the death of her husband, Richard Garcia. According to the petition, the decedent, who was employed by the defendants as a pipefitter, died as a result of exposure to "toxic hard-metal materials" during the course and scope of his employment. By her first amended original petition, Trevino–Garcia included additional claims against numerous other entities identified as "Defendant Merchants" who manufactured, sold, or rented materials and machine tools used by the decedent containing toxic hard-metal substances. The first amended original petition identified the "hard-metals" as including, but not limited to, cobalt, tungsten, vanadium, bismuth, titanium, iron, aluminum, magnesium, silica, and combinations thereof. Trevino–Garcia subsequently filed second and third amended original petitions clarifying and expanding her causes of action. Each of these petitions identified silica as one of the hard-metals utilized by the decedent.

In the fall of 2011, the case was transferred to the silica multidistrict litigation pretrial court in the 333rd District Court as a tag-along case. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 90.004, 90.010(b) (West 2011).

In November 2011, Trevino–Garcia filed her fourth amended petition. The fourth amended petition excludes silica as a defined "hard-metal" and specifically states that "Plaintiffs do not assert a silicosis or silica related claim or injury," and "Decedent died of hard-metal lung disease which is a separate and distinct disease from silicosis or any other silica related type diseases."

In January 2012, Trevino–Garcia filed a motion to remand to the County Court at Law No. 4 of Nueces County on grounds that she did not assert that Decedent died of silicosis or a silica related injury, and accordingly, the cause should not remain in the Silica MDL pretrial court. According to the motion to remand, Trevino–Garcia was required to, and did, file the medical report required by civil practice and remedies code section 90.004, but the report concluded that Garcia did not die from silicosis. In the report, the expert noted as follows:

As indicated in my prior report, Mr. Garcia had desquamative interstitial pneumonia. This pattern has been described in individuals exposed to hard metal dust. Indeed, 42% of the particles [from a biopsy of Garcia's lung] analyzed ... were metal particles, including tungsten containing particles. Another 26% were silica.... Mr. Garcia did not have silicosis. Mr. Garcia had hard metal lung disease, and therefore the questions you asked me to answer in the Civil Practice and Remedies Code § 90.004(3)(A), (A)(i), (A)(ii), (B), (C) and (D) are not applicable to the diagnosis and causation of Mr. Garcia's lung disease.

Following two hearings, the pretrial court remanded the cause. The order of remand states, in relevant part, as follows:

On May 29, 2012, the Court considered Plaintiff's Motion to Remand. This Court is of the opinion that this Motion to Remand should be GRANTED. The Court finds that, under Rule 13 of the Rules of Judicial Administration, the existence of pleadings by a defendant alleging a connection between damages alleged by a plaintiff and silica does not vest jurisdiction in the Multi–District Litigation Court. Chapter 90 of the Texas Civil Practice[ ] and Remedies *817 Code definition of a claimant in a silica case includes (1) an exposed person[,] and (2) any person who is seeking recovery of damages for or arising from the injury or death of an exposed person. Under Chapter 38 of the Texas Rules of Civil Procedure, a third party plaintiff is a defending party who brings suit against another person who may be liable to either him or the plaintiff for all of the plaintiff's claim again[st] him. Because a third party plaintiff is only seeking to mitigate the plaintiff's

claim against him, he is not seeking to recover damages, and is not a claimant under Chapter 90. Therefore, a third party plaintiff is unable to invoke the jurisdiction of the silica Multi–District Litigation Court.

In a footnote to the order, the court further explained that because Trevino–Garcia had nonsuited with prejudice "any and all claims or potential claims of any harm due to silica," any and all such claims were barred.

By two issues, relators contend that Trevino–Garcia's "post-transfer amended petition" is not sufficient to divest the MDL pretrial court of subject matter jurisdiction and that the remand order was an abuse of discretion for which they have no legal remedy. The Court requested and received a response to the petition for writ of mandamus from Trevino–Garcia, and further received a reply thereto from relators.

## II. STANDARD OF REVIEW

 **[1]**   **[2]**   **[3]**   **[4]**    To be entitled to the extraordinary relief of a writ of mandamus, relator must show that the trial court abused its discretion and that there is no adequate remedy by appeal. _In re Columbia Med. Ctr. of Las Colinas,_ 290 S.W.3d 204, 207 (Tex.2009) (orig. proceeding); _In re Prudential Ins. Co. of Am.,_ 148 S.W.3d 124, 135–36 (Tex.2004) (orig. proceeding). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. _In re Olshan Found. Repair Co.,_ 328 S.W.3d 883, 888 (Tex.2010) (orig. proceeding); _In re Cerberus Capital Mgmt., L.P.,_ 164 S.W.3d 379, 382 (Tex.2005) (orig. proceeding); _Walker v. Packer,_ 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding). In determining whether appeal is an adequate remedy, we consider whether the benefits outweigh the detriments of mandamus review. _In re BP Prods. N. Am., Inc.,_ 244 S.W.3d 840, 845 (Tex.2008) (orig.proceeding). Relators have the burden of establishing both prerequisites to mandamus relief, and this burden is a heavy one. _In re CSX Corp.,_ 124 S.W.3d 149, 151 (Tex.2003) (orig. proceeding).

 **[5]**   **[6]**    There is no established jurisprudence regarding whether or not relators possess an adequate remedy by appeal for a transfer from a pretrial court to a trial court in multidistrict litigation. Weighing public and private interests,

and recognizing that the adequacy of an appeal depends on the facts involved in each case, we conclude that relators lack an adequate remedy by appeal for this ruling. _See In re McAllen Med. Ctr., Inc.,_ 275 S.W.3d 458, 469 (Tex.2008) (orig. proceeding); _In re Prudential Ins. Co. of Am.,_ 148 S.W.3d at 136–37. Specifically, Rule 13 of the Rules of Judicial Administration and its engendering legislation were enacted to promote "goals of convenience, efficiency, and justice." _In re Tex. Windstorm Ins. Ass'n,_ 339 S.W.3d 401, 403 (Tex.2009). Denying mandamus relief here would thwart the legislative intent that multidistrict litigation matters be handled expeditiously, and we should not frustrate that purpose "by a too-strict application of our **\*818** own procedural devices." _In re United Servs. Auto. Ass'n,_ 307 S.W.3d 299, 313–14 (Tex.2010) (orig. proceeding); _see In re McAllen Med. Ctr.,_ 275 S.W.3d at 467; _cf._ TEX.R. JUD. ADMIN. 13.9(c) ( "An appellate court must expedite review of an order or judgment in a case pending in a pretrial court."). Accordingly, we conclude that "extraordinary circumstances" compel the determination that relators lack an adequate remedy by appeal in this matter. We thus proceed to review the merits of the petition for writ of mandamus.

## III. JURISDICTION

In this original proceeding, we are asked to review an order issued by a trial court in another appellate district. Ordinarily, we would lack mandamus jurisdiction over such an order. _See_ TEX. GOV'T CODE ANN. § 22.221 (West 2004) (limiting the mandamus jurisdiction of appellate courts to writs of mandamus issued against "a judge of a district or county court in the court of appeals' district" or against a "judge of a district court who is acting as a magistrate at a court of inquiry ... in the court of appeals district" or "all other writs necessary to enforce the jurisdiction of the court"). However, with regard to multidistrict litigation, an order or judgment of the trial court or pretrial court may be reviewed by the appellate court that regularly reviews orders of the court in which the case is pending at the time review is sought, irrespective of whether that court issued the order or judgment to be reviewed. _See_ TEX.R. JUD. ADMIN. 13.9(b).

The order subject to review herein was issued by the pretrial court in multidistrict litigation. At the present time, by virtue of the transfer order, the court in which the underlying case is pending is the County Court at Law No. 4 of Nueces County, Texas. We are the appellate court that regularly

reviews orders issuing from that court, and, accordingly, we have jurisdiction over this original proceeding. *See id.*

## IV. SUBJECT MATTER JURISDICTION

In their first issue, relators contend that, as a court of general jurisdiction, the 333rd District Court has subject matter jurisdiction over this personal injury and wrongful death case. According to relators' argument, the creation of a multidistrict litigation proceeding does not limit the subject matter jurisdiction of the 333rd District Court and that court has jurisdiction over this case even in the absence of allegations regarding silica-related exposure or injury. According to relators:

> Judge Halbach's written order remanding the case states that he is remanding the case because the allegations in the Fourth Amended Petition did not vest jurisdiction in the Multi–District Litigation court." ... The flaw in that analysis is that there is nothing in Texas law that creates or restricts subject matter jurisdiction of a court in which multidistrict litigation pretrial procedures are assigned. The 333rd District Court has the jurisdiction of a district court, which includes the authority to hear wrongful death and personal injury cases. The trial court clearly abused its discretion in not exercising the general subject matter jurisdiction granted to the 333rd District Court.

 **[7]**　 **[8]**　 Subject matter jurisdiction is essential to the authority of a court to decide a case. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443 (Tex.1993). Whether a court has subject-matter jurisdiction is a question of law. *City of Dallas v. Carbajal,* 324 S.W.3d 537, 538 (Tex.2010).

In 2003, the Texas Legislature created the Judicial Panel on Multidistrict Litigation **\*819** (the "MDL Panel"). *See generally* TEX. GOV'T CODE ANN. §§ 74.161–.164 (West 2005). The legislation authorizes the MDL panel to "transfer civil actions involving one or more common questions of

fact ... to any district court for consolidated or coordinated pretrial proceedings, including summary judgment or other dispositive motions, but not for trial on the merits." *Id.* § 74.162. In accordance with the legislative grant, the Texas Supreme Court promulgated Rule of Judicial Administration 13, which grants a multidistrict litigation pretrial court broad power to manage transferred cases. *Id.* § 74.163(b); § 74.024; *see* TEX.R. JUD. ADMIN. 13, *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. F app. (West Supp.2011). The legislature also enacted chapter 90 of the Texas Civil Practice and Remedies Code for claims involving asbestos and silica. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 90.001–.012 (West 2011).

 **[9]**　 **[10]**　 **[11]**　 The laws governing multidistrict litigation provide a pretrial process that allows cases with common questions of fact to proceed efficiently toward trial. *See In re Vanderbilt Mortgage & Fin., Inc.,* 166 S.W.3d 12, 14 (Tex. M.D.L. Panel 2005). Under the multidistrict litigation rules, "related" cases may be transferred from different trial courts to a single pretrial judge "if transfer will (1) serve the convenience of the parties and witnesses and (2) promote the just and efficient conduct of the litigation." *See In re Ad Valorem Tax Litig.,* 216 S.W.3d 83, 84 (Tex. M.D.L. Panel 2006); TEX.R. JUD. ADMIN. 13.2(f), 13.3(a), 13.3(*l* ); *see also In re Tex. Windstorm Ins. Ass'n,* 339 S.W.3d at 401. Stated otherwise, the transfer must "serve the goals of convenience, efficiency, and justice." *In re Toyota Unintended Acceleration Litig.,* 398 S.W.3d 892 (Tex. M.D.L. Panel 2011). Rule 13 aims to further these goals by eliminating duplicative discovery, minimizing conflicting demands on witnesses, preventing inconsistent decisions on common issues, and reducing unnecessary travel. *See In re Hurricane Rita Evacuation Bus Fire,* 216 S.W.3d 70, 72 (Tex. M.D.L. Panel 2006). Procedures "making discovery more ... efficient" by minimizing the duplication of efforts inherent in requiring "similarly situated parties to go through the same discovery process time and time again, even though the issues involved are virtually identical" further public policies recognized by the Texas Supreme Court. *Garcia v. Peeples,* 734 S.W.2d 343, 347 (Tex.1987); *see also In re Weekley Homes, L.P.,* 295 S.W.3d 309, 316 (Tex.2009) (discussing the wide acceptance of the goal to "reduce the costs of discovery, to increase its efficiency, to increase uniformity of practice").

Thus, the multidistrict litigation rules govern specific sorts of cases, that is, those "civil actions that involve one or more common questions of fact." TEX. GOV'T CODE ANN. § 74.162 (West 2005); TEX.R. JUD. ADMIN. 13.1(b)(1). The

MDL panel may order transfer of cases to a multidistrict pretrial court if three members concur that "related cases involve one or more common questions of fact" and "transfer to a specified district court will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of the related cases." *Id.* R. 13.3(*l* ). Further, after the initial transfer order is issued, a party may transfer other related cases as tag-along cases, which are cases "related to cases in an MDL transfer order" but not themselves the subject of an initial MDL motion or order. *Id.* R. 13.2(g). Rule 13.5(e) provides that a tag-along case may be transferred to the pretrial court by simply filing a notice complying with rule 13.5(a). *See id.* R. 13.5(e). The tag-along case is then automatically "deemed" transferred. *Id.*

 **\*820** The pretrial court has the authority to decide "all pretrial matters" in all related cases transferred to the court. *Id.* R. 13.6(b). The scope of this authority is extensive and includes matters including, but not limited to, jurisdiction, joinder, and discovery. *Id.* The court may set aside or modify any pretrial ruling made by the trial court before transfer over which the trial court's plenary power would not have expired had the case not been transferred. *Id.* R. 13.6(b). The pretrial court also considers disposition of the case by means other than conventional trial on the merits. *Id.* The judge of the pretrial court has "exclusive jurisdiction" over each related case transferred under Rule 13. *Id.* R. 13.6(a).

The pretrial judge's exclusive authority over the case exists "unless a case is retransferred by the MDL Panel or is finally resolved or remanded to the trial court for trial." *Id.* Cases, or separable triable portions of cases may be remanded "when pretrial proceedings have been completed to such a degree that the purposes of the transfer have been completed or no longer apply. *Id.* R. 13.7(b). Similarly, once a tag-along case has been transferred to the pretrial court, "a party to the case or to any of the related cases already transferred to the pretrial court may move the pretrial court to remand the case to the trial court on the ground that it is not a tag-along case." *Id.* R. 13.5(e). An order granting or overruling such a motion may be appealed to the MDL Panel. *Id.*

 **[12]**    **[13]**    **[14]**    In determining the subject matter jurisdiction of a court, we consider the framework of statutes and rules that create the court. *See, e.g., In re United Servs. Auto. Ass'n,* 307 S.W.3d at 303–04 (explaining a five-step process for determining jurisdiction of a particular court by reference to the Constitution, to the general statutes establishing jurisdiction for that court, to specific statutes authorizing establishment of the court, to statutes creating other courts in the same county whose jurisdiction may be implicated, and to statutes governing specific subject matters). A Texas district court is a court of general jurisdiction. *Dubai Petroleum Co. v. Kazi,* 12 S.W.3d 71, 75 (Tex.2000). Our Constitution provides that the jurisdiction of a district court "consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." TEX. CONST. art. V, § 8; *see Blue Cross Blue Shield v. Duenez,* 201 S.W.3d 674, 675 (Tex.2006). By statute, district courts have the jurisdiction provided by the constitution and "may hear and determine any cause that is cognizable by courts of law or equity and may grant any relief that could be granted by either courts of law or equity." TEX. GOV'T CODE ANN. §§ 24.007, 24.008. We presume that courts of general jurisdiction have subject matter jurisdiction over a matter, unless a showing can be made to the contrary; however, this presumption does not apply to actions grounded in statute rather than the common law. *Dubai Petroleum Co.,* 12 S.W.3d at 75.

 **[15]**    **[16]**    Based on the foregoing, we conclude that the statutes and rules governing multidistrict litigation expressly limit the jurisdiction of courts sitting as pretrial courts in multidistrict litigation. Only qualified cases are subject to transfer to pretrial multidistrict litigation courts, and the scope of authority of pretrial courts over these cases is limited. Specifically, the transfer authorizes the transfer only of "related" civil cases, that is, those cases that involve one or more common questions of fact, from different trial **\*821** courts to a single pretrial judge where "transfer will (1) serve the convenience of the parties and witnesses and (2) promote the just and efficient conduct of the litigation." *In re Ad Valorem Tax Litig.,* 216 S.W.3d at 84; *see* TEX.R. JUD. ADMIN. 13.2(f), 13.3(a), 13.3(*l* ). And, while the pretrial court has exclusive jurisdiction over each case transferred to the multidistrict litigation court, that authority expressly excludes presiding over the trial of the case. *See* TEX.R. JUD. ADMIN. 13.6(b). Accordingly, although the 333rd District Court is a court of general jurisdiction by virtue of the statutes that created it, when the 333rd District Court is acting pursuant to the MDL panel's designation as a pretrial court under MDL rules and legislation, by reference to those rules, it is not a court of general jurisdiction. We overrule relators' first issue.

## V. PLEADINGS

In their second issue, relators contend that the trial court abused its discretion in remanding the case. Relators allege that Trevino–Garcia "cannot creatively plead her way out of MDL." In connection with this issue, relators allege that: (1) to the extent that the motion to remand was intended as a tag-along challenge, it was untimely; (2) as claimants, the defendants can invoke chapter 90 of the Texas Civil Practice and Remedies Code; (3) the inquiry should consider more than just the plaintiff's pleadings; (4) the time-of-filing rule should apply as Texas courts do not tolerate artful pleadings to avoid procedural requirements; and (5) the underlying purposes of the Silica MDL court are fulfilled by retaining the case in the 333rd District Court.

Relators allege that, to the extent that the motion to remand was intended as a tag-along challenge, it was untimely. Rule 13 prescribes that a motion to remand on the basis that a case is not a tag-along case may be filed within 30 days after service of the notice of transfer. *Id.* R. 13.5(e). Trevino–Garcia's motion to remand was not filed within this period of time and she did not file a motion for leave to file the motion to remand outside of Rule 13' s thirty-day deadline based on tag-along status. Accordingly, the motion to remand was untimely under Rule 13. We note, however, that Rule 13 does not address whether or not the trial court possesses discretion to allow late-filed motions to remand on the grounds that a case is not a tag-along case. We assume, without deciding, that Rule 13 vests such discretion in the pretrial court. *See generally* TEX.R. CIV. P. 5 (requiring a party seeking additional time to file a document after a deadline to file a motion and show good cause for not acting before the deadline).

**[17] [18]** To the extent that relator's petition might be expansively construed to include a complaint that the respondent abused its discretion by allowing Trevino–Garcia to file the motion to remand after the deadline to file a motion to remand based on tag-along status had passed, we note that courts enjoy very wide discretion in controlling their dockets and setting or enforcing deadlines. *See, e.g., Werner v. Miller,* 579 S.W.2d 455, 457 (Tex.1979); *Forscan Corp. v. Touchy,* 743 S.W.2d 722, 724 (Tex.App.-Houston [14th Dist.] 1987, orig. proceeding). To the extent that relator is complaining that the respondent abused its discretion by implicitly continuing Trevino–Garcia's deadline to file a motion to remand based on tag-along status, we note that

continuances are generally not subject to mandamus review. *See In re H & R Block,* 159 S.W.3d 127, 132 (Tex.App.-Corpus Christi 2004, orig. proceeding) (citing and discussing *In re Colonial Pipeline Co.,* 968 S.W.2d 938, 943 (Tex.1998) (orig. proceeding); *Gen. Motors* **\*822** *Corp. v. Gayle,* 951 S.W.2d 469, 477 (Tex.1997) (orig. proceeding)). We find no "special circumstances" in this case that would have precluded the respondent from continuing Trevino–Garcia's deadline to file a motion to remand.

**[19]** Trevino–Garcia's motion to remand did not invoke remand under any specific section of Rule 13 and did not assert that the case is not a tag-along case. Looking at the substance of the motion, Trevino–Garcia asserts that the case should be remanded because the alleged injury is hard-metal lung disease and not silica or a silica-related injury, the decedent did not die from silica or a silica-related injury, and the purposes of the MDL panel would not be furthered by retaining the case because there are no other cases having one or more issues of common fact in terms of hard-metal lung disease. Given the pretrial court's broad scope of authority over its cases, including the authority to determine jurisdiction, the directive that it "ensure the expeditious resolution of each case and the just and efficient conduct of the litigation as a whole," we conclude that the pretrial court has not only the discretion but also the duty to consider whether or not the underlying case was properly transferred to the multidistrict litigation pretrial court, and could do so at any time during the litigation. *See* TEX.R. JUD. ADMIN. 13.6(a), (b). Moreover, the pretrial court's order of remand was predicated on its lack of jurisdiction, and subject matter jurisdiction cannot be waived or conferred by agreement, can be raised at any time, and must be considered by a court sua sponte. *See Reata Constr. Corp. v. City of Dallas,* 197 S.W.3d 371, 379 (Tex.2006).

**[20] [21] [22]** Relators contend that the pretrial court should consider more than just the plaintiff's pleadings in determining whether the case should be remanded to the trial court. Relators contend that the prior medical reports and initial pleadings show that "this case was, and remains, a silica case." In this regard, we note that the trial court must consider evidence on a plea to the jurisdiction when evidence is necessary to determine the jurisdictional facts. *State v. Holland,* 221 S.W.3d 639, 643 (Tex.2007). Similarly, on appeal or other review, when reviewing a trial court's ruling on a challenge to its jurisdiction, we consider the plaintiff's pleadings and factual assertions, as well as any evidence in the record that is relevant to the jurisdictional issue. *City of*

*Elsa v. Gonzalez,* 325 S.W.3d 622, 625 (Tex.2010); *Bland Indep. Sch. Dist.,* 34 S.W.3d at 555. In the instant case, the pretrial court's order of remand does not reference the scope of its review, and the motion to remand, responses thereto, and briefing included the medical reports and initial pleadings. Accordingly, we reject any contention that the pretrial court abused its discretion by improperly constraining its scope of review.

**[23]** **[24]** Relators contend that we should apply the "time of filing" rule, applicable to federal removal cases, to this case. Under this rule, a court "measures all challenges to subject matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing—whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal." *See Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 570–71, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004). Relators also contend that "[s]imilar concerns involving jurisdiction are applicable to venue determination," and seek to invoke the rule that once a venue determination has been made, that determination is conclusive as to those parties and claims. *See* **\*823** *In re Team Rocket,* 256 S.W.3d 257, 260 (Tex.2008) (orig. proceeding). Relators contend that to hold otherwise would be to enable gamesmanship in litigation and would result in "retroactively" divesting the silica MDL of jurisdiction. Relators thus urge that "Texas [c]ourts do not tolerate artful pleadings to avoid procedural requirements." Contrary to relator's arguments, it "is well established that plaintiffs are the masters of their suit regarding the claims ... they choose to pursue." *Heard v. Moore,* 101 S.W.3d 726, 728 (Tex.App.-Texarkana 2003, pet. denied); *see also Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.,* 535 U.S. 826, 831, 122 S.Ct. 1889, 153 L.Ed.2d 13 (2002). The plaintiff is free to tailor her pleadings to eschew those claims which would mandate one forum instead of another forum for litigation of those well-pleaded claims. *See Holmes Group,* 535 U.S. at 831, 122 S.Ct. 1889.

Relators have offered no authority indicating that these doctrines should apply to the pretrial court's determination regarding whether or not a case has been properly transferred to a multidistrict litigation pretrial court. Accordingly, we decline to apply relators' interpretation of the federal "time of filing" rule or the requirement that there be only one venue ruling to the instant case. *Cf.* 28 U.S.C. § 1447(e) (contrary to relators' arguments about the federal rules, "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may ... permit joinder and remand the action to the State court.").

**[25]** **[26]** Relators contend that they qualify as "claimants" under chapter 90 of the Texas Civil Practice and Remedies Code. We disagree. Under Chapter 90 of the Texas Civil Practice and Remedies Code, a "claimant" is defined as "an exposed person and any person who is seeking recovery of damages for or arising from the injury or death of an exposed person." TEX. CIV. PRAC. & REM.CODE ANN. § 90.001 (West 2011). Under chapter 90, claimants must serve a detailed expert report "on each defendant." *See id.* § 90.004(a); *In re GlobalSanteFe Corp.,* 275 S.W.3d 477, 480 (Tex.2008). We generally avoid construing individual provisions of a statute in isolation from the statute as a whole, and we therefore read the statute as a whole and interpret it to give effect to each part of the statute. *See R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water,* 336 S.W.3d 619, 628 (Tex.2011); *City of San Antonio v. City of Boerne,* 111 S.W.3d 22, 25 (Tex.2003). In this case, the structure of chapter 90 indicates that the term "claimants" does not encompass "defendants." Accordingly, we agree with the pretrial court that "a third party plaintiff is unable to invoke the jurisdiction of the silica Multi–District Litigation Court."

Finally, relators contend that the underlying purposes of the silica MDL are fulfilled by retaining the case in the 333rd District Court.

> [W]hether a plaintiff or defendant raises a silica-related injury claim, the same common questions of fact exist in the case, and the same convenience of the parties and witnesses will be served by addressing the case in the pretrial court designed to handle such matters. And in this case, we all know, silica is at play—regardless of who alleges it or for what purpose.

Under Rule 13, the pretrial court has the authority to determine whether a case should be remanded to the trial court. *See* TEX.R. JUD. ADMIN. 13.5(e), 13.7. Trevino–Garcia has eliminated silica claims from her pleadings and has affirmatively disavowed any causes of action based on silica exposure. If the trial court or jury ultimately concludes that the case is, in fact, a **\*824** silica case, then Trevino–Garcia's claims will inevitably fail. Based upon the circumstances presented here, relators have not shown that the pretrial court

abused its discretion in determining that the purposes of the transfer do not apply to a case involving hard-metal exposure.

### VI. CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, the response, and the reply, is of the opinion that relators have not shown themselves entitled to the relief sought. Accordingly, the petition for writ of mandamus is DENIED. *See* TEX.R.APP. P. 52.8(a).

**All Citations**

398 S.W.3d 812

---

 © 2015 Thomson Reuters. No claim to original U.S. Government Works.

 © 2015 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

**Distinguished by** Parkview Nursing and Rehabilitation Center v. Texas Dept. of Aging and Disability Services, Tex.App.-Austin, January 10, 2014

175 S.W.3d 253
Supreme Court of Texas.

In re LIVING CENTERS OF TEXAS, INC., d/b/a Wharton Manor, Relator.

No. 04–0176. | Argued Sept. 9, 2004. | Decided Oct. 14, 2005.

**Synopsis**

**Background:** In original mandamus proceeding, nursing home challenged trial court's order to produce certain medical committee and peer review records and documents as to which privilege was claimed.

**Holdings:** The Supreme Court, Green, J., held that:

[1] nursing peer review privilege was unavailable;

[2] medical committee privilege extended to quality assessment and assurance committee;

[3] medical review committee privileges applied to nursing home;

[4] privilege was not waived; and

[5] nursing home made prima facie showing in support of privilege.

Relief ordered.

**Attorneys and Law Firms**

**\*254** Brandon David Mosley, Thomas C. Cowan and Tammy Savidge–Moore, Preston & Cowan, LLP, Houston, TX, for relator.

Bernard Klimist and Robert K. Piwetz, Law Office of Bernard T. Klimist, TX, Mark Anthony Davis, Law Office of Mark A. Davis, Vicotria, TX, for real party in interest.

**\*255** Joanne Summerhays, Clark, Thomas, Winters & Newton, Austin, TX, for Amicus Curiae Health Care Association.

Kevin H. Dubose, Alexander Dubose Jones & Townsend LLP, Houston, TX, for Amicus Curiae Brenda and Gerald Jeffcoat.

**Opinion**

Justice GREEN delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice O'NEILL, Justice WAINWRIGHT, Justice BRISTER, Justice MEDINA and Justice JOHNSON joined.

In this original mandamus proceeding, the relator Living Centers challenges the trial court's order to produce documents Living Centers argues are privileged. We hold the trial court abused its discretion when it determined that all documents were discoverable on the basis that the documents were not marked by Living Centers as privileged or the names of the documents, alone, did not indicate privilege. We conditionally grant the petition for writ of mandamus.

Faye Clepper was admitted to Wharton Manor Nursing Home (Living Centers) in 2001. In 2002, Ms. Clepper was transferred to the hospital where she died. Lee Cline, Ms. Clepper's survivor, sued Living Centers for medical malpractice under the Texas Wrongful Death Act and the Texas Survival Statute, alleging Ms. Clepper expired due to negligent nursing home care. After Cline served Living Centers with discovery, including requests for production, Living Centers withheld several documents, asserting the medical peer review privilege and the quality assessment and assurance (QA & A) privilege. Cline filed a motion to compel production.

To preserve and prove its privileges, Living Centers submitted four items to the trial court: a privilege log; the affidavit of Ms. Ross, the director of nursing; a representative sample of the documents to be reviewed *in camera;* and the QA & A Plan of the nursing home. Living Centers's privilege log began with a general statement that all listed documents were "[d]ocuments regarding the competency of the healthcare provider and the quality of care rendered." Each withheld document was also listed individually with the applicable privilege and a brief name, such as 'employee performance evaluation,' 'quality of care memo to committee,' etc. Ms. Ross's affidavit outlined the activities and responsibilities of Living Centers's medical

peer review and QA & A committees and explained that the privilege log documents were of two types: (1) information and reports prepared for the committees to review; and (2) reports generated by the committees themselves. Living Centers's QA & A Plan stated that documents prepared or reviewed by the QA & A committee should be stamped with a confidentiality statement: "This report has been generated as part of the facility's quality assessment and assurance process and constitutes confidential Quality Assessment and Assurance Committee records." However, not all the documents submitted for *in camera* review were stamped with this required indicia.

The trial court ordered Living Centers to produce any of the *in camera* documents that lacked a QA & A privilege stamp, as well as any of the privilege log documents that did not have the word "committee" in the name. The court of appeals, in a per curiam opinion, denied Living Centers's request for mandamus relief.

**I**

**[1]** Living Centers contends mandamus relief is appropriate when privileged documents are made discoverable by the trial court. We agree. In Texas, a person **\*256** may obtain mandamus relief from a court action only if (1) the trial court clearly abused its discretion and (2) the party requesting mandamus has no adequate remedy by appeal. *See In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 135–36 (Tex.2004); *In re Kuntz,* 124 S.W.3d 179, 180 (Tex.2003); *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992). Mandamus is appropriate to protect confidential documents from discovery. *See Mem'l Hosp.–The Woodlands v. McCown,* 927 S.W.2d 1, 12 (Tex.1996); *Barnes v. Whittington,* 751 S.W.2d 493, 496 (Tex.1988)(vacating, by mandamus, a protective order covering non-privileged documents). Since the documents at issue are alleged to be privileged, mandamus is appropriate if we conclude that they are privileged and have been improperly ordered disclosed.

**IIA**

There are four privileges implicated by Living Centers: the medical committee privilege, the medical peer review committee privilege, the nursing peer review committee privilege, and the quality assessment and assurance privilege. TEX. HEALTH & SAFETY CODE § 161.032; TEX.

OCC.CODE §§ 160.007, 303.006; 40 TEX. ADMIN. CODE § 19.1917 (1995)(Dep't of Aging and Disability Servs.). [1]

---

[1] Occupations Code sections 151.002, 303.001 and 303.006 were amended in 2003, but these amendments did not change the provisions applicable to this case. *See* Act of June 10, 2003, 78th Leg., R.S., ch. 202, § 1, 2003 Tex. Gen. Laws 833; Act of June 20, 2003, 78th Leg., R.S., ch. 876, § 11, 2003 Tex. Gen. Laws 2683; Act of June 20, 2003, 78th Leg., R.S., ch. 553, § 2.018, 2003 Tex. Gen. Laws 1893.

The medical committee privilege states:

> The records and proceedings of a medical committee are confidential and are not subject to court subpoena.
>
> ...
>
> (f) This section and Subchapter A, Chapter 160, Occupations Code, do not apply to records made or maintained in the regular course of business....

TEX. HEALTH & SAFETY CODE § 161.032. A "medical committee" "includes any committee" of health care entities including an extended care facility. *Id.* § 161.031(a)(5). The medical peer review privilege states:

> (a) Except as otherwise provided by this subtitle, each proceeding or record of a medical peer review committee is confidential, and any communication made to a medical peer review committee is privileged.

TEX. OCC.CODE § 160.007. A "medical peer review" committee is defined as:

> a committee of a health care entity ... that operates under written bylaws approved by the policy-making body or the governing board of the health care entity and is authorized to evaluate the quality of medical and health care services or the competence of physicians....

*Id.* § 151.002(a)(8). "Health care entity" includes nursing homes. *Id.* § 151.002(a)(5)(B). "Medical peer review" is defined as:

"Medical peer review" or "professional review action" means the evaluation of medical and health care services, including evaluation of the qualifications of professional health care practitioners and of patient care provided by those practitioners....

*Id.* § 151.002(a)(7). "Practitioner" is defined in the Occupations Code to "include physicians and surgeons." TEX. OCC.CODE § 151.002(b). [2] Section 151.052, entitled **\*257** "Exemptions," specifically excludes from the coverage of this subtitle (sections 151–165) nurses, dentists, optometrists, chiropractors, podiatrists, psychologists, and physical therapists. TEX. OCC.CODE § 151.052(a). Applying both statutes shows that any "records or proceedings" of a medical committee (including a medical peer review committee) are confidential, but the privilege of the medical peer review committee also includes "any communication made to" the committee. *Id.* § 160.007(a).

[2]   Chapters 151–165 are under the Subtitle "Physicians," also known as the "Medical Practice Act." Chapters 101–110 are under the previous Subtitle "Provisions Applying to Health Professions Generally." *See* TEX. OCC. CODE E chs. 101–110, 151–165.

This Court has analyzed the records, proceedings, and communications language of the medical committee privilege and the medical peer review committee privilege under Health & Safety Code section 161.032. *McCown,* 927 S.W.2d at 3; *Irving Healthcare Sys. v. Brooks,* 927 S.W.2d 12, 16 (Tex.1996); *In re Univ. of Tex. Health Ctr.,* 33 S.W.3d 822, 825 (Tex.2000) (per curiam). [3] In *McCown,* we discussed both the medical committee privilege and the medical peer review privilege, holding "the confidentiality provision of [the medical committee privilege] extends to initial credentialing by medical committees." *McCown,* 927 S.W.2d at 3–5. Other confidential documents under the medical peer review privilege are those "generated" by a committee or "prepared by or at the direction of the committee for committee purposes." *Id.* at 10. Privileged documents in *McCown* included the "minutes and recommendations" of medical committees, the hospital's inquiries about a physician to other sources and the sources' responses, and communications between the physician and the hospital. *Id.* at 11; *see Brownwood Reg'l Hosp. v. Eleventh Court of Appeals,* 927 S.W.2d 24, 27–28 (Tex.1996) (per curiam) (holding the minutes of the board of trustees and the credentialing and subsequent review of physicians were privileged, but "the bylaws, rules, and regulations" of the hospital staff were not).

[3]   The pertinent language in Health & Safety Code section 161.032 and Occupations Code section 160.007(formally art. 4495b) has not materially changed since the 1996 cases. *See* Act of May 21, 1999, 76th Leg., R.S., ch.909, §§ 5–6, 1999 Tex. Gen. Laws 3622, 3623–24.

This Court held similarly in *Brooks,* adding that simply passing a document through a peer review committee does not make it privileged. *Brooks,* 927 S.W.2d at 17, 18. Once again discussing both the medical committee privilege and the medical peer review privilege, in *In re University of Texas Health Center,* we held that evidence that "all of [the records] were created by or at the request of the committee in connection with its evaluation of medical care" was sufficient to make all of the documents privileged. *In re Univ. of Tex. Health Ctr.,* 33 S.W.3d at 825.

A statutory business records exception to both the medical committee and medical peer review committee privileges appears in Health & Safety Code section 161.032(f). TEX. HEALTH & SAFETY CODE § 161.032(f); *see Brooks,* 927 S.W.2d at 17, 18. It states, "This section and Subchapter A, Chapter 160, Occupations Code, do not apply to records made or maintained in the regular course of business by a hospital, ... or extended care facility." *Id.* § 161.032(f). "The reference to [§ 160.007 and § 161.032] in section 161.032 is a clear signal that records should be accorded the same treatment under both statutes in determining if they are made 'in the regular course of business.' " *McCown,* 927 S.W.2d at 11. Thus, business records excepted from the privileges include a "patient's medical records" and "business and administrative files and papers apart from **\*258** committee deliberations." *See Brooks,* 927 S.W.2d at 18; *McCown,* 927 S.W.2d at 10.

**[2]**   While the medical privileges are important in promoting free discussion in the evaluation of health care professionals and health services, the right to evidence is also important, and therefore privileges must be strictly construed. *McCown,* 927 S.W.2d at 7 ("privileges are to be narrowly construed"); *Univ. of Penn. v. Equal Employment Opportunity Comm'n,* 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) (privileges contravene the public's right to hear evidence and must be strictly construed).

**[3]** Like other privileges, the medical peer review privilege will be strictly interpreted. Because the definition of "practitioner" under the Occupations Code is so narrowly drawn, we hold the medical peer review privilege, insofar as employment evaluation is concerned, only applies to physicians. *See* TEX. OCC.CODE §§ 151.002(b), 151.052.

**[4]** In addition to employment evaluation, a medical peer review committee has the broader authority "to evaluate the quality of medical and health care services...." *Id.* § 151.002(a)(8). We construe this statement to allow medical peer review committees to retrospectively review health-care services provided by non-physicians as well, such as the administration of drugs by a nurse at the instruction of a physician. The purpose of medical peer review, as the plain language of the statutes makes clear, is protection of an evaluative process, not mere records.[4] *Cf. Jordan v. Fourth Court of Appeals,* 701 S.W.2d 644, 649 (Tex.1985) (holding that documents "not shown to be 'records and proceedings' of a hospital committee" are discoverable); *McCown,* 927 S.W.2d at 9 ("[T]he statutory privilege attaches to an investigation, review, '*or other deliberative proceeding*' of a medical committee.") (citation omitted).

[4]    Although apparently not at issue in this case, we note that contemporaneous records of deliberations by the peer review committee itself, including discussions about prospective committee operating procedures, would fall within the medical peer review privilege. These are the "proceedings" of a peer review committee.

**B**

**[5]** Separate from the medical committee and the medical peer review committee, a "nursing peer review committee" is the entity authorized to engage in nurse peer review. *See* TEX. OCC.CODE § 303.001(4). To qualify as a nursing peer review committee, nurses must comprise at least three-fourths of the membership of the committee. *Id.* § 303.003(a). The nursing home may only assert the nursing peer review privilege if the committee meets the narrow and rigorous membership requirements of section 303.003(b). According to Living Centers's QA & A Plan, its nursing review committee consists of the "Administrator, Director of Nursing, the Medical Director or other designated physician, a social service representative, a dietary representative, and a Certified Nursing Assistant, at a minimum. The Administrator may assign other facility staff to the council, if appropriate." Living Centers did not prove that three-fourths

of this membership consists of nurses as required by section 303.003(b); accordingly, the nursing peer review privilege does not apply in this case.

**C**

**[6]** Nursing facility QA & A committees are required by the Texas Administrative Code. Their membership requirements do not correspond with those of nursing peer review committees. 40 TEX. ***259** ADMIN. CODE § 19.1917(a) (1995)(Dep't of Aging and Disability Servs.). A nursing facility QA & A committee must consist of: "(1) the director of nursing services; (2) a physician designated by the facility; and (3) at least three other members of the facility's staff." *Id.* Because it is a committee in a health care entity and authorized to evaluate the quality of health care services, the QA & A committee also qualifies as a medical committee under the Texas Health and Safety Code, similar to a medical peer review committee. As a medical committee, QA & A committee documents are privileged, except as limited by the business records exception. TEX. HEALTH & SAFETY CODE §§ 161.031, 161.032.[5] According to Living Centers's bylaws, its QA & A committee membership meets the requirements of section 19.1917(a).

[5]    An additional privilege attaches to QA & A committees under the Texas Administrative Code: "Texas or the Secretary of Health and Human Services may not require disclosure of the records of the [QA & A] Committee except insofar as such disclosure is related to the compliance of the committee with the requirements of subsection (b) of this section." *Id.* § 19.1917(c). Subsection (b) requires quarterly meetings and development and implementation of plans to identify and correct quality deficiencies. *Id.* § 19.1917(b). This administrative code privilege was adopted effective May 1, 1995, 20 Tex. Reg. 2393 (1995), and was authorized by Health and Safety Code Chapter 242, Human Resources Code, Title 2, Chapters 22 and 32, and Texas Civil Statutes, Article 4413(502), § 16.19 Tex. Reg. 8401 (1994). The privilege bolsters the administrative code's stricture that "[g]ood faith attempts by the committee to identify and correct quality deficiencies may not be used as a basis for sanctions." 40 TEX. ADMIN. CODE § 19.1917(d).

**III**

**[7]** Living Centers argues that the various review committee privileges apply to nursing homes. We agree. Section 161.032(f) of the Health and Safety Code includes "extended care facility" in the list of facilities covered by the business records exception to the peer review privilege. TEX. HEALTH & SAFETY CODE § 161.032. We also note that "nursing home" is specifically designated as a "health care entity" under Occupations Code section 151.002(a)(5)(B). TEX. OCC.CODE § 151.002(a)(5)(b). Moreover, it was suggested in *Gulf Health Care v. Lerner* that the peer review privilege applies in the nursing home context. 932 S.W.2d 488, 488 (Tex.1996) (per curiam) (holding that nursing home privilege case should be reexamined in light of the 1996 privilege cases). Given the statutory language and our decision in *Lerner,* we hold that nursing homes are protected by the medical committee, medical peer review, and nursing peer review privileges to the same extent as hospitals.

## IV

Living Centers argues all its privilege log documents are privileged and the privileges cover credentialing and employment of all employees, including non-physicians. We disagree.

### A

Many of the documents at issue appear to fall outside the range of documents we have previously declared protected by the medical committee and medical peer review privileges. The categories of documents withheld by Living Centers include documents that concern licensing and investigation by state agencies of non-physicians and physicians, documents such as incident logs and reports referencing Ms. Clepper, governing body meeting minutes, personnel records including documentation of training of non-physicians and physicians, and documents used by Wharton Manor to resolve rule changes.

**\*260** **[8]** **[9]** The peer review privilege is intended to extend far enough to foster candid internal discussions for the purpose of making improvements in the quality of care, but not so far as to permit the concealment of "routinely accumulated information." *Whittington,* 751 S.W.2d at 496 ("the statute protects only the deliberative process"). "[T]he privilege [does] not prevent discovery of material that ha[s] been presented to a hospital committee if it [is] otherwise

available and 'offered or proved by means apart from the record of the committee.' " *McCown,* 927 S.W.2d at 10 ("[T]he privilege [does] not prevent discovery of material that ha[s] been presented to a hospital committee if it [is] otherwise available and 'offered or proved by means apart from the record of the committee.' ")(quoting *Texarkana Mem'l Hosp.,* 551 S.W.2d at 36).

**[10]** However, the source of nonprivileged material cannot be the peer review committee or any other entity or individual included within the protections of the committee privileges. Rather, a party must seek the documents and communications from a nonprivileged source. *Brooks,* 927 S.W.2d at 18. *Brooks* is properly read to privilege only the withholding of the fact that ordinary business records were reviewed by the committee, not the ordinary business records themselves. The peer review privilege protects the products of the peer review process: reports, records (including those produced for the committee's review as part of the investigative review process), and deliberations.

### B

We now address the status of the documents in the representative sample.

#### i

**[11]** Cline contends Living Centers waived its claim of privilege by failing to follow its own bylaws in not stamping a QA & A privilege statement on all documents claimed to be privileged. We disagree. Under the current rules of discovery, inadvertent disclosure does not automatically waive a claim of privilege. TEX.R. CIV. P. 193.3(d) & cmt. 4. Similarly, we hold a party's inadvertent failure to utilize its own internal procedure for identifying privileged documents does not automatically waive the privilege.

**[12]** However, the absence of the QA & A stamp as called for in the bylaws and the reason for its absence could be relevant. Therefore, the trial court would not abuse its discretion by weighing the lack of indicia, including the reason for its absence, along with Ross's testimony, the privilege log, and the sample documents, in determining whether Living Centers met its burden to demonstrate that the documents at issue were part of the peer review process. *See In re Carbo Ceramics, Inc.,* 81 S.W.3d 369,

373 (Tex.App.-Houston [14th Dist.] 2002, orig. proceeding) (noting that under Rule 193.4(a), if the trial court requires more than affidavits or evidence from a hearing, the party asserting privilege must produce the documents for *in camera* inspection).

### ii

Of all the sample documents submitted to this court, the only ones that may be privileged are the Incident Report QA & A logs and the Weekly Pressure Ulcer QA & A logs. As discussed, because the trial court limited its *in camera* review of the submitted documents to whether the documents were marked with a QA & A committee stamp, further review of the documents is needed. We leave the final determination of privilege for the sample Incident Report logs and Weekly Pressure Ulcer logs to the trial court.

 **\*261**  **[13]**  The remaining documents submitted are clearly outside the privilege because: (1) they do not pertain to physicians; (2) they pertain to nurses, but Living Centers did not establish a nurse peer review committee consistent with the statutory requirement; or (3) they are contemporaneous patient records made in the ordinary course of treatment and not created for committee review, evaluation, or investigation.

 **[14]**  The trial court's evidentiary determinations are reviewed for abuse of discretion and a trial court abuses its discretion when it fails to conduct an adequate *in camera* inspection of documents when such review is critical to evaluation of a privilege claim. *In re E.I. DuPont de Nemours and Co.,* 136 S.W.3d 218, 222 (Tex.2004)(per curiam). We find such an abuse of discretion in this case and direct the trial court to conduct further *in camera* review of those documents that may be privileged pursuant to this opinion.

### V

 **[15]**  Notwithstanding the applicable privileges in this case, Cline argues that Living Centers failed to meet its burden of proof and waived its claim of privilege by providing only a sample of the documents for *in camera* inspection. We disagree. A party may assert a privilege by withholding documents and stating in its response to a discovery request: "(1) information or material responsive to the request has been withheld, (2) the request to which the information or

material relates, and (3) the privilege or privileges asserted." TEX.R. CIV. P. 193.3(a). Upon request, the withholding party must serve a privilege log describing the withheld materials, without revealing privileged information, and asserting a specific privilege for each withheld item. *Id.* In addition to the privilege log, a prima facie case for the privilege must be established by testimony or affidavit. A prima facie case is required to prevent trial judges from being compelled to inspect untold numbers of documents. *In re E.I. DuPont de Nemours,* 136 S.W.3d at 223. Thereafter, if the trial court determines an *in camera* inspection is required, the court may order the documents tendered or the party asserting the privilege may, on its own initiative, tender the documents to the trial court.

In short, Texas law recognizes that a party asserting privilege may initiate its claim and establish a prima facie case of privilege by submitting evidence short of tendering each and every document. In this case, Living Centers produced a privilege log, along with a supporting affidavit, and tendered a representative sample of documents, which the trial court reviewed. Consequently, we conclude Living Centers satisfied its burden in asserting privilege by providing a representative sample of the documents at issue. This is not to say, however, that a representative sample of documents would be appropriate in every case and we leave that determination to the discretion of the trial court.

### VI

In this case, the trial court considered only the name of the documents or whether the documents were stamped with the QA & A indicia, and failed to consider other determining factors, including the purpose for which the documents were created. Upon further review, the trial court must determine: (1) whether the existing evidence establishes the privileged status of any documents without the need for an *in camera* inspection; (2) whether to conduct an *in camera* inspection of additional documents or categories of documents in light of this opinion; (3) whether the additional documents, if furnished, are **\*262** privileged; and (4) whether Living Centers, by failing to produce all documents for *in camera* inspection, failed to satisfy its burden to prove privilege. *See* TEX.R. CIV. P. 193.4; *In re DuPont de Nemours,* 136 S.W.3d at 223 (the burden to prove documents are privileged remains on the party asserting the privilege).

We conclude Living Centers is entitled to mandamus relief because the trial court abused its discretion by using only superficial indicators to deny Living Centers's privilege claim as to nearly all the documents at issue. We direct the trial court to vacate its discovery order of December 15, 2003, with respect to the requests for production and determine whether, upon further examination, any documents withheld by Living Centers may be privileged. We are confident the trial court will promptly comply. Our writ will issue only if it does not.

Justice WILLETT did not participate in the decision.

**All Citations**

175 S.W.3d 253, 49 Tex. Sup. Ct. J. 37

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

**Declined to Extend by** In re Credit Suisse First Boston Mortg. Capital, L.L.C., Tex.App.-Hous. (14 Dist.), June 17, 2008

148 S.W.3d 124
Supreme Court of Texas.

In re The PRUDENTIAL INSURANCE
CO. OF AMERICA and Four Partners,
L.L.C., d/b/a Prizm Partners, Relators.

No. 02–0690. | Argued April 2,
2003. | Decided Sept. 3, 2004.
| Rehearing Denied Dec. 3, 2004.

**Synopsis**

**Background:** Landlord petitioned for writ of mandamus to compel trial court to enforce tenant's waiver of right to jury trial in tenant's suit for rescission of lease.

**Holdings:** The Supreme Court, Hecht, J., held as a matter of first impression that:

[1] the lease provision waiving right to trial by jury was not contrary to the public policy expressed in jury trial rule and state constitutional provisions on trial by jury, access to the courts, and due course of law;

[2] the pre-suit waiver was enforceable; and

[3] landlord was entitled to mandamus relief.

Writ conditionally granted.

Phillips, C.J., dissented and filed opinion joined by O'Neill, Jefferson, and Schneider, JJ.

**Attorneys and Law Firms**

**\*127** Gino John Rossini, John A. Mackintosh Jr., G. Luke Ashley and Camille Knight, Thompson & Knight, L.L.P., Dallas, for Relators.

Luke Madole, Russell F. Nelms, Dena Jean Denooyer, Carrington Coleman Sloman & Blumenthal, Dallas, for Respondents.

**Opinion**

Justice HECHT delivered the opinion of the Court, in which Justice OWEN, Justice SMITH, Justice WAINWRIGHT, and Justice BRISTER joined.

The parties to a commercial lease agreed to waive trial by jury in any future lawsuit involving the lease, but when the tenant and its guarantors later sued for rescission and damages, they nevertheless demanded a jury trial. The trial court denied the landlord's motion to quash the demand. In this original proceeding, the landlord petitions for mandamus relief directing the trial court to enforce the parties' contractual jury waiver. We conditionally grant relief.

**I**

Francesco Secchi, a native of Italy, and his wife Jane, a native of England, moved to Dallas in 1981, where they have lived ever since and have become naturalized citizens. The Secchis have been in the restaurant business since 1983, and they (or entities controlled by them) own and operate two Dallas restaurants, Ferrari's and Il Grano. In October 2000, a limited partnership the Secchis controlled, Italian Cowboy Partners, Ltd., leased space in a Dallas shopping center for another restaurant. The lease agreement was the product of six months' active negotiations with the landlord, The Prudential Insurance Co. of America, and its agent, Four Partners L.L.C. doing business as Prizm Partners (collectively, "Prudential"). The Secchis had negotiated at least two other leases over the years, and they and their lawyer successfully insisted on a number of changes in Prudential's proposals. Offers went back and forth, and the agreement went through seven drafts. Francesco, whose formal education extended only to about the eighth grade, did not read the lease but left that to Jane, whose educational background was similar but whose English was better. Jane went over the agreement with their attorney but focused on the economic terms. When the Secchis and Prudential finally reached an understanding, Francesco signed the lease as manager of the partnership's general partner, Secchi, L.L.C. Prudential insisted that the Secchis personally guarantee the lease, and that agreement was also negotiated and changed by the Secchis before they signed it.

The lease contains the following paragraph:

***Counterclaim and Jury Trial.*** In the event that the Landlord commences any summary proceeding or action for nonpayment of rent or other charges provided for in this Lease, Tenant shall not interpose any counterclaim of any nature or description in any such proceeding or action. Tenant and Landlord both waive a trial by jury of any or all issues arising in any action or proceeding between the parties hereto or their **\*128** successors, under or connected with this Lease, or any of its provisions.

Prudential did not specifically point out this provision to the Secchis, and Jane testified that she never noticed it. She also testified that notwithstanding the clear meaning of the second sentence, she never intended to waive a jury trial in any future litigation. The guaranty agreement does not contain a similar waiver but does state that the Secchis agree to guarantee the tenant's "full and timely performance and observance of all the covenants, terms, conditions, provisions, and agreements" in the lease, and in the event of the tenant's default, to "faithfully perform and fulfill all of such terms, covenants, conditions, provisions, and agreements".

Some nine months after the lease was executed, the Secchis and their limited partnership (collectively, "ICP") sued Prudential in statutory county court, claiming in part that it was impossible to do business on the premises because of a persistent odor of sewage. Prudential counterclaimed for amounts allegedly due under the lease and guaranty. When the trial court notified the parties that a date for non-jury trial had been set, ICP filed a jury demand and paid the jury fee, as required by Rule 216 of the Texas Rules of Civil Procedure. [1] The court then notified the parties that a date for jury trial had been set. Prudential moved to quash the jury demand, based on the waiver in the lease. ICP responded that contractual jury waivers in general, and the waiver in the lease in particular, are unenforceable. Specifically, ICP asserted that:

[1] TEX.R. CIV. P. 216 ("**a. Request.** No jury trial shall be had in any civil suit, unless a written request for a jury trial is filed with the clerk of the court a reasonable time before the date set for trial of the cause on the non-jury docket, but not less than thirty days in advance. **b. Jury Fee.** Unless otherwise provided by law, a fee of ten dollars if in the district court and five dollars if in the county court must be deposited with the clerk of the court within the time for making a written request for a jury trial. The clerk shall promptly enter a notation of the payment of such fee upon the court's docket sheet.").

(1) in general, contractual jury waivers

(a) violate five provisions of the Texas Constitution —article I, sections 13 (open courts), [2] 15 (right to trial by jury), [3] 19 (due course of law), [4] and 29 (Bill of Rights inviolate), [5] and article V, section 10 (trial by jury in district courts), [6]

[2] TEX. CONST. art. I, § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.").

[3] *Id.* art. I, § 15 ("The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency.").

[4] *Id.* art. I, § 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.").

[5] *Id.* art. I, § 29 ("To guard against transgressions of the high powers herein delegated, we declare that everything in this 'Bill of Rights' is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void.").

[6] *Id.* art. V, § 10 ("In the trial of all causes in the District Courts, the plaintiff or defendant shall, upon application made in open court, have the right of trial by jury; but no jury shall be empaneled in any civil case unless demanded by a party to the case, and a jury fee be paid by the party demanding a jury, for such sum, and with such exceptions as may be prescribed by the Legislature."). ICP argues that this provision applies by statute in the statutory county court of Dallas County, where it filed suit. *See* TEX. GOV'T CODE § 25.0007 ("practice, procedure, rules of evidence, issuance of process and writs, and all other matters pertaining to the conduct of trials and hearings in the statutory county courts, other than the number of jurors, that involve those matters of concurrent jurisdiction with district courts are governed by the laws and rules pertaining to district courts"); *id.* § 25.0592(a) ("a county court at law in Dallas County has concurrent jurisdiction with the district court in civil cases regardless of the amount in controversy").

**\*129** (b) are inconsistent with Rule 216 of the Texas Rules of Civil Procedure (request and fee for jury trial), and

(c) are against the broader public policy expressed in all of those provisions; and

(2) the waiver of jury trial in the lease agreement

(a) was not knowingly and voluntarily made, and was therefore unenforceable, because the provision was inconspicuous and mislabeled, and Prudential had greater bargaining power than the Secchis,

(b) cannot be enforced in an action to rescind the lease agreement, and

(c) does not apply to the Secchis, who only guaranteed the lease.

After a hearing, the court denied the motion in a brief order without explanation.

Prudential petitioned the court of appeals for mandamus relief, which that court denied with a short memorandum opinion, 2002 WL 1608233, explaining only that "the relators have not shown themselves entitled to the relief requested." Prudential then petitioned for relief from this Court, and we agreed to hear argument. [7] When we learned that the trial judge who denied Prudential's motion to quash had left office, we abated our proceeding to allow the parties to seek reconsideration by the current judge, [8] as required by Rule 7.2(b) of the Texas Rules of Appellate Procedure. [9] After a hearing, the judge denied reconsideration, concluding in a lengthy order that contractual jury waivers are against public policy in Texas (ICP's argument (1)(c) above) and that the waiver in this case was unenforceable for all of the reasons urged by ICP (ICP's argument (2) above). The trial court's order was filed with this Court, and we reinstated the case to our active docket. [10]

[7]　46 Tex. Sup.Ct. J. 394 (Jan. 16, 2003).

[8]　46 Tex. Sup.Ct. J. 546 (Apr. 3, 2003).

[9]　TEX.R.APP. P. 7.2(b) (providing that if, during an original proceeding against a public officer in an official capacity, the officer ceases to hold office, the officer's successor is automatically substituted as a party and "the court must abate the proceeding to allow the successor to reconsider the original party's decision"). *See also Jampole v. Touchy,* 673 S.W.2d 569, 572 (Tex.1984); *State v. Olsen,* 163 Tex. 449, 360 S.W.2d 402, 403 (1962).

[10]　46 Tex. Sup.Ct. J. 794 (June 19, 2003).

## II

 **[1]**　As a rule, parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy. [11] ICP argues that a contractual **\*130** jury waiver does both. We consider each of ICP's arguments, first with respect to all such waivers, and then with respect to the waiver in this case.

[11]　*E.g., Lawrence v. CDB Servs., Inc.,* 44 S.W.3d 544, 553 (Tex.2001) ("[W]e have long recognized a strong public policy in favor of preserving the freedom of contract."); *Sonny Arnold, Inc. v. Sentry Sav. Ass'n,* 633 S.W.2d 811, 815 (Tex.1982) (recognizing "the parties' right to contract with regard to their property as they see fit, so long as the contract does not offend public policy and is not illegal"); *Wood Motor Co. v. Nebel,* 150 Tex. 86, 238 S.W.2d 181, 185 (1951) (" '[I]f there is one thing which more than another public policy requires it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by Courts of justice. Therefore, you have this paramount public policy to consider—that you are not lightly to interfere with this freedom of contract.' ") (quoting *Printing and Numerical Registering Co. v. Sampson,* 19 L.R.-Eq. 462, 465 (1875)); *Curlee v. Walker,* 112 Tex. 40, 244 S.W. 497, 498 (1922) ("The law recognizes the right of parties to contract with relation to property as they see fit, provided they do not contravene public policy and their contracts are not otherwise illegal.").

### A

 **[2]**　We need not dwell on ICP's argument that contractual jury waivers violate various provisions of the Texas Constitution, an argument the trial court did not endorse. The five provisions ICP cites guarantee various personal rights —trial by jury, [12] access to the courts, [13] due course of law, [14] and the Bill of Rights in general. [15] The provisions say nothing about whether and under what conditions such rights can be waived. For the most part, personal rights can be waived, at least under certain conditions. [16] ICP concedes that the right to trial by jury can be waived by failure to comply with the procedures prescribed by Rule 216.

Nothing in the constitutional provisions themselves suggests that parties are powerless to waive trial by jury under any other circumstances, before or after suit is filed.

12   TEX. CONST. art. I, § 15; art. V, § 10.

13   *Id.* art. I, § 13.

14   *Id.* art. I, §§ 13, 19.

15   *Id.* art. I (Bill of Rights), § 29 (excepting everything in Bill of Rights out of the general powers of government).

16   *E.g., Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 848–849, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986) (holding that respondents waived any right they may have had to the full trial of petitioner's counterclaims before an Article III court, noting that "personal constitutional rights that dictate the procedures by which civil and criminal matters must be tried" are subject to waiver, and citing as examples the rights to trial by jury in civil and criminal cases); *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703–704, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) (upholding a sanction consisting of a finding of personal jurisdiction, noting that there are a "variety of legal arrangements" by which a litigant may give "express or implied consent to the personal jurisdiction of the court" and that " 'parties to a contract may agree in advance to submit to the jurisdiction of a given court' ") (quoting *National Equip. Rental, Ltd. v. Szukhent,* 375 U.S. 311, 316, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964)); *Marin v. State,* 851 S.W.2d 275, 279 (Tex.Crim.App.1993) ("[O]ur system may be thought to contain rules of three distinct kinds: (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request. In the present context, the most important thing to remember about the Texas law of procedural default is that it only applies to the last category."), *overruled in part on other grounds by Cain v. State,* 947 S.W.2d 262, 264 (Tex.Crim.App.1997); *Brown v. McLennan County Children's Protective Servs.,* 627 S.W.2d 390, 393 (Tex.1982) (upholding a pre-suit waiver of citation in an affidavit relinquishing parental rights as a permissible exception, under the Family Code, to the otherwise applicable prohibition of such waivers); *Williams v. Williams,* 569 S.W.2d 867, 868–870 (Tex.1978) (upholding the validity of a premarital agreement to waive the constitutional and statutory homestead rights of a surviving spouse).

**[3]** ICP argues that Rule 216 prescribes the *only* way in which trial by jury can be waived, but it plainly does not. Rule 216 states that "[n]o jury trial shall be had in any civil suit, *unless* " a timely demand is made and jury fee paid. [17] By the rule's express language, those conditions are prerequisites to a jury trial, not guarantees of one.

17   TEX.R. CIV. P. 216(a) (emphasis added).

**[4]** ICP's principal argument, and the one accepted by the trial court, is that an agreement to waive trial by jury is contrary **\*131** to the public policy expressed in the constitutional provisions and Rule 216. This is so, ICP contends, because to allow such waivers gives parties the power to alter the fundamental nature of the civil justice system by private agreement. But parties already have power to agree to important aspects of how prospective disputes will be resolved. They can, with some restrictions, agree that the law of a certain jurisdiction will apply, [18] designate the forum in which future litigation will be conducted, [19] and waive in personam jurisdiction, a requirement of due process. [20] Furthermore, parties can agree to opt out of the civil justice system altogether and submit future disputes to arbitration. State and federal law not only permit but favor arbitration agreements. [21] ICP argues that while it does not offend public policy for parties to agree to a private dispute resolution method like arbitration, an agreement to waive trial by jury is different because it purports to manipulate the prescribed public justice system. We are not persuaded. Public policy that permits parties to waive trial altogether surely does not forbid waiver of trial by jury.

18   *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 677 (Tex.1990) ( "[Parties] may express in their agreement their own choice that the law of a specified jurisdiction apply to their agreement. Judicial respect for their choice advances the policy of protecting their expectations. This conflict of laws concept has come to be referred to as party autonomy. However, the parties' freedom to choose what jurisdiction's law will apply to their agreement cannot be unlimited. They cannot require that their contract be governed by the law of a jurisdiction which has no relation whatever to them or their agreement. And they cannot by agreement thwart or offend the public policy of the state the law of which ought otherwise to apply. So limited, party autonomy furthers the basic policy of contract law." (citation omitted)).

19   *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (Florida

forum selection clause on cruise line tickets); The *M/ S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 10–11, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (forum selection clause in towage contract). *See Haynsworth v. The Corporation.,* 121 F.3d 956, 961–964 (5th Cir.1997) (applying federal law in a diversity case); *My Cafe– CCC, Ltd. v. Lunchstop, Inc.,* 107 S.W.3d 860, 864–65 (Tex.App.-Dallas 2003, no pet.); *Holeman v. Nat'l Bus. Inst., Inc.,* 94 S.W.3d 91, 96 (Tex.App.-Houston [14th Dist.] 2002, pet. denied); *Barnett v. Network Solutions, Inc.,* 38 S.W.3d 200, 203 (Tex.App.-Eastland 2001, pet. denied); *Stobaugh v. Norwegian Cruise Line Ltd.,* 5 S.W.3d 232, 236 (Tex.App.-Houston [14th Dist.] 1999, pet. denied); *Southwest Intelecom, Inc. v. Hotel Networks Corp.,* 997 S.W.2d 322, 324 (Tex.App.-Austin 1999, pet. denied); *Abacan Technical Servs. Ltd. v. Global Marine Int'l Servs. Corp.,* 994 S.W.2d 839, 844 (Tex.App.- Houston [1st Dist.] 1999, no pet.); *Accelerated Christian Educ., Inc. v. Oracle Corp.,* 925 S.W.2d 66, 70–71 (Tex.App.-Dallas 1996, no writ); *Busse v. Pac.Cattle Feeding Fund No. 1, Ltd.,* 896 S.W.2d 807, 812 (Tex.App.-Texarkana 1995, writ denied); *Greenwood v. Tillamook Country Smoker, Inc.,* 857 S.W.2d 654, 656 (Tex.App.-Houston [1st Dist.] 1993, no writ); *Barnette v. United Research Co.,* 823 S.W.2d 368, 370 (Tex.App.- Dallas 1991, writ denied).

[20]   *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 704, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).

[21]   *E.g., Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Prudential Secs., Inc. v. Marshall,* 909 S.W.2d 896, 898 (Tex.1995).

ICP argues that contractual jury waivers are no different from cognovit or confession-of-judgment clauses by which a debtor agrees in the event of default on an obligation to waive notice of suit and to authorize the lender or its designee to confess judgment, which have long been outlawed in Texas.[22] In *Worsham v. Stevens,* **\*132** we held that a statute passed after such an agreement had been made nevertheless prevented its enforcement, operating not to impair the parties' contract but to deprive the creditor of a remedy previously available.[23] *Worsham* stands for the unsurprising proposition that the Legislature is not obliged to continue a remedy in effect merely because parties have contracted for it. No statute forbids contractual waivers of the right to trial by jury.

[22]   Act of March 18, 1885, 19th Leg., R.S., ch. 34, § 1, 1885 Tex. Gen. Laws 33, 33–34, *reprinted in* 9

H.P.N. GAMMEL, THE LAWS OF TEXAS 1822– 1897, 653, 653–654 (Austin, Gammel Book Co. 1898), now codified in *Tex. Fin.Code § 342.504* ("A lender may not take a confession of judgment or a power of attorney authorizing the lender or a third person to confess judgment or to appear for a borrower in a judicial proceeding.").

[23]   66 Tex. 89, 17 S.W. 404, 404–405 (1886).

ICP argues that trial by jury affords such fundamental private and public benefits that it cannot be waived by agreement. We certainly agree with ICP that juries in civil cases provide an important public participation in the civil justice system. But as ICP acknowledges, trial by jury can be waived and often is, and we do not see why waiver by agreement is more harmful to public interests than waiver simply because no party requests a jury. ICP argues that parties are more likely to trust the fairness of a jury verdict. But we think that parties who agree to trial before a judge have already indicated by their choice that they prefer judicial resolution of the dispute.

 [5]   [6]   ICP argues that if contractual jury waivers are permitted, some parties will attempt to take unfair advantage of others, using bargaining position, sophistication, or other leverage to extract waivers from the reluctant or unwitting. We agree, of course, that agreements made in such circumstances cannot be enforced. As we have said in another context, a waiver of constitutional rights must be voluntary, knowing, and intelligent, with full awareness of the legal consequences.[24] We echo the United States Supreme Court's admonition that "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."[25] Under those conditions, however, a party's right to trial by jury is afforded the same protections as other constitutional rights.

[24]   *Brown v. McLennan County Children's Protective Servs.,* 627 S.W.2d 390, 393 (Tex.1982).

[25]   *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

Furthermore, if parties are willing to agree to a non-jury trial, we think it preferable to enforce that agreement rather than leave them with arbitration as their only enforceable option. By agreeing to arbitration, parties waive not only their right to trial by jury but their right to appeal, whereas by agreeing to waive only the former right, they take advantage of the reduced expense and delay of a bench trial, avoid the expense

of arbitration, and retain their right to appeal. The parties obtain dispute resolution of their own choosing in a manner already afforded to litigants in their courts. Their rights, and the orderly development of the law, are further protected by appeal. And even if the option appeals only to a few, some of the tide away from the civil justice system to alternate dispute resolution is stemmed.

 **[7]** Finally, we note that nearly every state court that has considered the issue has held that parties may agree to waive their right to trial by jury in certain future disputes, [26] including the supreme courts in **\*133** Alabama, [27] Connecticut, [28] Missouri, [29] Nevada, [30] and Rhode Island. [31] The same is true of federal courts. [32] One Texas court of appeals has also reached this conclusion. [33] Only one state supreme court, the Supreme Court of Georgia, has reached a contrary conclusion. [34] We believe this overwhelming weight of authority is correct.

[26]     *See generally* Jay M. Zitter, _Contractual Jury Trial Waivers in State Civil Cases,_ 42 A.L.R.5th 53, 71 (1996) ("[T]he vast majority of courts have held, at least in the abstract, that if the parties entered into a contract containing a jury trial waiver clause, such clause will be enforced as not being unreasonable. Moreover, some of these courts have observed that these jury trial waivers are appropriate since in many commercial transactions, advance assurance that any disputes that might arise would be subject to expeditious resolution in a court trial would best serve the needs of the contracting parties as well as those of the overburdened judicial system. However, such view is qualified by the additional statement in many cases that since the right to a jury trial is highly favored, independent contractual waivers of jury trials, entered into independent of specific litigation, will be strictly construed and will not be lightly inferred or extended." (internal references omitted)).

[27]     _Mall, Inc. v. Robbins,_ 412 So.2d 1197, 1200 (Ala.1982) (applied in _Ex parte Cupps,_ 782 So.2d 772 (Ala.2000)).

[28]     _L & R Realty v. Connecticut Nat'l Bank,_ 246 Conn. 1, 715 A.2d 748, 754–755 (1998).

[29]     _Malan Realty Investors, Inc. v. Harris,_ 953 S.W.2d 624, 626–627 (Mo.1997) (en banc) (per curiam).

[30]     _Lowe Enters. Residential Partners, L.P. v. Eighth Judicial Dist. Court,_ 118 Nev. 92, 40 P.3d 405 (2002).

[31]     _Rhode Island Depositors Econ. Prot. Corp. v. Coffey and Martinelli, Ltd.,_ 821 A.2d 222, 226 (R.I.2003).

[32]     *See, e.g.,* _Leasing Serv. Corp. v. Crane,_ 804 F.2d 828, 832 (4th Cir.1986) ("The seventh amendment right is of course a fundamental one, but it is one that can be knowingly and intentionally waived by contract."); _K.M.C. Co. v. Irving Trust Co.,_ 757 F.2d 752, 755 (6th Cir.1985) ("It is clear that the parties to a contract may by prior written agreement waive the right to jury trial."); _Rodenbur v. Kaufmann,_ 320 F.2d 679, 683 (D.C.Cir.1963) ("Without pausing to explore the many nuances inherent in varying situations, we observe simply that a jury trial lawfully may be waived, both before and after a given cause of action shall arise."); _RDO Fin. Servs. Co. v. Powell,_ 191 F.Supp.2d 811, 813 (N.D.Tex.2002) ( "Although the right of trial by jury in civil actions is protected by the Seventh Amendment to the Constitution, that right, like other constitutional rights, may be waived by prior written agreement of the parties."); *see generally Debra T. Landis, _Contractual Jury Trial Waivers in Federal Civil Cases,_ 92 A.L.R. Fed. 688 (2003)* ("The cases herein uniformly support the view that, with knowing and voluntary consent, the right to a jury trial in a federal civil action may be waived by a contract that was not made in, or as an incident of, any particular litigation.").

[33]     _In re Wells Fargo Bank Minnesota N.A.,_ 115 S.W.3d 600, 606–608 (Tex.App.-Houston [14 Dist.] 2003).

[34]     _Bank South, N.A. v. Howard,_ 264 Ga. 339, 444 S.E.2d 799 (1994).

**B**

 **[8]** ICP argues that even if some contractual jury waivers are enforceable, for three reasons the one in this case is not.

First, ICP contends, and the trial court found, that ICP's assent to a commercial lease that included a sentence waiving trial by jury does not satisfy the high standard that a waiver of constitutional rights must be voluntary, knowing, and intelligent, with full awareness of the legal consequences [35] because—

[35]     _Brown v. McLennan County Children's Protective Servs.,_ 627 S.W.2d 390, 393 (Tex.1982).

 • the sentence was in the 53rd paragraph of a 67–paragraph document, 7 pages before the signature page;

• the paragraph was misleadingly captioned "Jury Trial" instead of "Jury Waiver";

**\*134** • the bargaining power of Prudential, with "assets exceeding a quarter of a trillion dollars", greatly exceeded that of the Secchis, "neither of whom were educated beyond the 8th grade, [and who] are immigrants to the United States who operate two local restaurants"; and

• the Secchis did not read the jury waiver, were not told that it was included, and did not bargain for it.

The Secchis admitted, however, that they had negotiated commercial leases before, that they had previously been represented by counsel, that they had legal counsel in their negotiations with Prudential, that Jane went over this lease with their lawyer, and that they negotiated a number of changes with Prudential over a period of six months.

Based on these facts, all of which are undisputed, we conclude that ICP's waiver of trial by jury was knowing and voluntary as a matter of law. The waiver was crystal clear, and ICP does not contend otherwise. While it came toward the end of a long document, it was not printed in small type or hidden in lengthy text. The paragraph was captioned in bold type, and though "jury waiver" might have been clearer than "jury trial", we do not agree that the caption could reasonably have diverted the Secchis' attention or misled them into thinking that the provision meant the opposite of what it clearly said. Assuming that a jury waiver provision must be conspicuous, an issue we need not decide here, this one was. [36] Although the Secchis did not read the paragraph, they are charged with knowledge of all of the lease provisions absent some claim that they were tricked into agreeing to them, [37] which they do not assert. In sum, we conclude that the Secchis' waiver was knowing and voluntary.

[36]    *Cf.* TEX. BUS. & COM.CODE § 1.201(b)(10) (stating that for purposes of the Uniform Commercial Code, "conspicuous" means "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is 'conspicuous' or not is a decision for the court.' ").

[37]    *See* <u>*Town N. Nat'l Bank v. Broaddus,* 569 S.W.2d 489, 492 (Tex.1978)</u>; <u>*Estes v. Republic Nat'l Bank,* 462 S.W.2d 273, 276 (Tex.1970)</u> ("the general rule is that in the absence of a showing of fraud or imposition, a party's failure to read an instrument before signing it is

not a ground for avoiding it"); <u>*Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex.1962)</u> ("parties to a contract have an obligation to protect themselves by reading what they sign").

 **[9]**    Next, ICP alleges that it was fraudulently induced to execute the lease due to Prudential's concealment of the fact that the premises suffered a recurring odor of sewage. It would be anomalous, ICP argues, to conclude that it was entitled to rescission and yet enforce the jury waiver the lease contains. Accordingly, ICP argues, a jury waiver should not be enforced when it is part of an agreement that is alleged to have been fraudulently induced.

 **[10]**    Any provision relating to the resolution of future disputes, included as part of a larger agreement, would rarely be enforced if the provision could be avoided by a general allegation of fraud directed at the entire agreement. The purpose of such provisions—to control resolution of future disputes—would be almost entirely defeated if the assertion of fraud common to such disputes were enough to bar enforcement. The United States Supreme Court has explained that arbitration and forum-selection clauses should be enforced, even if they are part of an agreement alleged to have been fraudulently induced, as long as the specific clauses were not themselves the product of fraud or coercion. **\*135**  [38] ] We have applied the same rule in the context of arbitration. [39] The Supreme Court of Connecticut has taken the same approach to contractual jury waivers. [40] We agree that the rule should be the same for all similar dispute resolution agreements.

[38]    <u>*Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 519, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)</u>; *see also* <u>*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403– 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)</u>.

[39]    <u>*In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 756 (Tex.2001)</u>.

[40]    <u>*L & R Realty v. Connecticut Nat'l Bank,* 246 Conn. 1, 715 A.2d 748, 755 (1998)</u>.

Prudential and the Secchis agreed that any disputes that might arise between them should be resolved without a jury. They did not except disputes over whether the lease was fraudulently induced. The Secchis do not argue that the jury waiver itself was fraudulently induced. Accordingly, their claim for rescission does not preclude enforcement of the jury waiver.

[11]  [12]  [13]  Finally, the Secchis argue that because the jury waiver is contained in the lease only and not in their guaranty, it cannot be enforced against them. Prudential argues that the jury waiver is incorporated into the guaranty by the Secchis' promise in the latter to "faithfully perform and fulfill all of [the] terms, covenants, conditions, provisions, and agreements" of the lease in the event of the partnership's default. We agree with Prudential. We have said before that "an unsigned paper may be incorporated by reference in the paper signed by the person sought to be charged. The language used is not important provided the document signed ... plainly refers to another writing." [41] Furthermore, agreements executed at the same time, with the same purpose, and as part of the same transaction, are construed together. [42] Applying these rules, and construing the guaranty's express terms, we conclude that the guaranty incorporated the jury waiver in the lease. We note that at least two other supreme courts have reached the same conclusion in similar circumstances. [43]

41    *Owen v. Hendricks,* 433 S.W.2d 164, 166 (Tex.1968).

42    *Jim Walter Homes, Inc. v. Schuenemann,* 668 S.W.2d 324, 327 (Tex.1984).

43    *L & R Realty v. Connecticut Nat'l Bank,* 246 Conn. 1, 715 A.2d 748, 756 n. 11 (1998); *Rhode Island Depositors Econ. Prot. Corp. v. Coffey and Martinelli, Ltd.,* 821 A.2d 222, 227 (R.I.2003).

### III

[14]  Having concluded that the parties' contractual jury waiver is enforceable, we turn to whether Prudential is entitled to relief by mandamus. Prudential must meet two requirements. One is to show that the trial court clearly abused its discretion. [44] We have concluded as a matter of law that Prudential was entitled to enforcement of the jury waiver. Since "[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts", [45] even when the law is unsettled, [46] the trial court's refusal to enforce the jury waiver was a clear abuse of discretion. Thus, Prudential has met the first requirement.

44    E.g., *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992).

45    *Id.*

46    *Huie v. DeShazo,* 922 S.W.2d 920, 927–928 (Tex.1996) (quoting *Walker v. Packer,* 827 S.W.2d at 840).

[15]  [16]  The other requirement Prudential must meet is to show that it has no **\*136** adequate remedy by appeal. [47] The operative word, "adequate", has no comprehensive definition; it is simply a proxy for the careful balance of jurisprudential considerations that determine when appellate courts will use original mandamus proceedings to review the actions of lower courts. These considerations implicate both public and private interests. Mandamus review of incidental, interlocutory rulings by the trial courts unduly interferes with trial court proceedings, distracts appellate court attention to issues that are unimportant both to the ultimate disposition of the case at hand and to the uniform development of the law, and adds unproductively to the expense and delay of civil litigation. Mandamus review of significant rulings in exceptional cases may be essential to preserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings. An appellate remedy is "adequate" when any benefits to mandamus review are outweighed by the detriments. When the benefits outweigh the detriments, appellate courts must consider whether the appellate remedy is adequate.

47    *Walker,* 827 S.W.2d at 840.

[17]  This determination is not an abstract or formulaic one; it is practical and prudential. It resists categorization, as our own decisions demonstrate. Although this Court has tried to give more concrete direction for determining the availability of mandamus review, rigid rules are necessarily inconsistent with the flexibility that is the remedy's principal virtue. Thus, we wrote in *Walker v. Packer* that "an appellate remedy is not inadequate merely because it may involve more expense or delay than obtaining an extraordinary writ." [48] While this is certainly true, the word "merely" carries heavy freight. In *In re E.I. duPont de Nemours & Co.,* we concluded that defending the claims of more than 8,000 plaintiffs in litigation that would last for years was not *mere* expense and delay, and that mandamus review of the denial of duPont's special appearance was justified, even though duPont could eventually appeal and did not appear to be in any danger of succumbing to the burden of the litigation. [49] In *Travelers Indemnity Co. v. Mayfield,* we granted mandamus review of

an order requiring a carrier to pay the plaintiff's attorney fees as incurred in a compensation case, even though the carrier could have appealed from the final judgment and won recovery for the amounts paid, because the order not only cost the carrier money but "radically skew[ed] the procedural dynamics of the case"[50] by requiring the defendant to fund the plaintiff's prosecution of her claims. In *In re Masonite Corp.,* the trial court on its own motion and without any authority whatever, split two cases into sixteen and transferred venue of fourteen of them to other counties.[51] We held that the defendants were not required to wait until appeal to complain:

[48]   *Walker,* 827 S.W.2d at 842.

[49]   92 S.W.3d 517, 523–524 (Tex.2002).

[50]   923 S.W.2d 590, 595 (Tex.1996).

[51]   997 S.W.2d 194, 195–196 (Tex.1999).

*Walker* does not require us to turn a blind eye to blatant injustice nor does it mandate that we be an accomplice to sixteen trials that will amount to little more than a fiction. Appeal may be adequate for a particular party, but it is **\*137** no remedy at all for the irreversible waste of judicial and public resources that would be required here if mandamus does not issue.[52]

[52]   *Id.* at 198.

These cases, among a great many others that could be cited, serve to illustrate that whether an appellate remedy is "adequate" so as to preclude mandamus review depends heavily on the circumstances presented and is better guided by general principles than by simple rules.[53]

[53]   *See also* 16 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3934.1, at 572, 574 (1996) (stating that "[w]rit review that responds to occasional special needs provides a valuable ad hoc relief valve for the pressures that are imperfectly contained by the statutes permitting appeals from final judgments and interlocutory orders", and that "[i]mportant questions of procedure often are difficult to review by appeal, and at times may demand appellate intervention to secure uniformity between different judges, or simply to bring the balancing perspective that appellate review is intended to provide in controlling the practices as well as the substantive decisions of trial courts.").

[18]   Nor is the consideration whether to grant mandamus review confined to private concerns. No one suggested in *Masonite* that any individual party would suffer more by waiting to complain on appeal of the venue order than would any other party complaining of any other venue order in any other case. Two factors drove our decision in *Masonite*: the complete lack of authority for the trial court's order, and the impact on the legal system. We simply could not justify putting the civil justice system itself to the trouble of grinding through proceedings that were certain to be "little more than a fiction." The trial court's ruling in *Travelers* was novel but might easily have become a repeated error. Either way, the error was clear enough, and correction simple enough, that mandamus review was appropriate.

[19]   [20]   [21]   [22]   Prudent mandamus relief is also preferable to legislative enlargement of interlocutory appeals.[54] The unavailability of mandamus relief increases the pressure for expanded interlocutory appeals. For example, when this Court refused to review venue decisions by mandamus,[55] the Legislature responded by authorizing mandamus review of all decisions involving mandatory venue provisions.[56] When we held that the denial of a special appearance would ordinarily not warrant mandamus review,[57] the Legislature responded by creating an interlocutory appeal from the denial of a special appearance.[58] When questions arose concerning **\*138** the availability of mandamus to review the sufficiency of expert reports required in medical malpractice cases,[59] the Legislature responded by creating an interlocutory appeal from the denial of dismissals of such cases for insufficient expert reports.[60] Interlocutory appeals lie as of right and must be decided on the merits, increasing the burden on the appellate system. "Mandamus," on the other hand, "is an extraordinary remedy, not issued as a matter of right, but at the discretion of the court. Although mandamus is not an equitable remedy, its issuance is largely controlled by equitable principles."[61] As a selective procedure, mandamus can correct clear errors in exceptional cases and afford appropriate guidance to the law without the disruption and burden of interlocutory appeal. Appellate courts must be mindful, however, that the benefits of mandamus review are easily lost by overuse.

[54]   *See also* George C. Pratt, *Extraordinary Writs,* in 19 MOORE'S FEDERAL PRACTICE § 204.01[2][b], at 204–7 (3d ed. 2004) ("In order to meet the demands

of justice in individual cases, discretionary review is preferable to enlarging by judicial interpretation the categories of interlocutory orders that are appealable as of right. General categories of orders that are appealable as of right often include many orders that should not be appealable at all. Review by extraordinary writ allows the circuit courts to retain the final judgment rule and avoid piecemeal appeals, yet be able to respond to the exceptional case that should be reviewed prior to final judgment. Thus, [mandamus] affords an avenue of relief to litigants and a tool for the courts to supervise the proper administration of justice.").

55    *Polaris Inv. Mgmt. Corp. v. Abascal,* 892 S.W.2d 860 (Tex.1995) (per curiam).

56    Act of May 8, 1995, 74th Leg., R.S., ch. 138, § 5, 1995 Tex. Gen. Laws 978, 981 (codified as TEX. CIV. PRAC. & REM.CODE § 15.0642).

57    *Canadian Helicopters Ltd. v. Wittig,* 876 S.W.2d 304 (Tex.1994).

58    Act of May 27, 1997, 75th Leg., R.S., ch. 1296, 1997 Tex. Gen. Laws 4936 (codified as TEX. CIV. PRAC. & REM.CODE § 51.014(a)(7)).

59    *See In re Woman's Hosp.,* 141 S.W.3d 144 (Tex.2004) (Owen, J., dissenting).

60    TEX. CIV. PRAC. & REM.CODE § 51.014(9).

61    *Rivercenter Assocs. v. Rivera,* 858 S.W.2d 366, 367 (Tex.1993).

**[23]**    The issue before us in the present case—whether a pre-suit waiver of trial by jury is enforceable—fits well within the types of issues for which mandamus review is not only appropriate but necessary. It is an issue of law, one of first impression for us, but likely to recur (it has already arisen in another case in the court of appeals, also on petition for mandamus [62] ). It eludes answer by appeal. In no real sense can the trial court's denial of Prudential's contractual right to have the Secchis waive a jury ever be rectified on appeal. If Prudential were to obtain judgment on a favorable jury verdict, it could not appeal, and its contractual right would be lost forever. If Prudential suffered judgment on an unfavorable verdict, Prudential could not obtain reversal for the incorrect denial of its contractual right "unless the court of appeals concludes that the error complained of ... probably caused the rendition of an improper judgment". [63] Even if Prudential could somehow obtain reversal based on the denial of its contractual right, it would already have lost a part of it by having been subject to the procedure it agreed to waive.

62    *In re Wells Fargo Bank Minnesota N.A.,* 115 S.W.3d 600, 606–608 (Tex.App.-Houston [14 Dist.] 2003).

63    TEX.R.APP. P. 44.1(a)(1). *Cf. Mercedes–Benz Credit Corp. v. Rhyne,* 925 S.W.2d 664, 667 (Tex.1996) ("The wrongful denial of a jury trial is harmful when the case contains material fact questions."); *Halsell v. Dehoyos,* 810 S.W.2d 371, 372 (Tex.1991) (per curiam) ("A refusal to grant a jury trial is harmless error only if the record shows that no material issues of fact exist and an instructed verdict would have been justified."); *William. D. Cleveland & Sons v. Smith,* 102 Tex. 490, 119 S.W. 843, 843–844 (1909) (same).

For this latter reason, we have granted mandamus relief for the trial court's wrongful refusal to compel arbitration. In *Jack B. Anglin Co. v. Tipps,* we stated that even if the refusal were eventually corrected on appeal, the party seeking arbitration "would be deprived of the benefits of the arbitration clause it contracted for, and the purpose of providing a rapid, inexpensive alternative to traditional litigation would be defeated." [64] This is at least as true, perhaps more so, when the benefit denied is a non-jury trial.

64    842 S.W.2d 266, 272–273 (Tex.1992).

Only if a contractual waiver of trial by jury is enforced in the trial court can its propriety effectively be reviewed on appeal. The denial of trial by jury is harmless error only if there are no material fact **\*139** issues to submit to a jury. [65] But the denial of trial by jury is also reviewable by mandamus. [66] A sentence in our opinion in *General Motors Corp. v. Gayle* suggests that this is not true, [67] but we granted mandamus in that case to correct the trial court's denial of a jury trial, [68] and we cited without disapproval three courts of appeals that we said "ha[d] reviewed jury trial orders by mandamus." [69] To afford relief for the denial of a jury trial both by mandamus and by appeal, and to deny relief by either means for the refusal to enforce a jury waiver, unacceptably contorts review of the issue. Mandamus relief in a situation like this, in Professor Charles Alan Wright's words, "provides a valuable ad hoc relief valve for the pressures that are imperfectly contained by the statutes permitting appeals from final judgments and interlocutory orders." [70]

65    *See Halsell v. Dehoyos,* 810 S.W.2d 371, 372 (Tex.1991) (per curiam).

66 *See In re Bradle,* 83 S.W.3d 923, 928 (Tex.App.-Austin 2002, orig. proceeding), pet. for mandamus denied in *In re Rosiland Roemer,* No. 02–0935, 46 Tex. Sup.Ct. J. 232 (Dec. 12, 2002); *Granger v. Folk,* 931 S.W.2d 390, 394 (Tex.App.-Beaumont 1996, orig. proceeding), pet. for mandamus denied in *Folk v. Ninth Court of Appeals,* No. 97–0039, 40 Tex. Sup.Ct. J. 472 (April 18, 1997); *Union Pac. Fuels, Inc. v. Johnson,* 909 S.W.2d 130, 133 (Tex.App.-Houston [14th Dist.] 1995, orig. proceeding); *Rosenthal v. Ottis,* 865 S.W.2d 525, 529 (Tex.App.-Corpus Christi 1993, orig. proceeding).

67 951 S.W.2d 469, 477 (Tex.1997) ("Because the denial of a jury trial can be reviewed by ordinary appeal, mandamus is generally not available to review such a ruling." (citations omitted)).

68 *Id.* (stating that because we had already reviewed one of the trial court's interlocutory rulings by mandamus, "the interests of judicial economy dictate that we should also remedy the trial court's denial of the right of jury trial by mandamus").

69 *Id.* n. 1 ("Since we reaffirmed in *Walker v. Packer,* 827 S.W.2d 833, 842 (Tex.1992), that mandamus is unavailable where there is an adequate remedy by appeal, at least three courts of appeals have reviewed jury trial orders by mandamus. *See Granger v. Folk,* 931 S.W.2d 390, 394 (Tex.App.-Beaumont 1996, orig. proceeding); *Union Pac. Fuels, Inc. v. Johnson,* 909 S.W.2d 130, 133 (Tex.App.-Houston [14th Dist.] 1995, orig. proceeding); *Rosenthal v. Ottis,* 865 S.W.2d 525, 529 (Tex.App.-Corpus Christi 1993, orig. proceeding). We express no opinion on the correctness of these decisions.").

70 16 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3934.1, at 572 (1996).

Finally, we note that other courts have granted mandamus relief to enforce contractual jury waivers,[71] including the only other Texas court to have addressed the issue.[72] We are not aware of a published decision denying such relief.

71 *E.g., Lowe Enters. Residential Partners, L.P. v. Eighth Judicial Dist. Court,* 118 Nev. 92, 40 P.3d 405, 408 (2002); *Trizec Props. Inc. v. Superior Court,* 229 Cal.App.3d 1616, 280 Cal.Rptr. 885, 886–87 (1991).

72 *In re Wells Fargo Bank Minnesota N.A.,* 115 S.W.3d 600, 606–608 (Tex.App.-Houston [14 Dist.] 2003).

The dissent argues that Prudential has an adequate remedy by appeal because it can "seek damages directly from the breaching party as in any other contract case."[73] But a separate lawsuit is simply not an *appellate* remedy. Even if it were, Prudential could not vindicate its contractual rights by a suit for damages if it won the lease-dispute case. In that situation, Prudential could not appeal from a favorable judgment and could not collaterally attack in a separate suit the trial court's refusal to enforce the jury waiver. To deny Prudential enforcement of the jury **\*140** waiver by mandamus is to deny it any remedy at all. The dissent cannot point to any authority that would allow the suit for damages it hypothesizes or consider it a viable alternative to mandamus relief.

73 *Post* at 141.

The dissent suggests that mandamus relief should not be used to enforce contractual rights, but we used it for precisely that purpose only recently in *In re Allstate County Mutual Insurance Co.* to enforce the parties' agreement to submit to an appraisal process for determining the value of a vehicle claimed to be a total loss.[74]

74 85 S.W.3d 193 (Tex.2002).

The dissent states that we took "the United States Supreme Court's pronouncement that appellate delays defeated the 'core purpose' of contracts to arbitrate" as a "mandate ... to provide an extraordinary remedy."[75] Perhaps so, but the Supreme Court's "pronouncement" was also a statement of fact: lawsuits followed by appeals defeat the core purpose of arbitration agreements. For exactly the same reason, trial to a jury followed by appeal, if one were even allowed, defeats the reasons for agreeing to waive a jury in the first place.

75 *Post* at 142.

The dissent argues that "authorizing mandamus relief to enforce a contractual jury waiver while relegating a party to its appellate remedy when denied its constitutional right to a jury trial" creates a procedural anomaly.[76] If the premise were true, an anomaly would exist; but the premise is not true. We have never held that the denial of a jury trial, which can certainly be reviewed by appeal, cannot also be reviewed by mandamus. As we have already noted, we have faced the issue only once, in *General Motors Corp. v. Gayle,* and while one sentence of that opinion states that mandamus is "generally not available" to review the denial of a jury trial,[77]

we nevertheless directed the trial court to abort or mistry the nonjury trial it had commenced and to set the case on its jury docket. [78] We also cited three court of appeals cases that had "reviewed jury trials by mandamus." [79] *General Motors* does not preclude review of the denial of a jury trial by mandamus.

[76]    *Post* at 142.

[77]    951 S.W.2d at 477.

[78]    *Id.*

[79]    *Id.* n. 1.

Finally, the dissent argues that "[e]ven if parties may freely waive their right to trial by jury, there is no public policy reason for encouraging them to do so." [80] Of course, enforcing an agreement is not the same as encouraging parties to make it. By enforcing contractual jury waivers, we no more encourage them than we encourage arbitration by enforcing arbitration agreements. Parties are free to agree to such remedies as they choose, and as we have noted, they may have good reasons for agreeing to waive a jury trial. What the dissent ignores is that there is a compelling public policy reason to enforce legal agreements freely made. The dissent does not find the jury trial waiver in this case illegal or contrary to public policy, yet it would deny all viable means of enforcement.

[80]    *Post* at 142.

\* \* \* \* \*

For these reasons, we direct respondent, the Honorable Sally Montgomery, to vacate her order of June 6, 2003, and the prior order of June 19, 2002, to grant Prudential's motion to quash the jury demand and payment of jury fee, and to **\*141** return the case to the nonjury docket. We are confident she will promptly comply. Our writ will issue only if she does not.

Chief Justice PHILLIPS filed a dissenting opinion, in which Justice O'NEILL, Justice JEFFERSON, and Justice SCHNEIDER joined.

Chief Justice PHILLIPS, joined by Justice O'NEILL, Justice JEFFERSON, and Justice SCHNEIDER, dissenting.
Mandamus is an extraordinary remedy available "only in situations involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). To obtain mandamus relief, the relator must satisfy a two-prong test. Relator must demonstrate (1) that the lower court committed a clear abuse of discretion (2) for which there is no adequate remedy at law, such as a normal appeal. *Id.* at 839–40. Although the Court's mandamus jurisprudence has not always strictly adhered to these tenets, we have endeavored to apply them more consistently since our decision in *Walker.* Because the Court retreats from that approach today, I respectfully dissent.

Under the second prong, the Court concludes that we must grant mandamus relief here because "the trial court's denial of Prudential's contractual right to have the Secchis waive a jury [cannot] be rectified on appeal." 148 S.W.3d at 138. I, of course, agree that an appellate remedy is inadequate if it comes too late to cure the trial court's error. *Walker,* 827 S.W.2d at 843. As we have said, a party establishes that its appellate remedy is inadequate by showing that it is in real danger of permanently losing its substantial rights. *Perry v. Del Rio,* 66 S.W.3d 239, 257 (Tex.2001); *Walker,* 827 S.W.2d at 842; *Canadian Helicopters, Ltd. v. Wittig,* 876 S.W.2d 304, 306 (Tex.1994). But that is not the present case.

The Court suggests, however, that if we do not act immediately Prudential's contractual right will be lost forever. I disagree. The Court confuses the adequacy of Prudential's appellate remedy with the damages Prudential may suffer as a consequence of its tenant's breach of contract. The purpose of the appellate remedy is not to compensate Prudential for this contractual breach, but to correct the trial court's error. If Prudential has been otherwise damaged, it should seek damages directly from the breaching party as in any other contract case.

The Court further suggests that Prudential's appellate remedy is inadequate because the burden of showing harmful error in this instance is simply too great. This is also wrong. Texas courts have readily found harm when a party has been denied its right to present disputed questions of fact to a jury. *Mercedes–Benz Credit Corp. v. Rhyne,* 925 S.W.2d 664, 667 (Tex.1996). In this instance, even if the evidence greatly preponderates in favor of the judgment, the judgment must nevertheless be reversed if there is any evidence on which a jury could have reached a different result. *See id.; Wm. D. Cleveland & Sons v. Smith,* 102 Tex. 490, 119 S.W. 843, 843–44 (1909). Our harmful error analysis in these cases reflects the importance our justice system accords the right to trial by

jury. *See Gen. Motors Corp.,* 951 S.W.2d at 476 (right to jury trial is "one of our most precious rights"). If a pre-dispute jury waiver is enforceable, an issue I would not decide here, then logic dictates that a wrongful failure to honor the agreement should be reviewed under the same appellate standard. Thus, a trial court's erroneous decision about who is to determine the facts in a case is harmful error if there are material facts in dispute. **\*142** *See Halsell v. Dehoyos,* 810 S.W.2d 371, 372 (Tex.1991).

The Court finally compares this case to those cases in which we have enforced arbitration agreements through mandamus. *See In re J.D. Edwards World Solutions Co.,* 87 S.W.3d 546, 551 (Tex.2002) (per curiam); *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 753 (Tex.2001); *Prudential Securities, Inc. v. Marshall,* 909 S.W.2d 896, 900 (Tex.1995) (per curiam); *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 272–73 (Tex.1992). Our choice of the mandamus remedy in *Jack B. Anglin Co.* and the other Federal Arbitration Act cases was influenced by three factors: (1) the strong public policy of both Texas and the federal government favoring arbitration, 842 S.W.2d at 268, (2) the procedural anomaly that permitted an interlocutory appeal under the state arbitration act but not the federal act, *id.* at 272, and (3) the United States Supreme Court's pronouncement that appellate delays defeated the "core purpose" of contracts to arbitrate, *id.* at 273 n. 14 (citing *Southland Corp. v. Keating,* 465 U.S. 1, 7–8, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)), which we took as a mandate from our nation's highest court to provide an extraordinary remedy. None of these factors are in the case before us.

Even if parties may freely waive their right to trial by jury, there is no public policy reason for encouraging them to do so. *See generally Bell Helicopter Textron, Inc. v. Abbott,* 863 S.W.2d 139, 141 (Tex.App.-Texarkana 1993, *writ denied* ) (restrictions on right to jury subject to utmost scrutiny). Furthermore, whereas the mandamus remedy in *Jack B. Anglin Co.* corrected a procedural anomaly, its use here creates one, authorizing mandamus relief to enforce a contractual jury waiver while relegating a party to its appellate remedy when denied its constitutional right to a jury trial. *See Gen. Motors Corp.,* 951 S.W.2d at 477 ("Because the denial of a jury trial can be reviewed by ordinary appeal, mandamus is generally not available to review such a ruling."). Finally, as I have explained, an appeal will not destroy Prudential's contractual right; it merely postpones its application. Because any error in submitting this case to a jury may be corrected on appeal, mandamus relief is therefore inappropriate. *See Walker,* 827 S.W.2d at 842 (quoting *Iley*

*v. Hughes,* 158 Tex. 362, 311 S.W.2d 648, 652 (1958) (appellate remedy inadequate " 'when parties stand to lose their substantial rights' ")); *see also McDaniel v. Yarbrough,* 898 S.W.2d 251, 253 (Tex.1995) (erroneous decision on right to jury trial is reversible error).

Admittedly, Prudential's appellate remedy is not as efficient or economical as mandamus, but that has never been the test. It is not enough to show that mandamus is a quicker or more beneficial remedy because the writ's purpose is not merely to expedite the correction of legal errors. *See In re Ford Motor Co.,* 988 S.W.2d 714, 721 (Tex.1998); *Walker,* 827 S.W.2d at 842; *Bell Helicopter Textron, Inc. v. Walker,* 787 S.W.2d 954, 955 (Tex.1990) (per curiam). If the writ were available to correct every reversible error as it occurred in the trial court, the writ would cease to be extraordinary, and appellate courts would soon find themselves embroiled in the management of the trial court's docket. *See Pope v. Ferguson,* 445 S.W.2d 950, 954 (Tex.1969). Thus, we have not granted mandamus relief to correct rulings incidental to the trial process that do not involve the permanent deprivation of a substantial right. *Polaris Inv. Mgmt. Corp. v. Abascal,* 892 S.W.2d 860, 862 (Tex.1995) (per curiam).

But the Court now surprisingly suggests that the second prong of our mandamus standard has no fixed meaning. 148 S.W.3d at 136 (The word " 'adequate' has no comprehensive definition."). Instead, **\*143** the Court says we must weigh all the public and private interests implicated by the lower court ruling at issue and then decide on balance whether a remedy other than mandamus is adequate or not. *Id.* at 136. And although the Court ultimately does not apply its new ad hoc balancing test here, it calls into question much of our jurisprudence in this area.

I see no need to inject even greater uncertainty into an already difficult and frequently subjective process. In the past, we have emphasized that the writ of mandamus should not issue absent "compelling circumstances." *See, e.g., Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex.1996); *Geary v. Peavy,* 878 S.W.2d 602, 603 (Tex.1994) (per curiam). But today, in circumstances far from compelling, the Court uses mandamus as a substitute for appeal, an approach rejected even by the federal procedure the Court purports to emulate. *See In re Avantel, S.A.,* 343 F.3d 311, 317 (5th Cir.2003) (Writ of mandamus is not a substitute for appeal; relator must show that the "clear and indisputable" error is irremediable on ordinary appeal.); *In re Ramu Corp.,* 903 F.2d 312, 318 (5th Cir.1990) ("Although it may obviate the need for improper

or unwarranted proceedings, mandamus cannot be used as substitute for appeal, even when hardship may result from delay or unnecessary trial."). Whether today's ruling has fundamentally altered these traditional rules, or is merely an anomaly, remains to be seen.

Because Prudential has failed to demonstrate that the trial court's refusal to quash the jury setting involves the deprivation of a substantial right that cannot be corrected on appeal, I would, without reference to the merits of the case, deny the petition for writ of mandamus.

## All Citations

148 S.W.3d 124, 47 Tex. Sup. Ct. J. 1104, 48 Tex. Sup. Ct. J. 31

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

145 S.W.3d 203
Supreme Court of Texas.

In re VAN WATERS & ROGERS, INC., Relator.

No. 03–0777.　|　Sept. 3, 2004.

**Synopsis**

**Background:** Plant employees brought toxic-tort action against multiple chemical manufacturers, marketers, sellers, and distributors. The 370th Judicial District Court, Hidalgo County, Noe Gonzalez, J., denied defendants' motion to compel, granted employees' motion to select trial plaintiffs, and abated discovery as to nontrial plaintiffs. Employees sought mandamus relief. After the Corpus Christi Court of Appeals denied relief without opinion, the Supreme Court, 988 S.W.2d 740, denied relief without prejudice. After trial court denied employees' motion for reconsideration, employees sought mandamus relief. The Corpus Christi Court of Appeals, 31 S.W.3d 413, granted partial relief. Employees sought further mandamus relief. The Supreme Court, 62 S.W.3d 197, conditionally granted writ. The District Court then ordered consolidation of twenty employees' claims against nine defendants. Defendants unsuccessfully requested relief from the Corpus Christi Court of Appeals. They then petitioned for writ of mandamus.

**Holdings:** The Supreme Court held that:

[1] consolidation was improper, and

[2] mandamus relief was warranted by extraordinary circumstances.

Writ conditionally granted.

**Attorneys and Law Firms**

**\*205** Lansford O. Ireson, Gina Lucero Miller, Ireson & Weizel, P.C., Karen K. Maston, Baker & Botts, L.L.P., Houston, Eduardo R. Rodriguez, Rodriguez, Colvin, Chaney & Saenz, L.L.P., Brownsville, James L. Moore, Baker & Hostetler, L.L.P., Houston, E. James Rausch, Rausch Law Office, Granbury, James B. Galbraith, McLeod Alexander Powel & Apffel, P.C., Galveston, W. Wendell Hall, Robert G. Newman, Fulbright & Jaworski L.L.P., San Antonio, Bradley

A. Jackson, Ben L. Reynolds, Royston Rayzor Vickery & Williams, L.L.P., Houston, William A. Abernethy, Meredith Donnell & Abernethy, P.C., Corpus Christi, Adrian Rafael Martinez, Meredith Donnell & Abernethy, P.C., McAllen, Miller Meredith, Corpus Christi, Arnulfo M. Acosta, Law Office of Arnulfo Acosta, **\*206** Pharr, Arthur R. Almquist, Mehaffy & Weber, P.C., Houston, Kay Andrews, Brown McCarroll, LLP, Austin, Robert Valadez, Shelton & Valadez, P.C., San Antonio, G. Don Schauer, Schauer & Simank, P.C., Corpus Christi, Michael M. Gibson, Bayko Gibson Carnegie Hagan Shoonmaker & Meyer LLP, Houston, TX, for other interested parties.

Joseph A. Garnett, Sheehy Serpe & Ware, P.C., Houston, Marcy H. Greer, Fulbright & Jaworski L.L.P., Norton A. Colvin Jr., Rodriguez Colvin, Chaney & Saenz, L.L.P., Brownsville, and Andrew C. Schirrmeister III, Schirrmeister Ajamie, L.L.P., Kelly Dick Brown, Crain Caton & James, and Robert E. Morse III, Crain Caton & James, P.C., Robert Scott, Abrams Scott & Brickley, L.L.P., Houston, Lisa Ann Shub, Robert G. Newman, Rosemarie Kanusky, Fulbright & Jaworski L.L.P., San Antonio, TX, for Relator.

Francisco J. Rodriguez, Rodriguez Tovar & De Los Santos, LLP, Keith C. Livesay, Livesay Law Office, McAllen, TX, for Respondent.

**Opinion**

PER CURIAM.

The issue in this mandamus proceeding is whether the trial court erroneously consolidated for trial the workplace toxic tort claims of twenty plaintiffs against nine defendants. Because we hold that the trial court abused its discretion and the defendants have no adequate remedy by appeal, we conditionally grant mandamus relief.

The underlying litigation was filed in 1994 by 454 plaintiffs against approximately fifty-five defendants. The plaintiffs are former employees of the Parker–Hannifin Corporation who worked at Parker's O-ring seal manufacturing plant in McAllen, Texas. The plaintiffs, all represented by the same counsel, allege injuries caused by workplace exposure to a combination of chemicals and products—to which they refer to as a "toxic soup." Plaintiffs allege that the chemicals were made or supplied to the plant by the defendants. The trial court consolidated the claims of twenty of the plaintiffs and set the claims for trial. Nine defendants seek relief from the consolidation order.

Each of the plaintiffs in the twenty consolidated cases was employed at the McAllen plant when it closed its doors in 1992, but the plaintiffs' start dates at the plant range from 1975 to 1988. The twenty plaintiffs held a combined thirty-five different jobs during their tenures at the plant, and most of the jobs were shared by only a few plaintiffs. No single job was held by all twenty plaintiffs. The Parker–Hannifin facility was also comprised of several buildings, and workers with different jobs worked in different areas of the plant. Employees were often segregated from other areas, and the plant had multiple air conditioning systems and downdraft tables that limited chemical exposure to particular areas. The twenty plaintiffs allege an aggregate of more than fifty-five injuries or symptoms, many of which are not shared, but the most common being headaches, eye irritation, nose irritation, skin irritation, and throat irritation.

This is the third petition for writ of mandamus we have considered in this case. In 1997, the trial court issued three orders: 1) consolidating twenty plaintiffs for trial; 2) limiting the defendants' discovery to those twenty plaintiffs and abating all discovery for the remaining 434 plaintiffs; and 3) denying the defendants' request to compel an answer to an interrogatory that would have revealed all physicians who linked any of the plaintiffs' injuries to exposure to the defendants' products. The defendants sought mandamus relief regarding each of the three orders. We denied all relief without prejudice to give the trial court an opportunity to reconsider **\*207** the discovery abatement order in light of *In re Colonial Pipeline Co.,*[1] which was issued while the petition was pending.[2] We also suggested that the trial court reconsider the interrogatory order should it determine that discovery should not be abated.[3] We did not address the consolidation issue at that time.

[1]   968 S.W.2d 938 (Tex.1998).

[2]   *In re Van Waters & Rogers, Inc.,* 988 S.W.2d 740, 741 (Tex.1998) (*Van Waters I* ).

[3]   *Id.*

The defendants asked the trial court to reconsider the previous orders in light of *In re Colonial Pipeline Co.* After almost a year, the trial court had not ruled on the motion, but had allowed plaintiffs' counsel to submit a different group of plaintiffs for trial. The defendants again sought mandamus relief, alleging insufficient discovery and improper consolidation. The court of appeals granted partial relief as to the defendants' request that plaintiffs

supplement their answers to the interrogatory concerning their physicians.[4] This Court granted further relief by directing the trial court to vacate its orders that abated discovery and allowed the plaintiffs to select the claims to be tried first.[5] With regard to the consolidation issue, we explained that the trial court should consider the factors established in *In re Ethyl Corp.*[6] and *In re Bristol–Myers Squibb,*[7] and could do so only after adequate discovery was completed.[8]

[4]   *In re Van Waters & Rogers, Inc.,* 31 S.W.3d 413, 421 (Tex.App.—Corpus Christi 2000, orig. proceeding).

[5]   *In re Van Waters & Rogers, Inc.,* 62 S.W.3d 197, 201 (Tex.2001) (*Van Waters II* ).

[6]   975 S.W.2d 606, 611 (Tex.1998).

[7]   975 S.W.2d 601, 603 (Tex.1998).

[8]   *Van Waters II,* 62 S.W.3d at 201.

Plaintiffs subsequently moved to consolidate for trial the original twenty plaintiffs from the first mandamus. A sixteen-page chart of the plaintiffs and their job histories and symptoms was submitted in support of the motion. The defendants objected to the nominated group of plaintiffs, arguing that only one plaintiff should be tried at a time. The trial court granted the plaintiffs' motion and issued the current consolidation order, stating that the court was "of the opinion the trial Plaintiffs ... [meet] the criteria enunciated by the Supreme Court" and should be consolidated for trial. The defendants requested relief from the court of appeals, which was denied in a short per curiam opinion.

 **[1]**   **[2]**   **[3]**   In determining whether various claims are appropriate for consolidation, "the dominant consideration in every case is whether the trial will be fair and impartial to all parties."[9] Consolidation should be avoided if it would cause " 'confusion or prejudice as to render the jury incapable of finding the facts on the basis of the evidence.' "[10] If an injustice will result from consolidated trials, a trial court "has no discretion to deny separate trials."[11]

[9]   *Ethyl,* 975 S.W.2d at 614–15.

[10]   *Id.* at 612 (quoting *Consorti v. Armstrong World Indus., Inc.,* 72 F.3d 1003, 1008 (2d Cir.1995)).

[11]   *Id.* at 610.

**[4]** **[5]** **[6]** **[7]** To aid in the determination of whether consolidation is appropriate in a mass tort case alleging exposure in a workplace, this Court in _Ethyl_ adopted the "Maryland factors": (1) whether the plaintiffs shared a common work site; (2) whether the plaintiffs shared similar occupations; (3) whether the plaintiffs had similar times of exposure; (4) whether the **\*208** plaintiffs have a similar type of disease; (5) whether plaintiffs are alive or deceased; (6) the status of discovery; (7) whether all plaintiffs are represented by the same counsel; (8) the type of <u>cancer</u> alleged, if any; and (9) the type of products to which the plaintiffs were exposed. [12] In _Ethyl_ we explained the considerations in applying these factors:

12     _Id._ at 611.

As the number of Maryland factors that different cases have in common increases, the number of those claims that can be tried together may increase. But there is no mathematical formula, and some of the Maryland factors should be given more weight than others. The maximum number of claims that can be aggregated is not an absolute, and the particular circumstances determine the outer limits beyond which trial courts cannot go. [13]

13     _Id._

A trial court must also "weigh the risk of prejudice or confusion against economy of scale." [14]

14     _Id._

**[8]** Consolidation is not improper merely because some factors indicate that dissimilarities exist within the consolidated claims. Rather, it is vital that a party seeking relief from a consolidation order establish how the differences among the consolidated claims will materially affect the fairness of a trial. [15]

15     _Bristol–Myers,_ 975 S.W.2d at 603–04.

**[9]** **[10]** **[11]** A further consideration is the maturity of the alleged tort. [16] In _In re Bristol–Myers Squibb,_ we instructed lower courts to "proceed with extreme caution" when consolidating claims of immature torts. [17] A tort is mature only when " 'there has been full and complete discovery, multiple jury verdicts, and a persistent vitality in the plaintiffs' [contentions].' " [18] Because no "toxic soup" case has ever been tried or appealed in Texas, the tort

is immature. Hence, the trial court has less discretion to consolidate dissimilar claims and must proceed with extreme caution. With this in mind, we turn to the application of the Maryland factors to this case.

16     _Ethyl,_ 975 S.W.2d at 610.

17     _Bristol–Myers,_ 975 S.W.2d at 603.

18     _Id._ (quoting McGovern, _An Analysis of Mass Torts for Judges,_ 73 TEX. L. REV. 1821, 1843 (1995)).

### 1. _Common Work Site_

**[12]** Plaintiffs argue that each of the plaintiffs worked at the same facility and, therefore, shared a common work site. The defendants counter that the plant was large and had several separate work areas—even separate buildings—that constitute separate work sites. Determining what constitutes a common work site does not turn merely on location, but on the similarity of exposures that occurred at a particular location in order to simplify proof of product identification. [19] Treating the Parker–Hannifin facility as a single work site would greatly complicate product identification in this case because the evidence shows that different mixtures of chemicals were used in different areas of the plant. Use of multiple air conditioning and ventilation systems and downdraft tables reduced the likelihood of exposure to the same chemicals in different areas of the plant. The twenty consolidated plaintiffs **\*209** selected for trial worked in different areas and have presented no evidence that they were exposed to the same injury-producing chemical mixtures. Because the areas of the plant in which the plaintiffs worked were so diverse, the Parker–Hannifin facility contains multiple work sites.

19     _N. Am. Refractory Co. v. Easter,_ 988 S.W.2d 904, 917–18 (Tex.App.—Corpus Christi 1999, pet. denied); _Owens–Corning Fiberglas Corp. v. Martin,_ 942 S.W.2d 712, 717 (Tex.App.—Dallas 1997, no pet.).

More importantly, the consolidation for trial of the claims of workers from different self-contained sites in the plant will likely unduly prejudice the defendants. Juror confusion is likely because the twenty different plaintiffs will necessarily offer proof of exposure to different chemicals that occurred in different parts of the plant, leading to a spider web of causation evidence linking the numerous defendants to different areas of the plant. This factor therefore weighs against consolidation.

### 2. *Similar Occupations*

There is no dispute that the twenty plaintiffs had dissimilar occupations. In *Ethyl,* we concluded that the fact that the plaintiffs held different jobs was not enough to warrant relief because the record did not show that the different jobs "resulted in differing exposure levels." [20] But the issue in *Ethyl* was whether different occupations, such as pipe fitters and insulators, suffered different levels of exposure to a single toxin—asbestos. In the instant case, the issue is not different exposure levels to a single chemical, but rather, exposure to different chemicals altogether. Numerous possible toxins are alleged to have caused the plaintiffs' injuries. Further complicating the matter is that the plaintiffs do not allege that these chemicals individually caused the assorted harms, but instead were mixed into a toxic soup, with various harmful combinations of toxins from many different defendants.

[20]     975 S.W.2d at 615.

Consolidating claims under these facts will undoubtedly lead to juror confusion, unfairly prejudicing the defendants. Not only would jurors be forced to keep track of various exposure levels, but the jury would also need to follow the varying exposures to the fifty-five original defendants' chemicals and the many more chemical combinations used at different work sites. Because of these facts, this factor weighs against consolidation of the twenty plaintiffs' claims.

### 3. *Time of Exposure*

The time of exposure factor has two aspects, the dates on which the exposure occurred and the length of exposure. [21]

[21]     *Id.*

### a. *Dates of Exposure*

The twenty plaintiffs began working at the plant during a range of thirteen years, from 1975 to 1988. *Ethyl* involved exposure dates varying by several decades, yet we concluded there was little evidence of prejudice or confusion of the jury. [22] But here, evidence in the record indicates that, during different periods of time, different chemicals were used at the plant. Because the chemicals used at the plant changed periodically, and many of the plaintiffs worked at the plant on different dates, this factor weighs against consolidation.

[22]     *Id.* at 616.

### b. *Length of Exposure*

This factor also weighs against consolidation because the duration of the alleged exposure differs significantly among some of the trial plaintiffs. The plaintiffs started working during a thirteen-year span, and all the plaintiffs stopped working at the plant in 1992. Thus, a worker who began employment in 1975 could likely have more than four times the duration of exposure than a worker who started in 1988, though this discrepancy is less of a **\*210** concern than exposure to entirely different chemical combinations.

### 4. *Similar Injury*

The proposed twenty plaintiffs allege more than fifty-five physical ailments, and no two plaintiffs have identical symptoms. Some plaintiffs complain of headaches, while others allege ailments ranging from nausea to insomnia. At least one plaintiff complains of a lump in her breast. In *Ethyl* and *Bristol–Myers,* we held that numerous and different injuries alone do not justify mandamus relief. [23] In both cases, we were concerned not with the mere fact that different injuries existed, but with whether those injuries had different etiologies. The plaintiffs in *Ethyl* asserted injuries including asbestosis, mesothelioma, and lung cancer, all of which were allegedly caused by exposure to asbestos. Similarly, in *Bristol–Myers,* the different injuries were all allegedly caused by breast implants. In the present case, however, there is evidence indicating that the various injuries were caused by exposure to numerous chemicals and chemical combinations. The evidence reflects exposure to different chemicals by virtue of working in different work sites, and this dissimilarity is compounded by evidence of vastly different injuries. There is no allegation or evidence that the different injuries stem from the same sources. Therefore, this factor weighs against consolidation.

[23]     *Id.* at 617; *Bristol–Myers,* 975 S.W.2d at 604.

### 5. *Living or Deceased*

Because each of the twenty plaintiffs is living, this factor weighs in favor of consolidation.

### 6. *The Remaining Factors*

The remaining Maryland factors, which include the status of discovery and whether the plaintiffs are represented by the same counsel, also favor consolidation of these twenty plaintiffs. However, we have held that these factors are far

less important than the other considerations identified by the Maryland criteria. [24]

[24] *Ethyl,* 975 S.W.2d at 616 (citing *In re Repetitive Stress Injury Litig.,* 11 F.3d 368, 374 (2d Cir.1993)).

Although some factors favor consolidation of this group of plaintiffs, the most critical factors weigh against consolidation. Most importantly, because the plaintiffs worked at what were effectively different work sites, and thus were exposed to entirely different chemical mixtures, the other dissimilarities involving disease and occupations are magnified. Establishing a defendant's liability based on one plaintiff's exposure to a certain chemical combination will not aid in establishing a different defendant's liability for another plaintiff's exposure to an entirely different mixture of chemicals. Rather, it would only serve to prejudice and confuse a jury. Although some plaintiffs could appropriately share causation evidence by claiming exposure to the same chemical combinations and could therefore be consolidated for trial, not all twenty plaintiffs here could make such a claim. Because analysis of the evidence using the factors adopted in *Ethyl* and *Bristol–Myers* demonstrates that significant juror confusion and undue prejudice would result from a trial of this particular group of twenty plaintiffs, we hold that the trial court abused its discretion in consolidating this group for trial.

 **[13]**   **[14]**   Having concluded the trial court abused its discretion, we now must determine whether the defendants nevertheless have an adequate remedy by appeal. Absent extraordinary circumstances, **\*211** mandamus will not issue unless defendants lack an adequate appellate remedy. [25] An appeal is inadequate when parties are in danger of permanently losing substantial rights. [26] Such a danger arises when the appellate court would not be able to cure the error, when the party's ability to present a viable claim or defense is vitiated, or when the error cannot be made part of the appellate record. [27]

[25] *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992).

[26] *Canadian Helicopters Ltd. v. Wittig,* 876 S.W.2d 304, 306 (Tex.1994).

[27] *Walker,* 827 S.W.2d at 843–44.

 **[15]**   Because most consolidation orders do not threaten a defendant's substantial rights, mandamus typically does not lie from a trial court's consolidation order. [28] But

if "extraordinary circumstances" are present that make an ordinary appeal inadequate, mandamus relief may be warranted. [29]

[28] We held in *Iley v. Hughes* that it was error that would require reversal on appeal for a trial court to order separate trials of liability and damages in a personal injury case, but we declined to issue a writ of mandamus. 158 Tex. 362, 311 S.W.2d 648, 651–52 (1958).

[29] *Canadian Helicopters Ltd.,* 876 S.W.2d at 309; *Nat'l Indus. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 776 (Tex.1995); *CSR Ltd. v. Link,* 925 S.W.2d 591, 596 (Tex.1996).

 **[16]**   Such extraordinary circumstances are present in this case because an appellate court could not remedy the likely juror confusion in a consolidated trial of these twenty plaintiffs' claims. Given the totally unrelated claims of plaintiffs exposed to entirely different chemicals produced by different defendants, consolidation risks the jury finding against a defendant based on sheer numbers, on evidence regarding a different plaintiff, or out of reluctance to find against a defendant with regard to one plaintiff and not another. The defensive theories as to many of these plaintiffs may also differ given the varying sources of exposure. The confusion created by multiple defensive theories is augmented in this case because there are fifty-five original defendants and at least nine remaining defendants. Similarly, confusion and prejudice could subsume the valid claim of a plaintiff based on an unrelated flaw or defense applicable to a different plaintiff's claim. Juror confusion and prejudice, under these facts, is almost certain, and it would be impossible for an appellate court to untangle the confusion or prejudice on appeal. [30]

[30] *See also Dal–Briar Corp. v. Baskette,* 833 S.W.2d 612, 617 (Tex.App.—El Paso 1992, orig. proceeding) (explaining that if a consolidated trial were held, there would be "no way to untangle how or whether prejudice and confusion infected the jury's deliberations.... The chance of obtaining meaningful appellate review on the propriety of consolidation is, therefore, negligible."); *cf. Hayes v. Floyd,* 881 S.W.2d 617, 619 (Tex.App.—Beaumont 1994, orig. proceeding) (explaining that adequate remedy by appeal existed for allegedly improper consolidation order).

We conclude that the consolidation of these twenty plaintiffs' claims against the defendants was an abuse of discretion for which there is no adequate remedy by appeal. Whatever

advantage may be gained in judicial economy or avoidance of repetitive costs is overwhelmed by the greater danger an unfair trial would pose to the integrity of the judicial process.

Therefore, without hearing oral argument, [31] we order the trial court to vacate its January 2, 2003 order consolidating the claims of the twenty plaintiffs. The writ **\*212** will issue only if the trial court fails to comply.

[31]     Tex.R.App. P. 52.8(c).

**All Citations**

145 S.W.3d 203, 47 Tex. Sup. Ct. J. 1172

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

**Distinguished by** Abbott v. Dallas Area Rapid Transit, Tex.App.-Austin, August 30, 2013

540 S.W.2d 668
Supreme Court of Texas.

INDUSTRIAL FOUNDATION
OF THE SOUTH, Petitioner,

v.

TEXAS INDUSTRIAL ACCIDENT
BOARD et al., Respondents.

No. B—5535. | July 21, 1976.
| Rehearing Denied Oct. 6, 1976.

Nonprofit corporation, which was engaged in gathering information relating to workman's compensation claims for dissemination to its member employers, brought suit against Industrial Accident Board, seeking disclosure under Open Records Act of information contained in claim files. The District Court, Travis County, James R. Meyers, J., rendered summary judgment for corporation, and Board appealed. The Court of Civil Appeals, 526 S.W.2d 211, reversed and remanded, and both parties appealed. The Supreme Court, Doughty, J., held that Board rule prohibiting disclosure of such information was ineffective; that workman's compensation claims filed with Board prior to enactment of Open Records Act were subject to disclosure; that such files were not per se confidential and protected from disclosure by claimants' right of privacy; that rendition of summary judgment was improper and would be reversed where material issues of fact existed as to whether information contained in individual files would be protected from disclosure by common-law right of privacy; that matter would be remanded to trial court for determination of whether information contained in individual files was 'confidential'; and that costs of providing such information would properly be taxed against corporation.

So ordered.

Daniel, J., concurred and filed opinion.

Sam D. Johnson, J., concurred and filed opinion.

Reavley, J., dissented in part and filed opinion, in which Steakley, Pope, and Denton, JJ., joined.

**Attorneys and Law Firms**

**\*671** Dixon & Petrovich, George J. Petrovich, Jr., Fort Worth, J. C. Hinsley, Austin, for petitioner.

Frank W. Elliott, Austin, Kronzer, Abraham & Watkins, W. James Kronzer, Houston, for respondents.

**Opinion**

**\*672** DOUGHTY, Justice.

This case requires that we determine whether Texas' Open Records Act, Tex.Rev.Civ.Stat.Ann. art. 6252—17a (Supp.1974—1975) compels the Texas Industrial Accident Board to disclose to the Industrial Foundation of the South certain information concerning claims for workmen's compensation benefits. We hold that the information requested, with some exceptions to be noted, is 'public information' as defined by the Open Records Act and must be disclosed to the requesting party.

Texas' Open Records Act ('the Act') became effective on June 14, 1973. Eight days thereafter, the Industrial Foundation of the South ('the Foundation'), a nonprofit corporation comprised of approximately 282 member companies who employ workmen in the southwestern part of the United States, requested the Industrial Accident Board ('the Board') to furnish them the following items of information from every claim for workmen's compensation filed with the Board: the file number, the claimant's name and social security number, the name of claimant's employer, the nature of the injury, and the name of claimants attorney, if any. On June 29, 1973, the Board, in accordance with Section 7(a) of the Act, requested an opinion from the Attorney General to determine whether the information requested was 'public information' as defined by Section 3(a). On November 1, 1973, the Attorney General issued Open Records Decision No. 8, which, although expressing concern as to the practical difficulties of supplying such a voluminous quantity of data, declared that no exception of Section 3(a) would justify withholding access to the requested information.

Subsequent to the Attorney General's decision the Foundation again requested the Board to furnish the items of information; again the Board refused. Soon thereafter, the Foundation brought this suit pursuant to Section 8 of the Act, in the District Court of Travis County, against the Board, its

members and its executive director ('defendants') seeking a writ of mandamus to compel the Board to make the requested information available for its inspection.

As part of their discovery in preparation for this suit, the defendants served interrogatories on the Foundation which asked for detailed information regarding the organization, membership and activities of the Foundation. The defendants also asked the purpose for which the Foundation sought the information; whether such information had ever been used by a member of the Foundation as the basis for discharging or refusing to hire an employee; and the procedure used for furnishing information obtained by the Foundation to its members.

The Foundation moved to suppress all of these interrogatories on the ground that Section 5(b) of the Act precludes the Agency from inquiring into the purpose for which the information is requested. The trial court granted the Foundation's motion to suppress all the interrogatories except 2. A., B., and C., which asked the identity and position of the person answering the interrogatories, and 12, which asked the purpose for which the information was sought. In answer to Interrogatory No. 12 the Foundation replied:

> The purpose of the information requested by Plaintiff's attorney is to be used to check out or determine the accuracy and truthfulness of a prospective employee's application for employment with a member company of the Industrial Foundation of the South. The requested information is compiled by the Plaintiff for pre-employment purposes only. No one other than a member company of the Industrial Foundation of the South can have the requested information.

All parties moved for summary judgment. The trial court granted summary judgment for the Foundation, holding that all the information requested is public information subject to disclosure under the Act, except for claims which involve 'injury to the genitalia of the body.' The trial court ordered that mandamus issue directing the defendants to make the requested information available for inspection and **\*673** copying by the Foundation. Defendants appealed this judgment to the Court of Civil Appeals.

The Court of Civil Appeals held (526 S.W.2d 211) that the trial court erred in suppressing defendants' interrogatories.

The Court stated that, if one of the Foundation's purposes for seeking the information was illegal discrimination against workmen filing claims,[1] then the Foundation would not be entitled to mandamus, because the remedy is equitable in nature and those seeking it must come into court with clean hands. Thus the Court concluded that, by refusing to allow defendants to inquire into the Foundation's motives, the trial court had denied defendants the right to prepare a valid defense. The Court also held that the information requested was not excepted from the operation of the Act as 'information deemed confidential by law, either Constitutional, statutory, or by judicial decision,' (Section 3(a)(1)); and that the Act applies to claims filed before its effective date as well as to those filed afterward. The case comes to us on application by both parties. We shall first consider the points of error urged by the Foundation.

[1] The defendants contend that the Foundation intends to use the information to blacklist or discriminate against workmen who have filed claims, in violation of Tex.Rev.Civ.Stat.Ann. arts. 5196c and 5196d (Supp.1975—1976), and art. 8307c (Supp.1975—1976).

### *I. The Foundation's Application*

The Foundation contends that the Court of Civil Appeals erred in holding that the trial court erroneously suppressed the Board's interrogatories. While denying that it intends to use the information which it seeks for any illegal or discriminatory purpose, the Foundation argues that the Act itself prohibits any consideration of the motives or purposes for which the information is sought in determining whether the information is public and open to inspection.

The purpose of the Open Records Act is declared in Section 1 as follows:

> Pursuant to the fundamental philosophy of the American constitutional form of representative government which holds to the principle that government is the servant of the people, and not the master of them, it is hereby declared to be the public policy of the State of Texas that all persons are, unless otherwise expressly provided by law, at all times entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees. The people, in delegating authority, do

not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created. To that end, the provisions of this Act shall be liberally construed with the view of carrying out the above declaration of public policy.

Section 3 requires that a governmental body make all 'public information . . . available To the public during normal business hours . . ..'[2] Section 3(a) defines 'public information' as '(a)ll information collected, assembled, or maintained by governmental bodies pursuant to law or ordinance or in connection with the transaction of official business . . ., with the following exceptions Only: . . .'; there follow 16 exceptions, after which Section 3(b) provides: 'This section does not authorize withholding of information or limit the availability of records to the public, Except as specifically stated in this section.'

[2]     Emphasis supplied throughout unless otherwise noted.

Section 5(a) denominates the chief administrative officer of the governmental body as the 'custodian' of its public records, and Section 5(b) provides:

> Neither the custodian nor his agent who controls the use of public records shall make Any inquiry of any person who applies for inspection or copying of public records Beyond the purpose of establishing **\*674** proper identification and the public records being requested; . . .

Finally, Section 14 provides, in part:

(a) This Act does not prohibit any governmental body from voluntarily making part or all of its records available to the public, unless expressly prohibited by law; provided that such records shall then be available to Any person.

(b) This Act does not authorize the withholding of information or limit the availability of public records to the public, except as expressly so provided.

(d) This Act shall be liberally construed in favor of the granting of any request for information.

The procedure for determining whether information is public is set out in Sections 7 and 8 of the Act. Section 7 provides that a governmental body which has received a request for information may, within 10 days of the request, seek a decision from the Attorney General to determine whether the information is covered by the Act. If the Attorney General determines that the information is public and must be disclosed, but the governmental body still refuses to disclose it, Section 8 provides that 'the person requesting the information or the attorney general may seek a writ of mandamus compelling the governmental body to make the information available for public inspection.'

The Court of Civil Appeals has held that a court, relying upon its equitable powers inherent in the remedy of mandamus, may refuse to issue a writ of mandamus to compel disclosure even though the information sought is public information and not excluded by any exception, if the purpose for which the information is sought is illegal or in violation of a policy of the State. 526 S.W.2d at 216.

**[1]**  **[2]**  **[3]**  **[4]**  **[5]**  It is true that, although mandamus is a legal remedy, it is governed, to some extent at least, by equitable principles. Callahan v. Giles, 137 Tex. 571, 155 S.W.2d 793 (1941). In some instances the equitable doctrine of clean hands has been invoked to deny issuance of the writ. Westerman v. Mims, 111 Tex. 29, 227 S.W. 178 (1921); City of Wink v. Griffith Amusement Co., 129 Tex. 40, 100 S.W.2d 695 (1936).[3] But the extent of the court's equitable powers under Section 8 of the Act must be viewed in light of the legislative purpose and the statute's overall scheme. Section 1 declares that All persons are entitled to complete information; Section 3(b) declares that that section does not limit availability 'except as specifically stated' therein; Section 14(b) states that the Act does not authorize the withholding of information 'except as expressly so provided'; Section 14(a) requires that, if a governmental body does make may of its records available to the public, 'such records shall then be available To any person'; finally, Section 5(b) prohibits the custodian from making any inquiry of the requestor beyond establishing his proper identification. We think the Act itself makes clear that the motives of the person requesting information are not to be considered in determining whether the information must be disclosed.[4] The legislative intent of making public information available to Any person would be thwarted if

a court were allowed to consider the requestor's motives even though the custodian may not do so. [5] We do not **\*675** believe that the Legislature's choice of mandamus as the remedy available to the requestor evinces legislative intent that the court is free to exercise equitable discretion in denying the writ where the exercise of such discretion would contravene the overall scheme of the Act. In effect, the result of the Court of Civil Appeals' opinion would be to deny access to information if the requestor cannot demonstrate a need for the information which the court considers lawful or appropriate, even though it clearly is 'public' and not covered by any exception. Although we recognize that there is often much potential for abuse of information in government records, [6] the task of balancing the public's right of access to government records against potential abuses of the right has been made by the Legislature; the court's task is to enforce the public's right of access given by the Act. Since the purposes of the requestor are not relevant to a determination of whether the requested information must be disclosed, the trial court was not in error in suppressing defendants' interrogatories.

[3]   See also Moore v. Rock Creek Oil Corp., 59 S.W.2d 815 (Tex.Comm'n App. 1933, judgment adopted); State v. Gary, 163 Tex. 565, 359 S.W.2d 456, 473 (1962) (dissenting opinion); Crofts v. Court of Civil Appeals, 362 S.W.2d 101, 105 (Tex.1962) (dissenting opinion); Universal Underwriters Ins. Co. v. Ferguson, 471 S.W.2d 28, 31 (Tex.1971) (dissenting opinion); Todd v. Helton, 495 S.W.2d 213, 216 (Tex.1973) (concurring opinion).

[4]   Our interpretation is in accord with the Attorney General's interpretation of the Act. See Tex. Att'y Gen. Op. No. H—242 (1974); Open Rec. Dec. Nos. 37 (1974), 51 (1974) and 63 (1974).

[5]   The federal courts have encountered a similar problem in their interpretation of the Freedom of Information Act, 5 U.S.C. s 552 (1967) As amended (Supp.1975—1976). That Act requires that public records kept by federal agencies be available to 'any person,' and gives federal district courts 'jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.' ((s 552(a)(3))). Federal courts are divided whether they have equitable discretion under the Act to refuse to grant injunctive relief when disclosure would damage the public interest, even though the information is public and not within any of the Act's exceptions. See Rose v. Department of the Air Force, 495 F.2d 261, 269 (fn. 23) (2nd Cir. 1974), Affirmed on other grounds, —— U.S. ——, 96 S.Ct. 1592, 48 L.Ed.2d 11, 44 U.S.L.W.

4503 (1976); Getman v. NLRB, 146 U.S.App.D.C. 209, 450 F.2d 670 (1971); Wu v. National Endowment for Humanities, 460 F.2d 1030 (5th Cir. 1972), Cert. denied, 410 U.S. 926, 93 S.Ct. 1352, 35 L.Ed.2d 586 (1973).

[6]   The Foundation has vigorously argued that the purposes for which it seeks the information are lawful and do not violate any public policy. We express no opinion on this point.

## II. Application of Defendants Industrial Accident Board et al.

By their application the defendants assert several arguments contending that some or all of the information requested by the Foundation is not required by the Act to be disclosed. First, defendants contend that the information is not within Section 3(a)'s definition of 'public information' when read in light of the legislative purpose enunciated in Section 1. Second, defendants contend that the information is excepted from disclosure by Section 3(a)(1) because it is deemed confidential under Board Rule 9.040 which defendants contend has the force and effect of a statute. Third, defendants assert that all claims filed with the Board prior to June 14, 1973, the effective date of the Act, are not covered thereby because those filing claims before that date relied upon Board Rule 9.040 to assure that their claims would be confidential. Fourth, defendants argue that the information is confidential under the federal constitutional right of privacy. Fifth, defendants argue that the information is deemed confidential by a common-law right of privacy. Finally, defendants urge that some of the compensation claims contain uniquely personal information, disclosure of which would violate the claimant's right to privacy, either constitutional or common-law. We shall consider each of these arguments in order.

## A.

First, defendants assert that, although compensation claims may arguably come within the Act's definition of public information—'(a)ll information collected, assembled, or maintained by governmental bodies pursuant to law or ordinance or in connection with the transaction of official business'—the definition should not be read so broadly as to include the identity of individual claimants in light of the legislative purpose announced in Section 1. Defendants point out that the language of Section 1 declares it the policy of the Act to make available 'full and complete information

regarding the Affairs of government and the Official acts of those who represent them as public officials and employees.' Defendants contend that the names of individual claimants do not constitute 'affairs of **\*676** government' or 'official acts' of public officials, and therefore their disclosure would not further the legislative purpose announced in Section 1. Any other construction, defendants argue, would lead to the inconsistent result of requiring disclosure of the affairs of private citizens under an act intended to require disclosure of the affairs and workings of their government.

 **[6]** Defendants' argument is not without merit. Especially since the rapid expansion of government in recent years, many government records necessarily contain information relating to and identifying individual citizens and their activities. While the recent expansion of government has accented the need to assure access by private citizens to government records as an assurance that the people may remain informed about the activities of those who represent them,[7] the tremendous increase in the amount of information obtained and retained by the government has given rise to concern about the potential abuses which unlimited access to this information may foster.[8] The public's right to be informed about the affairs of government may thus conflict with the right of the individual to control access to information concerning his own affairs.[9] The balance between these two competing interests has not yet been struck with clarity, and the nature and extent of each interest is yet to be satisfactorily determined. We believe, however, that, except in unusual circumstances, the task of balancing these interests must be left to the Legislature. In the Open Records Act the Legislature has addressed the problem of access to government records. Although some provision has been made for safeguarding the privacy of the individual (see Section 3(a)(1), (2), (9), and (10)), the Act makes clear that it must 'be liberally construed in favor of the granting of any request for information.' Section 14(d). Moreover, the disclosure of individual names in government records may in some instances be essential to the expressed purpose of effectively allowing the public to police the actions of their government. Viewed in light of the statute as a whole, we are convinced that the definition of 'public information' in Section 3(a) encompasses the information sought by the Foundation, including the name of the claimant. The information must therefore be disclosed unless it is excluded by one of the specific exceptions of Section 3(a).

7  At least 42 states have enacted laws giving some degree of access to government records, many in the last three years. See Project, Government Information and the Rights of Citizens, 73 Mich.L.Rev. 971 (1975) at page 1163, footnote 1169.

8  Congress has recently enacted the Privacy Act of 1974, 5 U.S.C.A. s 552a (Supp.1975—1976), to safeguard individual privacy interests by restricting information practices of federal agencies. Two states have recently passed privacy acts. Minn.Stat.Ann. ss 15.162—168 (Supp.1975), and Ch. 194, ss 1—12, 1975 Laws of Utah 870. In addition, the constitutions of California and Alaska contain express provisions protecting the privacy of individuals, which have been interpreted to restrict government access to or disclosure of private information to some degree. Alaska Const. art. I, s 22; Cal.Const. art. I, s 1. See White v. Davis, 13 Cal.3d 757, 120 Cal.Rptr. 94, 533 P.2d 222 (1975); Ravin v. State, 537 P.2d 494 (Alaska 1975).

9  See Note, Invasion of Privacy and the Freedom of Information Act: Getman v. NLRB, 40 Geo.Wash.L.Rev. 527 (1972); Project, supra, 73 Mich.L.Rev. 971 (1975); Records, Computers, and the Rights of Citizens, Report of the Secretary's Advisory Committee on Automated Personal Data Systems, U.S. Dept. of H.E.W. (1973); Privacy and Information Systems in Texas, Report of the Senate Jurisprudence Committee of the 64th Texas Legislature (1975).

**B.**

Defendants next contend that Board Rule 9.040 has the effect of excepting the requested information from mandatory disclosure under the Act. Rule 9.040,[10] which **\*677** was promulgated by the Board in 1961 pursuant to its general rule-making authority,[11] allows access to information on a claimant only to the claimant or his attorney, the insurer, the employer, or third party litigants, and only if there is an 'open' claim before the Board or a court at the time the information is requested. Defendants argue that this rule has the force of statute, and that the information is therefore excepted from the Act by Section 3(a)(1), which excludes information deemed confidential by statute.

10  Rule 9.040 reads as follows:
   'As a prerequisite for approval of a request for a record check or for the furnishing of information on a claimant, there must be a workmen's compensation claim for the named claimant open or pending before this Board or on appeal to a court of competent jurisdiction from the Board at the time the record search request or request for information is presented to this Board. The first,

middle and last name of the claimant, age and social security number, and if possible, dates of injury and the name of prior employers must be given in request for information. The Board will furnish the requested information or a record check only to the following: (1) the claimant; (2) the attorney for the claimant; (3) the carrier; (4) the employer at the time of the current injury; (5) third party litigants. Fees and charges for record requests may be obtained from the Industrial Accident Board.' (Promulgated 1961, revised 1974.)

11    Tex.Rev.Civ.Stat.Ann. art. 8307, s 4 (1967).

 **[7]**    **[8]**    Many statutes make various records kept by state agencies confidential. See, e.g., Tex.Rev.Civ.Stat.Ann. art. 695j—1, s 10 (Supp. 1975—1976); art. 5547—12a (Supp.1975—1976); and art. 4445c, s 4 (Supp. 1974). It is clear that the records covered by these statutes fall within Section 3(a)(1)'s exception for records made confidential by statute. No such statute appears, however, in the Workmen's Compensation Act. 12 While a rule may have the force and effect of a statute in other contexts, we do not believe that a governmental agency may bring its information within exception 3(a)(1) by the promulgation of a rule. To imply such authority merely from general rule-making powers would be to allow the agency to circumvent the very purpose of the Open Records Act. 13 Absent a more specific grant of authority from the Legislature to make such a rule, 14 the rule must yield to the statute.

12    A bill specifically excepting claims filed with the Board from the Open Records Act was introduced in the 64th Legislative Session; the bill, S.B. 496, was reported favorably by the Senate Jurisprudence Committee and was passed to engross on the floor of the Senate; but the bill was never presented for final passage by the Senate, and it died at the end of the session.

13    The Attorney General's interpretation of Section 3(a)(1) is in accord with our conclusion. See Open Rec. Dec. Nos. 29 (1974), 46 (1974) and 95 (1974).

14    See, e.g., Tex.Rev.Civ.Stat.Ann. art. 5221b—9(e) (1971), giving the Texas Employment Commission authority to promulgate rules of disclosure, and Att'y Gen.Op. No. H—626 (1975), which held that the Commission's rules do not conflict with the Open Records Act.

**C.**

Defendants argue that, even if the Board has no power to restrict access to records which are required to be disclosed by the Act, the Board certainly had such power prior to the Act's effective date. Since those filing claims prior to the Act did so while the Rule was in effect, defendants argue that all information concerning claims filed prior to the Act's effective date should remain confidential. We disagree.

 **[9]**    **[10]**    First, it is clear that the Act is intended to apply to all records kept by governmental bodies, whether acquired before or after the Act's effective date. No exception is made for records which were considered confidential prior to June 14, 1973. Second, we do not believe that information should be excepted from disclosure merely because the individual furnishing such information did so with the expectation that access to the information would be restricted. The Legislature has not, by determining that government information formerly kept confidential should be disclosed, impaired any vested right of a claimant to the confidentiality of the information. 15 Unless there is such an impingement **\*678** upon a vested right, the Legislature may require disclosure of information even though it was deemed confidential by an agency rule prior to the effective date of the Act. 16 We therefore conclude that the Board may not withhold information required to be disclosed by the Act, whether acquired prior to the Act's effective date or thereafter, based upon its own Rule 9.040.

15    Defendants cite Open Rec. Dec. No. 55A (1975), in which the Attorney General held that certain evaluative material in the personnel file of a university faculty member was not required to be disclosed under the Act because the information was given in exchange for an express promise of confidentiality made prior to the effective date of the Act. While we express no opinion as to the correctness of this ruling, we note that the circumstances are distinguishable from the case before us, because no express contract of confidentiality was here made by the Board in order to induce claimants to provide the information sought by the Foundation.

16    Although we reach the same result on this issue as the Court of Civil Appeals, we do not base our result on any distinction between the Board's implied rule-making authority and the implied rule-making power of other state agencies.

**D.**

We next turn to defendants' argument that the requested information is protected from disclosure by a constitutional right of privacy. Section 3(a) (1) excepts from disclosure information deemed confidential by constitutional law. Defendants contend that the right of privacy recently recognized by the United States Supreme Court as emanating from 'the Fourteenth Amendment's concept of personal liberty and restrictions upon state action . . .'[17] extends to all the information in its claims records and prohibits disclosure of that information to the public.

[17]   Roe v. Wade, 410 U.S. 113, 153, 93 S.Ct. 705, 727, 35 L.Ed.2d 147 (1973).

 **[11]**    **[12]**    **[13]**    The Foundation asserts by counterpoint that the defendants have no standing to assert this argument, contending that a state agency cannot be heard to assert the constitutional rights of individual claimants. Whatever merit the Foundation's argument might have absent the Act, it is clear that the Legislature has, in effect, granted standing to a governmental unit to assert that its records are protected by a constitutional right of privacy. The governmental unit may request an Attorney General's opinion to determine whether requested information is excepted by Section 3(a)(1), thus effectively raising the constitutional issue. Certainly the agency is not foreclosed, as defendant in a suit to force disclosure, from challenging the Attorney General's conclusion that information is not excluded by the first exception. Furthermore, under Section 10(b), one who discloses information deemed confidential may be subject to fine or imprisonment. We hold that defendants have standing to assert the constitutional right of privacy of claimants whose files are in their custody. We must determine, therefore, whether any of the information requested by the Foundation is protected by the constitutional right of privacy. The United States Supreme Court reviewed its earlier decisions in this area in Roe v. Wade, 410 U.S. 113, 152—53, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973):

The Constitution does not explicitly mention any right of privacy. In a line of decisions, however, going back perhaps as far as Union Pacific R. Co. v. Botsford, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35 L.Ed. 734 (1891), the Court has recognized that a right of personal privacy, or a guarantee of certain areas or zones of privacy, does exist under the Constitution. In varying contexts, the Court or individual Justices have, indeed, found at least the roots of that right in the First Amendment, Stanley v. Georgia, 394 U.S. 557, 564, 89 S.Ct. 1243, 1247, 22 L.Ed.2d 542 (1969); in the Fourth and Fifth Amendments, Terry v. Ohio, 392 U.S. 1, 8—9, 88 S.Ct. 1868, 1872—1873, 20 L.Ed.2d 889 (1968), Katz

v. United States, 389 U.S. 347, 350, 88 S.Ct. 507, 510, 19 L.Ed.2d 576 (1967), Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), see Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting); in the penumbras of the Bill of Rights, Griswold v. Connecticut, 381 U.S., at 484—485, 85 S.Ct. (1678) at 1681—1682; in the Ninth Amendment, Id., at 486, 85 S.Ct. (1678) at 1682 (Goldberg, J., concurring); or in the concept of liberty guaranteed by the first section of the Fourteenth Amendment, see Mayer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). **\*679** These decisions make it clear that only personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty,' Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937), are included in this guarantee of personal privacy. They also make it clear that the right has some extension to activities relating to marriage, Loving v. Virginia, 388 U.S. 1, 12, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010 (1967); procreation, Skinner v. Oklahoma, 316 U.S. 535, 541—542, 62 S.Ct. 1110, 1113—1114, 86 L.Ed. 1655 (1942); contraception, Eisenstadt v. Baird, 405 U.S., at 453—454, 92 S.Ct. (1029) at 1038—1039, 31 L.Ed.2d 349; Id., at 460, 463—465, 92 S.Ct. (1029) at 1042, 1043—1044 (White, J., concurring in result); family relationships, Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944); and child rearing and education, Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct, 571, 573, 69 L.Ed. 1070 (1925), Meyer v. Nebraska, supra.

 **[14]**    **[15]**    It is apparent from the above that the term 'right of privacy' is actually a generic term encompassing various rights recognized by the Court to be 'inherent in the concept of ordered liberty.' To date the Court has not delineated any comprehensive definition of the right. It is apparent, however, that the fundamental rights thus far recognized by the Court as deserving protection from governmental interference have been limited to intimate personal relationships or activities, freedoms of the individual to make fundamental choices involving himself, his family, and his relationships with others. It is also apparent that the right of privacy is primarily a restraint upon unwarranted governmental interference or intrusion into those areas deemed to be within the protected 'zones of privacy.'

Several commentators have suggested that the right of privacy protected by the U.S. Constitution actually has two meanings: first, the ability of individuals to determine for themselves whether to undergo certain experiences or to perform certain

acts—Autonomy; and second, the ability of individuals 'to determine for themselves when, how, and to what extent information about them is communicated to others' [18]—the right to control information, or Disclosural privacy. The Supreme Court has not distinguished between these two areas of privacy, but the distinction is useful in discussing the concept, especially in light of the problem now before us. Most privacy cases decided by the Supreme Court to date have concerned autonomy. Little has been said of the constitutional dimensions of disclosural privacy, which is the right asserted by defendants here. We believe, nevertheless, that effective protection of the fundamental 'zones of privacy' thus far outlined by the Supreme Court necessarily implies a concomitant right to prevent unlimited disclosure of information held by the government which, although collected pursuant to a valid governmental objective, pertains to activities and experiences within those zones of privacy. The individual does not forfeit all right to control access to intimate facts concerning his personal life merely because the State has a legitimate interest in obtaining that information. Just as the State's intrusion into the individual's zones of privacy must be carefully limited, so must the State's right to reveal private information be closely scrutinized as well. [19]

[18]   A. Westin, Privacy and Freedom, p. 7 (1967). See also Beardsley, Privacy: Autonomy and Selective Disclosure, in Privacy 56 (J. Pennock & J. Chapman eds., 1971); Gross, The Concept of Privacy, 42 N.Y.U.L.Rev. 34 (1967); Note, Roe and paris: Does Privacy Have a Principle?, 26 Stan.L.Rev. 1161 (1974).

[19]   At least two United States Supreme Court cases have considered the confidentiality accorded information kept by the State to be relevant in determining whether the State could constitutionally obtain that information from its citizens: Shelton v. Tucker, 364 U.S. 479, 486, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960), and Law Students Civil Rights Research Council v. Wadmond, 401 U.S. 154, 157, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971) (see footnote 4). See also California Bankers Ass'n v. Shultz, 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974); Roe v. Ingraham, 480 F.2d 102 (2nd Cir. 1973), On remand, 403 F.Supp. 931 (S.D.N.Y.1975), Review granted sub nom., Whalen v. Roe, 423 U.S. 1313, 46 L.Ed.2d 18, 44 U.S.L.W. 3461 (1976); Schulman v. New York City Health And Hospitals Corp., 44 A.D.2d 482, 355 N.Y.S.2d 781 (1974); and City of carmel-by-the-Sea v. Young, 2 Cal.3d 259, 85 Cal.Rptr. 1, 466 P.2d 225 (1970).

**\*680**  It is also clear, however, that not every publication of intimate or embarrassing information about an individual constitutes an invasion of a constitutionally protected zone of privacy. In the case of Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405, 44 U.S.L.W. 4337 (1976), recently decided by the U.S. Supreme Court, plaintiff's name and photograph were included in a flyer of 'active shoplifters' distributed to local merchants by the police chief of Louisville, Kentucky, after plaintiff had been arrested on a shoplifting charge. The charge was subsequently dismissed, and plaintiff sued the police chief under 42 U.S.C. s 1983, alleging, Inter alia, that the police chief had invaded his constitutional right of privacy while acting under color of State law. The Court denied that plaintiff had stated a cause of action:

While there is no 'right of privacy' found in any specific guarantee of the Constitution, the Court has recognized that 'zones of privacy' may be created by more specific constitutional guarantees and thereby impose limits upon government power. See Roe v. Wade, 410 U.S. 113, 152—153, 93 S.Ct. 705, 726, 35 L.Ed.2d 147, 176—178 (1973). Respondent's case, however, comes within none of these areas. He does not seek to suppress evidence seized in the course of an unreasonable search. See Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 581 (1967); Terry v. Ohio, 392 U.S. 1, 8—9, 88 S.Ct. 1868, 1872—1973, 20 L.Ed.2d 889, 898 (1968). And our other 'right of privacy' cases, while defying categorical description, deal generally with substantive aspects of the Fourteenth Amendment. In Roe the Court pointed out that the personal rights found in this guarantee of personal privacy must be limited to those which are 'fundamental' or 'implicit in the concept of ordered liberty' as described in Palko v. Connecticut, 301 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288, 292 (1937). The activities detailed as being within this definition were ones very different from that for which respondent claims constitutional protection—matters relating to marriage, procreation, contraception, family relationships, and child rearing and education. In these areas it has been held that there are limitations on the States' power to substantively regulate conduct.

Respondent's claim is far afield from this line of decisions. He claims constitutional protection against the disclosure of the fact of his arrest on a shoplifting charge. His claim is based not upon any challenge to the State's ability to restrict his freedom of action in a sphere contended to be 'private,' but instead on a claim that the State may not publicize a record of an official act such as an arrest. None of our substantive privacy

decisions hold this or anything like this, and we decline to enlarge them in this manner.

Paul v. Davis, 424 U.S. at 713, 96 S.Ct. at 1166, 44 U.S.L.W. at 4343 (1976).

See also Laird v. Tatum, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972); Rosenberg v. Martin, 478 F.2d 520 (2nd Cir. 1973), Cert. denied, 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973); Thom v. New York Stock Exchange, 306 F.Supp. 1002 (S.D.N.Y.1969), Affirmed sub nom. Miller v. NYSE, 425 F.2d 1074 (2nd Cir. 1970), Cert. denied, 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970); Lamont v. Commissioner of Motor Vehicles, 269 F.Supp. 880 (S.D.N.Y.1967), Affirmed, 386 F.2d 449 (2nd Cir. 1967), Cert. denied, 391 U.S. 915, 88 S.Ct. 1811, 20 L.Ed.2d 654 (1968); and Fifth Avenue Peace Parade Committee v. Gray, 480 F.2d 326 (2nd Cir. 1973), Cert. denied, 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974). Compare York v. Story, 324 F.2d 450 (9th Cir. 1963), Cert. denied, 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659 (1964); Merriken v. Cressman, 364 F.Supp. 913 (E.D.Pa.1973).

 [16]  [17]   Thus, the State's right to make available for public inspection information pertaining to an individual does not conflict **\*681** with the individual's constitutional right of privacy unless the State's action restricts his freedom in a sphere recognized to be within a zone of privacy protected by the Constitution. We turn now to an examination of the information sought by the Foundation to determine whether that information is within a zone of privacy. The data requested identifies the claimant, the nature of his injuries, his employer and his attorney. The information normally does not concern matter relating to marriage, procreation, contraception, family relationships, or child rearing and education, nor would its publication infringe upon a claimant's right of free association. Even though a workman's knowledge that information concerning his claim will be available for public inspection may deter him from exercising his statutory right to file a claim, the general availability of such information would not adversely affect any right thus far recognized to be within a constitutionally protected zone of privacy. We therefore hold that the information requested by the Foundation is not excepted by Section 3(a)(1) as information deemed confidential by constitutional law.

**E.**

Defendants next contend that the requested information is 'deemed confidential . . . by judicial decision' under Section 3(a)(1). Defendants assert that by this provision the Legislature intended to delegate to the courts a duty to determine what information should be excepted from disclosure as confidential by balancing in each case the interest in privacy against the interest in disclosure, thus creating a common-law privacy doctrine which would except the information involved 'by judicial decision.' As authority for this proposition defendants cite the Freedom of Information Act, 5 U.S.C. s 552 (1967), As amended, (Supp.1975—1976), which is in many ways similar to Texas' Open Records Act. Section 552(b) of the Federal Act sets out the matters which are excepted from application of the Act. Exception 6 provides that the Act does not apply to 'personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy; . . .' Federal courts have interpreted the term 'similar files' broadly, to include any files which 'contain 'intimate details' of a 'highly personal nature.'' Robles v. Environmental Protection Agency, 484 F.2d 843, 845 (4th Cir. 1973). The Supreme Court has recently construed this exemption to mean that Congress intended the courts to balance 'the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act 'to open agency action to the light of public scrutiny.'' Rose v. Department of the Air Force, 425 U.S. 352, —, 96 S.Ct. 1592, 1604, 48 L.Ed. 11, 44 U.S.L.W. 4503, 4509 (U.S. April 21, 1976). See also Getman v. National Labor Relations Board, 146 U.S.App.D.C. 209, 450 F.2d 670, 677 (1971); Wine Hobby USA, Inc. v. International Revenue Service, 502 F.2d 133, 136 (3d Cir. 1974).[20] Defendants urge us to apply a similar balancing test to determine whether information is 'confidential . . . by judicial decision' under the Open Records Act.

20   For a more complete analysis of this exemption, see Project, supra, 73 Mich.L.Rev. 971, 1078—1085 (1975).

 [18]  [19]   We do not believe that the interpretation proposed by defendants is reasonable. Although the Open Records Act is similar in many ways to the Freedom of Information Act, our State law contains no exception comparable to exception 6 of the federal act. Section 3(a)(2) of the Open Records Act does except 'information in Personnel files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.' There is

no such exception, however, for medical files, or for files 'similar' to medical or personnel files, as is found in exception 6 of the federal act. Absent such a provision, we do not believe that a court is free to balance the public's interest in disclosure against **\*682** the harm resulting to an individual by reason of such disclosure. This policy determination was made by the Legislature when it enacted the statute. 'All information collected, assembled, or maintained by governmental bodies' is subject to disclosure unless specifically excepted. We decline to adopt an interpretation which would allow the court in its discretion to deny disclosure even though there is no specific exception provided.

### F.

 **[20]**    Defendants next contend that the information sought by the Foundation is confidential by judicial decision by reason of this Court's opinion in Billings v. Atkinson, 489 S.W.2d 858 (Tex.1973). In that decision we recognized that 'an unwarranted invasion of the right of privacy constitutes a legal injury for which a remedy will be granted.' 489 S.W.2d at 860. We there upheld a jury verdict awarding Mr. Billings damages for the unauthorized installation of a wiretap device on his telephone by Mr. Atkinson. We stated, at 489 S.W.2d at 859:

> The right of privacy has been defined as the right of an individual to be left alone, to live a life of seclusion, to be free from unwarranted publicity. 77 C.J.S. Right of Privacy s 1. A judicially approved definition of the right of privacy is that it is the right to be free from the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities. 62 Am.Jur.2d, Privacy s 1, p. 677, and cases cited.

The above statement of the Court reveals that the tort 'invasion of privacy' is actually a recognition of several 'privacy interests' considered to be deserving of protection.

Professor William L. Prosser has categorized these interests into four distinct torts, each subject to different rules:

1. Intrustion upon the plaintiff's seclusion or solitude, or into his private affairs.

2. Public disclosure of embarrassing private facts about the plaintiff.

3. Publicity which places the plaintiff in a false light in the public eye.

4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness.

William L. Prosser, Privacy, 48 Cal.L.Rev. 383, 389 (1960).

The interest recognized as deserving protection in Billings was the first listed above, freedom from unwarranted intrusion. The interest asserted by defendants on behalf of claimants most closely resembles the interest defined by Prosser as freedom from public disclosure of embarrassing private facts. Defendants contend that making the requested information available for public inspection would constitute public disclosure of private facts about individual claimants, and that the information must therefore be confidential by reason of the common-law right of the claimants to recover damages for the wrongful publication of the information.

 **[21]**    **[22]**    **[23]**    We recognized in Billings, supra, that an individual has the right to be free from 'the publicizing of one's private affairs with which the public has no legitimate concern,' but the precise requirements for showing an invasion of this particular right of privacy have not yet been defined by the courts of this State. It is generally recognized, however, that an injured party, in order to recover for public disclosure of private facts about himself, must show (1) that publicity was given to matters concerning his private life, (2) the publication of which would be highly offensive to a reasonable person of ordinary sensibilities, and (3) that the matter publicized is not of legitimate public concern. See W. Prosser, Law of Torts s 117, p. 809 (4th ed. 1971) and cases there cited.[21] Defendants **\*683** assert that, if a governmental unit's action in making its records available to the general public would be an invasion of an individual's freedom from the publicizing of his private affairs, then the information in those records should be deemed confidential by judicial decision under Section 3(a)(1) of the Act. We agree. Webster's Third International Dictionary defines 'confidential' as 'known only to a limited few: not publicly

dissseminated: PRIVATE, SECRET.' These are precisely the characteristics which information protected by this branch of the tort invasion of privacy must have. And, we believe that it is this type of information which the Legislature intended to exempt from mandatory disclosure under Section 3(a)(1) of the Act.

21    The American Law Institute has recently adopted the following definition of the tort, in Restatement (Second) of Torts, s 652D (Tent. Draft No. 22, 1976):
      One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy if the matter publicized is a kind which
      (a) would be highly offensive to a reasonable person, and
      (b) is not of legitimate concern to the public.

We must decide, therefore, whether any of the information requested by the Foundation is 'private' within the meaning of the tort law, and whether the Board's action in making the information available to the public would constitute a wrongful 'publicizing' of such information and thus an invasion of a claimant's right of privacy.

The first requirement for wrongful publication of private information is that the information contain highly intimate or embarrassing facts about a person's private affairs, such that its publication would be highly objectionable to a person of ordinary sensibilities. Defendant Jerry Belcher, the Executive Director of the Industrial Accident Board and custodian of its records, filed an affidavit in the trial court in opposition to the Foundation's motion for summary judgment, in which he alleged that many of the claims filed with the Board contain matters of extreme privacy which, if released, would cause extreme embarrassment to the injured claimant. Belcher cited examples of such claims, including a claim for injuries arising from a sexual assault of a female clerk following an armed robbery; a claim on behalf of illegitimate children for benefits following their father's death; a teacher's claim for expenses of a pregnancy resulting from the failure of a contraceptive device; claims for psychiatric treatment of mental disorders following workrelated injuries; claims for injuries to sexual organs, and for injuries stemming from an attemptd suicide; and claims of disability caused by physical or mental abuse by co-employees or supervisors. Belcher alleged that

> (m)any of these claims by their nature and the wording of the claim involve highly private matters which, if divulged to the public-at-large, would result in

the violation of individual claimant's and others right of privacy.

The claims referred to by Mr. Belcher are not in the record before us. Nevertheless, if there are in fact claims containing such information, as Mr. Belcher has alleged (and in reviewing the trial court's summary judgment we must accept as true all allegations of the opposing party), we are satisfied that at least some of these claims are of such a nature that their publication would be highly offensive to a reasonable person. This criterion is therefore satisfied at least as to some information contained in claims in the custody of Mr. Belcher.

 **[24]**    Invasion of the privacy interest protected by this branch of the tort also requires that publicity be given to the private affairs of the individual. Would making claim files available for public inspection constitution such publicity? It is generally agreed that the publicity requirement of this tort is not synonymous with the publication requirement of the law of defamation, wherein publication to one other is sufficient to constitute defamation. 'Publicity' requires communication to more than a small group of persons; the matter must be communicated to the public at large, such that the matter becomes one of public  **\*684**  knowledge. [22] It may be argued that the mere placing of private matter in a record available for public inspection does not 'give publicity' to such matter, since the matter is not thereby communicated to anyone, much less to the public at large. No publicity would occur, according to this argument, unless a citizen examined the public record and communicated the information therein to a large number of people. It would necessarily follow that no privacy interest is invaded merely by making private information available for public inspection.

22    See W. Prosser, Law of Torts s 117, at p. 810. See also proposed comment a. to Rest.2d of Torts s 652D (Tent. Draft No. 22, 1976).

 **[25]**    The requirement of publicity, however, must be considered in light of the people's right to publicize information which is a matter of public record without fear of sanctions imposed by the State. Once information is made a matter of public record, the protection accorded freedom of speech and press by the First Amendment may prohibit recovery for injuries caused by any further disclosure of and publicity given to such information, at least if the information is at all newsworthy. In Cox Broadcasting Co. v. Cohn, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975), the Supreme Court held that the First and Fourteenth Amendments prohibit

the State from imposing sanctions for the publication of information contained in official court records available for public inspection. The Court stated, at 420 U.S. 495—496, 95 S.Ct. at 1046:

By placing the information in the public domain on official court records, the State must be presumed to have concluded that the public interest was thereby being served. Public records by their very nature are of interest to those concerned with the administration of government, and a public benefit is performed by the reporting of the true contents of the records by the media. The freedom of the press to publish that information appears to us to be of critical importance to our type of government in which the citizenry is the final judge of the proper conduct of public business. In preserving that form of government the First and Fourteenth Amendments command nothing less than that the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection.

. . . If there are privacy interests to be protected in judicial proceedings, the States must respond by means which avoid public documentation or other exposure of private information. Their political institutions must weigh the interests in privacy with the interests of the public to know and of the press to publish.

The Court thus held that the State may not protect an individual's privacy interests by recognizing a cause of action in tort for giving publicity to highly private facts, if those facts are a matter of public record.

 **[26]**    It therefore appears that, if the State wishes to protect a citizen's privacy interest in matters recorded in documents kept by the State, it must do so by restricting the availability of those documents to the public rather than by imposing sanctions on those who would publicize such matters to which they have a right of access. In order to protect the individual's privacy interest in information compiled in government records, it must be assumed that for purposes of Section 3(a)(1) of the Act, when a governmental until makes information in its files available for public inspection, the information is sufficiently 'publicized' to invoke the protection accorded such matters by the tort law. To hold otherwise would be to deny an individual any protectable privacy interest in private information disclosed to a governmental unit, if such information would otherwise be 'public information.'

 **[27]**    The last requirement for an actionable invasion of privacy is that the information **\*685** publicized not be

of legitimate concern to the public. This requirement is necessarily one which can only be considered in the context of each particular case, considering the nature of the information and the public's legitimate interest in its disclosure. While the Open Records Act has declared the policy of this State to be that all 'public information' kept by government is of legitimate public concern, the Legislature has also recognized in Section 3(a)(1) that, in some instances, the individual's interest in confidentiality may outweigh the public's interest in disclosure. There may be circumstances in which the special nature of the information makes it of legitimate concern to the public even though the information is of a highly private and embarrassing nature. In general, however, the public will have no legitimate interest in such highly private facts about private citizens. Unles, therefore, the person requesting information of such a nature from the governmental unit can show special circumstances which make such private facts a matter of legitimate public concern, we believe that the information should be excepted from the mandatory disclosure provisions of the Act as information deemed confidential by a common-law right of privacy under Section 3(a)(1). We should make clear that the particular interest of the requestor, and the purposes for which he seeks the information, are not to be considered in determining whether the matter requested is of legitimate concern to the public, except insofar as the requestor's interest in the information is the same as that of the public at large. As we have stated above, the Act makes clear that the motives of the individual requestor are not relevant to the determination of whether the matter requested is 'public information.'

 **[28]**    The Foundation contends that, by disclosing the facts of their claim to the Board, claimants have waived or forfeited any right of privacy which they might have had in such information. We disagree. We stated above that an individual does not forfeit all right to maintain the confidentiality of his personal affairs merely because he has disclosed facts about those affairs to a unit of government. Although voluntary disclosure of private information would generally constitute a waiver of the individual's privacy interest in that information, the voluntariness of the disclosure should be viewed in light of the circumstances under which the disclosure is made. Much information is disclosed to the government as a prerequisite to the receipt of government benefits which are of such importance to the recipient that the disclosure of private information incident thereto may hardly be considered voluntary. We cannot say that an injured workman impliedly consents to the government's publication of private information about his injury merely by filing his

claim for compensation with the Board; nor do we believe that the acceptance of compensation benefits should necessarily be contingent upon a waiver of the claimant's right to assert the privacy of such information, absent some expressed legislative intent to that effect. We decline to hold that claimants have waived any legally protected right of privacy in information contained in their claim files by filing them with the Board.

To summarize: information contained in workmen's compensation claim files is excepted from mandatory disclosure under Section 3(a)(1) as information deemed confidential by law if (1) the information contains highly intimate or embarrassing facts the publication of which would be highly objectionable to a reasonable person, and (2) the information is not of legitimate concern to the public. If the information meets the first test, it will be presumed that the information is not of legitimate public concern unless the requestor can show that, under the particular circumstances of the case, the public has a legitimate interest in the information notwithstanding its private nature.

 **[29]** **[30]** Since it appears that the trial court has not considered the individual files which defendants allege are private, and since it clearly appears that some of these files may contain personal information the publication of which would be highly objectionable to a reasonable person, it follows **\*686** that the trial court's summary judgment for the Foundation was improper. We therefore remand the case to the trial court for its determination, in light of this opinion, whether any of the information should be withheld from disclosure because confidential. For the guidance of the trial court, we consider it appropriate to make some further observations concerning the information requested and the procedure for its review.

 **[31]** The Foundation has requested the name of each claimant, the nature of his injuries, and the names of his employer and his attorney. It is evident that any highly personal information in these files will in most cases refer to the nature of the injury sustained. If the nature of a particular claim is held to be confidential, only that information need by withheld from disclosure. As we have already stated, there is nothing intimate or embarrassing about the fact, in and of itself, that an individual has filed a claim for benefits. The claimant's name may therefore normally be disclosed, as may other information in the claimant's file which does not itself reveal private facts, even though information concerning the nature of his injury is withheld.

In reviewing the information which defendants assert is exempt from disclosure, the trial court should follow the same procedure which the Act dictates for submitting claimed exemptions to the Attorney General. Section 7(b) provides that '(t)he specific information requested shall be supplied to the attorney general but shall not be disclosed until a final determination has been made.' Similarly, the claims containing allegedly private information should be supplied to the trial court for an In camera inspection and determination whether and to what extent information should be deleted from those files. We believe that this procedure will best protect the privacy interests of the individual, and at the same time will effectively protect the public's right to inspect public records.

We recognize that the individual claimant's identity is the primary item of information which the Board wishes to keep confidential under Section 3(a)(1) of the Act, because of its allegation that the Foundation intends to use the information to discriminate against claimants. Our conclusion, however, is that the Act prohibits consideration of the motives of the requesting party in determining whether information must be disclosed. The sole criteria for determining whether information is exempt from disclosure as 'confidential by judicial decision' are whether the information is of legitimate public concern and whether its publication would be highly objectionable to a reasonable person. If the Legislature intended that other criteria be considered in deciding whether information is open to inspection—if it desires to change to wording of the statute—it will have an early opportunity to do so at the convening of the next legislative session. The duty of this Court is to enforce the legislative intent as written.

We also recognize the enormity of the task which a case-by-case review of these workmen's compensation files may entail. We believe, nevertheless, that the effective protection of the individual's right of privacy, and the effective application of the policy of openness of government records mandated by the Open Records Act, necessitate the result which we have reached. The individual's right to maintain some degree of privacy in the affairs of his personal life must not be forgotten in the effort to maintain the openness of governmental activities. Even in the complex and closely regulated bureaucracy of today's society, the individual's right of privacy and the people's right to be informed may exist, if not in harmony, at least without irreconcilable conflict.

### III. Means and Costs of Providing
### the Requested Information

One of the grounds alleged by defendants for denying the Foundation the information which it seeks was that, because of the magnitude of the information requested, it would be virtually impossible to furnish the information without hiring additional personnel and disrupting the activities of the **\*687** Board. In response to the Foundation's suggestion that a direct tie-in to the Board's computerized data processing system might be the most feasible way to provide the information, the Board's dataprocessing manager stated by affidavit that such a procedure 'would cause a complete breakdown of our already overloaded agency workload; it would also require the complete restructuring of our data processing system and the hiring of personnel to supply the information requested' by the Foundation. In response to this problem the Court of Civil Appeals stated, at 526 S.W.2d 220—221:

> While this is properly a matter for determination of the State Board of Control, under Sec. 9 of the Act, the possibility of abuse of computer privileges is one addressed to the sound discretion of the trial court. In the law review article entitled 'Privacy and the Computer,' V. Countryman, 49 Tex.L.Rev. 837, 863 (1971), the author points to some dire consequences which may flow from the invasion of privacy by entry into a computer system. We are of the opinion that such consequences may be appropriate for consideration by the trial court in the exercise of discretion in the award or denial of the writ of mandamus upon the trial which we have ordered.

Section 9(b) of the Act provides:

> Charges made for access to public records comprised in any form other than up to standard sized pages or in computer record banks, microfilm records, or other similar record keeping systems, shall be set upon consultation between the custodian of the records and the State Board of Control, giving due consideration to the expenses involved

in providing the public records making every effort to match the charges with the actual cost of providing the records.

**[32]** **[33]** It is our opinion that the Act does not allow either the custodian of records or a court to consider the cost or method of supplying requested information in determining whether such information should be disclosed. The least expensive method of supplying the information requested by the Foundation must be determined by the Board of Control and the custodian of the records in accordance with the guidelines set out by Section 9. The means of access to information in government records may be controlled by the determination of what records must be disclosed, insofar as the procedure must adequately protect information deemed confidential from improper disclosure. If a direct computer tie-in could not be effectuated without giving the Foundation access to information to which it is not entitled, then of course the procedure would not be acceptable. The least expensive method of providing the requested information, consonant with the trial court's final determination as to its confidentiality, should be left to the determination of the custodian and the Board of Control.

**[34]** We are aware that the Board may incur substantial costs in its compilation and preparation of the information, especially in light of the case-by-case review and redaction of the files necessitated by Section 3(a)(1). Section 9 of the Act makes clear that all costs incurred in providing access to public records must be borne by the requesting party. Section 11 provides:

> A bond for payment of costs for the preparation of such public records, or a prepayment in cash of the anticipated costs for the preparation of such records, may be required by the head of the department or agency as a condition precedent to the preparation of such record where the record is unduly costly and its reproduction would cause undue hardship to the department or agency if the costs were not paid.

It is evident that the very situation contemplated by the Legislature in enacting Section 11 is before us in this case. After a determination of the anticipated costs of providing the requested information by the chief administrative officer of the Industrial Accident Board and the Board of Control, the

Foundation may be required to post a bond, in accordance with Section 11, as a condition precedent to the Board's preparation **\*688** of the records for the Foundation's inspection. These anticipated costs should of course include the expenses which may be incurred incident to the redaction of the records for the protection of individual claimants' privacy interests.

The Court of Civil Appeals' judgment reversed the judgment of the trial court and remanded the cause. Because we agree that the trial court's judgment was erroneous and that the cause must be remanded, we affirm the judgment of the Court of Civil Appeals. The cause is therefore remanded to the trial court for further consideration in accordance with this opinion.

DANIEL and SAM O. JOHNSON, JJ., concur with opinions.

REAVLEY, J., dissents in opinion joined by STEAKLEY, POPE and DENTON, JJ.

DANIEL, Justice (concurring).

It is my opinion that, with respect to the individual claim files of the Industrial Accident Board, the Legislature did not intend Article 6252—17a to be as broad as it was written. In this respect, I agree with some of the reasoning set forth in Justice Johnson's concurring opinion. On the other hand, as pointed out in the majority opinion, it is our duty to interpret and apply the statute as written. If this interpretation is broader or narrower than intended, the Legislature will soon have an opportunity to amend and clarify the statute. I concur with the majority opinion.

SAM D. JOHNSON, Justice (concurring).

Since a majority of this court has concluded that Rule 9.040 of the Industrial Accident Board is invalid as a matter of law under the Open Records Act, Article 6252—17a, Texas Revised Civil Statutes Annotated, this writer joins Justice Doughty's opinion insofar as it requires that certain information in the Board's records be withheld to protect the common law right of privacy of compensation claimants. However, this writer would remand the case to determine the validity of Rule 9.040.

The court's holding today, which will have the effect of releasing the bulk of the records maintained by the Industrial Accident Board for public inspection runs the risk

of seriously damaging the Texas workmen's compensation system and frustrating the legislative purpose expressed in the Workmen's Compensation Act. This result is neither contemplated nor compelled by the Open Records Act.

A major objective of this state's workmen's compensation system is to provide workers with a means of asserting relatively small claims for job-related injuries that otherwise could not be asserted because of the prohibitive expenses incident to litigation. Under the holding of the majority of this court many workers may now find it too 'expensive' to assert relatively small compensation claims because of the well-recognized risk of discrimination against workmen's compensation claimants. Rule 9.040 was originally promulgated by the Industrial Accident Board in 1961 to accure confidentiality regarding compensation claims and thereby reduce the risk of employment discrimination against claimants. The rule provides that as a prerequisite 'for the furnishing of information on a claimant, there must be a workmen's compensation claim for the named claimant open or pending before this Board or on appeal to a court of competent jurisdiction from the Board at the time the record search request or request for information is presented.' The rule further states that the requested information may be provided to the following persons only: '(1) the claimant; (2) the attorney for the claimant; (3) the carrier; (4) the employer at the time of the current injury; (5) third party litigants.'

Rule 9.040 was promulgated pursuant to the Board's rule-making authority under Article 8307(4), Texas Revised Civil Statutes Annotated, which provides in part:

> 'The Board may make rules not inconsistent with this law for carrying out and enforcing its provisions . . ..'

The Workmen's Compensation Act does not contain any express provision limiting the availability of claim records, but the **\*689** Act contemplates promulgation by the Board of rules regarding confidentiality. Article 8307(9), T.R.C.S.A., provides in part:

'Upon the written request and payment of the fees therefor, which fees shall be the same as those charged for similar services in the Secretary of State's office, the board shall furnish to any Person entitled thereto a certified copy of any order, award, decision or paper on file in the office of said board . . ..' (Emphasis added.)

By providing that the Board furnish its records only to 'person(s) entitled thereto,' the Legislature clearly indicated the Board's authority to promulgate rules limiting the disclosure of its records.

Section 3(a)(1) of the Open Records Act provides the following exception to the definition of 'public information':

> 'information deemed confidential by law, either Constitutional, statutory, or by judicial decision; . . .'

The question is whether records made confidential by a rule promulgated by the Industrial Accident Board pursuant to its statutory rule-making powers constitute 'information deemed confidential by (statutory) law' under Section 3(a)(1) of the Open Records Act. The majority concludes that Section 3(a)(1) of the Open Records Act does not encompass records made confidential by Rule 9.040 for the following reasons:

> 'To imply such authority merely from general rule-making powers would be to allow the agency to circumvent the very purpose of the Open Records Act. Absent a more specific grant of authority from the Legislature to make such a rule, the rule must yield to the statute.'

Two criticisms of the majority's analysis are evident. First, it is suggested that the validity under Section 3(a)(1) of the Open Records Act of an administrative rule regarding confidentiality depends upon the specificity of the legislative grant of rule-making authority. However, this appears to be a rather insubstantial basis for distinguishing between such rules. A more appropriate basis for determining what administrative rules are valid under Section 3(a)(1) of the Open Records Act would turn upon the relationship between the rule in question and the statutory objective that the rule is designed to achieve. If the statutory objective could not be obtained without promulgation of the rule, then records made confidential by the rule would constitute 'information deemed confidential by (statutory) law.' A second criticism of the majority's reasoning concerns the suggestion that administrative rule-making powers might thwart the Open Records Act if rules regarding confidentiality were valid under Section 3(a)(1) of the Act. However, the majority chooses to risk thwarting the Texas Workmen's Compensation Act in order to preserve the Open Records Act. The Open Records Act does not compel such a result, and the

Act can be interpreted to avoid making a choice between it and the Workmen's Compensation Act. A closer examination of the legislative intent of the Open Records Act is necessary.

The Industrial Accident Board has contended that Rule 9.040 should be held valid under Section 3(a)(1) of the Open Records Act upon the principle that '(a) rule or order promulgated by an administrative agency acting within its delegated authority should be considered under the same principles as if it were the act of the Legislature.' Texas Liquor Control Board v. Attic Club, Inc., 457 S.W.2d 41, 45 (Tex.1970). Administrative rules are binding upon the courts if valid. Gerst v. Oak Cliff Savings and Loan Association, 432 S.W.2d 702 (Tex.1968). A presumption of validity attaches to administrative rules, Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424 (1946), and in determining the validity of such rules courts are limited to deciding 'whether the action is within the powers delegated to the agency and, if so, whether the action is arbitrary, capricious or unreasonable because not reasonably supported by substantial evidence, Texas State Bd. of Examiners in Optometry v. Carp, 388 S.W.2d 409, 415 (Tex.1965).

The essential weakness of the Board's contention is that the clear intent of the Open Records Act was to strike down administrative **\*690** rules regarding confidentiality. For this reason such administrative rules do not enjoy the normal presumption of validity. However, it is nevertheless possible that certain administrative rules on confidentiality may be valid under Section 3(a)(1) of the Open Records Act. The majority even suggests that such rules may be valid when promulgated pursuant to a reasonably specific grant of legislative authority.

This writer would hold that administrative rules on confidentiality are valid under Section 3(a)(1) of the Open Records Act (1) if promulgated pursuant to a statutory grant of rule-making authority, regardless whether such grant is specific or general, and (2) if the rule is Necessary to the accomplishment of the legislative goals set forth in the statute.

What does the term 'information deemed confidential by (statutory) law' mean? Does it merely encompass records that are specifically designated confidential by statute, or does it also include records made confidential by administrative rules that are necessary to accomplish statutory objectives set forth by the Legislature? The language of Section 3(a)(1) of the Open Records Act could obviously accommodate either interpretation.

The crucial issue is legislative intent. It might be argued that by listing in the Open Records Act sixteen exceptions to the definition of 'public information,' the Legislature indicated its intent to make public all records not specifically designated as confidential. However, this argument would miss the point. One of the specific exceptions to the definition of 'public information' is 'information deemed confidential by (statutory) law.' This exception is broad enough to include information made confidential by administrative rules that are promulgated pursuant to statutory rule-making authority and are necessary to the accomplishment of designated statutory objectives.

The effect of the majority's holding today may well be to frustrate or destroy many legislative schemes that require some degree of confidentiality in order to function. It would be unreasonable to conclude that the Legislature intended such a result by enacting the Open Records Act. It is more likely that the Legislature intended that certain administrative rules promulgated pursuant to statutory rule-making powers be left unaffected by the Open Records Act, particularly where such rules are necessary to effectuate its intent in other legislative spheres. The purpose of the Open Records Act was to strike down administrative rules on confidentiality that are Not necessary to the performance of designated statutory functions.

This is, of course, a summary judgment case. The summary judgment proof raises a fact issue as to whether Rule 9.040 is necessary to the performance of the Industrial Accident Board's statutorily prescribed duties. The Board's statutory duty to make the compensation claims procedure fully available to workers across the state is implicit in the various provisions of Article 8307, T.R.C.S.A. Consequently, it has been held that the Board may not impose additional burdens on a claimant's right to seek compensation benefits. Kelly v. Industrial Accident Board, 358 S.W.2d 874 (Tex.Civ.App.—Austin 1962, writ ref'd). However, the summary judgment proof indicates that the public release of the Board's records may impose a substantial burden on the right of workers to seek compensation benefits.[1] The imposition of such a burden **\*691** upon potential claimants would be inconsistent with the Board's statutory duty to make the compensation procedure fully available to injured workers. It follows that, according to the summary judgment proof, the guarantee of confidentiality contained in Rule 9.040 may be necessary to the Board's performance of its statutory duties. If it is determined that Rule 9.040 is indeed necessary to the Board's

performance of its statutory duties, the rule should be declared valid under Section 3(a)(1) of the Open Records Act.

[1]   Board Member Jim McCuan's summary judgment affidavit indicated that many injured workers are afraid to file compensation claims because of the threat of employment discrimination:

'As a member of the Industrial Accident Board, I have also been told of some employers discharging their own employee if he makes a claim for workmen's compensation benefits. I have spoken to employee organizations, seminars, union meetings and other functions and I have become well aware of the fear of some employees to file a claim for a serious and legitimate injury out of fear that such information will become known and that they will be either discharged or denied employment for having sought legal recovery for the injury.'

In any event, this writer would hold that claims information supplied to the Board during the period from 1961 to 1973 is confidential by judicial decision under Section 3(a)(1) of the Open Records Act. Rule 9.040, promulgated in its original form in 1961, was a valid exercise of the Board's rule-making powers and would undoubtedly have been upheld by the courts but for the enactment in 1973 of the Open Records Act. The majority accurately states that claimants who supplied information to the Board between 1961 and 1973 in reliance on Rule 9.040 do not have a 'vested right' to confidentiality; nevertheless, this court cannot overlook the blatant injustice that release of such records entails. Many claimants probably would have refrained from filing their claims if they had known that information given to the Board might subsequently be released to the public. Under the majority's holding these claimants are the unfortunate victims of a change in the law. They now face the serious risk of discharge from their jobs or employment discrimination, and they have no practical means of redress.[2] The majority seems to forget that the right of privacy on which it relies so heavily was once created by the courts to prevent a blatant injustice. The common law still has the capacity to deal with such matters.

[2]   Article 8307c(1) provides:

'No person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, or has testified or is about to testify in any such proceeding.' See discussion of ineffectiveness of Article 8307c as a remedy for wrongful discharge or

employment discrimination in Texas Tech Law Review, Volume 4, at 387 (1973).

REAVLEY, Justice (dissenting).

I would affirm the judgment of the trial court. I agree with everything in the opinion of the majority except what is written to support the holding that information on the nature of the injury, given in the claim for workmen's compensation filed with the Industrial Accident Board, may be 'deemed confidential . . . by judicial decision' and thus become exempt from disclosure by force of Section 3(a)(1) of the Texas Open Records Act.

We are shown no judicial decision which classifies the compensation claim or its contents as intrinsically 'confidential.' The Court finds the legislative intent in Section 3(a)(1) of the Open Records Act by an intricate route, which I shall now retrace. This Court has previously recognized a cause of action in tort for the unwarranted invasion of the right of privacy. Billings v. Atkinson, 489 S.W.2d 858 (Tex.1973). The Court there spoke of the right to recover damages where the defendant Publicizes private facts or affairs of the plaintiff, the public disclosure being offensive to a person of ordinary sensibilities and the matter being beyond legitimate public concern. The Publication of information (however obtained by the publisher) about the nature of the injuries of compensation claimants may or may not be actionable, but that question is not before us. No one seeks to publicize the information. The Court here reasons, however, that since making the compensation claim a public record would give all persons freedom to publicize the contents of the claim, the Legislature must have intended to keep confidential that information which could not be publicized with impunity— were that information Not a matter of public record.

I doubt that we are entitled to read this intent into the Legislature's use of 'confidential.' **\*692** I read the Legislature to be concerned with confidentiality entirely apart from the manner of use of the information. The Open Records Act states that 'it shall be liberally construed in favor of the granting of any request for information.' The effect of the Court's construction in this case seems to me to require judicial review of the bulk of government records prior to their disclosure—lest some embarrassing personal information be present. Section 10(a) of the Act provides that any person who distributes 'confidential' information commits a crime punishable by as much as six months in jail and/or a fine of as much as $1,000. Public officials who face

that consequence are not likely to take any chances on the release of records which might contain offensive information. This will also be a useful excuse for those who object to disclosure for other reasons. Those officials will await the order of a court before opening their records to the public. It was not the intention of the Legislature to turn over the administration of the Open Records Act to the judiciary. I would construe our question of legislative intent in favor of disclosure and then await legislative change if the result is objectionable. This area of confidentiality can best be mapped by statute.

Aside from all this, and whether looking at the bare language of Section 3(a) (1) or looking further at the tort action for the invasion of privacy as a guide to the construction of that statutory language, I do not regard the information included in a claim against an insurnace company, being enforced through the Industrial Accident Board, as private. See Prosser, Law of Torts, p. 810 (4th ed. 1971).

The information of the nature of the claimant's injury is given to the employer and to the employer's insurance carrier as well as to the Industrial Accident Board. The employer or carrier may not be free to publicize all information of the injury, but they are certainly under no mandate to keep it secret. No confidential relationship exists. The parties are often adversaries. The employer and carrier may surely disclose this information to the Industrial Foundation of the South.

I liken a claim made and filed with the Industrial Accident Board to a cause in court. The claims are not filed for the purpose of collecting some governmental benefit but for purpose of establishing a valid claim against an opposing party. Court records are not protected by any common law right of privacy. An example is Hubbard v. Journal Publishing Company, 69 N.M. 473, 368 P.2d 147 (1962), in which a minor female brought suit against a newspaper for an alleged violation of her right of privacy for the publication of an article based on juvenile court records. In the article it was stated that the minor plaintiff's brother had sexually assaulted her and he had been sentenced to 60 days in a juvenile home. The court held that there was no invasion of privacy because these facts were part of the court records.

I realize that the Legislature could choose to deny public access to Industrial Accident Board records, but the claims before the Board are similar to lawsuits and I would not regard them to be private in nature—either for purpose of construing the Open Records Act as now written or for purpose of

delineating causes of action for the abuse of the right of privacy.

STEAKLEY, POPE and DENTON, JJ., join in this Dissent.

**All Citations**

540 S.W.2d 668

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

840 S.W.2d 715
Court of Appeals of Texas,
Houston (14th Dist.).

KEENE CORPORATION, Relator,
v.
The Honorable Neil CALDWELL, Judge 23rd
Judicial District, Brazoria County, Respondent.

No. B14–92–00779–CV.  |  Oct. 15, 1992.

Motions were filed to compel manufacturer to produce documents in asbestos personal injury suits. The 23rd Judicial District Court, Brazoria County, Neil Caldwell, J., ordered production of portions of documents. Manufacturer filed petition for writ of mandamus. The Court of Appeals, Robertson, J., held that: (1) documents relating to asbestos task force which was set up to determine strategies for defending asbestos actions nationwide, and documents from lawsuit brought by manufacturer against its insurance carriers, came within attorney-client communication privilege or work product exemption; (2) principle of comity and full faith and credit clause of United States Constitution precluded trial court from ordering production of documents protected by federal court order; and (3) manufacturer did not have adequate remedy by appeal, and therefore could pursue writ of mandamus.

So ordered.

**Attorneys and Law Firms**

 **\*717**  James H. Powers, Kenneth C. Baker, Houston, for relator.

Jerry Kacal, Lawrence Madeksho, Barclay A. Manley, Jeffery Parsons, Danny Van Winkle, Elizabeth Thompson, Houston, John G. Bissell, Beaumont, for Respondent.

Before MURPHY, ROBERTSON and CANNON, JJ.

**OPINION**

ROBERTSON, Justice.

In this discovery mandamus, Relator urges this court to issue a writ of mandamus to the Honorable Neil Caldwell directing

him to set aside a discovery order entered in two asbestos personal injury suits. We conditionally grant the writ.

The Relator and others were sued in Brazoria County in two asbestos personal injury actions. [1] On June 19, 1989, Relator was served with Plaintiffs' First Request for Production in Heathman (Heathman I). This request sought production of documents relating to the Asbestos Task Force which was set up to determine strategies for defending asbestos actions nationwide. The request also sought documents from *Keene Corporation v. Insurance Corp. of N. Am.,* No. 78–1011 (D.C.Dist.Ct. Mar. 30, 1984) (hereinafter *Keene v. INA* ), a lawsuit brought in federal court by Relator against its insurance carriers. The documents in that suit had previously been ordered sealed by the federal court. Relator responded to this request with objections and asserted the attorney-client communication privilege, the work product exemption, other applicable privileges, and argued that the federal protective order exempted the documents from discovery. The plaintiffs filed a Motion to Compel. A hearing was held and as a result, the court signed an order on December 20, 1989, requiring Relator to produce the requested documents for an *in camera* inspection by the Special Master.

[1]  The suits are styled *Tommie L. Heathman v. Owens–Corning Fiberglas Corp., et al.,* No. 87–C–1934, and *Sherman A. Searls v. Owens–Corning Fiberglas Corp., et al.,* No. 88–C–0615.

On May 14, 1990, plaintiffs served Relator with their Second Request for Production in Searls (Searls II). This request also sought documents from *Keene v. INA.* Specifically, the request sought production of thirty-three depositions and exhibits. Again, Relator asserted the attorney-client communication privilege and the work product exemption, and also claimed protection under the federal order. In support of its claims of privilege, Relator submitted the affidavits of Irene Warshauer, a member of the law firm which is defending Relator in asbestos suits nationwide, and Howard Meleaf, vice-president and general counsel of the Keene Corporation. Ultimately, Relator agreed to produce all but three of the requested depositions. The depositions not produced were those of Charles A. Piano and Robert E. Kloiber, account analysts for Aetna Casualty & Surety Co., and S. Edward Marek, Asbestos Project Coordinator for Aetna Casualty & Surety Co.

On August 17, 1990, Relator was served with Plaintiffs' Third Request for Productions in Searls (Searls III). This request sought documents from a list entitled "Documents

Withheld from Production of Liberty Mutual Documents by Keene Corporation on the Basis of Attorney/Client Privilege ("A/C"), Work Product Doctrine ("WP"), or Coordination of Defense of Underlying Cases ("CD"). Relator again asserted attorney-client communication privilege, **\*718** work product exemption, and other applicable privileges. Plaintiffs filed a Motion to Compel, and at a hearing based on that motion, Relator submitted the affidavit of Kent Withycombe, a member of a law firm representing Relator in an insurance coverage suit, in support of the privileges. Relator then filed a Motion for Protection asserting its privileges.

The Respondent stayed the issuance of any discovery order pending the outcome of _Owens–Corning Fiberglas Corp. v. Caldwell,_ 818 S.W.2d 749 (Tex.1991). [2] After the supreme court's decision, Respondent's Special Master reconsidered the documents on light of the holding and submitted her recommendations to Respondent in a proposed order. Relator filed objections to the proposed order. A hearing was held before Respondent on May 5, 1992. At this hearing, Relator reurged its objections to the proposed order. On May 22, 1992, the court issued an order requiring Relator to produce portions of the documents requested by the plaintiffs. The order stated that the documents were to be produced because: (1) evidence within the documents is relevant or reasonably calculated to lead to the production of relevant evidence; or (2) the documents contain factual recitations that do not contain the mental processes, conclusions or legal theories of an attorney. As to the privileges claimed by Keene, the order stated that the documents ordered to be produced did not on their face reveal themselves to qualify based on the claim of privilege asserted. In response to a motion filed by Relator, Respondent signed an order on June 19, 1992, staying the time for compliance with the May 22 order so that Relator could seek appellate review. The May 22 order is the subject of this mandamus proceeding.

[2] In _Owens–Corning,_ the Texas Supreme Court considered the duration of the attorney work product exemption. 818 S.W.2d at 749. The court held that the work product exemption in Texas is of continuing duration. _Id._ at 751–52.

 **[1]**     **[2]**     **[3]**     In determining whether the writ of mandamus should issue, we must determine whether the trial court clearly abused its discretion and whether Relator has an adequate remedy by appeal. _Walker v. Packer,_ 827 S.W.2d 833, 839–40 (Tex.1992). A trial court clearly abuses its discretion if "it reaches a decision so arbitrary and

unreasonable as to amount to a clear and prejudicial error of law." _Id._ at 839 (quoting _Johnson v. Fourth Court of Appeals,_ 700 S.W.2d 916, 917 (Tex.1985)). The supreme court went on to state that this standard has different applications in different circumstances. _Id._ The resolution of factual issues is committed to the trial court's discretion and the reviewing court may not substitute its judgment for that of the trial court. _Id._ The Relator must establish that the trial court could reasonably have reached but one decision. _Id._ at 840. Even if the reviewing court would have decided the issue differently, it cannot substitute its decision for that of the trial court unless the decision is shown to be arbitrary and unreasonable. _Johnson,_ 700 S.W.2d at 918.

 **[4]**     Review of a trial court's determination of the legal principles controlling its ruling, however, is far less deferential. _Walker,_ 827 S.W.2d at 840. A trial court has no discretion in determining what the law is or applying it to the facts. _Id._ Therefore, a failure by the trial court to analyze or apply the law properly will constitute an abuse of discretion. _Id._

 **[5]**     In the present case, the issue is whether the Respondent properly applied the law of privileges to the documents sought to be discovered. Therefore, under _Walker,_ we treat the trial court's order to produce with limited deference.

Relator established a prima facie showing of attorney-client communication privilege and attorney work product exemption as to the Heathman I and Searls III documents through the affidavits produced in support of the asserted privileges. _See Shell Western E & P, Inc. v. Oliver,_ 751 S.W.2d 195, 196 (Tex.App.—Dallas 1988, orig. proceeding). Relator established the existence and applicability of the privileges and exemption through the uncontroverted affidavits of Irene Warshauer and Kent Withycombe, attorneys for Relator's national **\*719** defense counsel. Respondent's order makes no mention of these affidavits, and thus leaves this court with the impression that they were never considered. Further evidence of this fact is found in the May 22 order itself. In it, the trial court states:

> Except as specifically set out below, documents ordered produced did not on their face reveal themselves to qualify as exempt or immune documents based on the claims of privilege made for them.

The language used by Respondent shows that while the documents themselves were considered, the affidavits supporting the claimed privileges were not.

 **[6]**  **[7]**  **[8]**  The affidavits are clearly uncontroverted evidence in support of the Relator's objections to the discovery requests. Texas Rule of Civil Evidence 503(b) precludes the discovery of communications between attorney and client. TEX.R.CIV.EVID. 503(b). Under the rule, a client has the privilege to refuse to disclose and prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of legal services to the client. *Id.* This privilege applies not only to communications between the client and the attorney and his representative, but also to communications between:

(1) the client's representative and the attorney or the attorney's representative;

(2) the attorney and the attorney's representative;

(3) the client, his representative, his attorney and an attorney representing another party in the pending action and concerning a matter of common interest;

(4) representatives of the client, and the client and his representatives;

(5) attorneys and their representatives representing the same client.

*Id.* Also, under TEX.R.CIV.P. 166b(3)(a), the work product of an attorney is exempt from discovery. As with the attorney-client communication privilege, the work product exemption extends not only to documents actually generated by the attorney, but also to memoranda, reports, notes, or summaries of interviews, etc. prepared by other persons for an attorney's use. *Toyota Motor Sales USA, Inc. v. Heard,* 774 S.W.2d 316, 318 (Tex.App.—Houston [14th Dist.] 1989, orig. proceeding).

 **[9]**  The submitted affidavits establish the elements required under the attorney-client communication privilege and the work product exemption. In fact, the affidavits specifically reference the documents in question. Sufficient uncontroverted evidence was presented in the affidavits to justify Relator's claim of attorney-client communication privilege and work product exemption as to the Heathman I and Searls III documents. Thus, the trial court erred in ordering these documents to be produced.

 **[10]**  Respondent's order stated that the grounds for holding the documents discoverable was that information in the documents was relevant or that the documents contained factual recitations that did not constitute an attorney's mental impressions, legal advice, or opinions. Thus, the order is in effect creating new limitations on TEX.R.CIV.EVID. 503(b) and TEX.R.CIV.P. 166b(3)(a). Neither of these rules requires that the communication or the work product contain an attorney's mental impressions, legal advice, or opinions in order to retain their privileged nature. The purpose of the attorney-client communication privilege is "to promote the unrestrained communications between an attorney and client in matters where the attorney's advice and counsel were sought by insuring the communications will not be subject to subsequent disclosure." *Maryland American Gen. Ins. Co. v. Blackmon,* 639 S.W.2d 455, 458 (Tex.1982). It is unarguable that the privilege attached not only to legal advice but also to the complete communication. *See DeWitt & Rearick, Inc. v. Ferguson,* 699 S.W.2d 692, 693 (Tex.App.—El Paso 1985, no writ). If the rules were limited to only legal advice and an attorney's mental impressions and opinions, the privilege would be destroyed. No client would ever dare give an attorney factual information regarding his case for fear that information would be subject to discovery by his opponent.

 **\*720**  **[11]**  **[12]**  The subject matter of the information communicated between attorney and client and of the work product generated by an attorney is of no concern in determining whether the privilege or exemption is applicable to the documents. The Respondent erred in distinguishing between the documents based on their contents as opposed to the fact that the documents constituted communications between attorney and client under TEX.R.CIV.EVID. 503(b) and work product under TEX.R.CIV.P. 166b(3)(a). If a document is privileged or exempted from discovery under the rules, the fact that certain information within the documents may be discoverable through other means does not overcome the privilege.

In their second request for production, the real parties in interest sought access to certain depositions given in *Keene v. INA.* In 1978, Keene sued its insurance carriers in federal court to recover the defense and indemnity costs for over 70,000 asbestos personal injury and property damage lawsuits. *Keene Corp. v. Cass,* 908 F.2d 293, 295 (8th Cir.1990). Subject to a protective order issued in that case, Keene and others produced documents and allowed

depositions to be taken relating to the defense of the personal injury suits.

The real parties in interest in this suit sought production of thirty-three of the depositions given in *Keene v. INA.* Keene ultimately produced all but three of the requested depositions. The depositions not produced are not depositions of Keene employees. The depositions in question are those of employees of insurance carriers who were parties in the federal suit.

The question before us is whether it is proper for a court to ignore a protective order issued by another court and order protected documents produced. This court has been unable to find any Texas law directly confronting this issue, however, we believe that it would be wholly improper to allow such an act.

 **[13]**    Reliance on a protective order is a factor which should be given great weight when a court determines whether a protective order should be later vacated or modified. *Omega Homes, Inc. v. Citicorp Acceptance Co.,* 656 F.Supp. 393 (W.D.Va.1987). This is especially true when one court is considering vacating the order of another court. During the *Keene v. INA* litigation, the parties allowed certain evidence to be disclosed because they believed the evidence to be secure under the protective order. It would be unfair to tell those parties, fourteen years later, that their reliance was misplaced. It would frustrate the discovery process because parties would fear that any protective order issued could later be vacated by another court.

 **[14]**    **[15]**    **[16]**    **[17]**    **[18]**    Further, we believe a situation such as this goes to the very heart of the concept of comity. Comity is a principle in which the courts of one state or jurisdiction will give effect to the laws and judicial decisions of another, not as a matter of obligation, but out of deference and respect. *Black's Law Dictionary* 242 (5th ed. 1979). To allow one court to intrude upon the orders of another is not in the interest of judicial economy and is inappropriate without concrete public policy concerns. We hold that the principle of comity is applicable here and that deference should be given to the federal protective order. There are no overriding public policy concerns that dissuade us from this decision. We also hold that the full faith and credit clause of the United States Constitution requires that the federal protective order be enforced. The full faith and credit clause of the United States Constitution applies to enforcement of federal judgments in state courts. *Bigelow v. Old Dominion Copper Mining and Smelting Co.,* 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009 (1912). A protective order, especially one that is relied on by the parties, is entitled to full faith and credit protection. *But see ACandS v. Askew,* 597 So.2d 895, 898 (Fla.App. 1 Dist.1992) (holding that a modifiable and non-final order not entitled to full faith and credit).

Therefore, we hold that based on the principle of comity and the full faith and credit clause, the trial court abused its discretion in ordering Keene to produce documents protected by the federal order.

 **\*721**    **[19]**    The arguments made by the real parties in interest regarding the crime-fraud exception are outside the record. There is no indication that this was the basis for the trial court's May 22 order. In fact, the order is clear as to its basis, and the crime-fraud exception is never even alluded to by the court. Any suggestion that this was a basis for overruling Keene's claims of privilege is purely speculative and outside the record.

Now that we have determined that the Respondent abused his discretion in ordering the documents produced, we must further decide whether the Relator has an adequate remedy by appeal.

 **[20]**    **[21]**    **[22]**    Mandamus is intended to be an extraordinary remedy. *Walker,* 827 S.W.2d at 840. As such, it is available only in limited circumstances. *Id.* A writ of mandamus will issue "only in situation involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." *Id.* (quoting *Holloway v. Fifth Court of Appeals,* 767 S.W.2d 680, 684 (Tex.1989). The requirement that those seeking mandamus relief demonstrate the lack of an adequate appellate remedy is a "fundamental tenet" of mandamus law. *Id.* In *Walker,* the supreme court discussed several situations in the discovery context wherein a party will not have an adequate remedy by appeal. One of the situations discussed concerned the situation where a trial court orders the disclosure of privileged information. *Id.* at 843. The court stated that a party will not have an adequate remedy by appeal when the trial court erroneously orders the disclosure of privileged information which will materially affect the rights of the aggrieved party. *Id.* The court, citing *West v. Solito,* 563 S.W.2d 240 (Tex.1978), held that one such situation occurs when the trial court orders documents to be produced that are covered by the attorney-client communication privilege. *Id.* The same reasoning applies to the documents constituting attorney work product.

Therefore, under *Walker,* it is clear that Relator has no adequate remedy by appeal. If the documents are produced to the real parties in interest, the damage will be done and no appeal could ever remedy the situation.

The trial court abused its discretion in ordering Relator to produce the documents requested by the real parties in interest. The affidavits submitted in support of the claims of privilege and exemption were uncontroverted and sufficient to establish the objections raised by Relator as to the Heathman I and Searls III documents, and the federal protective order covers the depositions in Searls II.

Accordingly we conditionally grant the relief requested in the petition for writ of mandamus. The Honorable Neil Caldwell, Judge of the 23rd Judicial District Court of Brazoria County is directed to vacate his order of May 22, 1992 ordering the production of the documents in Heathman I and Searls II and III. We assume Respondent will comply with the directions contained in the opinion, and mandamus will issue only if he fails to comply.

**All Citations**

840 S.W.2d 715

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

872 S.W.2d 837
Court of Appeals of Texas,
Waco.

Norman KESSELL, Thomas McGinnis
and Warren Kuberry, Relators,
v.
Honorable Wayne BRIDEWELL, Judge, 249th
District Court, Johnson County, Texas, Respondent.

No. 10–94–030–CV.  |  March 23, 1994.

Employees of insurer which was defendant in action alleging bad faith petitioned for writ of mandamus, challenging trial court's decision to allow claimants against insurer to discover employees' performance evaluation records. The Court of Appeals, Vance, J., held that: (1) employees who were not parties to suit against insurer had standing to assert right of privacy in records; (2) employees did not establish in trial court that they had such privacy interest in records sought from insurer as to compel nondisclosure; and (3) trial judge was justified in determining that records might assist claimants in discovering other evidence in insurer's possession that would be admissible in support of their claims of bad faith.

Petition denied.

**Attorneys and Law Firms**

**\*838** Katherine J. Gilliam, Beard & Kultgen, Waco, Jenks Garrett, Garrett & Holland, Arlington, **\*839** John MacLean & Dan Boulware, MacLean & Boulware, Cleburne, for plaintiffs, real parties in interest.

Mike Morris and Dimitri Zgourides, Tekell, Book, Matthews & Limmer, L.L.P., Houston, for relators.

Dennis W. Bridewell, Cleburne, respondent.

Before CUMMINGS and VANCE, JJ., and JOHN A. JAMES, J. (Retired).

**OPINION**

VANCE, Justice.

In this mandamus proceeding, we must decide (1) whether non-parties asserting their rights of privacy in documents that are otherwise discoverable have standing to seek mandamus review of an adverse order and (2) whether the employees of an insurance company have established their privacy interests in their employer's "performance-evaluation records" to an extent sufficient to prevent disclosure to the plaintiffs in a bad-faith suit. Because we find that the employees have standing but have not established their privacy interests in the records in question, we deny the petition for writ of mandamus.

**FACTUAL BACKGROUND**

Relators, Norman Kessel, Thomas McGinnis and Warren Kuberry, employees of Safeco Insurance Company of America, seek relief from an order entered by the Honorable Wayne Bridewell allowing discovery of their performance-evaluation records. *See* TEX.GOV'T CODE ANN. § 22.221(a) (Vernon 1988); TEX.R.APP.P. 121. Safeco and Kessel are defendants in a suit in the 249th Judicial District Court brought by the real parties in interest in this proceeding, Ernest T. Wightman and Dorothy Wightman, Individually and on behalf of the Estate of Jennifer Leigh Wightman. The Wightmans sued Safeco for underinsured motorist's benefits (UIM claim) after their daughter died in an automobile accident with a drunk driver that occurred in September 1987. They sued Safeco and Kessel for bad faith in the handling of the UIM claim. Respondent has ordered that separate trials be held on the Wightmans' contract and tort claims.

Relators—employees who played a part in the denial of the Wightmans' UIM claim—fought production of the performance-evaluation records in the trial court and, when Respondent ordered them produced after an *in camera* inspection, filed a motion for leave to file a petition for writ of mandamus in this court. They assert that Respondent abused his discretion in ordering that the records be turned over to the Plaintiffs because the records would be irrelevant to any of the Wightmans' claims and because the contents of the records are protected by the employees' constitutionally-based privacy interests.

**STANDING**

The Wightmans first urge us to hold that Relators do not have standing to assert their position in this court. After Safeco

objected to production of the employees' records, the court held a hearing, and Safeco agreed to tender the records for an *in camera* inspection. [1] The employees then appeared through their own attorney to further object to production of the records on privacy and relevancy grounds, and the court held another hearing. After the court ordered the records produced, the employees sought relief in this court.

[1] Although we granted Safeco leave to file a petition for writ of mandamus complaining of other orders issued by Respondent, the company did not bring the employees' privacy claims to this court. We denied the petition in an unpublished opinion. *Safeco Insurance Company of America v. Hon. Wayne Bridewell, Judge,* No. 10–94–029–CV (Tex.App.—Waco 1994, orig. proceeding).

**[1]** Kessel is a party to the underlying suit; McGinnis and Kuberry are not. Rule 166b(4) and (5), relating to objections and protective orders, speak of "a party," "a party to discovery," and "any person against or from whom discovery is sought." TEX.R.CIV.P. 166b(4), (5). The performance evaluation records were sought from Safeco, a party, not from McGinnis and Kuberry.

We have found no case in which a non-party has been granted standing to assert a right of privacy in records in the possession **\*840** of and belonging to another. The cases cited by Relators involve (1) persons in possession of documents asserting their own rights or (2) persons in possession of documents asserting rights *on behalf of* other persons. *See, e.g., Peeples v. Hon. Fourth Supreme Judicial Dist.,* 701 S.W.2d 635, 636 (Tex.1985) (orig. proceeding) (corporation and its president asserting privilege on behalf of the corporation); *Industrial Foundation v. Texas Indus. Acc. Bd.,* 540 S.W.2d 668, 678–81 (Tex.1976) (Industrial Accident Board's statutory authority to assert right of privacy of claimants' whose files were in its custody); *Tarrant County Hosp. Dist. v. Hughes,* 734 S.W.2d 675, 677 (Tex.App.—Fort Worth 1987, orig. proceeding) (hospital asserting privacy rights of its blood donors); *Channel Two Television Co. v. Dickerson,* 725 S.W.2d 470, 471 (Tex.App.—Houston [1st Dist.] 1987, orig. proceeding) (television station asserting free-speech and free-press rights of its reporter).

**[2]** Nevertheless, we believe that the terms "party," "party to discovery," and "person against or from whom discovery is sought" are broad enough to include McGinnis and Kuberry. *See* TEX.R.CIV.P. 166b(4), (5). It would be incongruous for us to hold that Safeco can assert a claim of privacy on behalf of its employees but that the employees themselves have no

standing to assert a constitutional claim that is personal to them. Thus, we hold that one who challenges discovery in the trial court by asserting a constitutional claim of the right of privacy has standing to seek relief from an adverse order by applying for leave to file a petition for writ of mandamus.

## THE RECORDS

The Wightmans' bad-faith cause of action is founded upon the manner in which their UIM claim was handled. Neither party contends that the records are discoverable for the trial of the contract claims. Because Respondent has ordered that the contract claims be tried separately from the tort claims and plaintiffs' counsel has represented that the contract claims will be tried first, we are not concerned with discoverability for that trial. Counsel for the employees have argued that, while the evaluations might be discoverable on the tort claims if they expressly mentioned the handling of the Wightmans' claim, the records make no mention of the claim.

## STANDARD OF REVIEW

**[3] [4]** Mandamus is the proper remedy to correct the violation of a duty imposed by law when there is no other adequate legal remedy. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985) (orig. proceeding). On mandamus review of a trial court's determination of legal principles, failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion that may result in appellate reversal. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992) (orig. proceeding). In determining whether the trial court abused its discretion in denying the privacy claims, we will treat the decision as a legal conclusion to be reviewed with limited deference to the trial court. *See id.* Using this analysis, an abuse of discretion will be found if the trial court's interpretation of the law was erroneous. *See id.*

**[5]** To determine whether the writ should issue, we must also determine whether Relators have an adequate remedy by appeal. *See id.* Mandamus will not issue where a clear and adequate remedy at law, such as a normal appeal, exists. *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 919 (Tex.1991) (orig. proceeding). "Without this limitation, appellate courts would 'embroil themselves unnecessarily in incidental pre-trial rulings of the trial courts' and mandamus 'would soon cease to be an extraordinary writ.' " *Walker,* 827 S.W.2d at 842 (citing *Braden v. Downey,* 811 S.W.2d 922, 928 (Tex.1991)). "Interference is justified

only when parties stand to lose their substantial rights." *Id.* (citing *Iley v. Hughes,* 158 Tex. 362, 311 S.W.2d 648 (1958)). Cost or delay of having to go through the trial and appellate process does not make the remedy at law inadequate. *Id.* (citing *Hooks v. Fourth Court of Appeals,* 808 S.W.2d 56, 59 (Tex.1991)).

## **\*841  WAIVER**

**[6]**    The Wightmans urge us to hold that Relators waived their objections because they did not file them within the thirty days required by the rules. *See* TEX.R.CIV.P. 167. Because Respondent allowed them to present their objections at a hearing, we will not address the waiver question.

## ADEQUATE REMEDY AT LAW

**[7]**    Once an order disclosing the records had been carried out, Relators would have no means to regain their privacy, even if they won an appeal. [2] We hold that an appeal is not an adequate remedy to relieve one from the effects of an order requiring disclosure of information protected by constitutional privacy rights. *See Methodist Home v. Marshall,* 830 S.W.2d 220, 223 (Tex.App.—Dallas 1992, orig. proceeding).

[2]    As my son Bill is fond of saying, "You can't unring a bell."

## PRIVACY RIGHTS

"A court order which compels or restricts pretrial discovery constitutes State action which is subject to constitutional limitations." *Tarrant County Hosp. Dist.,* 734 S.W.2d at 679 n. 3 (citing *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)).

**[8]**    Evidence is generally discoverable under our rules of procedure. *Peeples,* 701 S.W.2d at 637. However, Rule 166b(4) recognizes the right to seek to exclude documents on the basis of *personal, constitutional, or property rights.* TEX.R.CIV.P. 166b(4). Relators had the burden of producing evidence in the trial court that supported their assertions of privacy. *See Loftin v. Martin,* 776 S.W.2d 145, 147 (Tex.1989) (orig. proceeding); *Methodist Home,* 830 S.W.2d at 224; *State Farm Mut. Auto. Ins. Co. v. Engelke,* 824 S.W.2d 747, 749 (Tex.App.—Houston [1st Dist.] 1992, orig. proceeding); TEX.R.CIV.P. 166b(4). Absent such proof, they have failed to establish an abuse of discretion. *Weisel*

*Enterprises, Inc. v. Curry,* 718 S.W.2d 56, 58 (Tex.1986) (orig. proceeding).

**[9]**    In *Industrial Foundation of the South v. Texas Industrial Accident Board, et al.,* the Board refused to release information concerning workmen's compensation claimants, asserting a constitutional right of privacy on behalf of the claimants whose files were in its custody. *Industrial Foundation,* 540 S.W.2d at 679. Our Supreme Court recognized two meanings for the term "right of privacy." *Id.* The first concerns "the ability of individuals to determine for themselves whether to undergo certain experiences or to perform certain acts—*autonomy.*" *Id.* The second—involved here—is "the ability of individuals 'to determine for themselves when, how, and to what extent information about them is communicated to others'—the right to control information, or *disclosural privacy.*" *See id.* "Just as the State's intrusion into the individual's zones of privacy must be carefully limited, so must the State's right to reveal private information be closely scrutinized as well." *Id.* Marital relations, procreation, contraception, family relationships, and child rearing and education are among the interests that deserve constitutional protection. *Id.* at 680. An individual's medical records have also been declared to be within a zone of privacy protected by the Federal Constitution. *Tarrant County Hosp. Dist.,* 734 S.W.2d at 679.

Relators did not testify at the hearing. The only witness was Randall Day, who is the claims manager for Safeco. Day testified that he was McGinnis' and Kuberry's supervisor and, as such, conducted the performance reviews of those employees. Kuberry, as his supervisor, would have conducted Kessel's performance review. Day testified that the reviews are "confidential," *i.e.,* they are not available to other employees of Safeco, and that the discussions with the employees include salary, personal and professional goals for and with the company, grooming, and professionalism. He said that the performance-evaluation records do not mention the Wightmans' claims in any way.

To obtain protection, the party resisting discovery must show "a particular, articulated and demonstrable injury, as opposed to conclusory allegations." **\*842** *Garcia v. Peeples,* 734 S.W.2d 343, 345 (Tex.1987) (orig. proceeding). Although information contained in employment records might, under some circumstances, be included within the protected zone of privacy, Relators did not establish in the trial court that they had such a privacy interest in the information contained in the records as to compel non-disclosure. Thus Respondent acted

within his discretion, and mandamus will not lie. *See Walker, 827 S.W.2d at 839–40.*

**RELEVANCY**

We now turn to Relators' assertion that the records are not relevant to any issue to be tried. In doing so we do not necessarily recognize the standing of McGinnis and Kuberry to make this argument—it is sufficient that Kessel, as a party, has standing to do so. We have already stated that, because of the separate trials order, we are not concerned with the trial of the contract claims. We will discuss whether the records are discoverable in the tort suit.

 **[10]**   Courts liberally construe the "relevant to the subject matter" and "reasonably calculated to lead to admissible evidence" tests that are part of Rule 166b. *Axelson, Inc. v. McIlhany,* 798 S.W.2d 550, 553 (Tex.1990) (orig. proceeding); TEX.R.CIV.P. 166b(2)(a). The purpose of liberal construction is to allow litigants to obtain the fullest knowledge of the facts and issues before trial. *Axelson, Inc.,* 798 S.W.2d at 553. Admissibility is not the test. *Id.* The issue is whether the information sought is reasonably calculated to lead to admissible evidence. *Id.*

 **[11]**    **[12]**    The trial judge has broad discretion in determining questions of discovery. *Loftin,* 776 S.W.2d at 146. Respondent was justified in determining that the performance-evaluation records might assist the plaintiffs in discovering other evidence in Safeco's possession that would be admissible in support of their claims of bad-faith on the part of Kessel or the company. Having held that Relators did not establish a privacy-rights reason to withhold the records from plaintiffs, we cannot say that Respondent abused his discretion in allowing them to be discovered. *See id.; Walker, 827 S.W.2d at 839–40.*

**CONCLUSION**

In arriving at our conclusion, we assume that Respondent will not deliver the records to the plaintiffs before the trial of the contract claims. Because Relators have not demonstrated that Respondent abused his discretion in ordering that the performance-evaluation records are discoverable, we deny the petition for writ of mandamus.

**All Citations**

872 S.W.2d 837

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

**Declined to Follow by**   Purdue Pharma L.P. v. Combs,   Ky.App.,
February 28, 2014

827 S.W.2d 833
Supreme Court of Texas.

Charles F. WALKER and Mary
Jeanette Walker et al., Relators,

v.

The Honorable Anne PACKER, Judge, Respondent.

No. C–9403.   |   Feb. 19, 1992.   |   Rehearing
Overruled May 6, 1992.   |   Dissenting
Opinion by Justice Gammage May 7, 1992.

Parents of child born with brain damage, who had brought action against obstetrician, hospital where child was born, and nurse attending at delivery, brought petition for writ of mandamus arguing that the trial court abused its discretion by refusing to order hospital to produce documents from its insurer's files and by ordering that portions of other responsive documents be stricken. The Supreme Court, Phillips, C.J., held that: (1) plaintiffs had not presented sufficient record to demonstrate that trial court clearly abused its discretion in failing to grant plaintiffs requested discovery from one of defendants, and (2) plaintiffs had adequate remedy by way of appeal as to documents they sought from nonparty for impeachment purposes.

Petition denied.

Gonzalez, J., concurred with opinion.

Doggett, J., dissented with opinion in which Mauzy, J., joined.

Gammage, J., dissented with opinion.

**Attorneys and Law Firms**

 **\*835**  Les Weisbrod and Michael S. Box, Dallas, for relators.

Philipa Remington, Stephen W. Johnson, James A. Williams, Kevin J. Keith, Martha L. Strother, Gary W. Sibley, Dallas and Delmar L. Cain, Austin, for respondent.

**OPINION**

PHILLIPS, Chief Justice.

This original mandamus action involves two pre-trial discovery requests sought by **\*836** relators, plaintiffs in a medical malpractice lawsuit. The first discovery dispute involves documents which the plaintiffs seek from one of the defendants, while the second involves documents which they seek from a nonparty for impeachment purposes. As to the first matter, we hold that relators have not presented a sufficient record to demonstrate that the trial court clearly abused its discretion in failing to grant them all requested relief. As to the second, we hold that relators have an adequate remedy by appeal. Thus, mandamus is inappropriate, and we deny the writ.

*The St. Paul and Aetna Records*

Catherine Johanna Walker sustained brain damage at birth in January 1983. In January 1985, her parents, Charles F. and Mary Jeanette Walker, sued Dr. Paul Crider, the obstetrician, St. Paul Hospital, where Catherine was born, and Iris Jean White, a nurse attending at the delivery.

In August 1987, the Walkers served on St. Paul their third request for production of documents pursuant to Tex.R.Civ.P. 167. One request asked for:

> Any and all writings, notes, documents, letters, etc., concerning, mentioning, alluding to, or making reference to (either directly or indirectly), the tape recorded statement given by Nurse White to an Aetna adjuster, including but not limited to any notes or entries in any Aetna adjuster's file, any attorney's file, or any file or writing in possession of any employee, representative or agent of St. Paul Hospital. This request is in reference to the tape recorded statement which you have been unable to locate, but which was previously requested....

St. Paul responded as follows:

In an effort to respond to this request, this Defendant again checked with all appropriate personnel and files at St. Paul Hospital and the law firm of Bailey and Williams. No such statement or taped recording was found. For the third time the Aetna Casualty and Surety Company was asked to check its records and files and a partially transcribed statement was located, a copy of which is attached. No taped recording was located.

Nearly two years later, the Walkers filed a motion to compel under Tex.R.Civ.P. 215, asserting that St. Paul failed to respond completely to the request.[1] The Walkers complained that "St. Paul Hospital did not even respond to what was requested in the request for production—that is, writings, notes, and notations in the adjuster's file or attorney's file mentioning, alluding to, or making reference to the tape recorded statement of Nurse White." At about the same time, the Walkers also served on Aetna Casualty and Surety Company, St. Paul's insurer, an "Amended Notice of Intention to Take Deposition Upon Written Questions —Duces Tecum," seeking, among other things, the same documents. Aetna moved to quash the notice.

[1]  St. Paul contends that the Walkers' request for mandamus relief is barred by laches since the Walkers delayed almost two years before seeking to compel production. Because we find that the Walkers have failed to establish the requirements for mandamus relief, we do not reach this issue.

The trial judge appointed a special master to review the Walkers' motion to compel and Aetna's motion to quash. After an evidentiary hearing on September 5, 1989, the master prepared findings, which formed the basis for two extensive orders signed by the trial court on September 20, 1989. In the first order, the court found that the Walkers were "entitled to all documentation sought in [the request] from the files of Defendant St. Paul or its attorney of record, but not from the files of Aetna Insurance Company, except as they may appear in the files of St. Paul or the attorneys of record of St. Paul." The court also stated that it "has been advised that St. Paul has supplied all documentation that is responsive to [the request], but that additional documentation will be made available **\*837** to the Court for in camera review." The court therefore *sustained* the Walkers' motion to compel "to the

extent that on Friday, September 8, 1989 the Special Master will review in the Chambers of the 134th District Court the relevant portions of the St. Paul files and their attorney [sic] files, which may be in response to Plaintiff's request...." The court, however, did not order St. Paul to produce documents from Aetna's files for *in camera* inspection.[2]

[2]  The court also sustained Aetna's motion to quash, holding that the discovery requested was improper under the investigation exemption, the attorney-client privilege, and the work-product privilege. The Walkers do not complain to us about this ruling.

After the master's September 8 *in camera* inspection, the court ordered discovery of three additional documents from the files of St. Paul and its attorneys, which it found "relate to the matters sought in discovery and should be supplied after irrelevant portions of such documents are stricken."

After unsuccessfully seeking relief in the court of appeals, the Walkers moved for leave to file a petition for writ of mandamus with this court, arguing that the trial court clearly abused its discretion by refusing to order St. Paul to produce the documents from Aetna's files and by ordering that portions of the other responsive documents be stricken. The Walkers contend that the order was a clear abuse of discretion because St. Paul 1) never objected to the Walkers' request for production, 2) had a superior right to the Walkers to compel production of the documents in Aetna's possession, and 3) never asked that any parts of the documents be excised.

The record before us does not include the statement of facts from the evidentiary hearing on the Walkers' motion to compel production. Without it, we cannot determine on what basis the trial judge and the special master reached their conclusions. Since we cannot assess whether or not the trial court's order was correct, we obviously cannot take the additional step of determining that the court's order, if incorrect, constituted a clear abuse of discretion.

**[1]** **[2]** **[3]**  As the parties seeking relief, the Walkers had the burden of providing this Court with a sufficient record to establish their right to mandamus relief. Since an evidentiary hearing was held, the Walkers had the burden of providing us not only a petition and affidavit, *see* Tex.R.App.P. 121(a) (2)(C) and (F), but also a statement of facts from the hearing. *See, e.g., Cameron County v. Hinojosa,* 760 S.W.2d 742, 744 (Tex.App.—Corpus Christi 1988, orig. proceeding); *Greenstein, Logan & Co. v. Burgess Mktg. Inc.,* 744 S.W.2d 170, 177 (Tex.App.—Waco 1987, writ denied); *see also*

*Western Casualty & Surety Co. v. Spears,* 730 S.W.2d 821, 822 (Tex.App.—San Antonio 1987, orig. proceeding). [3] Having failed to meet this burden, the Walkers have not provided us with a record upon which they can establish their right to mandamus relief against St. Paul.

[3]     Even if no evidence had been presented, the Walkers would have had the burden of filing an affidavit so stating. *See Barnes v. Whittington,* 751 S.W.2d 493, 495 (Tex.1988) ("The undisputed fact that no testimony was adduced at any of the hearings, as set forth in the affidavit of relator's counsel, satisfies the relator's burden under Rule 121.").

### *The Obstetrics Faculty Records*

**[4]**     The second discovery dispute arises out of the Walkers' attempt to secure documentary evidence to impeach one of the defendants' expert witnesses, Dr. Larry Gilstrap, a faculty member in obstetrics at the University of Texas Health Science Center at Dallas ("the Center"). Gilstrap testified at his deposition that expert witness fees earned by obstetrics faculty members are deposited into a "fund" in the obstetrics "billing department"; that obstetrics faculty members get paid "indirectly" from this fund; that the fund is handled by Judy Wagers, a Center employee; and that he was unaware of any obstetrics department policy restricting faculty members from testifying for plaintiffs in medical malpractice cases.

**\*838**     Thereafter, the Walkers noticed Wagers' deposition, requesting that she provide all documents regarding (1) the operation of the above-mentioned "fund" from 1985 to 1988; and (2) limitations placed upon obstetrics faculty members relating to their testimony in medical malpractice cases. The Center, on behalf of Wagers, moved to quash the notice, arguing that the request for documents was "vague and overly broad" and that production would be "costly and burdensome."

Two months later, in an unrelated lawsuit, the Walkers' counsel deposed Dr. Alvin L. Brekken, another obstetrics faculty member at the Center. Dr. Brekken testified that the obstetrics department's official policy, distributed in writing to all faculty members, requires a doctor to obtain authorization from other faculty members before testifying for any plaintiff in a medical malpractice case. Based on this testimony, the Walkers sought a court order to depose Wagers and obtain the requested documents.

After reviewing the Gilstrap and Brekken depositions and pleadings of counsel, the trial court ordered the Center to produce the documents for *in camera* review by the special master. Subsequently, in her September 20, 1989 order, the trial judge denied the discovery, stating in part:

> [S]uch requested discovery is improper pursuant to the Rulings of the Supreme Court of Texas in *Russell v. Young* [452 S.W.2d 434 (Tex.1970) ], as the potential witness is not a party to the suit and the records do not relate to the subject matter of the suit, but are sought solely for the purpose of impeachment, according to the Plaintiffs' pleadings.

Although noting that some of the documents "would be relevant to this cause of action," the court nevertheless denied discovery because "all such documents are controlled by the *Russell* decision."

In *Russell,* a party sought wholesale discovery of financial records of a potential medical expert witness who was not a party to the lawsuit. [4] The documents requested did not relate directly to the subject matter of the suit, but were sought solely in an attempt to impeach the potential witness by showing bias or prejudice. The credibility of the witness, however, had not yet been put in doubt. Under these circumstances, we held that the documents were not discoverable, and we directed the trial court to vacate its order allowing the requested discovery. 452 S.W.2d at 435. We reasoned that "[t]here is ... a limit beyond which pre-trial discovery should not be allowed." *Id.* at 437.

[4]     The records sought in *Russell* included, among others:
> (2) All appointment books maintained by [the expert physician] during 1969;
> (3) All statements, listings, ledgers, or other books showing the accounts receivable of [the expert physician] during 1969;
> (4) All deposit slips or tickets showing deposits into bank accounts of [the expert physician] during 1969;
> (5) All statements, listings, ledgers, journals, or other books showing receipt of payments, either in cash, by check or by any other means [by the expert physician] during 1969;
> (6) All statements of account or bills for services rendered [by the expert physician] during 1969;

(7) All accounting ledgers, journals or other books of account of [the expert physician] maintained during 1969; and

(8) All financial statements showing income and expenses of [the expert physician] during 1969.

452 S.W.2d at 435.

The present case is distinguishable. Here, the Walkers presented to the trial court evidence of a specific circumstance—the Center's policy restricting the faculty's freedom to testify for plaintiffs—raising the possibility that Dr. Gilstrap is biased. Thus, the Walkers are not engaged in global discovery of the type disapproved in *Russell;* rather, they narrowly seek information regarding the potential bias suggested by the witness' own deposition testimony and that of his professional colleague.

Our rules of civil procedure, and the federal rules upon which they are based, mandate a flexible approach to discovery. A party may seek any information which "appears reasonably calculated to lead to the **\*839** discovery of admissible evidence." Tex.R.Civ.P. 166b(2)(a). Evidence of bias of a witness is relevant and admissible. *See* Tex.R.Civ.Evid. 613(b).[5]

[5] Evidence of bias is not admissible if the witness "unequivocally admits such bias or interest" at trial. Tex.R.Civ.Evid. 613(b). To date, however, Dr. Gilstrap has not admitted any bias, but rather has flatly denied it. In this situation, such evidence should be discoverable.

The trial court erred in failing to apply the foregoing rules to determine whether the documents were discoverable. Instead, the trial court simply read *Russell* as an absolute bar to discovery, even though the circumstances here are quite distinguishable. In so doing, the trial court misapplied the *Russell* holding. We expressly disapprove such a mechanical approach to discovery rulings.[6]

[6] We do not decide whether the documents were properly discoverable, only that the trial court erred in denying discovery based solely on *Russell.* If the Walkers sought the documents solely to attack the credibility of Dr. Gilstrap by showing that his deposition testimony was untrue, for instance, the information would probably not be reasonably calculated to lead to the discovery of admissible evidence. *See* Tex.R.Civ.Evid. 608(b). ("Specific instances of the conduct of a witness [other than criminal convictions], for the purpose of attacking ... his credibility, may not be ... proved by extrinsic evidence.").

Having concluded that the trial court erred in denying the discovery based solely on *Russell,* we now must determine whether the appropriate remedy lies by writ of mandamus. "Mandamus issues only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law." *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985).[7] We therefore examine whether the trial court's error in the present case constituted a clear abuse of discretion and, if so, whether there is an adequate remedy by appeal.

[7] Additionally, this Court will not grant mandamus relief unless we determine that the error is of such importance to the jurisprudence of the state as to require correction. *Cf.* Tex.Gov't Code § 22.001(a)(6); Tex.R.App.P. 140(b). This issue, however, is properly resolved in deciding whether to grant leave to file the petition, not in its disposition.

**1.** *Clear Abuse of Discretion*

Traditionally, the writ of mandamus issued only to compel the performance of a ministerial act or duty. *See Wortham v. Walker,* 133 Tex. 255, 277, 128 S.W.2d 1138, 1150 (1939); *Arberry v. Beavers,* 6 Tex. 457 (1851); Helen A. Cassidy, *The Instant Freeze–Dried Guide to Mandamus Procedure in Texas Courts,* 31 S.Tex.L.Rev. 509, 510 (1990); Comment, *The Expanding Use of Mandamus to Review Texas District Court Discovery Orders: An Immediate Appeal Is Available,* 32 Sw.L.J. 1283, 1288 (1979).

Since the 1950's, however, this Court has used the writ to correct a "clear abuse of discretion" committed by the trial court. *See, e.g., Joachim v. Chambers,* 815 S.W.2d 234, 237 (Tex.1991); *Jampole v. Touchy,* 673 S.W.2d 569, 574 (Tex.1984); *West v. Solito,* 563 S.W.2d 240, 244 (Tex.1978); *Womack v. Berry,* 156 Tex. 44, 50, 291 S.W.2d 677, 682 (1956). *See generally,* David W. Holman & Byron C. Keeling, *Entering the Thicket? Mandamus Review of Texas District Court Witness Disclosure Orders,* 23 St. Mary's L.J. 365, 390 (1991); Cassidy, 31 S.Tex.L.Rev. at 510; Note, *The Use of Mandamus to Review Discovery Orders in Texas: An Extraordinary Remedy,* 1 Rev.Litig. 325, 326–27 (1981); Comment, 32 Sw.L.J. at 1290.

A trial court clearly abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals,* 700 S.W.2d at 917. This standard, however, has different applications in different circumstances.

**[5]** With respect to resolution of factual issues or matters committed to the trial court's discretion, for example, the reviewing court may not substitute its judgment for that of the trial court. *See Flores v. Fourth Court of Appeals,* 777 S.W.2d 38, 41–42 (Tex.1989) (holding that determination **\*840** of discoverability under Tex.R.Civ.P. 166b(3)(d) was within discretion of trial court); *Johnson,* 700 S.W.2d at 918 (holding that trial court was within discretion in granting a new trial "in the interest of justice and fairness"). The relator must establish that the trial court could reasonably have reached only one decision. *Id.* at 917. Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Johnson,* 700 S.W.2d at 918.

**[6]** On the other hand, review of a trial court's determination of the legal principles controlling its ruling is much less deferential. A trial court has no "discretion" in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ. *See Joachim v. Chambers,* 815 S.W.2d 234, 240 (Tex.1991) (trial court abused discretion by misinterpreting Code of Judicial Conduct); *NCNB Texas National Bank v. Coker,* 765 S.W.2d 398, 400 (Tex.1989) (trial court abused discretion by failing to apply proper legal standard to motion to disqualify counsel); *Eanes ISD v. Logue,* 712 S.W.2d 741, 742 (Tex.1986) (trial court abused discretion by erroneously finding constitutional violation).

**[7]** **[8]** In determining whether the trial court abused its discretion in the present case, we treat the trial court's erroneous denial of the requested discovery on the sole basis of *Russell* as a legal conclusion to be reviewed with limited deference to the trial court. This is consistent with our approach in previous mandamus proceedings arising out of the trial court's interpretation of legal rules. *Cf. Axelson, Inc. v. McIlhany,* 798 S.W.2d 550, 555 (Tex.1990); *Barnes v. Whittigton,* 751 S.W.2d 493, 495–96 (Tex.1988); *Terry v. Lawrence,* 700 S.W.2d 912, 913–14 (Tex.1985). Under this analysis, the trial court's erroneous interpretation of the law constitutes a clear abuse of discretion.

## 2. *Adequate Remedy by Appeal*

In order to determine whether the writ should issue, however, we must further decide whether the Walkers have an adequate remedy by appeal.

**[9]** Mandamus will not issue where there is "a clear and adequate remedy at law, such as a normal appeal." *State v. Walker,* 679 S.W.2d 484, 485 (Tex.1984). Mandamus is intended to be an extraordinary remedy, available only in limited circumstances. The writ will issue "only in situations involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." *Holloway v. Fifth Court of Appeals,* 767 S.W.2d 680, 684 (Tex.1989) (quoting James Sales, *Original Jurisdiction of the Supreme Court and the Courts of Civil Appeals of Texas* in *Appellate Procedure in Texas,* § 1.4[1] [b] at 47 (2d ed. 1979)). The requirement that persons seeking mandamus relief establish the lack of an adequate appellate remedy is a "fundamental tenet" of mandamus practice. *Holloway,* 767 S.W.2d at 684.

**[10]** Our requirement that mandamus will not issue where there is an adequate remedy by appeal is well-settled. [8] On a few occasions, however, we have not focused **\*841** on this requirement when applying mandamus review of discovery orders. For example, in *Barker v. Dunham,* 551 S.W.2d 41 (Tex.1977), the trial court refused to compel defendant's representative to answer certain deposition questions, and the plaintiff applied to this Court for a writ of mandamus. We concluded that the trial court had abused its discretion, and ordered that the writ conditionally issue. We never discussed the well-settled requirement of inadequate remedy by appeal.

8   *See, e.g., TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 919 (Tex.1991) (imposition of discovery sanctions); *Schultz v. Fifth Judicial District Court of Appeals,* 810 S.W.2d 738, 739 n. 4 (Tex.1991) (refusal to enforce turnover order by contempt); *Joachim v. Chambers,* 815 S.W.2d 234, 240 (Tex.1991) (refusal to bar judicial officer from testifying as expert witness); *Hooks v. Fourth Court of Appeals,* 808 S.W.2d 56, 59–60 (Tex.1991) (refusal to grant nonsuit); *Bell Helicopter Textron, Inc., v. Walker,* 787 S.W.2d 954, 955 (Tex.1990) (refusal to dismiss for lack of subject-matter jurisdiction); *Champion Int'l Corp. v. Twelfth Court of Appeals,* 762 S.W.2d 898, 899 (Tex.1988) (grant of new trial); *Stringer v. Eleventh Court of Appeals,* 720 S.W.2d 801, 801–02 (Tex.1986) (imposition of discovery sanction); *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985) (grant of new trial); *Abor v. Black,* 695 S.W.2d 564, 566 (Tex.1985) (denial of plea in abatement); *State v. Walker,* 679 S.W.2d 484, 485 (Tex.1984) (refusal to reinstate temporary injunction); *Pat Walker & Co. v. Johnson,* 623 S.W.2d

306, 309 (Tex.1981) (refusal to extend time for filing statement of facts); _State Bar of Texas v. Heard,_ 603 S.W.2d 829, 833 (Tex.1980) (refusal to suspend attorney); _Pope v. Ferguson,_ 445 S.W.2d 950, 953 (Tex.1969) (refusal to dismiss criminal case pending against relator), _cert. denied,_ 397 U.S. 997, 90 S.Ct. 1138, 25 L.Ed.2d 405 (1970); _Crane v. Tunks,_ 160 Tex. 182, 190, 328 S.W.2d 434, 439 (1959) (discovery order); _Iley v. Hughes,_ 158 Tex. 362, 367–68, 311 S.W.2d 648, 652 (1958) (bifurcation of trial); _Harrell v. Thompson,_ 140 Tex. 1, 1, 165 S.W.2d 81, 81 (1942) (restriction of oil and gas production by Railroad Commission); _Ben C. Jones & Co. v. Wheeler,_ 121 Tex. 128, 130, 45 S.W.2d 957, 958 (1932) (refusal to enter judgment nunc pro tunc); _Cleveland v. Ward,_ 116 Tex. 1, 14, 285 S.W. 1063, 1068 (1926) (refusal to enter judgment); _Aycock v. Clark,_ 94 Tex. 375, 376–77, 60 S.W. 665, 666 (1901) (refusal to enter injunction); _Screwmen's Benevolent Ass'n v. Benson,_ 76 Tex. 552, 555, 13 S.W. 379, 380 (1890) (expulsion of member from charitable corporation).

A few months later, in _Allen v. Humphreys,_ 559 S.W.2d 798 (Tex.1977), the Court again conditionally issued a writ of mandamus to correct a discovery abuse without considering whether the relator had an adequate remedy by appeal. The real party in interest in _Allen_ raised this argument, but the Court avoided the issue by citing _Barker. Id._ at 801.

Commentators quickly criticized the _Barker_ and _Allen_ opinions. _See_ James Sales, _Pre–Trial Discovery in Texas,_ 31 Sw.L.J. 1017, 1033 (1977); Comment, _The Expanding Use of Mandamus to Review Texas District Court Discovery Orders: An Immediate Appeal Is Available,_ 32 Sw.L.J. 1283, 1300 (1979) (In most cases "forcing a party to await the completion of the trial in order to seek appellate review will not endanger his substantial rights...."); Note, _Mandamus May Issue To Compel A District Judge to Order Discovery,_ 9 Tex.Tech L.Rev. 782 (1978) (mandamus should not be a substitute for appeal).

In _Jampole v. Touchy,_ 673 S.W.2d 569 (Tex.1984), the Court again used the extraordinary writ of mandamus to compel discovery which had been denied by the trial court. Unlike in _Barker_ and _Allen,_ however, the Court in _Jampole_ addressed whether relator had an adequate appellate remedy. The underlying suit in _Jampole_ was a products liability action, and the disputed discovery materials included alternate design and assembly documents. The Court held that relator did not have an adequate remedy by appeal because denial of this discovery effectively prevented relator from proving the material allegations of his lawsuit. 673 S.W.2d at 576.

Remedy by appeal in a discovery mandamus is not adequate where a party is required "to try his lawsuit, debilitated by the denial of proper discovery, only to have that lawsuit rendered a certain nullity on appeal...." _Id._

Although the Court in _Jampole_ recognized the need to address whether relator had an adequate remedy by appeal, it expressly refused to overrule _Barker_ and _Allen. Id._ Perhaps because of this, we have on several occasions since _Jampole_ used mandamus to correct discovery errors without considering whether the relator had an adequate appellate remedy. _See Loftin v. Martin,_ 776 S.W.2d 145 (Tex.1989); _Barnes v. Whittington,_ 751 S.W.2d 493 (Tex.1988); _Lunsford v. Morris,_ 746 S.W.2d 471 (Tex.1988); _Turbodyne Corp. v. Heard,_ 720 S.W.2d 802 (Tex.1986); _Terry v. Lawrence,_ 700 S.W.2d 912 (Tex.1985); _Lindsay v. O'Neill,_ 689 S.W.2d 400 (Tex.1985).

On many other occasions, however, we have still required a showing of inadequate **\*842** remedy by appeal in mandamus proceedings involving other types of pre-trial orders, even those involving discovery. _See, e.g., TransAmerican Natural Gas Corp. v. Powell,_ 811 S.W.2d 913, 919 (Tex.1991); _Hooks v. Fourth Court of Appeals,_ 808 S.W.2d 56, 59–60 (Tex.1991); _Bell Helicopter Textron, Inc., v. Walker,_ 787 S.W.2d 954, 955 (Tex.1990); _Stringer v. Eleventh Court of Appeals,_ 720 S.W.2d 801, 801–02 (Tex.1986). In _Hooks,_ for example, we reaffirmed that the "cost or delay of having to go through trial and the appellate process does _not_ make the remedy at law inadequate." 808 S.W.2d at 60.

**[11]** The requirement that mandamus issue only where there is no adequate remedy by appeal is sound, and we reaffirm it today. No mandamus case has ever expressly rejected this requirement, or offered any explanation as to why mandamus review of discovery orders should be exempt from this "fundamental tenet" of mandamus practice. Without this limitation, appellate courts would "embroil themselves unnecessarily in incidental pre-trial rulings of the trial courts" and mandamus "would soon cease to be an extraordinary writ." _Braden v. Downey,_ 811 S.W.2d 922, 928 (Tex.1991). We thus hold that a party seeking review of a discovery order by mandamus must demonstrate that the remedy offered by an ordinary appeal is inadequate. We disapprove of _Barker, Allen,_ and any other authorities to the extent they might be read as abolishing or relaxing this rule.

**[12]** We further hold that an appellate remedy is not inadequate merely because it may involve more expense

or delay than obtaining an extraordinary writ. As we observed in _Iley v. Hughes,_ the "delay in getting questions decided through the appellate process ... will not justify intervention by appellate courts through the extraordinary writ of mandamus. Interference is justified only when parties stand to lose their substantial rights." 158 Tex. at 368, 311 S.W.2d at 652.

On some occasions, this Court has used, or at least mentioned, the more lenient standard first articulated in _Cleveland v. Ward,_ 116 Tex. 1, 14, 285 S.W. 1063, 1068 (Tex.1926), that the remedy by appeal must be "equally convenient, beneficial, and effective as mandamus." _See, e.g., Jampole v. Touchy,_ 673 S.W.2d 569, 576 (Tex.1984); _Crane v. Tunks,_ 160 Tex. 182, 190, 328 S.W.2d 434, 439 (Tex.1959). This standard, literally applied, would justify mandamus review whenever an appeal would arguably involve more cost or delay than mandamus. This is unworkable, both for individual cases and for the system as a whole. Mandamus disrupts the trial proceedings, forcing the parties to address in an appellate court issues that otherwise might have been resolved as discovery progressed and the evidence was developed at trial. Moreover, the delays and expense of mandamus proceedings may be substantial. This proceeding, for example, involving rulings on collateral discovery matters, has delayed the trial on the merits for over two years. The impact on the appellate courts must also be considered. We stated in _Braden_ that "[t]he judicial system cannot afford immediate review of every discovery sanction." 811 S.W.2d 922, 928. It follows that the system cannot afford immediate review of every discovery order in general.[9] We therefore disapprove of _Cleveland, Crane, Jampole_ and any other authorities to the extent that they imply that a remedy by appeal is inadequate merely because it might involve more delay or cost than mandamus.

[9] We recently held that a mandamus action was never required to preserve error on appeal. _Pope v. Stephenson,_ 787 S.W.2d 953 (Tex.1990). We explained: "The decision not to pursue the extraordinary remedy of mandamus does not prejudice or waive a party's right to complain on appeal." _Id._ at 954.

Justice Doggett's dissent argues that because discovery errors often constitute harmless errors under Tex.R.App.P. 81(b)(1), parties denied mandamus relief will be deprived of any remedy since the **\*843** error will not provide a basis for appellate reversal. This is nothing more than a thinly disguised attack on the harmless error rule. Avoiding interlocutory appellate review of errors that, in the final analysis, will prove to be harmless, is one of the principal reasons that mandamus should be restricted.

Justice Doggett's dissent also suggests that we will be unable to develop a coherent body of discovery law without unrestricted mandamus review. We do not think, however, that losing parties will be reluctant to raise perceived discovery errors on appeal, nor will an appellate court be foreclosed from writing on discovery issues, even when the error may be harmless. _See, e.g., Lovelace v. Sabine Consolidated, Inc.,_ 733 S.W.2d 648, 652–53 (Tex.App.—Houston [14th Dist.] 1987, writ denied).

Nor are we impressed with the dissenters' claim that strict adherence to traditional mandamus standards will signal an end to effective interlocutory review for some parties or classes of litigants. There are many situations where a party will not have an adequate appellate remedy from a clearly erroneous ruling, and appellate courts will continue to issue the extraordinary writ. In the discovery context alone, at least three come to mind.

**[13]** First, a party will not have an adequate remedy by appeal when the appellate court would not be able to cure the trial court's discovery error. This occurs when the trial court erroneously orders the disclosure of privileged information which will materially affect the rights of the aggrieved party, such as documents covered by the attorney-client privilege, _West v. Solito,_ 563 S.W.2d 240 (Tex.1978), or trade secrets without adequate protections to maintain the confidentiality of the information. _Automatic Drilling Machines v. Miller,_ 515 S.W.2d 256 (Tex.1974). As we noted in _Crane:_ "After the [privileged documents] had been inspected, examined and reproduced ... a holding that the court had erroneously issued the order would be of small comfort to relators in protecting their papers." 160 Tex. at 190, 328 S.W.2d at 439. It may also occur where a discovery order compels the production of patently irrelevant or duplicative documents, such that it clearly constitutes harassment or imposes a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party. _See, e.g., Sears, Roebuck & Co. v. Ramirez,_ 824 S.W.2d 558, 35 Tex.Sup.Ct.J. 454 (1992) (demand for tax returns); _General Motors Corp. v. Lawrence,_ 651 S.W.2d 732 (Tex.1983) (demand for information about all vehicles for all years).

**[14]** **[15]** Second, an appeal will not be an adequate remedy where the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by

the trial court's discovery error. It is not enough to show merely the delay, inconvenience or expense of an appeal. Rather, the relator must establish the effective denial of a reasonable opportunity to develop the merits of his or her case, so that the trial would be a waste of judicial resources. We recently held that when a trial court imposes discovery sanctions which have the effect of *precluding a decision on the merits of a party's claims*—such as by striking pleadings, dismissing an action, or rendering default judgment—a party's remedy by eventual appeal is inadequate, unless the sanctions are imposed simultaneously with the rendition of a final, appealable judgment. *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 919 (Tex.1991). Similarly, a denial of discovery going to the heart of a party's case may render the appellate remedy inadequate.

 **[16]**    **[17]**    Finally, the remedy by appeal may be inadequate where the trial court disallows discovery and the missing discovery cannot be made part of the appellate record, or the trial court after proper request refuses to make it part of the record, and the reviewing court is unable to evaluate the effect of the trial court's error **\*844** on the record before it. *See Tom L. Scott, Inc. v. McIlhany,* 798 S.W.2d 556, 558 (Tex.1990)* ("[M]andamus is the only remedy because the protective order shields the witnesses from deposition and thereby prevents the evidence from being part of the record."); *see generally Jampole,* 673 S.W.2d at 576 ("Because the evidence exempted from discovery would not appear in the record, the appellate courts would find it impossible to determine whether denying the discovery was harmful."). If the procedures of Tex.R.Civ.P. 166b(4) are followed, this situation should only rarely arise. If and when it does, however, the court must carefully consider all relevant circumstances, such as the claims and defenses asserted, the type of discovery sought, what it is intended to prove, and the presence or lack of other discovery, to determine whether mandamus is appropriate. [10]

---

[10]    Courts use a similar approach in determining whether a witness has properly invoked the Fifth Amendment privilege against self-incrimination. It is often impossible for a witness to prove that an answer might incriminate him without actually answering and thereby forfeiting the privilege. Therefore, rather than requiring actual proof of the privilege, courts sustain the privilege if it is "evident from the implications of the question, in the setting in which it is asked, that a responsive answer [might be incriminating]." *Hoffman v.*

*United States,* 341 U.S. 479, 487, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).

 **[18]**    In the present case, the Walkers seek documents from the Center to impeach one defendant's expert witness. This information is not privileged, burdensome or harassing, nor does it vitiate or severely compromise the Walkers' ability to present a viable claim. In fact, as we have already noted, the trial court may ultimately conclude that it is not admissible or even discoverable. Finally, although the materials are not before us, they were considered below, and we know of no reason why they would not be available on appeal. Therefore, under our traditional standards of mandamus review, as measured by the factors we mention above, the Walkers have an adequate remedy by appeal and mandamus is inappropriate.

For the above reasons, we conclude that the Walkers have not established their right to relief by mandamus on either discovery matter. Therefore, we deny the Walkers' petition for writ of mandamus.

GONZALEZ, J., concurs and files an opinion.

DOGGETT, J., dissents and files an opinion, joined by MAUZY, J.

GAMMAGE, J., dissents and files an opinion.

GONZALEZ, Justice, concurring.

I agree with the court's disposition of this cause but disagree with the court's opinion regarding the "Obstetrics Faculty Records." Specifically, I disagree with the court's attempt to distinguish *Russell v. Young,* 452 S.W.2d 434 (Tex.1970). Nevertheless, I concur in the result.

*Russell* holds that wholesale discovery of the private records of a *non-party witness* is not permitted if the sole purpose for discovery is to impeach the credibility of the non-party. [1] 452 S.W.2d at 435. The policy considerations of *Russell* still apply today. By disapproving of *Russell* as "a mechanical approach to discovery rulings," at 839, the court forces trial courts to get further involved in discovery matters. This increases the backlog, delay, and cost of litigation by creating the need for more hearings.

---

[1]    If the records have relevance apart from their potential for impeachment, however, *Russell* does not bar

discovery. *See Ex Parte Shepperd,* 513 S.W.2d 813, 816 (Tex.1974).

In the instant case, the plaintiffs sought to discover documents from the University of Texas Health Science Center to confirm the existence of a written policy restricting faculty members from testifying for plaintiffs in medical malpractice cases. This policy was sought for use in impeaching defendant's expert witness, Dr. Gilstrap. In refusing discovery, the trial court concluded **\*845** that the relevance of this material was limited to impeachment. As such, the requested documents fell squarely within the prohibition of *Russell.*

Despite the court's mischaracterization of *Russell,* the issues and type of evidence sought here and in *Russell* are identical. Just as in *Russell,* the records sought in the instant case did not relate directly to the subject matter of the suit. The only difference between the present case and *Russell* is the identity of the party seeking the information. In *Russell,* a defendant sought evidence to impeach the plaintiffs' expert; here, the plaintiff sought evidence to impeach a defendant's expert. Surely, we cannot have a rule that changes in application depending on whether the relator is a plaintiff or a defendant in the trial court.

In my opinion, the court strains to distinguish *Russell.* The court suggests that the trial judge made a mistake in her ruling by failing to read *Russell* in conjunction with the rules of civil procedure and evidence. However, when we adopted the new Texas Rules of Civil Evidence, there was no discussion whatsoever that, by their adoption, we intended to reject the settled rule that information sought solely for impeachment of a non-party is not discoverable. *Russell,* 452 S.W.2d at 435; *see also W.W. Rodgers & Sons Produce Co. v. Johnson,* 673 S.W.2d 291, 294–95 (Tex.App.—Dallas 1984, orig. proceeding). Furthermore, the scope of discovery has not changed in the twenty years since *Russell* has been on the books. When *Russell* was decided, the scope of discovery was codified in Texas Rule of Civil Procedure 186a. It provided in pertinent part that:

> [p]arties may obtain discovery regarding any matter which is relevant to the subject matter in the pending action whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party.

This same text is now codified in Rule 166b(2)(a). Clearly, impeachment evidence regarding *collateral matters* would not relate to the subject matter of the pending action.

Implicitly, the court concludes that the credibility of a non-party witness alone is a relevant avenue of inquiry and, thus, is a matter properly open to discovery under some new, broader definition of relevancy.

While I agree that the definition of relevance in Rule 401 of the Texas Rules of Civil Evidence includes matters bearing on credibility, this alone does not explain or distinguish *Russell.* A witness' credibility has always been a relevant matter. As the United States Supreme Court has said: "[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *United States v. Abel,* 469 U.S. 45, 52, 105 S.Ct. 465, 469, 83 L.Ed.2d 450 (1984). Yet in *Russell,* we said that a trial court lacked "authority" to order discovery from a *non-party* solely for purposes of impeachment. 452 S.W.2d at 435. We chose to withdraw all discretion in this particular area of discovery. *Russell* concedes that impeachment evidence may be relevant and admissible at trial, but holds that it cannot be discovered from a non-party for its own sake prior to trial. 452 S.W.2d at 436.

The fact that a matter may have some relevance yet not be subject to discovery is hardly a novel concept. The basic premise of the rules of discovery is to weigh the legitimate needs of litigation against the other rights and values that would be irreparably harmed by unfettered discovery. *Russell* strikes the proper balance by protecting non-party witnesses from indiscriminate invasions into their private lives where the information sought would not appreciably shed light on the issues of the case.

Furthermore, the decision in *Russell was not* grounded on whether the credibility of the witness had been placed in doubt. Instead, the court highlighted the fact that **\*846** the witness had not offered testimony at trial nor was his deposition introduced into evidence at trial. The court said:

> Relator has not yet taken the witness stand nor has his deposition been introduced into evidence because there has not yet been a trial; relator's records cannot possibly have impeachment value because there is

nothing yet to impeach and there may never be anything to impeach, depending upon the contents of the testimony, if any, which is introduced during the trial of the lawsuit.

_Russell,_ 452 S.W.2d at 437. Thus, it is evident that the court has today reinterpreted _Russell_ with little or nothing to gain in a way that further obscures the proper scope of discovery.

I am concerned that as a result of today's ruling, some _non-parties_ will be subjected to harassment and intrusion into their private lives, and that trial courts will be inundated with hearings on collateral issues far afield from the merits of the cause of action or defense. The court has attempted to fix something that was not broken. This reinterpretation of _Russell_ will further tax our overburdened judicial system without appreciably benefiting the litigants or the system.

Finally, for the reasons expressed in _Joachim v. Chambers,_ 815 S.W.2d 234, 241 (Tex.1991) (Gonzalez, J., dissenting), I agree with the clarification of the standards for the issuance of mandamus.

DOGGETT, Justice, dissenting.

_Them that's got shall get_

_Them that's not shall lose_
_—God Bless The Child_[1]

[1] Billie Holiday, _God Bless the Child_ (Okeh Records 1941) (words and music by Arthur Herzog, Jr. & Billie Holiday).

With a double standard, the majority strikes a devastating blow at the most direct method of curbing abuses of judicial power. Many judicial excesses far beyond the scope of anything alleged in this particular case will henceforth receive only an official nod and wink from the Texas Supreme Court.

Mandamus is the legal tool by which appellate courts can promptly correct arbitrary and capricious rulings by trial judges. Today's opinion announces that this remedy will be available to support concealment of the truth but not its disclosure. Mandamus is officially declared a one-way street in the Texas courts—our judiciary can help to hide but not to detect.

Despite a determination that a "clear abuse of discretion" has occurred in this particular case, at 840, all relief is denied. Finding a wrong and denying a remedy echoes the logic of the majority's recent conclusion that a tax is unconstitutional but must be paid anyway. _See Carrollton–Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.,_ 826 S.W.2d 489, 524 (1992) (_Edgewood III_ ) (Doggett, J., dissenting). Rather than correcting the abuse, the court simply gives the Walkers the same message it gave Texas taxpayers—wait. Only after a full jury trial based upon incomplete discovery will the judiciary even consider any possibility of relief.

For those who have previously sought more specific guidelines for the use of mandamus concerning discovery orders, the majority responds with not one but two standards for reviewing trial court action: orders compelling discovery may be immediately corrected; review of denied discovery is postponed indefinitely in a manner to ensure that no meaningful relief will ever be forthcoming.

**I.**

What a different path this court now pursues than that so recently proclaimed in its unanimous decision that

Discovery is ... the linchpin of the search for truth, as it makes "a trial less **\*847** a game of blind man's bluff and more a fair contest with the issues and facts disclosed to the fullest practicable extent."

_State v. Lowry,_ 802 S.W.2d 669, 671 (Tex.1991) (quoting _United States v. Proctor & Gamble Co.,_ 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958)). Similarly ignored are our recent, unanimous writings in _Axelson, Inc. v. McIlhany,_ 798 S.W.2d 550, 553, 555 (Tex.1990, orig. proceeding) ("[Discovery should provide] the fullest knowledge of the facts and issues prior to trial.... [T]he ultimate purpose of discovery ... is to seek the truth...."); and _Tom L. Scott, Inc. v. McIlhany,_ 798 S.W.2d 556, 559 (Tex.1990, orig. proceeding) ("The primary policy behind discovery is to seek truth so that disputes may be decided by facts that are revealed rather than concealed."). Without mandamus review to add meaning to these laudatory expressions, they are just hollow words. The new signal is clear—circumvent discovery and conceal information.

Today's opinion reflects the radical change in philosophy which has taken firm hold in this court—discovery is no longer a search for truth, it is merely a game of hide and seek.

No longer may appellate courts intercede through mandamus even for the trial court's complete abuse of discretion in denying access to vital data; under the newly-announced double standard, intervention can, however, be accorded for those who persevere in evasion.

When a local business is defrauded, when a community is exposed to dangerous toxic wastes, when a manufacturer ignores reports that a safety design change would reduce user injuries, when a monopoly extorts unfair gain from the public, when discrimination results in job loss, and in numerous other circumstances, the burden of proving wrongdoing is exceedingly difficult to satisfy without obtaining evidence of that wrong from the files of the perpetrator. In such situations denial of discovery effectively means denial of all relief. That reality does not go unrecognized by today's majority.

Entities that begin litigation in control of most of the relevant evidence can often defeat their adversaries simply by denying them the power of information:

> [T]hose with established positions of power are more likely to ... win by preventing their adversaries from producing evidence; they are less likely to be in the position of having to extract evidence from their opponents to make out their case.

23 Charles A. Wright & Kenneth W. Graham, Jr., _Federal Practice & Procedure_ § 5422, at 674 (1980). With its separate and unequal treatment of litigants, the majority gives yet another edge to the already advantaged. Providing immediate review for orders that start the flow of information but refusing to consider those that stop it, the majority once again expresses its preference for helping the powerful over the seemingly powerless. Those opposing meaningful discovery

> tend to be institutions rather than individuals, and tend to be among the more wealthy and powerful segments of society. A review system that gives priority (that is, immediate review) to the complaints of privilege holders, but which consigns the complaints of parties seeking discovery until after final judgment, gives an advantage to those wealthy institutional litigants. They have the power to achieve more

favorable results during the pretrial process; their opponents must wait.

Elizabeth G. Thornburg, _Interlocutory Review of Discovery Orders: An Idea Whose Time Has Come,_ 44 Sw.L.J. 1045, 1082 (1990) (hereinafter _Review of Discovery Orders_ ) (footnote omitted).[2] In this way the **\*848** majority ensures that the scales of justice—which at the onset of litigation are often in reality uneven—never achieve balance.

[2]     These entities rarely need information to prevail:
> Even when an institutional litigant appears as a plaintiff suing an individual defendant as, for example, when a corporation sues an individual on a debt, the institutional litigant tends to already have the information needed to prove its case.
_Review of Discovery Orders_ at 1070 n. 162. They are also less likely to require information from an opponent to establish affirmative defenses. _Id._ at 1070.

Until this court included discovery orders within the scope of mandamus review, very few reported opinions addressed this important subject. Trial judges were effectively accorded unlimited discretion with a "resulting atmosphere [that] was very hostile to discovery." _Id._ at 1071. As a practical matter, discovery battles, often both complex and time-consuming, were shunned. When the party controlling vital data exercises the power of withholding it, fighting every important request, the judicial command "go work it out" often amounts to a denial of meaningful discovery. The mud-wrestling that frequently ensues in such contests may discourage a trial judge from determining who is acting fairly and who started the fight. If mandamus is not available to correct ill-considered or hasty denials, the hope for ultimate justice in complex litigation is prematurely crushed. The majority's decision today marks a return to those dark ages when discovery was regularly denied as the path of least resistance and greatest convenience for the judiciary.

## II.

By its very nature, discovery involves a search for what is largely unknown from someone who may have an incentive to make that search as long and tortuous as possible. Efforts to prevent discovery have been limited only by the boundless imagination of the top legal talent in America. Requests are either too broad or too narrow; records produced are either minimal or in such voluminous, disorganized form as to make locating relevant information most difficult; vital documents

vanish in "routine document destruction" programs or are misplaced. Accordingly, our discovery rules have required continual revision to cope with the newest ways invented by those intent on subverting the process. Each revision of the Texas Rules of Civil Procedure during the last decade has included attempted clarification and improvement of discovery procedures. This has produced a body of law that is "complex and rapidly evolving." David W. Holman & Byron C. Keeling, _Entering the Thicket? Mandamus Review of Texas District Court Witness Disclosure Orders,_ 23 St. Mary's L.J. 365, 375 (1991) (hereinafter _Mandamus of Disclosure Orders_ ).

Given the creativity of those who would thwart discovery, rules of procedure cannot be drawn to provide clear guidance in every situation; judicial interpretation is essential. The more complicated the rule, the more necessary the construction and the greater the likelihood for misinterpretation. _See id._ at 386 ("Erroneous interpretations of these changes ... are likely with the absence of prior significant precedent.... [and] could have a substantial effect on the subsequent course of a lawsuit."). This court's responsibility does not and cannot end when the text of promulgated amendments appears in the _Texas Bar Journal._ Rather, the court has a duty _both_ to make the rules _and_ to interpret them.

Our American system of jurisprudence is founded on the precept that it is of great benefit to have a written body of case law construing controlling legal principles and applying them to particular facts. This approach is undeniably desirable in the discovery context:

> In a system where trial court decisions are unreported and have no precedential value, the creation of a body of reported appellate case law regarding discovery has substantial value. Case law on discovery promotes uniform interpretation of the discovery rules and, in time, decreases the opportunity for individual **\*849** judge's biases to shape discovery outcomes. Reported decisions develop clear rules, where rules are possible, and narrow the range of judicial discretion in other areas simply by providing numerous cases finding that the trial court did or did not abuse its discretion. Such case law

can be particularly helpful in a jurisdiction that has recently amended its discovery rules. Over time, the existence of discovery case law may even clarify the rules sufficiently so as to decrease the number of disputes in the trial court.

_Review of Discovery Orders_ at 1080 (footnotes omitted). Appellate opinions properly applying mandamus produce, then, both more consistency and more accuracy in trial court decisions. _See id._ at 1077. [3]

[3] With no appellate opinions setting forth appropriate limitations upon trial court discretion, "litigants may receive widely divergent rulings from different judges, even in the same geographical location." _Id._ at 1077. Proper use of mandamus discourages forum shopping to obtain a trial judge more likely to provide a more favorable ruling and allows for greater consistency and accountability:

> [Such] review ... even[s] out inconsistencies in trial court rulings, and ... allows trial judges to operate with a more accurate understanding of the meaning of the discovery rules.... If the appellate court is consistent, it can fix disparities and inequities produced by the trial courts and promote consistency among the trial level decisionmakers.

_Id._ at 1047, 1077 (footnotes omitted).

The role of this court is particularly important in answering novel or significant questions of discovery law. _See Mandamus of Disclosure Orders_ at 376 ("[P]re-trial appellate review of [important discovery] questions could lend critical guidance to the development of Texas discovery practice."). Rather than avoiding its responsibility, this court should utilize mandamus review to reduce the abuse of judicial power when "a unique question of discovery" law is presented. David West, Note, _The Use of Mandamus to Review Discovery Orders in Texas: An Extraordinary Remedy,_ 1 Rev.Litigation 325, 327 (1981) (hereinafter _The Use of Mandamus_ ).

Most trial court mistakes denying discovery result from the need to make repeated, quick decisions based upon limited information. Recognizing this circumstance, trial judges sometimes actually encourage litigants to raise disputed rulings affecting truly vital matters for appellate examination through mandamus by automatically staying their orders. Refusal of prompt appellate review not only denies a party its rights but may also deprive a trial court of desired guidance.

Today's opinion appropriately recognizes that "this Court will not grant mandamus relief unless we determine that the error is of such importance to the jurisprudence of the state as to require correction." At 839 n. 7. But under the standard announced, questions of importance concerning judicially-approved concealment of facts will never be considered. The significance to the state's jurisprudence of a ruling should certainly not be controlled by whether the order granted or denied discovery.

### III.

With mandamus now severely limited, many important issues will not be reviewed. *See generally Review of Discovery Orders* at 1056; *The Use of Mandamus* at 337 & n. 94. Abuses of judicial power will go forever uncorrected when the party disallowed discovery, realizing the difficulty of proving a case with less than full information and the uphill task of maintaining a successful appeal, is either forced to settle or forgoes a costly and extended appeal following defeat on the entire case. Nor will improper rulings ever be reviewed where one denied discovery, although severely handicapped, nonetheless prevails at trial.

Where appeals do occur, remedies will be rare even for egregious pretrial rulings. To succeed in this endeavor, one must show that

> the error complained of amounted to such a denial of the rights of appellant as **\*850** was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellate court.

Tex.R.App.P. 81(b). This standard is universally regarded as a "more difficult hurdle" than abuse of discretion. Helen A. Cassidy, *The Instant Freeze–Dried Guide to Mandamus Procedure in Texas Courts,* 31 S.Tex.L.Rev. 509, 512 (1990). As another commentator has aptly concluded,

> only an unusual discovery order would be dispositive enough to show the harmful error that most jurisdictions require for appellate reversal. Many

appellants, therefore, would not even raise the discovery points on appeal.

*Review of Discovery Orders* at 1056; *see also Mandamus of Disclosure Orders* at 376 n. 40 (observing that, because of the harmless error rule, many discovery rulings are not pursued on appeal). In denying mandamus today, the majority closes and locks the appellate courthouse door to any meaningful consideration of numerous significant matters.

### IV.

Only with the tragic recent change in course by this court's majority has such denial of access become acceptable. Previously both this court and the courts of appeals had employed their writ power as necessary to correct the abusive refusal of discovery. Among those cases providing the foundation for appropriate mandamus review is *Barker v. Dunham,* 551 S.W.2d 41 (Tex.1977, orig. proceeding), in which the trial court had overruled a motion to complete an expert witness's deposition and to compel production of his work papers. We interceded, stating that: "It is settled that the writ of mandamus may issue in a discovery proceeding to correct a clear abuse of discretion by a trial judge." *Id.* at 42. Similarly, in *Allen v. Humphreys,* 559 S.W.2d 798 (Tex.1977, orig. proceeding), the trial court refused to order discovery of tests, surveys and complaints by similarly affected persons. This court found an abuse of discretion and granted the writ, despite the argument that the plaintiff had "an adequate remedy via the normal appellate process." *Id.* at 801. It is difficult to perceive, in light of this argument and the court's subsequent grant of mandamus relief, how the majority can now claim that "we [had] not focused" on the requirement of an inadequate remedy by appeal in *Allen* and on, admittedly, a "few [other] occasions." At 840–841.

Following these two opinions, this court has not hesitated to consider and correct the wrongful denial of discovery. By issuing mandamus to rectify an erroneous trial court ruling refusing discovery in *Jampole v. Touchy,* 673 S.W.2d 569 (Tex.1984, orig. proceeding), this court recognized that appeal is not an adequate remedy:

> [R]equiring a party to try his lawsuit, debilitated by the denial of proper discovery, only to have that lawsuit rendered a certain nullity on appeal, falls well short of a remedy by appeal that is "equally convenient, beneficial, and effective as mandamus."

*Id.* at 576 (quoting *Crane v. Tunks,* 160 Tex. 182, 190, 328 S.W.2d 434, 439 (1959) (citation omitted)); *see also Cleveland v. Ward,* 116 Tex. 1, 14, 285 S.W. 1063, 1068 (Tex.1926).

A trial court's unwillingness to order the production of accident scene photographs was overturned by mandamus in *Terry v. Lawrence,* 700 S.W.2d 912 (Tex.1985, orig. proceeding). In *Lindsey v. O'Neill,* 689 S.W.2d 400, 402 (Tex.1985, orig. proceeding) (per curiam), the court overturned by mandamus an order limiting the scope of a deposition and quashing the accompanying document request. A blanket order protecting hospital records was similarly vacated by mandamus in *Barnes v. Whittington,* 751 S.W.2d 493 (Tex.1988, orig. proceeding). In *Lunsford v. Morris,* 746 S.W.2d 471 (Tex.1988, orig. proceeding), this court again granted mandamus to remedy a trial court's erroneous disallowance **\*851** of relevant discovery. *See also Loftin v. Martin,* 776 S.W.2d 145 (Tex.1989, orig. proceeding) (correcting by mandamus wrongful denial of discovery); *Turbodyne Corp. v. Heard,* 720 S.W.2d 802 (Tex.1986, orig. proceeding) (per curiam) (mandamus directing trial court to rescind order denying discovery of documents from insurer in subrogation action); *Ginsberg v. Fifth Court of Appeals,* 686 S.W.2d 105 (Tex.1985, orig. proceeding) (erroneous bar of deposition by court of appeals cured by mandamus).[4]

4    Intermediate appellate courts have also recognized the importance of mandamus to avoid trial court abuse in improperly limiting or denying discovery. *See, e.g., Kentucky Fried Chicken Nat'l Mgmt. Co. v. Tennant,* 782 S.W.2d 318 (Tex.App.—Houston [1st Dist.] 1989, orig. proceeding) (writ granted when discovery of plaintiff's psychiatric records denied); *Foster v. Heard,* 757 S.W.2d 464 (Tex.App.—Houston [1st Dist.] 1988, orig. proceeding) (mandamus issued against trial court's denial of discovery of post-accident investigation report); *Super Syndicate, Ltd. v. Salazar,* 762 S.W.2d 749 (Tex.App.—Houston [14th Dist.] 1988, orig. proceeding) (granting mandamus against trial court's denial of discovery of claims investigator's files); *Goodspeed v. Street,* 747 S.W.2d 526 (Tex.App.—Fort Worth 1988, orig. proceeding) (trial court's denial of discovery of hospital records based on privilege without presentation of evidence overturned); *Estate of Gilbert v. Black,* 722 S.W.2d 548, 551 (Tex.App.—Austin 1987, orig. proceeding) (denial of discovery of insurer's internal communications overturned on mandamus, despite argument that "mandamus is proper

only [for] improperly ordered discovery of privileged material, not when the trial court has denied discovery."); *Essex Crane Rental Corp. v. Kitzman,* 723 S.W.2d 241 (Tex.App.—Houston [1st Dist.] 1986, orig. proceeding) (writ granted to correct trial court's order quashing deposition); *Velasco v. Haberman,* 700 S.W.2d 729, 730 (Tex.App.—San Antonio 1985, orig. proceeding) (mandamus appropriate "not only where the trial court order improperly grants discovery, but the writ may also issue where the trial court improperly limits or denies discovery."); *Aztec Life Ins. Co. v. Dellana,* 667 S.W.2d 911 (Tex.App.—Austin 1984, orig. proceeding) (mandamus issued against trial court for denying discovery of claims files).

It is only after fifteen years of repeated judicial reliance upon *Barker* and *Allen* in the issuance of numerous opinions that we learn these precedents of our court are not good law. This is all the more strange in that we had explicitly refused to overrule them. When that very request was urged in *Jampole,* 673 S.W.2d at 576, our answer was unmistakable: "We decline to do so." But the majority's new answer is simple: "Line them up against the wall." What does it matter that a dozen or more Texas Supreme Court cases and countless decisions of the courts of appeals are to the contrary? They can be disposed of in a mass execution of precedent.[5] Today's firing squad announces that it is only answering the command of Jim Sales and two law students who separately criticized the court during the period 1977–79. At 840–841. It thereby rationalizes constructing so distorted a standard on the corpses of so many prior authorities.

5    The majority identifies by name five cases in conflict with today's writing, declaring that: "We disapprove of *Barker* and *Allen,* and any other authorities," at 842, and "[we] disapprove of *Cleveland, Crane, Jampole,* and any other authorities," at 842, to the extent they conflict with the new *Walker* standard. Subsumed within the "other" designation are a great number of additional cases from this court and the courts of appeals that would grant to the Walkers relief when the trial court has clearly abused its discretion in denying discovery. The court's willingness to sweepingly erase whole unidentified categories of recent precedent is exemplified by their signing of a blank check: "any other authorities," meaning all other authorities, are now endangered.

One of the most significant casualties is *Jampole v. Touchy,* which has formed the centerpiece for discovery in litigation over defective products and toxic substances for almost a decade. The majority, in a massive understatement, "disapproves" *Jampole* "to the extent [it implies] that a

remedy by appeal is inadequate merely because it might involve more delay or cost than mandamus." At 842. Although leaving untouched for now this court's prior writing on the proper scope of discovery, the majority has in fact overruled that landmark precedent in its entirety. Despite a gross abuse of discretion in denying critical discovery in *Jampole,* the majority's only correction by mandamus would be to require inclusion of the disputed materials in **\*852** the record, to await a deferred and meaningless appellate review.

## V.

Instead of affording the relief that prior rulings demand, the majority announces, after considerable mental gymnastics, that "at least three [discovery situations] come to mind" where mandamus is justified, at 843; then it strangely proceeds to describe six. The first three instances where remedy by appeal is inadequate stem from a trial court's wrongful allowance of discovery. First, mandamus will issue if "disclosure of privileged information ... will materially affect the rights of the aggrieved party." At 843. This requisite is easily fulfilled with discovery objections that include an assertion of privilege, the violation of which necessarily impinges on the objecting party's rights.

Second, mandamus will issue when a trial court orders the disclosure of "trade secrets without adequate protections to maintain the confidentiality of the information." At 843 (citing, without discussion, *Automatic Drilling Machs., Inc. v. Miller,* 515 S.W.2d 256 (Tex.1974, orig. proceeding)). Posing numerous problems, this hastily-drawn exception has no relevance to the instant case and was concocted by the majority without any briefing or argument by counsel. One privilege is thereby unjustifiably elevated above all others. Moreover, the writing implies an absolute protection of trade secrets from discovery when in fact this privilege is most definitely qualified, as recognized by *Automatic Drilling,* 515 S.W.2d at 259,[6] the rule itself, Tex.R.Civ.Evid. 507 (trade secrets not protected when nondisclosure conceals fraud or works injustice), and even Mr. Sales, whose writing purportedly warranted today's brash action.[7] Nor does this exception consider the availability in some cases of the interlocutory appeal mechanism provided in Tex.R.Civ.P. 76a(8) to address the adequacy of a protective order. *See Eli Lilly & Co. v. Marshall,* Order Granting Leave to File Petition for Writ of Mandamus (Doggett, J., dissenting), 829 S.W.2d 156 (Tex.1991).

[6] The few cases citing *Automatic Drilling* do not expand its holding to that suggested by the court today. *See Jampole,* 673 S.W.2d at 574–75 ("We hold that discovery cannot be denied because of an asserted proprietary interest in the requested documents when a protective order would sufficiently preserve that interest."); *Firestone Photographs, Inc. v. Lamaster,* 567 S.W.2d 273, 278 (Tex.Civ.App.—Texarkana 1978, no writ) ("[T]he claim of trade secrets ... does not necessarily defeat the right of discovery.").

[7] James B. Sales, *Pretrial Discovery in Texas Under the Amended Rules: Analysis and Commentary,* 27 S.Tex.L.Rev. 305, 345–46 (1986), stating that:

> Trade secrets ... are not, per se, exempt from discovery. The trial court is obligated to weigh the need for discovery against the interests on secrecy.... The need to protect the confidentiality of documents does not constitute an absolute bar to discovery....

The third situation requiring mandamus is an "order [that] compels the production of patently irrelevant or duplicative documents, such that it clearly constitutes harassment or imposes a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party." At 843. This "catch-all" exception indeed makes the extraordinary writ of mandamus an ordinary one. In almost any complex litigation, the claim of burden is essentially a form objection to discovery. It is difficult to perceive a dispute in which the party seeking to obstruct the process could not and, after today's decision, will not claim harassment or imposition of an undue burden. *See, e.g., Sears, Roebuck & Co. v. Ramirez,* 824 S.W.2d 558 (Tex.1992) (per curiam) (granting mandamus to preclude disclosure of corporate tax returns on the basis of undue burden and unnecessary expense, not privilege).[8]

[8] Although also citing *General Motors Corp. v. Lawrence,* 651 S.W.2d 732 (Tex.1983, orig. proceeding), as allowing mandamus relief from an allegedly burdensome trial court discovery order, the majority fails to note the very expansive discovery permitted in that case. The efforts of General Motors to limit discovery to results from tests performed on the particular type of truck and the particular type of impact involved in the subject incident were rejected, and it was directed to supply all impact test results for all types of trucks manufactured over a 23–year period.

A fourth exception, based on **\*853** *Transamerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913 (Tex.1991, orig.

proceeding), is described when the trial court imposes "discovery sanctions ... precluding a decision on the merits of a party's claims ... unless the sanctions are imposed simultaneously with the rendition of a final, appealable judgment." At 843 (emphasis deleted). The majority falsely suggests that today's standard creates a symmetry with _Transamerican._ Unlike _Transamerican,_ which treated the striking of a petition in the same manner as the entry of a default judgment, this ruling creates a double standard. Unlike _Transamerican,_ which involved a readily-perceptible wrong such as an order of dismissal, a determination of whether hidden documents "go to the heart of a party's case," at 843, involves significant uncertainties.

More importantly, _Transamerican_ was issued at a time when the announced policy of this court was to deter abuses of discretion without regard to whether discovery was granted or denied. A wide spectrum of sanction orders arising from discovery rulings are immediately appealable. _See Braden v. Downey,_ 811 S.W.2d 922 (Tex.1991, orig. proceeding). Superimposing _Transamerican_ and _Braden_ on today's double standard sends a clear message to the rare trial court that would impose significant penalties on those who obstruct discovery with deceit and delay—be careful. There is no real danger of immediate and genuine appellate examination of an order denying discovery, but there is a constant threat of appellate review of an order granting discovery or imposing meaningful sanctions on obstructionists. Once again the majority provides an incentive for concealment.

The remaining two situations address the wrongful denial of discovery, and constitute a narrow path in the woods compared to the expressway for resisting discovery constructed in the previous four exceptions. Mandamus is possible when

> the missing discovery cannot be made part of the appellate record, or the trial court after proper request refuses to make it part of the record, and the reviewing court is unable to evaluate the effect of the trial court's error on the record before it.

At 843–844. The quick fix of including materials in the appellate record is both ingenious and ingenuous. It has the immediate "benefit" of excluding a great number of errors in the discovery area from mandamus review. As the majority in fact recognizes, "this situation should only rarely arise." At 844. [9] And if it ever does, the majority guarantees that

no relief will be forthcoming, by directing that the reviewing court

[9]  If the trial court "refuses to make [the discovery] part of the record," At 843, presumably the only relief accorded under today's standard would be issuance of a writ directing inclusion of these materials.

carefully consider all relevant circumstances, such as the claims and defenses asserted, the type of discovery sought, what it is intended to prove, and the presence or lack of other discovery, to determine whether mandamus is appropriate.

At 844. Within these constraints, there will always be a readily available excuse to deny both discovery and mandamus.

In most cases the materials can be boxed up, file-stamped, and sent to the appellate court. How this will accomplish anything more than cluttering the judicial chambers is quite another matter. No clue is given as to how to resolve the obvious difficulties inherent in appellate determination, without any effective argument and analysis by counsel, of whether each item would have affected the result. Moreover, this approach improperly requires courts of appeals to act as juries while denying to the true fact-finder evidence that may be highly **\*854** relevant to the proceeding. This distrust of juries—of ordinary people resolving factual disputes—is increasingly reflected in the majority's decisions. [10]

[10]  _See Caller Times Publishing Co. v. Triad Communications,_ 826 S.W.2d 576, 597–608 (Tex.1992) (Doggett, J., dissenting) (addressing court's refusal to allow evidence of predatory intent); _see also Greater Houston Transp. Co. v. Phillips,_ 801 S.W.2d 523, 527 (Tex.1990) (Doggett, J., dissenting); _Crim Truck & Tractor Co. v. Navistar Int'l Transp. Co.,_ 823 S.W.2d 591, 596 & n. 1 (Tex.1992) (Mauzy, J., dissenting); _Reagan v. Vaughn,_ 804 S.W.2d 463, 488 (Tex.1990) (Doggett, J., concurring and dissenting).

The only hope for review of a trial court's order denying discovery is upon proof that a claim has been "vitiated or severely compromised by the trial court's discovery error." At 843. It must be shown "that the trial would be a waste of judicial resources," at 843, and that "a denial of discovery [goes] to the heart of a party's case." At 843. It is far from clear whether these encompass one or three different standards. What is clear is that few cases, if any, will satisfy whatever standard is applied.

The majority offers no example of a case in which a party has ever met such a heavy burden. Apparently an applicant for mandamus in this court must confess that, without the discovery sought, the trial court should and must direct a contrary verdict. Any semblance of a chance at prevailing prevents a determination that the trial would be a "waste of judicial resources" or that the discovery denied goes "to the heart of a party's case." While this situation may theoretically arise in the future, it will be most unlikely. Nor is there any explanation of how a party can be expected to show such a probability without having any of the materials in question. We have previously recognized the hardship inherent in showing need for documents when their contents are unknown. _State v. Lowry,_ 802 S.W.2d 669, 673 (Tex.1991) ("It is difficult for the [relators] to make a more particularized showing of need for these documents, the contents of which are unknown to them.").

Application of today's font of mandamus law to the Walkers' situation is most revealing. The majority summarily concludes that the trial court's misapplication of the law to deprive them of relevant evidence "does [not] vitiate or severely compromise the Walkers' ability to present a viable claim." At 844. Most ironically, today's announcement imposes one type of double standard on top of another alleged double standard. The Walkers claim they have uncovered a double standard at a taxpayer-financed institution that encourages faculty to defend those accused of medical malpractice while discouraging professional advice on behalf of the alleged victim. It is the merits of this revelation that the majority so eagerly seals away from both the Walkers and the public.

Fully aware of the impact of expert credibility on the outcome of much medical malpractice litigation, the majority denies the Walkers the very information that could perhaps demonstrate the bias of a key witness. An official blessing is thus provided for trial court action that may have a material, adverse effect on their ability to present a viable case. Having now learned that the denial of impeachment evidence is never susceptible to mandamus, it remains to be seen what other critical information will next be similarly viewed as unimportant to this majority.

While the nature of the double standard approved by today's writing requires that this dissent focus on wrongful denials, I recognize that the wrong can be every bit as real from improper grants of discovery. As a practical matter there is probably less danger that a trial judge will capriciously ignore properly established objections and privileges to accord too much information instead of too little. Nevertheless, I favor the use of mandamus to control abuse without regard to how it occurs or whom is helped. What I deplore is the discrimination which the majority officially substitutes for even-handedness. Scholars viewing **\*855** the so-called "_Walker_ mandamus standard" should recognize that it is not a standard but an excuse for ignoring wrongdoing.

After today's decision, discovery disputes will no longer be resolved on a level playing field. I believe that mandamus should be available to correct any trial court abuse concerning a subject that is important to the jurisprudence of the state and which substantially affects rights of an aggrieved party. If this requisite is satisfied, relief should be accorded without regard to whether the trial court has granted or denied discovery.

## VI.

In supporting today's opinion, Justice Gonzalez insists that we must stem what he claims is an alarming increase in the number of mandamus filings. At 844–846 (Gonzalez, J., concurring). The view that "the sky is falling" is best reflected in the gruesome statistics and conclusions of his dissenting opinion in _Joachim v. Chambers,_ 815 S.W.2d 234, 241 (Tex.1991). _See also Jampole,_ 673 S.W.2d at 578 (Barrow, J., dissenting); _cf._ C.L. Ray & M.R. Yogi McKelvey, _The Mandamus Explosion,_ 28 S.Tex.L.Rev. 413, 413–14 (1987).

Blaming an ever-increasing caseload for the Texas courts on the advent of the discovery mandamus is wholly insupportable. These petitions most often present emergency situations requiring expedited review and, consequently, are frequently viewed as a thorn in the side of appellate courts. _See Review of Discovery Orders_ at 1059 n. 99. But I cannot agree that justice should be denied or delayed solely to accommodate appellate judges.

Recent studies have debunked the myth of the mandamus explosion. The _Joachim_ dissent, to which Justice Gonzalez once again points with pride today, is based upon an analysis that fails to segregate filings arising from discovery disputes. A more detailed study of Supreme Court experience during a period of more than ten years correctly concluded that:

> [I]nterlocutory review of discovery orders ... has [had] a positive effect.... The increase [in appellate caseloads] has been an extremely small and manageable one....

. . . . .

The numbers, then, suggest that while the availability of interlocutory review of discovery orders added cases to the appellate docket, interlocutory review has not added a large or burdensome number of cases.

*Review of Discovery Orders* at 1047, 1059.

The fact is that most petitions are denied, with fewer than 3% granted by us during fiscal year 1991. Most of these were handled expeditiously, with over half resolved within one month of filing. Moreover, Justice Gonzalez completely ignored the fact that mandamus requests in this court actually decreased over the last three years. There were 202 of these in fiscal 1991, down from 257 and 258, respectively, in fiscal 1989 and 1990. Although the court's overall workload is expanding, the contribution of mandamus filings is certainly not uncontrollable.[11] "In deciding whether courts should permit interlocutory **\*856** review in specific cases, judges and commentators tend to emphasize the needs of court administration over the needs of the litigants." *Id.* at 1049. While cutting off the right to mandamus review when discovery is denied may reduce the appellate workload, the result will be a significant decline in the quality of justice. The inconvenience caused by the unexpected arrival of a petition that often demands immediate action is the price paid "to assure that ... trial proceedings are fair and equitable to *all* concerned parties.... '[W]e must not sacrifice justice upon the altar of expediency.' " *Mandamus Review of Disclosure Orders* at 422 (quoting David W. Holman & Byron C. Keeling, *Disclosure of Witnesses in Texas: The Evolution and Application of Rules 166b(6) and 215(5) of the Texas Rules of Civil Procedure,* 42 Baylor L.Rev. 405, 458 (1990)) (emphasis added).

11      Supreme Court Filings

| Year | Mandamus Discovery Orders | All Mandamus Filings | Total Mandamus and Applications for Writ | Discovery as Percentage of Total |
|---|---|---|---|---|
| 1979 | 24 | 129 | 933 | 2.6% |
| 1981 | 17 | 98 | 943 | 1.8% |
| 1989 | 51 | 257 | 1078 | 4.7% |
| 1991 | 64 | 202 | 1257 | 5.1% |

*Interlocutory Review of Discovery Orders* at 1058–59; the 1989 and 1991 figures are derived from my review of court filings.

## VII.

The majority announces here not a standard, but a pseudo-standard. In reality, the rule is little more than "how can we help those whom we want to help?" The only true precedent for this is *Terrazas v. Ramirez,* 829 S.W.2d 712 (Tex.1991), where *R*epublican *r*elators in *r*edistricting were accorded relief in the Supreme Court never sought in any other forum. This "triple R exception to mandamus," *id.* at 760–61 (Mauzy, J., dissenting), only presages the continued pursuit of this goal.

If doubts remain as to the one-sidedness of the standard announced today, its application to currently pending cases should resolve them. *See, e.g., Remington Arms Co. v. Canales,* No. D–1867, 35 Tex.S.Ct.J. 245 (Dec. 13, 1991) (trial court order which found documents relating to firearm safety relevant and required their production stayed despite no timely response or objection being made); *Eli Lilly & Co. v. Marshall,* No. D–1827, 35 Tex.S.Ct.J. 168, 354 (Dec. 3, 1991 and Jan. 23, 1992) (stays of trial court order directing production of information relating to the drug Prozac); *see id.* at 189 (Order Granting Leave to File Petition for Writ of Mandamus) (Doggett, J., dissenting); *Valley Baptist Medical Center v. Bennett,* No. D–1193, 34 Tex.S.Ct.J. 668 (June 18, 1991) (stay issued to protect hospital from disclosure of materials relating to policy of informing patients of risk of treatment), and 35 Tex.S.Ct.J. 452 (Feb. 12, 1992) (motion for leave to file granted). One interested in verifying the true meaning of the majority's carefully chosen words will do well to observe how the court actually disposes of each of these matters.

## VIII. CONCLUSION

In an apparent attempt to cope with a false "mandamus explosion," today's opinion has offered us an explosion of another type—a reverberating detonation of this court's prior rulings. True the majority has considerable experience in disregarding precedent as merely a lifeless thing of the past. *See Edgewood III,* 826 S.W.2d at 516, 517 (Doggett, J., dissenting); *Terrazas,* 829 S.W.2d at 739 (Mauzy, J., dissenting); *Stewart Title Guaranty Co. v. Sterling,* 822 S.W.2d 1, 12 (Tex.1991) (Doggett, J., dissenting). But a dozen or more Texas Supreme Court authorities and even more rulings from the courts of appeals cut down at one time is not a modest accomplishment. Precedent, no matter

how voluminous or how well-established, will clearly not restrain this majority from accomplishing its preconceived social policy objectives.

Through both deed and now word, the majority invites a true explosion in mandamus filings. What does an attorney whose client faces the possibility of a judgment for significant damages have to lose from accepting the beneficence of a majority of this court ever willing to serve as protector of the privileged? Will a deposition site other than that ordered by the trial court **\*857** be more costly and inconvenient to the claimant? Get a stay from the Texas Supreme Court, even if your petition is still pending in the court of appeals. *See Continental Can Co. v. Wittig,* No. D–2015, 35 Tex.S.Ct.J. 355, 1992 WL 17415 (Jan. 29, 1992) (stay of trial court order directing engineering employee of products liability defendant to be deposed in Houston rather than Chicago even though mandamus petition was pending in court of appeals). Did the trial court resolve a conflict in deposition schedules in a manner unacceptable to an insurance company? Don't worry, the Texas Supreme Court will stay proceedings even without bothering to get a response from the affected judge. *See Cigna Corp. v. Spears,* No. D–2069, 35 Tex.S.Ct.J. 463 (Feb. 19, 1992). Any attorney whose client desires to make more difficult access to information that will jeopardize its credibility, suggest its liability or defeat its defenses would be foolish to accept a trial court discovery order. A majority of the Texas Supreme Court is ready and willing to interfere for the asking.

The ripple effect created by today's refusal to accord mandamus review to pretrial discovery orders will swell to tidal-wave proportion, and sweep before it any hope of fair and consistent application of our Texas discovery rules. In many cases it will leave buried in the sand any possibility of trials directed by the full and truthful revelation of the underlying facts. Juries will be forced to resolve critical disputes based not on truths but rather upon whatever half-truths can be discovered. Left in the wreckage on the beach will be the tattered remains of the many prior decisions of this court and others that viewed litigation as a search for truth in

which fair and prompt appellate review of an order denying discovery was vital.

MAUZY, J., joins in this dissenting opinion.

<u>GAMMAGE</u>, Justice, dissenting.

I dissent. Today's decision departs from previous instances where this court has provided mandamus relief to correct a wrongful denial of discovery, and labors too hard to conclude that appeal is an adequate remedy for a party who is denied adequate discovery.

I would hold that mandamus is available to correct a trial court error which negatively and materially affects the right of aggrieved parties to adequately present their cases, whether the particular party is seeking discovery or resisting it. *See Iley v. Hughes,* 158 Tex. 362, 368, 311 S.W.2d 648, 652 (1958); *see also* Elizabeth G. Thornburg, *Interlocutory Review of Discovery Orders: An Idea Whose Time Has Come,* 44 SW.L.J. 1045 (1990). In the case before us, the trial court's denial of discovery has a material and adverse effect on the Walkers' ability to present their case. The information they seek could impugn the credibility of key expert witnesses at trial. Because their medical malpractice claim, like all such claims, will likely stand or fall on the credibility of the expert witnesses, I would hold that the Walkers are entitled to the information they seek, and that relief by appeal is inadequate.

Discovery is the "linchpin of the search for truth," and "[a]ffording parties full discovery promotes the fair resolution of disputes by the judiciary." *State v. Lowry,* 802 S.W.2d 669, 671 (Tex.1991). Today the court removes and disposes of that "linchpin" and abandons enforcement of fair and adequate discovery. Because I believe that mandamus relief should be readily available when a court allows *either* too much *or* too little discovery, I dissent.

**All Citations**

827 S.W.2d 833

---

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Constitution of the State of Texas 1876 (Refs & Annos)
    Article V. Judicial Department

Vernon's Ann.Texas Const. Art. 5, § 6

§ 6. Courts of Appeals; Terms of Justices; Clerks

Effective: November 26, 2001
Currentness

Sec. 6. (a) The state shall be divided into courts of appeals districts, with each district having a Chief Justice, two or more other Justices, and such other officials as may be provided by law. The Justices shall have the qualifications prescribed for Justices of the Supreme Court. The Court of Appeals may sit in sections as authorized by law. The concurrence of a majority of the judges sitting in a section is necessary to decide a case. Said Court of Appeals shall have appellate jurisdiction co-extensive with the limits of their respective districts, which shall extend to all cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law. Provided, that the decision of said courts shall be conclusive on all questions of fact brought before them on appeal or error. Said courts shall have such other jurisdiction, original and appellate, as may be prescribed by law.

(b) Each of said Courts of Appeals shall hold its sessions at a place in its district to be designated by the Legislature, and at such time as may be prescribed by law. Said Justices shall be elected by the qualified voters of their respective districts at a general election, for a term of six years and shall receive for their services the sum provided by law.

(c) All constitutional and statutory references to the Courts of Civil Appeals shall be construed to mean the Courts of Appeals.

**Credits**
Amended Aug. 11, 1891, proclamation Sept. 22, 1891; Nov. 7, 1978; Nov. 4, 1980, eff. Sept. 1, 1981; Nov. 5, 1985; Nov. 6, 2001, eff. Nov. 26, 2001.

Notes of Decisions (441)

Vernon's Ann. Texas Const. Art. 5, § 6, TX CONST Art. 5, § 6
Current through Chapters effective immediately through Chapter 46 of the 2015 Regular Session of the 84th Legislature

**End of Document**  © 2015 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

> Vernon's Texas Statutes and Codes Annotated
>   Government Code (Refs & Annos)
>     Title 2. Judicial Branch (Refs & Annos)
>       Subtitle A. Courts
>         Chapter 22. Appellate Courts
>           Subchapter C. Courts of Appeals (Refs & Annos)

V.T.C.A., Government Code § 22.214

§ 22.214. Thirteenth Court of Appeals

Effective: September 1, 2001
Currentness

(a) The Court of Appeals for the Thirteenth Court of Appeals District shall be held in the City of Corpus Christi and the City of Edinburg.

(b) Nueces County shall furnish and equip suitable rooms in the City of Corpus Christi and Hidalgo County shall furnish and equip suitable rooms in the City of Edinburg for the court and the justices without expense to the state.

(c) The court may transact its business at the county seat of any county in the district as the court determines is necessary and convenient, except that:

(1) all cases originating in Nueces County shall be heard and transacted in Nueces County; and

(2) all cases originating in Cameron, Hidalgo, or Willacy County shall be heard and transacted in Cameron, Hidalgo, or Willacy County.

(d) The commissioners courts of the counties in the district by adopting concurrent orders may authorize the payment of an automobile allowance in an amount not to exceed $15,000 annually to each of the justices of the court for automobile expenses incurred in performing official duties.

(e) The automobile allowance authorized by Subsection (d) is not subject to:

(1) the limitations on additional compensation paid to a justice of a court of appeals district imposed by Section 31.003; or

(2) the salary differentials provided by Subchapter B, Chapter 659. [1]

(f) Nueces County shall each fiscal year pay the total amount of the supplemental salaries, car allowances, and fringe benefits to the justices of the court. Each county composing the district, except Nueces County, shall annually reimburse Nueces County for that county's portion of the total amount paid under this subsection by Nueces County during the preceding fiscal year. Each county in the district, including Nueces County, is liable for a share of the total amount paid, based on the proportion that county's population bears to the total population of all the counties in the district.

(g) The Commissioners Court of Nueces County shall provide to each county liable for the reimbursement under Subsection (f) a statement of that county's share. The statement must be approved by the chief justice of the Court of Appeals for the Thirteenth Court of Appeals District. A county shall pay its share of the reimbursement not later than the 60th day after the beginning of the county's fiscal year.

**Credits**

Acts 1985, 69th Leg., ch. 480, § 1, eff. Sept. 1, 1985. Amended by Acts 1987, 70th Leg., ch. 148, § 1.18, eff. Sept. 1, 1987; Acts 1989, 71st Leg., ch. 1037, § 1, eff. Aug. 28, 1989; Acts 2001, 77th Leg., ch. 1177, § 1, eff. Sept. 1, 2001.

Footnotes

1        V.T.C.A., Government Code § 659.011 et seq.

V. T. C. A., Government Code § 22.214, TX GOVT § 22.214

Current through Chapters effective immediately through Chapter 46 of the 2015 Regular Session of the 84th Legislature

**End of Document**                                                                  © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
Government Code (Refs & Annos)
Title 2. Judicial Branch (Refs & Annos)
Subtitle F. Court Administration
Title 2, Subtitle F--Appendix
Rules of Judicial Administration

V.T.C.A., Govt. Code T. 2, Subt. F App., Jud.Admin., Rule 13

Rule 13. Multidistrict Litigation

Currentness

**13.1 Authority and Applicability.**

(a) *Authority*. This rule is promulgated under sections 74.161-.164 of the Texas Government Code and chapter 90 of the Texas Civil Practices [1] and Remedies Code.

(b) *Applicability*. This rule applies to:

(1) civil actions that involve one or more common questions of fact and that were filed in a constitutional county court, county court at law, probate court, or district court on or after September 1, 2003;

(2) civil actions filed before September 1, 2003, that involve claims for asbestos- or silica-related injuries, to the extent permitted by chapter 90 of the Texas Civil Practice and Remedies Code.

(c) *Other Cases*. Cases to which this rule does not apply are governed by Rule 11 of these rules.

**13.2 Definitions.** As used in this rule:

(a) *MDL Panel* means the judicial panel on multidistrict litigation designated pursuant to section 74.161 of the Texas Government Code, including any temporary members designated by the Chief Justice of the Supreme Court of Texas in his or her discretion when regular members are unable to sit for any reason.

(b) *Chair* means the chair of the MDL Panel, who is designated by the Chief Justice of the Supreme Court of Texas.

(c) *MDL Panel Clerk* means the Clerk of the Supreme Court of Texas.

(d) *Trial court* means the court in which a case is filed.

(e) *Pretrial court* means the district court to which related cases are transferred for consolidated or coordinated pretrial proceedings under this rule.

(f) *Related* means that cases involve one or more common questions of fact.

(g) *Tag-along case* means a case related to cases in an MDL transfer order but not itself the subject of an initial MDL motion or order.

**13.3 Procedure for Requesting Transfer.**

(a) *Motion for Transfer; Who May File; Contents*. A party in a case may move for transfer of the case and related cases to a pretrial court. The motion must be in writing and must:

  (1) state the common question or questions of fact involved in the cases;

  (2) contain a clear and concise explanation of the reasons that transfer would be for the convenience of the parties and witnesses and would promote the just and efficient conduct of the cases;

  (3) state whether all parties in those cases for which transfer is sought agree to the motion; and

  (4) contain an appendix that lists:

    (A) the cause number, style, and trial court of the related cases for which transfer is sought; and

    (B) all parties in those cases and the names, addresses, telephone numbers, fax numbers, and email addresses of all counsel.

(b) *Request for Transfer by Judges*. A trial court or a presiding judge of an administrative judicial region may request a transfer of related cases to a pretrial court. The request must be in writing and must list the cases to be transferred.

(c) *Transfer on the MDL Panel's Own Initiative*. The MDL Panel may, on its own initiative, issue an order to show cause why related cases should not be transferred to a pretrial court.

(d) *Response; Reply; Who May File; When to File*. Any party in a related case may file:

  (1) a response to a motion or request for transfer within twenty days after service of such motion or request;

  (2) a response to an order to show cause issued under subparagraph (c) within the time provided in the order; and

(3) a reply to a response within ten days after service of such response.

(e) *Form of Motion, Response, Reply, and Other Documents.* A motion for transfer, response, reply, or other document addressed to the MDL Panel must conform to the requirements of Rule 9.4 of the Texas Rules of Appellate Procedure. Without leave of the MDL Panel, the following must not exceed 20 pages: the portions of a motion to transfer required by subparagraphs (a)(1)-(2); a response; and a reply. The MDL Panel may request additional briefing from any party.

(f) *Filing.* A motion, request, response, reply, or other document addressed to the MDL Panel must be filed with the MDL Panel Clerk. The MDL Panel Clerk may require that all documents also be transmitted to the clerk electronically. In addition, a party must send a copy of the motion, response, reply, or other document to each member of the MDL Panel.

(g) *Filing Fees.* The MDL Panel Clerk may set reasonable fees approved by the Supreme Court of Texas for filing and other services provided by the clerk.

(h) *Service.* A party must serve a motion, response, reply, or other document on all parties in related cases in which transfer is sought. The MDL Panel Clerk may designate a party or parties to serve a request for transfer on all other parties. Service is governed by Rule 9.5 of the Texas Rules of Appellate Procedure.

(i) *Notice to Trial Court.* A party must file in the trial court a notice -- in the form prescribed by the MDL Panel -- that a motion for transfer has been filed. The MDL Panel Clerk must cause such notice to be filed when a request for transfer by a judge has been filed.

(j) *Evidence.* The MDL Panel will accept as true facts stated in a motion, response, or reply unless another party contradicts them. A party may file evidence with the MDL Panel Clerk only with leave of the MDL Panel. The MDL Panel may order parties to submit evidence by affidavit or deposition and to file documents, discovery, or stipulations from related cases.

(k) *Hearing.* The MDL Panel may decide any matter on written submission or after an oral hearing before one or more of its members at a time and place of its choosing. Notice of the date of submission or the time and place of oral hearing must be given to all parties in all related cases.

(l) *Decision.* The MDL Panel may order transfer if three members concur in a written order finding that related cases involve one or more common questions of fact, and that transfer to a specified district court will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of the related cases.

(m) *Orders Signed by Chair or Clerk; Members Identified.* Every order of the MDL Panel must be signed by either the chair or by the MDL Panel Clerk, and must identify the members of the MDL Panel who concurred in the ruling.

(n) *Notice of Actions by MDL Panel.* The MDL Panel Clerk must give notice to all parties in all related cases of all actions of the MDL Panel, including orders to show cause, settings of submissions and oral arguments, and decisions. The MDL Panel Clerk may direct a party or parties to give such notice. The clerk may determine the manner in which notice is to be given, including that notice should be given only by email or fax.

(o) *Retransfer*. On its own initiative, on a party's motion, or at the request of the pretrial court, the MDL Panel may order cases transferred from one pretrial court to another pretrial court when the pretrial judge has died, resigned, been replaced at an election, requested retransfer, recused, or been disqualified, or in other circumstances when retransfer will promote the just and efficient conduct of the cases.

## 13.4 Effect on the Trial Court of the Filing of a Motion for Transfer.

(a) *No Automatic Stay*. The filing of a motion under this rule does not limit the jurisdiction of the trial court or suspend proceedings or orders in that court.

(b) *Stay of Proceedings*. The trial court or the MDL Panel may stay all or part of any trial court proceedings until a ruling by the MDL Panel.

## 13.5 Transfer to a Pretrial Court.

(a) *Transfer Effective upon Notice*. A case is deemed transferred from the trial court to the pretrial court when a notice of transfer is filed with the trial court and the pretrial court. The notice must:

   (1) list all parties who have appeared and remain in the case, and the names, addresses, phone numbers, and bar numbers of their attorneys or, if a party is pro se, the party's name, address, and phone number;

   (2) list those parties who have not yet appeared in the case; and

   (3) attach a copy of the MDL transfer order.

(b) *No Further Action in Trial Court*. After notice of transfer is filed in the trial court, the trial court must take no further action in the case except for good cause stated in the order in which such action is taken and after conferring with the pretrial court. But service of any process already issued by the trial court may be completed and the return filed in the pretrial court.

(c) *Transfer of Files; Master File and New Files in the Pretrial Court*. If the trial court and pretrial court are in the same county, the trial court must transfer the case file to the pretrial court in accordance with local rules governing the courts of that county. If the trial court and pretrial court are not in the same county, the trial court clerk must transmit the case file to the pretrial court clerk. The pretrial court clerk, after consultation with the judge of the pretrial court, must establish a master file and open new files for each case transferred using the information provided in the notice of transfer. The pretrial court may direct the manner in which pretrial documents are filed, including electronic filing.

(d) *Filing Fees and Costs*. Unless the MDL Panel assesses costs otherwise, the party moving for transfer must pay the cost of refiling the transferred cases in the pretrial court, including filing fees and other reasonable costs.

(e) *Transfer of Tag-along Cases*. A tag-along case is deemed transferred to the pretrial court when a notice of transfer -- in the form described in Rule 13.5(a) -- is filed in both the trial court and the pretrial court. Within 30 days after service of the notice, a party to the case or to any of the related cases already transferred to the pretrial court may move the pretrial court to remand the case to the trial court on the ground that it is not a tag-along case. If the motion to remand is granted, the case must be returned to the trial court, and costs including attorney fees may be assessed by the pretrial court in its remand order. The order of the pretrial court may be appealed to the MDL Panel by a motion for rehearing filed with the MDL Panel Clerk.

**13.6 Proceedings in Pretrial Court.**

(a) *Judges Who May Preside*. The MDL Panel may assign as judge of the pretrial court any active district judge, or any former or retired district or appellate judge who is approved by the Chief Justice of the Supreme Court of Texas. An assignment under this rule is not subject to objection under chapter 74 of the Government Code. The judge assigned as judge of the pretrial court has exclusive jurisdiction over each related case transferred pursuant to this rule unless a case is retransferred by the MDL Panel or is finally resolved or remanded to the trial court for trial.

(b) *Authority of Pretrial Court*. The pretrial court has the authority to decide, in place of the trial court, all pretrial matters in all related cases transferred to the court Those matters include, for example, jurisdiction, joinder, venue, discovery, trial preparation (such as motions to strike expert witnesses, preadmission of exhibits, and motions in limine), mediation, and disposition by means other than conventional trial on the merits (such as default judgment, summary judgment, and settlement). The pretrial court may set aside or modify any pretrial ruling made by the trial court before transfer over which the trial court's plenary power would not have expired had the case not been transferred.

(c) *Case Management*. The pretrial court should apply sound judicial management methods early, continuously, and actively, based on its knowledge of each individual case and the entire litigation, in order to set fair and firm time limits tailored to ensure the expeditious resolution of each case and the just and efficient conduct of the litigation as a whole. After a case is transferred, the pretrial court should, at the earliest practical date, conduct a hearing and enter a case management order. The pretrial court should consider at the hearing, and its order should address, all matters pertinent to the conduct of the litigation, including:

(1) settling the pleadings;

(2) determining whether severance, consolidation, or coordination with other actions is desirable and whether identification of separable triable portions of the case is desirable;

(3) scheduling preliminary motions;

(4) scheduling discovery proceedings and setting appropriate limitations on discovery, including the establishment and timing of discovery procedures;

(5) issuing protective orders;

(6) scheduling alternative dispute resolution conferences;

(7) appointing organizing or liaison counsel;

(8) scheduling dispositive motions;

(9) providing for an exchange of documents, including adopting a uniform numbering system for documents, establishing a document depository, and determining whether electronic service of discovery materials and pleadings is warranted;

(10) determining if the use of technology, videoconferencing, or teleconferencing is appropriate;

(11) considering such other matters the court or the parties deem appropriate for the just and efficient resolution of the cases; and

(12) scheduling further conferences as necessary.

(d) *Trial Settings*. The pretrial court, in conjunction with the trial court, may set a transferred case for trial at such a time and on such a date as will promote the convenience of the parties and witnesses and the just and efficient disposition of all related proceedings. The pretrial court must confer, or order the parties to confer, with the trial court regarding potential trial settings or other matters regarding remand. The trial court must cooperate reasonably with the pretrial court, and the pretrial court must defer appropriately to the trial court's docket. The trial court must not continue or postpone a trial setting without the concurrence of the pretrial court.

**13.7 Remand to Trial Court.**

(a) *No Remand If Final Disposition by Pretrial Court*. A case in which the pretrial court has rendered a final and appealable judgment will not be remanded to the trial court.

(b) *Remand*. The pretrial court may order remand of one or more cases, or separable triable portions of cases, when pretrial proceedings have been completed to such a degree that the purposes of the transfer have been fulfilled or no longer apply.

(c) *Transfer of Files*. When a case is remanded to the trial court, the clerk of the pretrial court will send the case file to the trial court without retaining a copy unless otherwise ordered. The parties may file in the remanded case copies of any pleadings or orders from the pretrial court's master file. The clerk of the trial court will reopen the trial court file under the cause number of the trial court, without a new filing fee.

**13.8 Pretrial court orders binding in the trial court after remand.**

(a) *Generally*. The trial court should recognize that to alter a pretrial court order without a compelling justification would frustrate the purpose of consolidated and coordinated pretrial proceedings. The pretrial court should recognize that its rulings should not unwisely restrict a trial court from responding to circumstances that arise following remand.

(b) *Concurrence of the Pretrial Court Required to Change Its Orders*. Without the written concurrence of the pretrial court, the trial court cannot, over objection, vacate, set aside, or modify pretrial court orders, including orders related to summary judgment, jurisdiction, venue, joinder, special exceptions, discovery, sanctions related to pretrial proceedings, privileges, the admissibility of expert testimony, and scheduling.

(c) *Exceptions*. The trial court need not obtain the written concurrence of the pretrial court to vacate, set aside, or modify pretrial court orders regarding the admissibility of evidence at trial (other than expert evidence) when necessary because of changed circumstances, to correct an error of law, or to prevent manifest injustice. But the trial court must support its action with specific findings and conclusions in a written order or stated on the record.

(d) *Unavailability of Pretrial Court*. If the pretrial court is unavailable to rule, for whatever reason, the concurrence of the MDL Panel Chair must be obtained.

**13.9 Review.**

(a) *MDL Panel Decision*. An order of the MDL Panel, including one granting or denying a motion for transfer, may be reviewed only by the Supreme Court in an original proceeding.

(b) *Orders by the Trial Court and Pretrial Court*. An order or judgment of the trial court or pretrial court may be reviewed by the appellate court that regularly reviews orders of the court in which the case is pending at the time review is sought, irrespective of whether that court issued the order or judgment to be reviewed. A case involving such review may not be transferred for purposes of docket equalization among appellate courts.

(c) *Review Expedited.* An appellate court must expedite review of an order or judgment in a case pending in a pretrial court.

**13.10 MDL Panel Rules.**

The MDL Panel will operate at the direction of its Chair in accordance with rules prescribed by the panel and approved by the Supreme Court of Texas.

**13.11 Civil Actions Filed Before September 1, 2003, Involving Claims for Asbestos- and Silica-Related Injuries.**

(a) *Applicability*. To the extent permitted by chapter 90 of the Texas Civil Practice and Remedies Code, Rule 13.11 applies to civil actions filed before September 1, 2003, that involve claims for asbestos- or silica-related injuries.

(b) *Statutory References; Definitions*. Statutory references in Rule 13.11 are to chapter 90 of the Texas Civil Practice and Remedies Code. "Claimant" has the meaning assigned in section 90.001(6). "Report" has the meaning assigned in section 90.001(24).

(c) *Notice of Transfer Under Section 90.010(b)*. A notice of transfer under section 90.010(b) must be filed in the trial court and the pretrial court and must:

(1) be titled "Notice of Transfer Under Section 90.010(b)";

(2) list all parties who have appeared and remain in the case, and the names, addresses, phone numbers, and bar numbers of their attorneys or, if a party is pro se, the party's name, address and phone number;

(3) state the name of each claimant transferred;

(4) attach to the notice filed in the pretrial court a copy of the claimant's live petition; and

(5) if filed by a defendant, contain a certificate stating that the filing party conferred, or at least made a reasonable attempt to confer, with opposing counsel about whether the notice of transfer is appropriate as to each individual claimant transferred.

(d) *Effect on Pending Motion for Severance*. If, when a notice of transfer is filed in the trial court, a motion for severance has been filed but the trial court has not ruled, the trial court must rule on the motion within 14 days of the date the notice of transfer is filed, or the motion is deemed granted by operation of law.

(e) *When Transfer Effective*. A case is deemed transferred from the trial court to the pretrial court when a notice of transfer is filed with the trial court unless a motion for severance is pending. If a motion for severance is pending when a notice of transfer is filed with the trial court, a case is deemed transferred when the trial court rules on the motion or the motion is deemed granted by operation of law.

(f) *Further Action in Trial Court Limited*. After a notice of transfer is filed, the trial court must take no further action in the case except:

(1) to rule on a motion for severance pending when the notice of transfer was filed, or

(2) for good cause stated in the order in which such action is taken and after conferring with the pretrial court.

But service of any process already issued by the trial court may be completed and the return filed in the pretrial court.

(g) *Severed Case File*. If a claim is severed from a case that includes one or more claimants covered by section 90.010(a), the file for the severed claims in the trial court should be numerically linked to the original case file and should contain only the live petition containing the severed claim. The severed case file is deemed to include all papers in the original case file. The pretrial court may require a different procedure in the interests of justice and efficiency.

(h) *Transfer of Files*. The pretrial court may order the trial court clerk to transfer a case file to the pretrial court. A case file must not be transferred to the pretrial court except as ordered by that court.

(i) *Filing Fees and Costs*. A defendant who files a notice of transfer must pay the cost of filing the case in the pretrial court, including filing fees and other reasonable costs. If the pretrial court remands the case to the trial court, the pretrial court may order that costs be allocated between the parties in a way that encourages just and efficient compliance with this rule, and may award appropriate and reasonable attorney fees.

**Credits**

Adopted by order of Aug. 29, 2003, eff. Sept. 1, 2003; rule 13.9 amended by order of Jan. 27, 2005, eff. March 1, 2005; rule 13.1 amended and rule 13.11 adopted by order of Nov. 29, 2005, eff. Nov. 29, 2005.

<Effective February 4, 1987>

<These rules were adopted by order of the Supreme Court February 4, 1987>

**Editors' Notes**

**COMMENT--2005**

**2013 Main Volume**

Subsections [13.1](a) and (b) are amended and subsection (c) is added to provide procedures for cases covered by chapter 90 of the Texas Civil Practices and Remedies Code, enacted effective September 1, 2005.

**COMMENT--2005**

**2013 Main Volume**

Subsection [13.9](b) is amended and subsection (c) is added to clarify the handling of appeals by appellate courts. Subsection (b) forbids transfer for docket equalization but not for other purposes that might arise. Subsection (c) does not require that an appeal from an order or judgment of a case pending in a pretrial court be treated as an accelerated appeal under the Texas Rules of Appellate Procedure if it would otherwise not be accelerated. Rather, subsection (c) requires expedited consideration by the appellate court regardless of whether review is sought by an appeal that is or is not accelerated, or by mandamus.

**COMMENT--2005**

**2013 Main Volume**

1. Rule 13.11 is added to provide procedures for cases covered by chapter 90 of the Texas Civil Practice and Remedies Code, enacted effective September 1, 2005.

2. The rule does not require a statement in the notice of transfer that no report has been served under chapter 90, or that a report has been served but does not comply with the provisions of that statute. The omission of such a requirement in the notice of transfer is not intended to limit the pretrial court's authority under Rule 166 of the Texas Rules of Civil Procedure to employ appropriate procedures to ascertain a party's position on the issue.

3. It is anticipated that the party filing a notice of transfer will usually be a defendant, and that the party filing a motion for severance will usually be a claimant. Ordinarily, a party filing the notice of transfer is responsible for filing fees and costs in the pretrial court, although there may be exceptions. See Rule 13.5(d). Also, a party who successfully moves to sever a claim into a separate proceeding in the trial court is customarily responsible for filing fees and costs,

although severance is "on such terms as are just", Tex. R. Civ. P. 41, and again, there may be exceptions. The intent of this rule is that severance and transfer procedures minimize costs and burdens on parties and the courts.

4. A pretrial court has discretion under Rule 13.11(g)-(i) to order the maintenance and transfer of physical case files and to allocate costs and fees so as to minimize costs and burdens on parties and the courts.

Notes of Decisions (42)

Footnotes

1      So in original order.

V. T. C. A., Govt. Code T. 2, Subt. F App., Jud.Admin., Rule 13, TX ST J ADMIN Rule 13

Current with amendments received through 3/15/2015

---

**End of Document**      © 2015 Thomson Reuters. No claim to original U.S. Government Works.

**No. 13-15-00296-CV**

In the Court of Appeals
For the Thirteenth District of Texas
Corpus Christi - Edinburg, Texas

*IN RE* **BENEVIS, LLC, DENTISTRY OF BROWNSVILLE, P.C., AND KOOL SMILES, P.C.,** *Relators*

From the 370th District Court, Hidalgo County, Texas
Cause No. C-0184-13-G and MDL Cause No. 14-0851
Hon. Noé Gonzalez, Presiding

*RESPONSE BY REAL PARTIES IN INTEREST TO PETITION FOR WRIT OF MANDAMUS*

George W. Mauzé, II
SBN: 13238800
Tom Bagby
SBN: 24059709
MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 402 South
San Antonio, Texas 78215
Tele: 210.354.3377
Facs: 210.354.3909

Kimberly S. Keller
SBN: 24014182
Shane Stolarczyk
SBN: 24033242
KELLER STOLARCZYK PLLC
234 West Bandera Rd #120
Boerne, Texas 78006
Tele: 830.981.5000
Facs: 888.293.8580

*Attorneys for Real Parties in Interest*

## IDENTITY OF PARTIES AND COUNSEL

Real Parties in Interest agree with the Identity of Parties and Counsel provided by Relators. Real Parties in Interest add the following law firm that has been retained as appellate counsel by Real Parties in Interest:

Kimberly S. Keller
Shane J. Stolarczyk
KELLER STOLARCZYK PLLC
234 W. Bandera Rd.
No. 120
Boerne, Texas 78006

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ................................. 2

TABLE OF CONTENTS ................................................ 3

INDEX OF AUTHORITIES ............................................. 5

INTRODUCTION ..................................................... 8

STATEMENT OF THE FACTS .......................................... 10

SUMMARY OF ARGUMENT ............................................. 27

ARGUMENT ........................................................ 29

A.   *Shared Discovery Doctrine: Dissemination of information to third parties streamlines litigation to the benefit of litigants and courts* ........ 30

B.   *The Amended Protective Order: Relators make much ado about nothing because the order precludes dissemination to competitors* ................... 34

C.   *Relators fail to demonstrate a clear abuse of discretion* ................................................. 38

   1.   **Mandamus Standard** ....................................... 39

   2.   <u>Issue One</u>: The trial court did not act *sua sponte* in deleting Paragraph 13, but even if it did, it was authorized to do so ...................... 40

   3.   <u>Issue Two</u>: The order complies with Texas's shared discovery doctrine ................................. 46

      a.   The trial court did not "clearly abuse its discretion" by allowing the discovery to be shared by "potential litigants" with

           **claims against Relators or other
potential defendants in the MDL
litigation** ...................................................**46**

      **b.**    **The trial court did not "clearly abuse its
discretion" by allowing the discovery to
be shared by lawyers and experts in the
federal case** ...........................................**51**

**D.**    *Issue Three: Relators have an adequate remedy
on appeal* ........................................................**56**

**CONCLUSION**..........................................................**59**

**CERTIFICATES**.......................................................**61**

**APPENDICES** ..........................................................**62**

    A.    Docket Sheet of Federal Case

    B.    Opinion of Federal Case

    C.    Orders and Filings Related to Relators' Discovery Abuse

    D.    Docket Sheet of Underlying Proceeding

    E.    Complaint in Federal Case

    F.    Transcript of June 15, 2015 Hearing

    G.    Answer in Federal Case

# INDEX OF AUTHORITIES

*Page*

**SUPREME COURT OF TEXAS CASES**

*Eichelberger v. Eichelberger,*
    582 S.W.2d 395 (Tex.1979) ............................................ 42

*Eli Lilly and Co. v. Marshall,*
    850 S.W.2d 155 (Tex. 1993) ........................... 30,47,50,56

*Garcia v. Peeples,*
    734 S.W.2d 343 (Tex. 1987) ............ 9,29,30,32,33,47,48,49

*In re CSX Corp.,*
    124 S.W.3d 149 (Tex. 2003) ...................................... 39,54

*In re Odyssey Healthcare, Inc.,*
    310 S.W.3d 419 (Tex. 2010) ........................................ 39

*In re Prudential Ins. Co. of Am.,*
    148 S.W.3d 124 (Tex. 2004) ........................................ 39

*In re Sw. Bell Tel. Co., L.P.,*
    235 S.W.3d 619 (Tex. 2007) ........................................ 39

*In re Team Rocket, L.P.,*
    256 S.W.3d 257 (Tex. 2008) ........................................ 40

*In re Van Waters & Rogers, Inc.,*
    145 S.W.3d 203 (Tex. 2004) ........................................ 57

*Public Util. Comm'n v. Cofer,*
    754 S.W.2d 121 (Tex. 1988) ........................................ 42

*Republican Party of Tex. v. Dietz,*
    940 S.W.2d 86 (Tex. 1997) ......................................... 39

*Walker v. Packer,*
827 S.W.2d 833 (Tex. 1992) ...........................................39


**TEXAS INTERMEDIATE APPELLATE COURT CASES**

*American Honda Motor Co., Inc. v Dibrell,*
736 S.W.2d 257 (Tex. App. – Austin 1987,
no writ) ................................................. 31,33,47,51,56

*Canton-Carter v. Baylor College of Medicine,*
271 S.W.3d 928 (Tex. App. – Houston [14th Dist.]
2008, no pet.) ...........................................................43

*Esquivel v. Martinez,*
No. 03-08-00792-CV, 2010 WL 3629824 (Tex. App.
– Austin 2010, no pet.)................................................43

*In re Quality Safety Systems,*
No. 05-10-00801-CV, 2010 WL 4192897 (Tex. App.
– Dallas 2010, original proceeding, *further
mandamus to Supreme Court of Texas denied*) ....... 31,47,56

*In re Reynoso,*
361 S.W.3d 719 (Tex. App.–Corpus Christi 2012, no
pet.).......................................................................40

*Kessell v. Brideswell,*
872 S.W.2d 837 (Tex. App. – Waco 1994, orig.
proceeding) .............................................................57

*Kutch v. Del Mar College,*
831 S.W.2d 506 (Tex. App. -- Corpus Christi 1992,
no writ) ..................................................................42

*Lawrence v. Kohl,*
853 S.W.2d 697 (Tex.App.—Houston [1st Dist.]
1993, no writ) ..........................................................42

**FEDERAL DISTRICT COURT CASES**

*Idar v. Cooper Tire & Rubber Co.,*
    No. C-10-217, 2011 WL 688871 (S.D.Tex. 2011)
    (Corpus Christi Division) ................................ 31,47,51,56

## INTRODUCTION

The case underlying this original proceeding is a civil conspiracy, fraud, and medical negligence case brought on behalf of Real Parties in Interest, numerous children who received unnecessary, barbaric, and painful dental operative procedures at Relators' clinics in South Texas. *Rec.3.*[1] In their lawsuit, Real Parties in Interest allege that Relators engage in the unauthorized, unlicensed practice of dentistry by implementing a corporate scheme to prey on the very individuals it claimed to be helping: young children covered by Medicaid.

Since this lawsuit began, Relators have attempted to delay the case and escalate the litigation costs to the parties, even going so far as to sue the attorneys representing Real Parties in Interest in federal court for defamation. *See NCDR, L.L.C., et al. v. Mauzé & Bagby, PLLC, et al,* No. 5:12-cv-36 (S.D.TX 2012) (federal lawsuit alleges statements about Relators' dental procedures defamed Relators); *App.A* (Federal Docket Sheet); *App.B* (Fifth Circuit Opinion); *App.E* (First Amended Complaint); *App.G* (Answer). Both

---

[1]All references to Relators Sworn Record will be designated by using "Rec.[tab] at [page number]". Real Parties in Interest also cite to their own appendices, attached to this Response, using "App.[tab] at [page number]."

the underlying proceeding and the federal lawsuit involve whether Relators carried out a fraudulent scheme to prey on young patients by performing unnecessary and barbaric dental operative procedures on them in order to collect millions in Medicaid. *Compare Rec.3* (petition in underlying proceeding), *with App.E, F* (Complaint, Answer of federal case).

The amended protective order that has been challenged in this original proceeding is based upon the well-established doctrine of shared discovery. *Garcia v. Peeples*, 734 S.W.2d 343 (Tex. 1987). This order allows Real Parties in Interest to share the discovery with other potential litigants, as well as the attorneys and experts involved in the federal lawsuit. *Rec.12.* Contrary to the "parade of horribles" argument made by Relators, the amended protective order safeguards any potential confidential information or trade secrets of Relators. *Rec.12.* Indeed, the challenged order specifically brings anyone viewing the documents under the jurisdiction of the trial court and precludes dissemination of the documents to Relators' competitors. *Rec.4, 12.*

The record before this Court and Texas case law demonstrate that the challenged order falls well within the discretionary powers

9

of the trial court. Relators' petition for writ of mandamus is nothing more than another attempt to delay the discovery process and increase costs in the ever-growing litigation arising from Relators' predatory dental clinic scheme. This Court should not condone Relators' actions and should deny Relators' meritless petition for writ of mandamus.

## STATEMENT OF THE FACTS

Real Parties in Interest are a large group of minor children (and their representatives) that brought civil conspiracy, fraud, and medical negligence claims against Relators for subjecting the minor children to unnecessary and barbaric dental operative procedures at Relators' dental clinics ("Kool Smiles" clinics in Mission, McAllen, and Weslaco, Texas).[2]

### 1. Relators business plan

Real Parties in Interest allege that their injuries can be traced back to Relators' decision to implement an elaborate plan to

---

[2] Real Parties in Interest's original petition was filed on January 16, 2013. *Rec.1.* Upon motion by Relators, the Multidistrict Litigation Panel consolidated the lawsuits of Real Parties in Interest as a multidistrict proceeding and appointed Judge Noe Gonzalez of the 370th District Court of Hidalgo County to preside as the pretrial judge. The multidistrict proceeding was given the following cause number and style: No. 14-0851, *In re Kool Smiles Dental Litigation. Rec.6.*

10

generate as much taxpayer Medicaid revenue as possible per clinic, per dentist, per patient, and per visit. *Rec.3* at 7. Relators hired general dentists, most of who had recently graduated from dental school and had very little, if any, experience with pediatric patients. *Id.* Relators gave their dentists specific instructions on how to handle patients in a manner that maximizes Medicaid revenue and then monitored to ensure compliance with the instructions. *Id.* Because Relators' primary motivation was to generate the most profit possible, Relators preyed upon the most vulnerable members of our society, i.e., underprivileged, young children who were covered by Medicaid. *Id.*

Relators assigned the hired dentists to clinics that primarily treat young pediatric patients. *Id.* Relators discouraged the dentists from referring these patients to pediatric dentists, when referral was indicated. *Id.* Relators closely tracked the dentists' actions, including the number of patients each dentist referred and whether the dentists met "production goals." *Id.*

Real Parties in Interest allege Relators' production goals were very specific and were based entirely upon production or collections rather than necessity for treatment or quality of care. *Rec.3* at 7.

11

For example, dentists were provided targets and instructions regarding the number of quadrants they should work on during each visit of each patient, the number of operative procedures per patient, and the number of operative procedures per day they should perform. *Id.* If a dentist failed to reach the target, the dentist was counseled and provided a performance improvement plan specifying how the dentist could increase production. *Id.* If a dentist failed to increase production thereafter, the dentist was terminated. *Id.* Relators trained and indoctrinated the dentists to provide aggressive dental care to pediatric patients with only temporary teeth (commonly referred to as "baby teeth"), such as placing stainless steel crowns on teeth which are not indicated because: (1) no caries existed; or (2) the caries are so small that they can be simply observed (which will not produce revenue from Medicaid); or (3) the caries are so small that they can be treated with fillings (which will not produce as much revenue from Medicaid as stainless steel crowns); or (4) the teeth will soon exfoliate (fall out naturally which will not produce any revenue from Medicaid). *Rec.3* at 8.

Real Parties in Interest allege Relators also trained the dentists to perform many operative procedures on each patient in the shortest amount of time. *Id.* To speed up the treatment time, the children were often physically restrained to papoose boards and physically held down while multiple operative procedures were performed on the same date. *Rec.3* at 8. Because it allowed for more treatment to occur in less time, Relators prohibited use of oral conscious sedation, IV sedation, and general anesthesia. *Id.* Thus, the dentists were not certified and/or did not possess permits by the State of Texas to administer oral conscious sedation, IV sedation, or general anesthesia. *Id.* Use of nitrous oxide was discouraged and rarely used because the initial cost of the equipment and gas is expensive. *Id.* The children undergoing procedures did not receive interventions to relieve them of their fear and anxiety associated with dental operative procedures. *Id.*

Thus, although many of the children undergoing procedures were in distress, the dentists did not defer or terminate the treatment to relieve their distress but, rather, restrained the children with papoose boards and otherwise to enable them to fulfill their production and revenue goals. *Id.* Relators motive was simple:

13

to bilk Medicaid for millions and millions of dollars at the cost of taxpayers and the suffering of underprivileged children. *Rec.3* at 13. Relators have already collected millions and will continue to collect tens of millions of taxpayer dollars in Texas every year. *Id.*

## 2. <u>**The Victimization of Real Parties in Interest**</u>

Real Parties in Interest allege they, like most of the children treated at the dental clinics, were very young and had baby teeth. *Rec.3* at 11. More often than not, the children had no history of pain or complaints before arriving at one of these dental clinics. *Id.* Their parents anticipated the children would receive examinations, oral hygiene instructions, and a teeth cleaning. *Id.* They trusted the dental professionals to recommend only necessary dental services and to perform the services in a manner that insured their children's comfort. *Id.*

Real Parties in Interest allege Relators, after examination, misdiagnosed the existence and/or severity of cavities and recommended procedures, most commonly consisting of pulpotomies and stainless steel crowns. *Id.* Many of these procedures were unnecessary and/or excessive, but performance of them allowed Relators to maximize production per patient and meet

14

revenue goals. *Id.* Relators' staff was trained to "sell" the treatment plans to the parents. *Id.*

Real Parties in Interest allege Relators, after persuading the parents that the treatment was necessary and that the children would be comfortable, secured the parents' consents to treatment and use of physical restraint. *Id.* at 12. Parents were told restraint would most likely not be necessary and, if necessary, had no risks. *Rec.3* at 12. But, the dental clinics ended up restraining the overwhelming majority of these children because it required less time than sedation. *Id.* As a result, children were regularly strapped to papoose boards and physically restrained otherwise (often including blind-folds, socks over their hands and arms, and one or more employees physically holding their head and/or feet).[3]

Real Parties in Interest allege Relators' dental clinics prohibited or discouraged the parents from being present in the treatment room. *Id.* The treatment, which routinely included operative procedures without sedation or nitrous oxide (and instead

---

[3] *Id.* Because of the loss of freedom of movement and potential physical and emotional trauma, physical restraint to a papoose board should only be used in dentistry as a last resort when all other less restrictive behavior guidance techniques have been reasonably attempted and failed and the dental treatment is immediately necessary due to trauma, advancing disease, or infection. *Id.*

using the aforementioned restraints) caused the children so much physical and emotional trauma that they cried, screamed, struggled, and were altogether terrified. *Id.* Many children were so traumatized that they lost control of their bladders and/or vomited. *Id.* The dentists, rather than postponing or terminating the procedures for the safety and comfort of the children, pressed on with production. *Id.* Some of the dental operative procedures were inadequately performed, the children were required to undergo further treatment and/or suffered from infections and abscesses, necessitating subsequent extractions. *Id.*

### 3. <u>Relators' lawsuit against the attorneys for Real Parties in Interest</u>

When the investigation into Relators' corporate scheme first began, Relators filed a federal lawsuit against the attorneys representing Real Parties in Interest. *See NCDR, L.L.C., et al. v. Mauzé & Bagby, PLLC, et al,* No. 5:12-cv-36, in the United States District Court Southern District of Texas, Laredo Division; *App.A* (Federal Docket Sheet); *App.B* (Fifth Circuit Opinion); *App.E* (First Amended Complaint); *App.G* (Answer). In that federal lawsuit, which remains pending, Relators claim that Real Parties in Interest's

16

attorneys defamed them while advertising on radio, television, and the internet. *Id.; see NCDR, L.L.C. v. Mauzé & Bagby, P.L.L.C.,* 745 F.3d 742, 745 (5th Cir. 2014) ("As a part of the campaign, M&B ran television, radio, and internet advertisements, and developed a website that strongly implied, or even accused, Kool Smiles of performing unnecessary, and at times harmful, dental work on children to obtain government reimbursements. . . . Based on M&B's ads and website, Kool Smiles brought causes of action under federal law for trademark infringement, false advertising, and cyber-piracy. Kool Smiles also brought state claims for defamation, business disparagement, injury to business reputation, and trade name and service mark dissolution"); *see also Relators' Mandamus Pet.* at n.2 (conceding that Relators filed a federal lawsuit against Real Parties in Interest's lawyers).

Since the above-referenced federal appellate opinion was handed down, Relators have narrowed their federal lawsuit to focus solely on claims arising from their contention that the statements made describing their dental procedures are untrue. *App.E,G* (federal Complaint and Answer)*; App.F* at 59-60 ("It's against my firm arising from what we said about their treatment of these

17

children. And they're saying that when we said these kids were crying, and screaming, and struggling, and they put a bunch of crowns in their mouths – They're saying those are lies, and we can prove conclusively they're not"). Thus, the federal lawsuit and the underlying proceeding are based on the same allegations against Relators' corporate scheme preying upon young children covered by Medicaid. *Compare Rec.3, with App.E,J.*

### 4. **The Protective Order**

In June 2013, the trial court in the underlying proceeding entered a Stipulated Confidentiality Agreement and Protective Order (the "Protective Order"). *Rec.4.* Under this protective order, Relators were permitted to designate documents produced as either "Confidential" and/or "Produced Pursuant to Protective Order" if the documents contained trade secret, proprietary, and/or confidential information. *Id.* The protective order provides that if the "Confidential" designation is contested, then the parties should attempt to confer and, if the matter is not resolved, then Real Parties in Interest should move for a hearing to determine confidentiality. *Id.* The protective order also provided that the trial court retained authority to resolve disputes amongst the parties in

relation to the protective order and that the trial court retained authority to amend the protective order if necessary. *Rec.4* at 4.

The protective order contains a multitude of protections benefiting Relators. *Rec.4.* These protections include:

- "Any person who reviews the Confidential Information produced subject to this Stipulated Protective Order agrees to the jurisdiction over their person where the above-captioned matter is pending for the purposes of any action seeking to enforce the terms of this Stipulated Protective Order or any action for contempt for violation of the terms of this Stipulated Protective Order."

- "The parties and their counsel who receive Confidential Information shall act to preserve the confidentiality of designated documents and information."

- "Any party that intends to use or submit any Confidential Information in connection with any pretrial proceedings or filings shall notify the producing party in writing of its intention to do so at the time of or before filing any related pleadings, motions or other documents . . . The Confidential Information shall be submitted to the Court *in camera* in a

sealed envelope or other appropriate container labeled as follows: "CONFIDENTIAL – DOCUMENTS SUBMITTED IN CAMERA."

- "No Confidential Information shall be disseminated to anyone who is a direct competitor of the party producing the Confidential Information or is a current employee of a direct business competitor of the party producing the Confidential Information."

*Rec.4* at 2-4. All of these aforementioned provisions remain intact and are unaffected by the challenged amendment to the protective order. *Rec.12.*

## 5. **Relators' abuse of the discovery process**

Throughout the history of this litigation, Relators have forced Real Parties in Interest to file motion after motion to compel properly requested discovery.[4] This behavior then required multiple

---

[4]On July 24, 2013, the Court granted Real Parties in Interest's Motion To Compel, overruled Defendants' objections and claims of privilege pertaining to documents withheld from production, and ordered Defendants of Brownsville, P.C. d/b/a Kool Smiles (hereinafter referred to as "DOB") and NCDR, LLC d/b/a Kool Smiles (hereinafter referred to as "NCDR") to produce all documents titled "Office Scorecard - Medicaid Children". *App.C.* Thereafter, DOB and NCDR amended its discovery response and privilege log and represented to the trial court and Real Parties in Interest that no responsive documents existed. During a subsequent hearing, Real Parties in Interest produced a copy of said

hearings before the trial court. *Id.* The trial court, as a result, was very familiar with Relators' dilatory tactics. *App.F* at 15-16.

The order challenged by Relators in this original proceeding relates to the protective order. Under the protective order, Relators produced approximately 477,964 pages of responsive documents, but designated the overwhelming majority of said documents as "Confidential." *Rec.7* at 2. Relators used this designation even though the documents do not contain trade secret, proprietary, and/or confidential information and even though the trial court had already overruled Relators' objections based on confidentiality. *App.F* at 68-71 (addressing Relators' marking as "confidential" documents that had already been ruled as not confidential by trial court: "I mean, your order was absolutely disregarded. The purpose of the hearings in front of you did nothing. They still get what they want. They wanted them confidential from day one. They're still

document to the trial court. *App.C.* After the trial court again granted Plaintiffs' Motion To Compel, DOB and NCDR produced over 1,901 pages of documents titled "Office Scorecard - Medicaid Children". *App.C.* On May 16, 2013, Real Parties in Interest filed a motion to compel discovery from DOB and NCDR. Said Motions were heard on June 10th, 17th, and 20th. *App.C.* On July 30, 2013, Real Parties in Interest filed a second motion to compel discovery from DOB and NCDR and for sanctions. *App.C.* Said hearings were heard on August 22nd and September 3rd. *App.C.* On September 3, 2014, Real Parties in Interest filed a third motion to compel discovery from DOB and NCDR, and filed a motion to compel against Kool Smiles, P.C. d/b/a Kool Smiles. The trial court granted the vast majority of the discovery sought. *App.C.*

claiming they're confidential after hours, and hours, and hours of hearings – after they've tried to hide them from the Court. That's a prime example").

For example, Relators designated as "Confidential" blank pages, fully redacted pages, public medical articles, government regulations, and documents publically disseminated.[5] From the inception of this lawsuit, Relators have delayed and obstructed the discovery process. *Rec.7.* Relators failed to produce documents in violation of the trial court's order, unilaterally redacted documents ordered produced by the trial court, failed to produce complete copies of responsive documents, and failed to segregate and identify documents responsive to specific requests for production. *Rec.7.* Relators' disregard for the trial court's orders and the Texas Rules

---

[5]*Rec.7* at Exhs.B-D. Attached to Real Parties in Interest's motion to amend as Exhibits B through D), are blank pages and fully redacted documents that Relators contend contain Confidential Information. *Id.* Exhibit C contains the following public documents that Relators marked as "Confidential": (1) Texas State Board of Dental Examiners Rules and Regulations; (2) The Department of Health and Human Services Guidelines for Infection Control in Dental Healthcare Settings — 2003; and (3) The American Academy of Pediatric Dentistry's Guideline on Carries-risk Assessment and Management for Infants, Children, and Adolescents. *Id.* Further, Exhibit D contains publically disseminated documents that Relators have designated as "Confidential." *Id.*

of Civil Procedure resulted in several motions to compel discovery, which necessitated intervention by the trial court.[6]

### 6. **Request for relief by Real Parties in Interest**

In response to Relators' repeated violation of the Rules of Civil Procedure and the orders of the trial court, Real Parties in Interest filed a motion to amend the protective order. *Rec.7.* Relators filed responsive briefing to the trial court. *Rec.8.* The trial court held a hearing on the motion on June 15, 2015.

At the hearing on June 15, 2015, Plaintiffs presented evidence that Relators produced over 477,000 pages of documents after several orders compelling discovery. The transcript of the hearing is attached as *Appendix F.* At the hearing, the trial court heard evidence that "out of the 477,964 pages, they stamped every single one confidential except for 438. 99.9 percent of the pages were marked confidential." *App.F* at 16. Over 1,000 of the pages marked as "Confidential" were blank pages. *App.F* at 28. Real Parties in Interest presented evidence that the documents designated by

---

[6]"You overruled those objections. Then they came back and told us none exist. And then we had a hearing, and we showed you they do exist, because we had some from a former employee. And you were upset with them, and said, 'You all better make a better effort to find these documents.' They found, after saying 'none,' approximately 400,000 pages of those documents, after they told us 'none.'" *App.F* at 28.

Relators as "Confidential" include over 100,000 pages that are blank, totally redacted, public advertising, professional literature, public information, e-mails, etc. *App.F.* at 29.

Real Parties in Interest presented the trial court with a plethora of examples of how Relators had abused the "confidential" designation in the protective order. *App.F* at 75-84 (Real Parties in Interest's presentation of evidence demonstrating Relators marked 98.4% of documents as confidential); *id.* (Real Parties in Interest evidence demonstrating Relators marked as confidential 1,000 blank pages; 100,000 completely redacted pages [despite a preexisting trial court order requiring Relators to not redact the first line of the document to allow Real Parties in Interest to identify what the document is]; publicly available documents; medical publications; Relators' public advertisements; publicly-available guidelines from the American Association of Pediatric Dentists; email communications that are prejudicial to Relators, but wholly unrelated to trade secrets; communications regarding Relators' disciplining of dentists refusing to use papoose boards on children).

During the hearing, the trial court determined that the original protective order was no longer an "agreed" order.[7] Thus, the trial court requested additional briefing from the parties on the shared discovery doctrine.[8] Accordingly, Real Parties in Interest submitted a Memorandum of Law on the shared discovery doctrine, along with a Proposed Order. *Rec.11* at Exh.A at 2 (proposed order submitted by Real Parties in Interest containing the following language: "ORDERED that the Stipulated Confidentiality and Protective Agreement Order entered by the Court on June 11, 2013 shall be, and is hereby, AMENDED and MODIFIED to delete Paragraph 13 and Exhibit 'B'"). This proposed order, seeking deletion of Paragraph 13 of the protective order, was filed on June 19, 2015. *Rec.11.* Relators objected to the order proposed by Real Parties in Interest,

---

[7] "Let me repeat what I have already said. The Court is convinced, based on discussion that I have had with counsel on and off the record today – and I mean counsel for both sides – for all sides here – that the confidentiality agreement that was originally entered into is not an agreed confidentiality agreement anymore. Now, it's still in place under Rule 11, but the Court is considering the amendments that are being requested by plaintiffs' counsel. And, therefore, I am asking for quick briefing, by both sides, by Friday, and responses to those briefs on Tuesday of next week." *App.F* at 97.

[8] After hearing lengthy arguments from both sides, as well as the evidence presented by Real Parties in Interest, the trial court stated: Well, that's what I'm asking you all to do. Brief the shared discovery doctrine to me, and argue to me why it is what it is, according to your reading of it. Because if you all don't reach an agreement, which I'm gonna go out on a limb and say you are not gonna reach an agreement – So I'm gonna tell you right now: Tell me what confidentiality agreement I should sign as an order, period. *App.F* at 95.

25

contending the deletion of Paragraph 13 was improper. *Rec.10* at 5-6.

The trial court ultimately granted the Real Parties in Interest's motion and signed the proposed order. *Rec.12.* The order granting the motion amends to the protective order to:

> expressly authorize Plaintiffs and their attorneys to disseminate any of the discovery in this case, including documents produced by Defendants, to any other litigant or potential litigant in this MDL litigation including their attorneys, retained experts, and consulting experts, to any litigant, attorneys, retained experts, and consulting experts in *NCDR, L.L.C., et al. v. Mauzé & Bagby, PLLC, et al*; case No. 5:12-cv-36 in the United States District Court Southern District of Texas, Laredo Division, and to any other litigants, including their attorneys, retained experts, and consulting experts with actual or potential claims relating to dental services or the ownership, operation, management, and/or control of dental clinics against any of the named defendants and other potential parties in the *Antu* and MDL litigation.

*Rec.12* at 1-2. Relators subsequently filed an original proceeding and a motion for stay with this Court.

26

## SUMMARY OF ARGUMENT

Relators are being disingenuous with this Court. They are not worried that their trade secrets will be exposed to competitors. Rather, they oppose the shared discovery permitted in the amended order for one reason: because it will streamline, as opposed to delay, the numerous claims brought by the victims against Relators. Over and over again at the hearing, Relators were given an opportunity to explain to the trial court why they opposed shared discovery. And, every time, Relators gave only one answer: because they wanted to force non-parties to jump through repetitious, duplicative hoops in order to inevitably collect the same documents. This is gamesmanship, not genuine concern for the revelation of trade secrets. Simply put, Relators gave the trial court no evidence to support the entry of a broad-based protective order.

The trial court, who now presides over the MDL, is well-aware of the dilatory tactics practiced by Relators. Before the challenged order was entered, the trial court held multiple hearings based on Relators' discovery violations. The hearing leading to the challenged order was prompted by Relators' outright abuse of the original protective order (labeling as "confidential" 99.9% of the documents,

27

including blank pages and publicly disseminated documents). Even with Relators' history of abuse and a stack of "confidential" blank pages before it, the trial court did not rush to judgment against Relators. Instead, the trial court patiently considered the filings of the parties, the arguments of counsel, the evidence presented at the lengthy hearing, and additional post-hearing filings, before arriving at the conclusion that shared discovery was the best and most efficient manner to handle the discovery in this case.

Based on this record, Relators cannot demonstrate the trial court clearly abused its discretion. In fact, the record proves the opposite – a well-reasoned, thoughtful, and legally correct ruling. Relators also fail to demonstrate they lack an adequate remedy on appeal. Because Relators have failed to carry the heavy burden entitling them to the extraordinary relief offered by a writ of mandamus, this Court should vacate the emergency stay granted and deny the mandamus relief sought by Relators.

## **ARGUMENT**

To say Relators have abused the discovery process in this case is an understatement. Real Parties in Interest encourage this Court to thoroughly review the transcript of the June 15, 2015 hearing that resulted in the challenged order. *App.F.* The trial court, after hearing all of the evidence, entered a well-reasoned ruling based on Texas Supreme Court precedent.

Nevertheless, Relators continue their dilatory practice by bringing this original proceeding (and seeking a stay from this Court) in order to continue thwarting the progress of this litigation. Relators raise three issues, all stemming from one complaint -- the trial court's use of the shared discovery doctrine, as outlined in *Garcia v. Peeples*, 734 S.W.2d 343 (Tex. 1987). Because the Texas Supreme Court approves of trial courts' use of this doctrine, Relators cannot demonstrate an error was made, much less a clear abuse of discretion. Relators also fail to demonstrate they lack an adequate remedy on appeal. Accordingly, this Court should lift the emergency stay imposed and deny the mandamus relief requested.

29

**A.** *Shared Discovery Doctrine: Dissemination of information to third parties streamlines litigation to the benefit of litigants and courts.*

The Texas Supreme Court has acknowledged the propensity of parties to frustrate the discovery process by using delay tactics and imposing unnecessary, repetitious steps that only increase the cost of litigation. *Garcia v. Peeples*, 734 S.W.2d 343, 347 (Tex. 1987) ("Unfortunately, this goal of the discovery process is often frustrated by the adversarial approach to discovery. The 'rules of the game' encourage parties to hinder opponents by forcing them to utilize repetitive and expensive methods to find out the facts. The truth about relevant matters is often kept submerged beneath the surface of glossy denials and formal challenges to requests until an opponent unknowingly utters some magic phrase to cause the facts to rise. Courts across the nation have commented on the lack of candor during discovery in complicated litigation.").

To remedy this problem, the Texas Supreme Court adopted the Shared Discovery Doctrine: "under the doctrine of shared discovery, the fruits of discovery are available not only to the parties in a particular case but may be disseminated in turn to other litigants and **potential litigants**." *Eli Lilly and Co. v. Marshall,* 850 S.W.2d

155, 160 (Tex. 1993) (emphasis added); *In re Quality Safety Systems,* No. 05-10-00801-CV, 2010 WL 4192897, *1 (Tex. App. – Dallas 2010, original proceeding, *further mandamus to Supreme Court of Texas denied*) (mem.op.) (denying mandamus relief to litigant challenging protective order that allowed dissemination of confidential documents to non-parties); *American Honda Motor Co., Inc. v Dibrell,* 736 S.W.2d 257, 258-59 (Tex. App. – Austin 1987, no writ) (affirming protective order allowing dissemination to individuals with ATV-based claims against defendants or other manufacturers, *i.e.,* order allowed dissemination to "parties involved in litigation involving personal injury alleged to be associated with the use of an all terrain vehicle"); *see also Idar v. Cooper Tire & Rubber Co.,* No. C-10-217, 2011 WL 688871, *2 (S.D.Tex. 2011) (Corpus Christi Division) (relying on *Garcia* and *Quality Safety Systems* to affirm protective order and stating, "Based on the Supreme Court's holding in *Garcia,* it would be an abuse of discretion for this Court to **disallow** any sharing among similarly situated litigants") (emphasis in original).

"Shared discovery is an effective means to insure full and fair disclosure. Parties subject to a number of suits concerning the

same subject matter are forced to be consistent in their responses by the knowledge that their opponents can compare those responses." *Garcia,* 734 S.W.2d at 347. The Texas Supreme Court explained, "In addition to making discovery more truthful, shared discovery makes the system itself more efficient. The current discovery process forces similarly situated parties to go through the same discovery process time and time again, even though the issues involved are virtually identical. Benefiting from restrictions on discovery, one party facing a number of adversaries can require his opponents to duplicate another's discovery efforts, even though the opponents share similar discovery needs and will litigate similar issues. Discovery costs are no small part of the overall trial expense." *Id.*

A litigant, like Relators in this case, seeking to limit the dissemination of discovered documents must apply for a protective order under the Texas Rules of Civil Procedure. *Id.* at 345-46. If a limitation is ordered, it should be narrowly tailored to balance the needs of protecting confidential information from business competitors with the needs of the litigants and potential litigants to share information. *Id.* at 348 ("The facts of this case do not justify

32

the blanket protective order, and in rendering an overbroad order, the trial court abused its discretion. GMC's interest is in protecting its proprietary information from competitors, while Garcia seeks to more effectively prepare for trial by exchanging information with other litigants. The public policies favoring shared information require that any protective order be carefully tailored to protect GMC's proprietary interests while allowing an exchange of discovered documents."); *American Honda,* 736 S.W.2d at 259 (noting the Supreme Court held that shared discovery includes disseminating documents to non-parties, such as litigants and potential litigants involved in similar-typed lawsuits).

The Texas Supreme Court has provided the following guidance to trial courts: "Out of an abundance of caution, the trial court, after determining which documents are true trade secrets, can require those wishing to share the discovered material to certify that they will not release it to competitors or others who would exploit it for their own economic gain. Such an order would guard GMC's proprietary information, while promoting efficiency in the trial process." *Garcia,* 734 S.W.2d at 348. That is what happened in this case.

**B.** ***The Amended Protective Order: Relators make much ado about nothing because the order precludes dissemination to competitors.***

Relators' three issues on appeal seek to vacate the amended protective order. *Rec.12.* Before addressing Relators' complaints, it is important to acknowledge the multitude of protections benefiting Relators that are in the protective order and remain unaffected by the challenged amendment. *Rec.4.* These protections include:

- "Any person who reviews the Confidential Information produced subject to this Stipulated Protective Order agrees to the jurisdiction over their person where the above-captioned matter is pending for the purposes of any action seeking to enforce the terms of this Stipulated Protective Order or any action for contempt for violation of the terms of this Stipulated Protective Order."

- "The parties and their counsel who receive Confidential Information shall act to preserve the confidentiality of designated documents and information."

- "Any party that intends to use or submit any Confidential Information in connection with any pretrial proceedings or filings shall notify the producing party in writing of its

intention to do so at the time of or before filing any related pleadings, motions or other documents . . . The Confidential Information shall be submitted to the Court *in camera* in a sealed envelope or other appropriate container labeled as follows: "CONFIDENTIAL – DOCUMENTS SUBMITTED IN CAMERA."

- "No Confidential Information shall be disseminated to anyone who is a direct competitor of the party producing the Confidential Information or is a current employee of a direct business competitor of the party producing the Confidential Information."

*Rec.4* at 2-4. The challenged amendment affects none of these provisions. *Rec.12.*

The nutshell of Relators' complaint is that the trial court has broadened the scope to allow for sharing discovery with potential litigants with claims against Relators (other individuals injured by Relators) and with counsel and experts involved in the federal lawsuit Relators filed against the lawyers for Real Parties in Interest. *Rec.12* at 1. Specifically, the challenged order amends to the protective order to:

35

expressly authorize Plaintiffs and their attorneys to disseminate any of the discovery in this case, including documents produced by Defendants, to any other litigant or potential litigant in this MDL litigation including their attorneys, retained experts, and consulting experts, to any litigant, attorneys, retained experts, and consulting experts in *NCDR, L.L.C., et al. v. Mauzé & Bagby, PLLC, et al*; case No. 5:12-cv-36 in the United States District Court Southern District of Texas, Laredo Division, and to any other litigants, including their attorneys, retained experts, and consulting experts with actual or potential claims relating to dental services or the ownership, operation, management, and/or control of dental clinics against any of the named defendants and other potential parties in the *Antu* and MDL litigation.

*Rec.12* at 1-2.

The individuals encompassed by the amendment, however, are bound by the terms of the protective order, *i.e.,* submitted to the jurisdiction of the trial court, requirement to preserve the confidentiality of the documents, requirement to give notice before using the documents in court, prohibition against disseminating the documents to competitors. *Rec.4* at 2-4. Ironically, Relators complain that discovery can now be shared by potential MDL plaintiffs when it was Relators who moved for the case to be consolidated into a multidistrict proceeding based on the argument

36

that an MDL would streamline discovery. *Rec.5* at 3 (Relators argue: "Because all of the allegations against the Corporate Defendants are identical, discovery of information and documents from the Corporate Defendants is likely to be substantially the same in all cases. Likewise, because the allegations against the treating defendants are substantially similar, discovery of information and documents will be similar. Therefore, it is in the interest of efficiency to transfer these cases to a single trial pretrial court so that the defendants need only respond to discovery once. Transfer of these lawsuits to a single pretrial court for consolidated and coordinated pretrial proceedings will eliminate duplicative discovery, avoid conflicting legal rulings, conserve judicial resources, be more convenient for the parties and witnesses, and will otherwise promote the just and efficient conduct of all the actions.").

Also ironically, Relators complain that discovery can now be shared with counsel and experts in the federal litigation when it was Relators who chose to file the lawsuit in the first place and to claim that the statements describing their dental practices were untrue. *App.E,G.* To the trial court or this Court, Relators do not

37

detail how sharing discovery with lawyers and experts in the federal case injures them or heightens the risk that confidential information will land in the hands of Relators' competitors. The bottom line is that Relators oppose sharing discovery not because they fear competitors will gain access to confidential information, but in hopes of making the litigation regarding Relators' fraudulent scheme more expensive, more lengthy, and more difficult. The trial court's amended order, which was handed down with knowledge of the above, does not constitute an abuse of discretion.

## C.   *Relators fail to demonstrate a clear abuse of discretion.*

Relators bring three issues to this Court. Relators contend the trial court "abused his discretion in ordering relief not requested or briefed by the Real Parties with respect to the deletion of paragraph 13," and that the trial court "abused his discretion in ordering that plaintiffs and their counsel may disseminate confidential information to attorneys in an unrelated federal case and to unidentified 'potential litigants' with 'potential claims' against 'potential parties' to the multidistrict litigation." *Pet.* at xviii. Relators' third issue contends they lack an adequate remedy on appeal. Relators have failed to demonstrate that the trial court's

actions constitute a clear abuse of discretion and, as a result, this Court should lift the emergency stay and deny the mandamus relief requested.

### 1. Mandamus Standard

The standard governing mandamus proceedings is well-established. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). As emphasized by the Texas Supreme Court, mandamus is an "extraordinary" remedy. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding); *Republican Party of Tex. v. Dietz*, 940 S.W.2d 86, 88 (Tex. 1997). Mandamus will not issue unless: (1) the trial judge has committed a clear abuse of discretion; and (2) there is no adequate remedy on appeal. *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010) (per curiam) (orig. proceeding).

As to the first prong, a "clear abuse of discretion" occurs only when the challenged ruling is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (per curiam) (orig. proceeding); *see Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). With respect to the second prong of Relators'

mandamus burden, "the adequacy of an appellate remedy must be determined by balancing the benefits of mandamus review against the detriments." *In re Team Rocket, L.P.,* 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding). An appellate remedy is adequate if the detriments to issuing mandamus relief outweigh the benefits; but if the detriments are outweighed by the benefits, "courts must consider whether the appellate remedy is adequate." *In re Prudential,* 148 S.W.3d at 136; *see In re Reynoso,* 361 S.W.3d 719, 723 (Tex. App.–Corpus Christi 2012, no pet.) (orig. proceeding).

Relators have neither established an abuse of discretion by the trial court nor shown that it does not have an adequate remedy on appeal. Because Relators have failed to demonstrate their entitlement to the "extraordinary" remedy of mandamus relief, this Court must deny Relators' petition.

**2. Issue One: The trial court did not act *sua sponte* in deleting Paragraph 13, but even if it did, it was authorized to do so.**

Relators first issue contends the trial court erroneously acted *sua sponte* to delete paragraph 13. *Pet.* at 8 ("Respondent clearly abused his discretion in ordering relief that was not requested by the moving party"). However, Relators ignore the proposed order

40

submitted by Real Parties in Interest to the trial court during post-hearing briefing. *Rec.11* at Exh.A at 2 (proposed order contained the following language: "ORDERED that the Stipulated Confidentiality and Protective Agreement Order entered by the Court on June 11, 2013 shall be, and is hereby, AMENDED and MODIFIED to delete Paragraph 13 and Exhibit 'B'"). Relators filed an objection to this proposed order, arguing Paragraph 13 should not be deleted. *Rec.10* at 6. The trial court, after considering Real Parties in Interest's proposed order and Relators' objection, signed the proposed order. *Rec.12.* Thus, contrary to Relators' contention, the trial court had before it a request by Real Parties in Interest to delete Paragraph 13 from the protective order.[9]

Notwithstanding the fact that Real Parties in Interest did request the relief granted and that Relators had an opportunity to express their opposition to the trial court regarding the requested deletion of Paragraph 13, the trial court has the authority to act *sua*

---

[9]*Rec.11* at Exh.A at 2. Moreover, Relators concede that the request by Real Parties in Interest to delete Paragraph 13 was before the trial court and that Relators had an opportunity to oppose the request before the trial court signed the proposed order. *Pet.* at 9 ("The first reference to deletion of paragraph 13 of the Protective Order was by way of the proposed Order submitted by Plaintiffs following the hearing on the Motion. Relators objected to this portion of the proposed order in their Response to Plaintiffs' Supplemental Brief, but Respondent nevertheless signed the proposed order").

*sponte.* Courts possess inherent power to manage the discovery process and take actions to prevent bad faith discovery abuses. *See Lawrence v. Kohl,* 853 S.W.2d 697, 700 (Tex.App.—Houston [1st Dist.] 1993, no writ) (holding that trial courts have the power to sanction parties for bad faith abuse of the judicial process not covered by rule or statute); *Kutch v. Del Mar College,* 831 S.W.2d 506, 509–10 (Tex. App. -- Corpus Christi 1992, no writ) (same); *see also Public Util. Comm'n v. Cofer,* 754 S.W.2d 121, 124 (Tex. 1988) (recognizing the inherent power of courts to ensure an adversarial proceeding); *Eichelberger v. Eichelberger,* 582 S.W.2d 395, 398–99 (Tex. 1979) (recognizing that a court has inherent power "which it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity"). In this case, the trial court was presented with a request to delete Paragraph 13; however, even if this Court holds otherwise, the trial court, in light of the repeated discovery violations by Relators, was authorized to act, *sua sponte,* to manage its docket and maintain the integrity and efficiency of the judicial proceeding.[10]

---

[10]Additionally, the protective order also authorizes the trial court to modify it.

Offhandedly, within its argument on issue one, Relators insinuate that the deletion of Paragraph 13 strips away protections necessary to safeguard Relators' confidential information. Real Parties in Interest contend that Relators have waived this argument by failing to raise it as an "issue presented." In their issues presented, Relators made no substantive complaint about the deletion of Paragraph 13, but rather focused on the alleged procedural error of the trial court's deletion of Paragraph 13 sua sponte. Pet. at xviii. Thus, Relators' first issue is limited to that alleged procedural error. TEX. R. APP. P. 38.1(f) (requiring appellant to specify issue presented); *Esquivel v. Martinez*, No. 03-08-00792-CV, 2010 WL 3629824, *3, n.6 (Tex. App. – Austin 2010, no pet.) (mem.op.) ("Esquivel seems to raise a host of issues in her brief, but she properly enumerates and supports only three. We examine those three issues and deem the others waived"); *Canton-Carter v. Baylor College of Medicine*, 271 S.W.3d 928, 931 (Tex. App. – Houston [14th Dist.] 2008, no pet.).

---

Paragraph Eight of the Protective Order provides that if either party wishes to modify the Protective Order, it should first seek a modification with the other side and, if unsuccessful, "petition the court for modification." *Rec.4* at 4. The Protective Order goes on to state, "Until modification is granted by agreement and/or Court Order, the terms of this Stipulated Protected Order will govern." *Id.*

Alternatively, if this Court addresses this argument, Real Parties in Interest disagree with Relators' contention about Paragraph 13's deletion and point to the following language in the amendment that safeguards any potential harm to Relators trade secrets:

- "Any person who reviews the Confidential Information produced subject to this Stipulated Protective Order agrees to the jurisdiction over their person where the above-captioned matter is pending for the purposes of any action seeking to enforce the terms of this Stipulated Protective Order or any action for contempt for violation of the terms of this Stipulated Protective Order."

- "The parties and their counsel who receive Confidential Information shall act to preserve the confidentiality of designated documents and information."

- "Any party that intends to use or submit any Confidential Information in connection with any pretrial proceedings or filings shall notify the producing party in writing of its intention to do so at the time of or before filing any related pleadings, motions or other documents . . . The Confidential

Information shall be submitted to the Court *in camera* in a sealed envelope or other appropriate container labeled as follows: "CONFIDENTIAL – DOCUMENTS SUBMITTED IN CAMERA."

- "No Confidential Information shall be disseminated to anyone who is a direct competitor of the party producing the Confidential Information or is a current employee of a direct business competitor of the party producing the Confidential Information."

*Rec.4* at 2-4.

These aforementioned provisions provide all the protections necessary to ensure Relators' confidential documents are safeguarded, even considering the deletion of Paragraph 13. *Id.* The language remaining in the protective order brings all individuals viewing the documents within the jurisdiction of the trial court and affords the trial court contempt powers over these individuals. *Id.* The language in Paragraph 13 was merely duplicative of the aforementioned protections, thus, making Paragraph 13 unnecessary.

45

3.  **Issue Two: The order complies with Texas's shared discovery doctrine.**

Relators complain in their second issue that the trial court erred by allowing discovery to be shared with potential MDL litigants and with the lawyers and experts in Relators' federal case. *Pet.* at 13.

a.  **The trial court did not "clearly abuse its discretion" by allowing the discovery to be shared by "potential litigants" with claims against Relators or other potential defendants in the MDL litigation.**

This case is a classic example of why the Texas Supreme Court adopted the shared discovery doctrine in the first place. Relators contend the amended order is overbroad because it uses the term "potential" to describe the class of individuals of which may share the discovery. Do Relators genuinely believe that allowing potential litigants to access discovery will heighten the chances that their competitors will collect their trade secrets? Or, are Relators contesting shared discovery because they want to make the global resolution of claims against them more expensive, more difficult, and more lengthy?

As the Texas Supreme Court noted, "The truth about relevant matters is often kept submerged beneath the surface of glossy denials and formal challenges to requests until an opponent unknowingly utters some magic phrase to cause the facts to rise. Courts across the nation have commented on the lack of candor during discovery in complicated litigation." *Garcia,* 734 S.W.2d at 347. When discussing the shared discovery doctrine, which was adopted in light of the aforementioned concern, the Texas Supreme Court clarified that "under the doctrine of shared discovery, the fruits of discovery ***are available not only to the parties*** in a particular case ***but may be disseminated*** in turn to other litigants and ***potential litigants***." *Eli Lilly and Co.,* 850 S.W.2d at 160 (emphasis added); *In re Quality Safety Systems,* 2010 WL 4192897, *1 (affirming dissemination of confidential documents to non-parties); *American Honda,* 736 S.W.2d at 258-59 (affirming dissemination to individuals with ATV-based claims against defendants or other manufacturers); *see also Idar,* 2011 WL 688871, *2.

Here, Relators seek a limitation that allows the discovery to be seen by only parties to the suit. To achieve any limitation, much

less one that flies in the face of *Garcia,* Relators bear the burden of demonstrating that need to protect their confidential information outweighs the needs of the litigants and potential litigants to share information. *Garcia,* 734 S.W.2d at 348 ("The facts of this case do not justify the blanket protective order, and in rendering an overbroad order, the trial court abused its discretion. GMC's interest is in protecting its proprietary information from competitors, while Garcia seeks to more effectively prepare for trial by exchanging information with other litigants. The public policies favoring shared information require that any protective order be carefully tailored to protect GMC's proprietary interests while allowing an exchange of discovered documents.").

Yet, here, Relators have presented no proof of the risk that trade secrets will be handed over to competitors. *Id.* at 348 ("There is no indication from GMC's affidavits in support of the motion, nor is there any reason to believe, that GMC will be harmed by the release of this information to other litigants."). The only proof offered at the hearing was by Real Parties in Interest and related to Relators' outright abuse of the protective order. *Rec.7* at Exhs. B-D; *App.F* at 16, 28-29, 68-71, 75-84. Relators were asked over and

over again why sharing discovery was problematic, but offered no proof that sharing discovery with other potential litigants heightened the risk that their competitors would gain access to confidential trade secrets. *App.F.*

Moreover, the risk to Relators of dissemination to potential litigants is minimal considering the age, usefulness, and ease by which competitors could gain access to the "confidential" information without an anti-dissemination order. *Garcia,* 734 S.W.2d at n.3 (noting the proprietary information at issue was "stale" and/or "several years old" and instructing trial courts drafting protective order limitations to consider the "age, usefulness, and ease by which competitors could gain access to the information"). Real Parties in Interest note that they specifically complained to the trial court regarding Relators' designation of blank pages and public documents as "confidential." *Rec.7* at Exhs.B-D; *App.F* at 16, 28-29, 68-71, 75-84. Thus, Relators have undercut any argument that confidential information sought to be protected is novel and private when they claim blank pages and publicly-available documents are "confidential."

Before the trial court made its ruling, it heard proof of Relators' history of discovery abuse[11] and of Relators' misuse of the "confidential" label, *Rec.7* at Exhs. B-D; *App.F* at 16, 28-29, 68-71, 75-84, but the trial court heard nothing from Relators about the risk posed by disseminating the information to potential litigants. *App.F.* The trial court also considered that the protective order encompassed protections to the benefit of Relators, including the requirement that any individual viewing confidential documents agree to submit to the jurisdiction of the trial court, agree to the requirement to preserve the confidentiality of the documents, agree to the requirement to give notice before using the documents in court, agree to the prohibition against disseminating the documents to competitors. *Rec.4* at 2-4.

In light of all of these facts, the evidence submitted by Real Parties in Interest, and the Texas Supreme Court precedent, the trial court properly entered an order encompassing shared discovery. *Rec.12.* This was a well-reasoned, informed approach by the trial court. On this record, Relators cannot demonstrate the trial court clearly abused its discretion. *Eli Lilly and Co.,* 850

---

[11] *Supra* n.4, 6 of this Response.

S.W.2d at 160 ("fruits of discovery *are available not only to the parties* in a particular case *but may be disseminated* in turn to other litigants and *potential litigants*") (emphasis added); *In re Quality Safety Systems,* 2010 WL 4192897, *1; *American Honda,* 736 S.W.2d at 258-59; *see also Idar,* 2011 WL 688871, *2.

> **b. The trial court did not "clearly abuse its discretion" by allowing the discovery to be shared by lawyers and experts in the federal case.**

Relators argue, "Allowing the discovery from *Antu* to be shared with lawyers and experts in the unrelated federal case is an abuse of discretion." *Pet.* at 15. To use the term "unrelated" to describe the federal case in question is disingenuous. The federal case was initiated by Relators against the counsel for Real Parties in Interest. *App.A,E,G.* The federal case was filed by Relators after counsel began advertising for victims of Relators fraudulent scheme. *App.E, F* at 59-60*, G* at 43-44. The federal case is centered on the same allegations present in the underlying proceeding. *Compare Rec.3, with App.E, F* at 59-60*, H.* While the federal case initially involved claims for trademark infringement, Relators have now narrowed it to claims based on whether the statements made about Relators'

51

dental scheme are true. *App.F* at 59-60; *App.E* (First Amended Complaint); *App.G* at 21-23, 27.

Relators argued at the hearing that the cases were not similar enough to allow shared discovery. Yet, the trial court asked: "If his defense to the defamation is that you all are claiming is the fact that he claims, 'Hey, everything I said was true,' and it can be – it can be proven by the documentation that is provided within the medical records and reports that we have in other litigation – I don't understand why it's not – it would even be – I don't understand." *App.F* at 61. Relators had no substantive response.

The trial court's question hit the nail on the head. The two cases fall directly within the shared discovery doctrine. The following is a list of the similarities:

|  | Underlying Case | Federal Case |
|---|---|---|
| Parties | Relators are Defendants, *Rec.3* | Relators are Plaintiffs, *App.E,J.* |
| Date of filing | 1/16/2013 | 3/19/2012 |
| Allegation | Relators' unauthorized practice of dentistry, *Rec.3* at 6. | Relators' unauthorized practice of dentistry, *App.G* at 21. |
| Allegation | Relators have been investigated for | Relators have been investigated for |

| | Medicaid fraud, *Rec.1* at 14. | Medicaid fraud, *App.G* at 22. |
|---|---|---|
| Allegation | Relators' inappropriate use of papoose boards and other restraints on minor patients, *Rec.3* at 8, 12-13. | Relators' inappropriate use of papoose boards and other restraints on minor patients, *App.G* at 23, 27. |
| Allegation | Relators' minor patients were "crying, screaming, struggling, and terrified . . . so traumatized that the lose control of their bladders."[12] | Relators' minor patients were "upset, crying, terrified, or traumatized" during treatment, *App.E* at 5. |
| Allegation | Relators' misdiagnoses of the need for stainless steel crowns, *Rec.3* at 8,11. | Relators' misdiagnoses of the need for stainless steel crowns, *App.G* at 23, 27; *App.F* at 59. |
| Allegation | Relators' scheme focused on seeking out and treating minors covered by Medicaid, *Rec.3* at 13. | Relators' scheme focused on seeking out and treating minors covered by Medicaid, *App.G* at 5. |

---

[12] *Rec.3* at 12; *App.F* at 59-60 ("It's against my firm arising from what we said about their treatment of these children. And they're saying that when we said these kids were crying, and screaming, and struggling, and they put a bunch of crowns in their mouths – They're saying those are lies, and we can prove conclusively they're not").

It bears reminding that Relators, who seek from this Court the extraordinary relief afforded by writ of mandamus, bear the heightened burden of proving that the trial court clearly abused its discretion under the circumstances. A "clear abuse of discretion" occurs only when the challenged ruling is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (per curiam) (orig. proceeding). Here, the trial court considered not only the aforementioned similarities among the two cases, [13] but also Relators repeated discovery violations. *Supra* n.4, 6 of this Response.

The trial court also considered that, on the one hand, Real Parties in Interest presented proof of the need for shared discovery based on Relators misuse of the protective order, *Rec.7* at Exhs. B-D; *App.F* at 16, 28-29, 68-71, 75-84, while on the other hand,

[13]At the hearing, George Mauzé, counsel for Real Parties in Interest, testified: the defendants in this case are suing my law firm. They're prohibiting us from using these documents in the case in which they're suing us where they're claiming we defamed them by saying children are screaming and struggling when they're being treated under dental operative procedures while restrained. They have not produced those cases in the underlying federal case. They produced them in this case. There's very exculpatory documents showing what these children are going through, and they have marked them confidential. They are tying our hands, contrary to your orders, contrary to Supreme Court rules, and contrary to the spirit and the intent of the protective order. *App.F* at 17-18; *see also App.F* at 59-60; *App.G* at 21-23, 27.

Relators presented no proof to substantiate their fears that confidential information would be more likely to land in the hands of competitors those involved in Relators' federal case had access to it. Indeed, when given the opportunity to explain the risks, if any, Relators stated: "Your Honor, I'm not suggesting that Mr. Mauzé and his counsel in the federal case can't use any of these documents. What I'm saying is that the discovery issues and the discoverability or admissibility of documents in that case is up to the federal judge in that case." *App.F* at 44.

Relators inevitably concede, with this statement, that the opposition to the shared discovery is not the fact that their secrets will be revealed to competitors, but rather, that they want to prolong, duplicate, and require repetitious discovery requests and hearings in the federal case in order to inevitably propound the same discovery. *Id.; App.F* at 61 (Relators again admit that the opposition to shared discovery is not fear of dissemination to competitors, but rather a desire to force the litigants to pursue repetitious and costly legal maneuvers to discover the same documents – "Then, presumably, the federal court will require Kool

55

Smiles and its lawyers in that case to produce those documents separately in that case").

Additionally, when entering the challenged order, the trial court considered that the protective order encompassed protections to the benefit of Relators, including the requirement that any individual viewing confidential documents agree to submit to the jurisdiction of the trial court, agree to the requirement to preserve the confidentiality of the documents, agree to the requirement to give notice before using the documents in court, agree to the prohibition against disseminating the documents to competitors. *Rec.4* at 2-4.

On this record and with those considerations in mind, Relators cannot demonstrate the trial court clearly abused its discretion. *Eli Lilly and Co.,* 850 S.W.2d at 160; *In re Quality Safety Systems,* 2010 WL 4192897, *1; *American Honda,* 736 S.W.2d at 258-59; *see also Idar,* 2011 WL 688871, *2.

D. *Issue Three: Relators have an adequate remedy on appeal.*

Relators argue, "Relators are in danger of permanently losing their right to protect confidential information. . . . [A]n appeal would

56

not be able to relieve Relators from the effects of the Order in allowing for improper disclosure of confidential and private information." *Pet.* at 23.

As support, Relators cite to *In re Van Waters & Rogers, Inc.,* 145 S.W.3d 203 (Tex. 2004). This case considers the propriety of a consolidation order. *Id.* There is no mention in this case of "confidential" or "private" information or anything related to whether such information can be disseminated and, if so, to whom. This case does not apply.

Relators also cite to *Kessell v. Brideswell,* 872 S.W.2d 837, 841 (Tex. App. – Waco 1994, orig. proceeding). This case was brought by third parties who sought to prevent disclosure of their employee records "because the records would be irrelevant to any of the Wightmans' claims and because the contents of the records are protected by the employees' constitutionally-based privacy interests." *Id.* at 838. The appellate court held that forced disclosure of the records would leave the third-party-employees without an adequate remedy on appeal. *Id.* at 841. Significantly, however, the court's holding was based on the fact that the privacy rights in question were "constitutional privacy rights." *Id.* ("We hold that an

appeal is not an adequate remedy to relieve one from the effects of an order requiring disclosure of information protected by constitutional privacy rights").

Contrary to *Kessell,* the party seeking mandamus relief is not a third party. Rather, Relators are the defendant in the underlying proceeding and the plaintiff in a federal case, both lawsuits call into question the dental practices undertaken by Relators. Thus, unlike the petitioner in *Kessell,* Relators have thrust themselves into the fray of litigation, not the other way around. In short, Relators have filed their federal lawsuit and are now attempting to use the shield of "confidentiality" as a sword.

Additionally, Relators have not alleged that any constitutional right of privacy will be violated if discovery is shared in this case. Instead, Relators have argued (but offered no proof of) a risk that competitors may gain access to their confidential information. There is no constitutional right against competition, and Relators have not contended otherwise.

It should be noted that the protections afforded Relators in the protective order give them adequate remedies, including the right to call any person violating the protective order into court and subject

them to contempt proceedings. *Rec.4* at 2-4. The protective order expressly provides: "Any person who reviews the Confidential Information produced subject to this Stipulated Protective Order agrees to the jurisdiction over their person where the above-captioned matter is pending for the purposes of any action seeking to enforce the terms of this Stipulated Protective Order or any action for contempt for violation of the terms of this Stipulated Protective Order." *Id.*

Thus, Relators have adequate remedies at the trial court level. If Relators seek these remedies, but are denied, then Relators can raise the argument to this Court that the trial court's refusal to enter a contempt order leaves them without an adequate remedy on appeal.

## <u>CONCLUSION</u>

Real Parties in Interest respectfully request this Court lift the emergency stay granted and deny Relators' request for mandamus relief.

59

Respectfully submitted,

KELLER STOLARCZYK, PLLC
234 West Bandera Road #120
Boerne, Texas  78006
Tele: 830.981.5000
Facs: 888.293.8580

/s/Kimberly S. Keller
Kimberly S. Keller
SBN: 24014182
kim@kellsto.com


MAUZÉ & BAGBY, PLLC
George W. Mauzé
SBN: 13238800
Tom Bagby
SBN: 24059409
2632 Broadway, Suite 401S
San Antonio, TX 78215
Tele: 210.354.3377
Facs: 210.354.3909


GUERRA, LEEDS, SABO &
HERNANDEZ, PLLC
R.D. "Bobby" Guerra
SBN: 08578640
10213 N. 10th St.
McAllen, TX 78504
Tele: 956.383.4300
Facs: 956.383.4304

COUNSEL FOR REAL PARTIES IN
   INTEREST

60

## CERTIFICATES

*On Rule 52.3(j):* I certify that I have reviewed this Response to Petition for Writ of Mandamus and concluded that every factual statement in the Response is supported by competent evidence and court filings contained in the Mandamus Appendix/Sworn Record or Appendices to Real Parties in Interest's Response.

*Of Compliance:* I certify this Response to Petition for Writ of Mandamus contains 10,999 words.

*Of Service:* I certify this Response to Petition for Writ of Mandamus was, on July 17, 2015, served on the following via this Court's e-filing system or facsimile or email:

Mr. Wayne B. Mason, Esq.
wayne.mason@sedgwicklaw.com
Mr. Alan Vickery, Esq.
alan.vickery@sedgwicklaw.com
Sedgwick LLP
1717 Main Street, Suite 5400
Dallas, Texas 75201-7367

Mr. Bruce S. Campbell, Esq.
bcampbell@belaw.com
Brackett & Ellis, P.C.
100 Main Street
Fort Worth, TX 76102

Mr. Eduardo R. Rodriguez, Esq.
errodriguez@atlashall.com
Atlas, Hall & Rodriguez, L.L.P.
50 W. Morrison Road, Suite A
Brownsville, TX 78520

/s/Kimberly S. Keller
Kimberly S. Keller

61

MAG,STAYED

# U.S. District Court
# SOUTHERN DISTRICT OF TEXAS (Laredo)
# CIVIL DOCKET FOR CASE #: 5:12-cv-00036

| | |
|---|---|
| Benevis, LLC f/k/a NCDR LLC et al v. Mauze & Bagby, PLLC et al | Date Filed: 03/19/2012 |
| Assigned to: Judge Diana Saldana | Jury Demand: Both |
| Referred to: Magistrate Judge Guillermo R. Garcia | Nature of Suit: 840 Trademark |
| Cause: 15:1114 Trademark Infringement | Jurisdiction: Federal Question |

**Plaintiff**

**Benevis, LLC f/k/a NCDR, LLC**                represented by **Aaron Karl Block**
                                                                Alston & Bird LLP
                                                                One Atlantic Center
                                                                1201 Peachtree St
                                                                Atlanta, GA 30309
                                                                404-881-4973
                                                                Email: aaron.block@alston.com
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Sean M Whyte**
                                                                Alston and Bird LLP
                                                                2828 N Hardwood St
                                                                Ste 1800
                                                                Dallas, TX 75201
                                                                214-922-3400
                                                                Email: sean.whyte@alston.com
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Darren Lee McCarty**
                                                                Alston Bird LLP
                                                                2828 N. Harwood Street
                                                                Suite 1800
                                                                Dallas, TX 75201
                                                                214-922-3400
                                                                Fax: 214-922-3899
                                                                Email: darren.mccarty@alston.com
                                                                *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dentistry of Brownsville, P.C.**               represented by **Aaron Karl Block**
*doing business as*                                             (See above for address)
Kool Smiles                                                     *ATTORNEY TO BE NOTICED*

                                                                **Sean M Whyte**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Darren Lee McCarty**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**KS2 TX, PC**                     represented by **Aaron Karl Block**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean M Whyte**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Darren Lee McCarty**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Mauze & Bagby, PLLC**            represented by **John C Cave**
Gunn, Lee & Cave PC
300 Convent St.
Suite 1080
San Antonio, TX 78205
210-886-9500
Fax: 210-886-9883 fax
Email: jcave@gunn-lee.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Stuart Lee**
The Lee Firm PC
615 N Upper Broadway
Ste 708
Corpus Christi, TX 78401
361-882-4444
Fax: 361-882-7844
Email: theleefirmpc@theleefirm.com
*TERMINATED: 09/19/2014*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Edward Brian Marvin**
Gunn & Lee PC

300 Convent Street
Suite 1080
San Antonio, TX 78205
210-886-9500
Fax: 210-886-9883
Email: Edward.Marvin@gunn-lee.com
*ATTORNEY TO BE NOTICED*

**Kimberly S Keller**
Keller Stolarczyk PLLC
234 W. Bandera Road
#120
Boerne, TX 78006
210-857-5267
Fax: 888-293-8580
Email: kim@kellsto.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**George Watts Mauze, II**                    represented by **John C Cave**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Michael Stuart Lee**
                                                   (See above for address)
                                                   *TERMINATED: 09/19/2014*
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Edward Brian Marvin**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Kimberly S Keller**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**James Thomas Bagby, III**                    represented by **John C Cave**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Michael Stuart Lee**
                                                   (See above for address)
                                                   *TERMINATED: 09/19/2014*
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

**Edward Brian Marvin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kimberly S Keller**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/19/2012 | 1 | COMPLAINT against James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC (Filing fee $ 350 receipt number 0541-9439988) filed by NCDR LLC, KS2 TX, PC, Dentistry of Brownsville, P.C.. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Summons to Mauze & Bagby, PLLC, # 12 Summons to George Watts Mauze II, # 13 Summons to James Thomas Bagby III)(McCarty, Darren) (Entered: 03/19/2012) |
| 03/20/2012 | 2 | Summons Issued as to Mauze & Bagby, PLLC, filed. (dmorales) (Entered: 03/20/2012) |
| 03/20/2012 | 3 | Summons Issued as to George Watts Mauze, II, filed. (dmorales) (Additional attachment(s) added on 3/20/2012: # 1 Unredacted) (dmorales, ). (Entered: 03/20/2012) |
| 03/20/2012 | 4 | Summons Issued as to James Thomas Bagby, III, filed. (dmorales) (Additional attachment(s) added on 3/20/2012: # 1 Unredacted) (dmorales, ). (Entered: 03/20/2012) |
| 03/21/2012 | 5 | CORPORATE DISCLOSURE STATEMENT by Dentistry of Brownsville, P.C., filed.(McCarty, Darren) (Entered: 03/21/2012) |
| 03/21/2012 | 6 | CORPORATE DISCLOSURE STATEMENT by KS2 TX, PC, filed.(McCarty, Darren) (Entered: 03/21/2012) |
| 03/21/2012 | 7 | CORPORATE DISCLOSURE STATEMENT by NCDR LLC identifying Kool Smiles Acquisition Corp. as Corporate Parent, filed.(McCarty, Darren) (Entered: 03/21/2012) |
| 03/23/2012 | 8 | Summons Re-issued as to Mauze & Bagby, PLLC, filed. (dmorales) (Entered: 03/26/2012) |
| 03/23/2012 | 9 | Summons Re-Issued as to James Thomas Bagby, III, filed. (dmorales) (Additional attachment(s) added on 3/26/2012: # 1 Unredacted) (dmorales, ). (Entered: 03/26/2012) |
| 03/23/2012 | 10 | Summons Re-Issued as to George Watts Mauze, II, filed. (dmorales) (Additional attachment(s) added on 3/26/2012: # 1 Unredacted) (dmorales, ). (Entered: 03/26/2012) |
| 03/29/2012 | 11 | |

| | | RETURN of Service of SUMMONS Executed as to Mauze & Bagby, PLLC served on 3/26/2012, answer due 4/16/2012, filed.(McCarty, Darren) (Entered: 03/29/2012) |
|---|---|---|
| 03/29/2012 | 12 | RETURN of Service of SUMMONS Executed as to George Watts Mauze, II served on 3/26/2012, answer due 4/16/2012, filed.(McCarty, Darren) (Entered: 03/29/2012) |
| 03/29/2012 | 13 | RETURN of Service of SUMMONS Executed as to James Thomas Bagby, III served on 3/26/2012, answer due 4/16/2012, filed.(McCarty, Darren) (Entered: 03/29/2012) |
| 04/13/2012 | 14 | Opposed MOTION to Dismiss 1 Complaint,, ( Motion Docket Date 5/4/2012.), Opposed MOTION for More Definite Statement, Opposed MOTION to Strike Motions referred to Guillermo R. Garcia. by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC, filed. (Attachments: # 1 Exhibit) (Lee, Michael) (Entered: 04/13/2012) |
| 04/17/2012 | 15 | PROPOSED ORDER re: 14 Opposed MOTION to Dismiss 1 Complaint,,Opposed MOTION to Dismiss 1 Complaint,,Opposed MOTION for More Definite StatementOpposed MOTION to Strike, filed.(Lee, Michael) (Entered: 04/17/2012) |
| 05/04/2012 | 16 | RESPONSE to 14 Opposed MOTION to Dismiss 1 Complaint,,Opposed MOTION to Dismiss 1 Complaint,,Opposed MOTION for More Definite StatementOpposed MOTION to Strike filed by Dentistry of Brownsville, P.C., KS2 TX, PC, NCDR LLC. (Attachments: # 1 Proposed Order)(McCarty, Darren) (Entered: 05/04/2012) |
| 05/25/2012 | 17 | Opposed MOTION to Dismiss *Pursuant to Anti-SLAPP Statute, Chapter 27 of the Texas Civil Practice & Remedies Code* by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC, filed. Motion Docket Date 6/15/2012. (Attachments: # 1 Proposed Order, # 2 Exhibit A THROUGH G, # 3 Exhibit H, # 4 Exhibit I, # 5 Exhibit J THROUGH L)(Lee, Michael) (Entered: 05/25/2012) |
| 05/25/2012 | 18 | EXHIBITS re: 17 Opposed MOTION to Dismiss *Pursuant to Anti-SLAPP Statute, Chapter 27 of the Texas Civil Practice & Remedies Code* by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC, filed. (Attachments: # 1 Exhibit M-2, # 2 Exhibit M-3, # 3 Exhibit M-4)(Lee, Michael) (Entered: 05/25/2012) |
| 05/25/2012 | 19 | EXHIBITS re: 17 Opposed MOTION to Dismiss *Pursuant to Anti-SLAPP Statute, Chapter 27 of the Texas Civil Practice & Remedies Code* by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC, filed. (Attachments: # 1 Exhibit M-6, # 2 Exhibit M-7, # 3 Exhibit M-8, # 4 Exhibit M-9, # 5 Exhibit M-10)(Lee, Michael) (Entered: 05/25/2012) |
| 05/25/2012 | 20 | EXHIBITS re: 17 Opposed MOTION to Dismiss *Pursuant to Anti-SLAPP Statute, Chapter 27 of the Texas Civil Practice & Remedies Code* by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC, filed. (Attachments: # 1 Exhibit M-12, # 2 Exhibit M-13, # 3 Exhibit M-14)(Lee, Michael) (Entered: 05/25/2012) |

| 05/25/2012 | 21 | EXHIBITS re: 17 Opposed MOTION to Dismiss *Pursuant to Anti-SLAPP Statute, Chapter 27 of the Texas Civil Practice & Remedies Code* by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC, filed. (Attachments: # 1 Exhibit M-16, # 2 Exhibit M-17, # 3 Exhibit N, # 4 Exhibit O)(Lee, Michael) (Entered: 05/25/2012) |
| 05/25/2012 | 22 | EXHIBITS re: 17 Opposed MOTION to Dismiss *Pursuant to Anti-SLAPP Statute, Chapter 27 of the Texas Civil Practice & Remedies Code* by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC, filed. (Attachments: # 1 Exhibit Q, # 2 Exhibit R, # 3 Exhibit S THROUGH Z)(Lee, Michael) (Entered: 05/25/2012) |
| 05/25/2012 | 23 | EXHIBITS re: 17 Opposed MOTION to Dismiss *Pursuant to Anti-SLAPP Statute, Chapter 27 of the Texas Civil Practice & Remedies Code* by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC, filed. (Attachments: # 1 Exhibit HH THROUGH LL, # 2 Exhibit MM, # 3 Exhibit NN THROUGH SS)(Lee, Michael) (Entered: 05/25/2012) |
| 06/15/2012 | 24 | RESPONSE in Opposition to 17 Opposed MOTION to Dismiss *Pursuant to Anti-SLAPP Statute, Chapter 27 of the Texas Civil Practice & Remedies Code*, filed by Dentistry of Brownsville, P.C., KS2 TX, PC, NCDR LLC. (Attachments: # 1 Exhibit A (Declaration of Geoff Freeman), # 2 Exhibit B (Declaration of Dr. Diane Earle), # 3 Exhibit C (Declaration of Nora Villarreal), # 4 Exhibit D (Declaration of Stephanie Canales), # 5 Exhibit E (Declaration of Josie Amaya), # 6 Proposed Order Proposed Order)(McCarty, Darren) (Entered: 06/15/2012) |
| 06/19/2012 | 25 | EMERGENCY Opposed MOTION FOR HEARING (Motion Docket Date 7/10/2012.) Motion referred to Guillermo R. Garcia. by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC, filed. (Attachments: # 1 Proposed Order) (dmorales) (Entered: 06/19/2012) |
| 06/19/2012 | 26 | NOTICE of Appearance by Sean M. Whyte on behalf of Dentistry of Brownsville, P.C., KS2 TX, PC, NCDR LLC, filed. (Whyte, Sean) (Entered: 06/19/2012) |
| 06/20/2012 | 27 | RESPONSE in Opposition to 25 EMERGENCY MOTION MOTION for Hearing, filed by Dentistry of Brownsville, P.C., KS2 TX, PC, NCDR LLC. (McCarty, Darren) (Entered: 06/20/2012) |
| 06/20/2012 | 28 | PROPOSED ORDER re: 27 Response in Opposition to Motion, filed. (McCarty, Darren) (Entered: 06/20/2012) |
| 06/22/2012 | 29 | Opposed REPLY to 27 Response in Opposition to Motion *for Hearing on Anti-SLAPP Motion to Dismiss*, filed by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC. (Attachments: # 1 Proposed Order)(Lee, Michael) (Entered: 06/22/2012) |
| 07/27/2012 | 30 | REPORT of Rule 26(f) Planning Meeting by NCDR LLC, filed.(Whyte, Sean) (Entered: 07/27/2012) |
| 10/05/2012 | 31 | ORDER Denying 14 , 17 Motions to Dismiss; Emergency Motion 25 is MOOT and accordingly, DENIED. This case is now referred to the Magistrate Judge |

| | | for plenary pre-trial handling. IT IS SO ORDERED. (Signed by Judge Diana Saldana) Parties notified.(mmarquez) (Entered: 10/05/2012) |
|---|---|---|
| 10/18/2012 | 32 | ANSWER to 1 Complaint,, with Jury Demand by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC, filed.(Lee, Michael) (Entered: 10/18/2012) |
| 10/19/2012 | 33 | ORDER for Initial Pretrial and Scheduling Conference and Order to Disclose Interested Persons. Initial Conference set for 11/1/2012 at 09:00 AM by telephone before Magistrate Judge Guillermo R. Garcia. Parties notified. (dmorales) (Entered: 10/19/2012) |
| 10/29/2012 | 34 | JOINT DISCOVERY/CASE MANAGEMENT PLAN by James Thomas Bagby, III, Dentistry of Brownsville, P.C., KS2 TX, PC, George Watts Mauze, II, Mauze & Bagby, PLLC, NCDR LLC, filed.(McCarty, Darren) (Entered: 10/29/2012) |
| 11/01/2012 | | Minute Entry for proceedings held before Magistrate Judge Guillermo R. Garcia. SCHEDULING CONFERENCE held on 11/1/2012. The parties explained the scope and complexity of the case. The parties stated that expert witnesses will be needed in this matter. The Court proposed deadlines for the scheduling order. The Plaintiffs and Defendants both asked for more time, approximately 30 additional days, to designate the expert witnesses. The Court will consider the parties requests and issue a scheduling order.Appearances: Attorneys: Darren Lee McCarty, Sean Whyte, John Kazen f/PLAINTIFFS; Attorney Michael Stuart Lee, Peter Ruggero f/DEFENDANTS.(ERO:Martha Perez), filed.(mlramirez, ) (Entered: 11/01/2012) |
| 11/01/2012 | 35 | ORDER Amended Pleadings due by 6/21/2013. Deft Expert Witness List due by 4/19/2013. Discovery due by 5/24/2013. Contested Motion Filing due by 7/21/2013. Initial Disclosures due by 11/30/2012. Joinder of Parties due by 12/21/2012 ADR due by 6/7/2013. Pltf Expert Witness List due by 3/15/2013. Joint Pre-Trial Order is TBD. (Signed by Magistrate Judge Guillermo R. Garcia) Parties notified. (dmorales) (Entered: 11/01/2012) |
| 11/02/2012 | 36 | NOTICE of Appearance by Appellate Counsel Kimberly S. Keller on behalf of James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC, filed. (Keller, Kimberly) (Entered: 11/02/2012) |
| 11/02/2012 | 37 | NOTICE OF Interlocutory APPEAL to US Court of Appeals for the Fifth Circuit re: 31 Order on Motion to Dismiss,,,, Order on Motion for Emergency,, Order on Motion for Hearing, by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC (Filing fee $ 455, receipt number 0541-10551322), filed.(Keller, Kimberly) Modified on 11/8/2012 (dmorales). (Entered: 11/02/2012) |
| 11/02/2012 | 38 | Notice of the Filing of an Appeal. DKT13 transcript order form was mailed to appellant (1 copies). Fee status: Paid. The following Notice of Appeal and related motions are pending in the District Court: 37 Notice of Appeal,, filed. (dmorales) (Entered: 11/09/2012) |
| 11/09/2012 | | Notice of Assignment of USCA No. 12-41243 re: 37 Notice of Appeal,, filed. (dmorales) (Entered: 11/09/2012) |

| | | |
|---|---|---|
| 11/19/2012 | 39 | DKT-13 TRANSCRIPT ORDER FORM by Kim Keller. No hearings. This order form relates to the following: 37 Notice of Interlocutory Appeal,, filed. (dmorales) (Entered: 11/19/2012) |
| 11/29/2012 | | Electronic record on appeal certified to the Fifth Circuit Court of Appeals re: 37 Notice of Appeal, USCA No. 12-41243, filed. (dmorales) (Entered: 11/29/2012) |
| 12/04/2012 | 40 | Electronic record on appeal sent to Attorney Kimberly S. Keller re: 37 Notice of Appeal,. (USCA No. 12-41243), filed. (dmorales) (Entered: 12/04/2012) |
| 12/08/2012 | 41 | Opposed MOTION to Abate by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC, filed. Motion Docket Date 12/31/2012. (Keller, Kimberly) (Entered: 12/08/2012) |
| 12/12/2012 | 42 | ORDER granting 41 Motion to Stay. This case is hereby STAYED pending the resolution of Defendants interlocutory appeal. All scheduling order deadlines are hereby CANCELED.(Signed by Judge Diana Saldana) Parties notified. (gsalinas) (Entered: 12/12/2012) |
| 01/08/2013 | 43 | Transmittal Letter on Appeal Certified re: 37 Notice of Appeal. A paper copy of the electronic record is being transmitted to the Fifth Circuit Court of Appeals in 7 volumes (USCA No. 12-41243), filed. (eflores) (Entered: 01/08/2013) |
| 01/14/2013 | 44 | Electronic record on appeal sent to Attorney Darren McCarty re: 37 Notice of Appeal,. (USCA No. 12-41243), filed. (dmorales) (Entered: 01/14/2013) |
| 01/30/2013 | 45 | NOTICE of Receipt of Record on Appeal from US Court of Appeals for the Fifth Circuit re: 37 Notice of Appeal, (USCA No. 12-41243). Record received by USCA on 1/10/13, filed. (dmorales) (Entered: 01/31/2013) |
| 04/25/2014 | 46 | Judgment of USCA; judgment issued as mandate 4/22/14 re: 37 Notice of Appeal, ; USCA No. 12-41243. It is ordered and adjudged that the judgment of the District Court is affirmed. It is FURTHER ORDERED that each party bear its own costs on appeal, filed. (dmorales, 5) (Entered: 04/25/2014) |
| 04/25/2014 | 47 | Order of USCA re: 37 Notice of Appeal, ; USCA No. 12-41243. AFFIRMED, filed. (dmorales, 5) (Entered: 04/25/2014) |
| 05/01/2014 | 48 | NOTICE of Setting A Status Conference/Scheduling Conference is set for 5/13/2014 at 01:30 PM by telephone before Magistrate Judge Guillermo R. Garcia, filed. Parties notified.(gsalinas, 5) (Entered: 05/02/2014) |
| 05/13/2014 | | Minute Entry for proceedings held before Magistrate Judge Guillermo R. Garcia. SCHEDULING CONFERENCE held on 5/13/2014. The parties conferred and reviewed their previously submitted 26(f) report. The parties proposed new scheduling order dates. The Court will take the proposed dates under advisement and will issue an Amended Scheduling Order. Telephonic Appearances: Attorney: Darren Lee McCarty f/PLAINTIFFS; Attorneys: Peter Ruggero & Michael Stuart Lee f/DEFENDANTS(ERO:Aimee Veliz), filed. (mlramirez, 5) (Entered: 05/23/2014) |
| 05/14/2014 | 49 | |

| | | ORDER Amended Pleadings due by 1/23/2015. Deft Expert Witness List due by 12/19/2014. Discovery due by 1/23/2015. Contested Motion Filing due by 3/6/2015. Joinder of Parties due by 7/11/2014 ADR due by 3/13/2015. Pltf Expert Witness List due by 11/21/2014. Joint Pre-Trial TBD. (Signed by Magistrate Judge Guillermo R. Garcia) Parties notified. (dmorales, 5) (Entered: 05/15/2014) |
|---|---|---|
| 09/19/2014 | 50 | NOTICE of attorney substitution by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC. Attorney John C. Cave added. Attorney Michael Stuart Lee terminated, filed. (Attachments: # 1 Proposed Order)(Cave, John) (Entered: 09/19/2014) |
| 09/22/2014 | 51 | ORDER granting Defendants' Unopposed Motion to Withdraw and Substitute Counsel. (Signed by Magistrate Judge Guillermo R. Garcia) Parties notified. (dmorales, 5) (Entered: 09/22/2014) |
| 10/01/2014 | 52 | Unopposed MOTION for Extension of Time to Extend Scheduling Order Deadlines by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC, filed. Motion Docket Date 10/22/2014. (Attachments: # 1 Proposed Order)(Cave, John) (Entered: 10/01/2014) |
| 10/02/2014 | 53 | ORDER granting 52 Defendants' Unopposed Motion to Extend Scheduling Order Deadlines. Amended Pleadings due by 3/24/2015. Deft Expert Witness List due by 2/17/2015. Discovery due by 3/24/2015. Dispositive Motion Filing due by 5/5/2015. ADR due by 5/12/2015. Pltf Expert Witness List due by 1/20/2015.(Signed by Magistrate Judge Guillermo R. Garcia) Parties notified. (gsalinas, 5) (Entered: 10/02/2014) |
| 12/16/2014 | 54 | Opposed MOTION for Protective Order by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC, filed. Motion Docket Date 1/6/2015. (Attachments: # 1 Exhibit A (proposed Protective Order), # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Proposed Order)(Cave, John) (Entered: 12/16/2014) |
| 12/30/2014 | 55 | MOTION for Aaron K. Block to Appear Pro Hac Vice by Dentistry of Brownsville, P.C., KS2 TX, PC, NCDR LLC, filed. Motion Docket Date 1/20/2015. (McCarty, Darren) (Entered: 12/30/2014) |
| 01/05/2015 | 56 | ORDER granting 55 Motion to Appear Pro Hac Vice. Attorney Aaron Karl Block is admitted pro hac vice. (Signed by Magistrate Judge Guillermo R. Garcia) Parties notified. (dmorales, 5) (Entered: 01/05/2015) |
| 01/06/2015 | 57 | RESPONSE in Opposition to 54 Opposed MOTION for Protective Order, filed by Dentistry of Brownsville, P.C., KS2 TX, PC, NCDR LLC. (Attachments: # 1 Exhibit A - Plaintiffs Proposed Protective Order, # 2 Exhibit B - Comparison of Disputed Terms, # 3 Exhibit C - S.D. Tex. Model Protective Order, # 4 Exhibit D - N.D. Ill. Model Confidentiality Order, # 5 Exhibit E - First RFP to NCDR, # 6 Exhibit F - Defendants' First Amended Privilege Log, # 7 Exhibit G - Alvarez v. Smile Center Orig. Petition, # 8 Proposed Order)(McCarty, Darren) (Entered: 01/06/2015) |
| 01/13/2015 | 58 | REPLY to 57 Response in Opposition to Motion,, *Defendants' Reply to Plaintiffs' Response to Defendants' Motion for Protective Order*, filed by James |

| | | |
|---|---|---|
| | | Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Marvin, Edward) (Entered: 01/13/2015) |
| 01/13/2015 | 59 | Joint MOTION to Modify Scheduling Order by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC, filed. Motion Docket Date 2/3/2015. (Attachments: # 1 Proposed Order)(Marvin, Edward) (Entered: 01/13/2015) |
| 01/16/2015 | | NOTICE of Setting. Parties notified. Telephonic Status Conference set for 1/16/2015 at 02:00 PM in Courtroom 3C before Magistrate Judge Guillermo R. Garcia, filed. (aveliz, 5) (Entered: 01/16/2015) |
| 01/16/2015 | | Minute Entry for proceedings held before Magistrate Judge Guillermo R. Garcia. STATUS CONFERENCE held on 1/16/15. The Court inquired as to whether an agreement had been reached in the parties Motion for Protective Order. The parties had not reached an agreement. The parties have upcoming discovery deadlines and are concerned about how to proceed if there is no ruling on the motion before those deadlines. The Court ordered that the scheduling order and discovery deadlines would be suspended until further notice. The Court will hold a hearing on the Motion for Protective Order in the next week and will discuss new deadlines at that time. The Court will issue an order suspending all deadlines. Telephonic Appearances: Attorney: Aaron Block; Darren McCarty f/ PLAINTIFFS; Attorney: Edward Marvin f/ DEFENDANTS. (2:10-2:30) (ERO:Sylvia Gonzalez), filed. (aveliz, 5) (Entered: 01/16/2015) |
| 01/16/2015 | 60 | ORDER, the Court hereby SUSPENDS the deadlines in the Scheduling Order 53 and any pending discovery deadlines until further notice of the Court (Signed by Magistrate Judge Guillermo R. Garcia) Parties notified.(vcantu, 5) (Entered: 01/16/2015) |
| 01/16/2015 | 61 | NOTICE of Setting re: 54 Opposed MOTION for Protective Order. Parties notified. Motion Hearing set for 1/22/2015 at 02:00 PM in by telephone before Magistrate Judge Guillermo R. Garcia, filed. (vcantu, 5) (Entered: 01/16/2015) |
| 01/22/2015 | | Minute Entry for proceedings held before Magistrate Judge Guillermo R. Garcia. MOTION HEARING on Motion for Protective Order (Dkt. 54) held on 1/22/15. The Court inquired as to whether the parties had been able to reach an agreement on the Protective Order. The parties have not come to a complete agreement. Defendants presented arguments. Plaintiffs presented arguments. The Court will take the matter under advisement and issue an order in the near future. The Court then stated that the Scheduling Order will continue to be suspended until this matter has been resolved. Neither party had any objections. Telephonic Appearances: Attorney: Darren McCarty f/ PLAINTIFFS; Attorney: John Cave, Edward Marvin f/ DEFENDANTS. (2:04-3:02). (ERO:Ben Mendoza), filed. (aveliz, 5) (Entered: 01/22/2015) |
| 01/27/2015 | 62 | MOTION to Compel Privilege Log and Documents by Dentistry of Brownsville, P.C., KS2 TX, PC, NCDR LLC, filed. Motion Docket Date 2/17/2015. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 |

| | | Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Proposed Order)(Block, Aaron) (Entered: 01/27/2015) |
|---|---|---|
| 02/02/2015 | 63 | Unopposed MOTION to Amend by NCDR LLC, filed. Motion Docket Date 2/23/2015. (Attachments: # 1 Proposed Order)(McCarty, Darren) (Entered: 02/02/2015) |
| 02/02/2015 | 64 | ORDER granting 63 Motion to Amend.(Signed by Magistrate Judge Guillermo R. Garcia) Parties notified.(vcantu, 5) (Entered: 02/02/2015) |
| 02/03/2015 | 65 | NOTICE OF SETTING Motion Hearing set for 2/6/2015 at 01:30 PM by telephone before Magistrate Judge Guillermo R. Garcia. Parties notified. (dmorales, 5) (Entered: 02/03/2015) |
| 02/03/2015 | 66 | Amended CORPORATE DISCLOSURE STATEMENT by Benevis, LLC f/k/a NCDR, LLC identifying Benevis Acquisition Corp. as Corporate Parent, filed. (McCarty, Darren) (Entered: 02/03/2015) |
| 02/06/2015 | | Minute Entry for proceedings held before Magistrate Judge Guillermo R. Garcia. MOTION HEARING on Motion for Protective Order (Dkt. 54) held on 2/6/15. The Court advised parties that there were three differences in the parties proposed protective orders that needed to be resolved. The Court went over each difference with the parties. The parties came to agreements on all varying terms. Defendants are to submit an agreed proposed protective order to the Court in a Word document no later than February 11, 2015. The Court will issue an order and Protective Order in the near future. Telephonic Appearances: Attorney: Darren McCarty, Sean White, Aaron Block f/ PLAINTIFFS; Attorney: John Cave, Edward Marvin f/ DEFENDANTS. (ERO:Edgar Hernandez), filed.(aveliz, 5) (Entered: 02/06/2015) |
| 02/17/2015 | 67 | RESPONSE to 62 MOTION to Compel Privilege Log and Documents filed by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit C-1, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit G-1, # 10 Exhibit G-2, # 11 Exhibit H, # 12 Exhibit I, # 13 Proposed Order)(Cave, John) (Entered: 02/17/2015) |
| 02/17/2015 | 68 | Sealed Event, filed. (Entered: 02/17/2015) |
| 02/18/2015 | 69 | ADVISORY by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC, filed.(Cave, John) (Entered: 02/18/2015) |
| 02/20/2015 | 70 | ORDER denying Defendants' 54 Opposed MOTION for Protective Order in its request that individual Defendants Mauze and Bagby have access to AEO designated documents. (Signed by Magistrate Judge Guillermo R. Garcia) Parties notified. (dmorales, 5) (Entered: 02/20/2015) |
| 02/20/2015 | 71 | PROTECTIVE ORDER (Signed by Magistrate Judge Guillermo R. Garcia) (Attachments: # 1 Exhibit A - Agreement of Non-Disclosure) Parties notified. (dmorales, 5) (Entered: 02/20/2015) |
| 03/25/2015 | 72 | |

| | | |
|---|---|---|
| | | NOTICE OF SETTING Status Conference set for 3/27/2015 at 09:00 AM by telephone before Magistrate Judge Guillermo R. Garcia. Parties notified. (dmorales, 5) (Entered: 03/25/2015) |
| 03/25/2015 | 73 | NOTICE OF SETTING Motion Hearing set for 4/1/2015 at 09:00 AM in Courtroom 3C before Magistrate Judge Guillermo R. Garcia Parties notified. (dmorales, 5) (Entered: 03/25/2015) |
| 03/27/2015 | | Minute Entry for proceedings held before Magistrate Judge Guillermo R. Garcia. STATUS CONFERENCE held on 3/27/15. The Court inquired whether the parties were still in dispute over certain discovery items. (Dkts. 62, 67). The parties indicated that they were still having issues and that they were going to hold a conference on March 30, 2015, to see what issues they could resolve in anticipation of the motion hearing on April 1, 2015. The Court informed the parties that it would like to get a status update on March 30, 2015, by 5:30 PM or on the morning of March 31, 2015. Telephonic Appearances: Attorney: Darren McKarty f/ PLAINTIFF; Attorney: John Cave f/ DEFENDANT. (ERO:Sylvia Gonzalez), filed.(aveliz, 5) (Entered: 03/27/2015) |
| 03/31/2015 | 74 | ORDER The motion hearing set before the Court on April 1, 2015, is hereby CANCELED. Further, the Court hereby SETS a status conference for Wednesday, April 1, 2015 at 09:00 AM by telephone before Magistrate Judge Guillermo R. Garcia. (Signed by Magistrate Judge Guillermo R. Garcia) Parties notified. (dmorales, 5) (Entered: 03/31/2015) |
| 04/01/2015 | | Minute Entry for proceedings held before Magistrate Judge Guillermo R. Garcia. STATUS CONFERENCE held on 4/1/15. The Court reviewed with the parties the contents of their conference call with the Courts law clerk on 3/31/15. The Court stated that since the parties were continuing to work out their discovery dispute (Dkts. 62, 67) it was going to deny Plaintiffs motion to compel with leave to refile. Further, the Court set a status conference to discuss the parties progress on this issue for April 27, 2015, at 2:00 PM. Finally, the Court discussed issuing a new scheduling order; both parties indicated that they would like a new schedule. The Court ordered Defendants to submit a joint advisory by April 8, 2015, advising the court on a proposed schedule. Telephonic Appearances: Attorney: Darren McCarty f/ PLAINTIFF; Attorney: Aaron Block f/ PLAINTIFF; Attorney: John Cave f/ DEFENDANT. (9:00-9:10) (ERO:Gaby Salinas), filed. (aveliz, 5). (Entered: 04/01/2015) |
| 04/01/2015 | 75 | ORDER denying 62 Motion to Compel.(Signed by Magistrate Judge Guillermo R. Garcia) Parties notified.(vcantu, 5) (Entered: 04/01/2015) |
| 04/01/2015 | 76 | NOTICE of Setting. Parties notified. Status Conference set for 4/27/2015 at 02:00 PM in by telephone before Magistrate Judge Guillermo R. Garcia, filed. (vcantu, 5) (Entered: 04/01/2015) |
| 04/08/2015 | 77 | JOINT DISCOVERY/CASE MANAGEMENT PLAN by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC, filed.(Cave, John) (Entered: 04/08/2015) |
| 04/27/2015 | | Minute Entry for proceedings held before Magistrate Judge Guillermo R. Garcia. STATUS CONFERENCE held on 4/27/15. The Court inquired about |

| | | |
|---|---|---|
| | | whether the parties were able to work out their discovery dispute. (Dkts. 62, 67). Both Plaintiffs and Defendants stated that they have discovery issues that the Court will need to resolve. The Court advised the parties that it would provide them with a deadline by which they need to file their motions to compel discovery, and that any hearing on these issues will likely be in person. Finally, the Court informed the parties that it will issue a scheduling order. Telephonic Appearances: Attorney: Sean Whyte f/ PLAINTIFF; Attorney: John Cave f/ DEFENDANT; Attorney: Edward Marvin f/ DEFENDANT. (2:00-2:11). (ERO:Delia Gonzalez), filed.(aveliz, 5) (Entered: 04/27/2015) |
| 04/27/2015 | 78 | ORDER The Court hereby ORDERS that the parties file any motions to compel discovery no later than May 7, 2015. It is further ORDERED that any responses to said motions be filed no later than May 13, 2015. (Signed by Magistrate Judge Guillermo R. Garcia) Parties notified. (dmorales, 5) (Entered: 04/27/2015) |
| 04/27/2015 | 79 | ORDER Amended Pleadings due by 10/19/2015. Deft Expert Witness List due by 7/27/2015. Discovery due by 9/28/2015. Dispositive Motion Filing due by 11/2/2015. Initial Disclosures due by 5/11/2015. Joinder of Parties due by 5/25/2015 Mediation due by 10/5/2015. Pltf Expert Witness List due by 6/22/2015. Joint Pre-Trial Order is TBD. (Signed by Magistrate Judge Guillermo R. Garcia) Parties notified. (dmorales, 5) (Entered: 04/27/2015) |
| 05/06/2015 | 80 | First MOTION to Compel Relief Associated with Defendants First Requests for Production by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC, filed. Motion Docket Date 5/27/2015. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit N, # 12 Exhibit O, # 13 Exhibit P, # 14 Exhibit Q, # 15 Exhibit R, # 16 Exhibit S, # 17 Exhibit T, # 18 Proposed Order)(Cave, John) (Entered: 05/06/2015) |
| 05/06/2015 | 81 | Sealed Event, filed. (With attachments) (Entered: 05/06/2015) |
| 05/07/2015 | 82 | Amended MOTION to Compel Production of Documents (Related to Assertions of Privilege) by Benevis, LLC f/k/a NCDR, LLC, Dentistry of Brownsville, P.C., KS2 TX, PC, filed. Motion Docket Date 5/28/2015. (Attachments: # 1 Exhibit A (May 2012 Mauze Affidavit), # 2 Exhibit B (May 2012 Bagby Affidavit), # 3 Exhibit C (Defs.' Third Am. Privilege Log), # 4 Exhibit D (Defs.' Resp. to NCDR's Interrogatories), # 5 Proposed Order Granting Motion to Compel)(McCarty, Darren) (Entered: 05/07/2015) |
| 05/07/2015 | 83 | MOTION to Compel Production by Benevis, LLC f/k/a NCDR, LLC, Dentistry of Brownsville, P.C., KS2 TX, PC, filed. Motion Docket Date 5/28/2015. (Attachments: # 1 Exhibit A (Defs.' Original Resp. to RFPs), # 2 Exhibit B (Defs.' First Amended Resp. to RFPs), # 3 Exhibit C (Defs.' First Supp. Resp. to RFPs), # 4 Exhibit D (Defs.' Second Supp. Resp. to RFPs), # 5 Exhibit E (Defs.' Third Supp. Resp. to RFPs), # 6 Exhibit F (Defs.' Fourth Supp. Resp. to RFPs), # 7 Exhibit G (Defs.' Am. Fourth Supp. Resp. to RFPs), # 8 Exhibit H (M&B/1201A/00004-09, Redacted Internet Article), # 9 Exhibit I (M&B/1201A/00982-986, Redacted Blog Posting), # 10 Exhibit J (Examples |

| | | |
|---|---|---|
| | | of Redactions), # 11 Exhibit K (Pls.' First RFPs to Defs.), # 12 Proposed Order Granting Motion to Compel)(McCarty, Darren) (Entered: 05/07/2015) |
| 05/13/2015 | 84 | RESPONSE to 82 Amended MOTION to Compel Production of Documents (Related to Assertions of Privilege) filed by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Proposed Order)(Cave, John) (Entered: 05/13/2015) |
| 05/13/2015 | 85 | RESPONSE to 83 MOTION to Compel Production filed by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC. (Attachments: # 1 Exhibit A, # 2 Proposed Order)(Cave, John) (Entered: 05/13/2015) |
| 05/13/2015 | 86 | First AMENDED COMPLAINT with Jury Demand against James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC filed by KS2 TX, PC, Benevis, LLC f/k/a NCDR, LLC, Dentistry of Brownsville, P.C.. (Attachments: # 1 Exhibit 1 - Advertising Review Committee Letter regarding Website, # 2 Exhibit 2 - Advertising Review Committee Letter regarding Television Ads, # 3 Exhibit 3 - Advertising Review Committee Letter regarding Radio Ads)(McCarty, Darren) (Entered: 05/13/2015) |
| 05/13/2015 | 87 | RESPONSE in Opposition to 80 First MOTION to Compel Relief Associated with Defendants First Requests for Production, filed by Benevis, LLC f/k/a NCDR, LLC, Dentistry of Brownsville, P.C., KS2 TX, PC. (Attachments: # 1 Exhibit A - May 2012 Affidavit of Mauze, # 2 Exhibit B - May 2012 Affidavit of Bagby, # 3 Exhibit C - Defendants' First RFP to NCDR, # 4 Proposed Order Denying Defendants' Motion to Compel)(McCarty, Darren) (Entered: 05/13/2015) |
| 05/14/2015 | 88 | Corrected RESPONSE to 83 MOTION to Compel Production filed by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC. (Attachments: # 1 Exhibit A, # 2 Proposed Order)(Cave, John) (Entered: 05/14/2015) |
| 05/27/2015 | 89 | ANSWER to 86 Amended Complaint/Counterclaim/Crossclaim etc., by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC, filed. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Cave, John) (Entered: 05/27/2015) |
| 06/03/2015 | 90 | REPLY to Response to 80 First MOTION to Compel Relief Associated with Defendants First Requests for Production, filed by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC. (Cave, John) (Entered: 06/03/2015) |
| 06/08/2015 | 91 | Opposed MOTION to Strike 90 Reply to Response to Motion *to Compel, or, in the Alternative, Motion for Leave to File Sur-reply* by Benevis, LLC f/k/a NCDR, LLC, Dentistry of Brownsville, P.C., KS2 TX, PC, filed. Motion Docket Date 6/29/2015. (Attachments: # 1 Proposed Order Granting Plaintiffs' Motion to Strike)(McCarty, Darren) (Entered: 06/08/2015) |
| 06/16/2015 | 92 | ORDER- The Court hereby Orders Defendants to file a response to Plaintiff's Motion 91 on or before 6/22/2015.(Signed by Magistrate Judge Guillermo R. Garcia) Parties notified.(vcantu, 5) (Entered: 06/16/2015) |
| 06/22/2015 | 93 | |

| | | |
|---|---|---|
| | | RESPONSE to 91 Opposed MOTION to Strike 90 Reply to Response to Motion *to Compel, or, in the Alternative, Motion for Leave to File Sur-reply* filed by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC. (Attachments: # 1 Exhibit A, # 2 Proposed Order)(Cave, John) (Entered: 06/22/2015) |
| 06/22/2015 | 94 | DESIGNATION OF EXPERT WITNESS LIST by Benevis, LLC f/k/a NCDR, LLC, Dentistry of Brownsville, P.C., KS2 TX, PC, filed. (Attachments: # 1 Exhibit A - Biography of Stephanie Clouston)(McCarty, Darren) (Entered: 06/22/2015) |
| 07/02/2015 | 95 | MOTION to Amend by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC, filed. Motion Docket Date 7/23/2015. (Attachments: # 1 Exhibit 1, # 2 Exhibit 3, # 3 Exhibit 8, # 4 Exhibit 9, # 5 Exhibit 10, # 6 Exhibit 11, # 7 Exhibit 12, # 8 Exhibit 13, # 9 Exhibit 14, # 10 Exhibit 15, # 11 Proposed Order)(Cave, John) (Entered: 07/02/2015) |
| 07/02/2015 | 96 | Sealed Event, filed. (With attachments) (Entered: 07/02/2015) |
| 07/02/2015 | 97 | EMERGENCY MOTION by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC, filed. Motion Docket Date 7/23/2015. (Attachments: # 1 Proposed Order)(Cave, John) (Entered: 07/02/2015) |
| 07/06/2015 | 98 | ORDER GRANTING 97 Emergency Motion For Expedited Response to Defendant's Motion to Amend Scheduling Order. (Amended Pleadings due by 7/13/2015) IT IS SO ORDERED.(Signed by Magistrate Judge Guillermo R. Garcia) Parties notified.(mmarquez, 5) (Entered: 07/07/2015) |
| 07/06/2015 | 99 | ORDER Denying in Part and Granting in Part 91 Opposed MOTION to Strike 90 Defendant's Reply to Plaintiff's Response to Defendant's Motion *to Compel, or, in the Alternative, Motion for Leave to File Sur-reply*. The Court DENIES Plaintiffs request that teh Court strike Defendant's Reply and GRANTS Plaintiffs' leave to file a sur-reply addressing the arguments raised in Defendant's Reply (Dkt. 90) on or before July 13, 2015. IT IS SO ORDERED. (Signed by Magistrate Judge Guillermo R. Garcia) Parties notified.(mmarquez, 5) (Entered: 07/07/2015) |
| 07/07/2015 | 100 | Supplement to 80 First MOTION to Compel Relief Associated with Defendants First Requests for Production by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC, filed. (Attachments: # 1 Exhibit C) (Cave, John) Modified on 7/8/2015 (gsalinas, 5). (Entered: 07/07/2015) |
| 07/07/2015 | 101 | Sealed Event, filed. (With attachments) (Entered: 07/07/2015) |
| 07/07/2015 | 102 | NOTICE of Setting. Parties notified. Status Conference set for 7/14/2015 at 09:00 AM by telephone before Magistrate Judge Guillermo R. Garcia, filed. Parties may reach the Court at (956) 790-1757. (aveliz, 5) (Entered: 07/07/2015) |
| 07/10/2015 | 103 | NOTICE *(Advisory to the Court)* re: 95 MOTION to Amend by James Thomas Bagby, III, George Watts Mauze, II, Mauze & Bagby, PLLC, filed. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Cave, John) (Entered: 07/10/2015) |
| 07/12/2015 | 104 | |

| | | |
|---|---|---|
| | | RESPONSE in Opposition to 95 MOTION to Amend, filed by Benevis, LLC f/k/a NCDR, LLC, Dentistry of Brownsville, P.C., KS2 TX, PC. (Attachments: # 1 Exhibit A - Mauze Affidavit, # 2 Exhibit B - Bagby Affidavit, # 3 Exhibit C - Court of Appeals Order, # 4 Exhibit D - Email Exchange Between Block and Marvin, # 5 Exhibit E - Email Exchange Between Whyte and Marvin, # 6 Proposed Order Denying Defendants' Motion)(McCarty, Darren) (Entered: 07/12/2015) |
| 07/12/2015 | 105 | SURREPLY to 80 First MOTION to Compel Relief Associated with Defendants First Requests for Production, filed by Benevis, LLC f/k/a NCDR, LLC, Dentistry of Brownsville, P.C., KS2 TX, PC. (Attachments: # 1 Exhibit A - Mauze Affidavit, # 2 Exhibit B - Bagby Affidavit, # 3 Exhibit C - March 2015 Email String, # 4 Exhibit E - Aug. 18, 2014 Letter, # 5 Exhibit F - Aug. 21, 2014 Letter, # 6 Exhibit G - Aug. 22, 2014 Email, # 7 Exhibit H - Dec. 19, 2014 Letter, # 8 Exhibit I - Dec. 23, 2014 Email)(McCarty, Darren) (Entered: 07/12/2015) |
| 07/12/2015 | 106 | Sealed Event, filed. (Entered: 07/12/2015) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/14/2015 09:48:29 | | |
| **PACER Login:** | kk0514:2698413:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 5:12-cv-00036 |
| **Billable Pages:** | 13 | **Cost:** | 1.30 |

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 11, 2014

Lyle W. Cayce
Clerk

No. 12-41243

NCDR, L.L.C.; DENTISTRY OF BROWNSVILLE, P.C., doing business as
Kool Smiles; KS2 TX, P.C.,

Plaintiffs–Appellees

v.

MAUZE & BAGBY, P.L.L.C.; GEORGE WATTS MAUZE, II; JAMES
THOMAS BAGBY, III,

Defendants–Appellants

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, KING, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

## I.  INTRODUCTION

Defendant–Appellant M&B[1], a Texas law firm, engaged in an advertising
campaign to solicit former dental patients from Kool Smiles[2] dental clinics as
potential clients.  M&B appeals the district court's denial of its Texas "anti-

---

[1] The Defendants–Appellants consist of two Texas lawyers (George Watts Mauzé II and
James Thomas Bagby III) and their law firm (Mauzé & Bagby, P.L.L.C.).  They are collectively
referred to as "M&B."

[2] Plaintiff–Appellees own dental clinics in Texas and around the country. They are
NCDR, L.L.C.; Dentistry of Brownsville, P.C. d/b/a Kool Smiles; and KS2 TX, P.C. d/b/a/ Kool
Smiles. They are collectively referred to as "Kool Smiles."

No. 12-41243

SLAPP" motion to dismiss a claim brought against them by Plaintiff–Appellee Kool Smiles. The district court determined that M&B's speech fell within a commercial speech exemption to Texas's anti-SLAPP statute—the Texas Citizen's Participation Act ("TCPA"). While M&B challenges that determination and asks this Court to render judgment in its favor, Kool Smiles challenges this court's jurisdiction and argues that the Texas statute at issue does not apply in federal court.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

Kool Smiles runs a national chain of dental clinics that provide care primarily to economically disadvantaged children. M&B is a Texas law firm that engaged in an advertising campaign soliciting former Kool Smiles patients to represent. M&B contends that Kool Smiles has been the subject of multiple media reports and government investigations regarding allegations of Medicaid fraud and bad medical provision. As part of the campaign, M&B ran television, radio, and internet advertisements, and developed a website that strongly implied, or even accused, Kool Smiles of performing unnecessary, and at times harmful, dental work on children to obtain government reimbursements.

### B.    Procedural Background

Based on M&B's ads and website, Kool Smiles brought causes of action under federal law for trademark infringement, false advertising, and cyber-piracy under the Lanham Act. Kool Smiles also brought state claims for defamation, business disparagement, injury to business reputation, and trade name and service mark dissolution.

No. 12-41243

M&B brought several motions to dismiss.  One was brought pursuant to the TCPA.  *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–27.011 (West 2011). The TCPA is an anti-SLAPP[3] statute that allows a claim to be dismissed when the defendant can show that the claim was brought to chill the exercise of First Amendment rights.  *Id.* § 27.003(a); *see also infra* Part II.C.  M&B also brought motions to dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") 8(a) for failure to plead with sufficient particularity and FRCP 12(b)(6) for failure to state a claim on which relief may be granted.

The district court's order contained four holdings.  First, the court held that the TCPA does not apply to Kool Smiles's three federal claims brought under the Lanham Act.  Second, the court held that the TCPA does not protect M&B's speech because its advertisements and website fall into the "commercial speech" exemption to the TCPA.  Third, Kool Smiles's pleadings were sufficient such that M&B's FRCP 8(a) motion failed.  Fourth, Kool Smiles stated a claim, such that M&B's FRCP 12(b)(6) motion failed.

M&B brought this appeal.  M&B does not appeal the district court's rulings on its motions to dismiss based on FRCP 8(a) or FRCP 12.  Thus, M&B only seeks interlocutory review of the denial of its TCPA motion.  As to this TCPA appeal, M&B does not appeal the district court's first ruling regarding Kool Smiles's federal causes of action.  Instead, M&B's only argument on appeal is that the district court erred in concluding that M&B's speech fell into the "commercial speech" exemption such that the anti-SLAPP motion to dismiss was not available.  However, Kool Smiles, in their brief, raises other issues on appeal, discussed below.

---

[3] SLAPP is an acronym for "strategic litigation against public participation."

## C.    The Statute at Issue: The TCPA

The purpose of the TCPA is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002.  To achieve this, the TCPA provides a means for a defendant, early in the lawsuit, to seek dismissal of certain claims in the lawsuit.  *See id.* § 27.003.

If a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action.  *Id.* § 27.003(a).  The motion to dismiss generally must be filed no later than sixty days after service of the legal action, although the TCPA provides that a court can extend the filing deadline on a showing of good cause.  *Id.* § 27.003(b).  On the filing of a motion to dismiss pursuant to § 27.003(a), all discovery in the legal action is suspended until the court has ruled on the motion to dismiss, except as provided by § 27.006(b).  *Id.* § 27.003(c).  Section 27.006(b) states, "[o]n a motion by a party or on the court's own motion and on a showing of good cause, the court may allow specified and limited discovery relevant to the motion."  *Id.* § 27.006(b).

Section 27.005, entitled "Ruling," sets out the burden shifting scheme:

(a) The court must rule on a motion under Section 27.003 not later than the 30th day following the date of the hearing on the motion.

(b) Except as provided by Subsection (c), on the motion of a party under Section 27.003, a court *shall* dismiss a legal action against the moving party if the moving party shows by a preponderance of

No. 12-41243

the evidence that the legal action is based on, relates to, or is in response to the party's exercise of:

> (1) the right of free speech;
> (2) the right to petition; or
> (3) the right of association.

*Id.* § 27.005(a)–(b) (emphasis added). However, the motion to dismiss may not be granted "if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c).

"In determining whether a legal action should be dismissed under [the TCPA], the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a).

The Section entitled "Appeal" provides:

(a) If a court does not rule on a motion to dismiss under Section 27.003 in the time prescribed by Section 27.005, the motion is considered to have been denied by operation of law and the moving party may appeal.

(b) An appellate court shall expedite an appeal or other writ, whether interlocutory or not, from a trial court order on a motion to dismiss a legal action under Section 27.003 or from a trial court's failure to rule on that motion in the time prescribed by Section 27.005.

(c) An appeal or other writ under this section must be filed on or before the 60th day after the date the trial court's order is signed or the time prescribed by Section 27.005 expires, as applicable.

*Id.* § 27.008.[4]

## III.  DISCUSSION

### A.    Jurisdiction

Because the district court's order denying the motion to dismiss was not a final judgment resolving all the issues of the suit, we must first determine whether this court has jurisdiction.  M&B invokes the collateral order doctrine as a basis for jurisdiction before this court.  Kool Smiles argues that this court lacks jurisdiction over this interlocutory appeal because it does not fall within the "independent, immunity-style right" that the collateral order doctrine recognizes as immediately appealable.  We disagree.

Where the district court's order is not a final judgment ending the action, the collateral order doctrine can confer limited appellate jurisdiction.  *Will v. Hallock*, 546 U.S. 345, 349 (2006).  The following three conditions must be met for a collateral order appeal: (1) the order must conclusively determine the disputed question; (2) it must resolve an important issue completely separate from the merits of the case; and (3) it must be effectively unreviewable on appeal from a final judgment.  *Id.*

In *Henry v. Lake Charles American Press*, 566 F.3d 164 (5th Cir. 2009), this Court analyzed a district court's denial of a motion to dismiss pursuant to Louisiana's anti-SLAPP statute, Article 971, under the main requirements of the collateral order doctrine: (1) conclusivity, (2) separability, and (3) unreviewability.[5]  566 F.3d at 171–78.  Before so doing, the court noted that

---

[4] The legislature amended several subsections of the TCPA in 2013.  The statutes as cited within are from the TCPA as applicable at the time of the suit.

[5] *Henry* also treats the importance of an issue as a fourth, separate requirement.  566 F.3d at 178–79. However, it not clear whether importance is a fourth requirement or is instead wrapped up in the second and third requirements.  *See, e.g.*, *Mohawk Indus., Inc. v. Carpenter*,

determining whether an order is appealable should be done not on a case-by-case basis, but on a type-of-order-by-type-of-order basis. *Id*. at 173. "Thus, for our present purposes, we do not look to whether the order in the context of this particular case is immediately appealable, but to whether orders denying motions brought under anti-SLAPP statutes such as [Louisiana's] satisfy the conditions of the collateral order doctrine." *Id*. The court ultimately held that "a district court's denial of a motion brought under an anti-SLAPP statute such as [Louisiana's] is an immediately-appealable collateral order," such that this Court had jurisdiction over the appeal. *Id*. at 181.

Whether a denial of a motion to dismiss pursuant to the TCPA is immediately reviewable under the collateral order doctrine is an issue of first impression. Although *Henry* used broad language ("statutes *such as Article 971* satisfy the conditions of the collateral order doctrine"), because Texas's anti-SLAPP statute is not identical to Louisiana's, this Court conducts its own collateral order doctrine inquiry to determine whether the denial of an anti-SLAPP motion to dismiss satisfies the three requirements of the collateral order doctrine. All three must be satisfied for the Ccourt to have jurisdiction. Below, the three requirements are evaluated against the TCPA. Because we hold that the TCPA satisfies all three requirements, the collateral order doctrine supplies jurisdiction.

<u>1. Does the district court's order conclusively determine the disputed question?</u>

The requirement that the district court's order "conclusively determine"

---

558 U.S. 100, 107 (2009) (specifying that the second condition requires important questions separate from the merits and that the third requirement—reviewability—cannot be answered without making a judgment about the importance of the right that would be lost).

the disputed question means that the order must be final as to only the one inquiry that the order determines. *See Behrens v. Pelletier*, 516 U.S. 299, 307–08 (1996) ("Whether or not a later summary judgment motion is granted, denial of a motion to dismiss is conclusive as to [the right to avoid the burden of litigation.]"). To be considered "conclusive," it should be "unlikely that the district court will revisit the order." *Henry*, 566 F.3d at 174 (citing 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3911, at 333 (2d ed. 1992)).

Because the TCPA and Louisiana's anti-SLAPP statute are similar on this point, *Henry*'s analysis on conclusivity applies with equal force here: "A district court's denial of [a TCPA] motion is conclusive as to whether [the TCPA] mandates dismissal of the suit. . . . If a trial court denies [a TCPA] motion, then the case proceeds as it normally would. There is also no indication that a trial court would revisit [its earlier TCPA decision]." *See Henry*, 566 F.3d at 174. Thus, the district court's order denying TCPA relief is conclusive for purposes of the collateral order doctrine.

2. Does the district court's order resolve an important issue separate from the merits of the case?

In order for an issue to be immediately appealed, it must be separate from the merits of the case. Issues are not separate "where they are but steps towards [a] final judgment in which they will merge." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). The question of separability turns on whether the matter at issue "is significantly different from the fact-related legal issues that likely underlie the plaintiff's claim on the merits." *Johnson v. Jones*, 515 U.S. 304, 314 (1995). The Supreme Court has described "separate" issues as those that are "conceptually distinct from the merits of the plaintiff's claim."

*Id.* (citations and internal quotation marks omitted).   For example, issues concerning immunity from suit are often separate from the underlying dispute in the litigation.  *Henry*, 566 F.3d at 174.  Claims of qualified immunity are distinct from the merits of a plaintiff's claim.  *Id.* (citing *Mitchell v. Forsyth*, 472 U.S. 511, 527–28 (1985)).   The *Henry* court conceded that the fact that determining an anti-SLAPP motion can require the district court to assess the merits of the plaintiff's claim weighed against a finding of separability.  *Id.* at 175.   It went on to hold, however, that because the anti-SLAPP statute had a distinct purpose from that of the underlying suit, separability was still present. *Id.*  An anti-SLAPP motion "resolves a question separate from the merits in that it merely finds that such merits may exist, without evaluating whether the plaintiff's claim is to succeed."  *Id.* (citing *Batzel v. Smith*, 333 F.3d 1018, 1025 (9th Cir. 2003) (internal quotation marks omitted)).  Further, although an anti-SLAPP motion "looks to the plaintiff's probability of success, the court decides it before proceeding to trial and then moves on.  Immediate appellate review would thus determine an issue separate from any issues that remain before the district court."  *Id.* at 176.

Separability under the TCPA is even clearer than separability under the Louisiana statute because Louisiana's statute relies in part on an analysis of the merits of the underlying claim.  Louisiana's statue specifies that if the defendant meets his burden under the statute to show that the plaintiff's suit is in connection with the defendant's right to free speech, the suit is dismissed unless the plaintiff can establish "a probability of success on the claim."  *Henry*, 556 F.3d at 170 (citing La. Code Civ. Proc. Ann. art. 971(A)(3)).  By contrast, the TCPA does not require so searching a review into the plaintiff's probability of success.   Instead, a plaintiff can defeat an anti-SLAPP motion if he merely

establishes a prima facie case for each element of the claim. Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). Thus, the TCPA "has a purpose distinct from that of the underlying suit." *See Henry*, 566 F.3d at 175. More directly, "an anti-SLAPP motion 'resolves a question separate from the merits in that it merely finds that such merits may exist, without evaluating whether the plaintiff's claim will succeed.'" *Id.* (quoting *Batzel*, 333 F.3d at 1025). As explained in *Henry*, "'[t]he purpose of an anti-SLAPP motion is to determine whether the defendant is being forced to defend against a meritless claim,' not to determine whether the defendant actually committed the relevant tort." *Id.* (quoting *Batzel*, 333 F.3d at 1025). In sum, the denial of a motion to dismiss brought pursuant to the TCPA resolves an important issue separate from the merits of the case, satisfying the collateral order doctrine's separability requirement.

3. Is the district court's order effectively unreviewable on appeal from a final judgment?

For the collateral order doctrine to apply, the district court's order must be effectively unreviewable on appeal. "Perhaps the embodiment of unreviewability, then, is immunity from suit . . . ." *Henry*, 566 F.3d at 177. In determining whether a right confers immunity, the critical inquiry is whether the statute provides a right not to stand trial in the first place and to otherwise avoid the burdens of litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 525–26 (1985). If an essential part of the defendant's claim is the right to avoid the burden of trial, then this final requirement of the collateral order doctrine is met because obtaining relief after trial is too late. *Id.* at 525. In *Henry*, the court held that the denial of a Louisiana anti-SLAPP motion satisfied the unreviewability requirement. 566 F.3d at 178. ("[The statute] thus provides a right not to stand trial, as avoiding the costs of trial is the very purpose of the statute.").

10

The TCPA's own provisions for interlocutory review are instructive. To be sure, state law does not control the question of whether appellate review is available in federal court. *See, e.g.*, *Englert v. MacDonnell*, 551 F.3d 1099, 1107 (9th Cir. 2009) ("We emphasize that our brief discussion of the availability of mandamus in Oregon is not intended to suggest that Oregon law determines the availability of appellate review here. On the contrary, federal law is controlling on this issue."). However, numerous courts have recognized that the absence or presence of interlocutory statutory review mechanisms at the state level informs the question of whether interlocutory appeal is permissible in federal courts. *See Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 151 (2d Cir. 2013); *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1015–16 (9th Cir. 2013); *Metabolic Research, Inc. v. Ferrell*, 693 F.3d 795, 800–01 (9th Cir. 2012); *Godin v. Schencks*, 629 F.3d 79, 85 (1st Cir. 2010); *Englert*, 551 F.3d at 1105–06; *Batzel*, 333 F.3d at 1025. This "is relevant not because state law determines the availability of appellate review [in federal court]—it does not—but rather because [it demonstrates whether] 'lawmakers wanted to protect speakers from the trial itself rather than merely from liability.'" *Godin*, 629 F.3d at 85 (quoting *Batzel*, 333 F.3d at 1025).

Thus, in *Batzel*, the court found "instructive that California's anti-SLAPP statute provide[d] that an order denying an anti-SLAPP motion may be appealed immediately." 333 F.3d at 1025. This, along with that statute's legislative history, evidenced "that California lawmakers wanted to protect speakers from the trial itself rather than merely from liability." *Id.* The court continued by explaining that, "[i]f the defendant were required to wait until final judgment to appeal the denial of a meritorious anti-SLAPP motion, a decision by this court reversing the district court's denial of the motion would not remedy the fact that

the defendant had been compelled to defend against a meritless claim brought to chill rights of free expression." *Id.* Accordingly, the court concluded that "a defendant's rights under the anti-SLAPP statute are in the nature of immunity: They protect the defendant from the burdens of trial, not merely from ultimate judgments of liability." *Id.*; *see also Godin*, 629 F.3d at 85 (citing *Englert*, 551 F.3d at 1107, with approval for the proposition that "whether [a] state anti-SLAPP statute provides for interlocutory appeals is significant to whether interlocutory appeals should be permitted in federal courts").

Equally instructive on the importance of an expedited state appeal process is the analysis undertaken by the *Englert* and *Metabolic Research* courts—apparently the only two federal courts to have concluded that orders denying motions to dismiss anti-SLAPP suits are *not* immediately appealable under the collateral order doctrine. In *Englert*, the Ninth Circuit held that Oregon's anti-SLAPP statute "was not intended to provide a right not to be tried." 551 F.3d at 1105. In reaching this conclusion, the court reasoned that "the failure of the Oregon anti-SLAPP statute to provide for an appeal from an order denying a special motion to strike . . . surely suggests that Oregon does not view such a remedy as necessary to protect the considerations underlying its anti-SLAPP statute." *Id.* The court continued that:

> The failure of the Oregon Legislature to provide for an appeal from the denial of a special motion to strike provides compelling evidence that, unlike their California counterparts, Oregon lawmakers did not want to protect speakers from the trial itself, as much as they wanted to have in place a process by which a *nisi prius* judge would promptly review the evidence underlying the defamation complaint to determine whether it had sufficient merit to go forward.

*Id.* at 1106 (citation and internal quotations marks omitted). *Englert* emphasized that this distinguished the case from *Batzel* which had "held that,

if a legislature provided an appeal unique to its anti-SLAPP statute . . . it could be inferred that its purpose was to confer immunity from suit—an immunity which can only be vindicated by permitting an interlocutory appeal." *Id.* at 1107.

The *Metabolic Research* court reached the same conclusion in connection with Nevada's anti-SLAPP statute. 693 F.3d at 801. There, the court held that its review of Nevada's law led it to the conclusion that the statute's "underlying values and purpose [were] satisfied without resort to an immediate appeal because, unlike California's, it [did] not furnish its citizens with immunity from trial." *Id.* Underlying this holding were the court's observations that "Nevada's anti-SLAPP statute [did] not expressly provide for an immediate right to appeal," and that the statute explicitly indicated that its purpose was to provide defendants immunity from "*civil liability*" as opposed to immunity from suit or trial. *Id.* at 802. Accordingly, like the *Englert* court, the *Metabolic Research* court concluded that a motion to dismiss under Nevada's anti-SLAPP statute did not satisfy the third prong of the collateral order doctrine.

With respect to the right to an immediate appeal, the TCPA is more similar to the statutes at issue in *Batzel* and *Godin* than those considered in *Englert* and *Metabolic Research*. Section 27.008 of the TCPA provides that "[a]n appellate court shall expedite an appeal or other writ, whether interlocutory or not, from a trial court order on a motion to dismiss a legal action under Section 27.003 or from a trial court's failure to rule on that motion in the time prescribed by Section 27.005." Tex. Civ. Prac. & Rem. Code Ann. § 27.008(b). Consistent with *Batzel*, *Godin*, *Englert*, and *Metabolic Life*, it appears that, by providing this right, the Texas legislature has indicated the nature of the underlying right the TCPA seeks to protect. That right is not simply the right to avoid ultimate liability in a SLAPP case, but rather is the right to avoid trial in the first

No. 12-41243

instance. Thus, "[b]ecause the anti-SLAPP motion is designed to protect the defendant from having to litigate meritless cases aimed at chilling First Amendment expression, the district court's denial of an anti-SLAPP motion would effectively be unreviewable on appeal from a final judgment." *Batzel*, 333 F.3d at 1025.

We also note that this conclusion is consistent with the Supreme Court's most recent pronouncements on the collateral order doctrine. In *Will*, for example, the Court explained that immediate review must advance "some particular value of a high order." 546 U.S. at 352. "That is, it is not mere avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest, that counts when asking whether an order is effectively unreviewable if review is to be left until later." *Id.* at 353 (citation and internal quotation marks omitted). As the *Metabolic Research* court explained, "[a] legislatively approved immunity from trial, as opposed to a mere claim of a right not to be tried, is imbued with a significant public interest." 693 F.3d at 800; *see also Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 879 (1994) ("When a policy is embodied in a constitutional or statutory provision entitling a party to immunity from suit (a rare form of protection), there is little room for the judiciary to gainsay its 'importance.'"). Likewise, "[i]t would be difficult to find a value of a 'high[er] order' than the constitutionally-protected rights to free speech and petition that are at the heart of [an] anti-SLAPP statute. Such constitutional rights deserve particular solicitude within the framework of the collateral order doctrine." *DC Comics*, 706 F.3d at 1015–16 (second alteration in original). Thus, we hold that this Court has jurisdiction to interlocutorily consider the denial of a TCPA anti-SLAPP motion to dismiss.

No. 12-41243

## B.    The TCPA's Applicability in Federal Court

Kool Smiles argues on appeal that the TCPA does not apply in federal court because it conflicts with both FRCP 12(d) and Federal Rule of Appellate Procedure ("FRAP") 4.  M&B argues that Kool Smiles did not raise this specific argument before the district court and thus it is waived.    We agree.

As a general rule, "[a]n argument not raised before the district court cannot be asserted for the first time on appeal." *XL Speciality Ins. Co. V. Kiewit Offshore Servs., Ltd.* 513 F.3d 146, 153 (5th Cir. 2008).  Merely mentioning a legal issue in general terms is also insufficient; an argument must be "raised to such a degree that the trial court may rule on it."  *Id.* (quotation marks and citation omitted).  In the district court, in its response brief in opposition to M&B's motion to dismiss, Kool Smiles argued only that the TCPA conflicted with FRCP 8, 9, and 12.  The rules raised before the district court differ from those before us (FRCP 12(d) and FRAP 4).

Before this court, Kool Smiles argues that FRCP 12(d) and FRAP 4 conflict with the TCPA.  This was not the question raised before the district court.  To begin, we note that Kool Smiles never claimed in district court that FRAP 4 conflicted with the TCPA. And while Kool Smiles raised FRCP 12, its discussion in district court was brief and only generally mentions motions to dismiss.  Kool Smiles' argument largely focused on the pleading standards articulated in FRCP 8 and 9.  Moreover, before the district court, Kool Smiles did not specifically address FRCP 12(d).   And yet, an analysis of whether a state law or rule conflicts with federal procedural rules requires a precise discussion of the specific federal rule at issue (as well as the allegedly conflicting state law or rule).  Consequently, the district court's order did not address these rules.  By

not "rais[ing the issue] to such a degree that the trial court may rule on it," Kool Smiles waived its FRCP 12(d) and FRAP 4 arguments.

Because Kool Smiles waived its argument that the TCPA is a procedural law that conflicts with the Federal Rules of Civil Procedure, we proceed assuming that it does not. Thus, we continue by reviewing the district court's determination that the TCPA's commercial speech exemption applies to the speech underlying this lawsuit.

## C.    Commercial Speech Exemption

The district court ruled that the TCPA does not protect M&B's conduct because its speech falls within the "commercial speech" exemption to the TCPA. It found that M&B is primarily engaged in selling legal services to clients and that the ads offered those services to potential customers (i.e., clients). M&B's main argument is that the district court incorrectly interpreted the "commercial speech" exemption. Kool Smiles replies that the plain language of the statute exempts M&B's speech from the protections offered by the TCPA.

The "commercial speech" exemption to the TCPA, enacted in June 2011, states that the TCPA:

> [D]oes not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

Tex. Civ. Prac. & Rem. Code Ann. § 27.010(b). This Court reviews a district court's interpretation of a state statute de novo, interpreting the state statute the way the state supreme court would, based on prior precedent, legislation, and relevant commentary. *F.D.I.C. v. Shaid*, 142 F.3d 260, 261 (5th Cir. 1998).

No. 12-41243

"When construing a state statute absent explicit state-court guidance, we must attempt to predict state law, not to create or modify it." *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 381 (5th Cir. 2013) (citation and internal quotation marks omitted).

The Supreme Court of Texas has not yet interpreted the TCPA, much less the "commercial speech" exemption. When the parties filed their briefs, no Texas state court or federal court had interpreted the exemption. In 2013, four[6] intermediate Texas state court cases analyzing the exemption were released. Two address whether a defendant's action "arises out of the sale or lease of goods, services, or an insurance product." The other two address whether the intended audience is "an actual or potential buyer or customer."

The first, *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, No. 01-12-00581-CV, 2013 WL 5761051, at *1 (Tex. App.—Houston [1st Dist.] Oct. 24, 2013, no pet.), involved a defamation case arising from a series of articles in a newspaper. The articles reported regulatory compliance problems and investigations into the Crazy Water Retirement Hotel ["the Hotel"]—an assisted living facility—and its owner. *Id.* at *1–*2. Specifically, the paper published a summary of its own article stating, in part: "Month after month in 2010 complaints from residents and employees at the Crazy Water Retirement Hotel kept city and state inspectors returning to the building, investigating complaints of unsafe conditions, building disrepair, failure to provide services and verbal abuse of residents." *Id.* at *1.

---

[6] A fifth case mentions the commercial speech exemption, but does not discuss it. *Whisenhunt v. Lippincott*, No. 06-13-00051-CV, 2013 WL 553968, at *4 n.5 (Tex. App.—Texarkana Oct. 9, 2013, pet. filed) ("Because we conclude that the statute does not apply, we need not decide whether the commercial speech exception applies in this case.").

No. 12-41243

The Hotel and its owner brought several state law claims against the newspaper and its source, alleging that the paper published defamatory and damaging statements. *Id*. at *4. The defendants moved to dismiss the suit under the TCPA. *Id*. The trial court denied the motion. *Id*. at *5. The defendants appealed. *Id*. at *1. The Hotel contended that the paper was a corporation primarily engaged in the business of selling or leasing goods or services, and as a result, the TCPA's provision for "commercial speech" exempted the paper from protection. *Id*. at *14.

The court of appeals relied on precedent from the California Supreme Court as a guide for the issue of first impression. *Id*. (citing *Simpson Strong–Tie Co., Inc. v. Gore*, 230 P.3d 1117 (Cal. 2010)). California's anti-SLAPP statute's commercial speech exemption is similar, but not identical, to Texas's. *See id*. at *14. The Texas court borrowed the four-prong analysis that the California Supreme Court devised. *Id*. at *14–*15. To determine whether the exemption applies, courts should examine whether:

> (1) the cause of action is against a person primarily engaged in the business of selling or leasing goods or services;
>
> (2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services;
>
> (3) the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and
>
> (4) the intended audience for the statement or conduct [is an actual or potential buyer or customer].

No. 12-41243

*Id.* (alteration in original) (citing *Simpson*, 230 P.3d at 1129). The court also adopted *Simpson*'s determination that the statute put the burden of proving that the commercial speech exemption applies on the party asserting it. *Id.* at *15. As to the four prongs, the court stated it was undisputed that the newspaper was in the business of reporting community events. *Id.* But, the court went on, the stories the Hotel complained of did not arise out of the sale of the goods and services that the newspaper sells—newspapers. *Id.* Thus, the exemption did not apply to remove the TCPA's protection from the newspaper. *Id.* at *16.[7]

Because the Supreme Court of Texas has not yet interpreted the TCPA, we must make an *Erie* guess. *See Truong*, 717 F.3d at 381 ("When construing a state statute absent explicit state-court guidance, we must attempt to predict state law, not to create or modify it." (citation and internal quotation marks omitted)). Applying the *Crazy Hotel* analysis to the present case, the language in M&B's ads and website arose directly from the solicitation of the services it provides. The solicitation of a service or good is inherent in the sale of the service. Otherwise, there would be a mostly arbitrary distinction created. For example, statements made while fixing a customer's roof would be exempted, but statements made while convincing a customer to hire the roofer to fix the roof would not.

As cited above, for the commercial speech exemption to apply, the intended audience must be an actual or potential buyer or customer. The two other Texas intermediate state court cases addressing the commercial speech exemption

---

[7] The second intermediate Texas state case addressing whether a defendant's conduct arose from "sale or lease of goods, services, or an insurance product," Tex. Civ. Prac. & Rem. Code Ann. § 27.010(b), determined that a letter to a parole board from a client's attorney did not. *Pena v. Perel*, No. 08-12-00275-CV, 2013 WL 4604261, at *3 (Tex. App.—El Paso Aug. 28, 2013, no pet.).

dealt with the audience provision. Both concerned businesses upset with the ratings they received from the Better Business Bureau ("BBB"). *Better Bus. Bureau of Metro. Dallas, Inc. v. BH DFW, Inc*. 402 S.W.3d 299, 303–04 (Tex. App.—Dallas 2013, pet. filed)*; Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, No. 01–12–00990–CV, 2013 WL 3716693, at *1–*2 (Tex. App.—Houston [1st Dist.] July 16, 2013, pet. filed). Both held that the commercial speech exemption did not apply—so the BBB's speech was protected by the TCPA—because the BBB's intended audience was not an actual or potential buyer or customer, as required by the exemption. *BH DFW*, 402 S.W.3d at 309; *John Moore Servs.,* 2013 WL 3716693, at *5; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.010(b). The BBB sells its accrediting services to businesses; the actual and potential buyers or customers of the BBB's membership service are the accredited businesses, not the general public. *BH DFW,* 402 S.W.2d at 302. Because the intended audience of the business review was the general public, not a business customer seeking accreditation, the commercial speech exemption did not apply. *Id*. at 309. By contrast, M&B's intended audience is its potential customers—potential legal clients.

M&B argues that the California Supreme Court, interpreting a "similarly-worded exemption," held that the exemption "did not exempt attorney advertisements from the protections of the Anti-SLAPP law." But M&B neglects the fact that the California Supreme Court's holding rested on a clause in the California statute that is not present in Texas's anti-SLAPP statute. California's statute's commercial speech exemption requires that the speech "consists of representations of fact about that person's or a business competitor's business operations, goods, or services." Cal. Civ. Proc. Code § 425.17(c)(1). The California high court held that an attorney advertisement soliciting clients was

not such a representation of fact about his business operations, goods, or services, and thus was not within the commercial speech exemption. *Simpson*, 230 P.3d at 1129. Texas's commercial speech exemption contains no such limitation, making *Simpson*'s holding inapplicable. Ultimately, we conclude that the Supreme Court of Texas would most likely hold that M&B's ads and other client solicitation are exempted from the TCPA's protection because M&B's speech arose from the sale of services where the intended audience was an actual or potential customer. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.010(b).

## IV. CONCLUSION

For the reasons above, we AFFIRM the district court.

| | | |
|---|---|---|
| PAULA ANTU AS NEXT FRIEND OF ALEKSANDRA N. ESTRADA, A MINOR, et al | § § § § | IN THE DISTRICT COURT |
| PLAINTIFFS, | § § § | |
| V. | § § § | 370TH JUDICIAL DISTRICT |
| NCDR, LLC d/b/a KOOL SMILES, et al | § § § | |
| DEFENDANTS. | § | HIDALGO COUNTY, TEXAS |

## ORDER UPON PLAINTIFFS' MOTION TO COMPEL DISCOVERY (FIRST REQUEST FOR PRODUCTION) FROM DEFENDANT NCDR, LLC d/b/a KOOL SMILES

On this 17th day of June, 2013, came on to be considered Plaintiffs' Motion to Compel Discovery (First Request for Production) from Defendant NCDR, LLC d/b/a KOOL SMILES. Said Defendant and Plaintiffs appeared by and through their respective attorneys of record and the Court considered the motions, reviewed the pleadings on file, and heard and considered the arguments and agreements of counsel. Based upon the foregoing, the Court ORDERS as follows:

Request for Production Nos. 1 - 12: Defendant withdrew all objections.

Request for Production Nos. 25 - 48: Defendant withdrew all objections.

Request for Production Nos. 73 - 83: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections and will produce the responsive documents, if any, subject to entry of a Protective Order.

Request for Production Nos. 84 - 88: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections.

Request for Production No. 89:

Defendant's objections are OVERRULED.

Request for Production No. 90: Plaintiffs modified the request to delete the words "Kool Smiles, P.C.", "Kool Smiles Holding Company", and "Kool Smiles Acquisition Corporation". Defendant's objections are OVERRULED.

Request for Production No. 91: Plaintiffs modified the request to limit it to documents from the time period January 1, 2008 through December 31, 2012. Defendant will produce all organizational charts and the remaining objections shall be heard at a later date.

Request for Production No. 92:

Plaintiffs modified the request to limit it to documents from the time period January 1, 2008 through December 31, 2012. Defendant will produce organizational charts and the remaining objections shall be heard at a later date.

Request for Production No. 93:

Plaintiffs modified the request to limit it to documents from the time period January 1, 2008 through December 31, 2012 and to delete the word "all".

Request for Production No. 94: Plaintiffs modified the request to delete the word "employees" and replace the words "all Documents" with "a Document". Defendant withdrew all objections.

Request for Production No. 95: Plaintiffs modified the request to replace the words "all Documents" with "a Document".

Defendant's objections are OVERRULED.

Request for Production No. 96: Defendant withdrew all objections.

Request for Production No. 97: Defendant withdrew all objections.

Request for Production No. 98: Defendant withdrew all objections.

Request for Production No. 99: Plaintiffs modified the request to delete the word "all DOCUMENTS including". Defendant withdrew all objections except the objection ruled on below:

Defendant's objections are OVERRULED.

Request for Production No. 100: Plaintiffs modified the request to delete the word "all DOCUMENTS including". Defendant withdrew all objections except the objection ruled on below:

Defendant's objections are OVERRULED.

Request for Production No. 101: The Court's ruling on RFP DOB No. 145 shall be the same for RFP NCDR No. 101.

Request for Production No. 102: The Court's ruling on RFP DOB No. 138 shall be the same for RFP NCDR No. 102.

Request for Production No. 103: The Court's ruling on RFP DOB No. 139 shall be the same for RFP NCDR No. 103.

Request for Production No. 104: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections and will produce the responsive documents, if any, subject to entry of a Protective Order.

Request for Production Nos. 105 - 109: Plaintiffs modified the request to limit it to documents pertaining to the four Defendant dentists. Defendant withdrew all objections and will produce the responsive documents, if any, subject to entry of a Protective Order.

Request for Production No. 110: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics, the four Defendant dentists, dental assistants, and office managers. Defendant withdrew all objections.

Request for Production No. 111: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics, the four Defendant dentists, dental assistants, and office managers. Defendant withdrew all objections.

Request for Production No. 112: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics and the four Defendant dentists. Plaintiffs further modified the request to delete the words "community service personnel" and replace the words "all DOCUMENTS" with the word "DOCUMENTS". Defendant withdrew all objections.

Request for Production No. 113: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics and the four Defendant dentists. Plaintiffs further modified the request to delete the words "community service personnel". Defendant withdrew all objections.

Request for Production No. 114: Defendant withdrew all objections. The parties agreed to limit this request to the Professional Services Marketing Agreement and Marketing Agreement.

Request for Production No. 115: Plaintiffs modified the request to limit it to documents pertaining to the four Defendant dentists and their supervisors. Defendant withdrew all objections.

Request for Production No. 116: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics and deleted the words "DOCUMENTS

including". Defendant withdrew all objections.

Request for Production No. 117: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics and deleted the words "DOCUMENTS including". Defendant withdrew all objections.

Request for Production No. 118: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections except the objection ruled on below:

Defendant's objection that the requested discovery is not reasonably calculated to lead to the discovery of admissible evidence is OVERRULED.

Request for Production No. 119: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections.

Request for Production No. 120: Plaintiffs modified the request to limit it to documents which provide coverage for the claims and allegations in this lawsuit. Defendant withdrew all objections.

Request for Production No. 121: Plaintiffs modified the request to limit it to documents which provide coverage for the claims and allegations in this lawsuit. Defendant withdrew all objections.

Request for Production No. 122: Plaintiffs modified the request to delete the request for quotes and receipts for paid premiums. Defendant withdrew all objections.

Request for Production No. 123: Plaintiffs modified the request to delete the request for quotes and receipts for paid premiums. Defendant withdrew all objections.

Request for Production No. 124: Plaintiffs modified the request to delete the request for quotes and receipts for paid premiums. Defendant withdrew all objections.

Request for Production No. 125:

Defendant's objections are OVERRULED.

Request for Production No. 126:

Defendant's objections are OVERRULED.

Request for Production No. 127:

Defendant's objections are OVERRULED.

Request for Production No. 128:

Defendant's objections are SUSTAINED.

Request for Production No. 129:

Defendant's objections are SUSTAINED.

Request for Production No. 130: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections.

Request for Production No. 131: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections.

Request for Production No. 132: No hearing is requested at this time.

Request for Production No. 133: Defendant withdrew all objections and by agreement may redact the personal salary and health care information.

Request for Production No. 134: Defendant withdrew all objections and by agreement

may redact the personal salary and health care information.

Request for Production No. 135: Defendant withdrew all objections and by agreement may redact the personal salary and health care information.

Request for Production No. 136: Defendant withdrew all objections and by agreement may redact the personal salary and health care information.

Request for Production No. 137 - 144: Defendant withdrew all objections.

Request for Production No. 145: Defendant withdrew all objections.

Request for Production No. 146: Defendant withdrew all objections.

Request for Production No. 147: Defendant withdrew all objections.

Request for Production No. 148: Defendant withdrew all objections.

Request for Production No. 149: Defendant withdraws all objections except the objection ruled on below:

Defendant's peer review privilege is OVERRULED.

Request for Production No. 150: Defendant withdraws all objections except the objection ruled on below:

Defendant's peer review privilege is OVERRULED.

Request for Production No. 151: Defendant withdraws all objections except the objection ruled on below:

Defendant's peer review privilege is OVERRULED.

Request for Production No. 152: Defendant withdraws all objections except the objection ruled on below:

Defendant's peer review privilege is OVERRULED.

Request for Production No. 153: No hearing is requested at this time.

Request for Production No. 154: Defendant's objections are OVERRULED.

Request for Production No. 155: Defendant's objections are OVERRULED.

Request for Production No. 156 - 158: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections and will produce the responsive documents, if any, subject to entry of a Protective Order.

Request for Production No. 159: No hearing is requested at this time.

Request for Production No. 160: No hearing is requested at this time.

Request for Production No. 161: The Court's ruling on RFP DOB No. 122 shall be the same for RFP NCDR No. 161.

Request for Production No. 162: The Court's ruling on RFP DOB No. 123 shall be the same for RFP NCDR No. 162.

Request for Production No. 163: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections and will produce the responsive documents, if any, subject to entry of a Protective Order.

Request for Production No. 164: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections and will produce the responsive documents, if any, subject to entry of a Protective Order.

Request for Production No. 165: The Court's ruling on RFP DOB No. 126 shall be the same for RFP NCDR No. 165.

Request for Production No. 166: The Court's ruling on RFP DOB No. 127 shall be the same for RFP NCDR No. 166.

Request for Production No. 167: The Court's ruling on RFP DOB No. 128 shall be the same for RFP NCDR No. 167.

Request for Production No. 168: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics and the four Defendant dentists. Defendant withdrew all objections and will produce the responsive documents, if any, subject to entry of a Protective Order.

Request for Production No. 169: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections and will produce the responsive documents, if any, subject to entry of a Protective Order.

Request for Production No. 170: No hearing is requested at this time.

Request for Production No. 171: No hearing is requested at this time.

Request for Production No. 172: No hearing is requested at this time.

Request for Production No. 173: No hearing is requested at this time.

Request for Production No. 174: No hearing is requested at this time.

Request for Production No. 175: No hearing is requested at this time.

Request for Production No. 176: No hearing is requested at this time.

Request for Production No. 177: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections and will produce the responsive documents, if any, subject to entry of a Protective Order.

Request for Production No. 178: The Court's ruling on RFP DOB No. 155 shall be the same for RFP NCDR No. 178.

Request for Production No. 179: The Court's ruling on RFP DOB No. 156 shall be the

same for RFP NCDR No. 179.

Request for Production No. 180: The Court's ruling on RFP DOB No. 157 shall be the same for RFP NCDR No. 180.

Request for Production No. 181: The Court's ruling on RFP DOB No. 158 shall be the same for RFP NCDR No. 181.

Request for Production No. 182: The Court's ruling on RFP DOB No. 159 shall be the same for RFP NCDR No. 182.

Request for Production No. 183: The Court's ruling on RFP DOB No. 160 shall be the same for RFP NCDR No. 183.

Request for Production No. 184: The Court's ruling on RFP DOB No. 161 shall be the same for RFP NCDR No. 184.

Request for Production No. 185: The Court's ruling on RFP DOB No. 162 shall be the same for RFP NCDR No. 185.

Request for Production No. 186: The Court's ruling on RFP DOB No. 163 shall be the same for RFP NCDR No. 186.

Request for Production No. 187: The Court's ruling on RFP DOB No. 164 shall be the same for RFP NCDR No. 187.

Request for Production No. 188: The Court's ruling on RFP DOB No. 165 shall be the same for RFP NCDR No. 188.

Request for Production No. 189: The Court's ruling on RFP DOB No. 166 shall be the same for RFP NCDR No. 189.

Request for Production No. 190: The Court's ruling on RFP DOB No. 167 shall be the

same for RFP NCDR No. 190.

Request for Production Nos. 191 - 195: Defendant withdrew all objections.

Request for Production No. 196: Plaintiffs modified the request to limit it to all learned treatises and/or any professional literature, book, or periodical, which YOU consider authoritative on any issue in this case and on which YOU will rely on in trial. Defendant withdrew all objections.

Request for Production No. 197: The Court's ruling on RFP DOB 174 shall be the same for RFP NCDR 197.

Request for Production No. 198: Defendant withdrew all objections except the objection ruled on below:
Defendant's objection that the requested discovery is not reasonably calculated to lead to the discovery of admissible evidence is OVERRULED. The Court ordered that responsive documents be limited to the years 2009-2011.

Request for Production No. 199: The Court's ruling on RFP DOB No. 176 shall be the same for RFP NCDR No. 199.

Request for Production No. 200: Defendant withdrew all objections.

Request for Production No. 201: Defendant withdrew all objections.

Request for Production No. 202: Defendant withdrew all objections.

Request for Production No. 203: Defendant withdrew all objections.

It is further ORDERED that Defendant provide the Court with any and all subpoenas relating to Defendant for an in camera inspection. Said Defendant shall provide Plaintiffs with the copies of the documents to which objections are overruled on or before June 28, 2013.

SIGNED AND ENTERED on this ⟩⁴ day of July, 2013.

HONORABLE NOE GONZALEZ,
JUDGE PRESIDING

APPROVED AS TO FORM:

MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 401 South
San Antonio, Texas 78215
Telephone: 210.354.3377
Telecopier: 210.354.3909

By: _____
George W. Mauzé, II
State Bar No. 13238800
James Thomas Bagby, III
State Bar No. 24059409
ATTORNEYS FOR PLAINTIFFS

SEDGWICK, LLP
1717 Main Street, Suite 5400
Dallas, Texas 75201-7367
Telephone: 469.227.8200
Telecopier: 469.227.8004

By: _____
Wayne B. Mason
State Bar No. 13158950
Alan R. Vickery
State Bar No. 20571650
Cori C. Steinmann
State Bar No. 24046908
ATTORNEYS FOR DEFENDANTS

| | | |
|---|---|---|
| PAULA ANTU AS NEXT FRIEND OF ALEKSANDRA N. ESTRADA, A MINOR, et al | § § § § | IN THE DISTRICT COURT |
| PLAINTIFFS, | § § § | |
| V. | § | 370TH JUDICIAL DISTRICT |
| NCDR, LLC d/b/a KOOL SMILES, et al | § § § | |
| DEFENDANTS. | § § | HIDALGO COUNTY, TEXAS |

## ORDER UPON PLAINTIFFS' MOTION TO COMPEL DISCOVERY (FIRST REQUEST FOR PRODUCTION) FROM DEFENDANT DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES

On this 17th day of June, 2013, came on to be considered Plaintiffs' Motion to Compel Discovery (First Request for Production) from Defendant DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES. Said Defendant and Plaintiffs appeared by and through their respective attorneys of record and the Court considered the motions, reviewed the pleadings on file, and heard and considered the arguments and agreements of counsel. Based upon the foregoing, the Court ORDERS as follows:

Request for Production Nos. 1 - 12: Defendant withdrew all objections.

Request for Production Nos. 25 - 48: Defendant withdrew all objections.

Request for Production Nos. 49 - 60: Defendant incorporated the objections in request for production nos. 25 - 36 which Defendant withdrew.

Request for Production Nos. 73 - 87: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections and will produce the responsive documents, if any.

Request for Production No. 88: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics and deleted the words "community service personnel" and "community smile makers". Defendant withdrew all objections.

Request for Production No. 89: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics and deleted the words "community service personnel" and "community smile makers". Defendant withdrew all objections.

Request for Production No. 90: Plaintiffs modified the request to limit it to agreements and contracts pertaining to marketing, management, and financial operations of Dentistry of Brownsville, P.C. and/or Kool Smiles Dental Clinics from January 1, 2009 to December 31, 2011. Defendant withdrew all objections.

Request for Production No. 91: Plaintiffs modified the request to limit it to one document pertaining to the Mission and McAllen clinics. Defendant withdrew all objections and will produce the responsive documents, if any, subject to the entry of a Protective Order.

Request for Production No. 92: Plaintiffs modified the request to limit it to one document pertaining to the Mission and McAllen clinics. Defendant withdrew all objections and will produce the responsive documents, if any, subject to entry of a Protective Order.

Request for Production Nos. 93 - 96: Defendant withdrew all objections, except the peer review privilege ruled on below, and will produce the responsive documents, if any, subject to entry of a Protective Order.

Defendant's assertion of the peer review privilege is OVERRULED.

Request for Production No. 97: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics and to exclude "community service personnel"

"community smile makers". Defendant withdrew all objections.

Request for Production No. 98: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections except overly broad and that the requested discovery is not reasonably calculated to lead to the discovery of admissible evidence.

Defendant's overly broad objection is OVERRULED.

Defendant's objection that the requested discovery is not reasonably calculated to lead to the discovery of admissible evidence is OVERRULED.

Request for Production Nos. 99 - 101: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections and will produce the responsive documents, if any, subject to entry of a Protective Order.

Request for Production Nos. 102 – 103: Defendant reserved objections. No hearing is requested at this time.

Request for Production Nos. 104 - 108: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections.

Request for Production Nos. 109 - 112: Defendant withdrew all objections and will produce the responsive documents, if any, subject to entry of a Protective Order.

Request for Production No. 113: Defendant withdrew all objections and by agreement may redact the personal salary and health care information.

Request for Production No. 114: Defendant withdrew all objections and by agreement may redact the personal salary and health care information.

Request for Production No. 115: Defendant withdrew all objections and by agreement

may redact the personal salary and health care information.

Request for Production No. 116: Defendant withdrew all objections and by agreement may redact the personnel salary and health care information.

Request for Production No. 117: Defendant withdrew all objections.

Request for Production Nos. 118 - 121: Defendant withdrew all objections and will produce the responsive documents, if any, subject to entry of a Protective Order.

Request for Production No. 122: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections as to the four Defendant dentists.

Defendant's overly broad objection is OVERRULED.

Defendant's unduly burdensome objection is OVERRULED.

Defendant's objection that the requested discovery is not reasonably calculated to lead to the discovery of admissible evidence is OVERRULED.

Request for Production No. 123: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections as to the four Defendant dentists.

Defendant's overly broad objection is OVERRULED.

Defendant's unduly burdensome objection is OVERRULED.

Defendant's objection that the requested discovery is not reasonably calculated to lead to the discovery of admissible evidence is OVERRULED.

Request for Production No. 124: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections and will

produce the responsive documents, if any, subject to entry of a Protective Order.

Request for Production No. 125: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections and will produce the responsive documents, if any, subject to entry of a Protective Order.

Request for Production No. 126: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections except peer review privilege. Defendant is ORDERED to produce all responsive documents in camera to the Court to determine if they are privileged.

Request for Production No. 127: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections except the objection ruled on below:

Defendant's objection that the requested discovery is not reasonably calculated to lead to the discovery of admissible evidence is OVERRULED. The Court ordered Defendant to produce all responsive documents in camera to the Court to determine relevance.

Request for Production No. 128: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections except peer review privilege. Defendant is ORDERED to produce all responsive documents in camera to the Court to determine if they are privileged.

Request for Production No. 129: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics and the four Defendant dentists. Defendant withdrew all objections and will produce the responsive documents, if any, subject to entry of a Protective Order.

Request for Production No. 130: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections and will produce the responsive documents, if any, subject to entry of a Protective Order.

Request for Production No. 132: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections and will produce the responsive documents, if any.

Request for Production No. 133: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections.

Request for Production No. 134: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections except the objection ruled on below:

Defendant's objection that the requested discovery is not reasonably calculated to lead to the discovery of admissible evidence is OVERRULED.

Request for Production No. 135: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections.

Request for Production No. 136: Defendant withdrew all objections.

Request for Production No. 137: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections.

Request for Production No. 138: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections except the objection ruled on below:

Defendant's objection that the requested discovery is not reasonably calculated to lead to

the discovery of admissible evidence is OVERRULED.

Request for Production No. 139: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections except the objection ruled on below:

Defendant's objection that the requested discovery is not reasonably calculated to lead to the discovery of admissible evidence is OVERRULED.

Request for Production No. 140: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections.

Request for Production No. 141: Plaintiffs modified the request to limit it to documents filed with the Internal Revenue Service, excluding W-2s of dentists, dental assistants, office managers, and other persons working at the KOOL SMILES DENTAL CLINICS.
Defendant's objections are OVERRULED; provided that, Defendant will produce its IRS schedule to the Court to determine if the content of said document is sufficient to comply with this Request.

Request for Production No. 142: Plaintiffs modified the request to limit it to documents pertaining to Mission, and McAllen. Plaintiffs modified the request to limit the definition of service agreements to professional service agreements. Plaintiffs withdrew all objections.

Request for Production No. 143: Plaintiffs modified the request to limit it to documents pertaining to Mission, and McAllen. Plaintiffs modified the request to limit the definition of service agreements to professional service agreements. Plaintiffs withdrew all objections.

Request for Production No. 144: Plaintiffs modified the request to limit it to documents pertaining to Mission, and McAllen. Plaintiffs modified the request to limit the definition of

service agreements to professional service agreements. Plaintiffs withdrew all objections.

Request for Production No. 145:

Defendant's objections are OVERRULED.

Request for Production No. 146: No hearing is requested at this time.

Request for Production No. 147: No hearing is requested at this time.

Request for Production No. 148: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections.

Request for Production No. 149: Defendant withdrew all objections.

Request for Production No. 150: Defendant withdrew all objections.

Request for Production No. 151: Plaintiffs modified the request to limit it to documents pertaining to the four Defendant dentists. Defendant withdrew all objections.

Request for Production No. 152:

Defendant's objections are OVERRULED.

Request for Production No. 153: Plaintiffs modified the request to limit it to documents pertaining to the four Defendant dentists.

Defendant's objections are OVERRULED.

Request for Production No. 154:

Defendant's objections are SUSTAINED.

Request for Production No. 155:

Defendant's objections are SUSTAINED.

Request for Production No. 156:

Defendant's objections are SUSTAINED.

Request for Production No. 157: This request is limited to investigations by the Attorney General's Office of any state from 2009-2011.

Defendant's objections are OVERRULED.

Request for Production No. 158:

Defendant's objections are OVERRULED. The Court ORDERED that the responsive documents be limited to the years 2009 through 2011.

Request for Production No. 159:

Defendant's objections are OVERRULED. The Court ORDERED that the responsive documents be limited to investigations by state agencies for the years 2009 through 2011.

Request for Production No. 160:

Defendant's objections are OVERRULED. The Court ORDERED that the responsive documents be limited to the years 2009 through 2011.

Request for Production No. 161:

Defendant's objections are SUSTAINED.

Request for Production No. 162:

Defendant's objections are OVERRULED. The Court ORDERED that the responsive documents be limited to the years 2009 through 2011.

Request for Production No. 163:

Defendant's objections are SUSTAINED.

Request for Production No. 164:

Defendant's objections are OVERRULED. The Court ordered that the responsive documents be limited to the Mission and McAllen clinics.

Request for Production No. 165:

Defendant's objections are OVERRULED. The Court ordered that the responsive documents be limited to the Mission and McAllen clinics.

Request for Production No. 166:

Defendant's objections are OVERRULED. The Court ORDERED that the responsive documents be limited to the years 2009 through 2011.

Request for Production No. 167:

Defendant's objections are OVERRULED. The Court ORDERED that the responsive documents be limited to the years 2009 through 2011.

Request for Production Nos. 168 - 172: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections.

Request for Production No. 173: Plaintiffs modified the request to limit it to all learned treatises and/or any professional literature, book, or periodical, which YOU consider authoritative on any issue in this case and on which YOU will rely on in trial. Defendant withdrew all objections.

Request for Production No. 174: The Court ordered that this request be limited to information concerning the "modification of records".

Request for Production No. 175: Defendant withdrew all objections.

Request for Production No. 176:

Defendant's objections are OVERRULED.

Request for Production No. 177: Plaintiffs modified the request to limit it to actual complaints made, if any, for services provided in the Mission and McAllen clinics from 2009-

2009-2011. Defendant withdrew all objections.

Request for Production No. 178: Plaintiffs modified the request to limit it to actual complaints made, if any, for services provided in the Mission and McAllen clinics from 2009-2011. Defendant withdrew all objections.

Request for Production No. 179: Plaintiffs modified the request to limit it to actual complaints made, if any, for services provided in the Mission and McAllen clinics from 2009-2011. Defendant withdrew all objections.

Request for Production No. 180: Plaintiffs modified the request to limit it to actual complaints made, if any, for services provided in the Mission and McAllen clinics from 2009-2011. Defendant withdrew all objections.

Request for Production No. 181: Plaintiffs modified the request to limit it to actual complaints made, if any, for services provided in the Mission and McAllen clinics from 2009-2011. Defendant withdrew all objections.

Request for Production No. 182: Plaintiffs modified the request to limit it to actual complaints made, if any, for services provided in the Mission and McAllen clinics from 2009-2011. Defendant withdrew all objections.

Request for Production No. 183: Plaintiffs modified the request to limit it to actual complaints made, if any, for services provided in the Mission and McAllen clinics from 2009-2011. Defendant withdrew all objections.

Request for Production No. 184: Plaintiffs modified the request to limit it to actual complaints made, if any, for services provided in the Mission and McAllen clinics from 2009-2011. Defendant withdrew all objections.

Request for Production No. 185: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections.

Request for Production No. 186: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections.

Request for Production No. 187: Plaintiffs modified the request to limit it to documents pertaining to the Mission and McAllen clinics. Defendant withdrew all objections.

Request for Production No. 188: Defendant withdrew all objections.

Request for Production No. 190: Defendant withdrew all objections and will produce the responsive documents, if any, subject to entry of a Protective Order.

Request for Production No. 191: Defendant withdrew all objections.

It is further ORDERED that Defendant provide the Court with any and all subpoenas relating to Defendant for an in camera inspection. Said Defendant shall provide Plaintiffs with the copies of the documents to which objections are overruled on or before June 28, 2013.

SIGNED AND ENTERED on this 24 day of July, 2013.

_____
HONORABLE NOE GONZALEZ,
JUDGE PRESIDING

APPROVED AS TO FORM:

MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 401 South
San Antonio, Texas 78215
Telephone: 210.354.3377
Telecopier: 210.354.3909

By: _____
George W. Mauzé, II

State Bar No. 13238800
James Thomas Bagby, III
State Bar No. 24059409
ATTORNEYS FOR PLAINTIFFS

SEDGWICK, LLP
1717 Main Street, Suite 5400
Dallas, Texas 75201-7367
Telephone: 469.227.8200
Telecopier: 469.227.8004

By: _____

Wayne B. Mason
State Bar No. 13158950
Alan R. Vickery
State Bar No. 20571650
Cori C. Steinmann
State Bar No. 24046908
ATTORNEYS FOR DEFENDANTS

| | | |
|---|---|---|
| PAULA ANTU AS NEXT FRIEND OF ALEKSANDRA N. ESTRADA, A MINOR, et al | § § § § | IN THE DISTRICT COURT |
| PLAINTIFFS, | § § | |
| V. | § § § | 370TH JUDICIAL DISTRICT |
| NCDR, LLC d/b/a KOOL SMILES, et al | § § § | |
| DEFENDANTS. | § | HIDALGO COUNTY, TEXAS |

## ORDER UPON PLAINTIFFS' MOTION TO COMPEL DISCOVERY (FIRST REQUEST FOR PRODUCTION) FROM DEFENDANTS AISHWARYA K. CHANDESH, D.D.S., EDWARD HO, D.D.S., RICHARD I. MANWARING, D.D.S., AND MARC D. THOMAS, D.D.S.

On this 17th day of June, 2013, came on to be considered Plaintiffs' Motion to Compel Discovery (First Request for Production) from Defendants AISHWARYA K. CHANDESH, D.D.S., EDWARD HO, D.D.S., RICHARD I. MANWARING, D.D.S., and MARC D. THOMAS, D.D.S. Said Defendants and Plaintiffs appeared by and through their respective attorneys of record and the Court considered the motions, reviewed the pleadings on file, and heard and considered the arguments and agreements of counsel. Based upon the foregoing, the Court ORDERS as follows:

Request for Production No. 5: Defendants withdrew all objections.

Request for Production No. 6: Defendants withdrew all objections.

Request for Production No. 7: Plaintiffs modified the request to delete the word "all". Defendants withdrew all objections.

Request for Production No. 8: Plaintiffs modified the request to delete the word "all". Defendants withdrew all objections.

Request for Production No. 9: Defendants withdrew all objections.

Request for Production No. 10: Defendants withdrew all objections.

Request for Production Nos. 11 - 37: Plaintiffs modified the request to cover the period of January 1, 2009 to January 1, 2011. Defendants withdrew all objections.

Request for Production No. 38: Defendants withdrew all objections.

Request for Production No. 39: Defendants withdrew all objections.

Request for Production Nos. 40 - 41: Defendants withdrew all objections.

Request for Production Nos. 42: Plaintiffs modified the request for Defendants to produce the uniform/smock or a photograph of same. Defendants withdrew all objections.

Request for Production No. 43: Defendants withdrew all objections.

Request for Production No. 44: Plaintiffs modified the request to delete the words "any and all". Defendants withdrew all objections.

Request for Production No. 45: Defendants withdrew all objections.

Request for Production No. 46: Defendants withdrew all objections.

Request for Production No. 47: Defendants withdrew all objections.

Request for Production No. 48: Defendants withdrew all objections.

Request for Production No. 49: Defendants Drs. Chandesh, Manwaring, Ho, and Thomas withdrew all objections.

Request for Production No. 50: Defendants Drs. Chandesh, Manwaring, Ho, and Thomas withdrew all objections.

Request for Production No. 51: Defendants Drs. Chandesh, Manwaring, Ho, and Thomas withdrew all objections.

Request for Production No. 52: Defendants withdrew all objections.

Request for Production Nos. 53 - 59: Plaintiffs modified the request to cover the period of January 1, 2009 to January 1, 2011. Defendants withdrew all objections.

Request for Production No. 61: The Court's ruling on RFP DOB No. 154 shall be the same for RFP No. 61 to the Defendant dentists.

Request for Production Nos. 62 - 64: Defendants withdrew all objections.

Request for Production No. 65: The Court's ruling on RFP DOB No. 176 shall be the same for RFP No. 65 to the Defendant dentists.

Request for Production Nos. 67 - 69: Defendants withdrew all objections.

Said Defendants shall provide Plaintiffs with the copies of the documents to which objections are overruled on or before June 28, 2013.

SIGNED AND ENTERED on this $\underline{24}$ day of July, 2013.

_____
HONORABLE NOE GONZALEZ,
JUDGE PRESIDING

APPROVED AS TO FORM:

MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 401 South
San Antonio, Texas 78215
Telephone: 210.354.3377
Telecopier: 210.354.3909

By:_____
George W. Mauzé, II
State Bar No. 13238800
James Thomas Bagby, III
State Bar No. 24059409
ATTORNEYS FOR PLAINTIFFS

SEDGWICK, LLP
1717 Main Street, Suite 5400
Dallas, Texas 75201-7367
Telephone: 469.227.8200
Telecopier: 469.227.8004


By: _____

        Wayne B. Mason
        State Bar No. 13158950
        Alan R. Vickery
        State Bar No. 20571650
        Cori C. Steinmann
        State Bar No. 24046908
        ATTORNEYS FOR DEFENDANTS



# Laura Hinojosa
## Hidalgo County District Clerk
PO Box 87, Edinburg, Texas 78540

*phone:* 956. 318. 2200 • *fax:* 956. 318. 2251

districtclerk@co.hidalgo.tx.us • www.co.hidalgo.tx.us/districtclerk

## Fax Cover Sheet

*Important: This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you receive the communication in error, please notify us immediately by telephone and destroy this message and its attachments. Thank you.*

**Please deliver the following pages to:**

Name:       DALIA

Fax No:     919563834304

Date:       12/2/2013 3:58:42 PM

Sent By:

Total No of Pages *(including cover sheet)*: 6

Message:_____

_____

*Please call to confirm information has been received. Thank you for your prompt attention to this matter. If you have any questions or require additional information do not hesitate to call.*



FILE NO: 12574

FILE      IN....      FOLDER

RDG    DATE:      SEC DR
PS              SEC CO
EMG          SEC
YF      DEC 0 2 2013    SEC
JC              SEC

COMMENTS:

Electronically Filed
11/27/2013 8:26:50 AM
Hidalgo County District Clerks
Reviewed By: Andres Garcia

CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU AS NEXT FRIEND OF ALEKSANDRA N. ESTRADA, A MINOR, et al | § § § § | IN THE DISTRICT COURT |
| PLAINTIFFS, | § § | |
| V. | § § | 370TH JUDICIAL DISTRICT |
| NCDR, LLC d/b/a KOOL SMILES, et al | § § | |
| DEFENDANTS. | § | HIDALGO COUNTY, TEXAS |

## ORDER UPON PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS AGAINST DEFENDANT NCDR, L.L.C. d/b/a KOOL SMILES

On this 22nd day of August, 2013 and 3rd day of September, 2013 came on to be considered Plaintiffs' Motion to Compel and for Sanctions against Defendant NCDR, LLC d/b/a KOOL SMILES. Said Defendant and Plaintiffs appeared by and through their respective attorneys of record and the Court considered the motion, heard and considered the arguments of counsel, and on August 22, 2013, ordered Defendant to search for documents titled "Doctor Procedure Reports", "Office Scorecard – Medicaid Children", "Expanded Services Reports", and "Performance Improvement Plans" for the years 2009-2011 and documents in response to Plaintiffs' request for production numbers 161-164 to NCDR, L.L.C (hereinafter referred to as "NCDR") and number 130 to Dentistry of Brownsville, P.C. On September 3, 2013 Defendant Dentistry of Brownsville, P.C. appeared by and through its attorneys of record and produced a hard drive containing approximately 427,000 pages (3,802 documents) containing documents titled "Doctor Procedure Reports", "Office Scorecard – Medicaid Children", "Expanded Services Reports", and "Performance Improvement Plans" for the years 2009-2011 redacted to

Electronically Filed
11/27/2013 8:26:50 AM
Hidalgo County District Clerks
Reviewed By: Andres Garcia

only include data related to the Mission and McAllen clinics.   Upon request from Defendant's counsel to the Court, said hard drive was returned to Defendant.   The documents contained thereon were ordered by the Court to be produced in accordance with this Order.   The Court considered the motion, heard and considered the arguments of counsel, and, based upon the foregoing, Plaintiffs' Motion to Compel shall be, and is hereby, GRANTED, in part, and DENIED, in part, as specified below.   It is therefore,

ORDERED that Plaintiffs' Motion to Compel in regards to Request for Production No. 96 to NCDR is GRANTED and Defendant shall produce un-redacted, true, correct, and complete copies of the Practice Management Service Agreement and the Practice Marketing Agreement and all exhibits to said documents limited to the 2009-2011 time period.   It is further,

ORDERED that Plaintiffs' Motion to Compel in regards to Request for Production No. 99 to NCDR was moot at the time of the hearing because Defendant produced copies of NCDR meeting minutes redacted to include only information that pertained to NCDR's services provided to Dentistry of Brownsville, P.C. and/or Kool Smiles Dental Clinics in Mission and McAllen from January 1, 2009 to December 31, 2011.   It is further,

ORDERED that Plaintiffs' Motion to Compel in regards to Request for Production No. 100 to NCDR was moot at the time of the hearing because Defendant produced copies of NCDR meeting minutes redacted to include only information that pertained to the production or revenue goals or actual production or revenue of Dentistry of Brownsville, P.C. and/or Kool Smiles Dental Clinics in Mission and McAllen from January 1, 2009 to December 31, 2011.   It is further,

ORDERED that Plaintiffs' Motion to Compel in regards to Request for Production No.

Electronically Filed
11/27/2013 8:26:50 AM
Hidalgo County District Clerks
Reviewed By: Andres Garcia

102 to NCDR is GRANTED and Defendant shall produce un-redacted, true, correct, and complete copies of the Mission and McAllen Sublease and Master Lease and all exhibits to said documents limited to the 2009-2011 time period. It is further,

ORDERED that Plaintiffs' Motion to Compel in regards to Request for Production No. 161 to NCDR is GRANTED and Defendant shall produce all documents titled "Doctor Procedure Reports" for 2009-2011, redacted to only include the available titles, headings, and other row and column identifying information, and data related to the Mission and McAllen clinics. It is further,

ORDERED that Plaintiffs' Motion to Compel in regards to Request for Production No. 162 to NCDR is GRANTED and Defendant shall produce all documents titled "Doctor Procedure Reports" for 2009-2011, redacted to only include the titles, headings, and other row and column identifying information, and data related to the doctors who worked at the Mission and McAllen clinics. It is further,

ORDERED that Plaintiffs' Motion to Compel in regards to Request for Production No. 163 to NCDR is GRANTED and Defendant shall produce all documents titled "Office Scorecard - Medicaid Children" for 2009-2011, redacted to only include the available titles, headings, and other row and column identifying information, and data related to the Mission and McAllen clinics. It is further,

ORDERED that Plaintiffs' Motion to Compel in regards to Request for Production No. 164 to NCDR is GRANTED and Defendant shall produce all documents titled "Expanded Service Reports" for 2009-2011, redacted to only include the titles, headings, and other row and column identifying information, and data related to the Mission and McAllen clinics. It is

Electronically Filed
11/27/2013 8:26:50 AM
Hidalgo County District Clerks
Reviewed By: Andres Garcia

further,

ORDERED that Plaintiffs' Motion to Compel in regards to Request for Production No. 189 to NCDR is GRANTED and Defendant shall produce all communications and documents reflecting inquiries made pertaining to Kool Smiles, P.C., NCDR, L.L.C. d/b/a Kool Smiles, Dentistry of Brownsville, P.C. d/b/a Kool Smiles and their respective directors, members, officers, shareholders, employees, and agents from all state governmental agencies and departments, the United States Senate or any of its members, the United States Congress or any of its members limited to the 2009-2011 time period and the Court's prior ruling on Plaintiffs' First Request for Production Nos. 178 and 179. It is further,

ORDERED that Plaintiffs' Motion to Compel in regards to Request for Production No. 199 to NCDR is GRANTED and Defendant shall produce a responsive document. It is further,

ORDERED that Defendant shall identify by bates-stamped number the documents previously produced to correspond with the specific request for production to which they are responsive. It is further,

ORDERED that Defendant shall organize and identify by bates-stamped number the documents produced pursuant to this order to correspond with the specific request for production to which they are responsive. It is further,

ORDERED that if Defendant produced documents not responsive to a specific request, Defendant shall organize and identify by bates-stamped number the documents that were produced. It is further,

ORDERED that Defendant shall produce the documents to Plaintiffs' counsel on or before November 18, 2013. It is further,

¡Electronically Filed
.11/27/2013 8:26:50 AM
Hidalgo County District Clerks
Reviewed By: Andres Garcia

ORDERED that Plaintiffs' Motion for Sanctions is DENIED.

SIGNED AND ENTERED on this 27th day of November 2013.

_____
HONORABLE NOE GONZALEZ,
JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 401 South
San Antonio, Texas 78215
Telephone: 210.354.3377
Telecopier: 210.354.3909

By: _____
George W. Mauzé, II
State Bar No. 13238800
James Thomas Bagby, III
State Bar No. 24059409
ATTORNEYS FOR PLAINTIFFS

SEDGWICK, LLP
1717 Main Street, Suite 5400
Dallas, Texas 75201-7367
Telephone: 469.227.8200
Telecopier: 469.227.8004

By: _____
Wayne B. Mason
State Bar No. 13158950
Alan R. Vickery
State Bar No. 20571650
Cori C. Steinmann
State Bar No. 24046908
ATTORNEYS FOR DEFENDANTS

T:\Cases\Kool Smiles.1201\Pleadings\McAllen (Hidalgo)\O-(2nd) M-Compel Disc w-Sanctions - NCDR-FINAL.docx          Page 5





# Laura Hinojosa
## Hidalgo County District Clerk
P.O Box 87, Edinburg, Texas 78540
*phone*: 956. 318. 2200 • *fax*: 956. 318. 2251
districtclerk@co.hidalgo.tx.us • www.co.hidalgo.tx.us/districtclerk

## Fax Cover Sheet

*Important: This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you receive the communication in error, please notify us immediately by telephone and destroy this message and its attachments. Thank you.*

**Please deliver the following pages to:**

Name:        DALIA

Fax No:      919563834304

Date:        12/2/2013 3:58:22 PM

Sent By:

Total No of Pages (*including cover sheet*): 8

Message:

*Please call to confirm information has been received. Thank you for your prompt attention to this matter. If you have any questions or require additional information do not hesitate to call.*



FILE NO: 12574

| FILE | IN___ | FOLDER |
|---|---|---|
| RDG | DATE: | SEC |
| RS | | SEC |
| EMG | | SEC |
| YF | DEC 0 2 2013 | SEC |
| JC | | SEC |
| | COMMENTS: | |

Electronically Filed
11/27/2013 8:23:36 AM
Hidalgo County District Clerks
Reviewed By: Andres Garcia

CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU AS NEXT FRIEND OF | § | IN THE DISTRICT COURT |
| ALEKSANDRA N. ESTRADA, A | § | |
| MINOR, et al | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | 370TH JUDICIAL DISTRICT |
| | § | |
| NCDR, LLC d/b/a KOOL SMILES, et al | § | |
| | § | |
| DEFENDANTS. | § | HIDALGO COUNTY, TEXAS |

## ORDER UPON PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS AGAINST DEFENDANT DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES

On this 22nd day of August, 2013 and 3rd day of September, 2013 came on to be considered Plaintiffs' Motion to Compel and for Sanctions against Defendant Dentistry of Brownsville, P.C. Said Defendant and Plaintiffs appeared by and through their respective attorneys of record and the Court considered the motion, heard and considered the arguments of counsel, and on August 22, 2013, ordered Defendant to search for documents titled "Doctor Procedure Reports", "Office Scorecard – Medicaid Children", "Expanded Services Reports", and "Performance Improvement Plans" for the years 2009-2011 and documents in response to Plaintiffs' request for production numbers 161-164 to NCDR, L.L.C and number 130 to Dentistry of Brownsville, P.C (hereinafter referred to as "DOB"). On September 3, 2013, said Defendant appeared by and through its attorneys of record and produced a hard drive containing approximately 427,000 pages (3,802 documents) containing documents titled "Doctor Procedure Reports", "Office Scorecard – Medicaid Children", "Expanded Services Reports", and "Performance Improvement Plans" for the years 2009-2011 redacted to only include data related to the Mission and McAllen clinics. Upon request from Defendant's counsel to the Court, said

T:\Cases\Kool Smiles.1201\Pleadings\McAllen (Hidalgo)\O-(2nd) M-Compel Disc w-Sanctions - DB-v.5.docx          Page 1

Electronically Filed
11/27/2013 8:23:36 AM
Hidalgo County District Clerks
Reviewed By: Andres Garcia

hard drive was returned to Defendant. The documents contained thereon were ordered by the Court to be produced in accordance with this Order. The Court considered the motion, heard and considered the arguments of counsel, and, based upon the foregoing, Plaintiffs' Motion to Compel shall be, and is hereby, GRANTED in part and DENIED in part as specified below. It is therefore,

ORDERED that Plaintiffs' Motion to Compel in regards to Request for Production No. 90 to DOB is GRANTED and Defendant shall produce un-redacted, true, correct, and complete copies of the Management Service Agreement and the Practice Marketing Agreement and all exhibits to said documents limited to the 2009-2011 time period. It is further,

ORDERED that Plaintiffs' Motion to Compel in regards to Request for Production Nos. 113 - 116 to DOB are GRANTED and Defendant shall produce true, correct, and complete copies of the personnel files redacting only salary (not including bonus payment amounts and/or penalties), driver's license numbers, personal bank account information, and social security numbers, and private medical information. It is further,

ORDERED that Plaintiffs' Motion to Compel in regards to Request for Production No. 122 to DOB is GRANTED and Defendant shall produce all documents titled "Doctor Procedure Reports" for 2009-2011, redacted to only include the available titles, headings, and other row and column identifying information, and data related to the Mission and McAllen clinics. It is further,

ORDERED that Plaintiffs' Motion to Compel in regards to Request for Production No. 123 to DOB is GRANTED and Defendant shall produce all documents titled "Doctor Procedure Reports" for 2009-2011, redacted to only include the available titles, headings, and other row

Electronically Filed
11/27/2013 8:23:36 AM
Hidalgo County District Clerks
Reviewed By: Andres Garcia

and column identifying information, and data related to the doctors who worked at the Mission and McAllen clinics. It is further,

ORDERED that Plaintiffs' Motion to Compel in regards to Request for Production No. 124 to DOB is GRANTED and Defendant shall produce all documents titled "Office Scorecard - Medicaid Children" for 2009-2011, redacted to only include the available titles, headings, and other row and column identifying information, and data related to the Mission and McAllen clinics. It is further,

ORDERED that Plaintiffs' Motion to Compel in regards to Request for Production No. 125 to DOB is GRANTED and Defendant shall produce all documents titled "Expanded Service Reports" for 2009-2011, redacted to only include the available titles, headings, and other row and column identifying information, and data related to the Mission and McAllen clinics. It is further,

ORDERED that Plaintiffs' Motion to Compel documents titled "Performance Improvement Plans" for 2009-2011 is GRANTED and Defendant shall produce all true, correct, and complete copies of the "Performance Improvement Plans" for 2009-2011 regarding dentists who worked in the Mission and/or McAllen clinic; provided that for purposes of Defendants' timely production of said documents, the parties agree that Defendant may redact the dentists' names, other than the four Defendant dentists and their 4 supervisors, Norma Herrera, DDS, Jimmie Schmidt, DDS, and Matthew Berg, DDS, from the "Performance Improvement Plans", and Plaintiffs may later move to compel un-redacted copies of the "Performance Improvement Plans" from the Court. It is further,

ORDERED that Plaintiffs' Motion to Compel in regards to Request for Production No.

Electronically Filed
11/27/2013 8:23:36 AM
Hidalgo County District Clerks
Reviewed By: Andres Garcia

136 to DOB is GRANTED and Defendant shall produce un-redacted, true, correct, and complete copies of the responsive documents and all exhibits to said documents. Plaintiffs and Defendants have agreed that Defendant may withhold the Management Services Agreement between NCDR, L.L.C. and Dr. Tu M. Tran listed as Exhibit D in the document titled "ACTION BY UNANIMOUS WRITTEN CONSENT OF THE BOARD OF DIRECTORS OF DENTISTRY OF BROWNSVILLE, PC IN LIEU OF FIRST MEETING" pending a ruling on Defendant's Motion for Relief with respect to this document, which Defendant agrees to file with the Court within 3 days of the execution of this Order. It is further,

ORDERED that Plaintiffs' Motion to Compel in regards to Request for Production No. 138 to DOB is GRANTED and Defendant shall produce un-redacted, true, correct, and complete copies of the Mission and McAllen Sublease and Master Lease and all exhibits to said documents limited to the 2009-2011 time period. It is further,

ORDERED that Plaintiffs' Motion to Compel in regards to Request for Production No. 142 to DOB is GRANTED and Defendant shall produce un-redacted, true, correct, and complete copies of all responsive documents, including, the Professional Service Agreement between Tu Tran, DDS and Kool Smiles, P.C. with all exhibits within the possession, custody or control of DOB and the Stock Purchase Agreement with all exhibits within the possession, custody or control of DOB. Defendant shall allow Plaintiffs to inspect the original Professional Service Agreement between Tu Tran. DDS and Kool Smiles, P.C. with all exhibits that is in the possession, custody, or control of Defendant at the next hearing or deposition. It is further,

ORDERED that Plaintiffs' Motion to Compel in regards to Request for Production No. 149 to DOB is GRANTED and Defendant shall produce all professional liability policies in which DOB, the Mission and/or McAllen Kool Smiles dental clinics, and/or dentists who worked

Electronically Filed
11/27/2013 8:23:36 AM
Hidalgo County District Clerks
Reviewed By: Andres Garcia

at the Mission and/or McAllen Kool Smiles dental clinics have been, or are presently, a named insured or additional insured limited to 2009 to 2011 time period. It is further,

ORDERED that Plaintiffs' Motion to Compel in regards to Request for Production No. 150 to DOB is GRANTED and Defendant shall produce all commercial general liability policies in which DOB and/or the Mission and/or McAllen Kool Smiles dental clinics has been, or is presently, a named insured or additional insured limited to 2009 to 2011 time period. It is further,

ORDERED that Plaintiffs' Motion to Compel in regards to Request for Production No. 151 to DOB is GRANTED and Defendant shall produce all documents including, but not limited to, professional liability insurance policies procured or paid for by NCDR, Kool Smiles, P.C. and/or any other person (as the term is defined in Plaintiffs' First Request for Production to DOB) which provided professional liability coverage for DOB and/or the four defendant dentists limited to 2009 to 2011 time period. It is further,

ORDERED that Plaintiffs' Motion to Compel in regards to Request for Production No. 176 to DOB is GRANTED and Defendant shall produce a responsive document. It is further,

ORDERED that Defendant shall identify by bates-stamped number the documents previously produced to correspond with the specific request for production to which they are responsive. It is further,

ORDERED that Defendant shall organize and identify by bates-stamped number the documents produced pursuant to this order to correspond with the specific request for production to which they are responsive. It is further,

ORDERED that if Defendant produced documents not responsive to a specific request,

Electronically Filed
11/27/2013 8:23:36 AM
Hidalgo County District Clerks
Reviewed By: Andres Garcia

Defendant shall organize and identify by bates-stamped number the documents that were produced. It is further,

ORDERED that Defendant shall produce the documents to Plaintiffs' counsel on or before November 18, 2013. It is further,

ORDERED that Plaintiffs' Motion for Sanctions is DENIED.

SIGNED AND ENTERED on this 27th day of November, 2013.

_____
HONORABLE NOE GONZALEZ,
JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 401 South
San Antonio, Texas 78215
Telephone: 210.354.3377
Telecopier: 210.354.3909

By:_____
     George W. Mauzé, IV
     State Bar No. 13238800
     James Thomas Bagby, III
     State Bar No. 24059409
     ATTORNEYS FOR PLAINTIFFS

SEDGWICK, LLP
1717 Main Street, Suite 5400
Dallas, Texas 75201-7367
Telephone: 469.227.8200
Telecopier: 469.227.8004

By:_____
     Wayne B. Mason
     State Bar No. 13158950

Electronically Filed
11/27/2013 8:23:36 AM
Hidalgo County District Clerks
Reviewed By: Andres Garcia

Alan R. Vickery
State Bar No. 20571650
Cori C. Steinmann
State Bar No. 24046908
ATTORNEYS FOR DEFENDANTS

CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU AS NEXT FRIEND OF ALEKSANDRA N. ESTRADA, A MINOR, et al | § § § | IN THE DISTRICT COURT |
| | § | |
| PLAINTIFFS, | § § | |
| | § | |
| V. | § | 370TH JUDICIAL DISTRICT |
| | § | |
| NCDR, LLC d/b/a KOOL SMILES, et al | § § | |
| | § | |
| DEFENDANTS. | § | HIDALGO COUNTY, TEXAS |

**PLAINTIFFS' AMENDED THIRD MOTION TO COMPEL
AGAINST DEFENDANT NCDR, LLC d/b/a KOOL SMILES**

TO THE HONORABLE NOE GONZALEZ, JUDGE PRESIDING:

COME NOW Plaintiffs PAULA ANTU AS NEXT FRIEND OF ALEKSANDRA N. ESTRADA, A MINOR; SCARLETT AYALA AS NEXT FRIEND OF XANDER URESTI, A MINOR; GUADALUPE CEPEDA AS NEXT FRIEND OF ORLANDO CANO, A MINOR; ANA LAURA CORNEJO AS NEXT FRIEND OF JUAN CARLOS CORNEJO, A MINOR; MARIO CUELLAR AND PRISCILLA TRUJILLO AS NEXT FRIENDS OF ABDON CUELLAR, A MINOR; MARIA GAYTÁN AS NEXT FRIEND OF FRANCISCO TEJADA, JR., A MINOR; ELIZABETH GONZALEZ AND MARCO REYES AS NEXT FRIENDS OF KATHERINE REYES, A MINOR; FRANCISCA GUZMAN AS NEXT FRIEND OF AMY GUZMAN, A MINOR; ISMAEL MALDONADO AND ISABEL MALDONADO AS NEXT FRIENDS OF JOHANA MALDONADO, A MINOR; FREISI OLIVAR AS NEXT FRIEND OF ADAM SALDAÑA, II, A MINOR; MARY ROSALES AS NEXT FRIEND OF DESTINY MORAN, A MINOR; AND REYNOL SALINAS AS NEXT FRIEND OF REYNOL SALINAS, JR., A MINOR, (hereinafter collectively referred to as "Plaintiffs") and file this, Plaintiffs' Amended Third Motion to Compel Against Defendant NCDR, LLC d/b/a Kool Smiles (hereinafter referred to as "Defendant"). In support of same, Plaintiffs would show unto this

Honorable Court as follows:

# I.
# PROCEDURAL BACKGROUND

On May 16, 2013, Plaintiffs filed a motion to compel discovery from Defendant. Said motion was heard on June 10th, 17th & 20th. Pursuant to the Court's rulings, Defendant was required to produce documents to which its objections were overruled on or before June 28, 2013. Defendant failed to comply with the Court's order insofar as it did not produce any responsive documents to Plaintiffs' counsel until July 1, 2013 and concurrently filed a Motion for Protection and for Additional Relief on June 28, 2013 requesting this Court to grant it an extension of time of two (2) weeks, such being July 12, 2013 to fully comply with the Court's order. On July 15, 2013 Defendant delivered some responsive documents to Plaintiffs' counsel's office. On July 30, 2013 Plaintiffs filed a second motion to compel discovery from Defendant. Said motion was heard on August 22nd and September 3rd. Pursuant to the Court's rulings, Defendant was required to produce documents to which its objections were overruled on or before November 18, 2013. After review of the additional responsive documents to Plaintiffs' First Request for Production, it is obvious that Defendant has continued to fail and refuse to produce the documents this Court ordered it to produce. (*See*, Defendant NCDR, LLC's Sixth Amended Objections and Responses to Plaintiffs' First Request for Production, filed with Plaintiffs' Third Motion to Compel Against NCDR, LLC d/b/a Kool Smiles).

Additionally, Defendant redacted information from some of the documents produced, such contrary to the request for true, correct, and complete copies of the responsive documents. Furthermore, said Defendant has failed to produce copies of some responsive documents, and failed to produce complete copies of some responsive documents by failing to produce exhibits

and attachments to the documents. Further, upon information and belief Defendant produced documents that were not organized and/or produced as they were kept in the ordinary course of business. Moreover, many of the produced documents were not segregated and labeled according to each particular request.

II.
## ABUSE OF THE DISCOVERY PROCESS

The specific discovery requests and orders not complied with by Defendant are as follows:

1. RFP. Nos. 25-36. The Smart Scheduling scores were not provided with the Plaintiffs' records.

2. RFP No. 89. Based upon information and belief this response is incomplete because it does not include the all Persons who had ownership interest in NCDR from 1/1/09 to present.

3. RFP No. 92. Based upon information and belief this response is incomplete. NCDR, LLC failed to provide documents relating to Persons who received any financial distributions, including dividends and profits, from NCDR, LLC.

4. RFP No. 95. Based upon information and belief this response is incomplete.

5. RFP No. 101. The Court did not order that this request be limited to the Professional Management Services Agreement. Defendant refused to produce documents responsive to this request.

6. RFP Nos. 106, 111 & 112. The TRCP requires that you produce actual documents and not point Plaintiffs to a website.

7. RFP No. 118. Based upon information and belief this response is incomplete.

8. RFP No. 119. Based upon information and belief this response is incomplete.

9. RFP No. 130. This request calls for information that is within NCDR's possession, custody, or control. Defendant refused to produce documents responsive to this request.

10. RFP No. 131. This request calls for information that is within NCDR's possession, custody, or control. Defendant refused to produce documents responsive to this request.

11.     RFP Nos. 137-140. Based upon information and belief these responses are incomplete.

12.     RFP No. 177. Based upon information and belief this response is incomplete.

13.     RFP No. 182. The Court overruled Defendant's objections; however, Defendant continues to assert the same objections in response to said request.

14.     RFP No. 187. The Court overruled Defendant's objections; however, Defendant continues to assert the same objections in response to said request.

15.     RFP No. 200. Defendant refused to produce documents responsive to this request.

16.     RFP No. 182. Redactions to KSL 473622, KSL 473623-31, KSL 473663 & 473666 & 473669 & 473672.

## III.
## CERTIFICATE OF CONFERENCE

Plaintiffs' counsel sent Defendant's counsel a letter dated August 12, 2014 listing the above stated issues with Defendant's responses and objections to Plaintiffs' First Request for Production. As of the date of filing this motion, Defendant's Counsel did not respond with a time to confer regarding the same. In addition, Plaintiffs' counsel sent Defendant's counsel a letter dated January 14, 2014 again listing the above stated issues with Defendant's responses and objection to Plaintiffs' First Request for Production. As of the date of filing this motion, the parties have not yet had an opportunity to confer on the substance of this motion, but do intend to again attempt to confer prior to the hearing of this motion on a date mutually convenient for the parties.

## IV.
## RELIEF SOUGHT

WHEREFORE PREMISES CONSIDERED, Plaintiffs respectfully pray that the Court set this motion for hearing, and upon hearing, overrule the objections of Defendant NCDR d/b/a Kool Smiles to Plaintiffs' First Request For Production, grant Plaintiffs' Plaintiffs' Motion To

Electronically Filed
1/15/2015 9:18:44 AM
Hidalgo County District Clerks
Reviewed By: Kim Hinojosa

Compel and compel said Defendant to produce responsive documents to said requests within ten (10) days after the hearing on this motion. Plaintiffs further pray for such other and further relief to which they may be entitled.

Respectfully submitted,

MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 401 South
San Antonio, Texas 78215
Telephone: 210.354.3377
Telecopier: 210.354.3909

By: _____
George W. Mauzé, II
State Bar No. 13238800
Tom Bagby
State Bar No. 24059409

GUERRA, LEEDS, SABO &
HERNANDEZ, PLLC
10213 N. 10th St.
McAllen, Texas 78504
Telephone: 956.383.4300
Telecopier: 956.383.4304

By:    R.D. "Bobby" Guerra
State Bar No. 08578640

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of PLAINTIFFS' AMENDED THIRD MOTION TO COMPEL AGAINST DEFENDANT NCDR, LLC d/b/a KOOL SMILES has been sent by via fax and certified mail, return receipt requested, to Mr. Wayne B. Mason, Esq., Mr. Alan Vickery, Esq., & Ms. Cori C. Steinmann, Esq., Sedgwick LLP, 1717 Main Street, Suite 5400, Dallas, Texas 75201-7367, and Mr. Eduardo R. Rodriguez, Esq., Atlas, Hall & Rodriguez, L.L.P., 50 W. Morrison Road, Suite A, Brownsville, TX 78520 on this 15 day of January, 2015.

_____
Tom Bagby

CAUSE NO. C-0184-13-G

| | | |
|---|---|---|
| PAULA ANTU AS NEXT FRIEND OF | § | IN THE DISTRICT COURT |
| ALEKSANDRA N. ESTRADA, A | § | |
| MINOR, et al | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | 370TH JUDICIAL DISTRICT |
| | § | |
| NCDR, LLC d/b/a KOOL SMILES, et al | § | |
| | § | |
| DEFENDANTS. | § | HIDALGO COUNTY, TEXAS |

**PLAINTIFFS' AMENDED THIRD MOTION TO COMPEL
AGAINST DEFENDANT DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES**

TO THE HONORABLE NOE GONZALEZ, JUDGE PRESIDING:

COME NOW Plaintiffs PAULA ANTU AS NEXT FRIEND OF ALEKSANDRA N.

ESTRADA, A MINOR; SCARLETT AYALA AS NEXT FRIEND OF XANDER URESTI, A

MINOR; GUADALUPE CEPEDA AS NEXT FRIEND OF ORLANDO CANO, A MINOR;

ANA LAURA CORNEJO AS NEXT FRIEND OF JUAN CARLOS CORNEJO, A MINOR;

MARIO CUELLAR AND PRISCILLA TRUJILLO AS NEXT FRIENDS OF ABDON

CUELLAR, A MINOR; MARIA GAYTÁN AS NEXT FRIEND OF FRANCISCO TEJADA,

JR., A MINOR; ELIZABETH GONZALEZ AND MARCO REYES AS NEXT FRIENDS OF

KATHERINE REYES, A MINOR; FRANCISCA GUZMAN AS NEXT FRIEND OF AMY

GUZMAN, A MINOR; ISMAEL MALDONADO AND ISABEL MALDONADO AS NEXT

FRIENDS OF JOHANA MALDONADO, A MINOR; FREISI OLIVAR AS NEXT FRIEND

OF ADAM SALDAÑA, II, A MINOR; MARY ROSALES AS NEXT FRIEND OF DESTINY

MORAN, A MINOR; AND REYNOL SALINAS AS NEXT FRIEND OF REYNOL SALINAS,

JR., A MINOR, (hereinafter collectively referred to as "Plaintiffs") and file this, Plaintiffs'

Amended Third Motion to Compel Against Defendant Dentistry of Brownsville, P.C. d/b/a Kool

Smiles (hereinafter referred to as "Defendant"). In support of same, Plaintiffs would show unto

this Honorable Court as follows:

## I.
## PROCEDURAL BACKGROUND

On May 16, 2013, Plaintiffs filed a motion to compel discovery from Defendant. Said motion was heard on June 10th, 17th & 20th. Pursuant to the Court's rulings, Defendant was required to produce documents to which its objections were overruled on or before June 28, 2013. Defendant failed to comply with the Court's order insofar as it did not produce any responsive documents to Plaintiffs' counsel until July 1, 2013 and concurrently filed a Motion for Protection and for Additional Relief on June 28, 2013 requesting this Court to grant it an extension of time of two (2) weeks, such being July 12, 2013 to fully comply with the Court's order. On July 15, 2013 Defendant delivered some responsive documents to Plaintiffs' counsel's office. On July 30, 2013 Plaintiffs filed a second motion to compel discovery from Defendant. Said motion was heard on August 22nd and September 3rd. Pursuant to the Court's rulings, Defendant was required to produce documents to which its objections were overruled on or before November 18, 2013. After review of the additional responsive documents to Plaintiffs' First Request for Production, it is obvious that Defendant has continued to fail and refuse to produce the documents this Court ordered it to produce. (*See*, Defendant Dentistry of Brownsville, P.C.'s Sixth Amended Objections and Responses to Plaintiffs' First Request for Production, filed with Plaintiffs' Third Motion to Compel Against Dentistry of Brownsville, P.C. d/b/a Kool Smiles).

Additionally, Defendant redacted information from some of the documents produced, such contrary to the request for true, correct, and complete copies of the responsive documents. Furthermore, said Defendant has failed to produce copies of some responsive documents, and

failed to produce complete copies of some responsive documents by failing to produce exhibits and attachments to the documents. Further, upon information and belief Defendant produced documents that were not organized and/or produced as they were kept in the ordinary course of business. Moreover, many of the produced documents were not segregated and labeled according to each particular request and were not identified as being responsive to a specific request for production.

II.
**ABUSE OF THE DISCOVERY PROCESS**

The specific discovery requests and orders not complied with by Defendant are as follows:

<u>Discovery requests and orders not complied with by Defendant relating to documents produced under bates-stamp "DOB" are as follows:</u>

1. RFP. Nos. 25-36. The Smart Scheduling Scores were not provided with the Plaintiffs' records.

2. RFP Nos. 105-108. Based upon information and belief these responses are incomplete.

3. RFP No. 127. The Court overruled Defendant's objections; however, Defendant continues to assert the same objections in response to said request.

4. RFP. No. 141. Defendant, Dentistry of Brownsville, P.C.'s response is incomplete. Dentistry of Brownsville, P.C. did not produce all documents filed with the Internal Revenue service, including, but not limited to, 1099's, K-1's, reports detailing revenue derived from the Kool Smiles Clinics as taxable revenue, and reports detailing expensed derived from the operation of the Kool Smiles Clinics. In addition, the document that was produced by Dentistry of Brownsville, P.C. was redacted. Said redactions are contrary to Court Order.

5. RFP No. 145. The Court did not order that this request be limited to the Professional Management Services Agreement.

6. RFP No. 152. The Court overruled Defendant's objections; however, Defendant continues to assert the same objections in response to said request.

7. RFP No. 153. The Court overruled Defendant's objections; however, Defendant continues to assert the same objections in response to said request.

8.    RFP No. 157. The Court overruled Defendant's objections; however, Defendant continues to assert the same objections in response to said request.

9.    RFP No. 159. The Court overruled Defendant's objections; however, Defendant continues to assert the same objections in response to said request.

10.   RFP No. 160. Defendant failed to amend its privilege log in accordance with Texas Rules of Civil Procedure in accordance with its assertion of this new privilege in response to said request.

11.   RFP Nos. 182-184. The parties did not agree to limit these responses to "third-party dentists". Rather the parties agreed to limit these responses to "third-parties". Defendant failed to fully respond to these requests.

<u>Documents produced that are not listed in any of Defendant's Responses</u>

Attached hereto in Exhibit "B" is a list of documents that have been produced but that have not been attributed to a corresponding response number.

<u>Discovery requests and orders not complied with by Defendant relating to documents produced under bates-stamp "KSL" are as follows:</u>

1.    KSL 36. Illegible Copy. Missing Account # and other information.

2.    KSL 227-228. No title. No headings.

3.    KSL 247-248. Redactions.

4.    KSL 258. Redactions.

5.    KSL 260. Redactions

6.    KSL 307. Redactions.

7.    KSL332. Redactions.

8.    KSL 374. Does not include attached sheet that is referenced in email from

      Rochelle Flowers on 6.1.10 at 9:06PM.

9.    KSL 387. Redactions.

10.   KSL 448. Redactions.

11.   KSL 451. Redactions.

12.     KSL452. Attachment referenced in email not provided.

13.     KSL592. Redaction.

14.     KSL1205. Redactions.

15.     KSL 1294. Redaction.

16.     KSL1462. Redaction.

17.     KSL1477. Redactions.

18.     KSL1535. Redactions.

19.     KSL 1584. Redaction.

20.     KSL 1677. Only provided Slide 15. Please produce other slides.

21.     KSL 1718. Redaction.

22.     KSL 1859. Only provided "Slide 46". Please produce full document.

23.     KSL 1861. Only provided "Slide 24". Please produce full document.

24.     KSL 1881. Redactions.

25.     KSL 1941-50. Redactions.

26.     KSL2211. Missing attachment to email, titled "SSC Overview for CE 12.31.10.

27.     KSL 2581. Missing attachments.

28.     KSL 2615. Illegible. Please produce color picture.

29.     KSL 2712-2727. Missing appendix and other documents.

30.     KSL 2853. This is "Attachment B". Missing main document and "Attachment A".

31.     KSL 2855. Redactions.

32.     KSL 3107. No attachment provided.

33.     KSL 3166. Redactions.

34.     KSL 3167. Missing entire document.

35.  KSL 3228-3248. Redaction of titles, etc. on numerous pages.

36.  KSL 3343. Redactions.

37.  KSL 3358. Redactions.

38.  KSL 3364-3392. Redactions.

39.  KSL 3395-3341. Redactions.

40.  KSL 3396-3398. Redactions.

41.  KSL 3399-3401. Redactions.

42.  KSL 3402-3415. Redactions.

43.  KSL 3408. Redactions. Missing emails from Cody that is referenced by Andrea Jett.

44.  KSL 3727. Illegible. Please reproduce.

45.  KSL 3841. Redactions.

46.  KSL 4011. Missing entire document. Only "Slide 4" was produced.

47.  KSL 4151. Redactions.

48.  KSL 4161. Redactions of amounts paid. Failed to provide attachment titled "Kool Smiles Compliance Program-Outside Auditor 2010."

49.  KSL 4244. Illegible. Please reproduce.

50.  KSL 4261. Missing attachment referenced in the document beginning with this bates-stamped number.

51.  KSL 4296. Redactions.

52.  KSL 4499. Redactions.

53.  KSL 4514. Redactions.

54.  KSL 4545-4546. Redactions.

55.  KSL 4939-4940. Redactions.

56.     KSL 4946. Image not displayed. Actual document not produced.

57.     KSL5176. Redactions.

58.     KSL 5199-5200. Redactions.

59.     KSL 5202-5239 & KSL5251-5446. Redactions.

60.     KSL 5480. Redaction.

61.     KSL 5525-5539. Redactions.

62.     KSL 5540-5551. Redactions.

63.     KSL 5554. Redactions.

64.     KSL 5658. Missing attachments.

65.     KSL 5659. Missing attachments.

66.     KSL 5962. Redactions to policy number.

67.     KSL 5972-5977. Redactions.

68.     KSL 5983. Redactions.

69.     KSL 6007-6012. Redactions.

70.     KSL 6387-9448. Redactions.

71.     KSL 9289-9448. Redactions.

72.     KSL 459739. Redactions.

73.     KSL 459747-55. Redactions.

74.     KSL 459783. Redactions.

75.     KSL 459818-38. Redactions.

76.     KSL 459948, 82, 83, 84. Redacted name.

77.     KSL 460377-78. Redactions

78.     KSL 460402. Redaction.

79.     KSL 460470-72. Redactions.

80.     KSL 460499. Redactions

81.     KSL 460654-4606655. Redactions.

82.     KSL 460675. Redactions.

83.     KSL 460849-52. Redactions.

84.     KSL 461344-55. Redactions.

85.     KSL 461365-77. Redactions.

86.     KSL 461423-4. Redactions.

87.     KSL 461432-70. Redactions.

88.     KSL 461471-99. Redactions.

89.     KSL 462136-47. Redactions.

90.     KSL 462537. Redactions.

91.     KSL 462661-62. Redacted info regarding Tex. Location. Missing attachment.

92.     KSL 462903-462910. Redactions.

93.     KSL 462991-92. Redactions.

94.     KSL 462999. Illegible. Please reprint

95.     KSL 463242-3. References "Part 1". Other Parts are unaccounted for.

96.     KSL 463498. Redactions.

97.     KSL 463499-50. Redactions.

98.     KSL 463590. Redactions and missing attachment.

99.     KSL 463516-24. Redactions and Missing Attachments.

100.    KSL 463635-37. Redactions.

101     KSL 463649-51. Redactions.

102.    KSL 463667-72. Redactions.

103.    KSL 463680-82. Redactions.

104.  KSL 463720-22. Redactions.

105.  KSL 463730. Redactions.

106.  KSL 463755-493962 . Redactions.

107.  KSL 463971. Redactions.

108.  KSL 463972-72. Redactions.

109.  KSL 463975. Redactions.

110.  KSL 463987. Redactions.

111.  KSL 464008. Redactions.

112.  KSL 464009. Redactions.

113.  KSL 464080-464100. Redactions.

114.  KSL 464128-464130. Redactions.

115.  KSL 464250. Redactions.

116.  KSL 464270-71. Missing document.

117.  KSL 464567. Redactions.

118.  KSL 464618- 464650. Redactions

119.  KSL 464665-66. Redactions.

120.  KSL 464667-71. Redactions.

121.  KSL 464689-94. Redactions and missing attachments.

122.  KSL 464709-13. Redactions and missing attachments.

123.  KSL 465020. Redactions.

124.  KSL 465030-35. Redactions.

125.  KSL 465047-48, Redactions.

126.  KSL 465098-465100, Redactions.

127.  KSL 465166. Illegible.

128.    KSL 465310-12. Redactions.

129.    KSL 465326. Redactions.

130.    KSL 465368-75. Redactions.

131.    KSL 4665378-79. Redactions.

132.    KSL 465418-23. Redactions.

133.    KSL 465435-36. Redactions

134.    KSL 465475-77. Redacted document titled Mission, TX Malpractice.

135.    KSL 465479-87. Redactions.

136.    KSL 465639-42. Redactions.

137.    KSL 465651. Redactions and missing attachments.

138.    KSL 465652. Redactions.

139.    KSL 465655. Redactions and missing attachments.

140.    KSL 465657-8. Redactions.

141.    KSL 465664-72. Redactions.

142.    KSL 465674. Redactions.

143.    KSL 465681-83. Redactions.

144.    KSL 465684. Redactions.

145.    KSL 465699-701. Redactions.

146.    KSL 465704-705. Redactions.

147.    KSL 465724. Redactions.

148.    KSL 465752. Redactions.

149.    KSL 465757. Redactions.

150.    KSL 465772-73. Redactions and missing attachment.

151.    KSL 465835-37. Redactions.

152.    KSL 465838. Redactions.

153.    KSL 465840-42. Redactions.

154.    KSL 465845-47. Redactions.

155.    KSL 465852-63. Redactions.

156.    KSL 465865. Redactions.

157.    KSL 465867-69. Redactions.

158.    KSL 465895-96. Redactions.

159.    KSL 465897. Redactions.

160.    KSL 465920. Redactions.

161.    KSL 465926-28. Redactions.

162.    KSL 465932-34. Redactions.

163.    KSL 465983. Redactions.

164.    KSL 466125-26. Redactions.

165.    KSL 466127-130. Redactions.

166.    KSL 466131-145. Redactions.

167.    KSL 466146-187. Redactions.

168.    KSL 466219-466506. Redactions.

169.    KSL 466507-466520. Redactions.

170.    KSL 466521-466584. Redactions.

171.    KSL 466585-598. Redactions.

172.    KSL 466599-466618. Redactions.

173.    KSL 466619-466810. Redactions.

174.    KSL 466811-816. Redactions.

175.    KSL 466834-852. Redactions.

176. KSL 466853-85. Redactions.

177. KSL 466918-39. Redactions.

178. KSL 467047-467083. Redactions.

179. KSL 467158. Redactions.

180. KSL 468488-468527. Redactions.

181. KSL 468534-468608. Redactions.

182. KSL 468613-16. Redactions.

183. KSL 468617. Redactions.

184. KSL 468618-19. Redactions.

185. KSL 468684. Redactions.

186. KSL 468933. Missing attachments.

187. KSL 469288-469320. Redactions.

188. KSL 469321-469328. Redactions.

189. KSL 469470. Missing attachment.

190. KSL 470028. Redactions.

191. KSL 470038-470043. Redactions.

192. KSL 470580-86. Incomplete document. Missing pages.

193. KSL 470982. Missing attachment.

194. KSL 471561-2. Redactions. Missing Attachment.

195. KSL 471565. Redactions.

196. KSL 471569-70. Redactions.

197. KSL 471575. Redactions.

198. KSL 471659-60. Redactions.

199. KSL 471667-71. Redactions.

200.    KSL  471690. Redactions.

201.    KSL  471698-9. Redactions.

202.    KSL  471733-36. Redactions.

203.    KSL  471737-69. Redactions.

204.    KSL  471787-12. Redactions.

205.    KSL  4671873. Redactions.

206.    KSL  471881-82. Redactions.

207.    KSL  471953-55. Redactions.

208.    KSL  471966. Redactions.

209.    KSL  471983. Redactions.

210.    KSL  471995-96. Redactions.

211.    KSL  472016. Redactions.

212.    KSL  472019. Redactions.

213.    KSL  472092. Redactions.

214.    KSL  472217-20. Redactions.

215.    KSL  472245-47, 53. Redactions.

216.    KSL  472316. Redactions.

217.    KSL  472355. Redactions. Missing attachment.

218.    KSL  472444. Redactions.

219.    KSL  472569-72. Redactions.

220.    KSL  472576-77. Redactions.

221.    KSL  472640-42. Redactions.

222.    KSL 472902-04. Redactions.

223.    KSL  473042-43. Redactions.

224. KSL 473156. Missing attachment.

225. KSL 473511-12. Redactions.

226. KSL 473518-47. Redactions.

227. KSL 473622. Redactions.

228. KSL 473623-31. Illegible. Please reproduce.

229. KSL 473663 & 473666 & 473669 & 473672. Redactions.

230. KSL 473708. Redactions.

231. KSL 473906-10. Redactions.

232. KSL 473911-13. Redactions.

233. KSL 473963. Redactions.

234. KSL 474145-474149. Redactions.

235. KSL 474184. Redactions.

236. KSL 474191-93. Redactions.

237. KSL 474390-91. Redactions.

238. KSL 476031. Redactions.

239. KSL 476077. Redactions.

240. KSL 1965. Redactions.

241. KSL 1976-89. Redactions.

242. KSL 1990-1994. Redactions.

243. KSL 459948. Redactions.

244. KSL 459983-84. Redactions.

245. KSL 460151-296 Redactions.

246. KSL 460299-327. Redactions.

247. KSL 460377-78. Redactions.

248. KSL 460654-65. Redactions.

249. KSL 461344-54. Redactions.

250. KSL 461365-77. Redactions.

251. KSL 461396-428. Redactions.

252. KSL 461432-70. Redactions.

253. KSL 462136-39. Redactions.

254. KSL 462140-43. Redactions.

255. KSL 462144-47. Redactions.

256. KSL 462178-307. Redactions.

257. KSL 463735-62. Redactions.

258. KSL 463978-9. Redactions.

259. KSL 464618-50. Redactions.

260. KSL 465030-35. Redactions.

261. KSL 465681-83. Redactions.

262. KSL 465756-63. Redactions.

263. KSL 466127-30. Redactions.

264. KSL 466219-506. Redactions.

265. KSL 466811-16. Redactions.

266. KSL 466856-85. Redactions.

267. KSL 467047-49. Redactions.

268. KSL 468684-706. Redactions.

269. KSL 469288-469320. Redactions.

270. KSL 470038-470043. Redactions.

271. KSL 471565. Redactions.

272. KSL 471737-4741769. Redactions.

273. KSL 472453KSL . Redactions.

274. KSL 463516-24. Redactions and missing attachments.

275.   KSL 471340. Missing "Evaluation Materials" stated in letter.

Issues with DPRS produced in response to RFP No. 122 & 123 and to the Court's Order Upon Plaintiffs' Motion to Compel and for Sanctions Against Defendant Dentistry of Brownsville, P.C. d/b/a Kool Smiles

1.   Upon information and belief the documents were not produced in the ordinary and regular course of business. Rather these documents were produced so that one page of information would have to be read across multiple pages. In addition, upon information and belief many of the documents are duplicates.

2.   These documents were produced with improper redactions, including, but not limited to, redactions of titles, redaction of information identifying the documents, redactions of information ordered by the Court to be produced.

Issues with Expanded Service Reports produced in response to RFP No. 125 and to the Court's Order Upon Plaintiffs' Motion to Compel and for Sanctions Against Defendant Dentistry of Brownsville, P.C. d/b/a Kool Smiles

1.   Upon information and belief the documents were not produced in the ordinary and regular course of business. Rather these documents were produced so that one page of information would have to be read across multiple pages. In addition, upon information and belief many of the documents are duplicates.

2.   These documents were produced with improper redactions, including, but not limited to, redactions of titles, redaction of information identifying the documents, redactions of information ordered by the Court to be produced.

Issues with Office Scorecard – Medicaid Children produced in response to RFP No. 124 and to the Court's Order Upon Plaintiffs' Motion to Compel and for Sanctions Against Defendant Dentistry of Brownsville, P.C. d/b/a Kool Smiles

1.   Upon information and belief the documents were not produced in the ordinary and regular course of business. Rather these documents were produced so that one page of information would have to be read across multiple pages. In addition, upon information and belief many of the documents are duplicates.

2.   These documents were produced with improper redactions, including, but not limited to, redactions of titles, redaction of information identifying the documents, redactions of information ordered by the Court to be produced.

Issues with PIPs produced in response to RFP No. 130 and to the Court's Order Upon Plaintiffs' Motion to Compel and for Sanctions Against Defendant Dentistry of Brownsville, P.C. d/b/a Kool Smiles

1. Upon information and belief, Defendants did not produce all of the PIPs responsive to this request.

2. Defendants produced multiple copies of the exact same PIP.

Some specific documents not produced, but responsive to Plaintiffs' requests

1. All "Training, Company and Marketing Videos" that are on the Kool Smiles Intranet.

2. The "Protective Stabilization Test".

3. Documents similar to bates-stamped documents KSL 6360-6363 for the Mission and McAllen clinics.

5. Smart Scheduling scores for each of the Plaintiffs. These are a part of the Plaintiffs records and should have been produced.

6. The documents that are mentioned in KSL464222-23 for each Plaintiff. These are documents that should have been produced with each Plaintiff's file.

7. Responses from Kool Smiles that relate to bates-stamped documents to KSL466029 & KSL466064.

## III.
## CERTIFICATE OF CONFERENCE

Plaintiffs' counsel sent Defendant's counsel a letter dated August 12, 2014 listing the above stated issues with Defendant's responses and objections to Plaintiffs' First Request for Production. As of the date of filing this motion, Defendant's Counsel did not respond with a time to confer regarding the same. In addition, Plaintiffs' counsel sent Defendant's counsel a letter dated January 14, 2014 again listing the above stated issues with Defendant's responses and objection to Plaintiffs' First Request for Production. As of the date of filing this motion, the parties have not yet had an opportunity to confer on the substance of this motion, but do intend to again attempt to confer prior to the hearing of this motion on a date mutually convenient for the parties.

## IV.
## RELIEF SOUGHT

WHEREFORE PREMISES CONSIDERED, Plaintiffs respectfully pray that the Court set this motion for hearing, and upon hearing, overrule the objections of Defendant Dentistry of Brownsville d/b/a Kool Smiles to Plaintiffs' First Request For Production, grant Plaintiffs' Plaintiffs' motion to compel and compel said Defendant to produce responsive documents to said requests within ten (10) days after the hearing on this motion. Plaintiffs further pray for such other and further relief to which they may be entitled.

Respectfully submitted,

MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 401 South
San Antonio, Texas 78215
Telephone: 210.354.3377
Telecopier: 210.354.3909

By: _____
George W. Mauzé, II
State Bar No. 13238800
Tom Bagby
State Bar No. 24059409

GUERRA, LEEDS, SABO &
HERNANDEZ, PLLC
10213 N. 10th St.
McAllen, Texas 78504
Telephone: 956.383.4300
Telecopier: 956.383.4304

By:   R.D. "Bobby" Guerra
State Bar No. 08578640

**ATTORNEYS FOR PLAINTIFFS**

Electronically Filed
1/15/2015 9:15:48 AM
Hidalgo County District Clerks
Reviewed By: Kim Hinojosa

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of PLAINTIFFS' AMENDED THIRD MOTION TO COMPEL AGAINST DEFENDANT DENTISTRY OF BROWNSVILLE, P.C. d/b/a KOOL SMILES has been sent by via fax and certified mail, return receipt requested, to Mr. Wayne B. Mason, Esq., Mr. Alan Vickery, Esq., & Ms. Cori C. Steinmann, Esq., Sedgwick LLP, 1717 Main Street, Suite 5400, Dallas, Texas 75201-7367, and Mr. Eduardo R. Rodriguez, Esq., Atlas, Hall & Rodriguez, L.L.P., 50 W. Morrison Road, Suite A, Brownsville, TX 78520 on this 15 day of January, 2015.

Tom Bagby

# REGISTER OF ACTIONS
## CASE NO. C-0184-13-G

| | |
|---|---|
| PAULA ANTU, AS NEXT FRIEND OF ALEKSANDRA N. ESTRADA, A MINOR, ET. AL. VS. NCDR, LLC D/B/A KOOL SMILES,DENTISTRY OF BROWNSVILLE, P.C. D/B/A KOOL SMILES, ET AL. | Case Type: Injury or Damage - Medical Malpractice (OCA) Date Filed: 01/16/2013 Location: 370th District Court |

§
§
§
§
§

---

### PARTY INFORMATION

| | | | Attorneys |
|---|---|---|---|
| Defendant | CHANDESH, AISHWARYA K., DDS | | Wayne B. Mason |
| Defendant | DENTISTRY OF BROWNSVILLE, P.C. D/B/A KOOL SMILES | | EDUARDO R. RODRIGUEZ *Retained* |
| Defendant | HO, EDWARD, DDS | | Alan R. Vickery |
| Defendant | Kool Smiles, P.C. | | Cori C. Steinmann |
| Defendant | MANWARING, RICHARD I, DDS | | |
| Defendant | NCDR, LLC D/B/A KOOL SMILES | | Wayne B. Mason |
| Defendant | Olivar, Freisi | | Pro Se |
| Defendant | THOMAS, MARC D., DDS | | |
| Plaintiff | ANTU, PAULA | | George Watts Mauze, II |
| Plaintiff | AYALA, SCARLETT | | ROBERTO D. GUERRA |
| Plaintiff | CANO, ORLANDO | | ROBERTO D. GUERRA |
| Plaintiff | CEPEDA, GUADALUPE | | ROBERTO D. GUERRA |
| Plaintiff | CORNEJO, ANA LAURA | | ROBERTO D. GUERRA |
| Plaintiff | CORNEJO, JUAN CARLOS | | ROBERTO D. GUERRA |
| Plaintiff | CUELLAR, ABDON | | ROBERTO D. GUERRA |
| Plaintiff | CUELLAR, MARIO | | ROBERTO D. GUERRA |
| Plaintiff | ESTRADA, ALEKSANDRA | | ROBERTO D. GUERRA |
| Plaintiff | GAYTAN, MARIA | | ROBERTO D. GUERRA |
| Plaintiff | GONZALEZ, ELIZABETH | | ROBERTO D. GUERRA |
| Plaintiff | GUZMAN, AMY | | ROBERTO D. GUERRA |
| Plaintiff | GUZMAN, FRANCISCA | | ROBERTO D. GUERRA |
| Plaintiff | MALDONADO, ISABEL | | ROBERTO D. GUERRA |

| Plaintiff | MALDONADO, ISMAEL | ROBERTO D. GUERRA |
|---|---|---|
| Plaintiff | MALDONADO, JOHANA | ROBERTO D. GUERRA |
| Plaintiff | MORAN, DESTINY | ROBERTO D. GUERRA |
| Plaintiff | OLIVAR, FREISI | ROBERTO D. GUERRA |
| Plaintiff | REYES, KATHERINE | ROBERTO D. GUERRA |
| Plaintiff | REYES, MARCO | ROBERTO D. GUERRA |
| Plaintiff | ROSALES, MARY | ROBERTO D. GUERRA |
| Plaintiff | SALDANA, ADAM | ROBERTO D. GUERRA |
| Plaintiff | SALINAS, REYNOL | ROBERTO D. GUERRA |
| Plaintiff | SALINAS, REYNOL, Jr. | ROBERTO D. GUERRA |
| Plaintiff | TEJADA, FRANCISCO, Jr. | ROBERTO D. GUERRA |
| Plaintiff | TRUJILLO, PRISCILLA | ROBERTO D. GUERRA |
| Plaintiff | URESTI, XANDER | ROBERTO D. GUERRA |

## EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

**01/16/2013** Original Petition (OCA)
*PLAINTIFF'S ORIGINAL PETITION*

**01/17/2013** Citation By Certified Mail

| | | | |
|---|---|---|---|
| NCDR, LLC D/B/A KOOL SMILES | Served | 01/28/2013 | |
| | Returned | 02/01/2013 | |
| DENTISTRY OF BROWNSVILLE, P.C. D/B/A KOOL SMILES | Served | 01/25/2013 | |
| | Returned | 02/12/2013 | |
| THOMAS, MARC D., DDS | Served | 01/28/2013 | |
| | Returned | 02/04/2013 | |
| HO, EDWARD, DDS | Served | 01/26/2013 | |
| | Returned | 01/29/2013 | |

**01/17/2013** Citation
*PICKED UP BY: Mike Deleon on 01/24/13*

| | | | |
|---|---|---|---|
| CHANDESH, AISHWARYA K., DDS | Served | 01/24/2013 | |
| | Returned | 01/24/2013 | |
| MANWARING, RICHARD I, DDS | Served | 01/24/2013 | |
| | Returned | 01/24/2013 | |

**02/21/2013** Answer
*defendants' original answer to plaintiffs' original petition, e-filed 2.19.13;/ kh*

**02/28/2013** Jury Demand
*filed 2.27.13;/ kh*

**02/28/2013** Certificate of Written Discovery
*e-filed 2.27.13;/ kh*

**02/28/2013** Notice of Filing, Filed
*plaintiffs' notice of filing of expert report and curriculum vitae pursuant to tex.civ.prac.&rem.code, 74.351, e-filed;/ kh*

**03/12/2013** Request
*plaintiffs' request for hearing on motion to set on the jury docket and motion for entry of docket control order via telephonic conference, e-filed;/ kh*

**03/12/2013** Court Entries
*ORDER SETTING TELEPHONIC HRG ON MTN TOS ET ON THE JURY DOCKET AND MTN FOR ENTRY OF DC ORDER=SGN; SET FOR 4-4-13 @ 11:00 A.M.*

**03/12/2013** Notice Mailed

**03/12/2013** File Sent to District Clerk

**03/12/2013** Order Setting DCC, Signed
*on motion to set on the jury docket and motion for entry of docket control order, signed;/ kh*

**04/04/2013** Docket Control Conference Hearing/Telephonic (11:00 AM) (Judicial Officer Gonzalez, Noe)

**04/11/2013** Notice of Hearing
*notice of hearing;04/10/2013;ag*

**04/29/2013** Objection
*plaintiffs' opposition to defendant dentistry of brownsville, p.c.'s motion to abate, e-filed 4.25.13;/ kh*

**04/30/2013** Hearing (8:00 AM) (Judicial Officer Gonzalez, Noe)
*DEF. PLEA IN ABATEMENT*

| | |
|---|---|
| 04/30/2013 | **Court Entries**<br>*Hon. Tom Bagby, Hon. George Mauze, Hon. Eddie Rodriguez, and Hon. Alan Vickery app'd, Order Denying Dentistry of Brownsville, P.C.'s motion to Abate signed by Judge Noe Gonzalez;rr* |
| 04/30/2013 | **File Sent to District Clerk** |
| 05/02/2013 | **Court Entries**<br>*AGREED DOCKET CONTROL ORDER WITH JURY TRIAL SETTING=SGN NG/ec...PT: 12-3-13 & TM: 12-9-13 @ 8:00 A.M.* |
| 05/02/2013 | **Notice Mailed** |
| 05/02/2013 | **File Sent to District Clerk** |
| 05/02/2013 | **Docket Control Order, Signed**<br>*agreed docket control order with jury trial settinf, signed;/ kh* |
| 05/16/2013 | **Motion to Strike**<br>*PLAINTIFFS MOTION TO STRIKE AMENDED OBJECTIONS AND MOTION TO COMPEL DISCOVERY FROM DEFENDANT AISHWARYA K. CHANDESH D.D.S* |
| 05/16/2013 | **Motion to Strike**<br>*PLAINTIFFS MOTION TO STRIKE AMENDED OBJECTIONS AND MOTION TO COMPEL DISCOVERY FROM DEFENDANT DENTISTRY OF BROWNSVILLE P.C. D/B/A KOOL SMILES, FILED* |
| 05/16/2013 | **Motion to Strike**<br>*PLAINTIFFS MOTION TO STRIKE AMENDED OBJECTIONS AND MOTION TO COMPEL DISCOVERY FROM DEFENDANT EDWARD HO, D.D.S.* |
| 05/16/2013 | **Motion to Strike**<br>*PLAINTIFFS MOTION TO STRIKE AMENDED OBJECTIONS AND MOTION TO COMPEL DISCOVERY FROM DEFENDANT RICHARD I MANWARING, D.D.S.* |
| 05/16/2013 | **Motion to Strike**<br>*PLAINTIFFS MOTION TO STRIKE AMENDED OBJECTIONS AND MOTION TO COMPEL DISCOVERY FROM DEFENDAT NCDR L.L.C. D/B/A KOOL SMILES* |
| 05/20/2013 | **Motion to Stay, Filed**<br>*proceeding;filed;05/16/2013;ag* |
| 05/23/2013 | **Order Setting Hearing**<br>*ON DEFENDANT DENTISTRY OR BROWSVILLE P.C. MOTION FOR STAY, FILED* |
| 05/23/2013 | **Court Entries**<br>*ORDER SETTING HRG ON DEF DENTISTRY OF BROWNSVILLE, P.C.'S MTN FOR STAY=SGN; SET FOR 5-29-13 @ 8:00 A.M.* |
| 05/23/2013 | **Notice Mailed**<br>*BY EDUARDO RODRIGUEZ* |
| 05/23/2013 | **File Sent to District Clerk** |
| 05/23/2013 | **Order Setting Hearing, Signed**<br>*signed;/ kh* |
| 05/28/2013 | **New File Made**<br>*#2;/ kh* |
| 05/29/2013 | **Motion to Stay**  (8:00 AM) (Judicial Officer Gonzalez, Noe) |
| 05/29/2013 | **Motion to Strike** |
| 05/29/2013 | **Court Entries**<br>*Hon. Tom Bagby and Hon. Eduardo Rodriguez app'd, stay denied submitted and signed ng/ lmk* |
| 05/29/2013 | **File Sent to District Clerk** |
| 05/29/2013 | **Order Setting Hearing**<br>*filed;05/21/2013;ag* |
| 05/29/2013 | **Notice Mailed**<br>*BY FRANK SABO OFFICE* |
| 05/29/2013 | **File Sent to District Clerk** |
| 05/29/2013 | **Answer**<br>*and respond to the following discovery requests from may 22 2013 to may 292013* |
| 05/29/2013 | **Order Setting Hearing, Signed**<br>*order setting hearing on plaintiffs' motions to strike amended objections and motions to compel discovery from defendants ncdr, llc d/b/a kool smiles dentistry of brownsville pc d/b/a kool smiles, aishwarya k. chandesh, dds edward ho, dds richard i. manwaring, dds and marc d. thomas, dds, signed;/ kh* |
| 05/29/2013 | **Order Denying, Signed**<br>*order denying motion to stay proceedings, signed;/ kh* |
| 06/05/2013 | **Response**<br>*plaintiffs' response to motion to stay proceedings, e-filed 5.28.13;/ kh* |
| 06/05/2013 | **Special Exceptions**<br>*plaintiffs' special exceptions to defendants' original answer, e-filed 6.3.13;/ kh* |
| 06/05/2013 | **Court Entries**<br>*ORDER SETTING HRG UPON PLTFS' SPECIAL EXCEPTIONS TO DEFS' ORIGINAL ANSWER=SGN; SET FOR 6-10-13 @ 8:00 A.M.* |
| 06/05/2013 | **Notice Mailed**<br>*BY DALIA WITH BOBBY GUERRA OFFICE* |
| 06/05/2013 | **Court Entries**<br>*FILE NOT WTH COURT* |
| 06/06/2013 | **Order Setting Hearing, Signed**<br>*upon plaintiff's special exceptions to defendants original answer;signed;06/06/2013;ag* |
| 06/07/2013 | **Response**<br>*DEFENDANTS' COLLECTIVE RESPONSE TO PLAINTIFF'S MOTIONS TO STRIKE AND MOTIONS TO COMPEL DISCOVERY FROM DEFENDANTS DENISTRY OF BROWNSVILLEE, P.C., NCDR, LLC, AISHWARYA CHANDESH, DDS, EDWARD HO, DDA, RICHARD MANWARING, DDS AND MARC D. THOMAS, DDS* |
| 06/07/2013 | **Amended**<br>*defendant ncdr, llc's second amended objections and responses to plaintiffs' first request for production, e-filed;/ kh* |
| 06/07/2013 | **Second Amended**<br>*defendant ncdr, llc's second amended objections and responses to plaintiffs' first request for production, e-filed;/ kh* |
| 06/07/2013 | **Defendant Original Answer**<br>*defendants response to plaintiffs' special exceptions to defendants original answer ;filed;ag* |
| 06/10/2013 | **Motion To Strike**  (8:00 AM) (Judicial Officer Gonzalez, Noe)<br>*& MTNS TO COMPEL & PLTF S/E* |
| 06/10/2013 | **Court Entries**<br>*Hon. George Mauze, Hon. Frank Sabo, Hon. Bobby Guerra, Hon. Eduardo Rodriguez, Hon. Alan Vickery, and Hon. Cori Steinmann app'd, parties ordered by the court to talk out issues before the court, Parties to return to court on 6/11/ @ 7:30 a.m.; lmk* |
| 06/10/2013 | **Memorandum** |

*opinion;*

06/10/2013 | **Court Entries**
*ORDER RE-SETTING HRG ON PLTFS' MTNS TO STRIKE AMENDED OBJECTIONS AND MTNS TO COMPEL DISCOVERY FROM DEFS NCDR, LLC D/B/A KOOL SMILES DENTISTRY OF BROWNSVILLE P.C. D/B/A KOOL SMILES AISHWARYA K. CHANDESH, DDS EDWARD HO DDS RICHARD L. MANWARING DDS AND MARC D. THOMAS DDS=SGN; SET FOR 6-17-13 @ 8:00 A.M.*

06/10/2013 | **Notice Mailed**
*BY FRANK SABO*

06/10/2013 | **File Sent to District Clerk**

06/11/2013 | **Court Entries**
*STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER=SUBMITTED BY FRANK SABO AND SIGNED NG/ec*

06/11/2013 | **File Sent to District Clerk**

06/11/2013 | **Protective Order Signed - Civil**
*stipulated confidentiality agreement and protective order;signed;ag*

06/12/2013 | **Motion to Compel**
*filed;ag*

06/13/2013 | **Order Setting Hearing**
*filed;ag*

06/13/2013 | **Court Entries**
*ORDER SETTING HRG ON DEFS' MTN TO COMPEL RESPONSES TO DEFS' DISCOVERY REQUESTS AND EXECUTED AUTHORIZATIONS FOR MEDICAL AND EDUCATIONAL RECORDS=SGN; set for 6-17-13 @ 8:00 A.M.*

06/13/2013 | **Notice Mailed**
*BY ATLAS AND HALL OFFICE*

06/13/2013 | **File Sent to District Clerk**

06/13/2013 | **Order Setting Hearing, Signed**
*order setting hearing on defedants motion to compel responses to defedants discovery requests and executed authorizations for medical and eduacational records,signed;/ kh*

06/17/2013 | **Motion To Strike** (8:00 AM) (Judicial Officer Gonzalez, Noe)
*MTN COMPEL; DEFS MTN TO COMPEL*

06/17/2013 | **Court Entries**
*Hon. George Mauze, Hon. Tom Bagby, Hon. Frank Sabo, Hon. Alan Vickery, Hon. Cori Steinmann, and Hon. Eduardo Rodriguez app'd, heard various requests for production, parties to return with counsel handling governmental agency investigation, parties to get another setting from court staff this week; lmk*

06/17/2013 | **File Sent to District Clerk**

06/20/2013 | **Continuation of Hearing** (8:00 AM) (Judicial Officer Gonzalez, Noe)
*FROM 6-17-13...TO BE HEARD @ 1:00 P.M.*

06/20/2013 | **Court Entries**
*Hon. George Mauze, Hon. Tom Bagby, Hon. Eduardo Rodriguez, Hon. Cori Steinmann, Hon. Alan Vickery app'd, continued hearing from 6/17/13 on RFP, docs to be produced by 6/28/13, medical records and school records to be turned over to the court reporter for court's review; lmk*

06/20/2013 | **File Sent to District Clerk**

06/21/2013 | **New File Made**
*file 4;/ kh*

06/24/2013 | **Cover Letter**
*filed;ag*

06/26/2013 | **Writ**
*of mandamus appeal*

06/28/2013 | **Motion**
*defendants ncdr, llc and dentistry of brownsville pc's motion for protection and for additional relief, e-filed;/ kh*

07/01/2013 | **Order Filed**
*order setting hearing on defendants motion for protection and for additional relief*

07/01/2013 | **Order Filed**
*order granting defendants motion for protection and for additional relief*

07/02/2013 | **Writ**

07/03/2013 | **Order Filed**
*kool smiles*

07/03/2013 | **Order Filed**
*kool smiles*

07/03/2013 | **Order Filed**
*aishwary ak. chandesh.defendants*

07/09/2013 | **Motion to Compel**
*defendants second motion to compel, more complete discovery reponses from plaintiffs*

07/09/2013 | **Motion to Compel**
*defendants second motion to compel more complete discovery responses from plaintiffs*

07/10/2013 | **Order Setting Hearing**
*on defendants second motin to compel discovery responses from plaintiffs*

07/10/2013 | **Court Entries**
*ORDER SETTING HRG ON DEFS' 2ND MTN TO COMPEL DISCOVERY RESPONSES FROM PLAINTIFFS=SGN; SET FOR 8-5-13 @ 8:00 A.M.*

07/10/2013 | **Notice Mailed**

07/10/2013 | **Order Filed**
*order granting plaintiffs motion to amend docket control order*

07/15/2013 | **Order Setting Hearing**

07/15/2013 | **Court Entries**
*Order setting hearing on Plf's Mtn to Amend Docket Control Order=SGN, set for 8/5/13;lmk*

07/15/2013 | **Notice Mailed**
*By Frank Sabo's office to send notice; lmk*

07/24/2013 | **Order Filed**
*GRANTING DEFENDANTS MOTION TO COMPEL RESPONSES TO DDEFENDANTS DISCOVERY REQUEST AND EXCECUTED AUTHORIZATIONS FOR MEDICAL AND EDUCATIONAL RECORDS*

07/24/2013 | **Court Entries**
*ORDER GRANTING DEFS' MTN TO COMPEL RESPONSES TO DEFS' DISCOVERY REQUESTS AND EXECUTED AUTHORIZATION FOR MEDICAL AND EDUCATIONAL RECORDS=SUBMITTED AND SIGNED NG/ec*

07/24/2013 | **File Sent to District Clerk**

07/24/2013 | **Order Filed**
*defendants aishwarya k chandesh, dds. edward ho, dds. richard i manwaring, dds. and marc d. thomas .dds*

| | |
|---|---|
| 07/24/2013 | **Order Filed** |
| | dentristy of brownsville p.c. dba kool smiles |
| 07/24/2013 | **Order Filed** |
| | defendant ncdr llc dba kool smiles |
| 07/24/2013 | **Order, Signed** |
| | Order Upon Plaintiffs Motion to Compel Discovery (First Request for Production) from Defendant NCDR, LLC d/b/a Kool Smiles signed by Judge Noe Gonzalez;rr |
| 07/24/2013 | **Order, Signed** |
| | Order Upon Plaintiffs Motion to Compel Discovery (First Request for Production ) from Defendant Dentistry of Brownsville, P.C. d/b/a Kool Smiles; signed by Judge Noe Gonzalez;rr |
| 07/24/2013 | **Order, Signed** |
| | Order Upon Plaintiffs Motion to Compel Discovery (First Request for Production ) From Defendants Aishwarya K. Chandesh, D.D.S., and Marc D. Thomas, D.D.S; signed by Judge Noe Gonzalez;rr |
| 07/24/2013 | **File Sent to District Clerk** |
| 07/24/2013 | **Order Signed** |
| | order granting defendants motion to compel responses to defendants' discovery requests and executed authorizations for medical and eduacational records, signed;/ kh |
| 07/30/2013 | **Motion to Compel** |
| | and for sanctions against defendant marc d. thomas, d.d.s. |
| 07/30/2013 | **Motion to Compel** |
| | and for sanctions against defendant edward ho.d.d.s. |
| 07/30/2013 | **Motion to Compel** |
| | and for sanctions against defendant richard i. manwaring, d.d.s. |
| 07/30/2013 | **Motion to Compel** |
| | and for sanctions against defendant aishwarya k. chandesh, d.d.s. |
| 07/30/2013 | **Motion to Compel** |
| | and for sanctions against defendant dentristry of brownsville, p.c. d/b/a kook smiles |
| 07/30/2013 | **Motion to Compel** |
| | and for sanctions against defendant ncds, llc d/b/a kool smiles |
| 07/30/2013 | **Order Setting Hearing** |
| | on plaintiff's second motion to compel discovery from defendants |
| 07/31/2013 | **New File Made** |
| | #3;/ kh |
| 07/31/2013 | **Court Entries** |
| | ORDER SETTING HRG ON PLTFS' 2ND MTNS TO COMPEL DISCOVERY FROM DEFENDANTS=SGN; SET FOR 8-5-13 @ 8:00 A.M. |
| 07/31/2013 | **Notice Mailed** |
| | BY BOBBY GUERRA OFFICE |
| 07/31/2013 | **File Sent to District Clerk** |
| 07/31/2013 | **Order Setting Hearing, Signed** |
| | on plaintiffs' second motions to compel disc overy from defendants, signed;/ kh |
| 08/02/2013 | **Court Entries** |
| | ORDER RESETTING HRG=SGN; MTNS SET FOR 8-5-13 HAVE BEEN RE=SET TO 8-22-13 @8:00 AM. |
| 08/02/2013 | **Notice Mailed** |
| | BY FRANK SABO OFFICE |
| 08/02/2013 | **File Sent to District Clerk** |
| 08/02/2013 | **Court Entries** |
| | ORDER RE-SETTING HRG ON DEFS' 2ND MTN TO COMPEL DISCOVERY RESPONSES FROM PLAINTIFFS=SGN; SET FOR 8-22-13 @ 8:00 A,.M. |
| 08/02/2013 | **Notice Mailed** |
| | BY EDUARDO RODRIGUEZ, SECRETARY. |
| 08/02/2013 | **File Sent to District Clerk** |
| 08/05/2013 | **Order Setting Hearing, Signed** |
| 08/06/2013 | **Rule 11 Agreement, Filed** |
| 08/21/2013 | **Motion to Compel** |
| | and for sanctions and defendants motion for protection |
| 08/22/2013 | **Motion to Compel** (8:00 AM) (Judicial Officer Gonzalez, Noe) |
| | DEF'S 2ND MTN and Order Setting Hearing on Plaintiffs Motion to Amend Docket Control Order; Pltfs 2nd Mtns Compel; Defs 2nd Mt Compel |
| | 08/05/2013 Reset by Court to 08/22/2013 |
| 08/22/2013 | **Court Entries** |
| | Hon. Tom Bagby, Hon. George Mauze, Hon. Frank Sabo, Hon. Cori Steinmann, Hon. Alan Vickery, Hon. Eduardo Rodriguez app'd, Heard motions to compel and motions for sanctions, Dfts ordered to search for titled documents responseive to requests, parties to return 8/30/13 @ 1:00; lmk |
| 08/22/2013 | **File Sent to District Clerk** |
| 08/22/2013 | **Court Reporter** |
| | exhibits from 8-22 hearing placed in court's file; lmk |
| 08/26/2013 | **First Amended** |
| | plaintiffs' first amended petition, e-filed;/ kh |
| 08/28/2013 | **Court Entries** |
| | LETTER FAXED TO ATTORNEYS REGARDING R/S HRG FROM 8-30-13 TO 9-3-13 @ 8:00 A.M....SEE FAX TRANSMITTAL SHEET |
| 08/28/2013 | **File Sent to District Clerk** |
| 08/29/2013 | **Citation By Certified Mail** |
| | tracking number 7013 0600 0002 3307 5681;/ kh |
| | NCDR, LLC D/B/A KOOL SMILES   Served   09/06/2013 |
| |    Returned   09/09/2013 |
| 08/29/2013 | **Cover Letter** |
| 09/03/2013 | **Motion to Compel** (8:00 AM) (Judicial Officer Gonzalez, Noe) |
| | 08/30/2013 Reset by Court to 09/03/2013 |
| 09/03/2013 | **Court Entries** |
| | Hon. Frank Sabo, Hon. George Mauze, Hon. Tom Bagby, Hon. Bobby Guerra, Hon. Cori Steinmann, Hon. Alan Vickery, Hon. Eddie Rodriguez app'd, Heard motions to compel, dft produced docs requested by the court, dfts to organize doc production, court ruled on several rfp, parties to submit case law on disclosing of former employees' names, court took motion under advisement, ruling to be made by the court; lmk |
| 09/03/2013 | **File in Court Chambers** |
| | until ruling is made; lmk |

| Date | Entry |
|---|---|
| 09/03/2013 | **Deposition**<br>*written deposition service;ag* |
| 09/03/2013 | **Deposition**<br>*written deposition service;ag* |
| 09/03/2013 | **Memorandum**<br>*memorandum of law in opposition to defendants motion to compel, filed;/ kh* |
| 09/05/2013 | **Brief**<br>*defendants' brief in support of their second motion to compel, e-filed; /kh* |
| 09/13/2013 | **Records**<br>*written deposition service, records received for ridgepoint medical pharmacy, divine childrens clinic, las palmas childrens dentistry, pablo r. pena, ocean dental, israel mata, humberto hidalgo;/ kh* |
| 09/16/2013 | **New File Made**<br>*#4;/ kh* |
| 09/17/2013 | **Certification**<br>*(4) rule 203 certification, filed;/ kh* |
| 09/30/2013 | **Amended Answer**<br>*Defendants' Amended Answer and Kool Smiles, P.C.'s Original Answer to Plaintiffs' First Amended Petition* |
| 10/22/2013 | **Certification**<br>*written deposition services;ag* |
| 11/14/2013 | **Certification**<br>*CERTIFICATION, RULE 203 FILING;/ KH* |
| 11/27/2013 | **Order Filed**<br>*Order upon Plaintiffs' Motion to Compel & for Sanctions against Defendant Dentistry of Brownsville, P.C. d/b/a Kool Smiles* |
| 11/27/2013 | **Order Filed**<br>*Order Upon Plaintiffs' Motion to Compel and for Sanctions against Defendant NCDR, LLC d/b/a Kool Smiles* |
| 11/27/2013 | **Court Entries**<br>*ORDER UPON PLTFS' MTN TO COMPEL AND FOR SANCTIONS AGAINST DEF. NCDR., LLC D/B/A KOOL SMILES-SGN NG/ec...HRG HELD ON 8-22-13* |
| 11/27/2013 | **Court Entries**<br>*ORDER UPON PLTFS' MTN TO COMPEL AND FOR SANCTIONS AGAINST DEF. DENTISTRY OF BROWNSVILLE, P.C. D/B/A KOOL SMILES=SGN NG/ec...HRG HELD ON 8-22-13* |
| 11/27/2013 | **File Sent to District Clerk** |
| 11/27/2013 | **Order Signed**<br>*ORDER UPON PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS AGAINST DEFENDANT DENTISTRY OF BROWNSVILLE, P.C. D/B/A KOOL SMILES, SIGNED;/ KH* |
| 11/27/2013 | **Order Signed**<br>*ORDER UPON PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS AGAINST DEFENDANT NCDR, L.L.C. D/B/A KOOL SMILES, SIGNED;/ KH* |
| 12/03/2013 | **Pre Trial Hearing** (8:01 AM) (Judicial Officer Gonzalez, Noe)<br>*12/03/2013 Reset by Court to 12/03/2013* |
| 12/09/2013 | **Trial on Merits** (8:01 AM) (Judicial Officer Gonzalez, Noe)<br>*12/09/2013 Reset by Court to 12/09/2013* |
| 12/20/2013 | **Notice**<br>*Notice* |
| 12/20/2013 | **Certificate of Written Discovery**<br>*Certificate of Written Discovery Filed* |
| 01/02/2014 | **Certificate of Written Discovery** |
| 01/21/2014 | **Certificate**<br>*Rule 203 Certification of Written Deposition* |
| 01/21/2014 | **Certificate**<br>*Rule 203 Certification of Written Deposition* |
| 01/21/2014 | **Certificate**<br>*Rule 203 Certification of Written Deposition* |
| 02/04/2014 | **Exhibit**<br>*RECEIPT OF EXHBITS RECV'D FROM LISA KINSEL - 370TH OFFICIAL COURT REPORTER / HAND DELIVED SAME TO CLERKS* |
| 02/07/2014 | **Clerk's Entry**<br>*yellow envelope with exhibits in back filing room;/ kh* |
| 02/21/2014 | **Special Exceptions**<br>*Order* |
| 02/21/2014 | **Order Filed**<br>*Order* |
| 02/24/2014 | **Clerk's Entry**<br>*ORDER SUSTAINING DEFENDANTS SPECIAL EXCEPTIONS TO PLAINTIFFS' FIRST AMENDED PETITION RETURNED FROM COURT NOT SIGNED WITH NOTATION "HOLD OFF, HEARING NEEDED";/ KH* |
| 02/24/2014 | **Deposition**<br>*Deposition-Catalina Estrada* |
| 02/24/2014 | **Deposition**<br>*Deposition-Arturo Cano* |
| 02/24/2014 | **Deposition**<br>*Deposition-Jamie Perez* |
| 02/24/2014 | **Deposition**<br>*Deposition-Raquel Cortez* |
| 02/24/2014 | **Deposition**<br>*Deposition-Adam Saldana* |
| 02/24/2014 | **Deposition**<br>*Deposition-Fabian Moran* |
| 02/24/2014 | **Deposition**<br>*Deposition-Idalia Lucere* |
| 02/24/2014 | **Deposition**<br>*Deposition-Leslie A. Gonzalez* |
| 02/24/2014 | **Deposition**<br>*Deposition-Ruth Ramirez* |
| 02/24/2014 | **Letter Received** |

| 02/25/2014 | Motion to Quash |
| | Motion to Quash - Antu, Paula |
| 02/25/2014 | Motion to Quash |
| | Motion to Quash - Ayala, Scarlett |
| 02/25/2014 | Motion to Quash |
| | Motion to Quash - Cano, Arturo |
| 02/25/2014 | Motion to Quash |
| | Motion to Quash - Cepeda, Guadalupe |
| 02/25/2014 | Motion to Quash |
| | Motion to Quash - Cepeda, Guadalupe |
| 02/25/2014 | Motion to Quash |
| | Motion to Quash -Cornejo, Ana Laura |
| 02/25/2014 | Motion to Quash |
| | Motion to Quash - Cortez, Raquel |
| 02/25/2014 | Motion to Quash |
| | Motion to Quash - Cuellar, Mario |
| 02/25/2014 | Motion to Quash |
| | Motion to Quash - Estrada, Catalina |
| 02/25/2014 | Motion to Quash |
| | Motion to Quash-Gaytan, Maria |
| 02/25/2014 | Motion to Quash |
| | Motion to Quash - Gonzalez, Elizabeth |
| 02/25/2014 | Motion to Quash |
| | Motion to Quash - Gonzalez, Leslie |
| 02/25/2014 | Motion to Quash |
| | Motion to Quash - Guzman, Francisca |
| 02/25/2014 | Motion to Quash |
| | Motion to Quash - Lucere, Idalia |
| 02/25/2014 | Motion to Quash |
| | Motion to Quash - Maldonado, Isabel |
| 02/25/2014 | Motion to Quash |
| | Motion to Quash - Maldonado, Ismael |
| 02/25/2014 | Motion to Quash |
| | Motion to Quash - Olivar, Freisi |
| 02/25/2014 | Motion to Quash |
| | Motion to Quash - Perez, Jamie |
| 02/25/2014 | Motion to Quash |
| | Motion to Quash - Ramirez, Ruth |
| 02/25/2014 | Motion to Quash |
| | Motion to Quash - Reyes, Marco |
| 02/25/2014 | Motion to Quash |
| | Motion to Quash - Rosales, Mary |
| 02/25/2014 | Motion to Quash |
| | Motion to Quash - Saldana, Adam |
| 02/25/2014 | Motion to Quash |
| | Motion to Quash - Salinas, Reynol |
| 02/25/2014 | Motion to Quash |
| | Motion to Quash - Moran, Fabian |
| 02/25/2014 | Motion to Quash |
| | Motion to Quash - Trujillo, Priscilla |
| 02/27/2014 | E-Filing Forwarded to Court Queue |
| | ORDER SETTING HEARING ON DEFENDAT'S EXCEPTIONS TO PLAINTIFFS' FIRST AMENDED PETITION |
| 02/28/2014 | Court Entries |
| | ORDER SETTING HRG ON DEF'S S/E TO PLTF FIRST AMENDED PTN=SGN; SET FOR 3-6-14 @ 8:00 AM. |
| 02/28/2014 | Order Setting Hearing, Signed |
| | Order Setting Hrg on Defs' Special Exceptions to Pltffs' First Amended Petition |
| 02/28/2014 | Notice Mailed |
| | OSH EMAILED TO EDUARDO RODRIGUEZ, WAYNE MASON, GEORGE MAUZE, AND FAXED TO BOBBY GUERRA;/ KH |
| 03/02/2014 | Certificate |
| | Rule 203 Certification of Written Deposition |
| 03/02/2014 | Certificate |
| | Rule 203 Certification of Written Deposition |
| 03/02/2014 | Certificate |
| | Rule 203 Certification of Written Deposition |
| 03/02/2014 | Certificate |
| | Rule 203 Certification of Written Deposition |
| 03/02/2014 | Certificate |
| | Rule 203 Certification of Written Deposition |
| 03/03/2014 | Letter Received |
| | Ltr to Judge Noe Gonzalez re Amended OSH on Defs Special Exceptions to Pltffs First Amended Petition |
| 03/03/2014 | Order Filed |
| | Amended Order Setting Hearing on Defs Special Exceptions to Pltffs First Amended Petition |
| 03/04/2014 | E-Filing Forwarded to Court Queue |
| | AMENDED ORDER SETTING HEARING ON DEFENDANTS' SPECIAL EXCEPTIONS TO PLAINTIFFS' FIRST AMENDED PETITION |
| 03/04/2014 | Court Entries |
| | AMENDED ORDER SETTING HRG ON DEFS' SPECIAL EXCEPTIONS TO PLTFS' FIRST AMENDED PTN=-SGN; SET FOR 3-26-14 @ 8:00 A.M |
| 03/04/2014 | E-Filing Forwarded to Court Queue |
| | FOWARD ORDER SETTING HEARING;EFILED;AG |
| 03/05/2014 | Court Entries |
| | ORDER SETTING HRG ON PLTF MTN TO QUASH AND PROTECTIVE ORDER AND DEFS' MTN TO COMPEL DEPOS=SGN; SET FOR 3-26-14 @ 8:00 A.M. |
| 03/05/2014 | Order Setting Hearing, Signed |
| | ORDER SETTING HEARING ON PLAINTIFF'S MOTION TO QUASH AND PROTECTIVE ORDER AND DEFENDANT'S MOTION TO COMPEL |

| | |
|---|---|
| 03/05/2014 | **Response** |
| | *Response* |
| 03/05/2014 | **Order Filed** |
| | *ORDER DENYING PLAINTIFFS' MOTION TO QUASH AND FOR PROTECTIVE ORDER* |
| 03/06/2014 | **Notice Mailed** |
| | *EMAILED TO EDUARDO RODRIGUEZ, WAYNE MASON, GEORGE MAUZE, AND MAILED TO BOBBY GUERRA;/ KH* |
| 03/06/2014 | **E-Filing Forwarded to Court Queue** |
| | *FOWARD ORDER ;EFILED;AG* |
| 03/07/2014 | **Clerk's Entry** |
| | *ORDER DENYING PLAINTIFFS' MOTION TO QUASH AND FOR PROTECTIVE ORDER AND GRANTED DEFENDANTS' MOTION TO COMPEL DEPOSITION RETURNED FROM COURT NOT SIGNED WITH NOTATION "HOLD OFF, HEARING PENDING";/ KH* |
| 03/19/2014 | **Motion to Compel** |
| | *Motion to Compel* |
| 03/19/2014 | **E-Filing Forwarded to Court Queue** |
| | *FIAT* |
| 03/19/2014 | **Court Entries** |
| | *FIAT=SGN; PLTF MTN TO COMPEL SET FOR 3-26-14 @ 8:00 A.M.* |
| 03/19/2014 | **Fiat** |
| 03/21/2014 | **Notice Mailed** |
| | *OSH EMAILED TO ALL PARTIES ON CC;/ KH* |
| 03/25/2014 | **Opposition** |
| | *Opposition to Spcl Exc 1st Am Pet* |
| 03/25/2014 | **Amended** |
| | *2nd Amended Pet* |
| 03/25/2014 | **Response** |
| | *Response* |
| 03/26/2014 | **Special Exceptions**  (8:00 AM) (Judicial Officer Gonzalez, Noe) |
| | *& PLTF MTN QUASH/MT COMPEL* |
| | *03/06/2014 Reset by Court to 03/26/2014* |
| 03/26/2014 | **Court Entries** |
| | *Hon. Frank Sabo, George Mauze, Cori Steinmann, Eddie Aleman app'd, agreement on the record reached, no motions taken up, documents held with the Court released to the plaintiffs; lmk* |
| 04/02/2014 | **Court Entries** |
| | *Spoke to Dalia at Frank Sabo's office to inform of discovery documents that needed to be picked up, someone is to pick documents up on 4/3/14; lmk* |
| 04/08/2014 | **Motion to Quash** |
| | *DEFENDANTS' MOTION TO QUASH PLAINTIFFS' NOTICES OF DEPOSITIONS OF TU TRAN D.D.S. DALE MAYFEILD D.D.S. DAVID VIETH D.D.S. PAUL WALKER D.D.S. AND KEVIN MILLER* |
| 04/09/2014 | **Special Exceptions** |
| | *DEFENDANTS' SPECIAL EXCEPTIONS TO PLAINTIFFS' SECOND AMENDED PETITION* |
| 04/10/2014 | **E-Filing Forwarded to Court Queue** |
| | *ORDER SETTING HEARING ON DEFENDANTS' SPECIAL EXCEPTIONS TO PLAINTIFFS' SECOND AMENDED PETITION* |
| 04/10/2014 | **Order Signed** |
| 04/11/2014 | **Court Entries** |
| | *ORDER SETTING HRG ON DEFS S/E TO PLTF 2ND AMD PTN-SGN; SET FOR 5-6-14 @ 8:00 A.M* |
| 04/15/2014 | **Notice Mailed** |
| | *MAILED ORDER SIGNED AND FAXED TO CC ON FILES;AG* |
| 04/22/2014 | **Motion to Compel** |
| | *Plaintiffs' First Amended Motion to Compel Depositions* |
| 04/22/2014 | **Order Signed** |
| | *Order Setting Hearing on Plaintiffs' Motion to Compel Depositions* |
| 04/23/2014 | **E-Filing Forwarded to Court Queue** |
| | *FOWARD ORDER SETTING HEARING ON PLAINTIFF' S FIRST AMENDED MOTION TO COMPEL DEPOSITIONS;AG* |
| 04/23/2014 | **Court Entries** |
| | *ORDER SETTING HRG ON PLTFS' FIRST AMENDED MTN TO COMPEL DEPOSITIONS=SGN; SET FOR 5-6-14 @ 8:00 A.M* |
| 04/24/2014 | **Notice Mailed** |
| | *SENT OSH ON PLAINTIFF' S MOTION TO COMPEL DEPOSITION;EFILED;AG* |
| 05/01/2014 | **Motion for Protective Order, Filed** |
| | *Motion for Leave to File Evidence Supporting Defendants' Motion for Protective Order* |
| 05/01/2014 | **Response** |
| | *Response* |
| 05/06/2014 | **Court Entries** |
| | *Parties app'd case r/s to 5/12/14, no record taken; lmk* |
| 05/12/2014 | **Special Exceptions**  (8:00 AM) (Judicial Officer Gonzalez, Noe) |
| | *& PLTF MTN COMPEL.......@ 1:00 P.M.* |
| | *05/06/2014 Reset by Court to 05/12/2014* |
| 05/12/2014 | **Court Entries** |
| | *Hon. George Mauze, Hon. Frank Sabo, Hon. Eduardo Rodriguez, Hon. Alan Vickery, and Hon. Cori Steinmann app'd, rulings made on special exceptions and Plf's mtn to compel, additional exhibits to be sent to the court for its consideration and written objections to be filed by 5/21/14; lmk* |
| 05/12/2014 | **Court Reporter** |
| | *PX 1-3 (not admitted)* |
| 05/15/2014 | **Court Entries** |
| | *Court received binder containing additional documents pertaining to Plaintiffs' First Amended Motion to Compel the depositions of Kevin Miller and Dale Miller, binder to be placed in Court chambers for Court to review; lmk* |
| 05/19/2014 | **Court Entries** |
| | *ORDER GRANTING PLTFS' FIRST AMENDED MTN TO COMPEL DEPOSITIONS FROM DEFS=SGN NG/ec...HRG HELD ON 5-12-14* |
| 05/19/2014 | **Order Signed** |
| | *ORDER GRANTING PLAINTIFFS' FIRST AMENDED MOTION TO COMPEL DEPOSITIONS FROM DEFENEDANTS* |
| 05/21/2014 | **E-Filing Forwarded to Court Queue** |
| | *ORDER UPON DEFENDANTS SPECIAL EXCEPTIONS NOS. 1 AND 4* |
| 05/21/2014 | **Opposition** |
| | *Ps' Memorandum of of Law in Opposition to Defendants' Special Exceptions* |
| 05/21/2014 | **Order Filed** |

*ORDER UPON DEFENEDANTS' SPECIAL EXCEPTIONS NOS. 1 AND 4*

05/21/2014 **Supplemental**
*SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' SPECIAL EXCEPTIONS RELATING TO ALLEGATIONS OF VIOLATIONS OF LICENSING STATUTES*

05/22/2014 **E-Filing Forwarded to Court Queue**
*ORDER DENYING PLAINTIFFS' FIRST AMENDED MOTION TO COMPEL AND GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER*

05/22/2014 **Order Filed**
*ORDER DENYING PLAINTIFFS' FIRST AMENDED MOTION TO COMPEL AND GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER*

05/23/2014 **Order Filed**
*Propose Order on Special Exceptions*

05/27/2014 **E-Filing Forwarded to Court Queue**
*ORDER SUSTAINING IN PART AND DENYING IN PART DEFENDANTS' SPECIAL EXCEPTIONS TO PLAINTIFFS' SECOND AMENDED PETITION*

05/27/2014 **Vacation Letter Filed by Attorneys**

05/30/2014 **Order Filed**
*Order Sustaining in Part & Denying in Part Ds' Special Exceptions to Plaintiffs' 2nd POP*

06/02/2014 **E-Filing Forwarded to Court Queue**
*ORDER SUSTAINING IN PART AND DENYING IN PART DEFENDANTS' SPECIAL EXCEPTIONS TO PLAINTIFFS' SECOND AMENDED PETITION*

06/04/2014 **Letter Received**
*Letter to Judge Gonzalez re: In Camera Subpoena DWQs*

06/09/2014 **Certificate**
*Rule 203 Certification of Written Deposition*

06/09/2014 **Certificate**
*Rule 203 Certification of Written Deposition*

06/09/2014 **Certificate**
*Rle 203 Certification of Written Deposition*

06/09/2014 **Certificate**
*Rule 203 Certification of Written Deposition*

06/09/2014 **Certificate**
*Rle 203 Certification of Written Deposition*

06/09/2014 **Certificate**
*Rule 203 Certification of Written Deposition*

06/23/2014 **Motion for Docket Control Conference, Filed**

06/23/2014 **E-Filing Forwarded to Court Queue**
*OSH ON PLANTIFFS' MOTION TO SET AND FOR DCO*

06/23/2014 **Order Setting DCC, Signed**

06/25/2014 **Court Entries**
*ORDER SETTING TELEPHONIC HEARING ON PLTFS' MTN TO SET AND FOR DOCKET CONTROL ORDER=SGN; SET FOR 7-21-14 @ 10:00 A.M....ATTYS TO GET TRIAL SETTING AT THIS DCC*

06/25/2014 **E-Filing Forwarded to Court Queue**
*ORDER SUSTAINING IN PART AND DENYING IN PART DEFENDANTS' SPECIAL EXCEPTIONS TO PLAINTIFFS' SECOND AMENDED PETITION*

06/25/2014 **Third Amended**
*Plaintiffs' Third Amended Original Petition*

06/25/2014 **Exhibit**
*Exhibit A to Plaintiffs' Third Amended Original Petition*

06/25/2014 **Vacation Letter Filed by Attorneys**

06/25/2014 **Motion for Clarification & Modification of Prior Order, File**
*Motion for Clarification & Modification of Prior Order*

06/27/2014 **Exhibit**
*Exhibit A to Plaintiffs' Original Petition*

06/27/2014 **Motion to Quash**
*PLAINTIFFS' MOTION TO QUASH OR, IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER ON DEFENDANTS' DEPOSITION BY WRITTEN QUESTIONS TO TEXAS HEALTH AND HUMAN SERVICES-TEXAS STAR MEDICAID PROGRAM PERTAINING TO ALEKSANDRA ESTRADA*

06/27/2014 **Motion to Quash**
*PLAINTIFFS' MOTION TO QUASH OR, IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER ON DEFENDANTS' DEPOSITION BY WRITTEN QUESTIONS TO TEXAS HEALTH AND HUMAN SERVICES-TEXAS STAR MEDICAID PROGRAM PERTAINING TO FRANCISCO TEJADA, JR.*

06/27/2014 **Motion to Quash**
*PLAINTIFFS' MOTION TO QUASH OR, IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER ON DEDFENDANTS' DEPOSITION BY WRITTEN QUESTIONS TO TEXAS HEAL AND HUMAN SERVICES-TEXAS STAR MEDICAID PROGRAM PERTAINING TO DESTINY MORAN*

06/27/2014 **Motion to Quash**
*PLAINTIFFS' MOTION TO QUASH, OR IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER ON DEFENSANTS' DEPOSITION BY WRITTEN QUESTIONS TO TEXAS HEALTH AND HUMAN SERVICES-TEXAS STAR MEDICAID PROGRAM PERTAINING TO XANDER URESTI*

06/27/2014 **Motion to Quash**
*PLAINTIFFS' MOTION TO QUASH, OR IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER ON DEFENSANTS' DEPOSITION BY WRITTEN QUESTIONS TO TEXAS HEALTH AND HUMAN SERVICES-TEXAS STAR MEDICAID PROGRAM PERTAINING TO ADAM SALDANA, II*

06/27/2014 **Motion to Quash**
*PLAINTIFFS' MOTION TO QUASH, OR IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER ON DEFENSANTS' DEPOSITION BY WRITTEN QUESTIONS TO TEXAS HEALTH AND HUMAN SERVICES-TEXAS STAR MEDICAID PROGRAM PERTAINING TO ABDON CUELLAR*

06/27/2014 **Motion to Quash**
*PLAINTIFFS' MOTION TO QUASH, OR IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER ON DEFENSANTS' DEPOSITION BY WRITTEN QUESTIONS TO TEXAS HEALTH AND HUMAN SERVICES-TEXAS STAR MEDICAID PROGRAM PERTAINING TO JOHANA MALDONADO*

06/27/2014 **Motion to Quash**

| | |
|---|---|
| | *PLAINTIFFS' MOTION TO QUASH, OR IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER ON DEFENSANTS' DEPOSITION BY WRITTEN QUESTIONS TO TEXAS HEALTH AND HUMAN SERVICES-TEXAS STAR MEDICAID PROGRAM PERTAINING TO REYNOL SALINAS, JR.* |
| 06/27/2014 | **Motion to Quash** *PLAINTIFFS' MOTION TO QUASH, OR IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER ON DEFENSANTS' DEPOSITION BY WRITTEN QUESTIONS TO TEXAS HEALTH AND HUMAN SERVICES-TEXAS STAR MEDICAID PROGRAM PERTAINING TO KATHERINE REYES* |
| 06/27/2014 | **Motion to Quash** *PLAINTIFFS' MOTION TO QUASH, OR IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER ON DEFENSANTS' DEPOSITION BY WRITTEN QUESTIONS TO TEXAS HEALTH AND HUMAN SERVICES-TEXAS STAR MEDICAID PROGRAM PERTAINING TO JUAN CARLOS CORNEJO* |
| 06/27/2014 | **Motion to Quash** *PLAINTIFFS' MOTION TO QUASH, OR IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER ON DEFENSANTS' DEPOSITION BY WRITTEN QUESTIONS TO TEXAS HEALTH AND HUMAN SERVICES-TEXAS STAR MEDICAID PROGRAM PERTAINING TO ORLANDO CANO* |
| 06/27/2014 | **Motion to Quash** *PLAINTIFFS' MOTION TO QUASH, OR IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER ON DEFENSANTS' DEPOSITION BY WRITTEN QUESTIONS TO TEXAS HEALTH AND HUMAN SERVICES-TEXAS STAR MEDICAID PROGRAM PERTAINING TO AMY GUZMAN* |
| 06/30/2014 | **Court Entries** *ORDER SETTING HRG ON DEFS' MTN FOR CLARIFICATION AND/OR RECONSIDERATION=SGN; SET FOR 8-13-14 @ 8:00 A.M* |
| 06/30/2014 | **Notice Mailed** *OSH FOR DCC EMAILED TO ALL PARTIES ON ORDER;/ KH* |
| 06/30/2014 | **Order Setting Hearing, Signed** *Order Setting Hearing on Defendants Motion for Clarification and or Reconsideration* |
| 07/01/2014 | **Notice Mailed** *Order Setting Hearing on Defendants Motion for Clarification and or Reconsideration FAXED TO ALL PARTIES ON ORDER* |
| 07/03/2014 | **E-Filing Forwarded to Court Queue** *ORDER ON DEF. MOTION TO QUASH* |
| 07/03/2014 | **Motion to Quash** *DEFENDANTS MOTION TO QUASH PLAINTIFFS' NOTICES OF DEPOSITIONS OF KEVIN MILLER AND DOCTORS TU TRAN, DALE MAYFIELD, DAVID KEITH AND PAUL WALKER* |
| 07/03/2014 | **Order Filed** *PROPOSED ORDER ON MOTION TO QUASH* |
| 07/03/2014 | **Motion** *DEFENDANTS MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER* |
| 07/03/2014 | **Order Filed** *Proposed Order* |
| 07/08/2014 | **E-Filing Forwarded to Court Queue** *ORDER GRANTING DEF. MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF* |
| 07/10/2014 | **E-Filing Forwarded to Court Queue** *ORDER RESETTING HEARING ON DEF. MOTION FOR CLARIFICATION* |
| 07/10/2014 | **Notice** |
| 07/11/2014 | **Court Entries** *ORDER RESETING HRG ON DEF'S MTN FOR CLARIFICATION AND/OR RECONSIDERATION-SGN; SET FOR 8-18-14 @ 8:00 A.M* |
| 07/11/2014 | **Order Signed** *ORDER RESETING HRG ON DEF'S MTN FOR CLARIFICATION AND/OR RECONSIDERATION-* |
| 07/11/2014 | **Notice Sent** *VIA EMAIL TO;TBAGBY@MAUZEBAGBYLAW.COM,WAYNE.MASON@SEDGWICKLAW.COM; ERODRIGUEZ@ATLASHALL.COM FAXED TO RD BOBBY GUERRA* |
| 07/16/2014 | **Notice** *Rule 203 Filing Certificate of Written Deposition* |
| 07/16/2014 | **Notice** *Rule 203 Filing Certificate of Written Deposition* |
| 07/16/2014 | **Notice** *Rule 203 Filing Certificate of Written Deposition* |
| 07/16/2014 | **Notice** *Rule 203 Filing Certificate of Written Deposition* |
| 07/18/2014 | **Response** *TO PLAINTIFFS' MOTION FOR ENTRY OF DOCKET CONTROL ORDER* |
| 07/18/2014 | **Order Filed** *SECOND DOCKET CONTROL ORDER* |
| 07/21/2014 | **Docket Control Conference Hearing/Telephonic** (10:00 AM) (Judicial Officer Gonzalez, Noe) |
| 07/21/2014 | **E-Filing Forwarded to Court Queue** *SECOND DOCKET CONTROL ORDER* |
| 07/22/2014 | **E-Filing Forwarded to Court Queue** *SECOND DOCKET CONTROL ORDER* |
| 07/29/2014 | **Clerk's Entry** *SECOND DCO RETURNED FROM COURT NOT SIGNED* |
| 08/18/2014 | **Motion** (8:00 AM) (Judicial Officer Gonzalez, Noe) *FOR CLARIFICATION AND/OR RECONSIDERATION* *08/13/2014 Reset by Court to 08/18/2014* |
| 08/18/2014 | **Court Entries** *Hon. George Mauze, Hon. Tom Bagby, Hon. Bobby Guerra, Hon. Eddie Rodriguez, Hon. Cori Steinmann and Hon. Alan Vickery app'd, Court found order signed on 5-19-14 was signed in error, Court to review briefing and make a ruling on remaining mtns to compel depositions that were not already granted; lmk* |
| 08/19/2014 | **Court Entries** *2ND DOCKET CONTROL ORDER=SGN NG/ec...PTH: 5-5-15 & TM: 5-11-15 @ 8:00 A.M* |
| 08/19/2014 | **Docket Control Order, Signed** *SECOND DOCKET CONTROL ORDER, SIGNED* |
| 08/20/2014 | **E-Filing Forwarded to Court Queue** *ORDER DENYING DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND GRANTING PLAINTIFFS' FIRST AMENDED MOTION TO COMPEL DEPOSITIONS OF DALE MAYFIELD, D.D.S. AND KEVIN MILLER* |
| 08/20/2014 | **E-Filing Forwarded to Court Queue** |

| | |
|---|---|
| | *ORDER DENYING PLAINTIFF'S FIRST AMENDED MOTION TO COMPEL & GRANTING DEF. MOTION FOR PROTECTIVE ORDER* |
| 08/20/2014 | Order Filed |
| | *ORDER DENYING DEF.'S MOTION FOR PROTECTIVE ORDER AND GRANTING PLAINTIFFS' FIRST AMENDED MOTION TO COMPEL DEPOSITIONS OF DALE MAYFIELD, DDS AND KEVIN MILLER* |
| 08/20/2014 | Order Filed |
| | *ORDER DENYING PLAINTIFFS' FIRST AMENDED MOTION TO COMPEL AND GRANTING DEF. MOTION FOR PROTECTIVE ORDER* |
| 08/21/2014 | Notice Sent |
| | *BY EMAIL TO GEORGE W. MAUZE,II AND CORI C. STEINMANN, NOTIFYING OF SIGNED SECOND DOCKET CONTROL ORDER, SIGNED* |
| 08/21/2014 | Notice |
| | *RETURNED ERRATA SHEET OF PRISCILLA TRUJILLO* |
| 08/21/2014 | Notice |
| | *RETURNED ERRATA SHEET OF REYNOL SALINAS* |
| 08/21/2014 | Notice |
| | *RETURNED ERRATA SHEET OF ELIZABETH GONZALEZ* |
| 08/21/2014 | Notice |
| | *RETURNED ERRATA SHEET OF PAULA ANTU* |
| 08/21/2014 | Notice |
| | *RETURNED ERRATA SHEET OF MARIO CUELLAR* |
| 08/25/2014 | Notice |
| | *Letter to Judge Gonzalez* |
| 08/26/2014 | Certificate |
| | *Rule 203 Filing Certificate of Written Deposition* |
| 08/26/2014 | Certificate |
| | *Rule 203 Filing Certificate of Written Deposition* |
| 08/26/2014 | Certificate |
| | *Rule 203 Filing Certificate of Written Deposition* |
| 08/26/2014 | Certificate |
| | *Rule 203 Filing Certificate of Written Deposition* |
| 08/27/2014 | Notice |
| | *RETURNED ERRATA SHEET OF MARCO REYES* |
| 09/05/2014 | Exhibit |
| | *RECEIPT OF TRIAL COURT EXHIBITS RECEIVED FROM LISA KINSEL -370TH OFFICIAL COURT REPORTER* |
| 09/08/2014 | Court Entries |
| | *Called office of Mauze and Bagby, Spoke to Angie regarding Ruling on Plf's First Amended Mtn to Compel Depos, otbs; lmk* |
| 09/08/2014 | Notice |
| | *Letter to Judge Gonzalez re: DWQ* |
| 09/10/2014 | Court Entries |
| | *Rosemary w/ Frank Sabo's office picked up tax records that were requested by Angie Guerrero w/ Mauze law firm; lmk* |
| 09/11/2014 | E-Filing Forwarded to Court Queue |
| | *ORDER UPON PLAINTIFFS' FIRST AMENDED MOTION TO COMPEL* |
| 09/15/2014 | Court Entries |
| | *Order Upon Plf's First Amended Mtn to Compel of Dale Mayfield, DDS and Kevin Miller=SGN/NG; lmk* |
| 09/15/2014 | Order Signed |
| | *SIGNED, ORDER UPON PLAINTIFFS' FIRST AMENDED MOTION TO COMPEL DEPOSITIONS OF DALE MAYFIELD, D.D.S. AND KEVIN MILLER* |
| 09/16/2014 | Notice Sent |
| | *TO ALL ATTORNEYS LISTED ON ORDER BY EMAIL NOTIFYING OF SIGNED ORDER* |
| 09/17/2014 | Notice |
| | *Ps' 3rd M/Compel Against DB* |
| 09/17/2014 | Notice |
| | *Ps' 3rd M/Compel against NCDR* |
| 09/17/2014 | Notice |
| | *Ps' M/Compel Disc fr KSPC* |
| 09/17/2014 | Certificate |
| | *Rule 203 Filing Certificate of Written Deposition* |
| 09/17/2014 | Notice |
| | *Ps' M/Compel Disc fr KSPC* |
| 09/22/2014 | Certificate |
| | *Rule 203 Filing Certificate of Written Deposition* |
| 10/02/2014 | Certificate |
| | *RETURNED ERRATA SHEET OF ISABEL MALDONADO* |
| 10/02/2014 | Certificate |
| | *RETURNED ERRATA SHEET OF ANA LAURA CORNEJO* |
| 10/02/2014 | Certificate |
| | *RETURNED ERRATA SHEET OF SCARLETT AYALA* |
| 10/02/2014 | Certificate |
| | *RETURNED ERRATA SHEET OF MARIA GAYTAN* |
| 10/20/2014 | Notice |
| | *NOTICE TO COURT OF FILING OF MOTION TO TRANSFER UNDER RULE 13, RULES OF JUDICIAL ADMINISTRATION (Notice of MDL Filing)* |
| 10/30/2014 | Motion to Quash |
| | *DEF, EDWARD HO, D.D.S.'S MOTION TO QUASH DEPOSITION* |
| 10/30/2014 | Motion |
| | *DEF. MOTION FOR STAY* |
| 11/03/2014 | E-Filing Forwarded to Court Queue |
| | *OSH ON EXPEDITED HEARING* |
| 11/03/2014 | Request |
| | *DEFENDANTS REQUEST FOR EXPEDITED HEARING* |
| 11/03/2014 | Court Entries |
| | *ORDER SETTING HRG=SGN; DEFS REQUEST FOR EXPEDITED HRG ON DEF. MTN FOR STAY=SET FOR 11-10-14 @ 8:00 A.M.* |
| 11/03/2014 | Order Setting Hearing, Signed |
| | *ON DEF.S REQUEST FOR EXPEDITED HEARING* |

| 11/03/2014 | Order Filed |
| | *ORDER GRANTING DEF. MOTION FOR STAY* |
| 11/04/2014 | Notice Sent |
| | *OSH ON DEF.'S EXPEDITED HEARING E-SERVED* |
| 11/04/2014 | E-Filing Forwarded to Court Queue |
| | *ORDER GRANTING DEF. MOTION TO STAY* |
| 11/04/2014 | Order Filed |
| | *ORDER DENYING DEF. MOTION FOR STAY* |
| 11/05/2014 | Clerk's Entry |
| | *ORDER GRANTING DEF. MOTION FOR STAY RETURNED FROM COURT NOT SIGNED WITH NOTATION "HEARING PENDING"* |
| 11/10/2014 | Motion to Stay (8:00 AM) (Judicial Officer Gonzalez, Noe) |
| | *& DEFS REQ. FOR EXPEDITED HRG* |
| 11/10/2014 | Court Entries |
| | *Hon. Frank Sabo, Hon. Eduardo Rodriguez, and Hon. Alan Vickery app'd. Written discovery not stayed. Court allowing depos to be taken. First depo may cover corporate structure and treatment. Any depos after that will be case specific and only cover treatment; lmk* |
| 11/11/2014 | Order Filed |
| | *ORDER ON DEFENDANTS' MOTION TO STAY* |
| 11/12/2014 | E-Filing Forwarded to Court Queue |
| | *ORDER ON DEF.'S MOTION TO STAY* |
| 11/17/2014 | E-Filing Forwarded to Court Queue |
| | *ORDER UPON DEFENDANTS' SECOND MOTION TO COMPEL MORE COMPLETE DISCOVERY RESPONSES FROM PLAINTIFFS* |
| 11/17/2014 | Letter Received |
| | *Ltr to Honorable Noe Gonzales* |
| 11/17/2014 | Order Filed |
| | *ORDER UPON DEFENDANTS' SECOND MOTION TO COMPEL MORE COMPLETE DISCOVERY RESPONSES FROM PLAINTIFFS* |
| 11/17/2014 | Motion |
| | *PLAINTIFFS' MOTION TO AMEND CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER OR, ALTERNATIVELY, MOTION FOR SANCTIONS OR, ALTERNATIVELY, FOR DETERMINATION OF CONFIDENTIALITY* |
| 11/19/2014 | Court Entries |
| | *ORDER SETTING HRG ON PLTFS' MTN TO AMEND CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER OR ALT., MTN FOR SANCTIONS OR ALTERNATIVELY FOR DETERMINATION OF CONFIDENTIALITY-SGN; SET FOR 12-8-14 @ 8:00 A.M.* |
| 11/19/2014 | Order Setting Hearing, Signed |
| | *Order Setting Hearing - Plaintiffs' M-to Amend Confidentiality Agrmt* |
| 12/01/2014 | E-Filing Forwarded to Court Queue |
| | *ORDER UPON DEF.'S MOTION TO STAY* |
| 12/01/2014 | Order Filed |
| | *Order Upon Defendants' Motion to Stay* |
| 12/05/2014 | Notice Sent |
| | *OSH ON MOTION TO AMEND AGREEMENT* |
| 12/05/2014 | Rule 11 Agreement, Filed |
| 12/08/2014 | Motion (8:01 AM) (Judicial Officer Gonzalez, Noe) |
| | *TO AMEND CONFIDENTIALITY AGREEMENT; MT SANCTIONS...pass by rule 11..already filed* |
| | *12/08/2014 Reset by Court to 12/08/2014* |
| | *12/16/2014 Reset by Court to 12/08/2014* |
| 12/10/2014 | Letter Received |
| 12/15/2014 | Rule 11 Agreement, Filed |
| 12/23/2014 | Certificate |
| | *Rule 203 Filing Certificate of Written Deposition* |
| 12/23/2014 | Certificate |
| | *Rule 203 Filing Certificate of Written Deposition* |
| 12/23/2014 | Certificate |
| | *Rule 203 Filing Certificate of Written Deposition* |
| 01/07/2015 | Certificate |
| | *Reporter's Certification Oral Videotaped Deposition of Richard Manwaring, D.D.S.* |
| 01/12/2015 | Notice |
| | *Plaintiffs' Notice of Designation of Experts* |
| 01/12/2015 | Certificate of Written Discovery |
| 01/14/2015 | Amended |
| | *PLAINTIFFS' FOURTH AMENDED PETITION* |
| 01/15/2015 | Motion to Compel |
| | *Ps' 3rd Amd'd M/Compel Against D DOB* |
| 01/15/2015 | Motion to Compel |
| | *Ps' 3rd Amd'd M/Compel Against D NCDR* |
| 01/15/2015 | Court Entries |
| | *ORDER SETTING HRG UPON PLTFS AMENDED 3RD MTN TO COMPEL AGAINST DE DENTISTRY OF BROWNSVILLE PC D/B/A KOOL SMILES PLTFS' AMENDED 3RD MTN TO COMPEL AGAINST NCDR LLC D/B/A KOOL SMILES AND PLTFS' MTN TO COMPEL DISCOVERY FROM KOOL SMILES, PC=SGN;....SET FOR 2-3-15 @8:00 A.M* |
| 01/15/2015 | Order Setting Hearing, Signed |
| 01/16/2015 | Notice Sent |
| | *OF SIGNED ORDER ESERVED TO ATTORNEYS* |
| 01/20/2015 | Order Filed |
| | *Proposed Order* |
| 01/21/2015 | E-Filing Forwarded to Court Queue |
| | *ORDER SETTING HEARING ON PLAINTIFF'S MOTION TO AMEND CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER OR, ALTERNATIVELY, MOTION FOR SANCTIONS OR, ALTERNATIVELY, FOR DETERMINATION OF CONFIDENTIALITY* |
| 01/21/2015 | Court Entries |
| | *ORDER SETTING HRG ON PLTFS' MTN TO AMEND CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER OR ALTERNATIVELY, MTN FOR SANCTIONS OR ALTERNATIVE FOR DETERMINATION OF CONFIDENTIALITY=SGN; SET FOR 2-24-15 @ 8:00 A.M* |
| 01/21/2015 | Notice Sent |
| 01/28/2015 | Notice |
| | *NOTICE OF STAY* |
| 02/03/2015 | Motion to Compel (8:01 AM) (Judicial Officer Gonzalez, Noe) |
| | *(3) MTNS COMPEL* |

| | |
|---|---|
| | *02/03/2015 Reset by Court to 02/03/2015* |
| 02/04/2015 | **Certificate** |
| | *Reporter's Certificate Oral Videotaped Deposition of Marc Thomas, D.D.S.* |
| 02/09/2015 | **Certificate** |
| | *Reporter's Certificate Oral Videotaped Deposition of Aishwarya Chandesh* |
| 02/10/2015 | **Certificate** |
| | *Reporter's Certificate Volume 1 Oral Videotaped Deposition of Edward Ho, D.D.S.* |
| 02/12/2015 | **Deposition** |
| | *DEPOSITION OF FREISI OLIVAR TAKEN 12.19.14* |
| 02/18/2015 | **Certification** |
| | *REPORTERS CERTIFICATION OF FRANCISCA GUZMAN DECEMBER 18, 2014* |
| 02/18/2015 | **Certification** |
| | *REPORTERS CERTIFICATION OF GUADALUPE CEPEDA 12.18.14* |
| 02/19/2015 | **Notice** |
| | *NOTICE OF WITHDRAWL OF CORI C. STEINMANN AS COUNSEL FOR DEFENDANTS* |
| 02/24/2015 | **Motion** (8:01 AM) (Judicial Officer Gonzalez, Noe) |
| | *AMEND CONFIDENTIALITY AGREEMENT;PROT.ORDER-MT SANCTIONS* |
| | *02/24/2015 Reset by Court to 02/24/2015* |
| 03/23/2015 | **Certificate** |
| | *Rule 203 Certification of Written Deposition* |
| 03/27/2015 | **Notice** |
| | *NOTICE OF TRANSFER TO MDL PRETRIAL COURT* |
| 04/01/2015 | **Notice** |
| | *APPOINTMENT OF PRETRIAL JUDGE* |
| 04/02/2015 | **Motion for Mediation, Filed** |
| 04/02/2015 | **Order Filed** |
| | *Proposed Order* |
| 04/02/2015 | **Order Filed** |
| | *Proposed Order* |
| 04/07/2015 | **E-Filing Forwarded to Court Queue** |
| | *ORDER SETTING HEARING ON PLAINTIFFS' MOTION FOR MEDIATION* |
| 04/08/2015 | **Court Entries** |
| | *ORDER SETTING HRG ON PLTFS' MTN FOR MEDIATION=SGN; SET FOR 4-16-15 @ 8:15 A.M.* |
| 04/08/2015 | **Order Setting Hearing, Signed** |
| | *OSH ON PLAINTIFFS' MOTION FOR MEDIATION* |
| 04/10/2015 | **Notice Sent** |
| | *OSH ON PLAINTIFFS' MOTION FOR MEDIATION E-SERVED TO ALL ATTYS ON ORDER* |
| 04/15/2015 | **Certificate** |
| | *RULE 203 FILING RECORDS FROM PABLO R. PENA, DDS* |
| 04/16/2015 | **Phone Conference With Court** (8:00 AM) (Judicial Officer Gonzalez, Noe) |
| | *REG. "PLAINTIFFS' MTN FOR MEDIATION" 8:15* |
| 05/01/2015 | **Notice** |
| | *Letter to Judge Gonzalez* |
| 05/05/2015 | **Pre Trial Hearing** (8:01 AM) (Judicial Officer Gonzalez, Noe) |
| | *05/05/2015 Reset by Court to 05/05/2015* |
| 05/11/2015 | **Trial on Merits** (8:01 AM) (Judicial Officer Gonzalez, Noe) |
| | *2-3 WEEKS* |
| | *05/11/2015 Reset by Court to 05/11/2015* |
| 06/09/2015 | **Motion** |
| | *PLAINTIFFS' MOTION TO ENTER CASE MANAGEMENT ORDER NO. ONE* |
| 06/09/2015 | **Motion** |
| | *PLAINTIFFS' MOTION TO APPOINT A MASTER* |
| 06/09/2015 | **Order Filed** |
| | *Order Setting Hearing* |
| 06/09/2015 | **E-Filing Forwarded to Court Queue** |
| | *OSH* |
| 06/09/2015 | **Court Entries** |
| | *OSH=SGN; MTN TO AMD CONFIDENTIALITY AGREEMENT AND PROT/ORDER; PLTF MTN TO ENTER CASE MANAGEMENT; PLTF MTN TO APPT MASTER=....SET FOR 6-15-15 @ 8:00 A.M.* |
| 06/09/2015 | **Order Setting Hearing, Signed** |
| 06/09/2015 | **Notice Sent** |
| 06/15/2015 | **Hearing** (8:00 AM) (Judicial Officer Gonzalez, Noe) |
| | *MT AMD CONFIDENT AGREEMENT-PROT-ORD; MT ENTER CASE MANAGEMENT; MT APPT MASTER* |
| 06/15/2015 | **Response** |
| | *DEF.'S RESPONSE TO PLAINTIFFS' MOTION TO AMEND CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER AND ALTERNATIVELY MOTION FOR SANCTIONS OR, ALTERNATIVELY, FOR DETERMINATION OF CONFIDENTIALITY* |
| 06/15/2015 | **Amended** |
| | *AMENDED EXHIBIT B* |
| 06/15/2015 | **Court Entries** |
| | *Hon. George Mauze, Hon. Michael Flanagan, Hon. J. Hernandez, Hon. Eduardo Rodriguez, Hon. Alan Vickery app'd, hearing held, parties to submit briefing on discovery doctrine by Friday(6-19-15), and parties have an opportunity to respond by Tuesday (6-23-15); lmk* |
| 06/15/2015 | **Court Reporter** |
| | *PX 1-9 (sealed) and Exhibit A admitted at 6-15-15 hrg; lmk* |
| 06/19/2015 | **Memorandum** |
| | *Plaintiffs' Memorandum of Law* |
| 06/19/2015 | **Supplemental** |
| | *DEF.'S SUPPLEMEMNTAL BRIEF IN RESPONSE TO PLAINTIFFS' MOTION TO AMEND CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER OR, ALTERNATIVELY MOTION FOR SANCTIONS OR, ALTERNATIVELY, FOR DETERMINATION OF CONFIDENTIALITY* |
| 06/23/2015 | **Response** |
| | *DEF.'S RESPONSE TO PLAINTIFFS' MEMORANDUM OF LAW REGARDING PLAINTIFFS' MOTION TO AMEND CONFIDENTIALITY AGREEMENT AND PROTECTIVE* |

| | | | |
|---|---|---|---|
| 06/26/2015 | Notice | | |
| | *Notice of Appearance of Counsel* | | |
| 06/30/2015 | Order Filed | | |
| | *ORDER GRANTING PLAINTIFFS' MOTION TO AMEND STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER* | | |
| 06/30/2015 | E-Filing Forwarded to Judge's Queue | | |
| | *Order Granting Plf's Mtn to Amend Stipulated Confidentiality Agreement and Protective Order* | | |
| 06/30/2015 | Court Entries | | |
| | *Order Granting Plf's Mtn to Amend Stipulated Confidentiality Agreement and Protective Order=SGN/NG; lmk* | | |
| 06/30/2015 | Order Signed | | |
| | *ORDER GRANTING PLAINTIFFS' MOTION TO AMEND STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER* | | |
| 07/07/2015 | Notice | | |
| | *Notice* | | |
| 07/07/2015 | Notice | | |
| | *Notice* | | |

---

### FINANCIAL INFORMATION

| | | | | |
|---|---|---|---|---|
| | Attorney GUERRA, ROBERTO D. | | | |
| | Total Financial Assessment | | | 108.00 |
| | Total Payments and Credits | | | 108.00 |
| | **Balance Due as of 07/13/2015** | | | **0.00** |
| 02/27/2013 | Transaction Assessment | | | 30.00 |
| 02/27/2013 | Payment | Receipt # DC-2013-4243 | Mauze Law Firm | (30.00) |
| 08/27/2013 | Transaction Assessment | | | 78.00 |
| 08/27/2013 | Payment | Receipt # DC-2013-21138 | MAUZE LAW FIRM, | (78.00) |

| | | | | |
|---|---|---|---|---|
| | Defendant DENTISTRY OF BROWNSVILLE, P.C. D/B/A KOOL SMILES | | | |
| | Total Financial Assessment | | | 20.00 |
| | Total Payments and Credits | | | 20.00 |
| | **Balance Due as of 07/13/2015** | | | **0.00** |
| 02/28/2014 | Transaction Assessment | | | 2.00 |
| 02/28/2014 | EFile Payments from TexFile | Receipt # DC-2014-16208 | DENTISTRY OF BROWNSVILLE, P.C. D/B/A KOOL SMILES | (2.00) |
| 03/04/2014 | Transaction Assessment | | | 2.00 |
| 03/04/2014 | EFile Payments from TexFile | Receipt # DC-2014-17047 | DENTISTRY OF BROWNSVILLE, P.C. D/B/A KOOL SMILES | (2.00) |
| 03/04/2014 | Transaction Assessment | | | 2.00 |
| 03/04/2014 | EFile Payments from TexFile | Receipt # DC-2014-17266 | DENTISTRY OF BROWNSVILLE, P.C. D/B/A KOOL SMILES | (2.00) |
| 05/02/2014 | Transaction Assessment | | | 2.00 |
| 05/02/2014 | EFile Payments from TexFile | Receipt # DC-2014-39381 | DENTISTRY OF BROWNSVILLE, P.C. D/B/A KOOL SMILES | (2.00) |
| 05/02/2014 | Transaction Assessment | | | 2.00 |
| 05/02/2014 | EFile Payments from TexFile | Receipt # DC-2014-39385 | DENTISTRY OF BROWNSVILLE, P.C. D/B/A KOOL SMILES | (2.00) |
| 06/30/2014 | Transaction Assessment | | | 2.00 |
| 06/30/2014 | EFile Payments from TexFile | Receipt # DC-2014-62207 | DENTISTRY OF BROWNSVILLE, P.C. D/B/A KOOL SMILES | (2.00) |
| 08/20/2014 | Transaction Assessment | | | 2.00 |
| 08/20/2014 | EFile Payments from TexFile | Receipt # DC-2014-77332 | DENTISTRY OF BROWNSVILLE, P.C. D/B/A KOOL SMILES | (2.00) |
| 10/31/2014 | Transaction Assessment | | | 2.00 |
| 10/31/2014 | EFile Payments from TexFile | Receipt # DC-2014-97088 | DENTISTRY OF BROWNSVILLE, P.C. D/B/A KOOL SMILES | (2.00) |
| 11/03/2014 | Transaction Assessment | | | 2.00 |
| 11/03/2014 | EFile Payments from TexFile | Receipt # DC-2014-97457 | DENTISTRY OF BROWNSVILLE, P.C. D/B/A KOOL SMILES | (2.00) |
| 11/14/2014 | Transaction Assessment | | | 2.00 |
| 11/14/2014 | EFile Payments from TexFile | Receipt # DC-2014-100955 | DENTISTRY OF BROWNSVILLE, P.C. D/B/A KOOL SMILES | (2.00) |

| | | | | |
|---|---|---|---|---|
| | Defendant HO, EDWARD, DDS | | | |
| | Total Financial Assessment | | | 2.00 |
| | Total Payments and Credits | | | 2.00 |
| | **Balance Due as of 07/13/2015** | | | **0.00** |
| 10/30/2014 | Transaction Assessment | | | 2.00 |
| 10/30/2014 | EFile Payments from TexFile | Receipt # DC-2014-96726 | HO, EDWARD | (2.00) |

| | | | | |
|---|---|---|---|---|
| | Defendant Kool Smiles, P.C. | | | |
| | Total Financial Assessment | | | 28.00 |
| | Total Payments and Credits | | | 28.00 |

7/13/2015

| | | | | |
|---|---|---|---|---|
| | **Balance Due as of 07/13/2015** | | | **0.00** |
| 04/10/2014 | Transaction Assessment | | | 2.00 |
| 04/10/2014 | EFile Payments from TexFile | Receipt # DC-2014-30772 | Kool Smiles, P.C. | (2.00) |
| 06/26/2014 | Transaction Assessment | | | 2.00 |
| 06/26/2014 | EFile Payments from TexFile | Receipt # DC-2014-61226 | Kool Smiles, P.C. | (2.00) |
| 07/16/2014 | Transaction Assessment | | | 2.00 |
| 07/16/2014 | EFile Payments from TexFile | Receipt # DC-2014-67113 | Kool Smiles, P.C. | (2.00) |
| 07/16/2014 | Transaction Assessment | | | 2.00 |
| 07/16/2014 | EFile Payments from TexFile | Receipt # DC-2014-67115 | Kool Smiles, P.C. | (2.00) |
| 08/21/2014 | Transaction Assessment | | | 2.00 |
| 08/21/2014 | EFile Payments from TexFile | Receipt # DC-2014-77944 | Kool Smiles, P.C. | (2.00) |
| 08/21/2014 | Transaction Assessment | | | 2.00 |
| 08/21/2014 | EFile Payments from TexFile | Receipt # DC-2014-77946 | Kool Smiles, P.C. | (2.00) |
| 08/21/2014 | Transaction Assessment | | | 2.00 |
| 08/21/2014 | EFile Payments from TexFile | Receipt # DC-2014-77948 | Kool Smiles, P.C. | (2.00) |
| 08/21/2014 | Transaction Assessment | | | 2.00 |
| 08/21/2014 | EFile Payments from TexFile | Receipt # DC-2014-77950 | Kool Smiles, P.C. | (2.00) |
| 08/21/2014 | Transaction Assessment | | | 2.00 |
| 08/21/2014 | EFile Payments from TexFile | Receipt # DC-2014-77953 | Kool Smiles, P.C. | (2.00) |
| 08/27/2014 | Transaction Assessment | | | 2.00 |
| 08/27/2014 | EFile Payments from TexFile | Receipt # DC-2014-79513 | Kool Smiles, P.C. | (2.00) |
| 10/03/2014 | Transaction Assessment | | | 2.00 |
| 10/03/2014 | EFile Payments from TexFile | Receipt # DC-2014-89660 | Kool Smiles, P.C. | (2.00) |
| 10/03/2014 | Transaction Assessment | | | 2.00 |
| 10/03/2014 | EFile Payments from TexFile | Receipt # DC-2014-89662 | Kool Smiles, P.C. | (2.00) |
| 10/03/2014 | Transaction Assessment | | | 2.00 |
| 10/03/2014 | EFile Payments from TexFile | Receipt # DC-2014-89664 | Kool Smiles, P.C. | (2.00) |
| 10/03/2014 | Transaction Assessment | | | 2.00 |
| 10/03/2014 | EFile Payments from TexFile | Receipt # DC-2014-89666 | Kool Smiles, P.C. | (2.00) |

| | | | | |
|---|---|---|---|---|
| | **Defendant NCDR, LLC D/B/A KOOL SMILES** | | | |
| | Total Financial Assessment | | | 113.00 |
| | Total Payments and Credits | | | 113.00 |
| | **Balance Due as of 07/13/2015** | | | 0.00 |
| 01/21/2014 | Transaction Assessment | | | 2.00 |
| 01/21/2014 | EFile Payments from TexFile | Receipt # DC-2014-4725 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 02/24/2014 | Transaction Assessment | | | 2.00 |
| 02/24/2014 | EFile Payments from TexFile | Receipt # DC-2014-14302 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 02/24/2014 | Transaction Assessment | | | 2.00 |
| 02/24/2014 | EFile Payments from TexFile | Receipt # DC-2014-14626 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 02/24/2014 | Transaction Assessment | | | 2.00 |
| 02/24/2014 | EFile Payments from TexFile | Receipt # DC-2014-14627 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 02/24/2014 | Transaction Assessment | | | 2.00 |
| 02/24/2014 | EFile Payments from TexFile | Receipt # DC-2014-14629 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 03/03/2014 | Transaction Assessment | | | 2.00 |
| 03/03/2014 | EFile Payments from TexFile | Receipt # DC-2014-16523 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 03/05/2014 | Transaction Assessment | | | 2.00 |
| 03/05/2014 | EFile Payments from TexFile | Receipt # DC-2014-17547 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 03/07/2014 | Transaction Assessment | | | 2.00 |
| 03/07/2014 | EFile Payments from TexFile | Receipt # DC-2014-18276 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 03/25/2014 | Transaction Assessment | | | 2.00 |
| 03/25/2014 | EFile Payments from TexFile | Receipt # DC-2014-24147 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 04/09/2014 | Transaction Assessment | | | 2.00 |
| 04/09/2014 | EFile Payments from TexFile | Receipt # DC-2014-30173 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 05/22/2014 | Transaction Assessment | | | 2.00 |
| 05/22/2014 | | Receipt # DC-2014-47793 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |

| | | | | |
|---|---|---|---|---|
| | EFile Payments from TexFile | | | |
| 05/27/2014 | Transaction Assessment | | | 2.00 |
| 05/27/2014 | EFile Payments from TexFile | Receipt # DC-2014-49161 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 05/27/2014 | Transaction Assessment | | | 2.00 |
| 05/27/2014 | EFile Payments from TexFile | Receipt # DC-2014-49274 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | EFile Payments from TexFile | Receipt # DC-2014-55020 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 06/26/2014 | Transaction Assessment | | | 37.00 |
| 06/26/2014 | EFile Payments from TexFile | Receipt # DC-2014-61229 | NCDR, LLC D/B/A KOOL SMILES | (37.00) |
| 07/08/2014 | Transaction Assessment | | | 2.00 |
| 07/08/2014 | EFile Payments from TexFile | Receipt # DC-2014-64057 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 07/08/2014 | Transaction Assessment | | | 2.00 |
| 07/08/2014 | EFile Payments from TexFile | Receipt # DC-2014-64064 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 07/08/2014 | Transaction Assessment | | | 2.00 |
| 07/08/2014 | EFile Payments from TexFile | Receipt # DC-2014-64074 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 07/29/2014 | Transaction Assessment | | | 2.00 |
| 07/29/2014 | EFile Payments from TexFile | Receipt # DC-2014-70868 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 08/21/2014 | Transaction Assessment | | | 2.00 |
| 08/21/2014 | EFile Payments from TexFile | Receipt # DC-2014-77891 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 08/27/2014 | Transaction Assessment | | | 2.00 |
| 08/27/2014 | EFile Payments from TexFile | Receipt # DC-2014-79192 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 08/27/2014 | Transaction Assessment | | | 2.00 |
| 08/27/2014 | EFile Payments from TexFile | Receipt # DC-2014-79195 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 09/19/2014 | Transaction Assessment | | | 2.00 |
| 09/19/2014 | EFile Payments from TexFile | Receipt # DC-2014-85670 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 09/23/2014 | Transaction Assessment | | | 2.00 |
| 09/23/2014 | EFile Payments from TexFile | Receipt # DC-2014-86661 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 10/21/2014 | Transaction Assessment | | | 2.00 |
| 10/21/2014 | EFile Payments from TexFile | Receipt # DC-2014-93673 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 11/04/2014 | Transaction Assessment | | | 2.00 |
| 11/04/2014 | EFile Payments from TexFile | Receipt # DC-2014-97669 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 11/05/2014 | Transaction Assessment | | | 2.00 |
| 11/05/2014 | EFile Payments from TexFile | Receipt # DC-2014-97997 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 12/23/2014 | Transaction Assessment | | | 2.00 |
| 12/23/2014 | EFile Payments from TexFile | Receipt # DC-2014-111665 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 01/29/2015 | Transaction Assessment | | | 2.00 |
| 01/29/2015 | EFile Payments from TexFile | Receipt # DC-2015-7053 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 02/19/2015 | Transaction Assessment | | | 2.00 |
| 02/19/2015 | EFile Payments from TexFile | Receipt # DC-2015-13047 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 03/24/2015 | Transaction Assessment | | | 2.00 |
| 03/24/2015 | EFile Payments from TexFile | Receipt # DC-2015-22498 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 03/30/2015 | Transaction Assessment | | | 2.00 |
| 03/30/2015 | EFile Payments from TexFile | Receipt # DC-2015-23832 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 04/16/2015 | Transaction Assessment | | | 2.00 |
| 04/16/2015 | EFile Payments from TexFile | Receipt # DC-2015-28817 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 06/15/2015 | Transaction Assessment | | | 2.00 |
| 06/15/2015 | EFile Payments from TexFile | Receipt # DC-2015-44513 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 06/15/2015 | Transaction Assessment | | | 2.00 |
| 06/15/2015 | EFile Payments from TexFile | Receipt # DC-2015-44515 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 06/19/2015 | Transaction Assessment | | | 2.00 |
| 06/19/2015 | EFile Payments from TexFile | Receipt # DC-2015-46416 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 06/23/2015 | Transaction Assessment | | | 2.00 |
| 06/23/2015 | EFile Payments from TexFile | Receipt # DC-2015-47200 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 07/08/2015 | Transaction Assessment | | | 2.00 |
| 07/08/2015 | EFile Payments from TexFile | Receipt # DC-2015-50795 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
| 07/08/2015 | Transaction Assessment | | | 2.00 |

| 07/08/2015 | EFile Payments from TexFile | Receipt # DC-2015-50797 | NCDR, LLC D/B/A KOOL SMILES | (2.00) |
|---|---|---|---|---|

**Defendant Olivar, Freisi**
Total Financial Assessment 2.00
Total Payments and Credits 2.00
**Balance Due as of 07/13/2015** **0.00**

| 02/13/2015 | Transaction Assessment | | | 2.00 |
|---|---|---|---|---|
| 02/13/2015 | EFile Payments from TexFile | Receipt # DC-2015-11495 | Olivar, Freisi | (2.00) |

**Plaintiff ANTU, PAULA**
Total Financial Assessment 865.00
Total Payments and Credits 865.00
**Balance Due as of 07/13/2015** **0.00**

| 01/16/2013 | Transaction Assessment | | | 237.00 |
|---|---|---|---|---|
| 01/16/2013 | Transaction Assessment | | | 328.00 |
| 01/16/2013 | Payment | Receipt # DC-2013-1055 | MAUZE LAW FIRM | (565.00) |
| 02/25/2014 | Transaction Assessment | | | 2.00 |
| 02/25/2014 | EFile Payments from TexFile | Receipt # DC-2014-15060 | ANTU, PAULA | (2.00) |
| 02/25/2014 | Transaction Assessment | | | 2.00 |
| 02/25/2014 | EFile Payments from TexFile | Receipt # DC-2014-15065 | ANTU, PAULA | (2.00) |
| 02/25/2014 | Transaction Assessment | | | 2.00 |
| 02/25/2014 | EFile Payments from TexFile | Receipt # DC-2014-15066 | ANTU, PAULA | (2.00) |
| 02/25/2014 | Transaction Assessment | | | 2.00 |
| 02/25/2014 | EFile Payments from TexFile | Receipt # DC-2014-15073 | ANTU, PAULA | (2.00) |
| 02/25/2014 | Transaction Assessment | | | 2.00 |
| 02/25/2014 | EFile Payments from TexFile | Receipt # DC-2014-15075 | ANTU, PAULA | (2.00) |
| 02/25/2014 | Transaction Assessment | | | 2.00 |
| 02/25/2014 | EFile Payments from TexFile | Receipt # DC-2014-15079 | ANTU, PAULA | (2.00) |
| 02/25/2014 | Transaction Assessment | | | 2.00 |
| 02/25/2014 | EFile Payments from TexFile | Receipt # DC-2014-15084 | ANTU, PAULA | (2.00) |
| 02/25/2014 | Transaction Assessment | | | 2.00 |
| 02/25/2014 | EFile Payments from TexFile | Receipt # DC-2014-15117 | ANTU, PAULA | (2.00) |
| 02/25/2014 | Transaction Assessment | | | 2.00 |
| 02/25/2014 | EFile Payments from TexFile | Receipt # DC-2014-15118 | ANTU, PAULA | (2.00) |
| 02/25/2014 | Transaction Assessment | | | 2.00 |
| 02/25/2014 | EFile Payments from TexFile | Receipt # DC-2014-15120 | ANTU, PAULA | (2.00) |
| 02/25/2014 | Transaction Assessment | | | 2.00 |
| 02/25/2014 | EFile Payments from TexFile | Receipt # DC-2014-15121 | ANTU, PAULA | (2.00) |
| 02/25/2014 | Transaction Assessment | | | 2.00 |
| 02/25/2014 | EFile Payments from TexFile | Receipt # DC-2014-15122 | ANTU, PAULA | (2.00) |
| 02/25/2014 | Transaction Assessment | | | 2.00 |
| 02/25/2014 | EFile Payments from TexFile | Receipt # DC-2014-15123 | ANTU, PAULA | (2.00) |
| 02/25/2014 | Transaction Assessment | | | 2.00 |
| 02/25/2014 | EFile Payments from TexFile | Receipt # DC-2014-15124 | ANTU, PAULA | (2.00) |
| 02/25/2014 | Transaction Assessment | | | 2.00 |
| 02/25/2014 | EFile Payments from TexFile | Receipt # DC-2014-15125 | ANTU, PAULA | (2.00) |
| 02/25/2014 | Transaction Assessment | | | 2.00 |
| 02/25/2014 | EFile Payments from TexFile | Receipt # DC-2014-15128 | ANTU, PAULA | (2.00) |
| 02/26/2014 | Transaction Assessment | | | 2.00 |
| 02/26/2014 | EFile Payments from TexFile | Receipt # DC-2014-15221 | ANTU, PAULA | (2.00) |
| 02/26/2014 | Transaction Assessment | | | 2.00 |
| 02/26/2014 | EFile Payments from TexFile | Receipt # DC-2014-15226 | ANTU, PAULA | (2.00) |
| 02/26/2014 | Transaction Assessment | | | 2.00 |
| 02/26/2014 | EFile Payments from TexFile | Receipt # DC-2014-15228 | ANTU, PAULA | (2.00) |
| 02/26/2014 | Transaction Assessment | | | 2.00 |
| 02/26/2014 | EFile Payments from TexFile | Receipt # DC-2014-15229 | ANTU, PAULA | (2.00) |

| | | | | |
|---|---|---|---|---|
| 02/26/2014 | Transaction Assessment | | | 2.00 |
| 02/26/2014 | EFile Payments from TexFile | Receipt # DC-2014-15231 | ANTU, PAULA | (2.00) |
| 02/26/2014 | Transaction Assessment | | | 2.00 |
| 02/26/2014 | EFile Payments from TexFile | Receipt # DC-2014-15240 | ANTU, PAULA | (2.00) |
| 02/26/2014 | Transaction Assessment | | | 2.00 |
| 02/26/2014 | EFile Payments from TexFile | Receipt # DC-2014-15243 | ANTU, PAULA | (2.00) |
| 02/26/2014 | Transaction Assessment | | | 2.00 |
| 02/26/2014 | EFile Payments from TexFile | Receipt # DC-2014-15246 | ANTU, PAULA | (2.00) |
| 02/26/2014 | Transaction Assessment | | | 2.00 |
| 02/26/2014 | EFile Payments from TexFile | Receipt # DC-2014-15248 | ANTU, PAULA | (2.00) |
| 03/19/2014 | Transaction Assessment | | | 2.00 |
| 03/19/2014 | EFile Payments from TexFile | Receipt # DC-2014-22086 | ANTU, PAULA | (2.00) |
| 03/19/2014 | Transaction Assessment | | | 2.00 |
| 03/19/2014 | EFile Payments from TexFile | Receipt # DC-2014-22103 | ANTU, PAULA | (2.00) |
| 03/25/2014 | Transaction Assessment | | | 2.00 |
| 03/25/2014 | EFile Payments from TexFile | Receipt # DC-2014-24066 | ANTU, PAULA | (2.00) |
| 03/25/2014 | Transaction Assessment | | | 2.00 |
| 03/25/2014 | EFile Payments from TexFile | Receipt # DC-2014-24097 | ANTU, PAULA | (2.00) |
| 04/22/2014 | Transaction Assessment | | | 2.00 |
| 04/22/2014 | EFile Payments from TexFile | Receipt # DC-2014-34849 | ANTU, PAULA | (2.00) |
| 04/23/2014 | Transaction Assessment | | | 2.00 |
| 04/23/2014 | EFile Payments from TexFile | Receipt # DC-2014-35074 | ANTU, PAULA | (2.00) |
| 05/08/2014 | Transaction Assessment | | | 58.00 |
| 05/08/2014 | Payment | Receipt # DC-2014-42006 | RECORD FINDERS | (58.00) |
| 05/19/2014 | Transaction Assessment | | | 2.00 |
| 05/19/2014 | EFile Payments from TexFile | Receipt # DC-2014-46494 | ANTU, PAULA | (2.00) |
| 05/21/2014 | Transaction Assessment | | | 2.00 |
| 05/21/2014 | EFile Payments from TexFile | Receipt # DC-2014-47360 | ANTU, PAULA | (2.00) |
| 05/21/2014 | Transaction Assessment | | | 2.00 |
| 05/21/2014 | EFile Payments from TexFile | Receipt # DC-2014-47655 | ANTU, PAULA | (2.00) |
| 05/27/2014 | Transaction Assessment | | | 2.00 |
| 05/27/2014 | EFile Payments from TexFile | Receipt # DC-2014-49287 | ANTU, PAULA | (2.00) |
| 06/04/2014 | Transaction Assessment | | | 2.00 |
| 06/04/2014 | EFile Payments from TexFile | Receipt # DC-2014-52910 | ANTU, PAULA | (2.00) |
| 06/23/2014 | Transaction Assessment | | | 2.00 |
| 06/23/2014 | EFile Payments from TexFile | Receipt # DC-2014-59580 | ANTU, PAULA | (2.00) |
| 06/25/2014 | Transaction Assessment | | | 2.00 |
| 06/25/2014 | EFile Payments from TexFile | Receipt # DC-2014-60620 | ANTU, PAULA | (2.00) |
| 06/25/2014 | Transaction Assessment | | | 2.00 |
| 06/25/2014 | EFile Payments from TexFile | Receipt # DC-2014-60656 | ANTU, PAULA | (2.00) |
| 06/25/2014 | Transaction Assessment | | | 2.00 |
| 06/25/2014 | EFile Payments from TexFile | Receipt # DC-2014-60724 | ANTU, PAULA | (2.00) |
| 06/25/2014 | Transaction Assessment | | | 2.00 |
| 06/25/2014 | EFile Payments from TexFile | Receipt # DC-2014-60938 | ANTU, PAULA | (2.00) |
| 06/27/2014 | Transaction Assessment | | | 2.00 |
| 06/27/2014 | EFile Payments from TexFile | Receipt # DC-2014-61668 | ANTU, PAULA | (2.00) |
| 06/27/2014 | Transaction Assessment | | | 2.00 |
| 06/27/2014 | EFile Payments from TexFile | Receipt # DC-2014-61670 | ANTU, PAULA | (2.00) |
| 06/27/2014 | Transaction Assessment | | | 2.00 |
| 06/27/2014 | EFile Payments from TexFile | Receipt # DC-2014-61671 | ANTU, PAULA | (2.00) |
| 06/27/2014 | Transaction Assessment | | | 2.00 |
| 06/27/2014 | EFile Payments from TexFile | Receipt # DC-2014-61672 | ANTU, PAULA | (2.00) |
| 06/27/2014 | Transaction Assessment | | | 2.00 |
| 06/27/2014 | EFile Payments from TexFile | Receipt # DC-2014-61677 | ANTU, PAULA | (2.00) |
| 06/27/2014 | Transaction Assessment | | | 2.00 |
| 06/27/2014 | EFile Payments from TexFile | Receipt # DC-2014-61680 | ANTU, PAULA | (2.00) |
| 06/27/2014 | Transaction Assessment | | | 2.00 |

| | | | | |
|---|---|---|---|---|
| 06/27/2014 | EFile Payments from TexFile | Receipt # DC-2014-61683 | ANTU, PAULA | (2.00) |
| 06/27/2014 | Transaction Assessment | | | 2.00 |
| 06/27/2014 | EFile Payments from TexFile | Receipt # DC-2014-61684 | ANTU, PAULA | (2.00) |
| 06/27/2014 | Transaction Assessment | | | 2.00 |
| 06/27/2014 | EFile Payments from TexFile | Receipt # DC-2014-61685 | ANTU, PAULA | (2.00) |
| 06/27/2014 | Transaction Assessment | | | 2.00 |
| 06/27/2014 | EFile Payments from TexFile | Receipt # DC-2014-61686 | ANTU, PAULA | (2.00) |
| 06/27/2014 | Transaction Assessment | | | 2.00 |
| 06/27/2014 | EFile Payments from TexFile | Receipt # DC-2014-61687 | ANTU, PAULA | (2.00) |
| 06/27/2014 | Transaction Assessment | | | 2.00 |
| 06/27/2014 | EFile Payments from TexFile | Receipt # DC-2014-61688 | ANTU, PAULA | (2.00) |
| 07/11/2014 | Transaction Assessment | | | 2.00 |
| 07/11/2014 | EFile Payments from TexFile | Receipt # DC-2014-65545 | ANTU, PAULA | (2.00) |
| 08/21/2014 | Transaction Assessment | | | 2.00 |
| 08/21/2014 | EFile Payments from TexFile | Receipt # DC-2014-77890 | ANTU, PAULA | (2.00) |
| 08/26/2014 | Transaction Assessment | | | 2.00 |
| 08/26/2014 | EFile Payments from TexFile | Receipt # DC-2014-78825 | ANTU, PAULA | (2.00) |
| 08/27/2014 | Transaction Assessment | | | 2.00 |
| 08/27/2014 | EFile Payments from TexFile | Receipt # DC-2014-79198 | ANTU, PAULA | (2.00) |
| 09/09/2014 | Transaction Assessment | | | 2.00 |
| 09/09/2014 | EFile Payments from TexFile | Receipt # DC-2014-82357 | ANTU, PAULA | (2.00) |
| 09/15/2014 | Transaction Assessment | | | 2.00 |
| 09/15/2014 | EFile Payments from TexFile | Receipt # DC-2014-84222 | ANTU, PAULA | (2.00) |
| 09/19/2014 | Transaction Assessment | | | 2.00 |
| 09/19/2014 | EFile Payments from TexFile | Receipt # DC-2014-85626 | ANTU, PAULA | (2.00) |
| 09/19/2014 | Transaction Assessment | | | 2.00 |
| 09/19/2014 | EFile Payments from TexFile | Receipt # DC-2014-85632 | ANTU, PAULA | (2.00) |
| 09/19/2014 | Transaction Assessment | | | 2.00 |
| 09/19/2014 | EFile Payments from TexFile | Receipt # DC-2014-85637 | ANTU, PAULA | (2.00) |
| 09/19/2014 | Transaction Assessment | | | 2.00 |
| 09/19/2014 | EFile Payments from TexFile | Receipt # DC-2014-85735 | ANTU, PAULA | (2.00) |
| 11/05/2014 | Transaction Assessment | | | 2.00 |
| 11/05/2014 | EFile Payments from TexFile | Receipt # DC-2014-98057 | ANTU, PAULA | (2.00) |
| 11/17/2014 | Transaction Assessment | | | 2.00 |
| 11/17/2014 | EFile Payments from TexFile | Receipt # DC-2014-101515 | ANTU, PAULA | (2.00) |
| 11/18/2014 | Transaction Assessment | | | 2.00 |
| 11/18/2014 | EFile Payments from TexFile | Receipt # DC-2014-101874 | ANTU, PAULA | (2.00) |
| 11/18/2014 | Transaction Assessment | | | 2.00 |
| 11/18/2014 | EFile Payments from TexFile | Receipt # DC-2014-101910 | ANTU, PAULA | (2.00) |
| 11/19/2014 | Transaction Assessment | | | 2.00 |
| 11/19/2014 | EFile Payments from TexFile | Receipt # DC-2014-102396 | ANTU, PAULA | (2.00) |
| 12/03/2014 | Transaction Assessment | | | 2.00 |
| 12/03/2014 | EFile Payments from TexFile | Receipt # DC-2014-105516 | ANTU, PAULA | (2.00) |
| 12/08/2014 | Transaction Assessment | | | 2.00 |
| 12/08/2014 | EFile Payments from TexFile | Receipt # DC-2014-106769 | ANTU, PAULA | (2.00) |
| 12/10/2014 | Transaction Assessment | | | 2.00 |
| 12/10/2014 | EFile Payments from TexFile | Receipt # DC-2014-107768 | ANTU, PAULA | (2.00) |
| 12/15/2014 | Transaction Assessment | | | 2.00 |
| 12/15/2014 | EFile Payments from TexFile | Receipt # DC-2014-109003 | ANTU, PAULA | (2.00) |
| 01/07/2015 | Transaction Assessment | | | 2.00 |
| 01/07/2015 | EFile Payments from TexFile | Receipt # DC-2015-1255 | ANTU, PAULA | (2.00) |
| 01/12/2015 | Transaction Assessment | | | 2.00 |
| 01/12/2015 | EFile Payments from TexFile | Receipt # DC-2015-2477 | ANTU, PAULA | (2.00) |
| 01/12/2015 | Transaction Assessment | | | 2.00 |
| 01/12/2015 | EFile Payments from TexFile | Receipt # DC-2015-2481 | ANTU, PAULA | (2.00) |
| 01/15/2015 | Transaction Assessment | | | 2.00 |

| | | | | |
|---|---|---|---|---|
| 01/15/2015 | EFile Payments from TexFile | Receipt # DC-2015-3324 | ANTU, PAULA | (2.00) |
| 01/15/2015 | Transaction Assessment | | | 2.00 |
| 01/15/2015 | EFile Payments from TexFile | Receipt # DC-2015-3414 | ANTU, PAULA | (2.00) |
| 01/15/2015 | Transaction Assessment | | | 2.00 |
| 01/15/2015 | EFile Payments from TexFile | Receipt # DC-2015-3416 | ANTU, PAULA | (2.00) |
| 01/16/2015 | Transaction Assessment | | | 2.00 |
| 01/16/2015 | EFile Payments from TexFile | Receipt # DC-2015-3554 | ANTU, PAULA | (2.00) |
| 01/21/2015 | Transaction Assessment | | | 2.00 |
| 01/21/2015 | EFile Payments from TexFile | Receipt # DC-2015-4711 | ANTU, PAULA | (2.00) |
| 02/05/2015 | Transaction Assessment | | | 2.00 |
| 02/05/2015 | EFile Payments from TexFile | Receipt # DC-2015-8806 | ANTU, PAULA | (2.00) |
| 02/09/2015 | Transaction Assessment | | | 2.00 |
| 02/09/2015 | EFile Payments from TexFile | Receipt # DC-2015-9786 | ANTU, PAULA | (2.00) |
| 02/11/2015 | Transaction Assessment | | | 2.00 |
| 02/11/2015 | EFile Payments from TexFile | Receipt # DC-2015-10720 | ANTU, PAULA | (2.00) |
| 03/19/2015 | Transaction Assessment | | | 66.00 |
| 03/19/2015 | Payment | Receipt # DC-2015-21404 | ACCESS LEGAL SUPPORT | (66.00) |
| 04/06/2015 | Transaction Assessment | | | 2.00 |
| 04/06/2015 | EFile Payments from TexFile | Receipt # DC-2015-25724 | ANTU, PAULA | (2.00) |
| 05/01/2015 | Transaction Assessment | | | 2.00 |
| 05/01/2015 | EFile Payments from TexFile | Receipt # DC-2015-33161 | ANTU, PAULA | (2.00) |
| 06/09/2015 | Transaction Assessment | | | 2.00 |
| 06/09/2015 | EFile Payments from TexFile | Receipt # DC-2015-43278 | ANTU, PAULA | (2.00) |
| 06/19/2015 | Transaction Assessment | | | 2.00 |
| 06/19/2015 | EFile Payments from TexFile | Receipt # DC-2015-46281 | ANTU, PAULA | (2.00) |
| 06/29/2015 | Transaction Assessment | | | 2.00 |
| 06/29/2015 | EFile Payments from TexFile | Receipt # DC-2015-48566 | ANTU, PAULA | (2.00) |

**Plaintiff CEPEDA, GUADALUPE**
Total Financial Assessment — 2.00
Total Payments and Credits — 2.00
**Balance Due as of 07/13/2015** — **0.00**

| | | | | |
|---|---|---|---|---|
| 02/18/2015 | Transaction Assessment | | | 2.00 |
| 02/18/2015 | EFile Payments from TexFile | Receipt # DC-2015-12759 | CEPEDA, GUADALUPE | (2.00) |

**Plaintiff GUZMAN, FRANCISCA**
Total Financial Assessment — 2.00
Total Payments and Credits — 2.00
**Balance Due as of 07/13/2015** — **0.00**

| | | | | |
|---|---|---|---|---|
| 02/18/2015 | Transaction Assessment | | | 2.00 |
| 02/18/2015 | EFile Payments from TexFile | Receipt # DC-2015-12757 | GUZMAN, FRANCISCA | (2.00) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## LAREDO DIVISION

| | | |
|---|---|---|
| BENEVIS, LLC f/k/a NCDR, L.L.C.; | § | |
| DENTISTRY OF BROWNSVILLE, P.C. | § | |
| d/b/a KOOL SMILES; and KS2 TX, P.C. | § | |
| d/b/a KOOL SMILES; | § | |
| | § | |
| **Plaintiffs,** | § | Case No. 5:12-cv-36 |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| MAUZÉ & BAGBY, PLLC;  GEORGE | § | |
| WATTS MAUZÉ II; and JAMES | § | |
| THOMAS BAGBY III; | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFFS' FIRST AMENDED  COMPLAINT FOR DAMAGES

Plaintiffs Benevis, LLC f/k/a NCDR, L.L.C. ("Benevis"); Dentistry of Brownsville, P.C. d/b/a Kool Smiles; and KS2 TX, P.C. d/b/a Kool Smiles (collectively, "Kool Smiles"[1] or "Plaintiffs"), by way of this Complaint that they file against Defendants Mauzé & Bagby, PLLC; George Watts Mauzé II ("Mauzé"); and James Thomas Bagby III ("Bagby") (collectively, "Defendants") show as follows:

## NATURE OF THE ACTION

1.     This is an action for damages premised on Plaintiffs' claims for defamation, business disparagement, false advertising, and injury to business reputation in which Plaintiffs seek injunctive relief, damages, and attorneys' fees.

---

[1] All references to "Kool Smiles" or "Plaintiffs" contained herein refer, collectively, to Plaintiffs Benevis, LLC f/k/a NCDR, L.L.C.; Dentistry of Brownsville, P.C. d/b/a Kool Smiles; and KS2 TX, P.C. d/b/a Kool Smiles. The Kool Smiles dental offices referenced in this lawsuit are and have been owned, maintained, and operated by Dentistry of Brownsville, P.C. and KS2 TX, P.C.  Benevis, LLC offers business and administrative services to entities, like those mentioned above, and does not own, maintain, or operate any dental office (including Kool Smiles-branded dental offices).

**PARTIES**

2.      Benevis is a limited liability company incorporated under the laws of the State of Delaware whose principal place of business is located in Marietta, Georgia.   Benevis is registered and authorized to conduct business within the State of Texas.  Benevis was formerly known as NCDR, L.L.C.

3.      Dentistry of Brownsville, P.C. d/b/a Kool Smiles is a professional corporation incorporated under the laws of the State of Texas that maintains its principal place of business within the State of Texas.

4.      KS2 TX, P.C. d/b/a Kool Smiles is a professional corporation incorporated under the laws of the State of Texas that maintains its principal place of business within the State of Texas.

5.      Defendant Mauzé & Bagby, PLLC is a professional limited liability company incorporated under the laws of the State of Texas that maintains its principal place of business within the State of Texas.  Mauzé & Bagby PLLC was served on March 26, 2012 (*see* ECF No.11) and has appeared in this lawsuit.

6.      Upon information and belief, Defendant Mauzé is a natural person who resides at 531 Arcadia Place, Terrell Hills, Texas 78209. Mauzé is a managing member of Mauzé & Bagby, PLLC.  Mauzé was served on March 26, 2012 (*see* ECF No. 12) and has appeared in this lawsuit.

7.      Upon information and belief, Defendant Bagby is a natural person who resides at 2018 Flamingo Street, San Antonio, Texas 78209.  Bagby is the organizer and a managing member of Mauzé & Bagby, PLLC.  Bagby was served on March 26, 2012 (*see* ECF No. 13) and has appeared in this lawsuit.

2

## JURISDICTION AND VENUE

8.      Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this is a civil action that arises under the Constitution, laws, or treaties of the United States.  This civil action arises under the Lanham Act, 15 U.S.C. § 1125(a) for false advertising.

9.      This Court also has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(a).

10.     Defendant Mauzé & Bagby, PLLC is subject to personal jurisdiction because it is incorporated in the State of Texas, its principal place of business is located in the State of Texas, and it regularly conducts business within the State of Texas.  Defendant Mauzé & Bagby, PLLC has appeared in this lawsuit and has admitted it is subject to this Court's jurisdiction.  *See* Defs.' Answer and Affirmative Defenses (ECF No. 32).

11.     Defendant Mauzé is subject to personal jurisdiction because he resides in and regularly conducts business within the State of Texas.  Defendant Mauzé has appeared in this lawsuit and has admitted that he is subject to this Court's jurisdiction.  *See* Defs.' Answer and Affirmative Defenses (ECF No. 32).

12.     Defendant Bagby is subject to personal jurisdiction because he resides in and regularly conducts business within the State of Texas.  Defendant Bagby has appeared in this lawsuit and has admitted that he is subject to this Court's jurisdiction.  *See* Defs.' Answer and Affirmative Defenses (ECF No. 32).

13.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events at issue occurred in this district.  On information and belief, the advertisements and website at issue in this Complaint were either broadcast or made accessible by Defendants in Laredo, Texas, where clinics owned, managed, and operated by Plaintiffs are

3

located.   Defendants also made statements similar to those made in their advertisements in a television news report aired in Laredo, Texas.   As a consequence, Plaintiffs were harmed in Laredo by Defendants' advertisements through losses in business, patients, revenue, reputation, and all other injuries defined herein.

## FACTS GIVING RISE TO THE ACTION

### Kool Smiles' Business

14.     Kool Smiles' mission is to provide high quality dental care to underserved children and their parents.   Patients seeking dental care at Kool Smiles are frequently supported by state- or federally-funded programs, such as Medicaid.

15.     Kool Smiles patients often have limited or no access to needed dental care and rely on the services of Kool Smiles dentists to maintain their oral health.

16.     Kool Smiles, its dentists, and its staff are dedicated to addressing this important oral health need in a courteous and compassionate manner, while maintaining the highest quality standards of clinical quality and integrity.

17.     Kool Smiles employs dentists in over thirty clinics in various cities in Texas.

18.     Kool Smiles conducts extensive compliance and clinical reviews of the dentists it employs.   All Kool Smiles dentists are dental school graduates, have completed applicable boards of examination, have obtained applicable state dental licenses, are subject to background checks, have received appropriate credentialing, and are fully qualified to practice dentistry.

19.     Kool Smiles' dentists perform dental procedures when deemed medically necessary.

4

<u>Defamatory Advertising Campaign Against Kool Smiles</u>

20.     On or about February 4, 2012, as part of their commercial advertising and promotion, Defendants began publishing a website (located at the domain name <<u>www.koolsmilesclaims.com</u>>) (the "KoolSmilesClaims Website") soliciting potential legal claims from Kool Smiles customers relating to pediatric dental services provided by Kool Smiles.  *See* Ex. 1, Feb. 7, 2012 Letter from the State Bar of Texas Advertising Review Committee to Tom Bagby regarding website (Case No. 51355) (KoolSmilesClaims Website). The website address included the "Kool Smiles" name.

21.     On their website, Defendants made false and unsubstantiated representations, asking readers of the website whether their children were (1) "strapped down to a papoose board?" or (2) "upset, crying, terrified, or traumatized?"  Defendants, on their website, also made false and unsubstantiated statements directed at Kool Smiles by asking: (1) "Does your child have a mouthful of stainless steel crowns?" (2) "Did Kool Smiles perform extensive dental work on your child's baby teeth? Why?" (3) "If Kool Smiles cemented crowns on your child's permanent teeth, did they tell you that stainless steel crowns have to be replaced every 10 years on average?" and (4) "Did you know your child might be spending thousands of dollars for dental care for the rest of his/her life?"  Ex. 1 (KoolSmilesClaims Website).

22.     The questions presented by Defendants on the website implied that all of these activities happen with regularity at Kool Smiles.  Further, Defendants' comments on the website misled some into the concern or belief that there were problems with the quality of the dental care that Kool Smiles provided.  Without any substantiation of their claims, Defendants' questions deliberately misled the public by unfairly casting Kool Smiles and its provision of dental services in an unfavorable light.

5

23.     Defendants' website included a picture of what appeared to be a young child's open mouth, showing six visible upper teeth of which four are completely capped in stainless steel.  The picture supported Defendants' false and misleading statements that Kool Smiles inappropriately and regularly capped young children's teeth with stainless steel crowns.  The image was misleading and disturbing to the public and harmful to Kool Smiles.

24.     Further, on the KoolSmilesClaims Website, under a section titled "Kool Smiles and Medicaid," Defendants state that following the passage of legislation to increase Medicaid reimbursements for children's dental services, "hundreds of dental clinics, targeting children eligible for Medicaid, have opened throughout our country.  Unfortunately, many of these dental clinics have exploited our children to increase their revenue."  Immediately thereafter, Defendants identify Kool Smiles clinics in seven cities in Texas (El Paso, McAllen, Weslaco, Mission, Brownsville, Eagle Pass, and Laredo), and state that those clinics "collected more than Twenty Five Million Dollars ($25,000,000.00) in Medicaid reimbursements."   Ex. 1 (KoolSmilesClaims Website).

25.     The proximity of these statements alleging that dental clinics serving children are engaged in Medicaid fraud to a description of Kool Smiles and its Medicaid reimbursements clearly intended to indicate that Kool Smiles obtained its reimbursements by exploiting children to increase its revenue.  The accusation of Medicaid fraud, particularly when these comments appear on a website generally attacking Kool Smiles, is even more evident.

26.     The implication that Kool Smiles engages in Medicaid fraud in Texas is false, misleading to the public, and has harmed Kool Smiles.

27.     Not until the eve of making the website available to the public, on or about February 2, 2012, did Defendants file the website content with the Advertising Review

6

Committee of the Texas State Bar (the "Advertising Review Committee").   *See* Ex. 2 (Application Form for Lawyer Advertising and Solicitation Communications).   They neither requested nor received preapproval of its contents before disseminating it to the public.   Ex. 2 (Application Form for Lawyer Advertising and Solicitation Communications).

28.    On or about February 4, 2012, Defendants also purchased the KOOL SMILES® trademark as a "keyword" on various search engines, including Google, Yahoo, and Bing, that offered a link to their website at the top of a search page whenever Internet users conducted searches related to Kool Smiles, such as: "Kool Smiles," "Kool Smiles Medicaid," and "Kool Smiles insurance."

29.    Some Kool Smiles patients who searched for the Kool Smiles website selected Defendants' advertising link instead and were diverted from their initial intended purpose by the disturbing images and defamatory allegations posted on Defendants' website.   Once patients clicked on Defendants' link, the damage was done — they would be unlikely to return to their initial purpose of seeking out information regarding Kool Smiles, whether they had intended to make a dental appointment or get insurance information.   After visiting Defendants' website, the patients may have been influenced to seek dental care elsewhere or become clients of Defendants.

30.    Defendants' statements on their website intentionally misrepresented the nature, characteristics, and qualities of Kool Smiles' services, which has caused Kool Smiles significant harm.

31.    Defendants submitted no filings to the Advertising Review Committee regarding the Internet advertisement links purchased on search engines such as Google.

7

32.     On or about February 6, 2012, a Monday, Defendants began disseminating television advertisements soliciting claims from Kool Smiles customers relating to pediatric dental services provided by Kool Smiles.  *See* Ex. 2, Feb. 7, 2012 Letter from the State Bar of Texas Advertising Review Committee to Tom Bagby regarding television advertisements (Case No. 51353) (Application Form for Lawyer Advertising and Solicitation Communications). According to documents filed by Defendants with the Advertising Review Committee, these advertisements were disseminated to the public in the western and southern regions of Texas. Ex. 2 (Application Form for Lawyer Advertising and Solicitation Communications).  Plaintiffs are aware of television advertisements that were shown on KVIA and KFOX in El Paso, Texas and on XRIO in Harlingen, Texas that referenced Kool Smiles.  Defendants later aired additional television advertisements in other portions of Texas, affecting even more Kool Smiles offices.

33.     The audio portion of Defendants' television advertisements made false and unsubstantiated statements, asking (1) "Was your child literally strapped down, crying and terrified?" and (2) "Did your child leave Kool Smiles with a mouth full of stainless steel crowns?" Ex. 2 (Transcript of Audio for Defendants' Television Advertisement).  The video that accompanied these statements flashed the following false and unsubstantiated statements (1) "Strapped down!"; (2) "Crying!"; (3) "Terrified!"; and (4) "Mouthful of Stainless Steel Crowns." Ex. 2 (Description of Video for Defendants' Television Advertisement).

34.     One news report described the television advertisements aired by defendants as "dark" and "allud[ing] to dental nightmares for children."  The same picture that was also included on Defendants' website of a child with four of six visible upper teeth capped entirely in stainless steel was flashed on the screen, while ominous-sounding audio implied that Kool Smiles will improperly give children a mouth full of stainless steel crowns.  The television

8

advertisement indicated that Kool Smiles is "terrifying" children by "strapping" them down and performing unnecessary and unwanted procedures. Such unsubstantiated, misleading, deceptive, and/or false allegations did considerable damage to Kool Smiles' public image and mislead the public.

35.     Again, only days before the advertisements began airing, on or about February 2, 2012, Defendants filed the script and description of the television advertisements with the Advertising Review Committee, but did not request nor receive preapproval of their contents before disseminating them to the public. Ex. 2 (Application Form for Lawyer Advertising and Solicitation Communications).

36.     Defendants' television advertisements intentionally misrepresented the nature, characteristics, and qualities of Kool Smiles' services, which has caused Kool Smiles significant harm.

37.     On or about February 6, 2012, Defendants began disseminating radio advertisements, in English and in Spanish, soliciting claims from Kool Smiles customers relating to pediatric dental services provided by Kool Smiles. *See* Ex. 3, Feb. 7, 2012 Letter from the State Bar of Texas Advertising Review Committee to Tom Bagby regarding radio advertisements (Case No. 51354) (Application Form for Lawyer Advertising and Solicitation Communications). According to documents filed by Defendants with the Advertising Review Committee, these advertisements were disseminated to the public in the western and southern regions of Texas. Ex. 3 (Application Form for Lawyer Advertising and Solicitation Communications). Plaintiffs are aware of radio advertisements that were played on KPRR in El Paso, Texas; on KNEX in Laredo, Texas; and on KBFM in Harlingen, Texas that referenced

9

Kool Smiles.  Defendants later aired additional radio advertisements in other portions of Texas, affecting even more Kool Smiles offices.

38.     Defendants' radio advertisements made false and unsubstantiated representations, asking listeners (1) "Was your child literally strapped down, crying and terrified?" (2) "Did your child leave Kool Smiles with a mouth full of stainless steel crowns?" (3) "Did Kool Smiles place ugly, and possibly unnecessary, crowns on your child's baby teeth?" (4) "Did Kool Smiles place unwanted crowns on your child's permanent teeth?" and (5) "Did they tell you . . . your child will have to replace these crowns many times in his or her life; and the cost will be thousands of dollars?" Ex. 3; *see specifically* Transcript of Defendants' Radio Advertisements.  Each of these statements also was made in radio advertisements in Spanish.

39.     The radio advertisements misled the public and harmed Kool Smiles by indicating that children are strapped down, left with mouths full of stainless steel crowns, and subjected to unnecessary procedures that will present a lifetime of higher dental costs.  These statements were very pointed, disturbing, and deliberately designed to make parents whose children received treatment at Kool Smiles fearful enough to seek consultation with Defendants.

40.     On or about February 2, 2012, Defendants filed the scripts of the English and Spanish radio advertisements with the Advertising Review Committee, but did not request nor receive preapproval of their contents before disseminating them to the public.  Ex. 3 (Application Form for Lawyer Advertising and Solicitation Communications).

41.     Defendants' radio advertisements intentionally misrepresented the nature, characteristics, and qualities of Kool Smiles' services, which has caused Kool Smiles significant harm.

10

42.     Upon information and belief, Defendants also established a toll-free telephone line dedicated to receive phone calls from Kool Smiles patients in response to Defendants' defamatory advertising campaign.  The KoolSmilesClaims Website and the television and radio advertisements directed parents of Kool Smiles' pediatric patients to call 1-800-200-9096 "for a free consultation" from a "trusted lawyer in San Antonio."  *See* Exs. 1, 2, 3 (Transcripts and Website Content).

43.     Defendants submitted no filings to the Texas State Bar regarding their solicitation of business via the toll free telephone number, 1-800-200-9096.

44.     The Texas Disciplinary Rules of Professional Conduct generally prohibit solicitations by lawyers that involve well-known opportunities for abuse of prospective clients. Traditionally, the principal concerns presented by in-person, telephone, or electronic solicitations are that they can overbear the prospective client's will, lead to hasty and ill-advised decisions concerning choice of counsel, and be very difficult to police.  By their advertisements aimed at soliciting claims against Kool Smiles, Defendants risk doing just that.  Instead of helping clients who come to Defendants with a problem, Defendants' advertisements strongly implied that Kool Smiles is involved in nefarious and even criminal activities in order to lure new clients or even to foment litigation that would otherwise not exist.  Defendants made these allegations publicly without justifying any of their statements.  It was an attempt by Defendants to find new clients that deliberately or recklessly harmed Kool Smiles and misled the public.

45.     As a result of Defendants' false and misleading statements in their commercial advertising and promotion, specifically their television and radio advertisements and on their website, Kool Smiles began receiving numerous telephone calls from concerned patients, and a significant number of patients cancelled or did not appear for appointments.   There was a

11

consequent and substantial loss of revenue and profits, as well as irreparable harm to Kool Smiles' business reputation and good will.

Cease and Desist Letters

46.     On February 9, 2012, counsel for Kool Smiles sent a letter to Defendant Mauzé & Bagby, PLLC requesting, *inter alia*, that Mauzé & Bagby, PLLC cease and desist its defamatory advertising campaign against Kool Smiles.

47.     The letter warned Mauzé & Bagby, PLLC that it was violating various state and federal laws by making false and unsubstantiated statements about Kool Smiles.

48.     On February 13, 2012, Mauzé & Bagby, PLLC sent a response to Kool Smiles' February 9 letter indicating that it would not stop its advertising campaign.

49.     On February 16, 2012, Kool Smiles sent a second cease and desist letter that again demanded that Mauzé & Bagby, PLLC immediately cease its defamatory advertising campaign against Kool Smiles.

50.     On February 20, 2012, Mauzé & Bagby, PLLC responded to Kool Smiles' second cease and desist letter, stating that, while it did not agree that it violated any state or federal laws, it has "modified and/or removed the content from all sources of media."

Action by the Texas State Bar

51.     The Texas State Bar's Advertising Review Committee sent three letters to Defendant Bagby on February 7, 2012.  *See* Exs. 1, 2, 3.  The correspondence from the Advertising Review Committee required that Mauzé & Bagby, PLLC remedy the violations within ten (10) days from the date of the letters, by February 17, 2012, or face a grievance committee review.

12

52.    On or about February 13, 2012, Mauzé & Bagby, PLLC removed all of the advertisements.  Defendants eventually restarted their advertising campaign again with messages that were similar, though not identical, to the original advertisements.

News Reports

53.    At or about the time Defendants removed all of their advertisements, television news stations began airing reports that included Defendants' defamatory claims against Kool Smiles.

54.    On February 17, 2012, KFOX 14 in El Paso, Texas aired a report regarding Kool Smiles in which it interviewed one of the Defendants, who stated "we have, and will be able to present, over 1,000 parents whose childrens [sic] were subjected to being strapped down to papoose boards and physically restrained for what was not extensive dental care."

55.    On February 28, 2012, KGNS-TV in Laredo, Texas aired a report regarding Kool Smiles in which it interviewed Defendant Mauzé, who stated that at least 1,000 complaints have been filed by parents who claimed their kids were mistreated. This news report also alleged that Kool Smiles "could be in a lot of trouble."

56.    These news reports stated that Defendants removed their advertisements because "they've gotten the response they needed to move forward with possible litigation."  Once again, Defendants made a misleading comment by failing to admit that the advertisements were, on information and belief, removed in response to the State Bar of Texas's requirement that they either substantiate their claims against Kool Smiles or remove the advertisements, or in response to Plaintiffs' cease and desist letters.  Additionally, Defendants' statement admits that they intended to profit from the confusion created by the patients drawn to their website who were initially intending to visit Kool Smiles' website.

13

57.     In addition to misleading the public about the reasons for discontinuing their advertisements, the statements made by Defendants about Kool Smiles in these news reports were also false and unsubstantiated.

58.     As a result of the news reports aired by these and possibly other television stations and Defendants' campaign of false, misleading, and defamatory statements, Kool Smiles began receiving telephone calls from concerned patients, and a significant number of patients cancelled or did not appear for their appointments.  Some patients expressly cited the advertisements and news reports as justification for cancelling their appointments.  Kool Smiles received many additional communications that expressed concern about future appointments.

Effect of Defamatory Advertising Campaign by Defendants

59.     By initiating a broad advertising campaign on the Internet, radio, television, and through news organizations, Defendants have made it appear, falsely, that Kool Smiles engages in improper activities that harm its pediatric patients.

60.     All of these advertisements, the website content, and Defendants' statements to the media suggest that Kool Smiles is systematically performing dental procedures on children that are not necessary.  Defendants offer no facts to support this broad, misleading, and extremely harmful false accusation of fact.

61.     Defendants negligently and maliciously engaged in this defamatory advertising campaign in an effort to obtain potential clients. By doing so, Defendants have caused harm to Kool Smiles and its business reputation.

62.     Defendants' activities resulted in lost profits, general damage, and special damage to Kool Smiles.  Additionally, Kool Smiles' business reputation and good will were damaged.  Specifically, Kool Smiles was harmed by Defendants' actions in the following

14

ways:  (1) increased cancellations of patients, (2) increased patient no-shows, (3) decrease in new patients, (4) increased spending on rehabilitative advertisements designed to counter Defendants' advertisements, and (5) increased costs for staff and doctor personnel caused by Defendants' negative and defamatory statements.  Plaintiffs suffered and continue to suffer substantial losses of profits, revenues, and increased expenses.

## COUNT I

## FALSE ADVERTISING (15 U.S.C. § 1125(a))

63.     Kool Smiles realleges and incorporates by reference herein all of the allegations contained within Paragraphs 1 through 62 of this Complaint.

64.     Defendants, in connection with services in commerce, used in their commercial advertising and promotion false or misleading representations of fact that misrepresented the nature, characteristics, and qualities of Kool Smiles' services or commercial activities, which Defendants caused to enter interstate commerce.

65.     Defendants' false statements deceived a substantial number of consumers and potential consumers of Kool Smiles services.  The deception was material to the purchasing decisions of those consumers and potential consumers.

66.     As a result of Defendants' false advertising, Kool Smiles has been and is likely to continue to be injured, and therefore is entitled to recover its damages, its costs of suit, Defendants' profits, and, because this is an exceptional case, its attorneys' fees.

## COUNT II

## DEFAMATION VIA WEBSITE

67.     Kool Smiles realleges and incorporates by reference herein all of the allegations contained within Paragraphs 1 through 62 of this Complaint.

15

68.     Defendants created the domain name <www.koolsmilesclaims.com> and published this website on the Internet.

69.     Defendants also purchased advertisements on search engines, such as Google, that directed people to the KoolSmilesClaims Website.

70.     Defendants made The KoolSmilesClaims Website available to the general public, who visited the website at the suggestion of Defendants' advertisements or visited the website through browsing or Internet search engine results.

71.     The website published factual statements without legal excuse about Kool Smiles that were false and defamatory.

72.     The statements published by Defendants on the KoolSmilesClaims Website harmed Kool Smiles' reputation.

73.     Defendants acted with negligence, recklessness, or actual malice with regard to the truth of these statements.

74.     As a result, Kool Smiles suffered pecuniary harm.

75.     Further, Defendants' disparagement of Kool Smiles entitles Kool Smiles to special damages because, as a proximate result of Defendants' actions, Kool Smiles suffered direct, pecuniary loss in three forms:   (a) lost profits, (b) direct damages and increased expenses, and (c) damage to its business reputation and good will.

76.     Specifically, Kool Smiles lost customers who visited Defendants' website and were afraid to bring their children to Kool Smiles for dental care.  The good will and reputation of Kool Smiles were also diminished as a result of the statements on the website.

16

**COUNT III**

**DEFAMATION VIA TELEVISION ADVERTISEMENTS**

77.     Kool Smiles realleges and incorporates by reference herein all of the allegations contained within Paragraphs 1 through 62 of this Complaint.

78.     Defendants developed and sponsored advertisements which were broadcast on television stations and were seen by the public.

79.     The advertisements contained statements of fact that were false and defamatory referring to Kool Smiles.

80.     The statements published without legal excuse by Defendants in the television advertisements harmed Kool Smiles' reputation and good will.

81.     Defendants acted with negligence, recklessness, or actual malice with regard to the truth of these statements.

82.     As a result, Kool Smiles suffered pecuniary harm.

83.     Further, Defendants' disparagement of Kool Smiles entitles Kool Smiles to special damages because, as a proximate result of Defendants' actions, Kool Smiles suffered direct, pecuniary loss in three forms:  (a) lost profits, (b) direct damages and increased expenses, and (c) damage to its business reputation and good will.

84.     Specifically, both existing and potential customers who were exposed to the ads were afraid to bring their children to Kool Smiles for dental care.  Customers cancelled their appointments as a result of the ads.  Further, Kool Smiles saw a sharp decline in new patients after the ads began airing, resulting in lost profits and missed opportunities.

## COUNT IV

## DEFAMATION VIA RADIO ADVERTISEMENTS

85.     Kool Smiles realleges and incorporates by reference herein all of the allegations contained within Paragraphs 1 through 62 of this Complaint.

86.     Defendants developed and sponsored advertisements which were broadcast on radio stations and were heard by the public.

87.     The advertisements contained statements of fact that were false and defamatory referring to Kool Smiles.

88.     The statements published without legal excuse by Defendants in the radio advertisements harmed Kool Smiles' reputation and good will.

89.     Defendants acted with negligence, recklessness, or actual malice with regard to the truth of these statements.

90.     As a result, Kool Smiles suffered pecuniary harm.

91.     Further, Defendants' disparagement of Kool Smiles entitles Kool Smiles to special damages because, as a proximate result of Defendants' actions, Kool Smiles suffered direct, pecuniary loss in three forms:  (a) lost profits, (b) direct damages and increased expenses, and (c) damage to its business reputation and good will.

92.     Specifically, both existing and potential customers who heard the ads were afraid to bring their children to Kool Smiles for dental care.  Customers cancelled their appointments as a result of the ads.  Further, Kool Smiles saw a sharp decline in new patients after the ads began airing, resulting in lost profits and missed opportunities.

## COUNT V

## DEFAMATION VIA STATEMENTS IN TELEVISION INTERVIEWS

93.    Kool Smiles realleges and incorporates by reference herein all of the allegations contained within Paragraphs 1 through 62 of this Complaint.

94.    Defendants made public statements of fact during press interviews that were broadcast during news reports on television stations and seen by the public.

95.    The public statements made without legal excuse by Defendants contained false and defamatory statements referring to Kool Smiles.

96.    The public statements made by Defendants that were broadcast on television news reports harmed Kool Smiles' business reputation and good will.

97.    Defendants acted with negligence, recklessness, or actual malice with regard to the truth of these statements.

98.    As a result, Kool Smiles suffered pecuniary harm.

99.    Further, Defendants' disparagement of Kool Smiles entitles Kool Smiles to special damages because, as a proximate result of Defendants' actions, Kool Smiles suffered direct, pecuniary loss in three forms:  (a) lost profits, (b) direct damages and increased expenses, and (c) damage to its business reputation and good will.

100.    Specifically, Defendants' false, televised statement that over 1,000 complaints have been filed by parents who claimed their kids were mistreated scared Kool Smiles customers and potential new customers.  Following the airing of this statement, Kool Smiles incurred a larger-than-normal number of cancellations and saw a smaller-than-normal number of new clients in the regions where the interviews aired.  Kool Smiles is entitled to special damages in the form of these lost profits and missed opportunities.

19

## COUNT VII

## DEFAMATION PER SE

101.  Kool Smiles realleges and incorporates by reference herein all of the allegations contained within Paragraphs 1 through 62 of this Complaint.

102.  Defendants made statements that impute on Kool Smiles the commission of a crime and accuse Kool Smiles of dishonesty, fraud, rascality, or general depravity.

103.  Specifically, Defendants implied that Kool Smiles engages in Medicaid fraud and injures children for pecuniary gain.

104.  A reasonable person would consider Defendants' statements injurious to Kool Smiles' office, business, profession, or calling.

105.  The statements made by Defendants constitute defamation per se, for they have but one clear and obvious meaning.

106.  Plaintiffs are entitled to general damages, including damages for harm to Kool Smiles' loss of business reputation and diminished good will.

## COUNT VII

## BUSINESS DISPARAGEMENT

107.  Kool Smiles realleges and incorporates by reference herein all of the allegations contained within Paragraphs 1 through 62 of this Complaint.

108.  Defendants, through their website, advertisements, and public statements to the press and to Kool Smiles customers, published disparaging words about Kool Smiles' economic interests, including, but not limited to, its business practices, treatment of its patients, and billing procedures.

109.    These words were false, published with malice, and were not published under any applicable privilege.

110.    Defendants' disparagement of Kool Smiles entitles Kool Smiles to special damages because, as a proximate result of Defendants' actions, Kool Smiles suffered direct, pecuniary loss, which is reflected in Kool Smiles' financial records and will be investigated further in discovery.

111.    As a result of Defendants' disparagement, customers cancelled appointments at Kool Smiles clinics.

112.    As a result of Defendants' disparagement, fewer new patients than normal booked appointments at Kool Smiles clinics.

113.    As a result of Defendants' disparagement, Kool Smiles lost profits.

114.    As a result of Defendants' disparagement, Kool Smiles spent money on advertising intended to counter the effects of Defendants' advertising activities.

115.    As a result of Defendants' disparagement, Kool Smiles will incur increased costs related to personnel and staffing because of the untrue, negative image presented by Defendants.

116.    As a result of Defendants' disparagement, Kool Smiles was forced to reduce staffing in its clinics, which has and will result in additional costs.

117.    As a result of Defendants' disparagement, Kool Smiles' good will, which it had accumulated for many years, was diminished.

118.    Defendants' disparagement of Kool Smiles entitles Kool Smiles to the special damages stated above because, as a proximate result of Defendants' actions, Kool Smiles suffered direct, pecuniary loss.

21

**COUNT VIII**

**INJURY TO BUSINESS REPUTATION (TEX. BUS. & COMM. CODE § 16.29)**

119.    Kool Smiles realleges and incorporates by reference herein all of the allegations contained within Paragraphs 1 through 62 of this Complaint.

120.    Defendants made false, defamatory, and disparaging statements regarding Kool Smiles, which were publicized through Defendants' advertisements, website, and live statements to the press and individual customers.

121.    These actions are likely to injure, and have injured, Kool Smiles' business reputation.

122.    Thus, Kool Smiles seeks an injunction pursuant to Tex. Bus. & Comm. Code § 16.29 to enjoin Defendants from making false and defamatory statements concerning Kool Smiles.

**PERMANENT INJUNCTION**

123.    Kool Smiles realleges and incorporates by reference herein all of the allegations contained within Paragraphs 1 through 121 of this Complaint.

124.    Plaintiffs will succeed on the merits.

125.    Because of Defendants' actions, failure to grant Kool Smiles a permanent injunction will result in irreparable harm.

126.    Thus, according to principles of equity, federal statutes, and upon such terms as this Court deems reasonable, Kool Smiles seeks a permanent injunction enjoining Defendants from making false and defamatory statements concerning Kool Smiles.

127.    The benefit of this injunction to Kool Smiles would outweigh the harm, if any, to the Defendant.

128.    Further, the entry of a permanent injunction would not disserve the public interest.  Indeed, because existing and potential customers of Kool Smiles were deterred from receiving dental care as a result of Defendants' actions, the public interest would be served by this injunction.

## ATTORNEYS' FEES

129.    Kool Smiles realleges and incorporates by reference herein all of the allegations contained within Paragraphs 1 through 127 of this Complaint.

130.    This is an exceptional case which entitles Kool Smiles to recover its attorneys' fees pursuant to 15 USC § 1117.

## PRAYER FOR RELIEF

WHEREFORE, Kool Smiles respectfully demands that judgment be made and entered in its favor and against Defendants as follows:

A.      Enter a permanent injunction enjoining Defendant Mauzé & Bagby from making false and defamatory statements regarding Kool Smiles.

B.      Award Kool Smiles actual and compensatory damages in an amount to be determined at trial;

C.      Award Kool Smiles general damages in an amount to be determined at trial;

D.      Award Kool Smiles punitive damages in an amount to be determined at trial;

E.      Award Kool Smiles special damages in an amount to be determined at trial;

F.      Award Kool Smiles all costs and attorneys' fees incurred in the prosecution of this lawsuit; and

G.      Grant such other and further relief as this Court in its judgment deems just and proper.

23

## <u>JURY TRIAL DEMAND</u>

Kool Smiles demands a trial by jury on all issues so triable.

Dated:  May 13, 2015

Respectfully Submitted,

s/ *Darren L. McCarty*

Darren L. McCarty
Attorney-In-Charge
Texas State Bar No. 24007631
Southern District of Texas Bar No. 28364
2828 North Harwood Street, Suite 1800
Dallas, Texas 75201
(214) 922-3400 – Telephone
(214) 922-3899 – Facsimile

Of Counsel:

John A. Kazen
Texas State Bar No. 11132100
Southern District of Texas Bar No. 20351
**KAZEN, MEURER & PÉREZ, L.L.P.**
211 Calle Del Norte, Suite 100
Laredo, Texas 78041
(956) 712-1600 – Telephone
(956) 712-1628 – Facsimile

Sean M. Whyte
Texas State Bar No. 24047100
Southern District of Texas Bar No. 1430913
**ALSTON & BIRD LLP**
2828 North Harwood Street, Suite 1800
Dallas, Texas 75201
(214) 922-3400 – Telephone
(214) 922-3899 – Facsimile

Aaron Karl Block
Georgia State Bar No. 508192
Admitted *pro hac vice*
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30328
(404) 881-7000 – Telephone
(404) 881-7777 – Facsimile

**ATTORNEYS FOR PLAINTIFFS
BENEVIS, L.L.C.; DENTISTRY OF
BROWNSVILLE, P.C.; and KS2 TX, P.C.**

25

**CERTIFICATE OF SERVICE**

On May 13, 2015, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).


s/ *Darren L. McCarty*

26

REPORTER'S RECORD
VOLUME 1 OF 2 VOLUMES

MDL CAUSE NO. 14-0851

|  |  |
|---|---|
| | ) IN THE DISTRICT COURT |
| | ) |
| | ) |
| | ) |
| IN RE KOOL SMILES DENTAL | ) 370TH JUDICIAL DISTRICT |
| LITIGATION | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) HIDALGO COUNTY, TEXAS |

-------------------------------

MOTION TO AMEND

-------------------------------

On the 15th day of June, 2015, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Noe Gonzalez, Judge presiding, held in Edinburg, Hidalgo County, Texas;

Proceedings reported by machine shorthand.

                    A P P E A R A N C E S


FOR THE PLAINTIFFS:

     MR. MICHAEL E. FLANAGAN
     SBOT NO. 07107550
     Law Offices of Michael E. Flanagan
     809 Chicago Avenue
     McAllen, Texas 78501
     (956) 683-0333

     MR. GEORGE W. MAUZE, II
     SBOT NO. 13238800
     MAUZE & BAGBY, PLLC
     2632 Broadway
     Suite 402 S
     San Antonio, Texas  78215
     (800) 200-9096

FOR THE DEFENDANTS:

     MR. EDUARDO R. RODRIGUEZ
     SBOT NO. 00000080
     Atlas, Hall & Rodriguez, L.L.P.
     50 West Morrison Road
     Suite A
     Brownsville, Texas  78520
     (956) 574-9333

     MR. ALAN R. VICKERY
     SBOT NO. 20571650
     Sedgwick LLP
     1717 Main Street
     Suite 5400
     Dallas, Texas  75201
     (469) 227-8200

I N D E X

VOLUME 1

(MOTION TO AMEND)

Page Vol.

JUNE 15, 2015

Announcement by the Clerk............................ 5  1

Announcements....................................... 10  1

Motion to Appoint Master............................ 10  1

Ruling on Appointment of Master..................... 14  1

Motion to Amend..................................... 15  1

Plaintiffs' Request for Sanctions................... 65  1

Plaintiff's Request for In Camera Inspection......... 65  1

Ruling on Confidentiality Agreement................. 94  1

Court Requests Briefing............................. 95  1

Adjournment........................................ 119  1

Court Reporter's Certificate........................ 120  1

EXHIBIT INDEX


PLAINTIFF'S

| NO. | DESCRIPTION | OFFERED | ADMITTED | VOL. |
|---|---|---|---|---|
| 1 | KSL Documents Produced | 99 | 99 | 1 |
| 2 | Blank, Bates KSL-00000042 | 99 | 99 | 1 |
| 3 | Redacted, Bates KSL-00006409 | 99 | 99 | 1 |
| 4 | Office Scorecard-Medicaid Children | 99 | 99 | 1 |
| 5 | Rules and Regulations | 99 | 99 | 1 |
| 6 | Professional Literature | 99 | 99 | 1 |
| 7 | Advertising | 99 | 99 | 1 |
| 8 | ADA Guidelines | 99 | 99 | 1 |
| 9 | E-mails | 99 | 99 | 1 |

*PLAINTIFF'S 1-9 ARE SEALED.  PLEASE SEE VOLUME 2

COURT'S

| NO. | DESCRIPTION | OFFERED | ADMITTED | VOL. |
|---|---|---|---|---|
| A | Order Granting Plaintiffs' Motion to Amend Stipulated Confidentiality Agreement And Protective Order | 96 | 96 | 1 |

(In open court.)

THE COURT: On the -- my MDL, let me go ahead and clear something up before we go on -- do anything on it. I have the clerk's office here. I had met with them early on, on C-0184-13-G. What's the MDL number?

MR. VICKERY: I'm not sure we have an MDL number yet.

THE COURT: Yeah. We do.

THE CLERK: On the Kool Smiles, Judge?

THE COURT: Yes.

THE CLERK: MDL 14-0851. I'm not sure.

THE COURT: Anyways, my understanding is we've had -- I've been telling my staff to tell you all to file whatever you've got to file in the MDL number, but the clerk was supposed to set that up, and the IT Department hasn't been able to complete the task. So I had the clerk come in here just to explain to me and to you all where we are at with that.

THE CLERK: Good morning. So we put in a work order to ask for the case type to be available for e-filing through the portal system, and they completed it. So we let everybody know that they're ready to e-file. And then we received a call from a law firm stating, "We've been trying to e-file. We get an error message saying, "Unavailable to file" -- "Unavailable for filing"".

We put in another ticket. They called us back

and said, "Okay. I think we've got it. The only problem is: We need to run at midnight" -- because they have to clear all the information. That led us into Friday. So Friday, I received another call from the same filer saying it's still not working.

Called them again. They called us back on Friday afternoon and told us, "Okay. We think that we have this resolved. But, again, we have to wait until midnight to run the script again".

And this morning, I came in and discovered that it's still not working. So we've already put in an e-mail -- I mean, put in a phone call, and let them know what's going on. And we're waiting to hear back from them as of now.

THE COURT: So because of that, what we're gonna be doing is -- Really, the only -- The MDL is active, but the only active sub-case is the 0184-13-G case; is that correct?

MR. MAUZE: Yes.

MR. VICKERY: Is that the Antu case, Your Honor?

THE COURT: That's the Antu case.

And so for now, keep filing it in that number. And then once the MDL is up and going, then we're gonna have to take those orders that I'm entering, post-MDL creation by the State, and whatever orders are signed have to go into the MDL number.

THE CLERK: Judge, will the orders that are

meant to be in the master file be labeled with both numbers so that we know --

THE COURT: I'm gonna ask them to do that. Yes.

THE CLERK: Okay.

MR. MAUZE: You -- That's what we were wondering. That was my office that called y'all, that we were trying to file, so we were told to file in the Antu. But should we put the MDL cause number and style; then below, the next cause number and style?

THE COURT: Well, actually -- Actually, what I would do is -- I would put a cover sheet.

MR. MAUZE: With the MDL?

THE COURT: With the MDL cover sheet. In other words, do a style with the MDL on the first page, and then whatever you're filing attached to that -- for now. That's the only thing we can do, because technically, it's not -- technically, it's an MDL filing, but we don't have an MDL portal that's working.

THE CLERK: Right. Judge, I believe that one of the rules requires that both case numbers are listed. I would need to read the rule again to confirm, but that kind of -- that kind of defines that it's being filed into the main case -- the master file and into --

THE COURT: I didn't read the rule like that. But if it does say that -- Look at the rules, guys. I looked

at the rule, and I don't think it said that. I think what it -- I thought that what it said was: If it's filed in the MDL, it automatically attaches to the underlying case. If it's filed in the underlying case, it automatically attaches to the MDL. And maybe you -- you read it as: You got to put both numbers on there.

I'm just saying: If you file it, it automatically goes to the MDL, because an MDL exists. That's the rule. If it's filed in any of these cases that fall within the MDL, they have to go to the MDL, no matter what number you put on it. So --

MR. VICKERY: Your Honor, has there been a separate MDL cause number set up in your court, because I --

THE COURT: That's what they're trying to do.

MR. VICKERY: But has there been a number even though we can't e-file? I -- because I wasn't aware that there actually was actually even a cause number assigned to it.

THE COURT: Well, we're using the State MDL number.

MR. VICKERY: From the MDL panel?

THE COURT: Right.

MR. VICKERY: All right.

THE COURT: You're gonna use the same number.

THE CLERK: I believe it's 0851, if I'm not mistaken.

THE COURT: Do you all have it with you?

MR. VICKERY: I think that was the number that the MDL panel assigned to it when we filed then motion with the panel. It was my understanding that your court would assign a separate cause number. Maybe that's not the way --

THE COURT: No.

MR. VICKERY: That's the way I thought that was gonna happen.

THE COURT: No. I respect the underlying number, and then I give -- I take the State number, and use that for the MDL.

MR. VICKERY: All right.

THE COURT: You'll let us know?

THE CLERK: Yes, Judge. I definitely will keep the Court posted on -- And they're likely gonna tell us the same thing -- they're gonna have to run the script at midnight and --

THE COURT: If they can't get it up and going soon, then I'm gonna allow them to start filing physically.

THE CLERK: Okay.

THE COURT: And that way we don't run into this problem. I don't want, later on, for someone to say, "Well, I filed it, but it's in the wrong number" -- and all this other stuff. The MDL has been created. I think the parties are respecting the MDL, but we don't have a way to file it --

So whatever you file is going to the MDL.

MR. VICKERY: All right.

THE COURT: Okay?

Thank you.

THE CLERK: Thank you. Excuse me.

THE COURT: Okay. What do we have on the MDL, by the way?

MR. MAUZE: Your Honor, George Mauze for the plaintiffs, along with Joe Hernandez and Mike Flanagan. We have three matters before the Court. The first one is a matter that's -- we had filed back in November the 14th. It's a Motion to -- Motion to Amend the confidentiality agreement and protective order or, alternatively, for sanctions or, alternatively, to determine confidentiality of numerous -- hundreds of thousands of documents produced by the defense that were marked confidential.

And the second matter is just some Court guidance -- I think we just need -- on the CMO. We do have a draft we filed with the Court and gave to opposing counsel. I'm sure we can work out the majority of the discovery issues. Our concern is: They're not willing to go forward on any discovery until that order is entered.

And then the third issue -- after you hear the discovery issues, and all the problems we're still having, and how they've actually ballooned -- is asking if, in the Court's

judgment, the Court needs assistance -- then we filed the Motion to Appoint Master if the Court deems that would be appropriate under -- in light of the extraordinary circumstances that exist because of the discovery disputes.

THE COURT: Okay. Make your announcements for the record for the court reporter.

MR. MAUZE: For the plaintiffs are George Mauze, and we're present and ready.

MR. HERNANDEZ: Joe Hernandez, Your Honor.

MR. FLANAGAN: Michael Flanagan also making an appearance for the plaintiffs, Your Honor.

MR. VICKERY: Your Honor, Alan Vickery for the defendants.

MR. RODRIGUEZ: Eduardo Rodriguez for the defendants as well. There's one -- There's one other attorney that -- I don't know if he's present -- that's involved in the MDL.

THE COURT: What's his name?

MR. RODRIGUEZ: And I don't know if he got notice or not.

MR. VICKERY: His name is Bruce Campbell, Your Honor. He represents one of the doctors in one of the cases that was transferred to the MDL. So we do have an additional defense counsel. I don't -- I don't know if he's here or not.

THE COURT: Okay. One of the things that I want

to point out -- now that you all have made your announcements -- I don't know if Campbell received notice and stuff. We need to clear up for the clerks and my staff -- but mostly for the clerks -- a list of those that are coming in as counsel.

What's going on, folks -- and my staff ran into it -- With all due respect to some of you that asked for the shuffling of times and resets and stuff -- I know that not everybody is gonna be able to be present at all the hearings. I know that for a fact, because the lawyers that are involved in this case have very active trial dockets. And so I cannot always grant the types of continuances you are requesting, especially when I look at the motions and I'm saying, "You know, this is a motion that moves the case forward. It's not a case -- it's not a motion that's gonna be that difficult" -- I don't think it is. And so I got to push it.

So I'm gonna ask that you all look very carefully at who you all are bringing in as lawyers, and local counsel, and trial counsel, appellate counsel -- whoever you bring in -- Keep in mind that there will be times where if you've got one or two of your lead lawyers -- and I don't consider local counsel non-lead lawyers. Some courts do that. Some courts will say, "Well, you've got local counsel" -- but they're only local -- I don't consider that. I mean, if you're hired as counsel, you're hired as counsel. I understand that.

But I don't need, you know, four lawyers for each party to be present at every hearing. And so it's gonna cause problems in the end if we continue to do that.

So please keep that in mind. Work with each other. I know you want to be here for everything, but I know you can't. And we're not having a lot of hearings yet, but we're gonna possibly have more and more fights about discovery. And if we do, I'm not gonna be waiting for everyone to clear their calendars to be able to move this forward. That's not what an MDL is designed to do. The MDL is designed to move the cases forward so that there aren't more delays, and we have consistent rulings.

And so that's what I envision in this case. Hopefully everyone can juggle their schedules or juggle their lawyers so that we have everybody represented at each hearing. But if you get notice, and you fail to appear because you had a conflict, I understand. I'm not gonna be one that's gonna be upset for somebody not being here. But usually it's the lawyer that's upset that they can't be here, and -- and now they're, you know, not getting a chance to be heard. You're getting a chance to be heard. I'm just telling you: With so many lawyers involved -- And it's gonna blossom. I don't anticipate the case getting smaller. I wish.

MR. VICKERY: Your Honor, one of the things that Mr. Mauze proposed in his initial draft of the CMO that he

circulated last week is that the Court give us a standing day every month for a hearing. And if we have any motions to be heard, we know that it will be heard on that day. We're -- We'd certainly be in favor of doing that if the Court is in favor of doing that. But that's one way we -- we might be able to anticipate, every month, when we're gonna be in front of you with any contested motions.

THE COURT: You know, that works when you've got simple motions, and so I don't have a problem with that. But there are gonna be times where whatever's being heard may be heard that morning and the following morning. I can't tell you: "You know what? I'm gonna give you a set day, and you have the whole day for motions" -- and that happens sometimes when you're dealing with discovery issues.

I'm not a big fan of -- Just to start off with, I'm not a big fan of masters. But I have entertained issues dealing with masters when the parties can agree. "You know what? Let's sit down with a master" -- like a deposition, essentially -- "and create a record of what we're doing here". So that motion, I can tell you right off the bat, I'm not ready to rule on it, unless you guys are -- have already discussed it, and you all have certain issues that definitely need to be heard by a master. Otherwise, I'll hear it myself.

MR. MAUZE: No, Your Honor. We --

MR. VICKERY: We have not gotten that far with

this, Your Honor.

THE COURT: Okay.

MR. MAUZE: Yeah. I think we're in agreement. We don't really want a master. But we thought after you hear everything you're gonna hear today and all the discovery issues, if the Court deems a master would help move the case along, then we filed a motion just so it's before the Court.

THE COURT: Okay. And then we have the other motion.

MR. MAUZE: The -- That's -- Yes. The first motions are Motion to Amend the confidentiality agreement, protective order or, alternatively, for sanctions, or to determine the confidentiality.

THE COURT: What's the issue?

MR. MAUZE: That's the biggest issue. There's three issues on it, Your Honor. The Court recalls the procedural history, I'm sure, of some of this case. And I've got orders, and privilege logs, and exhibits for you, and some case law that we'd like in the record when you're ready for us to present the hearing.

But, basically, in a nutshell, after many, many hearings before His Honor, you ordered and compelled a bunch of production and overruled specific objections. As we get through months and months, they finally produced 477,964 pages. And we brought with us 25,600 of them, which is 5 percent.

Under the protective order, they had the right, if a document was proprietary or a trade secret, to identify it, subject to the protective order. All other production, we get, and we were gonna -- we intended that they would do it in good faith, and we could share that discovery as allowed by the case law.

Your Honor, out of 477,964 pages, they stamped every single one confidential except for 438. 99.9 percent of the pages were marked confidential. We can show the Court and build a record that it's a flagrant abuse. In fact, they marked documents confidential that you already ruled in orders, and overruled their claim of confidentiality. You overruled their claim of trade secrets. You overruled their claim of proprietary. Yet despite your order, in contrary to the order, they stamped them all confidential. So we have examples of that we would present to the Court.

Furthermore, they've marked as confidential over 1,000 pages that are blank. That's how extreme their marking of confidential is. They marked 100,000-plus pages that they redacted 100 percent as confidential. And you already instructed them at a prior hearing, "If you're going to redact this data, leave the top row so they know what document this is". They redacted 100 percent of over 100,000 pages and marked them confidential. They have marked as confidential e-mails, literature, professional literature, biographicals. They've marked so many documents that clearly are not

confidential, and so we need the Court's intervention.

We believe -- and Mr. Hernandez is going to argue the law -- but the Supreme Court law is very clear under shared discovery doctrine. We're entitled to use this discovery in other litigation, and in pending litigation, and in consideration of litigation, even if it's not identical parties. But because of their marking of confidential, we -- we're prohibited from doing that.

THE COURT: Well, especially now that there's an MDL.

MR. MAUZE: Yes. They don't dispute we can use it in the MDL. But the issue --

THE COURT: Well, what else -- The way -- By the way, the State defined the MDL is pretty broad.

MR. MAUZE: Yes. And what -- And Mr. Hernandez will argue this -- but what the law provides -- and I'm sure your Court knows *Garcia v. Peoples* -- which we have a copy for the Court -- but it says shared discovery is permissible. You may share discovery with other litigants, even in cases that are not identical, and the parties are not identical. And we are meeting with other attorneys in other venues that are outside the MDL -- and they're prohibiting us from sharing these documents with them.

Importantly, Judge -- You know, I don't know if you know this, but -- the defendants in this case are suing my

law firm. They're prohibiting us from using these documents in the case in which they're suing us where they're claiming we defamed them by saying children are screaming and struggling when they're being treated under dental operative procedures while restrained.

They have not produced those cases in the underlying federal case. They produced them in this case. There's very exculpatory documents showing what these children are going through, and they have marked them confidential. They are tying our hands, contrary to your orders, contrary to the Supreme Court rules, and contrary to the spirit and the intent of that protective order.

MR. VICKERY: Your Honor, if I could just respond briefly -- and I don't know if you're ready to get into the guts of the entire hearing at this moment. But my review of our document production does not suggest that we've marked 99 percent confidential to begin with. We -- My records show about 70 percent. All right? And we did mark confidential a document --

THE COURT: Who did it?

MR. VICKERY: My law firm, as well as contract attorneys that we -- that we hired to help get us get through the document production, under our supervision. So --

THE COURT: Look, I'm gonna ask you some questions in a bit, once we get -- I'm gonna call the rest of

the docket. I'm gonna ask you some questions, so be prepared to answer these questions, because I've -- I've been on this horse before.

MR. VICKERY: All right.

THE COURT: I'm gonna want to know who marked them and under whose direction.

MR. VICKERY: All right.

THE COURT: The biggest problem I have with large document production and stamping of confidentiality or a privilege of any type is that -- I'm not saying you'll be guilty of this, but some -- in some cases, the worst part is that they can't even pinpoint who did it, who stamped it, who classified it. I have a lot of law firms that will hire people -- either paralegals or less than paralegals -- to make that determination, and I've got a serious problem with that.

So go through your notes or make whatever phone calls you've got, because I'm gonna want to know who stamped them. Because who stamped them could explain why a blank sheet would be stamped confidential or why something that the Court has already ruled on would be stamped confidential, because they're not aware what they're supposed to be doing.

MR. VICKERY: As a preliminary matter, Your Honor, the protective order that the Court entered was an agreed order that both sides negotiated. Both sides had input in it. And there's a procedure in that protective order when

we have disputes about documents that have been designated as confidential.

And the procedure is that they tell me which ones that they think are not confidential. I respond and say, "We'll either withdraw the confidentiality designation" or "We stand on it". And once we've had that meet-and-confer, then we present any disputes to you --

THE COURT: Counsel --

MR. VICKERY: -- and that has not happened.

THE COURT: Counsel, I understand that. But if I was in their shoes, I'd be in the courtroom too, because the procedure itself is frustrated when you have -- and I don't know what the number he said -- maybe a thousand pages -- of blank pages that are marked confidential. That, to me, is a red flag that there is either obstructionism or there is neglect. And I'm not saying that either one exists in this case. I'm just saying that would raise a red flag in my eyes if I was them when -- What's confidential about a blank piece of paper?

MR. VICKERY: I don't disagree with that. But what I don't know is that -- whether that blank piece of paper happened to be part of a larger document that was confidential, or whether it was mistakenly designated. Until they tell me what the Bates numbers are of these documents, I can't go through and determine which it is, because there are some --

THE COURT: Which brings me to the next thing, which is one of the other abuses in discovery of large numbers of documents. If, in fact, what you're saying is correct, then you're not categorizing the discovery correctly.

If you've got a document that is 50 pages, and you're marking the whole document confidential, that document should be designated as a 50-page document. It should not be designated as 50 separate documents. Because, otherwise, you are running a muck with what discovery is supposed to be.

When you produce a document you're supposed to identify it as a document. That's another abuse that occurs. And I'm not saying that you're participating in any abuse. What I'm saying is -- because I haven't seen it -- What I'm saying is: If what you're saying is correct, and that is part of another document, they should have seen that. It should have been designated as part of another document.

MR. VICKERY: And that's the way -- that's the way we've categorized them. I've got document numbers, not page numbers. And I have -- we have had this dispute about whether pages -- every page within the document needs to be stamped, or whether just the first page. And we agreed that every page within a document would be -- would contain the confidential designation. And so until they tell me what documents they're concerned about --

THE COURT: So you have classified them?

MR. VICKERY: I have got a list of documents that we have produced by document number, not by page number.

THE COURT: And when you produce them to them, you tell them, "These are the document numbers" -- "These are the documents, and these are the numbers pertaining to each document"?

MR. VICKERY: I have them all --

THE COURT: I know you have them like that, but do you give them to them like that?

MR. VICKERY: I don't know whether we've exchanged that sort of a list, or whether we gave them the document production with all the documents, and every page is just designated as confidential within the document.

THE COURT: Okay.

MR. VICKERY: But --

THE COURT: So maybe that's the problem -- that you all aren't -- I like to have Eddie in my court, because we've been around -- around the playground for quite some time, and Eddie knows the way I like discovery. One of the issues that comes up often and that I've been criticized for is for forcing people to create documents. Okay? And Eddie Knows how I feel about that. I'm not asking you to create it. I'm asking you to organize it in a manner that's consistent with discovery.

If creating a document would assist, then, by

all means, create it, because it makes your job and theirs easier, and the Court's easier. Otherwise, what has happened before -- and Eddie will be glad to share some war stories -- What's happened before is -- I'll say, "Okay. Well, if you don't want to create that document, then fine. Then turn over all the discovery" -- and then there's no limitations. And I've been taken up and reversed on some, and I've been taken up and upheld by some. It just depends.

But it's very difficult to -- I guess, look at what they're claiming. And if it's part of a document, and it hasn't been designated as a separate document, then that's what you need to start doing so that there isn't this argument. They're claiming you gave them blank documents marked confidential. If it's unclear to them that it is part of a larger document, then we need to clean that up.

MR. RODRIGUEZ: And, you know, Your Honor, that's why the procedure that was set out -- it should be followed before we come to the Court. I mean, we're -- we're willing to sit down and go through the documents. And if we -- if we mishandled some, we're willing to acknowledge that, and to -- and to just talk about the ones that are at issue. But to just come to the Court because they're unwilling to do that --

And with all due respect, I'm the one that caused the problem for your secretary, and I apologized to her.

I had a major issue today -- that I couldn't be here. Fortunately, my son's cased was passed late Friday afternoon, and he's doing it for me. But we want to work with the Court. We want to try to work with the other side to resolve that.

And I just want you to know, we have spent some time -- We mediated this case recently. And so we spent some time talking with our clients, and both sides went in and tried to resolve the matter, and it didn't. But it's not that we just are not willing to sit down and talk with them --

THE COURT: And I'm not saying that, Eddie. And, in fact, forgive me if you understood that. I'm not saying that. In fact, that's why I'm saying, generically -- I'm not saying that you're doing these things. What I'm saying is: These are problems I see, and this is what I'm gonna want to know. I'm giving you a heads up.

But I think that what they're saying is not -- Well, if they are asking for a specific ruling on specific documents, they're not gonna get it today. Okay? I think what they're asking for is a general guidance. And I don't have a problem giving you all some general guidance today.

I agree that once a procedure is set up, that -- that I should, you know, be able to respect what you all are doing to try to move the case forward. But you're talking about half a million dollars -- half a million pieces of document almost.

MR. VICKERY: But that half a million is about 7,000 documents. And that's why I've got -- that's the way I've got them categorized. And I have told Mr. Mauze on multiple occasions: If he will identify the documents that he thinks are improperly designated as confidential -- as confidential, for whatever reason, I will look at them, and evaluate them, and let him know we either stand on our confidential designation, or we will withdraw it.

I've made that offer to him as recently as last week. We've made that offer to him as early as last November, yet we have -- we have been provided with the Bates numbers and the names of six documents. We responded to all six of those documents with our answer, and on three of them we withdrew our designation. But as of this morning, I have not been given the names or Bates numbers of any other documents that they claim have been improperly designated. All we get is what has been suggested to the Court this morning is going on, which is, I think, an inaccurate representation of what has happened, and the -- the -- the procedural history of trying to work this issue out.

I offered last week to go through any documents that he claims have been improperly designated and make this decision, and he did not want to give me the names of the documents, and wanted to have the hearing this morning instead.

MR. MAUZE: Your Honor, we have conferred and

tried for months to resolve this with them. The problem we have is: Because their designation was either done very poorly or in bad faith, because they marked 99.9 percent confidential -- They wanted to me to identify every page I reviewed. It took -- and I told Mr. Vickery this -- I had one lawyer, full-time, for six months on this.

He said, "We'll get this resolved in two weeks".

I said, "It's impossible, Alan. It's 477,000 pages. You marked them all confidential. It can't be done in a day or two."

We've given them six months. We've suggested they go back and try to redesignate, and comply with your Court orders.

THE COURT: Are these -- If -- The way -- If I follow your numbers, you would have an average of about 70 pages per document.

MR. VICKERY: Some of the documents are reports that are very, very lengthy. They may be over a hundred pages long, each.

THE COURT: Okay. So you may have some reports in there?

MR. VICKERY: We have many -- 39 -- I think it is 3,900 out of this -- or maybe 4,900 -- I'll have to look at my notes -- out of the 7,100 or so documents are these lengthy reports.

THE COURT: And they're generated reports, like of income, and procedures, and things like that?

MR. VICKERY: They have all sorts of information on them about procedures, about some of the dentists who were involved, about statistical information on some of the clinics that are operating under the business. There are many pages within those reports that have been redacted, as Mr. Mauze pointed out, because the reports not only contain information about the two clinics that were involved within the Antu case, but they contain information about all other clinics around the state and around the country. And all of that information, pursuant to the Court's order, was redacted.

So there are -- There are probably hundreds of pages that redacted from top to bottom, because they contain no information that was relevant to the Antu case, yet we were ordered to produce the entire document with redactions. And so that's the way we did it. So the entire document was stamped as a confidential document, because the information that was not redacted was confidential -- but the entire document was stamped as confidential.

THE COURT: Can you give me an example of one of those documents?

MR. MAUZE: I can show you, Judge.

This is the same notebook I gave you all for this hearing, but --

And we'll mark some of those exhibits whenever we proceed.

Judge, if you look at Tab 6, that's a blank page. So if this belonged to another document that they marked confidential, it doesn't -- They have redacted the page number and the document it belongs to. And there's over a thousand of those.

Page 7 is an example of what you just asked about. They redacted everything. And you may recall, Your Honor -- it's in your orders, which we have in that notebook -- we -- they claimed that certain documents called Doctor Procedure Reports, Expanded Services Reports, and Office Card Medicaid Children Reports are -- were confidential, trade secret, and proprietary, and otherwise not discoverable.

You overruled those objections. Then they came back and told us none exist. And then we had a hearing, and we showed you they do exist, because we had some from a former employee. And you were upset with them, and said, "You all better make a better effort to find these documents".

They found, after saying "none", approximately 400,000 pages of those documents, after they told us "none". But when they said "none", they waived all their objections -- because they suddenly said "none", and you had already overruled their objections. All 400,000 pages are marked confidential, and --

MR. VICKERY: Your Honor, I think -- I think we're mixing issues here.

MR. MAUZE: No.

MR. VICKERY: They have a --

MR. MAUZE: Excuse me.

MR. VICKERY: They have a separate motion with respect to redactions. And, today, we're talking about confidentiality designations.

MR. MAUZE: It just goes to show the abuse of -- This completely redacted page -- You saw one of these before during a hearing -- and they actually go this direction, and it has a title at the top.

THE COURT: Right.

MR. MAUZE: And you said, "You may redact anything other than 1998" -- excuse me -- "2008 to 2010 that doesn't pertain to Mission clinic, McAllen clinic, or Weslaco clinic".

We don't even know if this is one of those DPRs, or one of the Expanded Service Reports, or Office Scorecards for Medicaid children. They redacted the title, contrary to your orders and instructions. There's 100,000 of these that they produced. I don't even know why they produced them.

But another example, right behind there -- And this goes into the -- Whoever did this -- if you look at the very next page behind Tab 7 -- You saw one of these original

documents in the courtroom, and it's -- They keep them in the regular course of business on 8 1/2 by 11, all the way across. They shrunk some -- they don't keep them like this -- so small, you can't even read them.

Then what they did, Judge -- out of those 400,000 page documents -- some of these, they printed two columns out at a time -- on 11 pages they blacked everything out. So, for example, if I look at Bates Stamp Number 465,110, I don't know if 111 is page 2 to that, page 3 -- because they expanded it, and copied it over 11 pages, and then they produced them to us sort of bundled up. So we don't know what page 2 goes with page 1.

There's a lot of either games being played, or somebody did a very sloppy job reproducing these, as ordered by you, to be reproduced in the regular course of business.

THE COURT: All right. Let me call the rest of the docket. You all get ready for a full hearing on it, and -- Like I said, I don't mind taking up specific examples, as you've brought up. I'm not gonna be making specific rulings. I want to look at, generally, what you all are complaining about so that I can give you all some guidance and possibly enter some orders that might clear some of this stuff up.

I appreciate the fact that you all have a procedure in place. But if they're complaining about the procedure, then that's what's at issue.

MR. VICKERY: We don't know whether the procedure works or not yet, Your Honor, because we haven't -- we haven't attempted to utilize the procedure. That was --

THE COURT: Well, I --

MR. VICKERY: That was what I was trying to suggest a minute ago.

THE COURT: I understand. But I can appreciate their concern when you're talking about almost half a million pieces of discovery, and having to review every single piece, and then repeatedly go back to you on every piece, if they claim -- They claim. I'm not saying -- You're saying it's more like 70 percent. Even if we take 70 percent. 70 percent of, you know, half a million, is still 350,000, you know.

MR. VICKERY: I'm saying 70 percent of the documents -- of the 7,100 documents. I don't know --

THE COURT: Oh, okay. So you're talking about --

MR. VICKERY: I've got it broken down in terms of documents.

THE COURT: And do you all have it broken down in terms of documents?

MR. MAUZE: No. They did not give it to us that way. Another thing they did -- They brought to this courtroom, if you recall, a big hard drive and -- on the day of the hearing. We went -- During a break, you said we could look at

it. We took it down to the library -- of course, it's too much to look at in an hour. It's 477,000 pages. We took it back. We've looked at every page. And I do have evidence -- which I'll offer the Court -- 99.9 percent are redacted. It is not 67 percent. It's 99.9.

THE COURT: Well, what he's saying --

MR. MAUZE: I mean, not redacted. I'm sorry. They're marked.

THE COURT: And I'm gonna pick on you, because I love -- I loved, and I still quote him on -- I used to do it almost on a daily basis. Dr. Bill Crane used to say, "There are liars, damn liars, and statisticians. You show me a page of documents with numbers on it, and I can move them around to show whatever".

I'm sure you're gonna be able to show that 70 percent of the documents that are produced are the ones that are, in fact, redacted or marked. They're gonna show it differently, because they're looking at it from the standpoint of the number of documents that they have. The number of documents they have is pages. The number of documents you have are documents themselves that contain multiple pages. So that's where the numbers may --

MR. VICKERY: If it would facilitate this, Your Honor, I'm pretty sure we have a log in our office of the documents, with the Bates ranges for every document, and it

sounds like Mr. Mauze does not have that. I would --

THE COURT: Well, folks, that's -- that's the point. The point is that when you turn over -- especially voluminous discovery -- you have to give the other side -- People don't like to, because, once again, you all are saying that, you know, there's a creation of documents that the Court is forcing you -- No. I'm asking you to catalog. That's all. Catalog the documents.

If, in fact, you're giving them 7,000 documents, then it's logical to say, "These are the 7,000 documents that we give you. Document Number 1: Bates Stamp 1 through 222. Document 2: Bates Stamp 223 through 225" -- whatever the log may show, whatever the catalog may show, facilitates the discovery process.

If you don't, this is no different than the person who says, "Well, you know what? There's the room. You're asking me for records, and you asked me for ten different types of records. I'm giving you all my records". You can't do that, because that's not responsive. You may think it's responsive, because you're saying, "I'm just gonna give you everything", but you got to catalog. You don't have to point out specific things that they should know to highlight themselves for their case, but you have to catalog what it is that you're turning over so they know what they're looking at.

So give me -- give me a few minutes for me to

call the rest of the stuff, and -- You want to sit down with him --

You want to open the jury room for them?

THE COORDINATOR: Yes, sir.

THE COURT: We have fresh coffee in there. I doubt if they have donuts today.

MR. VICKERY: I don't need a donut, even if they did.

THE COURT: You can go in there, and you can discuss possibly cataloging or what it is that might help. And then whatever's left, I'll be glad to hear it today. Okay?

MR. VICKERY: Thank you, Judge.

MR. MAUZE: Thank you, Your Honor.

(Brief recess while other matters heard.)

THE COURT: Okay. So what do we have?

(Discussion off the record.)

THE COURT: Okay. So what are we gonna hear today, because -- Has anything been reached? Any issues been resolved?

MR. MAUZE: No, Your Honor. We've talked -- all of us -- and I have been unable to reach an agreement.

THE COURT: Well, did we at least discuss, for example, the issue of a log or a legend of some type that they can give you?

MR. VICKERY: I do have the ability -- Your

Honor, it's Alan Vickery, for the record. I do have the ability to create a log that will contain a description of every document that we've produced, along with the Bates range, so that we have a list of documents, by document, as opposed to just a string of 477,000 pages.

THE COURT: That's a start. Now, you tell me, first of all, how you define "document".

MR. VICKERY: In one of these reports that we were talking about this morning, for example -- it might be 200 pages long, and I'll define it as a Doctor Procedure Report dated May of 2010 -- I'm just giving you an example -- and I'll give the Bates range for that particular report. And that way if Mr. Mauze has got an issue with a page that's been redacted in its entirety or a blank piece of paper that happened to be printed off in the middle of that as it got printed off, and designated as confidential, he will know that it's within that Bates range, and he can determine whether he wants to challenge the page or the document.

MR. MAUZE: The main --

MR. VICKERY: That's what we contemplated when we drafted this agreed protective order.

THE COURT: Okay.

MR. MAUZE: Well, I never -- If that's what was contemplated, they never gave it to me. But my concern, Judge, is they want to stick with the protective order in place, and

it's been so abused -- which I would like to show the Court and offer evidence in the record that we're not willing to do that. We need to -- And I've offered: If we just amend the protective order pursuant to Texas law -- because I gave them a lot more than the law allows, thinking, in good faith, they would not mark so many documents -- If we just amend it to what Texas law provides -- which is what I proposed to them, and gave them a draft of an order -- we could live with that. It's not really what we want. It doesn't do anything about the abuse that's gone on that you'll see in a minute -- but they're not even willing to agree to that.

MR. VICKERY: Your Honor, I guess my position on all of that is: We had an agreed order that we went back and forth on several times, submitted it to the Court, and it was entered. It has worked just fine in this case. It does not prevent Mr. Mauze from using the documents in any way in our case. He can show them to experts. He can offer them at hearings. He can use them at trial. It does not prevent him from representing his client in this MDL with these documents.

And he wants to use them in an unrelated federal case, which has its -- which has its own set of discovery rules. It's got its own protective order. As I understand it, there are Motions to Compel that are pending over in that case. The issues are different. The claims are different. Parties are different. And so that's the -- that's the -- the real

motivation behind wanting to amend our protective order to allow him to use documents outside the context of this MDL.

There is nothing about the relief that is sought today that -- that has anything to do with representation of a plaintiff in this MDL that is in front of you. It's all about using the documents for unrelated purposes. And we think that's improper, and we think --

THE COURT: Well, you think it's improper, based on the agreement you've already reached.

MR. VICKERY: Based upon the agreement that we've already reached and our willingness in our offer to evaluate documents that he thinks have been inappropriately designated as confidential. There's a process in our protective order for us to sort this out. And Mr. Mauze has, today, shown me six documents that he claims have been improperly designated as confidential. We addressed those. We told him why three of them were marked as confidential, and we withdrew our confidential designation on three others. And so --

THE COURT: Well, let's take those six. Why did you withdraw the confidentiality designation?

MR. VICKERY: I'd have to go through and pull them out. It may be that they were public documents. I'd have to go through and pull each of them out to tell you, because I don't recall offhand, as I stand here. But my point is --

THE COURT:  Do you recall?

MR. MAUZE:  Yes.  I do, Your Honor.

THE COURT:  Because we can take that as a base example.

MR. MAUZE:  Well, it is just an example.  What happened -- Now, eight months ago was when we were conferring on this.  And we've been conferring on it quite a bit after that.  But what happened is:  We identified, in a letter to them, some -- just examples, like I'm gonna do today with the Court, if I may, as exhibits -- some examples of how certain documents, clearly, are not confidential.

And then in response to those specific documents that we just gave as example, they said, "Well, we'll agree to remove confidentiality as to this group, and this group, and not as to this group, and this group".

They didn't -- That just was an example to them.  And we said, "Because they have abused this so bad, by marking 99.9 percent" -- which I'll present evidence on -- "we shouldn't be burdened to go through half a million pages and tell them what they clearly, erroneously, marked".

And I'll show the Court how bad it is.  In the Stipulated Confidentiality Agreement, what we agreed -- which I thought they would comply with in good faith -- is -- it says -- and this is Tab 1A in your notebook.  It's the first page, Judge, under 1A, the last -- second paragraph, first

sentence. "The Defendants assert that all documents, testimony, and/or other items to be produced pursuant to the Stipulated Protective Order contain" --

THE COURT: Where are you?

MR. MAUZE: Tab 1, then A -- I'm sorry. Not "1". It's just "A".

THE COURT: Okay.

MR. MAUZE: The motion's in the front.

THE COURT: Yeah.

MR. MAUZE: And then "A", "B", "C", "D", and "E" are exhibits to the motion.

THE COURT: Okay. I see it.

MR. MAUZE: It's the second paragraph on the first page.

So, the gist is: They're telling us, "Any document we mark as confidential, pursuant to the protective order, is trade secret, proprietary, and/or confidential information". We thought they would do that in good faith, and they haven't. So this agreement is not working, it hasn't worked, and we're simply -- would like to present to the Court some examples.

But the most flagrant examples is -- and you may recall some of this. I'm sure you will as we get into it. We had very lengthy hearings before you. You made rulings overruling the claims of trade secrets, proprietary, and

confidential. And then they produced them, and still marked them confidential. And I can show you the exact documents when you want me to proceed.

THE COURT: Well, how do you suppose they were supposed to do this?

MR. MAUZE: Well, what I'm used to, and what's been customary in my practice for many years, Judge, is: The other side makes a good faith effort to mark what they think is proprietary or trade secrets -- that they don't want their competitors to get a hold of -- and mark it. But in this case, they marked documents you already ruled on and told them -- And the order says, "I've overruled your objections". They marked documents they had no objections to -- because they withdrew them -- after representing to the Court the documents didn't exist, when they did. And then --

THE COURT: I'm a little confused though.

MR. MAUZE: Yes.

THE COURT: The second paragraph, page 1, Exhibit A: "The defendants assert that all documents, testimony, and/or other items to be produced pursuant to this Stipulated Protective Order contain trade secrets, proprietary and/or confidential information (referred to collectively as "Confidential information")".

MR. MAUZE: That means -- Yes. All --

THE COURT: They're saying -- They're saying --

In that statement, they're saying, "We" -- "It's our position that everything we" -- "everything we give you is confidential".

MR. MAUZE: No. Your Honor, what that's saying is: "Items that we produce pursuant to this" -- that they stamp is "confidential pursuant to" -- the stamp they used -- which we agreed on was "confidential pursuant to the protective order". It's if they produce it pursuant to this. They can produce it without the protective order. But if they produce it under the protective order, they have to stamp it, so we know which ones they're claiming are confidential. It's not every document they produced. It's the ones they produced pursuant to the protective order as confidential. And that's what they did, but -- except they marked, as I mentioned, over 99 percent of them.

THE COURT: I think it's poorly written.

MR. MAUZE: Well, that -- I mean, we all -- They operated under the wording, as I just expressed it -- where if they claimed it's confidential, then they stamped it.

THE COURT: I understand that's what the first paragraph says. The first paragraph on the second page that's labeled Number 1: "For the purposes of this Stipulated Protective Order, "confidential" may include" -- and then they go through this litany of examples.

Then 2 says: "Whenever the defendant produces

confidential information, the defendant shall designate each page of the document or thing with a label or stamp identified as "confidential" and/or pursuant" -- I'm sorry -- "and/or "produced pursuant to protective order"".

MR. MAUZE: Right. And then as you read on, it's clear the order is saying they -- if they claim it's a trade secret, or proprietary, or otherwise confidential, then they have to designate it as such pursuant to this order, or they waive it. But we even have a holdback. If they realize they inadvertently forgot to stamp something, they can come back later and stamp it. But rather than take that more conservative approach, they took a very broad approach, and pretty much marked, you know, everything.

And then, of course, pursuant to the terms of this enumeration 8 on page 4: If either party wishes to modify or amend this agreement and court order, then we simply present it to the other side. And if an agreement is not reached, present it to the Court. And that's why we're here on a Motion to Amend the confidentiality agreement. Because of the abuses that have occurred, it's made it clear this isn't working.

MR. VICKERY: Well, Your Honor, it depends on how you define "it isn't working". It's working just fine for purposes of the Antu case, in which the order was originally entered, and it would work just fine if this were the document that were part of the MDL. This protective order was entered

into the Antu case early on. And there is nothing about this protective order that prevents plaintiffs' counsel from using the documents for any purpose in our case.

So the document does work just fine, and there is -- there is nothing in it that impedes his ability to represent his client in the litigation that is in front of you. The real purpose behind wanting to modify this is so that the documents can be provided to parties and counsel in other litigation that's not related to the litigation that we have in front of you.

MR. MAUZE: And --

MR. VICKERY: Most specifically, the federal case that I just mentioned.

MR. MAUZE: And we can talk about that. Mr. Hernandez is gonna discuss the law with you from the Supreme Court that's on this -- I'm sure you're familiar with the shared discovery doctrine. That's permissible. But what they have done, which has arisen since the entry of this protective order, Judge --

In the federal case against us -- They're saying that's not similar litigation. Kool Smiles is suing my firm, claiming statements we made about these very children were defamatory. It is the same parties. They're similar parties. They don't have to be identical under the case law -- and it involves similar issues. They're saying when I made

comments -- when we made comments that these children are crying, screaming, and struggling, that was defamatory.

It's the very treatment and the trauma these kids went through. So they're not letting us use any of these documents where they admit these kids are wetting on themselves, they're struggling, they're screaming -- They're saying, "You can't use those in the federal case to defend you where we're suing you for defamation". And the law does allow us to use them.

The other issue under the shared discovery doctrine is: There are other litigants and potential litigants outside the MDL that we're allowed to share these with, that they're not in agreement. But I think if I go through the Court to brief some of these exhibits, you'll see how bad this order has been, and how poorly complied with it has been.

MR. VICKERY: Your Honor, I'm not suggesting that Mr. Mauze and his counsel in the federal case can't use any of these documents. What I'm saying is that the discovery issues and the discoverability or admissibility of documents in that case is up to the federal judge in that case. If these -- If these very same documents are requested in that case, and the judge determines that they're discoverable, that's -- that's that judge -- the federal judge's decision to make. It's not up to us to decide in this case what is discoverable in that case.

MR. MAUZE: That's not --

THE COURT: Well, at first -- Let me just reel you guys back in to the crux of this. At first, I kept hearing you say that there's an agreement. I know Eddie said it earlier -- and there is such an agreement. I'm reading it right now. But if, in fact, I'm to read the agreement as a Rule 11 agreement -- which I should -- you have a Rule 11 agreement which binds this Court to any agreement that you all may have reached, obviously within the confines of the rules prescribed to try the case. I mean, you can't just change the rules willy nilly, just -- even with Rule 11.

But you look at Paragraph 8 -- "If any party wishes to modify the Stipulated Protective Order or its application to certain documents or information" -- I was reading this wrong. I thought that it said that you all had to try to work it out amongst yourselves through some sort of procedure, but it doesn't have any procedure. It just says, "The party shall first request such modification from the party producing the confidential information" -- and, apparently, that's happened. You guys have tried to work it out -- "and if no satisfactory agreement is reached, may petition the Court for modification. Until modification is granted by agreement and/or court order, the terms of the Stipulated Protective Order will govern".

So right now, they're governed -- they govern --

they're bound by the agreement. But today, they're seeking a modification of that agreement.

MR. VICKERY: The paragraph that I was referring to --

THE COURT: Go ahead.

MR. VICKERY: The paragraph I was referring to earlier, Judge, is paragraph 6, which is the procedure that -- that we agreed to in this order to challenge the confidentiality designation on specific documents. Mr. Mauze is claiming that we have overdesignated specific -- certain documents, yet he has not told us which ones he claims we have designated improperly.

And so paragraph 6 contains the procedure that -- Paragraph 6 is the provision that I'm referring to that talks about the agreement we -- that we would hash out any challenges that he had to specific documents that had been, in his view, improperly designated.

MR. MAUZE: And we've tried to do --

THE COURT: I mean, technically, you both are right. Okay? He's saying, "Look, we don't agree with the way he's done the confidential designation". But he's going a step further. He's saying, "Not only do we not agree with it, it has highlighted a problem with this whole process that we" -- the agreed confidentiality agreement. And so then he wants to avail himself to paragraph 8.

And so, really, it's kind of a -- I mean, we could go around in circles with the agreement. The bottom line is: He wants to show me why the agreement isn't working for them. You want to say that it's working -- Well, it has worked up to this point because you produced the documents.

And I got to hear from them to see why it is they claim it hasn't worked for them. And if it hasn't worked for them -- Unfortunately, the agreement is so open-ended under that paragraph 8, that, essentially, the Court can modify it for any reason.

MR. VICKERY: Maybe the easiest way to deal with this, Your Honor, and the most efficient way to deal with it is for us to try to work on a new protective order for purposes of the MDL. Because this protective order was in only one of the cases that was transferred to you for the MDL. And we're gonna -- And as the MDL judge --

THE COURT: You know, I agree -- I don't disagree with you. But I guess my point is that -- My point is that right now, any decision that I make, even -- even if it -- the way that I understand the MDL to work: Any decision that I -- that I make right now applies to the MDL. There are very few instances in which the Court should be carving out rulings. That's the whole purpose of the MDL.

So I agree with you. I think that maybe -- maybe you're right. Maybe you should be looking at a

confidentiality agreement for purposes of the MDL.  But what I was gonna do is:  No matter what happened here, I was just gonna say, "Okay.  If you all feel comfortable with this protective order with modifications" -- if modification are made by the Court or by agreement -- "then I'm gonna make it the MDL agreement".

MR. VICKERY:  And, again, I -- and I think we can certainly work on that, Your Honor.  I do think that under Rule 13 of the Judicial Administration Rules, there are not to be any further actions taken in every case that is transferred to you, yet -- but the -- but the decisions are made for purposes of the MDL, not a specific case that has been transferred to you.  And so this -- This protective order was entered in the Antu case.  It has not been entered in the MDL. I know it's a little bit of a nuance there, but it has not been entered in the MDL for purposes of the applicability for the entire MDL.

THE COURT:  I agree.  But according to -- and I had a little chat with some of the other judges that have worked on some of these MDLs -- "Basically, Judge" -- and this is their take on it.  And I looked at the rules, and it seems to fit.  Basically, I can take orders from one case and say, "It's working in that case.  From this point on, that order is gonna stand across the board".

I can make such an order.  I'm not saying I'm

doing it with this. But there's no reason why I cannot, from this point on, look forward to any rulings made on the Antu case -- because that's the only case that's active right now -- to be binding on those cases that are jumping in, and just say, "Hey, these are the rulings we've made. I'm gonna stand by those. Unless there's something that you need to bring to my attention that's unique to your case" -- You know, that's the way I feel about confidentiality agreements and things like that. The confidentiality agreement is the easy one, because it's right in front of us.

MR. MAUZE: And one thing Mr. Vickery may have forgotten is: We sent them discovery in the other ten cases here in Hidalgo, and they, of course, didn't want to reproduce the documents because the burdensome nature of that. We agreed. So we've entered into stipulations of authenticity, and the ability to use these documents in all of the cases under your jurisdiction. And those have all been signed by everybody.

THE COURT: Those were before or after the MDL was created?

MR. MAUZE: Before the MDL. So before, we said that the Antu documents apply to all cases.

MR. RODRIGUEZ: Your Honor, may I suggest something?

THE COURT: Sure.

MR. RODRIGUEZ: Just based on your -- what we've heard so far and on the reading of the agreement -- Apparently, in the past -- and I'm not doing any of the discovery -- but apparently, in the past, there was some issues with some of the discovery, and some compliance, and there was an agreement reached. During the -- When we started today, Mr. Vickery got on the phone so that we can get a list of all of the documents that are marked confidential, and the Bates stamp number.

And perhaps while -- while the Court is suggesting language to amend this confidentiality order so that it applied in the MDL, we -- during that time, we can go ahead and produce that log. They can -- They can point out to us the documents that contain pages and -- We have no doubt that some of the documents do, because some of the documents contain pages that pertain to entities that are not part of this through the Kool Smiles original litigation. And, therefore, you know, we -- In getting those documents identified, we can then look through and be ready to -- to respond to that documentation.

I understand the Court's gonna be gone during the month of July. Counsel is gonna be gone for a couple of weeks in July. You know, we could report back to the Court shortly after the end of July, early in August, as to what that procedure is. In the meantime, both we and -- we could be looking at the order, and both sides could be drafting one.

The truth of the matter is: Until you pointed out some of the -- You can read this order -- Both sides can read it the way they want to, and -- and it is fairly broad. I mean, it's -- So I would -- I'm just trying to get through to how we can resolve the matter to give them their documentation, and so forth, that they say they haven't got.

Now, with respect to the issue of the federal case in Laredo, I think that -- that issue has to be resolved by him in that case versus us telling the federal court what they can or cannot use in their court.

MR. FLANAGAN: Your Honor, with regard to that last comment about -- We're not attempting to -- for this -- to ask this court to tell the federal court what is gonna be used or not used, what's gonna be admissible or not in federal court. We just want to be able to disseminate it to the litigants in the federal court case, to the lawyers in the federal court case -- That's what a shared discovery -- That's what the Supreme Court cases say that we're allowed to do. And right now we're hogtied by this agreement from being able to disclose it to anybody.

MR. MAUZE: Right. And what they're not telling you, Your Honor -- which Mr. Vickery is well aware of -- They wanted to put this off until August. And as you know, we desperately were trying to get this setting earlier, because of everyone's vacation schedules.

They know I have a July 27th deadline in federal court, and they're trying to get you to bump it into August. That's my deadline to produce expert reports. My experts need to see these documents to write their reports. And your order, under the shared discovery doctrine, would allow them to see that under -- which is consistent with Texas Supreme Court cases --

THE COURT: What stops you in this order?

MR. MAUZE: Because it says "only in this litigation".

THE COURT: Where?

MR. MAUZE: That's under --

MR. HERNANDEZ: Your Honor, 3(a), 3(c) on the second page, for starters.

MR. MAUZE: And they have repeatedly sent me e-mails saying, "You may not show this to your lawyers defending you in the federal litigation".

MR. FLANAGAN: There's a whole new landscape out here, Your Honor, since the time that this order or agreement was made, and -- over two years ago.

MR. MAUZE: Very different.

MR. VICKERY: Your Honor --

MR. RODRIGUEZ: I just want to make one thing clear, because I've been the subject of discussion about changing. I never suggested to change the hearing from today

to August.  I wanted it moved just one day.

THE COURT:  Actually -- Actually, I don't -- I don't know if anybody has said that.  I didn't say that.

MR. RODRIGUEZ:  He just said that we've been wanting to move this hearing until August.

MR. MAUZE:  Mr. Vickery repeatedly asked me to move this until the first week of August --

THE COURT:  Yeah.  I was never concerned about that with you.  I know that you had asked for us to move it one day.  I thought I was gonna be in trial, but the guy pled.

MR. RODRIGUEZ:  Yeah.

THE COURT:  So --

MR. MAUZE:  No.  It was Alan that wanted not to have any hearings before the first week of August, and I said, "You know I've got a deadline in federal court July 27th".

MR. VICKERY:  Your Honor, it's always been my position, though, that any documents he gives to his experts in the federal case is up to whatever the judge in the federal case has determined is discoverable over there.

What is discoverable here, in an unrelated case, is gonna be different, more than likely, than what has been deemed discoverable by the federal judge in the federal case.  So what Mr. Mauze gives to his experts in the federal case in terms of documents is up to the federal judge, and what the federal judge determines that Kool Smiles has to produce in

that case, because that's a trade secret case. It's a -- It's a case for business disparagement. The claims in that case and the issues in that case are entirely different from issues that we're dealing with here.

And so all I'm saying is that the issues about document production -- what is or is not discoverable or relevant in that case -- should be left to the federal judge. And whatever the federal judge determines must be produced is what can be given to the experts in the federal case.

MR. HERNANDEZ: Judge, if I may address that. The problem isn't what's going on in the federal case. The problem is that they've designated all but a handful of documents in this case confidential. And pursuant to the way that they're reading this confidentiality agreement, they're telling him he can't even give these documents to his own attorney to defend himself in a defamation case. That stomps on two pretty black letter law doctrines that -- in this state. One is shared discovery -- Supreme Court in the *Garcia* case that -- the *Peeples* case says that that is the public policy, that discovery should be shared. And their interest in trade secrets and proprietary information takes a back seat to that public policy.

And in *Peeples*, there was an overly broad confidentiality agreement or confidentiality order -- protective order, and the Court said that it was too broad.

The company, GM, had an interest in protecting their secrets from their competitors, and that's as broad as that should have been. Whereas this thing, they -- by designating everything confidential, they're protecting it from the world.

MR. MAUZE: That's Tab 18 in your notebook, Judge.

MR. HERNANDEZ: *Garcia v. Peeples*.

The second -- and what the -- really, the most blatant violation, I think, in this case is the offensive use doctrine. These folks turned around and sued this law firm for defamation, and won't let them use documents that they already have in their possession, that we know is exculpatory -- use it to defend themselves in this case. And the reason they can't use it is because in this case -- in our case here, they have been designated confidential. And to say that you can't look at that issue here, because this is something for the federal judge to decide -- that's just -- that's not right. The only reason they can't use it in the federal case is because it's confidential in this case, and that needs to be addressed.

I mean, there's basically two issues -- When you use the privilege as a shield and a sword, you have a choice. You give up your lawsuit, or you give up your privilege. And what we're asking here is just -- you know, let's look at this thing, and let's narrow down the confidentiality agreement a little bit to make it reasonable, and -- so that it doesn't

offend these two doctrines.

The mean, the Supreme Court has said the offensive use doctrine -- you can't have it both ways. You can't have it as a sword and a shield. The Supreme Court said it, Corpus said it -- everybody in the state has said it. And it's just a matter of making that -- this confidentiality agreement fit both of those doctrines.

MR. VICKERY: Your Honor, the cases are just -- The cases are different. They don't involve similar issues. All right? That case is more of a business case involving business disparagement and trademark infringements. This case is a personal injury case involving allegations of dental malpractice. The fact that some of the defendants in this particular case happen to also be plaintiffs in the other case -- That simple fact does not make all the documents that we've produced in this case relevant to the claims that are going on in that case.

Any claim that our clients are pursuing in the unrelated federal case -- The federal judge over there will make rulings on any discovery disputes with respect to Requests for Production that I have no doubt have already been made, objections that have been asserted -- There's a separate protective order that has already been entered in that case. The issues are just different. And I'm not suggesting that they can't use these documents in that case. I'm just

suggesting that it's up to the federal judge to make that decision.

MR. HERNANDEZ:  May I?

THE COURT:  I -- Wait a minute.  It depends on a couple things.  First of all, if what your saying is that it's up to the federal judge to make a decision on the admissibility, I agree.  But if you're gonna ask the federal judge to interpret my order, then you're gonna be using this order as a shield to the shared discovery doctrine, and you're gonna say the parties reached an agreement.  So even though they were disclosed in that litigation, technically, they can't use it in this litigation.

MR. VICKERY:  I'm not gonna -- I'm not suggesting that the federal judge is going to interpret your order at all.  I'm just suggesting that the federal judge is gonna deal with separate discovery requests that have been exchanged.  He's gonna rule on objections that have been made to discovery requests in the federal case, completely independently of what we've got going on here.

THE COURT:  I understand that.  But the reason you have that doctrine in place is so that you don't have multiple fronts of litigation on information that's already been disseminated.  So once the information is disseminated, they can take a shot at using it.  Then the issue that that Court reviews is not the discoverability, but rather the

admissibility.

So there's a big difference. The battle in discovery is one, and the battle of admissibility is another. And what that doctrine seeks to protect is -- to have dual battles all the time. You don't have to. If the documents have already been produced, you can use them. Whether they're admissible in federal court or not is a whole different issue.

MR. VICKERY: If the cases were -- involved the very same claims, then we might not be here talking about this.

THE COURT: But the claims over there are what?

MR. VICKERY: They're for trademark -- As I understand it -- I'm not involved in that case. But as I understand it, there are claims for trademark infringement, business disparagement, and those sort of --

THE COURT: Is this the -- the -- I've had several people pronounce your name differently.

MR. MAUZE: It's -- Half our family is "Mauzé, with the accent over the "e", like "Noé".

THE COURT: Right.

MR. MAUZE: "Mauzé". And then I've got some "Mauzey", with a "y".

THE COURT: How do you like it?

MR. MAUZE: Mine is "Mauzé". I'm the "e" side of the family.

THE COURT: All right, Mauze.

MR. MAUZE: You can call me Mauzey, Mauze. It doesn't matter.

THE COURT: All right. That's the litigation you're involved in, in federal court?

MR. MAUZE: No. There are no trademark, or copyright, or intellectual property claims. They dropped all of those five weeks ago. The only thing left is defamation.

THE COURT: No. But it's the lawsuit against you?

MR. MAUZE: Yes. It's against my firm arising from what we said about their treatment of these children. And they're saying that when we said these kids were crying, and screaming, and struggling, and they put a bunch of crowns in their mouths -- They're saying those are lies, and we can prove conclusively they're not.

Their own -- I want to show the federal court down the road, and I want my experts to see -- their own documents prove conclusively those are true. And some of the documents, even before you today, as exhibits will show what their own documents say. And they are prohibiting us from just sharing those with our team of lawyers or with our experts, and they know we have expert reports due July 27th.

The federal court has not ruled on the discovery yet. That discovery is even more contentious than it has been in this case, Judge. We've had discovery going on between all

those lawyers for two years.  They have hardly produced any documents in that case so far.  I mean, even the document here where they instruct their doctors to -- good docs can deal with kids screaming and puking on them -- they say that's irrelevant.

The one thing they did agree -- after numerous attempts to confer -- was:  I could give my lawyers the Bate Stamp number of what they produced in this case so the lawyers defending us could request those specific documents.  Well, they did it, and they objected to all of them.  And my lawyers can't fight the issue of relevancy, because they're not allowed to see the documents -- and they have claimed they're irrelevant.  Well, they haven't seen the documents to prove they're relevant, and they're saying we can't show our lawyers these.

They're playing a bunch games and -- The Supreme Court -- the *Eli Lilly* case, which came out after *Peeples v. Garcia* -- some beautiful language from the Supreme Court.  It says, "Moreover, under the doctrine of shared discovery, the fruits of discovery are available not only to the parties in a particular case but may be disseminated in turn to other litigants and potential litigants".  It doesn't have to be identical.  But that case wouldn't even exist if it didn't involve their treatment of these children.

MR. VICKERY:  Your Honor, that -- The language

in that case that he just referred to -- read to you refers back to the *Garcia* case, which requires that the cases involve the same subject matter -- similar issues, similar claims.

MR. MAUZE: Similar issues.

MR. VICKERY: Okay? The claims over there -- Maybe the underlying factual issues are similar to this case, but the claims being asserted and the relief sought are entirely different.

THE COURT: Counsel, but isn't it -- If his defense to the defamation that you all are claiming is the fact that he claims, "Hey, everything I said was true", and it can be -- it can be proven by the documentation that is provided within medical records and reports that we have in other litigation -- I don't understand why it's not -- it wouldn't even be -- I don't understand --

MR. VICKERY: And presumably --

THE COURT: I'm confused, because I would think that --

MR. VICKERY: Then, presumably, the federal court will require Kool Smiles and its lawyers in that case to produce those documents separately in that case, and make issues of discoverability and relevance -- The issues of relevance may be different than they are here. And so all I'm saying is: It's up to the federal judge to make those decisions, not for -- not for us to conduct the discovery in

the federal case in this court.

THE COURT: If what you're saying is correct, then the shared discovery doctrine wouldn't even exist.

MR. VICKERY: I think it would, if there were -- If there were dental malpractice claims being pursued by other counsel in other courts, then maybe the shared discovery -- maybe the shared discovery doctrine, on very similar issues like that and cases, would -- to promote efficiency, would require us to provide the documents to another lawyer.

THE COURT: I understand.

MR. VICKERY: But not in the federal case.

THE COURT: I understand. But the federal -- the federal judge will make the call over there on admissibility. We're missing the point on the shared discovery doctrine. The shared discovery doctrine has nothing to do with what the federal judge will have to do over there in determining whether or not the information should be part of that case-in-chief -- in other words, the trial. But the discovery of the information shouldn't even have to go through the gauntlet of the federal rules if it's been discovered in another case. That's what they're saying.

MR. VICKERY: I understand what they're saying. I completely agree that that's what they're saying, but I just disagree with it, because I think that the federal rules and the issue with respect to determining whether a document is

discoverable at all, under the federal rules, are gonna be different in that case than they are in our case. And it's up to the federal judge to apply those rules to the document requests that have been made by Mr. Mauze's counsel in that case --

THE COURT: There seems to be a disconnect, though, counsel. It reminds me of when I sent a deposition notice to a federal prosecutor for a confidential informant. I sent him a deposition notice on a civil forfeiture case. "I want to depose the person". I named the person.

And guess what the response was by the federal government. The response was: "You can't depose him. He's a confidential informant".

And I said, "Well, he's not confidential. I know his name. I mean, I gave you the name. I know his address. I know where she lives. I know what she does for a living. She sleeps with the defendant".

I know. I'm gonna depose this person. The federal judge looks at the prosecutor and says, "What are you talking about? This individual is not confidential anymore if they know who it is".

I mean, they may have worked as a confidential informant, but -- So my point bringing that up is: There's a disconnect here. You're saying, "Well, you know what? We shouldn't deal with the federal case, because the federal case

has different rules, different" -- I agree. I agree with all that. But that has to do with necessary discovery -- "necessary discovery", meaning documents that have not been disclosed prior to, documents you don't already have in your possession.

Look, this is no different than: They had documents in their possession that they got from some other source that they tried to use in this -- in this litigation.

MR. VICKERY: We they think wrongfully. But I --

THE COURT: But remember that?

MR. VICKERY: Oh, I absolutely remember that.

THE COURT: Okay. So they had documents --

(Brief pause.)

THE COURT: Hold up.

(Recess taken from 3:20 to 3:31 p.m.)

THE COURT: Okay. Where were we?

MR. MAUZE: Well, maybe we can address the second issue.

So the first issue -- Your Honor, there's three ways you could deal with their designation of confidentiality. The first would be to amend the protective order to allow the shared discovery doctrine. That takes care of the issue.

The second one is what I'd like to address, which is based on their discovery abuse. And I want to show

you some of their orders, and what they have done.  You could simply rule -- The least restrictive sanction I could think of is -- You could just say, "I'm striking your designation of confidentiality, because you've abused that exact issue".

And then the third alternative -- which I know you don't want -- we don't want, and I'm sure they don't want -- that's why we talked about a master -- is an in camera inspection.

(Indicating.)

MR. MAUZE:  And this is 5 percent of the documents.  This is 25,000 of the 477.  But that's the only other remedy.  There are three remedies, but the first two would take care of this issue.

THE COURT:  How many boxes of documents did you receive?

MR. MAUZE:  Well, we didn't receive them in boxes --

THE COURT:  I know.

MR. MAUZE:  It was a hard drive.

THE COURT:  Did you print them?

MR. MAUZE:  Yes.  Yes, Your Honor.  We -- Here, as I showed -- Exhibit 1 -- we've brought with us, today, 25 -- 15 boxes, which have a total of 26,548 pages.  And the reason we chose these is:  All the other documents are pretty much four groups of documents that make the other 450,000, and they

marked everything confidential.

This group has some they didn't mark confidential. And the total they didn't mark was 438 pages. I know he keeps telling you 67 percent, but as I'll offer as an exhibit -- Saturday, I had six people go through them and make a log of what is actually marked confidential. And I'm --

THE COURT: Have you shared that with counsel?

MR. MAUZE: Yes. They have it in their notebook. It's 99-plus percent.

MR. VICKERY: Just this morning, we got it -- as we got to the courthouse this morning, Your Honor.

THE COURT: Now, where are you coming up with the 60-something percent?

MR. VICKERY: I'm coming up with it by looking at our database and -- where we have -- we have our documents logged in; and we have notations of documents that were marked as confidential, and which ones weren't. And so I had -- I had folks run up a -- just a list -- not a list, but a computation of documents that were marked as confidential versus ones that weren't.

THE COURT: They weren't lawyers; were they?

MR. VICKERY: They were.

THE COURT: Because lawyers are terrible with numbers.

MR. VICKERY: Maybe that's the problem. But

they were.

THE COURT: Okay.

MR. MAUZE: And that's what --

MR. VICKERY: So that's why -- That's why, Your Honor, I think the way to resolve this is for Mr. Mauze -- He's now got a -- He's now got a log that he gave me this morning telling me which ones he believes have been improperly designated pursuant to the terms of our agreed protective order.

MR. MAUZE: We had -- I brought in six people in my office on Saturday to create this log. It's not the kind of log you can do that. It has the tab number that's in this notebook. These 15 boxes have approximately 45, four-inch ring notebooks. It has the tab number, the Bates Stamp number, the number of pages -- then it just says "e-mail".

To do what he wants -- and they know this -- you have to go through every document to see, "Could it possibly be confidential or not", because they wrongfully marked 99.9 percent. Out of these, they marked 99 point -- No. Excuse me. 98.4 percent of these 25,000; 100 percent of the 450-some-odd-thousand; for an overall average of 99.9. And comparing --

THE COURT: What are the four -- four -- Let's take those that were 100 percent. What are the classifications of those four documents -- the four types of documents?

MR. MAUZE: Yes. They're the -- The titles of them -- And you've already ruled on this, and they still designated -- but I'll show you the order. It's in the notebook, but --

THE COURT: Okay.

MR. MAUZE: It's Doctor Procedure Reports. They call them DPRs, but "Doctor Procedure Reports" is the title. The issue we had a big hearing in front of you on was the Office Score --

THE COURT: But didn't the hearing have to do with discoverability?

MR. MAUZE: Yes.

THE COURT: Okay.

MR. MAUZE: But they -- I'll show you in minute what their objections were that you ruled on.

The second document, Your Honor, is called Office Score Card-Medicaid Children. That was a real big hearing we had in front of you.

THE COURT: Uh-huh.

MR. MAUZE: Office Score Card-Medicaid Children. The third document is called Expanded Services Report. And the fourth document is called a Performance Improvement Plan.

And if you look at -- If I may, Your Honor, I'll tell you what sort of sums it all up -- is if you look at Tab 8 in the notebook -- I can knock this out real quick. Because,

otherwise, it takes a lot of going back and forth.

THE COURT: Okay.

MR. MAUZE: Tab 8 -- and I, of course, shared it with them. But the first document is a summary of one of the abuses. On Request for Production Number 145 -- if you go back to Tab 1 and look at what I highlighted, which is the Request 145 on Tab 1 -- to that document, they had three claims of objections and privileges. It's "C" for --

I don't know if you're with me. 145?

THE COURT: Uh-huh.

MR. MAUZE: It's "C" for "confidentiality". "TS" means "trade secret". "P" means "proprietary". Those same objections were the only objections that they asserted in responses.

If you go to Tab 2, which is the next privilege log -- On page 4, at the very top, they amended the privilege log. They kept those exact objections and claims as to 145. Then, if you go to Tab 4, which is your Court order on that, after a very lengthy hearing -- Tab 4, page 8, at the very top, you overruled all their objections. And those are their only objections. Then they came back and amend their response, as you may recall, and said, "None. We don't have any of those documents. None".

And then we showed you at the hearing a document we had from a former employee of the Office Score Card-Medicaid

Children. Then I showed you a Performance Improvement Plan we marked as an exhibit. You ordered them to do a more diligent effort in looking for documents. They came back two to three months later with a hard disk with hundreds of thousands of pages of those documents. But then they've marked them all confidential. That's the exact ruling you overruled.

MR. VICKERY: Your Honor --

MR. MAUZE: So those four categories -- You -- Their objection -- Their only objections to you are: Confidential, trade secret, and proprietary. You've overruled it. They came back and said, "Oh, we're wrong. We don't have any of those documents. None".

You saw that wasn't accurate. You ordered they produce them. They produced hundreds of thousands, and marked them all confidential.

I mean, your order was absolutely disregarded. The purpose of the hearings in front of you did nothing. They still get what they want. They wanted them confidential from day one. They're still claiming they're confidential after hours, and hours, and hours of hearings -- after they've tried to hide them from the Court. That's a prime example.

The next one's -- I mean, this is 145. That deals with a different document. I'm sorry. I jumped ahead.

The next tab behind 8, I did the same exercise. That -- Yeah. 125 -- 145 -- excuse me, Judge -- was the

service agreement. You overruled those three objections. They finally produced it, and marked it confidential.

THE COURT: Now, is there not a difference though between designating something confidential and disclosing it, versus claiming a non-discoverable issue? For example, "This is not discoverable because it's work product", or whatever it may be.

MR. MAUZE: Well, normally, what we see in privilege logs -- what we all see -- is work product, attorney-client, consult an expert -- but they chose to assert the objections of confidentiality, trade secret, and proprietary --

THE COURT: Yeah. But none of those -- I think there's a confusion. None of those are objections to the discoverability of information.

MR. MAUZE: Normally, they -- Their objection.

THE COURT: I -- Well, there may be objections, but they're not objections to the discoverability under the rules. They're objections that can be lodged in order to red flag for the Court the need for a confidentiality agreement or the need for the Court to say, "You are to disclose them under

limitations".

MR. MAUZE: Uh-huh.

THE COURT: Okay? But they're not -- A party can't say, "I'm not gonna discover" -- "I'm not gonna give you that information, even though it's relevant, even though it's necessary for this litigation, because it's a trade secret". There is no such thing.

MR. MAUZE: That's what they did though, and you overruled it.

THE COURT: I understand. I overruled -- That's why I'm saying: Is there not a difference? I may have overruled their objections for purposes of discoverability. That doesn't mean that they were not subject to an agreement to keep confidential.

MR. MAUZE: Right. But, see, what we're saying on the abuse of the discovery process, those were their objections. You heard them and overruled them, and then they came back and said "none". That's the most flagrant part of abuse of discovery.

Then they came back and produced six figures worth of those documents, and claimed, "Oh, we're still gonna say you can't use them for any purpose".

THE COURT: Am I missing something?

MR. MAUZE: No. I --

THE COURT: I mean, am I missing something?

Because I see it as a huge difference. I mean, one thing is for a party to say, "Judge, we believe" -- "we believe this information is work product, and it's not subject to discoverability, and we'll submit it to the Court for in camera inspection. If the Court believes that it's not work product, then it's discoverable". Objection overruled. Bang. It comes in.

There's a big difference between that and saying, "Judge, we believe this information should be confidential. And, therefore, we're putting it down, and marking it as confidential, and we don't want to -- We don't want to submit it to them".

Huge difference between that and saying, "It's confidential. Here it is. But it's subject to a confidentiality agreement".

MR. MAUZE: Right. In my practice and experience, that's exactly what you're saying, but they did it differently. That's why I'm saying: I agree with you. The trade secret, proprietary, and confidential claims -- doesn't mean it's not discoverable. It just means they get protection. I totally agree with you.

But they did it differently. They wouldn't give me the documents based on those claims. So you heard it, and overruled on them, and then they said "there's none".

Then they came back and got caught with their

hand in the cookie jar, and said, "Okay. We do have some. We happen to have 170-some-odd thousand pages of them, and they gave them to me, and marked them confidential".

How can they abuse the process like this? You know, and that's just one example. I have 12 other examples I'd like to show, which I can do briefly.

MR. VICKERY: Judge, I think your point -- You did overrule whatever objection -- And I haven't gone back and compared all this. I just got this, this morning. But you overruled the objections to discoverability of the documents. We've produced them, but that doesn't mean that we still don't claim that the documents are confidential for purposes of use in the litigation.

THE COURT: Well, for purposes of the agreement you all had reached on the confidentiality agreement. My understanding is: Counsel wishes to -- for purposes of their use, wishes to back out of that agreement and say, "Judge, under Section 8 of that agreement, we want out. We want another" --

And they're not saying that the confidentiality agreement should not exist. What they're saying is: The one that exists is not working.

MR. VICKERY: I understand. But that doesn't mean that everything that was designated before the Court determines whether this is the same agreement we're gonna move

ahead with, all of a sudden, isn't confidential any longer, because we designated those documents confidential pursuant to the terms of the agreement that we had at the time.

THE COURT: You know, I don't disagree with you, counsel, but I think we're going around in circles. What counsel is saying is, "Look, we don't care" -- You -- if they believe they're confidential, and the Court agrees with them. "We just don't want it subject to this confidentiality agreement, because it's not working, and we want a different one.

MR. MAUZE: May I approach, briefly, Judge?

THE COURT: Sure.

MR. MAUZE: And I'll tell you all the tab number in each of these exhibits, because the -- you have it numbered a little different in your tabs.

But, Your Honor, Plaintiff's Exhibit 1 is an itemized summary of the 26,000 pages of documents we had brought to the Court, and whether or not they marked them confidential, showing they have marked all but 400 and roughly 38 pages confidential, which is 98.4 percent.

Behind Tab 6 in the notebook, I've marked as Exhibit 2. They've marked over 1,000 pages that look just like this. Do not indicate what they go to or what they were. There's no way we can challenge confidentiality. They're blank with a Bates Stamp number only.

Exhibit 3 -- They marked over 100,000 pages.

Similar to Exhibit 3, which is 7 in the notebook -- They redacted every single thing on the document. There's no way for us to challenge confidentiality.

This is the document Your Honor looked at before -- and it was this direction. The title of the document ran across the top. You specifically told them, "Do not redact the titles, so they can see what it is, if you redact".

And what they were allowed to redact, under agreement and in your order, was anything that didn't deal with Mission and McAllen dental clinics. And they gave us over 100,000 pages like this. You made it very clear. "Do not redact the top".

Exhibit 4 is in the notebook behind Number 7. Then the ones they did produce, they left us the top column -- they shrunk. You saw the one that was kept in the regular and ordinary course of business, and it was a whole 8 1/2 by 11 sheet. They shrunk that so small you can't read it. Also, in regards to that document, some of them they enlarged to the point that that document's on 11 pages, but they don't -- If we look at, let's say, Bates Stamp page number 555, then 556 is part of the same -- 557, 558 -- 11 pages in a row -- but you can't match them up for us to challenge confidentiality.

THE COURT: Was the copying, and redacting, and all that done in-house?

MR. VICKERY: Well --

THE COURT: Meaning -- in-house -- your employees, or the employees of your client doing that.

MR. VICKERY: We produced all that on a hard drive, as I recall, Your Honor.

THE COURT: No. But who did the redactions?

MR. VICKERY: The redactions -- some contract lawyers that we were -- that we -- They were all done by lawyers.

THE COURT: So are you telling me that some of these documents that they claimed were reduced and some of the documents that were expanded are as a result of the fact that that's the way they're kept on the computer?

MR. VICKERY: I would have to go back, and look at each one of those documents, and confirm that. I haven't been presented with the opportunity to do that. So I don't know whether they were kept that way, or whether there was some sort of a computer formatting issue when those got downloaded onto the disk.

THE COURT: Okay. What else?

MR. MAUZE: Exhibit 5, Your Honor, which is Tab 9. Every document from every state agency that they produced, they marked confidential. That's stuff we could go online and get ourselves, but they're saying we can't use it, because it's confidential. That's just an example. There's numerous

examples of what they produced.

Exhibit 6 is you all's Tab 10. Professional literature that they identified. This is literature they didn't author, they didn't publish -- they marked it all confidential. Stuff that you and I could get online through a medical research site.

Exhibit 7, which is Tab 11 -- All their advertising documents about how they advertise about their services, and how they do these great things for these children -- they marked as confidential. That's public advertising that comes off-line and other sources, and they're saying we can't use that.

THE COURT: Or mail-outs.

MR. MAUZE: Right.

THE COURT: This was a mail-out.

MR. MAUZE: Mail-out. That's right.

THE COURT: They stamped those.

MR. MAUZE: Exhibit 9 -- or excuse me -- 8, which is you all's 12 -- This is just the ADA -- the American Dental Association and the American Association of Pediatric Dentists -- This is their guidelines. You and I can get that online. They produced it, and marked it confidential. And everything else that the AAPD produced -- They marked tons of their pages confidential, which, by no stretch of the imagination, could a lawyer think those are confidential.

Exhibit 9, which is their 13 -- These are examples of e-mails. Every e-mail they produced -- every e-mail, no matter what the subject -- they marked confidential. I highlighted a few for you -- they're just to see -- there's no doubt some of these e-mails are highly prejudicial of them, but the probative value outweighs the prejudicial effect. But they don't want us to show them to anybody, including lawyers in other litigation, who --

THE COURT: Okay. Say that again.

MR. MAUZE: There's no question these documents have prejudicial evidence. But as we all know, that doesn't render it not admissible or discoverable. And so they're trying so hard to keep us from disseminating this information to our own lawyers or other lawyers investigating claims against them.

In some of these documents, they have non -- As you probably recall, this whole case is about this private equity firm that's running the show here Texas, making all the money off these clinics, to the tune of $300 million a year off Medicaid collections.

You have some non-dentists in there sending e-mails to the dentist, telling them that good docs need to learn how to handle children screaming and puking on them. You got e-mails about, "Hey, business is slow in Mission, Texas. Start doing more quadrants". And what that means, Judge is --

They're telling their dentists, "Operate on more teeth on these kids.  Don't just do one-fourth of the mouth or one half; do three".

Then there's an e-mail on there -- right here, about the McAllen clinic.

THE COURT:  It says, "We need" -- "Dr. Herrera, we need to speak with" -- and they redact.  I don't know why that would be redacted.  "Front office not confirming? Etcetera.  Once we find the root cause, a smart plan of action needs to be placed immediately".

"That's somebody that wasn't credentialed in some of the insurance, like Texas CHIP".

"Understood".

"Slower days in Weslaco".

"Scared to treat moving papoose kids".

MR. MAUZE:  And that's one of our allegations that they're suing me for in the federal case -- is we claim the kids are struggling in the papoose boards, because they're --

THE COURT:  "This is alarming.  She knew that she signed up for" -- "She knew what she signed up for" -- "I will show you our referral list that gets distributed to us every week.  We need to keep a very close track of her referrals and DPR rating".

MR. MAUZE:  What that's telling you, Judge,

is -- What they do -- This dentist was scared to treat kids in papoose boards, which they require they strap them down with socks over their hands. And they blindfold a lot of them, which no other clinic does in the country -- that I've heard of -- and the kids are struggling and fighting. She didn't like doing it. They told her to do it. Well, she was referring the kids out. And so there's subsequent documents where they're disciplining her because her referral rate is too high, because she is not willing to do this to these children.

And there's some very damaging stuff that goes to our defense. And, also -- It's not just our defense. The other more important thing to me is: We are talking with other lawyers in other states that are investigating Kool Smiles, and they're -- We're entitled to share this discovery with them so they can make a decision if they're going to be pursuing claims.

THE COURT: What is "driving metrics"?

MR. MAUZE: That's a great one. That is their money people -- They are not dentists -- the guy who authored that -- sending an e-mail to the other money people and the dental regional guys saying, "We're doing a great job driving metrics (some say a really bad job) -- smiley face".

That's -- Meaning: "We're driving revenue. You're doing lots of dental operative procedures".

They track how many dental operative procedures

-- per child -- they do, and they're driving it up. And those Performance Improvement Plans we talked about -- There's some, which they still haven't produced to us, that we know exist, where they're telling the dentist, "Get your score up".

And they're saying, "The way you need to do it is: Do more dental operative procedures on these children". And then they talk about how they can get richer if they follow these metrics.

THE COURT: "We are charging the scale for payout when you exceed the target". I'm sorry. "We are changing the scale for payout when you exceed the target, so that the ramp is much steeper.

MR. MAUZE: "Richer" is the next word, I think, in that one.

THE COURT: Okay.

MR. MAUZE: And I don't know how they claim these are confidential. Yeah. They don't like them. But the reality is: We're entitled to share them.

And then Exhibit 10 --

THE COURT: Well, their claim for confidentiality comes from the idea that the way a company does business and generates income is confidential if, in fact, it is their own system. And that's what you're gonna be arguing -- that this is not -- this is not the way dental offices work. This is the way that Kool Smiles works. And so

you, yourself, are arguing that. So the confidentiality is not a hard thing to grasp. It's confidential. It may be prejudicial, but it's confidential.

I mean, you understand that what you're arguing is that it's the way they do business; the way that their internal mechanism works that's objectionable. But you're claiming it's unique to Kool Smiles.

MR. MAUZE: Yes. I mean --

THE COURT: This is not the industry standard.

MR. MAUZE: Right. And what --

THE COURT: You hope.

MR. MAUZE: And what we did expect is that they were gonna claim a lot of this data was confidential -- the data. And I can see that argument, and we probably wouldn't be fighting them. But they claimed it was confidential, you ruled, and they came back and misrepresented to us and the Court, "There's no such document", when we -- And that's what frustrates me in this case, candidly, Your Honor.

They come to you after you order, and say, "There's none. We don't have them, Judge. We've looked hard".

They produced them all, and they're stamping them all. So they're hiding behind a stamp. Should they have that right to do that as a litigant in our judicial system -- to hide the documents from us? We catch them red-handed. And say, "Well, you can't use them. You can't share those with

other lawyers".

THE COURT: Okay. Let me ask you something. Under the shared discovery doctrine, is there a standard confidentiality agreement that's been tried and tested by the appellate courts?

MR. MAUZE: No. But what the Supreme Court did say in reversing one of the judges is: They should have given them -- on the shared discovery doctrine, they should have given them confidentiality only as to competitors. And if the judge had done that -- and that's *Garcia v. Peeples*, and it's highlighted in Tab 18 of your notebook -- If the trial judge had done that only -- precluded dissemination to competitors -- they said that it would have been an appropriate protective order -- allowing dissemination to all litigants and potential litigants with similar issues.

MR. VICKERY: That's not what that case said, Your Honor, with all due respect.

MR. MAUZE: Well, it's highlighted.

MR. VICKERY: The case said that lawsuits concerning the same subject matter -- All right? It did not say "all litigants or potential litigants". That's not what the case stands for. The case suggests that a shared discovery for efficiencies in cases involving the same subject matter.

MR. MAUZE: And it's your --

THE COURT: Well, how broad did they go?

MR. MAUZE: Well, Tab --

MR. VICKERY: It was not very broad at all. They -- All they did in that case was determine that that protective order in that case was too restrictive with respect to sharing documents with another litigant who had the very same types of claims in a separate lawsuit.

THE COURT: Okay. You're using -- You're using terms interchangeably that I don't feel comfortable with. There's a huge difference between -- You used the term -- and I'm gonna quote it, because I don't want to -- It says, "the same subject matter". And then a little bit later you said, "the same type of claims". There's a huge difference. Huge.

When you're looking at the same type of case, you're tying it to causes of action. When you're talking about the same subject matter, you're not tying it to causes of action. You're talking about facts, discovery -- you're talking about information.

MR. VICKERY: The case --

THE COURT: You're talking about information that -- it may be relevant, no matter what the cause of action may be.

MR. VICKERY: The case refers to the phrase "same subject matter", and then it refers to the issues being virtually identical. Those are straight from the case.

THE COURT: Issues.

MR. VICKERY: Being virtually identical.

THE COURT: Issues. There's a question as to how limited -- and I need to read the case, because I don't know what exactly you all are referring to when you're reading these cases.

MR. MAUZE: It's your Tab 18, and it's highlighted.

THE COURT: Tab 18?

MR. MAUZE: Yes, Your Honor. In Tab 19, the Supreme Court clarified it, and made it real clear that what we're asking this Court to do can be done.

THE COURT: Cornyn wrote it?

MR. MAUZE: I believe.

(Sotto voce discussion.)

MR. MAUZE: Garcia was seeking to exchange discovery with other persons involved in similar suits -- not identical -- against automakers, not just this automaker. They wanted to use it in other claims dealing with the air bags.

And then the Court makes it clear -- what could have been done. And the only thing they attacked is on page 5. "The trial court should have balanced these competing needs and rendered an order preventing dissemination of General Motor Company's true trade secrets only to their competitors" -- and that was the only finding that criticized the order. It should have limited dissemination to competitors.

But the next Supreme Court ruling on this issue is even better, which is your Tab 19.

THE COURT: Well, I'm not certain it's as clear as you want it to be. I think that the *Garcia* case certainly makes it -- explain the shared doctrine rule to basically say, "Okay, guys. We're gonna have this rule so that we have consistent discovery".

In other words, you know, in this case, Kool Smiles can't give you the discovery on the Antu case, and then on some, let's say, future case, give you different discovery. It's got to be the same. So they use the shared doctrine policy that the State has to say -- the shared discovery policy to basically say, "You can use it". So it's gonna be consistent.

MR. VICKERY: And we've employed this in the other ten cases that have been filed in Hidalgo County that are now part of the MDL before the MDL was ever created. We agreed that all the discovery that we produced in Antu would be authenticated for purposes of the other ten cases. That is the concept, Your Honor.

THE COURT: Now, the *Lilly* case --

MR. MAUZE: There's even broader language on page 5.

THE COURT: Yeah. But I'm looking at it, and I'm saying, "Do they" -- But they say, "but may be disseminated

in turn to other litigants and potential litigants".

MR. MAUZE: Right. See, that's one thing we want to do --

THE COURT: And you're asking me -- Well, yeah. And "litigants and potential litigants" --

MR. MAUZE: We're litigants in federal court. NCDR and Dentistry of Brownsville are suing us over these kids.

And then potential litigants -- Judge, the other way they're saying I can't use them -- and I checked to make sure that we're on agreement that they're saying I can't do this -- What about all the potential litigants that we're talking to in other states? I want to share these exhibits -- the shared discovery with them in their investigation of Kool Smiles. It's the same thing. If they seek discovery from Kool Smiles, they may give them something different. And that's what these cases are saying. They're potential litigants.

MR. VICKERY: This document -- I mean, these cases, in no way, suggest that he's entitled to give documents to out-of-state lawyers that are gonna be potentially filing lawsuits or not in other states.

MR. MAUZE: I've got documents against them from other states -- from other people. I mean --

THE COURT: Why?

MR. VICKERY: Because other states may not have the shared discovery rule. These are Texas cases interpreting

Texas law. That doesn't mean Mr. Mauze can use these -- use these documents under Texas law, and send them to some lawyer in Kentucky or in New Mexico that may or may not be filing a case against Kool Smiles in their state.

MR. MAUZE: We do it all the time.

MR. VICKERY: We don't -- We don't -- Okay. But that doesn't --

These cases don't entitle you to do that.

THE COURT: I guess my question -- My question, once again, is: Why? Why not?

MR. VICKERY: Because they may be filing lawsuits under the laws of completely different states.

THE COURT: So? I mean, I guess my point is: The discovery is the discovery. I mean, I would hope the discovery disseminates truth, or at least the truth from the perspective of the person who's holding the documentation.

MR. VICKERY: Well, it also potentially disseminates confidential business practices, confidential information about employees and doctors who either work or used to work for Kool Smiles -- performance evaluations, healthcare records -- all that sort of thing -- that is clearly not to be disseminated to other people outside the context of a protective order.

So sure, it might disseminate the truth, but it also runs the risk, on the other side, of disseminating

documents that are confidential to the business of Kool Smiles, as well as potentially sensitive personnel information, health information, and that sort of thing.

MR. FLANAGAN: Your Honor, I think --

THE COURT: That's really not what we're dealing with here. I mean --

MR. VICKERY: There is --

THE COURT: We're dealing with -- What they're concentrating on right now in the Antu case -- just from -- from the documentation that's been shown to the Court -- they're concentrating on the way that Kool Smiles is doing business.

MR. VICKERY: I understand.

THE COURT: It's the actual business side of the practice.

MR. VICKERY: But those documents contain -- some of those documents, at least -- contain performance evaluation -- the PIPs that he referred to earlier -- those are documents that contain, in some instances, performance evaluations of doctors who work or used to work for Kool Smiles.

THE COURT: Yeah. But they're -- They're taking a different twist. They're not claiming you guys were hiring shoddy dentists. They're claiming, "Look, your performance evaluations were based on profits". They weren't based on

dental care, as the industry would like for it to exist. They're saying -- and I'm not talking about the industry -- the business side of the industry -- I'm talking about general dentistry, and I'm -- I got to watch out what words I use, because we have entities that are called that.

Their claims are not that you guys had shoddy doctors. Their claim is: You guys were running a business where you were telling the doctors what they had to do. And if they didn't do it in that fashion, they were being evaluated negatively -- not based on dental standards but, rather, Kool Smiles standards, as it related to profits. That's what they're claiming.

MR. VICKERY: I completely understand that that's what they're claiming.

THE COURT: So if, in fact, they've got these evaluations -- I mean, those aren't really true peer evaluations.

MR. VICKERY: Well, they may or may not be.

THE COURT: It's a whole different issue.

MR. VICKERY: They may or may not be, and that's what -- that gets us back to the very first minute we started talking about this, this morning. If they have a challenge to something that we've designated as confidential, they're supposed to tell me about the documents so that I could tell them whether I stand on it, or withdraw it. That was the whole

purpose of the agreement. Because some of these documents do, in fact, contain information that we will maintain is confidential. Some documents, I have no doubt, we would withdraw, if --

THE COURT: I'm a betting man, but I don't ever, ever -- nor have I ever bet on a case. But if there was a case that I would bet on, it would be this one. And I would bet that they didn't expect you to give them half a million -- half a million documents, like you did.

MR. VICKERY: With the confidential designation?

THE COURT: I don't think they expected half a million documents, period.

MR. MAUZE: No. We didn't. But you know what -- You know what brought this --

THE COURT: And then you sent them --

MR. VICKERY: So now I'm being punished for making a nice document production?

THE COURT: No. No. No. Well, actually -- Actually, one of the biggest complaints I'm getting in litigation with large amounts of voluminous -- the voluminous disclosure of information is, in fact, that.

One of the arguments against it is: They're not doing it right. They're just giving us a bunch of documents. They're giving us a key to a room, a filing cabinet, and they're saying, "Have at it". And it's costing us an arm and a

leg -- I was gonna use another metaphor, but I wouldn't -- I was gonna say an incisor and a molar, but -- it's costing us a lot of money -- that's what they're saying -- to do this. And this is the example -- The example is: You're right. You disclosed 477,000-plus documents.

MR. MAUZE: Pages.

THE COURT: They have to -- Well, they -- We now know that they're not. There's 7,000 documents -- 7,000-plus documents. But within the documents, there are -- are that many pages -- almost half a million pages. And so we have to start there.

But second of all, they're all designated. So now there's a round-robin that's been set up that they didn't expect. The round-robin is: "Well, we expected to go over documents, but not this many. We didn't expect to go over half a million pieces of paper, and go through them as" -- "and try to figure out why you're designating or not designating them as confidential".

MR. VICKERY: But they have already gone through the documents. They have sent us letters that are pages and pages long --

MR. MAUZE: Share the Court with respect -- That's not true. Show the Court one -- pages and pages-long letter that spells out those documents. That is not true.

THE COURT: Okay. Folks --

MR. VICKERY:  It absolutely is true.

THE COURT:  Folks, I'm caught between a rock and a hard place, and this is what's going through my mind:  This past summer -- and I'm hoping this summer is a much better one.  This past summer, I was blasted by -- by an organization that's supposed to be reviewing judicial conduct.  And one of the criticisms that they had of me was that I took an agreement that -- that some parties reached, and I let it stand.  And I thought, "Well, Rule 11 is a pretty strong rule".  And, in fact, there are cases that say, "If you don't follow it, Judge, you're in violations of what you're supposed to be doing".  Rule 11 is supposed to be pretty liberal.

I was blasted as having allowed a -- an order to be overly broad, even though it was by agreement.  Everything was by agreement.  So, consequently, when you all have this agreement that seems to be iron clad, but it has that Section 8 that says, "Well, if someone complains -- that we can just set it aside, and start from scratch", I'm gonna take them up on that.

So right now, this is what I'm gonna do.  I'm going to ask you all to come up with a confidentiality agreement that you all can live with.  If you can't live with it, then I want you all to argue to the Court what confidentiality agreement I can enter under the rules and laws of this State of Texas.  Forget the other states.  Forget

federal court. Under the State of Texas case law, what confidentiality agreement can I enter, no matter what anybody argues, that's been upheld?

Give me some guidance, folks. Because I don't feel comfortable with you all just simply saying, "We reached an agreement" -- and I'm glad Section 8 is there, because it gives me an out.

MR. RODRIGUEZ: Can we brief the shared -- As part of that briefing, if we can't come up with something, can we brief the shared discovery doctrine?

THE COURT: Well, that's what I'm asking you all to do. Brief the shared discovery doctrine to me, and argue to me why it is what it is, according to your reading of it. Because if you all don't reach an agreement, which I'm gonna go out on a limb and say you are not gonna reach an agreement -- So I'm gonna tell you right now: Tell me what confidentiality agreement I should sign as an order, period.

MR. MAUZE: Your Honor, here's the one we proposed to them during the break as a compromise -- a huge compromise. And it's right under the *Garcia v. Peeples* case.

THE COURT: Okay.

MR. MAUZE: And they're not willing to agree to it. It follows the Supreme Court law. It's -- They won't tell us what they won't agree to, but we have been dealing with this --

THE COURT: Well maybe they'll tell the Court.

Because what I'm gonna ask you all to do then is use this as a guideline.

MR. VICKERY: All right.

THE COURT: They claim that this order that they handed to me --

And why don't we make it an exhibit? We'll call it Court Exhibit A.

Can you mark that as Court Exhibit A, Lisa?

(Court Exhibit A marked and admitted.)

THE COURT: Now, Court Exhibit A is a proposed Order Granting Plaintiffs Motion to Amend Stipulated Confidentiality Agreement and Protective Order. Now, I'm not suggesting that this would be the form, but I am suggesting that the confidentiality agreement that is already in place would include a modification of this type, and that's what it would look like, according to them. Tell me why not. Why it shouldn't look that way.

MR. VICKERY: When would you like this briefing --

MR. RODRIGUEZ: Can we tell you, if we don't agree with it, what we think it should look like?

THE COURT: Absolutely.

MR. VICKERY: When would you like the briefing to be submitted to the Court, Your Honor?

THE COURT: Immediately. I don't think this is a new doctrine.

MR. VICKERY: Can we have a week?

THE COURT: Well, you're pushing me into July. Come on.

MR. VICKERY: Can we have until Friday?

THE COURT: Yes.

MR. VICKERY: All right.

THE COURT: And both sides trade -- trade your jabs on Friday, and then I'll give you all some homework for the weekend. By Tuesday, any responses to what they submitted. Okay? So each side submits something on Friday, and each side can submit something on Tuesday. Okay?

Let me repeat what I have already said. The Court is convinced, based on the discussions that I have had with counsel on and off record today -- and I mean counsel for both sides -- for all sides here -- that the confidentiality agreement that was originally entered into is not an agreed confidentiality agreement anymore.

Now, it's still in place under Rule 11, but the Court is considering the amendments that are being requested by plaintiffs' counsel. And, therefore, I am asking for quick briefing, by both sides, by Friday, and responses to those briefs on Tuesday of next week.

MR. RODRIGUEZ: Can part of that order be that

both sides, by Friday at 5:00, e-mail their briefs to the other side, so that we can --

THE COURT: Well, I'll make it easier, so you don't have to be waiting until 5:00.

MR. RODRIGUEZ: Well, no. I mean, I'm just saying --

THE COURT: No. I know what you're saying --

MR. RODRIGUEZ: -- put it in the mail, and we get --

THE COURT: I know what you're saying. But what I'm gonna say is: It will be Friday, no later than 2:00.

MR. VICKERY: So you want us to e-file it with the Court, Your Honor?

THE COURT: Actually, you can e-file it with the Court, but I would suggest that you just -- First of all, I don't expect 20 pages from each side. I hope not. So you all can e-file it with the Court. That gives them notice of what you filed. And send the Court a courtesy copy by fax. I still use faxes. Or you can -- Or you can e-mail it to Lisa. Get her e-mail.

MR. VICKERY: You'd rather us do that as opposed to e-filing it in the Antu case?

THE COURT: It doesn't matter. It's just going to me, so --

MR. VICKERY: Okay.

THE COURT: -- either way. As long as I get it and the opposing side gets it by 2:00 on Friday. And then the Tuesday filing can be Tuesday, also at 2:00.

Exhibits 1 through 9 that counsel have been presented to the Court will be made part of the record in the hearing today.

(Plaintiffs' 1 through 9 admitted.)

MR. MAUZE: And just formally, Your Honor, I'd offer 1 through 9.

(Plaintiffs' 1 though 9 offered.)

MR. VICKERY: Could we have them sealed by the Court since they do have confidentiality designations on there, Your Honor? And I'm not -- And the protective order that is still in place provides for that.

THE COURT: I have no problem with that. That may be set aside later, but I'll have my court reporter seal those temporarily. Okay?

(Plaintiffs' 1 though 9 ordered sealed.)

THE COURT: What else?

MR. VICKERY: Either that, or I would ask that they not be part of the Court's record -- one of the two.

THE COURT: No. They'll be part of the record.

MR. VICKERY: All right.

MR. MAUZE: The only thing else, Your Honor, if we can -- and it's brief -- I know we can go through the whole

CMO today, but we just need some guidance on probably two issues.

The first one is -- I assume we can work out all the discovery limitations and restrictions. I proposed a bunch to them, and I haven't heard back from them yet. But the Court's input -- We have very different ideas of a Bellwether trial. And what we were proposing -- and we just wanted some Court's guidance as to what you were inclined to do -- We were proposing that the Antu case, being the first case filed and the one that all the plaintiffs have been deposed in -- I've deposed the doctors in part -- be the Bellwether case, the first one to go to trial before the entire MDL discovery is done, and -- because we have 11 suits filed; 9 in county court here in Hidalgo, one in your court, and the Cantu case.

They, I think -- If I'm misspeaking, they'll say something. But they think, for some reason, they -- they or we get to pick individual plaintiffs out of each case, or certain cases, and go try those. Well, the law is: You try one of the cases that's filed. But we were looking for some guidance as to what you think would be the most appropriate way to -- for us to handle a Bellwether case, because then we'll back into that and decide how much time we need to get it ready for trial. The Antu case, of course, is in your court, and it's, by far, the furthest along.

MR. VICKERY: Your Honor, I think -- Just to

address that, just briefly -- I think the whole subject of a Bellwether trial -- We've now got an MDL with 128 plaintiffs in it, not just Antu with 12 plaintiffs. And so I think what we need to do in the MDL is determine: What would be a Bellwether -- what would be Bellwether candidates for -- out of the 128. It may very well be that once we go through the process, Antu has some plaintiffs in it that are Bellwether candidates, because they have the right criteria that we need to discuss and decide what criteria go into the first Bellwether trial.

But I guess our objection to having Antu set without further discussion or evaluation is that we've not -- This MDL is not about Antu any longer. It's about 128 plaintiffs who are now in front of you in the MDL. And the concept of a Bellwether trial is so that we try cases that are representative of all the issues in the case in the MDL.

MR. MAUZE: See, that's --

THE COURT: I'm laughing just because I've yet to see a successful Bellwether case.

MR. MAUZE: I'm not so sure one will be successful in this case. But the MDL --

THE COURT: And I mean successful in doing exactly what you just described, which is giving everybody a feel for what it's gonna look like in the future. It just doesn't happen.

MR. MAUZE: See, I think that's where we differ though. He --

If I understand, you think --

THE COURT: Well, what I hear him saying is that even in the Antu case, you have plaintiffs that shouldn't go all together.

MR. VICKERY: Well, we'll --

THE COURT: You don't want it tried all together?

MR. VICKERY: We would not agree to try any cases together, but that would be our -- that would be our position up front.

THE COURT: Which is standard for these cases now. They don't. They object to all that.

MR. MAUZE: Right.

THE COURT: That's why when you're telling me you want a Bellwether case -- Yeah. But I don't think that you're gonna get a Bellwether case to look like -- Okay. This is gonna -- All the Antu clients are gonna go -- All the Antu plaintiffs are gonna go at the same time.

MR. MAUZE: Well, when they -- I assume we'll see a Motion For Separate Trials from them, which we haven't seen. But we've -- We've already taken that issue all the way up to the Supreme Court on dental mass tort cases in San Antonio through the Fourth Court of Appeals. They mandamused

three judges who denied separate trials. Mandamus was denied. Went to the Supreme Court just last year. They sat on it three months, and they denied the relief, and allowed the cases to be tried together. And the reason is --

THE COURT: What were the issues?

MR. MAUZE: Exact same as this. It's against the Smile Center, except it was -- There's some differences in what the clinics are doing, but same issues. It's causes of action for dental malpractice, fraud, and conspiracy, based on -- The only difference is: In that case, there's no allegation of the illegal corporate practice of dentistry, because the clinics truly were all owned by one dentist.

THE COURT: So you're telling me that the appellate -- the Fourth --

MR. MAUZE: Court of Appeals.

THE COURT: -- and then the Supremes actually said that's okay?

MR. MAUZE: No. They denied the mandamus -- They mandamused the -- Three different trial judges ruled in our favor. They mandamused the first one, Judge Price, and the Fourth Court of Appeals denied the mandamus, which means they found no abuse of discretion or error. And then they took it to the Supreme Court --

THE COURT: Did they deny it -- Did they deny based on procedure?

MR. MAUZE: No. No. Huh-uh. I mean, I'm sure --

THE COURT: So they just said, "It's denied. Go to trial"?

MR. MAUZE: No. They -- Because the case wasn't going to trial yet. That was a -- That case before -- Right now, they're all in a complex designation before Judge Sakai -- the ones we haven't settled. But at that point, in front of Judge --

THE COURT: Look, this is what I've seen --

MR. MAUZE: -- Price, there were 12 cases.

THE COURT: And I may be completely out there, but what I've seen in my court, what I've seen in cases that I've had to deal with over the years, is that what the appellate courts will do is: They don't rule. They don't rule on the underlying subject matter. What they do is: They say, "It's not ripe", or "I'm denying the mandamus at this point, because all the judge is doing is saying he's gonna try them, but the discovery is not complete. So we really don't have a full record, so we're sending it back. Mandamus denied".

So -- But then I've seen cases where we go, "Okay. We're gonna select a jury". Bang. It hits the appellate courts. The appellate court says, "Whoa. Wait a minute. We said we're sending it back to you, but now you're really talking trial, so let's hold up. Let's review it".

So now they're reviewing it, and now they look at the substance, and now they tell me "nah". Essentially, I've had some where they just said, "Try them all separately".

MR. MAUZE: And they could. And that's one reason --

THE COURT: It's frustrating, but that's what they're doing -- or that's what they've done.

MR. MAUZE: We think it's gonna be different in these. There's a bunch of laws dealing with the fraud and the conspiracy, because we've alleged and pled that they're engaged in a course and pattern of practice, and -- So all these other incidents are going to be -- and what we argued in San Antonio in the Court of Appeals -- All those other incidences are gonna come in anyway on the gross negligence cause of action to show they're intentionally -- I mean -- they're engaging in a course and pattern of practice of overdiagnosing and overtreating the children.

But the reason I wanted some guidance, depending on how this Court wants to do the CMO, and what they want to do -- If we had guidance -- not a ruling -- "It looks like I'm gonna let you all go try one or two of them before you finish all the discovery on 130", then when we prepare the CMO. We'll need to know what kind of discovery limitations they need and I need --

THE COURT: If that's what you're saying, I can

tell you right off the bat: I have no problem with that. I don't think that MDLs are designed to hold the whole process down. In fact, they don't have much of a burden. You guys are the ones attacking them, so they have to review what it is that you've got. So if you've got a case ready to go, according to you, and you don't want anymore discovery on it, and you don't want anymore of the other discovery that may come in for purposes of gross negligence -- as you've described it -- and you want to go on it -- I mean, the only gripe they may have is -- what -- "We still haven't given them discovery on the other 200 cases that may make us look worse". I don't think they're gonna be doing that.

MR. MAUZE: That's their --

THE COURT: But their position is not that. Their position is: "We're not agreeing to try them together".

MR. MAUZE: No. That's -- Their position is what you just said --

MR. VICKERY: And I think we would also want to determine, Your Honor, whether the one case is representative, whether it contains the criteria that we -- Hopefully we can agree upon a lot of the criteria that need to go into a Bellwether case. But if we can't, then we may need to come talk to you about criteria and --

THE COURT: How do you -- I have lawyers that describe Bellwether so different. How do you describe it?

MR. VICKERY: I describe a Bellwether as a case that would contain certain -- hopefully agreed upon -- criteria so that if you go try the case, or you try two or three Bellwether cases -- Hopefully, at the end of the day, you have an idea of a verdict range, a settlement range, so that hopefully you can resolve the MDL.

So a Bellwether case doesn't need to be his best case or my best case. It needs to be a case that contains certain criteria that Mr. Mauze and I probably need to sit down, and try to discuss and agree upon. And then we would have a pool of cases that meet that criteria. And then we would have to agree on some sort of a selection process -- Either he strikes five, I strike five, and there's two left, or whatever. But there are a lot of different ways to do this so that we can --

THE COURT: Isn't the Bellwether issue an issue that came up because they were, in fact, saying, "No. We don't want them tried together". And so, therefore, we need to figure out -- We need to take -- You take a gauge. Okay? You create a gauge. But that gauge was originally designed by the courts with the hope that more cases would get tried together. But if you all are taking the position that they're not gonna get tried together, who cares what case goes first.

MR. RODRIGUEZ: And, you know, Your Honor, we're -- With all due respect, this is sort of premature right

now. We're just -- In terms of where -- how we're gonna proceed in the MDL, and so forth. I think we need to resolve this issue first, and then concentrate on the MDL. We can't even get the -- get the courts to set up the MDL, and here we are trying to figure out when we're going to trial on the case.

THE COURT: Well, let me correct you --

MR. RODRIGUEZ: Not the Court. The clerk's office.

THE COURT: The MDL guy has already sent it to me. The MDL has been created. The only thing that has not been created is a computer porthole by which you can submit filings through that porthole. But you can file in the Antu case, you can file in the other cases if you need to file anything. And I'm telling you right now that if there needs to be something filed, you can file it by hand, if you have to. That's not gonna be a delay. I know what you're saying.

MR. RODRIGUEZ: And I didn't mean to imply that -- that we're waiting for that to resolve the matter. I'm just -- I'm just saying that I think that we're --

THE COURT: Well, I mean, I think -- I think he's being wishful. You know? Counsel, is being a little wishful, and he's saying, "Can we discuss it?"

I guess I'm telling you right now: I don't have a problem trying cases quickly, if they're ready.

MR. MAUZE: Okay. Because I think their

position -- And correct me if I'm wrong, Alan -- They are taking the position: No case should be certified by you for trial until the discovery is finished on all 130 kids.

MR. VICKERY: No. That's not -- That's not -- not the case-specific discovery. My -- What I mentioned to Mr. Mauze last week is that there's a certain amount of -- what I call "generic discovery" that will apply to all -- every case in the MDL. And it's not case specific. It's not a case-specific issue. It's not a case-specific deposition.

THE COURT: Like hierarchy stuff --

MR. VICKERY: Right.

THE COURT: -- business organization stuff --

MR. VICKERY: Right. There'll be more documents.

THE COURT: -- policies and procedures?

MR. VICKERY: There's going to be more documents that I think he's going to request from us, because he's indicated that he wants, you know, the liberty to do that in the case management order. So any discovery -- document discovery or deposition discovery -- that is what I'll call "general in nature" that applies to all the cases needs to be done before any case gets sent back for trial.

And the case-specific discovery can be done even when the case gets sent back to the trial court for trial, so long as we have gone through the Bellwether selection process,

and we know well in advance what is going to be set for trial. But my point was -- not that the case-specific discovery needs to be done on all 130 cases. But I think the general discovery that applies to every case needs to be done, so it can be done once, and not multiple times.

THE COURT: Well, normally, if there was no MDL, I would agree with the argument completely. But because there's an MDL, I'll go out on a limb and say, "I don't think it matters". And the reason I don't think it matters is this: Unless there's general discovery that you want from Plaintiffs -- but there is no such thing as general discovery from plaintiffs, because the plaintiffs are specific to the particular case. So if, in fact, they want to go without ever deposing, let's say, you know, your two highest guys up on the totem pole -- If they want to go to trial on it, we can go to trial on it. If you want to depose them, you can depose your own guys. That's not gonna happen.

So, I mean, I get what you're saying, but I don't think that it completely applies. And I don't think -- Maybe I'm getting cynical, folks, but with the -- even the non-MDL cases that I've dealt with over the years with a lot of plaintiffs or a lot of defendants -- you know, the subject has always come up -- How do we try them? Do we try them together? Do we not try them together? The Bellwether issue's come up. All this other stuff has come up, and I've never been able to

successfully come up with groups. So it's bogged down to try them individually.

I've created pods for trial, and been reversed. I've created records on why we were doing it this way, and I've been reversed. So I'm not that confident that that's ever gonna happen in this particular case. I'm gonna work at it. I'm gonna work at trying to get it done, but I'm not that confident.

So I don't know where you all are headed, but I'm headed in the direction of starting to try cases as soon as we can get them to trial -- either in my court, or in whatever court they came from.

MR. MAUZE: And I guess that's what I'm looking for. I just -- I think if we all have -- it would be mutually beneficial -- some guideline about: Maybe we'll go to trial on the first case -- whether it's Antu, Bellwether -- whatever it is -- roughly this date, then -- so we can back up on the CMO to know what kind of realistic deadlines do you really need or do I need to meet that date. Otherwise, we're gonna be doing discovery for three years.

THE COURT: What I find interesting is: On these MDLs, how far do I even go on cases that are not mine for trial?

MR. RODRIGUEZ: Through discovery.

THE COURT: Right. So --

MR. RODRIGUEZ: You're in charge of everything.

THE COURT: Well, I understand. But think about this: If I'm gonna say -- Look, let's say in the end we're gonna say -- You've gotten cases coming out of Cameron County, let's say -- ten different plaintiffs. And I say, "Okay. You're gonna try them individually". Or let's say I say, "I'm gonna try the ones in Hidalgo County individually", and I send it back to that judge over there and say, "You figure out how your gonna try it. I've done my job". I mean, can --

MR. RODRIGUEZ: Not until the discovery is complete.

THE COURT: Well let's assume the discovery is complete.

MR. RODRIGUEZ: Okay.

THE COURT: Because the discovery is one thing. Well, actually, pretrial is one thing. And the question is: Does this Court, under the MDL ruling -- I know I can do it. The question is: Do I have to do it on cases that are not out of Hidalgo County? Do I have to tell them how to try it?

MR. MAUZE: I don't think you have to. I think the intent is: You take it all the way to the point that when you transfer it back, that judge tries it. The in limines have been decided, everything --

THE COURT: Yeah.

MR. MAUZE: And then -- so you would rule on

severance, separate trial, in limines, Charge of the Court -- so there's consistency amongst all the courts under your jurisdiction. And then that way, we just go track -- that judge follows the rules of procedure, and follows your in limine orders, and your charge.

MR. VICKERY: Tries the case with the orders that you have put in place.

THE COURT: Counsel, you honestly think that you're ever gonna change your stance on: These cases should be tried separately?

MR. VICKERY: Will I ever change my stance? I guess there's always a chance.

THE COURT: From a legal standpoint. It's your position that they shouldn't.

MR. VICKERY: I think our position would be that they need to be tried in single plaintiffs.

MR. MAUZE: And my thought on that --

THE COURT: And that's where we start. That's where the argument starts.

MR. MAUZE: Right. I agree that that would be great to get that resolved. So if that's really their position, they file their Motion For Separate Trials. You enter your ruling. If you grant the motion, we take it up. If you deny the motion, they take it up. And -- because we'll never agree on that.

And we don't want to be in a situation -- we try ten, if you rule in our favor -- and they're reversed because of that. Or if we try one, and it increases the cost in the MDL ten-fold, and takes up massive more judicial time. So that issue ought to get resolved through finality -- whatever stage that may be. We've done that in San Antonio, and the courts have --

THE COURT: And they tried it?

MR. MAUZE: No. We're about to go to trial in August. But, no. I mean, I don't think --

THE COURT: See, this is the problem that you have -- because then -- mind you, I'm just speaking from my own experiences. I don't know how the Fourth is working up there, but I know how the Thirteenth has worked. And I can tell you that -- yeah -- you get right up to the point where you're jumping off the cliff and saying, "We're selecting a jury on Monday", and -- and they go, "No. Not under those circumstances".

And let's assume you try it. Just because you get it back and it fits Bellwether, it doesn't mean that it fits all cases.

MR. MAUZE: Right.

THE COURT: And so, therefore, the pod I create today for trial may be upheld. The pod I create tomorrow for the next group may not hold water.

MR. MAUZE: I can tell you this -- this just prompted my mind -- my memory. The order -- I mean, I don't know if this is the reason we won it all the way up -- but the orders from the judges were all without prejudice. So, obviously, they could reassert their Motion For Separate Trial at any time, and that could be a reason the mandamus was not granted.

THE COURT: Because the appellate courts don't like to touch them with any finality until they're ready to get tried, and you're starting to throw your first jabs in trial. They don't do it. For whatever reason, they don't do it. Probably because if they let it go -- if they make a final ruling, and it goes up to the Supreme Court, the Supreme Court is gonna say it's premature.

It's -- It's a really tough situation on these cases, because -- I guess the easiest, and laziest, and worst, and least efficient way of doing it is by trying them all individually, because there's nothing -- I mean, they can't reverse me on trying them separately.

MR. VICKERY: Certainly not on that point.

THE COURT: Well, not on that.

MR. MAUZE: What if we had a deadline from His Honor as to -- This is your deadline to file whatever motions they want or we want to address that issue -- That way, when you rule on separate trials or not, we can get that issue

resolved.

THE COURT: I don't know.

MR. VICKERY: I think we're a little ahead of ourselves. I mean, I think --

MR. MAUZE: Well, as a backup to it.

MR. VICKERY: Well, I know. But I think -- We just got his draft CMO last week. And I think we need to get through it, and we'll see if we can sit down and get a master order in place. And this will be one of the issues that will need to go in the order.

MR. MAUZE: All right. That's fine.

THE COURT: Yeah. But I will tell you this, just to -- take it as advance notice. I have absolutely no problem trying the Antu case if you all feel it's ready -- when it's ready.

MR. MAUZE: Well, I mean, I told him we still have seven depos that --

THE COURT: And, granted, just because you file them together, doesn't mean they're all gonna be tried together. And, granted, just because they were filed together, doesn't mean that they fit the criteria to be tried together. I -- I'm still striving to find a formula to try these cases -- cases of this type together. I haven't found one. Maybe this is the case. But I think the way that --

Two things happen. One, I have found that the

appellate courts don't have a problem when there are differences in damages. Okay? They don't have a problem with that. You can have cases tried together as long -- and I'm over simplifying it. As long as the damages are the only differences -- and I'm talking about amounts -- then they don't have a major problem with it.

It's when you get into different causes of action and the different type of damage that they're -- and if I could get, you know, the lawyers to say, "We're only suing them on X" -- but it doesn't make any sense just to sue them on X. If we only sue them on X -- and then the damages are set out by whatever facts apply to each of the representative clients -- I think you can make those pods work. But because of the different types of causes of action, you have problems.

MR. MAUZE: I think in this -- and I don't know what their position is and what the Court's would be -- I think the -- And I would like to try all 12 together. No question. And we'll brief that for the Court. But if we tried only groups of claims against a particular dentist and the entities -- that's another issue you see sometimes on appeal -- that multiple defendants are in the same case. Because one will argue, "The evidence against that dentist was prejudicial against me" -- you know, so there's that issue. But that would knock it down. We could still get four or five plaintiffs tried. Same causes of action. Same defendants. Same type of

damages.

THE COURT: Well, you're talking about the same working dentist.

MR. MAUZE: Yes. The same -- Yes. I mean, that's a party to the case though.

THE COURT: Right.

MR. MAUZE: Because we have four dentists in Antu -- individual dentists.

THE COURT: I understand. But when I say -- the working dentist is the person on the ground, the person that's --

MR. MAUZE: Right. Doing the work.

THE COURT: -- doing the work. That makes sense.

MR. MAUZE: I guess we can just talk about it. I thought we had a very different opinion on that. I just wanted some guidance --

THE COURT: Well, I mean, considering you have the types of memos that you have coming out of it -- the e-mails that you see -- I think that's definitely gonna be part of the criteria. I mean, you don't have -- If you have e-mails, for example, that that one dentist -- that one example of an e-mail you showed me -- that one dentist that was falling under their guidelines --

MR. MAUZE: Right.

THE COURT: That dentist may say, "Hey, look, guys. You know, I wasn't even doing what they were telling me to do". That's one of his individual defenses. Even if you believe that these people were, in fact, dictating what these doctors should and should not do, that doctor would take the position: "I wasn't. In fact, I was being criticized for it". The other doctors may not have that defense.

MR. MAUZE: Well, they represent all the doctors too.

THE COURT: Well, I understand.

MR. MAUZE: I assume there will be a joint defense.

THE COURT: I don't know.

MR. MAUZE: Well, you've got the doctors and the clinics together. We'll try to disrupt that some, believe me.

THE COURT: I don't know. I don't know. Okay.

MR. VICKERY: Thank you, Judge.

MR. MAUZE: Thank you.

THE COURT: Let me know if you all need anything else. My staff has my cell number, so does half the county. So just let me know what else I can do.

(Proceedings concluded at 4:43 p.m.)

REPORTER'S CERTIFICATE

THE STATE OF TEXAS   )
COUNTY OF HIDALGO    )

I, LISA KINSEL, Official Court Reporter in and for the 370th District Court of Hidalgo County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $1,260.50 and was paid by Mauze and Bagby.

WITNESS MY OFFICIAL HAND this the 9th day of July, 2015.


                              /s/ Lisa Kinsel
                              LISA KINSEL, Texas CSR 8817
                              Expiration Date:  12-31-2015
                              Official Court Reporter
                              370th District Court
                              Hidalgo County, Texas
                              Edinburg, Texas  78539

| | | |
|---|---|---|
| PAULA ANTU AS NEXT FRIEND OF ALEKSANDRA N. ESTRADA, A MINOR, et al | § § § § | IN THE DISTRICT COURT |
| PLAINTIFFS, | § § | |
| V. | § § | 370TH JUDICIAL DISTRICT |
| NCDR, LLC d/b/a KOOL SMILES, et al | § § | |
| DEFENDANTS. | § § | HIDALGO COUNTY, TEXAS |

## ORDER GRANTING PLAINTIFFS' MOTION TO AMEND STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

On this 15th day of June, 2015 came on to be considered Plaintiffs' Motion to Amend Confidentiality Agreement and Protective Order. Defendants and Plaintiffs appeared by and through their respective attorneys of record. After considering the motion, considering the arguments of counsel, and considering the evidence, the Court hereby finds that the following orders should be entered:

ORDERED that the Stipulated Confidentiality and Protective Agreement Order entered by the Court on June 11, 2013 shall be, and is hereby, AMENDED and MODIFIED to expressly authorize Plaintiffs and their attorneys to disseminate any of the discovery in this case, including documents produced by Defendants, to any other litigant or potential litigant in this MDL litigation or other litigants or potential litigants in other litigation or potential litigation. It is further,

ORDERED that Plaintiffs and their attorneys shall not disseminate any of the discovery in this case, including documents produced by Defendants, to any competitor of Defendants, except for retained and consulting experts designated in this MDL litigation or any other


EXHIBIT
A

litigation or potential litigation. It is further,

ORDERED that Defendants designation of documents produced as "Confidential Pursuant to the Protective Order" shall be, and is hereby, OVERRULED to the extent specified and ordered above.

SIGNED AND ENTERED on this 15th day of June, 2015.

                                  _____
                                    HONORABLE NOE GONZALEZ,
                                    MDL JUDGE PRESIDING

APPROVED AS TO FORM:

MAUZÉ & BAGBY, PLLC
2632 Broadway, Suite 401 South
San Antonio, Texas 78215
Telephone: 210.354.3377
Telecopier: 210.354.3909


By:_____
         George W. Mauzé, II
         State Bar No. 13238800
         James Thomas Bagby, III
         State Bar No. 24059409

GUERRA, LEEDS, SABO & HERNANDEZ, PLLC
10213 N. 10th St.
McAllen, Texas 78504
Telephone: 956.383.4300
Telecopier: 956.383.4304
By:    R.D. "Bobby" Guerra
         State Bar No. 08578640
         Frank Sabo, Jr.
         State Bar No. 17500300

**ATTORNEYS FOR PLAINTIFFS**

SEDGWICK, LLP
1717 Main Street, Suite 5400
Dallas, Texas 75201-7367

Telephone: 469.227.8200
Telecopier: 469.227.8004

By: _____
          Wayne B. Mason
          State Bar No. 13158950
          Alan R. Vickery
          State Bar No. 20571650

ATLAS, HALL, & RODRIGUEZ, LLP
50 W. Morrison Road, Suite A
Brownsville, TX 78520
Telephone: 956.574.9333
Telecopier: 956.574.9337
By:    Eduardo R. Rodriguez
        State Bar No. 00000080

**ATTORNEYS FOR DEFENDANTS**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| BENEVIS, LLC f/k/a NCDR, L.L.C.; | § | |
| DENTISTRY OF BROWNSVILLE, P.C. | § | |
| d/b/a KOOL SMILES; and KS2 TX, P.C. | § | |
| d/b/a KOOL SMILES, | § | |
| | § | |
|      Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:12-CV-36 |
| | § | |
| MAUZE & BAGBY, PLLC; GEORGE | § | |
| WATTS MAUZE II; and JAMES | § | |
| THOMAS BAGBY III, | § | |
| | § | |
|      Defendants. | § | |

## DEFENDANTS MAUZÉ & BAGBY, PLLC, GEORGE WATTS MAUZÉ II AND JAMES THOMAS BAGBY III'S ORIGINAL ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' FIRST AMENDED COMPLAINT

COME NOW Defendants  MAUZÉ & BAGBY, PLLC, GEORGE WATTS MAUZÉ II AND  JAMES THOMAS BAGBY III (collectively "Defendants") and file their Original Answer and Affirmative  Defenses  to Plaintiffs' First Amended  Complaint,  and hereby admit, deny and allege as follows:

## I.
## ANSWER

## NATURE OF THE ACTION

1.       Defendants admit that Plaintiffs have filed this action for damages and injunctive relief premised on multiple claims but deny any such claims in Paragraph 1 of Plaintiffs' First Amended Complaint have merit.

---

**PARTIES**

2.      Defendants lack sufficient information to admit or deny the allegations in Paragraph 2 of Plaintiffs' First Amended Complaint and, therefore, deny the same.

3.      Defendants admit that Dentistry of Brownsville, P.C. d/b/a Kool Smiles is a professional corporation incorporated under the laws of the State of Texas.  Defendants lack sufficient information to admit or deny the remaining allegations in Paragraph 3 of Plaintiffs' First Amended Complaint and, therefore, deny the same.

4.      Defendants admit that KS2 TX, P.C. d/b/a Kool Smiles is a professional corporation incorporated under the laws of the State of Texas.  Defendants lack sufficient information to admit or deny the remaining allegations in Paragraph 4 of Plaintiffs' First Amended Complaint and, therefore, deny the same.

5.      Defendants admit the allegations in Paragraph 5 of Plaintiffs' First Amended Complaint.

6.      Defendants admit the allegations in Paragraph 6 of Plaintiffs' First Amended Complaint.

7.      Defendants admit the allegations in Paragraph 7 of Plaintiffs' First Amended Complaint.

**JURISDICTION AND VENUE**

8.      Defendants admit subject matter jurisdiction is proper in this Court and deny the remaining allegations in Paragraph 8 of Plaintiffs' First Amended Complaint.

9.      Defendants admit the allegations in Paragraph 9 of Plaintiffs' First Amended Complaint.

10.      Defendants admit the allegations in Paragraph 10 of Plaintiffs' First Amended Complaint.

11.     Defendants admit the allegations in Paragraph 11 of Plaintiffs' First Amended Complaint.

12.     Defendants admit the allegations in Paragraph 12 of Plaintiffs' First Amended Complaint.

13.     Defendants admit that venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because a portion of the events at issue occurred in this district.  Defendants admit the advertisements and website at issue in Plaintiffs' First Amended Complaint were broadcast and made accessible by Defendants in Laredo, Texas, where clinics owned, managed, operated, and/or controlled by Plaintiffs are located.   Defendants admit that they made statements regarding "Kool Smiles" in a television news report aired in Laredo, Texas, but deny the statements were similar to those in the advertisements or that the statements specifically referred to Plaintiffs.   Defendants deny that Plaintiffs were harmed in Laredo by Defendants' advertisements through losses in business, patients, revenue, reputation, and all other injuries and damages specified in Plaintiffs' First Amended Complaint.

## FACTS GIVING RISE TO THE ACTION

14.     Defendants lack sufficient information to admit or deny the allegations contained in Paragraph 14 of Plaintiffs' First Amended Complaint and, therefore, deny the same.

15.     Defendants lack sufficient information to admit or deny the allegations contained in Paragraph 15 of Plaintiffs' First Amended Complaint and, therefore, deny the same.

16.     Defendants deny the allegations contained in Paragraph 16 of Plaintiffs' First Amended Complaint.

17.     Defendants lack sufficient information to admit or deny the allegations contained in Paragraph 17 of Plaintiffs' First Amended Complaint and, therefore, deny the same.

18.     Defendants lack sufficient information to admit or deny the allegations contained in Paragraph 18 of Plaintiffs' First Amended Complaint and, therefore, deny the same.

19.     Defendants deny the allegations in Paragraph 19 of Plaintiffs' First Amended Complaint that Kool Smiles' dentists only perform dental procedures when deemed medically necessary.

20.     Defendants admit the allegations in Paragraph 20 of Plaintiffs' First Amended Complaint that on or about February 4, 2012, one or more Defendants began publishing a website, www.koolsmilesclaims.com offering legal services to individuals that may have a claim against "Kool Smiles," but deny such website specifically referred to any of the named Plaintiffs. Whether such website constituted "commercial advertising and promotion" is a legal conclusion Defendants neither admit nor deny.

21.     Defendants admit the quoted questions alleged in Paragraph 21 of Plaintiffs' First Amended Complaint previously appeared on the website www.koolsmilesclaims.com. Defendants admit the website referred to the dental chain known as "Kool Smiles" but deny the website specifically referred to any of the named Plaintiffs.  Defendants deny the allegations in Paragraph 21 of Plaintiffs' First Amended Complaint that they made any false and unsubstantiated representations or statements.

22.     Defendants deny the allegations in Paragraph 22 of Plaintiffs' First Amended Complaint.

23.     Defendants admit the allegation in Paragraph 23 of Plaintiff's First Amended Complaint that the website, www.koolsmilesclaims.com, included a picture of a young child's open mouth, showing six visible upper teeth of which four have stainless steel crowns.

Defendants deny the remainder of the allegations in Paragraph 23 of Plaintiffs' First Amended Complaint.

24.     Defendants admit the allegation in Paragraph 24 of Plaintiffs' First Amended Complaint that on the website www.koolsmilesclaims.com, under a section titled "Kool Smiles and Medicaid", one or more of the Defendants state the following: "Approximately 5 years ago the United States Congress passed legislation that substantially increased Medicaid reimbursements for several children's dental services.  The purpose of this legislation was to increase the availability of dental services to underprivileged children.  Since the passage of this legislation, hundreds of dental clinics, targeting children eligible for Medicaid, have opened throughout our country.  Unfortunately, many of these dental clinics have exploited our children to increase their revenue.

Kool Smiles has opened over 35 clinics in Texas, including clinics in El Paso, McAllen, Weslaco, Mission, Brownsville, Eagle Pass and Laredo. In 2010, the Kool Smiles clinics in these 7 cities collected more than Twenty Five Million Dollars ($25,000,000.00) in Medicaid reimbursements."

25.     Defendants deny the allegations in Paragraph 25 of Plaintiffs' First Amended Complaint.

26.     Defendants deny the allegations that Defendants made any false or misleading implications or has harmed Kool Smiles as stated in Paragraph 26 of Plaintiffs' First Amended Complaint.

27.     The allegations contained in Paragraph 27 of Plaintiffs' First Amended Complaint are immaterial to the instant dispute and, therefore, require no response.  To the extent that a response may be required, Defendants admit that on or about February 2, 2012, in full

compliance with Rule 7.07 of the Texas Disciplinary Rules of Professional Conduct, one or more Defendants filed their website content with the Advertising Review Committee of the State Bar of Texas prior to making the website available to the public. Defendants admit the allegation that one or more Defendants never asked nor received preapproval of the website contents before disseminating it to the public because preapproval was not required.

28.     In response to the allegation in Paragraph 28 of Plaintiffs' First Amended Complaint, Defendants admit that one or more Defendants hired a third-party, Yodle, Inc., to develop a website and internet advertising on various search engines.  Defendants admit that based on information provided by Yodle, such search engines included Google and such internet advertising included purchase of the term "kool smiles" as a keyword.  Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 28 and, therefore, they are denied.

29.     Defendants lack sufficient information to admit or deny the allegations contained in Paragraph 29 of Plaintiffs' First Amended Complaint and, therefore, deny the same.

30.     Defendants deny the allegations contained in Paragraph 30 of Plaintiffs' First Amended Complaint.

31.     The allegations contained in Paragraph 31 of Plaintiffs' First Amended Complaint are immaterial to the instant dispute and, therefore, require no response.  To the extent that a response may be required, Defendants admit the same.

32.     Defendants admit the allegations in the first four sentences of Paragraph 32 of Plaintiffs' First Amended Complaint.  Defendants lack sufficient information to admit or deny the remaining allegations contained in Paragraph 32 and, therefore, deny same.

33.     Defendants admit the audio portions of television advertisements asked the quoted questions and the video portions of television advertisements flashed the words alleged in Paragraph 33 of Plaintiffs' First Amended Complaint.  Defendants deny the allegations in Paragraph 33 of Plaintiffs' First Amended Complaint that they made any false and unsubstantiated statements.

34.     Defendants lack sufficient information to admit or deny the allegations contained in the first sentence of Paragraph 34 of Plaintiffs' First Amended Complaint and, therefore, deny the same.  Defendants admit that the television advertisements aired by one or more of the Defendants included the same picture that was on the website of one or more Defendants, www.koolsmilesclaims.com, of a child with four of six visible upper teeth with stainless steel crowns.  Defendants deny the remainder of the allegations in Paragraph 34 of Plaintiffs' First Amended Complaint.

35.     The allegations contained in Paragraph 35 of Plaintiffs' First Amended Complaint are immaterial to the instant dispute and, therefore, require no response.  To the extent that a response may be required, Defendants admit that on February 2, 2012, before the airing of television advertisements to the public, one or more of the Defendants timely filed the script and description of the television advertisements with the Advertising Review Committee of the State Bar of Texas in compliance with Rule 7.07 of the Texas Disciplinary Rules of Professional Conduct, which states in part that "…a lawyer shall file with the Advertising Review Committee of the State Bar of Texas, no later than the first dissemination of an advertisement in the public media, a copy of each lawyer's advertisement in the public media."  Defendants admit the allegation in Paragraph 35 of Plaintiffs' First Amended Complaint that one or more of the

Defendants    did not request nor receive preapproval of the contents of their television advertisements before disseminating them to the public because preapproval was not required.

36.     Defendants deny the allegations contained in Paragraph 36 of Plaintiffs' First Amended Complaint.

37.     Defendants admit one or more of the Defendants engaged in the acts alleged in the first four sentences in Paragraph 37 of Plaintiffs' First Amended Complaint.  Defendants lack sufficient information to admit or deny the remaining allegations contained in Paragraph 37 and, therefore, deny same.

38.     Defendants admit the allegation in Paragraph 38 of Plaintiffs' First Amended Complaint that the radio advertisements of one or more of the Defendants asked the quoted questions alleged in Paragraph 38 of Plaintiffs' First Amended Complaint.  Defendants deny the allegation in Paragraph 38 of Plaintiffs' First Amended Complaint that they made any false and unsubstantiated representations.  Defendants admit that the same questions asked in the English advertisements were also asked in Spanish radio advertisements.

39.     Defendants deny the allegations of Paragraph 39 of Plaintiffs' First Amended Complaint.

40.     The allegations contained in Paragraph 40 of Plaintiffs' First Amended Complaint are immaterial to the instant dispute and, therefore, require no response.  To the extent that a response may be required, Defendants admit that on February 2, 2012 one or more of the Defendants timely filed the scripts of the English and Spanish radio advertisements with the Advertising Review Committee of the State Bar of Texas in compliance with Rule 7.07 of the Texas Disciplinary Rules of Professional Conduct, which states in part that "…a lawyer shall file with the Advertising Review Committee of the State Bar of Texas, no later than the first

dissemination of an advertisement in the public media, a copy of each lawyer's advertisement in the public media." Defendants admit the allegation in Paragraph 40 of Plaintiffs' First Amended Complaint that one or more of the Defendants did not request nor receive preapproval of their radio advertisements before disseminating them to the public because preapproval was not required.

41.     Defendants deny the allegations contained in Paragraph 41 of Plaintiffs' First Amended Complaint.

42.     Defendants admit the allegation in Paragraph 42 of Plaintiffs' First Amended Complaint that they established a toll-free telephone line but deny such line was solely dedicated to receive phone calls from Kool Smiles patients in response to one or more of Defendants' advertising campaign. Defendants deny the allegation in Paragraph 42 of Plaintiffs' First Amended Complaint that the advertising campaign was defamatory. Defendants admit the allegation in Paragraph 42 of Plaintiffs' First Amended Complaint that www.KoolSmilesClaims.com and the television and radio advertisements directed parents to call 1-800-200-9096 "for a free consultation". Defendants admit that on the www.KoolSmilesClaims.com the words "Trusted Lawyer in San Antonio" appeared. Defendants deny that the television or radio advertisements stated "trusted lawyer in San Antonio".

43.     The allegations contained in Paragraph 43 of Plaintiffs' First Amended Complaint are immaterial to the instant dispute and, therefore, require no response. To the extent that a response may be required, Defendants deny the same.

44.     The allegations contained in the first two sentences of Paragraph 44 of Plaintiffs' First Amended Complaint are legal conclusions and are immaterial to the instant dispute, and

therefore, require no response.  To the extent that a response may be required, Defendants lack sufficient information to admit or deny the allegations contained in the first and second sentences of Paragraph 44 of Plaintiffs' First Amended Complaint and, therefore, deny the same. Defendants deny the remaining allegations in Paragraph 44 of Plaintiffs' First Amended Complaint.

45.     Defendants deny the allegations in Paragraph 45 of Plaintiffs' First Amended Complaint.

46.     Defendants admit the allegation in Paragraph 46 of Plaintiffs' First Amended Complaint that Darren L. McCarty of Alston & Bird LLP sent a cease and desist letter to Mauzé & Bagby, PLLC, dated February 9, 2012.  The content of that letter speaks for itself.  Defendants deny the advertising was defamatory.

47.     Defendants admit the allegation in Paragraph 47 of Plaintiffs' First Amended Complaint that Darren L. McCarty of Alston & Bird LLP sent a letter to Mauzé & Bagby, PLLC. The content of that letter speaks for itself.  To the extent Plaintiffs' allegations in Paragraph 47 mischaracterize the content of that letter, they are denied.

48.     Defendants admit the allegations in Paragraph 48 to the extent that Mauzé & Bagby, PLLC sent Darren McCarty a letter dated February 13, 2012.  The content of that letter speaks for itself.  To the extent Plaintiffs' allegations in Paragraph 48 mischaracterize the content of that letter, they are denied.  *See* Mauzé & Bagby, PLLC's letter, dated February 13, 2012, which is attached hereto and marked as Exhibit "A".

49.     Defendants admit that Darren L. McCarty of Alston & Bird LLP sent a cease and desist letter to Mauzé & Bagby, PLLC, dated February 16, 2012.  The content of that letter

speaks for itself.  To the extent Plaintiffs' allegations in Paragraph 49 mischaracterize the content of that letter, they are denied.  Defendants also deny the advertising was defamatory.

50.     Defendants admit that Mauzé' & Bagby, PLLC sent Darren McCarty a letter dated February 20, 2012.  The content of that letter speaks for itself.  To the extent Plaintiffs' allegations in Paragraph 49 mischaracterize the content of that letter, they are denied.  *See* Mauzé & Bagby, PLLC's letter, dated February 20, 2012, which is attached hereto and marked as Exhibit "B".

51.     The allegations contained in Paragraph 51 of Plaintiffs' First Amended Complaint are immaterial to the instant dispute and, therefore, require no response.  To the extent that a response may be required, Defendants admit the allegation in the first sentence of Paragraph 51 of Plaintiffs' First Amended Complaint.  Defendants deny the allegation in the second sentence of Paragraph 51 of Plaintiffs' First Amended Complaint that the correspondence from the Advertising Review Committee required that Mauzé & Bagby, PLLC "remedy the violations within ten (10) days from the date of the letters, by February 17, 2012, or face a grievance committee review".

52.     The allegations contained in Paragraph 52 of Plaintiffs' First Amended Complaint are immaterial to the instant dispute and, therefore, require no response.  To the extent that a response may be required, Defendants admit that one or more of the Defendants temporarily stopped advertising on or about February 13, 2012 and that one or more of the Defendants subsequently restarted advertising.  The content of the original and subsequent advertisements speaks for itself.  To the extent Plaintiffs' allegations in Paragraph 52 of Plaintiffs' First Amended Complaint mischaracterize the original and subsequent advertisements, the allegations are denied.

53.     Defendants deny the allegation in Paragraph 53 of Plaintiffs' First Amended Complaint that Defendants made any "defamatory claims against Kool Smiles".  Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 53 and, therefore, deny same.

54.     Defendants admit the allegation in Paragraph 54 of Plaintiffs' First Amended Complaint that Defendant Mauzé was interviewed by KFOX 14 in El Paso, Texas on or about February 17, 2012.  The aired content of that interview speaks for itself if it was aired.  To the extent Plaintiffs' allegations in Paragraph 54 mischaracterize the content of that airing, the allegations are denied.  Defendants are without sufficient information to admit or deny a news report containing such interview was aired or the date of any such news report and, therefore, these allegations are denied.

55.     Defendants admit the allegation in Paragraph 55 of Plaintiffs' First Amended Complaint that Defendant was interviewed in Laredo, Texas on or about February 28, 2012.  The aired content of the interview speaks for itself if it was aired.  To the extent Plaintiffs' allegations in Paragraph 55 mischaracterize the contents of that airing, they are denied.  Defendants are without sufficient information to admit or deny a news report containing such interview was aired, the date of any such news report, and the station of such news report, and therefore, these allegations are denied.

56.     Defendants deny the allegations in Paragraph 56 of Plaintiffs' First Amended Complaint.

57.     Defendants deny the allegations in Paragraph 57 of Plaintiffs' First Amended Complaint.

58.     Defendants deny that they engaged in a campaign of false, misleading, and defamatory statements.  Defendants lack sufficient information to admit or deny the remaining allegations contained in Paragraph 58 of Plaintiffs' First Amended Complaint and, therefore, deny the same.

59.     Defendants deny the allegations in Paragraph 59 of Plaintiffs' First Amended Complaint.

60.     Defendants deny the allegations in Paragraph 60 of Plaintiffs' First Amended Complaint.

61.     Defendants deny the allegations in Paragraph 61 of Plaintiffs' First Amended Complaint.

62.     Defendants deny the allegations in Paragraph 62 of Plaintiffs' First Amended Complaint.

## COUNT I
## FALSE ADVERTISING (DESIGNATION OF ORIGIN) (15 U.S.C § 1125(a))

63.     Defendants repeat and re-allege their responses to Paragraphs 1 through 62 as if set forth fully herein.

64.     Defendants deny the allegations in Paragraph 64 of Plaintiffs' First Amended Complaint.

65.     Defendants deny the allegations in Paragraph 65 of Plaintiffs' First Amended Complaint.

66.     Defendants deny the allegations in Paragraph 66 of Plaintiffs' First Amended Complaint.

## COUNT II
## DEFAMATION VIA WEBSITE

67.     Defendants repeat and re-allege their responses to Paragraphs 1 through 62 as if set forth fully herein.

68.     Defendants admit the allegations in Paragraph 68 of Plaintiffs' First Amended Complaint to the extent that one or more of the Defendants reserved the domain name www.koolsmilesclaims.com and published a website at that domain name.

69.     In response to Paragraph 69 of Plaintiffs' First Amended Complaint, Defendants admit that one or more Defendants hired a third-party, Yodle, Inc., to develop internet advertising.  Based on information provided by Yodle, Defendants admit that the development of such internet advertising included the purchase of advertisements on search engines, such as Google, that directed people to the website www.koolsmilesclaims.com

70.     Defendants admit the allegation in Paragraph 70 of Plaintiffs' First Amended Complaint that one or more of the Defendants made the website available to the general public. Defendants lack sufficient information to admit or deny the remaining allegations contained in Paragraph 70 of Plaintiffs' First Amended Complaint and, therefore, deny the same.

71.     Defendants deny the allegations in Paragraph 71 of Plaintiffs' First Amended Complaint.

72.     Defendants deny the allegations in Paragraph 72 of Plaintiffs' First Amended Complaint.

73.     Defendants deny the allegations in Paragraph 73 of Plaintiffs' First Amended Complaint.

74.     Defendants deny the allegations in Paragraph 74 of Plaintiffs' First Amended Complaint.

75.     Defendants deny the allegations in Paragraph 75 of Plaintiffs' First Amended Complaint.

76.     Defendants deny the allegations in Paragraph 76 of Plaintiffs' First Amended Complaint.

## COUNT III
## DEFAMATION VIA TELEVISION ADVERTISEMENTS

77.     Defendants repeat and re-allege their responses to Paragraphs 1 through 62 as if set forth fully herein.

78.     Defendants admit the allegations in Paragraph 78 of Plaintiffs' First Amended Complaint to the extent that one or more of the Defendants developed and/or sponsored advertisements which were broadcast on television stations.

79.     Defendants deny the allegations in Paragraph 79 of Plaintiffs' First Amended Complaint.

80.     Defendants deny the allegations in Paragraph 80 of Plaintiffs' First Amended Complaint.

81.     Defendants deny the allegations in Paragraph 81 of Plaintiffs' First Amended Complaint.

82.     Defendants deny the allegations in Paragraph 82 of Plaintiffs' First Amended Complaint.

83.     Defendants deny the allegations in Paragraph 83 of Plaintiffs' First Amended Complaint.

84.     Defendants lack sufficient information to admit or deny the allegations contained in Paragraph 84 of Plaintiffs' First Amended Complaint and, therefore, deny the same.

## COUNT IV
## DEFAMATION VIA RADIO ADVERTISEMENTS

85.     Defendants repeat and re-allege their responses to Paragraphs 1 through 62 as if set forth fully herein.

86.     Defendants admit the allegations in Paragraph 86 of Plaintiffs' First Amended Complaint to the extent that one or more Defendants developed and/or sponsored advertisements that were broadcast on radio stations.

87.     Defendants deny the allegations in Paragraph 87 of Plaintiffs' First Amended Complaint.

88.     Defendants deny the allegations in Paragraph 88 of Plaintiffs' First Amended Complaint.

89.     Defendants deny the allegations in Paragraph 89 of Plaintiffs' First Amended Complaint.

90.     Defendants deny the allegations in Paragraph 90 of Plaintiffs' First Amended Complaint.

91.     Defendants deny the allegations in Paragraph 91 of Plaintiffs' First Amended Complaint.

92.     Defendants lack sufficient information to admit or deny the allegations contained in Paragraph 92 of Plaintiffs' First Amended Complaint and, therefore, deny the same.

## COUNT V
## DEFAMATION VIA STATEMENTS IN TELEVISION INTERVIEWS

93.     Defendants repeat and re-allege their responses to Paragraphs 1 through 62 as if set forth fully herein.

94. Defendants lack sufficient information to admit or deny the allegations contained in Paragraph 94 of Plaintiffs' First Amended Complaint and, therefore, deny the same.

95. Defendants deny the allegations in Paragraph 95 of Plaintiffs' First Amended Complaint.

96. Defendants deny the allegations in Paragraph 96 of Plaintiffs' First Amended Complaint.

97. Defendants deny the allegations in Paragraph 97 of Plaintiffs' First Amended Complaint.

98. Defendants deny the allegations in Paragraph 98 of Plaintiffs' First Amended Complaint.

99. Defendants deny the allegations in Paragraph 99 of Plaintiffs' First Amended Complaint.

100. Defendants deny the allegations in Paragraph 100 of Plaintiffs' First Amended Complaint.

**COUNT VI**
**DEFAMATION PER SE**

101. Defendants repeat and re-allege their responses to Paragraphs 1 through 62 as if set forth fully herein.

102. Defendants deny the allegations in Paragraph 102 of Plaintiffs' First Amended Complaint.

103. Defendants deny the allegations in Paragraph 103 of Plaintiffs' First Amended Complaint.

104. Defendants deny the allegations in Paragraph 104 of Plaintiffs' First Amended Complaint.

105.    Defendants deny the allegations in Paragraph 105 of Plaintiffs' First Amended Complaint.

106.    Defendants deny the allegations in Paragraph 106 of Plaintiffs' First Amended Complaint.

## COUNT VII
## BUSINESS DISPARAGEMENT

107.    Defendants repeat and re-allege their responses to Paragraphs 1 through 62 as if set forth fully herein.

108.    Defendants deny the allegations in Paragraph 108 of Plaintiffs' First Amended Complaint.

109.    Defendants deny the allegations in Paragraph 109 of Plaintiffs' First Amended Complaint.

110.    Defendants deny the allegations in Paragraph 110 of Plaintiffs' First Amended Complaint.

111.    Defendants deny the allegations contained in Paragraph 111 of Plaintiffs' First Amended Complaint.

112.    Defendants deny the allegations contained in Paragraph 112 of Plaintiffs' First Amended Complaint.

113.    Defendants deny the allegations in Paragraph 113 of Plaintiffs' First Amended Complaint.

114.    Defendants deny the allegations in Paragraph 114 of Plaintiffs' First Amended Complaint.

115.    Defendants deny the allegations in Paragraph 115 of Plaintiffs' First Amended Complaint.

116.    Defendants deny the allegations in Paragraph 116 of Plaintiffs' First Amended Complaint.

117.    Defendants deny the allegations in Paragraph 117 of Plaintiffs' First Amended Complaint.

118.    Defendants deny the allegations in Paragraph 118 of Plaintiffs' First Amended Complaint.

## COUNT VIII
## INJURY TO BUSINESS REPUTATION (TEX. BUS. & COMM. CODE § 16.29)

119.    Defendants repeat and re-allege their responses to Paragraphs 1 through 62 as if set forth fully herein.

120.    Defendants deny the allegations in Paragraph 120 of Plaintiffs' First Amended Complaint.

121.    Defendants deny the allegations in Paragraph 121 of Plaintiffs' First Amended Complaint.

122.    Defendants admit that Plaintiffs seek injunctive relief, but deny Plaintiffs are entitled to the injunctive relief sought in Paragraph 122 of Plaintiffs' First Amended Complaint and deny that Defendants made any false and defamatory statements.

## PERMANENT INJUNCTION

123.    Defendants repeat and re-allege their responses to Paragraphs 1 through 121 as if set forth fully herein.

124.    Defendants deny the allegations in Paragraph 124 of Plaintiffs' First Amended Complaint.

125.    Defendants deny the allegations in Paragraph 125 of Plaintiffs' First Amended Complaint.

126.     Defendants admit that Plaintiffs seek injunctive relief, but deny Plaintiffs are entitled to the injunctive relief sought in Paragraph 126 of Plaintiffs' First Amended Complaint and deny that Defendants made any false and defamatory statements.

127.     Defendants deny the allegations in Paragraph 127 of Plaintiffs' First Amended Complaint.

128.     Defendants deny the allegations in Paragraph 128 of Plaintiffs' First Amended Complaint.

## ATTORNEYS' FEES

129.     Defendants repeat and re-allege their responses to Paragraphs 1 through 127 as if set forth fully herein.

130.     Defendants deny the allegations in Paragraph 130 of Plaintiffs' First Amended Complaint.

## PRAYER FOR RELIEF

Defendants deny that Plaintiffs are entitled to any relief.

## II.
## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### PLAINTIFFS FAIL TO STATE A CLAIM

131.     Plaintiffs' First Amended Complaint, on one or more counts set forth therein, fails to state a claim upon which relief can be granted.  More specifically, no statements alleged by Plaintiffs to have been made by Defendants, expressly or impliedly was directed, or referred, to Plaintiff Benevis, LLC f/k/a NCDR, LLC.  Further, Plaintiff Benevis, LLC f/k/a NCDR, LLC alleges it is merely a dental service organization and, therefore, Defendants' statements about Kool Smiles clinical practices could not be construed to have expressly or impliedly referred to

said Plaintiff.  Therefore, that statements pertaining to Kool Smiles does not give rise to a cause of action on behalf of Plaintiff Benevis, LLC f/k/a NCDR, LLC.

## SECOND AFFIRMATIVE DEFENSE
## COMPARATIVE FAULT

132.    Plaintiffs are barred from recovery under TEX. CIV. PRAC. & REM. CODe § 33.001 because they are more than 50 percent responsible for any damages that may have been suffered by them.

133.    In the unlikely event a damage award is entered against them, pursuant to TEX. CIV. PRAC. & REM. CODE § 33.012, Defendants are entitled to have the amount of damages reduced by a percentage equal to those damages resulting from Plaintiffs' own behavior and that of their employees and agents.

## THIRD AFFIRMATIVE DEFENSE
## ESTOPPEL

134.    The claims made in Plaintiffs' First Amended Complaint are barred, in whole or in part, by the doctrine of estoppel.  Plaintiffs should be estopped from asserting these causes of action because their unacceptable conduct and poor reputation was established before any statements made by Defendants.

## FOURTH AFFIRMATIVE DEFENSE
## ILLEGALITY

135.    Plaintiffs causes of action asserted in Plaintiffs' First Amended Complaint are barred, in whole or in part, by the doctrine of illegality.  Plaintiff, Benevis, LLC f/k/a NCDR, L.L.C. owns, manages, operates and/or controls the dental clinics in which it employs or engages under a contract other persons to practice dentistry and/or controls, influences, attempts to control or influence, or otherwise interferes with the exercise of a dentist's independent professional judgment regarding the diagnosis or treatment of a dental disease, disorder, or

physical condition without the legal authority to practice dentistry in Texas.  Thus, said Plaintiff is engaged in the corporate practice of dentistry which violates Chapter 251, Section 251.003(4),(9) of the Texas Occupation Code known as the Texas Dental Practices Act. Plaintiffs Dentistry of Brownsville, P.C. d/b/a Kool Smiles, and KS2 TX, P.C. d/b/a Kool Smiles are aiding and abetting Benevis, LLC f/k/a NCDR, LLC in its illegal corporate practice of dentistry, such constituting illegal conduct as specified in Chapter 251, Section 251.003(8)(C) of the Texas Occupation Code.

**FIFTH AFFIRMATIVE DEFENSE**
**UNCLEAN HANDS**

136.    Plaintiff, Benevis, LLC f/k/a NCDR, L.L.C. owns, manages, operates and/or controls the dental clinics in which it employs or engages under a contract other persons to practice dentistry and/or controls, influences, attempts to control or influence, or otherwise interferes with the exercise of a dentist's independent professional judgment regarding the diagnosis or treatment of a dental disease, disorder, or physical condition without the legal authority to practice dentistry in Texas.  Thus, said Plaintiff is engaged in the corporate practice of dentistry which violates Chapter 251, Section 251.003(4),(9) of the Texas Occupation Code known as the Texas Dental Practices Act. Plaintiffs Dentistry of Brownsville, P.C. d/b/a Kool Smiles, and KS2 TX, P.C. d/b/a Kool Smiles are aiding and abetting Benevis, LLC f/k/a NCDR, LLC in its illegal corporate practice of dentistry, such constituting illegal conduct as specified in Chapter 251, Section 251.003(8)(C) of the Texas Occupation Code and, therefore, have unclean hands.

137.    Additionally, Kool Smiles was in the past and/or is presently the subject of federal and state Medicaid civil and criminal investigations concerning Medicaid fraud.

138.    Kool Smiles has had one or more dentists convicted of Medicaid fraud in the State of Texas.

139.    Kool Smiles has also been a party to one or more whistleblower claims alleging unnecessary and excessive dental operative procedures, excessive use of the papoose board, and false Medicaid claims.

140.    Kool Smiles, prior to any statements made by Defendants and continuing to the present, has been engaged in a national course and pattern of practice, plan, and scheme to misdiagnose and overtreat pediatric patients with stainless steel crowns and to excessively use physical restraint upon pediatric patients.

141.    Accordingly, by the conduct alleged above, as well as other acts of misconduct which may be discovered, the equitable relief sought by Plaintiffs in Plaintiffs' First Amended Complaint is barred, in whole or in part, by the doctrine of "unclean hands".

## SIXTH AFFIRMATIVE DEFENSE
## SOLE PROXIMATE CAUSE

142.    Plaintiffs' causes of actions made in Plaintiffs' First Amended  Complaint are barred because Plaintiffs' alleged damages and injuries, if any, were the sole proximate cause of the negligence, fault, and other culpable conduct of Plaintiffs and/or other persons or parties over whom Defendants had no control.

143.    Plaintiffs' claims are barred because the alleged injuries and damages to Plaintiffs, if any, are due solely to other causes and matters that are not related to Defendants' statements, actions, operations, or conduct.

## SEVENTH AFFIRMATIVE DEFENSE
## FIRST and FOURTEENTH AMMENDMENTS

144.    The statements allegedly made by Defendants which are the basis for Plaintiffs' causes of action in their First Amended Complaint are true or substantially true and are protected under the First Amendment of the United States Constitution and under Article I section 8 of the Texas Constitution.

145.    Plaintiffs' claims are barred because the complained of statements are opinion, rhetorical hyperbole, or not capable of a defamatory meaning, and, therefore, protected speech under the First and Fourteenth Amendments of the United States Constitution and the Texas Constitution.

## EIGHTH AFFIRMATIVE DEFENSE
## TRUTH

146.    Plaintiffs have the burden of showing that the statements allegedly made by Defendants are materially false as they relate to Plaintiffs.  In the alternative and without waiving the foregoing, Defendants plead substantial truth as an affirmative defense.

147.    Plaintiffs have identified no actual facts asserted by Defendants that are false.  For a statement to be actionable in defamation it must expressly or impliedly assert facts that are objectively verifiable and those facts must be provable as false.  Plaintiffs attempt to argue defamation by implication in complete disregard of the truth of the statements at issue.  A true statement is not defamatory and Defendants are not liable for the negative opinions and conclusions that viewers draw from facts that are true or substantially true.

## NINTH AFFIRMATIVE DEFENSE
## PUBLIC CONCERN/PUBLIC FIGURE

148.    A statement on matters of public concern must be provable as false before there can be liability against a defendant and where public-official or public-figure plaintiffs are involved.

149.    Because Defendants were commenting on matters of public concern, the heightened evidentiary standard of actual malice applies, and Plaintiffs must establish by clear and convincing evidence that Defendants acted with actual malice.

150.    The alleged statements of Defendants concern matters of legitimate public concern.  Plaintiffs' receipt of taxpayer dollars through both federal and state Medicaid payments are clear matters of public concern.  Furthermore, Plaintiffs actions have a direct impact on public health and safety issues in Texas and beyond and are matters of public concern.

151.    Additionally, Plaintiffs are limited purpose public figures as a matter of law – a healthcare professional who sues over news reports regarding the quality of his treatment of patients is a limited purpose public figure.  *Swate v. Schiffers*, 975 S.W.2d 70, 76 (Tex. App. – San Antonio 1998, pet. denied).  Therefore, Plaintiffs' burden of proof at trial is to establish by clear and convincing evidence that Defendants acted with actual malice.

## TENTH AFFIRMATIVE DEFENSE
## PUBLIC RECORD

152.    Some of the alleged statements at issue are accurate reports evidenced by public record held by government agencies.  Allegations made in those records cannot form the basis of a defamation claim.  More specifically, statements pertaining to legislation which increased Medicaid reimbursement amounts for certain dental services and the amount of Plaintiffs' Medicaid collections are accurate reports verifiable by government agencies.

## ELEVENTH AFFIRMATIVE DEFENSE
## INNOCENT CONTRUCTION

153.    The alleged statements made by Defendants are subject to innocent construction, which must be given by the Court and/or the fact finder.

## TWELTH AFFIRMATIVE DEFENSE
## MITIGATION OF DAMAGES

154.    Plaintiffs have failed to mitigate their damages, if any, after publication of Defendants' allegedly defamatory statements.

155.    In particular, Plaintiffs have continued with their national course and pattern of practice, plan, and scheme to misdiagnose and overtreat pediatric patients with stainless steel crowns and to excessively use physical restraint upon pediatric patients.

156.    Further, Kool Smiles has been the subject of adverse national media, state media, online media, blogs, and other public sources of information after any statements made by Defendants.

157.    Kool Smiles has been a party to one or more whistleblower claims alleging unnecessary and excessive dental operative procedures, excessive use of the papoose board, and false Medicaid claims after any statements made by Defendants.

158.    Kool Smiles has had one or more dentists convicted of Medicaid fraud in the State of Texas after the statements made by Defendants.

159.    Accordingly, Plaintiffs have failed to change their conduct after the complained of statements in this suit and have, therefore, failed to mitigate the damages caused by Defendants' statements, if any.

## THIRTEENTH AFFIRMATIVE DEFENSE
## MITIGATING FACTORS AGAINST DAMAGES

160.    Plaintiffs' actual damages, if any, were caused by material facts and

circumstances not under Defendants' control.

161.    In this regard, Plaintiff Benevis, LLC f/k/a NCDR, LLC engages in the illegal corporate practice of dentistry and was in the past and/or is presently the subject of federal and state Medicaid civil and criminal investigations.

162.    Kool Smiles, prior to any statements made by Defendants, has been the subject of state investigations for Medicaid fraud and is currently under civil and criminal Medicaid investigation by the State of Texas.

163.    Kool Smiles, prior to, and after, any statements made by Defendants, has been the subject of adverse national media, state media, online media, blogs, and other public sources of information.

164.    Kool Smiles, prior to, and after, any statements made by  Defendants, has been a party to one or more whistleblower claims alleging unnecessary and excessive dental operative procedures, excessive use of the papoose board, and false Medicaid claims.

165.    Kool Smiles, prior to, and after, the statements made by Defendants have had one or more dentists convicted of Medicaid fraud in the State of Texas.

166.    Kool Smiles, prior to any statements made by Defendants had hired one or more companies to salvage its reputation in response to adverse publicity.

167.    Kool Smiles has also hired one or more companies to salvage its reputation for publicity caused by third parties after publication of Defendants' ads.

168.    Kool Smiles, prior to any statements made by Defendants, was engaged in a national course and pattern of practice, plan, and scheme to misdiagnose and overtreat pediatric patients with stainless steel crowns and to excessively use physical restraint upon pediatric patients.

169.    Kool Smiles, prior to any statements made by Defendants, billed Medicaid for services not rendered to pediatric patients.

170.    Accordingly, Defendants are entitled to admit the above mitigating factors against Kool Smiles' claims for actual and exemplary damages pursuant to TEX. CIV. PRAC. & REM. CODE § 73.003.

**FOURTEENTH AFFIRMATIVE DEFENSE**
**UNCONSTITUTIONALITY OF PUNITIVE DAMAGES**

171.    Plaintiffs are not entitled to punitive or exemplary damages under the laws of the United States or Texas because: (i) one or more of Plaintiffs' causes of action is pursuant to statute and punitive damages are impermissible for mere violation of a statutes, (ii) an award of punitive or exemplary damages would be unconstitutional under the United States and Texas Constitutions, specifically the First Amendment to the United States Constitution and Article I, §§ 8 and 19 of the Texas Constitution; (iii) any recovery of punitive or exemplary damages by Plaintiffs in this civil lawsuit would constitute the imposition of a criminal fine or penalty without the substantive or procedural safeguards guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and by Article I, Sections 3, 3a, 10, 13, 15 and 19 of the Texas Constitution; (iv) any such award of punitive or exemplary damages in this case would amount to nothing less than a denial to Defendants of due process and equal protection of the laws as are guaranteed under the United States and Texas Constitutions; (v) the imposition of any punitive or exemplary damages in this lawsuit would constitute an excessive fine or penalty under Article I, Sections 13 and 19 of the Texas Constitution; (vi) an award of punitive or exemplary damages on the facts of this case is unconstitutional or in violation of the common law, absent clear and convincing proof that the false, defamatory statements of defamatory facts, if any, about the Plaintiffs were published with "actual malice," as that term is defined by the

Unites States and Texas Supreme Courts, which "actual malice" Defendants deny, and absent proof of common law malice, that is, ill will, spite or evil motive and further absent proof in compliance with Chapter 41 of the Texas Civil Practice and Remedies Code; (vii) prejudgment interest may not be assessed or recovered on an award of exemplary damages, pursuant to Texas Civil Practice & Remedies Code § 41.007; (viii) exemplary damages awarded, if any, against Defendants may not exceed four times the amount of actual damages or $200,000, whichever is greater; (ix) Defendants allege they have not been given fair notice of the conduct that may subject Defendants to punishment or exemplary damages and also of the severity of the penalty or exemplary damages that may be imposed; and (x) punitive damages would violate the United States and Texas Constitutions and common law because such an award is based from procedures that are vague, open-ended, unbound in discretion, arbitrary and without sufficient constraints or protections against arbitrary and excessive awards.

### FIFTEENTH AFFIRMATIVE DEFENSE
### LIBEL-PROOF PLAINTIFFS

172.    Plaintiffs' claims are barred because Plaintiffs are libel-proof.

173.    In this regard, Plaintiff Benevis, LLC f/k/a NCDR, LLC engaged in the illegal corporate practice of dentistry and prior to Defendants' statements was the subject of federal and state Medicaid civil and criminal investigations.

174.    Kool Smiles, prior to any statements made by Defendants, was the subject of adverse national media, state media, online media, blogs, and other public sources of information.

175.    Kool Smiles, prior to any statements made by Defendants, was a party to one or more whistleblower claims alleging unnecessary and excessive dental operative procedures, excessive use of the papoose board, and false Medicaid claims.

176.   Kool Smiles, prior to any statements made by Defendants had hired one or more companies to salvage its reputation in response to adverse publicity.

177.   Kool Smiles, prior to any statements made by Defendants, was engaged in a national course and pattern of practice, plan, and scheme to misdiagnose and overtreat pediatric patients with stainless steel crowns and to excessively use physical restraint upon pediatric patients.

178.   Kool Smiles, prior to any statements made by Defendants, billed Medicaid for services not rendered to pediatric patients in Texas.

179.   As such, Kool Smiles was engaged in criminal or antisocial behavior and there were wide reports of such behavior prior to the date of publication of Defendants' statements.

180.   Accordingly, Plaintiffs' reputation was already so bad Defendants' statements could have done no further harm and, thus, Plaintiffs' claims are barred.  *Swate v. Schiffers*, 975 S.W.2d 70 (Tex. App.—San Antonio 1998, pet. denied).

**III.**
**RESERVATION OF RIGHT TO AMEND**

181.   Defendants presently have insufficient knowledge or information from which to form a belief as to whether they may have additional available affirmative defenses. Defendants reserve the right to assert additional defenses that become available or apparent during discovery and to amend this Answer accordingly.

**IV.**
**REQUEST FOR RELIEF**

WHEREFORE PREMISES CONSIDERED, Defendants, MAUZÉ & BAGBY, PLLC, GEORGE WATTS MAUZÉ II AND JAMES THOMAS BAGBY III, respectfully request that Plaintiffs take nothing on their claims; that Defendants be awarded their costs, expenses and

attorneys' fees; and for such other and further relief, general or special, at law or in equity, to which Defendants are justly entitled.

Dated: May 27, 2015                                   Respectfully submitted,

By: ___/s/ *John C. Cave*_____
    John C. Cave
    Attorney-In-Charge
    Texas State Bar No. 00783812
    Southern District Admission No: 31606
    GUNN, LEE & CAVE, P.C.
    300 Convent, Suite 1080
    San Antonio, Texas 78205
    Telephone: (210) 886-9500
    Facsimile: (210) 886-9883
    Email: john.cave@gunn-lee.com

    Of Counsel:

    Edward B. Marvin
    Texas State Bar No. 24055917
    Southern District Admission No: 777369
    GUNN, LEE & CAVE, P.C.
    300 Convent, Suite 1080
    San Antonio, Texas 78205
    Telephone: (210) 886-9500
    Facsimile: (210) 886-9883
    Email: edward.marvin@gunn-lee.com

    *-and-*

    Kimberly S. Keller
    Texas State Bar No. 24014182
    Southern District Admission No: 31427
    KELLER STOLARCZYK, PLLC
    234 W. Bandera Rd., No. 120
    Boerne, Texas 78006
    Telephone: (830) 981-5000
    Facsimile: (888) 293-8580
    Email: kim@kellsto.com

    **ATTORNEYS FOR DEFENDANTS,**
    **MAUZÉ & BAGBY, PLLC, GEORGE WATTS**
    **MAUZÉ II, AND JAMES THOMAS BAGBY, III**

## CERTIFICATE OF CM/ECF FILING AND SERVICE

I hereby certify that on May 27, 2015, I electronically filed the foregoing document with the Clerk of the United States District Court, Southern District of Texas, Laredo Division by using the CM/ECF system. I certify that attorney participants listed in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system, upon the following:

Darren L. McCarty
Attorney-in-Charge
Sean M. Whyte
ALSTON & BIRD, LLP
2828 North Harwood Street, Suite 1800
Dallas, Texas 75201

*-and-*

Aaron Karl Block, Esq.
ALSTON & BIRD, LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309

/s/ *Edward B. Marvin*
Edward B. Marvin



# NUMBER 13-15-00296-CV

# COURT OF APPEALS

# THIRTEEN DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

## IN RE BENEVIS, LLC, DENTRISTRY OF BROWNSVILLE, P.C., AND KOOL SMILES, P.C.

---

## On Petition for Writ of Mandamus.

---

## MEMORANDUM OPINION

### Before Chief Justice Valdez, Benavides, and Perkes
### Memorandum Opinion Per Curiam[1]

Relators, Benevis, LLC, Dentistry of Brownsville, P.C., and Kool Smiles, P.C., filed a petition for writ of mandamus and motion for emergency stay in the above cause on July 7, 2015. Through this original proceeding, relators contend that the trial court abused its discretion in ordering amendments to a protective order.

---

[1] See TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so."); Id. R. 47.4 (distinguishing opinions and memorandum opinions).

To be entitled to the extraordinary relief of a writ of mandamus, the relator must show that the trial court abused its discretion and that there is no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). The relator has the burden of establishing both prerequisites to mandamus relief, and this burden is a heavy one. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision that is so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). The adequacy of an appellate remedy must be determined by balancing the benefits of mandamus review against the detriments. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding). A discovery order that compels production beyond the rules of procedure is an abuse of discretion for which mandamus is the proper remedy. *In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding) (per curiam); *In re Deere & Co.*, 299 S.W.3d 819, 820 (Tex. 2009) (orig. proceeding) (per curiam).

The Court, having examined and fully considered the petition for writ of mandamus, the response filed by the real parties in interest, [2] and the applicable law, is of the opinion

---

[2] The real parties in interest herein are Paula Antu as next friend of E.A., a minor; Scarlett Ayala as next friend of X.U., a minor; Guadalupe Cepeda as next friend of O.C., a minor, Ana Laura Cornejo as next friend of J.C.C., a minor; Marior Cuellar and Priscilla Trujillo as next friends of A.C., a minor; Maria Gaytan as next friend of F.T., a minor; Elizabeth Gonzalez and Marco Reyes as next friends of K.R., a minor; Francisca Guzman as next friend of A.G., a minor; Ismael and Isabel Maldonado as next friends of J.M., a minor; Freisi Olivar as next friend of A.S.II, a minor; Rary Rosales as next friend of D.M., a minor; Reynol Salinas as next friend of R.S.Jr., a minor; Anahy Alanis as next friend of J.V., a minor; Esmeralda Caro as next friend of K.D.L, a minor; Mary Chaves as next friend of T.C., a minor; Gracie Fuentes as next friend of B.F., a minor; Maricela and Jorge Garza as next friends of B.G., a minor; Claudia and George Lopez as next friends of A.L., a minor; Esmeralda Lopez as next friend of J.L., a minor; Dalia Lopez and Jorge Sauceda as next friends of D.S., a minor; Jose and Norma Montoya as next friends of I.M., a minor; Mayra

2

Munoz as next friend of J.H., a minor; Rosalba Quilantan and Emilio Cavazos as next friends of E.C., a minor; Vanessa and Joshua Santillian as next friends of J.S., a minor; Maryne and Jose Alanis as next friends of O.M., a minor; San Juanita Cantu as next friend of E.C., a minor; Mcdulia Dehoyos as next friend of B.C., a minor; Carla Garza as next friend of K.S., a minor; Yadira and Jesus Gomez as next friends of J.G., a minor; Feliz Perez, Jr. as next friend of K.P., a minor; Griselda Perez as next friend of S.P., a minor; Rosalba Quilantan and Emilio Cavazos as next friends of A.C., a minor; Cristina Salas as next friend of J.C., a minor; Jessica Rodriguez as next friend of E.C., a minor; Rosa Turrubiates and Pedro Salas, Jr. as next friends of P.S., a minor; Maryne Alanis and Jose Luis as next friends of J.A., a minor; Tatiana and Miguel Calderon as next friends of A.C., a minor; Celia Gutierrez as next friend of J.C.V.III, a minor; Steffany Klimp as next friend of J.C., a minor; Luis Lara as next friend of M.L., a minor; Charlie Park as next friend of M.P., a minor; Gabriela Reyes as next friend of A.B.R., a minor; Cruz Rios as next friend of X.A., a minor; Seferina Salinas as next friend of N.B., a minor; Kimberly Sustaita and Rodolfo Avila as next friends of R.A.Jr., a minor; Teresa Alaniz as next friend of D.T., a minor; Teresa Alaniz as next friend of D.T., a minor; Nereyda Benitez and Jose Angel Arriage as next friends of J.A., a minor; Maribel Espinoza as next friend of B.E., a minor; Jennifer and Ismael Garcia, Jr. as next friends of I.G.III, a minor; Enrique Gomez as next friend of S.G., a minor; Felix Martinez and Lucero Bautista as next friends of J.B., a minor; Rosaura Molina as next friend of I.M., a minor; Jacquelyne Rubalcava as next friend of J.R., a minor; Vanessa Anika Salmon as next friend of M.A.R.Jr., a minor; Adriana Torres as next friend of S.T., a minor; Beatriz Velez as next friend of U.M., a minor; Priscilla Aparicio as next friend of J.A., a minor; Maria Buitron as next friend of E.B., a minor; Monica De La Rosa and Jose Espinoza as next friends of J.E., a minor; Guadalupe Perez and Cesar Hernandez as next friends of C.H., a minor; Lizet Ramirez as next friend of I.G., a minor; Luis and Lizeth Reyes as next friends of I.R., a minor; Jennifer and Valentin Reyna as next friends of H.R., a minor; Alfredo Rodriguez as next friend of C.R., a minor; Daisy Torres as next friend of E.T., a minor; Manuel Uresti as next friend of D.U., a minor; Guadalupe and Edgar Uribe as next friends of J.U., a minor; Margarita and Humberto Viacobo as next friends of V.V., a minor; Sylvia Aranda as next friend of L.B., a minor; Guadalupe Cepeda as next friend of S.C., a minor; Mirian De Los Santos as next friend of M.D., a minor; Noriselda and Miguel Garcia, Jr. as next friends of M.G.III, a minor; Amanda Garza as next friend of R.P.Jr., a minor; Mirian and Fernando Gonzales, Jr. as next friends of F.L.III, a minor; Maria Gonzalez as next friend of C.M., a minor; Monica Hernandez as next friend of A.C., a minor; Alejandra Lara as next friend of J.T., a minor; Isela Lee Ledesma as next friend of D.L.P., a minor; Nancy Rodriguez as next friend of I.J.R., a Minor; Abel and Illiana Zuniga as next friends of M.Z., a minor; Erika Armendariz as next friend of J.A., a minor; Laura and Fidel Gomez, Jr. as next friends of J.P., a minor; Irasena Gonzalez as next friend of R.G., a minor; Olga Granados as next friend of E.G., a minor; Margarita Molar as next friend of V.N.T., a minor; Haide and Juan Reyes as next friends of J.E.R.II, a minor; Amanda and Juan Rodriguez as next friends of N.R., a minor; Blanca Rodriguez as next friend of S.R., a minor; Carmen Salazar as next friend of K.C., a minor; Adriana Venancio and Cesar Mejia as next friends of Y.M., a minor; Denisse Arroyo as next friend of Z.L., a minor; Maria Buitron as next friend of L.B., a minor; Imelda and Gustavo Coronado as next friends of R.C., a minor; Narda Dominguez as next friend of N.H., a minor; Mirian Gonzales and Fernando Lopez, Jr. as next friends of A.L., a minor; Monica Hernandez as next friend of R.C.III, a minor; Elizabeth Longoria as next friend of C.L., a minor; Erika Mendoza as next friend of J.I., a minor; Wendy Morales as next friend of A.M.Z., a minor; Rachel Rodriguez as next friend of E.R., a minor; Sandra Rodriguez as next friend of D.I., a minor; San Juanita Cantu as next friend of E.C., a minor; Darlene Cardenas as next friend of E.G., a minor; Nancy Cervantes as next friend of L.C., a minor; Wallace Clark and Maria Ramirez as next friends of D.C., a minor; Andy and Norma Garcia as next friends of A.D.G., a minor; Myra Garza as next friend of D.R., a minor; Jorge and Cynthia Ginez as next friends of J.G., a minor; Nelssy Gonzalez as next friend of N.H., a minor; Maria Hernandez as next friend of K.R., a minor; Karina Hernandez as next friend of I.M., a minor; Teresita Lemus as next friend of N.P., a minor; Edward Lopez as next friend of A.L., a minor; Veronica Quintanilla as next friend of D.M., a minor; Maria Salazar as next friend of D.L., a minor; Hugo and Norma Vargas as next friends of A.V., a minor; Amy Zuniga as next friend of B.Z., a minor; Monica De La Rosa and Jose Espinoza as next friends of E.E., a minor; Jennifer Gonzalez as next friend of B.R., a minor; Maria Herrera as next friend of R.F., a minor; Carlos Martinez as next friend of A.M., a minor; Ana Ortiz as next friend of E.S., a minor; Ramiro Perez and Ivonne Carbajal as next friends of L.C., a minor; Ricardo Ramirez, Jr. as next friend of J.R., a minor; Luis and Lizeth Reyes as next friends of S.R., a minor; Veronica Rodriguez as next friend of J.R., a minor; Kimberly Sustaita and Rodolfo Avila as next friends of K.a., a minor.

that relators have not met their burden to obtain mandamus relief. *See Eli Lilly & Co. v. Marshall*, 850 S.W.2d 155, 160 (Tex. 1993) (orig. proceeding); *Garcia v. Peeples*, 734 S.W.2d 343 (Tex. 1987) (orig. proceeding); *see also Idar v. Cooper Tire & Rubber Co.*, No. C-10-217, 2011 WL 688871 (S. D. Tex. Feb. 17, 2011). Accordingly, we LIFT the stay previously imposed in this cause and we DENY the petition for writ of mandamus. *See* TEX. R. APP. P. 52.8(a), 52.10.

PER CURIAM

Delivered and filed the
21st day of July, 2015.

4